UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| RICHARD W. GATES III, | ) | Crim. No. 17-201-2 (ABJ) |
| | ) | |
| Defendant. | ) | |

**DEFENDANT RICHARD W. GATES III'S REPLY TO GOVERNMENT'S MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION TO MODIFY <u>RELEASE CONDITIONS FOR LIMITED PURPOSES</u>**

Richard W. Gates III, by and through counsel, hereby replies to the memorandum in opposition filed by the United States Office of Special Counsel ("SCO").

### ARGUMENT

The SCO's memorandum lacks merit and mischaracterizes the facts.

**A.  <u>The SCO's Memorandum Mischaracterizes the Facts</u>**

The SCO's memorandum is dismayingly disingenuous in that it ignores the fact that any delay in Mr. Gates in submitting a bail package proposal is entirely caused by the SCO and by counsel's assumption that the SCO was working in good faith to reach a jointly agreeable bail proposal for this Court's consideration.

1. Since Monday, 11/06/17, the SCO has had the names and identifier information of three of the now five sureties/guarantors proposed by Mr. Gates to secure his $5 million bail. On 11/06/17, Mr. Gates supplied to the SCO identifier information for three close relatives so that the SCO could determine whether it was satisfied with these sureties. It was not until Thursday, 11/09/17, when counsel inquired as to the status of the SCO's assessment of the sureties that the SCO informed counsel they had only thus far performed criminal background checks. Since then, counsel is not aware of the SCO making any further efforts to determine their conclusion as to the suitability of these three sureties.
2. Since Monday, 11/06/17, the SCO has had the life insurance policy numbers and values made available by counsel as well as contact information so that the SCO could determine if the life insurance policies would be satisfactory security to the SCO.

1

3. Since Tuesday, 11/07/17, the SCO has had the contact information of a representative at the bank holding Mr. Gates's mortgage.
4. Since Wednesday, 11/08/17, the SCO has had an authorization letter permitting the bank to speak to Mr. Greg Andres from the SCO to verify mortgage value information.
5. Since Friday, 11/10/17, the SCO has had the names and identifier information for an additional two individuals willing to serves as sureties as well as asset statements for all five individual sureties.  However, despite having this information, the SCO made no attempts to contact counsel about arranging interviews of any of the five sureties nor sought any additional information.  After this prolonged lack of action by the SCO, counsel contacted the SCO yesterday, 11/15/17, to offer to arrange interviews with two of the sureties.  Only then did the SCO take steps to schedule such interviews.
6. Since Tuesday, 11/14/17, the SCO has had a new appraisal of Mr. Gates's house which values the house at $2.9 million with a net equity of $1.6 million.  Although the SCO has represented that they already have formed their opinion of the value of the house (presumably they were in possession of this information even prior to Mr. Gates's arraignment through subpoena power exercised during their investigation), the SCO asked for a more recent appraisal, which was submitted to the SCO on 11/14/17.  Since then, the SCO has conveyed nothing to counsel about their opinion as to the suitability of the house as security for Mr. Gates's bail.

### B. **Defendant's Motion is a Reasonably Limited Request**

Mr. Gates made this motion as an interim request pending any proposal to this Court to lift the requirement of home confinement and approval of a secured bail package.  The motion was made pursuant to this Court's Order of 11/11/17 which required that: "[u]nless and until the defendants have been released from home confinement on bond that has been approved by the Court, any future request to modify the conditions of release must be filed two business days before the date of the proposed release."  Accordingly, with the approaching weekend and upcoming holidays and growing stress upon Mr. Gates's family, counsel felt it prudent to file the instant motion so that the Court could have sufficient time to consider this limited request for modification and, so that, if the Court were to grant the motion, Pre-Trial Services would have sufficient time to work with Mr. Gates to properly monitor his release.

Moreover, the SCO's insinuation made in footnote 2 of its memorandum that this Court has previously denied a similar motion on the merits is wrong. This Court's Order of 11/11/17 made

it plain that Mr. Gates's request was being denied because "the request was not filed in time [the motion had been filed on a court holiday] to provide for opposition, consideration, and a ruling on a schedule that would enable the defendant to comply with the conditions the Court imposed in connection with the previous similar motion." The Court did not rule on the merits of the request.

### C. This Court Should Grant the Request for an Interim Limited Modification[1]

Mr. Gates emphasizes that this is a limited request made in the interim to ease the heavy burden on his family and to allow him to earn a living. As detailed above, counsel has worked diligently to offer the SCO sufficient information that it might determine whether it could reach agreement over a jointly proposed bail package.  In contrast, the SCO has delayed action in this matter and now attempts to mischaracterize Mr. Gates's limited interim request as being a request to lift house confinement altogether.  Nothing could be further from the truth.  Mr. Gates is proposing a reasonable limited modification during which he would continue to not only check in with Pre-Trial Services but also his location would be monitored by his electronic GPS ankle monitor. Granting this limited modification in no way increases the risk of Mr. Gates fleeing.  To the contrary, with each passing day, Mr. Gates's perfect compliance with his release conditions demonstrates a growing foundation of good faith and reliability.  Unfortunately, the same cannot be said for the SCO's position on bail.[2]

---

[1] As explained above, no filings about assets has yet been made with this Court because counsel had been led to believe by the SCO that SCO sought in good faith to agree to a joint proposal. However, considering the SCO's current position, Mr. Gates will file with the Court appropriate documents for the Court's consideration, including the Application to Pledge Real Property to Secure Release.  Mr. Gates and his counsel remain open to the possibility of a joint bail package proposal

[2] Mr. Gates requests an expedited hearing on this matter if the Court finds it appropriate and that Ms. Takeysha Robinson from Pre-Trial Services be asked to be available to provide the Court with information as to the capacity of the GPS monitoring system to track Mr. Gates's location

Respectfully submitted,


  /s/Shanlon Wu_____
Shanlon Wu
D.C. Bar No. 422910
Wu, Grohovsky & Whipple, PLLC
Ronald Reagan Building and International Trade Center
1300 Pennsylvania Avenue, NW, Suite 700
Washington, DC 20004
swu@dcwhitecollar.com
202-204-3053 office
202-747-7518 fax

Walter Mack
Admitted Pro Hac Vice
Doar Rieck Kaley & Mack
217 Broadway, Suite 707
New York, NY 10007-2911
212-619-3730 (Telephone)
212-962-5037 (Facsimile)
*Attorneys for Richard W. Gates III*

---

during any approved limited release from home confinement.  If the Court requires Mr. Gates to be present for any hearing deemed necessary by the Court then Mr. Gates will require a few hours' notice to travel from Richmond, Virginia to the Court unless the Court wishes to allow him to appear telephonically.