UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>RICHARD W. GATES III,<br><br>Defendant | Crim. No. 17-201-2 (ABJ) |

GOVERNMENT'S MOTION TO REVIEW
REPRESENTATION OF DEFENDANT GATES

The United States of America, by and through Special Counsel Robert S. Mueller III, submits this motion to request that the Court review the propriety of attorney Walter Mack's representation of defendant Richard W. Gates III in light of a potential conflict of interest, and to provide the Court with information relevant to conducting the type of inquiry set forth in *United States v. Curcio*, 680 F.2d 881 (2d Cir. 1982). *See United States v. Brown*, No. 07-cr-75 (CKK), 2007 WL 1655873, at *3 (D.D.C. June 7, 2007) (court conducted *Curcio* inquiry at the parties' request); *see also United States v. Lopesierra-Gutierrez*, 708 F.3d 193, 202 (D.C. Cir. 2013) (describing with approval a similar inquiry).

BACKGROUND

As the Court is aware, defendant Gates is charged with one count of conspiring to defraud the United States and to commit offenses against the United States, one count of conspiring to commit money laundering, three counts of failing to file reports of foreign bank accounts, one count of being an unregistered agent of a foreign principal, one count of making false and misleading statements in a document filed under the provisions of Foreign Agent Registration Act, and one count of making false statements in a matter within the jurisdiction of the executive branch of the U.S. Government. *See* ECF#1. The charges against Gates stem from his work on behalf of

the government of Ukraine and certain Ukrainian political parties between in or about 2006 and in or about 2015.

Gates is represented on the above charges by Shanlon Wu, a lawyer based in Washington, D.C.; and two attorneys based in New York—Walter Mack of Doar Rieck DeVita Kaley & Mack, and Annemarie McAvoy of McAvoy Consulting. *See* Nov. 13, 2017 Minute Order Granting Motions of Mack and McAvoy to Appear *Pro Hac Vice*.

The government recently learned that Mr. Mack also represents Steven Brown in the federal criminal case pending against Brown in the Southern District of New York, *United States v. Brown*, No. 16-cr-436 (KBW). Brown is charged in that case with conspiring to commit wire fraud, wire fraud, and conspiring to commit money laundering between in or about 2012 and in or about June 2016 in connection with a scheme to defraud investors in feature and documentary films. *See* Brown Indictment (attached hereto as Exhibit B). Trial is scheduled to begin on March 5, 2018.

The conduct for which Brown is charged in the Southern District of New York is separate and apart from the charges pending in the instant action. Gates and Brown, however, are believed by the government to have had a long-term personal and business relationship that creates areas of potential factual overlap between the two cases. Gates and Brown appear to have shared multiple financial and business interests. The government has also learned that on at least two occasions, Gates, acting at Brown's direction, transferred funds to an account controlled by Brown's co-conspirator in the New York case, James David Williams. These funds were used, in large part, to pay the personal expenses of Williams and Brown. Furthermore, during the time period at issue in the New York indictment, entities associated with Brown and/or with Brown's spouse transferred funds to bank accounts held by entities controlled by Gates. In addition, during the

period at issue in the New York indictment, Brown and Williams repeatedly discussed, including in meetings with Gates, the possibility that Gates would arrange for certain Ukrainian clients to invest in a print and advertising fund for film distribution, to be run by Brown and Williams. As set forth in more detail in the New York indictment, previous investments of this type procured by Brown and Williams during the relevant period had allegedly been obtained through fraudulent means and had resulted in the misappropriation of investor funds.[1]

The government does not, at present, have reason to believe that Gates was directly involved in, or was a victim of, the criminal conduct at issue in the New York case. His level of knowledge about that conduct is, however, difficult to assess at this time, given the extent of his financial and personal relationship with Brown. Nevertheless, Gates could be a potential witness in the case against Brown. Similarly, Brown may have knowledge of Gates's activities on behalf of foreign principals or other financial dealings that would be relevant to the case pending in this Court. It is at least possible that Gates or Brown could become a witness for the government or that information Mr. Mack learned from Brown or Gates could be relevant to the defense of the

---

[1] Gates and Brown have other financial ties that warrant brief mention. They are partners in GB Consulting LLC, which was incorporated in Delaware in 2013. In June 2013, Gates opened a brokerage account in the name of GB Consulting LLC and deposited 1.75 million shares of Energy Today stock, which had a face value of $24.5 million at the time (and was valued by the bank at $14 million). In March 2014, Gates withdrew all of the Energy Today shares from GB Consulting LLC's account. At the date of withdrawal, the Energy Today shares were valued at $6.125 million. The disposition of the stock is unknown. Additionally, in June 2015, Bade LLC, an entity controlled by Gates and cited in his indictment, transferred $50,000 to Plainfield Pass, which was named in Brown's indictment. Gates and Brown are also partners in an entity named MAP Global Holdings LLC, which is said to be involved in the production of films. Between 2015 and 2016, Brown invested $165,000 in the partnership and withdrew $418,250 from the partnership through his company PR News Strategies LLC. A review of the MAP Global Holdings LLC's 2016 partnership income return shows that both Gates and Brown share recourse liabilities in the amount of $3,355,125 and $3,355,126, respectively. The partnership also has $6,638,820 in current assets via films Frenzy, Warriors of God, and a Swiss documentary. These entities (and liabilities) do not appear to have been included in Gates's personal financial statement submitted to the government as part of his bail package.

other.  However unlikely those propositions are, if any of them were to occur, Mr. Mack's obligation to advocate diligently on behalf of his clients would come into conflict with his responsibilities to protect privileged information and to uphold his duties of confidentiality and loyalty.[2]

Accordingly, in an abundance of caution, the government respectfully requests that the Court (1) conduct a *Curcio*-type inquiry to determine whether Gates is fully aware of the risks involved in the representation provided by Mr. Mack, who may, at some point, have divided loyalties; and (2) determine whether Gates may make a knowing and intelligent waiver of his right to conflict-free representation.[3]

## DISCUSSION

### I.     The *Curcio* Inquiry

The Sixth Amendment right to effective assistance of counsel includes the right to conflict-free representation.  *See United States v. Lopesierra-Gutierrez*, 708 F.3d 193, 200 (D.C. Cir. 2013). To ensure that a defendant's right to conflict-free counsel is adequately safeguarded, a district court has an obligation whenever it is "sufficiently apprised of even the possibility of a conflict of interest" to initiate an inquiry to determine the precise nature of the conflict.  *United States v. Levy*,

---

[2] Marc Brown, the brother of defendant Steven Brown, was proposed by Gates as a potential surety despite the facts that they seemingly do not have a significant relationship, they have not had regular contact over the past ten years, and Marc Brown currently serves as a surety for his brother Steven in his ongoing criminal prosecution in New York.  In an interview with the Special Counsel's Office on November 16, Marc Brown listed as a reason for seeking to support Gates that they belonged to the same fraternity (although they did not attend the same college) and that, as such, he felt duty bound to help Gates.  Of note, Marc Brown's financial assets were significantly lower, almost by half, than previously represented by Gates.

[3] Government counsel in this matter have conferred with the U.S. Attorney's Office in the Southern District of New York and understands that that Office also plans to notify the district court presiding over the case pending against Brown of the potential conflict posed by Mr. Mack's representation of Brown.

25 F.3d 146, 153 (2d Cir. 1994).  Because the Sixth Amendment guarantees not only the right to an attorney of undivided loyalty but also, with certain exceptions, to an attorney of one's own choosing, where those rights conflict the determination of which right is to take precedence must generally be left to the defendant, who may make a knowing and intelligent waiver of his right to a conflict-free lawyer.  *See Lopesierra-Gutierrez*, 708 F.3d at 200; *United States v. Lorenzana-Cordon*, 125 F. Supp. 3d 129, 135 (D.D.C. 2015).

At the same time, "courts have an independent interest in ensuring that criminal trials are conducted within the ethical standards of the profession and that legal proceedings appear fair to all who observe them," *Wheat v. United States*, 486 U.S. 153, 160 (1988), an interest that in some cases will justify a court's decision to reject a defendant's waiver of a potential conflict.  See *id.* at 163; *United States v. Bikundi*, 80 F. Supp. 2d 9, 16 (D.D.C. 2015).  These competing interests—the rights of the defendant and the need to maintain the appearance of fairness—are best served when courts conduct any necessary inquiry into possible conflicts of interest "sooner rather than later."  *United States v. Rogers*, 209 F.3d 139, 146 (2d Cir. 2000).

In conducting an inquiry into a possible conflict, a court must first "investigate the facts and details of the attorney's interests to determine whether the attorney in fact suffers from an actual conflict, a potential conflict, or no genuine conflict at all."  *Levy*, 25 F.3d at 153.  As the Second Circuit recently explained,

> In satisfying its inquiry obligation, the district court may rely on the representations of counsel as to his interest in the case and how any potential conflict might be cured.  If the court is satisfied at the inquiry stage that there is no actual conflict or potential for one to develop, its duty ceases.  Where the court determines that an actual or potential conflict exists but that it would not fundamentally impair the lawyer's representation, the district court should address the defendant directly and determine whether he wishes to make a knowing and intentional waiver of his right to conflict-free counsel in conformity with the procedures set out in *Curcio*.  Finally, if the initial inquiry establishes that the conflict is such that no rational

defendant would knowingly and intelligently desire the conflicted lawyer's representation, the district court must immediately disqualify him.

*United States v. Cain*, 671 F.3d 271, 293-94 (2d Cir. 2012).  This last category of cases—that is, ones in which an attorney conflict is truly beyond waiver—is at most a "very narrow" one.  *United States v. Perez*, 325 F.3d 115, 126 (2d Cir. 2003); *see Lopesierra-Gutierrez*, 708 F.3d 199-201 (noting but not deciding whether a conflict can be unwaivable and, if so, under what circumstances).  And that category does not include conflicts arising from an "attorney's representation of two or more defendants or his prior representation of a trial witness, [which] are generally waivable."  *Perez*, 325 F.3d at 127.

Nevertheless, because a defendant who chooses to waive his right to conflict-free counsel gives up important rights, courts follow a set of procedures—often called a *Curcio* hearing after the Second Circuit's leading case on the issue—before accepting a defendant's waiver of the right at stake.  *See, e.g.*, *United States v. Brown*, No. 07-cr-75 (CKK), 2007 WL 1655873, at *3 (D.D.C. June 7, 2007) (court conducted *Curcio* inquiry at the defendants' request); *United States v. Carlyle*, 964 F. Supp. 8, 13 & n.4 (D.D.C. 1997) (describing the "colloquy with a defendant" that the court holds when determining waiver of the right to conflict-free counsel).  In such a hearing:

> the trial court (1) advises the defendant of his right to representation by an attorney who has no conflict of interest, (2) instructs the defendant as to the dangers arising from particular conflicts, (3) permits the defendant to confer with his chosen counsel, (4) encourages the defendant to seek advice from independent counsel, (5) allows a reasonable time for the defendant to make a decision, and (6) determines, preferably by means of questions that are likely to be answered in the narrative form, whether the defendant understands the risk of representation by his present counsel and freely chooses to run them.

*Perez*, 325 F.3d at 127.

**II.     The Potential Conflict**

Mr. Mack's simultaneous representation of Gates and Brown raises conflict concerns under the ethical rules of New York and the District of Columbia. Under New York's Rules of Professional Conduct, a lawyer is prohibited from representing a client "if a reasonable lawyer would conclude that . . . the representation will involve the lawyer in representing differing interests." N.Y. Rules of Prof'l Cond. 1.7(a). This prohibition does not apply if (1) the lawyer reasonably believes he will "be able to provide competent and diligent representation to each affected client;" (2) the representation is not prohibited by law; (3) the represent "does not involve the assertion of a claim by one client against another client represented by the lawyer in the same litigation or other proceeding before a tribunal;" and (4) each affected client gives informed consent, confirmed in writing. N.Y. Rules of Prof'l Cond. 1.7(b). As the comment to Rule 1.7 explains,

> [d]iffering interests exist if there is a significant risk that a lawyer's exercise of professional judgment in considering, recommending or carrying out an appropriate course of action for the client will be adversely affected or the representation would otherwise be materially limited by the lawyer's other responsibilities or interests . . . . The conflict in effect forecloses alternatives that would otherwise be available to the client. The mere possibility of subsequent harm does not itself require disclosure and consent. The critical questions are the likelihood that a difference in interests will eventuate and, if it does, whether it will adversely affect the lawyer's professional judgment in considering alternatives or foreclose courses of action that reasonably should be pursued on behalf of the client.

N.Y. Rule of Prof'l Conduct 1.7, cmt. 6.

District of Columbia rules are to similar effect. Under the D.C. Rules of Professional Conduct, "a lawyer shall not represent a client with respect to a matter if," among other things, "[s]uch representation will be or is likely to be adversely affected by representation of another client." D.C. Rule of Prof. Conduct 1.7(b)(2). But a lawyer may represent a client despite a conflict of that nature if (1) each potentially affected client provides informed consent to such

7

representation after full disclosure of the existence and nature of the possible conflict and the possible adverse consequences of such representation; and (2) the lawyer reasonably believes that the lawyer will be able to provide competent and diligent representation to each affected client. D.C. Rule of Prof. Conduct 1.7(c); *see Lorenzana-Cordon*, 125 F. Supp. 3d at 135.

As set forth above, given Gates's involvement in matters related to those for which Brown is charged criminally, and vice versa, there exists a possibility, however remote, that Mr. Mack's obligation to advocate diligently on behalf of his clients would come into conflict with his responsibilities to protect privileged information and to uphold his duties of confidentiality and loyalty. That potential conflict is, as explained above (at 6), likely waivable. But consistent with the need to address potential conflicts of interest "sooner rather than later," *Rogers*, 209 F.3d at 146, the government believes that it is appropriate for the Court to conduct an inquiry to confirm that the potential conflict can be waived and to determine whether Gates is willing to waive it.

## **CONCLUSION**

For the reasons set forth above, the government respectfully requests that the Court conduct a hearing to determine whether the potential conflict posed by Mr. Mack's representation of both Gates and Brown may be waived and, if it may, that the Court advise Mack of his right to conflict-free representation and inquire as to whether he understands the potential conflict in accordance with the procedures established in decisions such as *Curcio*. After advising the defendant of the risks posed by Mr. Mack's representation of him, the government requests that the Court afford Gates a reasonable time to digest and contemplate those risks, *see Curcio*, 680 F.2d at 890, and consider permitting that Gates consult with independent counsel regarding the potential conflict.

If Gates subsequently informs the Court that he wishes to proceed with Mr. Mack as his counsel, the government requests that the Court elicit "a narrative response" from the defendant designed to ascertain whether he is fully aware of the risks involved in the representation provided by Mr. Mack and determine whether the defendant is making a knowing and intelligent waiver of his right to conflict-free representation.  *See Carlyle*, 964 F. Supp. at 13 n.4.

For the convenience of the Court, the government has attached as Exhibit A to this motion a set of proposed questions to be put to the defendant as part of the *Curcio*-type inquiry.

                Respectfully submitted,

                ROBERT S. MUELLER III
                Special Counsel

Dated: November 20, 2017      By:   \_\_/s/_____
                Andrew Weissmann*
                Greg D. Andres (D.D.C. Bar No. 459221)
                Kyle R. Freeny*
                U.S. Department of Justice
                Special Counsel's Office
                950 Pennsylvania Avenue NW
                Washington, DC 20530
                Telephone: (202) 616-0800

                *Attorneys for the United States of America*

                *\*Attorneys Weissmann and Freeny are members of the New York and California bars, respectively, but may practice in this Court under LCvR 83.2(e).*