UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| v. | ) | |
| | ) | Crim. No. 17-201-01 (ABJ) |
| PAUL J. MANAFORT, JR., | ) | |
| | ) | |
| Defendant. | ) | |

DEFENDANT PAUL J. MANAFORT, JR.'S
MOTION TO MODIFY CONDITIONS OF RELEASE

Paul J. Manafort, Jr., by and through counsel, hereby moves the Court to modify the conditions of release as outlined below. Counsel for Mr. Manafort and the Office of Special Counsel ("OSC") have conferred, and the parties agree that the conditions of release set forth below will reasonably assure the appearance of Mr. Manafort as required. *See* 18 U.S.C. Section 3142(b) and (c).

I.    Background

The current conditions of release for Mr. Manafort include, among other things, a $10 million unsecured appearance bond, home confinement in Alexandria, VA, and GPS monitoring. The Court has previously indicated that it is willing to consider modifications to the conditions of release imposed on Mr. Manafort (and the co-defendant, Mr. Gates) regardless of whether the parties have reached agreement. Mr. Manafort advises the Court that an agreed-upon bail package has been reached with the OSC to release the Defendant from home confinement and GPS monitoring. The parties agree that the bail package set forth below satisfy the requirements of the Bail Reform Act.

II.    Proposed Conditions of Release

The Defendant will execute an agreement to forfeit four (4) separate real properties if there is a bail violation with a total estimated net value (*i.e.,* fair market value less encumbrances) of approximately $11.65 million. The OSC has agreed that the properties posted provide the reasonable assurance required under the Bail Reform Act. Liens will be placed on each property in favor of the Court to reasonably assure Mr. Manafort's appearance as required.   The real estate properties, and their estimated net asset values, are:

| | |
|---|---|
| Jobs Lane, Bridgehampton, NY: | $4.00 million |
| Baxter Street, New York, NY: | $3.70 million |
| St. James Drive, Palm Beach Gardens, FL: | $1.25 million |
| Fairfax Street, Alexandria, VA: | $2.70 million |

Three of these real properties are residences owned by Mr. Manafort and his wife, Kathleen.  The Baxter Street property is co-owned by Mr. Manafort, Mrs. Manafort, and their daughter, Andrea.   Documents establishing the ownership interests in these real properties, the estimated fair market value of the realty being pledged, and any encumbrances on the real estate (such as mortgages) have been previously provided to the OSC for review and are attached for the Court's consideration.  (*See* Attachments A through D).   Where property is held jointly with another person, that individual has agreed to execute the necessary forms to forfeit the property should Mr. Manafort not appear as required (including a waiver of the Florida homestead exemption).   Mr. Manafort and any joint owners also agree that they will not further encumber these properties, and Mr. Manafort will commit to keep current on any outstanding mortgages.

In addition, the Defendant has arranged for sureties on his appearance bond.  Mrs. Manafort has agreed to serve as a surety for the entire amount of the bond.  Mr. Manafort's daughter will serve as a surety with respect to the net asset value of the Baxter Street property for which she is a part-owner.  Immediate family members are therefore personally responsible for substantial payments to the Court should Mr. Manafort not appear as required and should the fair market value of the pledged properties fall below what has been documented.  These individuals have agreed to execute the required paperwork before the appropriate official upon the Court's approval of the modified conditions of release.  (*See* Attachments E, F, G and H).

The OSC has contended previously in its filings and in court that the Defendant's foreign travel poses a risk.  Accordingly, Mr. Manafort has agreed not to travel internationally and not to apply for international travel documents (*e.g.,* visas) while on release.  He has provided the OSC with all his passports.  Additionally, Mrs. Manafort has agreed to turn over her passport.  The parties acknowledge that attempting to travel internationally without the requisite documentation would be very difficult.

In terms of his domestic travel, the parties agree that Mr. Manafort will be restricted in travel to Florida (his state of residence and where he conducts business), Virginia (where he is currently subject to home confinement) and New York (where he maintains a residence and conducts business).  Travel to and from these locations to the District of Columbia, where the instant case is pending, is also permissible.  Travel within the United States to other jurisdictions (*e.g.,* for a potential business meeting) would be permissible only upon application to and approval by the Court.  Further, Mr. Manafort agrees to report on a regular basis to the District of Columbia Pretrial Services

Agency, he will provide the agency with a travel itinerary for domestic travel plans at least 24 hours in advance of such travel with the precise dates and times, and he will contact the Pretrial Services Agency upon departure and arrival and provide any other information otherwise required by the agency.  The parties agree that the implementation of these conditions of release, and any other standard release conditions that the Court may impose, will reasonably assure Mr. Manafort's appearance as required, and that his continued home detention in Alexandria, VA, and the attendant GPS monitoring should be terminated.

      III.    <u>Discussion</u>

The Bail Reform Act instructs the judicial officer to implement the "least restrictive" condition, or combination of conditions, that will reasonably assure the appearance of the person as required.  *See* 18 U.S.C. Section 3142(c)(1)(B).  In this regard, it is important to note that "Section 3142 speaks only of conditions that will "reasonably" assure appearance, not guarantee it."  *United States v. Xulum,* 84 F.3d 441, 443 (D.C. Cir. 1996) (per curiam).

In the case at bar, the parties have agreed that the above-identified proposed conditions of release will reasonably assure Mr. Manafort's appearance as required.  The OSC agrees that a package which includes "substantial financial conditions and travel restrictions, among others" would mitigate the perceived risk of flight.  (*See* Government's Memorandum in Support of Conditions of Release, Complex Case Designation and Notice of Intent to Use Certain Bank Records at 13).  Mr. Manafort's current home confinement to his Alexandria residence – set during his initial appearance in this case – was viewed as a short-term interim step by the parties as they continued to

work out agreed-upon conditions of release to recommend to the Court.  And, to be clear, GPS monitoring was never sought nor requested by either party.

At this point, the parties have agreed upon the substantial financial conditions, travel restrictions and other conditions to recommend to the Court relating to Mr. Manafort's pretrial release.  More particularly, the Defendant (and his immediate family) have agreed to forfeit approximately $11.65 million in real estate assets to the Court should Mr. Manafort not appear as required.  This amount is a substantial portion of the Defendant's assets accumulated over a lifetime of work and is $1.65 million more than the *unsecured* appearance bond currently in place.  These assets will not be further encumbered during the pendency of this case and a lien in favor of the Court will be placed on them while this matter is ongoing.  In addition, the Defendant's wife and daughter will serve as sureties on Mr. Manafort's appearance bond, as noted above, and they will be personally liable should Mr. Manafort not appear as required and if there is a diminution in the fair market value of the properties pledged.  Simply put, Mr. Manafort's family would face severe economic consequences if he were not to appear as required.

In addition to the substantial financial conditions, Mr. Manafort has also agreed with the OSC to significant travel restrictions.  First, he will not seek to travel internationally.  Although for some this might not seem consequential, it must be remembered that Mr. Manafort has been an international political consultant for many years.  He has substantial business and business contacts overseas, and this restriction will undoubtedly affect his ability to secure and retain work from abroad.  Second, he agrees to limit domestic travel to Florida, Virginia, New York and the District of

Columbia (where this case is pending).  If Mr. Manafort has business anywhere else in the United States, he must seek the Court's permission to travel to that location and obtain its approval.  Further, with respect to any permissible domestic travel, Mr. Manafort agrees to abide by any reporting requirements imposed by this Court or a Court-designated agency.

Both parties agree that these substantial financial conditions and travel restrictions, in addition to any other standard conditions of release that the Court may wish to impose, will reasonably assure the Defendant's appearance as required.  The termination of his home confinement in Alexandria, VA, and its attendant GPS monitoring (per Pretrial Services protocols), will permit Mr. Manafort to conduct his business and mount his defense of this case.

WHEREFORE, Defendant Manafort moves to modify his current conditions of release as outlined above.

Dated: November 28, 2017                          Respectfully submitted,

_____
Kevin M. Downing
(DC Bar # 1013984)
Thomas E. Zehnle
(DC Bar #415556)
815 Connecticut Avenue
Suite 730
Washington, DC 20006
(202) 754-1992