CO-936
Rev. 7/87

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

APPLICATION TO PLEDGE REAL PROPERTY TO SECURE RELEASE ON BOND

UNITED STATES OF AMERICA  )
                                 )
        v.           )     Criminal Number 17-201-01 (ABJ)
                                 )
Paul J. Manafort    )

1.  Name(s) of person(s) offering real property for appearance or surety bonds:

    Jesand, LLC and Andrea L. Manafort

2.  Address(es): 10 St. James Dr., Palm Beach Gardens, FL 33418 (Jesand)
    1046 N. Edgewood St., Arlington, VA 22201 (Andrea L. Manafort)

3.  Location of property offered (address and brief description of property):

    123 Baxter St., Unit 5D, NYC, NY - Condominium

4.  Person(s) and address(es) in whose name property is assessed:

    See above - item #1

5.  Mortgage, liens, encumbrances of any kind on such property and the interest held in such property by anyone other than the person(s) in whose name the property is assessed:

    Mortgage to Woodlawn, LLC dated Aug. 7, 2017

6.  Assessed value of property: $ 4,725,000.00

7.  Mortgage, liens, encumbrances or other interests (total)
    $ 1,025,000.00

(over)

8.   Net assessed value of property (line 6 less line 7):
     $ _3,700,000_ —

9.   Amount required for appearance or surety bonds:
     $ _3,700,000.00_ —

There must be attached to this form a certificate from the Assessor's Office of the District of Columbia, indicating the square and lot numbers, street address, current assessed value, and in whose name the property is assessed.

If the amount shown on line 8 (listed above) exceeds that shown on line 9, then the property, if qualified in all other respects, is adequate to secure the bond in question.

＊　＊　＊　＊　＊　＊　＊　＊

**AFFIDAVIT IN SUPPORT TO APPLICATION TO PLEDGE REAL PROPERTY TO SECURE RELEASE OF DEFENDANT ON BOND**

I declare under penalty of perjury that the information on this application is true and correct.

I also warrant under oath that, subsequent to the execution of deed of trust on the property described in this application to secure the release of:

_Paul J. Manafort_

and prior to recordation of said deed, no other deed of any kind will be executed by me or will this property be further encumbered in any way.

Witness my hand and seal _JESAND, LLC by Kathleen B. Manafort, Member_

Subscribed and sworn to before me this _____ day of _____,

19_____.

_Andrea L. Manafort_

_____

CLERK, U.S. DISTRICT COURT

RESOLUTION OF
JESAND, LLC


The Member and Manager of Jesand, LLC (the Company) having met and waived the requirement of notice, if any, do hereby resolve on this 13th day of November, 2017, as follows:

1. The Company, through its Member, be and is hereby authorized and entitled to pledge its assets as security for the pledge of bail for the benefit of Paul J. Manafort in his criminal proceeding before the United States District Court of the District of Columbia bearing Case No. 1:17-cr-0021.

2. The Company, through its Member, shall be entitle to enter into any agreement, understanding, deed of trust, securitization or otherwise to further advance the purpose of Paragraph 1, hereof without further meeting of the Membership or Management.


3. All prior acts of the Company are hereby ratified and incorporated herein.


4. No further business.


_____
Kathleen Manafort, Member/Manager

United States of America v. Paul Manafort
Crim No:17 -20101 (ABJ)

<u>Rider to Appilcation to Pledge Real Property to Secure Release on Bond</u>

5.      174 Jobs Lane, Bridgehampton N.Y.  has a mortgage to Federal Savings Bank
dated November 16, 2016 in the amount of $9,500,000.

        601 N. Fairfax Street, Alexandria, Va is encumbered by a deed  of trust to
Federal Savings Bank as collateral for the mortgage on 174 Jobs Lane.

        123 Baxter Street, New York, N.Y. has a mortgage to Woodlawn LLC dated
August 7, 2017 in the amount of $1,025,000.

10 St. James Drive, Palm Beach Gardens FL has no encumbrances.

6. Assessed Value:

| | |
|---|---|
| 174 Jobs Lane, Bridgehampton | $13,500,000 |
| 123 Baxter Street, New York | 4,725,000 |
| 601 N. Fairfax Street, Alexandria | 2,700,000 |
| 10 St. James Drive, Palm Beach Gardens | 1,250,000 |
| Total | $22,175,000 |

7. Mortgages, liens, encumbrances or other interest:      $10,525,000

8.Net assessed value:      $11,650,000

9.Amount required for appearance or surety:      $10,000,000

  Line 8 exceeds Line 9.

AO 100  (Rev. 06/09) Agreement to Forfeit Real Property to Obtain a Defendant's Release

# UNITED STATES DISTRICT COURT
## for the

United States of America )
v. )
Paul J. Manafort_____ )      Case No.    17-201-01 (ABJ)
    *Defendant* )
)

## AGREEMENT TO FORFEIT REAL PROPERTY TO OBTAIN A DEFENDANT'S RELEASE

To obtain the defendant's release, we jointly and severally agree to forfeit the following property to the United States of America if this defendant fails to appear as required for any court proceeding or for the service of any sentence imposed as may be noticed or ordered by any court considering this matter, or fails to comply with any conditions of release set by the court *(describe property and any claim, lien, mortgage, or other encumbrance on it)*:

123 Baxter Street, Unit 5D, New York, New York as more fully described in attached deed Mortgage to Woodlawn, LLC dated August 7, 2017. Amount: $1,025,000.00.

*Ownership.* We declare under penalty of perjury that we are this property's sole owners and that it is not subject to any claim, lien, mortgage, or other encumbrance except as disclosed above. We promise not to sell, mortgage, or otherwise encumber the property, or do anything to reduce its value while this agreement is in effect. We deposit with the court the following ownership documents, including any encumbrance documents *(list all documents and submit as attachments)*:

1. Deed dated October 18, 2007
2. Mortgage dated Aug. 7, 2017
3. Valuation

*Surety Information.* We understand that the court and the United States of America will rely on the surety information in approving this agreement.

*Conditions of Release.* We state that we have either read all court-ordered conditions of release imposed on the defendant or had them explained to us.

*Continuing Agreement.* Unless the court orders otherwise, this agreement remains in effect during any appeal or other review until the defendant has satisfied all court notices, orders, and conditions.

*Exoneration of Sureties.* This agreement is satisfied and ends if the defendant is exonerated on all charges or, if convicted, the defendant reports to serve any sentence imposed.

*Forfeiture.* If the defendant fails to obey all conditions of release, court notices, and orders to appear, the court will immediately order the property forfeited and on motion of the United States of America may order a judgment of forfeiture against the signing parties and their representatives, jointly and severally, including interest and costs.

AO 100  (Rev. 06/09) Agreement to Forfeit Real Property to Obtain a Defendant's Release

  I swear under penalty of perjury that the above information is true and agree to the conditions of this agreement.


Date: _____

City and state: _____

_____
*Defendant (if a property owner)*


Jesand, LLC by Kathleen B. Manafort

_____      _____
*Property owner's printed name*                              *Property owner's signature*

_____      _____
*Property owner's printed name*                              *Property owner's signature*

_____      _____
*Property owner's printed name*                              *Property owner's signature*


Sworn and signed before me.

*CLERK OF COURT*


Date: _____

_____
*Signature of Clerk or Deputy Clerk*


Agreement accepted.

*UNITED STATES OF AMERICA*


Date: _____

_____
*Assistant United States Attorney's signature*


Agreement approved.

Date: _____

_____
*Judge's signature*

# 123 Baxter Street, Unit 5D, NY, NY

# DEED

## UNIT DEED

THIS INDENTURE, made the 19 day of **October**, 2007 between Baxter Condo Sales LLC having an office at c/o Narczen LLC, 139-09 28th Road, Flushing, NY 11354 "Grantor" and **JESAND, LLC and Andrea L. Manafort**, residing at 123 Baxter Street, Unit **5D**, New York, New York 10013 "Grantee".

## W I T N E S S E T H:

That the Grantor, in consideration of Ten Dollars and other valuable consideration paid by the Grantee, does hereby grant and release unto the Grantee, the heirs or successors and assigns of the Grantee, forever:

The Condominium Unit known as Unit No. **5D** (hereinafter called the "Unit") in the Building known collectively as Baxter Street Condominium and 123 Baxter Street, Borough of Manhattan, City, County and State of New York, (the "Building") designated and described in the Declaration establishing a plan for condominium ownership of the Building and the land upon which the Building is situated (said Building and land referred to collectively herein as the "Property" or the "Condominium"), dated September 21, 2007, under the Condominium Act of the State of New York (Article 9-B of the Real Property Law of the State of New York), recorded in the Office of the Register of the City of New York, in the County of New York, on the 28th day of September, with a CRFN 2007000498520 (the "Declaration"). The Unit is also designated as Tax Lot No. **1122** in Block 206 of the Borough of Manhattan on the Tax Map of the Real Property Assessment Department of the City of New York and on the floor plans of the Buildings, certified by Hal Dorfman Architects, licensed professional architects, on Sept. 24, 2007, filed in the Register's Office of New York County on September 28, 2007.

The land on which the Building is located is described as follows:

ALL that certain lot, piece or parcel of land, with the buildings and improvements thereon erected, situate, lying and being in the Borough of Manhattan, City of New York, County of New York and known and designated as and by the street number 123 Baxter Street, Borough of Manhattan, New York, New York, being more particularly bounded and described as follows:

BEGINNING at a point formed by the intersection of the southerly side of Hester Street and the easterly side of Baxter Street;

THENCE southerly along the said easterly side of Baxter Street at an interior angle of 90 degrees 59 minutes 40 seconds at distance of 125 feet 4½ inches;

THENCE easterly from said point on the easterly side of Baxter Street at an interior angle of 88 degrees 53 minutes 20 seconds a distance of 100 feet 4½ inches to a point;

THENCE northerly from said point at an interior angle of 91 degrees 00 minutes 10 seconds a distance of 25 feet 2 inches;

THENCE westerly at an interior angle of 89 degrees 06 minutes 20 seconds a distance of 25 feet 4 inches;

THENCE northerly at an interior angle of 91 degrees 02 minutes 30 seconds a distance of 100 feet 0 inches to the southerly side of Hester Street;

THENCE westerly along the southerly side of Hester Street at an interior angle of 88 degrees 57 minutes 30 seconds a distance of 75 feet 1 inch to the easterly side of Baxter Street the point or place of BEGINNING.

## PARCEL A

ALL THAT CERTAIN plot, piece or parcel of land, with the buildings and improvements thereon erected, situate, lying and being in the Borough of Manhattan, City, County and State of New York, being distinguished on a Map of Bayard East Farm filed in the Office of the Secretary of State by the Lot number 494 and by the same number on a Map of Lands of the City of New York, belonging to the Estate of Stephen Van Renselaer, deceased, filed in the Office of the Register of the County of New York, which said plot is bounded and described as follows:

BEGINNING at a point on the easterly side of Baxter Street, distant 100 feet southerly from Hester Street;

RUNNING THENCE easterly 100 feet 8 inches;

THENCE southerly in the rear 25 feet;

THENCE westerly 100 feet 8 inches to Baxter Street;

THENCE northerly along the easterly side of Baxter Street 25 feet 2 inches to the point or place of BEGINNING.

## PARCEL B

ALL THE CERTAIN plot, piece or parcel of land, with the buildings and improvements thereon erected, situate, lying and being in the Borough of Manhattan, City, County and State of New York, bounded and described as follows:

BEGINNING at the corner formed by the intersection of the easterly side of Baxter Street and the southerly side of Hester Street;

THENCE southerly along the easterly side of Baxter Street, one hundred feet;

THENCE easterly parallel, or nearly so, with the southerly side of Hester Street, 75 feet;

THENCE northerly parallel, or nearly so, with Baxter Street, one hundred feet more or less to the southerly side of Hester Street;

THENCE westerly along the same 75 feet 1 inch, more or less, to the point or place of BEGINNING.

TOGETHER with an undivided **4.65%** interest in the Common Elements (as such term is defined in the Declaration) appurtenant to the Unit (hereinafter called the "Common Elements");

SUBJECT to an easement in common with all other Unit Owners to use, install, operate, maintain, repair, alter, rebuild, restore and replace the Common Elements, and any pipes, wires, ducts, vents, cables, conduits, or other lines, equipment or facilities forming a part of or related to such Common Elements, located in, over, through, under or upon the Unit, other Units, the Common Elements, or other parts of the Property, provided that access to any Unit or the Common Elements in furtherance of such easement shall be exercised in such a manner as will not unreasonably interfere with the use thereof for dwelling, home occupation, or other lawful purposes;

SUBJECT to the rights, obligations, easements, restrictions and all other terms, covenants, conditions and provisions of the Declaration and By-Laws and Floor Plans filed therewith, as the same may be amended from time to time by instruments recorded or filed in the Office of the Register of the City of New York, in the County and State of New York, all of which, together with any amendments thereto, shall constitute covenants running with the land and shall bind any person having at any time any interest or estate in the Unit, as though recited and stipulated at length herein;

SUBJECT to covenants, restrictions and declarations recorded in the office of the Register of the City of New York, County of New York.

SUBJECT also to easements in favor of other Units and in favor of the Common Elements for the continuance of all encroachments of such other Units or Common Elements on the Unit, now or hereafter existing as a result of the repair or restoration of the Building (or any portion thereof) or of any other Unit or of the Common Elements, after damage or destruction by fire or casualty or after taking in condemnation or eminent domain proceedings, or by reason of an alteration or repair to the Common Elements made by or with the consent of the Condominium Board or by the Grantor, or its designee and its respective successors, and assigns, or any Unit Owner in accordance with the Declaration and the By-Laws so that any such encroachments may remain so long as the Building shall stand;

SUBJECT also to an easement in favor of other Units to use, install, operate, maintain, repair, alter, rebuild, restore and replace such other Units and any pipes, wires, ducts, vents, cables, conduits, flues, or other lines, equipment or facilities forming a part of or related to such other Units located in, over, through, under or upon the Unit, other Units, the Common Elements or other parts of the Property, provided that access to any Unit or the Common Elements in furtherance of such easement shall be exercised in such a manner as will not unreasonably interfere with the use thereof for dwelling, home occupation, or other lawful purposes;

SUBJECT also to existing easements and the right reserved in the Declaration to establish, grant and create additional utility easements, in favor of any utility company for construction, use, maintenance, repair and replacements of all utility lines, wires, terminal boxes, mains, pipes, cables, conduits and other equipment and facilities in, under, over and across the Property;

SUBJECT also to such other liens, agreements, covenants, easements, restrictions and other matters of record as pertain to the Unit and/or the Property.

SUBJECT to any state of facts an accurate survey and inspection of the Unit would show;

TO HAVE AND TO HOLD the same unto the Grantee, and the heirs or successors and assigns of the Grantee, forever.

The use for which the Unit is intended is that of a **one-family residence**, subject to restrictions set forth in the Declaration, By-Laws and applicable law.

The Grantor covenants that the Grantor has not done or suffered anything whereby the Unit has been encumbered in any way whatsoever, except as aforesaid.

The Grantor, in compliance with Section 13 of the Lien Law, covenants that the Grantor will receive the consideration for this conveyance and will hold the right to receive such consideration as a trust fund for the purpose of paying the cost of the improvement and will apply the same first to the payment of the cost of the improvement before using any part of the same for any other purpose.

The Grantee accepts and ratifies the provisions of the Declaration and the By-Laws of the Condominium recorded simultaneously with and as part of the Declaration and agrees to comply with all the terms and provisions thereof, as the same may be amended from time to time by instruments recorded in the Office of the New York City Register, County of New York, and to comply with the rules and regulations of the Condominium.

The terms "Grantor" and "Grantee" shall be read as "Grantors" and "Grantees" whenever the sense of this deed so requires.

IN WITNESS WHEREOF, the Grantor and the Grantee have duly executed this deed the day and year first above written.

GRANTOR:                                          GRANTEE:

Baxter Condo Sales LLC                            JESAND, LLC
By: Narczen, LLC, Manager

                                                  By:
                                                        Kathleen B. Manafort

By:
      , Member/Manager                            Andrea L. Manafort

# 123 Baxter Street, Unit 5D, NY, NY

# MORTGAGE

14

FN-13390-NY
New York

BlK: 206
Lot: 1122
Unit: 5D

When recorded, return to:

Title Order No.: FN-13390-NY

_____ [Space Above This Line For Recording Data] _____

# MORTGAGE

A       Borrower has executed a Promissory Note in connection herewith and made payable to the order of
        Lender in an amount of One Million Twenty Five Thousand Dollars ($1,025,000.00), plus interest at the
        rate provided therein (the "Note").  Additionally, Andrea Manafort, as co-owner, has executed this
        Mortgage for the purposes of providing Lender with a first Mortgage position.

C       Borrower desires to secure the prompt payment of the indebtedness and interest evidenced by the Note,
        and the due, prompt and complete observance, performance and discharge of each and every obligation,
        covenant and agreement set forth in the Note, in this Mortgage, and in any other Loan Documents (as
        hereinafter defined).  For purposes of this Mortgage, the Note and any documents executed or delivered in
        connection with the Note are referred to collectively herein as the "Loan Documents;" provided, however,
        any environmental indemnity or environmental indemnity agreement, executed by Borrower or any other
        persons in connection with the Loan, shall in no event constitute a Loan Document for purposes of this
        Mortgage.

# MORTGAGE

**WORDS USED OFTEN IN THIS DOCUMENT**
**(A)  "Security Instrument."** This document, which is dated   August 7, 2017,                together with all Riders to this
document, will be called the "Security Instrument."
**(B)  "Borrower."**   Jesand, LLC.  For purposes of this mortgage, Andrea Manafort shall also be termed "Borrower" although
                she shall not be indebted on the Note and executes this document in order to provide security and collateral
                for the loan.

whose address is

        **C/O BRUCE E. BALDINGER, ESQ., 365 South Street, Morristown, NJ 07960,**
sometimes will be called "Borrower" and sometimes simply "I" or "me."
**(C)  "Lender"** is Woodlawn, LLC.  Lender is an individual with an address of _123 W. Nye Lane, Ste 129, Carson City,
Nevada 89706.  Lender is the mortgagee under this Security Instrument.

**(D)  "Note."** The note signed by Borrower and dated   August 7, 2017                will be called the "Note." The Note

shows that I owe Lender **ONE MILLION AND TWENTY FIVE THOUSAND 00/100 Dollars** \*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*(U.S. **$1,025,000.00)** plus interest and other amounts that may be payable. I have promised to pay this debt in Periodic Payments and to pay the debt in full by  December 31, 2017 **unless otherwise extended In writing.**

**(E)     "Property."** The property that is described below in the section titled "Description of the Property," will be called the "Property."

**(F)   "Loan."** The "Loan" means the debt evidenced by the Note, plus interest, late charges due under the Note, and all sums due under this Security Instrument, plus interest.

**(G) "Sums Secured."** The amounts described  above under the "Note" Section. sometimes will be called the "Sums Secured."

**( I ) "Riders."** All Riders attached to this Security Instrument that are signed by Borrower will be called "Riders." The following Riders are to be signed by Borrower [check box as applicable]:

☐ Adjustable Rate Rider     ☒ Condominium Rider     ☐ Second Home Rider
☐

**(J)     "Applicable Law."** All controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable, judicial opinions will be called "Applicable Law."

**(K) "Community Association Dues, Fees, and Assessments."** All dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization will be called "Community Association Dues, Fees, and Assessments."

**(L)   "Electronic Funds Transfer."** "Electronic Funds Transfer" means any transfer of money, other than by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Some common examples of an Electronic Funds Transfer are point-of-sale transfers (where a card such as an asset or debit card is used at a merchant), automated teller machine (or ATM) transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

**(M) "Escrow Items."** Those items that are described in Section 3 will be called "Escrow Items."

**(N) "Miscellaneous Proceeds."** "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid by any third party (other than Insurance Proceeds as defined in, and paid under the coverage described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) Condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of Condemnation or sale to avoid Condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property. A taking of the Property by any governmental authority by eminent domain is known as "Condemnation."

**(O) "Mortgage Insurance."** "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on, the Loan.

**(P) "Periodic Payment."** The regularly scheduled amount due for (i) principal and interest under the Note, and (ii) any amounts under Section 3 will be called "Periodic Payment."

**(Q) "RESPA."** "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. §2601 et seq.) and its implementing regulation, Regulation X (12 C.F.R. Part 1024), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

**(R) "Secretary"** means the Secretary of the United States Department of Housing and Urban Development or his designee.

**(S)    "Deposit Account Agreement"** shall mean that certain Deposit Account and Security Agreement [Borrower's Funds Account] of even date herewith, providing Lender with a first lien security interest in the Borrower's Funds Account and the **"Pledged Funds"** (as defined in the Deposit Account Agreement [Borrower's Funds Account]) deposited therein.

**DESCRIPTION OF THE PROPERTY**
I give  Lender and Lender's successors and assigns rights in the Property described in (A) through (G) below:

(A)  The Property which is located at   **123 Baxter Street, Unit 5D, New York**
[Street] [City, Town or Village]

New York
[Zip Code]

This Property is in   New York                                  County. It has the following legal description:
**SEE LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART HEREOF AS "EXHIBIT A".
APN #:  Block: 206 Lot: 1122**

(B) All buildings and other improvements that are located on the Property described in subsection (A) of this section;
(C) All rights in other property that I have as owner of the Property described in subsection (A) of this section. These rights are known as "easements and appurtenances attached to the Property;"
(D) All rights that I have in the land which lies in the streets or roads in front of, or next to, the Property described in subsection (A) of this section;
(E) All fixtures that are now or in the future will be on the Property described in subsections (A) and (B) of this section;
(F) All of the rights and property described in subsections (B) through (E) of this section that I acquire in the future; and
(G) All replacements of or additions to the Property described in subsections (B) through (F) of this section and all Insurance Proceeds for loss or damage to, and all Miscellaneous Proceeds of the Property described in subsections (A) though (F) of this section.

**BORROWER'S RIGHT TO MORTGAGE THE PROPERTY AND BORROWER'S OBLIGATION TO DEFEND OWNER-SHIP OF THE PROPERTY**
I promise that: (A) I lawfully own the Property; (B) I have the right to mortgage, grant and convey the Property to Lender; and (C) there are no outstanding claims or charges against the Property, except for those which are of public record.

I give a general warranty of title to Lender. This means that I will be fully responsible for any losses which Lender suffers because someone other than myself has some of the rights in the Property which I promise that I have. I promise that I will defend my ownership of the Property against any claims of such rights.

**PLAIN LANGUAGE SECURITY INSTRUMENT**
This Security Instrument contains promises and agreements that are used in real property security instruments all over the country. It also contains other promises and agreements that vary in different parts of the country. My promises and agreements are stated in "plain language."

**COVENANTS**
I promise and I agree with Lender as follows:

1.    **Borrower's Promise to Pay.** I will pay to Lender on time principal and interest due under the Note and late charges and other amounts due under the Note. I will also timely pay all expenses, taxes, insurance and other obligations due in respect of the Property. Payments due under the Note and this Security Instrument shall be made in U.S. currency. If any of my payments by check or other payment instrument is returned to Lender unpaid, Lender may require my payment be made by: (a) cash;
(b) money order; (c) certified check, bank check, treasurer's check or cashier's check, drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.
     Payments are deemed received by Lender when received at the location required in the Note, or at another location designated by Lender under Section 14 of this Security Instrument. Lender may return or accept any payment or partial payment if it is for an amount that is less than the amount that is then due. If Lender accepts a lesser payment, Lender may refuse to accept a lesser payment that I may make in the future and does not waive any of its rights. Lender is not obligated to apply such lesser payments when it accepts payments. If interest on principal accrues as if all Periodic Payments had been paid when due, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until I make payments to bring the Loan current. If I do not do so within a reasonable period of time, Lender will either apply such funds or return them to me. In the event of foreclosure, any unapplied funds will be applied to the outstanding principal balance immediately prior to foreclosure. No offset or claim which I might have now or in the future against Lender will relieve me from making payments due under the Note and this Security Instrument or keeping all of my other promises and agreements secured by this Security Instrument.
2.    **Application of Borrower's Payments and Insurance Proceeds.** Unless Applicable Law or this Section 2 requires otherwise, Lender will apply each of my payments that Lender accepts in the following order:
     First, to interest due under the Note; Second, to late charges due under the Note, and Third, to the principal of the Note.
     If Lender receives a payment from me for a late Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the late Periodic Payment and the late charge. If more than one Periodic Payment is due, Lender may apply any payment received from me: First, to the repayment of the Periodic Payments that are due if, and to the extent that, each payment can be paid in full; Next, to the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due.
     Any application of payments, Insurance Proceeds, or Miscellaneous Proceeds to principal due under the Note will not extend or postpone the due date of the Periodic Payments or change the amount of those payments.
3.    **Intentionally Omitted.**

4.    **Borrower's Obligation to Pay Charges, Assessments And Claims.** I will pay all taxes, assessments, water charges, sewer rents and other similar charges, and any other charges and fines that may be imposed on the Property and that may be superior to this Security Instrument. I will also make ground rents or payments due under my lease if I am a tenant on the Property and Community Association Dues, Fees, and Assessments (if any) due on the Property. If these items are Escrow Items, I will do this by making the payments as described in Section 3 of this Security Instrument. In this Security Instrument, the word "Person" means any individual, organization, governmental authority or other party. I will promptly pay or satisfy all Liens against the Property that may be superior to this Security Instrument prior to disbursement of the Note proceeds by Lender.
5.    **Borrower's Obligation to Maintain Hazard Insurance or Property Insurance.** I will obtain hazard or property insurance to cover all buildings and other improvements that now are, or in the future will be, located on the Property. The insurance will cover loss or damage caused by fire, hazards normally covered by "Extended Coverage" hazard insurance policies, and any other hazards for which Lender requires coverage, including, but not limited to earthquakes and floods. The insurance will be in the amounts (including, but not limited to, deductible levels) and for the periods of time required by Lender. What Lender requires under the last sentence can change during the term of the Loan. I may choose the insurance company, but my choice is subject to Lender's right to disapprove. Lender may not

disapprove my choice unless the disap- proval is reasonable. Lender may require me to pay either (a) a one-time charge for food zone determination, certification and tracking services, or (b) a one-time charge for food zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect the food zone determination or certification. If I disagree with the food zone determination, I may request the Federal Emergency Management Agency to review the food zone determination and I promise to pay any fees charged by the Federal Emergency Management Agency for its review.

If I fail to maintain any of the insurance coverages described above, Lender may obtain insurance coverage, at Lender's option and my expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage will cover Lender, but might or might not protect me, my equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. I acknowledge that the cost of the insurance coverage so obtained might significantly exceed the cost of insur- ance that I could have obtained. Any amounts disbursed by Lender under this Section 5 will become my additional debt secured by this Security Instrument. These amounts will bear interest at the interest rate set forth in the Note from the date of disbursement and will be payable with such interest, upon notice from Lender to me requesting payment.

All of the insurance policies and renewals of those policies will include what is known as a "Standard Mortgage Clause" to protect Lender and will name Lender as mortgagee and/or as an additional loss payee. The form of all policies and renewals will be acceptable to Lender. Lender will have the right to hold the policies and renewal certificates. If Lender requires, I will promptly give Lender all receipts of paid premiums and renewal notices that I receive.

If I obtain any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy will include a Standard Mortgage Clause and will name Lender as mortgagee and/or as an additional loss payee.

If there is a loss or damage to the Property, I will promptly notify the insurance company and Lender. If I do not promptly prove to the insurance company that the loss or damage occurred, then Lender may do so.

The amount paid by the insurance company for loss or damage to the Property is called "Insurance Proceeds." Unless Lender and I otherwise agree in writing, any Insurance Proceeds, whether or not the underlying insurance was required by Lender, will be used to repair or to restore the damaged Property unless: (a) it is not economically feasible to make the repairs or restoration; (b) the use of the Insurance Proceeds for that purpose would lessen the protection given to Lender by this Security Instrument; or (c) Lender and I have agreed in writing not to use the Insurance Proceeds for that purpose. During the period that any repairs or restorations are being made, Lender may hold any Insurance Proceeds until it has had an opportunity to inspect the Property to verify that the repair work has been completed to Lender's satisfaction. However, this inspection will be done promptly. Lender may make payments for the repairs and restorations in a single payment or in a series of progress payments as the work is completed. Unless Lender and I agree otherwise in writing or unless Appli- cable Law requires otherwise, Lender is not required to pay me any interest or earnings on the Insurance Proceeds. I will pay for any public adjusters or other third parties that I hire, and their fees will not be paid out of the Insurance Proceeds. If the repair or restoration is not economically feasible or if it would lessen Lender's protection under this Security Instrument, then the Insurance Proceeds will be used to reduce the amount that I owe to Lender under this Security Instrument. Such Insurance Proceeds will be applied in the order provided for in Section 2. If any of the Insurance Proceeds remain after the amount that I owe to Lender has been paid in full, the remaining Insurance Proceeds will be paid to me.

If I abandon the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If I do not answer, within 30 days, a notice from Lender stating that the insurance company has offered to settle a claim, Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 24 of this Security Instrument or otherwise, I give Lender my rights to any Insurance Proceeds in an amount not greater than the amounts unpaid under the Note and this Security Instrument. I also give Lender any other of my rights (other than the right to any refund of unearned premiums that I paid) under all insurance policies covering the Property, if the rights are applicable to the coverage of the Property. Lender may use the Insurance Proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

**6.     Borrower's Obligations to Occupy The Property.** I will occupy the Property and use the Property as my principal residence within 60 days after I sign this Security Instrument. I will continue to occupy the Property and to use the Property as my principal residence for at least one year. The one-year period will begin when I first occupy the Property. However, I will not have to occupy the Property and use the Property as my principal residence within the time frames set forth above if Lender agrees in writing that I do not have to do so. I also will not have to occupy the Property and use the Property as my principal residence within the time frames set forth above if extenuating circumstances exist which are beyond my control.

**7.     Borrower's Obligations to Maintain And Protect The Property And to Fulfill Any Lease Obligations.**

**(a)   Maintenance and Protection of the Property.** I will not destroy, damage or harm the Property, and I will not allow the Property to deteriorate. Whether or not I am residing in the Property, I will keep the Property in good repair so that it will not deteriorate or decrease in value due to its condition. Unless it is determined under Section 5 of this Security Instrument that repair is not economically feasible, I will promptly repair the Property if damaged to avoid further deteriora- tion or damage. If insurance or Condemnation (as defined in the definition of Miscellaneous Proceeds) proceeds are paid because of loss or damage to, or Condemnation of, the Property, I will repair or restore the Property only if Lender has released those proceeds for such purposes. Lender may pay for the repairs and restoration out of proceeds in a single payment or in a series of progress payments as the work is completed. If the insurance or Condemnation proceeds are not sufficient to repair or restore the Property, I promise to pay for the completion of such repair or restoration.

If condemnation proceeds are paid in connection with the taking of the property, Lender shall apply such proceeds to the reduction of the indebtedness under the Note and this Security Instrument, first to any delinquent amounts, and then to payment of principal. Any application of the proceeds to the principal shall not extend or postpone the due date of the monthly payments or change the amount of such payments.

**(b)   Lender's Inspection of Property.** Lender, and others authorized by Lender, may enter on and inspect the Prop- erty. They will do so in a reasonable manner and at reasonable times. If it has a reasonable purpose, Lender may inspect the inside of the home or other improvements on the Property. Before or at the time an inspection is made, Lender will give me notice stating a reasonable purpose for such interior inspection.

**8.     Borrower's Loan Application.** If, during the application process for the Loan, I, or any Person or entity acting at my direction or with my knowledge or consent, made false, misleading, or inaccurate statements to Lender about infor- mation important to Lender in determining my eligibility for the Loan (or did not provide Lender with

such information), Lender will treat my actions as a default under this Security Instrument. False, misleading, or inaccurate statements about information important to Lender would include a misrepresentation of my intention to occupy the Property as a principal residence. This is just one example of a false, misleading, or inaccurate statement of important information.

**9.   Lender's Right to Protect Its Rights In The Property.** If: (a) I do not keep my promises and agreements made in this Security Instrument; (b) someone, including me, begins a legal proceeding that may significantly affect Lender's interest in the Property or rights under this Security Instrument (such as a legal proceeding in bankruptcy, in probate, for

Condemnation or Forfeiture (as defined in Section 10), proceedings which could give a Person rights which could equal or exceed Lender's interest in the Property or under this Security Instrument, proceedings for enforcement of a Lien which may become superior to this Security Instrument, or to enforce laws or regulations); or (c) I have abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and Lender's rights under this Security Instrument.

Lender's actions may include, but are not limited to: (a) protecting and/or assessing the value of the Property; (b) securing and/or repairing the Property; (c) paying sums to eliminate any Lien against the Property that may be equal or superior to this Security Instrument; (d) appearing in court; and (e) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Lender can also enter the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, have utilities turned on or off, and take any other action to secure the Property. Although Lender may take action under this Section 9, Lender does not have to do so and is under no duty to do so. I agree that Lender will not be liable for not taking any or all actions under this Section 9.

I will pay to Lender any amounts, with interest, which Lender spends under this Section 9. I will pay those amounts to Lender when Lender sends me a notice requesting that I do so. I will pay interest on those amounts at the interest rate set forth in the Note. Interest on each amount will begin on the date that the amount is spent by Lender. This Security Instrument will protect Lender in case I do not keep this promise to pay those amounts with interest.

If I do not own, but am a tenant on the Property, I will fulfill all my obligations under my lease. I also agree that, if I acquire the full title (sometimes called "Fee Title") to the Property, my lease interest and the Fee Title will not merge unless Lender agrees to the merger in writing.

**10.   Agreements About Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are assigned to and will be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds will be applied to restoration or repair of the Property, if (a) the restoration or repair is economically feasible, and (b) Lender's security given in this Security Instrument is not lessened. During such repair and restoration period, Lender will have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect the Property to verify that the work has been completed to Lender's satisfaction. However, the inspection will be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless Lender and I agree otherwise in writing or unless Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender will not be required to pay Borrower any interest or earnings on the Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security given in this Security Instrument would be lessened, the Miscellaneous Proceeds will be applied to the Sums Secured, whether or not then due. The excess, if any, will be paid to me. Such Miscellaneous Proceeds will be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds will be applied to the Sums Secured, whether or not then due. The excess, if any, will be paid to me.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the Sums Secured immediately before the partial taking, destruction, or loss in value, the Sums Secured will be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the Sums Secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to me.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the Sums Secured immediately before the partial taking, destruction, or loss in value, the Miscellaneous Proceeds will be applied to the Sums Secured whether or not the sums are then due.

If I abandon the Property, or if, after Lender sends me notice that the Opposing Party (as defined in the next sentence) offered to make an award to settle a claim for damages, I fail to respond to Lender within 30 days after the date Lender gives notice, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the Sums Secured, whether or not then due. "Opposing Party" means the third party that owes me Miscellaneous Proceeds or the party against whom I have a right of action in regard to Miscellaneous Proceeds.

I will be in default under this Security Instrument if any civil or criminal action or proceeding that Lender determines could result in a court ruling (a) that would require Forfeiture of the Property, or (b) that could damage Lender's interest in the Property or rights under this Security Instrument. "Forfeiture" is a court action to require the Property, or any part of the Property, to be given up. I may correct the default by obtaining a court ruling that dismisses the court action, if Lender determines that this court ruling prevents Forfeiture of the Property and also prevents any damage to Lender's interest in the Property or rights under this Security Instrument. If I correct the default, I will have the right to have enforcement of this Security Instrument discontinued, as provided in Section 19 of this Security Instrument, even if Lender has required Immediate Payment in Full (as defined in Section 24). The proceeds of any award or claim for damages that are attributable to the damage or reduction of Lender's interest in the Property are assigned, and will be paid, to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property will be applied in the order provided for in Section 2.

**11. Continuation of Borrower's Obligations And of Lender's Rights.**

**(a) Borrower's Obligations. Intentionally Omitted.**

**(b) Lender's Rights.** Even if Lender does not exercise or enforce any right of Lender under this Security Instrument or under Applicable Law, Lender will still have all of those rights and may exercise and enforce them in the future. Even if: (1) Lender obtains insurance, pays taxes, or pays other claims, charges or Liens against the Property; (2) Lender accepts

payments from third Persons; or (3) Lender accepts payments in amounts less than the amount then due, Lender will have the right under Section 24 below to demand that I make Immediate Payment in Full of any amounts remaining due and payable to Lender under the Note and under this Security Instrument.

**12.    Obligations of Borrower And of Persons Taking Over Borrower's Rights or Obligations.** If more than one Person signs this Security Instrument as Borrower, each of us is fully obligated to keep all of Borrower's promises and obligations contained in this Security Instrument. Lender may enforce Lender's rights under this Security Instrument against each of us individually or against all of us together. This means that any one of us may be required to pay all of the Sums Secured. However, if one of us does not sign the Note: (a) that Person is signing this Security Instrument only to give that Person's rights in the Property to Lender under the terms of this Security Instrument; (b) that Person is not personally obligated to pay the Sums Secured; and (c) that Person agrees that Lender may agree with the other Borrowers to delay enforcing any of Lender's rights, to modify, or make any accommodations with reard to the terms of this Security Instrument or the Note without that Person's consent.

Any Person who takes over my rights or obligations under this Security Instrument in writing, and is approved by Lender in writing, will have all of my rights and will be obligated to keep all of my promises and agreements made in this Security Instrument. Borrower will not be released from Borrower's obligations and liabilities under this Security Instrument unless Lender agrees to such release in writing. Any Person who takes over Lender's rights or obligations under this Security Instrument will have all of Lender's rights and will be obligated to keep all of Lender's promises and agreements made in this Security Instrument except as provided under Section 19.

**13.    Loan Charges.** Lender may charge me fees for services performed in connection with my default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. Lender may collect fees and charges authorized by the Secretary. Lender may not charge fees that are prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to Applicable Law which sets maximum loan charges, and that Applicable Law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed permitted limits: (a) any such loan charge will be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment with no changes in the due date or in the monthly payment amount unless the Note holder agrees in writing to those changes. If I accept such a refund that is paid directly to me, I will waive any right to bring a lawsuit against Lender because of the overcharge.

**14.    Notices Required under this Security Instrument.** All notices given by me or Lender in connection with this Security Instrument will be in writing. Any notice to me in connection with this Security Instrument is considered given to me when mailed by first class mail or when actually delivered to my notice address if sent by other means. Notice to any one Borrower will be notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address is the address of the Property unless I give notice to Lender of a different address. I will promptly notify Lender of my change of address. If Lender specifies a procedure for reporting my change of address, then I will only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender will be given by delivering it or by mailing it by first class mail to Lender's address stated on the first page of this Security Instrument unless Lender has given me notice of another address. Any notice in connection with this Security Instrument is given to Lender when it is actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**15.    Law That Governs this Security Instrument; Word Usage.** This Security Instrument is governed by federal law and the law of New York State. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might allow the parties to agree by contract or it might be silent, but such silence does not mean that Lender and I cannot agree by contract. If any term of this Security Instrument or of the Note conflicts with Applicable Law, the conflict will not affect other provisions of this Security Instrument or the Note which can operate, or be given effect, without the conflicting provision. This means that the Security Instrument or the Note will remain as if the conflicting provision did not exist.

As used in this Security Instrument: (a) words of the masculine gender mean and include corresponding words of the feminine and neuter genders; (b) words in the singular mean and include the plural, and words in the plural mean and include the singular; and (c) the word "may" gives sole discretion without any obligation to take any action.

**16. Borrower's Copy.** I will be given one copy of the Note and of this Security Instrument.

**17.** Intentionally omitted

**18. Note Holder's Right to Sell the Note or an Interest in the Note; Borrower's Right to Notice of Change of Loan Servicer; Lender's and Borrower's Right to Notice of Grievance.** The Note, or an interest in the Note, together with this Security Instrument, may be sold one or more times. I might not receive any prior notice of these sales.

The entity that collects the Periodic Payments and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law is called the "Loan Servicer." There may be a change of the Loan Servicer as a result of the sale of the Note. There also may be one or more changes of the Loan Servicer unrelated to a sale of the Note. Applicable Law requires that I be given written notice of any change of the Loan Servicer. The notice will state the name and address of the new Loan Servicer, and also tell me the address to which I should make my payments. The notice also will contain any other information required by RESPA or Applicable Law. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to me will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither I nor Lender may commence, join, or be joined to any court action (as either an individual party or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other has not fulfilled any of its obligations under this Security Instrument, unless the other is notified (in the manner required under Section 14 of this Security Instrument) of the unfulfilled obligation and given a reasonable time period to take corrective action. If Applicable Law provides a time period which will elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to me under Section 24 and the notice of the demand for payment in full given to me under Section 24 will be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 19. All rights under this paragraph are subject

to Applicable Law.

**19.    Borrower Not Third-Party Beneficiary to Contract of Insurance.** Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if I do not repay the Loan as agreed. I acknowledge and agree that I am not a third party beneficiary to the contract of insurance between the Secretary and Lender, nor am I entitled to enforce any agreement between Lender and the Secretary, unless explicitly authorized to do so by Applicable Law.

**20.    Continuation of Borrower's Obligations to Maintain and Protect the Property.** The federal laws and the laws of New York State that relate to health, safety or environmental protection are called "Environmental Law." Environmental Law classifies certain substances as toxic or hazardous. There are other substances that are considered hazardous for purposes of this Section 21. These substances are gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. The substances defined as toxic or hazardous by Environmental Law and the substances considered hazardous for purposes of this Section 21 are called "Hazardous Substances." "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law. An "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

I will not do anything affecting the Property that violates Environmental Law, and I will not allow anyone else to do so. I will not cause or permit Hazardous Substances to be present on the Property. I will not use or store Hazardous Substances on the Property. I also will not dispose of Hazardous Substances on the Property, or release any Hazardous Substance on the Property, and I will not allow anyone else to do so. I also will not do, nor allow anyone else to do, anything affecting the Property that: (a) is in violation of any Environmental Law; (b) creates an Environmental Condition; or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The promises in this paragraph do not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized as appropriate for normal residential use and maintenance of the Property (including, but not limited to, Hazardous Substances in consumer products). I may use or store these small quantities on the Property. In addition, unless Environmental Law requires removal or other action, the buildings, the improvements and the fixtures on the Property are permitted to contain asbestos and asbestos-containing materials if the asbestos and asbestos-containing materials are undisturbed and "non-friable" (that is, not easily crumbled by hand pressure).

I will promptly give Lender written notice of: (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which I have actual knowledge; (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance; and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If I learn, or any governmental or regulatory authority, or any private party, notifies me that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, I will promptly take all necessary remedial actions in accordance with Environmental Law.

Nothing in this Security Instrument creates an obligation on Lender for an Environmental Cleanup.

**21. Grounds for Acceleration of Debt.**

**(a) Default.** Lender may, except as limited by regulations issued by the Secretary, in the case of payment defaults, require immediate payment in full of all sums secured by this Security Instrument if: I default by failing to pay in full any monthly payment required by this Security Instrument within the cure period set forth in the Note, a material adverse change happens with respect to the Property, the Makers of the Note or Guarantor of the Note obligation

**(b) No Waiver.** If circumstances occur that would permit Lender to require immediate payment in full, but Lender does not require such payments, Lender does not waive its rights with respect to subsequent events.

**(c) Regulations of HUD Secretary.** In many circumstances regulations issued by the Secretary will limit Lender's rights, in the case of payment defaults, to require immediate payment in full and foreclose if not paid. This Security Instrument does not authorize acceleration or foreclosure if not permitted by regulations of the Secretary.

**NON-UNIFORM COVENANTS**

I also promise and agree with Lender as follows:

**22. Assignment of Rents.** I unconditionally assign and transfer to Lender all the rents and revenues of the Property. I authorize Lender or Lender's agents to collect the rents and revenues and hereby direct each tenant of the Property to pay the rents to Lender or Lender's agents. However, prior to Lender's notice to me of my breach of any covenant or agreement in the Security Instrument, I shall collect and receive all rents and revenues of the Property as trustee for the benefit of Lender and me. This assignment of rents constitutes an absolute assignment and not an assignment for additional security only.

If Lender gives notice of breach to me: (a) all rents received by me shall be held by me as trustee for benefit of Lender only, to be applied to the sums secured by the Security Instrument; (b) Lender shall be entitled to collect and receive all of the rents of the Property; and (c) each tenant of the Property shall pay all rents due and unpaid to Lender or Lender's agent on Lender's written demand to the tenant.

I have not executed any prior assignment of the rents and have not and will not perform any act that would prevent Lender from exercising its rights under this Section 23.

Lender shall not be required to enter upon, take control of or maintain the Property before or after giving notice of breach to me. However, Lender or a judicially appointed receiver may do so at any time there is a breach. Any application of rents shall not cure or waive any default or invalidate any other right or remedy of Lender. This assignment of rents of the Property shall terminate when the debt secured by the Security Instrument is paid in full.

**23.    Lender's Rights If Borrower Fails to Keep Promises and Agreements.** Lender shall give notice to me prior to acceleration following my breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 17 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 5 days from the date the notice is given to me, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument, foreclosure by judicial proceeding and sale of the Property. The notice shall further inform me of the right to reinstate after acceleration and the right to assert in the foreclosure proceeding the non-existence of a default or any other defense I have to acceleration and foreclosure. If

the default is not cured on or before the date specified in the notice, Lender may require immediate payment in full of all sums secured by this Security Instrument without further demand and may foreclose this Security Instrument by judicial proceeding. Lender will have the right to collect all costs allowed by law, including, but not limited to reasonable attorneys' fees and costs of title evidence.

If the Lender's interest in this Security Instrument is held by the Secretary and the Secretary requires immedi- ate payment in full under Section 22, the Secretary may invoke the nonjudicial power of sale provided in the Single Family Mortgage Foreclosure Act of 1994 ("Act") (12 U.S.C. 3751 et seq.) by requesting a foreclosure commissioner designated under the Act to commence foreclosure and to sell the Property as provided in the Act. Nothing in the preceding sentence shall deprive the Secretary of any rights otherwise available to a Lender under this Section 24 or applicable law.

**24.     Lender's Obligation to Discharge this Security Instrument.** When Lender has been paid all amounts due under the Note and under this Security Instrument, Lender will discharge this Security Instrument by delivering a certificate stating that this Security Instrument has been satisfied. I will pay all costs of recording the discharge in the proper official records. I agree to pay a fee for the discharge of this Security Instrument, if Lender so requires. Lender may require that I pay such a fee, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted by Applicable Law.

**25.     Agreements about New York Lien Law.** I will receive all amounts lent to me by Lender subject to the trust fund provisions of Section 13 of the New York Lien Law. This means that I will: (a) hold all amounts which I receive and which I have a right to receive from Lender under the Note as a trust fund; and (b) use those amounts to pay for "Cost of Improvement" (as defined in Section 13 of the New York Lien Law) before I use them for any other purpose. The fact that I am holding those amounts as a trust fund means that for any building or other improvement located on the Property I have a special responsibility under the law to use the amount in the manner described in this Section 26.

**26. Borrower's Statement Regarding the Property [check box as applicable].**
&#9587; This Security Instrument covers real property improved, or to be improved, by a one or two family dwelling only. This Security Instrument covers real property principally improved, or to be improved, by one or more structures containing, in the aggregate, not more than six residential dwelling units with each dwelling unit having its own separate cooking facilities.
☐ This Security Instrument does not cover real property improved as described above.

**27.     Event of Default.** Any event of default under any of the Loan Documents shall constitute an event of default for purposes of this Security Instrument.

BY SIGNING BELOW, I accept and agree to the promises and agreements contained in pages 1 through 10 of this Security Instrument and in any Rider signed by me and recorded with it.

Jesand, LLC, a Delaware limited liability co

By: _Kathleen B Manafort_

Kathleen Manafort, Managing Member - Borrower

See attached &#9416;
Andrea Manafort, mortgagor

**SEAL**

State of VIRGINIA                           )
                                            ) SS:
County of ALEXANDRIA                        )

On the 7 th day of August in the year 2017, before me, the undersigned, a Notary Public in and for said State, personally appeared Kathleen Manafort, personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is (are) subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity (ies), and that by his/her/their signature(s) on the instrument, the individual(s), or the person upon behalf of which the individual(s) acted, executed the instrument.

JASPER S YOO
NOTARY PUBLIC 7596760
COMMONWEALTH OF VIRGINIA
MY COMMISSION EXPIRES AUGUST 31, 2018

Notary Public

commission expires: 08/31/2018

State of _____                         )
                                            )
County of _____                        ) ss.

On the ___th day of August in the year 2017, before me, the undersigned, a Notary Public in and for said State, personally appeared Andrea Manafort, personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is (are) subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity (ies), and that by his/her/their signature(s) on the Instrument, the individual(s), or the person upon behalf of which the individual(s) acted, executed the instrument.

Notary Public

My commission expires: _____

the default is not cured on or before the date specified in the notice, Lender may require immediate payment in full of all sums secured by this Security Instrument without further demand and may foreclose this Security Instrument by judicial proceeding. Lender will have the right to collect all costs allowed by law, including, but not limited to reasonable attorneys' fees and costs of title evidence.

If the Lender's interest in this Security Instrument is held by the Secretary and the Secretary requires immedi- ate payment in full under Section 22, the Secretary may invoke the nonjudicial power of sale provided in the Single Family Mortgage Foreclosure Act of 1994 ("Act") (12 U.S.C. 3751 et seq.) by requesting a foreclosure commissioner designated under the Act to commence foreclosure and to sell the Property as provided in the Act. Nothing in the preceding sentence shall deprive the Secretary of any rights otherwise available to a Lender under this Section 24 or applicable law.

**24.    Lender's Obligation to Discharge this Security Instrument.** When Lender has been paid all amounts due under the Note and under this Security Instrument, Lender will discharge the basis of this Security Instrument by delivering a certificate stating that this Security Instrument has been satisfied. I will pay all costs of recording the discharge in the proper official records. I agree to pay a fee for the discharge of this Security Instrument, if Lender so requires. Lender may require that I pay such a fee, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted by Applicable Law.

**25.    Agreements about New York Lien Law.** I will receive all amounts lent to me by Lender subject to the trust fund provisions of Section 13 of the New York Lien Law. This means that I will: (a) hold all amounts which I receive and which I have a right to receive from Lender under the Note as a trust fund; and (b) use those amounts to pay for "Cost of Improvement" (as defined in Section 13 of the New York Lien Law) before I use them for any other purpose. The fact that I am holding those amounts as a trust fund means that for any building or other improvement located on the Property I have a special responsibility under the law to use the amount in the manner described in this Section 26.

**26. Borrower's Statement Regarding the Property [check box as applicable].**

[X] This Security Instrument covers real property improved, or to be improved, by a one or two family dwelling only.

[ ] This Security Instrument covers real property principally improved, or to be improved, by one or more structures containing, in the aggregate, not more than six residential dwelling units with each dwelling unit having its own separate cooking facilities.

[ ] This Security Instrument does not cover real property improved as described above.

**27.    Event of Default.** Any event of default under any of the Loan Documents shall constitute an event of default for purposes of this Security Instrument.

BY SIGNING BELOW, I accept and agree to the promises and agreements contained in pages 1 through 10 of this Security Instrument and in any Rider signed by me and recorded with it.

Jesand, LLC, a Delaware limited liability co

By: *See attached* ⊕

Kathleen Manafort, Managing Member - Borrower

Andrea Manafort, mortgagor

State of _____           )
                             )  SS:
County of _____            )

On the ____th day of August in the year 2017, before me, the undersigned, a Notary Public in and for said State, personally appeared Kathleen Manafort, personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is (are) subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity (ies), and that by his/her/their signature(s) on the Instrument, the individual(s), or the person upon behalf of which the individual(s) acted, executed the instrument.

_____
Notary Public

My commission expires: _____

State of V A             )
                         )
County of Arlington      ) ss.

On the 4th day of August in the year 2017, before me, the undersigned, a Notary Public in and for said State, personally appeared Andrea Manafort, personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is (are) subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity (ies), and that by his/her/their signature(s) on the Instrument, the individual(s), or the person upon behalf of which the individual(s) acted, executed the instrument.

_____
Notary Public

My commission expires: NOV 30, 2019

SEAL

CONDOMINIUM RIDER

THIS CONDOMINIUM RIDER is made this 7TH day of August, 2017, and is incorporated into and shall be deemed to amend and supplement the Mortgage (the "Security Instrument") of the same date given by the undersigned Jesand, LLC  and Andrea Manafort (collectively the "Borrower") to secure the Note of Jesand, LLC to Woodlawn, LLC., 123 W. Nye Lane, Ste 129, Carson City, Nevada 89706 (the Lender") of the same date and covering the Property described in the Security Instrument and located at: 123 Baxter Street, Unit 5D, New York, New York. The Property includes a unit in, together with an undivided interest in the common elements of, a condominium project known as:

Baxter Street Condominium and 123 Baxter Street
(the "Condominium Project").

 If the owners association or other entity which acts for the Condominium Project (the "Owners Association") holds title to property for the benefit or use of its members or shareholders, the Property also includes Borrower's interest in the Owners Association and the uses, proceeds and benefits of Borrower's interest.

CONDOMINIUM COVENANTS.

In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

A. Condominium Obligations. Borrower shall perform all of Borrower's obligations under the Condominium Project's Constituent Documents. The "Constituent Documents" are the: (i) Declaration or any other document which creates the Condominium Project; (ii) by-laws; (iii) code of regulations; and (iv) other equivalent documents. Borrower shall promptly pay, when due, all dues and assessments imposed pursuant to the Constituent Documents.
B. Property Insurance. So long as the Owners Association maintains, with a generally accepted insurance carrier, a "master" or "blanket" policy on the Condominium Project which is satisfactory to Lender and which provides insurance coverage in the amounts (including deductible levels), for the periods, and against loss by fire, hazards included within the term "extended coverage," and any other hazards, including, but not limited to, earthquakes and floods, from which Lender requires insurance, then: (i) Lender waives the provision in Section 3 for the Periodic Payment to Lender of the yearly premium installments for property insurance on the Property; and (ii) Borrower's obligation under Section 5 to maintain property insurance coverage on the Property is deemed satisfied to the extent that the required coverage is provided by the Owners Association policy. What Lender requires as a condition of this waiver can change during the term of the loan. Borrower shall give Lender prompt notice of any lapse in required property insurance coverage provided by the master or blanket policy. In the event of a distribution of property insurance proceeds in lieu of restoration or repair following a loss to the Property, whether to the unit or to common elements, any proceeds payable to Borrower are hereby assigned and shall be paid to Lender for application to the sums secured by the Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.
C. Public Liability Insurance. Borrower shall take such actions as may be reasonable to insure that the Owners Association maintains a public liability insurance policy acceptable in form, amount, and extent of coverage to Lender.
D. Condemnation. The proceeds of any award or claim for damages, direct or consequential, payable to

Borrower in connection with any condemnation or other taking of all or any part of the Property, whether of the unit or of the common elements, or for any conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender.

Such proceeds shall be applied by Lender to the sums secured by the Security Instrument as provided in Section 11.

E. Lender's Prior Consent. Borrower shall not, except after notice to Lender and with Lender's prior written consent, either partition or subdivide the Property or consent to: (i) the abandonment or termination of the Condominium Project, except for abandonment or termination required by law in the case of substantial destruction by fire or other casualty or in the case of a taking by condemnation or eminent domain; (ii) any amendment to any provision of the Constituent Documents if the provision is for the express benefit of Lender; (iii) termination of professional management and assumption of self-management of the Owners Association; or (iv) any action which would have the effect of rendering the public liability insurance coverage maintained by the Owners Association unacceptable to Lender.

F. Remedies. If Borrower does not pay condominium dues and assessments when due, then Lender may pay them. Any amounts disbursed by Lender under this paragraph F shall become additional debt of Borrower secured by the Security Instrument. Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate and shall be payable, with interest, upon notice from Lender to Borrower requesting payment.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Condominium Rider.

_Kathleen B Manafort_____ (Seal)
Kathleen B. Manafort, Managing Member, Jesand, LLC – Borrower


_See attached ⓔ_____ (Seal)
Andrea Manafort

Borrower in connection with any condemnation or other taking of all or any part of the Property, whether of the unit or of the common elements, or for any conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender.

Such proceeds shall be applied by Lender to the sums secured by the Security Instrument as provided in Section 11.

E. Lender's Prior Consent. Borrower shall not, except after notice to Lender and with Lender's prior written consent, either partition or subdivide the Property or consent to: (i) the abandonment or termination of the Condominium Project, except for abandonment or termination required by law in the case of substantial destruction by fire or other casualty or in the case of a taking by condemnation or eminent domain; (ii) any amendment to any provision of the Constituent Documents if the provision is for the express benefit of Lender; (iii) termination of professional management and assumption of self-management of the Owners Association; or (iv) any action which would have the effect of rendering the public liability insurance coverage maintained by the Owners Association unacceptable to Lender.

F. Remedies. If Borrower does not pay condominium dues and assessments when due, then Lender may pay them. Any amounts disbursed by Lender under this paragraph F shall become additional debt of Borrower secured by the Security Instrument. Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate and shall be payable, with interest, upon notice from Lender to Borrower requesting payment.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Condominium Rider.

_See attached_ ⓐ _____ (Seal)
Kathleen B. Manafort, Managing Member, Jesand, LLC – Borrower

_____ (Seal)
Andrea Manafort

State of _____ County of _____
Subscribed and sworn before me on _____ (Date)

_____
(Notary Signature)

## *Am Trust Title Insurance Company*

### SCHEDULE A DESCRIPTION

The Condominium Unit known as Unit No. 5D (hereinafter called the "Unit") in the Building known collectively as Baxter Street Condominium and 123 Baxter Street, Borough of Manhattan, City, County and State of New York, (the "Building") designated and described in the Declaration establishing a plan for condominium ownership of the Building and the land upon which the Building is situated (said Building and land referred to collectively herein as the "Property" or the "Condominium"), dated September 21, 2007, under the Condominium Act of the State of New York (Article 9-B of the Real Property Law of the State of New York), recorded in the Office of the Register of the City of New York, in the County of New York, on the 28th day of September, 2007, with a CRFN 2007000498520 (the "Declaration"). The Unit is also designated as Tax Lot No. 1122 in Block 206 of the Borough of Manhattan on the Tax Map of the Real Property Assessment Department of the City of New York and on the floor plans of the Buildings, certified by Hal Dorfman Architects, licensed professional architects, on September 24, 2007, filed in the Register's Office of New York County on September 28, 2007.

Together with a 4.65% interest in the Common Elements (as defined in said Declaration).

The land upon which the Building containing the Unit is situated is more particularly bounded and described as follows:

ALL that certain plot, piece or parcel of land, situate, lying and being in the in the Borough of Manhattan, City, County and State of New York, bounded and described as follows:

BEGINNING at a point formed by the intersection of the southerly side of Hester Street and the easterly side of Baxter Street;

THENCE southerly along said easterly side of Baxter Street at an interior angle of 90 degrees 59 minutes 40 seconds a distance of 125 feet 4½ inches (125 feet 4 inches - Tax Map);

THENCE easterly from said point on the easterly side of Baxter Street at an interior angle of 88 degrees 53 minutes 20 seconds a distance of 100 feet 4½ inches to a point (100 feet 8 inches - Tax Map);

THENCE northerly from said point at an interior angle of 91 degrees 00 minutes 10 seconds a distance of 25 feet 2 inches (25 feet 0 inches - Tax Map);

THENCE westerly at an interior angle of 89 degrees 06 minutes 20 seconds a distance of 25 feet 4 inches (25 feet 0 inches - Tax Map);

THENCE northerly at an interior angle of 91 degrees 02 minutes 30 seconds a distance of 100 feet 0 inches to the southerly side of Hester Street;

THENCE westerly along the southerly side of Hester Street at an interior angle of 88 degrees 57 minutes 30 seconds a distance of 75 feet 1 inch (75 feet 0 inches - Tax Map) to the easterly side of Baxter Street, the point or place of BEGINNING.

*AmTrust Title Insurance Company*

Title Number: **FN-13390-NY**
Page **2**

PARCEL A

ALL that certain plot, piece or parcel of land lying and being in the Borough of Manhattan, City, County and State of New York, being distinguished on a Map of Bayard East Farm filed in the Office of the Secretary of State by the Lot number 494 and by the same number on a Map of Lands of the City of New York, belonging to the Estate of Stephen Van Renselaer, deceased, filed in the Office of the Register of the County of New York, which said plot is bounded and described as follows:

BEGINNING at a point on the easterly side of Baxter Street, distant 100 feet southerly from Hester Street;

RUNNING THENCE easterly 100 feet 8 inches;

THENCE southerly in the rear 25 feet;

THENCE westerly 100 feet 8 inches to Baxter Street;

THENCE northerly along the easterly side of Baxter Street 25 feet 2 inches to the point or place of BEGINNING.

PARCEL B

ALL the certain plot, piece or parcel of land, lying and being in the Borough of Manhattan, City, County and State of New York, bounded and described as follows:

BEGINNING at the corner formed by the intersection of the easterly side of Baxter Street and the southerly side of Hester Street;

THENCE southerly along the easterly side of Baxter Street, one hundred feet;

THENCE easterly parallel, or nearly so, with the southerly side of Hester Street, 75 feet;

THENCE northerly parallel, or nearly so, with Baxter Street, one hundred feet more or less to the southerly side of Hester Street;

THENCE westerly along the same 75 feet 1 inch, more or less, to the point or place of BEGINNING.

# 123 Baxter Street, Unit 5D, NY, NY

# PROPERTY VALUATION







# 123 Baxter St APT 5D,
## New York, NY 10013

3 beds · 3 baths · 2,133 sqft

◉ OFF MARKET

Zestimate®:
**$4,797,685**

I disagree

Rent Zestimate®: $12,500 /mo