**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **UNITED STATES OF AMERICA** <br><br> v. <br><br> **RICHARD W. GATES III,** <br><br> Defendant. | **Crim. No. 17-201-2 (ABJ)** <br><br> **PUBLIC REDACTED VERSION** |

**GOVERNMENT'S RESPONSE TO DEFENDANT GATES'**
**MOTION TO MODIFY CONDITIONS OF RELEASE**

The United States of America, by and through Special Counsel Robert S. Mueller, III, submits this response to defendant Gates' motion to modify his conditions of release (ECF#98).[1] The government does not oppose defendant Gates' proposed sureties or the property he proposes to pledge, but raises for the Court's consideration concerns about certain aspects of the package and whether Gates has met the $5 million bond requirement. Should the Court determine that the proposed assets and property are sufficient, the government requests that the conditions of release ordered with respect to defendant Manafort also be required of defendant Gates.

**I.    Surety and Property Issues**

To begin, the government does not oppose the defendant's proposed sureties or question their significance in ensuring the defendant's appearance in court and his compliance with other bail conditions. *See United States v. Martinez*, 151 F.3d 68, 71 (2d Cir. 1998) (noting that sureties are assessed for "their ability to exercise moral suasion" over the defendant, "should he decide to flee"); *see also United States v. Batista*, 163 F. Supp. 2d 222 (S.D.N.Y. 2001) (listing factors to

---

[1] The government has filed this response under seal because it references information that defendant Gates has redacted from his submission (*see* ECF#96). But contemporaneous with its sealed submission, the government is also filing a redacted version on the public docket.

evaluate a potential surety's capacity for "moral suasion," including "the strength of the tie between the suret[y] and defendant").

At issue instead is whether the pledged property and assets meet the required bond amount. The government contends that they do not. Of particular concern is the value of the ▆▆▆▆ property, pledged by ▆▆▆▆▆▆, and the most significant asset pledged by a surety (other than the defendant's home). The defendant assesses the value of the property to be approximately ▆▆▆▆. ECF#98 at 5; *id.*, Exh. 1, at 49-65. The government believes that value is overstated. To be clear, there appears to be scant case law about how to value property, much less commercial property, for bail purposes, as courts generally discuss "market value" without specifying how that value is determined. *See, e.g.*, *United States v. Forgione*, No. 07-cr-80138, 2007 WL 4570827, at *3 (S.D. Fla. 2007) (subtracting mortgage and tax liens from assessed "market value" of the property); *United States v. Calvanese*, No. 06-cr-30029, 2007 WL 686727, at *5 (D. Mass. 2007) (determining equity in a pledged property by subtracting outstanding mortgage and line of credit from "appraised value").[2]

Multiple reasonable valuation methods may exist. One approach consists of taking the value of the property (based on the price of the land and structures on it) and deducting the mortgage or other liabilities. That approach often makes sense in the bail context because, were the property to be seized, that is what the government would receive (since the government does

---

[2] While residential property generally appears to be favored (or at least is more commonly posted) in the bail context, courts have differed as to the propriety of using commercial property to secure a bond. *See United States v. Dhafir*, No. 03-cr-64, 2004 WL 7321256, at *4 (N.D.N.Y. Feb. 5, 2004) (noting, among other deficiencies in bail package, that no surety other than the "defendant's wife" had "pledged their residences" and the listed properties were instead "principally commercial properties"); *United States v. Montemarano*, No. 84-cr-809, 1986 WL 5380, at *1 (S.D.N.Y. May 5, 1986) (rejecting suggestion "that commercial property . . . is inherently unlikely to obligate [the defendant] to appear, and cannot therefore be accepted as bail").

not intend to run businesses such as those operating at ▓▓▓). And if that approach were followed in this case, it would yield a value for the ▓▓▓ property well below what the defendant has claimed. In an interview conducted on December 6, 2017, ▓▓▓'s owner ▓▓▓) informed the government that the land and structures themselves are valued at only ▓▓▓. Subtracting from that amount the existing mortgage of ▓▓▓ leaves slightly more than ▓▓▓ of equity in the property.

A second approach, the one advocated by the defendant, calculates the market value of the ▓▓▓ property ▓▓▓ which takes into account the yearly income that the owner currently earns by renting the property. ECF#98, Exh. 1 at 58. The government questions whether this approach is appropriate in the present setting, since (as noted above) it depends on income that the current owner earns through leases or other contracts with third parties, and it is not clear that those contracts would automatically be assigned to the government in the event of bail forfeiture. Indeed, this Court has previously noted the difficulties that restrictions in contracts can pose in pledging assets for bail. *See* Nov. 6, 2017 Tr. 14 (noting those difficulties as to life insurance policies).

But even if the approach warrants consideration, the defendant's calculations under it appear to be flawed. In applying his methodology, the defendant takes the ▓▓▓ of ▓▓▓ and multiplies it by the capitalization rate of ▓▓▓, yielding a value of approximately ▓▓▓. ECF#98, Exh. 1 at 58. Assuming ▓▓▓ to be the appropriate capitalization rate, the defendant's valuation would still be overstated. That is because the appropriate figure to be multiplied is the *net* operating income—that is, the total revenue of ▓▓▓ *minus* relevant operating expenses. The defendant, however, does not subtract any of the operating expenses listed on the ▓▓▓ from the ▓▓▓ in yearly revenue.

And depending on the amount of those expenses (which one document lists as totaling approximately ▮), the value of the ▮ property would be substantially less than the approximately ▮ that the defendant proposes.[3]

Given these concerns over the value of at least one of the defendant's pledged properties, the non-real-estate assets of the defendant's proposed sureties take on additional importance, particularly if the defendant decides to pledge these assets. The defendant claims that those assets ▮ ECF#98 at 7, but he has provided little information to support that assertion, see id. at 7 n.9, and the information presented again raises valuation questions.[4] Should the defendant decide to pledge these assets, the government believes it appropriate that the defendant provide additional information or, if additional assets are available from other sources, that they be identified with greater specificity so that they can be properly evaluated.

II. **Additional Conditions of Release**

If the Court concludes that the defendant's proposed bail package is sufficient to justify releasing him from home confinement, the government requests that the Court impose the same

---

[3] We derive these figures from the materials provided by the defendant in Exhibit #1 to his motion, including the ▮ from ▮ (id. at 61-64), and the letter from ▮ (id. at 58). Of note, in the ▮ letter, the author identifies the relevant factor as the ▮ and later the ▮. Yet, when calculating the resulting capitalization figure, he takes the ▮ total revenue (which is also the gross profit) figure listed in 2016 as ▮. Counsel for the defendant has confirmed that the ▮ figure came from ▮. And to be clear, the government believes that, if the capitalization method of valuation is to be used, the appropriate figure for 2016 should be the gross income *minus* relevant operating expenses.

[4] For example, the defendant bases his description of one surety's non-real-estate assets—and the defendant's own assets—on the value of various ▮ accounts, ▮ ▮. See ECF#98 at 6-7 & n.9; id., Exh. 1 at 71 (Attach. H). The real-world value of those accounts is presumably less than the defendant proposes given the penalties and income taxes that would be assessed if those assets were withdrawn as the result of a bail violation.

4

conditions set forth in the Court's December 15, 2017 order (ECF#95) setting the conditions of release for defendant Manafort.

\* \* \* \* \*

For the foregoing reasons, the government has concerns that the value of the defendant's bail package fails to meet the $5 million bond requirement and that the defendant should provide additional information about the assets he cites in his motion to modify his conditions of release should he seek to pledge those assets. Alternatively, if the Court concludes that the defendant's proposed bail package is sufficient to reasonably assure his appearance and compliance with the bail conditions as required, the government requests that the Court order his release subject to the conditions set forth in the Court's order relating to the defendant Manafort (ECF#95), in addition to any other restrictions that the Court deems necessary.

                                                              Respectfully submitted,

                                                              ROBERT S. MUELLER III
                                                              Special Counsel

Dated: December 20, 2017              By:    __/s/  Greg Andres_____
                                                              Andrew Weissmann
                                                              Greg D. Andres (D.D.C. Bar No. 459221)
                                                              Kyle R. Freeny
                                                              U.S. Department of Justice
                                                              Special Counsel's Office
                                                              950 Pennsylvania Avenue NW
                                                              Washington, DC 20530
                                                              Telephone: (202) 616-0800

                                                              *Attorneys for the United States of America*