**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>PAUL J. MANAFORT, JR.,<br><br>Defendant. | Crim. No. 17-201-1 (ABJ) |

### GOVERNMENT'S RESPONSE TO MANAFORT'S FILING ON THE COURT'S ORDER TO SHOW CAUSE

As the Court is aware, defendant Paul J. Manafort, Jr. is accused of serious crimes involving deception. They carry significant penalties; the evidence against him is substantial, as shown by factual details in the indictment and Chief Judge Howell's crime-fraud ruling; and Manafort is, by his own admission (*see* ECF#18 at 2-3), well-connected to a host of countries and highly experienced in moving money (and himself) around the globe. In light of the clear risk of flight found by this Court, the Court noted that it was willing to accept a bail package only if it was substantial and well-secured. *See* Nov. 6, 2017 Tr. 25-29.

His most recent submission demonstrates why Manafort's motion to be released from home confinement on his proposed bail package should be denied. Manafort does not respond to the government's concerns with that package, including the value of the unencumbered assets or his inability to locate a surety who is not a close family member. *See* Gov. Opp. 3 & n.4. Other than a bare statement that he "satisfies the[] requirements" for release (ECF#79 at 5), Manafort's sole response is that the government was planning to consent before it learned of new factual developments. That response does not answer the issues with his bail package. The government can reevaluate its position based on new material facts. And the Court is not bound by the parties' previous general agreement.

More fundamentally, Manafort's conduct undermines trust in his adherence to bail conditions. Bail is fundamentally about trust—whether a defendant can be trusted to appear and to abide by the conditions put in place to assure his appearance. *See* 18 U.S.C. § 3142(c)(1) and (f); *cf., e.g., United States v. Kerik*, 419 F. App'x 10, 14 (2d Cir. 2011) (unpub.). Manafort cannot bring himself to state that he had a role in drafting the op-ed, although that fact is established by irrefutable evidence. Manafort also alludes briefly to the fact that the op-ed has since been published in the *Kyiv Post*. *See* ECF#79 at 2; Dec. 8, 2017 Supplemental Declaration of Brock Domin ("Domin Supp. Decl.") Exh. G.* Yet he does not deny that his counsel assured the government that the op-ed piece would not run, a representation that was set out in the government's December 4, 2017, submission to this Court. ECF#73 at 2 n.3. He does not address why, in spite of that representation, and this Court's December 5 Order to Show Cause, the op-ed nevertheless was submitted and ran on December 7. And he does not disclose that the ostensible author of the op-ed has falsely represented to the government—and now the public—that Manafort did not write the op-ed. *See* Domin. Decl. Exhs. A & B; Domin Supp. Decl. Exhs. E, F ("as far as I know Manafort just read it and that's all"), & G ("it is totally mine;" 'Paul has absolutely nothing to do with it."). Even taken in the light most favorable to Manafort, this conduct shows little respect for this Court and a penchant for skirting (if not breaking) rules.

---

* Manafort opaquely claims that the op-ed "was authored by" someone else (ECF#79 at 2). That is an accurate description of the by-line. The final piece has substantial Manafort language. A comparison of the tracked change op-ed sent by Manafort to his Russian colleague with the final version that was published on December 7 in the *Kyiv Post* shows minimal changes from the Manafort-revised draft, other than those suggested by Manafort in the draft. *See* Supp. Domin Decl. Exh. E (showing tracked changes made by Manafort, the duration of the editing, and the file's metadata); and Exh. F (a comparison of the text of the op-ed, as amended by Manafort, and the final the op-ed). Manafort has not worked in Ukraine since approximately 2015; the op-ed did not independently appear to address his work for President Yanukovich between 2010-2014.

Rather than forthrightly explaining his conduct, Manafort parses the language of this Court's Order of November 8, 2017 (ECF#38), and the Supreme Court decision in *Gentile v. State Bar of Nevada*, 501 U.S. 1030 (1991). Even assuming Manafort's conduct only came "perilously close to violating" the Court's order, *cf. United States v. Clemens*, No. 10-cr-223, 2011 WL 1256628, at *1 (D.D.C. Apr. 4, 2011), his conduct raises serious questions of trust.

Since the defendants' first appearance, the Court has admonished the parties not to engage in "a public relations campaign." Nov. 2, 2017 Tr. 6-8; s*ee* ECF#38 at 1-2 (ordering the parties to "refrain from making statements to the media or in public settings that pose a substantial likelihood of material prejudice to this case"). It appears that "a public relations campaign" is exactly what Manafort had in mind. *See* ECF#79 at 4 (urging that he must be able to "set the factual record straight" and engage in a campaign over his "reputation" aimed at reaching "potential jurors in this District."). This conclusion is inescapable in light of documents that show that, shortly after Manafort resigned from his position as campaign manager in August 2016, he formulated a press strategy with Gates to defend himself. That strategy included talking points that are mirrored in the op-ed piece he substantially drafted. *See* Domin Supp. Decl. Exh. C (discussion between Gates and Manafort regarding preparing a "Narrative" for, among other things, "Cash ledger," "FARA," and "Russia"); and Exh. D (Gates's description of "PJM work in Ukraine," which includes that "[w]ork was centered on pro-Ukraine efforts to enter into the EU").

In any event, Manafort has not made any factual submission that he believed that his conduct complied with the Court's Order. He submits no evidence from Voloshyn, Kilimnik, or himself. Instead, he submits a brief that fails to address any of the facts about the circulation of the *Kyiv Post* in the government's papers. Even if he perceived ambiguity in the reach of the Court's Order, Manafort could have raised the issue with the government and the Court to seek

clarification of the Order's reach, rather than unilaterally marching ahead.

As a legal matter, Manafort's conduct at the very least came close to the line set by the Court, if not crossed it. Manafort's contrary argument rests on the position that an article in English placed in the *Kyiv Post* cannot as a matter of law have a prejudicial effect in Washington, D.C. *See* ECF#79 at 2. Given the significant publicity surrounding this case and the well-established pattern of news outlets and social media (American and otherwise) republishing and commenting on news stories, this is fanciful. Indeed, Manafort's submission suggests that reaching Washington, D.C. was the point. *See* ECF#79 at 4 (noting he need not be silent while "potential jurors in this District" might be tainted).

Manafort suggests (ECF#79 at 3-4) that deeming his conduct a violation of the Court's Order would run afoul of the First Amendment, as interpreted in *Gentile*. That is incorrect. The "substantial [governmental] interest in preventing prejudice to an adjudicative proceeding," which the Court recognized in *Gentile*, 501 U.S. at 1076, does not disable a district court also from shielding against prejudice caused by "the creation of a 'carnival atmosphere' in high-profile cases," even when the defendant—rather than an attorney—is the one creating that atmosphere. *United States v. Brown*, 218 F.3d 415, 429 (5th Cir. 2000) (quoting *Sheppard v. Maxwell*, 384 U.S. 333, 358 (1966)), *cert. denied*, 531 U.S. 1111 (2001); *cf. Sheppard*, 384 U.S. at 358-363. The conduct at issue here is hardly akin to a defendant's statement "maintain[ing] his or her innocence," ECF#79 at 4, a type of public statement contemplated (in appropriate form) by this Court's rules. *See* LCrR 57.7(b)(3) (lawyers are not barred "from announcing *without further comment* that the accused denies the charges") (emphasis added).

In sum, whether or not Manafort's conduct violated the terms of the Court's November 8 Order, it raises serious concerns about his trustworthiness that warrant denial of the motion to

release Manafort from home confinement based on the proposed bail package. Accordingly, the Court should deny Manafort's motion to modify his conditions of release.

          Respectfully submitted,

          ROBERT S. MUELLER III
          Special Counsel

Dated: December 8, 2017      By:    /s/ Andrew Weissmann
          Andrew Weissmann
          Greg D. Andres (D.D.C. Bar No. 459221)
          Kyle R. Freeny
          U.S. Department of Justice
          Special Counsel's Office
          950 Pennsylvania Avenue NW
          Washington, DC 20530
          Telephone: (202) 616-0800

*Attorneys for the United States of America*