**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **UNITED STATES OF AMERICA**<br><br>v.<br><br>**PAUL J. MANAFORT, JR.,**<br><br>Defendant. | **Crim. No. 17-201-1 (ABJ)**<br><br>**REDACTED** |

**GOVERNMENT'S RESPONSE TO MANAFORT'S
SUPPLEMENTAL MEMORANDUM TO HIS MOTION FOR
RECONSIDERATION OF CONDITIONS OF RELEASE**

The United States of America, by and through Special Counsel Robert S. Mueller, III, hereby files this response to Manafort's supplemental memorandum to his motion for reconsideration of conditions of release. The government respectfully submits that Manafort's proposed new bail package is insufficient to assure reasonably his appearance as required by law.

Whereas Manafort previously proposed to secure a $10 million bond with real property and two sureties, he now proposes no sureties and to change the properties put up as security. In particular, Manafort now proposes to withdraw the use of his property in Bridgehampton, New York—the property with the highest market value and greatest amount of equity. He also no longer offers as security his Florida residence—a property that is not alleged to be subject to forfeiture and that he previously estimated to have equity of ▌▌▌▌▌. *See* ECF No. 66. Instead, he offers three properties that are deficient in various respects.

As a result of these changes, the bail package that Manafort proposes is far less than the $10 million that he alleges in his supplemental memorandum, and the difference is not made up by any surety. We address each property in Manafort's new proposal below:

*Arlington property.* The Arlington property is owned by one of Manafort's daughters. However, while it is owned free and clear, it is subject to forfeiture, as it was entirely purchased by Manafort from tainted funds from a Cypriot account. Although we have not taken the position that the property cannot serve as bail to any extent, it should not be given full credit as if it were not subject to forfeiture at all. *See* S. Rep. No. 225, 98th Cong., 1st Sess., at 23–24 (Aug. 4, 1983) (explaining that the deterrence rationale of financial conditions "no longer holds true" "[w]hen the proceeds of crime are used to post bond," and that "[t]he source of property used to fulfill a condition of release is thus an important consideration in a judicial officer's determination of whether such a condition will assure the appearance of the defendant"). No explanation is offered as to why Manafort seeks to substitute this property for his Florida residence, which is not subject to forfeiture. In any event, the Court need not reach the issue of the discounted value, since even if it is fully counted, the bail package does not come to $10 million.

*Fairfax property*. The Fairfax property is claimed by Manafort to have no mortgage. In fact, it was posted to secure a mortgage of over $9 million from The Federal Savings Bank, which was secured by both the Fairfax property and the Bridgehampton property. The bank can thus proceed against either or both properties in the event of foreclosure. It is misleading to claim the Fairfax property has no mortgage when, in fact, it has been posted to secure a mortgage that substantially exceeds the value of the property. Moreover, Manafort himself has questioned his ability to maintain the payments on all his mortgages; thus, the risk of foreclosure by the bank on this property is not fanciful, which would seriously affect its market value.

███████, *New York property*. The government does not take issue with the appraisal for this property and its residual equity value of approximately ███████.

*Trump Tower apartment, New York*. Manafort claims a residual equity value of ▇▇▇▇▇ in this property. However, the government understands from the bank holding the mortgage, UBS, ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇. Thus, here too there is a risk of bank foreclosure, which would undermine the property's market value. In any event, even according it full value, the bail package is substantially less than $10 million, even if one accords the Arlington property no discounted value to account for the fact that it is subject to forfeiture ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ = $7.35 million).

Significantly, Manafort does not propose any sureties to make up the difference in the effective equity value of the property he proposes as security and the $10 million bond. The fact that Manafort has not been able to find any responsible surety to cosign a bond for this package suggests that neither those closest to him, nor anyone else, is willing to assume the risk of being a surety for him.

Further, the proposed package is deficient in the government's view, in light of additional criminal conduct that we have learned since the Court's initial bail determination. That criminal conduct includes a series of bank frauds and bank fraud conspiracies, including criminal conduct relating to the mortgage on the Fairfax property, which Manafort seeks to pledge. The government has secured substantial evidence that Manafort secured this mortgage from The Federal Savings Bank through a series of false and fraudulent representations to The Federal Savings Bank. For example, Manafort provided the bank with doctored profit and loss statements for DMP International LLC for both 2015 and 2016, overstating its income by millions of dollars. At the next bail hearing, we can proffer to the Court additional evidence related to this and the other bank frauds and conspiracies, which the Court may find relevant to the bail risk posed by Manafort as

well as the risk that the banks may foreclose on the real estate being proposed by Manafort to secure his release.

 

Respectfully submitted,

ROBERT S. MUELLER III
Special Counsel

Dated: February 13, 2018       By:       \_\_/s/\_ Andrew Weissmann_____
Andrew Weissmann
Greg D. Andres (D.D.C. Bar No. 459221)
Kyle R. Freeny
U.S. Department of Justice
Special Counsel's Office
950 Pennsylvania Avenue NW
Washington, DC 20530
Telephone: (202) 616-0800

*Attorneys for the United States of America*