**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **UNITED STATES OF AMERICA** | |
| **v.** | **Crim. No. 17-201-1 (ABJ)** |
| **PAUL J. MANAFORT, JR.,** | |
| **Defendant.** | ~~**FILED UNDER SEAL**~~ |

**GOVERNMENT'S RESPONSE TO MANAFORT'S**
**SECOND SUPPLEMENTAL MEMORANDUM TO HIS MOTION FOR**
**RECONSIDERATION OF CONDITIONS OF RELEASE**

The United States of America, by and through Special Counsel Robert S. Mueller, III, hereby files this response to Manafort's second supplemental memorandum to his motion for reconsideration of conditions of release (Second Supplemental Memorandum) [Dkt. No. 179-1]. This response supplements the government's response to Manafort's proposed new bail package [Dkt. Nos. 175 and 183] with additional information related to several issues that arose in connection with Manafort's proposal after the government's original filing.

I.      Collateralization of the Bridgehampton Mortgage

In his Second Supplemental Memorandum, Manafort relies on a letter submitted by his real estate attorney to argue that the Alexandria property he seeks to post as security is "merely additional collateral [for the ▮▮ million loan with The Federal Savings Bank] with no expectation that its foreclosure would be necessary in the event of default." *Id.* at 2.  But neither Manafort nor his real estate attorney points to any language in the real estate transactional documents that restricts the right of The Federal Savings Bank (TFSB) from exercising its rights with respect to either property offered as collateral, in whatever sequence the bank determines to be appropriate.

In its own review of the transactional documents, the government has been unable to find any language designating the Bridgehampton property as priority collateral or restricting the right of the bank to proceed against the Alexandria property first.  For example, the Fixed/Adjustable Rate Rider (attached as Ex. B to the ████ Letter) indicates that both properties secure the Note, without restriction or any reference to one having priority over the other.  Additionally, the Deed of Trust (a copy of which is appended hereto as Exhibit A) provides that the borrower "irrevocably grants and conveys to the Trustee, in trust, with power of sale, the following described property located in the City of Alexandria, Virginia," to wit, the Alexandria property.  And it does so with no suggestion that this power of sale is subject to the requirement that the bank or trustee proceed first against the Bridgehampton property.

Additionally, counsel for the government has spoken with counsel for TFSB, who represented that it is the position of the bank that both the Bridgehampton property and the Alexandria property are equal collateral for the loan, and in the event of default, the bank could proceed against one or the other properties, or both, without restriction on the sequencing.

Ultimately, the Court need not resolve this legal dispute between Manafort and the bank. The very existence of such a dispute, together with the absence of any clear language in the transactional documents supporting Manafort's position, is sufficient ground to find that the Alexandria property, which is valued far less than the mortgage it secures,[1] is not suitable security for the bond (absent the contemporaneous posting of the Bridgehampton property).

As the government noted in its earlier filing, the risk of foreclosure on the Alexandria property is exacerbated by the evidence that Manafort secured the loan by fraud.  This risk is

---

[1] This is true even if the ████ held in an account at TFSB as additional collateral for the loan, *see* Supplemental Memorandum at 2, were added to the value of the Alexandria property.

confirmed by the attached Deed of Trust, which provides for default on the loan in the event the borrower or anyone acting at the borrower's direction "gave materially false, misleading, or inaccurate information or statements to the Lender . . . in connection with the Loan."[2] Ex. A ¶ 8.

## II.   Status of the UBS Loan

In his Second Supplemental Memorandum, Manafort represented that he made payments to UBS on February 2 and 8 to bring his mortgage on the Trump Tower condominium – which was previously past due – current.  Manafort also submitted bank statements in support of this representation.  The government has consulted with counsel for UBS, who has indicated as late as the date of this filing that the bank's records do not reflect any recent payments from Manafort and the account remains past due.  The government respectfully submits that the Trump Tower condominium is not suitable security for a bond unless and until the account reflects as current.

## III.   The ▉▉▉▉ Collateral Account

With Manafort's latest submission, the parties now agree that the ▉▉▉▉▉ held in an account with TFSB is held as collateral for the Union Street loan, rather than the Bridgehampton loan.

---

[2] Manafort, in a filing in his separate civil lawsuit, protested that the government "threaten[ed] to bring additional charges against Mr. Manafort in venues outside the District of Columbia," presumably a reference to proposed bank fraud charges.  *See* Dkt. No. 24 at 2, *Manafort v. DOJ*, No. 1:18-cv-11 (ABJ).  Far from threatening defendant, the government advised defense counsel of the nature of proposed charges as part of an offer to entertain any arguments from defense counsel, whether factual, legal, or discretionary, about why charges should not be brought – a standard practice the government followed both before bringing the instant indictment and in connection with bank fraud evidence discussed above.  And in connection with the latter, the government sat down with defense counsel to discuss the nature of the proposed charges and the evidence thereon.  Moreover, as the Court is aware, and has confirmed itself with Manafort's counsel, Manafort has elected not to waive venue to permit all charges to be brought before Your Honor.  It is thus disingenuous to suggest that the government is threatening to bring charges outside the district.

Respectfully submitted,

ROBERT S. MUELLER III
Special Counsel

Dated: February 20, 2018                By:     /s/  Andrew Weissmann

Andrew Weissmann
Greg D. Andres (D.D.C. Bar No. 459221)
Kyle R. Freeny
U.S. Department of Justice
Special Counsel's Office
950 Pennsylvania Avenue NW
Washington, DC 20530
Telephone: (202) 616-0800

*Attorneys for the United States of America*