# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| | ) | Criminal No. 1:17-cr-00201-ABJ |
| v. | ) | |
| | ) | Judge Amy Berman Jackson |
| | ) | |
| PAUL J. MANAFORT, JR., | ) | **ORAL ARGUMENT REQUESTED** |
| | ) | |
| | ) | |
| *Defendant.* | ) | |
| | ) | |

## <u>DEFENDANT'S MOTION TO DISMISS THE SUPERSEDING INDICTMENT</u>

Kevin M. Downing
(D.C. Bar #1013894)
Thomas E. Zehnle
(D.C. Bar #415556)
601 New Jersey Avenue, N.W.
Suite 620
Washington, D.C.  20001
kevindowning@kdowninglaw.com
tezehnle@gmail.com

*Counsel for Defendant Paul J. Manafort, Jr.*

March 14, 2018

# **<u>TABLE OF CONTENTS</u>**

<u>Page</u>

INTRODUCTION ................................................................................................... 1

BACKGROUND ................................................................................................... 3

I.     Legal Background ........................................................................................ 3

       A.     Political Accountability ..................................................................3

       B.     The Special Counsel Regulations ..................................................5

       C.     The Appointment Order at Issue Here ............................................7

II.    Proceedings Before This Court.................................................................... 8

       A.     The Investigation ...........................................................................8

       B.     The Indictment and Superseding Indictments in This Court ..................9

       C.     The Threat of Additional Investigations and Prosecutions, Mr. Manafort's
              Civil Suit, and the New Indictments in Another Jurisdiction ...............11

ARGUMENT ...................................................................................................... 13

I.     The Superseding Indictment Must Be Dismissed Because the Special Counsel's
       Appointment Was *Ultra Vires* ...................................................................... 14

       A.     The Acting Attorney General's Power To Grant Jurisdiction Is Limited to
              Specifically Identified Matters and Related Obstruction Efforts..................14

       B.     The Appointment Order Exceeds the Acting Attorney General's Authority
              Under the Special Counsel Regulations.................................................17

       C.     The Superseding Indictment Must Be Dismissed for Want of Jurisdiction...........21

       D.     The Superseding Indictment Must Be Dismissed Under Rules 6(d) and
              7(c) Because the Special Counsel Lacked Authority To Participate in the
              Grand Jury Proceedings and To Sign the Superseding Indictment......................27

II.    The Superseding Indictment Exceeds Even the Authority the Appointment Order
       Purports To Grant ........................................................................................ 31

       A.     The Appointment Order Purports To Grant Authority Only Over Matters
              That "Arise Directly From" the Special Counsel's Investigation.........................31

B.    The Charges Against Mr. Manafort Do Not "Arise Directly From" the
      Special Counsel's Investigation.............................................................................34

C.    The Superseding Indictment Violated Rules 6(d) and 7(c) Because It
      Exceeds the Scope of the Appointment Order.......................................................36

D.    This Court Lacks Jurisdiction and Dismissal Is Otherwise Warranted ................37

CONCLUSION..................................................................................................................... 38

# <u>TABLE OF AUTHORITIES</u>

Page(s)

## Cases

*Alden v. Maine*, 527 U.S. 706 (1999) ....................................................................3

*Bank of Nova Scotia v. United States*, 487 U.S. 250 (1988)...............................29, 31, 37

*Dep't of Hous. & Urban Dev. v. Rucker*, 535 U.S. 125 (2002)....................................18

*Dolan v. U.S. Postal Service*, 546 U.S. 481 (2006) ...................................................32

*Erie Blvd. Hydropower, LP v. FERC*,
    878 F.3d 258 (D.C. Cir. 2017)................................................................................22

\* *In re Espy*, 145 F.3d 1365 (D.C. Cir. 1998)............................................................ *passim*

*Fed. Election Comm'n v. NRA Political Victory Fund*,
    513 U.S. 88 (1994).....................................................................................22, 23

*Fed. Ins. Co. v. Tri-State Ins. Co.*, 157 F.3d 800 (10th Cir. 1998)................................32

*Free Enter. Fund v. Pub. Co. Accounting Oversight Bd.*,
    561 U.S. 477 (2010)...........................................................................................3

*Juluke v. Hodel*, 811 F.2d 1553 (D.C. Cir. 1987) .....................................................12

*Larson v. Domestic & Foreign Commerce Corp.*, 337 U.S. 682 (1949).......................25

*In re Lehman Bros. Holdings, Inc.*, 855 F.3d 459 (2d Cir. 2017)................................32

*Mehle v. Am. Mgmt. Sys., Inc.*,
    172 F. Supp. 2d 203 (D.D.C. 2001)....................................................................22, 25

*Morrison v. Olson*, 487 U.S. 654 (1988) ..............................................................4, 33

*Nat'l Envtl. Dev. Ass'n's Clean Air Project v. EPA*,
    752 F.3d 999 (D.C. Cir. 2014)..............................................................................22

*Old Republic Ins. Co. v. Cont'l Motors, Inc.*,
    877 F.3d 895 (10th Cir. 2017) ..............................................................................32

*Panhandle E. Pipe Line Co. v. FERC*, 613 F.2d 1120 (D.C. Cir. 1979) .....................22

*Pearson v. Callahan*, 555 U.S. 223 (2009)...............................................................3

*Pease v. Commonwealth*, 482 S.E.2d 851 (Va. Ct. App. 1997) ...................................31

*People v. Munson*, 150 N.E. 280 (Ill. 1925) .............................................................31

*Regal Constr. Corp. v. Nat'l Union Fire Ins. Co. of Pittsburgh*,
    15 N.Y.3d 34 (2010) ........................................................................32

*Rehberg v. Paulk*, 566 U.S. 356 (2012) ..............................................29

*Richter v. Analex Corp.*, 940 F. Supp. 353 (D.D.C. 1996) ..................35

*SFS Check, LLC v. First Bank of Del.*, 774 F.3d 351 (6th Cir. 2014) .........35

*State v. Hardy*, 406 N.E.2d 313 (Ind. Ct. App. 1980)..........................31

*U.S. Indus./Fed. Sheet Metal, Inc. v. Dir., Office of Workers' Comp. Programs,
    U.S. Dep't of Labor*, 455 U.S. 608 (1982)...............................32

*In re United States*, 345 F.3d 450 (7th Cir. 2003) ......................22, 25

*United States v. Alcantar-Valenzuela*, 191 F.3d 461 (9th Cir. 1999) ........28, 37

*United States v. Bennett*, 464 F. App'x 183 (4th Cir. 2012)..................21

*United States v. Boruff*, 909 F.2d 111 (5th Cir. 1990) ................27, 29, 36, 37

*United States v. Cohen*, 273 F. 620 (D. Mass. 1921)...........................25

*United States v. Durham*, 941 F.2d 886 (9th Cir. 1991)........................22

*United States v. Fowlie*, 24 F.3d 1059 (9th Cir. 1994) ..............., 27, 28, 37

*United States v. Garcia-Andrade*,
    No. 13-CR-993-IEG, 2013 WL 4027859 (S.D. Cal. Aug. 6, 2013) ...............25

*United States v. Huston*, 28 F.2d 451 (N.D. Ohio 1928) ......................25

*United States v. Male Juvenile*, 148 F.3d 468 (5th Cir. 1998)..........25, 29, 37

*United States v. Mechanik*, 475 U.S. 66 (1986)........................30, 31, 37

*United States v. Nixon*, 418 U.S. 683 (1974).........................22, 23

*United States v. Poindexter*, 859 F.2d 216 (D.C. Cir. 1988) ................27

* *United States v. Providence Journal Co.*, 485 U.S. 693 (1988) ...........*passim*

*United States v. R. Enters., Inc.*, 498 U.S. 292 (1991).....................28, 29

*United States v. Rosenthal*, 121 F. 862 (C.C.S.D.N.Y. 1903) ................24

*United States v. Sells Eng'g, Inc.*, 463 U.S. 418 (1983) ..................29, 31

*United States v. Singleton*, 165 F.3d 1297 (10th Cir. 1999) ...............21

*United States v. Tucker*, 78 F.3d 1313 (8th Cir. 1996) ..................................................33

*United States v. Wilson*, 26 F.3d 142 (D.C. Cir. 1994).................................................14

*United States v. Wooten*, 377 F.3d 1134 (10th Cir. 2004).......................................28, 37

*Young v. U.S. ex rel. Vuitton et Fils S.A.*, 481 U.S. 787 (1987)....................................6, 25

## STATUTES AND RULES

18 U.S.C. §2 ...............................................................................................................10

18 U.S.C. §371 ...........................................................................................................10

18 U.S.C. §3332(a) .....................................................................................................29

22 U.S.C. §612 ...........................................................................................................10

22 U.S.C. §618(a)(l) ...................................................................................................10

28 U.S.C. §515 ...........................................................................................................22

28 U.S.C. §1826 .........................................................................................................33

28 U.S.C. §2680(b) .....................................................................................................32

\* Ethics in Government Act of 1978, Pub. L. No. 95-521, 92 Stat. 1824 ............................... *passim*

Fed. R. Crim. P. 1(b)(1) ........................................................................................27, 29

Fed. R. Crim. P. 1(b)(1)(A).........................................................................................28

Fed. R. Crim. P. 1(b)(1)(B).........................................................................................28

Fed. R. Crim. P. 1(b)(1)(C).........................................................................................28

Fed. R. Crim. P. 1(b)(1)(D).........................................................................................28

\* Fed. R. Crim. P. 6(d) ....................................................................................... *passim*

Fed. R. Crim. P. 6(d)(1) ..............................................................................................28

\* Fed. R. Crim. P. 7(c) ....................................................................................... *passim*

Fed. R. Crim. P. 12(b)(2) ............................................................................................13

Fed. R. Crim. P. 12(b)(3) ............................................................................................14

Fed. R. Crim. P. 42(b).................................................................................................23

## LEGISLATIVE MATERIALS

*The Future of the Independent Counsel Act: Hearing Before the S. Comm. on Gov't Affairs*, 106th Cong. (1999) ..................................................................................4, 6

## REGULATIONS

\* 28 C.F.R. §§ 600.1-600.10 ................................................................................ *passim*

28 C.F.R. § 600.1 ...............................................................................................5, 15

28 C.F.R. § 600.1(a) ................................................................................................21

28 C.F.R. § 600.4 ...............................................................................................5, 14

\* 28 C.F.R. § 600.4(a) ......................................................................................... *passim*

\* 28 C.F.R. § 600.4(b) .......................................................................................... *passim*

## ADMINISTRATIVE MATERIALS

\* Office of the Deputy Att'y Gen., *Appointment of Special Counsel To Investigate Russian Interference with the 2016 Presidential Election and Related Matters* (May 17, 2017)............................................................................................ *passim*

*Office of Special Counsel*, 64 Fed. Reg. 37038 (July 9, 1999) ...................................14, 15, 16, 17

Press Release, U.S. Dep't of Justice, *Attorney General Sessions Statement on Recusal* (Mar. 2, 2017) ....................................................................................................7

## OTHER AUTHORITIES

Press Release, The American Presidency Project, *Donald J. Trump Declares Candidacy for President of the United States* (June 16, 2015) ........................................9, 10, 26

Matt Apuzzo, Matthew Rosenberg & Emmarie Huetteman, *Comey Confirms Inquiry on Russia and Trump Allies*, N.Y. TIMES, Mar. 21, 2017 ........................................7, 28

Complaint, *Manafort v. Dep't of Justice*, No. 1:18-CV-00011-ABJ, Dkt. 1 (D.D.C. Jan. 3, 2018) ...........................................................................................11

Michael Cooper, *Savior or Machiavelli, McCain Aide Carries On*, N.Y. TIMES, Oct. 23, 2007....................................................................................................30

\* Defs.' Mem. in Support of Mot. To Dismiss, *Manafort v. Dep't of Justice*, No. 1:18-CV-00011-ABJ, Dkt. 16-1 (D.D.C. Feb. 2, 2018) .......................................... *passim*

*The Federalist* (Rossiter ed., 1961)
  *No. 70* (Hamilton) ...................................................................................................3

Indictment, *United States v. Manafort*, No. 1:18-cr-00083-TSE-1, Dkt. 1
  (E.D. Va. Feb. 22, 2018) .........................................................................................12

Meghan Keneally, *Timeline of Paul Manafort's Role in the Trump Campaign*,
  ABCNEWS.COM, Oct. 30, 2017, http://abcnews.go.com/Politics/timeline-paul-
  manaforts-role-trump-campaign/story?id=50808957 ........................................10, 26

Carol D. Leonnig, Tom Hamburger & Rosalind S. Helderman, *FBI Conducted Predawn
  Raid of Former Trump Campaign Chairman Manafort's Home*, WASH. POST,
  Aug. 9, 2017 ..............................................................................................................9

Clifford J. Levy, *Toppled in Ukraine but Nearing a Comeback*, N.Y. TIMES, Jan. 14,
  2010............................................................................................................................30

Clifford J. Levy, *Ukrainian Prime Minister, Once Seen as Archvillain, Reinvents Himself*,
  N.Y. TIMES, Sept. 30, 2007 .....................................................................................30

Gerard E. Lynch, *The Problem Isn't in the Starrs But in a Misguided Law*, WASH. POST
  Feb. 22, 1998..............................................................................................................4

Barry Meier, *In McCain Campaign, a Lobbying Labyrinth*, N.Y. TIMES, May 25, 2008 .............30

Barry Meier, *Lawmakers Seek To Close Foreign Lobbyist Loopholes*, N.Y. TIMES,
  June 12, 2008 .............................................................................................................30

Pl.'s Mem. of Law in Opp. to Defs.' Mot. To Dismiss, *Manafort v. Dep't of Justice*,
  No. 1:18-CV-00011-ABJ, Dkt. 24 (D.D.C. Feb. 16, 2018)....................................12

Cass R. Sunstein, *Bad Incentives and Bad Institutions*, 86 GEO. L.J. 2267 (1998).......................4

Superseding Indictment, *United States v. Manafort*, No. 1:18-cr-00083-TSE-1, Dkt. 9
  (E.D. Va. Feb. 22, 2018) ................................................................................13, 26, 29

Dick Thornburgh, Mark H. Tuohey III & Michael Davidson, *Attorney General's
  Special Counsel Regulations*, BROOKINGS (Sept. 15, 1999).........................5, 14, 20

Adrian Vermeule, Morrison v. Olson *Is Bad Law*, LAWFARE
  (June 9, 2017) ..............................................................................................................4

## <u>INTRODUCTION</u>

This prosecution breaks sharply with a principle fundamental to this Nation's structure and traditions—that the power to enforce criminal laws must be exercised by officers who are politically accountable to the people.  The Nation briefly experimented with politically unaccountable "independent counsel" under the Ethics in Government Act of 1978, but that experiment proved disastrous.  As a result, Congress—with bipartisan support—refused to renew the Act.  The Department of Justice concomitantly revamped its regulations to ensure the Department's fidelity to the principle of political accountability.  Those regulations still authorize the appointment of outside "special counsel" where conflicts of interest demand it.  But the authority to make those appointments has been sharply limited.  The appointments can be made only by politically accountable officials (the Attorney General or Acting Attorney General).  The scope of the special counsel's jurisdiction must be limited by a specific factual statement identifying the matters to be investigated.  And any expansion of authority beyond that original scope must be approved, following consultation, by a politically accountable official.

The order appointing the Special Counsel here exceeds those limits on appointment authority.  Under Department of Justice regulations, the Acting Attorney General can appoint special counsel only to investigate specifically identified issues.  Jurisdiction to investigate other matters beyond that scope—including matters arising in the course of the investigation—can be added only following consultation with and approval by the Attorney General or Acting Attorney General.  But the appointment order here purports to give the Special Counsel power to investigate a specifically identified matter ***and*** anything that arises in the course of the investigation, without further consulting and obtaining approval from the Attorney General or Acting Attorney General.  The regulations do not allow for such an expansive appointment.

That departure from the boundaries of the appointment authority could not be more stark here.  The factual statement in the appointment order directs the Special Counsel to investigate a specific matter—alleged coordination between the Russian government and the Trump campaign during the 2016 election.  But the appointment order also purports to give the Special Counsel jurisdiction to investigate and prosecute anything else he might discover during the course of the original investigation.  That further power is not merely tantamount to a blank check.  It is a blank check the Special Counsel has cashed, repeatedly.  The original and superseding indictments do not focus in the slightest on alleged coordination between the Russian government and the Trump campaign during the 2016 election, or even Mr. Manafort's brief involvement in the campaign.  They focus instead on Mr. Manafort's consulting work in Ukraine, which ended in 2014, years before the Trump campaign even launched; on Mr. Manafort's bank accounts and tax filings from 2006 to 2014, which have no connection to the Russian government and again predate the Trump campaign by years; and on Mr. Manafort's personal expenditures from 2006 to 2014, which likewise have no connection to the Russian government and predate the Trump campaign and Mr. Manafort's brief involvement in it by years.  Those issues simply have no connection to alleged coordination with the Russian government or the 2016 presidential election.

Even apart from the invalidity of the appointment order, the indictment goes well beyond any authority that order purports to grant.  While the appointment order purports to empower the Special Counsel to investigate and prosecute matters directly arising from the investigation, the charges go well beyond that scope.  Indeed, the charges cover alleged acts that politically accountable prosecutors ***already knew*** about and had ***decided not to prosecute*** years ago.  That old news could not have arisen from the Special Counsel's investigation.  Each step the Special

Counsel has taken against Mr. Manafort has been without lawful authority.  As a result, this case must be dismissed.

While dismissal in the case at bar is not a sufficient remedy, it is a step in the right direction.  After being indicted in this jurisdiction, Mr. Manafort was threatened with additional indictments properly venued in other jurisdictions, covering still more alleged conduct with no relation to alleged coordination with the Russian government.  He has now been indicted twice in another jurisdiction on precisely such charges.  Mr. Manafort thus faces a game of criminal-procedure whack-a-mole against a Special Counsel whose massive resources he cannot possibly hope to match.  While only declaratory or injunctive relief can remedy that injury—and Mr. Manafort has sought that relief in a civil suit—relief from this indictment is necessary and proper as well.  The Special Counsel's lack of authority deprives this Court of jurisdiction to hear this case.  Mr. Manafort's motion should be granted, and the superseding indictment should be dismissed.

## BACKGROUND

I.      LEGAL BACKGROUND

A.      Political Accountability

"[S]afety in the republican sense," the Framers understood, requires "a due dependence on the people, and a due responsibility."  *The Federalist* No. 70, at 422 (Hamilton) (C. Rossiter ed., 1961).  Indispensable to that principle is the "political accountability" of public officers, which is "essential to our liberty and republican form of government."  *Alden v. Maine*, 527 U.S. 706, 751 (1999); *see also, e.g.*, *Free Enter. Fund v. Pub. Co. Accounting Oversight Bd.*, 561 U.S. 477, 483 (2010) ("Since 1789, the Constitution has been understood to empower the President to keep [public] officers accountable."); *cf. Pearson v. Callahan*, 555 U.S. 223, 231 (2009)

(recognizing the "important interest[]" of "hold[ing] public officials accountable when they exercise power irresponsibly").

Congress briefly departed from that principle of public accountability when it enacted the independent counsel statute. *See* Ethics in Government Act of 1978, Pub. L. No. 95-521, 92 Stat. 1824. That now-infamous law allowed attorneys outside the Department of Justice ("DOJ") to devote nearly unbounded resources to pursuing Executive Branch officials without meaningful accountability to the President or the Executive Branch. A bipartisan consensus soon recognized that the act was a "disastrous failure." Cass R. Sunstein, *Bad Incentives and Bad Institutions*, 86 Geo. L.J. 2267, 2281-83 (1998). Kenneth Starr, arguably the most powerful independent counsel ever appointed, thus advised Congress that the statute was "structurally unsound" and "constitutionally dubious." *The Future of the Independent Counsel Act: Hearing Before the S. Comm. on Gov't Affairs*, 106th Cong. 425 (1999). Attorney General Janet Reno agreed: The law "create[d] a prosecutor who is unlike any other"—one who had "no competing public duties" and was not "responsible to the people." *Id.* at 244, 246. According to General Reno, "[i]t can't get any worse." *Id.* at 261.

In 1999, Congress refused to reauthorize the statute, expressing a "bipartisan judgment . . . that the Independent Counsel was a kind of constitutional Frankenstein's monster, which ought to be shoved firmly back into the ice from which it was initially untombed." Adrian Vermeule, Morrison v. Olson *Is Bad Law*, LAWFARE (June 9, 2017). That law had created "unaccountable prosecutors wielding infinite resources whenever there is a plausible allegation of a technical crime." Gerard E. Lynch, *The Problem Isn't in the Starrs But in a Misguided Law*, WASH. POST, Feb. 22, 1998, at C3. The statute was "utter[ly] incompatib[le] . . . with our constitutional traditions." *Morrison v. Olson*, 487 U.S. 654, 709 (1988) (Scalia, J., dissenting).

4

B.      **The Special Counsel Regulations**

As the independent counsel statute was set to lapse in 1999, Congress undertook a bipartisan project to consider how to prevent similar abuses going forward.  *See generally* Dick Thornburgh, Mark H. Tuohey III & Michael Davidson, *Attorney General's Special Counsel Regulations*, BROOKINGS (Sept. 15, 1999).  The DOJ eventually promulgated regulations designed to accommodate the need to appoint outside "special counsel"—at least where ordinary prosecutors in the Executive Branch may have conflicts of interest—with the parallel need to vest responsibility and oversight in politically accountable officials.  *See* 28 C.F.R. §§ 600.1-600.10 (the "Special Counsel Regulations").

The Special Counsel Regulations achieve that goal by imposing careful limits on the authority to appoint special counsel.  Only politically accountable federal officers—*i.e.*, the Attorney General or Acting Attorney General—may make such appointments.  28 C.F.R. § 600.1.[1]  And the jurisdiction the Attorney General or Acting Attorney General can grant through an appointment is strictly limited.  Under § 600.4(a), the grant of "[o]riginal jurisdiction" to special counsel must provide "a ***specific factual statement*** of the matter to be investigated."  *Id.* § 600.4(a) (emphasis added).  Section 600.4(a) further provides that the grant of original jurisdiction "shall . . . include" authority to investigate and prosecute obstruction efforts—*i.e.*, "federal crimes committed in the course of, and with intent to interfere with, the Special Counsel's investigation."  *Id.*  But the Special Counsel Regulations ***do not*** authorize the Attorney General or Acting Attorney General to concomitantly grant any other authority as part of the special counsel's "original jurisdiction."  *See* 28 C.F.R. § 600.4.

---

[1] As here, "in cases in which the Attorney General is recused, the Acting Attorney General[ ] will appoint a Special Counsel when he or she determines that criminal investigation of a person or matter is warranted."  28 C.F.R. § 600.1.

The Special Counsel Regulations do the opposite.   They provide that, to obtain jurisdiction to investigate or prosecute any other matter, a special counsel must request "additional jurisdiction" from the Attorney General or Acting Attorney General, as appropriate. *Id.* § 600.4(b).   "If in the course of his or her investigation the Special Counsel concludes that additional jurisdiction beyond that specified in his or her original jurisdiction is necessary . . . he or she **shall consult with the Attorney General [or Acting Attorney General], who will determine whether to include the additional matters** within the Special Counsel's jurisdiction or assign them elsewhere."   *Id.* (emphasis added).

Those limits on the appointment authority—in particular, denying the Attorney General and Acting Attorney General power to grant original jurisdiction that extends beyond a specific factual statement—were born of experience.   The independent counsel statute had set "no practical limits" on the scope of an independent counsel investigation.   *The Future of the Independent Counsel Act: Hearing Before the S. Comm. on Governmental Affairs*, 106th Cong. 245 (1999) (statement of Janet Reno, Att'y Gen., U.S. Dep't of Justice).   As a result, an investigation undertaken for one reason often transmogrified into an in-depth probe on unrelated matters.   Armed with unlimited resources, focused on a handful of targets, and unencumbered by competing obligations or politically accountable oversight, independent counsel faced pressure to "artificially . . . prosecute" if **anything** seemed prosecutable.   *Id.*

That unbounded exercise of prosecutorial authority is wholly incompatible with our constitutional tradition.   "Even if a defendant is ultimately acquitted, forced immersion in criminal investigation and adjudication is a wrenching disruption of everyday life.   For this reason, we must have assurance that those who would wield this power will be guided **solely** by their sense of public responsibility for the attainment of justice."   *Young v. U.S. ex rel. Vuitton et*

*Fils S.A.*, 481 U.S. 787, 814 (1987) (emphasis added).  The Special Counsel Regulations set out to ensure precisely that—political accountability for the attainment of justice.

### C.    The Appointment Order at Issue Here

This case arises out of Acting Attorney General Rod Rosenstein's May 17, 2017 order naming Robert S. Mueller III as Special Counsel.  Office of the Deputy Att'y Gen., *Appointment of Special Counsel To Investigate Russian Interference with the 2016 Presidential Election and Related Matters* (May 17, 2017) ("Appointment Order").  In early 2017, the DOJ revealed that it was investigating allegations that Donald J. Trump's presidential campaign coordinated with the Russian government to influence the 2016 presidential election.  Matt Apuzzo, Matthew Rosenberg & Emmarie Huetteman, *Comey Confirms Inquiry on Russia and Trump Allies*, N.Y. TIMES, Mar. 21, 2017, at A1.  The Attorney General recused himself from any investigations into that subject in March 2017, appointing the Deputy Attorney General as Acting Attorney General with respect to the investigation.  Press Release, U.S. Dep't of Justice, *Attorney General Sessions Statement on Recusal* (Mar. 2, 2017).  As Acting Attorney General, the Deputy Attorney General then issued the Appointment Order at issue here.

Paragraphs (b)(i) and (b)(iii) of the Appointment Order set out the Special Counsel's "[o]riginal jurisdiction."  28 C.F.R. § 600.4(a).  In particular, paragraph (b)(i) provides "a **specific factual statement** of the matter to be investigated," *id.* § 600.4(a) (emphasis added), empowering the Special Counsel to pursue "any links and/or coordination between the Russian government and individuals associated with the campaign of President Donald Trump," Appointment Order ¶ (b)(i).  And paragraph (b)(iii) of the Appointment Order provides that the Special Counsel may also pursue "any other matters within the scope of 28 C.F.R. § 600.4(a)," *i.e.*, efforts to obstruct the authorized investigation.  Appointment Order ¶ (b)(iii).

Paragraph (b)(ii) of the Appointment Order, however, purports to grant the Special Counsel further authority.  It states that he may also investigate and prosecute "*any matters that arose or may arise* directly from the investigation."   Appointment Order ¶(b)(ii) (emphasis added).  As explained below, the Acting Attorney General has no authority to grant that power *ab initio* as part of the Special Counsel's original jurisdiction.  *See* pp. 14-21, *infra*.  To the contrary:  Grants of "[o]riginal jurisdiction" are limited to the "specific factual statement of the matter to be investigated" and obstruction efforts.  28 C.F.R. § 600.4(a).  To investigate any matter beyond that—including matters that arise during the course of the investigation—a grant of additional jurisdiction is required.  The Special Counsel must "consult with the [Acting] Attorney General" to obtain that "additional jurisdiction."  *See id.* § 600.4(b).  And the Acting Attorney General must "determine whether to include the additional matters within the Special Counsel's jurisdiction or assign them elsewhere."  *Id.*  Granting the Special Counsel jurisdiction *ex ante* to pursue any matters that "arose or may arise directly from the investigation" bypasses the required consultation; it bypasses the Attorney General's issue-specific determination; and, with those, it bypasses the decision by a politically accountable official that the Special Counsel Regulations were designed to ensure.  Appointment Order ¶(b)(ii).

## II.   PROCEEDINGS BEFORE THIS COURT

### A.   The Investigation

Once appointed, the Special Counsel immediately began investigating matters beyond alleged coordination between the Russian government and the Trump presidential campaign.  In particular, the Special Counsel focused on Mr. Manafort's foreign consulting work in Ukraine, which had ended in 2014, Mr. Manafort's bank accounts and tax filings from 2006 to 2014, and Mr. Manafort's personal expenditures from 2006 to 2014.  Dkt. 202 ("Superseding Indictment")

¶¶ 32-34.   Those issues had no connection to any alleged coordination with the Russian government.  Nor did they have any relation to the 2016 presidential election.

In July 2017, the Special Counsel applied for, obtained, and executed an invasive, early-morning search of Mr. Manafort's home in Alexandria, Virginia.  Carol D. Leonnig, Tom Hamburger & Rosalind S. Helderman, *FBI Conducted Predawn Raid of Former Trump Campaign Chairman Manafort's Home*, WASH. POST, Aug. 9, 2017.  According to the Special Counsel, that Appointment Order grants him jurisdiction and authority to obtain materials regarding purported potential tax and white-collar crimes committed on or after January 1, 2006—nearly a decade before the Trump presidential campaign began, *see* Press Release, The American Presidency Project, *Donald J. Trump Declares Candidacy for President of the United States* (June 16, 2015).  Relying on that same authority, the Special Counsel issued more than 100 subpoenas related to Mr. Manafort, requesting records from as far back as January 1, 2005.  All of those actions—the search and the subpoenas—related to alleged dealings that have been widely reported upon since at least 2007.  *See* pp. 29-30 & n.7, *infra*.

**B.     The Indictment and Superseding Indictments in This Court**

On October 27, 2017, the Special Counsel signed a nine-count indictment against Mr. Manafort relating to Mr. Manafort's consulting work for the Ukrainian government, a Ukrainian political party, and a Ukrainian politician between 2006 to 2014.  Dkt. 13 ¶¶ 1-6.  The indictment did not accuse Mr. Manafort of any crimes involving the Russian government or the 2016 campaign.  *See generally* Dkt. 13.

The Special Counsel has since signed a series of superseding indictments, most recently on February 23, 2018.  *See* Dkts. 201 & 202.  Once again, the operative Superseding Indictment focuses on Mr. Manafort's consulting work in Ukraine.  Dkt. 202 ¶¶ 1-6.  It accuses Mr.

Manafort of three schemes that have no connection to either the Russian government or the 2016 election.

*First*, the Superseding Indictment alleges that Mr. Manafort committed financial and tax offenses by sending wire transfers from certain foreign countries other than Russia—namely, Cyprus, the United Kingdom, and the Grenadines. Superseding Indictment ¶¶ 15-18. The alleged wire transfers took place from 2008 to 2014, ending at least a year before the Trump campaign launched. *Id.*; *see* The American Presidency Project, *supra*.

*Second,* the Superseding Indictment alleges that, from 2006 to 2014, Mr. Manafort assisted the Ukrainian government, a Ukrainian political party, and a Ukrainian politician, Viktor Yanukovych, but failed to register and disclose his activities, in violation of 22 U.S.C. §§ 612, 618(a)(l), and 18 U.S.C. §§ 2, 371. Superseding Indictment ¶¶ 20, 37-39, 44-45. The topics of Mr. Manafort's consulting allegedly included "Ukraine sanctions, the validity of Ukraine elections," and the imprisonment of Mr. Yanukovych's Ukrainian political rival, Yulia Tymoshenko. *Id.* ¶¶ 23, 40-41. Finally, the Superseding Indictment alleges that Mr. Manafort retained a United States law firm to report about Ms. Tymoshenko's criminal trial in Ukraine and then hired a "group of former senior European politicians to take positions favorable to Ukraine." *Id.* ¶¶ 23, 29-31. None of Mr. Manafort's consulting work is alleged to involve the Russian government or the 2016 election. *See id.*

*Third*, the Superseding Indictment charges Mr. Manafort with tax violations for failing to disclose his interests in foreign bank accounts, none of which are alleged to be in Russia. Superseding Indictment ¶¶ 32-34. The alleged failures to disclose took place between 2008 and 2014—years before Mr. Manafort's brief involvement in the Trump campaign or the campaign itself. *Id.* ¶ 34; *see* The American Presidency Project, *supra*; Meghan Keneally, *Timeline of Paul*

*Manafort's Role in the Trump Campaign*, ABCNEWS.COM, Oct. 30, 2017, http://abcnews.go.com/Politics/timeline-paul-manaforts-role-trump-campaign/story?id=50808957.

The Superseding Indictment nowhere mentions any "Russian government[] efforts to interfere in the 2016 presidential election," "any links and/or coordination between the Russian government and individuals associated with the campaign of President Donald Trump," or any acts to interfere with an investigation into those two subjects. *See generally* Appointment Order.

**C.      The Threat of Additional Investigations and Prosecutions, Mr. Manafort's Civil Suit, and the New Indictments in Another Jurisdiction**

In January 2018, Mr. Manafort filed a civil action against the Special Counsel seeking to set aside the Appointment Order and all actions taken against Mr. Manafort pursuant to that Order.  Complaint, *Manafort v. Dep't of Justice*, No. 1:18-CV-00011-ABJ, Dkt. 1 (D.D.C. Jan. 3, 2018) ("Compl.").  The complaint includes two counts.  Count I alleges that the Appointment Order—Paragraph (b)(ii) in particular—exceeds the Acting Attorney General's authority under the Special Counsel Regulations.  Compl. ¶¶ 52-53.  Specifically, it alleges that the Acting Attorney General lacked power to give the Special Counsel original jurisdiction to veer wide of the specific factual statement of the matter to be investigated and pursue any matter arising during his investigation.  *Id.* ¶¶ 50-59.  Count II incorporates the allegations in Count I and further alleges that—even if the Acting Attorney General had authority to grant that expansive original jurisdiction—the Special Counsel's actions exceed that scope.  *Id.* ¶¶ 62-63.  The complaint thus also requests that the Court enjoin the Special Counsel from investigating matters outside the specific factual description of the matter to be investigated.  *Id.* at 17 (prayer for relief).

The government moved to dismiss Mr. Manafort's complaint for failure to state a claim. Defs.' Mot. To Dismiss, *Manafort v. Dep't of Justice*, No. 1:18-CV-00011-ABJ, Dkt. 16 (D.D.C.

11

Feb. 2, 2018).  "First and most fundamentally," the government claimed, the civil suit should be dismissed because a motion to dismiss the indictment in the criminal case would provide Mr. Manafort an "adequate legal remedy."  Defs. ' Mem. in Support of Mot. To Dismiss, *Manafort v. Dep't of Justice*, No. 1:18-CV-00011-ABJ, Dkt. 16-1, at 2 (D.D.C. Feb. 2, 2018).  "If Manafort believes the Special Counsel lacks authority to prosecute him," the government argued, "he is free to raise that objection in his criminal action by filing a motion to dismiss the indictment pursuant to Rule 12 of the Federal Rules of Criminal Procedure."  *Id.*  Mr. Manafort opposed the motion and responded that dismissing the Superseding Indictment would not provide an adequate remedy:  It could not prevent the Special Counsel from exercising *ultra vires* power in "multiple investigations, in multiple jurisdictions, on multiple matters," or from continuing to return superseding indictments or filing multiple cases in this Court, as the Special Counsel had threatened.  Pl.'s Mem. of Law in Opp. to Defs.' Mot. To Dismiss, *Manafort v. Dep't of Justice*, No. 1:18-CV-00011-ABJ, Dkt. 24, at 16 (D.D.C. Feb. 16, 2018).  A hearing on the government's motion is set for April 4, 2018.[2]

During briefing on the motion to dismiss, the Special Counsel in fact brought different charges in a different jurisdiction.  In February 2018, the Special Counsel obtained an eighteen-count indictment against Mr. Manafort in the Eastern District of Virginia.  Indictment, *United States v. Manafort*, No. 1:18-cr-00083-TSE-1, Dkt. 1 (E.D. Va. Feb. 22, 2018) (originally filed under seal on February 13, 2018).  Like the indictments before this Court, those charges have no

---

[2] As Mr. Manafort has explained in the civil suit, the government's contention that dismissal of this indictment constitutes an "adequate" remedy is mistaken.  Pl.'s Mem. of Law in Opp. to Defs.' Mot. To Dismiss, *supra*, at 31-32; *see Juluke v. Hodel*, 811 F.2d 1553, 1558-59 (D.C. Cir. 1987).  Nonetheless, Mr. Manafort accepts the government's invitation to file this motion to obtain any relief it can provide.

connection to alleged coordination between the Russian government and the Trump presidential campaign.

Barely a week later, the Special Counsel obtained a superseding indictment in that jurisdiction charging Mr. Manafort based on allegations that—again—have no connection to the Russian government or the Trump presidential campaign.  Superseding Indictment, *United States v. Manafort*, No. 1:18-cr-00083-TSE-1, Dkt. 9 (E.D. Va. Feb. 22, 2018).  Instead, the indictment in the Eastern District of Virginia focuses (once again) on Mr. Manafort's consulting efforts involving Ukraine—years before the 2016 election.  *Id.* ¶¶ 1-2.  And it claims that Mr. Manafort and his business partner, Richard Gates, defrauded certain financial institutions in the United States.  *Id.* ¶ 3.

## ARGUMENT

Having endured the excesses of prosecutorial authority without corresponding political accountability under the Ethics in Government Act, the DOJ promulgated the Special Counsel Regulations that limit the Attorney General's, and the Acting Attorney General's, authority to appoint and accord jurisdiction to special counsel.  The Appointment Order here exceeds those careful limits:  It purports to afford the Special Counsel original jurisdiction that the Acting Attorney General has no authority to grant.  Because the Acting Attorney General had no authority to grant the Special Counsel that original jurisdiction, the Special Counsel had no authority to exercise it.  The Superseding Indictment, moreover, extends beyond even the scope of jurisdiction the Appointment Order purports to grant.

Under those circumstances, dismissal of the indictment is warranted.  Federal Rule of Criminal Procedure 12(b)(2) permits a defendant to make "[a] motion that the court lacks jurisdiction . . . at any time while the case is pending."  Fed. R. Crim. P. 12(b)(2).  It is well established that, when the attorney who initiated a criminal proceeding is "without authorization

to appear on behalf of the United States," "jurisdiction is lacking." *United States v. Providence Journal Co.*, 485 U.S. 693, 708 (1988). The United States agrees. Opposing Mr. Manafort's civil suit, it urged that Mr. Manafort has an "adequate remedy" in this criminal action: Mr. Manafort's claim that "the Special Counsel lacks authority," it declared, should be raised in this "criminal action by filing a motion to dismiss the indictment pursuant to Rule 12 of the Federal Rules of Criminal Procedure." Defs.' Mem. in Support of Mot. To Dismiss, *supra*, at 2. For similar reasons, dismissal is also warranted based on "defect[s] in instituting the prosecution" and defects in "the indictment" under Fed. R. Crim. P. 12(b)(3).

## I. THE SUPERSEDING INDICTMENT MUST BE DISMISSED BECAUSE THE SPECIAL COUNSEL'S APPOINTMENT WAS *ULTRA VIRES*

### A. The Acting Attorney General's Power To Grant Jurisdiction Is Limited to Specifically Identified Matters and Related Obstruction Efforts

In 1999, the DOJ promulgated the Special Counsel Regulations, 28 C.F.R. §§ 600.1-600.10, "to replace the procedures set out in the Independent Counsel Reauthorization Act of 1994." *Office of Special Counsel*, 64 Fed. Reg. 37038, 37038 (July 9, 1999). Unlike the old independent counsel system, the Special Counsel Regulations do not permit a special counsel's jurisdiction to be "wide in perimeter and fuzzy at the borders." *United States v. Wilson*, 26 F.3d 142, 148 (D.C. Cir. 1994). The Special Counsel Regulations strictly circumscribe the Attorney General's or Acting Attorney General's authority to appoint an outside "special counsel," and they set clear requirements for such an appointment to ensure proper political accountability. *See* 28 C.F.R. § 600.4.

"Two vexing problems under the Independent Counsel Act" that the Special Counsel Regulations sought to address were "the tendency of some investigations to sprawl beyond the reason for their initiation and to do so without the discipline of limits on the public resources they consume." Thornburgh, *et al.*, *supra* (alteration and internal quotation marks omitted). To

prevent those problems from recurring, the Special Counsel Regulations grant authority to appoint special counsel only to politically accountable federal officers—the Attorney General or the Acting Attorney General if the Attorney General is recused.  *See* 28 C.F.R. § 600.1.  Thus, "ultimate responsibility for the matter [assigned to a special counsel] and how it is handled will continue to rest with the Attorney General (or the Acting Attorney General if the Attorney General is personally recused in the matter)."  *Office of Special Counsel*, 64 Fed. Reg. at 37038.  Under the Special Counsel Regulations, moreover, the Attorney General and Acting Attorney General only have authority to grant a special counsel jurisdiction of limited and carefully delineated scope.

In particular, 28 C.F.R. § 600.4(a) defines and limits the Attorney General's or Acting Attorney General's authority to grant special counsel "[o]riginal jurisdiction" to investigate and prosecute.  *Id.*  Under that provision, the Attorney General and Acting Attorney General are empowered to grant a special counsel "[o]riginal jurisdiction" only with respect to "***a specific factual statement of the matter to be investigated.***"  *Id.* (emphasis added); *see Office of Special Counsel*, 64 Fed. Reg. at 37039 ("[A] Special Counsel's jurisdiction will be stated as an investigation of ***specific facts***." (emphasis added)).  The only other jurisdiction that a special counsel may be granted as part of his or her original jurisdiction is "authority to investigate and prosecute federal crimes committed in the course of, and with intent to interfere with, the Special Counsel's investigation, such as perjury, obstruction of justice, destruction of evidence, and intimidation of witnesses; and to conduct appeals arising out of the matter being investigated and/or prosecuted."  *Office of Special Counsel*, 64 Fed. Reg. at 37039.  Beyond those categories, however, the Attorney General or Acting Attorney General has no authority to grant original jurisdiction—and a special counsel has no investigatory or prosecutorial power—except as set forth in the specific factual statement of the matter to be investigated.

The provision addressing "additional jurisdiction," 28 C.F.R. § 600.4(b), reinforces that limit.  It provides:  "If *in the course of his or her investigation* the Special Counsel concludes that additional jurisdiction beyond that specified in his or her original jurisdiction is necessary," he or she must obtain "additional jurisdiction" to investigate those matters from the Attorney General or Acting Attorney General as appropriate.  *Id.* (emphasis added).  That "additional jurisdiction" may only be granted after the special counsel "*consult[s] with the Attorney General [or Acting Attorney General]*," and after the Attorney General or Acting Attorney General "*determine[s]* whether to *include the additional matters* within the Special Counsel's jurisdiction or assign them elsewhere."  *Id.* (emphasis added).  When the special counsel, in the course of investigating matters set out in the grant of original jurisdiction, "conclude[s] that investigating otherwise *unrelated allegations* against a central witness in the matter is necessary to obtain cooperation," or "come[s] across evidence of additional, *unrelated crimes* by targets of his or her investigation," the special counsel should "report such matters to the Attorney General [or Acting Attorney General], and the Attorney General [or Acting Attorney General] w[ill] decide whether to grant the Special Counsel jurisdiction over the additional matters."  *Office of Special Counsel*, 64 Fed. Reg. at 37039 (emphasis added).

The Special Counsel Regulations thus could not be clearer.  For "[o]riginal jurisdiction," the Attorney General's or Acting Attorney General's power to grant investigatory authority is limited to a specific factual statement and associated obstruction efforts.  Further authority cannot be granted to a special counsel in the first instance.  Instead, any "additional jurisdiction" may be granted only following a specific request from a special counsel, consultation with the Attorney General or Acting Attorney General, and the Attorney General's or Acting Attorney General's decision to grant that authority.

That structure serves a critical role—it ensures that any decision regarding expanding the *scope* of an investigation is made by politically accountable officials.  Under the former Ethics in Government Act, independent counsel investigations became roving commissions, with ever-expanding scope, uncontrolled by politically accountable officials or competing priorities.  *See* p. 4, *supra*.  By restricting grants of original jurisdiction to specific factual statements, the Special Counsel Regulations prevent those excesses, ensuring that a politically accountable officer is responsible for the investigation's scope.  And by requiring a separate grant of any further jurisdiction—to address any matter that arose during the course of the investigation, for example—the Special Counsel Regulations ensure that any expansions are considered by and remain the responsibility of that same politically accountable official.  Together, those provisions prevent special counsel investigations from becoming unsupervised roving commissions, "strik[ing]" the right "balance between independence and accountability."  *Office of Special Counsel*, 64 Fed. Reg. at 37038.

## B.   The Appointment Order Exceeds the Acting Attorney General's Authority Under the Special Counsel Regulations

The Appointment Order cannot be reconciled with those careful limits on the appointment authority or the assurances of accountability they serve.  The "[o]riginal jurisdiction" conveyed in the Appointment Order includes language that resembles a "specific factual statement of the matter to be investigated."  28 C.F.R. § 600.4(a).  In particular, paragraph (i) of the Appointment Order authorizes the Special Counsel to investigate "any links and/or coordination between the Russian government and individuals associated with the campaign of President Donald Trump."  Appointment Order ¶(b)(i).  But Paragraph (b)(ii) goes beyond anything that might qualify as a specific factual statement.  It purports to grant the Special

Counsel further jurisdiction over "*any matters* that *arose or may arise* directly from the investigation." *Id.* ¶(b)(ii) (emphasis added).

The Acting Attorney General cannot grant such authority at the outset. The Regulations could not be clearer: "Original jurisdiction" is limited to the matters set forth in a specific factual statement and efforts to obstruct the investigation of those matters. 28 C.F.R. § 600.4(a); *see* p. 5, *supra*. Other matters that arise during the course of the investigation do not qualify. To the contrary, if other matters arise during the investigation, and the Special Counsel wishes to pursue them, he must consult the Acting Attorney General and obtain "additional jurisdiction." 28 C.F.R. § 600.4(b); *see* pp. 5-6, *supra*. The Regulations do not give the Acting Attorney General authority to grant original jurisdiction beyond the specific factual statement to include *ex ante* jurisdiction over anything that might be uncovered in the process of that investigation. Yet the Appointment Order purports to do just that. In doing so, it eliminates the requirement that politically accountable officers approve expansions to the scope of the investigation—and with it the political accountability the Special Counsel Regulations were designed to ensure.

Far from constituting a "specific factual statement of the matter to be investigated," paragraph (b)(ii) is a blank check. The category "any matters that arose or may arise directly from the investigation" could hardly be more expansive. *See Dep't of Hous. & Urban Dev. v. Rucker*, 535 U.S. 125, 131 (2002) ("[T]he word 'any' has an expansive meaning, that is, 'one or some indiscriminately of whatever kind.' "). Whatever the Special Counsel might come across in the investigation is covered no matter how far afield he strays.

The Special Counsel Regulations, of course, do provide the Special Counsel with original jurisdiction to investigate or prosecute **obstruction** and other efforts **to impede** the investigation unlawfully. *See* 28 C.F.R. § 600.4(a). But the authorization to investigate "any" matters that "arose or may arise" during the course of the investigation is not so limited. It extends to

18

*anything* that may arise, whether obstruction or not.  *See, e.g.*, *In re Espy*, 145 F.3d 1365, 1368 (D.C. Cir. 1998) (per curiam) (authority to investigate "federal crimes . . . that may arise out of the above described matter"—such as "perjury" and "obstruction"—does not encompass the "power to investigate . . . otherwise unrelated allegations," even if they involve the same "prospective subject" and "common witnesses").

Perhaps recognizing this fatal defect in the Appointment Order, the government asserted in the civil case that the Acting Attorney General had authorized an expansion of the Special Counsel's jurisdiction to include additional matters.  In particular, it cited the Acting Attorney General's February 2018 Congressional testimony.  Defs.' Mem. in Support of Mot. To Dismiss, *supra*, at 34.  But that assertion is not credible.  The Acting Attorney General's ambiguous testimony fails to state whether he ever "expand[ed] the scope of the original [jurisdiction]" set out in the Appointment Order.  Ex. to Defs.' Mem. in Support of Mot. To Dismiss, at 29.  Instead, he testified that he would have to "check and get back to you as to whether or not we considered particular issues ***to be a clarification*** [of the Special Counsel's original jurisdiction] or an expansion" of jurisdiction.  *Id.* at 31 (emphasis added).  The Acting Attorney General thus conceded that he may merely have "clarifi[ed]" that the indictment before the Court was within the purported grant of original jurisdiction—a grant that went well beyond the Acting Attorney General's authority to convey original jurisdiction under the Regulations.  Any claim that the Acting Attorney General was timely consulted, and timely granted "additional jurisdiction" for the matters charged in the Superseding Indictment, moreover, is belied by the language the Acting Attorney General intentionally inserted in the Appointment Order itself—language that rids him of responsibility to manage the scope of the Special Counsel's investigation.

The government has also argued that the Special Counsel was authorized to investigate activity unrelated to alleged coordination between the Russian government and the Trump

campaign because the Appointment Order granted him jurisdiction "to conduct the investigation confirmed by then-FBI Director James B. Comey in testimony before the House Permanent Select Committee on Intelligence on March 20, 2017."  Appointment Order;  Defs.' Mem. in Support of Mot. To Dismiss, *supra*, at 33.  But that construction makes no sense:  Any supposed tax and white-collar crimes committed on or after ***January 1, 2006—about a decade before the Trump presidential campaign was launched***—cannot conceivably be thought to "arise out of" either Mr. Comey's or the Special Counsel's investigation (especially when those matters were well known to the government before the Russia investigation began).  *See* pp. 29-30 & n.7, *infra*.  There is no construction under which pre-existing matters, known to the government, could possibly have arisen out of an investigation that started almost a decade later.  Indeed, there is no indication that the Special Counsel has ***ever*** investigated Mr. Manafort for the specific matters within the Special Counsel's original jurisdiction—alleged "coordination [with] the Russian government" in connection with the 2016 presidential campaign.  Appointment Order ¶(b)(i).  The Special Counsel's actions against Mr. Manafort could not have "arise[n] directly from" an underlying investigation that never took place.

Far from exercising the limited appointment powers provided by the Special Counsel Regulations, the Appointment Order purports to give the Special Counsel prosecutorial authority that is strikingly broad.  He is not confined to a specific factual statement.  He is supposedly granted *carte blanche* to investigate and prosecute "any matters" he may stumble across during the course of investigating purported coordination between the Trump campaign and the Russian government.  Appointment Order ¶¶(b)(i)-(ii).  The Order thus permits the sort of politically unaccountable, "sprawl[ing]" investigation that the Special Counsel Regulations were expressly designed to prevent.  Thornburgh, *et al.*, *supra*.

In doing so, moreover, the Order purports to outsource matters that should not be outsourced.  Because prosecution ordinarily should be the domain of politically accountable officers within the DOJ, the Special Counsel Regulations permit appointment of special counsel only where a "conflict of interest" or another "extraordinary circumstance[ ]" precludes the DOJ from conducting an investigation itself.  28 C.F.R. § 600.1(a).  But there is no such impediment to the DOJ's pursuit of the matters charged in the Superseding Indictment (such as Mr. Manafort's consulting activities).  Indeed, the DOJ already investigated that conduct and chose not to pursue it.  *See* pp. 29-30, *infra*.  The effort to hand such matters over to the Special Counsel through an *ex ante* grant of jurisdiction thus eliminates political accountability without any corresponding justification.  The Special Counsel Regulations do not afford the Acting Attorney General that power.  He may confer "[o]riginal jurisdiction" only for the matters set forth in a specific factual statement and for efforts to obstruct the investigation into those matters.  28 C.F.R. § 600.4(a); *see* pp. 5-6, *supra*.  The Regulations do not authorize him to wash his hands of accountability by granting the Special Counsel *ex ante* jurisdiction over any additional matters the Special Counsel may choose to pursue.

## C.  The Superseding Indictment Must Be Dismissed for Want of Jurisdiction

Because the Acting Attorney General lacked authority to ***grant*** the broad prosecutorial powers contained in the Appointment Order, the Special Counsel lacks authority to ***wield*** those powers.  Where a "special prosecutor lacks . . . authority," the Court "must dismiss . . . for want of jurisdiction."  *United States v. Providence Journal Co.*, 485 U.S. 693, 699 (1988); *see United States v. Singleton*, 165 F.3d 1297, 1299-1300 (10th Cir. 1999) ("[A] federal court cannot even assert jurisdiction over a criminal case unless it is filed and prosecuted by the United States Attorney or a properly appointed [attorney].");  *United States v. Bennett*, 464 F. App'x 183, 184-85 (4th Cir. 2012) ("A federal district court is without jurisdiction in a criminal prosecution

where the Government lacks an authorized representative."); *Mehle v. Am. Mgmt. Sys., Inc.*, 172 F. Supp. 2d 203, 205 (D.D.C. 2001) ("Actions that are brought by government officials or agencies who are not authorized to represent the United States must be dismissed for lack of jurisdiction." (citing *Fed. Election Comm'n v. NRA Political Victory Fund*, 513 U.S. 88, 92, 99 (1994))).[3]

1.    That principle controls this case.  The Special Counsel derives any authority he has to bring these charges from the Appointment Order issued by the Acting Attorney General. *See* Appointment Order (citing 28 U.S.C. § 515).   But the Acting Attorney General's appointment authority comes from the Special Counsel Regulations.   Under those Regulations, the appointment is clearly *ultra vires* insofar as it purports to grant the Special Counsel jurisdiction extending beyond the specific factual statement to any matter the Special Counsel may come across in his investigation.   *See* pp. 17-21, *supra*.   Because those Regulations "remain[ ] in force[,] the Executive Branch is bound by [them], and indeed the United States as the sovereign composed of the three branches is bound to respect and to enforce [them]."  *United States v. Nixon*, 418 U.S. 683, 696 (1974).   "'[A]n agency is bound by its own regulations.'" *Erie Blvd. Hydropower, LP v. FERC*, 878 F.3d 258, 269 (D.C. Cir. 2017) (quoting *Nat'l Envtl. Dev. Ass'n's Clean Air Project v. EPA*, 752 F.3d 999, 1009 (D.C. Cir. 2014)); *see also Panhandle E. Pipe Line Co. v. FERC*, 613 F.2d 1120, 1135 (D.C. Cir. 1979)) ("It has become axiomatic that an agency is bound by its own regulations.").

---

[3] *See also In re United States*, 345 F.3d 450, 454 (7th Cir. 2003) (issuing writ of mandamus when district court appointed prosecutor without authority); *United States v. Durham*, 941 F.2d 886, 892 (9th Cir. 1991) (remanding for a determination whether improperly appointed prosecutor "operated under the direction and supervision of the United States Attorney's office," without which the district court lacked jurisdiction).

That principle applies to special prosecutors.  In *United States v. Nixon*, 418 U.S. 683 (1974), the Court upheld a special prosecutor's subpoena, against the President's challenge, because it was authorized by regulation.  The Court noted that "[i]t is theoretically possible for the Attorney General to amend or revoke the regulation defining [a] Special Prosecutor's authority" so as to deprive him power to issue the subpoena.  *Id.* at 696.  But where "he has not done so," and as "long as this regulation is extant," the regulation "has the force of law."  *Id.*

The principle controls efforts to exercise unauthorized prosecutorial authority as well.  In *United States v. Providence Journal Co.*, 485 U.S. 693 (1988), the district court had appointed a private attorney to prosecute a contempt motion under Federal Rule of Criminal Procedure 42(b) because the United States Attorney was conflicted.  *Id.* at 696-97.  The special prosecutor filed a petition for a writ of certiorari.  *See id.* at 698.  By regulation, however, no person may represent the government in the Supreme Court except the Solicitor General or a designee.  *Id.* at 699-700.  And the Solicitor General had never authorized the certiorari petition.  *See id.* at 698.  After argument on the merits, the Supreme Court dismissed the writ, holding that "[a]bsent a proper representative of the Government as a petitioner in this criminal prosecution, jurisdiction is lacking."  *Id.* at 708.

Similarly, in *Federal Election Commission v. NRA Political Victory Fund*, 513 U.S. 88 (1994), the Supreme Court dismissed a certiorari petition "for want of jurisdiction" because it was brought by the FEC, which "is not authorized to petition for certiorari . . . on its own."  *Id.* at 90, 99.  The FEC had petitioned for a writ of certiorari to challenge a ruling that its composition violated separation of powers.  *Id.* at 90.  However, because "the FEC lack[ed] statutory authority to litigate" in the Supreme Court, the FEC could not "independently file a petition for certiorari" without "the Solicitor General's authorization."  *Id.* at 98.  Although the Solicitor General had attempted "to authorize the FEC's petition after the time for filing it had expired,"

the Court held that after-the-fact authorization "did not breathe life into [the petition]" because, by that time, the 90-day deadline to file the petition had come and gone. *Id.* at 90, 98-99.

The same principle applies to actions by prosecutors who lack authority. Over a century ago, in *United States v. Rosenthal*, 121 F. 862 (C.C.S.D.N.Y. 1903), the district court granted a motion to quash indictments because the prosecutor lacked authority to conduct proceedings before the grand jury. *Id.* at 874. The Attorney General had appointed a "Special Assistant to the Attorney General" to investigate certain import offenses. *Id.* at 863. Acting under that purported grant of authority, the Special Assistant "pursued vigorously and fairly the investigation of the alleged offenses, and with the sanction and co-operation of the District Attorney appeared before the grand jury, and chiefly conducted the proceedings that resulted in the indictments." *Id.* at 865. But the Special Assistant lacked authority to do so, the court concluded, because (at that time) the Attorney General and his officers were not authorized "to represent the United States in criminal prosecutions." *Id.* at 865-66. The court held that "[t]he indictments are not faulty, save for the single reason that they are based upon proceedings in great part conducted without authority by the special assistant to the Attorney General," and granted the motions to quash the indictments "on that sole ground." *Id.* at 874.

The government agrees that dismissal is appropriate when indictments are obtained by a prosecutor without legal authority. In the civil suit Mr. Manafort initiated, the government urged that Mr. Manafort has an "adequate remedy" in this criminal action. Defs.' Mem. in Support of Mot. To Dismiss, *supra*, at 2. Mr. Manafort's claim that that "the Special Counsel lacks authority," the government urged, should be raised in this "criminal action by filing a motion to

dismiss the indictment pursuant to Rule 12 of the Federal Rules of Criminal Procedure."  *Id.*[4]

Court after court agrees:  Where a prosecutor lacks authority, dismissal is warranted.[5]

      2.     That result is compelled here.  The Acting Attorney General could authorize the

Special Counsel to investigate a specifically defined matter concerning the potential violation of

federal criminal law.   But the Acting Attorney General could not grant the Special Counsel

original jurisdiction to further investigate and prosecute any matter he happened to come across

in the course of his investigation.   Because the Acting Attorney General could not grant that

power, the Special Counsel may not exercise it.

---

[4] The government has elsewhere claimed that the Special Counsel Regulations do not "create any rights . . . enforceable at law or equity."  Defs.' Mem. in Support of Mot. To Dismiss, *supra*, at 23 & n.7.  But Mr. Manafort does not claim that the Appointment Order ***violated*** any rights he can assert against the government.  Mr. Manafort raises the fact that the Acting Attorney General ***lacked authority*** to issue paragraph (b)(ii) of the Appointment Order.  He is entitled to raise that lack of authority—and the Court's resulting want of jurisdiction—even if the regulations are not themselves actionable.  *See Larson v. Domestic & Foreign Commerce Corp.*, 337 U.S. 682, 690-91 (1949) (federal courts may enjoin government actions "in excess of . . . authority or under an authority not validly conferred"); *see id.* at 691-92 (distinguishing claims "based upon any lack of delegated power" from claims that agency action is "illegal," "whether or not it be within" the officer's "delegated powers").

[5] *See, e.g.*, *United States v. Garcia-Andrade*, No. 13-CR-993-IEG, 2013 WL 4027859, at *5 (S.D. Cal. Aug. 6, 2013) (dismissing indictment because "[a] court does not have jurisdiction over a criminal case unless 'a proper representative of the Government' participates in the action"); *United States v. Huston*, 28 F.2d 451, 456 (N.D. Ohio 1928) (dismissing indictment because "the proceedings before the grand jury were vitiated by the unauthorized appearance therein by [the special prosecutor]"); *United States v. Cohen*, 273 F. 620, 621 (D. Mass. 1921) (dismissing indictment where the prosecutor "was not . . . authorized to bring these informations"); *see also Young v. U.S. ex rel. Vuitton et Fils S.A.*, 481 U.S. 787, 814 (1987) (reversing contempt conviction because court improperly appointed interested prosecutor); *In re United States*, 345 F.3d at 454 ("vacat[ing] the appointment of the special prosecutor" by the court to prosecute a charge the United States had moved to dismiss); *United States v. Male Juvenile*, 148 F.3d 468, 472 (5th Cir. 1998) (juvenile-delinquency information was invalid because the certification needed to bring charges was signed by an Assistant United States Attorney, not the United States Attorney as the applicable regulations required); *Mehle*, 172 F. Supp. 2d at 205 (dismissing suit because prosecuting attorney was "not authorized to bring this action for [the] agency").

Yet that is precisely the authority the Special Counsel purports to wield in this case.  The Superseding Indictment's allegations have nothing to do with alleged coordination between the 2016 Trump presidential campaign and the Russian government.  They instead concern alleged conduct that long pre-dates the Trump campaign—and which prosecutors knew about but declined to pursue long ago.  The Superseding Indictment focuses on alleged financial, tax, and disclosure crimes supposedly committed during the course of work in Ukraine.  Superseding Indictment ¶¶ 2-6.  It also accuses Mr. Manafort of false statements, unlawful wire transfers, and failures to disclose foreign assets.  *Id.* ¶¶ 14-18, 26-27, 32-36; pp. 9-10, *supra*.   Those alleged dealings have no connection whatsoever to the 2016 election; to the Trump presidential campaign; or to alleged coordination by that campaign and the Russian government.  The alleged dealings occurred in ***2008 to 2014***.  That predates the Trump campaign by at least a year, and Mr. Manafort's brief involvement in the campaign by even longer.  *See* The American Presidency Project, *supra*; Keneally, *supra* ("Manafort . . . joined the Trump campaign on March 29, 2016."); *see, e.g.*, Superseding Indictment ¶¶ 4, 20-25 (allegations about consulting work from 2006 to 2014), ¶¶ 14-18 (allegations about wire transfers from Cyprus, the United Kingdom, and the Grenadines from 2008 to 2014), ¶¶ 32-36 (allegations that Mr. Manafort unlawfully failed to disclose certain offshore bank accounts from 2008 to 2014).  And they have absolutely nothing to do with any alleged coordination with the Russian government.

Having no connection to the Russian government or the Trump presidential campaign— much less purported coordination between the two—those stale allegations cannot plausibly fall within the specific grant of jurisdiction in paragraph (b)(i) of the Appointment Order.  To the extent the Special Counsel asserts authority to pursue them, he must rely on his putative jurisdiction over "any matters that arose or may arise directly from the investigation" under paragraph (b)(ii).  But the Acting Attorney General had no authority to grant that jurisdiction,

and the Special Counsel has no authority to exercise it.  As a result, jurisdiction is lacking and the Superseding Indictment must be dismissed.

> **D.    The Superseding Indictment Must Be Dismissed Under Rules 6(d) and 7(c) Because the Special Counsel Lacked Authority To Participate in the Grand Jury Proceedings and To Sign the Superseding Indictment**

For similar reasons, the indictment must be dismissed for failure to comply with Federal Rules of Criminal Procedure 6(d) and 7(c).  Those Rules permit only authorized "attorney[s] for the government" to appear before the grand jury or to sign indictments.  Fed. R. Crim. P. 6(d), 7(c); *see id.* 1(b)(1) (defining "attorney for the government").  The Special Counsel did both those things in this case, but without authority to act as an "attorney for the government." Because that prejudiced Mr. Manafort, the Superseding Indictment must be dismissed.  *See, e.g.*, *United States v. Fowlie*, 24 F.3d 1059, 1066 (9th Cir. 1994) (violation of Rule 6(d) requires dismissal); *United States v. Boruff*, 909 F.2d 111, 117-18 (5th Cir. 1990) (violation of Rule 7(c) requires dismissal).

1.    Federal Rule of Criminal Procedure 6(d).  Rule 6(d) permits **only** "the following persons" to be "present while the grand jury is in session: attorneys for the government, the witness being questioned, interpreters when needed, and a court reporter or an operator of a recording device."  Fed. R. Crim. P. 6(d); *see United States v. Poindexter*, 859 F.2d 216, 219 (D.C. Cir. 1988) (Rule 6(d) "limits the persons who may be present in the grand jury session to certain necessary court officials and the one witness then under examination").  "[A]ttorneys for the government," the only category the Special Counsel arguably fits into, includes **only**: "(A) the Attorney General or an authorized assistant; (B) a United States attorney or an authorized assistant; (C) [in certain cases] the Guam Attorney General or other person [authorized under] Guam law . . . ; and (D) any other attorney authorized by law to conduct proceedings under these rules as a prosecutor."  Fed. R. Crim. P. 1(b)(1).

For the reasons given above, the Special Counsel is none of those things.  He was not properly "authorized by law to conduct proceedings . . . as a prosecutor" because his appointment was *ultra vires*.  Fed. R. Crim. P. 1(b)(1)(D); *see* pp. 17-21, *supra*.  He plainly is not the Attorney General, a United States attorney, or their authorized assistants.  *See* Fed. R. Crim. P. 1(b)(1)(A), 1(b)(1)(B).  Nor is he the Guam Attorney General or other person authorized under Guam law.  Fed. R. Crim. P. 1(b)(1)(C).  Thus, under the plain text of the Federal Rules, the Special Counsel was not permitted to appear before the grand jury that indicted Mr. Manafort.  *See* Fed. R. Crim. P. 6(d).

The government has elsewhere "concede[d]" that the presence of a prosecutor who was "unauthorized to represent the government in criminal proceedings due to a technically ineffective appointment" "constitute[s] a violation of Fed. R. Crim. P. 6(d)."  *Fowlie*, 24 F.3d at 1065.  Courts routinely reach the same conclusion.  *See, e.g.*, *United States v. Wooten*, 377 F.3d 1134, 1140 (10th Cir. 2004) (presence of improperly appointed Special Assistant United States Attorney before the grand jury would violate Rule 6(d)(1)); *United States v. Alcantar-Valenzuela*, 191 F.3d 461, 461 (9th Cir. 1999) (memorandum disposition) ("[T]he appearance of . . . a Special Assistant United States Attorney before the grand jury was unauthorized because of technical deficiencies in her appointment and thus violated Federal Rule of Criminal Procedure 6.").  The same reasoning applies here:  Because the Special Counsel is not an authorized "attorney for the government," his appearance before the grand jury violated Federal Rule 6(d).[6]

---

[6] The Appointment Order also raises questions about whether the grand jury has been misused to investigate counterintelligence matters instead of potential crimes.  That Order authorizes the Special Counsel to carry out the "investigation confirmed by then-FBI Director James B. Comey in testimony before the House Permanent Select Committee on Intelligence on March 20, 2017," Appointment Order ¶(b)—an investigation that Mr. Comey described as "part of our ***counterintelligence effort***."  Apuzzo, Rosenberg & Huetteman, *supra* (emphasis added).  But grand juries are not empowered to perform "counterintelligence" duties; their sole "task is to

2.     Federal Rule of Criminal Procedure 7(c).   For the same reason, the Special Counsel violated Rule 7(c)'s requirement that all indictments "must be signed by an attorney for the government."  Fed. R. Crim. P. 7(c).  "The federal courts have concluded uniformly that Rule 7(c) . . . precludes federal grand juries from issuing an indictment without the prosecutor's signature, signifying his or her approval."  *Rehberg v. Paulk*, 566 U.S. 356, 372 n.2 (2012); *United States v. Sells Eng'g, Inc.*, 463 U.S. 418, 430 n.14 (1983) (similar).  Here, the Special Counsel was the only individual who signed the Superseding Indictment on behalf of the government.  Superseding Indictment at 31.  He was also the only attorney who signed the original indictment in this Court against Mr. Manafort.  Dkt. 13, at 31.

For the reasons given above, however, the Special Counsel is not an "attorney for the government"—he had no authority to pursue the matters set forth in the indictment.  *See* Fed. R. Crim. P. 1(b)(1); pp. 17-21, *supra.*  The indictments were thus issued in violation of Rule 7(c). *See, e.g., Boruff*, 909 F.2d at 117-18 ("[I]t was error for the district court to proceed to trial . . . on the superseding indictment [when] no government attorney had signed it."); *see also United States v. Male Juvenile*, 148 F.3d 468, 472 (5th Cir. 1998) (dismissing juvenile-delinquency petition certified by the wrong attorney).

3.     The Resulting Prejudice.   Where grand jury proceedings are conducted in violation of the Federal Rules, the indictment must be dismissed if " 'the violation substantially influenced the grand jury's decision to indict,' or if there is 'grave doubt' that the decision to indict was free from the substantial influence of such violations."  *Bank of Nova Scotia v. United*

---

conduct an *ex parte* investigation to determine whether or not there is probable cause to prosecute a particular defendant."  *United States v. R. Enters., Inc.*, 498 U.S. 292, 298 (1991); *see also* 18 U.S.C. § 3332(a) ("[T]he duty of" a special grand jury is "to inquire into offenses against the criminal laws of the United States.").

*States*, 487 U.S. 250, 256 (1988) (quoting *United States v. Mechanik*, 475 U.S. 66, 78 (1986)). The Special Counsel's participation in the grand jury and indictment process plainly meets that standard:   Mr. Manafort **would not now have been prosecuted** but for the Special Counsel's *ultra vires* appointment.   Prior to his appointment, Mr. Manafort had **already disclosed** to the DOJ the conduct that the Special Counsel now seeks to prosecute.   He voluntarily met with DOJ prosecutors and FBI agents in July 2014 to discuss his offshore political consulting activities—three years before the grand jury the Special Counsel convened returned the indictment he signed charging Mr. Manafort with conduct related to that lobbying activity.   In that interview, Mr. Manafort provided a detailed explanation of his activities in Ukraine, including his frequent contact with a number of previous U.S. Ambassadors in Kiev and his efforts to further U.S. objectives in Ukraine on their behalf.   He further discussed his offshore banking activity in Cyprus.   Moreover, at least as early as 2007, prominent news outlets had reported that Mr. Manafort was working for Mr. Yanukovych.   But the DOJ **did not prosecute** Mr. Manafort for that conduct.[7]

---

[7] *See, e.g.*, Clifford J. Levy, *Ukrainian Prime Minister, Once Seen as Archvillain, Reinvents Himself*, N.Y. TIMES, Sept. 30, 2007, at A8 ("Mr. Yanukovich has not done it all on his own. From an anonymous office off Kiev's main square, a seasoned American political strategist who was once a senior aide in Senator Bob Dole's Republican presidential campaign has labored for months on a Yanukovich makeover.   Though the strategist, Paul J. Manafort, has sought to remain behind the scenes, his handiwork has been evident in Mr. Yanukovich's tightly organized campaign events, in his pointed speeches and in how he has presented himself to the world."); Clifford J. Levy, *Toppled in Ukraine but Nearing a Comeback*, N.Y. TIMES, Jan. 14, 2010, at A4 ("Mr. Yanukovich has been assisted by Paul J. Manafort, an American political consultant who has been advising him since 2005."); Michael Cooper, *Savior or Machiavelli, McCain Aide Carries On*, N.Y. TIMES, Oct. 23, 2007, at A26 ("Davis Manafort, the business development and consulting practice . . . , had been giving campaign advice to the Ukrainian prime minister, Viktor F. Yanukovich.").   Other reports around the same time claimed that Mr. Manafort's company never registered as a lobbying entity for Mr. Yanukovych.   Barry Meier, *Lawmakers Seek To Close Foreign Lobbyist Loopholes*, N.Y. TIMES, June 12, 2008, at A23 ("Davis Manafort never registered as a lobbyist for Mr. Yanukovich."); Barry Meier, *In McCain Campaign, a Lobbying Labyrinth*, N.Y. TIMES, May 25, 2008, at A22 (similar).

That changed when the Special Counsel was appointed and empaneled a grand jury to conduct the Office of Special Counsel's investigation.  The Special Counsel was obviously the driving force behind the decision to charge Mr. Manafort.  There can thus be no doubt that his involvement in the grand jury proceedings " 'substantially influenced the grand jury's decision to indict.' "  *Bank of Nova Scotia*, 487 U.S. at 256 (quoting *Mechanik*, 475 U.S. at 78).[8]

Courts regularly find prejudice warranting dismissal when an unauthorized prosecutor appears before the grand jury.  *See, e.g.*, *Pease v. Commonwealth*, 482 S.E.2d 851, 852 (Va. Ct. App. 1997) (quashing an indictment when an unauthorized attorney "substantially influenced the grand jury in reaching an indictment to the prejudice of the defendant"); *State v. Hardy*, 406 N.E.2d 313, 316 (Ind. Ct. App. 1980) (the "presence and active participation of a prosecuting attorney" recused from the case demonstrated "prejudice," warranting dismissal of the indictment); *People v. Munson*, 150 N.E. 280, 283 (Ill. 1925) (dismissing an indictment where "[i]t is evident that the indictment in this case was procured directly through the assistance of [an unauthorized individual], acting as state's attorney").  The Court should do the same here.

## II.   THE SUPERSEDING INDICTMENT EXCEEDS EVEN THE AUTHORITY THE APPOINTMENT ORDER PURPORTS TO GRANT

### A.   The Appointment Order Purports To Grant Authority Only Over Matters That "Arise Directly From" the Special Counsel's Investigation

Even if one assumes that the Acting Attorney General had authority to grant the Special Counsel original jurisdiction over any "matters that arose or may arise directly from the investigation," Appointment Order ¶(b)(ii), the Special Counsel exceeded even that limit.  The

---

[8] To the extent there is any doubt about the Special Counsel's involvement in the grand jury process, the Court should order production of the grand jury transcripts, including transcripts of the Special Counsel's or his staff's colloquies with the grand jury, and permit further briefing and argument on that issue.  The violation of Rules 6(d) and 7(c) apparent from the face of the indictment plainly show the "particularized need" justifying the production of those transcripts. *Sells Eng'g*, 463 U.S. at 443.

phrase "arose or may arise directly from" establishes a boundary on the Special Counsel's authority:  To the extent the Special Counsel seeks to investigate or prosecute conduct unrelated to Russian coordination or obstruction, paragraph (b)(i) purports to authorize him to do so only if, at a minimum, he learns of the conduct *because of* his original investigation.  And the conduct must be ***demonstrably related to*** the subject of his original jurisdiction.  The charges here are not.

1.      Courts routinely interpret the phrase "arising from" or "arising out of" to require at least a causal connection.  For example, in *Dolan v. United States Postal Service*, 546 U.S. 481 (2006), the Supreme Court considered a provision of the Federal Tort Claims Act granting immunity to the Postal Service for claims "***arising out of*** the loss, miscarriage, or negligent transmission of letters of postal matter."  *Id.* at 485 (emphasis added) (quoting 28 U.S.C. § 2680(b)).  The Court held that the immunity grant only covered "injuries arising, directly or consequentially, *because* mail either fails to arrive at all or arrives late, in damaged condition, or at the wrong address."  *Id.* at 489 (emphasis added).

Indeed, there is a "general consensus that the phrase 'arising out of' . . . requires some causal connection."  *Fed. Ins. Co. v. Tri-State Ins. Co.*, 157 F.3d 800, 804 (10th Cir. 1998) (collecting cases); *see, e.g.*, *U.S. Indus./Fed. Sheet Metal, Inc. v. Dir., Office of Workers' Comp. Programs, U.S. Dep't of Labor*, 455 U.S. 608, 615 (1982) (statute allowing compensation for injury "arising out of . . . the course of employment" required that "the injury have been caused by the employment"); *In re Lehman Bros. Holdings, Inc.*, 855 F.3d 459, 478 (2d Cir. 2017) (bankruptcy statute subordinating claims "arising from" a securities transaction required a "causal link" between the claim and the securities transaction); *Old Republic Ins. Co. v. Cont'l Motors, Inc.*, 877 F.3d 895, 917 n.36 (10th Cir. 2017) (in an insurance contract, an "'arising out of' requirement includes 'a true causal element'"); *Regal Constr. Corp. v. Nat'l Union Fire Ins.*

*Co. of Pittsburgh*, 15 N.Y.3d 34, 38 (2010) (similar).  And here, the Appointment Order does not merely require that new matters just "arise out of" the original investigation; they must "arise ***directly*** from" it.  Appointment Order ¶(b)(ii) (emphasis added).

2.      In this context, moreover, additional matters cannot be said to "arise out of" an initial investigation unless they are "demonstrably ***related to*** the initial grant of jurisdiction."  *In re Espy*, 145 F.3d 1365, 1367 (D.C. Cir. 1998) (per curiam) (emphasis added); *see also Morrison v. Olson*, 487 U.S. 654, 679 (1988) ("[The] jurisdiction that the court decides upon must be demonstrably related to the factual circumstances that gave rise to . . . the appointment of the independent counsel in the particular case."); *United States v. Tucker*, 78 F.3d 1313, 1321 (8th Cir. 1996) ("[R]elatedness . . . depends upon the procedural and factual link between the [independent counsel's] original prosecutorial jurisdiction and the [new] matter.").

*Espy*, for example, concerned an independent counsel appointed under the Ethics in Government Act to investigate allegations that the Secretary of Agriculture had accepted gifts from persons with business before his department.  145 F.3d at 1366.  The order also granted the independent counsel "jurisdiction and authority to investigate other allegations or evidence of violation of any federal criminal law, other than a Class B or C misdemeanor or infraction, by any organization or individual developed during the Independent Counsel's investigation referred to above and connected with or ***arising out of*** that investigation," or "***related to*** that subject matter," as well as any violations of 28 U.S.C. § 1826, obstruction of justice, or false testimony, "in connection with any investigation of the matters described above."  *Espy*, 145 F.3d at 1366 (emphasis added).

The independent counsel then applied to the court to confirm his authority to investigate an additional matter.  *Espy*, 145 F.3d at 1367.  Under the Ethics in Government Act, the court of appeals could merely "interpret, but not expand, the independent counsel's original prosecutorial

33

jurisdiction." *Id.* at 1368 (alterations and internal quotation marks omitted).   The counsel's

application, however, "raise[d] allegations concerning criminal conduct on the part of Secretary

Espy and others in violation of ***other criminal statutes*** outlawing a ***different category of conduct***

and ***occurring on different occasions*** than those set forth in the grant of jurisdiction." *Id.*

(emphasis added).   Because "[t]he facts alleged in the [new] application d[id] not involve any

alleged misuse of the office of Secretary of Agriculture by Espy, any acceptance of payments or

gifts from persons having business with that Department, or any similar pattern of conduct," the

D.C. Circuit denied the application. *Id.* at 1368-69.   Given that the conduct was different, the

time frames were different, and the applicable statutes were different, the D.C. Circuit could not

construe the additional matters as "arising out of" the initial investigation because they were

"unrelated" to "the original grant of authority." *Id.* at 1368.   The D.C. Circuit so held even

though the original investigation and the proposed new investigation included a "common

prospective subject," "the common concern for misconduct by a high official and the potential

presence of eight unnamed common witnesses." *Id.*

### B.   The Charges Against Mr. Manafort Do Not "Arise Directly From" the Special Counsel's Investigation

*Espy* makes this an *a fortiori* case.   The Special Counsel has investigated and prosecuted

Mr. Manafort for "a different category of conduct" that "occurr[ed] on different occasions" than

the subject of the original investigation. *Espy*, 145 F.3d at 1368.   That conduct does not "arise

directly from" the Special Counsel's investigation under any reading of that phrase.

Appointment Order ¶(b)(ii).   The Appointment Order empowers the Special Counsel to

investigate a specific subject and matters that "directly arise from" his investigation into Russian

involvement in the 2016 campaign.   But the alleged tax and disclosure violations charged in the

Superseding Indictment constitute "a different category of conduct" that "occurr[ed] on different

occasions" than the subject of the original investigation.  *Id.*; *see* pp. 19-20, *supra*.  Nor would any claim that the charges against Mr. Manafort here share a "common prospective subject" or "common witnesses" with the original investigation suffice to justify those charges as "arising out of" the original investigation.  *Espy*, 145 F.3d at 1368.   Under *Espy*, the Superseding Indictment does not "arise from" the original investigation the Special Counsel was empowered to pursue—much less arise from it "directly."

Review of the Superseding Indictment makes that especially clear.  None of the charges before this Court were discovered because of the Special Counsel's investigation into alleged coordination; nor are any of them "demonstrably related to" that investigation.  The supposed tax and financial crimes Mr. Manafort is charged with allegedly began on or after *2006*— approximately a *decade* before the Trump campaign launched and before the start of Mr. Mueller's (or Mr. Comey's) investigation.  *See* pp. 9-10, *supra*.   National media had also publicized Mr. Manafort's consulting work in Ukraine years before the Special Counsel began his work.  *See* pp. 29-30 & n.7, *supra*.  And the DOJ was already well aware of Mr. Manafort's consulting work because he *disclosed it* during interviews with DOJ prosecutors and the FBI.  *See* p. 30, *supra*.  Given that the DOJ was aware of Mr. Manafort's activities years before the Special Counsel was appointed, the Special Counsel cannot credibly claim that he discovered that alleged conduct *because of* his investigation into unrelated claims about Russian involvement in the 2016 campaign.  Appointment Order ¶(b)(ii); *see, e.g.*, *Espy*, 145 F.3d at 1368.  All of that conduct, moreover, relates to "a different category of conduct" that "occurr[ed] on different occasions."  *Espy*, 145 F.3d at 1368.

*A fortiori*, the charges therefore cannot "arise out of" the original investigation.  And they certainly do not "arise from" it "directly."  *See* pp. 29-30 & n.7, *supra*; *see, e.g.*, *SFS Check, LLC v. First Bank of Del.*, 774 F.3d 351, 357 (6th Cir. 2014) (phone calls could not create

specific personal jurisdiction because the plaintiff's alleged "injury . . . preceded the phone calls" and thus "could not have arisen from the phone calls"); *Richter v. Analex Corp.*, 940 F. Supp. 353, 359 (D.D.C. 1996) (malpractice claim did not "arise[ ] out of" visit to a forum so as to allow exercise of long-arm jurisdiction when any alleged malpractice preceded the visit).[9]

Indeed, there is no evidence that Mr. Manafort was ever himself investigated in connection with alleged "coordination" between the Russian government and the 2016 Trump presidential campaign. The Special Counsel has never suggested that Mr. Manafort had anything to do with alleged "coordination [with] the Russian government" in connection with the 2016 presidential campaign, or even that he is investigating Mr. Manafort on that subject. Appointment Order ¶(b)(i). The Superseding Indictment cannot have any causal connection to, let alone "arise directly from," an investigation into Mr. Manafort that does not exist. That further confirms that the Special Counsel's acts exceed even the scope of authority the Appointment Order claims to grant.

### C.     The Superseding Indictment Violated Rules 6(d) and 7(c) Because It Exceeds the Scope of the Appointment Order

Because the Superseding Indictment exceeds even the Appointment Order's scope, Rules 6(d) and 7(c) require dismissal even if the Appointment Order were lawful. Mr. Mueller could only appear before the grand jury or sign the Superseding Indictment if he was an authorized "attorney[ ] for the government." Fed. R. Crim. P. 6(d), 7(c). For matters beyond the scope of the Appointment Order, he does not qualify. Because he lacked authority to bring these charges,

---

[9] Moreover, as explained above, no conflict of interest or other extraordinary circumstance would preclude the DOJ from investigating the conduct charged in the Superseding Indictment— as evidenced by the fact that the DOJ previously investigated it and declined to prosecute. *See* pp. 29-30 & n.7, *supra*. For that reason, too, the Appointment Order cannot be read to encompass that conduct.

the Special Counsel violated Rule 6(d) by appearing before the grand jury.  *See Fowlie*, 24 F.3d at 1065; *Wooten*, 377 F.3d at 1140; *Alcantar-Valenzuela*, 191 F.3d at 461; pp. 27-28, *supra*. Likewise, because Rule 7(c) allows only "attorney[s] for the government" to sign indictments, the Special Counsel violated that Rule too when he signed a Superseding Indictment lacking even a causal link to his original investigation.  *See Boruff*, 909 F.2d at 117-18; *see also Male Juvenile*, 148 F.3d at 472; p. 29, *supra*.

**D.      This Court Lacks Jurisdiction and Dismissal Is Otherwise Warranted**

Because the Superseding Indictment is unmoored from any matter the Appointment Order even arguably authorizes the Special Counsel to investigate or prosecute, the Superseding Indictment must be dismissed.  Where a "special prosecutor lacks . . . authority," the Court "must dismiss . . . for want of jurisdiction."  *Providence Journal Co.*, 485 U.S. at 699; *see* pp. 21-27, *supra*.  That is no less true when the Special Counsel exceeds the authority granted under an appointment order than when the Appointment Order is *ultra vires* from the outset.

Dismissal is also appropriate in view of the Rule 6 and 7 violations.  As explained above, the Special Counsel's presence and conduct " 'substantially influenced the grand jury's decision to indict.' " *Bank of Nova Scotia*, 487 U.S. at 256 (quoting *Mechanik*, 475 U.S. at 78); *see* pp. 29-31, *supra*.  Lawfully appointed DOJ prosecutors had long ago learned of the conduct charged in the Superseding Indictment and decided ***not*** to indict Mr. Manafort for it.  *See* pp. 29-30, *supra*. Yet the Special Counsel led the grand jury to indict Mr. Manafort for the same conduct—conduct that does not fall within the purported scope of his authority to prosecute under the Appointment Order.  The Special Counsel's rule violations thus plainly prejudiced Mr. Manafort, requiring dismissal of the Superseding Indictment.  *See, e.g.*, *Fowlie*, 24 F.3d at 1066 (violation of Rule 6(d) requires dismissal); *Boruff*, 909 F.2d at 117-18 (violation of Rule 7(c) requires dismissal).

## CONCLUSION

The Superseding Indictment should be dismissed.

Dated:   March 14, 2018                              Respectfully submitted,
         Washington, D.C.

                                                     /s/ Kevin M. Downing
                                                     Kevin M. Downing
                                                     (D.C. Bar #1013894)
                                                     Thomas E. Zehnle
                                                     (D.C. Bar #415556)
                                                     601 New Jersey Avenue, N.W.
                                                     Suite 620
                                                     Washington, D.C.  20001
                                                     kevindowning@kdowninglaw.com
                                                     tezehnle@gmail.com

                                                     *Counsel for Defendant Paul J. Manafort, Jr.*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| | ) | |
| | ) | |
| v. | ) | Criminal No. 1:17-cr-00201-ABJ-1 |
| | ) | |
| | ) | Judge Amy Berman Jackson |
| PAUL J. MANAFORT, JR., | ) | |
| | ) | |
| | ) | |
| *Defendant.* | ) | |
| | ) | |

### [Proposed] ORDER

Upon consideration of Defendant Paul J. Manafort, Jr.'s motion to dismiss the superseding indictment pursuant to Federal Rules of Criminal Procedure 12(b)(2) and 12(b)(3), and any opposition and reply thereto, it is hereby **ORDERED** that the motion is **GRANTED**; and it is hereby **FURTHER ORDERED** that the superseding indictment is **DISMISSED**.

**SO ORDERED**.

Dated: _____

_____
AMY BERMAN JACKSON
United States District Judge

**TO:**

Greg Donald Andres
Kyle Renee Freeny
Andrew Weissmann
U.S. Department of Justice
Special Counsel's Office
950 Pennsylvania Avenue, N.W.
Washington, D.C.  20530
(202) 616-0800 (telephone)
(202) 616-8470 (fax)
gda@usdoj.gov
krf@usdoj.gov
aaw@usdoj.gov

*Attorneys for the United States of America*

Thomas C. Green
Sidley Austin LLP
1501 K Street, N.W.
Washington, D.C.  20005
(202) 736-8069 (telephone)
(202) 736-8711 (fax)
tcgreen@sidley.com

*Attorney for Richard W. Gates III*

Kevin M. Downing
Thomas Edward Zehnle
601 New Jersey Avenue, N.W.
Suite 620
Washington, D.C.  20001
(202) 754-1992 (telephone)
kevindowning@kdowninglaw.com
tezehnle@gmail.com

*Attorneys for Paul J. Manafort, Jr.*