UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| v. | ) |
| | ) Crim. No. 17-201-01 (ABJ) |
| PAUL J. MANAFORT, JR., | ) |
| | ) |
| Defendant. | ) |

DEFENDANT PAUL J. MANAFORT, JR.'S
MOTION TO DISMISS ONE OF TWO MULTIPLICITOUS COUNTS

Defendant Paul J. Manafort, Jr., by and through counsel, hereby moves the Court pursuant to Fed. R. Crim. P. 12(b)(3)(B)(ii) to order the Office of Special Counsel ("OSC" or "government") to dismiss either Count Four or Count Five of the Superseding Indictment because these two counts charge a single offense and, therefore, are multiplicitous. Courts in this jurisdiction have long recognized that such improper charging decisions not only violate the Double Jeopardy Clause, but they improperly prejudice a jury by suggesting that a defendant has committed not one, but several, offenses.

I.   **FACTS**

Count Four of the Superseding Indictment charges that "[o]n or about November 23, 2016 and February 10, 2017," Mr. Manafort "knowingly and willfully caused to be made a false statement of a material fact, and omitted a material fact necessary to make the statements therein not misleading, in a document filed with and furnished to the Attorney General under the provisions of FARA," in violation of 22 U.S.C. Sections 612, 618(a)(2) and 18 U.S.C. Section 2. (Superseding Indictment, para. 45). The Superseding Indictment

1

specifically quotes and underscores the purported false statements that were made in November 23, 2016 and February 10, 2017 letters submitted by Mr. Manafort's attorney to the Department of Justice:

- "[DMI]'s efforts on behalf of the Party of Regions and Opposition Bloc did not include meetings or outreach within the U.S."

- "[N]either [DMI] nor Messrs. Manafort or Gates had any agreement with the [Centre] to provide services."

- "[DMI] did provide the [Centre], at the request of members of the Party of Regions, with a list of potential U.S.-based consultants—including [Company A and Company B]—for the [Centre]'s reference and further consideration. [The Centre] then contracted directly with [Company A and Company B] to provide services within the United States for which these entities registered under the Lobbying Disclosure Act.'

- "Although Gates recalls interacting with [the Centre]'s consultants regarding efforts in the Ukraine and Europe, neither Gates nor Mr. Manafort recall meeting with or conducting outreach to U.S. government officials or U.S. media outlets on behalf of the [the Centre], nor do they recall being party to, arranging, or facilitating any such communications. Rather, it is the recollection and understanding of Messrs. Gates and Manafort that such communications would have been facilitated and conducted by the [Centre]'s U.S. consultants, as directed by the [Centre], pursuant to the agreement reached between those parties (to which [DMI] was not a party)."

- "<u>[A] search has been conducted for correspondence containing additional information related to the matters described in [the government's] Letters. However, as a result of [DMI's] Email Retention Policy, which does not retain communications beyond thirty days, the search has returned no responsive communications.</u>"

*Id.* (emphasis in original).

Count Five of the Superseding Indictment charges that "[o]n or about November 23, 2016 and February 10, 2017," Mr. Manafort, "in a matter within the jurisdiction of the executive branch of the Government of the United States . . . knowingly and willfully did cause another: to falsify, conceal, and cover up by a scheme and device a material fact; to make a materially false, fictitious, and fraudulent statement and representation; and to make and use a false writing and document knowing the same to contain a materially false, fictitious, and fraudulent statement," in violation of 18 U.S.C. Sections 1001 and 2. (Superseding Indictment, para. 47).

The alleged false statements in Count Five are exactly the same statements, contained in exactly the same documents, made to exactly the same people, that the government has charged in Count Four. In fact, the OSC specifically identifies them as such ("to wit, the statements in the November 23, 2016, and February 10, 2017, submissions to the Department of Justice quoted in paragraph 45"). *Id.*

Furthermore, the Superseding Indictment contains no allegations that there was a scheme or device employed by Mr. Manafort, nor that a false writing or document was utilized in making these purported false statements. Rather, both Counts Four and Five of the Superseding Indictment only refer to, and focus solely upon, the alleged false

3

statements that are contained in two letters submitted by Mr. Manafort's attorney to the Justice Department. (Superseding Indictment, para. 45, 47).

Finally, the Attorney General is obviously the individual in charge of the U.S. Department of Justice. The U.S. Department of Justice and its components are, without question, executive branch entities.

## II.     DISCUSSION

### A. A Multiplicitous Indictment Violates the Double Jeopardy Clause

Counts Four and Five charge the same offense in two separate counts, rendering them multiplicitous. A multiplicitous indictment violates the Double Jeopardy Clause of the Fifth Amendment:

> When an indictment charges the same offense in more than one count, it often creates a problem known as multiplicity because the Double Jeopardy Clause protects not only against a second prosecution for the same offense after acquittal or conviction, but also against multiple punishments for the same offense.

*United States v. Mahdi*, 598 F.3d 883, 887 (D.C. Cir. 2010) (internal citations omitted).

Count Four, which charges Mr. Manafort with making false statements in a document furnished to the Attorney General under the Foreign Agents Registration Act ("FARA") in violation of 22 U.S.C. § 618(a)(2), is a "necessarily included offense"[1] of

---

[1] The terms "lesser included offense" and "parent offense" are sometimes used by courts in this context. "Lesser included offense" is often used to connote a less severe penalty than that of the "parent offense." Here, the two statutes at issue carry the same five-year maximum sentence. More importantly, the relative severity of the penalties is irrelevant to determining whether one crime is a "lesser included offense" of another for double jeopardy purposes. *See, e.g., United States v. Harley*, 990 F.2d 1340, 1343 (D.C. Cir. 1993) (rejecting the argument that the lesser included offense must carry a lesser penalty). For this reason, some commentators use the more precise "necessarily included offense," as does the Supreme Court in *Schmuck v. United States*, 489 U.S. 705, 716 (1989). *See* James A. Shellenberger and James A. Strazzella, *The Lesser Included Offense Doctrine and The Constitution: The Development of Due Process and Double Jeopardy Remedies*, 79 Marquette Law Review 1, 9-10 n. 15 (1995). This motion uses the Supreme Court's more recent and precise terminology contained in *Schmuck*.

4

Count Five, which charges Mr. Manafort with making purported false statements in a matter within the jurisdiction of the executive branch in violation of 18 U.S.C. § 1001. Because such offenses as alleged are the "same offense" under the Double Jeopardy Clause, and because that clause bars multiple punishments for the same offense, the government is prohibited from prosecuting Mr. Manafort for both counts.

The Fifth Amendment's Double Jeopardy Clause, the foundation for the concept of multiplicity, provides in part, "nor shall any person be subject for the same offence to be twice put in jeopardy of life or limb. . . ." U.S. CONST. AMEND. V. Two counts in an indictment constitute the same offense if they "cannot survive the 'same elements' test" set forth in *Blockburger v. United States*, 284 U.S. 299, 304 (1932). *United States v. Dixon*, 509 U.S. 688, 696 (1993). More specifically,

> [t]he same elements test, sometimes referred to as the "*Blockburger*" test, inquires whether each offense contains an element not contained in the other; if not, they are the "same offence" and double jeopardy bars additional punishment and successive prosecution.

*Id.* A corollary to this is that "prosecution for a greater offense . . . bars prosecution for a lesser included offense. . . ." *Id.* at 705.[2]

Count Four, making false statements in a document furnished to the Attorney General under the Foreign Agents Registration Act ("FARA") in violation of 22 U.S.C. § 618(a)(2), is a necessarily included offense of Count Five, making false statements in a matter within the jurisdiction of the executive branch in violation of 18 U.S.C. § 1001,

---

[2] It should be noted that there is one circumstance in which the *Blockburger* test is not the final arbiter; namely, when there is a plainly expressed contrary view on the part of Congress and the legislative intent is clear from the face of the statute or the legislative history. *See Mahdi*, 598 F.3d at 888. For example, Congress plainly "intended separate punishments for the underlying substantive predicates and for the [Continuing Criminal Enterprise] offense." *Id.* at 889. Here, there is no indication that Congress intended separate punishments for the same alleged conduct.

5

because establishing false statements to the Attorney General under FARA necessarily establishes false statements to the executive branch as well. *See Brown v. Ohio*, 432 U.S. 161, 167 (1977) ("[t]he prosecutor who has established auto theft necessarily has established joyriding as well.").

> As is invariably true of a greater and lesser included offense, the lesser offense . . . requires no proof beyond that which is required for conviction of the greater. . . . The greater offense is therefore, by definition, the "same" for purposes of double jeopardy as any lesser offense included in it.

*Id.* at 168.

In *Blockburger*'s precise terms, to be separate offenses, each offense must contain an element not contained in the other. *Dixon*, 509 U.S. at 696 (citing *Blockburger*, 284 U.S. at 304). As alleged in the Superseding Indictment, the offenses at issue are the same because making a false statement to the executive branch requires proof of no elements beyond those required to prove making a false FARA statement to the Attorney General. The elements of the two charges, as alleged, are as follows:

| Making a False FARA Statement (22 U.S.C. § 618(a)(2)) | Making a False Statement to the Executive Branch (18 U.S.C. § 1001) |
|---|---|
| 1. The defendant knowingly and willfully | 1. The defendant knowingly and willfully |
| 2. made a false statement | 2. made a false statement |
| 3. that was material | 3. that was material |
| 4. in any registration statement or other document for submission to the Attorney General under FARA | 4. in a matter within the jurisdiction of the executive branch |

In other words, in any prosecution in which the Government proves the elements of making a false FARA statement in a submission to the Attorney General, the Government will necessarily have proven the elements of making a false statement in a matter within the jurisdiction of the executive branch. Without question, the Attorney

6

General, and the U.S. Department of Justice and its components which he or she operates and controls, are part of the executive branch.

It makes no difference that there are various means of violating the two statutes.[3] The Supreme Court has made clear that the different means of violating the two statutes need not be identical for the two counts to be the same offense under the same elements test. *See, e.g., United States v. Dixon*, 509 U.S. 688, 699 (1993) (holding that contempt of court for possessing cocaine with intent to distribute in violation of a court order, and possession of cocaine with intent to distribute, are the same offense because the "drug offense did not include any element not contained in his previous contempt offense. . . ."); *Illinois v. Vitale*, 447 U.S. 410, 419-20 (1980) (holding that if the state relies on a driver's careless failure to slow his automobile to prove manslaughter by automobile, the state cannot separately prosecute the driver for the offense of careless failure to slow his automobile); *Harris v. Oklahoma*, 433 U.S. 682, 682 (1977) ("When, as here, conviction of a greater crime, [felony] murder, cannot be had without conviction of the lesser crime, robbery with firearms, the Double Jeopardy Clause bars prosecution for the lesser crime," in spite of there being numerous felonies other than robbery that would give rise to felony murder).

In this case, Counts Four and Five charge Mr. Manafort with violating Section 681(a)(2) and Section 1001 by the same means; namely, by making false statements and

---

[3] A violation of Section 618(a)(2) may occur if one willfully makes a false statement of a material fact; willfully omits any material fact required to be stated [in a registration statement or other document]; or willfully omits a material fact or a copy of a material document necessary to make the statements [in a registration statement or other document] not misleading. 22 U.S.C. § 618(a)(2). One may violate Section 1001 by various means, including concealing a material fact, making a false statement or representation, and making or using a false writing or document. *See, e.g., United States v. Stewart*, 433 F.3d 273, 319 (2d Cir. 2006).

representations to government officials. (Superseding Indictment, para. 45, 47). Indeed, the purportedly false statements and representations are identical in both charges. The original Indictment and the Superseding Indictment quote precisely the same statements, contained in the precisely the same documents, made to precisely the same people, and the elements of proof are the same. *Id.*

For these reasons, Counts Four and Five charge the same offense and violate the Double Jeopardy Clause.

### B. A Multiplicitous Indictment Improperly Prejudices the Defendant Before the Jury

Multiplicity presents not only the risk that a defendant may receive multiple punishments for one offense, but also the risk that the jury will view the defendant as having committed several crimes instead of just one. In the District of Columbia, federal courts have repeatedly explained that "multiplicitous charges improperly prejudice a jury by suggesting that a defendant has committed not one but several crimes." *United States v. Morrow*, 102 F. Supp. 3d 232, 246 (D.D.C. 2015); *see also United States v. Brown*, 503 F. Supp. 2d 217 (D.D.C. 2007) (same); *United States v. Bowyer*, 985 F. Supp. 153, 155 (D.D.C. 1997) (same); *United States v. Phillips*, 962 F. Supp. 200, 202 (D.D.C. 1997) (same, adding further that multiplicitous indictments can lead jurors to "[c]ompromise verdicts or assumptions that, with so many charges pending the defendant must be guilty on at least some of them, pos[ing] significant threats to the proper functioning of the jury system."); *United States v. Clarridge*, 811 F. Supp. 697, 702 (D.D.C. 1992) (same, adding further that "[o]nce such a message is conveyed to the jury, the risk increases that the jury will be diverted from a careful analysis of the conduct at issue"). Other federal courts have

identified the same issue. *See, e.g., United States v. Langford*, 946 F.2d 798, 802 (11th Cir. 1991); *United States v. Carter*, 576 F.2d 1061, 1064 (3d Cir. 1978).

In *Phillips, supra,* the government contended that the court could remedy the multiplicitous indictment by merging the offenses at sentencing. *Phillips*, 962 F. Supp. at 202. The court held that while merger of the offenses at sentencing addresses the risk of receiving multiple punishments for a single offense, it does nothing to remedy the "significant threats to the proper functioning of the jury system" that a multiplicitous indictment poses. *Id.* Nor do limiting instructions to the jury suffice because there is "no justification for increasing the possibility of prejudice against the defendant by letting multiplicitous counts go to the jury in the first place." *Id.*

Simply stated, the jury system relies on jurors to evaluate each charge against a defendant independently of the other charges. Jurors, however, are subject to the temptation to view multiple counts as indicative of multiple crimes. Worse still, multiple counts can influence jurors to "assum[e] that, with so many charges pending the defendant must be guilty on at least some of them." *Id.* This is a pernicious assumption; it prevents a reasoned analysis of the facts and severely undermines a bedrock principle of the U.S. justice system; *i.e.,* the presumption of innocence afforded to each and every defendant in a criminal case. For this reason, the federal courts in the District of Columbia have been wary of and prevented the government from presenting multiple counts of the same offense to the jury.

WHEREFORE, Defendant Manafort respectfully moves the Court to order the Office of Special Counsel to choose either Count Four or Count Five and dismiss the other on the ground that they have charged a single offense in multiple counts.

Dated: March 14, 2018                                        Respectfully submitted,

Kevin M. Downing
(D.C. Bar No. 1013984)
Law Office of Kevin M. Downing
601 New Jersey Avenue NW
Suite 620
Washington, DC 20001
(202) 754-1992
kevindowning@kdowninglaw.com

Thomas E. Zehnle
(D.C. Bar No. 415556)
Law Office of Thomas E. Zehnle
601 New Jersey Avenue NW
Suite 620
Washington, DC 20001
(202) 368-4668
tezehnle@gmail.com

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA )<br>)<br>)<br>v. )<br>)<br>)<br>PAUL J. MANAFORT, JR., )<br>)<br>)<br>*Defendant.* )<br>) | Criminal No. 1:17-201-01 (ABJ) |

**[Proposed] <u>ORDER</u>**

Upon consideration of Defendant Paul J. Manafort, Jr.'s Motion to Dismiss One of Two Multiplicitous Counts pursuant to Federal Rules of Criminal Procedure 12(b)(3), and any opposition and reply thereto, it is hereby **ORDERED** that the motion is **GRANTED**; and it is hereby **FURTHER ORDERED** that the Government must elect which of Counts Four or Five of the Superseding Indictment is to be **DISMISSED**.

**SO ORDERED.**

Dated: _____

_____
AMY BERMAN JACKSON
United States District Judge