UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| v. | ) | |
| | ) | Crim. No. 17-201-01 (ABJ) |
| PAUL J. MANAFORT, JR., | ) | |
| | ) | |
| Defendant. | ) | |

PAUL J. MANAFORT, JR.'S MOTION TO DISMISS
COUNT TWO AND TO STRIKE THE FORFEITURE ALLEGATION

Paul J. Manafort, Jr. ("Mr. Manafort"), by and through counsel, hereby files this motion to dismiss Count Two of the Superseding Indictment and to strike the Forfeiture Allegation. The basis for this motion follows.

**1. Introduction**

In the Superseding Indictment, the Office of Special Counsel ("OSC" or "government") takes aim at Mr. Manafort's past political consulting work in Ukraine. (Dkt. #202). It spans a decade before the presidential election of 2016, dating back to 2006, and it contains no allegations of coordination between individuals associated with President Trump's campaign and the Russian government – the very reason for the OSC's existence. At its core, the Superseding Indictment alleges that the defendant failed to timely submit a foreign agent registration form with the U.S. Department of Justice, and that he failed to report foreign bank accounts and income to the U.S. Department of Treasury.

Count Two charges Mr. Manafort with conspiring to launder money in violation of 18 U.S.C. §1956(h). But the funds from the defendant's political consulting in Ukraine (and used

for the personal expenditures outlined in detail in the Superseding Indictment) could not have *promoted* the specified unlawful activity that is alleged; namely, violations of 22 U.S.C. §612 and §618.  (Dkt. #202 at ¶41(a).  The government alternatively contends that Mr. Manafort's failure to submit a registration statement under the Foreign Agents Registration Act ("FARA"), or alleged false and misleading FARA statements made in 2016 and 2017, somehow transform otherwise legitimate consulting income earned from 2006 until 2014 into tainted funds. (Dkt. #202 at ¶41(b)),

The charged personal financial transactions could not "promote" the alleged failure to file a FARA registration form, the charged personal financial transactions ending in 2014 could not promote the alleged false statements that occurred two years later, and the alleged failure to file a FARA registration form could not produce "proceeds" as required by the relevant statute. Therefore, none of the allegations state an offense under the money laundering conspiracy statute and Count Two must be dismissed.

## 2.  Applicable Law and Argument

### a.  The FARA Statute

Congress passed FARA in 1938 to curb the impact of foreign propagandists in the United States by requiring those engaged in propaganda campaigns to register and to label their materials.  The original language of the statute required: "Every person who is now an agent of a foreign principal shall, within thirty days after this Act takes effect, and every person who shall hereafter become an agent of a foreign principal shall forthwith file with the Secretary [of State] a registration statement, under oath, on a form prescribed by the Secretary . . . ." 52 Stat. 248 (1938).

In 1942, the "Registration" provision of FARA was amended to read: "No person shall act as an agent of a foreign principal unless he has filed with the Attorney General a true and complete registration statement and supplements thereto as required by section 2(a) and section 2(b) hereof or unless he is exempt from registration under the provisions of this Act."  56 Stat. 251 (1942).  Notably, despite this language change, the amendment's statement of policy and purpose declared "the policy and purpose of this Act to protect the national defense, internal security, and foreign relations of the United States by requiring public disclosure by persons engaging in propaganda activities and other activities for or on behalf of foreign governments, foreign political parties, and other foreign principals so that the Government and the people of the United States may be informed of the identity of such persons and may appraise their statements and actions in the light of the associations and activities."  *Id*. at 248-49.

Over the years, FARA has been altered by series of amendments and, as a result, its focus has shifted from curbing foreign propaganda to addressing undisclosed lobbying activities on behalf of foreign principals.  Despite this focal change, the relevant regulatory provision of FARA, found in Title 22, United States Code, Section 612, entitled "Registration Statement," reads "[n]o person shall act as an agent of a foreign principal unless he has filed with the Attorney General a true and complete registration statement and supplements thereto as required by subsections (a) and (b) of this section unless he is exempt from registration under the provisions of this subchapter."  Thus, this language is substantially the same as in earlier versions.

FARA's "Enforcement and penalties" provision — Section 618(a) "Violations; False statement and willful omissions" – provides: Any person who – (1) knowingly violates any provision of this subchapter or any regulation thereunder, or (2) [makes a false statement of any

material fact in a registration statement], shall, upon conviction thereof, be punished by a fine of not more than $10,000 or by imprisonment for not more than five years, or both. . . . " 22 U.S.C. §618(a)(1) & (2).

Reading these provisions together against the backdrop of the original enactment and the 1942 statement of policy and purpose reveals that Section 612 requires the filing of a registration statement, and Section 618 makes it a crime to willfully fail to file such a statement, but neither section prohibits the *agency* itself, even when unregistered. In other words, the offense is the failure to file the registration statement, and not acting as an agent without filing, which is specifically proscribed under Title 18, United States Code, Section 951.

More particularly, Section 951 prohibits *acting as an agent* of a foreign government without providing prior notice to the Attorney General. It states, in pertinent part: "Whoever, other than a diplomatic or consular officer or attaché, acts in the United States as an agent of a foreign government without prior notification to the Attorney General if required in subsection (b), shall be fined under this title or imprisoned for more than ten years or both." 18 U.S.C. §951. This language clearly makes acting as an agent in the absence of notification a crime. When distinguishing between the offenses set out in 18 U.S.C. §951 and 22 U.S.C. §612, there is "no inconsistency between 18 U.S.C. §951, making it a criminal offense punishable by not more than $5,000 and/or ten years, for one to act as a foreign agent without prior notification to the [Attorney General], and 22 U.S.C. §612(a) which requires every person who becomes an agent of a foreign principal to register with the Attorney General within ten days after becoming such agent, and prescribes a $10,000 and/or five-year penalty [for failing to do so]." *United States v. Melekh*, 193 F. Supp. 586 (N.D. Ill. 1961). Section 951 requires an additional element not found

in 22 U.S.C. §612 and §618; *i.e.,* it requires that the activities of the agent be under the control of a foreign government.

This reading of FARA is consistent with controlling case law in this jurisdiction. *United States v. McGoff*, 831 F. 2d 1071 (D.C. Cir. 1987). In *McGoff* the D.C. Circuit considered a statute of limitations question related to a FARA prosecution – one of the few FARA criminal cases that have been reported. In doing so, the court observed: "FARA thus creates a comprehensive regulatory scheme for foreign agent registration. It delineates a certain class of individuals who must provide information to the Government. It details precisely the information required, as well as the timing of and form for that information. Finally, and directly pertinent to the case at hand, the statute criminalizes *the willful failure to comply with the information production requirements.*" *Id.* at 1075 (emphasis added).

The government has only brought criminal prosecutions under FARA in a handful of cases since the 1966 amendments to the statute. In the Superseding Indictment, the OSC charges: "[defendant] knowingly and willfully acted as an agent of a foreign principal . . . without registering with the Attorney General as required by law." (Dkt. #202 at ¶43). The defense has found no case, however, in which this charging language has been specifically approved by any court.[1] To the extent that the language in the Superseding Indictment charges the offense as *acting* as an agent of a foreign principal without registering, it misstates the offense and creates a crime that is not supported by the statutory language, the legislative history, or the few judicial interpretations of FARA that exist.

---

[1] This charging language has been used by the government in securing a couple of guilty pleas in the past; however, because those cases were negotiated resolutions, the language does not appear to have been involved in a contested proceeding.

Indeed, in a recent indictment charging violations of both 18 U.S.C. §951 and 22 U.S.C. §612, the charging language for the §951 violation read: "... defendants herein, *acted* in the United States *as agents* of a foreign government … without prior notification to the Attorney General as required under the rules and regulations established by the Attorney General;" in contrast, the charging language for the §612 violation read: "…defendant herein, *willfully failed to file a registration statement* with the Attorney General, as required by law, while acting as an agent on behalf of foreign principals. . . ." *See United States v. Ben Israel*, No. 13 CR 572 (N.D. Ill. 2013) (Rec. Doc. 38). The government's own *Ben Israel* indictment demonstrates the difference between a §951 charge – which makes *acting as an agent* of a foreign government illegal without notice to the Attorney General – and a §612 charge – which punishes the *failure to file a registration statement* with the Attorney General while acting as an agent of a foreign principal.

These differences in the wording of these two statutes are not semantic. Understanding the precise activity that is prohibited and, therefore, what constitutes a violation of FARA, is critical to understanding how the charged FARA violation relates to the money laundering conspiracy charged in Count Two of the Superseding Indictment.

**b.    The Money Laundering Conspiracy (Count Two)**

To convict a person of money laundering conspiracy under Sections 1956(a)(2)(A) and (h), the government must prove that the "defendant: (1) conspired; (2) to transport funds between the United States and another country; (3) with the intent to promote the carrying on of a specified unlawful activity." *United States v. Trejo*, 610 F.3d 308, 313 (5th Cir. 2010) (citations omitted). To convict under Section 1956(a)(1)(B)(i) and (h), "the government must prove that (1) the defendant [conspired to] conduct[] or attempt[] to conduct a financial transaction; (2) the

6

transaction involved the proceeds of [specified] unlawful activity; (3) the defendant knew that the proceeds were from unlawful activity; and (4) the defendant knew 'that the transaction [was] designed in whole or in part--(i) to conceal or disguise the nature, the location, the source, the ownership, or the control of the proceeds of specified unlawful activity.'"   *United States v. Adefehinti*, 510 F. 3d 319, 322 (D.C. Cir. 2007).   Finally, a violation of Section 1956(a)(1)(A)(i) and (h) requires the government to prove the first three elements and replaces the fourth element, requiring proof that the defendant acted "with intent to engage in conduct constituting a violation of 7201 or 7206 of the Internal Revenue Code of 1986."  18 U.S.C. §1956(a)(1)(A)(i).

Central to both prongs of the money laundering conspiracy charged in Count Two is the existence of a specified unlawful activity; here, a felony violation of FARA.  For purposes of ¶41(a), the transaction must be aimed at *promoting* the FARA violation, while for purposes of ¶41(b), the transaction must involve the *proceeds* of the FARA violation.

### c.  The charged financial transactions cannot promote the FARA violations as a matter of law

"[T]he term with the intent to promote the carrying on of specified unlawful activity means that the defendant must have conducted or attempted to conduct the financial transaction for the purpose of facilitating or making easier or helping to bring about the specified unlawful activity. . . ."  *United States v. Martinelli*, 454 F.3d. 1300, 1318 (11th Cir 2006).  As discussed above, the specified unlawful activities alleged here are felony violations of FARA – specifically, the failure to file a registration statement (Count Three) and filing a false and misleading statement (Count Four).  In particular, ¶41(a) alleges defendant engaged in financial transactions with intent to promote the carrying on of a FARA violation.  But there are no circumstances under which a charged financial transaction could have been intended to promote

the failure to file a registration statement or the filing of a false and misleading statement under FARA as alleged in Counts Three and Four of the Superseding Indictment.

The failure to file the FARA registration statement in violation of Sections 612 and 618(a)(1) is *an act of omission* that cannot be "promoted" – as case law defines "promotion" – by the international funds transfers set forth in the Superseding Indictment.  Likewise, such financial transactions could not be intended to "promote" – *i.e.,* facilitate, make easier or help to bring about – the filing of a false and misleading FARA statement in violation of Sections 612 and 618(a)(2).  Indeed, with regard to the FARA violation alleged in Court Four, the last international transaction identified in the Superseding Indictment occurred in September 2014 (Dkt. #202 at p. 16), *more than two years before the first alleged FARA false statement was made in November 2016.  Id.* at ¶45.  The Superseding Indictment does not allege, or even attempt to explain, how international transactions conducted in, and prior to, September 2014 could have been done with the intent to promote the carrying on of the purported FARA false statements violation, which purportedly did not even occur until 2016 and 2017.

To demonstrate the intent necessary to support a promotion money laundering conviction under Sections 1956(a)(2)(A) and (h), "the Government must present either direct proof of an intent to promote such illegal activity, or proof that a given type of transaction, on its face, indicates an intent to promote such illegal activity."  *United States v. Brown*, 553 F.3d 768, 785 (5th Cir. 2008) (citations omitted).  Courts, "careful not to allow the money laundering statute to become a money spending statute" have held that "the "promotion" element of money laundering [ ] cannot be met simply by demonstrating that the unlawfully earned monies were used to promote the continued functioning of an "otherwise legitimate business enterprise."  *Id.* at 786.  "Strictly adhering to the specific intent requirement of the promotion element . . . helps

ensure that the money laundering statute will punish conduct that is really distinct from the underlying specified unlawful activity and will not simply provide overzealous prosecutors with a means of imposing additional criminal liability. . . ." *United States v. Brown*, 186 F.3d 661, 670 (5th Cir. 1999).

But the judicial concern expressed in *Brown* is exactly what an overzealous OSC has done in this case. The transactions identified by the government as the defendant's personal expenditures cannot *promote* the FARA violations they allege. Indeed, more than one-quarter of the government's Superseding Indictment is spent simply listing out Mr. Manafort's personal expenditures. (Dkt. #202 at 7-15). The transactions identified by the government are clearly unconnected to the purported specified unlawful activity alleged in this case.[2] Courts have been careful to point out:

> The crime of money laundering promotion is aimed not at maintaining the legitimate aspects of a business nor at proscribing all expenditures of ill-gotten gains, but only at transactions which funnel ill-gotten gains directly back into the criminal venture. To hold otherwise would be to ignore [ ] that the money laundering statute is not a mere money spending statute.

*United States v. Miles*, 360 F.3d 472, 479 (5th Cir. 2004).

In *Miles*, the defendants operated a home health care business and defrauded Medicare by billing for their personal expenses, billing legitimate expenses at two or three times the actual cost, and billing for fictitious expenses. *Id*. at 475-76. The government charged, and the defendants were convicted of, money laundering promotion for paying certain legitimate

---

[2] *See United States v. Jackson*, 935 F.2d 832, 841 (7th Cir. 1991) (defendant's expenditure of proceeds from drug sales used solely to maintain personal lifestyle did not promote specified crime of drug dealing).

business expenses such as office rent, payroll, and payroll taxes, from the proceeds of the fraud. *Id*. at 476. The Fifth Circuit reversed those convictions, finding that evidence showing only that the expenditures were the "customary costs of running a legal business" did not prove the crime of promotion money laundering. *Id*. at 479. *Accord United States v. Shelburne*, 563 F. Supp. 2d 601 (W.D. Va. 2008) (vacating money laundering conviction where government's evidence showed only that defendant used proceeds from fraud to "fund his family's lavish lifestyle"). "The correct distinction, for purposes of inferring specific intent, is between payments that further or promote illegal money laundering . . . and payments that represent customary costs of running a legal business." *Miles,* 360 F.3d at 479.

In this case, there is no claim – nor could there be – that Mr. Manafort's international political consulting activities were, in themselves, illegal. Nor does the Superseding Indictment allege that the proceeds of the purported crimes were involved in the financial transactions identified in the Superseding Indictment. Indeed, Count Two is inconsistent on this point. The offense charged in ¶41(a) does not require that the funds transferred internationally be criminally derived. In contrast, the offense prong charged in ¶41(b) specifically requires that the transactions involve criminally derived proceeds. The government ignores this inconsistency and relies upon the same financial transactions to support both paragraphs by incorporating the allegations by reference. (Dkt. #202 at p. 26). Because the alleged FARA violations could not have been promoted by the financial transactions as a matter of law, the defendant could not have undertaken the transactions with the intent to promote the specified unlawful activity. The character of the transactions identified in the Superseding Indictment demonstrates that they were personal expenditures that had nothing to do with the offenses alleged in Counts Three and

Four.  For these reasons, the money laundering conspiracy charged in Count Two ¶41(a), must be dismissed.

### d.   FARA violations cannot generate unlawful proceeds as a matter of law

Paragraph ¶41(b) takes a different tack and alleges the defendant engaged in transactions involving the proceeds of specified unlawful activity with improper intent.  Under this Count Two scenario, to violate the money laundering statute, the defendant must have *proceeds – i.e.,* funds derived from a specified unlawful activity – and the defendant must launder those proceeds – *i.e.*, use the proceeds in a financial transaction with an improper intent.  Without proceeds, there are no tainted funds to launder and there can be no crime under this prong as charged in Count Two.

More particularly, the Superseding Indictment charges that funds involved in the financial transactions are the proceeds of a specified unlawful activity – here, a felony violation of FARA.  The FARA violation alleged in Count Three – the failure to file a registration statement when acting as an agent of a foreign principal – involves willfully failing to provide information to the government and, therefore, cannot generate proceeds.  Similarly, the FARA violation alleged in Count Four, making false or misleading statements under FARA, did not produce any proceeds.  As a result, the money laundering charge in this subparagraph must also be dismissed for failure to state an offense as a matter of law.

As noted above, the money laundering statute generally requires that a financial transaction involve the proceeds of a specified unlawful activity.  Specifically, 18 U.S.C. 1956(a)(1) requires a financial transaction "which in fact involves the proceeds of specified unlawful activity."  To determine whether the government has alleged an offense under the money laundering statute, the Court must decide whether the specific allegations in the

Superseding Indictment which support the FARA violations could have generated proceeds in the first place that were subsequently laundered.   Importantly, "[t]he offense of money laundering must be separate and distinct from the underlying offense that generated the money to be laundered."   *United States v Hall*, 613 F.3d 249, 254 (D.C. Cir. 2010) (citations omitted). Here, the OSC's charged FARA offenses must have generated the money to be laundered prior to the transactions charged in the Superseding Indictment because those transactions must involve the proceeds of the FARA violations – *i.e.,* the specified unlawful activity.

Contrary to the government's allegations in ¶41(b), however, the FARA violations could not have generated proceeds as a matter of law.   There is nothing about the failure to file a FARA registration statement (or filing a misleading registration statement or other document under FARA) that generates proceeds.[3]   That theory is inconsistent with the conduct FARA makes criminal, as discussed *supra*.   The offense alleged under FARA is failing to file a registration statement, per the statute's own language, and not acting as an unregistered agent.[4] There are no proceeds and, as a result, the money laundering conspiracy alleged in Count Two ¶41(b) also fails to state an offense and must be dismissed.

### e.   The Forfeiture Allegation is unsupported and must be stricken from the Indictment

The Forfeiture Allegation in the Superseding Indictment is based upon the money laundering conspiracy and the FARA violations.   No other offenses alleged in the Indictment

---

[3] This is clearly distinguishable from a situation where the filing of a form leads to a payment based upon that form.

[4] As noted previously, Section 951, unlike the charged FARA violations, criminalizes acting as an agent of a foreign government, where the agent is under the control of the foreign government and where notice has not been provided to the Attorney General.  A violation of Section 951 could conceivably generate proceeds. Significantly, however, Section 951 is *not* a specified unlawful activity for purposes of the money laundering statute.

provide a basis for the forfeiture of property.  *See* 18 U.S.C. §981 and §982.  Because Count Two fails to state a money laundering offense and the FARA violations cannot generate unlawful proceeds as a matter of law, the Superseding Indictment does not support the Forfeiture Allegation.  Accordingly, the Court must strike the Forfeiture Allegation of the Indictment, which seeks the forfeiture of property involved in money laundering (Count Two) and property derived from or traceable to the proceeds of FARA violations (Counts Three and Four).  Further, the Court should order any restraint of property based upon the Forfeiture Allegation be rescinded and the property released.

### 3.   Conclusion

WHEREFORE, for the foregoing reasons, the defendant respectfully moves this Court to

dismiss Count Two of the Superseding Indictment and to strike the Forfeiture Allegation.

Dated: March 14, 2018                                    Respectfully submitted,


      s/   Kevin M. Downing
Kevin M. Downing
Law Office of Kevin M. Downing
601 New Jersey Avenue, N.W.
Suite 620
Washington, DC 20001
Tel: 202-754-1992
Fax: None
Email: kevindowning@kdowninglaw.com
DC Bar # 1013984


      s/   Thomas E. Zehnle
Thomas E. Zehnle
Law Office of Thomas E. Zehnle
601 New Jersey Avenue, N.W.
Suite 620
Washington, DC 20001
Tel: 202-368-4668
Fax: None
Email: tezehnle@gmail.com
DC Bar # 415556


      s/   Richard W. Westling
Richard W. Westling
Epstein Becker & Green, P.C.
1227 25th Street, N.W.
Washington, DC 20037
Tel: 202-861-1868
Fax: 202-296-2882
Email: rwestling@ebglaw.com
DC Bar # 990496

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| | ) | |
| | ) | |
| v. | ) | Criminal No. 17-201-01 (ABJ) |
| | ) | |
| | ) | |
| PAUL J. MANAFORT, JR., | ) | |
| | ) | |
| | ) | |
| *Defendant.* | ) | |
| | ) | |

**[Proposed] <u>ORDER</u>**

Upon consideration of Defendant Paul J. Manafort, Jr.'s Motion to Dismiss Count Two of

the Superseding Indictment pursuant to Federal Rules of Criminal Procedure 12(b)(3) and to

Strike the Forfeiture Allegation, and any opposition and reply thereto, it is hereby **ORDERED**

that the motion is **GRANTED**; and it is hereby **FURTHER ORDERED** that Count Two of the

Superseding Indictment is **DISMISSED** and the **FORFEITURE ALLEGATION** is

**STRICKEN.**

**SO ORDERED**.

Dated: _____              _____
                                          AMY BERMAN JACKSON
                                          United States District Judge