UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| v. ) | |
| ) | Crim. No. 17-201-01 (ABJ) |
| PAUL J. MANAFORT, JR., ) | |
| ) | |
| Defendant. ) | |

**DEFENDANT PAUL J. MANAFORT, JR.'S MOTION TO SUPRESS EVIDENCE AND THE FRUITS THEREOF RELATING TO THE GOVERNMENT'S SEARCH OF HIS RESIDENCE LOCATED IN ALEXANDRIA, VIRGINIA**

Defendant Paul J. Manafort, Jr., by and through counsel, hereby moves the Court pursuant to Rules 12(b)(3)(C) and 41(h) of the Federal Rules of Criminal Procedure to suppress evidence obtained by the government pursuant to a search warrant (the "Search Warrant")[1] issued by a magistrate judge in the Eastern District of Virginia on July 25, 2017, for his residence located in Alexandria, Virginia (the "Manafort Home") because 1) the Search Warrant was an overbroad general warrant in violation of Mr. Manafort's Fourth Amendment rights; (2) the agents who executed the search exceeded the Search Warrant's parameters in violation of the Fourth Amendment; and 3) the Special Counsel did not have the authority or jurisdiction to apply for the Search Warrant;[2] and 4) the government has improperly retained everything it seized from the

---

[1] A redacted copy of the Search Warrant is annexed hereto as Exhibit A.

[2] *See* Defendant Manafort's Motion to Dismiss (Dkt. No. 235). As the Supreme Court has recognized,

> where the officer's powers are limited by statute, his actions beyond those limitations are considered individual and not sovereign actions. The officer is not doing the business which the sovereign has empowered him to do or he is doing it in a way which the sovereign has forbidden. His actions are ultra vires his authority and therefore may be made the object of specific relief.

*Larson v. Domestic & Foreign Commerce Corp.*, 337 U.S. 682, 689 (1949).

1

Manafort Home for nearly nine months and has failed to return all non-responsive material seized to Mr. Manafort.

## I. DISCUSSION

On the morning of July 26, 2017, agents entered the Manafort's home located in a condominium building. Once inside, the agents seized or imaged every electronic device and storage device in the home.

### a. The Search Warrant was unconstitutionally overbroad

The Search Warrant was fatally overbroad because it allowed the searching agents to indiscriminately seize records, emails, photographs and electronic devices from the Manafort Home. The Fourth Amendment does not permit the warrant that was issued in this case, which was essentially a general warrant for "any and all" financial documents and electronic devices. Rather, the Fourth Amendment requires that search warrants "'particularly describ[e] the place to be searched, and the persons or things to be seized,' which operates to 'prevent[ ] the seizure of one thing under a warrant describing another.'" *Jones v. Kirchner*, 835 F.3d 74, 79 (D.C. Cir. 2016) (quoting *Marron v. United States*, 275 U.S. 192, 195–96 (1927)).

The Search Warrant here fell short of the constitutional requirements set out above. For offenses occurring on or after January 1, 2006,[3] the Search Warrant directed the seizure of, *inter alia*, "[a]ny and all financial records for Paul Manafort, Jr., Kathleen Manafort, Richard Gates, or companies associated with Paul Manafort, Jr., Kathleen Manafort, or Richard Gates", (*see* Search Warrant, Attachment B, ¶ 1a.), "[e]vidence indicating Manafort's state of mind as it relates to the crimes under Investigation" (*id.* ¶ 1i.), and "[c]omputers or storage media used as a means to commit the Subject Offenses," (*id.* ¶ 2.).

---

[3] This crucial temporal limitation was missing from the search warrant for the storage unit.

2

A search warrant for "any and all financial records" of everyone residing at the subject location is exceptionally broad; indeed, nothing in the affidavit justifies so broad a warrant. And a warrant directing agents to seize all evidence of the subject's "state of mind" does not restrict the agent's discretion at all. Indeed, the warrant may just as well have told agents to search for and seize any evidence that the subject committed the subject offenses – all of which require knowledge and intent. While seizing agents naturally look for evidence of the subject's guilt, the role of the warrant is to *limit* their discretion to determine what constitutes such evidence. This warrant did no such thing. Finally, the warrant allowed the agents to search for and seize any "computers or storage media" that may have been used in the "subject offenses," but it did not limit the agents' discretion in determining what computers or what storage media fit that description.

Recently, the D.C. Circuit Court of Appeals found wanting a similar warrant authorizing the seizure of all electronic devices. In *United States v. Griffith*, 867 F.3d 1265 (D.C. Cir. 2017), the appellate court invalidated a search and seizure warrant that "authorized the wholesale seizure of all electronic devices discovered in the apartment, including items owned by third parties." *Id*. at 1270-71. In this case, the warrant authorized such a seizure.

Nor can the affidavit submitted by the FBI in support of the search warrant application (the "FBI Affidavit")[4] save this defective warrant. The Supreme Court has made clear that the Fourth Amendment's particularity requirements must be satisfied "in the warrant, *not in the supporting documents*." *Groh v. Ramirez*, 540 U.S. 551, 557 (2004) (emphasis added). A court may only "construe a warrant with reference to a supporting application or affidavit if the warrant uses appropriate words of incorporation, and if the supporting document accompanies the warrant." *Id*.

---

[4] A redacted copy of the FBI Affidavit is annexed hereto as Exhibit B.

at 557–58. The D.C. Circuit has recently explained that it will "read warrants by reference to an affidavit, [but], only if the issuing judge uses explicit words on the warrant indicating an intention to incorporate the affidavit's contents and thereby limit [the warrant's] scope." *Griffith*, 867 F.3d 1265 at 1277. Here, the Search Warrant did not incorporate the FBI Affidavit.

      **b. The FBI Affidavit failed to establish probable cause that the electronic devices had any connection to the subject offenses and would be found in the Manafort Home.**

As in *Griffith*, the search warrant affidavit in this case goes on at length about evidence of the subject's purported involvement in the offenses. That exposition, however, is directed at establishing why there is reason to be believe that an offense was committed and that the subject was the one who committed it. Importantly, an affidavit must also establish a reason to believe that the evidence sought will be found in the place to be searched. "Regardless of whether an individual is validly suspected of committing a crime, an application for a search warrant concerning his property or possessions must demonstrate cause to believe that evidence is likely to be found at the place to be searched." *Griffith*, 867 F.3d at 1271 (internal quotation marks omitted).

An affidavit setting forth reasons to believe that an individual may have committed an offense, without more, is the proper basis of an arrest warrant—not a search warrant:

> The Supreme Court has long distinguished between arrest warrants and search warrants. An arrest warrant rests on probable cause to believe that the suspect committed an offense; it thus primarily serves to protect an individual's liberty interest against an unreasonable seizure of his person. A search warrant, by contrast, is grounded in probable cause to believe that the legitimate object of a search is located in a particular place. Rather than protect an individual's person, a search warrant safeguards an individual's interest in the privacy of his home and possessions against the unjustified intrusion of the police.

*Griffith*, 867 F.3d at 1271 (internal citations and quotation marks omitted).

In this case, the affidavit does not establish probable cause to believe that the electronic devices purportedly used in the commission of the subject offenses are likely to be found in the Manafort Home:

- One form in which the records might be found is data stored on a computer's hard drive or other storage media.  (Search Warrant Affidavit ¶ 75 (footnote omitted).)

- In a July 2017 interview, [redacted] advised the FBI that there is a Mac desktop computer on the desk in the office at the Subject Premises, which is used by Manafort.  (*Id.* ¶ 76.)

- For a variety of reasons, copies of historical records and current records are also frequently stored on external hard drives, thumb drives, and magnetic disks. There is reasonable cause to believe such media may be contained in and among records of Manafort's business and financial activity at the Subject Premises. FBI interviews of [redacted] further confirm that Manafort has made widespread use of electronic media in the course of his business activity.  (*Id.*)

- For example, [redacted] told the FBI that Manafort had a drawer full of phones and electronic equipment at his old residence in Mount Vernon Square. At one point, Manafort gave [redacted] a bag of computers and directed [redacted] to have the drives wiped before giving them to charity. Manafort also gave [redacted] several additional devices, both laptops and cellular phones.  (*Id.*)

Far from establishing that electronic devices purportedly used to commit the subject offenses are likely to be found in the Manafort Home, the affidavit offers the issuing magistrate nothing more than an affirmation that 1) generally speaking, computer hard drives and external storage media contain data; 2) there is an Apple McIntosh computer in the residence that Mr. Manafort uses for *some* purpose; 3) data is commonly stored on electronic media and Mr. Manafort has used electronic media in his business; and 4) at his previous residence, Mr. Manafort had what amounts to a junk drawer where he kept his old phones and other electronic devices before donating them to charity.  These statements are an assortment of truisms; this recitation does not begin to establish "a nexus . . . between the item to be seized and criminal behavior." *Griffith*, 867 F.3d at 1271.

5

The affidavit is so lacking in probable cause to believe that electronic devices used in the alleged commission of the subject offenses would be found in the Manafort Home that no reasonable agent could have relied on it. Indeed, the *Griffith* court summed up the analysis as follows:

> As the Court explained in *Leon*, the good-faith exception does not apply if a warrant is based on an affidavit so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable. When applying that standard, we consider the objective reasonableness not only of the officers who eventually executed the warrant, *but also of the officers who originally obtained it* or who provided information material to the probable-cause determination. We thus ask whether an objectively reasonable officer could think the affidavit established probable cause, keeping in mind the inadequacy of a bare bones affidavit.

*Griffith*, 867 F.3d at 1278 (internal citations and quotation marks omitted) (emphasis added). No reasonable agent could have believed that his affidavit established probable cause, and no executing agent could have believed it either. For this reason, the electronic evidence seized from the Manafort Home must be suppressed.

### c. The executing agents improperly seized materials beyond the warrant's scope

Even where the particularity requirement is satisfied – and here it was not – "the search itself must be conducted in a reasonable manner, appropriately limited to the scope and intensity called for by the warrant." *United States v. Heldt*, 668 F.2d 1238, 1256 (D.C. Cir. 1981) (citation and footnotes omitted). As the court in *Heldt* further explained:

> When investigators fail to limit themselves to the particulars in the warrant, both the particularity requirement and the probable cause requirement are drained of all significance as restraining mechanisms, and the warrant limitation becomes a practical nullity. Obedience to the particularity requirement both in drafting and executing a search warrant is therefore essential to protect against the centuries-old fear of general searches and seizures.

*Id.* at 1257. In light of these principals, "the Fourth Amendment confines an officer executing a search warrant strictly within the bounds set by the warrant[.]" *Id.* at 1260 (quoting *Bivens v. Six*

6

*Unknown Named Agents*, 403 U.S. 388, 394 n.7 (1971)). Therefore, "in general, only items particularly mentioned in the warrant may be seized." *Id.* at 1268 (collecting cases).

The agents that executed the Search Warrant in this case ran afoul of the above principles and seized every electronic and media device in the Manafort Home. For example, the search warrant inventory of electronic devices seized or imaged includes things such as an Apple iPod music device and some Apple iPod Touch music and video devices. No agent could have reasonably believed that he was seizing electronic devices used in the commission of the subject offenses.

> **d. The government's nearly nine-month retention of every item it seized constitutes an unreasonable search and seizure in violation of Mr. Manafort's Fourth Amendment rights**

The FBI searched the Manafort Home more than eight months ago. To date, the government has not represented that the materials seized were subject to any process or procedure to insure the government only retained materials within the *scope* of the search warrant. The government has only represented that the materials have been subject to a *privilege* review. The government is required to review seized materials and "identify and return those materials not covered by the warrant." *United States v. Soliman*, 2008 WL 4757300, at *8 (W.D.N.Y. Oct. 29, 2008); *see also United States v. Tamura*, 694 F.2d 591, 597-98 (9th Cir. 1982) (holding the government's retention of material outside the scope of the warrant was an "unconstitutional manner of executing the warrant"); *United States v. Comprehensive Drug Testing, Inc.*, 621 F.3d 1162, 1171 (9th Cir. 2010) (finding the government may only retain material seized from electronic systems if it was specified in the search warrant); *Doane v. United States*, 2009 WL 1619642, at *10 (S.D.N.Y. June 5, 2009) ("[P]ermitting the Government to retain items outside

the scope of the warrant . . . would dramatically dilute the right to privacy in one's personal papers.").

The first indictment in this matter was returned over five months ago, yet the government has made no indication that all of the materials seized have been reviewed for responsive documents and data. Moreover, the government has not identified materials that were seized even though they were outside the scope of the Search Warrant. As one court has explained, this alone violates the requirements of the Fourth Amendment. *See United States v. Metter*, 860 F. Supp. 2d 205 (E.D.N.Y. 2012). In *Metter*, the court granted the defendant's motion to suppress in light of the government's failure to identify seized documents responsive to a search warrant despite having fifteen months following the search to do so. *Id.* at 215. The court observed that "[t]he government's retention of *all* imaged electronic documents, including personal emails, without *any* review whatsoever to determine not only their relevance to this case, but also to determine whether any recognized legal privileges attached to them, is unreasonable and disturbing.") *Id.* (emphasis in original). *See also United States v. Debbi*, 244 F. Supp. 2d 235, 238 (S.D.N.Y. 2003) (failure to review search material for eight months violated the Fourth Amendment). As individuals and businesses become ever more reliant on computers and other electronic devices, federal courts have become increasingly concerned that the government's ability to seize entire hard drives for off-site examinations not "become a vehicle" for plainly unconstitutional "general" searches. *Comprehensive Drug Testing, Inc.*, 621 F.3d at 1177; *see also United States v. Wey*, 256 F. Supp. 3d 355, 406-07 (S.D.N.Y. 2017) (granting motion to suppress).

Even if the government had completed its review of the materials seized within a reasonable time period in this case – which it has not – courts require that, once the government completes its review, it must return all non-responsive information which "it ha[d] no probable

cause to collect" in the first place. *See, e.g., Comprehensive Drug Testing*, 621 F.3d at 1177; *see also Tamura*, 694 F.2d at 596-97 (retention of "documents not described in the warrant … for at least six months after locating the relevant documents" was "an unreasonable and therefore unconstitutional manner of executing the warrant"). Without this requirement, the government's practice of over-seizing documents for offsite review would lead to the indefinite retention of all hard copy documents and electronically-stored material, a clear violation of the Fourth Amendment. *See, e.g., Comprehensive Drug Testing*, 621 F.3d at 1176; *Metter*, 860 F. Supp. 2d at 216 ("[T]he Fourth Amendment would lose all force and meaning in the digital era and citizens will have no recourse as to the unlawful seizure of information that falls outside the scope of a search warrant and its subsequent dissemination.").

In *United States v. Debbi*, the government obtained search warrants permitting seizure of items related to allegations of obstruction of justice and health care fraud. 244 F. Supp.2d at 236. Pursuant to those warrants, federal agents seized electronic and paper files, financial documents, and patient reports. Thereafter, the government failed to take any steps to separate seized documents that fell within the scope of the warrants from those clearly outside the scope. *Id.* at 237. The *Debbi* court found that the government "felt free to invade [the defendant's] home, seize his records without meaningful limitation and restraint, pick over them for months thereafter without determining which were actually evidence of the alleged crimes, and even now refrain from returning what it was never entitled to seize." *Id.* at 238. Thus, the court suppressed all seized materials that the government had not yet determined to be within the scope of the warrants. *Id.*

The result should be no different here, where the government executed the Search Warrant nearly nine months ago and, to date, the defense has no reason to believe that the material seized

from the Manafort Home has even been fully reviewed and where no material deemed unresponsive to the Search Warrant has been returned to Mr. Manafort.

Wherefore, Mr. Manafort respectfully moves the Court to suppress all evidence and fruits thereof relating to the government's search of the Manafort Home on the grounds stated herein.

Dated: April 9, 2018                                   Respectfully submitted,


      /s/_____
Kevin M. Downing
(D.C. Bar No. 1013984)
Law Office of Kevin M. Downing
601 New Jersey Avenue NW
Suite 620
Washington, DC 20001
(202) 754-1992
kevindowning@kdowninglaw.com


      /s/_____
Thomas E. Zehnle
(D.C. Bar No. 415556)
Law Office of Thomas E. Zehnle
601 New Jersey Avenue NW
Suite 620
Washington, DC 20001
(202) 368-4668
tezehnle@gmail.com