UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| v. ) | |
| ) | Crim. No. 17-201-01 (ABJ) |
| PAUL J. MANAFORT, JR., ) | |
| ) | |
| Defendant. ) | |

**DEFENDANT PAUL J. MANAFORT, JR.'S REPLY
TO THE GOVERNMENT'S RESPONSE TO HIS MOTION TO
DISMISS COUNT TWO AND THE FORFEITURE ALLEGATION**

Defendant Paul J. Manafort, Jr., by and through counsel, hereby files his reply to the Government's Response to his Motion to Dismiss Count Two and the Forfeiture Allegation. (Dkt. #250). In reply, defendant states as follows:

In opposing the motion to dismiss, the government argues that Mr. Manafort misunderstands the international money laundering charges contained in Count Two. Special Counsel also claims that the defendant misinterprets the reach of the Foreign Agents Registration Act ("FARA"), which the government contends broadly prohibits *acting as an unregistered agent* of a foreign principal.

Notably, nothing in the government's response supplants the necessity for the Court to resolve the core issue of what FARA prohibits in addressing the pending motion. If FARA prohibits failing to file a registration statement, but not *acting as an agent*, the FARA offense cannot be "promoted" by the charged transactions and cannot produce "proceeds" as a matter of law. As a result, Count Two would fail to state an offense under the money laundering conspiracy

1

statute and must be dismissed. In contrast, if FARA outlaws *acting as an agent* without registering, it is at least possible a FARA violation could be promoted by funds involved in international money transfers and/or that a FARA violation could generate proceeds. Even under this reading of the FARA statute, it would be appropriate for the Court to determine whether the government's charging language in Court Two adequately states an offense. However, given the clear limits of FARA's criminal prohibition to either failing to file a registration statement or filing a false or misleading registration statement, the Court need not engage in such a determination under the current circumstances.

Count Two fails to allege a conspiracy that used laundered funds to promote the failure to file a FARA registration statement or to allege a conspiracy involving the laundering of proceeds from the failure to file a registration statement. Due to these failures, Count Two does not state an offense and must be dismissed.

1. **The FARA Statute**

Arguing that FARA proscribes *acting as an agent*, the government claims that a simple reading of the statutory text resolves the question. However, to the extent the statutory text is dispositive, it favors the view that FARA makes the act of failing to file or filing a false registration statement a crime, but it does not criminalize acting as an agent of a foreign principal.

The government argues that the statutory language – "[n]o person shall act as an agent of a foreign principal unless he has filed with the Attorney General a true and complete registration statement," 22 U.S.C. §612 – essentially concludes the inquiry into the statute's meaning. Dkt. #250 at 11. The government's cramped analysis fails to take the full measure of the statutory scheme. Section 612 sets forth a regulatory requirement, *i.e.*, that a person acting as an agent must file a registration statement. Indeed, the purpose of Section 612 is clearly delineated by its title:

"Registration" which is drawn from the congressional enactment itself. *See* 56 Stat. 251, *see also INS v. National Ctr. for Immigrants' Rights*, 502 U.S. 183, 189 (1991)("[T]he title of a statute or section can aid in resolving an ambiguity in the legislation's text.") (citations omitted).

Moreover, Section 612 does not even address or define a criminal offense. Rather, it is Section 618 – "Enforcement and Penalties," not Section 612 as the government contends, that identifies criminal violations. Importantly, Section 618 contains subsection (e) entitled "Continuing offense," which states "[f]ailure to file any such registration statement or supplements thereto as is required by either section 612(a) or section 612(b) of this title shall be considered a continuing offense for as long as such failure exists, notwithstanding any statute of limitation or other statute to the contrary." 22 U.S.C. §618(e). The government's analysis ignores the significance of this subsection. The congressional decision to add "continuing offense" language, making clear that the failure to file a registration statement is a continuing offense, is fundamentally inconsistent with a statutory scheme that makes *acting as an agent* the crime. There would be no reason for Congress to add continuing offense language addressing failing to file a registration statement if the crime under FARA was acting as an agent, because the offense would have naturally continued until the agency ended.

Indeed, although the Special Counsel argues that the ruling in *McGoff*, that the statute of limitations begins to run from the date the individual stops acting as an agent, supports its view that FARA proscribes *acting as an agent*, Section 618(e) and the history of the statute prior to the enactment of that section tell a different story. As the *McGoff* court observed:

> It is undisputed that, prior to the two 1950 amendments, FARA's statute of limitations (then three years) began to run on the first day that an individual acted as a foreign agent. This regime led to unreasonable results for the obvious reason that the duration of an agency relationship could easily exceed the three-year limitations period. An agent could therefore begin his or her activities, fail to

register, avoid detection for the duration of the limitations period and afterwards be free to continue those activities with impunity.

831 F.2d 1071, 1085.

Prior to the enactment of Section 618(e), a person acting as an agent of a foreign principal could fail to file a registration statement and, so long as they were not found out during the three-year limitations period, they could avoid prosecution *while continuing to act as an agent*. Significantly, the proposal to enact the continuing offense language came at the request of then-Attorney General Clark who explained: "[T]he purpose of this proposed amendment [i.e., section 4(b)] is to permit the prosecution of an offender at any time during the period he continues to disregard the statute and not merely within a 3-year period from the time that he first became subject to the law and should have registered but failed to do so." 831 F.2d at 1085.

This history directly contradicts the position taken by the government in opposing the motion to dismiss. Moreover, if the government were correct, the situation described by Attorney General Clark and the *McGoff* Court could have been avoided by prosecuting the individual for continuing to act as an agent and would not have required a legislative fix. *McGoff* makes clear that the government interpretation is incorrect. FARA made failing to file a crime, but acting as agent, even when unregistered, is not criminal. The enactment of Section 618(e) therefore buttresses Mr. Manafort's argument. That section solves the dilemma described in *McGoff* by making the "failure to file" a continuing offense.

The government's reading of the statute also gives rise to significant constitutional concerns. FARA was originally enacted with the purpose of identifying agents of foreign principals who might spread propaganda and "to make public record of their employment." *Viereck v. United States*, 318 U.S. 236, 241 (1943). While the purposes of the Act have changed

since its enactment, it continues to regulate activity that is protected under the First Amendment. As one court has noted, the FARA statute "neither limits nor interferes with freedom of speech. It does not regulate expression of ideas. Nor does it preclude the making of any utterances. In merely requires persons carrying on certain activities to identify themselves by filing a registration statement." *United States v. Peace Information Center*, 97 F. Supp. 255, 262 (D.D.C. 1951). Likewise, the Supreme Court has observed: "[t]he statute itself neither prohibits nor censors the dissemination of advocacy materials by agents of foreign principals." *Meese v. Keene*, 481 U.S. 465, 478 (1987). The government's interpretation that FARA outlaws the agency itself, rather than the failure to file a registration statement, would convert FARA into a statute that criminalizes activities that are protected speech under the First Amendment. From its inception, FARA has aimed to avoid this outcome and has focused not on stopping the agency, but on ensuring its disclosure through registration.

Contrary to the government's arguments, the FARA statute does not make *acting as an agent* of a foreign principal unlawful; rather, it criminalizes the failure to file a registration statement, as well as the filing of a false or misleading registration statement. This Court's consideration of the charged money laundering conspiracy should be guided by the statute's plain language and the legislative history that informs what a FARA offense is.

### 2. Money Laundering Conspiracy

Count Two alleges separate money laundering conspiracies with distinct elements. Paragraph 41(a) alleges a conspiracy to move money from outside the United States into the United States in order to promote a criminal FARA violation, while paragraph 41(b) alleges a conspiracy to engage in financial transactions, involving the proceeds of a criminal FARA violation, with the intent to evade taxes and/or to conceal or disguise the funds. (Dkt. #202). Rather than alleging

specific facts establishing the conspiracies charged within the count itself, Count Two incorporates the broad and generalized allegations set forth in paragraphs 1 through 36 of the Superseding Indictment. *Id*. at ¶40. In doing so, the Superseding Indictment challenges the defendant, the Court, and any potential layperson juror to understand which of its many allegations actually pertain to the crimes alleged in paragraphs 41(a) and (b). Indeed, this lack of clarity required the Special Counsel, for the first time in its response, to identify which financial transactions related to which of the charged money laundering conspiracies and to further set out the connection between the alleged transactions and the manner in which it alleges the facts make out a FARA offense.[1]

### a. Promotion

As discussed above, because FARA does not outlaw acting as the agent of a foreign principal, the Superseding Indictment fails to state an offense under the money laundering conspiracy statute. Despite the government's more detailed description of its international money laundering theory, the international transactions charged could not – and did not – promote a FARA offense as a matter of law.

The government argues that "the international-promotion object of the money laundering conspiracy rests on the allegation that Manafort knowingly and intentionally conspired with others to transfer funds from offshore accounts into the United States to pay various entities for

---

[1] Crafting appropriate jury instructions to charge the jury on the money laundering conspiracies charged in Court Two will present substantial problems at trial. For example, the government's decision to allege, within the same count, one conspiracy that required the funds involved in financial transactions from foreign bank accounts to be the proceeds of a specified unlawful activity, while alleging a second conspiracy involving funds from similar sources where no unlawful proceeds are necessary, presents a substantial risk of jury confusion.

participating in conduct that violates FARA." (Dkt. #250 at 7). "In short, the international promotion object of the conspiracy is based upon money transfers that promoted FARA violations that Manafort committed himself and that he caused Gates, lobbying, public-relations, and law firms to commit." *Id.* Despite this recitation of the heretofore hidden factual theory behind the charged promotion money laundering, the viability of this charge continues to depend on the government's misguided reading of the FARA statute. By focusing on international-promotion payments made to other firms for unregistered lobbying work, rather than on payments made to facilitate the failure to file the registration statement, the Superseding Indictment fails to allege that the payments were made in a manner that could have promoted the carrying on of the specified unlawful activity – *i.e.*, failing to file a registration statement under FARA.

Moreover, to the extent the government is arguing that the payments facilitated the carrying on of a FARA violation of failing to file a registration statement, the Superseding Indictment is utterly devoid of facts supporting that theory. To be sure, the government alleges that "[n]either Company A nor Company B registered as required by the United States Department of Justice." Dkt. #202 at ¶25. Despite this, the Superseding Indictment does not allege that either Company A or Company B willfully failed to file a FARA registration statement. Barring such an allegation, any payment to Company A or Company B would not constitute promotion money laundering because those companies did not violate FARA as a matter of law.

Nor does the Superseding Indictment's resort to "causing" or "aiding and abetting" language cure this problem. While Count Three clearly charges Mr. Manafort with both, given the clear limits to FARA's prohibitive reach, there is no basis to believe that Mr. Manafort could have caused or aided and abetting a violation of the FARA registration requirement unless the underlying company – which actually had the obligation to register under FARA – failed to do so

willfully. *Id.* at ¶43. Indeed, the Superseding Indictment is not silent on whether these companies participated unwittingly; rather, the allegations specifically claim that Gates mislead the companies into believing they were not required to register. *Id.* at ¶25. While defendant disputes these allegations, the government must live with them. Based on the government's own pleading, the Superseding Indictment fails to allege a FARA violation that could have been promoted by the charged money transfers because the companies that received the "promotion" payment could not have willfully violated FARA.

Finally, while the government contends that these transfers to lobbying, public relations, and law firms somehow promoted the FARA violations allegedly committed by Mr. Manafort, there is simply no way that these transfers to third parties could have facilitated or made easier any alleged failure by Mr. Manafort to file a FARA registration statement. Indeed, while the defendant rejects the notion that he made payments to other entities as alleged by the government, even if those allegations could be proven, they would not amount to promotion money laundering. The alleged payments, made for services already provided by the lobbying, public relations and law firms, could not have promoted the "carrying on" of the past specified unlawful activity (FARA violation). Thus, even accepting the government's allegations as true, paragraph 41(a) fails to allege an offense. Accordingly, Count Two, paragraph 41(a), should be dismissed as a matter of law.

### b. Concealment

The limits of FARA also undercut the government's concealment money laundering conspiracy. As noted in the motion to dismiss, concealment money laundering requires that the offending transaction involve the proceeds of a specified unlawful activity. Accordingly, to allege an offense under the money laundering conspiracy statute, an indictment must allege that the

specified unlawful activity (here, a FARA violation) generated proceeds which were, in turn, laundered. The Superseding Indictment does not allege that the failure to file a FARA registration statement, or the filing of an alleged false statement many years later, generated proceeds that were involved in the financial transactions. Nor can it do so as a matter of law. As a result, it should be dismissed.

In addition to its other arguments about the scope of the FARA violation, the government argues that Mr. Manafort's position that failure to file a FARA registration statement – a crime of omission – cannot generate proceeds would essentially nullify Congress's decision to make felony FARA violations specified unlawful activities under the money laundering statute. But Congress's decision to include FARA offenses as specified unlawful activities does not and cannot alter the prohibitive reach of FARA. To the extent prior precedent, as argued above, delineates the limits of the FARA offense, nothing about the USA PATRIOT Act of 2001 enlarges those limits. This is buttressed by the fact that FARA is not the only offense included as a specified unlawful activity in the money laundering statute that does not generate proceeds. Section 1956(c)(7)(a), which incorporates all RICO predicate offenses as specified unlawful activities, makes murder a specified unlawful activity. While it is possible to imagine ways in which a money laundering transaction could promote a murder, it is hard to conceive of a way that murder, based upon its traditional elements, could generate proceeds. Yet, contrary to the government's suggestion, Congress's decision to make murder a specified unlawful activity does not support a view that it generates proceeds. Because Count Two, paragraph 41(b), fails to allege a specified unlawful activity that was able to generate proceeds, it fails to state an offense and dismissal is warranted.

Finally, as argued in the original motion, given the infirmities in Count Two and the inability of the FARA violations as alleged in Counts Three and Four to generate proceeds, the

Court should strike the forfeiture allegation and release any and all property currently held based upon that allegation.

Dated: April 11, 2018                                          Respectfully submitted,

                                                                                                                                                      s/   Kevin M. Downing
Kevin M. Downing
Law Office of Kevin M. Downing
601 New Jersey Avenue, N.W.
Suite 620
Washington, DC 20001
Tel: 202-754-1992
Fax: None
Email: kevindowning@kdowninglaw.com
DC Bar # 1013984

    s/   Thomas E. Zehnle
Thomas E. Zehnle
Law Office of Thomas E. Zehnle
601 New Jersey Avenue, N.W.
Suite 620
Washington, DC 20001
Tel: 202-368-4668
Fax: None
Email: tezehnle@gmail.com
DC Bar # 415556

    s/   Richard W. Westling
Richard W. Westling
Epstein Becker & Green, P.C.
1227 25th Street, N.W.
Washington, DC 20037
Tel: 202-861-1868
Fax: 202-296-2882
Email: rwestling@ebglaw.com
DC Bar # 990496