UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>PAUL J. MANAFORT, JR.,<br><br>Defendant | Crim. No. 17-201-1 (ABJ) |

### GOVERNMENT'S RESPONSE TO PAUL J. MANAFORT, JR.'S MOTION FOR A BILL OF PARTICULARS

The United States of America, by and through Special Counsel Robert S. Mueller, III, hereby files this response to defendant Paul J. Manafort, Jr.'s Motion for a Bill of Particulars pursuant to Federal Rule of Criminal Procedure 7(f). *See* Doc. 255 and 255-1. Manafort seeks an order that would require the government to provide information falling within three principal categories: how Manafort "caused" certain actions, the nature of false and misleading statements, and the identity of "accomplices" and "others" referenced in the Superseding Indictment returned against Manafort on February 23, 2018, *see* Doc. 202 ("Indictment"). Because the Indictment provides sufficient factual detail to eliminate any risk of prejudicial surprise at trial, and because nearly all of the information sought by Manafort is either readily apparent from the Indictment or has been conveyed to Manafort in discovery letters and various phases of pretrial litigation, a bill of particulars is unwarranted in this case. For these and other reasons explained more fully below, Manafort's motion should be denied.

### LEGAL STANDARD

Rule 7(f) of the Federal Rules of Criminal Procedure authorizes courts to "direct the government to file a bill of particulars." As Manafort notes, Rule 7(f)'s general authority to order

a bill of particulars is committed to the Court's sound discretion. *See United States v. Mejia*, 448 F.3d 436, 445 (D.C. Cir. 2006) (emphasizing that Rule 7(f) provides that a court "*may* direct" the filing of a bill). But the contours of that discretion are well-settled. A bill of particulars is appropriate only where the indictment's charging language and any related disclosures by the government are so general as to fail to advise a defendant of the specific acts he is accused of committing. *See United States v. Sanford Ltd.*, 841 F. Supp. 2d 309, 315–16 (D.D.C. 2012). Where charging language is overly general, a bill of particulars achieves three related purposes: it supplies the information necessary for a defendant to understand the charges against him and prepare for trial, it prevents prejudicial surprises at trial, and it ensures the defendant is in possession of a sufficiently precise description of the allegations against him to permit him to assert his rights under the Double Jeopardy Clause should a second prosecution for the same alleged acts arise. *See United States v. Butler*, 822 F.2d 1191, 1193 (D.C. Cir. 1987).

The bill of particulars is not, by contrast, an investigative or discovery tool to be wielded by a defendant when the indictment and related disclosures by the government adequately apprise him of the specific acts of which he is accused. *See United States v. Ramirez*, 54 F. Supp. 2d 25, 29 (D.D.C. 1999). A bill of particulars is not designed to give the defense a "preview [of] the government's theories or evidence," *id.*, or "provide a method to force the prosecution to connect every dot in its case," *United States v. Han*, 280 F. Supp. 3d 144, 149 (D.D.C. 2017). A defendant seeking a bill of particulars must therefore show that the information sought is *necessary* to remedy an indictment that is otherwise too general to apprise him of the specific acts of which he is accused. *See Sanford Ltd.*, 841 F. Supp. 2d at 316 ("Defendants are not entitled to a bill of particulars as a matter of right since the test is whether such particulars are 'necessary.'"); *United States v. Fruchter*, 104 F. Supp. 2d 289, 312 (S.D.N.Y. 2000) (question is one of necessity, not

whether it would be "helpful"). If, however, "the indictment is sufficiently specific, or if the requested information is available in some other form, then a bill of particulars is not required." *Butler*, 822 F.2d at 1193. Indeed, even where necessary particulars are not apparent on the face of an indictment, if the government has disclosed them in another form—such as in discovery or pretrial-motion practice—the need for a bill of particulars is obviated. *See id.* at 1193–94; *United States v. Mosquera-Murillo*, 153 F. Supp. 3d 130, 147–48 (D.D.C. 2015).

## ARGUMENT

Manafort has been provided ample notice of the nature of and basis for the charges against him. The grand jury returned a factually detailed indictment that describes the specific circumstances underlying the charges. Manafort has participated in pretrial motions practice before this Court and privilege litigation before Chief Judge Howell that dispel any doubt that he is on notice of the factual and legal bases for the false-statements charges and related counts. And the government has provided voluminous discovery that conveys—including in cover letters and productions that specifically identify key (or "hot") documents—the very information that Manafort requests via a bill of particulars.[1] His motion for a bill of particulars should be denied.

**I.   The Conspiracy Allegations Sufficiently Advise Manafort Of The Charge**

The Indictment spans 31 pages, of which nearly 25 pages recite the factual allegations underlying the charges and six pages place those allegations into particular counts showing how they satisfy the elements of the charged offenses. As relevant to the instant motion, Count One of the Indictment incorporates 36 paragraphs of factual allegations and charges Manafort with

---

[1] One obvious example is the identity of the two lobbying firms described as Company A and Company B in the Indictment. Manafort's motion (Doc. 255 at 2, 4; Doc. 255-1 at 4 n.2) repeatedly asks the government to identify these companies. But the government's first discovery letter, sent to Manafort on November 17, 2017, contained a chart that expressly named those companies (and the "Vendors" that are anonymized in the original and Superseding Indictments).

conspiracy (i) to defraud the United States by impeding the functions of two named government bodies (the Treasury Department and the Department of Justice); and to commit both (ii) the FARA and false-statements offenses described in Counts Three through Five of the Indictment and (iii) an FBAR violation (failing to report foreign bank accounts, in violation of 31 U.S.C. §§ 5314 and 5322).

Manafort nevertheless contends that the Court should take a more "liberal" approach to granting a bill of particulars because (he claims) the conspiracy charged in Count One is general in nature, is broadly captioned, and includes object offenses (*e.g.*, tax and FARA) that are complex or novel. Doc. 255-1 at 3–4. But as Manafort acknowledges, whatever the wording of its caption, Count One expressly charges Manafort with participating in a multi-object conspiracy whose contours he has readily understood, *see id.* at 3, and that is explained in the factual allegations of the Indictment. And the evidentiary underpinnings of those allegations have been provided in pretrial litigation and discovery. No more is required to prevent unfair surprise at trial. *See Sanford Ltd.*, 841 F. Supp. 2d at 317 (noting the "general rule" in conspiracy cases "that the defendant is not entitled to obtain detailed information about the conspiracy in a bill of particulars") (quoting *United States v. Diaz*, 303 F. Supp. 2d 84, 89 (D. Conn. 2004)).

Even apart from the discovery process, the overt acts incorporated into Count One provide Manafort with ample notice of the nature of the charged conspiracy. Count One alleges that Manafort and others committed, as overt acts in furtherance of the conspiracy, the acts described in the FARA false-statement offense (Count Four), and the acts described in paragraphs 8–11, 14–18, 20–31, and 35–36. Generally described, these incorporated paragraphs allege the following:

- the identities of numerous domestic and corporate entities (*e.g.*, DMP, DMI, and those listed in Paragraph 11), co-conspirators (Gates), foreign principals and related intermediaries (Government of Ukraine, the Party of Regions, members of that Party, the "Centre"), and various foreign bank accounts and wires (¶¶ 8–11, 15–18);

- a lobbying scheme on behalf of the former President of Ukraine, a former Ukrainian political party, and the Ukrainian government, the first part of which involved (a) retaining "Company A" and "Company B" to undertake unregistered lobbying and public-relations work on behalf of named foreign principals, (b) using a nominal client (the Centre) to obscure the foreign principals on whose behalf they were lobbying, and (c) the payment of Company A and B through identified Manafort-associated foreign entities (¶¶ 20–23, 24–25);

- a verbatim quotation from a statement that Gates arranged for the Centre to make to Company A and B (¶ 25);

- verbatim quotations from false and misleading statements provided by Gates and Manafort to the FARA Unit of the Department of Justice on dates certain (¶¶ 27–28);

- excerpts from a list of false talking points that Gates provided to Company B in writing (the original, unredacted original of which was produced to Manafort in discovery) (¶ 26);

- a second part of the lobbying scheme involving retention of a United States law firm on behalf of the Ukrainian Ministry of Justice to write a report on the trial of Yulia Tymoshenko; the amount of wires from Manafort's and Gates's offshore accounts to that law firm; the retention of a public-relations firm to assist in the rollout of the report; a quotation from a memorandum written by Manafort that briefed the Ukrainian government on the report—the original of which named the law firm and the public-relations firm, and was produced to Manafort in discovery as a "hot doc" (¶ 29);

- a third part of the lobbying scheme involving a group of senior former politicians, who were also paid from Manafort's offshore accounts to lobby on behalf of Ukraine; verbatim quotes from an "EYES ONLY" memorandum written by Manafort that named each of the politicians described in the Indictment; the fact of coordination between the group of politicians, Manafort, Gates, and Company A and B (¶¶ 30–31);

- precise identifications of the bank accounts for which Manafort failed to make a FBAR filing and the years during which he failed to do so; quotations from e-mail correspondence between Manafort and his "tax preparer," which contain statements alleged to be false and were produced as "hot docs" to Manafort in discovery (¶¶ 35–36).

Those detailed allegations are plainly sufficient to permit Manafort to prepare his defense and to allow him to understand the precise basis of the charges against him. *See United States v. Wedd*, No. 15-cr-616, 2016 WL 1055737, at *3 (S.D.N.Y. Mar. 10, 2016) (describing a similar "speaking indictment" that provided "a significant amount of detail as to the Government's theory

5

of the case and the nature of the proof that will underlie the charges at trial," including the identification of particular e-mails between co-conspirators). And, as mentioned above, the "hot" documents produced to counsel that are relevant to each of these allegations provide Manafort with further notice of the evidentiary basis of the charges. *See Butler*, 822 F.2d at 1193; *United States v. Walsh*, 194 F.3d 37, 45 (2d Cir. 1999) (taking cognizance of discovery provided to a defendant and noting that "where the indictment has been found even minimally sufficient, a court may look to the record as a whole in determining whether the defendant is protected from double jeopardy in a subsequent prosecution and whether the defendant has had an adequate opportunity to prepare his defense").

## II.     The Cited Allegations Concerning "Causation" Are Sufficiently Precise

Manafort also contends that the Indictment lacks sufficient detail in its allegations that he caused (1) his legal counsel to submit false statements to the Department of Justice, and (2) "Companies A, B, C, and others" to act as unregistered agents of a foreign principal. *See* Doc. 255-1 at 4 (citing paragraphs 13, 27, 45, and 47 of the Indictment). Although Manafort asserts that details about these allegations are "left to the reader's imagination," *id.*, that characterization is inconsistent both with the Indictment and the information furnished to Manafort and his counsel.

As to the false statements that Manafort submitted through counsel to the FARA Unit, the Indictment alleges with precision the statements that are alleged to be false and misleading, the dates on which those statements were made, and the actual facts that made those statements false and misleading. *See, e.g.*, Doc. 202 ¶¶ 27, 28, 45. The government further notes that Manafort participated in litigation before Chief Judge Howell concerning the question whether testimony from the lawyer who submitted the statements should be made available to the grand jury under the crime-fraud exception to attorney-client privilege. *See In re Grand Jury Investigation*, No. 17-

mc-2336 (BAH), 2017 WL 4898143 (D.D.C. Oct. 2, 2017). In addition to the actual letters that contain the statement, the government has produced to Manafort an unredacted version of its *in camera* factual submissions to the Chief Judge, relevant transcripts from those proceedings, and an unredacted version of the Chief Judge's memorandum opinion (which the Chief Judge ordered unsealed at the government's request). Those materials eliminate any room for doubt concerning the basis of the government's charges. Indeed, by virtue of the *prima facie* showing required of the government in the crime-fraud proceedings, the materials produced to Manafort and his participation as privilege-holder in the crime-fraud proceedings reveal to him a detailed picture of the government's potential proof at trial—far more than a bill of particulars would ordinarily provide. *See United States v. Shkreli*, No. 15-cr-637, 2016 WL 8711065, at *5 (E.D.N.Y. Dec. 16, 2016) (denying motion for a bill of particulars where the "detailed 'speaking' indictment and [a] Crime Fraud Affidavit provide[d] further specifics of the Government's theory of the case in a manner not often available to criminal defendants").

Manafort's access to this extensive information distinguishes his case from the lone authority he cites, *United States v. Hsia*, 24 F. Supp. 2d 14 (D.D.C. 1998). The court in *Hsia* granted in limited part the defendant's motion for a bill of particulars where the government clarified only "at oral argument" on the motion itself the nature of the false statements alleged but "still ha[d] not provided a coherent explanation of how Ms. Hsia 'caused' those false statements to be made." *Id.* at 32. Here, by contrast, even assuming that the Indictment alone did not adequately specify how Manafort caused false statements to be made through counsel—which it did—the crime-fraud proceedings and materials since provided to him in discovery amply do so.

That leaves Manafort's complaints (Doc. 255-1 at 4) about the causation allegation in the

7

FARA count of the Indictment, Paragraph 43.[2]  But as was explained in Part I above, the Indictment's allegations concerning the direction, retention, and payment of Companies A, B, and C—and an involved law firm—span many pages of the Indictment and contain both detailed descriptions of Manafort's and Gates's direction of those Companies and verbatim excerpts from evidence produced to Manafort in discovery.  Further, although the government did not name the particular individuals at Company A and Company B with whom Manafort and Gates directly worked, those persons' names have been furnished in multiple ways during the discovery process.  That includes in the government's crime-fraud filings that were unsealed and produced to Manafort, as well as the "hot" documents produced in connection with the FARA charge.

### III. The Allegations Of False And Misleading Statements Are Sufficiently Precise

Manafort concedes that "the statements identified in Counts Four and Five of the" Indictment are "sufficient to provide notice to the defense as to the[] content" of the statements that the government alleges to be false and misleading.  Doc. 255-1 at 6.  He contends, however, that the references to "false statements" in other parts of the Indictment (Paragraphs 3, 4, 26, and 27) are so general as to require a bill of particulars because the Indictment does not provide any detail about the content, number, maker, and recipient of those false statements.  *Id.*

Manafort's argument is without merit.  Paragraphs 3 and 4 are portions of the "Introduction" section of the Indictment that summarize facts later alleged with specificity.  In

---

[2] While Manafort focuses on its causation language, Paragraph 43 also alleges that Manafort is liable for his own acting as an unregistered "agent of a foreign principal," and for aiding and abetting the listed Companies and others in doing so.  Doc. 202 ¶ 43; *see* 18 U.S.C. § 2(a).  A motion for a bill of particulars cannot be used to force the government to choose among those duly indicted theories.  *See United States v. North*, 910 F.2d 843, 913 (D.C. Cir.) ("no authority" supported the proposition that such a motion could force the government to choose between principal and aiding-and-abetting liability, or between the two forms of liability in 18 U.S.C. § 2), *superseded in part on other grounds*, 920 F.2d 940 (D.C. Cir. 1990).

particular, the details underlying the more generalized allegation in Paragraph 3 are provided in Paragraph 36, while the false statements mentioned in Paragraph 4 are detailed in Paragraphs 27, 28, and 45 of the Indictment.  As for Paragraph 26, that paragraph itself describes the timing of the communication, the participants in it, and a basis for believing its contents to be false and misleading.  Even were that not so, the unredacted original communication that is excerpted in Paragraph 26 was produced to Manafort as a "hot" document in discovery.

The details that Manafort requests about false statements that he and Gates made in connection with Manafort's unregistered work on behalf of foreign principals are provided in Paragraphs 27 and 28 and were also addressed in the crime-fraud litigation.  As explained above, that litigation included multiple factual affidavits and briefing that have been produced to Manafort in discovery.  In short, given the specificity of the Indictment and the abundant information he has learned from pretrial proceedings, Manafort is in no way left "guessing which statements he has to defend against," Doc. 255-1 at 5 (quoting *United States v. Trie*, 21 F. Supp. 2d 7, 21 (D.D.C. 1998)).  *See, e.g.*, *United States v. Cisneros*, 26 F. Supp. 2d 24, 55–56 (D.D.C. 1998) (denying motion for a bill of particulars that had asked for the government to "specifically identify the allegedly false statements which form the basis of the Indictment, the questions to which the alleged false statements and concealments were allegedly responsive, and the manner in which the statements are alleged to be false").

**IV.    The Indictment's References to "Others" and "Accomplices" Are Sufficiently Precise, And The Relevant Identities Are Otherwise Known to the Defense**

Finally, Manafort contends (Doc. 255-1 at 7–8) that the references to "others" and "accomplices" in the Indictment necessitate a bill of particulars.  That is especially so, Manafort suggests (*id.* at 7), to the extent that he may have relied on one of the unnamed "others" for professional advice.  That contention lacks merit.

As explained above, any suggestion that the identities of the anonymized corporate entities (*e.g.*, "Company A"), foreign bank accounts, former lawyers, and tax accountants are insufficiently precise to permit Manafort to prepare his defense strains credulity. For each category of "accomplices" and "others" that Manafort identifies, the Indictment includes verbatim excerpts from communications that have been separately produced—in unredacted form—as "hot" documents to Manafort in discovery. The versions of these documents produced in discovery identify both the relevant entity and the individual to whom the communication was directed. These "hot" documents are but a fraction of the larger set of produced materials that identify, among other things, communications between Manafort, Gates, and many of the salient individuals associated with all of the intermediaries through which Manafort acted.

Contrary to Manafort's suggestion (Doc. 255-1 at 4 n.2), by letter dated November 17, 2017, the government expressly identified the names of Company A and Company B and the list of Vendors anonymized in the original (and later the Superseding) Indictment. *See also* p. 3, n.1, *supra*. Several of these individuals and entities, moreover, were named in connection with the crime-fraud litigation. And the discovery productions include documents from Company C and the law firm that identify the individuals from those entities who were parties to communications with Manafort and Gates. That information readily permits Manafort to identify the individuals and entities involved in the conduct alleged and "to conduct his *own* investigation" as necessary. *See Sanford Ltd.*, 882 F. Supp. 2d at 316 (explaining that a bill of particulars is intended to give the defendant only the information necessary to permit him to undertake his own investigation, not to provide him with the fruit of the government's investigation).

## CONCLUSION

For the foregoing reasons, Manafort's motion to for a bill of particulars (Doc. 255) should be denied.

                                                Respectfully submitted,

                                                ROBERT S. MUELLER, III
                                                Special Counsel

Dated: April 23, 2018                      */s/ Andrew Weissmann*
                                                Andrew Weissmann
                                                Greg D. Andres (D.D.C. Bar No. 459221)
                                                Scott A.C. Meisler
                                                Brian M. Richardson
                                                U.S. Department of Justice
                                                Special Counsel's Office
                                                950 Pennsylvania Avenue NW
                                                Washington, D.C. 20530
                                                Telephone: (202) 616-0800

                                                *Attorneys for the United States of America*