## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| **UNITED STATES OF AMERICA**<br><br>**v.**<br><br>**PAUL J. MANAFORT, JR.,**<br><br>**Defendant** | **Crim. No. 17-201-1 (ABJ)**<br><br>**Redacted Public Version** |

## GOVERNMENT'S MEMORANDUM IN OPPOSITION TO DEFENDANT PAUL J. MANAFORT, JR.'S MOTION TO SUPPRESS EVIDENCE AND THE FRUITS THEREOF RELATING TO THE SEARCH OF HIS RESIDENCE LOCATED IN ALEXANDRIA, VIRGINIA

The United States of America, by and through Special Counsel Robert S. Mueller, III, files this memorandum in opposition to defendant Paul J. Manafort, Jr.'s motion (Doc. 264) to suppress evidence that the government obtained pursuant to a warrant authorizing the search of his residence located in Alexandria, Virginia. Manafort argues principally that the warrant violated the Fourth Amendment's particularity requirement, that it impermissibly authorized seizure of electronic devices without probable cause to believe they would be found in his residence, and that the government unreasonably executed the warrant by seizing devices outside its scope and retaining the seized materials for a period of nine months following the search. These arguments lack merit.

The warrant satisfied the constitutional particularity requirement. Far from being "an overbroad general warrant" (Doc. 264 at 1), the warrant enumerated 11 specific categories of records that were subject to seizure, all of which must relate to the criminal offenses listed alongside those categories in the warrant. The supporting affidavit also established ample probable cause to believe that electronic devices would contain evidence of the crimes at issue and would be found at Manafort's residence. In any event, the warrant was not so deficient as to particularity

or probable cause as to prevent law enforcement agents from reasonably relying on it.  Any constitutional infirmity therefore would not require suppression under the good-faith exception to the exclusionary rule.

Manafort's complaints about the execution of the warrant fare no better.  His challenge to the scope of the seizure fails because devices such as iPods were subject to seizure as storage media on which responsive records could be found.  Further, the government's handling of the materials seized from the residence has been reasonable at every step.  The government "imaged" electronic devices onsite so that Manafort could retain the originals, has used a filter team to protect attorney-client and other privileges, and has offered throughout the discovery process to provide Manafort with documents that the government has identified as likely irrelevant to the current prosecution.  That conduct fully complies with the Fourth Amendment and, under the good-faith exception, would not justify suppression of any materials within the scope of the warrant even if it did not.  For these and other reasons explained further below, Manafort's motion to suppress should be denied.

## BACKGROUND

The relevant facts, as established by the warrant, the supporting affidavit, and related materials, are as follows.[1]

1. On July 25, 2017, an agent of the Federal Bureau of Investigation (FBI) ("Affiant") submitted an application for a warrant to search Manafort's condominium in Alexandria, Virginia. The application was based on a 41-page affidavit, submitted by the Affiant, describing potential

---

[1] Manafort has appended a heavily redacted version of the warrant affidavit ("Aff.") to his motion.  Because this memorandum refers to portions of the affidavit not visible in that redacted version, the government is separately seeking leave of the Court to file an unredacted version of this memorandum, as well as unredacted copies of the warrant application, under seal.

violations of approximately ten criminal statutes arising from three sets of activities ("the Subject

Offenses").  Aff. ¶ 3; *see* ███████████████████████████████████████████

███████████████████████████████████████████

First,  the  Affidavit  ████████████████████████████████████████

████████████████████████████████████████████████████

███████████████████████ In  particular,  ██████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

███████████████████████████████████████████.

Second, the Affidavit ███████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████.

Third, the Affidavit ███████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

██████████████████████

After  describing  the  evidence  of  potential  criminal  violations,  the  Affidavit  set  forth

reasons to believe that pertinent financial records, business records, and other materials would be found at Manafort's residence. Aff. ¶¶ 60-80.  This included information, provided by a Manafort employee who had recently been at the residence, about Manafort's use of a home office and the nature of the documents the employee had observed at the residence.  *Id.* ¶¶ 65-71.  In addition, and as relevant here, the Affidavit explained that the government was seeking authorization to search for responsive records on computers and other storage media located in the home.  *Id.* ¶ 75. In that regard, the Affidavit noted that the same Manafort employee had reported seeing a desktop computer in Manafort's home office and had described Manafort's "widespread use of electronic media in the course of his business activity." *Id.* ¶76.  The employee further reported that Manafort previously had a drawer full of phones and electronic equipment at his prior residence in Alexandria, from which he had moved in 2015.  *Id.* ¶¶ 71, 76. The Affidavit concluded by reiterating that, in accordance with Federal Rule of Criminal Procedure 41(e)(2)(B), the government was seeking a warrant that authorized not only seizing of electronic devices that may have been used to commit the Subject Offenses but also "seizing, imaging, or otherwise copying storage media that reasonably appear to contain some or all of the evidence described in the warrant."  Aff. ¶ 80.[2]

2.  Based on the Affidavit, on July 25, 2017, a magistrate judge in the Eastern District of Virginia issued a warrant authorizing the search of Manafort's residence, including "any locked drawers, containers, cabinets, safes, computers, electronic devices, and storage media (such as hard

---

[2] The process of imaging storage media for later offsite review described in the Affidavit conforms to a standard law enforcement practice that was formalized in the 2009 amendments to Federal Rule of Criminal Procedure 41.  *See* Fed. R. Crim. P. 41 adv. comm. note (2009 amendment) (updated Rule "acknowledges the need for a two-step process:  officers may seize or copy the entire storage medium and review it later to determine what electronically stored information falls within the scope of the warrant").

disks or other media that can store data) found therein." Doc. 264-2, Attach. A.[3]  Attachment B

to the warrant permitted agents executing the warrant to seize "[c]omputers or storage media used

as means to commit the Subject Offenses," as well as "[r]ecords relating" to the list of the Subject

Offenses "occurring on or after January 1, 2006."  Items subject to seizure, the warrant stated,

"includ[ed] but [were] not limited to" records falling within 11 specific categories of records,

among them:

> a.  Any and all financial records for Paul Manafort, Jr., [Manafort's wife], Richard Gates, or companies associated with [those individuals], including but not limited to records relating to any foreign financial accounts and records relating to payments by or on behalf of any foreign government, foreign officials, foreign entities, foreign persons, or foreign principals;
>
> b.  Any and all federal and state tax documentation, including but not limited to personal and business tax returns and all associated schedules for Paul Manafort, Jr., Richard Gates, or companies associated with Manafort or Gates;
>
> c.  Letters, correspondence, emails, or other forms of communications with any foreign financial institution, or any individual acting as the signatory or controlling any foreign bank account;
>
> d.  Records relating to efforts by Manafort, Gates, or their affiliated entities to conduct activities on behalf of, for the benefit of, or at the direction of any foreign government, foreign officials, foreign entities, foreign persons, or foreign principals, including but not limited to the Party of Regions and Viktor Yanukovych;
>
> * * *
>
> h.   Communications, records, documents, and other files involving any of the attendees of the June 9, 2016 meeting at Trump tower, as well as Aras and Amin Agalorov;

---

[3] Attempting to tie this warrant to a separate motion to dismiss he has filed, Manafort asserts in a footnote that the warrant is invalid because, he claims, "the Special Counsel did not have the authority or jurisdiction to apply for the [s]earch [w]arrant." Doc. 264 at 1 & n.2.  That assertion ignores that a law enforcement officer, not the Special Counsel, applied for the warrant and that, in any event, the warrant application states that it was reviewed by an Assistant U.S. Attorney in the Eastern District of Virginia, Doc. 264-2 at 1.

> i.   Evidence indicating Manafort's state of mind as it relates to the crimes under investigation[.]

Doc. 264-1, Attach. B ¶ 1.

3.   The government executed the warrant on July 26, 2017, the day after it was issued.[4] The executing agents seized financial and other records and a number of electronic storage devices. Doc. 264-1 (redacted warrant return).[5]   The agents "imaged," or made digital copies of, many of those devices on site, thereby allowing Manafort to retain custody of the devices.  *Id.* at 7.  With respect to seized documents, the agents "flagged" a set of materials "for possible attorney-client privilege."  *Id.* at 2, 10-11.  Those materials were immediately segregated and, within days of the search, were made available to the attorneys who represented Manafort at the time.   The government also (i) put in place a "filter team" of attorneys outside the prosecution team to screen data on the seized devices for privileged material, and (ii) used automated processes—described to defense counsel in discovery letters—to segregate materials that were not likely relevant to the criminal case.  These measures are discussed in further detail in Part II.B below.

## ARGUMENT

## I.   The Warrant Satisfies The Fourth Amendment's Particularity And Probable Cause Requirements

Manafort contends (Doc. 264 at 2-6) that the warrant authorizing a search of his residence violated the Fourth Amendment because it "was unconstitutionally overbroad" and the supporting

---

[4] The warrant application had not sought permission to enter without knocking.  In issuing the warrant, the magistrate judge authorized the government to execute the warrant any day through August 8, 2017, and to conduct the search "in the daytime [from] 6:00 a.m. to 10:00 p.m." Doc. 264-1 at 1.   The government complied fully with those date and time conditions, and Manafort does not contend otherwise.

[5] The government is filing contemporaneously with this memorandum a motion for leave to file under seal an unredacted version of the search warrant application and related documents, which include the search warrant return.  *See* n.1, *supra.*

affidavit did not establish probable cause that electronic devices connected to the Subject Offenses would be found at the residence.  These contentions fail on the merits and would not, in any event, justify suppression in light of the good-faith exception to the exclusionary rule.

### A.  The Warrant Was Sufficiently Particular

The Fourth Amendment provides that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."  U.S. Const. Amend. IV.  The second (or "Warrant") clause of the Amendment contains the particularity requirement, which was designed "to prevent general searches."  *Maryland v. Garrison*, 480 U.S. 79, 84 (1987).  "By limiting the authorization to search to the specific areas and things for which there is probable cause to search," the Supreme Court has explained, "the requirement ensures that the search will be carefully tailored to its justifications, and will not take on the character of the wide-ranging exploratory searches the Framers intended to prohibit."  *Id.*

As the Court's explanation in *Garrison* reflects, the requirement that a warrant "particularly describ[e]" the place to be searched and things to be seized embodies two "related but distinct concepts": "breadth and particularity."  *United States v. Ulbricht*, 858 F.3d 71, 102 (2d Cir. 2017), *pet. for cert. filed*, No. 17-950 (Jan. 4, 2018).  "Particularity is the requirement that the warrant must clearly state what is sought," while "[b]readth deals with the requirement that the scope of the warrant be limited by the probable cause on which the warrant is based."  *United States v. Hill*, 459 F.3d 966, 973 (9th Cir. 2006) (internal citation and quotation marks omitted), *cert. denied*, 549 U.S. 1299 (2007); *see United States v. Griffith*, 867 F.3d 1265, 1275-76 (D.C. Cir. 2017) (explaining that the particularity requirement "prevents the issuance of warrants on loose, vague

or doubtful bases of fact" and, "[i]n that way, . . . is closely tied to the requirement of probable cause") (quotation marks, citations, and brackets omitted).

Manafort's challenges to three specific provisions in the warrant implicate both of these concepts. Attacking the warrant's breadth, Manafort argues (Doc. 264 at 3) that "nothing in the affidavit justifies" seizing as "broad" a category of records as the one authorized by the first enumerated clause in Attachment B. That category covers "[a]ny and all financial records for Paul Manafort, Jr., [Manafort's wife], Richard Gates, or companies associated with" those three individuals that relate to the Subject Offenses for the period starting January 1, 2006, "including but not limited to records relating to any foreign financial accounts and records relating to payments by or on behalf of any foreign government, foreign officials, foreign entities, foreign persons, or foreign principals." Doc. 264-2, Attach. B ¶ 1a.

The Affidavit amply justified a search of that scope. It described at length facts giving reason to believe that Manafort and Gates had committed, among other offenses, tax crimes, violations of the Foreign Agents Registration Act (FARA), and money laundering through their decade-long work for Ukraine and funneling of money back into the United States. ███

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████ Those facts made it reasonable to seek evidence not just in Manafort's own financial records relating to the Subject Offenses, but those of his close business associate (Gates), his wife, and companies affiliated with those three individuals. Indeed, given the tax and banking crimes among the Subject Offenses, an examination of all financial records for the period was necessary for investigators to understand

all sources of Manafort's income, whether legitimate or illegitimate.   The first category in Attachment B, in short, authorized seizures fully consistent with the scope of the probable cause established in the Affidavit.  *See, e.g.*, *United States v. Fattah*, 858 F.3d 801, 819-20 (3d Cir. 2017) (rejecting, in prosecution alleging bank fraud and other offenses, challenge to a warrant that "authorized the seizure of a number of document types, including '[a]ll financial records'").

Manafort next attacks as insufficiently particular the provision authorizing seizure of records that contain "[e]vidence indicating Manafort's state of mind as it relates to the crimes under investigation."  Doc. 264-2, Attach. B ¶ 1i.  "State of mind" (much like motive) is a concept that is familiar to law enforcement officers and that can therefore "provide meaningful guidance to the officer charged with" executing the warrant.  *See United States v. Reeves*, 210 F.3d 1041, 1046 (9th Cir. 2000) (citation omitted).  Indeed, the Supreme Court has approved the seizure of documents relating to one transaction to help prove fraud in another transaction precisely because those documents were relevant to show the defendant's mental state—*viz.*, his "intent to defraud." *Andresen v. Maryland*, 427 U.S. 463, 483-84 (1976); *see also Messerschmidt v. Millender*, 565 U.S. 535, 551 (2012) (explaining, in the context of qualified immunity, how a reasonable officer could have believed that evidence of gang affiliation covered by a warrant would "help establish motive" for an assault crime).  Many of the Subject Offenses here similarly require proof of an intent to defraud, *see* 18 U.S.C. § 1343, or other heightened mental states, *see, e.g.*, 22 U.S.C. § 618(a) (willfulness for FARA); 31 U.S.C. § 5322 (same for FBAR).  When construed in light of that list of Subject Offenses, the state-of-mind category provided sufficiently meaningful guidance on the scope of permissible seizures to satisfy the Fourth Amendment's particularity requirement. *See United States v. Tsarnaev*, 53 F. Supp. 3d 450, 455-57 (D. Mass. 2014) (rejecting particularity challenge to warrant that authorized seizure of, among other categories, "[p]roperty, records, or

information related to the state of mind and/or motive" of suspects who perpetrated attack).

Finally, Manafort asserts that the clause in Attachment B authorizing the seizure of "[c]omputers or storage media used as a means to commit the Subject Offenses," Doc. 264-2, Attach. B. ¶ 2, "did not limit the agents' discretion in determining what computers or storage media fit that description," Doc. 264 at 3. The particularity requirement, however, turns in significant part on "the information available to the investigating agent that could limit the search at the time the warrant application is given to the magistrate." *United States v. Yusuf*, 461 F.3d 374, 395 (3d Cir. 2006), *cert. denied*, 549 U.S. 1338 (2007); *see United States v. Maxwell*, 920 F.2d 1028, 1031 (D.C. Cir. 1990) (because the particularity "assess[ment]" is "concerned with the realities of administration of criminal justice," "[i]t is sufficient if the warrant signed by the judicial officer is particular enough if read with reasonable effort by the officer executing the warrant" (internal quotation marks omitted)). And courts have not demanded detailed descriptions of electronic devices subject to seizure when investigators have reason to know that such devices will be found at a location but cannot precisely identify them by, for example, type or brand.[6]

The D.C. Circuit's decision in *Griffith*, cited by Manafort (Doc. 264 at 3-6), illustrates the point. There, officers investigating a year-old murder obtained a warrant to search for and seize "all electronic devices" found in the home of the suspected getaway driver's girlfriend. 867 F.3d at 1269-70. The D.C. Circuit held the ensuing seizure of the devices from the home invalid because

---

[6] *See, e.g.*, *United States v. Burroughs*, 905 F. Supp. 2d 297, 307 (D.D.C. 2012) (warrant authorizing seizure of cellphones, weapons, and iPod Shuffle device was sufficiently particular even though it did not identify "the color, size, and type" of the phones, the model of the gun, or "the color of the iPod Shuffle"), *aff'd on other grounds*, 810 F.3d 833 (D.C. Cir. 2016); *United States v. Loera*, 59 F. Supp. 3d 1089, 1151-52 (D. N.M. 2014) (language permitting agents to seize "any computers, cell phones, and/or electronic media that could have been used as a means to commit the offenses described in the warrant," was sufficiently particular where the government did not know "what computer equipment or electronic devices that [the target] would have used to" perpetrate the crimes or conceal evidence).

the warrant affidavit had not established probable cause that the suspect even owned a cellphone—which was the lone device that the government was seeking—much less that any such phone contained incriminating evidence or would be found at the girlfriend's home. *Id.* at 1271-75.  That problem was compounded, the court explained, by the warrant's authorization to seize electronic devices belonging to others, without any reason to believe that those devices would contain evidence related to the murder. *Id.* at 1276.

Even as it held the warrant to seize all electronic devices invalid, however, the court in *Griffith* recognized that warrants may authorize seizure of a "broader" class of devices "when a reasonable investigation cannot produce a more particular description."  867 F.3d at 1276.  The court gave as an example a scenario in which police learn "through an informant" about a suspect's use of an electronic device "and thus have no ability to describe the specific characteristics of" that device, such as its "make or model." *Id.*  The circumstances described in *Griffith* approximate those that the agents faced in this case.  Specifically, while the government learned from an informant that Manafort currently had one particular device (a desktop computer) in the home office of his residence and had "made widespread use" of other devices in the recent past, Aff. ¶ 76, it could not more particularly describe those devices at the time that agents sought the warrant. The Fourth Amendment therefore did not require the agents to use a description more specific than the categorical (and commonly employed) one found in the warrant.

### B. The Affidavit Established Probable Cause To Believe That Electronic Devices Containing Relevant Records Would Be Found In The Place Searched

Again invoking *Griffith*, Manafort argues (Doc. 264 at 4-6) that the Affidavit failed to establish probable cause that the electronic devices subject to search and seizure under the warrant would be found in his residence.  Manafort is correct on the law:  applications for a warrant to search someone's property cannot rest solely on facts showing that the individual committed a

crime and must instead "demonstrate cause to believe that 'evidence'" of the crimes under investigation "'is likely to be found at the place to be searched.'" *Griffith*, 867 F.3d at 1271 (quoting *Groh v. Ramirez*, 540 U.S. 551, 568 (2004)).  Manafort errs, however, in applying that principle to the facts of this case.

Notably, Manafort's motion does not cite the governing probable-cause standard, which is far less exacting than his analysis would suggest.  A determination of probable cause requires a "practical, common-sense" evaluation of the facts recited in support of a search warrant to determine whether there is a "fair probability that contraband or evidence of a crime will be found." *Illinois v. Gates*, 462 U.S. 213, 238 (1983).  The probable-cause standard "does not deal with hard certainties, but with probabilities," and law enforcement officers are entitled to "formulate[] certain common-sense conclusions about human behavior." *Id.* at 231 (quoting *United States v. Cortez*, 449 U.S. 411, 418 (1981)).  "All that [is] required" for probable cause, the Court declared most recently, "is the kind of fair probability on which reasonable and prudent people, not legal technicians, act." *Florida v. Harris*, 568 U.S. 237, 244 (2013) (internal quotation marks and brackets omitted)).  In addition, "[a] magistrate's 'determination of probable cause should be paid great deference by reviewing courts.'" *Gates*, 462 U.S. at 236 (quoting *Spinelli v. United States*, 393 U.S. 410, 419 (1969)).

Under that settled standard, the Affidavit established probable cause to believe both that Manafort's computers and storage media would contain evidence of the Subject Offenses and that those devices would be found at his residence.  First, the Affidavit ██████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████ Along

with the reasons for expecting business and financial records to be stored at the residence in some

form, *see id.* ¶¶ 61-71, those descriptions allowed the issuing magistrate to draw the "common-

sense conclusion[,]" *Gates*, 462 U.S. at 231, that evidence relating to the Subject Offenses would

likely be found on Manafort's electronic devices.

The Affidavit also set forth a sufficient basis for believing that computers and other storage

devices containing evidence of the Subject Offenses would be found at Manafort's residence.  In

particular, the Affidavit explained as a general matter that one form in which relevant records

"might be found is data stored on a computer's hard drive or other storage media."  Aff. ¶ 75.  It

then recited several facts about Manafort's particular use of computers, as provided by a Manafort

employee who ███████████████████████████████ had been inside the residence

as recently as three weeks before the warrant.  *Id.* ¶¶ ██, 67, 76.  Those facts included:

- that the employee had seen a desktop computer on the desk in the room that Manafort used as a home-office, Aff. ¶ 76;

- "that Manafort ha[d] made widespread use of electronic media in the course of his business activity," *id.*; and

- that Manafort had a drawer full of "phones and electronic equipment" in his prior Alexandria residence and had given the employee—either for donation to charity or other use—"several additional devices, both laptops and cellular phones," *id.*

These are not "an assortment of truisms," as Manafort asserts (Doc. 264 at 5).  They are concrete

facts about Manafort's use of (and access to) electronic devices that reasonably led to the issuing

magistrate to find a fair probability that such devices would be "found at the placed to be searched."

*See Griffith*, 867 F.3d at 1273 (internal quotation marks omitted); *see id.* at 1271 (recognizing that

reviewing courts "pay 'great deference' to the [issuing] judge's initial determination of probable cause" (quoting *Gates*, 462 U.S. at 236)).

Manafort's contrary argument rests largely on a misreading of the nature of the search and seizure authorized by the warrant.  He focuses solely on whether the Affidavit "establish[ed] probable cause to believe *that the electronic devices purportedly used in the commission of the subject offenses* are likely to be found in the Manafort home."  Doc. 264 at 5 (emphasis added). The italicized language tracks the provision in the warrant authorizing the *seizure* of "[c]omputers or storage media used as means to commit the Subject Offenses"—that is, devices that were instrumentalities of the Subject Offenses.  Doc. 264-1, Attach. B ¶ 2.  But the warrant also allowed the government to *search* "computers, electronic devices, and storage media" found at the residence for the various categories of records enumerated in Attachment B.  Doc. 264-1, Attach. A; *see* Aff. ¶ 80 (explaining that, consistent with Federal Rule of Criminal Procedure 41(e)(2)(B), the Affiant sought a warrant that "permit[s] seizing, imaging, or otherwise copying storage media that reasonably appear to contain some or all of the evidence described in the warrant").  That portion of the warrant alone authorized the search and seizure of all of the devices that the government obtained at the residence.  Accordingly, the relevant question is not whether the Affidavit established probable cause to believe that devices used as instrumentalities of the offense would be found at the residence, as Manafort asserts; it is whether the Affidavit demonstrated cause to believe that evidence of the Subject Offenses would be found on computers and other storage media and that such devices would be found at Manafort's residence. *See Griffith*, 867 F.3d at 1273.  And for the reasons given above, the answer to that question is yes.

### C. Suppression Is Unwarranted In Any Event Under The Good-Faith Exception To The Exclusionary Rule.

Even if Manafort's particularity and probable-cause challenges were meritorious, suppression would be unwarranted under the good-faith exception to the exclusionary rule. *See United States v. Leon*, 468 U.S. 897, 922 (1984). As the Supreme Court has explained, the exclusionary rule "does not apply when the police conduct a search in 'objectively reasonable reliance' on a warrant later held invalid." *Davis v. United States*, 564 U.S. 229, 238-39 (2011) (quoting *Leon*, 468 U.S. at 922). "The error in such a case rests with the issuing magistrate, not the police officer, and 'punish[ing] the errors of judges' is not the office of the exclusionary rule." *Id.* at 239 (quoting *Leon*, 468 U.S. at 916). Of relevance here, the Court has applied that reasoning both where the warrant was allegedly unsupported by probable cause (as in *Leon*, 468 U.S. at 903), and where it was found to be overbroad (as in the companion case of *Massachusetts v. Sheppard*, 468 U.S. 981, 988-91 (1984)).

The circumstances of this case fall within the heartland of the good-faith exception. The Affiant prepared a 41-page affidavit that (a) described in detail facts that undisputedly establish probable cause to believe that Manafort committed the Subject Offenses and (b) also included facts that led a neutral magistrate to find probable cause that evidence of those violations would be found at the residence. The Affiant had the warrant application reviewed by a prosecutor. Doc. 264-2 at 1. He then submitted the application to a magistrate judge, ███████████████ ███████████████████████████████████████████████████ ██████████████████████████████ Having thus taken "every step that could reasonably be expected of" him, the Affiant was entitled to conclude "that the warrant authorized a search for the materials outlined in the [A]ffidavit." *Sheppard*, 468 U.S. at 989.

None of the exceptions recognized in *Leon* applies here. Even if the Affidavit ultimately

did not establish probable cause to believe that the relevant devices would be found in Manafort's residence, it was not so "bare bones" or "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." *Leon*, 468 U.S. at 923, 926; *see Millender*, 565 U.S. at 547 (stating that "the threshold for establishing this exception is a high one, and it should be"). Nor would any of the three particularity challenges raised by Manafort, even if meritorious, render the warrant "so facially deficient . . . that the executing officers [could] not reasonably presume it to be valid." *Leon*, 468 U.S. at 923.  To the contrary, because courts have rejected particularity challenges to similar provisions in other warrants, *see* p. 9, *supra*, "a reasonably well trained officer would [not] have known that" the warrant here was invalid "despite the magistrate's authorization." *Leon*, 468 U.S. at 922 n.23.  Accordingly, the good-faith exception forecloses application of the exclusionary rule.[7]  *See Maxwell*, 920 F.2d at 1034 (D.C. Cir.) (applying good-faith exception to warrant held "overly broad"); *see also United States v. Nicely*, 922 F.2d 850, 859 (D.C. Cir. 1991) (declining to suppress where the defendant claimed the warrant lacked specificity but "[t]he itemization of documents subject to seizure in th[e] warrant does not appear to be blatantly open-ended").

## II.  Manafort's Challenges To The Execution Of The Search Warrant Are Unavailing And Do Not Support Suppression In Any Event

Manafort argues (Doc. 264 at 6-10) that the government's execution of the warrant violated the Fourth Amendment because, he claims, the executing agents seized materials outside the warrant's scope and the government has retained all seized materials since the search without

---

[7] Although *Leon* recognized two other exceptions to its rule of objectively reasonable reliance, Manafort does not assert any facts that would bring those two exceptions into play.  *See* 468 U.S. at 923 (noting exception for when the issuing magistrate "was misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard of the truth," or where the magistrate abandons her judicial role, such as by participating in the execution of the warrant).

returning to him those irrelevant to the prosecution.  Those contentions lack merit and establish no basis for suppressing evidence properly seized as within the scope of the warrant.

### A.  The Executing Agents Did Not Seize Devices Beyond The Scope Of The Warrant

Manafort contends (Doc. 264 at 6-7) that the government exceeded the scope of the warrant by seizing "every electronic and media device in" his home.  That was improper, Manafort asserts, because the warrant permitted the seizure of "electronic devices used in the commission of the subject offenses," and no reasonable agent could believe that devices "such as an Apple iPod" or "iPod Touch" had been used to commit the crimes at issue.  *Id.* at 7.

Manafort's contention again rests on his mistaken reading of the warrant—that is, that it authorized only the seizure of computers and storage media that were instrumentalities of the Subject Offenses.  As explained above, however, the warrant also authorized agents to search "storage media (such as hard disks or other media that can store data)" for the 11 categories of records enumerated in Attachment B.  *See* Doc. 264-1 Attach. A.  Devices such as the iPod and iPod Touch plainly qualify as "storage media," since they can store files such as contact lists and can even be used as backup drives.  *See, e.g.*, *See United States v. Ballard*, 551 Fed. Appx. 33, 36 (3d Cir. 2014) (unpublished) (personal information relevant to identity-theft scheme found on iPod); *United States v. Okeayainneh*, No. 11-cr-87, 2011 WL 2457395, at *10 (D. Minn. May 13, 2011) (affidavit established probable cause to believe that an iPod was among the devices used to store and transmit information in a fraud and identity-theft scheme).  Because those devices are capable of storing evidence that falls within the scope of the warrant, the agents properly imaged those devices or took them for offsite review under Attachment A to the warrant.

In any event, Manafort would not be entitled to suppression even if he were correct.  Absent evidence that the government flagrantly disregarded the terms of the warrant (which Manafort

does not allege), the remedy for the seizure of materials outside the scope of a warrant is suppression of the improperly seized materials.  *See Maxwell*, 920 F.2d at 1034 n.7.  Here, Manafort identifies only the two iPod devices as supposedly falling outside the warrant's terms, but the government will not be introducing any evidence obtained from those devices at the trial in this case.  There is, in short, nothing to suppress.

### B.  The Government's Efforts To Review And Segregate Non-Responsive Information Have Been Reasonable And Do Not Warrant Suppression

Manafort's final contention (Doc. 264 at 7-10) is that the government has violated his Fourth Amendment rights by retaining the materials seized from his residence without (he claims) making an effort to identify and return materials that fall outside the scope of the warrant.  That contention, however, is based on an incomplete account of the government's conduct and readily distinguishable out-of-circuit case law.

1. The governing legal principle is again undisputed.  As the Supreme Court has explained, "[t]he general touchstone of reasonableness which governs Fourth Amendment analysis governs the method of execution of the warrant."  *United States v. Ramirez*, 523 U.S. 65, 71 (1998) (internal citation omitted); *see Dalia v. United States*, 441 U.S. 238, 258 (1979) ("[T]he manner in which a warrant is executed is subject to later judicial review as to its reasonableness.").  In considering whether the execution of a warrant authorizing the search of computers or voluminous materials was reasonable, courts have considered factors such as the length of the delay between the search and the government's review of seized materials; the reasons for the delay, including whether any period was attributable to the need to conduct privilege review; and whether the government officers acted in bad faith.  *See, e.g.*, *United States v. Jarman*, 847 F.3d 259, 266-67 (5th Cir. 2017); *United States v. Syphers*, 426 F.3d 461, 469 (1st Cir. 2005).

The government's execution of the warrant and retention of seized data in this case have

been reasonable at each step.   As explained above, in executing the warrant, the government imaged as many of Manafort's electronic devices and storage media as possible onsite so that Manafort could retain custody of those devices.   Doc. 264-1 at 7.   Aware that attorney-client-privileged materials might be found in the residence, *see* Aff. ¶ 68, the executing agents flagged and segregated potentially privileged materials during the search.   Doc. 264-1 at 2, 10 (search warrant return).   The government made those materials available within days to the attorneys representing Manafort at the time.   It also promptly gave Manafort "access to hard copy documents" seized from the residence.   Nov. 17, 2017 Ltr. at 3, Exh. A, *infra* (explaining that Manafort had already been given access to such documents but that the government was still "producing" them).   And all the while, the government has employed a filter (or "taint") team of attorneys outside the prosecution team "[t]o address potential privilege issues."   *Id.* at 11 (explaining use of a filter team and informing defendants that the attorney coordinating the filter team "will make productions to defense counsel directly"); *cf. United States v. Singhal*, 800 F. Supp. 2d 12, 15 (D.D.C. 2010) (filter-team procedure calls for "attorneys who are not involved in the case . . . to review the documents before the active prosecution team is permitted to see them").

Contrary to Manafort's suggestion, the government's review of the seized materials has *not* been limited to determining issues of privilege.   *See* Doc. 264 at 7 (asserting that "[t]he government has only represented that the materials have been subject to a *privilege* review").   Rather, as reflected in several discovery letters sent to Manafort's counsel, the government has conducted extensive review of the seized devices and made efforts to segregate materials that are "irrelevant to this" prosecution, a category that necessarily includes materials outside the scope of the warrant.   Dec. 1, 2017 Ltr. at 3, Exh. B, *infra*.   For example, in a December 1, 2017 letter to counsel for Manafort and then-codefendant Gates, the government stated that it

has endeavored to segregate out, from the material being produced, documents that are irrelevant to this matter.  Given the volume of devices and electronic records, the government has relied on an automated process to remove certain categories of records that the government expects to be irrelevant.  If you would like to discuss in further detail what this process entails, please let us know.  Additionally, if you wish to examine any of the material removed from this (or any future) production through this automated process for identifying irrelevant material, please contact us to discuss and to arrange a mutually agreeable time.

*Id.*; *see* Nov. 17, 2017 Ltr. at 3, Exh. A, *infra* (as of November 17, 2017, electronic media were "being processed to segregate out both privileged material . . . and personal material that is irrelevant to the prosecution").  Manafort has not asked for an opportunity to review materials sorted pursuant to the government's internal processes, suggested to the government that its review was inadequate to identify material outside the scope of the warrant, or requested that the government return to him materials that he believes to fall outside the warrant's scope.[8]

2.  The government's review process described above bears no resemblance to circumstances in the cases cited by Manafort in which courts have ordered blanket suppression of evidence.  In his leading case, *United States v. Metter*, 860 F. Supp. 2d 205 (E.D.N.Y. 2012), the government had not commenced privilege or pertinence review of seized and imaged items 15 months after the warrant's execution.  *Id.* at 211.  Although recognizing that the Fourth Amendment does not set a hard-and-fast limit on the period for the government "to review seized electronic data," the court in *Metter* characterized as "unreasonable and disturbing" "[t]he

---

[8] To the extent that Manafort's reference to "indefinite retention of all . . . electronically-stored material" (Doc. 264 at 9) is meant to suggest that the government cannot retain a complete copy of imaged devices that also contain material outside the scope of the warrant, that suggestion lacks merit.  As the en banc Second Circuit recently observed, the government has strong reasons for retaining "a complete mirror" of a storage medium, especially in a case headed for trial. *See United States v. Ganias*, 824 F.3d 199, 215-16 (2d Cir.) (explaining that copies may need to be retained in case they need to be provided to forensic experts and, more generally, "to preserve, authenticate, and effectively present at trial the evidence . . . lawfully obtained" from the device), *cert. denied*, 137 S. Ct. 569 (2016).

government's retention of *all* imaged electronic documents, including personal emails, without *any* review whatsoever to determine not only their relevance to this case, but also to determine whether any recognized legal privileges attached to them." *Id.* at 215.  Blanket suppression of all evidence from the storage media was appropriate, the court concluded, because the government had acted in bad faith, as shown by its "fail[ure] to commence the review, despite repeated requests from defense counsel and directions from the Court to do so." *Id.* at 216.

The decision in *United States v. Debbi*, 244 F. Supp. 2d 235 (S.D.N.Y. 2003), involved what the court found to be similarly egregious facts.  Agents executing a "very broad warrant" permitting seizure of evidence of health-care fraud and obstruction of justice took from an eye doctor's home "many items that plainly fell outside th[o]se parameters, such as personal and religious files, general correspondence, family financial records, [and] private patient records." *Id.* at 237.  The government did not attempt to separate those items from evidence of the subject crimes at the time of the search and, even "after repeated demands from defense counsel," returned only "a limited portion of improperly seized materials." *Id.* at 237-28.  Finding that the government had "blatantly disregard[ed] the very limitations that saved the warrant from overbreadth," the court suppressed as evidence—and ordered the government to return—"any items seized from the Debbi home that" the government had not yet determined to be "evidence of either obstruction or health care fraud." *Id.* at 238.  The court reserved decision, however, on whether to suppress all of the evidence that the government obtained during the search was appropriate. *Id.*

The government's conduct here is readily distinguishable from these cases.  The court in *Metter* based its decision on the government's failure to conduct privilege and pertinence review for 15 months after executing the warrant.  860 F. Supp. 2d at 215.  Here, the government began conducting privilege review, identifying pertinent materials, and segregating out "irrelevant,

personal information," *id.*, almost immediately after the search.  *Compare Jarman*, 847 F.3d at 266-67 (distinguishing *Metter* where the government employed a filter team "to protect . . . [the] privileged information" of the defendant's clients, privilege review took eight months, and the government then promptly "completed its forensic examination").  Nor is this an instance, as in *Debbi*, where the government was aware that it had seized sensitive personal items but made little effort to return them, despite "repeated demands from defense counsel."  244 F. Supp. 2d at 137-38.  On the contrary, and as explained above, Manafort's counsel did not respond to the government's offers to discuss its screening process and did not request the return of non-responsive materials until filing the present motion.  And on the one occasion when Manafort's former counsel requested the return of privileged material in August 2017, the government immediately arranged for that material to be returned.

In sum, given the government's extensive efforts to review seized materials for privilege and pertinence, its execution of the warrant falls well within the bounds of reasonableness required by the Fourth Amendment.  Further, because no precedent would have alerted a reasonably well-trained officer that executing a warrant in the manner the government has done here violates the Fourth Amendment, the good-faith exception to the exclusionary rule forecloses suppression. *See Leon*, 468 U.S. at 922 n.23.  And finally, absent any claim of bad faith or flagrant disregard of the warrant's terms (which Manafort has not made), any suppression remedy for improper retention of materials outside the scope of the warrant would be limited to exclusion of those materials at trial.  *See Maxwell*, 920 F.2d at 1034 n.7; *United States v. Tamura*, 694 F.2d 591, 597 (9th Cir. 1982) ("Generally, the exclusionary rule does not require the suppression of evidence within the scope of a warrant simply because other items outside the scope of the warrant were unlawfully taken as well.") (cited at Doc. 264 at 7, 9).

## CONCLUSION

For the foregoing reasons, Manafort's motion to suppress evidence derived from the search

of his residence (Doc. 264) should be denied.

Respectfully submitted,

ROBERT S. MUELLER, III
Special Counsel

Dated: April 23, 2018

*/s/ Andrew Weissmann*
Andrew Weissmann
Greg D. Andres (D.D.C. Bar No. 459221)
Scott A.C. Meisler
U.S. Department of Justice
Special Counsel's Office
950 Pennsylvania Avenue NW
Washington, D.C. 20530
Telephone: (202) 616-0800

*Attorneys for the United States of America*