UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| v. | ) | |
| | ) | Crim. No. 17-201-01 (ABJ) |
| PAUL J. MANAFORT, JR., | ) | |
| | ) | |
| Defendant. | ) | |

**DEFENDANT PAUL J. MANAFORT, JR.'S REPLY TO THE GOVERNMENT'S MEMORANDUM IN OPPOSITION TO HIS MOTION TO SUPPRESS EVIDENCE AND ALL FRUITS THEREOF RELATING TO THE SEARCH OF THE STORAGE UNIT LOCATED IN ALEXANDRIA, VIRGINIA**

Defendant Paul J. Manafort, Jr., by and through counsel, hereby submits this reply to the Special Counsel's memorandum in opposition to his motion to suppress evidence and all fruits thereof relating to the search of the storage unit located in Alexandria, Virginia. (Dkt. # 283).

I.     **The Special Counsel Misapplies the Concept of Common Authority**

The parties agree that: (1) common authority is a potential basis upon which to ground a third party's consent to a warrantless search; and (2) *United States v. Matlock*, 415 U.S. 164 (1974), authoritatively defines common authority.  The defendant and the Office of Special Counsel part ways, however, regarding how *Matlock* is construed. The Special Counsel would have this Court follow Ninth Circuit precedent that no other federal appellate court has adopted, whereas the defendant rests on controlling legal precedent from the District of Columbia.

### A.    Mutual Use *and* Joint Access or Control Required in DC

Common authority means "mutual use of the property by persons generally having joint access or control for most purposes." *United States v. Peyton*, 745 F.3d 546, 552 (D.C. Cir. 2014) (quoting *Matlock*, 415 U.S. at 171, n.7). This Circuit has held that the government must prove the existence of *both* mutual use of the property *and* joint access to or control of the property by the third party and the target of the search. *United States v. Whitfield*, 939 F.2d 1071, 1074 (D.C. Cir. 1991) (suppressing the fruits of the search and finding that, even if the government bore its burden of proving joint access, it failed to prove mutual use). Critically, *Whitfield* held that even if the third party's ability (or legal right) to access the property established the joint access or control element of common authority, it did not establish the mutual use element. *Id.* at 1074.

### B.    Ninth Circuit's Assumption of Risk Formulation Is Inapposite

In the opposition, the Special Counsel avoids any discussion or analysis of *Matlock*'s joint access/control and mutual use elements that are necessary to establish common authority. Instead, the Special Counsel moves directly to asserting that Mr. Manafort "assumed the risk that [the Employee] would use the key he possessed to permit outsiders (including the police) into the unit." (Dkt. # 283 at 9) (internal quotation marks omitted). In relying on "assumption of risk" as sufficient to establish common authority, the government expressly aligns itself with the Ninth Circuit's decision in *United States v. Kim*, 105 F.3d 1579 (9th Cir. 1997). *Kim* is uncontroversial insofar as it points out that the Supreme Court in *Matlock* referred to assumption of risk in its definition of common authority:

> The authority which justifies the third-party consent . . . rests rather on mutual use of the property by persons generally having joint access or control for most purposes, so that it is reasonable to recognize that any of the co-inhabitants has the right to permit the inspection in his own right and that the others have assumed the risk that one of their number might permit the common area to be searched.

*United States v. Matlock*, 415 U.S. 164, 171 n.7 (1974).

In *Kim*, however, the Ninth Circuit departs from the D.C. Circuit and every other federal appellate court[1] by applying assumption of risk as an independent and sufficient condition for a finding of common authority, instead of interpreting the language as merely modifying or explaining the Supreme Court's requirement of "mutual use of the property by persons generally having joint access or control for most purposes." *Id.*

Apart from its anomalous reliance on assumption of risk, the Ninth Circuit's decision in *Kim*—a case involving contraband and not business records—is distinctly unfavorable to the Government's position. Indeed, the Ninth Circuit affirms that

> [c]ases subsequent to *Matlock* have emphasized that a consent-giver with *limited* access to the searched property lacks actual authority to consent to a search. . . . [A] consent-giver whose right of access is "narrowly prescribed" would lack sufficient authority to consent to a search. The cases upholding searches generally rely on the consent-giver's *unlimited* access to property to sustain the search.

*Kim,* 105 F.3d at 1582 (emphasis added).  More importantly, the Ninth Circuit holds that the third party's lack of "unlimited access" to the storage unit "put[s] the case outside the 'joint access or control for most purposes' test" established in *Matlock. Id.*

---

[1] The Special Counsel points out that the Tenth Circuit followed the Ninth Circuit's assumption-of-risk analysis in *United States v. Trotter*, 483 F.3d 694 (10th Cir. 2007).  (Dkt. # 283 at 10).  Only four months later, however, that appellate court disavowed *Trotter*'s adoption of assumption of risk as sufficient to establish common authority. In *United States v. Cos*, the Tenth Circuit dismissed the government's assumption-of-risk argument as merely "invoking a phrase from *Matlock*" and "not supported by the law of this circuit." 498 F.3d 1115, 1126 (10th Cir. 2007).  The Tenth Circuit Court of Appeals further explained that "when determining whether a third party has actual [common] authority to consent to the search of a residence, we do not apply an independent "assumption of the risk" or "sufficient relationship to the premises" test. *Id.*

The Special Counsel, however, asserts that the former DMP employee "had the right and capability to gain access to the unit at any time without [Manafort's] knowledge or permission." (Dkt. # 283 at 11) (internal quotation marks omitted). Legally, this is incorrect because it conflates the *right* to enter the storage unit with the informant's *physical capability* to do so. The former DMP employee's possession of a key to the storage unit gave him only the physical ability to enter the storage unit (unauthorized) without Mr. Manafort's permission—just as a hotel manager's access key would give him/her the ability to enter a guest's room without permission. That is, the informant's possession of the key did not also confer upon him the *right* to enter without permission, just as the hotel manager's possession of a guest room key does not confer upon him or her the right and authority to consent to a search of a guest's room. *See, e.g., United States v. Toan Phuong Nghe*, 925 F. Supp. 2d 1142, 1147 (W.D. Wash. 2013) (holding that it was unreasonable for police officers to conduct a warrantless search of a hotel room despite the fact that the hotel manager had consented to the search, because the manager did not have apparent authority to consent to the search even though he had given the officers a key to the hotel room). This distinction is why the Special Counsel must rely on *Kim*'s assumption of risk formulation because the FBI Affidavit makes clear that the informant advised the FBI Agent that he acted only with Mr. Manafort's permission and direction. (*See* FBI Aff. ¶ 28, Dkt. # 257, Exhibit 1 at 11.). Further, there are no sworn allegations in the FBI Affidavit that the former DMP employee ever had "mutual use" of the storage unit. Accordingly, the informant lacked common authority over the storage unit and was incapable of providing actual consent for its search.

4

## II.    The Third-Party Lacked Apparent Authority to Consent to the Search

A person lacking common authority, but having apparent authority, may consent to a search *provided that* the law enforcement officer *reasonably believes* that the person is authorized to do so. *United States v. Peyton*, 745 F.3d 546, 552 (D.C. Cir. 2014) ("Such 'apparent authority' is sufficient to sustain a search" provided "that officers' factual determinations in such situations are reasonable."). Perhaps recognizing the fatal flaw in establishing common authority, the Special Counsel turns next to apparent authority; however, there is no help to be found.

It is essential to point out that "[i]t is the government's burden to establish that a third party had authority to consent to a search." *Whitfield*, 939 F.2d at 1075 (quoting *Illinois v. Rodriguez*, 497 U.S. 177, 181 (1990)). And the government cannot carry its burden by referring to the facts as the agent understood them unless that agent had sufficient facts at his disposal to draw a reasonably well-informed judgment as to the third party's authority to consent. In this jurisdiction,

> [t]he burden cannot be met if agents, faced with an ambiguous situation, nevertheless proceed without making further inquiry. If the agents do not learn enough, if the circumstances make it unclear whether the property about to be searched is subject to mutual use by the person giving consent, then warrantless entry is unlawful *without further inquiry*. . . .

*Id.* (internal quotation marks omitted) (emphasis in original). *See also Peyton*, 745 F.3d at 554, n.2 ("Apparent authority does not exist where it is uncertain that the property is in fact subject to mutual use. It is this principle that makes *Whitfield* so important. . . . [A]mbiguity is enough to defeat apparent authority. . . .").

In other words, if the agent does not adequately investigate the nature of the third party's authority, the agent cannot be justified in concluding that the third party had

authority. The "facts available to the officer at the moment," *Rodriguez*, 497 U.S. at 178 (quoting *Terry v. Ohio*, 392 U.S. 1, 21–22 (1968)), include facts that the agent should have uncovered. Here, the FBI Agent *knew* that the third party acted only "as directed by Manafort" (*See* FBI Aff. ¶ 28, Dkt. # 257, Exhibit 1 at 11). Accordingly, the FBI Agent had a duty to take reasonable investigative steps to avoid any misunderstanding regarding the former DMP employee's authority to consent to the search. The Special Counsel has presented no evidence, however, in the FBI Affidavit or elsewhere that the FBI Agent took reasonable steps to investigate the nature of the third party's authority.

To determine whether the informant could validly consent to the search of the storage unit, the agent should have asked, among other things: whether the third party was allowed to enter the storage unit *without* permission from Mr. Manafort; whether he was authorized to store his own property in the unit and whether he ever did so (*i.e.*, whether he had mutual use of the facility); whether he was authorized to let others into the storage unit; whether he and Mr. Manafort ever discussed the nature of the third party's authority with respect to the storage unit; why the informant's name, and not Mr. Manafort's, was on the lease; who paid the monthly lease fees for the storage unit; whether his duties regarding the storage unit changed after he became an employee of Steam Mountain, LLC[2]; whether his employment duties, including moving files to the storage unit, changed when he left DMP; and why the informant's DMP email address as a contact point was still on the lease.

In *Whitfield*, the D.C. Circuit disapproved of the agents' failure to ask just such questions:

---

[2] The FBI Affidavit avers only that the duties that it describes pertained to 2015 when he worked for DMP. (*See* FBI Aff. ¶ 28, Dkt. # 257, Exhibit 1 at 11).

As a factual matter, the agents could not reasonably have believed Mrs. Whitfield had authority to consent to this search. The agents simply did not have enough information to make that judgment.

\*\*\*

Whether she had "mutual use" of the room or the closet containing the defendant's clothing could not be determined from anything the agents asked.

\*\*\*

The agents never asked Mrs. Whitfield whether she cleaned her son's room, visited with him there, stored any of her possessions in the room, watched television there, or made use of the room at any time for any purpose.

\*\*\*

The government has not carried its burden in this case. The agents' superficial and cursory questioning of Mrs. Whitfield did not disclose sufficient information to support a reasonable belief that she had the authority to permit this search. The agents could not infer such authority merely from her ownership of the house.

939 F.2d at 1074-75 (citations omitted).

In this case, the agent overstepped the confines of the Fourth Amendment in his initial warrantless search, and any reliance by the government on the concept of apparent authority is not supported by the FBI Affidavit. Although the former DMP employee retained a key to a storage unit that contained DMP's property and business papers, he was no longer a DMP employee, per the government's own FBI Affidavit. Again, the FBI Agent was specifically told by the informant that he was permitted to enter the premises only *at Mr. Manafort's direction.* (*See* FBI Aff. ¶ 28, Dkt. # 257, Exhibit 1 at 11). The fact that the FBI Agent did not ask the former DMP employee reasonable follow-up questions and include that information for the magistrate judge to review in the subsequent application for a search warrant, speaks volumes. For these reasons, the Court should conclude that the informant did not have apparent authority to allow the FBI Agent to

conduct the warrantless initial search of the storage unit, which formed the basis for the subsequent search warrant issued by the magistrate judge.  All evidence, and the fruits thereof, should therefore be suppressed.

### III.    The Warrant Lacked Sufficient Particularity

Attachment B to the Search Warrant authorizes the seizure of, among other items, "*[a]ny and all* financial records" related to Mr. Manafort or any companies associated with him. (*See* Search Warrant, Attachment B, ¶ 1a., Dkt. # 257, Exhibit 2 (emphasis added)). The Special Counsel's Office argues in its opposition to the motion to suppress that this language is sufficiently particularized, but upon a closer reading of the authorities cited by the government, these cases provide no support because they are all readily distinguishable from the case at bar.

Concerning *United States v. Young*, 260 F. Supp.3d 530 (E.D. Va. 2017), the Special Counsel contends (in a parenthetical) that this is an example of a district court approving a search warrant that sought "all records and documents" falling into eight enumerated categories. (Dkt. # 283 at 21).  In fact, the court in *Young* explained that the categories restricted the phrase "all records and documents" and chastised the defendant for characterizing the warrant as seeking all records and documents when it did not: "Defendant makes similar claims regarding lack of particularity for the categories of evidence which he *misleadingly* describes as a search for 'all records and documents.' Contrary to how defendant describes what the warrants authorized, the categories of documents and records were carefully limited. . . ." *Young*, 260 F. Supp.3d at 549 (emphasis added).  The *Young* court identified the limitations on the broader language which, among other things, focused on particular individuals, terrorist groups, etc. *Id.*

8

Here, the search warrant actually contained a capacious category without restricting categories: "[a]ny and all financial records" related to Mr. Manafort or any companies associated with him.

The government next cites *United States v. Kuc*, 737 F.3d 129 (1st Cir. 2013), for the proposition that the warrant "supp[lied] enough information to guide and control the executing agent's judgment in selecting where to search and what to seize." (Dkt. # 283 at 21). But the *Kuc* warrant tied the broad language contained in the first clause to more specific search constraints set forth in the second clause. *Kuc*, 737 F.2d at 133. Although the warrant here also begins with a broad clause calling for records relating to various federal violations,[3] there is no similar limiting language in the next clause.

The Special Counsel also references *United States v. Dale*: "It is sufficient if the warrant signed by the judicial officer is particular enough if read with reasonable effort by the officer executing the warrant." 991 F.2d 819, 846 (D.C. Cir. 1993). This is true as far as it goes, but the search warrant in *Dale*—unlike the warrant issued here—was "limited to those [records] that relate to the period June 1, 1984 through the present." *Id.* (internal quotation marks omitted). The lack of any temporal limitation is crucial, as the defense has argued in the instant motion, because the warrant's bounds cannot be discerned with reasonable effort by the executing agent.[4]

---

[3] Attachment B to the warrant at issue begins, "Records relating to violations of 31 U.S.C. §§ 5314, 5322(a) (Failure to File a Report of Foreign Bank and Financial Accounts), 22 U.S.C. § 618 (Foreign Agent Registration Act), and 26 U.S.C. § 7206(a) [sic] (Filing a False Tax Return), including: a. Any and all financial records for Paul Manafort, Richard Gates or companies associated with Paul Manafort or Richard Gates, including but not limited to records relating to any foreign financial accounts. . . ." (*See* Search Warrant, Attachment B, Dkt. # 257, Exhibit 2).

[4] In fact, the *Dale* court stated that the date limitation by itself was not enough to save the warrant:

Finally, the Government invokes *United States v. Maxwell*'s holding that "a warrant's reference to a particular statute may in certain circumstances limit the scope of the warrant sufficiently to satisfy the particularity requirement." 920 F.2d 1028, 1033 (D.C. Cir. 1990). However, the full context of this quotation (underlined for clarity) is as follows:

> <u>Although</u> a warrant's reference to a particular statute may in certain circumstances limit the scope of the warrant sufficiently to satisfy the particularity requirement, <u>it will not do so where, as here, the warrant authorizes seizure of all records and where, as here, the reference is to a broad federal statute, such as the federal wire fraud statute.</u>

*Id.* (internal citations omitted) (emphasis supplied). In addition to holding that reference to a broad federal criminal statute will not save a warrant, the court re-affirms that a supporting affidavit cannot save a warrant absent incorporation. *Id.* at 1031 ("The incorporation issue is crucial here because . . . we believe that the warrant in this case was fatally overbroad if the supporting affidavit is unavailable to limit the warrant's scope.").

## IV.   There Was Sufficient Information Available to Identify Temporal Limits

In defense of the search warrant's failure to place any time limits on the items to be seized, the Special Counsel argues that relevant time periods "could not have been known to the Government." (Dkt. # 283 at 24 (quoting *United States v. Shilling*, 826 F.2d 1365,

---

The warrant's explicit authorization to the agents to seize "business records including, but not limited to" those specifically identified subjected essentially all of ADM's records dated after June 1, 1984 to seizure and therefore the warrant, by itself, was not sufficiently particular. However, we concur in the district court's view that incorporation of Agent Shintani's affidavit into the warrant provided a sufficient limitation on the government's search.

*Dale*, 991 F.2d at 846 (internal citations omitted). Rather, the D.C. Circuit upheld the search warrant against the particularity challenge only because the agent's affidavit was incorporated into the warrant. *Id.* Of course, the search warrant in this case failed to incorporate the agent's affidavit.

1369 (4th Cir. 1987)). Of course, the Government must have known the time periods at issue because it acknowledged that it had been investigating Mr. Manafort *since 2014*, three years before this search took place. It strains credulity for the Special Counsel to contend that, after three years of investigation, the years at issue "could not have been known."

## V.     No Good Faith Reliance on the Warrant

As discussed above, a person with apparent authority may authorize a search, provided that the law enforcement officer reasonably believes that the third party is authorized to do so. Once the FBI Agent learned that the former DMP employee had no right to enter the storage unit without Mr. Manafort's direction, however, the FBI Agent could not have reasonably believed that the informant had authority to consent to the warrantless search. Because the FBI Agent's purported belief in the validity of the former DMP employee's consent was unreasonable, he cannot have reasonably relied on a subsequently obtained search warrant that he knew was based on an earlier warrantless search founded on invalid consent.

To avoid suppression of the fruits of an unlawful and invalid search, the Government must prove that "an officer acting with objective good faith has obtained a search warrant from a judge or magistrate and acted within its scope," even though the search warrant might later be found invalid. *United States v. Leon*, 468 U.S. 897, 920 (1984). Apparently concerned about the validity of the FBI Agent's warrantless search, the Special Counsel takes pains to discuss *Leon* and its exceptions. (Dkt. # 283 at 25-28). *Leon* does not provide the protection that the Special Counsel seeks, however. The FBI Agent cannot have acted in objective good faith in securing consent from a person who

11

lacked actual or apparent authority. "*Leon*'s good-faith exception applies only narrowly, and ordinarily only where an officer relies, in an objectively reasonable manner, on a mistake made by someone *other than the officer*." *United States v. Herrera*, 444 F.3d 1238, 1249 (10th Cir. 2006) (emphasis added). "[B]ecause *Leon* rests upon the notion that the exclusionary rule is not implicated where there is no police misconduct to deter, that case does not allow law enforcement authorities to rely on an error of their own making." Wayne R. LaFave, 1 Search & Seizure § 1.3(f) (5th ed.). It naturally follows that when an agent acts on consent in the absence of even *apparent* authority, *Leon* is inapplicable:

> Here, as the district court recognized, the officers' initial entry into Mr. Cos's apartment was based neither on a facially valid warrant nor on a mistake made by someone other than the officers. Instead, the officers proceeded into the apartment because of their mistaken belief that Ms. Ricker had the authority to consent. In such circumstances, the good faith exception to the exclusionary rule is inapplicable.

*United States v. Cos*, 498 F.3d 1115, 1132 (10th Cir. 2007).

The Special Counsel argues that even if the warrantless search was illegal, it did not taint the later search warrant to justify the suppression of evidence. This is demonstrably false. Without the government's warrantless entry into the storage unit and recordation of the materials observed by the FBI Agent which was subsequently described in the FBI affidavit, the magistrate judge would have been left with bare assertions from an informant whose reliability and current basis for knowledge (as a former DMP employee) had not been established, as required. *See Illinois v. Gates*, 462 U.S. 213, 230 (1983). Suppression, therefore, is the appropriate remedy.

## VI.    Severance is Unavailable to Save the Warrant

Finally, in the portion of its opposition discussing the search warrant's lack of temporal limitation, the government contends that "any suppression remedy would be

limited to evidence seized under the portion of the warrant that is overbroad, which would at most be records that predate 2005." (Dkt. # 283 at 28-29). The Special Counsel generously posits that the defendant's redress "is simply to excise the years for which there was no probable cause." *Id.* at 29-30. The flaw with this purported "cure" is that the absence of a temporal limitation is not a probable cause problem; it is a particularity problem, and the suggested severance does not remedy it.[5]

Dated: May 4, 2018                                          Respectfully submitted,


                                                            _____/s/_____
                                                            Kevin M. Downing
                                                            (D.C. Bar No. 1013984)
                                                            Law Office of Kevin M. Downing
                                                            601 New Jersey Avenue NW
                                                            Suite 620
                                                            Washington, DC 20001
                                                            (202) 754-1992
                                                            kevindowning@kdowninglaw.com


                                                            _____/s/_____
                                                            Thomas E. Zehnle
                                                            (D.C. Bar No. 415556)
                                                            Law Office of Thomas E. Zehnle
                                                            601 New Jersey Avenue NW
                                                            Suite 620
                                                            Washington, DC 20001
                                                            (202) 368-4668
                                                            tezehnle@gmail.com

---

[5] The Special Counsel makes the same error when it cites *United States v. Cohan*, 628 F. Supp. 2d 355, 364 n. 4 (E.D.N.Y. 2009), for the proposition that, in determining whether an affidavit established probable cause, the trial court may consult the affidavit even if it was not incorporated into the warrant. This is a *non sequitur*. Of course, the trial court *must* consult the affidavit to decide whether that affidavit established probable cause. The affidavit is of no moment, however, when a court is reviewing the *warrant* for *particularity*. The one exception is when the affidavit is made a part of the warrant. *See United States v. Griffith*, 867 F.3d 1265 (D.C. Cir. 2017). The Government does not dispute that the search warrant failed to incorporate the affidavit.