**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

_____

|                               |     |                                  |
|-------------------------------|-----|----------------------------------|
| UNITED STATES OF AMERICA,     | )   |                                  |
|                               | )   |                                  |
| v.                            | )   | Crim. Action No. 17-0201-01 (ABJ)|
|                               | )   |                                  |
| PAUL J. MANAFORT, JR.,        | )   |                                  |
|                               | )   |                                  |
| Defendant.                    | )   |                                  |

_____)

## MEMORANDUM OPINION AND ORDER

On May 17, 2017, the Acting Attorney General of the United States appointed Robert S. Mueller III to serve as Special Counsel for the U.S. Department of Justice.[1]  Paragraph (b) of the Appointment Order authorized him "to conduct the investigation confirmed by then-FBI Director James B. Comey in testimony before the House Permanent Select Committee on Intelligence on March 20, 2017," including:

> (i)     any links and/or coordination between the Russian government and individuals associated with the campaign of President Donald Trump; and
>
> (ii)    any matters that arose or may arise directly from the investigation; and
>
> (iii)   any other matters within the scope of 28 C.F.R. § 600.4(a).[2]

As part of the Special Counsel's investigation, defendant Paul J. Manafort, Jr. was indicted on a number of charges relating to his lobbying and political consulting activities on behalf of Ukraine,

---

1       Appointment of Special Counsel to Investigate Russian Interference with the 2016 Presidential Election and Related Matters, Ex. A to Government's Resp. in Opp. to Def.'s Mot. to Dismiss Superseding Indictment [Dkt. # 244-1] ("Appointment Order" or "Appt. Order") ¶ (b).

2       The "other matters within the scope of 28 C.F.R. § 600.4(a)" include "federal crimes committed in the course of, and with intent to interfere with, the Special Counsel's investigation, such as perjury [and] obstruction of justice."  28 C.F.R. § 600.4(a).

the pro-Russia political party in Ukraine, and the former President of Ukraine who fled to Russia in 2014. *See* Indictment (Redacted) [Dkt. # 13]; Superseding Indictment [Dkt. # 201].

Defendant Manafort has moved to dismiss the Superseding Indictment.[3]  He contends that when the Acting Attorney General issued the Appointment Order, he exceeded limits imposed on his appointment authority by the Department of Justice Special Counsel Regulations, and that therefore, the Appointment Order, and the acts undertaken by the Special Counsel under its auspices, are invalid.  Manafort also argues that even if the appointment was valid, the Special Counsel overstepped the authority he was granted when he investigated and prosecuted the particular charges in this case.

It is important to note that Manafort does *not* challenge the entire Appointment Order; he objects only to paragraph (b)(ii), the grant of authority to pursue "any matters that arose or may arise directly from the investigation," which he claims is too broad.  Thus, as Manafort acknowledges, his motion does not support the dismissal of any charges if they were properly brought under paragraphs (b)(i) or (iii) of the Appointment Order.  *See* Tr. of Apr. 19, 2018 Mot. Hr'g [Dkt. # 281] ("Tr.") at 8–9.

The motion to dismiss will be denied for a number of reasons.

First, the indictment falls squarely within that portion of the authority granted to the Special Counsel that Manafort finds unobjectionable:  the order to investigate "any links and/or coordination between the Russian government and individuals associated with the campaign." Appt. Order ¶ (b)(i).  Manafort was, at one time, not merely "associated with," but the chairman

---

3       Def.'s Mot. to Dismiss Superseding Indictment [Dkt. # 235] ("Def.'s Mot.").   The government opposed the motion.  Government's Resp. in Opp. to Def.'s Mot. [Dkt. # 244] ("Gov't Opp.").  The matter is fully briefed, *see* Def.'s Reply in Supp. of Def.'s Mot. [Dkt. # 272] ("Def.'s Reply"), and the Court heard oral argument on the motion on April 19, 2018.

of, the Presidential campaign, and his work on behalf of the Russia-backed Ukrainian political party and connections to other Russian figures are matters of public record.  It was logical and appropriate for investigators tasked with the investigation of "any links" between the Russian government and individuals associated with the campaign to direct their attention to him.  Thus, the Departmental regulations that Manafort claims were violated by paragraph (b)(ii) of the Appointment Order are not implicated here, and the motion, which supplies no other basis to dismiss the indictment, should be denied for that reason.[4]

But even if one posits that the scrutiny of Manafort's alleged activities on behalf of Ukraine did not flow from the investigation of "links" to Russia that was assigned to the Special Counsel, and that instead, it was a "matter that arose" from that investigation, the indictment should not be dismissed.  The second reason Manafort's motion fails is that the Department of Justice promulgated the Special Counsel Regulations for its own internal management, and they do not create any substantive rights for the benefit of individuals under investigation.  This means that Manafort cannot predicate a motion to dismiss on the regulations.

Also, even if a judge were to conclude that the regulations could give rise to rights that can be enforced in a courtroom, the Acting Attorney General did not violate those regulations when he exercised his statutory authority to authorize the Special Counsel to investigate not only "links and/or coordination," but also, "any matters that arose or may arise directly from the investigation."   The Acting Attorney General had the authority under the applicable statutes and regulations to define the Special Counsel's charter broadly. Therefore, paragraph (b)(ii) of the

---

[4]     Defendant has separately moved to dismiss either Count 4 or 5 on multiplicity grounds, Def.'s Mot. to Dismiss One of Two Multiplicitous Counts [Dkt. # 236], and to dismiss the money laundering count for failure to state a violation of the statute.  Def.'s Mot. to Dismiss Count Two and to Strike the Forfeiture Allegation [Dkt. # 237].  Those motions will be addressed in separate opinions.

Appointment Order – which does not appear to bear on this indictment in any event – is not invalid on its face.

Finally, the case did not arise in a vacuum, and the Special Counsel did not create his own job description.  He was appointed to take over an existing investigation, and it appears from the chronology and the written record that the matters contained in the Superseding Indictment were already a part of the ongoing inquiry that was lawfully transferred to the Special Counsel by the Department of Justice in May of 2017.  More important, the Acting Attorney General has confirmed in writing that he assigned the Special Counsel the specific responsibility to investigate the very allegations that comprise the Superseding Indictment.  This is exactly what the Department of Justice regulations contemplate:  a specific factual statement of the matters to be investigated.  So to the extent the regulations bear on this case at all, they were not violated; the management of the investigation into the allegations against Manafort has been consistent with the objectives and requirements of the set of regulations as a whole, as well as the terms of the individual regulation upon which the defendant relies.

As the Department explained when it issued the Special Counsel Regulations, the regulations were designed to "strike a balance between independence and accountability in certain sensitive investigations."  Final Rule, 64 Fed. Reg. 37,038 (July 9, 1999).  The regulations recognize that there will be occasions when the Attorney General or Acting Attorney General may determine that it would be in the public interest to appoint an outside Special Counsel to assume responsibility for a matter.  In recognition of the conflict of interest or other extraordinary circumstances that prompted the appointment, the regulations preserve the Special Counsel's day-to-day independence to structure the investigation.  They expect and require that he or she will exercise prosecutorial discretion when determining what charges to bring, informed by both the

experience and integrity that led to the appointment, as well as the established rules, policies, and procedures of the Department.

At the same time, the Department's Special Counsel Regulations call for ongoing communication and consultation, because the ultimate responsibility for the matter continues to rest with the Department hierarchy.  When it promulgated the regulations, the Department anticipated that a Special Counsel, like any other prosecutor, could become aware of, and could have legitimate reasons to explore, paths that branch out naturally from the original investigation, as well as entirely new and disconnected allegations.  The regulations establish a procedure to ensure that it is the Department of Justice, and not the Special Counsel himself or herself, who decides whether it should be the Special Counsel or attorneys within the Department of Justice who will pursue those lines of inquiry.  The regulations place no boundaries on who can be investigated or what charges can be brought – what they address is who decides who the *prosecutor* will be.  With respect to the investigation of the defendant that led to this indictment, the Acting Attorney General made that decision and confirmed it in writing, so the defendant has no grounds for complaint.

It bears emphasizing at this stage that Manafort is presumed to be innocent of these charges, and it will be the prosecution's burden to prove him guilty beyond a reasonable doubt.  But the indictment will not be dismissed, and the matter will proceed to trial.

## BACKGROUND

On March 2, 2017, the United States Attorney General recused himself "from any existing or future investigations of any matters related in any way to the campaigns for President of the United States."  Press Release, U.S. Dep't of Justice, Attorney General Sessions Statement on Recusal  (Mar.  2,  2017),  https://www.justice.gov/opa/pr/attorney-general-sessions-statement-

recusal.  There was such an investigation underway, and on March 20, 2017, the Director of the

FBI officially confirmed its existence in public testimony before an open session of Congress.  He

stated:

> I have been authorized by the Department of Justice to confirm that the FBI,
> as part of our counterintelligence mission, is investigating the Russian
> government's efforts to interfere in the 2016 presidential election, and that
> includes investigating the nature of any links between individuals
> associated with the Trump campaign and the Russian government and
> whether there was any coordination between the campaign and Russia's
> efforts.  As with any counterintelligence investigation, this will also include
> an assessment of whether any crimes were committed.

Statement of FBI Director James B. Comey, House Permanent Select Committee on Intelligence,

Hearing on Russian Active Measures Investigation (Mar. 20, 2017), https://www.fbi.gov/news/

testimony/hpsci-hearing-titled-russian-active-measures-investigation ("Comey Testimony").[5]

   In accordance with Department of Justice regulations, Deputy Attorney General Rod

Rosenstein serves as the Acting Attorney General in cases in which the Attorney General is

recused.  *See* 28 C.F.R. § 600.1.  In that capacity, he issued an order on May 17, 2017, appointing

Robert Mueller to serve as Special Counsel for the U.S. Department of Justice.  Appt. Order.  The

Acting Attorney General stated that he issued the order "[b]y virtue of the authority vested in me

as Acting Attorney General, including 28 U.S.C. §§ 509, 510, and 515, in order to discharge my

---

[5]   The then-FBI Director explained that he could not provide more details or identify whose conduct was being examined because the investigation was open and ongoing, and it was classified.  He added, "[a]t the request of congressional leaders, we have taken the extraordinary step in coordination with the Department of Justice of briefing this Congress' leaders, including the leaders of this committee, in a classified setting in detail about the investigation, but I can't go into those details here. . . . Our ability to share details with the Congress and the American people is limited when those investigations are still open, which I hope makes sense.  We need to protect people's privacy.  We need to make sure we don't give other people clues as to where we're going. We need to make sure that we don't give information to our foreign adversaries about what we know or don't know."  Comey Testimony.

responsibility to provide supervision and management of the Department of Justice, and to ensure a full and thorough investigation of the Russian government's efforts to interfere in the 2016 presidential election." *Id.*[6]  The order authorized Mueller "to conduct the investigation confirmed by" then-Director Comey on March 20, and it noted that the Department's set of regulations concerning the appointment of Special Counsel would be applied to the appointment.  *See id.* ¶ (d), citing 28 C.F.R. §§ 600.4–600.10.

On August 2, 2017, the Acting Attorney General issued a memorandum to the Special Counsel detailing the authority granted to him by the Appointment Order.  Ex. C to Gov't Opp. (Redacted) [Dkt. # 244-3] ("Aug. 2 Mem.").  The August 2 memorandum explained that the Appointment Order had been "worded categorically in order to permit its public release without confirming specific investigations involving specific individuals," and that the memorandum, which was not a public document, set forth "a more specific description" of the authority conferred on May 17, 2017.  *Id.* at 1.  Of relevance to this case, the memorandum specified:

> The following allegations were within the scope of the Investigation at the time of your appointment and are within the scope of the [Appointment] Order:
>
> * * *
>
> - Allegations that Paul Manafort:
>
>   - Committed a crime or crimes by colluding with Russian government officials with respect to the Russian government's efforts to interfere with the 2016 election for President of the United States, in violation of United States law;

---

6    The Special Counsel was not appointed to serve as an "independent counsel" under the often-criticized Ethics in Government Act of 1978.  That statute expired in 1999.

- Committed a crime or crimes arising out of payments he received from the Ukrainian government before and during the tenure of President Viktor Yanukovych; . . . .

*Id.* at 1–2.  It concluded, "[y]ou therefore have authority to continue and complete the investigation of those matters."  *Id.* at 3.

On October 27, 2017, a federal grand jury sitting in the District of Columbia returned an indictment against defendant Manafort and Richard W. Gates, III, Indictment (Redacted) [Dkt. # 13], which was superseded by an indictment against Manafort alone on February 23, 2018.[7] Superseding Indictment.  The Superseding Indictment charges defendant with:

(1) conspiracy to defraud the United States from 2006 through 2017 by failing to file a foreign bank account report with the U.S. Treasury disclosing a financial interest in accounts and securities in a foreign country as required by the Bank Secrecy Act, 31 U.S.C. §§ 5314, 5322(a), *id.* ¶¶ 37–39;

(2) conspiracy to launder money from 2006 through 2016 in violation of 18 U.S.C. § 1956, *id.* ¶¶ 40–41;

(3) acting as an unregistered agent of a foreign principal from 2008 through 2014 in violation of the Foreign Agent Registration Act, 22 U.S.C. §§ 612, 618(a)(1), *id.* ¶¶ 42–43;

(4) filing false and misleading statements with the Department of Justice in 2016 and 2017 in violation of the Foreign Agent Registration Act, *id.* ¶¶ 44–45; and

(5) making false statements to the United States in 2016 and 2017 in violation of 18 U.S.C. §§ 2, 1001(a), 3551 *et seq.*, *id.* ¶¶ 46–47.[8]

---

7       On February 23, 2018, Gates pled guilty to conspiring with Manafort to defraud the United States and to making false statements.  *See* Superseding Information [Dkt. # 195].

8       Manafort was also indicted by a federal grand jury in the Eastern District of Virginia on February 13, 2018.  *United States v. Manafort & Gates*, No. 1:18-cr-83 (E.D. Va. 2018), Sealed Indictment [Dkt. # 1]; *id.*, Superseding Indictment [Dkt. # 9].

## LEGAL FRAMEWORK

There is a federal statute that governs who may litigate cases in the name of the United States, and it provides for the appointment of Special Counsel. Under 28 U.S.C. § 509, "[a]ll functions of other officers of the Department of Justice and all functions of agencies and employees of the Department . . . are vested in the Attorney General," 28 U.S.C. § 509, and Congress has provided that the Attorney General may "from time to time" delegate any of those functions as he or she "considers appropriate." *Id.* § 510. According to section 515 of the statute:

> any attorney specially appointed by the Attorney General under law, may, when specifically directed by the Attorney General, conduct any kind of legal proceeding, civil or criminal, including grand jury proceedings . . . , which United States attorneys are authorized by law to conduct.

*Id.* § 515(a).

Manafort does not argue in his pleadings that any of the applicable federal statutes have been violated in this case.[9] He does complain that the Acting Attorney General violated Departmental regulations when appointing the Special Counsel.

The Department of Justice has promulgated a set of regulations concerning the appointment and supervision of Special Counsel appointed pursuant to section 515. General Powers of Special Counsel, 28 C.F.R. §§ 600.1–600.10, citing 5 U.S.C. § 301; 28 U.S.C. §§ 509, 510, 515–519. The Department published the regulations in 1999 to "replace the procedures set out in the Independent Counsel Reauthorization Act of 1994," which had expired on June 30, 1999. Final Rule, 64 Fed. Reg. at 37,038, 37,041.

---

9       Although defense counsel asserted in oral argument that the statute is implicated because the Special Counsel Regulations implement the statute, Tr. at 12–14, there is no argument made in defendant's motion or his reply that the order violates any statute, or that the Acting Attorney General lacked the authority to issue the order.

The regulations provide that a Special Counsel may be appointed when the Attorney General "determines that criminal investigation of a person or matter is warranted" and that assigning a U.S. Attorney or other lawyer within the Department to conduct the investigation "would present a conflict of interest for the Department or other extraordinary circumstances." 28 C.F.R. § 600.1; *see also* 64 Fed. Reg. at 37,038 (explaining that Special Counsel may be appointed "when the Attorney General concludes that extraordinary circumstances exist such that the public interest would be served by removing a large degree of responsibility for a matter from the Department of Justice").  A person named as Special Counsel must be a lawyer "outside of the United States Government," with "a reputation for integrity and impartial decisionmaking," and with the "appropriate experience" to conduct the investigation "supported by an informed understanding of the criminal law and Department of Justice policies."  28 C.F.R. § 600.3.

According to section 600.4 of the regulations, it is up to the Attorney General (or Acting Attorney General) to define the scope of a Special Counsel's jurisdiction:

> ***Original jurisdiction.***  The jurisdiction of a Special Counsel shall be established by the Attorney General.  The Special Counsel will be provided with a specific factual statement of the matter to be investigated.  The jurisdiction of a Special Counsel shall also include the authority to investigate and prosecute federal crimes committed in the course of, and with intent to interfere with, the Special Counsel's investigation, such as perjury, obstruction of justice, destruction of evidence, and intimidation of witnesses; and to conduct appeals arising out of the matter being investigated and/or prosecuted.

*Id.* § 600.4(a).  While this regulation states that "[t]he Special Counsel will be provided with a specific factual statement of the matter to be investigated," it does not require that the factual statement be set forth in the Appointment Order to be released to the public.  *Id.*

The responsibility to define a Special Counsel's territory remains with the Attorney General throughout the investigation. Paragraph (b) of the regulation addresses what should happen if new matters arise:

> **Additional jurisdiction.** If in the course of his or her investigation the Special Counsel concludes that additional jurisdiction beyond that specified in his or her original jurisdiction is necessary in order to fully investigate and resolve the matters assigned, or to investigate new matters that come to light in the course of his or her investigation, he or she shall consult with the Attorney General, who will determine whether to include the additional matters within the Special Counsel's jurisdiction or assign them elsewhere.

*Id.* § 600.4(b).

Once his or her jurisdiction has been established, the Special Counsel has authority to "exercise, within the scope of his or her jurisdiction, the full power and independent authority to exercise all investigative and prosecutorial functions of any United States Attorney." 28 C.F.R. § 600.6. But a Special Counsel remains subject to oversight by the Attorney General. The regulations require the Special Counsel to "consult with appropriate offices within the Department for guidance with respect to established practices, policies and procedures of the Department" or directly with the Attorney General, if the Special Counsel concludes that "extraordinary circumstances of any particular decision" would make such consultation "inappropriate." *Id.* § 600.7(a). While a Special Counsel is not "subject to the day-to-day supervision of any official of the Department," he or she may be required to explain to the Attorney General or Acting Attorney General "any investigative or prosecutorial step," and after that review, the Department head may conclude that the action "is so inappropriate or unwarranted under established Departmental practices that it should not be pursued." *Id.* § 600.7(b). Finally, the Attorney General's responsibility over the investigation includes the power to discipline or remove a Special

Counsel. *Id.* § 600.7(d) (providing that a Special Counsel "may be disciplined or removed from office only by the personal action of the Attorney General").

In issuing the regulations, the Department announced that it had devised this structure to "strike a balance between independence and accountability in certain sensitive investigations, recognizing that there is no perfect solution to the problem." Final Rule, 64 Fed. Reg. at 37,038. As the Department explained in the Federal Register at the time:

> The balance struck is one of day-to-day independence, with a Special Counsel appointed to investigate and, if appropriate, prosecute matters when the Attorney General concludes that extraordinary circumstances exist such that the public interest would be served by removing a large degree of responsibility for the matter from the Department of Justice. The Special Counsel would be free to structure the investigation as he or she wishes and to exercise independent prosecutorial discretion to decide whether charges should be brought, within the context of the established procedures of the Department. Nevertheless, it is intended that ultimate responsibility for the matter and how it is handled will continue to rest with the Attorney General (or the Acting Attorney General if the Attorney General is personally recused in the matter) . . . .

*Id.* at 37,038.

## ANALYSIS

Defendant has moved to dismiss the Superseding Indictment on two grounds. First, he argues that the Appointment Order was an *ultra vires* action on the part of the Acting Attorney General because the grant of authority to the Special Counsel to handle "matters that arose or may arise" from the investigation is unduly broad and inconsistent with section 600.4 of the Special Counsel Regulations. Def.'s Mot. at 14–31. Second, he argues that even if the order itself is valid, the Special Counsel exceeded the authority granted by the order when he investigated the particular matters alleged in the indictment. *Id.* at 31–37.

There are multiple flaws in the defendant's position. First, Manafort challenges only paragraph (b)(ii) of the Appointment Order on the ground that it confers more freedom than the

Acting Attorney General was authorized to provide.  Since the Court finds that the investigation that prompted the indictment fell within the lawful grant of authority to investigate "links and/or coordination" set out in paragraph (b)(i), the motion can be denied on that basis alone.

But even if the allegations in the Superseding Indictment could be characterized as "matters that arose" from that investigation, Manafort's motion fails.  Defendant does not argue in his pleadings that the Acting Attorney General violated any statute when he defined the Special Counsel's jurisdiction to include "any matters that arose;" his claim is that paragraph (b)(ii) of the Appointment Order is inconsistent with the Department's Special Counsel Regulations.  But those internal agency regulations do not create rights that an individual under investigation may enforce in court.

Moreover, even if Manafort has the right to ask the Court to monitor the Department's compliance with its regulations, there has been no violation of those regulations here.  The Acting Attorney General had the authority under the applicable statutes and regulations to delineate the boundaries of the Special Counsel's "original jurisdiction" as he saw fit, and the provisions Manafort relies upon do not impose limits on that authority that were breached in this case.  So there is nothing about paragraph (b)(ii) of the Appointment Order on its face that violates the regulations.

But what if Manafort is correct that his work on behalf of the Ukrainians is not a "link" under paragraph (b)(i), and the inquiry is a matter that "arose" out of that investigation under paragraph (b)(ii)?  And what if he is also correct that the regulations require that matters that arose out of the investigation had to be treated as "additional jurisdiction" under section 600.4 of the regulations, and they could not be included within the original grant of jurisdiction from the outset?  There still would be no basis to dismiss the case.  What the regulations require when additional

13

matters arise is the same as what they require at the start:  that the Attorney General or Acting Attorney General, and not the Special Counsel, must be the one to decide whether it will be the Special Counsel or a lawyer within the Department who will pursue those issues.  Here, the Acting Attorney General expressly approved the Special Counsel's investigation of the facts alleged in the indictment, so there has been no violation of the regulations, and the Special Counsel did not act without authority.

**I.     The investigation of Manafort was an appropriate exploration of a "link" between a person associated with the campaign and the Russian government.**

Manafort acknowledges that the Acting Attorney General had the statutory authority to appoint the Special Counsel to investigate "any links" and that paragraph (b)(i) of the Appointment Order assigning that investigation to the Special Counsel comports with the Department of Justice Special Counsel Regulations.  Since the investigation of Manafort, including his dealings with the pro-Russia faction in Ukraine and the former President of Ukraine who fled to Russia, falls within that category, it was an appropriate exercise of the Special Counsel's authority.

Manafort complains that the investigation of the allegations contained in the indictment was unauthorized since the charges "do not focus in the slightest on alleged coordination between the Russian government and the Trump campaign during the 2016 election."  Def.'s Mot. at 2; *see also Manafort v. Dep't of Justice*, No. 18-cv-00011 (D.D.C. 2017), Compl. [Dkt. # 1] ¶ 47 ("Those allegations have nothing to do with the 2016 presidential election or any alleged collusion with Russian officials."); *id.* ¶ 63 ("The indictment raises stale allegations DOJ must have been aware of for nearly a decade; they are not matters that 'arose . . . from the investigation' into the 2016 election and alleged collusion with the Russian government.").  But the grant of authority that Manafort agrees was lawful was not so narrow.  The word "collusion" does not even appear in the Appointment  Order,  and  the  Special  Counsel  was  tasked  with  taking  over  the  existing

investigation, "including" "any links and/*or* coordination."  Appt. Order.  This delineation of the scope of the inquiry, which was revealed to Congress by the then-FBI Director and then repeated in the Appointment Order, makes sense; in order to reach the end of the road, and come to a conclusion about whether there was coordination or not, a key place to begin is with the individuals who would have been in a position to coordinate.  Who had connections to the Russian government?  Who attended meetings on behalf of the campaign?  Given the combination of his prominence within the campaign and his ties to Ukrainian officials supported by and operating out of Russia, as well as to Russian oligarchs, Manafort was an obvious person of interest.

Manafort contends that the description of the Special Counsel's charter in the Appointment Order does not cover these charges because they relate to work in Ukraine, not Russia, that "long pre-dates" the presidential campaign.  Def.'s Mot. at 25–27.  But the indictment is not quite so circumscribed, and as the press accounts cited by Manafort in his own pleadings demonstrate, publicly available information about the defendant supplied ample grounds to include him in a review of "any links" between the Russian government and individuals associated with the Trump campaign.

The Superseding Indictment arises out of the alleged connections between defendant and Russia through his Ukrainian client, and it is not simply limited to events that allegedly took place many years before the campaign.  Paragraph 1 of the Superseding Indictment alleges that between at least 2006 and 2015, Manafort acted as an unregistered agent of a foreign government and foreign political parties, specifically, the Government of Ukraine; the former President of Ukraine, Viktor Yanukovych; the Party of Regions (a political party led by Yanukovych); and the Opposition Bloc, "a successor to the Party of Regions after Yanukovych fled to Russia in 2014."

Superseding Indictment ¶ 1; *see also id.* ¶ 9 ("In 2014, Yanukovych fled Ukraine for Russia in the wake of popular protests of widespread governmental corruption.").

The Superseding Indictment specifically alleges that defendant's firm, Davis Manafort Partners, Inc., maintained staff in Russia. *Id.* ¶ 8. It further alleges that in 2011, defendant created Davis Manafort International, LLC to engage in work for foreign clients, including lobbying and public relations efforts for Yanukovych's regime, his pro-Russia Party of Regions, and members of the party. *Id.*

In about 2012, an organization called the European Centre for a Modern Ukraine was created to serve as a "mouthpiece" for Yanukovych and the Party of Regions. *Id.* ¶ 10. The Centre was also the nominal client of two Washington, D.C. firms that defendant allegedly hired to lobby U.S. officials on behalf of Yanukovych, the Party of Regions, and the Government of Ukraine. *Id.* ¶¶ 21–24. The Centre served in this role until Yanukovych fled to Russia in 2014, after which the Centre ceased operations. *Id.* ¶ 10. But the indictment alleges that even after Yanukovych fled to Russia, defendant continued to work as an agent of the Opposition Bloc, the successor to Yanukovych's Party of Regions. *See id.* ¶ 1.

Finally, the indictment alleges that in November 2016 and February 2017, Manafort, his alleged co-conspirator Gates, and Davis Manafort International made false and misleading statements to the Department of Justice concerning the nature of their activities on behalf of their Ukrainian clients. *Id.* ¶ 27. Thus, the indictment alleges not only that defendant's Ukrainian clients were supportive of and supported by Russia, but that Manafort's primary client was embedded *in* Russia during some of the events relevant to the charges. It also charges that the alleged conspiracy against the United States extended from about 2006 until 2017, *id.* ¶ 13, which would include the period of Manafort's association with the campaign.

16

Defendant states in his motion that he joined the Trump presidential campaign in March of 2016 and served as its chairman from May to August of 2016. *See* Def.'s Mot. at 10–11, citing Meghan Keneally, *Timeline of Paul Manafort's Role in the Trump Campaign*, ABCNews.com (Oct. 30, 2017) https://abcnews.go.com/Politics/timeline-paul-manaforts-role-trump-campaign/story?Id=50808957.   He describes himself as a political consultant who performed "foreign consulting work in Ukraine."   Def.'s Mot. at 8.   According to press reports predating the Appointment Order and cited by the defendant, Manafort's business dealings in Ukraine connected him to officials at the highest levels of government and business in Russia.

Defendant's main client in Ukraine was former Ukrainian Prime Minister Viktor Yanukovych, who sought defendant's assistance in his effort to be re-elected. *See* Clifford J. Levy, *Toppled in Ukraine but Nearing a Comeback*, N.Y. Times (Jan. 14, 2010), https://www.nytimes.com/2010/01/15/world/europe/15ukraine.html (cited in Def.'s Mot. at 30 n.7) ("Mr. Manafort declined to discuss in detail his relationship with Mr. Yanukovich, but he acknowledged that he was pursuing a classic anti-incumbent strategy.").

Mr. Yanukovych was widely reported to have ties to Russia. *Id.* (reporting that "[i]f Mr. Yanukovich does become president, it will be a victory for the Kremlin" and characterizing him as a "Kremlin stooge"); *see also* Clifford J. Levy, *Ukrainian Prime Minister, Once Seen as Archvillain, Reinvents Himself*, N.Y. Times (Sept. 30, 2007), https://www.nytimes.com/2007/09/30/world/europe/30ukraine.html (cited in Def.'s Mot. at 30 n.7) (reporting that Yanukovych had been considered a "Kremlin pawn"); Barry Meier, *Lawmakers Seek To Close Foreign Lobbyist Loopholes*, N.Y. Times (June 12, 2008), https://www.nytimes.com/2008/06/12/washington/12agent.html (cited in Def.'s Mot. at 30 n.7) (reporting that "[Senator John] McCain and the Bush administration supported the opponent of Mr. Yanukovich, who had close ties to

Vladimir V. Putin, then the president of Russia and now prime minister"); Barry Meier, *In McCain Campaign, a Lobbying Labyrinth*, N.Y. Times (May 25, 2008) https://www.nytimes.com/2008/05/25/us/politics/25davis.html (cited in Def.'s Mot. at 30 n.7) ("Mr. Yanukovich's party was opposed by both the Bush administration and Mr. McCain because it was closely tied to Vladimir Putin.").

It was also publicly reported that defendant was questioned about possible ties to Russia while he was chairman of the Trump campaign. *See* Meghan Keneally, *Timeline of Paul Manafort's Role in the Trump Campaign* (cited in Def.'s Mot. at 10–11) (reporting that while he was chairman of the campaign, defendant was questioned by the media about, and denied any involvement in, changes "to the Republican Party platform in the committee meetings that were held before the convention," including "the softening of language on how the Republican Party treated arms deals with Ukraine and Russia"). Manafort has also done business with, and was sued in New York state court by, an entity owned by Russian billionaire Oleg Deripaska, who reportedly has ties to the Russian president. *See Surf Horizon, Ltd. v. Manafort*, Index No. 650130/2018 (N.Y. Sup. Ct. 2018), Compl. [Dkt. # 1] (alleging fraud and self-dealing after plaintiff gave defendant funds to purchase Ukrainian cable and internet companies); Olivia Beavers, *Russian billionaire sues Manafort for fraud*, The Hill (Jan. 11, 2018), http://thehill.com/homenews/administration/368493-russian-billionaire-sues-manafort-for-fraud.

Given what was being said publicly, the Special Counsel would have been remiss to ignore such an obvious potential link between the Trump campaign and the Russian government. Thus, the indictment falls well within the authority granted to the Special Counsel to conduct the ongoing investigation previously confirmed by the then-Director of the FBI before Congress,

"including . . . any links and/or coordination between the Russian government and individuals associated with the campaign."  Appt. Order ¶ (b)(i).

Manafort points to no legal requirement or Departmental policy, and there is nothing in any statute or the Special Counsel Regulations, that would require the prosecutor to look away if the duly authorized investigation into those links revealed evidence of a crime other than "coordination."  The Appointment Order specifically provided:  "[i]f the Special Counsel believes it is necessary and appropriate, the Special Counsel is authorized to prosecute federal crimes arising from the investigation of these matters."  Appt. Order ¶ (c); *see also* 28 U.S.C. § 515 ("[A]ny attorney specially appointed by the Attorney General under law, may . . . conduct any kind of legal proceeding, civil or criminal, including grand jury proceedings . . . , which United States attorneys are authorized by law to conduct."); 28 C.F.R. § 600.6 ("[T]he Special Counsel shall exercise, within the scope of his or her jurisdiction, the full power and independent authority to exercise all investigative and prosecutorial functions of any United States Attorney.").[10]  Thus, the indictment was authorized by the portion of the Appointment Order that Manafort does not challenge.  Since the investigation into and the indictment for the pending charges fell within the unchallenged first paragraph of the Appointment Order, Manafort's motion to dismiss can be denied for that reason alone.

---

[10]    Defendant also asserts that because the Department "already knew about and had decided not to prosecute" the acts in the indictment "years ago," these matters could not have arisen from the Special Counsel's investigation.  Def.'s Mot. at 2 (emphasis omitted).  But the fact that an indictment was not returned until 2017 does not necessarily mean that the Department of Justice made a decision not to prosecute on some previous occasion; it could be that the investigation was ongoing.  Moreover, a prior decision to put a matter aside would not bar a later prosecution; defendant cites no case law or rule that would make any prior inquiries by law enforcement into defendant's activities legally significant here.  And, of course, the Department could not have known about defendant's alleged false statements in 2016 and 2017 until after they were made.

## II.     The regulations do not create judicially enforceable rights.

Furthermore, Manafort cannot move to dismiss his complaint under the Federal Rules of Criminal Procedure based upon a claimed violation of the Department of Justice Special Counsel Regulations because those regulations are not substantive rules that create individual rights; they are merely statements of internal departmental policy. This is an independent basis to deny his motion.

Agency regulations fall into two distinct categories:  "substantive rules on the one hand and interpretative rules, general statements of policy, or rules of agency organization, procedure, or practice on the other."  *Chrysler Corp. v. Brown*, 441 U.S. 281, 301 & n.30 (1979) (internal quotation marks omitted), citing 5 U.S.C. §§ 553(b), (d).  A substantive or "legislative-type rule" is one that "affect[s] individual rights and obligations," and the Supreme Court has explained that only these types of rules have the force and effect of law.  *Chrysler Corp.*, 441 U.S. at 282, 302*, quoting *Morton v. Ruiz,* 415 U.S. 199, 232, 236 (1974).  Another distinction is that a legislative rule is promulgated in compliance with procedures imposed by Congress, such as requirements for notice and comment set forth in the Administrative Procedure Act.  *See* 441 U.S. at 303.

The Department of Justice was not at all ambiguous about what it was doing when it promulgated the Special Counsel Regulations, and it emphasized that it was not creating a substantive rule.  The Special Counsel Regulations include the explicit admonition that they are "not intended to, do not, and may not be relied upon to create any rights, substantive or procedural, enforceable at law or equity."  28 C.F.R. § 600.10.  Rather, they concern "matters of agency management or personnel" and "agency organization, procedure, or practice."  64 Fed. Reg. at 37,041, citing 5 U.S.C. §§ 552–53.  Accordingly, the agency did not subject the regulations to the rulemaking procedures required by the Administrative Procedure Act ("APA"), such as seeking

notice and comment from the public. *Id.* Further, the Department announced that it was promulgating the regulations pursuant to its authority under 5 U.S.C. § 301. *See id.* at 37,042; 28 C.F.R. § 600. This statute authorizes the head of an Executive department to "prescribe regulations for the government of his department, the conduct of its employees, the distribution and performance of its business," 5 U.S.C. § 301, and it has been described by the Supreme Court as a "housekeeping statute." *Chrysler Corp.*, 441 U.S. at 309. So it is clear that the regulations were not treated as, or intended to be, legislative rules that create substantive rights.

A close review of the regulations reinforces the conclusion that they are internal rules intended solely to guide the Attorney General and other Department personnel. The regulations describe the circumstances that may warrant the appointment of a Special Counsel, the alternatives the Attorney General may consider when those circumstances arise, and the qualifications an individual appointed to serve must bring to the task. 28 C.F.R. §§ 600.1–03. The regulation singled out in Manafort's motion states that the Attorney General will establish a Special Counsel's jurisdiction, and it provides that it will be the Attorney General who will determine whether to grant additional jurisdiction or assign new matters that arise to the Special Counsel or elsewhere within the Department. *Id.* § 600.4; *see* Def.'s Mot. at 5. Other regulations cover operational details such as staffing, the Special Counsel's budget, and notifications and reports to be prepared by the Special Counsel during the investigation. *Id.* §§ 600.5; 600.8. Section 600.7 addresses the manner in which the Special Counsel may be held accountable for compliance with Departmental procedures and ethical rules while still retaining his or her independence, and it specifies the possible bases for discipline or removal. *Id.* § 600.7. Finally, section 600.10 states that the regulations do not create "any rights, substantive or procedural, enforceable at law . . . by any person or entity, in any matter, civil, criminal, or administrative." *Id.* § 600.10.

Courts have held that the type of language used in section 600.10 is effective to disclaim the creation of any enforceable rights.  In *United States v. Lee*, 274 F.3d 485 (8th Cir. 2001), the Court of Appeals for the Eighth Circuit held that the statement in the U.S. Attorney's Manual that the Manual "provides only internal Department of Justice guidance" and "is not intended to, does not, and may not be relied upon to create any rights, substantive or procedural, enforceable at law by any party in any matter civil or criminal" puts criminal defendants "on notice that they lack enforceable rights in [Department of Justice] policies and procedures."  *Id.* at 493, quoting U.S. Attorneys' Manual § 1–1.100; *see also United States v. Blackley*, 167 F.3d 543, 548–49 (D.C. Cir. 1999) ("[V]iolations of Manual policies by DOJ attorneys or other federal prosecutors afford a defendant no enforceable rights."); *United States v. Wilson*, 413 F.3d 382, 389 (3d Cir. 2005) ("Department of Justice guidelines and policies do not create enforceable rights for criminal defendants.").  Consistent with that precedent, the Court finds that the Special Counsel Regulations are internal "rules of agency organization, procedure, or practice," and not substantive rules that affect the rights and obligations of individuals outside the Department.  *See Chrysler Corp.*, 441 U.S. at 301.  The fact that the Special Counsel Regulations govern the Department's internal operations does not mean they confer any rights on a third party to enforce them.

The case law also makes it clear that internal agency regulations that were not required by the Constitution or a statute are not enforceable by the defendant in a criminal prosecution.  *See United States v. Caceres*, 440 U.S. 741, 749–54 (1979) (holding that IRS's violation of internal IRS electronic surveillance regulations did not require the court to suppress a tape recording of a call between the taxpayer and the agency during the taxpayer's trial for bribery); *United States v. Weisz*, 718 F.2d 413, 435 n.137 (D.C. Cir. 1983) (rejecting defendant's suggestion that failure to comply with FBI regulations can require reversal of a conviction).

Despite the disclaimer in section 600.10, defendant argues that he is entitled to seek the dismissal of the indictment based on a claimed violation of the regulations.  He asserts that the Acting Attorney General's appointment authority flows from the regulations, so if the Acting Attorney General exceeded his authority under those regulations, the indictment must be invalid. Def.'s Mot. at 21–22.  In support of this argument, Manafort lifts one sentence from *United States v. Nixon*, 418 U.S. 683 (1974), the case in which the Supreme Court decided that a President's claim of executive privilege could be overcome by a prosecutor's showing of need.  Def.'s Mot. at 22.  In that opinion, the Court stated that the regulation appointing the Watergate Special Prosecutor had "the force of law."  Def.'s Mot. at 22–23, citing *Nixon*, 418 U.S. at 695.  But *Nixon* concerned a different regulation promulgated for a different purpose, and the case does not stand for the proposition that the regulations at issue should be read to confer any enforceable rights on the defendant.

In *Nixon*, the Attorney General had issued a regulation delegating authority to a Special Prosecutor to investigate "all offenses arising out of the 1972 Presidential Election."  418 U.S. at 694 n.8.  As part of his investigation, the Special Prosecutor issued a subpoena to the President for the tape recordings of conversations in the Oval Office, and the President resisted compliance on the basis of executive privilege.  *Id.* at 686–89.  When the Special Prosecutor filed an action to enforce the subpoena in court, the President argued that the court had no jurisdiction to hear the case because the assertion of privilege was an intra-branch dispute between the President and a subordinate involving a political question.  *Id.* at 692–93.  President Nixon also argued that because the Executive Branch has exclusive authority and absolute discretion to decide whether to prosecute a case, the President, as head of the branch, has the final word in determining what evidence is to be used in any particular criminal case.  *Id.*

23

The Supreme Court rejected the President's arguments.  In reaching its decision that the judiciary had the responsibility under the Constitution to decide the question of the availability of the privilege, it began by eschewing the parties' formulations and characterizing the nature of the dispute for itself.  The starting point of the analysis was that the evidence was being sought in connection with a pending criminal prosecution being brought in the name of the United States.  *Nixon*, 418 U.S. at 694.  The Attorney General of the United States had, pursuant to the federal statutes that authorized him to appoint subordinate officials, delegated the authority to represent the United States in that case to the Special Prosecutor.  *Id.*  And given "these specially delegated duties," the regulation gave the Special Prosecutor "explicit power" to address issues unique to "these particular matters," such as "to contest the invocation of executive privilege."  *Id.* at 694–95.[11]  The Court then said, "[s]o long as this regulation is extant, it has the force of law," and the Executive Branch was bound by it.  *Id.* at 695.

The Court likened the case to *United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260 (1954), which involved a regulation issued by the Attorney General delegating his discretionary authority in deportation appeals to the Board of Immigration Appeals.  *Nixon*, 418 U.S. at 695–96.  The Court held in *Accardi* that as long as the regulation delegating authority to the Board remained operative, the Attorney General "denied himself the authority to exercise the discretion delegated to the Board even though the original authority was his and he could reassert it by amending the regulations."  *Id.* at 696.  Applying that reasoning, the Supreme Court concluded that the Executive Branch – and indeed, all three branches of government – were bound to respect and enforce the

---

11    The Court noted that the delegation of authority to the Special Prosecutor was not an "ordinary delegation" by the Attorney General to a subordinate officer, since pursuant to the regulation, the Special Prosecutor could only be removed with the consensus of eight designated members of Congress.  *Nixon*, 418 U.S. at 696.

regulation appointing the Watergate prosecutor unless and until the Attorney General amended or revoked it pursuant to the procedures set forth in the regulation. *Id.* In sum, in this portion of the *Nixon* opinion leading up to the holding in the case,[12] the Court simply stated that the Executive Branch was bound by its own regulation delegating authority to a Special Prosecutor. *Id.* at 695–96. The decision does not address and does not lend any particular support to defendant's argument that internal Departmental regulations may be enforced against the agency by a third party.

Defendant also asserts that the Special Counsel Regulations must be enforceable because they can be found in the Code of Federal Regulations. Def.'s Reply at 12. But there is nothing about the fact of publication alone that would make the regulations actionable in a court of law when they include the express reservation that they do not create enforceable rights. In *In re Grand Jury Subpoena, Judith Miller*, 438 F.3d 1141 (D.C. Cir. 2006), members of the press argued that they could not be held in contempt for refusing to comply with a grand jury subpoena because, among other reasons, the Special Counsel involved in that matter had violated Departmental guidelines for issuing subpoenas to the media. *Id.* at 1152–53. The guidelines were published at 28 C.F.R. § 50.10, but they contained a disclaimer similar to the one at issue here. *Id.* at 1152. The D.C. Circuit noted that the agency was not required by any constitutional or statutory provision

---

12      The Court then found that the dispute over the production of evidence in a criminal case – sought by a duly appointed official within the Executive Branch within the scope of his express authority and resisted by the Chief Executive to preserve the confidentiality of his communications – presented the type of issues that courts are traditionally called upon to resolve. *Nixon*, 418 U.S. at 696–97. The fact that both parties were officials within the same branch was not seen as an impediment to the Court's exercise of its jurisdiction over the concrete controversy. *Id.* And ultimately, the Court ruled that the prosecutor's demonstrated need for the material could overcome the President's claim of privilege, since he had not asserted a need to protect sensitive military or national security secrets and had only expressed a generalized interest in the confidentiality of the recordings. *Id.* at 706–07.

to promulgate the guidelines, 438 F.3d at 1153, and it held that they conferred no rights on the

moving parties:

> [A]s the District Court correctly observed, the guidelines expressly state
> that they do "not create or recognize any legally enforceable right in any
> person." . . . Given the nature of the guidelines themselves, and the function
> they govern, we conclude that the guidelines provide no enforceable rights
> to any individuals, but merely guide the discretion of the prosecutors.

*Id.* at 1152–53, quoting 28 C.F.R. § 50.10(n); *see also id.* (collecting cases that held the same).

Thus, the mere fact that the Special Counsel Regulations were published in the Code of Federal

Regulations does not transform them into substantive rules that the defendant can seek to enforce

here.

Defendant also cites *Larson v. Domestic & Foreign Commerce Corp.*, 337 U.S. 682, 690–

92 (1949), for the principle that "federal courts may enjoin government actions 'in excess of . . .

authority or under an authority not validly conferred.'"  Def.'s Mot. at 4 n.25; Def.'s Reply at 14.

But that case is inapposite because it involved a claim that a government administrator was acting

outside the scope of his statutory authority, not a challenge to the actions of an agency under its

own rules of organization, procedure, or practice.  *See Larson*, 337 U.S. at 690 (stating that it was

"necessary that the plaintiff set out in his complaint the statutory limitation on which he relies").

Finally, defendant points to *In re Espy*, 145 F.3d 1365 (D.C. Cir. 1998) (per curiam).  Def.'s

Mot. at 33–35.  In that opinion, the Court that had appointed an independent counsel to investigate

the then-Secretary of Agriculture declined to grant the counsel's request to expand his jurisdiction

to consider other matters that had been uncovered but were not specifically mentioned in the order

of appointment.  *In re Espy*, 145 F.3d at 1367–68.  Manafort argues that this Court's abstention

from review of the agency's implementation of the Special Counsel Regulations in connection

with his case would mark "a step backwards" from that time:  "[a]t least under the independent

counsel statute, expansions of independent counsels' jurisdiction were reviewable." Def.'s Reply at 13 (emphasis omitted).

But *Espy* involved the Ethics in Government Act, 28 U.S.C. § 591–99, which created the Office of the Independent Counsel and required the Attorney General to apply to a division of the U.S. Court of Appeals for the District of Columbia Circuit to appoint the outside counsel. *See* 145 F.3d at 1366, citing 28 U.S.C. § 592(c)(1)(A). The Act then permitted the independent counsel to ask either the Attorney General or the division of the Court to refer other related matters for investigation. 145 F.3d at 1367, citing 28 U.S.C. § 594(e).

The Ethics in Government Act expired long ago and is not at issue here. More important, what Manafort fails to mention is that the division of the D.C. Circuit stayed its hand in the *Espy* case because the independent counsel's request raised separation of powers concerns. *Espy*, 145 F.3d at 1367–68. The Court agreed with the Attorney General, who opposed the independent counsel's application, that the new referral exceeded the Court's "constitutionally limited authority." *Id.* at 1368, citing *Morrison v. Olson*, 487 U.S. 654 (1988). The Circuit had already ruled in a prior decision in the *Espy* matter that the *Morrison* opinion had limited its power:

> The Supreme Court reminded us in that decision, "constitutional difficulties . . . arise when executive duties of a non-judicial nature are imposed on judges holding office under Article III of the Constitution."

145 F.3d at 1367–68, quoting *In re Espy,* 80 F.3d 501, 507 (D.C. Cir. 1996). Thus, the *Espy* Court was addressing the scope of its own authority, granted by statute, to refer a matter to a Special Prosecutor, and it did not undertake to hear a claim that the Justice Department had made a referral that contravened its internal regulations. So the case does not support Manafort's motion to dismiss.

If anything, the *Espy* decision and its constitutional underpinnings lend support to the government's position: that a court should not inject itself into the Attorney General's assignment of cases or take it upon itself to micromanage the internal case assignment procedures within the Executive Branch. Indeed, *Espy* observed that while the D.C. Circuit's power to expand an independent prosecutor's jurisdiction was limited, the Attorney General's power was not. *See* 145 F.3d at 1367 ("[O]ur power to make such referral is much more limited than the broad referral power of the Attorney General.").

Accordingly, the Court holds that the Department's regulations do not afford defendant grounds to move to dismiss the indictment, and this finding supplies an independent basis to deny defendant's motion.

### III.   The Appointment Order comports with the regulations.

Defendant contends that paragraph (b)(ii) of the Appointment Order, granting jurisdiction to handle "any matters that arose or may arise directly from the investigation," violates section 600.4 of the regulations. Def.'s Mot. at 17–21. But this argument is based upon a misreading of both the regulation and the Appointment Order.[13] So even if a defendant may properly ask a court to enforce the Special Counsel Regulations, they do not provide a basis for dismissing the indictment here.

First, the language in the regulation upon which Manafort relies, 28 C.F.R. § 600.4, does not impose a limit on the Attorney General's statutory power to delegate authority to a Special Counsel as he sees fit, and therefore, the Acting Attorney General did not exceed his authority to define the Special Counsel's jurisdiction when he drafted the order. Second, when Manafort

---

13     Manafort complains that the Appointment Order "purports to give the Special Counsel jurisdiction to investigate and prosecute anything else he might discover during the course of the original investigation," Def.'s Mot. at 2, but that is not what the order says.

complains that paragraph (b)(ii) of the order lacks the necessary specificity, he mistakenly assumes that the Acting Attorney General purported to include that specificity in the order itself.  The public Appointment Order was not meant to be the "specific factual statement of the matter to be investigated" that Manafort insists that the law requires.  *See* Def.'s Mot. at 5–6, citing 28 C.F.R. § 600.4.  The Special Counsel received more precise direction as part of the communication and consultation described in the regulations in their entirety, and it was the Acting Attorney General – as Manafort argues it must be – who made the determination whether to include the particular allegations in the indictment within the Special Counsel's purview or to assign them elsewhere.  Thus, as set forth in this section and section IV below, the regulations were not violated, and the Special Counsel did not exceed the authority he was granted.

### A. The regulations permit a broad grant of authority.

The Acting Attorney General had the authority under the regulations to direct the Special Counsel to investigate issues that "arose" or "may arise directly" out of the investigation into links and/or coordination.  Paragraph (a) of section 600.4 simply states that with respect to "original jurisdiction," "[t]he jurisdiction of a Special Counsel shall be established by the Attorney General." 28 C.F.R. § 600.4(a).  Thus, the regulation contains no limits on the Attorney General's exercise of that discretionary authority.

It is true that paragraph (a) goes on to say that "[t]he Special Counsel will be provided with a specific factual statement of the matter to be investigated."  *Id.*  And paragraph (b) of the regulation then provides:

> If in the course of his or her investigation the Special Counsel concludes
> that additional jurisdiction beyond that specified in his or her original
> jurisdiction is necessary in order to fully investigate and resolve the matters
> assigned, or to investigate new matters that come to light in the course of
> his or her investigation, he or she shall consult with the Attorney General,
> who will determine whether to include the additional matters within the
> Special Counsel's jurisdiction or assign them elsewhere.

28 C.F.R. § 600.4(b).

Manafort posits that it is only paragraphs (b)(i) and (b)(iii) of the Appointment Order that describe the Special Counsel's "original jurisdiction," and he maintains that paragraph (b)(ii) – the grant of authority to pursue matters that arose or may arise from the investigation of matters described in paragraph (b)(i) – should have been treated as "additional jurisdiction" for which additional permission was needed. Def.'s Mot. at 7–8. But there is no legal reason why paragraphs (b)(i), (ii), and (iii) could not together comprise the Special Counsel's "original jurisdiction." 28 C.F.R. § 600.4(a). There is nothing in paragraph (a) of the regulation that purports to place any limits on the scope of the "original jurisdiction" the Attorney General may choose to confer when exercising his statutory authority under 28 U.S.C. § 510 to delegate the functions of the Department of Justice as he or she "considers appropriate." 28 U.S.C. § 510. And 28 U.S.C. § 515(a) specifically permits "any attorney specially appointed by the Attorney General" to "conduct any kind of legal proceeding, civil or criminal, including grand jury proceedings . . . which United States attorneys are authorized by law to conduct." 28 U.S.C. § 515(a). The structure of the regulation does indicate that once the original jurisdiction has been conferred, further delegation is necessary to *expand* that jurisdiction, but it does not require that the original jurisdiction be circumscribed in any particular way in the first place.

Manafort rails against what he characterizes as a "blank check" issued to the Special Counsel to investigate any matters "he may stumble across" in his investigation. Def.'s Mot.

at 2, 20.   He complains that the Appointment Order "purports to give the Special Counsel jurisdiction to investigate and prosecute anything else he might discover during the course of the original investigation."  Def.'s Mot. at 2.  But that is not quite what the order says:  the second paragraph of the Appointment Order was more tightly drafted to include "matters that arose or may arise *directly* from the investigation."  Appt. Order ¶ (b)(ii) (emphasis added).  As the Office of Special Counsel pointed out at the hearing, it was within the Acting Attorney General's discretion, particularly given the conflict of interest that prompted the appointment of the Special Counsel in the first place, to accord the Special Counsel flexibility from the start to manage the investigation and pursue matters that arose "directly" from the issues within his purview.  *See* 28 C.F.R. § 600.1 ("The Attorney General, or in cases in which the Attorney General is recused, the Acting Attorney General, will appoint a Special Counsel when he or she determines that criminal investigation of a person or matter is warranted and . . . investigation or prosecution . . . by a United States Attorney's Office or litigating Division of the Department of Justice would present a conflict of interest for the Department or other extraordinary circumstances" and "it would be in the public interest to appoint an outside Special Counsel to assume responsibility for the matter.").  Thus, the Acting Attorney General was not acting outside of his authority when he drafted the order.

Defendant's effort to distill a set of rigid parameters from a few sentences in one regulation is inconsistent not only with the statute, and with the admonition contained within the regulations that they confer no rights that can be enforced in court, but also with the tenor and objectives of the set of regulations as a whole.  As the notice published in the Federal Register at the time of the promulgation of the regulations emphasizes, the Department understood from the start that there could be no one-size-fits-all template for the management of these matters; the regulations outline processes to preserve both independence and accountability, "recognizing that there is no perfect

solution to the problem." Final Rule, 64 Fed. Reg. at 37,038.  The Appointment Order is thus consistent with the Department's stated intentions.

### B. The Appointment Order is not invalid under the regulations due to a lack of specificity.

Manafort reads the second sentence of paragraph (a) of the regulation concerning the "specific factual statement," together with paragraph (b) concerning "additional jurisdiction," and he argues that anything that was not included within the "specific factual statement" describing the Special Counsel's "original jurisdiction" must be considered to be "additional jurisdiction," which requires a separate, express grant of prosecutorial authority.  That may be the intention of the regulation.[14]   But Manafort's argument that the statement in paragraph (b)(ii) of the Appointment Order is not consistent with the regulation because it is broader than the "specific factual statement" in paragraph (b)(i), *see* Def.'s Mot. at 7, is based on the flawed premise that paragraph (b)(i) of the Appointment Order *was* the "specific factual statement of the matter to be investigated."  That assumption is unfounded.

---

[14]    When it published the regulations, the Department explained with respect to section 600.4 in particular:  "[t]his provision establishes a protocol whereby Special Counsels are provided with an appropriate description of the boundaries of their investigation, with the full recognition that adjustments to that jurisdiction may be required."  Final Rule, 64 Fed. Reg. at 37,039.

Paragraph (b) of the regulation provides a mechanism for addressing those adjustments:

> Rather than leaving the issue to argument and misunderstanding as to whether the new matters are included within a vague category of "related matters," the regulations clarify that the decision as to which component would handle such new matters would be made by the Attorney General. The Special Counsel would report such matters to the Attorney General, and the Attorney General would decide whether to grant the Special Counsel jurisdiction over the additional matters.

*Id.*

The regulation does not require that the "specific factual statement" be set forth in the Appointment Order.  In fact, counsel for Manafort agreed at the hearing on the motion that providing that level of detail in a public document transferring an open criminal investigation would have been entirely inappropriate.  Tr. at 22 (THE COURT:  "[A]bout the provision in the regs that says that a specific factual statement must be provided, the Office of Special Counsel says, given law enforcement concerns and privacy concerns, that militated against doing it publicly.  Do you agree with that?  MR. DOWNING:  I do.").  What paragraph (b)(i) transferred was a specific, existing inquiry that was already underway at the Department of Justice, which neither the FBI Director nor the Acting Attorney General was free to describe publicly.  And if the Manafort allegations fell within that inquiry, they were transferred with the order.  The fact that a 22-page affidavit in support of a search warrant related to Manafort was presented to the United States District Court in the Eastern District of Virginia on May 27, 2017, only ten days after the Appointment Order was issued, suggests that Manafort was already under investigation when the Special Counsel took over the reins.  *See* Search and Seizure Warrant [Dkt. # 257-1].[15]

Manafort maintains, though, that including "matters that arose or may arise" from the transferred investigation within the original grant of authority to the Special Counsel was inconsistent with the provision in the regulation that the original assignment will be accompanied by a specific factual statement of what it entails.  The Acting Attorney General was certainly in a position to inform the new prosecutor of what had already "arisen" in the existing FBI investigation, so there would be no violation of the reference to a "specific factual statement" in the regulation if he did so.  But Manafort makes the point that the Acting Attorney General could

---

15     On July 26, 2017, the FBI executed another search warrant on defendant's home in Alexandria, Virginia.  Search and Seizure Warrant [Dkt. # 264-1].

not possibly have provided a "specific factual statement" of matters that "may arise." One can hardly argue with that. The Court does not agree, though, that the language in the regulation calling for a specific statement operates as a limit on the Acting Attorney General's authority to tell the Special Counsel what he or she may do, and it finds the Appointment Order to be valid as written. But if Manafort is correct that the requirement of a specific statement in paragraph (a) of the regulation means that as-yet-undefined matters can only be treated as "additional jurisdiction," then the question to be resolved in this case is whether the procedure for additional matters outlined in section 600.4(b) took place.

## IV.   The Special Counsel received a specific factual statement of the matters assigned to him, and the Acting Attorney General was the one who decided, as the regulations require, that the Special Counsel's jurisdiction includes the matters in the indictment.

If the defendant is correct that the investigation of his work on behalf of a Ukrainian political party fell outside of the grant of authority to the Special Counsel memorialized in the Appointment Order in paragraph (b)(i), or if a court were to agree that the Acting Attorney General gave the Special Counsel too much leeway in paragraph (b)(ii) to address matters that "may arise" at the start, what the regulations require in the face of new allegations is a specific delegation of those matters to the outside prosecutor. In other words, whether the Special Counsel was acting within his "original jurisdiction," because alleged financial and regulatory violations arising out of Manafort's work on behalf of the Ukraine were assigned to him on day one, or he was considering issues that are better characterized as "additional jurisdiction," the sole purpose of the regulation at the heart of this motion is to ensure that the Acting Attorney General was the one who assigned those issues to the Special Counsel. Since that took place in this case with respect to the specific allegations in this indictment, and the Special Counsel did not take them up on his

own initiative, the assignment of these issues was consistent with the regulations, and the Special Counsel did not exceed his authority.

The gravamen of Manafort's motion is his contention that the Special Counsel has embarked on an unfettered and unsupervised investigation, and that the inquiry should have been cabined by a specific factual statement delivered by the Acting Attorney General at the outset. But the Acting Attorney General has stated publicly in sworn testimony that he did discuss the facts under investigation with the Special Counsel at the time of the appointment. Testimony of Deputy Attorney General Rod Rosenstein, House Committee on the Judiciary, Hearing on Justice Department's Investigation of Russia's Interference in the 2016 Presidential Election (Dec. 13, 2017), Ex. B to Gov't Opp. [Dkt. # 244-2] at 29. The notion that this formal passing of the baton included an investigation into Manafort is borne out by the fact that the FBI was taking significant investigative steps related to Manafort within a very short period of time after the Special Counsel was appointed.

Furthermore, the Acting Attorney General has memorialized the fact that the Special Counsel's jurisdiction included the matters in the indictment as of the day of his appointment and thereafter. In an August 2, 2017 memorandum to the Special Counsel, the Acting Attorney General detailed the particular responsibility assigned to the Special Counsel on May 17, 2017. With respect to Manafort, the memorandum stated, *inter alia*:

> The May 17, 2017 order was worded categorically in order to permit its public release without confirming specific investigations involving specific individuals. This memorandum provides a more specific description of your authority. The following allegations were within the scope of the investigation at the time of your appointment and are within the scope of the Order.
>
> * * *

- Allegations that Paul Manafort:

  o Committed a crime or crimes by colluding with Russian government officials with respect to the Russian government's efforts to interfere with the 2016 election for President of the United States, in violation of United States law;

  o Committed a crime or crimes arising out of payments he received from the Ukrainian government before and during the tenure of President Viktor Yanukovych;

  * * *

  You therefore have authority to continue and complete the investigation of those matters, and additional matters described in 28 C.F.R. § 600.4(a). For additional matters that otherwise may have arisen or may arise directly from the Investigation, you should consult my office for a determination of whether such matters should be within the scope of your authority.

Aug. 2 Mem. at 1–3.[16]  Much of the memorandum is redacted, reflecting the fact that unlike the

Appointment Order, it was not worded broadly for public release.  The unredacted portions of the

memorandum state explicitly, though, that the Special Counsel was authorized from the start to

investigate the defendant not only for coordinating with the Russian government, but also for

violations of law arising out of payments received from the former President of Ukraine.  So even

in the unlikely event that the Acting Attorney General and the Special Counsel never discussed

what the investigation included at the time of the appointment, the singular event that defendant

---

16      Manafort submits that the August 2 memorandum is not likely to have been the only written record bearing on the nature and progress of the ongoing investigation, and he maintains that he is entitled to discover all of the records related to what was transferred to the Special Counsel.  Tr. at 23.  But the Court has sufficient information before it to rule on the questions presented by the motion, and defendant has not pointed to circumstances that would justify an order that more of the Department's internal communications should be revealed.  As noted above, the regulations that are the sole basis for the motion to dismiss address the internal management of a highly sensitive, ongoing criminal investigation, and they do not include a procedure for the Court to intercede.

insists would be necessary to make his indictment valid – an explicit referral of the specific matter to the Special Counsel – has taken place.

For all of these reasons, the motion to dismiss [Dkt. # 235] is DENIED.[17]

SO ORDERED.

AMY BERMAN JACKSON
United States District Judge

DATE:  May 15, 2018

---

[17]    Because the Court holds that the Appointment Order and the prosecution were properly authorized, the Court need not go on to address defendant's argument that the indictment is invalid because the Special Counsel had no authority to sign it.  *See* Def.'s Mot. at 21–31.  In any event, the Acting Attorney General had statutory authority to appoint the Special Counsel under 28 U.S.C. § 515, and any error defendant alleges in assigning the matter to the Special Counsel does not deprive this Court of jurisdiction.  *See* 18 U.S.C. § 3231; *United States v. Fahnbulleh*, 752 F.3d 470, 476 (D.C. Cir. 2014), quoting *United States v. George*, 676 F.3d 249, 259 (1st Cir. 2012) ("[I]f an indictment or information alleges the violation of a crime set out in Title 18 or in one of the other statutes defining federal crimes, that is the end of the jurisdictional inquiry.").