**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **UNITED STATES OF AMERICA** | |
| **v.** | **Crim. No. 17-201-1 (ABJ)** |
| **PAUL J. MANAFORT, JR.,** | ***EX PARTE* AND UNDER SEAL** |
| **Defendant.** | |

**GOVERNMENT'S MOTION FOR LEAVE TO FILE**
**A SUPPLEMENTAL RESPONSE TO DEFENDANT'S MOTION FOR**
**RECONSIDERATION OF CONDITIONS OF RELEASE WITHIN TEN DAYS**
**AND FOR LEAVE TO FILE DOCUMENTS UNDER SEAL**

The United States of America, by and through Special Counsel Robert S. Mueller, III, respectfully moves for (1) leave to file a supplemental response to defendant Paul J. Manafort, Jr.'s pending motion for reconsideration of the conditions of his release (Doc. 291) within ten days from this date, and (2) for leave to file under seal this motion and the attached documents in support of this motion.

On May 17, 2018, the government filed its response (Doc. 304) to Manafort's motion for reconsideration of the conditions of his release.  The government's filing indicated, based on information available to the government at that time, that it did not oppose Manafort's renewed motion subject to various conditions.  The government submitted that certain property owners should be interviewed and should receive admonitions commonly given to sureties in this circumstance.  The following day, May 18, 2018, the Court ordered the government to conduct such interviews, and ordered Manafort to file his reply to the government's proposal, by today— *i.e.*, May 25, 2018.

The government has no objection to the sureties proposed by the defendant.  However, as discussed in the declaration submitted in connection with this motion, the government has recently

obtained information that has caused it to reconsider its prior conditional consent to Manafort's

motion.  During the next ten days, the government anticipates taking additional investigative steps

pertinent to the investigation.  To the extent that Manafort completes his bail paperwork sooner

than the requested ten-day period, the government would request an opportunity to be heard to

apprise the Court of matters pertinent to its final bail decision.

Furthermore, sealing of this motion and the attached pleadings is appropriate because the

matter discussed herein is under active investigation and the public disclosure of the information

discussed in these pleadings could interfere with that investigation.

Accordingly, the government requests that the Court grant leave to file a supplemental

response to defendant's motion for reconsideration of conditions of release, and that the Court

grant leave to file this motion and its attached declaration and exhibits under seal.  Counsel for

defendant Manafort has not been apprised of this investigation and thus the government has not

sought his consent to this application.  A proposed Order is attached to this motion.

Respectfully submitted,

ROBERT S. MUELLER III
Special Counsel


Dated: May 25, 2018          By:     /s/ Andrew Weissmann_____
                                      Andrew Weissmann
                                      Greg D. Andres (D.D.C. Bar No. 459221)
                                      Senior Assistant Special Counsels
                                      U.S. Department of Justice
                                      Special Counsel's Office
                                      950 Pennsylvania Avenue NW
                                      Washington, DC 20530
                                      Telephone: (202) 616-0800

                                      *Attorneys for the United States of America*

| | |
|---|---|
| UNITED STATES OF AMERICA | |
| v. | **Crim. No. 17-201-1 (ABJ)** |
| PAUL J. MANAFORT, JR., | *EX PARTE* **and UNDER SEAL** |
| Defendant. | |

## DECLARATION IN SUPPORT OF THE GOVERNMENT'S MOTION FOR LEAVE TO FILE A SUPPLEMENTAL RESPONSE TO DEFENDANT'S MOTION FOR RECONSIDERATION OF CONDITIONS OF RELEASE WITHIN TEN DAYS AND FOR LEAVE TO FILE DOCUMENTS UNDER SEAL

I, Brock W. Domin, hereby state as follows:

## I. INTRODUCTION

### A. Affiant

1.  I am a Special Agent with the Federal Bureau of Investigation ("FBI") working directly with the Special Counsel's Office. I have been a Special Agent with the FBI since 2015. I have training and experience related to national security investigations, as well as federal financial crimes. Prior to my employment with the FBI, I spent seven years in the software industry and have extensive experience working with computer technology.

2.  I make this declaration in support of the government's motion for leave to file a supplemental response to defendant's motion for reconsideration of conditions of release within ten days and for leave to file documents under seal. This affidavit is based upon my personal knowledge, my review of documents and other evidence, my conversations with other law enforcement personnel, and my training and experience. Where the contents of documents or the

statements and conversations of others are reported herein, they are reported in substance and in pertinent part, except where otherwise indicated.

**B. Background**

3.    The government has recently discovered evidence that Manafort has attempted to influence the testimony of witnesses and therefore may have committed obstruction of justice while under home confinement, in violation of title 18, U.S.C. section 1512.  The government is actively investigating this matter.

4.    On October 27, 2017, Manafort was first indicted by a grand jury sitting in this District of nine counts, including conspiracy, conspiracy to launder money, failure to file reports of foreign bank accounts, making false and misleading statements, and acting as an unregistered agent of a foreign principal.  On Monday, October 30, 2017, Manafort was permitted to surrender to the government, and, following an arraignment, was, upon the parties' consent, ordered released to this Court's high-intensity supervision program and subjected to conditions of home confinement.  *See* Doc. No. 9 (attached hereto as Ex. A).  The order releasing Manafort to home confinement, signed by Manafort, informed Manafort that he was "not to commit any criminal offense nor violate any condition of this release order – a rearrest for any offense based upon probable cause may be grounds for revoking your release."  *Id*., at p. 2.

5.    On February 23, 2018, the Grand Jury publicly returned the operative Superseding Indictment of Manafort.  As relevant here, the Superseding Indictment included new allegations concerning a part of Manafort's lobbying scheme that is alleged to have violated the Foreign Agents Registration Act (FARA).  Informally referred to by Manafort and his co-conspirators as the "Hapsburg" Group, this part of the United States lobbying scheme involved the secret retention of a group of former senior European politicians who would act as third-party paid lobbyists for

Ukraine. Manafort was alleged to have funneled to the Hapsburg Group more than 2 million euros from overseas accounts he controlled. *See* Superseding Indictment of February 23, 2018, ¶¶ 30–31, ECF No. 202.

## II.

### A. **The "Hapsburg" Group**

6. As part of its ongoing investigation, the government identified a public relations firm—called "Company D" in what follows—and two principals at that firm (called Persons "D1" and "D2") who communicated with Manafort, Gates, and Person A, as well as individuals at Law Firm A, Company A, Company B, and Ukrainian government personnel, among others.

7. As referenced in the Superseding Indictment, in late 2011, Manafort, with Person D1, developed what became the Hapsburg Group. Manafort proposed the project to the Ukraine government in the "Eyes Only" memorandum excerpted in the Superseding Indictment. *See*, *e.g.*, Superseding Indictment of February 23, 2018, ¶ 31.

8. Person D1 has told the government that Manafort wanted the Group to remain "under the radar," and that the Group would speak as ostensible third-party endorsers on behalf of Ukraine, but the fact that they were paid millions of euros would be kept secret. Manafort, with the assistance of Person D1, chose people who could be discreet. In or about June 2012, Person D1 wrote a memorandum to Manafort describing a group of "third-party champions on Ukraine," which Person D1 described as a "small chorus of high-level European third-party endorsers and politically credible friends who can act informally without a formal government relationship . . . ." In this memorandum, Person D1 described a phone call with a former politician who would eventually become the head of the Hapsburg Group, during which the head proposed the "idea of

3

what he called 'underground commenting.'"  Person D1's memorandum to Manafort is attached hereto as Exhibit B.

9.      As alleged, the government has developed substantial evidence showing that the Hapsburg Group performed a variety of public relations and lobbying tasks in the United States, including the dissemination of ghostwritten articles in the American press and the arrangement of meetings with politicians and members of the Executive Branch (in coordination with Companies A and B), among other things.

**B.  Efforts to Contact Persons D1 and D2**

10.      Documents produced by Persons D1 and D2, statements made by Person D1 to the government, and documents recovered pursuant to a court-authorized search of Manafort's iCloud account evidence that Manafort, while on bail from this Court, and with the assistance of Person A, contacted and attempted to contact Persons D1 and D2 in an effort to influence their testimony and to otherwise conceal evidence.  The investigation into this matter is ongoing.[1]

11.      On February 24, 2018—the day after the Superseding Indictment of Manafort describing the Hapsburg Group was publicly filed—Manafort sent Person D1 the message "This is paul."  On February 26, 2018, Manafort sent Person D1 a series of encrypted messages using an application on his phone.  The encrypted messages read as follows:

- **23:56:** http://www.businessinsider.com/former-european-leaders-manafort-hapsburg-group-2018-2?r=UK&IR=T
- **23:57:** We should talk. I have made clear that they worked in Europe.

Person D1 has provided the government screen shots that Person D1 took contemporaneously of these messages.  The government confirmed that these messages were sent by Manafort pursuant

---

[1] Person D1 provided the text messages described below on May 12, 2018, and Person D2 provided the content of the text messages described below on May 21, 2018.

to a court-authorized search of Manafort's iCloud account. Information contained in Manafort's iCloud account further indicates that Manafort attempted to call Person D1 from the same encrypted application on February 27, 2018.

12. The web address included in Manafort's "23:56" message contains an article describing the Superseding Indictment and its inclusion of allegations concerning the Hapsburg Group and its work in the United States. *See* Michael Kranz, *Former European leaders struggle to explain themselves after Mueller claims Paul Manafort paid them to lobby for Ukraine*, Business Insider (Feb. 25, 2018), *available at* http://www.businessinsider.com/former-european-leaders-manafort-hapsburg-group-2018-2?r=UK&IR=T (attached hereto as Exhibit C) ("According to Mueller's indictment, two European politicians were secretly paid around €2 million by Manafort in order to 'take positions favorable to Ukraine, including by lobbying in the United States.'")

13. During this period, on February 28, 2018, Person A separately contacted Person D2 via an encrypted messaging application. Person D2 was known to Manafort and Person A as a key associate of Person D1. Person D2 worked on press strategy for the Hapsburg Group, and did work on behalf of Ukraine in the United States and Europe. Person A's texts to Person D2 read as follows:

- 01:49: [Person D2], hi! How are you? Hope you are doing fine. ;))
- 01:51: My friend P is trying to reach [Person D1] to brief him on what's going on.
- 01:51: If you have a chance to mention this to [Person D1] - would be great.
- 01:53: Basically P wants to give him a quick summary that he says to everybody (which is true) that our friends never lobbied in the US, and the purpose of the program was EU

Approximately five hours later, Person A switched to another encrypted application and sent a similar series of messages to Person D2. Person D2 provided these texts to the government through counsel.

14.     Approximately one month later, Person A reached out to Person D1 directly as well. On April 4, 2018, Person A sent a message to Person D1: "Hi. This is [Person A's first initial]. My friend P is looking for ways to connect to you to pass you several messages. Can we arrange that." Person A reached out to Person D2 the same day, and reiterated his need for help in connecting Person D1 with Manafort. Person A added in his text to Person D2: "I tried him [*i.e.*, Person D1] on all numbers." A timeline summarizing the above-described communications is attached hereto as exhibit D.

15.     Person D1 told the government that Person D1 understood Manafort's messages to be an effort to "suborn perjury" by influencing Person D1's potential statements to United States investigators. Person D1 well knew and believed from frequent interactions with its members, that the Hapsburg Group in fact lobbied in the United States, and that Manafort and Person A knew that fact.

### III. CONCLUSION

16.     The government is actively investigating the evidence regarding Manafort and obstruction of justice while under home confinement, in violation of title 18, U.S.C. section 1512. I submit that there are pending investigative inquiries whose completion could be jeopardized by disclosure, and the outcome of which could be relevant to the Court's determination regarding bail herein.

Respectfully submitted,


5/25/18_____                    /s/ Brock W. Domin_____
Date                                Brock W. Domin
                                    Special Agent
                                    Federal Bureau of Investigation

# EXHIBIT A

## UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA

United States of America

Docket No.: CR17-201-1

v.

PDID: _

PAYL MANAFORT

| Name | Address | Telephone Number |

## RELEASE TO PSA'S HIGH INTENSITY SUPERVISION PROGRAM **FILED**
(REVISED 8/1/11)

YOU ARE HEREBY RELEASED ON THE CONDITIONS INDICATED BELOW. THESE CONDITIONS WILL BE IN EFFECT
UNTIL YOUR CASE IS COMPLETED OR UNTIL THEY ARE CHANGED OR AMENDED BY A JUDICIAL OFFICER. 2017

Clerk, U.S. District and
Bankruptcy Courts

**REPORT FOR PROGRAM ORIENTATION AND COMMENCEMENT OF SUPERVISION AND**
**ELECTRONIC MONITORING ON** 10/31/17 **AT** 10:00 Am
**AT 633 INDIANA AVENUE, NW, 10TH FLOOR, SUITE 1020, WASHINGTON, DC.**

| | |
|---|---|
| **Community Supervision** <br> ( ) | You have been placed into the High Intensity Supervision Program of the Pretrial Services Agency (PSA) and you are to follow all of the rules, regulations, and requirements of the Program as listed in your orientation contract, which is incorporated herein by reference. You are to maintain reporting requirements as directed by PSA, abide by an electronically-monitored curfew (10 pm until 6 am, unless changed by PSA or the Court), abide by all stay away orders, participate in all drug testing/drug program requirements, and abide by all other conditions imposed by the Court and as directed by PSA. Failure to refrain from illegal drug use or to comply with your drug testing condition will result in an assessment for your placement into the Sanction-Based Treatment Program. A violation of your stay away order will result, at a minimum, in your placement in Home Confinement pending an expedited Court hearing. Any other violation of your program requirements will subject you, at a minimum, to the administrative sanctions listed on the reverse side of this order, which include placement in Home Confinement. <br> YOU WILL BE SUPERVISED BY A TYPE OF ELECTRONIC MONITORING DEVICE AS TO BE DETERMINED BY PSA. YOU ARE REQUIRED TO PROPERLY MAINTAIN AND CHARGE THE MONITORING DEVICE EACH DAY. ANY ATTEMPT TO TAMPER WITH OR MASK THE DEVICE'S MONITORING CAPABILITY MAY RESULT IN AN ADDITIONAL CRIMINAL CHARGE. |
| **Home Confinement** <br> (X) | In addition to the Community Supervision requirements listed above, you are to maintain a 24-hour curfew at the address above for the initial 21 days of Program participation. You may not leave that address without pre-approval from PSA. Upon successful completion of the Home Confinement Phase, you will be placed into the Community Supervision Phase of the Program, unless the Court has ordered otherwise. Any violation of your program requirements will result, at a minimum, in an extension of your 24-hour curfew. Failure to refrain from illegal drug use or to comply with your drug testing condition will result in an assessment for your placement into the Sanction-Based Treatment Program. A violation of your stay away order will, at a minimum, result in continued Home Confinement pending an expedited Court hearing. |
| **STAY AWAY** | ✗ Deft also allowed to leave home for religious services. <br> You are to stay away from: ✗ Deft to report daily by telephone. <br> If PSA has reason to believe that you have violated a stay away condition, you will be placed immediately into Home Confinement and PSA will request that the Court conduct an expedited hearing to address that alleged violation. |
| **OTHER** | Defendant on permanent home confinement (except for visits with attorneys, court, or medical emergencies. Do not apply for passport while on release. No travel outside of the DC area. |
| **NEXT DUE BACK** | On 11/2/17 in courtroom 3 at 2:00pm. <br> am/pm. If you have any questions about the date, time or location, call the Pretrial Services Agency at (202) 220-5530. | Your Attorney: <br> Kevin Downing <br> 202 754 1990 |

**IMPORTANT:** YOU MUST MAINTAIN YOUR RESIDENCE AT THE ADDRESS YOU PROVIDED ABOVE. YOU CANNOT CHANGE YOUR RESIDENCE WITHOUT PRIOR NOTIFICATION TO AND THE APPROVAL OF THE COURT OR THAT THE PRETRIAL SERVICES AGENCY. YOU MUST IMMEDIATELY NOTIFY PSA OF ANY CHANGE OF EMPLOYMENT OR OTHER CHANGE THAT MAY IMPACT ANY OTHER RELEASE CONDITION.

Defendant's Signature _Paul Manafort_

*"I understand the penalties that may be imposed on me for willful failure to appear, for violation of any conditions of release, and I agree to comply with the conditions of my release and to appear as required."*

Witnessed by: _SDA_

(title or Agency) _PSA_

SO ORDERED:

Date 10/30/17

Signature of Judicial Officer

**YOU ARE NOT TO COMMIT ANY CRIMINAL OFFENSE NOR VIOLATE ANY CONDITION OF THIS RELEASE ORDER - A REARREST FOR ANY OFFENSE BASED UPON PROBABLE CAUSE MAY BE GROUNDS FOR REVOKING YOUR RELEASE**

1. It is a criminal offense under 18 U.S.C. § 3146 if you the defendant, after having been released, knowingly fail to appear as required by the conditions of release or to surrender for the service of a sentence pursuant to a court order. If you were released in connection with a charge of, or while awaiting sentence, surrender for the service of a sentence, or appeal or certiorari after conviction, for:

    a) an offense punishable by death, life imprisonment or for a term of fifteen years or more, you shall be fined not more than $25,000 or imprisoned for not more than ten years, or both;

    b) an offense punishable by imprisonment for a term of five years or more, you shall be fined not more than $10,000 or imprisoned for not more than five years, or both;

    c) any other felony, you shall be fined not more than $5,000 or imprisoned for not more than two years, or both;

    d) a misdemeanor, you shall be fined not more than $2,000 or imprisoned for not more than one year, or both.

**A TERM OF IMPRISONMENT IMPOSED FOR FAILURE TO APPEAR OR SURRENDER SHALL BE CONSECUTIVE TO THE SENTENCE OF IMPRISONMENT FOR ANY OTHER OFFENSE.**

2. The commission of any offense while on pretrial release may result in an additional sentence upon conviction for such offense to a term of imprisonment of not more than ten years, if the offense is a felony; or a term of imprisonment of not more than one year, if the offense is a misdemeanor. **This sentence shall be consecutive to any other sentence and must be imposed in addition to the sentence received for the offense itself.**

**ADMINISTRATIVE SANCTIONS FOR VIOLATIONS OF THE RULES AND REQUIREMENTS OF THE HIGH INTENSITY SUPERVISION PROGRAM**

The Court has placed you in the High Intensity Supervision Program administered by the Pretrial Services Agency (PSA). You will be assigned to a Pretrial Services Officer and you will receive an orientation as to the rules, regulations, and other requirements of the High Intensity Supervision Program. You will be given a contract outlining these rules, regulations, and other requirements of the Program and will also receive other orientation documents and directions for maintaining and charging the electronic monitoring device that PSA will utilize for supervising your conditions of release. You must sign the contract indicating you will abide by the rules, regulations, and requirements of the Program.

As noted above, any violation of any of your conditions of release may result in a warrant for your arrest, revocation of your release, an order for your detention, and/or prosecution of you for contempt of Court pursuant to 18 U.S.C. § 1348. In addition, PSA may impose the following sanctions for violating any conditions of release or of the rules, regulations, or other requirements of the Program:

If you have been placed in the COMMUNITY SUPERVISION PHASE of the Program, ANY violation of the rules, regulations, or other requirements of the Program will subject you, depending upon the nature of the violation, to one of the following sanctions: more restrictive curfew hours; an increase in reporting requirements; and/or placement in the Home Confinement Phase of the Program for up to 21 days or longer. Subsequent violations could result in an immediate notification to the Court with a request that a hearing be held to consider revocation of your release conditions.

If you have been placed in the HOME CONFINEMENT PHASE of the Program, ANY violation of the rules, regulations, or other requirements of the Program will subject you to continued placement in the Home Confinement Phase of the Program for additional periods of time up to continuous Home Confinement. In addition, immediate notification will be made to the Court of your violation, which could include a request that a hearing be held to consider revocation of your release conditions.

Throughout your participation in the High Intensity Supervision Program, PSA will submit to the Court cumulative weekly reports regarding any violations of the rules, regulations, and requirements of the Program. As noted above, if you have been placed in Home Confinement, PSA will notify the Court immediately of each violation that you commit.

GPO U.S. GOVERNMENT PRINTING OFFICE: 2014-385-832

# EXHIBIT B

CONFIDENTIAL

10 June 20112

**Memo for Paul Manafort**

**From: Alan**

**Subject:  Revised Network Idea for 2012 Involving Third-Party Champions on Ukraine Electoral and Economic Reforms**

1. **Purpose**

   To begin to assemble a small chorus of high-level European third-party endorsers and politically credible friends who can act informally and without a formal government relationship between now and the end of the year.  These persons could then become a more formal International Advisory Board starting in January 2013. Their value would be as much after the October election as before.

2. **Structure and Fees**

   Led by former Chancellor Alfred Gusenbauer of Austria, the other former leaders from Germany, Spain, Italy and France would have a private sector or NGO relationship, even disbursed via the Chancellor himself for us so as to be quite indirect.  Alfred Gusenbauer is willing to be discreet.   In a just concluded telephone conversation today, he understood completely and embraced the idea of what he called "underground commenting" and said he would do it on a monthly budget that is pro-rated from or similar to his annual fees (that would amount to €30k a month).  Even if we pushed him down a bit to €25k a month, that would mean that if we engaged him from July through December it would be €150k.  My view is that this is a very good investment.

   For others, they could be taken on in different ways via Speaker's Fees and Election Observer or other consulting fees and such in the September-December period, and that would cost for that period €50k to €100k each depending on how much we use them. Again, depending on the stature and nationality of the people we engage, if they were willing these would represent modest costs. A hypothetical total would be Alfred Gusenbauer plus 2 others = €150,000 (6 mos) + €100,000 (4 mos)  x 2 = Total potential of €350,000

1

3. **Key Participants**

They have not been spoken to but represent the initial talent pool Alfred and I would canvass informally if you approve.

- AUSTRIA Chancellor **Alfred Gusenbauer** (Social Democrat, former Chancellor of Austria).
- ITALY Former Prime Minister **Romano Prodi,** or former Trade Minister Adolfo Urso of Italy or similar. TBD, but we are confident we can assist on Italian.
- BELGIUM Judge **Jean-Paul Moerman**, veteran and respected center-right member of the Constitutional Court of Belgium, soon to be named its head. A legal expert who has served previously on a human rights international panel in Azerbaijan, we think we could engage him on a spot basis.
- GERMANY **Bodo Hombach** Former European troubleshooter, SPD minister to Gerhard Schroeder, Head of the Federal Chancellory, supervisor of the Balkans stability pact and now influential publishing boss.(see links below)
- SPAIN **Javier Solana**. Former NATO head, and EU Foreign Affairs Spokesman and respected man for all seasons in Europe.
- FRANCE  The Chancellor prefers to wait for the French parliamentary elections to conclude this month so we can verify who is in and who is out of politics. For example, if we wanted Alain Minc, former Sarkozy top adviser, or Alain Juppe, former Prime Minister and Foreign Minister, or  others, we would have to wait to see if they are active opposition politicians or backbenchers or out of politics later in June.
- Although his appointment as European Parliament official to monitor the Tymo trial would prevent Aleksander Kwaśniewski from any formal activity, Chancellor Gusenbauer will meet him June 29th and probe with him the idea of him joining a more formal Advisory Panel in 2013, and in the meantime whether he might feel comfortable with some conference appearances and/or joint op-ed with Chancellor Gusenbauer in the next few months.

On Hombach please see:

http://en.wikipedia.org/wiki/Bodo_Hombach

http://www.economist.com/node/186932

4. **Work To Be Undertaken**

Mission Statement:  To take direction from us informally and via Alfred, to speak out in the European media and to write and publish occasional op-eds and to appear at select conferences we stage in Rome, Berlin or Brussels before and after the election of October, and if desired, to serve as a prestige international observer during the election.  To essentially promote the idea of a Ukraine that is closer to Europe than to Russia and to recognise its path toward electoral and economic

2

reforms. Perhaps to write and announce a report examining the Electoral Law in terms of transparency, to emerge before or after the election this autumn.

CONFIDENTIAL

AGF_016093.003

# EXHIBIT C

# Former European leaders struggle to explain themselves after Mueller claims Paul Manafort paid them to lobby for Ukraine



**Michal Kranz**
Feb. 25, 2018, 5:49 PM



Paul Manafort. *Drew Angerer/Getty*

- **President Donald Trump's former campaign manager Paul Manafort was charged on Friday with paying European leaders to lobby of behalf of Ukraine, special counsel Robert Mueller alleged.**
- **The leaders in question, who include former leaders of Austria and Italy, have denied any wrongdoing.**
- **The leaders were allegedly part of a lobbying group called the Hapsburg Group.**

---

*Sign up for the latest Russia investigation updates here.*

Following special counsel Robert Mueller's newest indictment on Friday of President Donald Trump's former campaign manager Paul Manafort, two former European leaders were shocked to find their names mentioned in the indictment documents, claiming they'd done nothing wrong, according to the New York Times.

According to Mueller's indictment, two European politicians were secretly paid around €2 million by Manafort in order to "take positions favorable to Ukraine, including by lobbying in the United States," the Times reported. This money was paid during a period when former Ukrainian President Viktor Yanukovych was inching closer to Europe on several issues. He eventually changed course however, and was ousted in a pro-Western revolution in Ukraine in 2014.

The group of politicians who were allegedly paid by Manafort were known as the Hapsburg Group, a reference to the famous Austrian imperial dynasty.

Although the indictment documents did not name the leaders, the former Prime Minister of Italy Romano Prodi stated in an interview on Saturday that he and former Austrian Chancellor Alfred Gusenbauer were the leaders mentioned.

But Prodi said he was not aware that the funds Gusenbauer had paid him had come from Manafort, and were part of "normal private relations I had with him," and was "not any money from external sources."

"I tell you I have never been paid from any lobby group in America," Prodi added.

According to the Times, Prodi and Gusenbauer had both long believed that closer ties between Ukraine and the European Union were a good thing.

"I always had the point of view that it was important to move Ukraine closer to Europe," Gusenbauer told the BBC in a statement. "It would have been extremely positive if Ukraine could have agreed" to closer ties, he said. "I was talking to E.U. and U.S. politicians to make that point clear... I stopped this activity when I had the impression that Ukraine was moving in the wrong direction."

## A trans-Atlantic charade

Mueller's documents claim that the group had strategized to "appear to be providing their independent assessments of Government of Ukraine actions, when in fact they were paid lobbyists for Ukraine," according to the Times.



Ukrainian President Viktor Yanukovych (L) gives a wink to his Russian counterpart Vladimir Putin during a signing ceremony after a meeting of the Russian-Ukrainian Interstate Commission at the Kremlin in Moscow, December 17, 2013. REUTERS/Sergei Karpukhin

Gusenbauer did admit that he had been paid for working on behalf of Ukraine, but did not divulge by whom. According to filings made by Mercury Public Affairs, a political strategy group contracted by Manafort, the former chancellor had met with several members of Congress in 2013 to lobby for Ukraine.

The Podesta Group, a Washington lobbying firm formerly run by the brother of the former chairman of the 2016 Democratic presidential campaign John Podesta, also reportedly "arranged meetings and media opportunities" for a group of visiting European leaders working on the Ukraine issue that included Prodi and Gusenbauer. Prodi however has denied membership in this group, and stated that Gusenbauer headed it.

Last year, Manafort and his former deputy Rick Gates had been indicted on 12 charges related to money laundering, tax fraud, failure to register as foreign agents, and conspiracy against the United States.

But on Thursday, Gates and Manafort were handed a superseding indictment that replaced the original 12 charges with a fresh set of 35 charges related to tax and bank fraud. Mueller's indictment document alleges that Gates and Manafort set up offshore bank accounts that they then failed to disclose to the proper authorities, and laundered over $75 million through these accounts. Friday's indictment was placed on top of these existing charges.

# EXHIBIT D

| Date/Time | From | To | Method | Type | Content | Source |
|---|---|---|---|---|---|---|
| 2/24/2018; 15:53 | Paul Manafort | Alan Friedman | WhatsApp | Chat | This is paul | Friedman Production; Manafort iCloud Production |
| 2/26/2018; 23:56 | Paul Manafort | Alan Friedman | WhatsApp | Chat | http://www.businessinsider.com/former-european-leaders-manafort-hapsburg-group-2018-2?r=UK&IR=T | Friedman Production; Manafort iCloud Production |
| 2/26/2018; 23:57 | Paul Manafort | Alan Friedman | WhatsApp | Chat | We should talk. I have made clear that they worked in Europe. | Friedman Production; Manafort iCloud Production |
| 2/27/2018; 11:03 | Paul Manafort | Alan Friedman | WhatsApp | Phone Call | Attempted phone call - No duration | Manafort iCloud Production |
| 2/28/2018; 01:49 | Konstantin Kilimnik | Eckart Sager | WhatsApp | Chat | Eckart, hi! How are you? Hope you are doing fine. ;)) | Sager Production |
| 2/28/2018; 01:51 | Konstantin Kilimnik | Eckart Sager | WhatsApp | Chat | My friend P is trying to reach Alan to brief him on what's going on. | Sager Production |
| 2/28/2018; 01:51 | Konstantin Kilimnik | Eckart Sager | WhatsApp | Chat | If you have a chance to mention this to Alan - would be great | Sager Production |
| 2/28/2018; 01:53 | Konstantin Kilimnik | Eckart Sager | WhatsApp | Chat | Basically P wants to give him a quick summary that he says to everybody (which is true) that our friends never lobbied in the US, and the purpose of the program was EU | Sager Production |
| 2/28/2018; 06:01 | Konstantin Kilimnik | Eckart Sager | Telegram | Chat | Hey, how are you? This is K. | Sager Production |
| 2/28/2018; 06:01 | Konstantin Kilimnik | Eckart Sager | Telegram | Chat | Hope you are doing fine. | Sager Production |
| 2/28/2018; 06:01 | Konstantin Kilimnik | Eckart Sager | Telegram | Chat | My friend P is trying to reach Alan to brief him on what's going on | Sager Production |
| 2/28/2018; 06:02 | Konstantin Kilimnik | Eckart Sager | Telegram | Chat | Basically P wants to give him a quick summary that he says to everybody (which is true) that our friends never lobbied in the US, and the purpose of the program was EU | Sager Production |
| 2/28/2018; 06:03 | Konstantin Kilimnik | Eckart Sager | Telegram | Chat | If you have a chance to mention this to A. - it would be great. It would be good to get them connected to discuss in person. P is his friend. | Sager Production |
| 4/4/2018; 13:00 | Konstantin Kilimnik | Alan Friedman | WhatsApp | Chat | Hi. This is K. My friend P is looking for ways to connect to you to pass you several messages. Can we arrange that. | Friedman Production |
| 4/4/2018; 08:53 | Konstantin Kilimnik | Eckart Sager | WhatsApp | Chat | Hey. This is Konstantin. My friend P asked me again to help connect him with Alan. Can you help? | Sager Production |
| 4/4/2018; 08:54 | Konstantin Kilimnik | Eckart Sager | Telegram | Chat | Hey. My friend P has asked me again if there is any way to help connect him through Alan | Sager Production |
| 4/4/2018; 08:54 | Konstantin Kilimnik | Eckart Sager | Telegram | Chat | I tried him on all numbers. | Sager Production |