UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **UNITED STATES OF AMERICA**<br><br>v.<br><br>**PAUL J. MANAFORT, JR.,**<br><br>Defendant. | Crim. No. 17-201-1 (ABJ)<br><br>*EX PARTE* **and UNDER SEAL** |

**DECLARATION IN SUPPORT OF THE GOVERNMENT'S MOTION FOR LEAVE TO FILE A SUPPLEMENTAL RESPONSE TO DEFENDANT'S MOTION FOR RECONSIDERATION OF CONDITIONS OF RELEASE WITHIN TEN DAYS AND FOR LEAVE TO FILE DOCUMENTS UNDER SEAL**

I, Brock W. Domin, hereby state as follows:

### I. INTRODUCTION

**A. Affiant**

1. I am a Special Agent with the Federal Bureau of Investigation ("FBI") working directly with the Special Counsel's Office. I have been a Special Agent with the FBI since 2015. I have training and experience related to national security investigations, as well as federal financial crimes. Prior to my employment with the FBI, I spent seven years in the software industry and have extensive experience working with computer technology.

2. I make this declaration in support of the government's motion for leave to file a supplemental response to defendant's motion for reconsideration of conditions of release within ten days and for leave to file documents under seal. This affidavit is based upon my personal knowledge, my review of documents and other evidence, my conversations with other law enforcement personnel, and my training and experience. Where the contents of documents or the

statements and conversations of others are reported herein, they are reported in substance and in pertinent part, except where otherwise indicated.

### B. Background

3. The government has recently discovered evidence that Manafort has attempted to influence the testimony of witnesses and therefore may have committed obstruction of justice while under home confinement, in violation of title 18, U.S.C. section 1512. The government is actively investigating this matter.

4. On October 27, 2017, Manafort was first indicted by a grand jury sitting in this District of nine counts, including conspiracy, conspiracy to launder money, failure to file reports of foreign bank accounts, making false and misleading statements, and acting as an unregistered agent of a foreign principal. On Monday, October 30, 2017, Manafort was permitted to surrender to the government, and, following an arraignment, was, upon the parties' consent, ordered released to this Court's high-intensity supervision program and subjected to conditions of home confinement. *See* Doc. No. 9 (attached hereto as Ex. A). The order releasing Manafort to home confinement, signed by Manafort, informed Manafort that he was "not to commit any criminal offense nor violate any condition of this release order – a rearrest for any offense based upon probable cause may be grounds for revoking your release." *Id.*, at p. 2.

5. On February 23, 2018, the Grand Jury publicly returned the operative Superseding Indictment of Manafort. As relevant here, the Superseding Indictment included new allegations concerning a part of Manafort's lobbying scheme that is alleged to have violated the Foreign Agents Registration Act (FARA). Informally referred to by Manafort and his co-conspirators as the "Hapsburg" Group, this part of the United States lobbying scheme involved the secret retention of a group of former senior European politicians who would act as third-party paid lobbyists for

Ukraine. Manafort was alleged to have funneled to the Hapsburg Group more than 2 million euros from overseas accounts he controlled. *See* Superseding Indictment of February 23, 2018, ¶¶ 30–31, ECF No. 202.

## II.

**A.   The "Hapsburg" Group**

6.  As part of its ongoing investigation, the government identified a public relations firm—called "Company D" in what follows—and two principals at that firm (called Persons "D1" and "D2") who communicated with Manafort, Gates, and Person A, as well as individuals at Law Firm A, Company A, Company B, and Ukrainian government personnel, among others.

7.  As referenced in the Superseding Indictment, in late 2011, Manafort, with Person D1, developed what became the Hapsburg Group. Manafort proposed the project to the Ukraine government in the "Eyes Only" memorandum excerpted in the Superseding Indictment. *See*, *e.g.*, Superseding Indictment of February 23, 2018, ¶ 31.

8.  Person D1 has told the government that Manafort wanted the Group to remain "under the radar," and that the Group would speak as ostensible third-party endorsers on behalf of Ukraine, but the fact that they were paid millions of euros would be kept secret. Manafort, with the assistance of Person D1, chose people who could be discreet. In or about June 2012, Person D1 wrote a memorandum to Manafort describing a group of "third-party champions on Ukraine," which Person D1 described as a "small chorus of high-level European third-party endorsers and politically credible friends who can act informally without a formal government relationship . . . ." In this memorandum, Person D1 described a phone call with a former politician who would eventually become the head of the Hapsburg Group, during which the head proposed the "idea of

what he called 'underground commenting.'" Person D1's memorandum to Manafort is attached hereto as Exhibit B.

9. As alleged, the government has developed substantial evidence showing that the Hapsburg Group performed a variety of public relations and lobbying tasks in the United States, including the dissemination of ghostwritten articles in the American press and the arrangement of meetings with politicians and members of the Executive Branch (in coordination with Companies A and B), among other things.

### B. Efforts to Contact Persons D1 and D2

10. Documents produced by Persons D1 and D2, statements made by Person D1 to the government, and documents recovered pursuant to a court-authorized search of Manafort's iCloud account evidence that Manafort, while on bail from this Court, and with the assistance of Person A, contacted and attempted to contact Persons D1 and D2 in an effort to influence their testimony and to otherwise conceal evidence. The investigation into this matter is ongoing.[1]

11. On February 24, 2018—the day after the Superseding Indictment of Manafort describing the Hapsburg Group was publicly filed—Manafort sent Person D1 the message "This is paul." On February 26, 2018, Manafort sent Person D1 a series of encrypted messages using an application on his phone. The encrypted messages read as follows:

- **23:56:** http://www.businessinsider.com/former-european-leaders-manafort-hapsburg-group-2018-2?r=UK&IR=T
- **23:57:** We should talk. I have made clear that they worked in Europe.

Person D1 has provided the government screen shots that Person D1 took contemporaneously of these messages. The government confirmed that these messages were sent by Manafort pursuant

---

[1] Person D1 provided the text messages described below on May 12, 2018, and Person D2 provided the content of the text messages described below on May 21, 2018.

to a court-authorized search of Manafort's iCloud account. Information contained in Manafort's iCloud account further indicates that Manafort attempted to call Person D1 from the same encrypted application on February 27, 2018.

12. The web address included in Manafort's "23:56" message contains an article describing the Superseding Indictment and its inclusion of allegations concerning the Hapsburg Group and its work in the United States. *See* Michael Kranz, *Former European leaders struggle to explain themselves after Mueller claims Paul Manafort paid them to lobby for Ukraine*, Business Insider (Feb. 25, 2018), *available at* http://www.businessinsider.com/former-european-leaders-manafort-hapsburg-group-2018-2?r=UK&IR=T (attached hereto as Exhibit C) ("According to Mueller's indictment, two European politicians were secretly paid around €2 million by Manafort in order to 'take positions favorable to Ukraine, including by lobbying in the United States.'")

13. During this period, on February 28, 2018, Person A separately contacted Person D2 via an encrypted messaging application. Person D2 was known to Manafort and Person A as a key associate of Person D1. Person D2 worked on press strategy for the Hapsburg Group, and did work on behalf of Ukraine in the United States and Europe. Person A's texts to Person D2 read as follows:

- 01:49: [Person D2], hi! How are you? Hope you are doing fine. ;))
- 01:51: My friend P is trying to reach [Person D1] to brief him on what's going on.
- 01:51: If you have a chance to mention this to [Person D1] - would be great.
- 01:53: Basically P wants to give him a quick summary that he says to everybody (which is true) that our friends never lobbied in the US, and the purpose of the program was EU

Approximately five hours later, Person A switched to another encrypted application and sent a similar series of messages to Person D2. Person D2 provided these texts to the government through counsel.

14.     Approximately one month later, Person A reached out to Person D1 directly as well. On April 4, 2018, Person A sent a message to Person D1: "Hi. This is [Person A's first initial]. My friend P is looking for ways to connect to you to pass you several messages. Can we arrange that." Person A reached out to Person D2 the same day, and reiterated his need for help in connecting Person D1 with Manafort. Person A added in his text to Person D2: "I tried him [*i.e.*, Person D1] on all numbers." A timeline summarizing the above-described communications is attached hereto as exhibit D.

15.     Person D1 told the government that Person D1 understood Manafort's messages to be an effort to "suborn perjury" by influencing Person D1's potential statements to United States investigators. Person D1 well knew and believed from frequent interactions with its members, that the Hapsburg Group in fact lobbied in the United States, and that Manafort and Person A knew that fact.

### III. CONCLUSION

16.     The government is actively investigating the evidence regarding Manafort and obstruction of justice while under home confinement, in violation of title 18, U.S.C. section 1512. I submit that there are pending investigative inquiries whose completion could be jeopardized by disclosure, and the outcome of which could be relevant to the Court's determination regarding bail herein.

Respectfully submitted,

5/25/18 　　　　　　　　　　　　　　　　/s/ Brock W. Domin　　　　　　　　　
Date　　　　　　　　　　　　　　　　　　Brock W. Domin
　　　　　　　　　　　　　　　　　　　　Special Agent
　　　　　　　　　　　　　　　　　　　　Federal Bureau of Investigation