UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>PAUL J. MANAFORT, JR.,<br><br>Defendant. | Crim. No. 17-201-1 (ABJ) |

**GOVERNMENT'S NOTICE OF INTENT TO INTRODUCE
OTHER ACTS EVIDENCE THAT IS INTRINSIC TO CHARGED CRIMES OR
ADMISSIBLE UNDER FEDERAL RULE OF EVIDENCE 404(b)**

In accordance with the Court's Order of March 1, 2018 (Doc. 217), the United States of America, by and through Special Counsel Robert S. Mueller, III, hereby provides notice of its intent to introduce evidence at trial of several prior acts involving defendant Paul J. Manafort, Jr. As explained below, at least two of the acts at issue are intrinsic to the offenses charged in the Superseding Indictment, and therefore do not require pretrial notice under Federal Rule of Evidence 404(b)(2). And even if Rule 404(b) applies, the evidence is admissible for legitimate non-propensity purposes, and its probative value is not substantially outweighed by the risk of unfair prejudice.

**BACKGROUND**

Defendant Manafort is charged in the Superseding Indictment with conspiring to defraud and commit offenses against the United States, in violation of 18 U.S.C. § 371; conspiring to commit money laundering, in violation of 18 U.S.C. § 1956(h); acting as an unregistered agent of a foreign principal, in violation of the Foreign Agents Registration Act (FARA), 22 U.S.C. § 611 *et seq.*; making false statements under FARA, in violation of 22 U.S.C. § 618; making false statements to the Department of Justice, in violation of 18 U.S.C. § 1001; witness tampering, in

violation of 18 U.S.C. § 1512(b)(1); and conspiring to commit witness tampering, in violation of 18 U.S.C. § 1512(k). *See* Doc. 318. At trial, the government may seek to admit evidence of the following:

    1. <u>Ukrainian Procurement Process</u>: The government may seek to introduce evidence about the reasons for structuring a multi-million dollar payment to Law Firm A for, among other things, preparing a report on the trial of former Ukrainian Prime Minister Yulia Tymoshenko. *See* Superseding Indictment ¶ 29 (alleging that Law Firm A was paid by international wires originating from a Manafort-controlled offshore account). In particular, the government may introduce evidence that one reason that Manafort and others arranged for Law Firm A to be retained for the *de minimis* sum of approximately $12,000—even though they knew at the time that Law Firm A proposed a budget of at least $4 million—was to avoid certain limitations imposed by Ukrainian public procurement law.

    2. <u>Representations to Treasury Department and a Mortgage Lender Regarding a New York City Apartment</u>: The government may seek to introduce evidence that, in connection with filing his tax returns from in or about 2008 through in or about 2014, Manafort falsely represented to the Internal Revenue Service on applicable tax returns that a New York City apartment that Davis Manafort Partners, Inc. (DMP) and DMP International, LLC (DMI) rented from John Hannah (another Manafort entity) was used entirely by DMP and DMI for business. DMI claimed deductions on its income taxes based on the rental business expense, and a Manafort-owned entity depreciated the property. When, in January 2015, Manafort sought to secure a loan against that apartment from a bank, he sought to have his tax preparer represent that the apartment was a personal residence for Manafort and his wife, and asked the preparer to explain to the lender that his taking expense/depreciation of the property was merely a "tax strategy."

3. <u>Cypriot Loans</u>: The government may seek to introduce evidence that, from in or about 2009 through 2014, Manafort, Gates, and Kilimnik structured a series of loans between the Cypriot entities that they controlled—entities that are identified in the Superseding Indictment (¶ 11)—to avoid the recognition of those funds as income.[*]

**ARGUMENT**

**A. Legal Framework**

"Rule 404(b) generally bars the admission of '[e]vidence of a crime, wrong, or other act . . . to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character.'" *United States v. McGill*, 815 F.3d 846, 879 (D.C. Cir. 2016), (quoting Fed. R. Evid. 404(b)(1)). "That same evidence, however, may 'be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident.'" *Id.* (quoting Fed. R. Evid. 404(b)(2)).

As the D.C. Circuit recently explained, a court faced with a request to admit evidence of other crimes or bad acts asks as a "threshold" matter "whether the evidence, in actuality, relates to acts unconnected with those for which the defendant is charged, or instead is intertwined with the commission of charged crimes." *McGill*, 815 F.3d at 879. That is because "[a]cts 'extrinsic' to the crime charged are subject to Rule 404(b)'s limitations," while "acts 'intrinsic' to the crime are not." *Id.* "In other words, Rule 404(b) only applies to truly 'other' crimes and bad acts; it does not apply to 'evidence . . . of an act that is part of the charged offense' or of 'uncharged acts performed contemporaneously with the charged crime . . . if they facilitate the commission of the charged crime.'" *Id.* (quoting *United States v. Bowie*, 232 F.3d 923, 929 (D.C. Cir. 2000)).

---

[*] These intra-Cyprus loans differ from the loans alleged to be "shams" in Paragraph 17 of the Superseding Indictment, all of which involve movement of funds from Cypriot accounts to Manafort-affiliated United States entities.

The court in *McGill* also reaffirmed that these principles afford prosecutors flexibility in the context of conspiracy prosecutions.  In particular, "the prosecution is usually allowed considerable leeway in offering evidence of other offenses to inform the jury of the background of the conspiracy charged and to help explain to the jury how the illegal relationship between the participants in the crime developed."  *McGill*, 815 F.3d at 879 (internal quotation marks and ellipses omitted).  "In addition, 'where the incident offered is a part of the conspiracy alleged[,] the evidence is admissible under Rule 404(b) because it is not an other crime.'"  *Id.* (quoting *United States v. Hemphill*, 514 F.3d 1350, 1357 (D.C. Cir. 2008)).

If the evidence is admissible under Rule 404(b) or otherwise, a defendant may still move to exclude it under Rule 403 on the ground that "its probative value is substantially outweighed by," among other things, the danger of "unfair prejudice."  Fed. R. Evid. 403; *see Bowie*, 232 F.3d at 930.  In conspiracy cases, however, the balance under Rule 403 will often favor admission, since "[e]vidence tending to demonstrate 'intent, plan, preparation, and motive . . . is particularly probative where the government has alleged conspiracy.'"  *United States v. Mathis*, 216 F.3d 18, 26 (D.C. Cir. 2000) (quoting *United States v. Sampol*, 636 F.2d 621, 659 & n.23 (D.C. Cir. 1980)).

**B.   The Evidence At Issue Is Intrinsic To The Charged Crimes, Admissible Under Rule 404(b), Or Both**

The government submits that evidence about each of the acts described above is admissible because it is either intrinsic to the charged offenses (including the charged conspiracies), relevant for a permissible non-propensity purpose under Rule 404(b), or both.

1. <u>Ukrainian Procurement Process</u>.  Evidence about the manner of paying Law Firm A is directly probative of the substantive FARA violation charged in Count Three, *see* Superseding Indictment ¶¶ 29, 43; the overarching conspiracy in Count One, which includes a FARA violation as one of its objects, *id.* ¶ 38; and the money-laundering conspiracy charged in Count Two, which

is based in part on international transactions designed to promote the underlying FARA offense, *see id.* ¶ 41a; Doc. 250 at 7.  In other words, the payments to Law Firm A are "both part of the [FARA] offense" charged in Count Three, and an "incident offered [a]s a part of the conspirac[ies] alleged" in Counts One and Two.  *See McGill*, 815 F.3d at 879 (internal quotation marks omitted).  Evidence about the nature and purpose of those payments is therefore intrinsic to the charged offenses.  *See id.*

The evidence is also admissible under Rule 404(b).  The reasons why Manafort and his coconspirators structured payments to obscure the amount of funding to Law Firm A is probative of motive, which "has long been recognized as a permissible purpose for the introduction of 'other crimes' evidence."  *McGill*, 815 F.3d at 883.  The payment-related evidence is also relevant to demonstrating Manafort's knowledge of the scheme to hide Law Firm A's work and payments, as charged in Count Three, *see* Superseding Indictment ¶ 29, and is also probative of both Manafort's preparation and the existence of a plan among Manafort and his co-conspirators.

2. Representations to Treasury Department and Mortgage Lender Regarding a New York City Apartment.  Manafort's "tax strategy" with respect to the New York City apartment is direct evidence of the Count One conspiracy, which charges as one object a conspiracy to defraud the Treasury Department (*i.e.*, the Internal Revenue Service).  Superseding Indictment ¶ 38; *see McGill*, 815 F.3d at 881 ("As a general matter, when the indictment contains a conspiracy charge, uncharged acts may be admissible as direct evidence of the conspiracy itself.") (internal brackets and quotation marks omitted).  In particular, treating a residence as a business expense to count depreciation and obtain other tax benefits is another way in which Manafort schemed to reduce the amount of taxable income reported to the IRS, which is one of the forms of deceiving the Treasury Department alleged in Count One.  *See* Superseding Indictment ¶¶ 14-15 (describing direct

payments from offshore accounts to vendors and transfers from Cypriot to domestic entity disguised as "loans"); *see also id.* ¶ 36 (alleging that, on tax filings from 2008 through 2014, Manafort falsely represented that he had no authority over foreign bank accounts).

Under Rule 404(b), evidence of Manafort's representations to the lender—and his request that his tax preparer chalk up prior representations to "tax strategy"—is relevant for several non-propensity purposes. First, it shows Manafort's knowledge of the tax consequences resulting from certain transactions and is thus probative of an absence of mistake (or lack of accident, *see* Rule 404(b)(2)) in Manafort's conduct of the transactions relevant to Count One (*e.g.*, direct vendor payments and sham loans from Cypriot to domestic entities). Second, evidence that Manafort asked his tax preparer to explain away discrepancies in Manafort's treatment of the apartment is probative of Manafort's absence of mistake, knowledge, and use of a common scheme in procuring similarly false statements from lawyers, tax preparers, and accountants, as charged in the Superseding Indictment (¶¶ 25-36, 42-47).

3. <u>Cypriot Loans</u>. The government does not plan to introduce evidence regarding whether the structuring of loans among Manafort-affiliated Cypriot entities violated Cypriot law. Without regard to the lawfulness of the transfers under Cypriot law, however, evidence of those transfers is relevant for multiple non-propensity purposes. That evidence is probative of Manafort's participation in and knowledge of the Count One conspiracy, including the allegations related to (a) the booking of sham loans from Cypriot entities and (b) Manafort's failure to report his interest in Cypriot bank accounts to the United States Treasury, in violation of 31 U.S.C. §§ 5314 and 5322(a). Superseding Indictment ¶¶ 17, 32-38.

## CONCLUSION

For the foregoing reasons, the government intends to introduce the above-described evidence in its case-in-chief as direct evidence of the crimes charged because it is intrinsic to those crimes or, under Rule 404(b), in order to show the defendant's intent, knowledge, motive, the absence of mistake, and a common scheme or plan.

                Respectfully submitted,

                ROBERT S. MUELLER, III
                Special Counsel

Dated: June 15, 2018        By:        */s/ Andrew Weissmann*
                                          Andrew Weissmann
                                          Greg D. Andres (D.D.C. Bar No. 459221)
                                          Special Counsel's Office
                                          950 Pennsylvania Avenue NW
                                          Washington, DC 20530
                                          Telephone: (202) 616-0800

                                          *Attorneys for the United States of America*