**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) ) ) | |
| v. | ) ) | Crim. Action No. 17-0201-01 (ABJ) |
| PAUL J. MANAFORT, JR., | ) ) ) | |
| Defendant. | ) ) | |

## MEMORANDUM OPINION AND ORDER

Defendant Paul J. Manafort, Jr. has filed a motion to dismiss Count Two of the Superseding Indictment, which is the money laundering charge, and to strike the forfeiture allegation based on that charge. Def.'s Mot. to Dismiss Count Two and to Strike the Forfeiture Allegation [Dkt. # 237] ("Def.'s Mot.").[1] In general, the money laundering provisions of the United States Code prohibit the use of financial transactions to advance or conceal the commission of certain criminal offenses, and they bar engaging in financial transactions with the proceeds of criminal offenses. Defendant's motion concerns the intersection between these provisions and the statute that criminalizes the alleged underlying illegality in this case: the Foreign Agent Registration Act ("FARA"). Manafort questions whether and how the financial transactions itemized in the indictment could, as charged, "promote" a failure to register in violation of FARA, and whether a violation of FARA could

---

1   The February 23, 2018 Superseding Indictment that was the subject of the motion is found at Dkt. # 202. Count Two of the June 8, 2018 Superseding Indictment, Dkt. # 318, is identical, and it is found in the same numbered paragraphs of the charging document. The Court will deem defendant's motion to seek the dismissal of the money laundering count in the most recent version of the indictment. The government has opposed the motion, Gov't Resp. to Def.'s Mot. [Dkt. # 250] ("Gov't Opp."), the motion is fully briefed, *see* Def.'s Reply to Gov't Opp. [Dkt. # 269] ("Def.'s Reply"), and the Court heard oral argument on April 19, 2018.

generate "proceeds" to which the money laundering statute applies. After consideration of the parties' briefs and the applicable statutes and case law, the Court will deny the motion to dismiss the count.

Count Two charges a conspiracy to violate the money laundering statute in several ways. Superseding Indictment [Dkt. # 318] ("Ind.") ¶¶ 40–41. Paragraph 41(a) of the indictment alleges that Manafort violated 18 U.S.C. § 1956(a)(2)(A) by conspiring with others to transfer funds into and out of the United States "with the intent to promote" the carrying on of a "Specified Unlawful Activity," that is, a felony violation of FARA. Ind. ¶ 41(a).

Paragraph 41(b) alleges that defendant violated 18 U.S.C. § 1956(a)(1)(A)(ii) and § 1956(a)(1)(B)(i) by conspiring with others to conduct financial transactions using the "proceeds" of the "Specified Unlawful Activity" – which is, again, the FARA violation – in two different unlawful ways: (i) with the intent to engage in conduct constituting a violation of the Internal Revenue Code; and (ii) knowing that the transactions were designed to conceal the source and ownership of the proceeds of the Specified Unlawful Activity. *Id.* ¶ 41(b).

Thus, both objects of the money laundering conspiracy charged in Count Two involve an alleged violation of the Foreign Agent Registration Act. Manafort argues that FARA simply bans the failure to register as a foreign agent, and not the act of serving as a foreign agent, so the conduct detailed in the indictment could not have "promoted" the commission of a FARA offense, and the offense could not have generated "proceeds" for purposes of the money laundering statute. He maintains that, therefore, neither section of Count Two alleges a crime.

Resolving Manafort's motion requires a close analysis of the Foreign Agent Registration Act. FARA provides:

> No person shall act as an agent of a foreign principal unless he has filed with the Attorney General a true and complete registration statement and supplements thereto . . . . [E]very person who becomes an agent of a foreign principal shall, within ten days thereafter, file with the Attorney General, in duplicate, a registration statement, under oath on a form prescribed by the Attorney General.

22 U.S.C. § 612(a). Section 618(a) of the statute makes it a felony to willfully violate the Act or to willfully make a false statement of material fact in, or omit a material fact from, a registration statement or supplement. 22 U.S.C. § 618(a).[2]

According to Manafort, FARA "requires the filing of a registration statement, and . . . makes it a crime to willfully fail to file such a statement," but it does not prohibit *acting* as an agent of a foreign principal, even while unregistered. Def.'s Mot. at 4. Thus, he argues, a violation of FARA is an act of omission that could not have been "promoted" within the meaning of the

---

2   (a) Violations; false statements and willful omissions

   Any person who –

   (1) willfully violates any provision of this subchapter or any regulation thereunder, or

   (2) in any registration statement or supplement thereto or in any other document filed with or furnished to the Attorney General under the provisions of this subchapter willfully makes a false statement of a material fact or willfully omits any material fact required to be stated therein or willfully omits a material fact or a copy of a material document necessary to make the statements therein and the copies of documents furnished therewith not misleading, shall, upon conviction thereof, be punished by a fine of not more than $10,000 or by imprisonment for not more than five years, or both, . . . .

22 U.S.C. § 618(a).

section 1956(a)(2)(A) by the international transfers listed in the indictment, and it does not generate "proceeds" with the meaning of sections 1956(a)(1)(A)(ii) and (a)(1)(B)(i). Def.'s Mot. at 2, 8, 11.

But this contention is inconsistent with the text of the statute, which begins with the unequivocal prohibition: "[n]o person shall *act* as an agent of a foreign principal." 22 U.S.C. § 612(a) (emphasis added). It is a crime to "act" "unless" one has registered – the statute does not simply state that the failure to register is unlawful. And while defendant is correct that FARA does not prohibit being a foreign agent, undertaking activities on behalf of a foreign client, or "acting" as a foreign agent *per se*, it is illegal to act as an undisclosed foreign agent. The statute gives a person ten days after becoming an agent to register, after which time, acting as an undisclosed agent for that foreign principal is prohibited. *See id.*; *see also* 22 U.S.C. § 618(g) (also making it "unlawful for any person to *act* as an agent of a foreign principal at any time ten days or more after" receiving notice that his or her registration statement does not comply with the statute) (emphasis added).

Defendant suggests that the heading of section 612, which is entitled "Registration statement," confirms that he has properly characterized FARA as a reporting statute that does not criminalize "acting" as a foreign agent. Def.'s Reply at 2–3. He cites *INS v. Nat'l Ctr. for Immigrants' Rights*, 502 U.S. 183 (1991) for the basic proposition that a court may rely on statutory headings to "aid in resolving an ambiguity in the legislation's text." Def.'s Reply at 3, citing 502 U.S. at 189. But here, there is no ambiguity in the text at issue.

Defendant also points to the fact that Congress included a provision in Title 18, the Crimes and Criminal Procedure section of the U.S. Code, that prohibits acting as a foreign agent under certain circumstances, and he submits that this demonstrates that the FARA statute was aimed

solely at registration. Def.'s Mot. at 4–5, citing 18 U.S.C. § 951. Section 951 of Title 18 states that "[w]hoever, other than a diplomatic or consular officer or attaché, acts in the United States as an agent of a foreign government without prior notification to the Attorney General" shall be fined or imprisoned for up to ten years, or both. 18 U.S.C. § 951(a). According to defendant, this statute criminalizes *acting* as a foreign agent, whereas FARA is merely a "regulatory scheme for foreign agent registration" that criminalizes only the willful failure to register. Def.'s Mot. at 5, quoting *United States v. McGoff*, 831 F.2d 1071, 1075 (D.C. Cir. 1987).

But the reference to section 951 does not support defendant's position, since defendant acknowledges that section 951 plainly governs acting as an agent of a foreign government, and the language of the two provisions is quite similar. *See* Def.'s Mot. at 4–5; *compare* 18 U.S.C. § 951(a) ("Whoever . . . acts in the United States as an agent of a foreign government without prior notification to the Attorney General . . . shall be fined under this title or imprisoned . . . .") *with* 22 U.S.C. § 612(a) ("No person shall act as an agent of a foreign principal unless he has filed with the Attorney General a true and complete registration statement . . . .") and *id.* § 618(a) (imposing criminal penalties on any person who "willfully violates any provision of this subchapter or any regulation thereunder" or "willfully makes a false statement of a material fact or willfully omits any material fact" in a FARA statement). These laws are not just about paperwork; their object is to ensure that no person acts to advance the interests of a foreign government or principal within the United States unless the public has been properly notified of his or her allegiance. So both statutes expressly prohibit "acting" as a representative of a foreign entity without submitting the

required notification to the Attorney General. For these reasons, the alleged international banking transactions could "promote," and Manafort could realize "proceeds" from, a FARA violation.[3]

Moreover, it is difficult to square defendant's argument that a violation of FARA is an act of omission that cannot be "promoted" or generate "proceeds" with the meaning of the money laundering statute when Congress specifically amended the money laundering statute to add FARA violations to the list of predicate offenses. *See* USA PATRIOT Act of 2001, Pub. L. No. 107-56, tit. III, § 315, 115 Stat. 272, 308–309 (2001); 18 U.S.C. § 1956(c)(7)(D) (defining "specified unlawful activity" to include "any felony violation of the Foreign Agents Registration Act of 1938"); *see also* H.R. Rep. No. 107–250, pt. 1, at 55 (2001) (explaining that the Act expanded "the list of foreign crimes that can lead to money laundering prosecutions in this country *when the proceeds* . . . are laundered in the United States," and that it was "intend[ed] . . . to send a strong signal that the United States will not tolerate the use of its financial institutions for the purpose of *laundering the proceeds* of such activities") (emphases added). Defendant asserts that this amendment is not instructive since section 1956(c)(7) incorporates other predicate offenses that do not generate proceeds within the definition. *See* Def.'s Reply at 9. But the legislative history suggests that Congress itself thought a FARA violation could be "promoted" or could generate "proceeds" within the meaning of the money laundering statute.

Both sides cite to the Court's lengthy opinion in *McGoff*, 831 F.2d 1071, in support of their positions. *McGoff* addressed whether the statute of limitations for failing to register under FARA

---

3   Defendant argues that section 951 does not bear on the issue presented here since it requires an "additional element" that FARA does not, and applies to "activities . . . under the control of a foreign government." Def.'s Mot. at 4–5. But FARA also applies to agents of foreign governments. 22 U.S.C. § 611(b) (defining "foreign principal" to include "the government of a foreign country"). So the difference between the two provisions is that section 951 covers a narrower subset of foreign agents.

begins to run on the last day an agent acts on behalf of a foreign principal or on the first day that an unregistered agent finally registers. 831 F.2d at 1071. The D.C. Circuit concluded that the former approach applied. *Id.* The government asserts that this holding reflects the Circuit's view that the acting is the essence of the offense. Gov't Opp. at 15.

But the defense cites language in *McGoff* for the proposition that FARA is a regulatory statute that only regulates registration statements. Tr. of Mots. Hr'g (Apr. 19, 2018) [Dkt. # 281] ("Tr.") at 83; Def.'s Mot. at 5, quoting *McGoff*, 831 F.2d at 1075 ("the statute criminalizes the willful failure to comply with the information production requirements") (emphasis omitted).

Both sides pluck quotes from the opinion to support their positions, but *McGoff* does not resolve the issue here since it does not address the first sentence of section 612, the operative portion of the statute in this case. In conducting its analysis, though, the Court did emphasize that in resolving a question of this nature, "[t]he first (and most basic) step on any interpretive path is the language of the statute itself." *McGoff*, 831 F.2d at 1077. It is a reading of the plain text of section 612 that leads this to Court holds that FARA is intended to prohibit *acting* as an undisclosed agent. And to the extent *McGoff* sheds any light on the issue here, the better reading of that opinion supports this conclusion. The D.C. Circuit held that "the statute of limitations for failing to register under FARA begins to run from the last day that an individual *acts* as an agent of a foreign principal," *Id.* at 1096 (emphasis added), supporting the notion that the registration requirement is inextricably tied to the act of serving as a foreign agent.

Finally, at the hearing on the motion, the defendant attempted to compare a FARA violation to a "status crime." Tr. at 89. "You have to have the status before you have the requirement to register. And then once you have the status and fail to register, it's the failure to register that's criminal; it's not having the status in and of itself." *Id.* Counsel compared a FARA violation to

being a felon in possession of a firearm, noting that being a convicted felon "is a status that is not illegal in and of itself, it's only when I go out and buy the gun that I'm now in violation of the law." *Id.*  But this distinction does not make the agency any less a part of the prohibited activity under section 612(a).  Unlike a felon, who may remain in that status without *ever* running afoul of the prohibition against possessing a gun, a foreign agent may only maintain the status of being a foreign agent without registering for ten days, after which he or she is in violation of the statute and faces criminal sanctions.  22 U.S.C. §§ 612(a), 618(a).  Thus, the law does not support Manafort's effort to treat his activity as an unregistered foreign agent as an activity that was not prohibited by FARA and could not be "promoted" or generate "proceeds" for the purposes of the money laundering statute, and the Court can deny his motion to dismiss both prongs of Count Two, as well as the forfeiture allegation, on this basis.  *See* Tr. at 81 (defense counsel acknowledged that the scope of the FARA prohibition is the "core issue[]" that relates to both prongs).[4]

The defense also advanced a secondary argument that even if FARA can be interpreted to govern an agent's actions on behalf of a foreign client, "there would still be an argument whether the facts as alleged could promote that."  Tr. at 80–81.  The Court holds that the Superseding Indictment alleges sufficient facts to enable a juror to draw an inference that the accumulation of layers of international transfers and corporate identities between defendant's alleged Ukrainian clients and the recipients of the payments they made could be found to facilitate not only the recipients' acting as unregistered agents for a foreign principal, but also Manafort's own

---

4   The government also made the argument that even if defendant is correct that the statute is only aimed at registration, acting as an undisclosed foreign agent could still generate "proceeds" if, hypothetically, the foreign agent specifically paid him not to register – that is, to hide the relationship from the U.S. government.  *See* Gov't Opp. at 17.  The Court need to reach this issue given its ruling.

representation of those clients without revealing the relationship. *See* Ind. ¶¶ 20–25, 28 (alleging that defendant engaged in a "multi-million dollar lobbying campaign in the United States at the direction of Yanukovych, the Party of Regions, and the Government of Ukraine," hired and directed two Washington, D.C. firms to lobby on behalf of these clients in the United States, and arranged for an organization in Belgium, the European Centre for a Modern Ukraine, to serve as the nominal client of the Washington, D.C. lobbying firms); *id.* ¶ 29 (alleging that defendant paid a U.S. law firm for work it did on behalf of the Government of Ukraine out of offshore accounts controlled by Manafort and Gates and that these payments were "not disclosed in the report or to the public"); *id.* ¶¶ 26–27 (alleging that Manafort's associate, Richard Gates,[5] prepared talking points in August 2016 with the goal of obfuscating the source of funds used to pay the Washington lobbying firms, and that in November 2016 and February 2017, he and Manafort then caused false and misleading letters reflecting those talking points to be submitted to the Department of Justice). So this is a question of fact for the jury, and defendant's request to dismiss the allegation in paragraph 41(b) that the defendant violated sections 1956(a)(1)(A)(ii) and 1956(a)(1)(B)(i) of the money laundering statute with his use of the "proceeds" of an alleged FARA violation will be denied for this reason as well.

      For these reasons, defendant's motion [Dkt. # 237] is DENIED.

*Amy B Jackson*

AMY BERMAN JACKSON
United States District Judge

DATE:  June 22, 2018

---

[5]  Gates pled guilty on February 23, 2018 to conspiring with Manafort to defraud the United States and to making false statements. *See* Superseding Information [Dkt. # 195]; Plea Agreement [Dkt. # 203] at 1.