**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>PAUL J. MANAFORT, JR.,<br><br>Defendant. | Crim. No. 17-201-1 (ABJ) |

## GOVERNMENT'S MOTION FOR LEAVE TO SUPPLEMENT
## ITS NOTICE OF PROPOSED PRIOR-ACT EVIDENCE

The United States of America, by and through Special Counsel Robert S. Mueller, III, respectfully moves for leave to supplement the notice of its intent to introduce evidence at trial of prior acts involving defendant, Paul J. Manafort, Jr. ("Manafort"). Specifically, the government seeks leave to include a fourth item to its notice filed on June 15, 2018: evidence concerning Manafort's interactions with the Department of Justice in the course of FARA "Section 5" inspections.

On June 15, 2018, pursuant to the Court's March 1, 2018 Scheduling Order, the government filed a notice of its intent to introduce evidence of Manafort's other acts admissible either as intrinsic to the charged crimes or under Federal Rule of Evidence 404(b). *See* Doc. 327. By the terms of the Court's scheduling order, Manafort's opposition to the government's notice was due on June 29, 2018, and the government's reply would have been due on July 9. The Court scheduled any necessary hearing on the issue for July 24, 2018 at 9 a.m.

On June 29, 2018, Manafort filed a purported opposition to the government's notice but did not address the admissibility of the government's proposed evidence. *See* Doc. 339. Manafort instead sought to "reserve[] for trial all appropriate objections to evidence offered by the Special

Counsel" *Id*. at 1. On July 2, 2018, the Court entered a Minute Order regarding Manafort's opposition. The Court explained that it "intends to rule on the admissibility of Rule 404(b) evidence in advance of trial" so that "both parties will be on notice of what the allegations will be before they address the jury." The Court provided Manafort with additional time to file a proper opposition to the government's notice by July 13, 2018. The Court has not yet rescheduled the government's reply.

In advance of Manafort's revised filing date, the government already has produced a series of files pertaining to past interactions Manafort had with the Department of Justice regarding FARA.[*] These interactions arose in connection with Manafort's lobbying in the mid-1980s when he was at the firm Black Manafort Stone and Kelly ("BMSK") and the related firm Black, Manafort & Stone ("BMS"). As explained below, this evidence includes the results of an inspection by the Department of Justice of BMSK's and BMS's files, as well as the Department's assessment of deficiencies in Manafort's FARA filings.

Although this material may not all be prior "bad act" evidence, out of an abundance of caution we nevertheless provide notice of its admissibility under Rule 404(b).

The government incorporates its June 15 filing by reference, and hereby seeks leave to file a supplemental notice that it may seek to admit evidence of the following item at trial. Given that Manafort still has time to object to this material, which he has previously been provided in discovery, we submit there is no prejudice to permitting this notice.

4. <u>The Department of Justice's "Section 5" Inspections of Manafort and his firms</u>: Pursuant to 18 U.S.C. § 615, every agent of a foreign principal is required to maintain books and records with respect to his activities, and to keep them "open at all reasonable times to the

---

[*] The relevant materials were produced to Manafort's counsel on December 20, 2017.

2

inspection of any official charged with the enforcement" of FARA. By regulation, the Attorney General has authorized officials of the Department's National Security Division and the Federal Bureau of Investigation to inspect those books and records. *See* 28 C.F.R. § 5.501. These inspections—named "Section 5" inspections in light of their place in the FARA statute—can involve a review of, among other things, all correspondence with foreign principals, all correspondence relating to a FARA registrant's political activities, contracts, financial records, and corporate documents.

In or about the summer and fall of 1986, the Department of Justice's Criminal Division (which then performed the functions that were transferred to the FARA Unit after the Department's National Security Division was created) conducted Section 5 inspections of Manafort, BMSK, and BMS. Evidence from these inspections is relevant to Manafort's knowledge of the FARA requirements, as well as his intent and absence of mistake or accident in committing the charged FARA registration and false-statement offenses.

The proposed evidence would show that Manafort registered as an agent of the Saudi Arabian government from in or about June 1984 through June 1986. See FARA Registration No. 3594, Paul J. Manafort, Jr. (June 4, 1984). But Manafort did not register for other FARA-related work, although BMSK did. Manafort's position as both a lobbyist for foreign governments and a director of a federal agency—the Overseas Private Investment Corporation—drew scrutiny from members of the press, the White House, and the Department of Justice.

Under existing law, public officials could not also be registered agents of foreign principals, *see* 18 U.S.C. § 219, and the White House had determined that it would not grant a waiver to exempt Manafort from the law's requirements.

Faced with the administration's decision not to grant him a waiver and public reporting on his registered lobbying on behalf of foreign principals, Manafort contended that he did not run afoul of section 219 because he had not personally lobbied—only his firm BMSK, and not he, had acted as a foreign agent. Thus, Manafort contended only his firms—and not he—needed to register. Manafort's defense to section 219 did not convince its intended audience. The language of section 219 mirrors FARA in applying to anyone who "is or acts as an agent of a foreign principal required to register under [FARA]," *id.* at § 219(a). Even if there might be a theoretical case of "political consulting" that did not involve any personal contacts or other public-relations and lobbying conduct covered by FARA, Manafort's public-relations and lobbying services were hands-on. In short, Manafort would have to resign his political appointment, or would have to cease all activities on behalf of foreign principals. Manafort resigned his position as a director of OPIC on May 16, 1986.

The Department's inspection found, among other items, eighteen lobbying and public-relations activities that were not reported on Manafort's FARA filings. These omissions included memoranda summarizing lobbying by Manafort of Congress and the White House regarding a "Jerusalem Bill" and a "Saudi Arms package," dissemination of press articles to Congress, lobbying of the National Security Council, and talking points "for phone calls on pending Saudi munitions sale."

The Department's inspection of Manafort yielded a May 29, 1987, letter to Manafort's counsel requiring Manafort to file amended registrations that disclosed these political activities (or to file a letter stating that they never occurred). The Department's letter to Manafort cautioned that "[p]olitical activities undertaken as background or to prepare for a proposal or a piece of legislation must be fully disclosed even though the proposal may have been subsequently delayed,

the legislation may not have been reported out of Committee, etc." Finally, the Department's letter indicated that Manafort should explain the "special projects" for which he had reported receiving $300,000 and $50,000 above the fees agreed in his contracts.

The Department's inspection of BMSK also revealed a number of deficiencies in BMSK's filings for work on behalf of ten foreign principals. For example, the BMSK inspection report noted a November 1985 memorandum from Manafort describing a media plan for the dissemination material to the U.S. media on behalf of the Bahamas. The inspection report noted that BMSK's counsel confirmed this activity during meetings with the Department, and the report found that BSMK's FARA filings must disclose the activity. Similarly, the inspection team found a March 1986 memorandum from Manafort and others arranging for Bahamian officials to meet with U.S. press, another memorandum from Manafort summarizing information that had been sent to U.S. government officials "in both the Executive and Legislative branches," and a March 1986 memorandum committing to arrange meetings between Bahamian officials and congressional members during a visit to Washington D.C. The inspection report explained that this activity, too, required disclosure under FARA.

Similarly, the Department's inspection of BMS's work for the country of Saint Lucia uncovered a series of memoranda from Manafort that described meetings with U.S. policy makers arranged by the firm. One such meeting related to a geothermal project and a strategy for engaging the Department of Energy and USAID. Another such meeting involved members of BMS's staff and the State Department. The inspection also revealed documents describing agendas for meetings between Saint Lucian politicians and American politicians. Because such activity is political in nature, the Department found that the contacts described in Manafort's memoranda would have to be disclosed in BMS's filing.

The evidence summarized above is probative of the fact that Manafort had knowledge of FARA and of its registration requirements. It is also relevant to establish the absence of mistake or accident in his failing to register and making false statements to the FARA Unit.

## CONCLUSION

For the foregoing reasons, the government seeks leave to add a fourth item to its notice of evidence it intends to introduce in its case-in-chief under Rule 404(b) in order to show the defendant's intent, knowledge, and the absence of mistake or accident.

Respectfully submitted,

ROBERT S. MUELLER, III
Special Counsel

Dated: July 11, 2018　　　By:　　*/s/ Andrew Weissmann*
Andrew Weissmann
Greg D. Andres (D.D.C. Bar No. 459221)
Special Counsel's Office
950 Pennsylvania Avenue NW
Washington, DC 20530
Telephone: (202) 616-0800

*Attorneys for the United States of America*