UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA | |
| v. | Crim. No. 17-201-1 (ABJ) |
| PAUL J. MANAFORT, JR., | |
| Defendant. | |

### STATUS REPORT

The United States of America, by and through Special Counsel Robert S. Mueller, III, respectfully submits this status report to apprise the Court of recent developments pertinent to this Court's bail decision in *United States v. Paul J. Manafort, Jr.*, No. 1:18-cr-83 (E.D. Va.) ("E.D. Va. Case"). As has been the practice of the government, we have apprised the respective Courts of matters pertinent to bail occurring in each proceeding.

1.      On Friday, July 6, 2018, defendant Paul J. Manafort, Jr., moved the Court in the E.D. Va. Case to continue his trial currently scheduled for July 25, 2018, until a time following the conclusion of the trial in this district ("D.C. Case"). *See* E.D. Va. Case Doc. 110 at 3 (Ex. A).

2.      On Tuesday, July 10, the Court in the E.D. Va. Case ordered the defendant transferred to Alexandria Detention Center "[t]o ensure that defendant has access to his counsel and can adequately prepare his defense." *See* E.D. Va. Case Doc. 113 (Ex. B). The defendant later that day responded to the Court's Order, requesting that he remain at Northern Neck Regional Jail. *See* E.D. Va. Case Doc. 116 at 2 (Ex. C).

3.      On Wednesday, July 11, the Court denied the defendant's request not to be transferred to the Alexandria Detention Center, noting that its July 10 Order to transfer the defendant was "intended to eliminate one of the defendant's primary concerns in defendant's

motion to continue" and that it "is surprising and confusing when counsel identifies a problem and then opposes the most logical solution to that problem." *See* E.D. Va. Case Doc. 120 at 2 (Ex. D). The government submitted its opposition to the defense continuance motion, also on July 11, 2018. E.D. Va. Case Doc. 117 (Ex. E).

4.      That same day, the Court ordered the parties to appear on Tuesday, July 17, 2018, for oral argument on the defendant's motion to adjourn the trial and a separate motion to transfer venue.

Respectfully submitted,

ROBERT S. MUELLER, III
Special Counsel

Dated: July 12, 2018          By:          */s/ Andrew Weissmann*
Andrew Weissmann
Greg D. Andres (D.D.C. Bar No. 459221)
Special Counsel's Office
950 Pennsylvania Avenue NW
Washington, DC 20530
Telephone: (202) 616-0800

*Attorneys for the United States of America*

# EXHIBIT A

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | Criminal No. 1:18-cr-00083-TSE |
| v. | ) | |
| | ) | Trial Date: July 25, 2018 |
| PAUL J. MANAFORT, JR., | ) | |
| | ) | Judge T. S. Ellis, III |
| Defendant. | ) | |

**PAUL J. MANAFORT, JR.'S MEMORANDUM IN SUPPORT OF HIS MOTION FOR A
CONTINUANCE OF THE TRIAL CURRENTLY SCHEDULED FOR JULY 25, 2018**

Defendant Paul J. Manafort, Jr., by and through counsel, hereby moves for a continuance

of the trial currently scheduled to commence on July 25, 2018.  Mr. Manafort further requests that

the trial be rescheduled to a time convenient to this Court and following the trial currently

scheduled in the case against Mr. Manafort pending in the District of Columbia (the "D.C. Case").

Defense counsel has conferred with the Office of the Special Counsel (the "Special Counsel"), and

the Special Counsel opposes this motion.

This is Mr. Manafort's first request for a continuance of the trial in this case.  Under the

Speedy Trial Act, a continuance is appropriate when the ends of justice outweigh the interest of

the defendant and the public in a speedy trial.  *See* 18 U.S.C. § 3161(h)(7)(A).  Moreover,

continuance of a trial date is warranted when additional time is necessary for the effective

preparation of the defense.  *See, e.g.*, *United States v. Bran*, No. 3:12CR131, 2012 WL 4507903,

at *2 (E.D. Va. Sept. 28, 2012) (quoting 18 U.S.C. § 3161(h)(7)(B)(iv)); *cf. United States v.

Walker*, No. 3:09CR366-HEH, 2010 WL 2976049, at *1–2, *7 (E.D. Va. July 28, 2010) (denying

motion to dismiss on Speedy Trial grounds and observing that the court had already granted four

trial continuances to afford defense counsel reasonable time to effectively prepare for trial); *United States v. Mallory*, No. 1:09CR228, 2010 WL 1039831, at *2 (E.D. Va. Mar. 19, 2010) (denying dismissal on Speedy Trial grounds and noting that several trial continuances had been granted at defense counsel's request and that counsel had made "repeated representations . . . that additional time was necessary in order to prepare an adequate defense for his client.").

Of course, the decision to grant a continuance is vested in the discretion of the Court, and the analysis presents "inevitably fact-specific conflicts between individual rights and state interests . . . notwithstanding that constitutional rights may be implicated." *United States v. Cerritos*, 180 F. Supp. 3d 432, 435 (E.D. Va. 2016) (citing *Morris v. Slappy*, 461 U.S. 1, 11 (1983); *United States v. Williams*, 445 F.3d 724, 738–39 (4th Cir. 2006)). Defense motions to continue a trial are often denied when it is apparent that the only basis for the request is delay. *See id.* ("Because a request for delay cannot be considered 'justifiable' if it proceeds from a 'transparent ploy for delay,' whether it is the one or the other is the critical constitutional issue posed by such a request." (quoting *Slappy*, 461 U.S. at 13)). Mr. Manafort's request for a continuance of the trial in this case is not to seek a delay for its own sake; rather, this request is to ensure that Mr. Manafort and his attorneys have sufficient time to effectively prepare for trial based upon the circumstances of this case and the related case pending in the District of Columbia.

Mr. Manafort and his defense counsel have been diligently preparing for trial. However, on June 15, 2018, circumstances changed dramatically. In the D.C. Case, U.S. District Judge Amy Berman Jackson remanded Mr. Manafort to custody following his arraignment on a superseding indictment and after a bail revocation hearing.[1] (*See United States v. Paul J. Manafort, Jr.*, Crim.

---

[1] Mr. Manafort's attorneys have since prepared and filed an expedited appeal of Judge Jackson's detention order. *See United States v. Paul J. Manafort, Jr.*, Case No. 18-3037 (D.C. Cir. (filed June 25, 2018)). A copy of the Memorandum of Law and Fact for Appellant Paul J. Manafort, Jr. is annexed hereto as Exhibit A.

Action No. 17-0201-01 (ABJ) (D.D.C), Minute Entry of June 15, 2018; *see id.*, Doc. 328).  Mr.

Manafort was thereafter designated by the U.S. Marshals Service to the Northern Neck Regional

Jail in Warsaw, Virginia, pending the trial scheduled in the D.C. Case for September 17, 2018.

The Northern Neck Regional Jail is located approximately 100 miles away from Mr. Manafort's

attorneys' offices and it generally takes over two hours each way by car for counsel to visit with

him.  No electronic communication is permitted (*e.g.*, to allow for the transmission of documents

for Mr. Manafort to review), and telephonic communication is restricted to ten (10) minutes per

call.[2]  This unforeseen development has severely impacted the ability of the defense to effectively

prepare for the upcoming trial before this Court.

More specifically, Mr. Manafort's current detention has made meetings with his attorneys

to prepare his defense far more infrequent and enormously time-consuming compared to when he

remained on house arrest and subject to GPS monitoring in Alexandria, Virginia, pursuant to this

Court's release order.  In fact, prior to the action taken in the D.C. Case, Mr. Manafort was having

meetings with his attorneys at their law offices multiple times per week, for many hours at a time,

to review the voluminous documents produced by the Special Counsel and to assist in the

preparation of his defense.[3]  Reports and records from the Pretrial Services officers who were

supervising Mr. Manafort's release—both in the Eastern District of Virginia and the District of

Columbia—will readily confirm this fact.

Indeed, in terms of discovery, defense counsel has continued to receive voluminous

amounts from the Special Counsel up-to-the-moment.  Thus far, there have been twenty-three (23)

---

[2] To be clear, this factual recitation is not intended to be a comment upon the U.S. Marshals Service and the officers at the Warsaw facility.  Their concern for the safety and well-being of Mr. Manafort as one of their detainees, and their treatment of him, has been nothing but professional.
[3] The defense has received and is reviewing approximately two *million* pages of documents related to Mr. Manafort's pending cases in the Eastern District of Virginia and the District of Columbia.

discovery productions, the most recent of which was produced to the defense at 6:28 p.m. today, July 6, 2018 (*i.e.*, the same date that this motion for a continuance is being filed)—a mere 19 days before the scheduled trial in this case. The Special Counsel's production today appears to contain approximately 50,000 pages of new documents. Indeed, this is despite the Special Counsel's representations earlier this year that discovery was complete, or nearly complete.[4] In fact, since May the defense has received seven discovery productions which include at least 140,000 pages of material. The Special Counsel's next most-recent disclosure—coming on July 3, 2018 (a mere 22 days prior to the scheduled trial)—includes data obtained from the primary cooperating witness's personal electronic devices and will require extensive review and analysis. (This is the same witness who resolved his case in the District of Columbia in *February* of this year.) Moreover, defense counsel's review of the discovery produced to date has been unusually time-consuming because discovery relevant to this case has often been co-mingled with discovery that appears relevant solely to the D.C. Case. As the Court observed at the recent motions hearing, this is primarily a documents case, and defense counsel require additional time to thoroughly review and analyze with their client the voluminous documents produced by the Special Counsel. It is critically important for the defense to have sufficient time to review the discovery *with* Mr. Manafort because he understands many of the relevant documents (and their context) better than anyone else.

Finally, by seeking this continuance Mr. Manafort also attempts to limit the unfair prejudice that has resulted from the intense negative media coverage surrounding his June 15 detention. *See, e.g.*, *Watergate prosecutor: Manafort is toast*, NBC News (June 5, 2018),

---

[4] *See, e.g.*, Doc. 20 (filed Feb. 28, 2018) at 7 ("[W]e believe that almost all of the relevant discovery in this matter in our possession has already been produced in the course of the District of Columbia prosecution."); s*ee also* D.C. Case, Doc. 146 (filed Jan. 12, 2018) at 1 ("As of the date of this filing, the government has completed a substantial portion of the discovery in this case.").

https://www.nbcnews.com/dateline/video/watergate-prosecutor-paul-manafort-is-toast-1248993859590 (commenting on Mr. Manafort's upcoming detention hearing); *Paul Manafort, One of D.C.'s Most Venerable Swamp Creatures, Is Headed to Jail*, Rolling Stone (June 15, 2018), https://www.rollingstone.com/politics/politics-news/paul-manafort-one-of-d-c-s-most-venerable-swamp-creatures-is-headed-to-jail-628771/; *Judge Sends Paul Manafort to jail, pending trial*, CNN Politics (June 16, 2018), https://www.cnn.com/2018/06/15/politics/judge-sends-paul-manafort-to-jail-pending-trial/index.html; *Paul Manafort ordered to jail after witness-tampering charges*, The Washington Post (June 15, 2018), https://www.washingtonpost.com/local/public-safety/manafort-ordered-to-jail-after-witness-tampering-charges/2018/06/15/ccc526cc-6e68-11e8-afd5-778aca903bbe_story.html?noredirect=on&utm_term=.4480ee97ca44.   Mr.   Manafort has been subject to negative press since the leaking of the Special Counsel's investigation more than a year ago;[5] however, the recent bail revocation and his subsequent detention has exacerbated the situation.   Time is needed to allow passions to cool and to permit the seating of an impartial jury.

This request for a trial continuance is not made lightly.   Since Mr. Manafort's detention, counsel have continued to work diligently to prepare for the July 25 trial date, consult with opposing counsel, and have otherwise attempted to navigate the substantial logistical problems created by Mr. Manafort's detention.   While in some cases these issues might be circumvented, in a document-intensive case with voluminous discovery still being produced as of a few days ago,

---

[5] *See, e.g.*, *Protestor with 'traitor' sign at Manafort court appearance is the hero we need*, N.Y. Daily News (Mar. 8, 2018), http://www.nydailynews.com/news/politics/man-traitor-sign-manafort-court-appearance-hero-article-1.3863542; *Watch protestor throw Russian flag at Paul Manafort*, NBC News (Mar. 8, 2018), https://www.nbcnews.com/dateline/video/protester-throws-russian-flag-at-paul-manafort-while-exiting-federal-courthouse-1180778051705.

with very limited access to his attorneys and the records, and considering the extraordinary negative media coverage surrounding his recent detention, Mr. Manafort cannot effectively prepare for trial beginning on July 25.

WHEREFORE, Mr. Manafort respectfully moves this Court for a continuance of the trial currently scheduled for July 25, 2018, to a date that is convenient to this Court after the conclusion of the trial in the D.C. Case.

Dated: July 6, 2018                            Respectfully submitted,

                                              s/ Kevin M. Downing
                                              Kevin M. Downing (*pro hac vice*)
                                              Law Office of Kevin M. Downing
                                              601 New Jersey Avenue NW
                                              Suite 620
                                              Washington, DC 20001
                                              (202) 754-1992
                                              kevindowning@kdowninglaw.com

                                              s/ Thomas E. Zehnle
                                              Thomas E. Zehnle (VSB No. 27755)
                                              Law Office of Thomas E. Zehnle
                                              601 New Jersey Avenue NW
                                              Suite 620
                                              Washington, DC 20001
                                              (202) 368-4668
                                              tezehnle@gmail.com

                                              s/ Jay R. Nanavati
                                              Jay R. Nanavati (VSB No. 44391)
                                              Kostelanetz & Fink LLP
                                              601 New Jersey Avenue NW
                                              Suite 620
                                              Washington, DC 20001
                                              (202) 875-8000
                                              jnanavati@kflaw.com


                                              *Counsel for Defendant Paul J. Manafort, Jr.*

**CERTIFICATE OF SERVICE**

I hereby certify that on the 6th day of July, 2018, I will electronically file the foregoing with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing (NEF) to the following:

Andrew A. Weissman
Greg D. Andres
Uzo Asonye

U.S. Department of Justice
Special Counsel's Office
950 Pennsylvania Avenue NW
Washington, DC 20530
Telephone: (202) 616-0800
Email:  AAW@usdoj.gov
        GDA@usdoj.gov
        Uzo.Asonye@usdoj.gov

                              s/ Jay R. Nanavati
                              Jay R. Nanavati (VSB No. 44391)
                              Kostelanetz & Fink LLP
                              601 New Jersey Avenue NW
                              Suite 620
                              Washington, DC 20001
                              (202) 875-8000
                              jnanavati@kflaw.com

                              *Counsel for Defendant Paul J. Manafort, Jr.*

7

No. 18-3037

# IN THE

# United States Court of Appeals

## FOR THE DISTRICT OF COLUMBIA CIRCUIT

UNITED STATES OF AMERICA,

*Appellee,*

v.

PAUL J. MANAFORT, JR.,

*Appellant.*

## MEMORANDUM OF LAW AND FACT FOR APPELLANT PAUL J. MANAFORT, JR.

Kevin M. Downing
Law Office of Kevin M. Downing
601 New Jersey Avenue, N.W.,
  Suite 620
Washington, D.C.  20001
Telephone:  (202) 754-1992
kevindowning@kdowninglaw.com

Frank P. Cihlar
  *Counsel of Record*
Law Office of Frank Cihlar
601 New Jersey Avenue, N.W.,
  Suite 620
Washington, D.C.  20001
Telephone:  (703) 635-8147
fcihlar@erols.com

Thomas E. Zehnle
Law Office of Thomas E. Zehnle
601 New Jersey Avenue, N.W.,
  Suite 620
Washington, D.C.  20001
Telephone:  (202) 368-4668
tezehnle@gmail.com

Richard W. Westling
Epstein Becker & Green, P.C.
1227 25th Street, N.W.,
  Suite 700
Washington, D.C.  20037
Telephone:  (202) 861-1868
rwestling@ebglaw.com

*Counsel for Paul J. Manafort, Jr.*

## CERTIFICATE OF PARTIES, RULINGS, AND RELATED CASES

I.   PARTIES

The parties to this proceeding are as follows:

A.   **Appellant**

Paul J. Manafort, Jr.

B.   **Respondent**

The United States of America

II.   RULING UNDER REVIEW

Appellant seeks review of the order:

*Detention Order*, No. 1:17-cr-00201-ABJ-1, Dkt. 328
(D.D.C. June 15, 2018)

III.   RELATED CASES

The challenged order has not previously been reviewed by a court.  The case

from which this appeal is taken remains active in the district court (*United States v.*

*Paul J. Manafort, Jr.*, No. 1:17-cr-00201-ABJ-1 (D.D.C.)).

Mr. Manafort is also facing criminal charges filed by the same Special

Counsel in the Eastern District of Virginia (*United States v. Paul J. Manafort, Jr.*,

No. 1:18-cr-00083 (E.D. Va.)).

Mr. Manafort filed an action in the United States District Court for the

District of Columbia challenging the appointment of the Special Counsel and the

Special Counsel's authority to bring the charges against him (*Paul J. Manafort, Jr.*

*v. U.S. Dep't of Justice*, No. 1:18-cv-00011 (D.D.C.)).   The order dismissing the

Complaint in that case is on appeal to this Court (No. 18-5193).

July 5, 2018                          Respectfully submitted,

                                      /s/ Frank P. Cihlar
                                     Frank P. Cihlar
                                       *Counsel of Record*
                                     Law Office of Frank Cihlar
                                     601 New Jersey Avenue N.W.,
                                      Suite 620
                                     Washington, D.C.  20001
                                     Telephone:  (703) 635-8147
                                     fcihlar@erols.com

                                     *Counsel for Paul J. Manafort, Jr.*

# <u>TABLE OF CONTENTS</u>

<u>Page</u>

CERTIFICATE OF PARTIES, RULINGS, AND RELATED CASES.................... i

TABLE OF CONTENTS.................................................................... iii

TABLE OF AUTHORITIES ............................................................... v

GLOSSARY.................................................................................. viii

INTRODUCTION .......................................................................... 1

JURISDICTIONAL STATEMENT ...................................................... 2

ISSUES PRESENTED..................................................................... 2

STATUTES.................................................................................. 2

STATEMENT OF THE CASE............................................................ 2

   I.    The Appointment of the Special Counsel ..................................... 2

   II.   The Charges Against Mr. Manafort in the Court Below............................. 4

      A.   The Indictments and Mr. Manafort's Release............................. 4

      B.   The Gag Order.................................................................. 5

   III. The Charges Against Mr. Manafort in the District Court for the Eastern
       District of Virginia................................................................ 6

      A.   The Indictment and Superseding Indictment in the Eastern District ......... 6

      B.   The Eastern District's Order Not To Communicate with Witnesses......... 7

   IV.  The Bail-Revocation Proceedings .............................................. 7

      A.   The New Obstruction Charges and Associated Motion
          To Revoke Bail................................................................ 7

      B.   The Hearing and Detention Order ......................................... 9

STANDARD OF REVIEW ............................................................... 9

ARGUMENT ............................................................................... 10

   I. The District Court Committed Legal and Clear Factual Error in
      Concluding That No Combination of Conditions Would Assure the
      Safety of the Community ....................................................... 10

      A.   The District Court Failed To Assess the Strength of the Evidence
          Against Mr. Manafort as Required by Statute ......................... 10

      B.   The Evidence Against Mr. Manafort Is Weak ......................... 15

II. The District Court's Conclusion That Mr. Manafort Is Unlikely
To Abide by Conditions of Release Rests on Error ........................................ 18

    A.   The District Court's Reliance on the June Superseding Indictment
Was Erroneous ........................................................................ 18

    B.   The District Court's Reliance on the Eastern District of Virginia's
Pretrial Release Order Was Erroneous .................................... 19

    C.   The District Court Likewise Erred in Relying on the Gag Order ............ 20

CONCLUSION ........................................................................................ 22

CERTIFICATE OF COMPLIANCE .................................................... 24

STATUTORY ADDENDUM ............................................................ 25

# TABLE OF AUTHORITIES

Page(s)

## CASES

*Florida v. Harris*, 568 U.S. 237 (2013) ...................................................................18

*In re Halkin*, 598 F.2d 176 (D.C. Cir. 1979), *rev'd on other grounds*,
     *Seattle Times Co. v. Rhinehart*, 467 U.S. 20 (1984)..........................................21

*United States v. Aron*, 904 F.2d 221 (5th Cir. 1990) ...............................................18

*United States v. Bazuaye*, 82 F. App'x 734 (2d Cir. 2003) .......................................9

*United States v. Cook*, 880 F.2d 1158 (10th Cir. 1989) (per curiam).....................12

*United States v. Coumaris*, 399 F.3d 343 (D.C. Cir. 2005)....................................15

*United States v. Davis*, 845 F.2d 412 (2d Cir. 1988)...............................................16

*United States v. Ford*, 830 F.2d 596 (6th Cir. 1987) ...............................................21

*United States v. Gotti*, 794 F.2d 773 (2d Cir. 1986)...........................................10, 18

*United States v. Gurr*, 471 F.3d 144 (D.C. Cir. 2006).............................................15

*United States v. LaFontaine*, 210 F.3d 125 (2d Cir. 2000) .................................9, 10

*United States v. Morrison*, 98 F.3d 619 (D.C. Cir. 1996) .......................................15

*United States v. Nwokoro*, 651 F.3d 108 (D.C. Cir. 2011) (per curiam)................12

*United States v. Portes*, 786 F.2d 758 (7th Cir. 1985).............................................13

*United States v. Rodriguez*, 950 F.2d 85 (2d Cir. 1991)..........................................13

*United States v. Simpkins*, 826 F.2d 94 (D.C. Cir. 1987) ........................................12

*United States v. Singleton*, 182 F.3d 7 (D.C. Cir. 1999) .........................................12

*United States v. Wingo*, 490 F. App'x 189 (11th Cir. 2012) ....................................11

v

## STATUTES AND RULES

18 U.S.C. § 1512(b)(1) ..................................................................................8, 15, 17

18 U.S.C. § 3142 ....................................................................................................11, 12

18 U.S.C. § 3142(f) ......................................................................................................12

\* 18 U.S.C. § 3142(g) .............................................................................................*passim*

18 U.S.C. § 3142(g)(2) .......................................................................................10, 11, 14

18 U.S.C. § 3145(c) .....................................................................................................2

\* 18 U.S.C. § 3148 ...............................................................................................12, 16

18 U.S.C. § 3148(b) ...........................................................................................9, 10, 13

\* 18 U.S.C. § 3148(b)(2)(A) ...............................................................................*passim*

18 U.S.C. § 3148(b)(2)(B) ...........................................................................................21

18 U.S.C. § 3231 ..........................................................................................................2

28 U.S.C. § 1291 ..........................................................................................................2

D.C. Cir. R. 47.2(a) ......................................................................................................4

## OTHER AUTHORITIES

Matt Apuzzo, *et al.*, *Comey Confirms Inquiry on Russia and Trump
   Allies*, N.Y. TIMES, Mar. 21, 2017 ........................................................................2

Indictment (Sealed), *United States v. Manafort*,
   No. 1:18-cr-00083, Dkt. 1 (E.D. Va. Feb. 13, 2018) ..........................................6

Carol D. Leonnig, *et al.*, *FBI Conducted Predawn Raid of Former
   Trump Campaign Chairman Manafort's Home*, WASH. POST,
   Aug. 9, 2017 .............................................................................................................3

Office of the Deputy Att'y Gen., *Appointment of Special Counsel To
   Investigate Russian Interference with the 2016 Presidential
   Election and Related Matters* (May 17, 2017),
   https://www.justice.gov/opa/press-release/file/967231/download ......................3

Order, *United States v. Manafort*, No. 1:18-cr-00083, Dkt. 25
(E.D. Va. Mar. 9, 2018) ...........................................................................7, 19, 20

Order, *United States v. Manafort*,
No. 1:18-cr-00083, Dkt. 84 (E.D. Va. June 11, 2018) ........................................7

Press Release, U.S. Dep't of Justice, *Attorney General Sessions
Statement on Recusal* (Mar. 2, 2017)......................................................................3

Redacted Indictment, *United States v. Manafort*,
No. 1:18-cr-00083, Dkt. 14 (E.D. Va. Feb. 13, 2018).........................................6

Superseding Indictment, *United States v. Manafort*,
No. 1:18-cr-00083, Dkt. 9 (E.D. Va. Feb. 22, 2018).................................6, 7, 19

# **GLOSSARY**

| | |
|---|---|
| *Appointment Order* | Office of the Deputy Att'y Gen., *Appointment of Special Counsel To Investigate Russian Interference with the 2016 Presidential Election and Related Matters* (May 17, 2017), https://www.justice.gov/opa/press-release/file/967231/download. |
| *Bail Revocation Mot.* | Government's Motion To Revoke or Revise Defendant Paul J. Manafort, Jr.'s Current Order of Pretrial Release, *United States v. Manafort*, Dkt. 315 (D.D.C. June 4, 2018).[1] |
| *Bond Hr'g Tr.* | Bond Review Hearing Transcript, *United States v. Manafort*, Dkt. 37 (D.D.C. Nov. 6, 2017). |
| *D.D.C. Pretrial Release Order* | Release to PSA's High Intensity Supervision Program, *United States v. Manafort*, Dkt. 9 (D.D.C. Oct. 30, 2017). |
| *Detention Order* | Detention Order, *United States v. Manafort*, Dkt. 328 (D.D.C. June 15, 2018). |
| *E.D. Va. Pretrial Release Order* | Order, *United States v. Manafort*, No. 1:18-cr-00083, Dkt. 25 (E.D. Va. Mar. 9, 2018). |
| *E.D. Va. Superseding Indictment* | Superseding Indictment, *United States v. Manafort*, No. 1:18-cr-00083, Dkt. 9 (E.D. Va. Feb. 22, 2018). |
| *Feb. Superseding Indictment* | Superseding Indictment, *United States v. Manafort*, Dkt. 202 (D.D.C. Feb. 23, 2018). |
| *Gag Order* | Order, *United States v. Manafort*, Dkt. 38 (D.D.C. Nov. 8, 2017). |

---

[1] Unless otherwise noted, all references to "Dkt." are to the district court's docket in the case below, No. 1:17-cr-00201 (D.D.C.).

*Hr'g Tr.*            Transcript of Proceedings, *United States v. Manafort*, Dkt. 329 (D.D.C. June 15, 2018).[2]

*June Superseding Indictment*            Superseding Indictment, *United States v. Manafort*, Dkt. 318 (D.D.C. June 8, 2018).

*Reply Mem.*            Defendant Paul J. Manafort, Jr.'s Reply Memorandum to the Government's Opposition to Motion To Modify Conditions of Release and Response to Minute Order Dated December 5, 2017, *United States v. Manafort*, Dkt. 79 (D.D.C. Dec, 7, 2017).

*Status Conf. Tr.*            Transcript of Status Conference, *United States v. Manafort*, Dkt. 112 (D.D.C. Dec. 11, 2017).

---

[2] The transcript of the hearing on the government's motion to revoke or revise release is not yet publicly available.   On June 25, Mr. Manafort's counsel requested that the district court clerk transmit the transcript to this Court as required by this Court's Rule 47.2(a).

## INTRODUCTION

Defendant Paul J. Manafort, Jr. is currently facing two federal criminal trials in separate districts:  One is set to begin on July 25, the other on September 17. The decision under review, revoking Mr. Manafort's bail less than 45 days before the first of those impending trials, makes it effectively impossible for Mr. Manafort to prepare for them.  Mr. Manafort, moreover, is now housed in solitary confinement because the facility cannot otherwise guarantee his safety.  He is locked in his cell for at least 23 hours per day (excluding visits from his attorneys), at a facility approximately two hours from his legal team.[1]

The detention order—which has already prejudiced Mr. Manafort's trial preparation profoundly—is fatally flawed.  The district court did not assess the weight of the evidence against Mr. Manafort, which was weak, despite a statutory requirement to do so.  That legal error alone warrants reversal.

The court also asserted that Mr. Manafort was unlikely to abide by any conditions of release.  But that ruling rested on a superseding indictment that is insufficient to support that assertion, a clearly and legally erroneous determination that Mr. Manafort had violated a release order from another judicial district, and a clear *non*-violation of a gag order imposed by the court below.  Because the

---

[1] The facility and U.S. Marshals have acted with professionalism and respect in their efforts to ensure Mr. Manafort's safety.  They have simply determined that, if Mr. Manafort is to be detained, solitary confinement is the only way to ensure his security.

alleged conduct could not have violated any of those orders, they cannot support the conclusion that Mr. Manafort is unlikely to abide by any conditions of release. The district court's June 15, 2018 detention order should be vacated.

## JURISDICTIONAL STATEMENT

The district court had jurisdiction under 18 U.S.C. § 3231.  This Court has jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3145(c).

## ISSUES PRESENTED

1.     Whether the district court departed from statutory requirements, or otherwise clearly erred, in concluding that no combination of conditions will assure that Mr. Manafort will not pose a danger to the safety of the community.

2.     Whether the district court erred by invoking wholly permissible, non-violations of prior orders to support its conclusion that Mr. Manafort is unlikely to abide by any conditions of release.

## STATUTES

Pertinent statutes are set forth in the Addendum.

## STATEMENT OF THE CASE

### I.    THE APPOINTMENT OF THE SPECIAL COUNSEL

In early 2017, the Department of Justice revealed that it was investigating allegations that Donald J. Trump's presidential campaign had coordinated with the Russian government to influence the 2016 presidential election.  *See* Matt Apuzzo, *et al.*, *Comey Confirms Inquiry on Russia and Trump Allies*, N.Y. TIMES, Mar. 21,

2017, at A1.  The Attorney General recused himself from any investigation into that subject, appointing the Deputy Attorney General as Acting Attorney General with respect to those matters.  Press Release, U.S. Dep't of Justice, *Attorney General Sessions Statement on Recusal* (Mar. 2, 2017).  The Deputy Attorney General then issued an Appointment Order naming Robert S. Mueller III as Special Counsel for the investigation.  *Appointment Order*, https://www.justice.gov/opa/press-release/file/967231/download, ¶(a).

The Appointment Order purports to authorize the Special Counsel to investigate "(i) any links and/or coordination between the Russian government and individuals associated with the campaign of President Donald Trump; [and] (ii) any matters that arose or may arise directly from the investigation."  *Appointment Order* ¶¶(b)(i)-(ii).  The Order further purports to authorize the Special Counsel "to prosecute federal crimes arising from [his] investigation."  *Id.* ¶(c).  At least as early as July 2017, the Special Counsel began investigating Mr. Manafort.  *See* Carol D. Leonnig, *et al.*, *FBI Conducted Predawn Raid of Former Trump Campaign Chairman Manafort's Home*, WASH. POST, Aug. 9, 2017.[2]

---

[2] In a separate civil proceeding, Mr. Manafort challenged the Appointment Order and the Special Counsel's actions pursuant thereto as in excess of the Acting Attorney General's authority.  *See Manafort v. U.S. Dep't of Justice*, No. 1:18-cv-00011 (D.D.C.).  The district court dismissed the Complaint, and that ruling is currently on appeal to this Court (No. 18-5193).

## II.    THE CHARGES AGAINST MR. MANAFORT IN THE COURT BELOW

### A.    The Indictments and Mr. Manafort's Release

On October 27, 2017, the Special Counsel signed a nine-count indictment against Mr. Manafort relating to Mr. Manafort's 2006-to-2014 consulting work for the Ukrainian government, a Ukrainian political party, and a Ukrainian politician. *See* Dkt. 13 ¶¶ 1-6.[3]   Three days later, Mr. Manafort was released on a $10 million personal surety bond with home confinement and pretrial supervision, including GPS monitoring.  *See D.D.C. Pretrial Release Order*, Dkt. 9.

In ordering release pending trial, the court found that Mr. Manafort was not a danger to any person or the community.  *See Bond Hr'g Tr.*, Dkt. 37, at 9 ("[D]angerousness [is] . . . not an issue.").  The conditions of release included the standard condition that Mr. Manafort not "commit any criminal offense" while released.  *D.D.C. Pretrial Release Order* 2.  The conditions did not include any provision prohibiting contact with potential witnesses.  *See id.*

The Special Counsel has since signed a series of superseding indictments against Mr. Manafort.  One was unsealed on February 23, 2018, also relating to Mr. Manafort's consulting work in Ukraine.  Among the new allegations was the

---

[3] Unless otherwise noted, "Dkt." references are to the district court's docket in the case below, No. 1:17-cr-00201 (D.D.C.).  On June 25, counsel for Mr. Manafort requested that the district court clerk transmit a certified copy of the docket entries to this Court as required by this Court's Rule 47.2(a).  The Glossary identifies the docket entries primarily relied upon.

claim that Mr. Manafort had hired a "group of former senior European politicians to take positions favorable to Ukraine." *Feb. Superseding Indictment*, Dkt. 202 ¶30. That indictment also charged Mr. Manafort with Foreign Asset Registration Act ("FARA") and Financial Bank Account Reporting ("FBAR") violations. *See id.* ¶¶32-50.

## B.     The Gag Order

On November 8, 2017, the district court entered an order prohibiting "the parties . . . and counsel . . . from making statements to the media or in public settings that ***pose a substantial likelihood of material prejudice*** to this case." *Gag Order*, Dkt. 38, at 2 (emphasis added). On December 4, the Special Counsel filed a memorandum alleging that Mr. Manafort had "taken actions that reflect an intention to violate or circumvent" the gag order, by helping to "ghostwrit[e]" an article "regarding his political work for Ukraine." Dkt. 73, at 2-3.

In response to the district court's show-cause order, Dec. 5, 2017 Minute Entry, Mr. Manafort explained that the article had been authored by a Ukrainian national for publication in *Kyiv Post*, a Ukrainian newspaper. *See Reply Mem.*, Dkt. 79, at 2. Mr. Manafort's role had been limited to providing edits "to ensure [the article's] accuracy" and "to correct the public record ***in Ukraine*** concerning his consulting activities ***in Ukraine***." *Id.* But for the ***Special Counsel's*** filing, the article likely would never have been seen by anyone in the U.S. or publicly

attributed to Mr. Manafort. *See id.* at 2-3. Mr. Manafort underscored that there was no tension between his actions and the order, which covers only statements that "pose a substantial likelihood of material prejudice to this case," *Gag Order* 2. *See Reply Mem.* 3.

The court took no action against Mr. Manafort, acknowledging that the *Kyiv Post*'s website was "probably not the most popular." *Status Conf. Tr.*, Dkt. 112, at 11-12. Nevertheless, the court found that it may not have been clear to Mr. Manafort that his involvement with the opinion piece may have violated the gag order. *See id.* at 10-11. The court therefore cautioned that it was "likely to view similar conduct in the future to be an effort to circumvent and evade" the order. *Id.* at 12. The district court dismissed the show-cause order. Dec. 5, 2017 Minute Entry.

III. **THE CHARGES AGAINST MR. MANAFORT IN THE DISTRICT COURT FOR THE EASTERN DISTRICT OF VIRGINIA**

A. **The Indictment and Superseding Indictment in the Eastern District**

In February 2018, the Special Counsel signed a sealed indictment against Mr. Manafort in the Eastern District of Virginia. Indictment, *United States v. Manafort*, No. 1:18-cr-00083, Dkts. 1, 14 (E.D. Va. Feb. 13, 2018). About a week later, the Special Counsel obtained a superseding indictment charging Mr. Manafort with **tax** offenses, **FBAR** violations, and **bank fraud**. *See E.D. Va.*

*Superseding Indictment*, Dkt. 9.  Unlike the District of Columbia indictments, the Eastern District of Virginia superseding indictment does ***not*** include FARA charges.  *See id.*

Mr. Manafort is currently scheduled to begin trial in the Eastern District of Virginia on July 25, 2018.  *See* Order, *United States v. Manafort*, No. 1:18-cr-00083, Dkt. 84 (E.D. Va. June 11, 2018).

### B.     The Eastern District's Order Not To Communicate with Witnesses

The district court allowed Mr. Manafort to remain on release subject to conditions substantially similar to those imposed by the D.C. district court.  *See E.D. Va. Pretrial Release Order*, Dkt. 25, at 2.  It, however, added the condition that Mr. Manafort "avoid all contact, directly or indirectly, with any person who is a victim or witness in the investigation or prosecution of the defendant."  *Id.* at 3. That condition is not contained in the D.D.C. Pretrial Release Order or any other order of that court.  *See D.D.C. Pretrial Release Order*.

### IV.    THE BAIL-REVOCATION PROCEEDINGS

### A.     The New Obstruction Charges and Associated Motion To Revoke Bail

On June 4, 2018, the Special Counsel filed a motion to revoke Mr. Manafort's pretrial release, arguing that he had allegedly "'commit[ted] a[] criminal offense'" while released, in violation of the pretrial release order.  *Bail Revocation Mot.*, Dkt. 315, at 2 (quoting *D.D.C. Pretrial Release Order*).  The

Special Counsel asserted that Mr. Manafort had violated the federal witness-tampering statute, 18 U.S.C. § 1512(b)(1), directly and through an intermediary.

In particular, the Special Counsel alleged Mr. Manafort had contacted and attempted to contact two individuals associated with a European public-relations firm to discuss the "Hapsburg Group," which was allegedly involved with "the secret retention of a group of former senior European politicians." *Bail Revocation Mot.* 1, 3; *see* pp. 4-5, *supra*.  The Special Counsel claimed those individuals were "potential witnesses" against Mr. Manafort in the D.D.C. prosecution, although neither had been identified or referenced in the then-operative (February 2018) superseding indictment.  *Bail Revocation Mot.* 1.  Aside from sending a link to a news article, the entirety of the alleged contact by Mr. Manafort were the statements, undisputedly true, that "this is paul" and that "[w]e should talk.  I have made clear that they worked in Europe." *Id.* at 5-6.

Shortly after filing its motion, the government filed another superseding indictment against Mr. Manafort and a new defendant, Konstantin Kilimnik.  *See June Superseding Indictment*, Dkt. 318.  That Indictment added obstruction of justice charges based on the alleged contacts and attempted contacts with the two individuals associated with a European public-relations firm, as discussed above. *See id.* ¶¶ 31, 48-51.

8

### B.     The Hearing and Detention Order

On June 15, 2018, the district court held a hearing and issued a detention order.   The court determined that the June Superseding Indictment created "a rebuttable presumption . . . that no . . . combination of conditions w[ould] assure that the [defendant] will not pose a danger to the safety of any other person or the community," 18 U.S.C. § 3148(b).   *See Hr'g Tr.*, Dkt. 329, at 11.

The court found that Mr. Manafort had presented enough evidence to carry his burden of production toward rebutting the presumption.   *See Hr'g Tr.* 22-23. But, without evaluating the weight of the evidence underlying the charges, or any of the factors listed in 18 U.S.C. § 3142(g), the court asserted that "the presumption ha[d] not been overcome," and ordered Mr. Manafort remanded to custody. *Detention Order*, Dkt. 328, at 19.   Mr. Manafort timely appealed.   *See* Dkt. 335.[4]

### STANDARD OF REVIEW

"[C]onclusions of law" supporting a pretrial detention order are reviewed "*de novo*."   *United States v. Bazuaye*, 82 F. App'x 734, 734 (2d Cir. 2003).   An appellate court will not "affirm the district court's order of detention" if "the district judge . . . committed an error of law."   *United States v. LaFontaine*, 210 F.3d 125, 130 (2d Cir. 2000) (quotation marks omitted).   Whether "a package of bail conditions will prevent danger to the community" is reviewed for clear error.

---

[4] The district court denied release pending appeal.   *See Detention Order* 1.

9

*Id.* Whether a person is "unlikely to abide by any conditions of release" is also re-

viewed for clear error. *United States v. Gotti*, 794 F.2d 773, 779 (2d Cir. 1986).

## ARGUMENT

I. **THE DISTRICT COURT COMMITTED LEGAL AND CLEAR FACTUAL ERROR IN CONCLUDING THAT NO COMBINATION OF CONDITIONS WOULD ASSURE THE SAFETY OF THE COMMUNITY**

### A. The District Court Failed To Assess the Strength of the Evidence Against Mr. Manafort as Required by Statute

1. The bail-revocation statute requires a finding that "no condition or

combination of conditions of release . . . will assure that [Mr. Manafort] will not

flee or pose a danger to the safety of any other person or the community."  18

U.S.C. § 3148(b)(2)(A).  The district court made that finding.  But the district court

never considered the strength of the charges against Mr. Manafort in doing so.

That violated the statute and amounts to an "error of law."  *LaFontaine*, 210 F.3d

at 130.

Section 3148(b), which governs revocation of pretrial release, is clear.  A

finding that "no condition or combination of conditions of release . . . will assure

that the [defendant] will not flee or pose a danger to the safety of any other person

or the community" must be ***based on*** the factors set forth in section 3142(g)."  18

U.S.C. § 3148(b)(2)(A) (emphasis added).  Section 3142(g) provides that, in

ordering pretrial detention, a court must consider, among three other factors, "the

weight of the evidence against the person."  *Id.* § 3142(g)(2).

10

Case 1:17-cr-00201-ABJ   Document 351-1   Filed 07/12/18   Page 29 of 51
Case 1:18-cr-00083-TSE   Document 110-1   Filed 07/06/18   Page 21 of 43 PageID# 1933
USCA Case #18-3037   Document #1739291       Filed: 07/05/2018     Page 21 of 43

The district court failed to do that.  The court recognized that Mr. Manafort had "c[o]me forward with some evidence" that was "largely directed towards the question of whether [he] [had] committed the charged offense," but found that irrelevant because it did not address "whether he posed a danger to the community or [whether] he could be trusted to abide by the Court's orders."  *Detention Order* 15; *see Hr'g Tr.* 28.[5]  That conclusion was wrong:  The defendant's submissions regarding whether he "committed the charged offense" is a mandatory consideration under §§ 3142 and 3148(b)(2)(A).  The statute by its terms says that any determination of whether a "condition[] of release . . . will assure . . . the safety of . . . the community" must be "***based on*** the factors set forth in section 3142(g)."  *See* 18 U.S.C. § 3148(b)(2)(A) (emphasis added); *United States v. Wingo*, 490 F. App'x 189, 191 (11th Cir. 2012) ("To determine whether a condition or combination of conditions of release will assure that the person will not flee or pose a danger to another person or the community, the court must consider[] [the § 3142(g) factors].").  Those factors expressly include "the weight of the evidence against the person."  18 U.S.C. § 3142(g)(2).

That makes sense:  Weak charges, less likely to show guilt, are far less probative of potential danger to the community than strong ones.  This Court's cases

---

[5] The Court may consider the district court's oral findings at the detention hearing and its written Detention Order because the court incorporated its oral findings in its written order.  *See Detention Order* 19.

on initial bail proceedings under §3142—which are not analytically distinct from §3148 revocation proceedings—make that clear. *See United States v. Cook*, 880 F.2d 1158, 1162 (10th Cir. 1989) (per curiam) ("[C]ases interpreting the rebuttable presumption provision in §3142 are analytically apposite" to §3148 analysis.). This Court has made clear that, under §3142, a "judicial officer **must** consider several enumerated factors to determine whether conditions short of detention will 'reasonably assure the appearance of the person . . . and the safety of . . . the community.'" *United States v. Singleton*, 182 F.3d 7, 9 (D.C. Cir. 1999) (emphasis added); *see, e.g.*, *United States v. Simpkins*, 826 F.2d 94, 97 (D.C. Cir. 1987) (court "unable to determine whether [detention] determination [was] supported" because magistrate judge "fail[ed] to address a number of counterbalancing factors enumerated in the [Bail Reform] Act"); *see also United States v. Nwokoro*, 651 F.3d 108, 110 (D.C. Cir. 2011) (per curiam) (similar).

The requirement under §3142 to consider all of the §3142(g) factors applies *a fortiori* to §3148(b)(2)(A). For one thing, §3148(b)(2)(A) requires the **same** determination as §3142. *Compare* 18 U.S.C. §3148(b)(2)(A) ("there is no condition or combination of conditions of release that will assure that the person will not flee or pose a danger to the safety of any other person or the community"), *with id.* §3142(f) ("whether any condition or combination of conditions . . . will reasonably assure the appearance of such person as required and the safety of any

12

other person and the community"). For another, §3148(b)(2)(A) *expressly states* that the determination must be "*based on* the factors set forth in section 3142(g)." *Id.* §3148(b)(2)(A) (emphasis added). Section 3148(b)(2)(A)'s command to consider the §3142(g) factors, including the strength of the evidence, could not be clearer. The failure to consider those factors was legal error.

2. Section 3148 also provides that, "[i]f there is probable cause to believe" "the person committed a . . . felony" while on release, there is a "rebuttable presumption" that "no condition or combination of conditions will assure that the person will not pose a danger to the safety of any other person or the community." 18 U.S.C. §3148(b). The district court asserted that, "[i]n light of the [June] superseding indictment," the court did "not need to engage in an independent assessment of the weight of the evidence," because the existence "of probable cause" itself "gives rise to a rebuttable presumption [that Mr. Manafort poses a danger to the community]." *Detention Order* 11. That misreads §3148(b).

The §3148(b) presumption that no condition "will assure that the person will not pose a danger," 18 U.S.C. §3148(b), is "'rebutted' when the defendant meets a 'burden of production' by coming forward with some evidence that he will not flee or endanger the community if released." *United States v. Portes*, 786 F.2d 758, 764 (7th Cir. 1985); *see also United States v. Rodriguez*, 950 F.2d 85, 88 (2d Cir. 1991) ("[D]efendant must introduce some evidence contrary to the presumed fact

13

in order to rebut the presumption."). Here, the district court concluded that Mr. Manafort had met his burden of production—and had therefore rebutted the presumption. *See Detention Order* 15 (defendant "came forward with some evidence to rebut the presumption"); *Hr'g Tr.* 23 (similar).[6] In light of that conclusion, §3148(b)(2)(A) required the district court to determine whether, "***based on the factors set forth in section 3142(g)*** . . . there is no condition or combination of conditions of release that will assure that the person will not flee or pose a danger to the safety of any other person or the community." 18 U.S.C. §3148(b)(2)(A) (emphasis added). Those factors include "the weight of the evidence" against the person, *id.* §3142(g)(2), which the district court never considered.

The district court's contrary ruling does not merely defy statutory text. It also makes hash of the statutory purpose. As noted above, the strength of the evidence clearly bears on the likelihood that the defendant poses a danger. Thus, where the charges are not uncontested—because the defendant meets his burden of production—courts should consider whether the evidence is powerful or borderline. The district court failed to do that here.

---

[6] The district court's later statement "that the presumption has not been overcome," *Detention Order* 19, is not inconsistent with its conclusion that Mr. Manafort had rebutted the presumption. The court explained that, even when the defendant successfully rebuts the presumption, the presumption does not go away altogether; rather, it becomes a factor in the §3148(b)(2)(A) determination of whether he poses a danger to the community. *See id.* at 14-15 (collecting cases).

### B.    The Evidence Against Mr. Manafort Is Weak

The district court's errors were deeply prejudicial.[7]   Consideration of the § 3142(g) factors is the linchpin of a § 3148(b)(2)(A) bail-revocation determination. Yet the evidence, which the district court ignored, was weak.   Indeed, the evidence of Mr. Manafort's alleged obstruction was so thin as to border on non-existent.

1.    The witness-tampering statute prohibits persons from "knowingly" and "corruptly persuad[ing] another person, or attempt[ing] to do so, . . . with intent to[] influence, delay, or prevent the testimony of any person."   18 U.S.C. § 1512(b)(1).  This Court's § 1512(b)(1) cases generally involve direct and explicit requests to represent falsehoods to others.   *See, e.g.*, *United States v. Gurr*, 471 F.3d 144, 154 (D.C. Cir. 2006) (defendant "attempted to corruptly persuade a witness . . . to sign an affidavit falsely stating that she had authorized money to be transferred from her account"); *United States v. Morrison*, 98 F.3d 619, 629 (D.C. Cir. 1996) (defendant asked witness to lie if "'anybody ask[ed]'"); *see also Bail Revocation Mot.* 10-11 (collecting cases).

The evidence here nowhere approaches that.   Mr. Manafort's alleged communications were extremely limited.  They took place only with D1—a person who was not and still is not known to be a witness in the D.D.C. case.  Indeed, that person was not identified in the indictment pending against Mr. Manafort at the

---

[7] The claim of error was preserved.   *See Hr'g Tr.* 36 (urging court to consider § 3142(g) factors); *United States v. Coumaris*, 399 F.3d 343, 347 (D.C. Cir. 2005).

time the government filed the bail-revocation motion.  *See Feb. Superseding Indictment.*  And the full extent of the alleged communications consisted of one phone call lasting less than 85 seconds, the contents of which were not alleged in the superseding indictment; three attempted phone calls; and three brief unanswered text messages, *see Detention Order* 6 ("'This is paul.'"); *id.* ("'http://www.businessinsider.com/former-european-leaders-manafort-hapsburg group-2018-2?r=UK&IR=T'"); *id.* ("'We should talk.  I have made clear that they worked in Europe.'").[8]

Likewise, Person A, who allegedly served as Mr. Manafort's intermediary, had only limited communications with D1 and D2.  Almost all of them were messages to D2—who was not and still is not known to be a witness—expressing a general desire to get in touch with D1.  *See Detention Order* 6-8 (Mr. Manafort is a "friend" of D1 who was hoping to "brief [D1] on what's going on"; it "would be

---

[8] At the revocation hearing, the government represented that D1's counsel had provided a proffer of what was said on the phone call.  *Hr'g Tr.* 24-25.  But that proffer was not included in the motion to revoke Mr. Manafort's pretrial release; Mr. Manafort thus had no opportunity to submit rebuttal evidence, rendering consideration of the call's alleged contents improper.  *See Detention Order* 5 n.5; *United States v. Davis*, 845 F.2d 412, 415 (2d Cir. 1988) ("[I]n providing that a rebuttable presumption arises upon a finding of probable cause, § 3148 assumes that the defendant will be given an opportunity to present evidence against that presumption.").  Moreover, the statements the government represented Mr. Manafort made to D1 were nonsubstantive:  Mr. Manafort merely identified himself and stated that he wanted to talk to D1 about the Hapsburg Group to provide an update and give him a "heads-up."  *Detention Order* 5 n.5; *see Hr'g Tr.* 25.

great" if D2 "ha[d] a chance to mention this [to D1]"; it "would be good" to connect Mr. Manafort and D1).

None of those contacts come anywhere close to an "attempt[] . . . to[] influence, delay, or prevent the testimony of any person." 18 U.S.C. § 1512(b)(1); *see* p. 15, *supra* (collecting cases). Neither Mr. Manafort nor Person A asked D1 or D2 to do anything; they did not allude to potential questioning; nor did they state any false information. The only substantive statement by Mr. Manafort in the record is that he "made clear that they worked in Europe"—which he undeniably has. *See also* p. 16 n.8, *supra*. The alleged communications provide the flimsiest evidence of alleged obstruction.

The district court never analyzed whether those statements would support an obstruction charge, much less whether the evidence was weighty. Instead, it erroneously deemed the issue irrelevant. *See Detention Order* 15; *Hr'g Tr.* 28. That error of law warrants reversal. *See* pp. 10-14, *supra*.

Independently, the alleged evidence of obstruction is so thin that it cannot reasonably support the determination that no set of conditions could ensure Mr. Manafort's appearance and the safety of the community. Whatever else might be said of the solitary phrase he communicated, it is not witness tampering.

II.   **THE DISTRICT COURT'S CONCLUSION THAT MR. MANAFORT IS UNLIKELY TO ABIDE BY CONDITIONS OF RELEASE RESTS ON ERROR**

  A.   **The District Court's Reliance on the June Superseding Indictment Was Erroneous**

"[A] district court's finding that a defendant will not abide by any conditions of release may be established by a preponderance of the evidence." *United States v. Aron*, 904 F.2d 221, 224 (5th Cir. 1990); *see Gotti*, 794 F.2d at 778 (similar). The court never found that standard met. It instead relied solely on the rebuttable presumption created by the grand jury's probable-cause finding. *See Detention Order* 11.

But an indictment is not issued on a preponderance of the evidence. Indeed, "'[f]inely tuned standards such as proof[, including] . . . by a preponderance of the evidence[,] . . . have no place in the [probable-cause] decision.'" *Florida v. Harris*, 568 U.S. 237, 243-44 (2013) (last two alterations in original). The grand jury thus never found the preponderance of the evidence standard satisfied. *See id.* The district court's determination that Mr. Manafort was unlikely to abide by any conditions of release simply because a grand jury found probable cause to believe he had "committed a felony offense while he was on pretrial release," *Detention Order* 11 (footnote omitted), was thus error. Probable cause cannot substitute for the preponderance of the evidence that is required.

**B.    The District Court's Reliance on the Eastern District of Virginia's Pretrial Release Order Was Erroneous**

In revoking Mr. Manafort's pretrial release, the district court claimed that Mr. Manafort had violated a condition of his release in the Eastern District of Virginia proceedings.  *See Detention Order* 18; *Hr'g Tr.* 50.   That condition instructed Mr. Manafort to "avoid all contact, directly or indirectly, with any person who is a victim or witness in the investigation or prosecution of the defendant."  *E.D. Va. Pretrial Release Order* 3.

That conclusion was clear error.  The Eastern District of Virginia Pretrial Release Order does not and cannot encompass any of the alleged communications identified in the government's motion to revoke.  According to the government, the alleged communications pertain to the ***FARA charges*** against Mr. Manafort.  *See Bail Revocation Mot.* 3-7, 12-13.   But the operative Eastern District of Virginia indictment has ***no FARA charges***—or any other allegations that might implicate D1 and D2.  *See E.D. Va. Superseding Indictment*.   Mr. Manafort could not have run afoul of the Eastern District of Virginia Pretrial Release Order by allegedly communicating with individuals who were ***in no way connected*** to the personal financial charges against him in the Eastern District of Virginia.  The judge presiding over the Eastern District of Virginia proceedings never suggested otherwise.

Moreover, all of Mr. Manafort's own alleged communications occurred on February 24 and 26, 2018—***before*** the Eastern District of Virginia Pretrial Release

19

Order issued on March 9, 2018, *E.D. Va. Pretrial Release Order* 4.  *See Detention Order* 5-8 (chart of alleged communications).  The few alleged communications that occurred after the Eastern District of Virginia Pretrial Release Order issued were four unanswered messages sent by **Person A**, not Mr. Manafort.  *See id.* at 8.  Those messages at most expressed a general desire to talk to D1 and D2.  And, given that they were sent more than a month after any of the other alleged communications identified by the government, *see id.* at 7-8, any inference as to what Person A intended to discuss is highly tenuous at best.

### C.   The District Court Likewise Erred in Relying on the Gag Order

The district court likewise erred in suggesting that Mr. Manafort had somehow violated its own November 2017 order prohibiting the "parties" and "counsel for the parties" "from making statements to the media or in public settings that pose a substantial likelihood of material prejudice to this case."  *Gag Order* 2.  In the Detention Order, the court noted that Mr. Manafort had edited an opinion piece written by a Ukrainian that was ultimately published in Ukraine in December 2017, and that, after that, the court had warned Mr. Manafort that it was "likely to view similar conduct in the future to be an effort to circumvent and evade" the gag order, *Status Conf. Tr.* 11-12.  *See Detention Order* 2-3.

Those findings cannot possibly support the conclusion that no combination of conditions could ensure his presence and the safety of the community.  For one

thing, the gag order was not a "condition[] of release," 18 U.S.C. § 3148(b)(2)(B); *see D.D.C. Pretrial Release Order*, but a separately imposed requirement nowhere connected to release, *see Gag Order*.   More important, the district court **never** found that Mr. Manafort's limited involvement with the Ukrainian article constituted a violation of the order.   To the contrary, it **dismissed** the show-cause order.  *See* Dec. 5, 2017 Minute Entry.

Mr. Manafort's anonymous revisions to material for an obscure Ukrainian website could not possibly have created a "substantial likelihood of material prejudice" so as to violate the gag order, *Gag Order* 2, much less create a sufficient threat to warrant such an intrusion on a defendant's First Amendment rights, *see United States v. Ford*, 830 F.2d 596, 599-600 (6th Cir. 1987) ("[B]roadly based restrictions on speech in connection with litigation are seldom, if ever, justified."); *In re Halkin*, 598 F.2d 176, 187 (D.C. Cir. 1979) (similar), *rev'd on other grounds*, *Seattle Times Co. v. Rinehart*, 467 U.S. 20 (1984).   At the time, the district court all but admitted as much.  *See Status Conf. Tr.* 11-12; p. 6, *supra*.   Indeed, at the show-cause hearing, the court instructed Mr. Manafort that, if he did something similar "in the future," the court would likely view the conduct as "an effort to circumvent and evade" the gag order.  *Status Conf. Tr.* 12.   But the court then went back on its word, invoking Mr. Manafort's non-violation of the gag order through involvement in a Ukrainian opinion piece, more than **six months prior** to the

government's bail-revocation motion, as supporting his detention.[9]  The district court's evidentiary basis for withdrawing Mr. Manafort's release is thus fundamentally flawed.  And it certainly cannot support his detention—in solitary confinement, without access to electronic communication, hours from his lawyers, in the run-up to two federal criminal trials—to the deep prejudice of his defense.

## <u>CONCLUSION</u>

For the foregoing reasons, Mr. Manafort respectfully requests that the order of detention be vacated and that he be released under the conditions of release in place before the June 15 revocation.

---

[9] Nor could the communications with D1 have violated the gag order because those communications were not "to the media" or "in public settings."  *Gag Order* 2.

Dated:  July 5, 2018
Washington, D.C.

Respectfully submitted,


By:    /s/ Frank P. Cihlar

Kevin M. Downing
Law Office of Kevin M. Downing
601 New Jersey Avenue, N.W.,
  Suite 620
Washington, D.C.  20001
Telephone:  (202) 754-1992
kevindowning@kdowninglaw.com

Frank P. Cihlar
  *Counsel of Record*
Law Office of Frank Cihlar
601 New Jersey Avenue, N.W.,
  Suite 620
Washington, D.C.  20001
Telephone:  (703) 635-8147
fcihlar@erols.com


Thomas E. Zehnle
Law Office of Thomas E. Zehnle
601 New Jersey Avenue, N.W.,
  Suite 620
Washington, D.C.  20001
Telephone:  (202) 368-4668
tezehnle@gmail.com

Richard W. Westling
Epstein Becker & Green, P.C.
1227 25th Street, N.W.,
  Suite 700
Washington, D.C.  20037
Telephone:  (202) 861-1868
rwestling@ebglaw.com


*Counsel for Paul J. Manafort, Jr.*

23

## <u>CERTIFICATE OF COMPLIANCE</u>

Pursuant to Federal Rule of Appellate Procedure 32(g) and this Court's Rule 32(e), I hereby certify that this memorandum complies with the applicable type-volume limitations.  This memorandum was prepared using a proportionally spaced type (Times New Roman, 14 point).  Exclusive of the portions exempted by Federal Rule of Appellate Procedure 32(f) and this Court's Rule 32(e)(1), this brief contains 5,149 words.  This certificate was prepared in reliance on the word-count function of the word-processing system (Microsoft Word 2010) used to prepare this memorandum.

July 5, 2018                                     /s/ Frank P. Cihlar
                                             Frank P. Cihlar

# STATUTORY ADDENDUM

18 U.S.C. § 1512 ............................................................................................ Add.-1

18 U.S.C. § 3142 ........................................................................................... Add.-2

18 U.S.C. § 3148 ........................................................................................... Add.-6

Title 18 of the United States Code, Crimes and Criminal Procedure, provides in relevant part as follows:

### §1512.  Tampering with a witness, victim, or an informant

\*     \*     \*

  (b) Whoever knowingly uses intimidation, threatens, or corruptly persuades another person, or attempts to do so, or engages in misleading conduct toward another person, with intent to—

  (1)    influence, delay, or prevent the testimony of any person in an official proceeding;

  (2)    cause or induce any person to—

    (A)    withhold testimony, or withhold a record, document, or other object, from an official proceeding;

    (B)    alter, destroy, mutilate, or conceal an object with intent to impair the object's integrity or availability for use in an official proceeding;

    (C)    evade legal process summoning that person to appear as a witness, or to produce a record, document, or other object, in an official proceeding; or

    (D)    be absent from an official proceeding to which such person has been summoned by legal process; or

  (3)    hinder, delay, or prevent the communication to a law enforcement officer or judge of the United States of information relating to the commission or possible commission of a Federal offense or a violation of conditions of probation[,] supervised release,[] parole, or release pending judicial proceedings;

shall be fined under this title or imprisoned not more than 20 years, or both.

\*     \*     \*

## §3142.  Release or detention of a defendant pending trial

(a)  IN GENERAL.—Upon the appearance before a judicial officer of a person charged with an offense, the judicial officer shall issue an order that, pending trial, the person be—

(1)    released on personal recognizance or upon execution of an unsecured appearance bond, under subsection (b) of this section;

(2)    released on a condition or combination of conditions under subsection (c) of this section;

(3)    temporarily detained to permit revocation of conditional release, deportation, or exclusion under subsection (d) of this section; or

(4)    detained under subsection (e) of this section.

\*       \*       \*

(f)  DETENTION HEARING.—The judicial officer shall hold a hearing to determine whether any condition or combination of conditions set forth in subsection (c) of this section will reasonably assure the appearance of such person as required and the safety of any other person and the community—

(1)    upon motion of the attorney for the Government, in a case that involves—

(A)    a crime of violence, a violation of section 1591, or an offense listed in section 2332b(g)(5)(B) for which a maximum term of imprisonment of 10 years or more is prescribed;

(B)    an offense for which the maximum sentence is life imprisonment or death;

(C)    an offense for which a maximum term of imprisonment of ten years or more is prescribed in the Controlled Substances Act (21 U.S.C. 801 et seq.), the Controlled Substances Import and Export Act (21 U.S.C. 951 et seq.), or chapter 705 of title 46;

(D)   any felony if such person has been convicted of two or more offenses described in subparagraphs (A) through (C) of this paragraph, or two or more State or local offenses that would have been offenses described in subparagraphs (A) through (C) of this paragraph if a circumstance giving rise to Federal jurisdiction had existed, or a combination of such offenses; or

(E)   any felony that is not otherwise a crime of violence that involves a minor victim or that involves the possession or use of a firearm or destructive device (as those terms are defined in section 921), or any other dangerous weapon, or involves a failure to register under section 2250 of title 18, United States Code; or

(2)   upon motion of the attorney for the Government or upon the judicial officer's own motion in a case, that involves—

(A)   a serious risk that such person will flee; or

(B)   a serious risk that such person will obstruct or attempt to obstruct justice, or threaten, injure, or intimidate, or attempt to threaten, injure, or intimidate, a prospective witness or juror.

The hearing shall be held immediately upon the person's first appearance before the judicial officer unless that person, or the attorney for the Government, seeks a continuance.  Except for good cause, a continuance on motion of such person may not exceed five days (not including any intermediate Saturday, Sunday, or legal holiday), and a continuance on motion of the attorney for the Government may not exceed three days (not including any intermediate Saturday, Sunday, or legal holiday).  During a continuance, such person shall be detained, and the judicial officer, on motion of the attorney for the Government or sua sponte, may order that, while in custody, a person who appears to be a narcotics addict receive a medical examination to determine whether such person is an addict.  At the hearing, such person has the right to be represented by counsel, and, if financially unable to obtain adequate representation, to have counsel appointed.  The person shall be afforded an opportunity to testify, to present witnesses, to cross-examine witnesses who appear at the hearing, and to present information by proffer or otherwise.  The rules concerning admissibility of evidence in criminal trials do not apply to the presentation and consideration of information at the hearing.  The facts the judicial officer uses to support a finding pursuant to subsection (e) that no condition or combination of conditions will reasonably assure the safety of any

other person and the community shall be supported by clear and convincing evidence.  The person may be detained pending completion of the hearing.  The hearing may be reopened, before or after a determination by the judicial officer, at any time before trial if the judicial officer finds that information exists that was not known to the movant at the time of the hearing and that has a material bearing on the issue whether there are conditions of release that will reasonably assure the appearance of such person as required and the safety of any other person and the community.

  (g)  FACTORS TO BE CONSIDERED.—The judicial officer shall, in determining whether there are conditions of release that will reasonably assure the appearance of the person as required and the safety of any other person and the community, take into account the available information concerning—

    (1)   the nature and circumstances of the offense charged, including whether the offense is a crime of violence, a violation of section 1591, a Federal crime of terrorism, or involves a minor victim or a controlled substance, firearm, explosive, or destructive device;

    (2)   the weight of the evidence against the person;

    (3)   the history and characteristics of the person, including—

      (A)   the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and

      (B)   whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and

    (4)   the nature and seriousness of the danger to any person or the community that would be posed by the person's release.  In considering the conditions of release described in subsection (c)(1)(B)(xi) or (c)(1)(B)(xii) of this section, the judicial officer may upon his own motion, or shall upon the motion of the Government, conduct an inquiry into the source of the property to be designated for potential forfeiture or offered as collateral to secure a bond,

and shall decline to accept the designation, or the use as collateral, of property that, because of its source, will not reasonably assure the appearance of the person as required.

\*      \*      \*

### §3148.  Sanctions for violation of a release condition

(a)  AVAILABLE SANCTIONS.—A person who has been released under section 3142 of this title, and who has violated a condition of his release, is subject to a revocation of release, an order of detention, and a prosecution for contempt of court.

(b)  REVOCATION OF RELEASE.—The attorney for the Government may initiate a proceeding for revocation of an order of release by filing a motion with the district court.  A judicial officer may issue a warrant for the arrest of a person charged with violating a condition of release, and the person shall be brought before a judicial officer in the district in which such person's arrest was ordered for a proceeding in accordance with this section.   To the extent practicable, a person charged with violating the condition of release that such person not commit a Federal, State, or local crime during the period of release, shall be brought before the judicial officer who ordered the release and whose order is alleged to have been violated.   The judicial officer shall enter an order of revocation and detention if, after a hearing, the judicial officer—

(1)  finds that there is—

(A)  probable cause to believe that the person has committed a Federal, State, or local crime while on release; or

(B)  clear and convincing evidence that the person has violated any other condition of release; and

(2)  finds that—

(A)  based on the factors set forth in section 3142(g) of this title, there is no condition or combination of conditions of release that will assure that the person will not flee or pose a danger to the safety of any other person or the community; or

(B)  the person is unlikely to abide by any condition or combination of conditions of release.

If there is probable cause to believe that, while on release, the person committed a Federal, State, or local felony, a rebuttable presumption arises that no condition or combination of conditions will assure that the person will not pose a danger to the

safety of any other person or the community.  If the judicial officer finds that there are conditions of release that will assure that the person will not flee or pose a danger to the safety of any other person or the community, and that the person will abide by such conditions, the judicial officer shall treat the person in accordance with the provisions of section 3142 of this title and may amend the conditions of release accordingly.

  (c)  PROSECUTION FOR CONTEMPT.—The judicial officer may commence a prosecution for contempt, under section 401 of this title, if the person has violated a condition of release.

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on July 5, 2018, I electronically filed the foregoing memorandum with the Clerk of the Court for the United States Court of Appeals for the District of Columbia Circuit using the appellate CM/ECF system and caused four hard-copies of this memorandum to be hand-delivered to the Clerk of the Court for the United States Court of Appeals for the District of Columbia Circuit.  Participants in the case who are registered CM/ECF users will be served by the appellate CM/ECF system.

July 5, 2018                                   /s/ Frank P. Cihlar
                                              Frank P. Cihlar

# EXHIBIT B

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | |
| | ) | Case No. 1:18-cr-83 |
| PAUL J. MANAFORT, JR., | ) | |
| Defendant. | ) | |
| | ) | |
| | ) | |

## ORDER

In his recently filed motion to continue his July 25th trial, defendant correctly recites that he is currently housed at the Northern Neck Regional Jail in Warsaw, Virginia – a site which is located more than 100 miles from Alexandria and the District of Columbia. Defendant also avers that the terms of his pretrial detention at Northern Neck have made it difficult to prepare for trial in this document heavy bank and tax fraud case.

To ensure that defendant has access to his counsel and can adequately prepare his defense,

It is hereby **ORDERED** that the United States Marshal for the Eastern District of Virginia shall promptly transport the defendant from Northern Neck Regional Jail to the Alexandria Detention Center where he shall remain pending trial.

It is further **ORDERED** that the United States Marshal shall notify chambers as soon as the defendant arrives at the Alexandria Detention Center.

The Clerk is directed to provide a copy of this Order to all counsel of record.

Alexandria, Virginia
July 10, 2018

T. S. Ellis, III
United States District Judge

# EXHIBIT C

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division**

| | |
|---|---|
| UNITED STATES OF AMERICA | )<br>)<br>) |
| | )<br>) |
| v. | )<br>) |
| | ) |
| PAUL J. MANAFORT, JR., | )<br>) |
| | )<br>) |
| *Defendant.* | )<br>) |

Criminal No. 1:18-cr-00083-TSE

Judge T. S. Ellis, III

Trial Date: July 25, 2018

**DEFENDANT PAUL J. MANAFORT JR.'S RESPONSE TO THE
COURT'S JULY 10, 2018 ORDER RELATING TO HIS PLACE OF DETENTION**

Defendant Paul J. Manafort, Jr., by and through counsel, files this response to the Court's

July 10, 2018 Order relating to his place of detention. (Dkt. 113).  Earlier today, the Court issued

an order addressing some of the concerns raised by Mr. Manafort in his motion to continue the

trial. (Dkt. 109).  In that motion, one issue Mr. Manafort raised was the effect of his detention on

the pace of trial preparation.

The Court endeavored to address some of those concerns in its July 10, 2018 Order by

having Mr. Manafort relocated to the Alexandria Detention Center.  However, the concerns

underlying the request for a continuance, while specifically noting the substantial distance between

Northern Neck Regional Jail and Alexandria, were, at bottom, aimed more at the difficulty of

preparing for trial given Mr. Manafort's detention versus his prior status on pretrial release.

In light of Mr. Manafort's continuing detention and after further reflection, issues of

distance and inconvenience must yield to concerns about his safety and, more importantly, the

challenges he will face in adjusting to a new place of confinement and the changing circumstances of detention two weeks before trial.  With these considerations in mind, Mr. Manafort respectfully asks the Court to permit him to remain in his current place of detention.

WHEREFORE, Mr. Manafort respectfully requests that the Court rescind its order directing that he be moved and permit him to remain at the Northern Neck Regional Jail.

Dated: July 10, 2018

Respectfully submitted,

s/ Kevin M. Downing
Kevin M. Downing (*pro hac vice*)
Law Office of Kevin M. Downing
601 New Jersey Avenue NW
Suite 620
Washington, DC 20001
(202) 754-1992
kevindowning@kdowninglaw.com

s/ Thomas E. Zehnle
Thomas E. Zehnle (VSB No. 27755)
Law Office of Thomas E. Zehnle
601 New Jersey Avenue NW
Suite 620
Washington, DC 20001
(202) 368-4668
tezehnle@gmail.com

s/ Jay R. Nanavati
Jay R. Nanavati (VSB No. 44391)
Kostelanetz & Fink LLP
601 New Jersey Avenue NW
Suite 620
Washington, DC 20001
(202) 875-8000
jnanavati@kflaw.com

*Counsel for Defendant Paul J. Manafort, Jr.*

2

**CERTIFICATE OF SERVICE**

I hereby certify that on the 10th day of July, 2018, I will electronically file the foregoing with the

Clerk of Court using the CM/ECF system, which will then send a notification of such filing

(NEF) to the following:


Andrew A. Weissman
Greg D. Andres
Uzo Asonye
U.S. Department of Justice
Special Counsel's Office
950 Pennsylvania Avenue NW
Washington, DC 20530
Telephone: (202) 616-0800
Email: AAW@usdoj.gov
       GDA@usdoj.gov
       UEA@usdoj.gov


                                          s/ Jay R. Nanavati
                                         Jay R. Nanavati (VSB No. 44391)
                                         Kostelanetz & Fink LLP
                                         601 New Jersey Avenue NW
                                         Suite 620
                                         Washington, DC 20001
                                         (202) 875-8000
                                         jnanavati@kflaw.com

                                         *Counsel for Defendant Paul J. Manafort, Jr.*

# EXHIBIT D

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Alexandria Division**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| **v.** | ) | |
| | ) | **Case No. 1:18-cr-83** |
| **PAUL J. MANAFORT, JR.,** | ) | |
| **Defendant.** | ) | |
| | ) | |
| | ) | |

## ORDER

On July 6, 2018, defendant filed a motion to continue which detailed the trials and

travails of his detention at the Northern Neck Regional Jail:

> U.S. District Judge Amy Berman Jackson remanded Mr. Manafort
> to custody following his arraignment on a superseding indictment
> and after a bail revocation hearing.  Mr. Manafort was thereafter
> designated by the U.S. Marshals Service to the Northern Neck
> Regional Jail in Warsaw, Virginia, pending the trial scheduled in
> the D.C. Case for September 17, 2018. The Northern Neck
> Regional Jail is located approximately 100 miles away from Mr.
> Manafort's attorneys' offices and it generally takes over two hours
> each way by car for counsel to visit with him. No electronic
> communication is permitted (e.g., to allow for the transmission of
> documents for Mr. Manafort to review), and telephonic
> communication is restricted to ten (10) minutes per call. This
> unforeseen development has severely impacted the ability of the
> defense to effectively prepare for the upcoming trial before this
> Court.
>
> More specifically, Mr. Manafort's current detention has made
> meetings with his attorneys to prepare his defense far more
> infrequent and enormously time-consuming compared to when he
> remained on house arrest and subject to GPS monitoring in
> Alexandria, Virginia, pursuant to this Court's release order.

Def.'s Mot. to Continue, July 6, 2018.   As demonstrated by the above-quoted language,

defendant's ongoing detention at Northern Neck was one of the primary grounds for defendant's

motion seeking to continue the July 25th trial date.

Earlier this morning, an order was entered requiring the United States Marshal to transport defendant from Northern Neck to the Alexandria Detention Center to facilitate defendant's pretrial preparation.  This Order was intended to eliminate one of the primary concerns in defendant's motion to continue by housing him at a facility near his attorneys and his family.

At 5:00 p.m. this evening, however, defense counsel filed a motion opposing defendant's transfer from Northern Neck to Alexandria, despite having just complained about defendant being housed at Northern Neck.[1]  In the motion, defense counsel states that "issues of distance and inconvenience must yield to concerns about [defendant's] safety and, more importantly, the challenges he will face in adjusting to a new place of confinement and the changing circumstances."  Def.'s Motion Opposing Transfer, July 10, 2018.  However, defense counsel has not identified any general or specific threat to defendant's safety at the Alexandria Detention Center.  They have not done so, because the professionals at the Alexandria Detention Center are very familiar with housing high-profile defendants including foreign and domestic terrorists, spies and traitors.  All of those defendants were housed safely in Alexandria pending their respective trials and defendant's experience at the Alexandria Detention Center will presumably be no different.  Moreover, defendant's access to counsel and his ability to prepare for trial trumps his personal comfort.  Additionally, the decision to move the defendant to the Alexandria Detention Center will actually avoid the discomfort of long commutes during trial days.

Accordingly, and for all these reasons,

---

[1] It is surprising and confusing when counsel identifies a problem and then opposes the most logical solution to that problem.  The dissonance between defendant's motion to continue and motion opposing transfer to Alexandria Detention Center cannot be easily explained or resolved.

It is hereby **ORDERED** that defendant's motion opposing his transfer to the Alexandria Detention Center (Doc. 116) is **DENIED**.

It is further **ORDERED** that the United States Marshal shall comply with the Court's previous Order directing that defendant be transported from Northern Neck Regional Jail to be housed in the Alexandria Detention Center pending trial.

It is further **ORDERED** that to the extent practically possible, defendant should be permitted to meet and confer with his attorneys at least eight (8) hours per day during the next two (2) weeks leading up to trial.

The Clerk is directed to provide a copy of this Order to all counsel of record.

Alexandria, Virginia
July 10, 2018

/s/

T. S. Ellis, III
United States District Judge

# EXHIBIT E

**UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division**

| | |
|---|---|
| **UNITED STATES OF AMERICA** | |
| **v.** | |
| **PAUL J. MANAFORT, JR.,** | **Crim. No. 1:18-cr-83 (TSE)** |
| **Defendant.** | |

**GOVERNMENT'S OPPOSITION TO PAUL J. MANAFORT, JR.'S MOTION TO
CONTINUE THE TRIAL UNTIL AFTER THE WASHINGTON, D.C. TRIAL**

The United States of America, by and through Special Counsel Robert S. Mueller, III,

submits this opposition to defendant's motion for a continuance of the trial until a "time convenient

to this Court and following the trial currently scheduled in the case against Mr. Manafort pending

in the District of Columbia (the "D.C. Case")."  Dkt. 110 at 1.[1]

At the initial arraignment on this case on March 2, 2018, the Court scheduled a trial date

of July 10, 2018.  That date, although outside the Speedy Trial Act 70-day time-frame, was selected

after the Court heard from defense counsel regarding the need for additional time to prepare for

trial.  Dkt. 28.  That trial date was later adjourned for two more weeks, from July 10 to July 25.

Manafort now seeks to further delay the trial, not for a week or two, but for months.

The ostensible ground for such a lengthy adjournment is that Manafort was remanded in

the D.C. Case based on his illegal conduct in tampering with witnesses, and that, as a result of the

location and circumstances of his confinement, he cannot adequately prepare between June 15 and

---

[1] Unless otherwise indicated, record references are to the docket entries ("Dkt.") in *United States v. Manafort*, No. 18-cr-83-TSE (E.D. Va.).

1

the July 25 trial date.  That ground does not warrant the expansive relief sought, for the following reasons.

First, Manafort had a remedy if he believed that either the location of his incarceration or the conditions under which he could communicate with counsel were impinging on his trial preparation.  He chose not to seek such relief: he has never brought to the attention of this Court, the Court overseeing the D.C. Case, the Bureau of Prisons, or the prosecution any claim that he seeks to be housed either closer to Alexandria or Washington, D.C., or that he needs different accommodations in order to prepare for trial.[2]  Indeed, on June 21, 2018, the Honorable Amy Berman Jackson issued an Order, *sua sponte*, not at the request of the defense, specifying that "the defendant be afforded reasonable opportunity for private consultation with counsel."  Minute Order, *United States v. Manafort*, No. 17-cr-201-1 (ABJ) (D.D.C. June 21, 2018).  Neither before nor after that Order has the defense taken any issue with his access to counsel or to material to prepare his defense.  The government as early as June 15 (the very day Manafort was remanded) and as recently as Friday July 6, 2018, has offered to assist the defense if they had any concerns regarding where Manafort was detained or his conditions.  However, the defense has not brought a single issue to the government's attention, until it received this motion seeking to use his alleged prison conditions as a basis for an adjournment.

In short, Manafort should not be permitted to obtain a two- or three-month continuance based on circumstances he has never challenged or sought relief from, in spite of repeated invitations to do so.  Notably, in his submission yesterday, Manafort affirmatively states that he is

---

[2] Further, even as to the remand itself, Manafort did not file a notice of appeal of the remand decision until June 25, ten days after it was entered, and waited 13 days before filing a motion for release pending appeal.

not seeking to change the location in which he is incarcerated, yet he has not withdrawn his motion for a continuance largely predicated on an alleged inability to prepare with counsel.  *See* Dkt. 110.

Second, although Manafort's bail status has recently changed, that fact could not have affected his trial preparation with respect to the government discovery and any defense investigation prior to his remand on June 15.  Nor are the conditions of his incarceration since June 15, which he has not challenged, more restrictive than for other inmates (and in various ways less restrictive, as noted below), or unduly interfering with his ability to prepare for trial.  It is incorrect that Manafort has "very limited access to his attorneys and the records." Dkt. 110 at 6.  In fact, Manafort has reported, in a taped prison call, that he has reviewed all discovery: Just days before filing his motion for a continuance, Manafort told the person on the call that, "I've gone through all the discovery now."  And he has had extensive access to his counsel and materials: On July 4, 2018, Manafort remarked in a taped prison call that he is able to visit with his lawyers every day, and that he has "all my files like I would at home."

Specifically, contrary to Manafort's assertions about his jail conditions, Manafort is in a private unit in which he can review materials and prepare for trial.[3] Moreover, he is not confined to a cell.  Between the hours of 8:30am to 10:00pm, Manafort has access to a separate workroom at the jail to meet with his attorneys and legal team. Visitor logs from the prison indicate that each week Manafort has had multiple visits with his legal team.

---

[3] Among the unique privileges Manafort enjoys at the jail are a private, self-contained living unit, which is larger than other inmates' units, his own bathroom and shower facility, his own personal telephone, and his own workspace to prepare for trial. Manafort is also not required to wear a prison uniform.  On the monitored prison phone calls, Manafort has mentioned that he is being treated like a "VIP."

Manafort also has a personal telephone in his unit, which he can use over twelve hours a day to speak with his attorneys.[4] According to prison telephone logs, in the last three weeks Manafort has had over 100 phone calls with his attorneys, and another 200 calls with other persons. Those telephone logs indicate Manafort has spoken to his attorneys every day, and often multiple times a day. Manafort also possesses a personal laptop that he is permitted to use in his unit to review materials and prepare for trial. The jail has made extra accommodations for Manafort's use of the laptop, including providing him an extension cord to ensure the laptop can be used in his unit and not just in the separate workroom.[5]

Third, since June 15, 2018, the government has produced a manageable volume of new documents. As we alerted the defense and Judge Berman Jackson when the issue arose in the D.C. Case, because the government investigation is an ongoing one, inevitably additional documents will be produced to Manafort on a rolling basis as they come in. D.C. Case Bond Hr'g Tr., 6:9-11. Some documents need to first be reviewed by a taint team, to screen for privilege, such as attorney-client and marital privileges, a process that can be time consuming. Further, Manafort has a team of at least four partners on this matter; he is neither *pro se* nor represented by a single attorney with many other responsibilities. Until receipt of this motion, the defense has not complained at any time after the remand decision either to the Courts or to the government about

---

[4] The defense representation that telephonic communication "is restricted to ten (10) minutes per call" is incorrect. Dkt. 110 at 3. Each phone call session is limited to fifteen minutes, but there is no restriction on the number of phone call sessions, meaning that Manafort immediately can reconnect with his attorneys whenever the fifteen minutes expires. For example, according to telephone logs, Manafort has had successive phone call sessions with his attorneys that have lasted over forty minutes. The attorney calls are not monitored.

[5] Although the jail does not allow prisoners to send or receive emails, Manafort appears to have developed a workaround. Manafort has revealed on the monitored phone calls that in order to exchange emails, he reads and composes emails on a second laptop that is shuttled in and out of the facility by his team. When the team takes the laptop from the jail, it reconnects to the internet and Manafort's emails are transmitted.

the ongoing discovery (and had not raised any issues about such discovery since approximately February).

All that being said, the total number of documents produced since June 15 is approximately 32,544, as the attached chart of government productions demonstrates. Ex. A. The vast bulk of that (20,207) are documents from a bookkeeping service (NKSFB) that works for Manafort, who has had access to this material long before the government did. Indeed, over a year ago, the government was negotiating with Manafort's defense counsel to obtain the non-privileged NKSFB documents, so Manafort cannot now plausibly claim he needs more time to review these documents because they were only recently made available to him. As for the documents on the Gates MacBook, there are 8,290 documents; review of that material can be accomplished well in advance of the July 25 trial date and does not warrant a months-long adjournment.

Fourth, one would have thought that if the alleged inability to prepare adequately was animating the motion herein, Manafort would have sought to adjourn both trials, here and the D.C. Case, not just seek to reverse the order of the trials (relief he sought but was denied at the time of his arraignment). Arraignment Tr., 15:25-16:5. After all, given the overlap in subject matter of the two trials, his preparation presumably would be impacted in both cases, not just one. And it is the D.C. Case that has been recently superseded to add two additional charges related to witness tampering. Manafort can hardly now complain about the order of the trials: he was on notice from the Honorable Amy Berman Jackson, when he elected last winter not to have the proposed tax and bank fraud charges all brought in the D.C. Case, that his decision would likely result in his going to trial in Virginia first. D.C. Case Status Hr'g Tr. (Jan. 16, 2018). That other reasons may account for this application is strongly suggested by a prison call in which Manafort discusses going to trial first in the D.C. Case and contends to the listener (who did not believe the D.C. venue was

favorable) that the listener should "think about how it'll play elsewhere….There is a strategy to it, even in failure, but there's a hope in it."  Phone Call of Manafort (June 20, 2018), at 4:02-4:39.

Finally, Manafort argues that an adjournment in the Eastern District of Virginia trial is needed to allow "passions to cool."  Dkt. 110 at 5.  He cites no evidence that there are jury pool passions about Manafort that need to cool or that could not be weeded out in the course of thorough jury selection.  *See Skilling v. United States*, 561 U.S. 358, 388 (2010) (lengthy *voir dire*, including questionnaire, secured impartial jurors.)  And even if he had produced evidence of such passions, he has cited no evidence that such passions would cool in the ensuing two months, around election season.  Nor does he explain why the same alleged passions do not exist in the D.C. Case—a venue that presumably Manafort views as akin to the Alexandria venue he seeks to avoid for the reasons articulated in his change of venue motion, i.e., who a proposed juror voted for and exposure to "inside the beltway" media.  *See* Dkt. 107 at 6-7.  Yet Manafort has not made a motion to change venue or adjourn the trial in the D.C. Case, where the deadline for such motions has passed.

## CONCLUSION

For these reasons, the government opposes Manafort's motion for a continuance.

Respectfully submitted,

ROBERT S. MUELLER, III
Special Counsel

Dated: July 11, 2018

Uzo Asonye
Assistant United States Attorney
Eastern District of Virginia

/s/ Andrew Weissmann
Andrew Weissmann
Greg D. Andres
Brandon L. Van Grack
Special Assistant United States Attorneys
Special Counsel's Office

U.S. Department of Justice
950 Pennsylvania Avenue NW
Washington, D.C. 20530
Telephone: (202) 616-0800

*Attorneys for United States of America*

## CERTIFICATE OF SERVICE

I hereby certify that on the 11th day of July, 2018, I will cause to be filed electronically the

foregoing with the Clerk of Court using the CM/ECF system, which will then send a notification

of such filing (NEF) to the following:


Thomas E. Zehnle (VA Bar No. 27755)
Law Office of Thomas E. Zehnle
601 New Jersey Avenue, N.W., Suite 620
Washington, D.C. 20001
tezehnle@gmail.com

Jay R. Nanavati (VA Bar No. 44391)
Kostelanetz & Fink LLP
601 New Jersey Avenue, N.W., Suite 620
Washington, D.C. 20001
jnanavati@kflaw.com



/s/ Andrew Weissmann
Andrew Weissmann
Special Assistant United States Attorney
Senior Assistant Special Counsel
U.S. Department of Justice
Special Counsel's Office
950 Pennsylvania Avenue N.W.
Washington, D.C. 20530
Telephone: (202) 616-0800
Fax: None
E-mail: AAW@usdoj.gov

*Attorney for the United States of America*

8

**ATTACHMENT A**

| Date of Production | Document Description | Document Total |
|---|---|---|
| 06/20/18 | Records from vendor | 1 |
| | Property-related records | 1 |
| | Documents related to FARA charges | 483 |
| | Imaged documents from Rick Gates's personal devices | N/A |
| | Financial records | 1 |
| | Government investigative records | 1 |
| 07/02/18 | Imaged documents from Rick Gates's personal laptop | 8,290 |
| | Bank records | 21 |
| | Bank records | 14 |
| | Bank records | 30 |
| | Secretary of State corporate records | 7 |
| | Bank records | 70 |
| | Bank records | 74 |
| | Bank records | 4 |
| | Financial records | 1 |
| | Bank records | 6 |
| 07/06/18 | Defendant's personal financial records (NKSFB) | 20,207 |
| | Documents related to FARA charges | 1 |
| 07/09/18 | Audio recordings of defendant Manafort's phone calls | 53 |
| 07/10/18 | Bank records | 271 |
| | Records from vendor | 1 |
| | Secretary of State corporate records | 32 |
| | Financial records | 3 |
| | Bank records | 1 |
| | Tax records | 2 |
| | Documents related to DMP International LLC | 2,968 |
| | Records from vendor | 1 |
| | TOTAL | 32,544 |