

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

**FILED**

**JUL 1 8 2018**

Clerk, U.S. District & Bankruptcy
Courts for the District of Columbia

|   |   |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| v. | ) |
| | ) |
| PAUL J. MANAFORT, JR., | ) |
| | ) |
| Defendant. | ) |
| | ) |

\*\*\* PUBLIC \*\*\*

Crim. Action No. 17-0201-01 (ABJ)

## <u>MEMORANDUM OPINION AND ORDER</u>

Defendant Paul J. Manafort, Jr. has moved to suppress the evidence seized pursuant to a search warrant executed at his Alexandria, Virginia residence on July 26, 2017. Def.'s Mot. to Suppress [Dkt. # 264] ("Def.'s Mot.") at 1–2. He argues that the warrant was unconstitutionally overbroad. *Id.* at 1–4. He also complains that the affidavit submitted in support of the warrant application did not set forth probable cause to support the seizure of electronic devices; that the agents who executed the search exceeded its permissible scope; and that the government has improperly retained some of the items it seized. *Id.* at 1–2, 4–10.[1] The government opposed the motion, Gov't Mem. in Opp. to Def.'s Mot. (Public) [Dkt. # 284], (Sealed) [Dkt. # 286] ("Gov't Opp."), the motion is fully briefed, *see* Def.'s Reply to the Gov't Opp. [Dkt. # 289] ("Def.'s Reply"), and the Court heard argument on May 23, 2018. As explained in more detail below, the

---

1       Manafort does not raise any concerns about the manner in which the agents gained entry to the apartment to execute the warrant. *See* Tr. of Mots. Hr'g (May 23, 2018) [Dkt. # 305] ("Tr.") at 56. He does assert that the Special Counsel did not have the authority or jurisdiction to apply for a search warrant at all, Def.'s Mot. at 1, citing his Motion to Dismiss the Superseding Indictment [Dkt. # 235]. But this Court has already considered and denied that motion. *United States v. Manafort*, No. 17-CR-201, 2018 WL 2223656 (D.D.C. May 15, 2018); *see also United States v. Manafort*, No. 18-CR-83, 2018 WL 3126380 (E.D. Va. June 26, 2018) (denying motion made on similar grounds to dismiss a superseding indictment filed by the Office of Special Counsel against Manafort in the Eastern District of Virginia).

Court will deny the motion. Given the nature of the investigation, the warrant was not too broad in scope, and the affidavit set forth sufficient grounds to believe that there would be relevant material on the premises stored on electronic media. And, even if the Court could find fault with the warrant application if it were reviewing it in the first instance, the agents relied in good faith on a warrant signed by a United States Magistrate Judge. For all of these reasons, the evidence obtained during the execution of the warrant will not be suppressed.

## FACTUAL BACKGROUND

On July 25, 2017, federal agents applied for a warrant in the United States District Court for the Eastern District of Virginia, seeking authorization to search Manafort's condominium in Alexandria.[2]   Search Warrant, Notice Att. at 1–16 ("Warrant").   The application sought authorization to search for and seize materials relating to alleged violations of ten criminal statutes, Application for a Search Warrant, Notice Att. at 17–66 ("Appl."), and it was supported by an affidavit prepared by an FBI agent, who stated there was "probable cause to believe that the [Alexandria residence] contain[ed] evidence, fruits, and instrumentalities" of those offenses. Aff. in Supp. of Appl., Notice Att. at 22–62 ("Aff.") ¶ 3.

The agent averred that between 2006 and 2014, Manafort and his associate, Richard W. Gates, III, worked as political consultants for the Ukrainian Party of Regions, and Viktor Yanukovych, who was the head of the Party and the President of Ukraine from 2010 to 2014. Aff. ¶ 9. According to the affidavit, Manafort and Gates established a number of bank accounts

---

2    Defendant attached to his motion a partially redacted copy of the search warrant and application. *See* Def.'s Mot., Ex. A [Dkt. # 264-1]; Ex. B [Dkt. # 264-2]. A version of the search warrant and application with fewer redactions was subsequently filed on the docket. *See* Not. of Submission [Dkt. # 340] ("Notice"); Attachment to Notice [Dkt. # 340-1] ("Notice Att."). A fully unredacted version appears at [Dkt. # 286-1]. Where possible, the Court will cite to public information in these materials. For ease of reference, it will use the docket page numbers appearing at the top of each page of the Notice Attachment in citing specific pages of these documents.

in Cyprus. Aff. ¶¶ 11–12. Those accounts received payments to Manafort or Manafort-related entities for their work on behalf of the Ukrainians, and they were used to pay vendors directly for goods and services purchased by Manafort. Aff. ¶¶ 11–14. The affiant also states that Manafort performed "significant work" for Rinat Akhmetov, a financial supporter of President Yanukovych, and Oleg Deripaska, a Russian oligarch. Aff. ¶ 9. He adds that a company jointly owned by Manafort and his wife received a $10 million loan from a "Russian lender," identified in documents obtained by the government as "Derapaska." Aff. ¶ 16.

The affidavit sets forth grounds to believe that Manafort, Gates, and their entities, including Davis Manafort, failed to register as agents of a foreign principal as required by the Foreign Agent Registration Act ("FARA"), 22 U.S.C. §§ 611–21, until June of 2017. Aff. ¶¶ 19, 9. The agent also stated that the foreign source income reported on Manafort's tax returns did not appear to include the distributions to or from the Cypriot bank accounts on his behalf, Aff. ¶¶ 20–21, nor did Manafort file the reports required by the Bank Secrecy Act, 31 U.S.C. §§ 5314 and 5322(a), to disclose his interest in those foreign accounts. Aff. ¶ 18. The affidavit also detailed alleged misrepresentations to secure bank loans and loan extensions. Aff. ¶¶ 24–46. ████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

███████████████████████████████

The agent then listed a number of facts and circumstances underlying his belief that defendant's Alexandria residence was likely to contain evidence of these crimes. First of all, an individual who works with Manafort had told the agent that Manafort used a home office at that address to conduct his business and that he maintained records there. Aff. ¶¶ 64–66. Also, defendant had communicated with the Department of Justice about filings to be made under

FARA, and at least one communication from 2016 was addressed to defendant's Alexandria residence. Aff. ¶ 68. The government was in possession of bank and financial records for defendant, ██████ and "Davis Manafort Part." addressed to his residence in Alexandria, and it had records showing that Manafort's prior residence had been listed as the address of record for a number of accounts. Aff. ¶¶ 70–71. Also, investigators had obtained bank records and invoices sent to defendant's home in Alexandria reflecting the purchase of clothing, jewelry, rugs, and other goods using funds wired from several of the Cypriot accounts listed in the affidavit. Aff. ¶¶ 72–73. They had evidence of wire transfers from the Cypriot accounts to a rug store in Alexandria totaling more than $360,000, and a store owner reported that it was defendant who purchased the rugs. Aff. ¶ 73. This led the agent to believe that rugs purchased using funds from the Cypriot accounts would also be found at the residence. Aff. ¶ 73.

With regard to electronic files, the employee source told the agent that Manafort: used a Mac desktop computer in his home office; "frequently stored" historical and current records on "external hard drives, thumb drives, and magnetic disks;" "made widespread use of electronic media in the course of his business activity;" and had kept a "drawer full of phones and electronic equipment" at a prior residence. Aff. ¶ 76.

Based on the application and supporting affidavit, U.S. Magistrate Judge Theresa C. Buchanan approved the issuance of a search warrant on July 25, 2017. Warrant, Notice Att. at 1. The warrant authorized law enforcement agents to search defendant's Alexandria residence, including "any locked drawers, containers, cabinets, safes, computers, electronic devices, and storage media (such as hard disks or other media that can store data) found therein." Warrant, Notice Att. at 12. Among other items, it authorized agents to seize:

1.  Records relating to violations of 31 U.S.C. §§ 5314, 5322(a) (failure to file a report of foreign bank and financial accounts); 22 U.S.C. § 611, *et. seq.* (foreign agents registration act); 26 U.S.C. § 7206(1) (filing a false tax return); 18 U.S.C. § 1014 (fraud in connection with the extension of credit); 18 U.S.C. §§ 1341, 1343, and 1349 (mail fraud, wire fraud, and conspiracy to commit these offenses); 18 U.S.C. §§ 1956 and 1957 (money laundering and money laundering conspiracy); 52 U.S.C. §§ 30121(a)(l)(A) and (a)(2) (foreign national contributions); and 18 U.S.C. §§ 371 and 2 (conspiracy, aiding and abetting, and attempt to commit such offenses) . . . occurring on or after January 1, 2006, including but not limited to:

    a.  Any and all financial records for Paul Manafort, Jr., ███████ ███████ Richard Gates, or companies associated with [them] . . . ;

    * * *

    i.  Evidence indicating Manafort's state of mind as it relates to the crimes under investigation; . . . . [and]

    * * *

2.  Computers or storage media used as a means to commit the Subject Offenses.

Warrant, Notice Att. at 13–14.

On July 26, 2017, FBI agents executed the warrant and prepared an inventory of records that they either seized or imaged on site. Warrant Return, Notice Att. at 2–11 (listing financial documents including bank statements, deposit slips, transaction registers; business and personal records including documents concerning real estate and taxes; and an iMac desktop computer, a MacBook Air laptop computer, thumb drives, external hard drives, CDs, memory accessories to cameras and printers, a "G drive," DVD disks, as well as an iPod, two iPads, and an iPhone). The agents imaged many of the electronic devices, including the two computers, on site and left them there. Gov't Opp. at 6; Warrant Return, Notice Att. at 7–9.

As part of the seizure, agents identified ten sets of documents as potentially covered by the attorney client privilege. Warrant Return, Notice Att. at 10–11. This material was separated and made available to defense counsel. Gov't Opp. at 6. The government utilized attorneys who were

not members of the trial team to screen electronic devices that had been seized for privileged materials and used automated processes to screen for irrelevant materials. Gov't Opp. at 6. The government described the procedure it was following for these purposes in correspondence with defense counsel. Gov't Opp. at 19–20; Letter of Nov. 17, 2017, Ex. A to Gov't Opp. [Dkt. # 284-1] ("Nov. 17 Letter") at 3, 11; Letter of Dec. 1, 2017, Ex. B to Gov't Opp. [Dkt. # 284-2] at 3.

## LEGAL STANDARD

The Fourth Amendment to the United States Constitution states:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. Const. amend. IV. The Supreme Court has explained that a search warrant is supported by probable cause if there is a "fair probability that . . . evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 238 (1983). Agents executing a search warrant must do so "in a reasonable manner, appropriately limited to the scope and intensity called for by the warrant." *United States v. Heldt*, 668 F.2d 1238, 1256 (D.C. Cir. 1981). The proponent of a motion to suppress bears the burden of establishing that his Fourth Amendment rights were violated by the challenged search or seizure. *Rakas v. Illinois*, 439 U.S. 128, 130 n.1 (1978).

## ANALYSIS

Defendant argues that the warrant authorizing the search of his residence violated the Fourth Amendment because it was overbroad and it impermissibly authorized seizure of electronic devices without probable cause. He also contends that agents violated the Fourth Amendment by seizing and retaining materials that fell outside the scope of the warrant.

I.      **The search warrant was sufficiently particularized and not overbroad.**

The Constitution limits searches by law enforcement to "the specific areas and things for which there is probable cause to search," and it requires that a search "be carefully tailored to its justifications" and "not take on the character of the wide-ranging exploratory searches the Framers intended to prohibit." *Maryland v. Garrison*, 480 U.S. 79, 84 (1987). Accordingly, "[s]earch warrants must be specific." *United States v. Hill*, 459 F.3d 966, 973 (9th Cir. 2006). "Specificity has two aspects:  particularity and breadth. Particularity is the requirement that the warrant must clearly state what is sought.  Breadth deals with the requirement that the scope of the warrant be limited by the probable cause on which the warrant is based." *Id.*, quoting *United States v. Towne*, 997 F.2d 537, 544 (9th Cir. 1993).

Defendant contends that the warrant fails to "particularly describ[e] the place to be searched, and the persons or things to be seized," Def.'s Mot. at 2 (edits in original), quoting *Jones v. Kirchner*, 835 F.3d 74, 79 (D.C. Cir. 2016) and *Marron v. United States*, 275 U.S. 192, 195–96 (1927), and he points to the provisions in the warrant that call for the seizure of:

- "[a]ny and all financial records," Warrant ¶ 1a, Notice Att. at 13;

- "[e]vidence indicating Manafort's state of mind as it relates to the crimes under Investigation," Warrant ¶ 1i, Notice Att. at 14; and

- "[c]omputers or storage media used as a means to commit the Subject Offenses," Warrant ¶ 2, Notice Att. at 14.

Def.'s Mot. at 2.

Manafort's objections are not well-taken, though, because they ignore the fact that these provisions are plainly limited by the scope of the overarching authorization to seize only "records relating to" the specifically enumerated offenses. *See* Warrant ¶ 1, Notice Att. at 13.  The application requested permission to search for and seize "records relating to" the subject offenses, "*including but not limited to*: . . . [a]ny and all financial records for Paul Manafort, Jr.,

█████████ Richard Gates, or companies associated with [them] . . . [and] [e]vidence indicating Manafort's state of mind as it relates to the crimes under investigation." Appl. Attach. B ¶¶ 1, 1a, 1i, Notice Att. at 19–20 (emphasis added). In other words, the categories Manafort complains about are listed as examples of the types of records that would be covered by the warrant – subsets of the set of responsive records bounded by the particular crimes under investigation.

The Supreme Court has held that individual phrases in a search warrant must be read in the context of the rest of the warrant – in particular, the list of offenses – and not in isolation. *Andresen v. Maryland*, 427 U.S. 463, 479–82 (1976). In *Andresen*, the Court construed the broad grant of authority to seize "other fruits, instrumentalities and evidence of crime at this (time) unknown" in the context of the warrant's "lengthy list of specified and particular items to be seized," *id.* at 479–80, and it found that the warrant only permitted the executing officers "to search for and seize evidence relevant to the crime [alleged] and [the property at issue]." *Id.* at 481–82.

The defense asserts in his motion that authorizing a search for "'any and all financial records' of everyone residing at the subject location is exceptionally broad," and that "nothing in the affidavit justifies so broad a warrant." Def.'s Mot. at 3. But the D.C. Circuit held in *United States v. Dale*, 991 F.2d 819, 846–50 (D.C. Cir. 1993) (per curium), that when a warrant application, as here, alleges making a false statement in a tax return, a search for "any and all financial records" related to that offense would be valid under the Fourth Amendment. The Court explained that courts may "consider[ ] the circumstances of the crime in assessing the degree of particularity that should be required of descriptions of items to be seized in the warrant." *Id.* at 848. Similarly, in *United States v. Fattah*, 858 F.3d 801, 819–20 (3d Cir. 2017), the court rejected a challenge to a search warrant that authorized seizure of "all financial records" in a case involving allegations including bank fraud and filing false tax returns. It held that the particularity

requirement is to be applied with flexibility, especially "in cases involving complex schemes spanning many years that can be uncovered only by exacting scrutiny of intricate financial records." *Id.*, citing *United States v. Christine*, 687 F.2d 749, 760 (3d Cir. 1982).

The offenses set forth in the affidavit justified a broad search of Manafort's financial records, and the facts alleged also supported the grant of permission to seize records belonging to others. The affidavit identified transfers of millions of dollars from the Cypriot bank accounts allegedly funded by the Ukrainians to a number of U.S. accounts and entities associated with Manafort and ███████. Aff. ¶¶ 21–22. And the affidavit details alleged misrepresentations by Manafort to obtain bank loans and loan extensions, Aff. ¶¶ 23–46, including an alleged scheme by a limited liability company owned by ███████ to obtain a multi-million dollar loan. Aff. ¶¶ 27, 34. Those facts supported the issuance of a warrant to seize financial records belonging not only to the defendant, but also ███████ his business associate, and their affiliated companies.

The defense next argues that the provision allowing the seizure of "[e]vidence indicating Manafort's state of mind as it relates to the crimes under investigation," Warrant ¶ 1i, Notice Att. at 14, imposed no limits on the executing agents' discretion because all of the alleged offenses require knowledge and intent. Def.'s Mot. at 3. But this is precisely why this sort of provision was permissible. For example, records concerning one transaction may show a defendant's intent to defraud in another transaction. *See Andresen*, 427 U.S. at 483–84 (seizure of documents reflecting unrelated transaction was permissible under the Fourth Amendment because the documents could help show defendant's intent); *United States v. Wormick*, 709 F.2d 454, 459 (7th Cir. 1983), citing *Andresen*, 427 U.S. at 483 (evidence of other false statements may be introduced to show that the false report at issue was part of an intentional scheme rather than an accident or mistake).

9

Finally, the defendant complains that the second category of items the warrant permitted the agents to seize -- "[c]omputers or storage media used as a means to commit" the alleged offenses, Warrant ¶ 2, Notice Att. at 14 -- is also overbroad because it failed to limit the agents' discretion in determining which computers or storage media fit that description. Def.'s Mot. at 3. But the only case he relies upon does not bear on this question.

Courts consider the totality of circumstances in determining the validity of a warrant, *Gates*, 462 U.S. at 230, and a key factor to be considered is the information available to the government. This principle applies when agents have reason to believe that electronic devices will be found at a location, but cannot precisely identify them. For instance, in *United States v. Loera*, 59 F. Supp. 3d 1089 (D.N.M. 2014), the court upheld a warrant authorizing seizure of "[a]ny computers, cell phones, and/or electronic media that could have been used as a means to commit the offenses described." *Id.* at 1099, 1153. "Under the circumstances of the case, the agents had no information with which they could have provided further clarity in the search warrant . . . . They had no idea what computer equipment or electronic devices that [the defendant] would have used to access his electronic mail accounts, the hijacked electronic mail account, or the Domain, or where he could have concealed evidence that he had done so." *Id.* at 1152.

Manafort states that the D.C. Circuit "found wanting a similar warrant" in *United States v. Griffith,* 867 F.3d 1265 (D.C. Cir. 2017). Def.'s Mot. at 3. But as the excerpt he quotes from the case reveals, *Griffith* involved a warrant that "authorized the wholesale seizure of all electronic devices discovered in the apartment, including items owned by third parties, *see* Def.'s Mot. at 3, quoting *Griffith* at 1270–71, and it did not involve a provision approving the seizure of devices that had been "used" in specific offenses. So the warrants are not "similar," and the case is not instructive on this point. Since the challenged provision in the warrant involving Manafort's

residence was limited to computers used in the particular offenses identified, it was clear that provision did not authorize the wholesale removal of every electronic device in the house, and it was not so vague or broad to require invalidation of the entire warrant.

Therefore, the Court holds that the search warrant was sufficiently particularized.

## II.     The application contained ample grounds to believe that electronic records related to the offenses identified in the warrant would be stored on the premises.

Relying on *Griffith* again, Manafort argues that the "affidavit does not establish probable cause to believe that the electronic devices purportedly used in the commission of the subject offenses are likely to be found in the Manafort Home." Def.'s Mot. at 4–5, quoting *Griffith*, 867 F.3d at 1271 ("A search warrant . . . is grounded in probable cause to believe that the legitimate object of a search is located in a particular place.").

The law is clear that an affidavit in support of a warrant application "must provide the magistrate with a substantial basis for determining the existence of probable cause," and it cannot consist of "wholly conclusory statement[s]." *Gates*, 462 U.S. at 239. "[P]robable cause is a fluid concept – turning on the assessment of probabilities in particular factual contexts – not readily, or even usefully, reduced to a neat set of legal rules." *Id.* at 232. The Supreme Court has recognized that the "task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that . . . evidence of a crime will be found in a particular place." *Id.* at 238 (abandoning the rigid two-prong test for determining informant veracity in favor of a totality of circumstances approach).

Manafort's objections to the warrant on these grounds fall short for several reasons. First, it was not necessary for the agent to allege that the electronic devices on the premises had themselves been *used* in the commission of the offense; while the warrant did call for the *seizure*

of any that had, *see* Warrant ¶ 2, Notice Att. at 14, it also authorized the *search* of electronic devices for relevant records that might be stored on them. Warrant, Notice Att. at 12. Thus, it was sufficient that the affidavit provided reason to believe that evidence related to the crimes listed in the warrant would be stored on the devices in the home. *See Griffith*, 867 F.3d at 1273 (to justify the search for and seizure of a cell phone, "police needed reason to think not only that [the defendant] possessed a phone, but also that the device would be located in the home and would contain incriminating evidence about his suspected offense").

Second, once more, *Griffith* is distinguishable. In that case, the police were following leads in a year-old murder case. The D.C. Circuit invalidated the warrant because "the affidavit failed to establish probable cause to believe that *any* cell phone (or other electronic device) containing incriminating information about Griffith's suspected offense would be found in the apartment." 867 F.3d at 1279 (emphasis in original). The Court of Appeals noted the lack of any allegation in the affidavit that the defendant even possessed a cell phone, as well as the absence of any evidence that he was still in possession of the same cell phone he might have used at the time of the murder under investigation. *Id.* at 1278. Also, Griffith had been incarcerated on other charges in the interim. The Court was therefore concerned that even if Griffith did own a phone at the time the agent applied for the warrant, there were no facts in the affidavit suggesting that it would still contain evidence from the year before, or, if he had obtained a new phone, that it would contain anything of value. And there were no facts tying phones belonging to any other occupant of the apartment to the offense at all. *See id.* at 1276. At bottom, the problem in *Griffith* was the failure to articulate any connection between the items to be seized and the crime that was being investigated; the Circuit based its ruling on the "limited likelihood that any cell phone discovered in the apartment would contain incriminating evidence of Griffith's suspected crime." *Id.* at 1275.

12

That is hardly a problem in this case. The crimes for which probable cause was set forth in the affidavit relate to the conduct of an international business operation and international financial transactions, and they involve activities for which records are ordinarily generated and often retained on electronic media. Moreover, the agent specifically averred, based on information provided by a person with knowledge, that Manafort maintained business records in his home and conducted business with his computer. Aff. ¶¶ 65, 69. In particular, the allegations in paragraphs 64, 65, 66, and 68, 69, and 70 of the affidavit set forth what was missing in *Griffith*, and therefore, that case does not require the exclusion of the evidence here.

The affidavit included information from a source with knowledge of how the defendant maintained his electronic records. The source was an individual who had worked for Manafort's consulting business, and then worked for Manafort directly. Aff. ¶ 62. Information from the source about the contents of a storage unit used by Manafort had proved to be accurate, Aff. ¶ 63, and he was last inside the residence approximately two weeks before the agent applied for the search warrant for that location. Aff. ¶ 67. In other words, the source had the necessary "basis of knowledge" for what he reported concerning defendant's use of electronic devices. *Gates*, 462 U.S. at 238.

Furthermore, the source told the agent that Manafort used a Mac desktop computer in his home office in the residence, "frequently stored" historical and current records on "external hard drives, thumb drives, and magnetic disks," "made widespread use of electronic media in the course of his business activity," and had kept a "drawer full of phones and electronic equipment" at a prior residence. Aff. ¶ 76.

The affidavit also contained other facts indicating that electronic devices in the residence would likely contain evidence of the alleged crimes. The government had already obtained

numerous email communications related to the offenses of interest, including exchanges with Gates concerning FARA reporting requirements, Aff. ¶ 19; emails related to the payment of vendors using funds from a Cypriot account, Aff. ¶ 14; and ████████████████████████ ██████ Thus, the affidavit presented grounds for the Magistrate Judge to conclude that there was probable cause to believe that Manafort regularly relied on electronic communications in the conduct of his affairs, that electronic devices used by defendant could be found in the Alexandria residence, and that they would contain evidence of the alleged crimes. *See Griffith*, 867 F.3d at 1273 (stating that probable cause may be based on a "reliable indication of a suspect's possession" of a device and reason to think the device "would contain incriminating evidence about his suspected offense").

III.   **The agents relied in good faith on a warrant signed by a federal Magistrate Judge, and therefore, the exclusionary rule does not apply.**

As the Court found in connection with the warrant to search the contents of the storage unit in this case, *United States v. Manafort*, No. 17-CR-0201, 2018 WL 3079474 (D.D.C. June 21, 2018), the evidence seized while executing the warrant for the residence should not be suppressed even if this Court could find reasons to differ with the issuing magistrate. The agents were acting within the scope of a valid warrant when they conducted the search, and their reliance on the warrant issued by the Magistrate Judge was objectively reasonable. According to the Supreme Court, in those circumstances, exclusion is not the appropriate remedy. *United States v. Leon*, 468 U.S. 897, 920–22 (1984). This good faith exception to the exclusionary rule applies not only when a reviewing court concludes that the affidavit in support of the warrant lacked probable cause, but also to warrants later found to be overbroad. *See Massachusetts v. Sheppard*, 468 U.S. 981, 987–91 (1984); *United States v. Maxwell*, 920 F.2d 1028, 1034 (D.C. Cir. 1990).

In *Leon*, the Court made it clear that suppression is not available as a remedy in every situation in which a reviewing court concludes that there has been a constitutional violation, and the D.C. Circuit has reiterated that a mere disagreement with the issuing court is not sufficient to justify the exclusion of evidence. "That is because the 'exclusionary rule was adopted to deter unlawful searches by police, not to punish the errors of magistrates and judges.'" *United States v. Spencer*, 530 F.3d 1003, 1006 (D.C. Cir. 2008), quoting *Sheppard*, 468 U.S. at 990. The Supreme Court recognized that "[i]n the ordinary case, an officer cannot be expected to question the magistrate's probable-cause determination or his judgment that the form of the warrant is technically sufficient." *Leon*, 468 U.S. at 921. "Nevertheless, the officer's reliance on the magistrate's probable-cause determination and on the technical sufficiency of the warrant he issues must be objectively reasonable . . . ." *Id.* at 922.

Manafort's argument that it was not reasonable for the agents to rely on the warrant here is largely conclusory; he simply repeats his complaint that the warrant was flawed because it authorized the seizure of "any and all financial records" as well as broad categories of electronic devices and storage media. Def.'s Mot. at 3. But this does not negate the proposition that the agents were entitled to rely on the judgment and expertise of the federal Magistrate Judge who reviewed and signed the warrant. And, as explained above, the warrant is sufficiently particularized, and the nature and number of criminal offenses under investigation justified a search for broad categories of business records which are often stored on computers and other devices, so it was not objectively unreasonable for the agents to rely upon the Magistrate Judge's decision to permit the search.

Defendant again points the Court to the opinion of the D.C. Circuit in *United States v. Griffith*, in which the Court found a search warrant to be both so lacking in probable cause to

believe that evidence would be found on the premises, and so overbroad in its description of the items to be seized, that it ordered the evidence to be excluded notwithstanding *Leon.* Def.'s Mot. at 5–6, citing 867 F.3d at 1278. But the defense again places too much weight on that decision, which did not purport to narrow the *Leon* principle, but simply found it to be "inapplicable in the particular circumstances" of that case. *Griffith*, 867 F.3d at 1278.[3]

*Griffith* is inapposite primarily because the decision to suppress was based on the unique combination of the Court's finding that the affidavit was "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable," 867 F.3d at 1278, quoting *Leon*, 468 U.S. at 923, and the concerns about overbreadth. While Griffith, the individual under investigation, lived in an apartment leased by his girlfriend, "the warrant did not stop with any devices owned by Griffith, which already would have gone too far. It broadly authorized seizure of *all* cell phones and electronic devices, without regard to ownership." *Id.* at 1276 (emphasis in original). This compounded the problem the Court of Appeals had already identified, that "the affidavit failed to establish probable cause to believe that *any* cell phone (or other electronic device) containing incriminating information about [the defendant's] suspected offense would be found in the apartment." *Id.* at 1279 (emphasis in original); *see also id.* at 1278 ("[T]he affidavit sought, and the warrant granted, authorization to search for and seize every electronic device found in the home. The warrant's material overbreadth in that regard underscored the police's unawareness of the existence of any such devices in the first place (much less the existence of any belonging to Griffith) . . . .").

---

3       The defense acknowledged that *Griffith* did not change the legal standard. Tr. at 72–73. ("THE COURT: You don't suggest that just because *Griffith* decided to find an exception, that it has purported to change the standard applicable in these cases? MR. WESTLING: I don't think that we say that it has changed the standard.").

Thus, there is little in the opinion that bears on the case at hand. The claimed overbreadth here is not comparable since the warrant application did not ask for devices or files with no connection to Manafort or the financial transfers to him ████████ that were the subject of FBI scrutiny. And unlike the affidavit that failed to aver that Griffith even had a cell phone, much less a cell phone that might still contain messages that had been exchanged about a murder a year before, the affidavit here supplied reason to believe that the business and banking records that were the object of the search had been seen and could still be found in the premises to be searched.

## IV.   The government's execution of the search warrant and retention of seized materials did not violate the Fourth Amendment.

Finally, the defense argues that the agents who executed the search warrant exceeded its scope when they seized or copied "every electronic and media device in the Manafort Home," including an Apple iPod and other music devices and cameras and video cameras. Def.'s Mot. at 7. Defendant asserts that agents could not have reasonably believed these devices were "used in the commission of the subject offenses." Def.'s Mot. at 6–7, quoting *Heldt*, 668 F.2d at 1256, 1260 (holding that "the search itself must be conducted in a reasonable manner, appropriately limited to the scope and intensity called for by the warrant," requiring an officer to execute a search "strictly within the bounds set by the warrant"); *see also* Def.'s Reply at 3–4.

But, as noted earlier, the warrant authorized the seizure of records stored on electronic devices related to the alleged offenses, not just devices used to commit the alleged crimes. Paragraph 2 of Attachment B – Items to be Seized – did call for "[c]omputers or storage media used as a means to commit the Subject Offenses." Warrant ¶ 2, Notice Att. at 14. But Paragraph 1 of Attachment B authorized a search for and the seizure of "[r]ecords relating to" the subject offenses, Warrant ¶ 1, Notice Att. at 13, and the warrant defines "records" to include "all forms of creation or storage, including any form of computer or electronic storage (such as hard disks or

other media that can store data) . . . and any photographic form (such as . . . videotapes, motion pictures, or photocopies)." Warrant at 3, Notice Att. at 15. While devices such as an iPod Touch are primarily used to play music or videos, *see* Def.'s Mot. at 7, they are also "storage media" that can be used to store files or photographs of important records. *See, e.g., United States v. Ballard*, 551 F. App'x. 33, 36 (3d Cir. 2014) (unpublished) (personal information relevant to identity-theft scheme found on iPod); *United States v. Okeayainneh*, No. 11-cr-87, 2011 WL 2457395, at *10 (D. Minn. May 13, 2011) (affidavit established probable cause to believe that an iPod was among the devices used to store and transmit information in a fraud and identity-theft scheme). Thus, agents did not exceed the scope of the warrant when they seized or copied iPods, cameras, or other electronic media that could be used to store materials related to the alleged offenses.

Finally, Manafort complains in this motion that the government violated his Fourth Amendment rights by failing to return those materials seized that were not covered by the warrant. He told the Court, "[t]o date, the government has not represented that the materials seized were subject to any process or procedure to insure the government only retained materials within the *scope* of the search warrant. The government has only represented that the materials have been subject to a *privilege* review." Def.'s Mot. at 7 (emphasis in original).

The government responded that it imaged as many of the devices and storage media as possible on site so that it would not have to take them all. Gov't Opp. at 19; Notice Att. at 7–9 (listing thirty-one items digitally imaged on the premises, including an Apple iMac, a Mac Book Air, and numerous flash drives). The agents then utilized an automated process to segregate categories of irrelevant and privileged information from what had been seized or imaged. Gov't Opp. at 19. Meanwhile, prosecutors communicated with the defense in November and December of 2017, explaining the review protocol and offering to discuss it with counsel:

> In particular, these materials are being processed to segregate out both privileged material (including, for example, those instances where Manafort is the sole privilege holder) and personal material that is irrelevant to the prosecution. If you would like to discuss in further detail what these processes entail, please let us know. . . . The government also has obtained possession of other electronic devices (including computers), which . . . are being processed and/or reviewed by a separate taint team of agents and prosecutors to ensure that the prosecution team is not provided with any privileged material.

Nov. 17 Letter at 3.

According to the government, the defendant did not ask to review the materials that had been sorted pursuant to the government's protocol; he did not suggest that the protocol was inadequate to segregate material that fell outside the scope of the warrant; and he did not ask the government to return any materials found to be outside the scope of the warrant. Gov't Opp. at 20. So, there seems to be little to defendant's contention that materials seized were not subject to the necessary review, and defendant has not pointed to circumstances that require suppression.

This case does not present the sorts of problems identified in the cases cited in defendant's pleadings. In *United States v. Metter*, 860 F. Supp. 2d 205, 214–16 (E.D.N.Y. 2012), the court held that the government's failure to review electronic records fifteen months after seizing them was "unreasonable and disturbing" and constituted bad faith given repeated requests from defense counsel and orders from the court to do so. Here, the November correspondence reveals that the government was already in the process of reviewing seized materials within four months of executing the search warrant. *See* Nov. 17 Letter at 3. And in *United States v. Debbi*, 244 F. Supp. 2d 235, 237–38 (S.D.N.Y. 2003), the court found that agents seized many records from a doctor's office that "plainly" fell outside the parameters of the search warrant, "such as personal and religious files, general correspondence, family financial records, [and] private patient records" and did not attempt to separate them from evidence of the subject crimes either during or after the

search. Here, the government took responsible steps to segregate privileged or irrelevant material and offered to provide more detail on its processes to defense counsel. *See* Nov. 17 Letter at 3.

At the hearing, defense counsel also complained that the government had not yet returned any paper records it has found to be irrelevant, Tr. at 69, and neither side could state definitively whether electronic devices that are not needed have been returned. *See* Tr. at 80. The defendant did not file a motion for return of property, *see* Fed. R. Crim. Proc. 41(g), but with respect to the retention of seized materials, the government will be ordered to return any paper records it has determined fall outside the warrant. Regarding electronic devices that were seized, in particular, devices such as iPods or cameras that are not used primarily to store records or to transmit communications, the Court will order the parties to confer and file a status report on whether there are any that can be returned that have not yet been delivered. As for imaged devices, they pose no constitutional problem. Courts have upheld the government's retention of images created during the execution of a search warrant given the need to authenticate exhibits at a later date. *See United States v. Ganias*, 824 F.3d 199, 215–16 (2d Cir. 2016) (prosecutors may need to retain a digital storage medium or its forensic copy "during the course of an investigation and prosecution, to permit the accurate extraction of the primary evidentiary material sought pursuant to the warrant; to secure metadata and other probative evidence stored in the interstices of the storage medium; and to preserve, authenticate, and effectively present at trial the evidence thus lawfully obtained"), *cert. denied*, 137 S. Ct. 569 (2016). Thus, the government's retention of imaged electronic devices seized from the residence does not violate the Fourth Amendment, particularly

since defendant retains the originals, and the defense has pointed to no other circumstances that would call for the exclusion of the evidence obtained from the residence.

## CONCLUSION

For the reasons stated above, it is ORDERED that defendant's motion to suppress the evidence obtained from the search of his Alexandria residence [Dkt. # 264] is hereby DENIED.  It is FURTHER ORDERED that the government must return to defendant any paper documents or electronic devices that it has determined are irrelevant to the case by August 17, 2018, and that the parties shall confer and file a status report by that date stating whether there are any electronic devices in the government's possession – as opposed to imaged copies of those devices – that remain in dispute.

SO ORDERED.

AMY BERMAN JACKSON
United States District Judge

DATE: July 18, 2018