UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>PAUL J. MANAFORT, JR.,<br><br>Defendant. | Crim. No. 17-201-1 (ABJ) |

### GOVERNMENT'S RESPONSE TO DEFENDANT
### PAUL J. MANAFORT, JR.'S OBJECTIONS TO THE GOVERNMENT'S
### NOTICE OF INTENT TO INTRODUCE OTHER ACTS EVIDENCE

The United States of America, by and through Special Counsel Robert S. Mueller, III, hereby responds to defendant Paul J. Manafort, Jr.'s objections to the government's notices of intent (Doc. 327, 350) to introduce other acts evidence at trial. *See* Doc. 354.

As explained further below, the Court should reject Manafort's challenge to the admission of the Department of Justice regulatory inspections of Manafort and his previous firm under the Foreign Agents Registration Act (FARA).[1] Evidence of those inspections is relevant for the proper, non-propensity purpose of establishing Manafort's knowledge of the requirements of FARA, *see* Doc. 350 at 2-6, an important step to proving that he "willfully" violated FARA, 22 U.S.C. § 618. That evidence is not unfairly prejudicial because the government does not seek to establish that Manafort willfully violated the law at that time or that there was even any such allegation, and does not oppose a limiting instruction to that effect. The age of the inspections

---

[1] By Minute Order dated July 19, 2018, the Court granted the government's motion (Doc. 350) to supplement its Rule 404(b) notice to include evidence of the FARA inspections.

1

does not, as Manafort contends, undermine the probative value of the evidence so as to warrant its exclusion under Federal Rule of Evidence 403.

With respect to the other categories of evidence, the Cypriot-loan evidence does not seek to establish that those loans were illegal or improper under Cyprus law, but is relevant to link Ukraine income coming into Manafort's Cypriot bank accounts. That evidence should therefore be admitted consistent with Rules 403 and 404(b). Third, the Court may wish to defer ruling on the admissibility of Manafort's representations about a New York City apartment because the government will seek to admit that evidence only if the defense pursues certain lines of argument at trial, as addressed below. Finally, the government no longer intends to introduce evidence that payments to a U.S. law firm were structured to avoid limits imposed by Ukrainian public procurement law but reserves the right to present such evidence if Manafort opens the door to it at trial.

1. <u>Department of Justice's Section 5 Inspections of Manafort and His Firms</u>. As explained in its supplemental notice (Doc. 350), the government seeks to introduce evidence of inspections of Manafort and his former firms that the Department of Justice conducted pursuant to Section 5 of FARA, 22 U.S.C. § 615. That evidence includes a letter from the Department to Manafort's counsel—as well as Department inspection reports—that identify certain lobbying and other activities that Manafort (and the firms) were required to disclose under FARA. Doc. 350 at 4-6. The government does not seek to argue that those failures were willful or that there was any such allegation at the time, and it would seek an instruction to the jury to that effect.

Manafort makes two arguments against admission of this evidence under Rule 404(b). First, he contends that "the overwhelming purpose" for admitting it "would be to suggest and argue to the jury that, because [he] allegedly violated FARA provisions in the distant past, it is more likely that he is guilty of the current FARA charges." Doc. 354 at 7. Manafort is incorrect. The

government is not seeking to offer any evidence that he was guilty of violating FARA at the time and thus there is little risk of it being improperly used for propensity.  By contrast, the evidence is relevant to proving Manafort's knowledge of the FARA regulatory regime and the absence of any mistake when he failed to register with, and made false statements to, the FARA Unit as charged in the indictment.  Doc. 350 at 3, 6.  In particular, the government will prove Manafort's knowledge of and familiarity with FARA's requirements by establishing that previous interactions with the Department of Justice put him on notice of those requirements.

Such usage is proper.  Admission of acts predating charged conduct to prove knowledge is expressly permitted under Rule 404(b).  *See* Fed. Rule Evid. 404(b)(2) (listing "knowledge" as a permissible non-propensity purpose); *United States v. Straker*, 800 F.3d 570, 590 (D.C. Cir. 2015) (identifying knowledge as a well-established non-propensity purpose for admitting evidence of prior acts).  It is also commonly done in cases where a defendant's prior interactions with a government regulator are used to prove the defendant's knowledge.[2]  Such proof is of particular importance in this FARA prosecution:  as this Court has observed, "FARA violations require evidence of willful conduct," *United States v. Manafort*, No. 17-cr-201, 2018 WL 3079474, at *17 (D.D.C. June 21, 2018); *see* 22 U.S.C. § 618(a), and willfulness requires proof that the defendant knew his conduct was unlawful.  *See Bryan v. United States*, 524 U.S. 184, 191-92 (1998).

Second, Manafort suggests that admission is improper under Rule 404(b) because the FARA inspections "never resulted in charges (or any other sanction) against" him.  Doc. 354 at 7

---

[2] *See, e.g.*, *United States v. Gilbert*, 668 F.2d 94, 97 (2d Cir. 1981) (evidence of SEC civil consent decree admissible under Rule 404(b) to show the defendant's knowledge of SEC reporting requirements); *United States v. Bikundi*, No. 14-cr-30, 2015 WL 5915481, at *6 (D.D.C. Oct. 7, 2015) (admitting under Rule 404(b) receipt of correspondence with the Maryland Medicaid program that tended to show that defendants charged with defrauding D.C. Medicaid "were advised about and familiar with the general regulatory requirements to be a Medicaid provider").

(emphasis omitted); *see id.* at 9.  Rule 404(b), however, is not limited to evidence of prior criminal acts or even civil wrongs; by its terms, the Rule allows admission of "other act[s]."  Fed. R. Evid. 404(b)(1); *see United States v. Rubio-Gonzalez*, 674 F.2d 1067, 1075 (5th Cir. 1982) ("The fact that the records did not show that appellant's prior conduct was criminal is immaterial.  Rule 404(b) authorizes the admission of prior 'acts' as well as 'crimes' and 'wrongs.'").  It therefore does not matter that the FARA inspections did not result in criminal charges or other sanctions.

Indeed, the non-criminal nature of the prior acts underscores why the proffered evidence is not unfairly prejudicial under Rule 403.  In arguing otherwise, Manafort contends (Doc. 354 at 8-9) that the evidence should be excluded under Rule 403 because it dates from the 1980s, that age reduces its probative value, and the risk of unfair prejudice (he claims) substantially outweighs that probative value.  That contention lacks merit.

While "the probative value of evidence c[an] be attenuated by the passage of time," *United States v. Rodriguez*, 215 F.3d 110, 120 (1st Cir. 2000), "[t]here is no mechanical test for determining whether evidence of a prior offense is too remote to be admissible."  *United States v. Cheadle*, No. 92-3117, 1992 WL 380140, at *1 (D.C. Cir. Dec. 18, 1992).[3]  The government seeks to introduce evidence of the FARA inspections principally to establish Manafort's knowledge of the statutory requirements.  Doc. 350 at 6.  And the events that gave rise to the inspections make it particularly unlikely that the intervening years have "obliterate[d]" the knowledge that Manafort gained from his interactions with the Department at that time.  *See Rubio-Gonzalez*, 674 F.2d at 1075.  As explained in the government's notice (Doc. 350 at 3-4), the determination that Manafort

---

[3] Although Manafort emphasizes that the events at issue occurred "decades ago," Doc. 354 at 8 (emphasis omitted), courts have regularly upheld the admission of even criminal acts that predated the relevant events by a decade or more.  *See United States v. Field*, 871 F.2d 188, 198 (1st Cir. 1989) (listing decisions from the Second, Eighth, and Ninth Circuits that approved admission of convictions or alleged criminal conduct occurring 12, 13, and 20 years earlier).

was required to register under FARA drew significant attention and ultimately led him to choose to resign his position as a director of the Overseas Private Investment Corporation.  Even with the passage of time, an individual who continues to work as a lobbyist and political consultant is unlikely to forget the circumstances that prompted his resignation from a Presidentially-appointed position.  Courts have recognized that the "remoteness" of prior acts is generally less of a concern when "prior acts are relevant to the matter of knowledge, rather than being relevant only to intent." *Rubio-Gonzalez*, 674 F.2d at 1075.  That is because "[t]he passage of time and changing circumstances are more likely to significantly change one's intent than they are to obliterate knowledge once gained."  *Id.*; *see United States v. Hassanshahi*, 195 F. Supp. 3d 35, 45 (D.D.C. 2016) (applying this principle in admitting evidence of civil litigation that put defendant on notice of regulatory requirements).  That logic is fully applicable here.

This case bears little resemblance to *United States v. Sheffield*, 832 F.3d 296 (D.C. Cir. 2016), on which Manafort relies.  *Sheffield* involved the trial court's admission, in a drug prosecution, of a statement informing the jury that the defendant had been convicted of another drug offense 10 years earlier.  *Id.* at 307.  In holding that the court should not have admitted this statement under Rule 403, the D.C. Circuit emphasized the age of the conviction and, "[m]oreover," that the jury had been told "only about the fact of" the conviction and not about the defendant's conduct underlying it.  *Id.*  Given the scant information it conveyed, the court of appeals concluded, the statement to the jury "bore little evidentiary relevance to the question of [the defendant's] knowledge in 2011."  *Id.*

The evidence at issue does not suffer from similar infirmities.  The government seeks to introduce the circumstances and results of the civil regulatory FARA inspections, not just the fact that they took place.  Those inspection results—*i.e.*, the letter to counsel and inspection reports

5

laying out the FARA obligations of Manafort and his firms, Doc. 350 at 3-5—bear direct "evidentiary relevance to the question of" Manafort's knowledge at the time of the offenses by demonstrating that he was on notice of the statutory requirements. *See Sheffield*, 832 F.3d at 307. And, as Manafort elsewhere points out (Doc. 354 at 8), the evidence here does not involve a conviction and thus does not implicate the prejudice that can result when the jury learns that the defendant has committed previous crimes. Accordingly, unlike in *Sheffield*, the Rule 403 balance tilts squarely in favor of admitting the FARA inspection evidence. *See United States v. Cassell*, 292 F.3d 788, 795 (D.C. Cir. 2002) ("Rule 403 'tilts, as do the rules as a whole, toward the admission of evidence in close cases,' even when other crimes evidence is involved." (quoting *United States v. Moore*, 732 F.2d 983, 989 (D.C. Cir. 1984))).

That is especially true because any risk of unfair prejudice can be addressed through an appropriate limiting instruction. *See* Fed. R. Evid. 403 adv. comm. note ("In reaching a decision whether to exclude on grounds of unfair prejudice, consideration should be given to the probable effectiveness . . . of a limiting instruction."). The instruction would inform the jury that it may only "consider the evidence for the limited and proper purposes of . . . knowledge[] and absence of mistake or accident," *Cassell*, 292 F.3d at 796, and that it "may not use this evidence for any other purpose," including to evaluate the defendant's character, *see Sheffield*, 832 F.3d at 308. Given the possibility of such an instruction, the strong probative value of the evidence on the question of knowledge, and the government's need for the evidence to prove willfulness, *see* Fed. R. Evid. 403 adv. comm. note (balancing under the Rule takes into account the party's "need for the evidence"), the Court should strike the Rule 403 balance in favor of admission.

2. <u>Representations Regarding a New York City Apartment</u>. In its original notice, the government stated that it may seek to introduce evidence that Manafort obtained favorable tax

treatment by representing to the IRS that a New York City apartment was used for business purposes but later sought to have his tax preparers represent that the apartment was a personal residence when doing so would benefit him in securing a loan.  *See* Doc. 327 at 2, 5-6.  The government will only seek to introduce this evidence if Manafort pursues certain lines of defense at trial—for instance, that his tax preparers not only went along with his schemes, but actually advised him they were legal.  The Court may therefore wish to defer a ruling on the admissibility of this evidence until such time as the government seeks to introduce it, which the government would raise with the Court before doing so.

If the Court prefers to address the issue now, however, it should reject Manafort's arguments against admission.  *See* Doc. 354 at 5-6.  Manafort primarily argues (*id.* at 5) that his "tax strategy" with respect to the New York apartment is propensity evidence that is not probative of the conspiracy to defraud the Treasury Department charged in Count 1.  That is so, he says, because that conspiracy concerns only "a failure to report offshore income and a failure to report foreign bank accounts," whereas the apartment scheme involves "overstating expenses or inflating deductions."  *Id.*  But that argument overstates the degree of similarity required of other-acts evidence in tax prosecutions.  When evidence of a defendant's other tax-related misconduct is at issue, "[s]uch evidence need not relate to prior acts of precisely the same character, but is admissible as broadly probative of the defendant's attitude toward reporting and payment of taxes generally."  *Baker v. United States*, 401 F.2d 958, 975 (D.C. Cir. 1968) (internal quotation marks omitted).  Manafort's willingness to claim falsely a personal residence as a business expense to obtain tax benefits is thus "broadly probative," *id.*, of his participation in a conspiracy that sought to conceal offshore income through multiple means, including characterizing money transfers as sham loans.  Dkt. 318 ¶ 17.

Manafort's arguments under Rule 403 are equally unavailing. He suggests (Doc. 354 at 5-6) that the government's evidence raises issues about corporate-versus-individual taxes and the propriety of his tax strategy that could derail the trial by "requir[ing] expert testimony and additional instructions from the Court." That is incorrect. The misrepresentations are relevant to and probative of Manafort's knowledge and intent regardless of whether they relate most directly to his individual tax liability or the taxes of "corporate" entities that he controlled. *See United States v. Khanu*, 664 F. Supp. 2d 80, 85 & n.3 (D.D.C 2009) (rejecting defendant's argument, in a tax case, "that a corporation's tax history may [not] be used to prove the intent of an individual"), *judgment aff'd*, 662 F.3d 1226 (D.C. Cir. 2011). Nor would any serious issues arise as to the propriety of the tax strategy. Indeed, Manafort offers no explanation for how it can be "proper" to treat a residential property as a business rental expense when doing so confers tax benefits but revert to residential treatment when doing so helps secure more favorable loan terms. Manafort's representations about the New York apartment, in short, are of straightforward and significant probative value and pose little risk of unfair prejudice or confusing the issues at trial. Rule 403 therefore favors their admission at trial if the government seeks to introduce them.

3. <u>Cypriot Loans</u>. The government stated in its notice that it may seek to introduce evidence that Manafort and co-conspirators Gates and Kilimnik structured a series of loans between Cypriot entities that they controlled to avoid the recognition of money paid to those entities as income. Doc. 327 at 3, 6. The notice made clear that the government did not plan to argue that these transactions "violated Cypriot law," and would introduce the loans only to prove Manafort's participation in and knowledge of the charged violations of U.S. law. *Id.* at 6. Manafort opposes admission of the evidence, arguing that information about how loans were structured in Cyprus is

too dissimilar to the charged crimes to be probative and that the evidence "fails to pass muster under Rule 403" because it risks unfair prejudice and issue confusion.  Doc. 354 at 6-7.

In light of Manafort's argument, the government reiterates that it does not plan to present evidence about legality of the loan agreements under Cyprus law or even their tax consequences. And the precise means by which this evidence comes in can be structured to avoid any such inference.  The loan agreements are instead relevant—and probative—of the charged U.S. crimes because they reflect the trail of payments for Manafort's Ukraine consulting work from entities controlled by Ukrainian oligarchs at the direction of the Ukraine government to Manafort-controlled entities and accounts in Cyprus.  In other words, the loan agreements have evidentiary value in tracing money flow from Ukraine to Cyprus and eventually into the United States—thus supporting the tax, money laundering, and FARA charges.  Evidence that helps follow the money in that manner serves a valid non-propensity purpose and is admissible under Rule 404(b).  *See United States v. Miller*, 895 F.2d 1431, 1436 (D.C. Cir. 1990) ("[U]nder Rule 404(b), *any* purpose for which [other]-acts evidence is introduced is a proper purpose so long as the evidence is not offered *solely* to prove character.").  And the Court can avoid any risk of unfair prejudice by instructing the jury that the loan agreements are not alleged to violate U.S. or Cyprus law and that it may consider the evidence only for its relevance to the charges in the indictment.

4. <u>One Category of Evidence No Longer at Issue</u>.  Finally, the government no longer plans to introduce in its case-in-chief evidence that payments to a U.S. law firm were structured to avoid limits imposed by Ukrainian public procurement law.  Having given Manafort notice of the existence of this evidence, however, the government reserves the right to present its proof on that matters if Manafort opens the door at trial to such evidence. The government would, of course, apply to the Court prior to attempting to introduce such evidence.

**CONCLUSION**

For the foregoing reasons, the Court should rule admissible at trial, pursuant to Federal Rules of Evidence 403 and 404(b), the evidence of the Department of Justice's FARA inspections and the Cyprus loan documentation, with the provisos noted herein. With respect to Manafort's representations about the New York City apartment, the Court should either defer a ruling until the government seeks to introduce that evidence at trial or, in the alternative, rule the evidence admissible under Rules 403 and 404(b).

                                          Respectfully submitted,

                                          ROBERT S. MUELLER, III
                                          Special Counsel

Dated: July 20, 2018                        */s/Andrew Weissmann*
                                          Andrew Weissmann
                                          Greg D. Andres
                                          Special Counsel's Office
                                          U.S. Department of Justice
                                          950 Pennsylvania Avenue NW
                                          Washington, D.C. 20530
                                          Telephone: (202) 616-0800

                                          *Attorneys for United States of America*