UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>PAUL J. MANAFORT, JR.,<br><br>Defendant. | Crim. No. 17-201-1 (ABJ) |

GOVERNMENT'S RESPONSE TO DEFENDANT
PAUL J. MANAFORT, JR.'S MOTIONS *IN LIMINE*

The United States of America, by and through Special Counsel Robert S. Mueller, III, hereby responds to the four motions *in limine* filed by defendant Paul J. Manafort, Jr. (Manafort), in which he moves to preclude: (1) evidence or argument concerning Manafort's or the Donald J. Trump presidential campaign's alleged collusion with the Russian Government (as well as Manafort's work for the campaign); (2) evidence or argument concerning the charges filed against Manafort in *United States v. Manafort,* No. 1:18-cr-83 (TSE) (E.D. Va.); (3) evidence or argument regarding the defendant's remand; and (4) evidence obtained from Manafort's FARA attorney. *See* Doc. 343.

The government has limited objections to Manafort's first and second motions, no objection to his third motion, and objections to Manafort's fourth motion *in limine*.[1]

---

[1] The government's response presumes that any restrictions imposed pursuant Manafort's motions *in limine* would be imposed on both parties. The government also reserves the right to present evidence on any precluded subject if Manafort opens the door at trial to such evidence. For example, depending on how the defense were to cross-examine a witness such as Richard Gates, it could open the door to information that would otherwise be precluded under Manafort's motion. The government will apply to the Court prior to attempting to introduce such evidence.

1

I.      First Motion *In Limine*

Manafort's first motion seeks to preclude evidence or argument on two subjects: collusion with the Russian government, and Manafort's role in the Trump campaign. The government does not intend to present in its case-in-chief evidence or argument concerning collusion with the Russian government and, accordingly, does not oppose Manafort's motion in that respect.

Manafort's role in the Trump campaign, however, is relevant to the false-statement offenses charged in Counts 4 and 5 of the indictment. Indeed, Manafort's position as chairman of the Trump campaign and his incentive to keep that position are relevant to his strong interest in distancing himself from former Ukrainian President Yanukovych, the subject of the false statements that he then reiterated to his FARA attorney to convey to the Department of Justice. In particular, the press reports described in paragraphs 26 and 27 of the indictment prompted Manafort and Gates to develop their scheme to conceal their lobbying. Dkt. 318 ¶¶ 26-27.

For example, on August 15, 2016, a member of the press e-mailed Manafort and copied a spokesperson for the Trump campaign to solicit a comment for a forthcoming story describing his lobbying. Gates corresponded with Manafort about this outreach and explained that he "provided" the journalist "information on background and then agreed that we would provide these answers to his questions on record." He then proposed a series of answers to the journalist's questions and asked Manafort to "review the below and let me know if anything else is needed," to which Manafort replied, in part, "These answers look fine." Gates sent a materially identical message to one of the principals of Company B approximately an hour later and "per our conversation." The proposed answers Gates conveyed to Manafort, the press, and Company B are those excerpted in the indictment in paragraph 26.

An article by this member of the press associating Manafort with undisclosed lobbying on behalf of Ukraine was published shortly after Gates circulated the Manafort-approved false narrative to Company B and the member of the press.  Manafort, Gates, and an associate of Manafort's corresponded about how to respond to this article, including the publication of an article to "punch back" that contended that Manafort had in fact pushed President Yanukovych to join the European Union.  Gates responded to the punch-back article that "[w]e need to get this out to as many places as possible. I will see if I can get it to some people," and Manafort thanked the author by writing "I love you! Thank you."  Manafort resigned his position as chairman of the Trump campaign within days of the press article disclosing his lobbying for Ukraine.

Manafort's role with the Trump campaign is thus relevant to his motive for undertaking the charged scheme to conceal his lobbying activities on behalf of Ukraine.  Here, it would be difficult for the jury to understand why Manafort and Gates began crafting and disseminating a false story regarding their Ukrainian lobbying work nearly two years after that work ceased—but before any inquiry by the FARA Unit—without being made aware of the reason why public scrutiny of Manafort's work intensified in mid-2016.  Nor would Manafort's motives for continuing to convey that false information to the FARA Unit make sense: having disseminated a false narrative to the press while his position on the Trump campaign was in peril, Manafort either had to admit these falsehoods publicly or continue telling the lie.

Manafort asserts that any probative value of these facts is substantially outweighed by the risk of unfair prejudice because many jurors "likely have strong views about President Trump." Doc. 343 at 3.  But he does not articulate how "strong views" about the President (which they by definition could put aside or they would not be sitting as jurors) are prejudicial.  He also does not explain why a limiting instruction—which could inform the jury that it should consider Manafort's

campaign position only on the question of motive—would be insufficient to address the possibility of prejudice. *See* Fed. R. Evid. 403 adv. comm. note (courts deciding "whether to exclude on grounds of unfair prejudice" should consider "the probable effectiveness or lack of effectiveness of a limiting instruction"). Any risk of prejudice would be further reduced by the limited use to be made of the evidence; indeed, the government does not intend to elicit the reasons for Manafort's leaving the campaign (*e.g.*, the allegations regarding "black ledger" payments) or suggest that his resignation was not voluntary.

Courts have routinely recognized that the Federal Rule of Evidence 403 analysis should include "balanc[ing] between relevance and prejudice and the alternatives available for the substitution of less prejudicial proof." *United States v. Long*, 574 F.2d 761, 770 (3d Cir. 1978) (Adams, J., concurring); *see Old Chief v. United States*, 519 U.S. 172, 182-84 (1997) (when balancing under Rule 403, the Court should "evaluate the degrees of probative value and unfair prejudice not only for the item in question but for any actually available substitutes as well"); *see also See* Fed. Rule Evid. 403 adv. comm. note (when a court considers "whether to exclude on grounds of unfair prejudice," the "availability of other means of proof may . . . be an appropriate factor"). Here, the probative value of the evidence, the absence of an equivalent alternative for establishing motive to lie to the FARA Unit, and the likely effectiveness of a limiting instruction tilt the Rule 403 balance in favor of admission. To the extent that Manafort's first motion *in limine* would preclude admission of this motive evidence, that motion should therefore be denied.

II.     Second Motion *In Limine*

Manafort's second motion makes multiple requests: to preclude evidence or argument about the charges brought in the Eastern District of Virginia. As for precluding any reference to

the charges brought in the Eastern District of Virginia themselves, the government does not intend to reference the charges.

The request to preclude any "evidence and arguments concerning the E.D.V.A. case" (Doc. 343 at 4), however, is overbroad, since evidence relevant to some of the charges in the Eastern District of Virginia is also relevant to the offenses charged—including overt acts charged—in the District of Columbia. Contrary to Manafort's characterization, there is substantial overlap between the evidence in District of Columbia case and the Eastern District of Virginia case. The Superseding Indictment here alleges a conspiracy that encompasses tax fraud that overlaps with the substantive tax charges in the Eastern District of Virginia. Specifically, the conspiracy charge in Count 1 references defrauding the Department of Treasury and Manafort's failure to file foreign bank account reports or to disclose them in his tax filings. That charge overlaps with Counts 1 through 5 and Counts 11 through 14 of the Virginia indictment. And, indeed, the overseas entities and wires identified in the Superseding Indictment here overlap substantially with those described in the Virginia indictment. *Compare* Superseding Indictment ¶¶ 11-18 (identifying overseas entities, wires, and overseas accounts) (Doc. 318), *with* Superseding Indictment ¶¶ 12-18, *United States v. Manafort,* No. 1:18-cr-83 (TSE) (E.D. Va.) (Doc. 9).

To the extent that Manafort's second motion *in limine* would preclude the government from introducing evidence relevant to the District of Columbia prosecution just because it was also relevant to the Virginia case, the motion should be denied.

III. Fourth Motion *In Limine*

The final motion seeks to exclude all evidence provided by Manafort's FARA attorney on the ground that the evidence "is privileged attorney-client and work product information." Doc. 343 at 6. Manafort acknowledges that, in pre-indictment proceedings addressing his

attorney's challenge to a grand jury subpoena, Chief Judge Howell held that the attorney could be required to answer seven specific questions because, *inter alia*, the government made a *prima facie* showing that the crime-fraud exception applies to Manafort's communications with the attorney. *See In re Grand Jury Investigation*, No. 17-mc-2336, 2017 WL 4898143 (D.D.C. Oct. 2, 2017) (further concluding that privilege was waived or inapplicable as to some areas, and that work-product protection was overcome as to others). Manafort suggests, however, that this Court should hold a "sealed" hearing to revisit those determinations because he did not receive unredacted versions of Chief Judge Howell's opinion or the underlying pleadings, and he is therefore "unable to determine the exact nature of th[e attorney's] testimony and cannot fully brief his objections to its possible introduction at trial." Doc. 343 at 6-7.

To be clear, the government does not take the position that Manafort is categorically precluded from reasserting his claim of privilege before this Court. But to justify such relitigation, Manafort must come forward with some basis for this Court to question the considered determinations reached by Chief Judge Howell in her 37-page opinion. And neither of the grounds that Manafort gives in his motion provides a sufficient reason for doing so.

First, Manafort suggests (Doc. 343 at 6) that he cannot make an informed challenge to the Chief Judge's rulings because some portions of the pre-indictment litigation were *ex parte*. Manafort participated in that litigation as the privilege holder, was afforded an opportunity to present argument and evidence (he declined the latter invitation), and received a copy of the Chief Judge's decision in an opinion that was partially redacted to protect the content of an ongoing grand-jury investigation but that amply disclosed the legal basis for compelling the attorney's testimony. *In re Grand Jury Investigation*, 2017 WL 4898143. Since then, moreover, Manafort has been provided a full, unredacted version of the opinion and the government's filings in the

crime-fraud litigation. *See* Dkt. 282 (Gov't Opp'n to Bill of Particulars) at 7 (explaining that "the government has produced to Manafort an unredacted version of its *in camera* factual submissions to the Chief Judge, relevant transcripts from those proceedings, and an unredacted version of the Chief Judge's memorandum opinion (which the Chief Judge ordered unsealed at the government's request)"). Manafort therefore cannot attribute his failure to any identify any error of fact or law in Chief Judge Howell's decision to the *ex parte* aspects of the privilege litigation.

Manafort also argues that, because the government has not disclosed to him the substance of the attorney's interview, he "is unable to determine the exact nature of th[e] testimony and cannot fully brief his objections." Doc. 343 at 6-7 & n.3. That argument fails to acknowledge that Chief Judge Howell's opinion set the precise parameters of the questions that the government was authorized to ask the FARA attorney. Concretely, the opinion allowed the government to pose seven specific questions. *In re Grand Jury Investigation*, 2017 WL 4898143, at *6; *see id.* at *15 (concluding that the government "may pose to the Witness the first six and eighth proposed questions," but not the seventh, because it "seeks opinion work product" and the government had "not made the extraordinary showing necessary to justify posing it").[2] Manafort has therefore long known what the government asked his lawyer. And based on that knowledge, he has long been able to argue that the information sought by those questions was privileged or not subject to the

---

[2] Manafort calls it "puzzling" (Doc. 343 at 6 n.3) that the attorney answered the questions—actually, a subset of the approved questions—in an interview with the government rather than in front of the grand jury. But the government informed Manafort at the time that it would be proceeding by interview, and he voiced no objection to that procedure. Moreover, witnesses under grand jury subpoena are often relieved of their subpoena obligations after they are interviewed, a forum that is particularly appropriate where attorney-client privilege issues could arise. And the decision to proceed by interview here has not affected the defense's access to the witness's statements. *See* 18 U.S.C. § 3500(e) (providing the same disclosure requirements for a testifying witness's statement, whether it was made to the grand jury or recorded by the government in another manner).

crime-fraud exception and that Chief Judge Howell erred in concluding otherwise. Yet he has presented no substantive argument to that effect before this Court. The specific answers the attorney gave are irrelevant to the legal issue, and this motion should not be a vehicle for pretrial discovery about what the attorney told the government in response to proper questions.

\* \* \*

In sum, Manafort has presented no substantive claim of error in Chief Judge Howell's pre-indictment privilege rulings despite receiving—in some instances months ago—fully unredacted versions of the relevant papers from the privilege litigation. To the extent he seeks a hearing to relitigate the privilege issues, Manafort was required to come forward with evidence supporting his bare assertion that his lawyer's testimony "is privileged attorney-client and work product information," Doc. 343 at 6, notwithstanding the Chief Judge's considered opinion to the contrary. Because he has failed to do so, his fourth motion *in limine* should be denied.

## CONCLUSION

With respect to Manafort's first motion *in limine*, the government objects to being precluded from raising Manafort's role in the Trump campaign insofar as it is relevant to proving the false-statement offenses in Counts 4 and 5. As for the second motion *in limine*, the government respectfully requests that the Court deny the motion insofar as it would preclude evidence relevant to the conspiracies charged in Counts 1 and 2. As for the defendant's fourth motion *in limine*, the government respectfully requests that the Court deny the defendant's motion.

                                                                Respectfully submitted,

                                                                ROBERT S. MUELLER, III
                                                                Special Counsel

Dated: July 23, 2018                         */s/ Andrew Weissmann*
                                                                Andrew Weissmann
                                                                Greg D. Andres
                                                                Special Counsel's Office
                                                               U.S. Department of Justice
                                                               950 Pennsylvania Avenue NW
                                                               Washington, D.C. 20530
                                                               Telephone: (202) 616-0800

                                              *Attorneys for United States of America*