# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | Case No. 17-201-1 |
| | ) | |
| **v.** | ) | **UNDER SEAL** |
| | ) | |
| | ) | |
| **PAUL J. MANAFORT, JR.** | ) | |
| | ) | |
| | ) | |
| **Defendant** | ) | |
| | ) | |
| _____ | ) | |

## UNITED STATES' MOTION SEEKING AUTHORIZATION TO REVIEW COMMUNICATIONS BETWEEN PAUL J. MANAFORT, JR. AND A WITNESS

The United States of America, by and through its undersigned counsel, respectfully submits this motion requesting an Order authorizing review of certain communications between Paul J. Manafort, Jr., and a Witness (hereinafter the "Subject Communications") (Exhibit A). As explained herein, the United States seeks this Order to ensure that the Government is collecting and utilizing evidence in a manner that does not violate the legal rights of third parties, including by infringing on attorney-client relationships. Consistent with an October 2, 2017, Order of the Chief Judge of this Court, the Subject Communications are not properly subject to assertions of the attorney-client privilege or the work product privilege because "the attorney-client and work product privileges have been vitiated by operation of both the crime-fraud exception and implied waiver." *In re Grand Jury Investigation*, No. MC 17-2336 (BAH), 2017 WL 4898143, at *7 (D.D.C. Oct. 2, 2017).

## I.  Procedural History

### A.  The Subject Communications Have Been Segregated by a Taint Team

As part of the investigation by the Special Counsel's Office (SCO) that led to the criminal charges in this matter, the Government obtained a search warrant in the Southern District of New York for information in the custody of Rackspace, Inc., associated with an email account belonging to Mr. Manafort.  To ensure that the information seized from Rackspace, Inc., was collected in a manner consistent with professional responsibility requirements concerning the maintenance of privilege, the information was turned over to a team of attorneys (the "Taint Team") to screen out potentially privileged communications before transmission to investigators and prosecutors in the Special Counsel's Office (the "Investigation Team").  The Witness is one of Mr. Manafort's attorneys.  Thus, the Subject Communications have been produced to the defendant, and segregated from the material turned over to the Investigation Team by the Taint Team.[1]

### B.  The October 2, 2017, District Court Decision

In an Order dated October 2, 2017, the Chief Judge of this Court found that certain communications between the Witness and Mr. Manafort were not subject to assertions of the attorney-client privilege or the work product privilege because "the attorney-client and work product privileges have been vitiated by operation of ... the crime-fraud exception." *In re Grand Jury Investigation*, 2017 WL 4898143, at *7.   In doing so, the Court determined that evidence put forward by the Special Counsel's Office was sufficient to establish that Mr. Manafort "likely violated federal law by making, or conspiring to make materially false statements and misleading omissions in [his] FARA submissions." *In re Grand Jury Investigation*, 2017 WL 4898143, at

---

[1] Accordingly, the Investigation Team has reviewed this motion without the Exhibits and with Sections II and IV redacted.

\*9.  Thus, the Special Counsel's Office could seek certain testimony from the Witness relating to the FARA submissions, including what the Witness was told about "the specific factual representations alleged to be false or misleading in Mr. Manafort's November 23, 2016, and February 10, 2017, FARA Submissions."  *Id.* at \*10.

In the same Order, the Court found that Mr. Manafort had "impliedly waived the [attorney-client] privilege as to [his] communications with the Witness to the extent that these communications related to the FARA Submissions' contents." *In re Grand Jury Investigation*, 2017 WL 4898143, at \*11 citing *Williams & Connolly*, 662 F.3d 1240 at 1244 (D.C. Cir. 2011); *In re Sealed Case*, 29 F.3d 715 at 719 (D.C. Cir. 1994); *In re Sealed Case*, 877 F.2d 976 at 980–81 (D.C. Cir. 1989); and *In re Sealed Case*, 676 F.2d 793 at 809 (D.C. Cir. 1982).   The Court held that the attorney-client privilege and work product privilege did not prevent the Special Counsel's Office from compelling the Witness' testimony about the subjects disclosed in Mr. Manafort's 2016 and 2017 FARA Submissions, which were filed on behalf of Mr. Manafort's company, DMP International, LLC, ("DMP") and identified Mr. Manafort as the company's principal.  The Court reasoned that upon sending the FARA Submissions to the Justice Department, the Targets waived any attorney-client privilege in their contents through voluntary disclosure.[2]  *In re Grand Jury Investigation*, 2017 WL 4898143, at \*11.

The Chief Judge's Order was issued after "factual proffers made by the SCO, as well as the arguments articulated by the SCO, the privilege holders and the Witness over multiple filings

---

[2] Judge Howell also noted, but did not resolve, the government's threshold contention that the communications were not privileged in the first place because they were made with the expectation that they would be passed on to the government.  *See In re Grand Jury Investigation*, 2017 WL 4898143, at n. 12  (D.D.C. Oct. 2, 2017) ("The government also argues that the attorney-client privilege never attached to the communications with the Witness reflected in the FARA Submissions in the first place because the Targets intended to disclose the information to DOJ from the outset… This 'conduit theory' need not be addressed, as the SCO's motion to compel is granted on alternative grounds".).

and three hearings." *Id.* at *1.  As noted in the Government's opposition to one of Mr.

Manafort's motions *in limine*, "the government does not take the position that Manafort is

categorically precluded from reasserting his claim of privilege before this Court. But to justify

such relitigation, Manafort must come forward with some basis for this Court to question the

considered determinations reached by Chief Judge Howell in her 37-page opinion."  (ECF No.

360, p. 6).  Mr. Manafort has yet offer a basis for this Court to question Judge Howell's

determinations. Nor has Mr. Manafort identified any reason to distinguish the written

communications reflected in the Subject Communications from the testimonial issues briefed at

length.[3]

### C.  The Taint Team's July 13, 2018, Motion

On July 13, 2018, the Taint Team filed a motion with Chief Judge of this Court seeking

an Order authorizing the release of four documents to the Investigation Team, each containing

communications between Mr. Manafort and the Witness.  Before doing so, the Taint Team asked

counsel representing Mr. Manafort if Mr. Manafort would be asserting privilege over the

documents. Counsel for Mr. Manafort did not respond to the Taint Team's inquiry, but later

claimed to be asserting privilege over all communications between Mr. Manafort and the

Witness.  The United States sought the Order on the grounds that the documents were

"communications with the Witness… related to the FARA Submissions' contents," and thus

privilege had been waived consistent with the Court's October 2, 2017, Order.  *In re Grand Jury*

---

[3] The analysis as it relates to written communications should be the same as that applied to testimonial issues because the attorney-client privilege, the crime-fraud exception to the privilege, and implied waiver apply to communications, regardless of their form. *See. e.g, Restatement (Third) of the Law Government Lawyer*s, § 69 (2000); (A communication…is any expression through which a privileged person … undertakes to convey information to another privileged person and any document or other record revealing such an expression).  Protected work product also can include both tangible and intangible information. *Banks v. Office of Senate Sergeant-at-Arms*, 222 F.R.D. 1, 4 (D.D.C. 2004) (Deposition questions directed to an agency employee would be improper if the answer would tend to disclose the agency's attorney's intangible work product (counsel's mental impressions, conclusions, opinions or legal theories)).

*Investigation*, 2017 WL 4898143, at *11.  The Subject Communications, discussed in detail below, include these four documents, and several others.

Mr. Manafort opposed the Taint Team's motion on the grounds that Chief Judge Howell, overseeing the grand jury investigation, but not the trial in this case, lacked jurisdiction to issue the proposed order.  Mr. Manafort did not present any substantive reason why the documents should be protected from disclosure, nor did he identify any error of fact or law in Chief Judge Howell's decision.

On July 24, 2018, Chief Judge Howell denied the Taint Team's motion without prejudice, finding that, "[t]he proper court to resolve this dispute about whether evidence is privileged or otherwise admissible at trial is the court conducting Manafort's trial."  *See* July 24, 2018, Memorandum Opinion and Order at 4 (attached as Exhibit B).   Accordingly, the Taint Team submits the instant motion.

## II.     The Subject Communications



███████████████████████████████████████████████

███████████████████████████████████████████████

████████████

### III.    Relevant Legal Authority

### A.  The Attorney-Client Privilege

The purpose of the attorney-client privilege is to "encourage full and frank communication between attorneys and their clients by assuring clients that their disclosures will be held in confidence."  *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981).   In this Circuit, the attorney-client privilege applies to communications that (1) relate to a fact conveyed to the attorney by his client, and (2) that are made for the primary purpose of securing (i) an opinion on law, (ii) legal services, or (iii) assistance in a legal proceeding.  *See In re Grand Jury*, 475 F.3d 1299, 1304 (D.C. Cir. 2007) (quoting *In re Sealed Case*, 737 F.2d 94, 98-99 (D.C. Cir. 1984)). Critically, such communications must be made with the "expectation of secrecy" and the information must not have been "known or disclosed to any third party" at the time it was communicated.  *Mead Data Central, Inc. v. United States Dep't of Air Force*, 566 F.2d 242, 254 (D.C. Cir. 1977).

Thus, the attorney-client privilege applies only when communications at issue are "confidential."  *In re Kellogg Brown & Root, Inc.,* 756 F.3d 754, 757 (D.C. Cir. 2014).  "[W]hen a client communicates information to his attorney with the understanding that the information will be revealed to others," that communication is not confidential and therefore is not privileged.  *United States v. Under Seal*, 748 F.2d 871, 875 (4th Cir. 1984); accord *United States v. Tellier*, 255 F.2d 441, 447 (2d Cir. 1958).  In such cases, both the information that the client expected the lawyer to reveal and "the details underlying" it are subject to disclosure.  *Under*

*Seal*, 748 F.2d at 875; s*ee, e.g., United States v. Nageale*, 468 F. Supp. 2d 165, 170 (D.D.C.

2007) (Friedman, J.); *United States v. Shibley*, 112 F. Supp. 734, 741-742 (S.D. Cal. 1953).

Because the privilege "has the effect of withholding relevant information from the

factfinder, it applies only where necessary to achieve [that] purpose." *United States v. Zolin*, 491

U.S. 554, 562 (1989) (quoting *Fisher v. United States*, 425 U.S. 391, 403 (1976)).  "Thus, where

there are close calls, the Court will put a thumb on the scales in favor of narrow construction of

the elements of the privilege."  *United States v. Singhal*, 800 F. Supp. 2d 1, 6 (D.D.C. 2011).

### B.  The Work Product Privilege

As set forth in the District Court's October 2, 2017, Order, "[t]he work-product privilege

protects material obtained or prepared by an adversary's counsel in the course of his legal duties,

provided that the work was done with an eye toward litigation." *In re Grand Jury Investigation*,

2017 WL 4898143, at *12 (internal citations omitted).  There are two types of work-product:

opinion work product and fact work product.  The "work-product privilege affords greater

protection to opinion work product, which reveals the mental impressions, conclusions, opinions,

or legal theories of a party's attorney or other representative concerning the litigation, than to

fact work product, which does not." *Id.* (internal citations omitted).  Fact work product is

discoverable upon showing a substantial need; opinion work product is rarely discoverable. *Dir.,*

*Office of Thrift Supervision v. Vinson & Elkins*, LLP, 124 F.3d 1304, 1307 (D.C. Cir. 1997).

### C.  The Crime-Fraud Exception

"Attorney-client communications are not privileged if they 'are made in furtherance of a

crime, fraud, or other misconduct.'" *In re Grand Jury*, 475 F.3d 1299, 1305 (D.C. Cir. 2007)

(quoting *In re Sealed Case*, 754 F.2d 395, 399 (D.C. Cir. 1985)). "To establish the exception ...

the court must consider whether the client 'made or received the otherwise privileged

communication with the intent to further an unlawful or fraudulent act,' and establish that the client actually 'carried out the crime or fraud.' " *In re Sealed Case*, 223 F.3d 775, 778 (D.C. Cir. 2000) (quoting *In re Sealed Case*, 107 F.3d 46, 49 (D.C. Cir. 1997)).

### D.  Waiver of the Attorney-Client Privilege and Work Product Protection

Privilege holders must zealously protect privileged materials, and "tak[e] all reasonable steps to prevent their disclosure." *SEC v. Lavin*, 111 F.3d 921, 929 (D.C. Cir. 1997).  Thus, a client waives the privilege by disclosing privileged information's "substance ... before an investigative body at the pretrial stage….Waiver of the privilege extends to all other communications relating to the same subject matter."  *In re Grand Jury Investigation*, 2017 WL 4898143, at \*11 (internal citations omitted).

### IV. Argument







## V.  Conclusion

For the foregoing reasons, the United States respectful requests that the Court authorize Investigation Team review of the Subject Communications.  A proposed order is attached (Exhibit C).

Respectfully submitted,

By: */s/ Elizabeth A. Aloi*
Elizabeth A. Aloi
U.S. Department of Justice
Special Counsel's Office
950 Pennsylvania Avenue NW
Washington, D.C. 20530
Telephone: (202) 598-2525
elizabeth.aloi@usdoj.gov
*Attorney for the United States of America*

Dated:  August 8, 2018

## <u>CERTIFICATE OF SERVICE</u>

I certify that a true and accurate copy of the foregoing was served this 8th day of August, 2018, by Federal Express and electronic mail upon the following:

Kevin Downing, Esq.
Law Office of Kevin Downing
Counsel to Mr. Manafort
kevindowning@kdowninglaw.com

Andrew Weissmann
Greg Andres
Senior Assistant Special Counsels
(without Exhibits and Sections II and IV)

By: <u>*/s/ Elizabeth A. Aloi*</u>
Elizabeth A. Aloi
U.S. Department of Justice
Special Counsel's Office
950 Pennsylvania Avenue NW
Washington, D.C. 20530
Telephone: (202) 598-2525
elizabeth.aloi@usdoj.gov
*Attorney for the United States of America*