```
1                    IN THE UNITED STATES DISTRICT COURT
                       FOR THE DISTRICT OF COLUMBIA
2

3    United States of America,      ) Criminal Action
                                    ) No. 17-CR-201
4                    Plaintiff,     )
                                    ) Bond Hearing
5    vs.                            )
                                    ) UNSEALED PER
6    Paul Manafort, Jr.,            ) 8-10-18 ORDER
     Richard W. Gates, III,         ) Washington, DC
7                                   ) Date:  January 22, 2018
                     Defendants.    ) Time:  9:30 a.m.
8    _____

9                   TRANSCRIPT OF BOND HEARING
                          HELD BEFORE
10         THE HONORABLE JUDGE AMY BERMAN JACKSON
                 UNITED STATES DISTRICT JUDGE
11   _____

12                  A P P E A R A N C E S

13   For the Plaintiff: ANDREW WEISSMANN
                        GREG D. ANDRES
14                      KYLE R. FREENY
                        U.S. Department of Justice
15                      Special Counsel's office
                        950 Pennsylvania Avenue NW
16                      Washington, D.C.  20530
                        202-514-1746
17                      Email: Aaw@usdoj.gov
                        Email: Gda@usdoj.gov
18                      Email: Krf@usdoj.gov

19   For Defendant Manafort:
                        KEVIN M. DOWNING
20                      815 Connecticut Avenue, N.W.
                        Suite 730
21                      Washington, D.C. 20006
                        (202) 754-1992
22                      Email: Kevindowning@kdowninglaw.com

23                      THOMAS EDWARD ZEHNLE
                        Miller & Chevalier, Chartered
24                      900 Sixteenth Street, NW
                        Washington, DC 20006
25                      (202) 626-5800
                        Email: Tzehnle@milchev.com
```

```
 1     Court Reporter:        Janice E. Dickman, RMR, CRR
                              Official Court Reporter
 2                            United States Courthouse, Room 6523
                              333 Constitution Avenue, NW
 3                            Washington, DC  20001
                              202-354-3267
 4
                                     *   *   *
 5

 6

 7

 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

1      *  *  *  *  *  *  * P R O C E E D I N G S *  *  *  *  *  *  *

2              THE COURTROOM DEPUTY:  Good morning, Your Honor.

3      This is a sealed proceeding and the courtroom has been

4      closed.  We have criminal case number 17-201-1, the United

5      States of America v. Paul Manafort, Jr.

6              Mr. Manafort is present in the courtroom, Your

7      Honor.  Representing the defendant this morning we have both

8      Mr. Downing and Mr. Zehnle.  And representing the government

9      we have Mr. Andres and Miss Freeney.

10             THE COURT:  All right.  Good morning.  We're here

11     on the defendant's motion for reconsideration of the

12     conditions of release, docket 153.  That motion was sealed.

13     And I want to be able to discuss sealed financial

14     information fully in this hearing, so that's why I've sealed

15     the hearing.  Although, ultimately, if an order emanates

16     from this proceeding, I think it's going to need to be on

17     the public record.

18             We've talked a lot about bond in this case.  As

19     you may recall, at the very first status hearing the parties

20     seemed to be using the words "surety" and "security"

21     interchangeably.  And I question the wisdom of offering

22     family members as sureties in the first place.

23             On November 21st I went over the Bail Reform Act

24     in great detail with the parties.  And at that point I

25     was -- didn't think I'd gotten enough information about the

1    unencumbered value of the properties that were being

2    offered, which is what I'm supposed to look at under 18

3    U.S.C. § 3142(c)(1)(B)(11).  The defendant at that time

4    said, I've got family members who can be sureties.  I was

5    concerned about that, too, and -- but I said that the plain

6    language of subsection 12 provided that if you're not using

7    approved Court sureties, who would have made their own

8    careful assessment of the defendant's assets, then the Court

9    has to be provided with information concerning the surety's

10   assets and liabilities.  And I concluded by saying in order

11   to be relieved of the conditions of home confinement, the

12   defendants must supply either security under subsection 11

13   or a surety under subsection 12, or both, to substitute for

14   the $10 million and $5 million appearance bonds that were

15   unsecured at the time, as well as the financial information

16   that I'd indicated was missing.

17            I wasn't sure about a family member serving as a

18   surety.  I thought it had to be an independent individual or

19   an approved surety.  But the government, at that point,

20   hadn't objected to certain family members.  And I said

21   they'll only be acceptable to me if you provide me with the

22   information provided in subsection 12.

23            Thereafter, the defendant filed his motion to

24   modify conditions of relief, docket 66.  It was originally

25   based on negotiations and agreement with the prosecution.

1    The prosecution backed away from the agreement after the

2    issue concerning the Ukrainian editorial arose.  But the

3    defendant sought, essentially, the entry of the same terms.

4    And he supplemented the motion with additional information

5    about the value of the properties and more information in

6    response to an inquiry of mine.  And so there were dockets

7    85, 92, and 94 that all related to this issue.

8         And based on all of that information, I issued an

9    order modifying conditions of release on December 15, it was

10   docket 95.  The first inkling I had that the defendant had

11   any concern about any terms of that order was at the status

12   conference on January 16th.  So the fact that more than a

13   month has gone by is not a delay attributable to the Court.

14        And not only did the defendant not file any

15   motions or request for clarification in the month that has

16   gone by, but counsel stood up in court last Monday and said

17   to me, You set another $7 million in security.  That's a

18   $17 million bond that you set, close quote.  That is plainly

19   not true.

20        My order said, quote, If the defendant fails to

21   appear, all four properties will be forfeited.  In the event

22   the amount obtained as a result of forfeiture proceedings

23   does not equal $10 million, the sureties will be required to

24   forfeit the difference.  So if Mr. Manafort did not appear,

25   the money that the family would be out at the end of the day

1   was $10 million, and not a dollar more.

2          I understand now, from reading the pleading that

3   you filed after you said that in court, that it's your

4   position that the order requiring that the sureties set

5   aside money for that purpose is too onerous and it doesn't

6   leave the defendant with access to the funds he needs ████

7   ████████████   and that it's unnecessary.  But that is a far

8   cry from asserting that I, frankly, doubled the bond.

9          I'm going to take up why I imposed that condition

10  in a minute.  But there are a few other aspects of the

11  motion that struck me as inconsistent with the record.

12         Friday's motion begrudgingly concedes that the

13  requirements that the sureties agree to be responsible for

14  any shortfall, quote, generally appears to be in accordance

15  with what the defendant proposed.  But it also says that the

16  order requires significantly more of Mr. Manafort and his

17  family in terms of financial commitments than what the

18  parties previously agreed upon.

19         I want to make it perfectly clear that the belts-

20  and-suspenders approach that's in the order of providing

21  security and offering family members as sureties was not

22  something I dreamed up on December 15th.  It was not

23  generally in accord with what the defendant proposed, it was

24  exactly what the defendant proposed.  And the defendant's

25  own motion, docket 66, at page 3, after offering the

1    properties as security, the defendant wrote the following:

2         Defendant has arranged for sureties on his

3    appearance bond. ▓▓▓▓▓▓▓▓ has agreed to serve as a

4    surety for the entire amount of the bond. ▓▓▓▓▓▓▓▓

5    ▓▓▓▓▓ will serve as a surety for the asset value, which

6    is ▓▓▓▓▓▓ of the ▓▓▓▓▓▓ property. ▓▓▓▓▓▓

7    family members are, therefore, personally responsible for

8    substantial payments to the Court, should Mr. Manafort not

9    appear and should the market value of the pledged properties

10   fall below what has been demonstrated.

11        So it's clear by that point the defendant fully

12   understood that being a surety is different than being a

13   co-owner of a property that is being pledged as security.

14   ▓▓▓▓▓▓▓▓ was being offered as a surety for ▓▓▓▓▓▓.

15   ▓▓▓▓▓▓▓▓ was offered as a surety for the whole

16   ▓ million.

17        As the defense put it in his own pleading on

18   docket 94, on page 2, in connection with supplementing the

19   financial information provided concerning those sureties the

20   defendant sought, the defendant would note that this

21   information was submitted as part of a personal surety, to

22   go above and beyond the actual pledging of these properties

23   to ensure the Court that if the market valuations were not

24   satisfactory in the event of a breach, there would be

25   additional security available to satisfy the proposed

1    conditions of release.

2            So if you're troubled by that arrangement now, if

3    it's not working out, fine, ask me for relief.  I'm going to

4    consider that with an open mind.  But it was what you told

5    me to do.  And it doesn't do your position or your

6    credibility any good to act as if my order just came out of

7    the blue.

8            Along those same lines in the pleading, one of the

9    things that was identified as problematical was the

10   condition that the defendant remain current on his mortgages

11   and the tax payments of all the pledged properties and that

12   he cannot encumber them further.  Again, that's not

13   something I dreamed up.  On page 2 of the initial motion the

14   defendant said Mr. Manafort and any joint owners all agree

15   that they will not further encumber these properties and Mr.

16   Manafort will commit to keeping current on any outstanding

17   mortgages.

18           Page 5.  Defendant and his family members have

19   agreed to forfeit approximately ████████████ in real estate

20   assets to the Court.  These assets will not be further

21   encumbered during the pendency of this case and a lien in

22   favor of the Court would be placed on them while the matter

23   is ongoing.  It seems like a pretty necessary condition, if

24   you're asking the Court accept the properties as securities

25   for the bond.  If the value could be diminished at any time

1    with another encumbrance or if the properties could be

2    subject to forfeiture for nonpayment of taxes or loans,

3    well, then they wouldn't have the value that you promised

4    the Court that they would have.  I can't imagine that this

5    isn't a standard condition at any time somebody's pledging

6    property as a security for anything.

7          So again, while I understand that upon further

8    reflection, after I entered my order, the defendant began

9    thinking he might want to borrow against one of those

10   properties ███████████, fine, raise that in a motion

11   with me and we can talk about it.  But there's really no

12   basis for acting as if these conditions took you by surprise

13   or suddenly unduly burdensome.  My problem is we can't have

14   it both ways; you can't say, gee, I would really like to be

15   able to lower the value to the Court of these properties by

16   taking out new loans against them, and how dare you ask me

17   to verify that the cash I told you would be available if the

18   properties don't add up to $10 million at the end of the day

19   is actually going to be available.  As I have said since the

20   beginning, they have to be sure of either the value of the

21   property or the availability of the cash.

22          So, how did the provisions end up in the order?

23   ████████████████████████████████████████████████████

24   ████████████████████████████████████████████████████

25   ████████████████████████████████████████████████████



But my concern was the whole point of this exercise is to have money sitting in the event of Mr. Manafort's flight.  And if he fled, there was nothing stopping him from drawing it out before he left. And that was why I ordered that in the event the amount obtained as a result of the forfeiture proceedings doesn't equal 10 million, the sureties will be required to forfeit the difference.

          And then I said in order to ensure that the assets are available for that purpose, I asked that ███████ ████████ put ███████████ aside in an account where ██████ the one who signs the checks and that ████████████ put aside ████████████ in an account that only ████ can sign for.  And the idea was that then that amount of money would be sitting

1    there.

2         I can understand if the defendant is saying now I

3    think I need access to that cash ███████████████ and

4    we can talk about it.  But in the pleading there was all

5    this language but how I ordered that the defendant would

6    have to relinquish all legal rights to his financial

7    accounts, and I think that's a little hyperbolic.  I don't

8    see that that would cut off his rights forever, if money was

9    moved to a money market or equities were moved to an

10   investment account that was in ███ name and only ███ could

11   sign a check.

12        The other thing I want to say is I don't think the

13   comparisons to the codefendant in the pleading are apt.  I

14   already took into consideration the fact that Mr. Manafort

15   did not leave the country while he was under investigation

16   and that he turned himself in.  That's one of the reasons

17   why I'm willing to release him from home confinement.  But I

18   believe that the two have different types of ties to this

19   region.

20        Mr. Gates has one house, he lives in it with his

21   family.  Mr. Manafort has houses and bank accounts in a lot

22   of places. ████████████████████████████████████████████

23   ████████████████  He has more substantial assets, he has more

24   international connections, and more accounts.  And Mr.

25   Gates's surety has a separate piece of property that he can

 1    sell that is not being proffered as security; he doesn't

 2    just have the bank accounts.

 3             So, while I read everything you said, comparing

 4    the two and comparing the conditions, I think it makes more

 5    sense right now to just focus on Mr. Manafort.  So, I have

 6    several questions.  And I'll just ask you all the questions

 7    and then you can talk.

 8             One question is:  Are you seeking relief from the

 9    condition that the properties not be further encumbered, or

10    not?  The second question is:  What is the point of offering

11    someone as a surety for the entire amount without some

12    assurance that ███ can put her hands on the money?  If we

13    can't put money aside to meet any shortfall in the

14    forfeiture because ████████████████████████████████

15    ████████████████████████████████████ what would you

16    propose that would give me that assurance?

17             I do think it's probably fair to say that the

18    forfeiture won't fall short by a total of ██████████ but

19    are you willing to set aside some amount that would meet any

20    shortfall?  If ████████████████████ wants to be relieved

21    of the overlapping surety obligations, do you have any

22    additional evidence to give me concerning the value of the

23    properties, for which no appraisal was ever provided?  The

24    lack of appraisals was a deficiency I pointed out a long

25    time ago.  And, I guess, finally, what are you asking for in

1    this motion anyway?

2            You complained about several things.  You mentioned

3    arranging alternative methods.  But what specific relief do

4    you want from me today?  So, I'm happy to hear from counsel

5    for Mr. Manafort.

6            MR. ZEHNLE:  Thank you, Your Honor.  Tom Zehnle on

7    behalf of Mr. Manafort.

8            THE COURT:  All right.

9            MR. ZEHNLE:  So, Your Honor, I was trying to get

10   down the Court's questions as quickly as I could, as you

11   were going through them.  And I think it's probably

12   worthwhile, with the Court's indulgence, to kind of explain

13   what our belief was in terms of when we saw the December

14   15th order, in terms of the conditions of release that the

15   Court imposed and our view of what those conditions demanded

16   of us.

17           And so the additional -- I think the main thing,

18   in terms of getting maybe to your last question first, in

19   terms of what were we asking in terms of reconsideration.

20   ████████████████████████████████████████████████████████

21   ████████████████████████████████████████████████████

22   ██████████████████████████████████████████████████████

23   ███████████████████████████████████     I understand the

24   Court 's position, you know, that there does need to be some

25   basis to say that someone who is a personal surety, as

1    opposed to a corporate surety, someone who's been approved

2    under 12, subsection 12, has to establish to the Court that

3    they have the wherewithal to meet that.  There's no real

4    argument on that.  The problem that the defendant had and

5    the reason -- the delay was not in terms of trying to create

6    an undue burden on the Court or the Court's staff in terms

7    of --

8          THE COURT:  No, I'm not worried about that.

9    Nobody has put a burden on me.  He's still locked up.  And

10   on Friday the defense seemed to try to make that seem like

11   it was my fault, and I really didn't appreciate that because

12   I think everything in the order arose out of what you all

13   asked for.  If the order is not burdensome -- is too

14   burdensome, then let's talk constructively about what you

15   want to do about it.

16         MR. ZEHNLE:  Okay.  Well, Your Honor, I was

17   referring back to the interim time between December 15th and

18   the most recent status hearing.  Because it was very clear,

19   at least based upon my reading of the Court's order with

20   respect to Christmas travel, that the Court was not happy.

21   I mean, I read it, it was pretty clear in the minute order

22   that it imposed an additional burden that the Court didn't

23   think it should have to deal with.  And so what I wanted to

24   do, at least, is explain to the Court, that wasn't intended

25   to do that.

1     When the order came out on the 15th, we looked at

2     it carefully and we saw the ███████████████████ to

3     be set aside by both █████████████████      And

4     under those conditions, ████████████████████████

5     ████████████████████████████████████████████████

6     ██████  it was impossible to meet that.  And that's why that

7     next order, that next -- excuse me, that next motion was

8     filed over Christmas.  I just wanted the Court to know it

9     wasn't intentional.  It was, obviously, you know --

10          THE COURT:  To me, it just said you hadn't put

11    everything together.  So we're past Christmas now.

12          MR. ZEHNLE:  Got it.

13    ████████████████████████████████████████

14    ███████████████████████████████████████████████

15    █████████████████████████

16    ████████████████████████████████████████

17    ████████████████████

18    ███████████████████████████████

19    ████████████████████████████████

20    █████████████████████████████████

21    ████████████████████████████████████████

22    ████████████████████████████████████████████

23    ██████████████████████████████

24    ██████████████████████████████████████

25    ████████████████████████████████



1

2

3

4

5

6

7          That's what created the

8    issue in our mind, just so the Court understands our position.

9          THE COURT:  I don't have a problem with the

10   position.  I want to know what your proposed solution is.

11   What are you asking me for?  I can see why you're saying

12   this had unintended consequences, Judge.  But the point

13   behind the order was to say if you're telling me that these

14          are the ones who are going to have the money at the

15   end of the day if the property doesn't forfeit at the

16   amounts we're talking about, what are you proposing, instead

17   of my saying, okay, put the money aside?  How else am I

18   supposed to know that they're going to have it at the end of

19   the day?

20         MR. ZEHNLE:  Well, Your Honor, it's not just the

21   cash that gets put aside, obviously there are other

22   properties.

23

24

25

1    ██████████████████        There are other properties that could

2    be used in order to satisfy any deficiency, should those

3    properties that have been pledged -- or, recommended to be

4    pledged not add up to the 10 million bond in the

5    hypothetical situation that Mr. Manafort doesn't appear as

6    required by this Court.

7           So, there are assets and that's why the net assets

8    statement was put together.  I understand the Court might

9    think that that's not broadly --

10          THE COURT:  But nothing was given to me about the

11   value of those properties; you just wrote them on a piece of

12   paper.  I have nothing that tells me what the value of those

13   properties are. ████████████████████████████████

14   ████████████████████████████████████████████

15   ████████████████████████████        And then this is

16   encumbered, this is encumbered, this is encumbered, ████

17   ████████████████████████████████████████

18   Are you seeking to pledge those properties?  What is the

19   value of those properties?  How do I know?  What do you

20   want?  I've asked you now this question four times:  What do

21   you want from me?

22          MR. ZEHNLE:  Okay.  So what we would like to do,

23   Your Honor, is pledge properties that would support the

24   $10 million bond that we've been discussing since November.

25   ████████████████████████████████████████



So right now what I'm asking the Court is that we be allowed -- and we have been, for the last few weeks, seeking to find a property that will be of sufficient value to cover the $10 million bond

In terms of the sureties, our understanding under 12 was that of course you have corporate sureties, that's fine, the Court is aware of it, they're tested and everything. But personal sureties are also allowed. And it does say that the -- 12 says, "Shall provide the Court with information regarding the value of the assets and liabilities of the surety if other than an approved surety."

THE COURT: Right. My problem was that the assets of the surety were also assets of the defendant, and that

```
 1    was why I said okay, fine, right now it's in a joint
 2    account, you need to put it in an account where you're the
 3    one who writes checks.  If you're saying that ties up the
 4    money and then he can't use it for something else, then I
 5    think what you're telling me is ███ can't be the surety.
 6          I just don't see how you can say the fact that
 7    there's a pot of money that belongs equally to them is
 8    something I can look to, if the issue that I'm trying to
 9    protect against is if he is gone.  If he is gone, how can he
10    not be gone without his -- I mean, wouldn't he want his
11    money?  So the idea was, okay, you asked me to look at his
12    own assets as if they were ████   And I'm saying if ████
13    going to be the surety, then show me that ███ has control
14    over the money.  If you don't want ███ to be the surety
15    anymore, then show me something else.  But I -- that was my
16    problem.
17          MR. ZEHNLE:  Okay.  I think I understand the
18    Court's concern here.
19          THE COURT:  It's his money, too.  I've never
20    heard -- you weren't -- I think section 12 contemplates a
21    third party and not joint assets.  It's not clear.  But when
22    you were saying, ██████ got the assets, ███ can be the
23    surety, and then when I read it -- because, remember, I kept
24    asking, What are you talking about?  Are these joint?  And
25    you said in a pleading, Yeah, they're all joint.  That was
```

1    what led me to add something.

2          And you're right, that sentence I made up.  Neither

3    party asked me for that.  But it was because I couldn't

4    understand what good ███ would do as a surety if it was his

5    money.  And it sounds like what you're telling me is you

6    wanted to propose something else.  You've always been free

7    to propose something else, but I don't have anything I can

8    rule on right now because you're not telling me what the

9    something else is exactly.

10          MR. ZEHNLE:  That's because we're still working on

11   it, Your Honor.  It would be premature for me to come to the

12   Court and say I've got another asset to substitute in there

13   when we don't.  I'm not going to tell the Court that.

14          THE COURT:  Okay.  Well, you're willing to propose

15   whatever you want to propose whenever you want to propose it.

16          MR. ZEHNLE:  I did want to make the point, in

17   terms of this specific motion for reconsideration, the point

18   was that if the Court is going to continue to require the

19   ███████   be set aside by ████████  and that ████████

20   be set aside by ██████████, then it may be problematic,

21   ████████████████████████████████████████████████████████

22   ████████████████████████████████████████████████████████████

23   ███████████████████████████████ --

24          THE COURT:  I don't know how I can say any more

25   clearly what I have said all along, which is that there has

1   to be $10 million for the Court at the end of the day.  It

2   can be property, it can be cash.  If it's property, it has

3   to be the unencumbered, demonstrated value of the property.

4   A lot of your values were based on, you know, this is what

5   comparable sales are based on some real estate agent or

6   based on Zillow.  That wasn't enough for me.  I didn't

7   think -- so, other properties you had appraisals, you had

8   some harder evidence for me to look at.  And then you said,

9   But don't worry, Judge, because we've got the cash, too; we

10  have two sureties.  And I said, Where is it?  Well, it's all

11  joint.

12          So, if you want to come back to me and you want to

13  say this is where the $10 million are in unencumbered value

14  of real estate that is demonstrable, or you want to say

15  here's $10 million in a pot, fine.  I just think I need

16  proof that it will be there at the end of the day.  And I'm

17  willing to be flexible about where it comes from.  But, as I

18  said from the beginning, the belts-and-suspenders approach

19  was your idea, and the reason I went with it is because the

20  value of the property really hadn't been demonstrated to me

21  fully.  And the reason I said, Well, if you want to be a

22  surety, you need to be the one who has control of the money

23  for the time being -- not forever -- is because otherwise

24  you're not really a surety, it's just him.

25  █████████████████████████████████████████████████

1      ████████████████████████████████████████

2      ████████████████████████████████████████████

3      ████████████████████████

4                      MR. ZEHNLE:  If I might ask the Court, because

5      you've often -- you've, in the past, you've said you can

6      come back and seek clarification.  In terms of documentation,

7      demonstrable evidence, what -- may I ask the Court exactly

8      what the Court would consider to be such demonstrable

9      evidence or proof of the value of the properties under

10     subsection 11, for example?

11                     THE COURT:  Well, some were appraised and some

12     were not.  I think that would be a useful exercise.

13                     MR. ZEHNLE:  An appraisal?

14                     THE COURT:  Yes.  I've been saying that for a long

15     time.

16                     MR. ZEHNLE:  I know, but as I'm sure the Court --

17                     THE COURT:  My problem is not that I'm unclear, I

18     don't think; I repeat myself at lot.

19                     MR. ZEHNLE:  It's just that, obviously, Your

20     Honor, during this time period, I think that real estate

21     appraisals -- I think comparables upon which appraisals are

22     ultimately based was a good substitute, given the time

23     pressures and given that Mr. Manafort was seeking to be

24     released from the home confinement.

25                     THE COURT:  I'm not suggesting that you haven't in

1    good faith shown me that you have property that is somewhere

2    in the neighborhood of ████████ .  If you want to remove

3    from the list the most valuable of the properties, then

4    we -- there's a lot more information that's going to have to

5    be provided.  I believe that was the one that was appraised,

6    but I can't quite remember.

7            MR. ZEHNLE:  It was, Your Honor.

8            THE COURT:  ████████████████████████████████████

9    ████████████  if you want to put together a different

10   package, feel free to put together a different package. █

11   ████████████████████████████████████████████████████████

12   ████████████████████████████████████████████████████████

13   ██████████████████████████████████████████

14   ████████████████████████████████████████████████████████████

15   ██████████████████████████████████████████████████████

16   █████████████████████████████████

17        █████████████████████████████████████████████████████

18   █████████████████████████████████████████████████████

19   ████████████████████████████████████████████

20   ████████████████████████████████████████████

21   ██████████████████████████████████████████████████████

22   ██████████████████████████████████████████████████████

23   ████████████████████████████████████████████████████████

24   █████████████████████████████████████████  my only

25   warning to you is that if it takes you time, the time is the

1    imposition on Mr. Manafort, not me.

2            MR. ZEHNLE:  I understand, Your Honor.  So in

3    terms of further clarification, if you will, if Mr. Manafort

4    were able to provide appraisals, which this Court has

5    clearly identified as something that it would consider to be

6    demonstrable evidence of the value of the properties, would

7    the requirements of subsection 12 still apply to ████

8    ███████████████████████████████  Because that still remains

9    problematic, █████████████████████████████████████████

10   ████████████

11           THE COURT:  I'm not going to rule on something

12   that isn't in front of me.  That is perilous for me because

13   I don't want some transcript waiving, Well, you said blah,

14   blah, blah.  But I can tell you, I started today by quoting

15   what I said on November 21st, which is I want either

16   security of property, the unencumbered value of which is

17   $10 million, or demonstrated that the surety has it, or

18   both, to add up to 10.  So I don't know how I can more clear

19   than that.

20           MR. ZEHNLE:  Okay.  Under 11 or, as the Court

21   said, 12.  And we will go back and we will look at that

22   particular transcript hearing, too.

23           The reason, obviously, for the motion for

24   reconsideration was that if both are in place, that,

25   obviously, affects the way that we present something to the

1    Court.  And I do understand the Court's position that Mr.

2    Gates may be in a different position, certainly in terms of

3    the ties to the community that the Court just mentioned a

4    moment ago, than Mr. Manafort, who has multiple residences.

5                THE COURT:  ████████████████████████████████

6    ██████████████████████████████████████████████

7    ████████████████████████████████████████████████████

8    ██████████████████████████████████████████

9    ██████████████████████████████████████████████████████

10   ██████████████████████████████████████████████

11   ██████████████████████████████████████████████████████

12   ████████████████████████████████████████████

13   ██████████████████████████████████████████████████

14          ██████████████████████████████████████████

15   ██████████████████████████████████████████████████

16   ██████████████████████████████████████████████████████

17   ██████████████████████████████████████████████████

18   ████████████████████████████████████      That's all taken care

19   of in terms of the bond number.

20                But, how the bond gets posted, I took what you

21   gave me as we're going to do this kind of overlapping

22   proposal, so that it's really nailed down.  And then I said,

23   Okay, but that's not really nailed down.  This is how you

24   really nail it down:  They can't encumber the property and

25   ████  has to put the money aside.  And you're saying, Well, we

1    can't do both.  Well, you tell me which one you want to do

2    and then I will rule on what you give me.

3              So all I'm going to do at today's motion is take

4    it under advisement until it's further supplemented by

5    whatever you want to supplement with





```
1
2
3
4
5
6
7
8
9
10
```

11          If you're saying to me, that's not what we want to

12   do, we're going to offer you something else -- I am not

13   going to read you the Bail Reform Act again, you know what

14   the two provisions are that are applicable here.  But if the

15   ██████████   comes out, that's a big chunk of money you're

16   going to have to make up.

17          MR. ZEHNLE:  And that's understood, Your Honor.  I

18   just wanted to make sure -- and I think you've made it very

19   clear today that it's either 11 or 12 or --

20          THE COURT:  Both.

21          MR. ZEHNLE:  Or maybe a combination.  But you said

22   just present it and then you'll rule on it at that point.

23          THE COURT:  I think that's the best course.

24          MR. ZEHNLE:  Okay.  One other thing.  I think --

25          THE COURT:  Mr. Downing either wants to consult

```
1    with you or say something to me.

2              MR. ZEHNLE:  With the Court's indulgence?

3              THE COURT:  Yes.

4              MR. DOWNING:  Thank you, Your Honor.

5              (Pause.)

6              MR. ZEHNLE:  Thank you, Your Honor.

7              THE COURT:  All right.

8              MR. ZEHNLE:  May I ask the Court if there was a

9    determination made by the Court with respect to the

10   particular values that were asserted for the four properties

11   that were pledged; ████████████████████████████

12   ████████████████████████████████████████████████

13   ████████████████████████████████████████████████

14   ███████████████████████████████████████

15   ████████████████████████████████████████████

16   ███████████████████████████████████████████

17   ███████████████████████████████████████████

18   ████████████████████

19        ███████████████████████████████████████████

20   ██████████████████████████████████████████

21   ██████████████████████████████████████████

22   ███████████████████████████████████████████████

23   █████████████████████████████████████████  I

24   think generally what you provided me was information that

25   showed that generally these would add up to close to ██
```

1    But, exactly how much I was trying to cover I didn't

2    calculate because what you told me was you don't need to

3    worry about it because we're also giving you this.

4            So, you know, I believe that the properties

5    largely -- and this is why the government was willing to

6    accept them -- they were close to what you were saying they

7    were worth.  But, I can't tell you which one was worth which

8    amount.  Some of your numbers were softer than others, and

9    you know which ones were softer than others.

10           MR. ZEHNLE:  Okay.  And in terms of the order with

11   respect to dissipation of assets and having to come back to

12   court, that was with respect to, obviously, subsection 12

13   and their role as sureties?

14           THE COURT:  Right.  If you're not a surety, then I

15   don't care what you do with your money.

16           MR. ZEHNLE:  Okay.  No, I mean, part of this is

17   just getting clarification because I don't want to come back

18   to the Court again in another motion and say something that --

19   when we've talked about this.

20           THE COURT:  At the end of the day there's only one

21   sentence in my order that was unanticipated, and that was

22   that one, because you said to me, Make them sureties.  I did

23   that.  You said to me, Properties won't be further

24   encumbered.  I did that.  And I don't see how you could

25   possibly have security that is encumberable; it's not

1   security anymore.

2           So there was nothing in there that was new or

3   different, with the exception of the one sentence.  As I

4   said, if you want to be a surety but your money is shared

5   with him, well, then you need to, you know, have a ███████

6   ███████ account where ███ writes checks.  Otherwise, I

7   don't have any confidence that it's going to be there at the

8   end of the day.

9           So if I don't need the money to be there at the

10  end of the day, then I don't need the money to be there at

11  the end of the day and then ███ can do with it what ███

12  wants.  But if you're taking the ███████ property out and

13  you need to look to the money to substitute for the

14  security, then either you need an independent surety who's

15  going to say, Yeah, I'll pay it, or if it's going to be ███

16  then you have to assure me in some way, if you don't like

17  the way I proposed, that it's actually going to be there.

18          MR. ZEHNLE:  Okay.  So -- all right.  I think I

19  understand the Court's point.  I would like to say, though,

20  under subsection 12, the reason that we had to deal with

21  this particular issue is when we read through subsection 12,

22  it basically says that such surety shall have a net worth

23  which shall have sufficient unencumbered value to pay the

24  amount of the bail bond.

25          THE COURT:  Right.

1    MR. ZEHNLE:  Understood.  But there was nothing --

2    THE COURT:  Then when you came in, basically what

3    you gave me ████████ joint ████████. ████████████

4    ████████████████████████████ how was I supposed

5    to assess it as a statement about ████████████████

6    ████████████████████████████████████████████████

7    ████████████████████ if you're saying my security is

8    ████████████████ then I wanted it to be clear that ████

9    would have the money at the end of the day, if ████ going

10   to be the surety.

11   MR. ZEHNLE:  I think what Your Honor -- and I

12   don't want to belabor the point any more, but I understand

13   the Court's concern.  ████████████████████████████

14   ████████████████████████████████████████████████

15   ████████████████████████████████████████████████

16   ████████████████████████████████████████████████

17   THE COURT:  I believed you when you told me how

18   much you had in the bank.

19   MR. ZEHNLE:  Yeah.

20   THE COURT:  So, I was assuming that you were

21   dealing with the Court in good faith.  The government --

22   MR. ZEHNLE:  Of course we are.

23   THE COURT:  So I didn't need to ask for that.  But

24   what I was saying is if there's ████████████ in the bank and

25   it belongs to ████████████, how does that assure me that ████

1   will have it -- she will have it -- at the end of the day?

2   It doesn't, because he can walk in the day before and take

3   it.  I don't -- I have said this ten times now.  I don't

4   think it's confusing.  I don't think it's unclear.

5            MR. ZEHNLE:  Well --

6            THE COURT:  I mean, if two people are holding on

7   to the same piece of property, how can one of them promise

8   you that they're going to have it, all of it, at the end of

9   the day?  Because the other person could walk away with it.

10  That's what joint property is.

11           MR. ZEHNLE:  Well, it's not worth going into a

12  hypothetical situations where -- in a hypothetical situation

13  where someone flees and, you know, leaves property,

14  including substantial real estate property which was not

15  included in the original bond proposal and would still have

16  that available and they're a joint owner -- I mean, that

17  property would still be theirs, and presumably the other

18  person would not be there to do anything to contest it, so

19  the property would be available.

20           THE COURT:  Well, I got nothing about the value of

21  those properties.  I got a clear impression that you weren't

22  looking to those properties to persuade me of anything, ██████

23  ████████████████████████████████████████████████████████████

24  ████████████████████████████████████████████████████████████

25  ████████████████████████████

```
 1              So, if you want to give me something different and
 2      you want to add up the numbers differently, fine.  But, I
 3      got that one page of ████████ assets in a list and there
 4      were a bunch of new properties that I knew nothing about
 5      listed, but it didn't tell me -- didn't give me anything for
 6      how I was supposed to know what they were worth.  And this
 7      was after asking multiple times for more information.
 8              So you gave me the -- what you wanted me to look
 9      at. ████████████████████████████████████
10      ████████████████████████████████████
11      ████████████████████████████████████████
12      ████████████████████████████████████████
13      ██████████████████
14              ██████████████████████████████████
15      ██████████████████████████████████
16      ██████████████████████████████████
17      ████████████████████████████████
18      ████████████████████████████████
19      ██████████████████████████████
20      ██████████████████████████
21              ████████████████████
22              MR. ZEHNLE:  Now I understand the Court's position.
23              ██████████████████████████████████
24      ████████████████████████████████████
25      ██████████
```

```
 1                MR. ZEHNLE:  Okay.

 2                THE COURT:  All right.  Is there anything the

 3     government wants to say?

 4                MR. ANDRES:  Very, very briefly, Judge.

 5                Judge, obviously we'll work with the defense and

 6     present our position to the extent we consent or not with

 7     any new bail package, that's one.  ████████████████████

 8     ██████████████████████████████████████████████████████

 9     ██████████████████████████████████████████████████

10     ████████████████████████████████████████████████████████

11     ██████████████████████████████████████████████████

12     ████████████████████████████████████████████████████████

13     ██████████████████████████████████████████████████

14     ████████████████████████████████████████████████

15     ████████████████████

16          ████████████████████████████████

17          ████████████████████████████████████████

18     ████████

19          ██████████████████████████████████████████

20     ██████████████████████████████████████████████████████

21     ██████████████████████████████████████████████████████

22     ████████████████████

23                And third and finally, just by way of

24     clarification, and this may be as a result of how the

25     government has referred to it before, in terms of the
```

1    defendant's self-surrender and in terms of him not fleeing

2    while he was under investigation, those are two separate

3    issues.

4           So, one, Mr. Manafort was clearly aware that he

5    was under investigation, did not flee.  That was not in

6    dispute at all.  With respect to his self-surrender, it's

7    slightly different.  He was notified of the fact that the

8    government would be seeking his appearance in court on

9    Monday.  I believe he was told on a Sunday morning and then

10   asked to return to New York.  He was in Florida at the time.

11   And during that time period he was largely under surveillance.

12          So his lawyer was called, told that he was going

13   to be arrested the next day and given the opportunity to

14   return.  I'm not sure it's something that's materially

15   different for the purposes of bail, but I just wanted to

16   make sure that the record was clear.  He then flew back to

17   New York -- sorry, not New York, to Washington with agents

18   who were on the plane with him, and certain points during

19   that time he was under surveillance.

20          So I just wanted to clarify that.  So it may be

21   that the government wasn't completely clear about that, but

22   I wanted to make the record.  So --

23          THE COURT:  Well, I think all the factors

24   surrounding the investigation and his appearance have been

25   factored into coming up with the amount of the bond.  And

1    so -- and they're not asking me to change the amount of the

2    bond.  They're asking me to change how they satisfy the

3    amount of the bond.  And so, I don't think we need to talk

4    about any of that further.  He's certainly, right now, has

5    been here, and I just want to make sure he stays here.

6              MR. ANDRES:  I don't disagree with any of that,

7    Judge.  I just want to make sure the record was clear as to

8    that point.  Thank you.

9    ████████████████████████████████████████

10   █████████████████████████████████████████████

11   ██████████████████████████████████████████████

12   █████████████████████████████████████████████

13             THE COURT:  All right.  Okay.  All right.  Is

14   there anything further I need to take up on behalf of Mr.

15   Manafort at this time?

16             MR. ZEHNLE:  No, Your Honor.

17             THE COURT:  Okay.  All right.  Thank you very

18   much, everybody.

19             MR. ANDRES:  Thank you.

20                          *   *   *

21

22

23

24

25

1                    CERTIFICATE OF OFFICIAL COURT REPORTER

2

3

4              I, JANICE DICKMAN, do hereby certify that the above

5       and foregoing constitutes a true and accurate transcript of

6       my stenograph notes and is a full, true and complete

7       transcript of the proceedings to the best of my ability.

8                              Dated this 15th day of February, 2018.

9

10

11                          /s/_____

12                          Janice E. Dickman, CRR, RMR
                            Official Court Reporter
13                          Room 6523
                            333 Constitution Avenue NW
14                          Washington, D.C. 20001

15

16

17

18

19

20

21

22

23

24

25