```
 1                 IN THE UNITED STATES DISTRICT COURT
                    FOR THE DISTRICT OF COLUMBIA
 2

 3     United States of America,      ) Criminal Action
                                      ) No. 17-CR-201
 4                    Plaintiff,      )
                                      ) MOTIONS HEARING
 5     vs.                            ) UNSEALED
                                      ) Per 8-10-18 Order
 6     Richard W. Gates, III,         ) Washington, DC
                                      ) Date:  February 7, 2018
 7                    Defendant.      ) Time:  10:30 a.m.
                                      )
 8     _____

 9                  TRANSCRIPT OF MOTIONS HEARING
                            HELD BEFORE
10           THE HONORABLE JUDGE AMY BERMAN JACKSON
                    UNITED STATES DISTRICT JUDGE
11     _____

12                   A P P E A R A N C E S

13     For the Plaintiff:      ANDREW WEISSMANN
                               GREG D. ANDRES
14                             U.S. Department of Justice
                               Special Counsel's office
15                             950 Pennsylvania Avenue NW
                               Washington, D.C.  20530
16                             202-514-1746
                               Email: Aaw@usdoj.gov
17                             Email: Gda@usdoj.gov

18     For Defendant Gates:    SHANLON WU
                               Wu, Grohovsky & Whipple
19                             1300 Pennsylvania Avenue, NW
                               Suite 700
20                             Washington, DC 20004
                               (202) 204-3053
21                             Email: Swu@dcwhitecollar.com

22                             WALTER MACK
                               Doar Rieck DeVita Kaley & Mack
23                             217 Broadway
                               Suite 707
24                             New York, NY 10005
                               (212) 619-3730
25                             Email: Wmack@doarlaw.com
```

**Annemarie McAvoy**
McAVOY CONSULTING, LLC
161-16 84th Drive
Jamaica, NY 11432
(917) 750-8131
Email: Mcavoypc@rocketmail.com

Pretrial Services:      Shay Holman

Special Agent:          Omer Meisel

Court Reporter:         Janice E. Dickman, RMR, CRR
                        Official Court Reporter
                        United States Courthouse, Room 6523
                        333 Constitution Avenue, NW
                        Washington, DC  20001
                        202-354-3267

                            *   *   *

1          THE COURTROOM DEPUTY:  Good morning, Your Honor.

2     This is a sealed proceeding and the courtroom has been locked.

3          This morning we have criminal case number

4     17-201-2, the United States of America v. Richard W. Gates,

5     III.  Mr. Gates is present in the courtroom.  The pretrial

6     services agency officer present for these proceedings is

7     Miss Holman.

8          Will counsel for the parties please approach the

9     lectern, identify yourself for the record.

10          MR. WEISSMAN:  For the government, Andrew

11     Weissmann, Greg Andres, and Special Agent Omer Meisel.

12          THE COURT:  Good morning.

13          MR. WU:  On behalf of Mr. Gates, Shanlon Wu.  Mr.

14     Walter Mack is present, Ms. Annemarie McAvoy is present.

15     Also in the courtroom from my office are my paralegal, Mr.

16     Culhane, and another lawyer, Miss Wright.

17          THE COURT:  All right.  And I note that Mr. Gates

18     is present.

19          MR. WU:  Yes.

20          THE COURT:  I received the motion you filed on --

21     I believe it was February 1st, and just became aware this

22     morning that last night you provided additional information,

23     which I've now had an opportunity to review.  Those e-mails

24     are both dated before the date of the motion, so I'm not

25     sure why I'm getting them now, as opposed to then.

1          But, why don't we just start with what is going on

2     and why you're seeking to withdraw.

3          MR. WU:  Yes, Your Honor.  In a matter like this

4     we are quite sensitive to our obligations to protect client

5     confidences.  We appreciate the sealed courtroom.

6          THE COURT:  And I want to tell you, if we need to

7     get into the substance of communications that you would

8     prefer that the government not be a party to, we can excuse

9     them or we can talk at the bench.  But if can -- what you

10    can tell me now on the record would be helpful, since it

11    seems like the government is part of this conversation

12    already anyway.

13         MR. WU:  Your Honor, we would, at the outset, to

14    protect client confidences and the attorney-client

15    communication, we would suggest the format be that we start

16    as an ex parte disclosure because, obviously, the Court

17    wants some examples of what the irreconcilable differences

18    may be.  And then as the Court sees fit, of course, to

19    invite the SCO to participate or have to make any particular

20    responses.

21         I would note for the Court that the exhibit filing

22    was late.  It's not intended to focus on the propriety or

23    impropriety of the government's conduct but, rather, to give

24    the Court an example of the untenable position we find

25    ourselves in.  But to elaborate on the irreconcilable

1    differences, we would suggest that we do it simply on an

2    ex parte basis.

3              THE COURT:  All right.  I think that's completely

4    appropriate.  I asked you to be here because I wasn't sure

5    if you were going to be needed.  I think rather than coming

6    up to the bench and using the husher, if you three would be

7    willing to be excused, but not go far.  And then if we try

8    to figure out scheduling or where to go from here or what

9    we're going to do from here, when we're not talking about

10   client confidences anymore, we can bring you back in.

11             MR. WEISSMANN:  We have no objections to that.

12             THE COURT:  Thank you.

13             MR. WEISSMANN:  The one question is should we go

14   outside where there is -- I'm told there's a substantial

15   number of people, or should we just go to, maybe, the jury

16   room?

17             THE COURT:  I was unaware of the substantial

18   number of people.  Is the courtroom artist drawing the door?

19   You can go to the jury room.  I don't believe you can hear

20   what's going on in there.

21             MR. WEISSMANN:  We can step out further.

22             THE COURT:  Thank you for letting me know.  That

23   would not be good.

24             (Whereupon government counsel leave the courtroom.)

25             THE COURT:  All right.  You can proceed, Mr. Wu.

1          For the record, the prosecution team has left the

2    courtroom and it's now just counsel and representatives from

3    your law firm and Mr. Gates.  And everybody in the jury box

4    is part of my team and they understand the confidentiality

5    of this proceeding.

6          MR. WU:  Thank you, Your Honor.  I'm going to try

7    and describe generally for you.  I apologize if I'm too

8    cryptic.  And we've consulted ethics counsel about this, to

9    make sure we stay within the boundaries.  And my understanding

10   is I should try to have the Court ask more questions than I

11   affirmatively disclose.

12          The general communication, as exemplified by the

13   e-mail communication with Special Counsel's Office, is we

14   ████████████████████████████████████████████████████████

15   ████████████████████████████████████████████████████████

16   learned that there had been actually meetings that took

17   place between Mr. Gates and the Special Counsel's Office

18   with another lawyer, not -- who has not entered an

19   appearance, we raised that concern with the Special Counsel.

20          In particular, we were concerned about whether or

21   not that lawyer had signed on to the protective order.  And

22   the special counsel, in their e-mail to us, represented that

23   they had, quote, check -- not quote, but they had checked

24   with Mr. Gates as to his selection of counsel and they were

25   satisfied that he wanted the other lawyer, Mr. Green, to

1    represent him with his dealings with the Special Counsel.

2           I completely assume that the Special Counsel never

3    would have directly contacted the represented party, so

4    obviously they contacted him through Mr. Green. ██████████

5    ████████████████████████████████████████████████████████

6    ████████████████████████████████████████████████████████

7    ████████████████████████████████████████████████

8    █████████████████████

9           ██████████████████████████████████████████

10   █████████████████████████████████████████████████

11   ██████████████████

12          THE COURT:  Obviously.  Let me just try to roll

13   this back a little bit.  Did you -- how and when did you

14   learn of meetings between Mr. Gates and the Special

15   Counsel's Office?  Just from the public reports?

16          MR. WU:  Let me back up.  The first time I learned

17   that Mr. Green had ever contacted the Special Counsel's

18   Office when I was on a phone call with Mr. Andres who told

19   me, "I assume you know that Tom Green called me this

20   morning." ███████████████████████████████████████████

21   ████████████████████████████████████████████████████

22   ███████████████████

23          ████████████████████████████████████████████

24   ██████████████████████████████████████████

25          THE COURT:  All right.  And have you discussed

1    what you learned from the Special Counsel's Office and the

2    articles you've read with Mr. Gates?

3    ████████████████████████████████████████████

4    ████████████████████████████████████████████████

5    ████████████████████████████████████████████████

6    ███████████████████████████████████████████

7    ███████████████████████████████████████████

8    ████████████████████████████████

9           THE COURT:  All right.  My question to you was --

10   and maybe I misspoke, but I think I said, "Have you

11   discussed it with Mr. Gates?  I didn't say, "Have you

12   discussed it with Mr. Green?"

13   ████████████████████████████████████████████████

14   ███████████████████████████████████████████████

15          THE COURT:  So has Mr. Gates informed you of what

16   his desires are in terms of who should be representing him

17   at this time?

18   ███████████████████████████████████

19          THE COURT:  I think these are matters that the

20   Court is completely entitled and required to inquire into in

21   order to deal with the situation.  The defendant has a right

22   to be represented by the counsel of his choice, but that

23   right also has to be balanced, now that we have an ongoing

24   criminal proceeding with a briefing schedule, with the

25   public's interest in the efficient administration of justice.

```
1          So you've asked to withdraw.  Our local rules say
2     you must not withdraw unless and until I permit you to do
3     so.  And so, I am going to have to inquire of you, Mr.
4     Gates, and of you, Mr. Wu, what you've discussed with each
5     other, so that I understand what's going on.
6              MR. WU:  I understand.  Thank you, Your Honor.
7              THE COURT:  So can you explain to me what you have
8     discussed with Mr. Gates about his representation by Mr.
9     Green, as opposed to you, etcetera?
10             MR. WU:  Yes, Your Honor.  And Mr. Mack may want
11    ████████████████████████████████████████████████████████
12    ██████████████████████████████████████████████████
13    ████████████████████████████████████████████████
14    ███████████
15             (Off the record discussion between Mr. Wu and Mr.
16    Mack.)
17             MR. WU:  Sorry, Your Honor.  I was uncomfortable
18    about disclosing the next fact, but I feel I'm required to
19    do so because of the Court's inquiry.
20             ███████████████████████████████████████
21    ██████████████████████████████████████████
22    █████████████████████████████████████████████
23             THE COURT:  And that's in what you've already
24    attached in the pleading to me.  Not a public pleading, but
25    that's -- you're telling me this for the second time.
```

1       MR. WU:  Yes.

2       THE COURT:  If you're hesitating, that is exactly

3   what's in the e-mails.

4       MR. WU:  (Nods head.)  And my --

5       THE COURT:  And was -- the original, was there a

6   plea offer that had been extended to you that you

7   communicated to Mr. Gates?

8   ████████████████████████████████████████████████████

9   meeting with the Special Counsel's Office, at which they

10  made a reverse proffer to us and they gave us several

11  binders of hard copy discovery, in addition to all of the

12  ██████████████████████████████████████████████████

13  ███████████████████████████

14       Later, when we learned of the Tom Green situation,

15  ████████████████████████████████████████████

16  ████████████████████████████████████████████████

17  ████████████████████████████████████████████

18  ████████████████████████████████████████████████

19  ██████████████████████████████████████████████████

20  ████████████████████████████████████████████████

21  ██████████████████████████████████████████████████

22  ████████████████████

23       THE COURT:  Well, has Mr. Gates told you that he

24  wants Mr. Green to represent him instead of you?

25  ██████████████████████████████████████████████

1 ███████████████████████████████████████████

2 ████████████████████████████████████████████████

3 ███████████████████████████████████████████

4 ██████████████████████████████████████

5 appears in the case, which places us in a very odd position.

6 ██████████████████████████████████

7 ███████████████████████████████████████████

8 ████████████████████████████████████████████████

9 ████████████████████████████████████████████████

10 ████████████████████████████████████

11 communicated with the Special Counsel, they had given us a

12 particular earlier deadline about deciding when to

13 cooperate.  When we learned that Mr. Green was involved, one

14 of the questions that I asked the Special Counsel was, given

15 that a new lawyer was becoming involved in the case, could

16 we have longer for that lawyer to get up to speed?  To the

17 best of my recollection, I believe Mr. Mack -- or, Mr.

18 Weissmann said no, we will not extend that deadline for you,

19 indicating that the deadline might be extended for Mr.

20 Green.  It seemed like it was because they've continued

21 their negotiations.

22 ██████████████████████████████████

23 ████████████████████████████████████████████

24 ██████████████████████████████████

25 ████████████████████████████████████████████

1 ████████████████████████████████████████████

2 ██████████████████████████████████████████████

3 ████████████████████████████████████████

4 █████████████████████████████████████████████

5 ████████████████████████

6        THE COURT:  Is there any concern -- you talked

7 about the reverse proffer and the binder -- about whether

8 any information has been given to Mr. Green that wasn't

9 given to you?

10        MR. WU:  Yes, there was, Your Honor.  I

11 specifically understood from Mr. Greg Andres that there had

12 been two binders, Mr. Andres told me, which had been given

13 to Mr. Green which had not been given to us at that time.

14 Mr. Green's meetings took place after ours, so it made

15 sense, perhaps there's additional information.

16        The Special Counsel said we should take that

17 ████████████████████████████████████████

18 █████████████████████████████████████████

19 e-mail to the Special Counsel, they represented in the

20 e-mail that there was no discrepancy.  So I am assuming -- I

21 don't know the answer to that -- that they may have, in the

22 discovery later given to us, included that.  It did not come

23 in the form of separate binders.  But there's been an

24 enormous amount of electronic discovery and it's possible

25 that they included that information now.  So I take them at

1   their word, if they say it's remedied and everyone had the

2   same information.  I just don't know which pieces he had

3   that we didn't have.

4           THE COURT:  What do you understand Mr. Gates's

5   intentions are in terms of your representation and what role

6   you're supposed to be playing at this point?



         THE COURT:  All right.  All right.  I'm going to

hear from each of the lawyers, then I'm going to talk to

you, Mr. Gates.

         All right.  Is there anything further you feel you

need to add right now, Mr. Wu?

         MR. WU:  There is a logistical matter, which the

Special Counsel, as well as the Department of Justice,

Criminal Division, which is managing the taint team on

discovery, they want to continue to give us discovery.  And

also there's a claw-back issue, which the Special Counsel

has invoked the claw-back provisions of the protective



1

2

3

4

5

6

7

8   they're asking for back, and what?

9

10

11

12

13

14

15

16

17            THE COURT:  All right.  Thank you.

18            MR. WU:  You're welcome.

19            THE COURT:  Mr. Mack, I think there was a

20   communication that Mr. Wu was unable to enlighten me about.

21   You've spoken to Mr. Green?

22

23

24            THE COURT:  Okay.  Can you tell me about that?

25



 10     There is no question that there's a completely

 11  different track.  And of some consequence, at least to me,

 12  even this morning, DOJ, who is part of the taint team --

 13  we've always taken the position with the SCO that we are

 14  counsel of record, we cannot be excluded.  Mr. Gates, and

 15  perhaps Mr. Green, can't be expected to subvert the rights

 16  the client has.  And DOJ is unwilling to turn over anything

 17  to anyone other than Mr. Green because he's not counsel of

 18  record.  Yet the SCO is -- time after time we're saying,

 19  hey, we have to be involved here, there's no good reason why

 20  we shouldn't be involved here; we are the ones responsible

 21  to the Court for proceeding according to schedule.  We are

 22  not, under these circumstances, able to do our job.  And

 23  basically we wrote --

 24         THE COURT:  Do you know if Mr. Green has some kind

 25  of engagement letter from Mr. Gates that he has showed

1    either DOJ or the Special Counsel?

2            MR. MACK:  I can only assume.  It would only be an

3    assumption, Your Honor, that he does.

4            THE COURT:  Did you just say -- I just want to

5    make sure that you doesn't misspeak here.

6            MR. MACK:  I may have.

7            THE COURT:  There's information coming to you from

8    the SCO, discovery.  There's also taint team information

9    that comes to the defense from DOJ.

10           MR. MACK:  Yes.

11           THE COURT:  And DOJ will only give it to Mr. Green

12   or only give it to you?

13           MR. MACK:  Only give it to counsel of record,

14   that's us.

15           THE COURT:  That's you, not Mr. Green?

16           MR. MACK:  That's correct.

17           THE COURT:  You said DOJ won't give it to other

18   than Mr. Green and that's what confused me.

19           MR. MACK:  I probably speak too fast.  What I was

20   saying, we've taken the position with the SCO, Hey, we

21   should be getting all material.  If we're going to be held

22   responsible, we should get it.  They basically say to us,

23   Hey, that's your problem with your client, don't bother us.

24   DOJ takes exactly the opposite position, which is that

25   you're the only guys that we're going to deal with because

1    you're counsel of record.

2              So it's an interesting dichotomy that at least is

3    puzzling to me.  I would say that we have gone to great

4    lengths to document for everyone involved, including Mr.

5    ██████████████████████████████████████████████████████

6    ██████████████████████████████████████████████████████

7    ██████████████████████████████████████████████████████

8    ████████████████████████████████████████████

9    ██████████████████████████████████████████████████████

10             THE COURT:  To delay what?  Delay moving to

11   withdraw?

12             MR. MACK:  Yes.

13             THE COURT:  Has he indicated to you any intention

14   to enter his appearance in this matter?

15             MR. MACK:  I can't say that.  Mr. Gates is the one

16   who has to answer those questions.

17             THE COURT:  Has Mr. Green indicated to you --

18             MR. MACK:  I'm listening.

19             THE COURT:  -- any intention to enter his

20   appearance in this matter?

21             ████████████████████████████████████████████

22             MR. WU:  Court's indulgence, Your Honor.

23             (Off-the-record discussion between Mr. Wu and Mr.

24   Mack.)

25             ████████████████████████████████████████████

1 ████████████████████████████████████████████████

2 ████████████████████████████████████████████

3 ████████████████████████████████████████████

4 ██████████████████████████████

5          THE COURT:  Do you have any -- not speculation,

6 but based on conversations with Mr. Green and thinking this

7 through, any understanding of what the thought process

8 behind all this is, if the idea is that you're counsel of

9 record and that would help maintain the privacy and the

10 secrecy of the ongoing negotiations and that's why they

11 wanted you to stay on?  Or is it because they've only

12 brought him in for that purpose and should the negotiations

13 fail, the idea is that you're going to be the trial team?

14              ████████████████████████████████████████████

15 ████████████████████████████████████████████████

16 are lots of ideas we have for defense that would have, could

17 have resulted in a trial team compliance with your schedule.

18 We have been prevented from doing that.  I think the concept

19 could be -- and again, Mr. Gates is the best one -- is that

20 Mr. --

21          THE COURT:  You're saying you're prevented from --

22          MR. MACK:  Proceeding with investigative steps and

23 conducting interviews and doing legal research that would

24 enable us to keep your schedule.

25          ██████████████████████████████████████████



THE COURT:  And?

THE COURT:  That's a different question.  I
understand why people might think that a different lawyer is
better for a different role.  My question is:  What is the
strategy behind now that I have Tom Green, he's not entering
an appearance and you guys are still my counsel of record?
Do you understand from either one of them what the -- what
is going on here?  Is it an attempt to continue to throw the
press off, which doesn't seem to be working, or is it
something else?

1

2

3          THE COURT:  Okay.  All right.  Ms. McAvoy, is

4    there anything that you want to add to the -- Mr. Mack, did

5    you say everything you think I need to hear?

6          MR. MACK:  I think there's one other thing, and

7    that is there is a feeling now engendered, that certainly

8    has made it difficult for us, that our codefendant, in light

9    of whether it's press or whether it's just common sense, is

10   really not happy even discussing with us any longer what had

11   been joint efforts, to some extent, to collaborate.

12         THE COURT:  Do you have a written joint defense

13   agreement?

14         MR. MACK:  Negative.  We do not, Your Honor.

15         THE COURT:  You don't have something written that

16   obligates one side to let the other side know what plea

17   negotiations are underway?

18         MR. MACK:  We don't.  But the question is whether

19   or not -- what were the representations made?  We do

20   understand there was a meeting, including Mr. Green, maybe

21   Mr. Gates, with them, which they feel -- have strong

22   feelings about.  So that's not for me to speak to, but it

23   has resulted in --

24         THE COURT:  Mr. Gates and Mr. Green met with Mr.

25   Manafort and his counsel?

1          MR. MACK:  All I can say with clarity is that I

2     know Mr. Green did.  I don't know whether Mr. Gates was with

3     him or not.  I don't know.

4          THE COURT:  All right.  But you were not invited

5     to that meeting?

6          MR. MACK:  We were not invited.  In fact, we've

7     been asking to hold just such a meeting for weeks and

8     discouraged from doing so because, obviously, we would

9     collaborate and try to work together with our codefendant.

10          THE COURT:  But to this point you haven't signed a

11     joint defense agreement?

12          MR. MACK:  That is absolutely correct; we have

13     not, Your Honor.

14          THE COURT:  All right.  Miss McAvoy?

15          MS. McAVOY:  Yes, Your Honor.  I have not been

16     involved with any of the direct discussions with Mr. Green

17     or Mr. Gates, other than in more towards the beginning,

18     before all of this happened.  I concur with what Mr. Mack

19     and Mr. Wu have said, though.  So if Your Honor has any

20     questions for me, I would be happy to answer.

21          THE COURT:  Well, what -- you know, again, now

22     there's a question about why do we need a fourth lawyer?

23     One question would be:  We already sort of had this dream

24     team going here.  What were the various roles that the three

25     of you were supposed to play in the first place?

1        MS. McAVOY:  My role is, at least my understanding,

2    is I have an expertise on money laundering, former

3    prosecutor, and that's -- I've been consulting in that area

4    for a very long time.  So, as we would get ready for trial

5    and so on and potential motions, I would be involved in all

6    of that.  And Mr. Wu would be more of our local counsel

7    handling the day-to-day and Mr. Mack is sort of the team

8    leader for the three of us.

9        THE COURT:  Okay.  That's helpful.  Thank you.

10       Yes?

11       MR. WU:  One point.  Our understanding of the

12   meeting that happened between Mr. Manafort's team and Mr.

13   ████████████████████████████████████████████████████████████

14   ████████████████████████████████████████████████████████████

15   ████████████████████████████████████████████████████████████

16   ██████████████████████████████████████████████

17   presents, for us, a terrible conundrum because I certainly

18   would have not entered into that kind of conversation, if

19   simultaneously I was in negotiations with cooperation or a

20   plea.

21       THE COURT:  It's a little inconsistent with the

22   notion of a joint defense.  Most joint defense agreements,

23   if they're written -- that's why I asked if there was a

24   written one -- requiring you to notify the other side, if

25   you're engaging in those communications.

1          MR. WU:  I think Your Honor understands the concern.

2          THE COURT:  I do.

3          All right.  Mr. Gates, what is your position with

4  respect to the motion to withdraw that has been filed by

5  these three attorneys?

6          THE DEFENDANT:  Your Honor, I would say it was not

7  my intention to have them withdraw initially.  The

8  involvement of Mr. Green, it was always my intention to add

9  additional lawyers to the team for various skill sets, but,

10  also, at the recommendation of family, friends, and some

11  colleagues.  I was -- you know, understood the frustration

12  of Mr. Mack and Mr. Wu.  If I fail to take responsibility

13  for communication between the two sets of attorneys, that is

14  ████████████████████████████████████████████████

15  █████████████████████████████████████████████████████

16  ██████████████████████████████████████████

17          In terms of how we, I guess, view this moving

18  forward, it's my understanding that Mr. Green, within the

19  week, will move toward making an appearance.  I think there

20  are some things that we're also working out as well this

21  week.  Unfortunately, he could not be here because he's in

22  Detroit, which I think was the intent of trying to push this

23  hearing off until the 14th for the status hearing.

24          THE COURT:  Nobody asked me to put the hearing off

25  to the 14th.  Nobody asked me to put this hearing off.

```
 1                THE DEFENDANT:  Agreed.  Yes, that's correct.

 2                THE COURT:  And he can't because he hasn't entered

 3      an appearance.

 4                THE DEFENDANT:  Yes.  Okay.

 5                THE COURT:  Well, at this point, are you -- have

 6      you retained Mr. Green?

 7                THE DEFENDANT:  I have retained Mr. Green, yes,

 8      ma'am.

 9                THE COURT:  All right.  And is there a written

10      engagement letter?

11                THE DEFENDANT:  There is a written engagement

12      letter, yes, ma'am.

13                THE COURT:  Has it been provided to the Special

14      Counsel?

15                THE DEFENDANT:  I am not aware that it has.  You

16      would have to ask them.  I'm not sure Mr. -- Mr. Green had a

17      series of meetings in advance of my participation.  I know

18      there was some issues with protective order.  I understand

19      the protective order was signed.  I don't know if that

20      requires a display of the engagement letter or not.

21                THE COURT:  All right.  But you have certainly

22      indicated to the government that he has your authority to

23      engage in negotiations with them on your behalf?

24                THE DEFENDANT:  I have.

25                THE COURT:  And do you have written engagement
```

1    letters with these attorneys?

2              THE DEFENDANT:  I do, yes.

3              THE COURT:  I would think they all do that.

4              THE DEFENDANT:  I couldn't remember if they were

5    all separate or if it was one with Mr. Mack.  Yeah.

6              THE COURT:  There's a couple of different issues.

7    The first issue is these are retained counsel and there's

8    only -- the Court can only, essentially, force them to work

9    for nothing under very unusual circumstances.  And when you

10   put together a team with various levels of expertise, that

11   puts a tremendous financial burden on the defendant.  I

12   understand that.  But that's -- those are choices that

13   you're going to have to make.

14             As far as I know, the lawyers you have, all of

15   them are capable of negotiating plea agreements and trying

16   cases.  Everybody's an experienced criminal defense attorney

17   here.  You put lawyers in a terrible position if they are

18   trying to fulfil their ethical obligation to you, which is

19   to give you their best independent advice and to zealously

20   represent you, if they don't know all the facts.  So if

21   you're having meetings and discussions that they don't know

22   about, you're asking them to do their job with one hand tied

23   behind their back.

24             THE DEFENDANT:  Um-hum.

25             THE COURT:  And that's why they're here, because

1    they're saying he's having meetings, we don't even know

2    about them, but we're on the hook, Judge, our names are on

3    the court docket as the ones who have the obligation to

4    represent him.  And, oh, by the way, you've set a schedule

5    for things that need to be done.

6            Now, in a situation where it's just one lawyer

7    wearing all the hats and you want to keep plea negotiations

8    quiet, you might not move to extend the schedule or, you

9    know, there are ways to sort of finesse it publicly and to

10   continue your plea negotiations before we have to set a

11   trial date or start preparing for trial or get relief from

12   motions hearings or motions dates.  I don't want to

13   interfere with your ability to do what you're doing with Mr.

14   Green and with the Special Counsel's Office, if you

15   determine, at the end of the day, that it's in your best

16   interests.  You have a Constitutional right to go to trial,

17   you also have the right to negotiate a plea agreement that

18   can limit your exposure.  But the lawyers -- this isn't

19   working.

20           THE DEFENDANT:  Correct.

21           THE COURT:  If Mr. Green enters his appearance in

22   this matter, then I can grant these lawyers' motion.  I'm

23   reluctant to grant a motion and have you be unrepresented.

24           THE DEFENDANT:  Um-hum.

25           THE COURT:  I don't want to set -- I can set a

1    date on the calendar for ascertainment of counsel, but that

2    doesn't necessarily need to be done.  But, I still don't

3    quite understand what your plan is at this point.  I know

4    you said initially it wasn't your intention to have them

5    withdraw, you wanted all these different people on your

6    team.  But, is your plan now to hire Mr. Green as your

7    counsel of record for the whole ball of wax; negotiating,

8    and if the negotiations don't work out, to take this all the

9    way?

10            THE DEFENDANT:  Your Honor, I think initially the

11    intent was to bring Mr. Green on and at that onset he was

12    getting up to speed.  So a lot of the work he did early on

13    was catch-up work to get him in a position to be able to

14    help me evaluate decisions along the way.  I think that I

15    need to talk to Mr. Green in terms of understanding

16    precisely what the intent was here today and then to ask him

17    specifically -- because we have not entered into discussion

18    yet of what happens if any sort of exploratory routes do not

19    come to fruition, and what that would do in terms of having

20    a lawyer represent me.

21    ███████████████████████████████████████

22    ████████████████████████████████████

23    ██████████████████████████████████████

24    I think for the sake of both Mr. Mack, Mr. Wu, and myself,

25    that we will have a conference call with Mr. Green and let

1    him specifically outline what his, you know, steps are, both

2    now and as we move forward into the future, if there are

3    different paths that might occur.

4         THE COURT:  Well, I think you all need to talk.

5    There is no rule against your having Mr. Green as part of

6    your team and not -- and having these people remain as part

7    of your team as well, as long as the team is in

8    communication with itself.  What you can't do is talk to Mr.

9    Green about some stuff and talk to Mr. Wu about other stuff

10   and expect either one of them to be able to perform their

11   ethical obligation, and their ethical obligation runs to you.

12        THE DEFENDANT:  Yes.

13        THE COURT:  It is, in the end, in your interest

14   that your lawyers know what you are doing.

15        THE DEFENDANT:  Um-hum.

16        THE COURT:  If you decide that you do want Mr.

17   Green to continue these negotiations and to represent you,

18   but you also, if that doesn't work out, want these people to

19   be your trial team, that's a decision you're entitled to

20   make.  But then you all need to have your heads together

21   about these meetings.  Even if Mr. Green is the only one who

22   goes to the meetings, they need to then get the debrief and

23   the discussion.  And then there may come a point where Mr.

24   Green is discharged or these people are discharged.  But you

25   can't have it both ways.

1           I think it is more important for you all to work

2    it out among yourselves than for me to issue orders working

3    it out.  I don't get to pick your lawyer.  You get to pick

4    your lawyer.  If you want these people to remain and you

5    want me to deny this motion, then there needs to be some

6    kind of restructuring and rebuilding.  This is untenable.  I

7    ████████████████████████████████████████████

8    ███████████████████████████

9               THE DEFENDANT:  Um-hum.

10             THE COURT:  If Mr. Green enters his appearance,

11    that seems to obviate the Court's concerns that we have a

12    person under indictment with no lawyer.

13             When do you think you can have a plan in place?

14             THE DEFENDANT:  I think relatively in the next few

15    days.  I know Mr. Green is tied up today and tomorrow and

16    then he's back.  And I think the plan was, based on this

17    hearing this morning, is to have Mr. Green, you know, work

18    toward making an appearance.  But I think we need to have --

19             THE COURT:  I don't understand what the work is

20    involved.

21             THE DEFENDANT:  Sure.  So I think -- to your point

22    about understanding the different paths, if you will -- and

23    ███████████████████████████████████████████

24    ███████████████████████████████████████████

25    ███████████████████████████████████████████

1    ████████

2              THE COURT:  Is there a financial issue with Mr.

3    Green, also?

4              THE DEFENDANT:  Not yet.

5              THE COURT:  I think it's fair to anticipate that

6    what he would require as a retainer from you will be

7    different under the two circumstances --

8              THE DEFENDANT:  Um-hum.

9              THE COURT:  -- if history is any guide to how

10   these cases work.

11             I think -- and maybe, Mr. Wu and Mr. Mack and Miss

12   McAvoy, you can let me know if you agree -- I think the

13   thing for me to do at the moment is to take this under

14   advisement and to have some period of time during which if a

15   praecipe gets entered for Mr. Green, then I think I can

16   grant your motion.  And if it turns out that something is

17   worked out that involves one of you to your satisfaction,

18   then perhaps withdrawing wouldn't be necessary, there's

19   going to be a team.

20             But, I am troubled granting a motion to withdraw

21   right now under these kind of precarious circumstances where

22   we've got a schedule and I don't have anybody who's standing

23   by prepared to enter his appearance.  But, Mr. Green has

24   been around the block.  He certainly knows that there's a

25   case pending right now and he hasn't entered his appearance.

1    And to the extent that has -- do you understand why he

2    hasn't to date?

3    ███████████████████████████████████████████

4    ███████████████████████████

5             THE COURT:  Is it the idea to keep it secret so

6    that all that's in the paper is just rumor at this point and

7    if his name appears on the docket that that would confirm

8    the rumors?  Is that one of the reasons?

9             THE DEFENDANT:  No, had nothing to do with the

10   press strategy, Your Honor.

11            THE COURT:  You're just trying to figure out what

12   to do?

13            THE DEFENDANT:  Yes.

14            THE COURT:  I think that this is not a functional

15   way to go about it.  I think you've put everybody in a very

16   difficult position and they can't do the only thing they're

17   supposed to do, which is help you.  So I think you need to

18   decide what you're going to do and --

19            THE DEFENDANT:  Okay.

20            THE COURT:  -- and it's, in part, a financial

21   decision, but it's also a strategic decision.  But, it seems

22   like you're trying to have the best of a lot of worlds.

23   And, I mean, at this point I'm not entirely sure that the

24   communication has broken down irreparably, but it has broken

25   ██████████████████████████████████████

1

2

3

4

5

6

7

8          THE COURT:  Either he's part of the team or he's

9   the new team.

10          THE DEFENDANT:  Okay.

11          THE COURT:  But, you can't sort of have --

12          THE DEFENDANT:  Yes.

13          THE COURT:  -- everybody kind of half in and half

14   out; they don't know what they're supposed to do and that's

15   not fair, and it's not fair to you either because it's a big

16   job that they've been assigned.

17          THE DEFENDANT:  Um-hum.

18          THE COURT:  Okay.  You can be seated.  Thank you.

19          THE DEFENDANT:  Thank you.

20          THE COURT:  All right.  Having heard all of that,

21   Mr. Wu, is there anything further you want to say to me or

22   anything you think I should do?  I, obviously, have never

23   encountered something like this before.  I've been involved

24   in teams where lawyers were brought on because, oh, that's

25   the one who knows the prosecutor and that's the one with the

1    jury appeal.  And at the end of the day it often comes down

2    to who can do everything and who can afford to pay to do

3    everything.  But, what do you think we should do right now?

4          MR. WU:  Your Honor, I also just want to concur,

5    I've never been involved in a situation like this, despite

6    having worked on many teams, supervised many lawyers. ▮

7    ████████████████████████████████████████████████████████

8    ████████████████████████████████████████████████████████

9    ████████████████████████████████████████████████████

10   ████████████████████████████████████████████████████████

11   ██████████████████████████████████

12              ████████████████████████████████████████████

13   ██████████████████████████████████████████████████

14   ████████████████████████████████████████████████

15     ███████████████████████████████████████████████

16   ████████████████████████████████████████████████████

17   suggest that we put some sort of a temporary stay in the

18   schedule, but maybe -- I'm not sure what else to do.  I

19   don't really see how we're able to simply realistically do

20   the volume of work and man hours at this point.  It's an

21   enormous strain on resources.

22              And on a very practical point, Special Counsel and

23   DOJ, Criminal Division, is breathing down my neck to get

24   going both on the claw-back issue, as well as -- they give

25   us discovery, we give it to a discovery vendor who puts it

1     into the database.  So there are two new productions waiting

2     at the doorstep for us to accept it.  I suggest that the

3     SCO, that it may make better sense to talk to Mr. Green

4     about that.  They have not responded.  DOJ, Criminal

5     Division, has responded, said we're not talking to Mr. Green

6     because he has not entered an appearance.

7           Your Honor, as Your Honor has suggested, it seems

8     like a push-of-the-button to enter his appearance, that

9     might solve some issues but for us.  Again, it's very

10    difficult for us to go forward.

11          THE COURT:  I was going to suggest that this had

12    to be resolved by the status conference, but even that seems

13    a little far away under the circumstances.  So, I think I

14    would like to see Mr. Green enter his appearance by Friday,

15    if he's your lawyer.

16          THE DEFENDANT:  Okay.

17          THE COURT:  And then you can notify me at the

18    status conference whether he's your only lawyer or there is

19    some subset of this team that's going to continue, and can

20    rule on the motion at that time.  But, I think we should try

21    to proceed in that manner.  If there's some reason why he

22    can't do it by -- if there's some reason why we need to be

23    proceeding this way, then I think you need to notify your

24    current counsel of record that we need to continue this

25    hearing and then Mr. Green needs to be here and tell me

1    something.

2              THE DEFENDANT:  Okay.

3              THE COURT:  But I just don't see how we continue

4    to operate in this -- these unchartered waters.  So, I mean,

5    if he files -- if he enters his appearance by Friday and at

6    that time you're prepared to inform me what your position is

7    on the motion to withdraw, you can do both; that can be

8    sealed, if it needs to be.  And I can either grant or deny

9    it in full or in part that day based on what you tell me.

10   If you need until the 14th, that's fine.  But the sooner you

11   know -- if you know before then, you can let me know and it

12   will be less of a spectacle at the hearing on the 14th.

13             I think the idea that the assistance Mr. Green is

14   providing is a secret is probably long gone.  I don't know

15   if they sit outside counsel's office and watch who comes and

16   goes, but apparently they do.

17             All right.  Mr. Wu, do you have anything further?

18             MR. WU:  No, Your Honor.  That --

19             THE COURT:  All right.

20             MR. WU:  That seems a workable solution for us, if

21   he decides to enter his appearance by Friday.  Thank you.

22             THE COURT:  All right.  So, if we bring the

23   prosecution back in, I think we can tell them that we are

24   endeavoring to solve the question of who they need to get

25   documents to or from promptly.  But the situation isn't

1    going to change, at least between now and Friday, and

2    possibly not until the 14th.

3              MR. WU:  Thank you, Your Honor.  That will be very

4    helpful.

5              THE COURT:  All right.  Okay.  Let's bring them

6    back in.

7              Oh, wait.  I do have one question.  The original

8    motion had one exhibit attached to it.

9              MR. WU:  Yes.

10             THE COURT:  That was sealed, but all it said was

11   irreconcilable differences; it had no attorney-client

12   privilege information in it whatsoever.  Exhibit 2, the

13   communications with the United States, obviously, I would

14   grant the motion for leave to file Exhibit 2 under seal.

15   But I don't understand the need to file Exhibit 1 under seal

16   because I thought irreconcilable differences is what people

17   always say in public pleadings when they don't want to

18   reveal client communications.

19             MR. WU:  Your Honor, my understanding, on advice

20   of ethics counsel, is that the responsibilities of us as

21   counsel of record go broader than merely the attorney-client

22   communication privilege, but extends, under the ethics

23   rules, to client confidences.  I wanted to err on the side

24   of being overly cautious.  And I felt that telling the

25   world, in this case, that there were irreconcilable

1    differences between us and the client was exposing a client

2    confidence.  That's why we put it under seal.

3            THE COURT:  I feel like, given the public interest

4    in the matter and the fact that irreconcilable differences

5    could mean anything, including we haven't gotten our

6    retainer, to we think he should plead and he doesn't want

7    to, or we don't and he does, or a million other things, that

8    it would be my intention to grant the motion for leave to

9    file Exhibit 2 under seal, but to deny it as to Exhibit 1.

10   Because I think the -- a lot of the press speculation is

11   Exhibit 1 has a lot of details about what's going on with

12   the Special Counsel's Office, and it might dial things back

13   a bit to see that it's a pretty vanilla motion.  So, that is

14   what I intend to do with that.

15           All right.  Now let's bring the United States back

16   in.

17           (Whereupon the government attorneys enter the

18   courtroom.)

19           THE COURT:  All right.  Thank you for your

20   patience.  Now that counsel for the United States has

21   returned to the courtroom, I want to say that, first of all,

22   I don't believe there is -- there was no complaint made and

23   I don't believe there is any indication that the government

24   has done anything improper in this situation.  Mr. Gates has

25   authorized Mr. Green to speak with you, and so you're

1    entitled to speak with him.  I think it is fair to say that

2    the -- speaking with some counsel with some things and other

3    counsel about other things makes it extremely difficult for

4    either counsel to do their jobs properly, and in the end

5    makes it difficult for the government to know what to do.

6         Apparently there was a difference of opinion

7    between the Special Counsel's Office and the Department of

8    Justice in terms of who they're allowed to give documents

9    to.  The taint team doesn't want to work with Mr. Green

10   because he's not counsel of record, you're willing to work

11   with Mr. Green.  And then there's claw-back issues and

12   there's the question of which counsel should be dealing with

13   requests that you're making pursuant to the protective order.

14        So, I think everyone needs some more direction,

15   which could be clarified with the entry of an appearance by

16   Mr. Green.

17        Mr. Weissmann, you were looking at me very

18   quizzically.

19        MR. WEISSMANN:  Yes.  Just because we have

20   information about both the claw-back and the taint.  And so,

21   if you would like, we could address, at least from our

22   perspective.

23        THE COURT:  Okay.  Is there some difference of

24   opinion, as you understand it, between the two groups as to

25   who they're dealing with and what they're doing?

1          MR. WEISSMANN:  So, I can tell you that obviously

2     we agree with the Court that when there are counsel that's

3     been selected by a defendant to deal with us for different

4     purposes, obviously that does, you know, create differences

5     and issues with respect to how to proceed.  But, with

6     respect to the two issues you raise, the claw-back and the

7     taint team, so, let me first address the taint team.

8          Just by way of background, since I'm not sure this

9     came up before with the Court, what the Special Counsel's

10    Office did, the initiation of the investigation is we have a

11    separate group of lawyers and agents who are part of a taint

12    team, to make sure that in the process of obtaining

13    information, that anything potentially privileged goes first

14    to them.  So we don't have access to that information; we

15    see it after it's cleared.

16         But in terms of coordination, anything that -- as

17    we're producing discovery, for instance, in this case, in

18    the criminal case where there is counsel of record, the

19    taint team does that production and deals with issues

20    involving privilege and --

21         THE COURT:  When you talk about privilege, are we

22    talking about attorney-client privilege, executive

23    privilege, any privilege?

24         MR. WEISSMANN:  Attorney-client privilege.  But it

25    could come up, it's conceivable, and they would screen for

1    if there was a marital privilege or other things that they

2    would look for.  But, I think, without ever being on the

3    team, I think the main focus is attorney-client.

4         THE COURT:  Okay.

5         MR. WEISSMANN:  So, for instance, one of the

6    issues that I know that's come up is there can be a

7    privilege with respect to -- that Mr. Gates has, but that

8    may be information that would need to be produced to Mr.

9    Manafort, and vice versa.  So that's one of the things that

10   the taint team has been working through.

11        What I do know is that recently the head of that

12   taint team had received a message that all future discovery

13   in connection with the criminal case, she was advised by one

14   of defense counsel that all of that should go to Mr. Green.

15   She had no awareness of why that was happening.  And we said

16   there is counsel of record and counsel of record only should

17   be receiving that material in connection with the criminal

18   case, so -- because Mr. Green is not counsel of record in

19   the criminal case, period, the end, from our perspective.

20        So we produced discovery, non-tainted discovery we

21   produced to counsel of record, same thing for the taint

22   team.  So we just advised the taint team that until there's

23   new counsel of record, if and when it should ever happen,

24   you should still deal with the actual counsel of record.

25        With respect to the claw-back, it's the same

1    issue.  We had a situation where something had been

2    inadvertently produced.  We sent a notice to counsel of

3    record and we were told please deal with Mr. Green, who we

4    thought -- we thought that was improper.  And we thought the

5    protective order was abundantly clear, and set time limits

6    as to what had to be done, and notified counsel of record of

7    that, because it was counsel of record who received the

8    material and --

9             THE COURT:  I think they're between a rock and a

10   hard place in terms of -- I think they're between a rock and

11   a hard place at this point.  And I believe that they, like

12   you, are working hard to fulfil their obligations both to

13   the Court and to the client and under the protective order.

14   I think that the matter should resolve itself within a short

15   period of time.  So, I would not anticipate that it would be

16   resolved before the end of the week.  But, I expect it to be

17   clear who you should be looking to for these things, if not

18   before the next status conference, by the next status

19   conference, and then this won't be a source of problem anymore.

20            MR. WEISSMANN:  Just on the merits -- and again,

21   we don't -- we don't know what happened and we, frankly,

22   don't think it's appropriate for us to know; those are

23   communications with the defendant and counsel.  But, our

24   suggestion was essentially that if this could be put over,

25   that either this would resolve itself in a way that may moot

1     out the issue, and if for some reason it didn't, the

2     government would have no objection to counsel of record,

3     whoever that is, asking for an extension of a week.  So

4     there's no prejudice in having this put over for --

5              THE COURT:  Put what over?

6              MR. WEISSMAN:  In other words, if this issue about

7     who counsel of record should be, how this gets resolved, if

8     that's delayed for a week, and whether it's current counsel

9     of record or new counsel of record said that because of that

10    week delay, there's problems in terms of the schedule that

11    had been set by the Court, the government wouldn't have an

12    objection to having that week extended to different time

13    periods.

14             THE COURT:  All right.  Well, we appreciate that.

15    Right now I'm not extending anything, and no one is asking

16    me to.  I just want to let you know that in terms of

17    complying with the claw-back provisions of the protective

18    order, there's no question that counsel understands what the

19    protective order requires.  But, that is not on the front

20    burner between now and the resolution of the larger issue of

21    who's going to be counsel of record.  So, I guess what I'm

22    saying is don't send them an e-mail tomorrow and say why

23    haven't you responded to my claw-back request.

24             MR. WEISSMAN:  Understand.

25             THE COURT:  All right.  Is there anything else I

1    need to take up right now on behalf of anyone?

2              MR. WU:  Not on behalf of Mr. Gates.

3              THE COURT:  All right.  Thank you.

4              Anything?

5              MR. WEISSMAN:  No, Your Honor.

6              THE COURT:  All right.  Okay.  I think this

7    transcript of this hearing should continue to remain sealed.

8    I don't really see that there's any order that I'm going to

9    enter on the public record in the wake of the hearing.

10   There's a motion pending, it's now under advisement.  And I

11   think everybody knows what the goal is here, particularly

12   you, Mr. Gates.

13             THE DEFENDANT:  Yes, ma'am.

14             THE COURT:  And so, there may be communications

15   between now and then, but otherwise I'll see everybody in a

16   week.  Thank you.

17                        *   *   *

18

19

20

21

22

23

24

25

45

1

2                    CERTIFICATE OF OFFICIAL COURT REPORTER

3

4

5          I, JANICE DICKMAN, do hereby certify that the above

6    and foregoing constitutes a true and accurate transcript of

7    my stenograph notes and is a full, true and complete

8    transcript of the proceedings to the best of my ability.

9                         Dated this 8th day of March, 2018.

10

11

12                         /s/_____

13                         Janice E. Dickman, CRR, RMR
                           Official Court Reporter
14                         Room 6523
                           333 Constitution Avenue NW
15                         Washington, D.C. 20001

16

17

18

19

20

21

22

23

24

25