```
1              IN THE UNITED STATES DISTRICT COURT
                  FOR THE DISTRICT OF COLUMBIA
2

3    United States of America,     ) Criminal Action
                                   ) No. 17-CR-201
4                    Plaintiff,    )
                                   ) STATUS CONFERENCE
5    vs.                           ) PUBLIC TRANSCRIPT
                                   ) PORTIONS UNSEALED
6    Paul Manafort, Jr.,           ) PER 8-10-18 ORDER
     Richard W. Gates, III,        ) Washington, DC
7                                  ) Date:  February 14, 2018
                     Defendants.   ) Time:  9:30 a.m.
8    _____

9              TRANSCRIPT OF STATUS CONFERENCE
                        HELD BEFORE
10        THE HONORABLE JUDGE AMY BERMAN JACKSON
                UNITED STATES DISTRICT JUDGE
11   _____

12              A P P E A R A N C E S

13   For the Plaintiff:    ANDREW WEISSMANN
                           GREG D. ANDRES
14                         KYLE R. FREENY
                           U.S. Department of Justice
15                         Special Counsel's office
                           950 Pennsylvania Avenue NW
16                         Washington, D.C.  20530
                           202-514-1746
17                         Email: Aaw@usdoj.gov
                           Email: Gda@usdoj.gov
18                         Email: Krf@usdoj.gov

19

     For Defendant Manafort: KEVIN M. DOWNING
20                         815 Connecticut Avenue, N.W.
                           Suite 730
21                         Washington, D.C. 20006
                           (202) 754-1992
22                         Email: Kevindowning@kdowninglaw.com

23                         THOMAS EDWARD ZEHNLE
                           Miller & Chevalier, Chartered
24                         900 Sixteenth Street, NW
                           Washington, DC 20006
25                         (202) 626-5800
                           Email: Tzehnle@milchev.com
```

```
1     For Defendant Gates:       SHANLON WU
                                 Wu, Grohovsky & Whipple
2                                1300 Pennsylvania Avenue, NW
                                 Suite 700
3                                Washington, DC 20004
                                 (202) 204-3053
4                                Email: Swu@dcwhitecollar.com

5                                Walter Mack
                                 DOAR RIECK DeVITA KALEY & MACK
6                                217 Broadway
                                 Suite 707
7                                New York, NY 10005
                                 (212) 619-3730
8                                Email: Wmack@doarlaw.com

9
      ALSO PRESENT:
10
        Pretrial Officers:       Andre Sidbury
11                               Shay Holman

12      FBI Special Agent:       Omer Meisel

13
      Court Reporter:            Janice E. Dickman, RMR, CRR
14                               Official Court Reporter
                                 United States Courthouse, Room 6523
15                               333 Constitution Avenue, NW
                                 Washington, DC  20001
16                               202-354-3267

17                                    *   *   *

18

19

20

21

22

23

24

25
```

```
1              THE COURTROOM DEPUTY:  Good morning, Your Honor.

2    We have this morning criminal case number 17-201-1 and -2,

3    the United States of America v. Paul Manafort, Jr., and

4    Richard W. Gates, III.  Both Mr. Manafort and Mr. Gates are

5    present in the courtroom.

6              Will counsel for the parties please approach the

7    lectern and identify yourself for the record.

8              MR. ANDRES:  Good morning, Your Honor.  Greg

9    Andres, Andrew Weissmann, Kyle Freeny from the Special

10   Counsel's Office.  And with us at counsel table is

11   Supervisory Special Agent Omer Meisel.

12             THE COURT:  All right.  Good morning.

13             MR. WU:  Good morning, Your Honor.  Shanlon Wu,

14   and Mr. Walter Mack are here for Mr. Gates.

15             THE COURT:  All right.  Good morning.

16             MR. DOWNING:  Good morning, Your Honor.  Kevin

17   Downing and Tom Zehnle for Mr. Manafort.

18             THE COURT:  All right.  Good morning.  I don't

19   know how much we can actually do today.  And I don't know

20   how much we can actually do on the public record today, but

21   we'll try to do some of it.

22             I do want to address sealing issues first.  The

23   fact that this case is of significant public interest is not

24   a reason to seal things.  It's a reason to unseal things.

25   But it does support maintaining the privacy of the
```

1    defendant's private information; their addresses, their

2    family members' addresses, their bank account numbers, the

3    dollars in the bank accounts, their family members' personal

4    information, and financial information that isn't part of

5    the indictment.  Attorney-client communications are

6    privileged and not public.  And Rule 60 requires that the

7    government be scrupulous about not revealing information

8    about ongoing investigations.

9         So, there's a lot of reasons why a lot of things

10   that people are telling me have to remain sealed and have to

11   remain private at the moment, but I think people are

12   overdoing it just a little bit.  The pleading I received Mr.

13   Gates last night, docket 176, doesn't actually have anything

14   private in it.  It just asks for more time.  So I'm going to

15   order that it be unsealed.

16        Mr. Manafort's bond motion, I permitted it to be

17   filed under seal, but I've ordered that a redacted version

18   be posted, and I need that done by Friday.  The government's

19   response, docket 175, I'm going to grant you leave to file

20   the opposition under seal, but whatever aspects of it can be

21   filed on the public docket -- and I think there are aspects

22   of it that can -- need to be.  So that needs to be done by

23   Friday.

24        That being said, while my goal is to include the

25   public as much as possible in these proceedings, there are a

1     number of issues I have to address here today that are going

2     to require either bench conferences or sealed proceedings

3     because they relate to attorney-client confidences or the

4     details of financial arrangements.  And at some point these

5     issues will be resolved and they will result in orders and

6     the orders will be public.

7            So, with that, I guess I usually start each of

8     these status conferences with talking about the status of

9     discovery.  And hopefully that's something that you can

10    answer on the record.  Mr. Andres?

11           MR. ANDRES:  Yes.  Good morning, Judge.  And there

12    is something that we would like to approach about.  I'll

13    tell you about discovery, but there are matters that we

14    would like to address with the Court at the bench.

15           So with respect to discovery, we've, since the

16    last status conference, made several productions.  We're

17    going to make another production this week.  As we said last

18    time, we're largely completed with discovery.  What remains

19    are the rolling productions; that is, materials that we

20    continue to receive, whether pursuant to a subpoena or some

21    other process.  And obviously we try to get that out as

22    quickly as possible.  And then as we described last time,

23    there are other parts of the Special Counsel's Office, other

24    investigations, and we're going through the files of those

25    other investigations that don't relate principally to the

```
 1    defense in this case or the charges in this case.  And we're

 2    looking through those files to make sure there's nothing in

 3    those that are discoverable, and we'll continue to produce

 4    those.

 5             So, as with last time, we're substantially

 6    completed, but obviously it's an ongoing process.

 7             THE COURT:  All right.  So, do you need to come to

 8    the bench now to --

 9             MR. ANDRES:  I think it would just be appropriate,

10    Judge, because it would alert you to certain issues that may

11    come up along the proceedings.

12             THE COURT:  Okay.

13             THE COURT REPORTER:  Is this sealed?

14             THE COURT:  Yes, this portion is sealed.

15             (Bench conference.)

16             THE COURT:  All right.  Do I have at least one

17    lawyer for each defendant who can hear?

18             MR. DOWNING:  Yes.

19             THE COURT:  Okay.

20             MR. ANDRES:  So, Judge, I didn't want to -- I at

21    least wanted defense counsel to know what we wanted to talk

22    to the Court about, which is to update the Court about

23    certain grand jury matters, both in the Eastern District of

24    Virginia and here in the District of Columbia.  I think

25    those matters are more appropriately discussed ex parte, at
```

1    least in the first instance, and then if there are matters

2    that should be disclosed to the defense, we'll certainly do

3    that.  But I think for purposes of updating the Court on

4    grand jury matters, we should do that ex parte.

5            THE COURT:  All right.  Well, you all, not ex parte,

6    came up here last time and told me that indictments were

7    anticipated and that they knew about them and that you had

8    discussed with them whether they would be filed, and that

9    they would be brought before today.  I was sort of hoping

10   that if they weren't, somebody would move to continue this

11   hearing so we wouldn't be doing this with everybody watching

12   us, not talking to them.  But here we are.

13           So, I guess I don't really understand why you

14   could talk about it last time with everybody but you can't

15   talk about it this time.

16           MR. ANDRES:  Sure.  So, Judge, we are aware

17   that -- something that has happened.  We want to update you

18   about that, but some of those matters are sealed.  And in light

19   of that, we wanted to proceed ex parte in the first place.

20           As for continuing this conference, we talked to

21   defense counsel about that, but because there are other

22   issues relating to Mr. Gates's representation, bail,

23   etcetera, it seemed prudent -- or, defense wanted to proceed

24   with that.  So, we just need to now take it to the next

25   step.  Obviously, we've had conversations with the defense

```
 1    counsel about the superseding -- I mean, about the Eastern

 2    District charges and other matters.  But I think what

 3    remains should be done ex parte.

 4              THE COURT:  All right.  In terms of just enlightening

 5    me about the schedule, that has to be done ex parte?

 6              MR. ANDRES:  I think this information would help you,

 7    alert you as to what should happen next on the scheduling.

 8              MR. DOWNING:  We would object to ex parte

 9    communications.

10              THE COURT:  I understand that.

11              MR. DOWNING:  I understand that Mr. --

12              THE COURT:  Wait.  Wait.  Wait.  You need to come

13    up here, near the microphone, so she can get you.

14              MR. DOWNING:  I'm sorry.

15              THE COURT:  And don't talk over me, so we can

16    have it.

17              I understand your objection.  Your objection is

18    noted.  But until I hear what it is, I don't know that I can

19    solve your problem.  So, it does seem that they've been in

20    communication with you about what's coming down the road.

21    So, I need to hear what he has to say before I can order him

22    to tell it to you.  But your objection is noted.

23              MR. DOWNING:  Thank you.

24              MR. WU:  Just for the record, we'll join in the

25    objection.
```

```
 1              THE COURT:  All right.  While you're up here, I
 2    want to tell you a few other things.  I plan to go from this
 3    matter into discussing Manafort's bond issues and then at
 4    10:30 I plan to discuss Mr. Gates's representation issues.
 5    And I have summoned Mr. Green for that purpose as well, so
 6    he will be here.  Not the Mr. Green that bills.
 7              MR. WU:  No comment, Your Honor.
 8              THE COURT:  I'm sure you would like to see him
 9    faster.
10              All right.  Well, how do you want to handle this?
11    Just have you guys step down.  And you can tell me what's
12    going on.  Let's do that right now.
13              So this will continue to be sealed and the record
14    will reflect that the government is now going to speak to me
15    ex parte.
16              So you can go back to counsel table.
17              MR. ZEHNLE:  Your Honor, yes, if I might raise one
18    issue.  With respect to the filing of the supplemental
19    memorandum that you just addressed a moment ago for Mr.
20    Manafort's bond, we can certainly file that by Friday.
21    There's one thing in the minute order --
22              THE COURT:  It isn't a supplemental, it's just a
23    redacted version of your supplemental -- of what you filed.
24              MR. ZEHNLE:  The supplemental memorandum that we
25    filed that related to the motion for reconsideration.
```

```
 1              THE COURT:  Okay.

 2              MR. ZEHNLE:  Okay.  The Court said to -- it's

 3    fine, redacted addresses, the financial information.  On

 4    page 2 of that memorandum there was a brief summary of what

 5    we had discussed in the sealed hearing on January 22nd.  So,

 6    I wanted the Court's guidance before I filed that because

 7    technically that's not an address, that's not financial

 8    information, but it's certainly under seal.  So I didn't

 9    know if the Court wanted me to redact that brief summary of

10    the January 22, or not.

11              THE COURT:  Well, I think what I said then was

12    exactly what I had said at the original hearing, which is

13    that you had to have one or the other or both to satisfy.

14    So, you know, if you just want to change it to the Court has

15    emphasized that or something, without specifically

16    referencing -- I mean, I don't think it's -- I don't have a

17    problem with that.

18              MR. ZEHNLE:  We don't either, Your Honor.  I just

19    want to make sure that I'm not talking about it.

20              THE COURT:  We sealed the hearing because you were

21    telling me about his expenses and legal fees and things like

22    that.  I don't have a problem with that.

23              MR. ZEHNLE:  Okay.

24              MR. DOWNING:  And, Your Honor, just as a matter of

25    administration, we would like to address the Court regarding
```

1    discovery issues after we finish at the bench.

2              THE COURT:  Yes.  I would like to set a trial

3    date.  I was planning to set a trial date today.  I can't

4    set a trial date without knowing who co-counsel is going to

5    be, so that's a little bit of a problem.  So we might be

6    able to do it later this morning, we might have to get

7    together early next week and do it.  I don't know the answer

8    to that yet.  I was hoping to have an answer by yesterday at

9    5 o'clock, but I didn't get one, so --

10             (Whereupon defense counsel step back to counsel

11   table.  Remaining at the bench is government counsel only.)

12             THE COURT:  All right.

13             MR. ANDRES:  Thank you, Judge.  So, we did return

14   a super -- we did return -- the grand jury returned an

15   indictment in the Eastern District of Virginia yesterday

16   against Mr. Manafort; that's still sealed, which was the

17   purpose of doing this ex parte.

18             Second, the government is planning on superseding

19   in this case this Friday, and we'll ask the grand jury to

20   return a superseding indictment against Mr. Manafort.  Both

21   of those instruments only charge Mr. Manafort because of the

22   ongoing nature of the negotiations with Mr. Gates.  We don't

23   know how that's going to resolve itself yet.  We have some

24   hope that it will happen in the next week to ten days.  And

25   our hope is that if, in fact, that happens, after that

1    happens, we can unseal both of those indictments, have Mr.

2    Manafort arraigned here on the District of Columbia cases

3    and proceed that way.

4            So we were uncomfortable with disclosing to the

5    defense the fact that there's a sealed indictment in the

6    Eastern District of Virginia.  But that's what's happening.

7    I think both of those -- or, all three of those events

8    substantially affect what the schedule is going forward.

9    But, once we resolve with Mr. Gates, or not, we can then

10   unseal those indictments and the Court can proceed to have

11   an arraignment and have the schedule go forward that way.

12           THE COURT:  Well, if there's not an agreement with

13   Mr. Gates, is he a codefendant in any of these?

14           MR. ANDRES:  Yeah, if we don't resolve things with

15   Mr. Gates -- and I think we'll know that within the next ten

16   days -- then we would probably supersede on both of those

17   instruments, to include him in both of those.  But in light

18   of the negotiations, it would seem prudent to do that.

19           THE COURT:  All right.  Well, is there any reason

20   why we can't call them back up here and have you say that

21   what you've told me is that you still intend to supersede

22   and you still intend to proceed in the Eastern District of

23   Virginia?  I mean, they already know the substance of the

24   pending indictment.

25           MR. ANDRES:  Absolutely.

1          THE COURT:  So there's nothing about that that's

2     changed.

3          MR. ANDRES:  Correct.

4          THE COURT:  Well, just so they don't think that

5     there's something else.

6          MR. ANDRES:  Yeah.

7          THE COURT:  I mean --

8          MR. ANDRES:  Yeah.  I mean, I think what we don't

9     want to disclose, anything that's sealed.  We don't want to

10    disclose that Mr. Manafort is the only defendant in those.

11    But we can certainly say --

12         THE COURT:  But I think you can say that you're

13    still intending to proceed to supersede and to proceed there

14    and the schedule is uncertain and is --

15         MR. WEISMANN:  I think the thing that we're trying

16    to avoid is having -- we are hopeful that Mr. Gates's

17    situation will resolve itself quickly and that we will be in

18    front of the Court with the papers and the Court can

19    schedule the plea hearing.  We also are cognizant that if it

20    doesn't work out, we don't want to have Mr. Gates in a

21    position where the public knows he's intending to plead

22    guilty and the public -- the issues that are raised but

23    didn't --

24         THE COURT:  But that's different than having

25    you -- Yes, I understand that.  Okay.

 1              Counsel, can you return to the bench?

 2            (Defense counsel returns to the bench.)

 3           THE COURT:  All right.  Based on what's been told

 4   to me, I just want to let you know that what was told to me

 5   is fundamentally that everything that you -- is not a change

 6   to what you already know; that are there are charges

 7   contemplated in the Eastern District of Virginia and that

 8   there are superseding charges contemplated here and that the

 9   timing is still uncertain.  But, it is not something else

10   that they're planning to do that they told me about that

11   they haven't told you about.

12           So, that much I can tell you.  I think, given

13   that -- well, I, too, believe we need to set a trial date.

14   I don't think we can set a trial date until you see what the

15   new charges are because, you know, you won't know how long

16   it's going to take you to get ready.  So I'm also hamstrung

17   by the counsel issues, in terms of setting a trial date.

18   But I will let you put your position on the record about

19   setting a trial date and discovery.

20           MR. DOWNING:  I understand that.  It doesn't make

21   any sense to me to take a futile position.  But I do think

22   that we should set a status conference for next week, so we

23   can come back here, because there are a lot of issues going

24   on.  But we, for Mr. Manafort, we ought to set a firm date

25   because that's what we're getting ready for.  I don't know

1    how much more time the government is asking for, but we do

2    have a pending deadline on the 23rd for some motions that,

3    obviously -- I don't know what the new one looks like, but I

4    have a good idea.  So I don't think we need more than a week

5    on that, if they're going to return something next week.

6    But I don't know, so I think a status conference would be

7    appropriate.

8             THE COURT:  I don't know either.  And I can set a

9    status conference for the end of next week.  My problem with

10   that is, you know, then we have a million people sitting

11   here.  And maybe the better thing to do is just set it on

12   shorter notice, like --

13            MR. DOWNING:  Okay.

14            THE COURT:  -- kind of take it a day at a time and

15   see if something breaks one way or the other that makes it

16   clear what we need to do and when we need to do it.

17            MR. DOWNING:  Okay.

18            THE COURT:  But, I'm not exactly -- we're all sort

19   of in unchartered waters at this point.

20            Did you want to say something?

21            MR. MACK:  Just to make a comment to Mr. Wu

22   briefly, because he doesn't always trust me to say what I

23   should be saying.

24   ████████████████████████████████████████████████

25   ████████████████████████████████████████████████████████

1

2          MR. WU:  This may go to the 10:30 issues, Your

3     Honor.  But I would put on the record, under seal, we do not

4     feel we have any clarity from the government vis-a-vis what

5     will happen to our client on these new charges, and that's

6     the result of their feeling that their position is they

7     cannot speak to us about that.

8          THE COURT:  All right.  But you were alerted at

9     some point as to what the potential charges could be.

10    Because you had told me last time that you knew what they

11    were and you wanted to face them there.

12         MR. WU:  Yes, I understand.  To be specific, last

13    time we were only aware of the potential second indictment

14    in Virginia.  As of yesterday we learned that there also was

15    likely to be, in addition to that, a superseding indictment

16    in D.C.

17         THE COURT:  All right.

18         MR. WU:  The particulars of those charges --

19         THE COURT:  I understand, you're hamstrung.  Is

20    there any change in Mr. Manafort's point of view about the

21    Eastern District versus the District?  I think the only

22    thing I can imagine that's more unusual than the government

23    offering you the choice is the choice you're making.  But,

24    is there any further discussion about that?

25         MR. DOWNING:  No.

```
 1                    THE COURT:  All right.

 2                    MR. ZEHNLE:  Thanks, Judge.

 3                    (Open Court:)

 4                    THE COURT:  All right.

 5                    MR. WU:  Your Honor, may I just clarify one thing

 6        from the earlier discussion that you made on the record?

 7                    THE COURT:  Yes.

 8                    MR. WU:  Which is the pleading that Mr. Gates

 9        apparently filed last night, I think you referenced that.

10        Counsel of record has not seen that pleading.  I just want

11        to make that clear.  We double-checked.

12                    THE COURT:  Well, it's on the docket and it's

13        going to be unsealed.  It has now been docketed, so you

14        should now be able to see it, even if it was sealed, because

15        it's on the docket.  So now it will also be unsealed, so

16        anybody can see it.

17                    MR. WU:  I think the delay was because it was not

18        filed via ECF.

19                    THE COURT:  Right.  He filed it pro se.  I can

20        simply tell you that he asked me to put off the

21        consideration of the motion to withdraw for approximately a

22        week, and that is the sum total of what was in the document.

23        And now it's going to be public.

24                    MR. WU:  Thank you, Your Honor.

25                    THE COURT:  All right.  All right.  We have a
```

1    motions schedule in place.  The government took issue with

2    the scheduling of briefs related to the 404(b) issue, and

3    Mr. Manafort has weighed in on that and thought that --

4    preferred the schedule I set to the one that the government

5    recommended.

6            I think I need to have a trial date and a pretrial

7    conference before I answer that question, although I do want

8    to advise the Office of Special Counsel that I'm not sure

9    that the government's proposal of waiting until eight weeks

10   before whatever the trial date is is going to work in

11   connection with all the other work that you're going to have

12   to do it get ready for the pretrial conference.

13           The schedule was established with an understanding

14   that in advance of the pretrial conference, you're going to

15   file a pretrial statement with me that's going to identify

16   the exhibits and witnesses in advance of trial.  And the

17   defense can't do that if they don't know what the

18   allegations are that are going to be tried.

19           So, I think there's going to come a point where

20   I'm going to order the government to inform the Court and

21   the defense of any 404(b) evidence it intends to introduce

22   so that they can explain to me why I should exclude it, you

23   can explain to me why I can include it, I can rule on it and

24   then we know what the universe is that's going to trial.

25   Which brings me to another point, which is that I believe

1    that this case needs a trial date.  I realize there are some

2    circumstances that may make that impossible today, but I

3    think it has to happen soon.

4          These defendants are presumed to be innocent, but

5    they're facing serious charges that expose them to

6    significant penalties and we have spent a lot of time being

7    focused on everything but that.  We've been dealing with the

8    minutia of bond and soccer practice and public relations and

9    people changing their minds about where they want to live

10   and unsettled questions concerning representation since

11   October, and it's unacceptable.

12         The nature of charges they have to face, the

13   evidence that they're going to have to respond to can't be a

14   mystery for long.  I don't think we can do it at this

15   minute, until we resolve certain fundamental issues that

16   have to be outside the public eye, but I expect to set

17   another status conference soon, at which a status -- a trial

18   date will be set.

19         Mr. Downing, is there anything you want to say in

20   response to the discovery issues that were on the record?

21         MR. DOWNING:  Thank you, Your Honor.  One, Mr.

22   Manafort joins you in wanting to set a firm trial date.  We

23   understand there's some issues that the Court has to deal

24   with today.  But, we would request that as soon as

25   practical, that that date get set.

1           We do think we are rather late in the game to

2    still be getting discovery from the government.  We got a

3    dump yesterday.  We do have some issues that we think

4    additional materials need to be produced that we have not

5    reached agreement with the government on.  So we anticipate,

6    in the middle of all this, starting to file discovery

7    motions with the Court regarding those issues.  But to the

8    extent we need to be back in this courtroom on short notice

9    to set a trial date, we're prepared to do it.  Thank you.

10           THE COURT:  All right.  Thank you.  I mean, I

11   think making rolling productions as more documents come to

12   you is different than producing what is already in your

13   possession or was in your possession when you decide to

14   bring these charges, and that should already be out the door

15   and in their hands.  I'm happy -- I'm not going to set a

16   schedule for the filing of discovery motions.  You file them

17   and that will prompt a schedule for a reply and an

18   opposition, and we'll take them up as we get them.

19           Is there anything else -- there are two things

20   that I want to talk about that I do believe I need to talk

21   about in a sealed courtroom, notwithstanding the desire of

22   everyone in the courtroom to be here, and that is Mr.

23   Manafort's pending bond motion and the motion to withdraw

24   filed by counsel.

25           Are there any other issues I can take up before I

1   need to do that?  Are there any other issues anybody wanted

2   me to take up today?  Mr. Wu?

3           MR. WU:  Your Honor, just to put our position on

4   the record with regard to discovery matters.  We have been

5   receiving further discovery, but based on what we have

6   brought to your attention in the motion to withdraw, we have

7   been unable to make any significant progress in terms of

8   preparation or review or adhering to the Court's schedule

9   with regard to substantive motion practice.

10          THE COURT:  All right.  I think when we resolve

11  the issues that we need to resolve, if the motions for

12  continuances or extensions of time need to be filed, then

13  they'll be filed and we'll take them up at that time.  I

14  don't know what else to say at the moment.

15          MR. WU:  Thank you, Your Honor.

16          THE COURT:  All right.  Is there anything further

17  from the government right now?

18          MR. ANDRES:  Judge, just to exclude time.  The

19  case has already been designated as complex.  There's a

20  motion schedule.  But we, in an excess of caution, move to

21  exclude time between now and the time of the -- there is a

22  hearing for motions scheduled in April, so between now and

23  the April hearing date, we would move to exclude time under

24  the Speedy Trial Act.

25          THE COURT:  All right.  I'm not sure that's

1    necessary either.  I think, certainly in Mr. Gates's case,

2    some of the delay is attributable to Mr. Gates.

3              Mr. Manafort, what's your position about speedy

4    trial and excluding the time between now and the next hearing?

5              MR. DOWNING:  We would like to take it under

6    consideration, Your Honor.

7              THE COURT:  All right.  Well, you can let me know

8    at the end of the week.  I mean, I think as soon as you file

9    motions, the clock is going to stop ticking anyway and this

10   is a complex case and I don't think --

11             MR. DOWNING:  I understand, but I think there also

12   are situations which could be non-excludable time and I

13   would like to take a little time to take a look at that.

14             I would also ask you to, I guess, hold the

15   February 23rd motions deadline open until we can resolve the

16   issues that --

17             THE COURT:  I don't know what you mean by hold it

18   open.  Right now --

19             MR. DOWNING:  Well, right now they're due on the

20   23rd.

21             THE COURT:  This is a motion that I don't think is

22   dependent on discovery.  You stood up and said, I think at

23   the very first status conference, that you wanted to file a

24   motion about the legitimacy of the indictment, just based on

25   the face of the indictment.  And then you filed a civil suit

```
 1    alleging the same thing.  And so, I don't -- I deliberately

 2    set an earlier schedule for the motion that would either

 3    obviate the case or just needs to be resolved up front.  So

 4    why can't that one be filed on time?

 5              MR. DOWNING:  Your Honor, you just had a side bar

 6    about issues that obviously come into play with respect to

 7    that motion.

 8              THE COURT:  All right.  Well, I'm not sure that's

 9    entirely true.  What it --

10              MR. DOWNING:  I'm not either, so I --

11              THE COURT:  All right.  All right.  Can you just

12    all approach the bench again?

13              THE COURT REPORTER:  And sealed again?

14              THE COURT:  Yes.

15              (Bench discussion:)

16              THE COURT:  I understand that in terms of things

17    like bills of particulars or challenging new charges, that

18    you can't challenge those until you see what they are.  But,

19    your fundamental problem with the case that is pending now

20    and the fact that you told me that on its face it doesn't

21    state a crime and that it was improper, can you go ahead and

22    brief that yet?

23              MR. DOWNING:  I don't know what the indictment is

24    going to be by next week or the week after, until we get the

25    additional indictment that's going to supersede it.  That
```

1    doesn't make any sense.

2           THE COURT:  All right.  Let's just -- you know, my

3    problem is that we're all just going to end up being so

4    backed up.

5           MR. DOWNING:  Right.  What we'll commit to, to the

6    extent there aren't major changes, we can get those motions

7    filed right away.  I don't have a problem with that.  But I

8    really don't understand --

9           MR. WEISMANN:  Judge, could I just say that as the

10   Court knows and as counsel knows, our view with respect to

11   the civil action that's now before the Court is that that

12   was -- should properly be a motion in a criminal case.

13   There is nothing about the superseding indictment that they

14   would seek -- that would in any way change the legal issues

15   that were raised in that civil case --

16          THE COURT:  Well, I think they had to -- they had

17   substantive issues related to the charges, in addition to

18   the overall concern about the legitimacy of the

19   investigation, and rather than having two motions and two

20   oppositions and two replies, it probably does make sense to

21   see what the indictment is before you move to dismiss it.

22   So that makes sense to me.  And I think we can have a phone

23   conference if and when there's a superseding indictment and

24   set a schedule.

25          MR. DOWNING:  When it is appropriate.

```
 1                  THE COURT:  All right.  That makes sense to me.
 2      All right.  Thank you.
 3                  (Open court:)
 4                  THE COURT:  All right.  At this point I'm going to
 5      close the courtroom to everyone but the government and Mr.
 6      Manafort and Mr. Manafort's counsel, after which I will take
 7      up a proceeding involving Mr. Gates and Mr. Gates's counsel,
 8      for which I don't know that I will need the United States,
 9      although I may want to hear from you at the beginning and
10      then excuse you.
11                  So let's start with the Manafort matter.  And
12      Mr. -- if the Gates people can hover, so that we can just
13      roll into that next.
14                  (Sealed transcript.  Present in the courtroom are
15      defense counsel and Defendant Manafort.)
16                  THE COURT:  All right.  The courtroom has been
17      sealed and, for the record, the only people present are Mr.
18      Manafort and his counsel and government counsel and my team.
19                  I recognize that I invited the defendant to
20      propose an alternative that would free up some cash for his
21      defense and/or enable him to further encumber some of his
22      properties, to use the equity to fund his defense, and to
23      perhaps relieve the burden on family members that didn't
24      quite realize what they were signing up for when they
25      offered to be sureties in the first place.
```

1    But, the requirement was still that we end up with

2    a comfortable security or surety for the $10 million.  And

3    the court case is not a business deal where you can put up

4    things that are leveraged some other way.  This has to be

5    real money, real property.  And, so, while last time I

6    permitted the ███████ Street property to be part of the

7    proposal, we had the belts-and-suspenders going on last time

8    and there was some substantial cash also being essentially

9    frozen, in case that property wasn't available.

10    But that property has already been pledged as

11    security to someone else, so it's a little hard to say,

12    Judge, you can have it free and clear, because I can't.  And

13    I do also have concerns, I noticed even before I got the

14    government's pleading, that ██████████████████████████

15    ██████████████████████████████████████████████████████

16    ██████████████████████████████ from the minute it's given

17    to the Court forward, there's some problems if they're not

18    already.

19    So, I had some concerns about whether we were all

20    the way there or not when I read it.  I know the government

21    has some additional concerns they want to put on the record.

22    I'm not sure.  There's the issue about putting up property

23    that's already subject to forfeiture.  At least we have

24    the -- everybody agrees on the ██████ Street property, so

25    that gives us about ███ million.  So that's a good start.

1          So, I don't know who wants to go first.  Maybe

2   since you've objected, but didn't put all your objections in

3   the pleading, maybe you should finish telling me what you

4   want to tell me and then I can hear from the defense.

5          MS. FREENY:  Good morning, Your Honor.  Just as an

6   initial matter, I would say that the government understands

7   that the -- we need to unseal our pleading on Friday.  In

8   fact, we believe that we can unseal -- file it in its

9   entirety.  We don't think there's anything in there that

10  requires redaction.  So I think we're prepared to file it as

11  is, unless the Court feels otherwise.  We filed it under

12  seal because it addressed the defendant's filing under seal.

13         THE COURT:  Well, I think you have to be careful

14  about addresses.  I mean, just look at it in terms of the

15  kinds of material that's supposed to be kept private.

16         MS. FREENY:  Will do.  Understood.  So I do think

17  that the government's filing yesterday evening addresses the

18  two primary defects that we see in the proposal.  Those

19  being, as the Court noted, the fact that it does not meet

20  the $10 million bond; that is, the properties don't amount

21  to 10 million in equity, and that's even without factoring

22  in the discount that the government has advanced that should

23  be applied for properties subject to forfeiture.  And then

24  the government also takes issue with the absence of any

25  sureties, in light of the proposal.

1          So, rather than go through each of the properties,

2   I think our --

3          THE COURT:  What do you think the appropriate

4   discount factor is?

5          MS. FREENY:  I think that's difficult, Your Honor.

6   I don't think it is an exact science.  Of course, bail is

7   not an exact science across the board.  The -- it's -- the

8   general principal is that posting property that is subject

9   to forfeiture is just not as much assurance as posting

10  property that is not subject to forfeiture.

11         So when the government had previously agreed to a

12  bail package, it was because Mr. Manafort had in fact

13  proposed additional sureties to address the government's

14  concern.  So where there were those additional sureties,

15  that provided the additional assurance necessary.  By

16  removing those, we believe that presents then a concern

17  because we don't really have 10 million in unencumbered

18  assets, even assuming there was, you know, up to the

19  10 million.

20         THE COURT:  All right.  Well, what about all the

21  other issues you raised about them?

22         MS. FREENY:  So, as the Court noted, we -- the

23  government is aware or understands that ████████████████

24  ████████████████████████████████████████████████

25  ████████████████████████████████████████████████

1     ███████████████████████████████████████████

2     █████████████████████████████████████████████

3     ██████████████████████████████████████████

4     ██████████████████████████████████████████████

5     ██████████

6          The ███████ property, as the Court noted, is put

7     up as collateral for a loan of more than ███ million.

8     Previously, when Mr. Manafort had proposed a package that

9     included both the ███████████ property and the ███████

10    property, that accommodated the fact that both of those two

11    properties are put up for that mortgage because then the

12    equity could be subtracted by the amount of that loan.

13          Now that Mr. Manafort proposes to take

14    ████████████ out of the package, from the government's

15    perspective, the ████████ property doesn't have any equity

16    because the bank could choose to foreclose on that property

17    to recover.

18          THE COURT:  All right.

19          MS. FREENY:  The ██████████ property, as we know in

20    our papers, is subject to forfeiture.  And as the Court

21    notes, we do not have a problem with the use of the ████████

22    Street property.

23          THE COURT:  Well, you talked about other charges

24    and bank fraud in your pleadings, what about that?

25          MS. FREENY:  Yes.  So, Your Honor, the government

1   has additional facts related to fraudulent conduct by Mr.

2   Manafort respecting mortgages, including a mortgage on the

3   ████████ property.  And that bears on two things:  It bears

4   both on his risk of flight, and then it bears on the risk

5   the properties are going to go into foreclosure.  So as the

6   government noted in its filing --

7           THE COURT:  Which properties again?  I'm sorry.

8           MS. FREENY:  Including the ██████ property.

9           THE COURT:  ██████ Street?

10          MS. FREENY:  Yes.

11          THE COURT:  Okay.

12          MS. FREENY:  And the ████████ property.  But,

13  obviously, Mr. Manafort is no longer proposing to put that

14  up as security.

15          So the government has evidence that Mr. Manafort

16  submitted --

17          THE COURT:  Well, but in your pleading at one

18  point you seem to suggest that it would be better if he put

19  that one up because it had more equity.  So now you're

20  saying that one is questionable, too.  Which way do you want

21  it?

22          MS. FREENY:  So, I think -- I think both of those

23  properties have, sort of, different issues with respect to

24  them.  We were, I think, at one point in time comfortable

25  with inclusion of the ████████ property.  Again,

 1  together with the ███████ property, so that the same

 2  properties that were put up as collateral, they're together.

 3  I know that Mr. Manafort has expressed concern about his

 4  ability to ███████████████████████████ property, so

 5  that raises new concerns for the government.

 6          And then, again, the government -- since the time

 7  of the government's, sort of, original filing with respect

 8  to bail, the government has developed additional facts

 9  related to Mr. Manafort's conduct with respect to the

10  mortgage that is secured by the ███████████ property and

11  the ███████ property, including facts that Mr. Manafort

12  submitted false profit and loss statements in connection

13  with securing that mortgage.

14          And so that, again, then bears on both his risk of

15  flight, and that is associated with fraudulent conduct that

16  is more recent in vintage than the conduct in the indictment.

17  So this -- we're talking about the, roughly, 2016 through, I

18  believe, the beginning of 2017 time period.  And then as

19  mentioned, it bears on the risk that the bank will foreclose

20  on that property, just based on the circumstances in which

21  the mortgage was obtained.

22          I can also proffer to the Court additional facts

23  related to ████████████████████████████████████████

24  ███████████████████████████████████████████

25  ████████████████████████████████████████████

```
1    ████████████████████████████████████████████
2    ████████████████████████████████████████
3    ████████████████████████████████████████████
4    ██████████████████████████████████████
5    ██████████████████████████████
```

6              THE COURT:  Okay.  Anything else you wanted to say?

7              MS. FREENY:  Not at this time, Your Honor.

8              THE COURT:  All right.

9              MS. FREENY:  Thank you.

10             MR. ZEHNLE:  Good morning, Your Honor.

11             THE COURT:  Good morning.

12             MR. ZEHNLE:  So, in terms of addressing the bail

13   package and the bond issues, listening to the Court's

14   initial remarks and then the government's response, I think

15   probably a few things need to be made clear.

16             First of all, I think that counsel misspoke when

17   she said that they had asked for sureties before, because,

18   in fact, I think if we look back on the record -- and we

19   could go back and do this -- the government was not requiring

20   any sureties when this package was initially being proposed.

21             THE COURT:  I think the original agreement that

22   everybody agreed to, that you proposed, had -- I mean, who

23   asked for them, I don't know, but it included that.

24             MR. ZEHNLE:  It did, Your Honor.

25             THE COURT:  And then the issue came up with the

1    e-mail and they withdrew their consent, and I ordered what

2    you asked for.  But putting aside who asked for it, who

3    didn't ask for it, it gave everybody comfort in the areas

4    where there were uncertainties or deficiencies.  And I did

5    say to you that the statute says security or surety, but if

6    the security is -- doesn't make -- doesn't quite cut it in

7    terms of the level of comfort that the money is going to be

8    there, then that was where the surety was helpful.

9         Is there some amount of the cash that was

10   available that he's willing to put up in connection with

11   this?  Either through the use of a surety or some -- you

12   know, you objected to -- I think, last time it was

13   █ million and █ million; █ for ███████ and █ for ████████.

14   Is there some other -- is there a way to substitute for the

15   ███████ property or to make up for the uncertainty

16   associated with the ████████ property and now the -- I'm also

17   concerned about the █████████████ property.

18        So why don't you address why those are appropriate

19   to include and what we do about it.

20        MR. ZEHNLE:  Okay.  I think, maybe, first steps

21   first, right?  At the sealed hearing on January 22nd,

22   obviously we were paying very close attention to what the

23   Court was saying and we talked about either sub -- or,

24   excuse me, sub 12 -- sub 11 or sub 12.

25        THE COURT:  I know exactly what I said, you don't

1    have to --

2              MR. ZEHNLE:  Okay.  But I want to --

3              THE COURT:  -- quote back to me what I said.  I

4    want you to tell me why this is adequate.  I am not saying

5    there has to be a surety.  I'm saying that what I get has to

6    be adequate.  So why is this adequate?

7              MR. ZEHNLE:  Okay.  Okay.  So, at the hearing we

8    discussed what would be -- I specifically remember, I was at

9    this podium, I was asking the Court what the Court would

10   find is appropriate proof or the evidence with respect to

11   the properties or the assets being pledged.  And the Court

12   specifically advised that a professional appraisal or an

13   independent appraisal --

14             THE COURT:  But we're not quibbling about the

15   value.

16             MR. ZEHNLE:  But we are, Your Honor.  I mean, if

17   you let -- can I -- may I -- if I can finish, I'll answer

18   your question.

19             THE COURT:  All right.

20             MR. ZEHNLE:  I just want to sit there and say, so

21   that's what we took first.  It's a $10 million appearance

22   bond.  And so, therefore, we want to have security

23   sufficient to cover the $10 million.  And we told the Court

24   at the previous hearing that there was some substantial

25   concern because of forfeitures that the government has

 1    initiated against Manafort, Mr. Manafort, that the
 2    ████████████ property might put him at risk.  He didn't
 3    want to be at risk.  He's not going to come up and pledge
 4    something to the Court and not be able to follow through.
 5              THE COURT:  Well, that wasn't what you said the
 6    problem was with ████████████  You said the problem with
 7    ████████████ was that it was costing you ████████████ a
 8    month to maintain it --
 9              MR. ZEHNLE:  Maintain the mortgage.
10              THE COURT:  Right.  And so it was the requirement
11    of maintaining the mortgage that was a problem, and there
12    was also the possibility that you might want to borrow
13    against that equity.
14              MR. ZEHNLE:  What we said, and it's in the papers,
15    what we said was that the mortgage on the ████████████
16    property, which is by far the largest --
17              THE COURT:  Right.
18              MR. ZEHNLE:  -- was being paid.  There was a
19    special account set aside.
20              THE COURT:  And he needed to free up the cash to
21    do that.
22              MR. ZEHNLE:  Exactly.  And then the government
23    seized -- you know, a seizure warrant was issued and that
24    money was taken away from Mr. Manafort, which created a
25    problem because that money was specifically set aside to pay

1    the mortgage on the ████████ property.  That was the

2    situation that caused us concern.

3         And so, after discussing this in our papers, at

4    the January 22nd hearing, we went back and we looked at

5    properties that we could prove to the Court, with

6    independent appraisals, as the Court recommended, that had a

7    substantial unencumbered value equal to the appearance bond

8    amount.  And that's what we did.

9         So, we can put aside ████ Street because

10   apparently there's no disagreement on ████ Street.  With

11   respect to the ████ Street property, ████████, that

12   was, as the Court noted, that was already proposed in a

13   previous submission.

14        THE COURT:  Right.  What I'm saying is I knew at

15   the time and I was troubled at the time that you were

16   offering up to me something you'd already offered to another

17   bank, something that was already encumbered 100 percent.

18   But, given the overlapping security that I was being

19   provided, it was satisfactory as part of the whole.  I don't

20   understand why I can count on it for such a big chunk of the

21   whole now.

22        MR. ZEHNLE:  So, here's -- Your Honor, the one

23   property that did have an appraisal, which the Court

24   specifically said, Look, this is the kind of information or

25   evidence I would --

 1          THE COURT:  I'm not worried about the appraisal.

 2   Can we just put the appraisals aside?  I was --

 3          MR. ZEHNLE:  How are we talking about values, Your

 4   Honor?  I mean, I'm trying to sit there and give you an idea

 5   how we came up with this so that you can understand our

 6   position.

 7          THE COURT:  I understand how you come up with it.

 8   I added up the values.  I get that the values, the appraised

 9   values added up to $10 million.  I'm not disputing that.  I

10   haven't asked you one question about that.  I appreciate the

11   appraisals.  I didn't quite understand why there were

12   different appraisers for every property, but they are all

13   real, certified appraisers, they are certified appraisals.

14   Okay.

15          MR. ZEHNLE:  Okay.

16          THE COURT:  Let's put aside the value of the

17   property.  I haven't asked you one question about the value

18   of the property.  I've asked you, Why can I count on

19   receiving, at the end of the day, in the event of flight, a

20   property of the value that we agree it has, because it's

21   been apprised, when that property has already been

22   essentially pledged to another?

23          MR. ZEHNLE:  As the Court knows, it was cross-

24   collateralized from our previous filing.  That is, it comes

25   into play -- they don't get to pick -- the bank doesn't get

1    to pick, oh, I'm going take this property, as opposed to

2    that one.

3              The Court already has an appraisal.  The

4    ███████████ property is worth ████ million.  The

5    outstanding mortgage on that property is ████ million.  In a

6    previous filing, before the forfeiture and all this stuff

7    came up, that was a ████ million unencumbered value, which did

8    not seem to be challenged at that time, certainly not by the

9    government.  It is ████ million over what the mortgage is, the

10   liability.  The cross-collateralization, or the over

11   collateralization, by saying, Oh, and by the way, just in

12   case that ██ million isn't enough, there's the ████████ condo

13   that we could put in there, is highly, highly improbable

14   that it will ever occur.

15             And no one objected when this property was

16   initially put up.  I mean, the government's objecting now.

17   But no one objected to the ████ million, which the appraisal

18   actually came in at in the previous papers.  But now all of

19   a sudden, oh, there's an issue with this, this ████ million.

20   How do we know?  An independent appraisal says it's

21   ███████████ and we know there's ██ million in cushion on the

22   other property.

23             THE COURT:  That's the answer to the question --

24             MR. ZEHNLE:  That is the answer to the question.

25             THE COURT:  -- not the ████  Nobody is questioning

```
1    the ████   We don't have to talk about the appraisals any

2    more.  You keep coming back to it.  I was very glad to get

3    them.  You're getting full credit for them.  But every time

4    you talk about them, you're not talking about the issue.

5    When you answered the question about the value of the

6    ███████████ property, you finally answered the question.

7    Okay.

8              MR. ZEHNLE:  I'm also answering the government's

9    remarks, too, Your Honor.  So, I'm trying to answer your

10   questions, as well as the government's position that it's

11   taken.

12             THE COURT:  But they didn't challenge the value.

13   They challenged whether I should be able to give it full

14   credit under the circumstances.

15             MR. ZEHNLE:  Unless I read -- what was filed last

16   night, Your Honor, they're giving it zero.

17             THE COURT:  Because it's pledged to the bank, not

18   because it didn't come in with a nice appraisal that we all

19   agree with.

20             MR. ZEHNLE:  Okay.

21             THE COURT:  All right.  So, here's, I guess, my

22   question:  There's no question that the ███████████

23   property, if it were sold by Mr. Manafort, he hung out a

24   sign and there was a willing buyer and willing seller in a

25   typical arms-length business transaction, that he would be
```

```
 1    able to get full value, hopefully.  God knows what's going
 2    on with the market.  But at any rate, I understood the value
 3    of that property.  But if he doesn't comply with his
 4    mortgage obligations and the bank that's owed the ▮ million
 5    decides to institute forfeiture proceedings -- I mean,
 6    you're saying, well, they would sell it first and then only
 7    if they didn't get the full ▮ would they then turn around
 8    and ask for the other property.  Is that how it works?  Or
 9    would they just say, Okay, we'll take that, we'll take that,
10    we'll sell both whenever we feel like it?
11              MR. ZEHNLE:  I think, Your Honor, it works that
12    they have to go to the primary property first with the
13    mortgage and then if there was insufficient funds from the
14    sale of that --
15              (Attorney Downing hands note to Attorney Zehnle.)
16              MR. ZEHNLE:  May I -- Court's indulgence, please.
17              THE COURT:  Sure.  Yes.
18              (Off-the-record discussion between defense counsel.)
19              MR. ZEHNLE:  Your Honor, my co-counsel wanted me
20    to point out, too, as well, that there is another security
21    on that ▮▮▮▮▮ property.  There is ▮▮▮ million
22    pledged against that property as well.  So not only do you
23    have the ▮▮▮▮▮ property itself, more than sufficient
24    to cover the amount of the mortgage, you have the account
25    which we had talked about, which were set up simply to pay
```

 1    the mortgage on that property, which has been frozen right

 2    now and which we are working to get out.  You have

 3    2.5 million in cash set aside against that liability.

 4              THE COURT:  That was the ███ that we didn't take

 5    into consideration before.  There was the spreadsheet.

 6              MR. DOWNING:  Yes.

 7              MR. ZEHNLE:  Yes.

 8              THE COURT:  Okay.  All right.

 9              MR. ZEHNLE:  Then you have the ████████ property.

10              THE COURT:  Are they ordered in any particular

11    order?  How does it work?

12              MR. ZEHNLE:  Yeah, there is -- I can find out.

13    Sorry, Your Honor.

14              THE COURT:  All right.  All right.  That's fine.

15              (Off-the-record discussion between defense counsel.)

16              MR. ZEHNLE:  I'm advised the ██████ property is

17    last in order.

18              THE COURT:  All right.  What is the situation with

19    respect to the █████████ property?

20              MR. ZEHNLE:  It is current, Your Honor, despite

21    the representations made earlier.

22              THE COURT:  Well, ███████████████████

23    ████████████████████████████████████████████████████

24    █████████████████████████████

25              █████████████████████████████████████████

1  ████████████████████████████████████████

2  ██████████████████████████████████████████

3  ████████████████████████████

4  ██████████████████████████████████████████

5  ████████████████████████████████

6  ████████████████████████████████

7        THE COURT:  What was the thinking behind the

8  substitution?  I understand why you took ████████████ out.

9  Why did you take the ██████████████ out?

10        MR. ZEHNLE:  Well, Your Honor, I think what we

11  were trying to do was come up with the 10 million security

12  to cover the bond in the best way possible that would leave

13  Mr. Manafort in the best position possible because we

14  understand that these assets can't be sold or touched during

15  the pendency of this case.  So that's why -- I mean, we

16  just -- in terms of the property -- I mean, I don't want to

17  actually get into attorney-client discussions about why we

18  did one thing versus the other.  What I was focused on was

19  what was the Court's concern in terms of securitizing that

20  $10 million bond.  So now we have three properties which are

21  not subject to any forfeiture and one that is.

22        THE COURT:  All right.  What if I am concerned,

23  notwithstanding what you've told me, which is very helpful,

24  about standing in line behind another bank on the ████████

25  property?  Would you have an alternative that you can offer?

1   And you don't have to tell me off the top of your head what

2   it would be.

3            But, I would like you to think about that, or some

4   sort of overlapping something that could give me some

5   comfort, more comfort there.  I realize it is less of a risk

6   than I might have thought coming into the hearing, but it's

7   still a risk and we're still not first in line.  And unlike

8   other cases where there's a mortgage and we're not first in

9   line, it's not the entirety.  Here the entirety of the

10  property is pledged to another bank that could decide that

11  it's just easier to proceed that way, if people aren't in

12  the mood to buy properties for ████ million in the ███████.

13           So, I'm interested in the answer to that question.

14  And I do require -- I need some -- since there's this

15  dispute of fact about the ████████████████████████████

16  ████████████████████████████████████████████████

17  ████████████████

18           MR. ZEHNLE:  Are we talking about the --

19           THE COURT:  On the ███████████ property.

20           MR. ZEHNLE:  ███████████ property.

21           THE COURT:  ████████████████████████████████

22  ████████████████████████████████

23           Is there anything -- what do you want to say about

24  the issue?  And you may have addressed this in prior

25  pleadings, but if there's anything you want to add about

1      properties that are subject to forfeiture, what do you want

2      to say about that?

3              MR. ZEHNLE:  Well, as I said a moment ago, Your

4      Honor, the only one that is currently subject to forfeiture

5      in the package that's been proposed to the Court is the one

6      in ████████.  And the Court asked the question just a few

7      minutes ago, Well, what is the correct percent discount that

8      you're advocating?  And the government said, Well, that's

9      hard to say, it's just a general principle.

10             So it's very difficult for me to sit there and

11     say, you know, how to address what percent discount, if any,

12     there should be.  The only information cited in the

13     government's pleading filed last night was a Senate report

14     from 1983.  I've seen no case law or anything from the

15     government.  I've heard about this from -- for almost four

16     months now, in terms of dealing with the bond.  Oh, it

17     should have a discounted value.  But there's no case law

18     cited or anything for the Court.  And, so, my view is that

19     that shouldn't have a discount.

20             This is a probable cause.  I mean, it's subject to

21     forfeiture under a probable cause standard.  As the Court

22     noted today, he's presumed innocent, right? as he sits here

23     right now.  So, I don't understand how there is an

24     appropriate discount of some unknown percentage that's to be

25     applied to this and we're supposed to just guess it.  And I

1   don't have any case law, I don't have any authority to tell

2   me this is what you do.

3           So, it's hard to fashion something that I can

4   propose to the Court and say, Well, Judge, we should knock

5   10 percent off or 5 percent, or I'm sure the government

6   probably would say 50 percent, or maybe more, I don't know.

7           THE COURT:  All right.  Thank you.

8           I think, Mr. Downing, you want to say something?

9   I think generally --

10          MR. DOWNING:  Could we --

11          THE COURT:  You want to say something to him?

12          MR. DOWNING:  Yes.  If we can have a moment before

13  we finish?

14          THE COURT:  All right.  Go ahead.

15          (Off-the-record discussion between counsel and

16  defendant.)

17          MR. ZEHNLE:  Thank you, Your Honor.

18          THE COURT:  All right.

19          MR. ZEHNLE:  Couple other points, which actually

20  might be helpful for the Court's consideration.  ████████

21  ████████████████████████████████████████████

22  ████████████████████████████████████████████

23  ██████████████████████████████████████████████

24  ██████████████████████████████████████████████

25  ████████████████████████████████████████

 1  ███████████████████████████████████████████

 2  ████████████████████████████████████████

 3  █████████████████████████████████████████████

 4  ███████████████████

 5          It's also worth noting, I think, in terms of the

 6  agreements that Mr. Manafort will have to sign and any

 7  owners or co-owners will have to sign, that specifically

 8  those things have to be maintained as current, he's well

 9  aware of that particular fact.

10          And finally, with respect to the ███████ property,

11  we did have a discussion and I feel like I'm okay in telling

12  you, Your Honor, one of the reasons we also wanted to use

13  the ███████ and the ███████ properties is to keep -- I

14  mean, you have to go and record these things and undertake

15  actions in the various local counties where the residences

16  are located.

17          So we narrowed it down to ████████████████

18  ███████, obviously, is much easier for us to do than ████

19  █████  But, we took ███████ out of the picture so that we

20  don't have to go down to the county clerk and get that, you

21  know, work done down there, too.  Because, frankly, we

22  thought it would be more efficient and faster to do it up

23  here, Your Honor.

24          THE COURT:  All right.  The government also

25  included some allegations in its pleading.  I don't want

1    this bond proceeding to turn into a mini trial on uncharged

2    conduct.  I think we should be able to resolve this without

3    my having to make findings about whether there was fraud

4    involved in the purchase of these properties.  I hope I can

5    do it without having to get into that.  But, what do you

6    want to say, if anything, with respect to what they said

7    about that?

8              MR. ZEHNLE:  With respect to the new evidence of

9    the bank fraud that might impact it?

10             THE COURT:  Yes.

11             MR. ZEHNLE:  Indictment, paragraph 4.  They

12   already have talked about the bank fraud and bank fraud

13   conspiracies relating to Mr. Manafort's property, albeit

14   they've done it in a general way.  And now on the eve of

15   that hearing, they sent something last night and said, Oh,

16   by the way, all these bank fraud -- potential bank fraud and

17   conspiracy charges is based on all this new evidence that we

18   had.

19             So, I don't think that's a very credible argument,

20   Your Honor.  This has been known from the day the indictment

21   was released.  And you can look at it, it's paragraph 4.

22             THE COURT:  All right.  Thank you.  Does the

23   government have anything it wants to add?

24             MS. FREENY:  If I might.  Your Honor, there are

25   three issues that I think we would like some clarification

1    on, or some substantiation.  And the Court has already noted

2    some of them.  But just for the record, the first is with

3    respect to the issue of the cross-collateralization.  It was

4    the government's understanding that the bank had a right to

5    proceed against either property.  That is to say that it was

6    not the case that it was -- the bank was forced to proceed

7    against ███████████████████████████  So that's

8    something that we would like to see verification of.

9              The -- Mr. Manafort's counsel mentioned a

10   ████████████████ account.  It was the government's

11   understanding that that was collateral for a different piece

12   of property.  Now, we may be wrong, but we understood that

13   that was collateral for the ██████ Street property, rather

14   than the ██████████ property.

15             And then the third is with respect to the ████████

16   ████████ property, we would simply ask to see confirmation of

17   that.  ████████████████████████████████████████

18   ████████████████████████████████████

19   ████████████████████████████████████████████████

20             THE COURT:  All right.  There was, on the document

21   that I got ████████████████████████████████████

22   ████████████████████████████████████████

23   ████████████████████████████████████████

24   ████████████████████████████████████████

25   ████████████████████████████████████

1   don't know.  Somebody needs to find out.

2          So I will continue to take this under advisement.

3   I agree that I would require supplementation on those three

4   issues.  How am I supposed to know?  Something that explains

5   what happens in the event of a default on the ▇▇▇▇▇▇▇▇

6   mortgage.  Something that makes it clear which property the

7   ▇▇▇ million is collateral for.  And something that establishes

8   the state of the ▇▇▇ mortgage.

9          MS. FREENY:  Thank you, Your Honor.

10         THE COURT:  All right.  And then, obviously, if

11  there's anything anybody else wants me to consider in

12  connection with this, you're welcome to file it.

13         Mr. Downing, I just want to let you know that you

14  are an expressive human being and how you feel about what is

15  being said in the courtroom is a big part of your demeanor

16  and your physical demeanor.  And that doesn't upset me

17  particularly, but it will upset me enormously if there's a

18  jury in the box.  So, just keep that in mind.

19         MR. DOWNING:  Understood, Your Honor.

20         THE COURT:  All right.  Okay.  I think we can

21  suspend this portion of the proceedings and invite the Gates

22  people in and then we'll start with the government here and

23  then we'll excuse the government and try to finish that up.

24         All right.

25         MR. WEISMANN:  Your Honor, before Mr. Manafort and

1    his counsel leave, I would just say, one of the things we

2    tried to do in our filing, and I think in connection with

3    this part of the court appearance, is I'm not sure there was

4    any -- certainly in our filing, we kept out anything that

5    was of personal identifying information, cognizant of the

6    Court's rules and the admonition of the Court.  But I think

7    in listening, also, to this court appearance and this piece

8    of it, I'm not sure there was anything that would preclude

9    this under the Court's rules from being public.

10              THE COURT:  Well, I don't think so either, but if

11   you want to look at it and let them know if you have -- if

12   you think that in an abundance of caution some aspect of it

13   needs to be redacted, that's fine.  You have a few days

14   before the redacted version has to be filed.

15              MR. ZEHNLE:  Yes, Your Honor.  I would mention,

16   just for the Court's information, I mean, I think the

17   discussion █████████████████████████████████

18   ████████████████████████████████████████████████████

19   ██████████████████ are generally redacted.

20              THE COURT:  I think that's fair.  So take a look

21   at it.

22              MR. WEISMANN:  We have no objection.

23              THE COURT:  I think your larger objections, the

24   fact that the property is pledged in connection with another

25   property, I think that's fine, you don't have to name which

1    property, you don't have to name which banks, all that.  All

2    right.  Thank you.

3                (Whereupon Defendant Manafort and his counsel

4    leave the courtroom.)

5                (Whereupon Defendant Gates and his counsel and Mr.

6    Green enter the courtroom.)

7                MR. GREEN:  Good morning, Your Honor.  My name is

8    Thomas Green.

9                THE COURT:  All right.  This is a sealed

10   proceeding related to the pending motion to withdraw

11   submitted to me by Mr. Gates's counsel of record.  Mr. Gates

12   is present, counsel are present.

13               I take it that the two people seated in the well

14   of the courtroom are with one of your firms, Mr. Wu?

15               MR. WU:  Yes, Your Honor.

16               THE COURT:  All right.  And I've also asked Tom

17   Green, from Sidley and Austin, to be present this morning

18   and he is present.  And I appreciate your appearance on

19   short notice.  And I do understand that you have not entered

20   an appearance in this matter, but I think having you here to

21   answer questions could be extremely helpful in resolving

22   this matter, so I appreciate your presence this morning.

23               MR. GREEN:  Thank you, Your Honor.

24               THE COURT:  All right.  Before I get into the

25   nitty-gritty of what is being communicated among people to

1   my right, does the government have anything that they want

2   to add or anything to say about the pending motion?

3           MR. ANDRES:  No, Judge.  We're happy, as we did in

4   the last instance, to just wait in the jury room, in the

5   instance that there's something that you need from the

6   government.  That is to say, we don't need to be excused and

7   leave, we're happy to wait, just in the off chance there's

8   some issue we need to address.  But we don't have anything

9   to say about the pending motion.

10          THE COURT:  All right.  Well, I appreciate that.

11  And you can get the real jury experience by heading back

12  there.  Thank you.

13          (Whereupon government counsel leave the courtroom.)

14          THE COURT:  All right.  I have questions for all

15  of you and I'm not sure who should go first.  But let me

16  start, I guess, with you, Mr. Gates, because that's where we

17  finished last time.  And, really, you were the person that I

18  was hoping to hear from the most.  So, one thing I want to

19  ask you, is:  What exactly have you done to resolve this

20  issue since the last time we spoke?  And why did you ask for

21  more time and what do you expect to accomplish in that

22  period of time?

23  ████████████████████████████████████████████████

24  ██████████████████████████████████████████████████

25      ████████████████████████████████

1   ███████████████████████████████████████████████

2   ███████████████████████████████████████████████

3   ███████████████████████████████████████████

4   yesterday that was filed by me.  As I understood, my current

5   counsel of record didn't file that, we filed it through Mr.

6   Green's firm.

7   ███████████████████████████████████████████████

8   ███████████████████████████████████████████████

9   ███████████████████████████████████████████████

10  ███████████████████████████████████████████████

11  ████████████████████████

12          THE COURT:  All right.  Well, is the resolution

13  the entering of an appearance by Mr. Green?

14  ███████████████████████████████████████

15          THE COURT:  And I hate to put you on the spot.

16  And I understand that part of what is going on could obviate

17  the requirement for motions and discovery and trials.  But,

18  we're not in a pre-indictment world.  He's been indicted and

19  these lawyers are under an obligation.  And I can't have a

20  situation where he's unrepresented.  They have a right to be

21  paid, if they're going to do any work.  I don't want to just

22  suspend all operations while you work -- do what you need to

23  do.  But, I need to know who's in and who's out and who's

24  going to be doing what.  And if the plea negotiations fall

25  apart, who's going to be there?  Maybe you can shed a little

1    light on the situation.

2          MR. GREEN:  I'll shed as much as I can, Your

3    Honor.  We are in -- we have been in discussions with the

4    Special Counsel's Office.  We've spent quite a bit of time

5    in discussions.  And we are close to reaching an understanding,

6    mutual understanding.  We're not there yet, there are a

7    couple of other bumps in the road that we have to navigate.

8          I think it is fair to say that I am optimistic

9    that we'll get through that.  And I think if they were here

10   and you asked them the same question, they would say that

11   they are optimistic that we will get through that.

12          But it's going to be a process of approximately 48

13   more hours or another couple of days.  ████████████████

1         THE COURT:  All right.  So, if you were me --

2         MR. GREEN:  With all due respect, I think I'd give

3    us the, kind of, final extension, if you will, and defer

4    this to resolution by Your Honor by close of business next

5    Wednesday, I think it is.  And I will do everything in my

6    power to see that we have a successful resolution.

7         THE COURT:  All right.  Thank you for being here,

8    as I said.

9         Let me talk to Mr. Wu.

10   ████████████████████████████████████████████████

11   ██████████████████████████████████████████████████████

12   ███████████████████████████████████████████████

13   ████████████████████████████████████

14   ██████████████████████████████████████████████

15   ██████████████████████████████████████████████████████

16   ████████████████████████████████████████████████

17   ██████████████████████████████████████████████████████

18   Your Honor.

19        The special counsel has quite explicitly said they

20   will not even inform us of what the plea offer is to Mr.

21   Gates.  Their view of that is that that puts them, quote, in

22   the middle of some dispute between counsel.  My point to

23   them, and this was my statement, was that you're telling me

24   that you're refusing to communicate to counsel of record

25   with regard to my client's plea offer.  And the answer is,

1    We'll see you tomorrow, we're not getting in the middle of

2    that.





THE COURT:  All right.

MR. GREEN:  May I respond for just a second?

THE COURT:  Yes.  I have a couple more questions
for him, and then I do want to ask you about that issue.

Let's say you were invited to the next meeting
with Mr. Green and the team and were 100 percent informed
about everything that was going on in terms of the plea
negotiations, would you still be asking to withdraw

THE COURT:  I just want to make sure, it seems to

1     me there were two things underlying the motion.  And I want

2     to know if it's both that are requiring the withdrawal or if

3     either one individually; even if I resolve one, we still

4     have the other.  So I just want to know where you stand on

5     both prongs of this.

6     ████████████████████████████████████████████████

7     ████████████████████████████████████

8     ████████████████████████████████████████████████

9     ██████████████████████████████████████████

10    ██████████████████████████████████

11            THE COURT:  All right.  Thank you.  I think, Mr.

12    Gates, you need to understand, this is a real thing.  At the

13    end of the day, if you're prejudiced in some way in this

14    case because of their inability to work on your behalf now,

15    you can come back around and file a motion with me saying

16    they were ineffective because they didn't do A, B, and C and

17    they didn't warn me about A, B, and C.  And Mr. Green is not

18    on the hook for A, B, and C because he's not counsel of

19    record and they are.  And they're in a very difficult

20    situation.

21            I believe that in terms of the motions schedule,

22    that we've now kind of frozen that while we're waiting to

23    see what happens in terms of superseding charges.  And what

24    happens in terms of superseding charges is probably largely

25    dependent on what happens in the negotiations involving Mr.

1   Green, upon which Mr. Green's appearance or nonappearance

2   also hinges.

3          So it's all somewhat of -- it's all very

4   interrelated and, hopefully, time limited.  But, my problem

5   was the last time I thought it was time-limited I thought it

6   was time-limited until today.  I know these things take

7   time, but -- you stood up to tell me something.  What were

8   you going to tell me?

9

10

11

12

13

14

15

16

17

18          THE COURT:  Do you know why the Office of Special

19   Counsel feels like they can only talk to you now about the

20   plea, as opposed to them?

21          MR. GREEN:  A bit of their operation remains

22   inscrutable to me, Your Honor.  So, I've heard them take

23   that position; it's nothing that I've requested.  I would

24   have no hesitation at all taking either one of these

25   gentlemen with me on further discussions.  I don't know what

 1     their position would be.

 2                   THE COURT:  Well, whether you take them or not, if

 3     we have to be in this nether world for another week, can I

 4     expect that you will walk out of this room and set up a time

 5     and sit down with them and brief them on everything that is

 6     going on?

 7                   MR. GREEN:  You may -- you may rely on that, Your

 8     Honor.

 9                   THE COURT:  All right.  And, Mr. Gates, is there

10     any reason -- you're not suggesting that he shouldn't do

11     that, are you?

12                   THE DEFENDANT:  No, ma'am.

13                   THE COURT:  All right.  It may be that by next

14     Wednesday afternoon you don't have a plea agreement inked.

15     But I think by that point you're going to know whether

16     you're close enough to enter an appearance in this case.

17                   MR. GREEN:  Okay.  Understand.

18                   THE COURT:  And that will -- and I think at the

19     same time, I also want Mr. Gates's position on the motion to

20     withdraw.  If it really is your intention to be represented

21     by one of these law firms, if this plea offer does not fall

22     through, does not go through, then you need to make that

23     clear.  And you may have bitten off more than you could chew

24     with three law firms, involving transportation from

25     New York.  You may have to decide what's going forward.

1          But, we have to -- we have to -- get this done.

2     You are facing serious charges with serious consequences and

3     these lawyers are here out of a commitment to you.  I mean,

4     what they've just told me is they're more concerned about

5     their ability to abide by their ethical obligation to you

6     than they are about where they end up financially at the end

7     of the day.

8          We have to solve this problem.  If I -- when I

9     ordered you to let me know something by yesterday, I was

10    really hoping you would let me know something by yesterday.

11    I understand why you're not.  But this just can't continue

12    to drag out, given where we are right now and all the

13    obligations that everybody's facing.

14          I will say that if there are aspects of the bond

15    orders that can be tinkered with in order to facilitate

16    better financial arrangements, I'm willing to consider what

17    you give me.  I have to secure your appearance, but if every

18    single penny is encumbered and there's something you need to

19    ask me to do so that you can do something up front and do

20    the rest -- you know, let me know.  I'm not promising you

21    anything.

22          But, you need to have counsel.  The Court can't

23    pay for your counsel, you have too much money for the Court

24    to pay for your counsel.  Counsel has a right to be paid

25    something.  And this can't just go on.

1          So, if Mr. Green has not entered his appearance by

2     5 p.m. next Wednesday --

3          MR. GREEN:  21st.

4          THE COURT:  -- whatever that is.  February 21st,

5     then I expect a pleading indicating what the status of the

6     matter is and what your position is on the motion to

7     withdraw.  And even if he has entered an appearance, I want

8     to know what your position is on the motion to withdraw.

9          MR. GREEN:  Very well, Your Honor.

10         THE COURT:  All right.  And I expect that in the

11    meantime, so that these lawyers can do what they need to do,

12    that Mr. Green will keep them informed and that we will

13    have -- you will be acting as if they are all your team.

14    And, you know what?  They all are your team.  All right.

15    Thank you.

16         MR. GREEN:  Thank you.

17         THE COURT:  I'm going to bring the government back

18    in, but I don't think there's anything further they need to do.

19         Yes?

20         MR. WU:  Your Honor, Court's indulgence?

21         THE COURT:  Yes.

22         MR. WU:  Could I just confer with Mr. Mack for a

23    minute?

24         THE COURT:  Yes, you may.

25         (Pause.)



1

2

3

4

5

6

7

8

9

10

11          THE COURT:  And I'm not ordering that you be part

12   of the negotiation, I just want you to know what's going on.

13          MR. WU:  Thank you, Your Honor.

14          THE COURT:  Mr. Green can keep doing the meetings.

15   I mean, I think, as you know, it's a delicate dance and it

16   may or may not be in Mr. Gates's interest to change the

17   dynamics of the conversation.

18          MR. WU:  Right.

19          THE COURT:  But I just want you to know the

20   substance, the entire substance of the conversation while

21   it's going on.

22          MR. WU:  We appreciate that, Your Honor.  I'm sure

23   there will be no difficulties with getting that from Mr.

24   Green.

25          I would still ask, though, that the SCO be

1    directed that they have to answer questions with regard to

2    our client from the only counsel of record.  That just seems

3    like a very difficult position professionally for us to be

4    in.  It's fine for the team to communicate, but I don't see

5    any justifiable reason that they refuse to communicate to us.

6              THE COURT:  But if you're asking them what's the

7    plea offer -- I mean, I just don't think they should have to

8    have two conversations about what the plea offer is.  I

9    realize they have to continue to speak with you, but -- I

10   don't think they want to have to have a meeting with him and

11   then talk on the phone and tell you what they just told him.

12             MR. WU:  Completely understood, Your Honor.  I

13   think that's something that professionals can work out.  Our

14   concern is that as the only counsel of record, we cannot be

15   in a position where we're not able to speak to the

16   prosecutor about certain incredibly important aspects of the

17   case.  We are professionals.  I'm sure if they feel that

18   they're being besieged with having to do double the work,

19   you know, they will tell Mr. Gates's lawyers about that and

20   I'm sure we'll work that out.

21             The problem is, I just don't think it's

22   justifiable for them to put up a wall to say you're the only

23   lawyers in the case, but we're selecting what to talk to you

24   about.

25             MR. MACK:  And if I may add, Your Honor, that

1     there's absolutely no question that when we raise this issue

2     with the special counsel, they say it is Mr. Gates and Mr.

3     Green who have asked that it be that way.  And having just

4     heard from Mr. Green that they have not asked for that to be

5     true, it seems only fair to confront them.

6              And we're not going to be double calling.  We rely

7     on Mr. Green to tell us.  But if we call them, we don't want

8     to get heard -- or, hear back, We can't talk to you because

9     we've been told by your counsel, by your client and Mr.

10    Green that we can't talk to you.  And as Mr. Green just

11    said, that's not true.  So we don't know where that came from.

12             THE COURT:  Mr. Green, anything you want to add?

13             MR. GREEN:  No.  I just want to -- I want to be

14    candid.  That has refreshed my recollection.  It may be

15    possible that they asked me -- I just don't remember, but I

16    want to be candid with you -- they may have asked me, Do you

17    want us to talk to his counsel about the plea agreement? you

18    know, it's not our style to do that.  And I think I've -- I

19    may have said to them, Talk to me.  Okay?  I will brief

20    them.  That could have happened.  I just honestly don't

21    know -- don't remember whether that did or not.  Other

22    aspects of it --

23             THE COURT:  I'm going to tell them when they come

24    back in that there shouldn't be any limits on what they

25    discuss with any lawyer who's in the case.  But, I also

1     believe that you all are now agreed that Mr. Green is going

2     to be the primary communicator on that issue, so that there

3     is no confusion about what the state of the plea is, what's

4     been communicated.  You don't know what information he's

5     told them Mr. Gates might have to offer.  If that's part of

6     the plea, I don't have any reason -- I don't know.  I'm

7     just -- I know what happens.

8             So, I think it will delay and not expedite this

9     issue, if they have to talk to you about matters of

10    substance.  But I do think they need to know that there's no

11    barrier anymore.  But, on that note, I don't think we can

12    have parallel negotiations.  And I -- if Mr. Green does not

13    live up to what he has told me he is going to do, then you

14    should let me know.  But as I understand it, Mr. Green is

15    going to talk to them, they're going to try to get this

16    thing over the finish line, and that you're going to be kept

17    informed every step of the way by Mr. Green.

18            MR. WU:  Your Honor, again, I've total confidence

19    in the fact that Mr. Green is going to keep us updated;

20    that's a matter for the lawyers to work out together.

21    Again, my concern is I don't believe there can be any

22    justification for the United States to say to the only

23    defense counsel on record, We are not going to tell you

24    things about your client.  If for some reason we were

25    terribly clumsy and obnoxious and badgered them constantly,

1    making them do double work, they can bring that to our

2    attention and say, Look, we're talking to you, but we're not

3    going to take 50 phone calls on the same question.  They can

4    do that.

5            THE COURT:  Right.  But I don't want to have that

6    conversation with them and have you leave the courtroom and

7    you call up and say, Okay, what's the plea offer?  I think

8    the point is just to continue to work the way we're working,

9    but they need to understand that if you're having

10   conversation about something else, and it's -- that's part

11   of it and -- I mean, I don't think anybody is going to do

12   anything on this case, except this piece, between now and

13   Wednesday, to be fair.  I don't think they're -- I think

14   they're up in the air.  Everybody is up in the air.  We need

15   to find out what's going to happen.  But -- so --

16           MR. MACK:  Your Honor, if I might just interrupt.

17   I mean, hypothetically, we understand, we want whatever Mr.

18   Green is doing to succeed.  It is at least conceivable we

19   may have some insight into an issue he has that may be an

20   obstruction or a point that he would ask us to inquire

21   and -- because we may probably know the discovery better

22   than he does; I don't know that to be true.

23           THE COURT:  Well, that's fine.  You all can do that.

24           MR. MACK:  Right.

25           THE COURT:  And if that involves communicating

1    with the prosecutors, that's fine, too.  But I think the --

2    when this started, Mr. Wu stood up here and said they're not

3    even talking to us about what the plea offer is.  And while

4    I will tell them that they're free to do that, that there's

5    no barrier to their discussing with you the substance of the

6    plea offer, I don't --

7              MR. MACK:  We get that, Your Honor.  I'm just

8    saying --

9              THE COURT:  We can't have two parallel --

10             MR. MACK:  -- the plea offer as we understood it

11   changed in the brief period of time that we were outside,

12   thanks to Mr. Green.  So we're fine working with Mr. Green.

13   We just want to know what's going on, that's all we're

14   asking for.

15             THE COURT:  All right.  All right.  I'm also going

16   to let the government know that I've asked for some update

17   by Wednesday, so that they understand that there's some

18   pressure on them, too, to try to get this done.

19             MR. MACK:  Fine.

20             MR. WU:  Your Honor, thank you.  And again, our

21   only point is it's not tenable for the prosecutor to say to

22   the only defense counsel of record --

23             THE COURT:  I understand your point.

24             MR. WU:  -- we won't talk to you.  That's all.

25             THE COURT:  All right.  All right.  Bring in the

1      jury.

2                  (Whereupon government counsel enters the courtroom.)

3                  THE COURT:  For the record, the prosecution team

4      has re-entered the courtroom.  Now you all know why the

5      jurors don't like it back there.

6                  I want to let you know that I believe we have made

7      considerable progress on this issue, but the issue is

8      largely dependent on the progress that you and Mr. Green and

9      Mr. Gates make on the more significant issue.

10                 The hope was expressed that it could all be done

11     by next Wednesday.  And we have -- that is how much time

12     they have asked for to let me know whether Mr. Green is in

13     this case or not.  If that turns out to be impossible, I'm

14     not unreasonable.  But, I have stressed to everyone that it

15     seems like we are all a little frozen right now.  You've

16     expressed that to me.  Both defense teams know that we're

17     waiting on a lot of things to happen and they all depend, at

18     this point, on what happens in these conversations.

19                 So, nobody should rush, nobody should throw up

20     their hands and say, No, I give up, just because it's

21     Tuesday.  But it is our hope that we have a pretty solid

22     understanding of what direction we're going in by next

23     Wednesday afternoon, even though -- even if everything

24     hasn't been inked and every I dotted and T crossed.

25                 Under those circumstances, just like you can't

1   expect Mr. Manafort to be writing motions to dismiss

2   indictments he hasn't seen, we can't expect counsel to be

3   writing motions and defending when they're not sure what

4   they're going to be defending or whether they're going to be

5   defending.  So everything in terms of the schedule I think

6   is a little bit up in the air.

7          The good news is that I also want to let you know

8   that there is nothing that you cannot or should not discuss

9   with counsel of record.  Mr. Wu and Mr. Mack are counsel of

10  record in this case.  I understand that your negotiations to

11  this point, you've been authorized by Mr. Gates to speak to

12  Mr. Green about them.  And I have underscored with counsel

13  that you should not have to take three phone calls to

14  discuss the same negotiations.

15         Mr. Green is going to continue to be your point of

16  contact for the ongoing negotiations because he knows what's

17  going on.  And he is going to make counsel of record

18  informed.  And if there is some issue that comes up in the

19  communication with counsel of record that relates to the

20  plea negotiations, you are to speak to counsel of record

21  about them.  There's no bar anymore that you only speak to

22  Mr. Green about the plea.

23         Do you understand what I'm saying?

24         MR. ANDRES:  Yes, Judge.

25         THE COURT:  I think Mr. Wu and Mr. Mack were

1    greatly concerned that they could not possibly represent

2    their client if they couldn't talk to you about the most

3    important thing that is happening to their client right now.

4    But, as I said, that doesn't mean that you're going to

5    engage in duplicative negotiations.  They're going to be

6    kept informed.  But, if there was a point where Mr. Gates

7    informed you that you should only talk to Mr. Green and not

8    to them, that's no longer operative.

9            MR. ANDRES:  Understood.

10           THE COURT:  All right.  Is there anything further

11   I need to do right now on this matter?

12           MR. WU:  Not from Mr. Mack and Mr. Wu.

13           MR. GREEN:  Not from me, Your Honor.

14           THE COURT:  Mr. Gates, do you understand everything

15   that we've been talking about today?

16           THE DEFENDANT:  Yes, ma'am.

17           THE COURT:  All right.  And, Mr. Green, again, I

18   appreciate your coming when I called.

19           MR. GREEN:  Yes, ma'am.

20           THE COURT:  I think it helped enormously.

21           MR. GREEN:  Happy to do so.

22           THE COURT:  All right.  Thank you everybody.

23                             *   *   *

24

25

1

2                    CERTIFICATE OF OFFICIAL COURT REPORTER

3

4

5           I, JANICE DICKMAN, do hereby certify that the above

6      and foregoing constitutes a true and accurate transcript of

7      my stenograph notes and is a full, true and complete

8      transcript of the proceedings to the best of my ability.

9                         Dated this 22nd day of February, 2018.

10

11

12                         /s/_____

13                         Janice E. Dickman, CRR, RMR
                           Official Court Reporter
14                         Room 6523
                           333 Constitution Avenue NW
15                         Washington, D.C. 20001

16

17

18

19

20

21

22

23

24

25