# Exhibit A

United States v. Manafort
No. 1:18-cr-83 (E.D. Va.)
Trial Transcript
July 31, 2018

─────────────── U.S. v. Manafort ───────────────

44

1  this arrangement.  And he certainly was not trying to mislead

2  or deceive the Internal Revenue Service.

3          This is not a case where someone flies to

4  Switzerland after making a lot of money here and tried to

5  stash it in a numbered account.

6          The people that were paying his invoices for his

7  legal services as a political consultant advisor, they are the

8  ones who told him to do this.  Paul Manafort did not come up

9  with this.

10          Now, I spoke a moment ago about willfulness.  Did

11  Mr. Manafort willfully or intentionally mislead the IRS?  And

12  as you consider the evidence, that is an important concept.

13  Because the tax code and the FBAR regulations are complicated.

14  And so the law requires that an individual must know what the

15  law is and then intentionally and purposely violate that law.

16  That is what willfulness is.  If a person has a good faith

17  belief that they are not violating the law, even if that

18  belief is incorrect, then he or she is not guilty of a willful

19  crime.

20          U.S. citizens are not prosecuted for mistakes on

21  their tax returns or failing to file a form that they didn't

22  believe they had to file.  The IRS audits those people.  It

23  doesn't criminally prosecute them.  But in the Government's

24  rush to judgment in this case you're going to learn that

25  Mr. Manafort was never audited by the IRS, nor were any of his

United States v. Manafort
No. 1:18-cr-83 (E.D. Va.)
Trial Transcript
August 6, 2018

─────────U.S. v. Manafort─────────

1081

1    THE COURT:  Any objection to that?

2    MR. ZEHNLE:  Your Honor, I was just asking for

3  clarification.  I thought initially it was just the husband.

4    THE COURT:  I did, but as long -- they filed joint

5  returns --

6    MR. ZEHNLE:  I'm okay with it, Your Honor.

7    THE COURT:  Let's return.

8    (End of bench conference.)

9    THE COURT:  All right.  You may proceed.

10  BY MR. ASONYE:

11  Q.  And, Ms. Liss, for the same period, 2011, 2012, 2013, and

12  2014, did your search yield any results for FBAR filings for

13  Kathleen Manafort, the defendant's wife?

14  A.   There were no FBARs in FinCEN's system of record.

15    THE COURT:  I didn't hear you.

16    THE WITNESS:  There were no FBARs in FinCEN's system

17  of record.

18    THE COURT:  Thank you.  Cross-examination.

19    MR. NANAVATI:  Yes, briefly, Your Honor.

20                    **CROSS-EXAMINATION**

21  BY MR. ZEHNLE:

22  Q.  Good afternoon, Agent Liss.  My name is Thomas Zehnle,

23  and I represent Paul Manafort in this case.

24  A.  Good afternoon.

25  Q.  I just wanted to go over a little bit of your testimony a

U.S. v. Manafort

1082

1  moment ago.  You are familiar with the FBAR, correct?

2  A.   Yes.

3  Q.   Okay.  And I think you testified that in the past it used

4  to be filed on June 30th of the following year; is that

5  correct?

6  A.   That's correct.

7  Q.   And that was not the same time obviously as income tax

8  returns were generally due, correct?

9  A.   That's true.

10  Q.   And then it's also now changed to a system whereby it's

11  done electronically; is that correct?

12  A.   Yes.

13  Q.   And in the past it could have been mailed in by paper,

14  right?

15  A.   True.

16  Q.   And that was sent to the Detroit center; wasn't that

17  correct?

18  A.   Yes.

19  Q.   Okay.  Now, just in terms of the FBAR so we can clarify

20  this, there are a number of elements that need to be satisfied

21  before a person, a U.S. person, is required to file an FBAR;

22  is that correct?

23  A.   Yes.

24  Q.   And so one of those elements would be that it has to be a

25  United States person, correct?

U.S. v. Manafort

1083

1   A.   Yes.

2   Q.   And a person can be more than just an individual, right?

3   A.   That's correct.

4   Q.   It can be a corporation, correct?

5   A.   Yes.

6   Q.   A U.S. domestic corporation has to file.

7        And the U.S. person has to have a financial interest

8   in the account; is that correct?

9   A.   That's one of the ways.

10  Q.   And another way is that they have signature authority

11  over the account?

12  A.   Yes.

13  Q.   Okay.  And then there's a definition of what is a foreign

14  financial account, correct?

15  A.   Yes.

16  Q.   And a financial account can mean more than just a bank

17  account, right?

18  A.   That's correct.

19  Q.   It can be a securities account, right?

20  A.   Yes.

21  Q.   It could be an insurance policy with a cash or

22  undervalue, right?

23  A.   Yes.

24  Q.   There are a number of definitions that deal with what a

25  foreign financial institution is, correct?

─U.S. v. Manafort─

1084

1 A.   That's correct.

2 Q.   Okay.  And then you also said something about aggregating

3 the amounts.  And how amounts are aggravated in order to meet

4 the $10,000 threshold, there are regulations on that as well,

5 correct?

6 A.   Yes, there's guidance on that as well.

7 Q.   And there are practical issues because if it's a foreign

8 financial account, it might be in currency that's different

9 than U.S. dollars, of course?

10 A.   Yes.

11 Q.   Okay.  So in terms of a corporation's filing

12 requirements, and an individual who owns a corporation, what

13 is the rule in terms of ownership of the corporation in order

14 to require the filing of an FBAR?

15 A.   I'm not sure I understand your question.

16 Q.   Okay.  That was probably my inartful question.

17          How much ownership does a person have to have in a

18 corporation in order to be required to file an FBAR on behalf

19 of that corporation?

20 A.   The corporation may have its own filing requirement, and

21 then an individual may have their own filing requirement if

22 they own, directly or indirectly, more than 50 percent of the

23 company.

24 Q.   That is, it's more than 50 percent, correct?

25 A.   That's correct.

—U.S. v. Manafort—
                                                                    1085

1   Q.   So if it's 50 percent ownership or less, they have no

2   filing requirement?

3   A.   Well, you have to take into consideration if they may

4   indirectly own some of that as well.

5   Q.   Okay.  So if you take that into account and they don't

6   have indirect ownership of it, if it's 50 percent or less,

7   there is no FBAR filing requirements?

8   A.   For the individual who owned something in the company,

9   that's correct.  Others may have a filing requirement because

10  multiple people can have a filing requirement on one account.

11  Q.   Okay.

12        MR. ZEHNLE:  Nothing further, Your Honor.

13        MR. ASONYE:  Your Honor, I believe he's opened the

14  door on some of the --

15        THE COURT:  I'm sorry?

16        MR. ASONYE:  May we -- I can -- we can approach on

17  this, but we believe his cross opened the door on at least one

18  or two additional filings.

19        THE COURT:  I don't agree.  I can see that.  It's

20  done.  But come to the bench anyway.

21        (Bench Conference.)

22        THE COURT:  Mr. Zehnle, do you intend to argue that

23  any entities -- well, that Paul Manafort or his wife did not

24  file FBARs because they didn't have 50 percent of a company?

25        MR. ZEHNLE:  No, Your Honor.

U.S. v. Manafort

1086

1    MR. ASONYE:  Your Honor, he just basically made the

2  argument.  Because their evidence in this case is if a person

3  who doesn't necessarily own 50 percent of DMP, therefore

4  implying that he has no filing responsibility.  He also went

5  deeply into personal --

6    THE COURT:  But they're not accused of failing to

7  file.  We're only focused on his obligation to file.  You

8  could have indicted him for more, but you didn't.

9    MR. ASONYE:  Then, Your Honor, then he expanded in

10  the area and went into this --

11    THE COURT:  Yes, but he's entitled -- he's entitled

12  to -- what he did in cross-examination is to make clear that

13  if he doesn't own 50 percent of a company, he doesn't have to

14  file.  If he does own more than 50 percent, then he and the

15  company have to file, but the company hasn't been indicted.

16  Only he has been indicted.

17    So he's entitled to argue that for any company that

18  he only owned 50 percent of, there was no FBAR requirement.

19  Well, that's what he wants to argue.  Am I correct?

20    MR. ZEHNLE:  Correct, Your Honor.

21    MR. ASONYE:  And to be clear, Your Honor, in 2010

22  and in 2011, Mr. Manafort owned 100 percent of Davis Manafort

23  Partners.

24    THE COURT:  Well, do you have evidence to that?

25    MR. ASONYE:  It's already in evidence.

U.S. v. Manafort

1087

1    THE COURT:  Well, then don't worry about it.

2    MR. ASONYE:  Well, Your Honor, that's what we were

3  going to ask her now.  That opened the door on that issue.  If

4  Mr. Manafort had 100 percent ownership in Davis Manafort

5  Partners, did he have an FBAR requirement and so did Davis

6  Manafort.

7    THE COURT:  Yes, but you don't have to -- his

8  failure to file is all you can prosecute because of your

9  indictment.  You cannot prosecute that Davis Manafort

10 Partnership didn't file.

11   Do you understand what I'm saying?

12   MR. ASONYE:  I understand what you're saying, Your

13 Honor.  I just vigorously disagree that he has now opened that

14 issue now by --

15   THE COURT:  Well, then you lose the argument.  I'm

16 going to permit you to offer as much evidence as you would

17 like that he had an obligation to file and that he didn't

18 file.  That is what's in exhibits -- or in the counts 11

19 through 14.  The fact that some partnership or some company

20 didn't file, no.  But if you have shown that he owns more than

21 50 percent of the company, then he had an obligation to file.

22 Not for the company, but on his own.

23   MR. ASONYE:  And, Your Honor, we're going to do that

24 now.  I'm going to ask her that on redirect then.

25   THE COURT:  All right.  You can do that on redirect,

──────U.S. v. Manafort──────

1088

1    but it can only focus on him.  Do you understand that?

2             MR. ASONYE:  On Mr. Manafort, understood.

3             MR. ZEHNLE:  Your Honor, if I might just be heard on

4    this.  I was -- I was very careful in the way I asked the

5    questions, simply talking about the element of what's required

6    for the filing of an FBAR.  Mr. Asonye seems like he wants to

7    bring this into a direct discussion of Mr. Manafort's

8    obligations.  I was only asking:  What are the elements that

9    are necessary because the jury needs to know that this is a

10   complicated process.  This isn't just something where it's

11   like, oh, gee, I've got a foreign account and I have to file.

12            THE COURT:  Well, the other --

13            Mr. Flood, let's have the noise in the courtroom

14   kept down, please.

15            THE CSO:  Stop talking.  Court is in session.

16            THE COURT:  Again, I want to emphasize that

17   Mr. Manafort has been indicted for failing to file FBARs for

18   four years, and that is the sharp focus.  Now, it's come out

19   that he does have an obligation to file an FBAR if he owns

20   more than 50 percent of a company that had that obligation.

21   The company would have to file it and the individual would

22   have to file it.  I think that's right.

23            MR. ASONYE:  That's correct.

24            THE COURT:  And so what is it, Mr. Zehnle, that you

25   would object to if he emphasizes that point he asks on

─────U.S. v. Manafort─────

1089

1    redirect.  All he would ask is if Mr. Manafort owns more than

2    50 percent, he has to file an FBAR.

3              MR. ASONYE:  I mean, Your Honor, the question I

4    would ask is:  For 2010 and 2011, Mr. Manafort owned 100

5    percent of Davis Manafort Partners and DMP foreign bank, did

6    he have an obligation to file a FBAR?

7              THE COURT:  Any objection to that?

8              MR. ZEHNLE:  Well, only to the extent, Your Honor --

9    not on that particular point, but only to the extent that it

10   assumes that all the other elements that I just discussed with

11   this witness --

12             THE COURT:  That's a matter of argument.  I'll

13   permit you to ask that question and then we're done.

14             Let's proceed.

15             MR. NANAVATI:  Thank you, Your Honor.

16             (End of bench conference.)

17             THE COURT:  All right.  You may proceed in

18   accordance with the ruling at the bench.

19             MR. ASONYE:  Okay.  One moment, Your Honor.

20                      **REDIRECT EXAMINATION**

21   BY MR. ASONYE:

22   Q.  Ms. Liss, if in 2010 and 2011 Davis Manafort Partners had

23   a foreign bank account with more than $10,000 in it and

24   Mr. Manafort owned 100 percent of that company, would he have

25   an FBAR filing requirement in 2010 and 2011?