## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

**UNITED STATES OF AMERICA**

**v.**

**PAUL J. MANAFORT, JR.**,

**Defendant.**

**Crim. No. 17-cr-201-1 (ABJ)**

### JOINT PRETRIAL STATEMENT

Pursuant to the Court's Scheduling Order entered March 1, 2018 (Doc. 217, at 2–3), the government hereby submits a joint pretrial statement. The defendant's position was communicated by email to the government on the afternoon of August 24, 2018 and is set out in each respective portion of the submission.

**a)      Joint Statement of the Case**

A proposed joint statement of the case for the Court to read to prospective jurors is attached to this submission as Exhibit A. The government transmitted the proposed joint statement of the case to defense counsel on July 23, 2018 as part of its proposed jury instructions and separately sent the proposed statement of the case to defense counsel in a standalone email on July 27, 2018.

- Defendant's position: "Defendant objects to the description of the FARA violation (bullet point 3) and suggests that it should read: 'Between approximately 2008 and 2014 failing to register as an agent of a foreign principal in violation of FARA (Count Three).'" The defendant agrees to the remainder of the proposed joint statement of the case.

**b)** **Estimate of the Number of Trial Days**

The government anticipates that its case-in-chief will last approximately ten to twelve trial days.

- <u>Defendant's position</u>:  "Defendant has not determined whether he will present a defense case. Any defense case will require between three to four trial days."

**c)** **List of Outstanding Motions in Limine**

Both parties filed their motions in limine on July 9, 2018 (Doc. 341 & 343) and responses to the motions on July 23, 2018 (Doc. 360 & 361).  The government has sought leave to supplement its motions in limine in light of proceedings in the Eastern District of Virginia.  (Doc. 366, 381, and 382).  The following motions in limine are outstanding:

<u>Government's Motions</u>

(1)     The government's motion in limine for an order precluding "argument or evidence at trial (1) concerning selective or vindictive prosecution or the motive and mandate of the Department of Justice office leading this prosecution, or (2) suggesting that any government investigation into Manafort that preceded the Special Counsel's appointment ended with a decision not to prosecute him."  (Docs. 341 & 381).

(2)     The government's motion in limine for an order precluding the defendant from presenting argument at trial, or soliciting evidence concerning, (a) the absence of a civil Internal Revenue Service audit of Manafort or his companies or (b) the absence of any civil Foreign Agents Registration Act action against Manafort or his companies, or suggesting that such civil audits or actions were necessary or that the absence of such civil audits or actions was improper, indicative of a lack of evidence of a crime.  (Doc. 366).

(3)    The government's motion in limine seeking to admit evidence that two U.S. businesses, Davis Manafort Partners, Inc. and DMP International, LLC, never filed FBARs for the foreign bank accounts identified in the superseding indictment.  (Doc. 382).

<u>Defendant's Motions</u>

(1)    The defendant's motion in limine seeking to preclude evidence or argument concerning Mr. Manafort's role with the Trump campaign and allegations related to purported collusion with the Russian government.  (Doc. 343, at 1–3).  The government has raised a limited objection to the motion.  (Doc. 360, at 2–4).

(2)    The defendant's motion in limine seeking to preclude evidence or argument about the charges brought in *United States v. Manafort*, No. 1:18-cr-83 (E.D.V.A.).  (Doc. 343, at 3–5).  The government has raised a limited objection to the motion.  (Doc. 360, at 4–5).  The government also notes below that it intends to introduce the defendant's convictions for purposes of impeachment, pursuant to Federal Rule of Evidence 609.

(3)    The defendant's motion in limine seeking to preclude evidence or argument about the defendant's remand to the custody of the U.S. Marshal Service pending trial.  (Doc. 343, at 5).  The government has no objection to the motion.  (Doc. 360).

(4)    The defendant's motion in limine seeking to preclude testimony and evidence from attorneys who "provided Mr. Manafort with FARA related advice and represented him in interactions with the U.S. Department of Justice's FARA office."  (Doc. 343, at 6).  The government has set forth its objection, noting that the defendant's purported claim of privilege has been considered and rejected by Chief Judge Howell.  (Doc. 360, at 5–8).

**d)**     **Proposed Jury Instructions**

A copy of the government's proposed instructions (including instructions from the Standardized Criminal Jury Instructions for the District of Columbia) is attached to this submission as Exhibit B.  A copy of the government's proposed instructions was sent to defense counsel on July 24, 2018.  A copy of the government's proposed special jury instructions is attached to this submission as Exhibit C.[1]  A copy of these proposed instructions was sent to defense counsel on July 23, 2018.

- Defendant's position: "Defendant objects to the instructions submitted by the government identified in the list below.  Defendant will file a separate pleading as soon as possible addressing those objections and requesting changes or additional instructions:

| | |
|---|---|
| Instruction No. 1 | Instruction No. 26 |
| Instruction No. 2 | Instruction No. 27 |
| Instruction No. 13 | Instruction No. 28 |
| Instruction No. 14 | Instruction No. 29 |
| Instruction No. 15 | Instruction No. 32 |
| Instruction No. 16 | Instruction No. 33 |
| Instruction No. 17 | Instruction No. 34 |
| Instruction No. 18 | Instruction No. 46 |
| Instruction No. 19 | Special Instruction No. 1 |
| Instruction No. 20 | Special Instruction No. 2 |
| Instruction No. 21 | Special Instruction No. 3 |
| Instruction No. 22 | Special Instruction No. 4 |
| Instruction No. 23 | Special Instruction No. 5 |
| Instruction No. 24 | Special Instruction No. 6" |
| Instruction No. 25 | |

---

[1] These special instructions address certain legal requirements imposed by the Foreign Agent Registration Act ("FARA") (22 U.S.C. § 612 *et seq.*), the Lobbying Disclosure Act ("LDA") (2 U.S.C. § 1601 *et seq.*), and associated regulations issued pursuant to and implementing both federal laws.

The defendant indicated that he does not object to instructions 3, 4, 5, 6, 7, 8, 9, 10, 11, 12, 30, 31, 35, 36, 37, 38, 39, 40, 41, 42, 43, 44, 45, 46, 47, 48, 49, 50, 51, 52, 53, 54, 55, 56, and 57, as submitted in Exhibit B.

**e)** **List of Expert Witnesses**

The government's notice of expert testimony is attached as Exhibit D.  The government gave this notice to the defendant on July 13, 2018.

- Defendant's position:  "To the extent the defendant decides to present a defense case, defendant anticipates presenting the testimony of expert witnesses in the following areas: (1) money laundering and (2) the Foreign Agent's Registration Act.  Defendant is still in the process of identifying and retaining experts.  Defendant will provide additional information when it becomes available."

**f)** **List of Prior Convictions**

Pursuant to Federal Rule of Evidence 609(a)(2), should the defendant testify in the upcoming trial, the government intends to offer for purpose of impeachment the defendant's prior convictions in the case *United States v. Manafort*, No. 1:18-cr-83 (E.D. Va.), including his convictions on five counts of filing of false individual income tax returns (in violation of 26 U.S.C. § 7206(1)); one count of failing to file a report of a foreign bank and financial account (in violation of 31 U.S.C. §§ 5314 and 5322(a)); and two counts of bank fraud (in violation of 18 U.S.C. § 1344).  The government hereby gives notice as required under Federal Rule of Evidence 609(b)(2).

**g)** **List of Exhibits**

A copy of the government's exhibit list is attached to this submission as Exhibit E, and the government has delivered copies of the exhibits to the Court's chambers as directed in the

Scheduling Order.  Given the voluminous nature of the exhibits, the government has included draft summary exhibits that it intends to offer pursuant to Federal Rule of Evidence 1006.  The government will submit to the Court revised summary exhibits at a later date in advance of trial. The government requests the Court's permission to amend its exhibits in advance of trial as needed during the course of trial preparation.  The summary exhibits are Government Exhibits 81, 90, 304, 308, 318, 319, 325, 335, and 400-46.

Beginning in mid-July 2018, the government identified its trial exhibits to defense counsel on a rolling basis.[2]  The government identified its trial exhibits (from previously produced documents) in six tranches, which were sent to defense counsel on July 19, 2018; July 20, 2018; July 23, 2018; July 24, 2018; July 28, 2018, all in anticipation of an August 1, 2018 submission of the Joint Pretrial Statement.  For ease of reference, an August 21, 2018 transmission combined the prior transmissions into a single exhibit list with relevant updates, including eliminating various exhibits pursuant to the Court's Minute Order.

On the evening of August 23, 2018, the defendant requested that the government reproduce all of its exhibits in electronic format.  The government arranged for defense counsel to pick up an electronic copy of the exhibits at 8:45 AM on August 24, 2018.

- Defendant's Position: On the afternoon of August 24, 2018, the defendant wrote to the government:

> The defendant received the government's most recent exhibit list containing more than 1500 marked exhibits on August 22, 2018.  In order to assist the defendant in reviewing the proposed exhibits, at the defendant's request, the government provided electronic copies of the exhibits on August 24, 2018.  Defendant and his counsel

---

[2] In each correspondence, the government identified the exhibits by Bates number, date of the document, and the source of the exhibit.  The government also provided a short description of the exhibit to counsel, and, where applicable, a cross-reference to the equivalent Eastern District of Virginia exhibit number.

require additional time to review the government's proposed exhibits in order to lodge appropriate objections.  At this time, defendant objects to all of the government's proposed exhibits as to authenticity and admissibility.  Defendant will provide the Court with a more detailed recitation of objections by exhibit as soon as possible.

[. . .]

The defense has not yet identified exhibits that may be used in cross-examination and will not be able to identify exhibits that may be used in any defense case-in-chief until after the government presents its case-in-chief.

**h)** **Stipulations**

A copy of the government's proposed stipulations are attached as Exhibit F.  The government transmitted the first of these stipulations on July 23, 2018.  The government notes that many of these stipulations are the same in substance to those agreed to by the defendant and the government in *United States v. Manafort*, No. 1:18-cr-083 (E.D.V.A.).

- <u>Defendant's Position</u>: "The government has provided the defendant with approximately 23 proposed stipulations for review.  At this time, there are no agreed upon stipulations."

**i)** **Judicial Notice**

As described above, the government has submitted a proposed series of special jury instructions, attached to this submission as Exhibit C.  These special instructions address certain legal requirements imposed by FARA, the LDA, and associated regulations implementing both federal laws.

Alternatively, the Court could take judicial notice of the same legal and regulatory requirements pursuant to Federal Rule of Evidence 201.  *See, e.g., United States v. Titus*, 475 F. App'x 826, 834–35 (4th Cir. 2012) (affirming, in a federal fraud case, district court taking judicial notice of "certain Virginia rules and statutes," including the Virginia Consumer Real Estate

Settlement Protection Act and "associated state regulations, which imposed duties on Titus"); *see also United States v. Montgomery*, 896 F.3d 875, 879 (8th Cir. 2018) (noting, with respect to the fact that U.S. Food and Drug Administration regulations prohibit sale of health foods with hemp seeds and hemp oil containing THC, that "if challenged, the government could have established this regulatory fact by judicial notice"); *Staehr v. Hartford Fin. Servs. Group, Inc.*, 547 F.3d 406, 425 (2d Cir. 2008) ("[I]t is proper to take judicial notice of the fact that . . . regulatory filings contained certain information, without regard to the truth of their contents"); *United States v. Knauer*, 707 F. Supp. 2d 379, 400 (E.D.N.Y. 2010) ("It is undoubtedly within this Court's authority to take judicial notice of agency regulations, including those issued by an administrative subunit.").

- <u>Defendant's Position</u>:   The defendant objects to these special jury instructions (or, alternatively, the Court's taking judicial notice).  *See supra* Section (d) (position on Special Instructions 1–6).

**j)      Proposed Verdict Form**

A copy of the government's proposed verdict form is attached as Exhibit G.

- <u>Defendant's Position</u>:  No proposed verdict form given.

Respectfully submitted,

ROBERT S. MUELLER, III
Special Counsel

Dated: August 24, 2018            By:     _/s/ Andrew Weissmann_____
Andrew Weissmann
Jeannie S. Rhee (D.D.C. Bar No. 464127)
Greg D. Andres (D.D.C. Bar No. 459221)
U.S. Department of Justice
Special Counsel's Office
950 Pennsylvania Avenue NW
Washington, D.C. 20530
Telephone: (202) 616-0800

# EXHIBIT A

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **UNITED STATES OF AMERICA** | |
| **v.** | **Case No. 17-cr-201-1 (ABJ)** |
| **PAUL J. MANAFORT, Jr.,** | |
| **Defendant.** | |

## JOINT STATEMENT OF THE CASE

The grand jury has charged Paul J. Manafort, Jr., in a seven-count indictment.  Those charges are:

- Conspiring between approximately 2006 and 2017 to defraud and commit offenses against the United States, including conspiring to violate the Foreign Agents Registration Act (FARA), to make false and misleading statements to the Department of Justice, to file false tax returns, and to fail to file with the Department of the Treasury required reports of foreign bank accounts (Count One);

- Conspiring to launder money from approximately 2006 through 2016 (Count Two);

- Acting between approximately 2008 and 2014 as an agent of a foreign principal without registering, in violation of FARA (Count Three);

- In approximately November 2016 and February 2017, making false and misleading statements to the Department of Justice (Counts Four and Five); and

- Between February and April 2018, attempting to tamper with witnesses and conspiring to witness tamper (Count Six and Seven).

Respectfully submitted,

Paul J. Manafort, Jr.,          ROBERT S. MUELLER, III
Defendant                        Special Counsel

By: _____     By: _____
Kevin Downing, Esq.                  Andrew Weissmann
Tom Zehnle, Esq.                     Greg D. Andres
Jay Nanavati, Esq.                   Senior Assistant Special Counsels
Counsel for Defendant

# EXHIBIT B

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

**UNITED STATES OF AMERICA**

**v.**

**PAUL J. MANAFORT, JR.**,

**Defendant**

**Crim. No. 17-cr-201 (ABJ)**

## GOVERNMENT'S PROPOSED JURY INSTRUCTIONS

Pursuant to Federal Rule of Criminal Procedure 30, the government respectfully requests the Court to include in its charge to the Jury the following general and special instructions, and further reserves the right to file any other such instructions as may become appropriate during the course of trial.

Respectfully submitted,

ROBERT S. MUELLER, III
Special Counsel

By:     _____/s/_____

Andrew Weissmann
Greg D. Andres
Special Assistant United States Attorneys
Special Counsel's Office

U.S. Department of Justice
950 Pennsylvania Ave., NW
Washington, DC 20530
Phone: (202) 616-0800

Table of Contents

INSTRUCTION NO. 1 ............................................................................................................ 6

   Preliminary Instruction Before Trial ................................................................................. 6

INSTRUCTION NO. 2 .......................................................................................................... 15

   Preliminary Instruction to Jury Where Identity of Alternates Is Not Disclosed ...................... 15

INSTRUCTION NO. 3 .......................................................................................................... 16

   Cautionary Instruction on the Use of the Internet and Publicity ............................................ 16

INSTRUCTION NO. 4 .......................................................................................................... 17

   Furnishing the Jury with a Copy of the Instructions ............................................................ 17

INSTRUCTION NO. 5 .......................................................................................................... 18

   Function of the Court ...................................................................................................... 18

INSTRUCTION NO. 6 .......................................................................................................... 19

   Function of the Jury ......................................................................................................... 19

INSTRUCTION NO. 7 .......................................................................................................... 20

   Jury's Recollection Controls .............................................................................................. 20

INSTRUCTION NO. 8 .......................................................................................................... 21

   Evidence in the Case—Judicial Notice, Stipulations, Depositions ......................................... 21

INSTRUCTION NO. 9 .......................................................................................................... 22

   Statements of Counsel ....................................................................................................... 22

INSTRUCTION NO. 10 ........................................................................................................ 23

   Indictment Not Evidence ................................................................................................... 23

INSTRUCTION NO. 11 ........................................................................................................ 24

   Burden of Proof—Presumption of Innocence ..................................................................... 24

INSTRUCTION NO. 12 ........................................................................................................ 25

   Reasonable Doubt .......................................................................................................... 25

INSTRUCTION NO. 13 ........................................................................................................ 26

   Count 1: Nature of the Offense ........................................................................................ 26

INSTRUCTION NO. 14 ........................................................................................................ 27

   Count 1: Overview of Conspiracy to Defraud the United States ........................................... 27

INSTRUCTION NO. 15 ........................................................................................................ 28

   Count 1: Essential Elements of Conspiracy to Defraud the United States .............................. 28

INSTRUCTION NO. 16 ........................................................................................................ 31

Count 1: Overview of Conspiracy to Commit an Offense Against the United States .............. 31

INSTRUCTION NO. 17 ............................................................................................................. 32

Count 1: Essential Elements of Conspiracy to Commit an Offense Against the United States 32

Elements of the Conspiracy's Objects ..................................................................................... 33

Unanimity—Special—Conspiracy ............................................................................................ 36

INSTRUCTION NO. 18 ............................................................................................................. 38

Count 2: Nature of the Offense ................................................................................................ 38

INSTRUCTION NO. 19 ............................................................................................................. 40

Count 2: Essential Elements of the Offenses Charged ............................................................ 40

Elements of the Conspiracy's Objects ..................................................................................... 41

Unanimity—Special—Money Laundering ................................................................................ 42

INSTRUCTION NO. 20 ............................................................................................................. 44

Count 3: Nature of the Offense ................................................................................................ 44

INSTRUCTION NO. 21 ............................................................................................................. 45

Count 3: Essential Elements of the Offense Charged .............................................................. 45

INSTRUCTION NO. 22 ............................................................................................................. 47

Count 4: Nature of the Offense ................................................................................................ 47

INSTRUCTION NO. 23 ............................................................................................................. 48

Count 4: Essential Elements of the Offense Charged .............................................................. 48

INSTRUCTION NO. 24 ............................................................................................................. 50

Count 5: Nature of the Offense ................................................................................................ 50

INSTRUCTION NO. 25 ............................................................................................................. 51

Count 5: Essential Elements of the Offense Charged .............................................................. 51

INSTRUCTION NO. 26 ............................................................................................................. 54

Count 6: Statute Defining the Offense Charged ...................................................................... 54

INSTRUCTION NO. 27 ............................................................................................................. 56

Count 7: Nature of the Offense ................................................................................................ 56

INSTRUCTION NO. 28 ............................................................................................................. 57

Count 7: Essential Elements of the Offense Charged .............................................................. 57

INSTRUCTION NO. 29 ............................................................................................................. 59

Direct and Circumstantial Evidence ......................................................................................... 59

INSTRUCTION NO. 30 ............................................................................................................. 60

Inadmissible and Stricken Evidence ......................................................................................... 60

INSTRUCTION NO. 31 ............................................................................................................. 61

Law Enforcement Techniques ................................................................................... 61

INSTRUCTION NO. 32 ............................................................................................ 62

Credibility of Witnesses ......................................................................................... 62

INSTRUCTION NO. 33 ............................................................................................ 64

Accomplice's and Cooperator's Testimony ........................................................... 64

INSTRUCTION NO. 34 ............................................................................................ 67

Testimony of Immunized Witnesses (*If Applicable*) ............................................ 67

INSTRUCTION NO. 35 ............................................................................................ 68

Law Enforcement Officer's Testimony ................................................................. 68

INSTRUCTION NO. 36 ............................................................................................ 69

Right of Defendant Not to Testify (*If Applicable*) .............................................. 69

INSTRUCTION NO. 37 ............................................................................................ 70

Defendant as Witness (*If Applicable*) ................................................................... 70

INSTRUCTION NO. 38 ............................................................................................ 71

False or Inconsistent Statement by Defendant ...................................................... 71

INSTRUCTION NO. 39 ............................................................................................ 72

Character of Defendant (*If Applicable*) ................................................................ 72

INSTRUCTION NO. 40 ............................................................................................ 73

Specialized Opinion Testimony (*If Applicable*) .................................................. 73

INSTRUCTION NO. 41 ............................................................................................ 74

Evaluation of Prior Inconsistent Statement of a Witness (*If Applicable*) ................ 74

INSTRUCTION NO. 42 ............................................................................................ 76

Evaluation of Prior Consistent Statement of a Witness ......................................... 76

INSTRUCTION NO. 43 ............................................................................................ 77

Impeachment by Proof of Conviction of a Crime—Witness .................................. 77

INSTRUCTION NO. 44 ............................................................................................ 78

Impeachment by Proof of Conviction of Pending Case, Probation Or Parole (*If Applicable*) . 78

INSTRUCTION NO. 45 ............................................................................................ 79

Attempted Bribery, Coercion or Intimidation of Witness ...................................... 79

INSTRUCTION NO. 46 ............................................................................................ 80

Statements of the Defendant—Substantive Evidence ........................................... 80

INSTRUCTION NO. 47 ............................................................................................ 81

Translation of Foreign Language Document or Recording .................................... 81

INSTRUCTION NO. 48 ............................................................................................ 82

Evidence of Other Crimes Admitted to Show Motive, Identity, or Common Scheme or Plan (*If Applicable*) ................................................................................................................ 82

INSTRUCTION NO. 49 ........................................................................................................ 84

Evidence of Other Crimes Admitted to Show Intent, Absence of Mistake, or Knowledge (*If Applicable*) ................................................................................................................ 84

INSTRUCTION NO. 50 ........................................................................................................ 85

Multiple Counts—One Defendant ...................................................................................... 85

INSTRUCTION NO. 51 ........................................................................................................ 86

Unanimity—General .......................................................................................................... 86

INSTRUCTION NO. 52 ........................................................................................................ 87

Verdict Form Explanation .................................................................................................. 87

INSTRUCTION NO. 53 ........................................................................................................ 88

Proof of State of Mind ....................................................................................................... 88

INSTRUCTION NO. 54 ........................................................................................................ 89

Willfully Causing an Act to be Done ................................................................................. 89

INSTRUCTION NO. 55 ........................................................................................................ 90

"On or About" or "In or Around" Proof ............................................................................ 90

INSTRUCTION NO. 56 ........................................................................................................ 91

Aiding and Abetting ........................................................................................................... 91

INSTRUCTION NO. 1

Preliminary Instruction Before Trial

Before we begin the trial, I want to explain some of the legal rules that will be important in this trial. I want to emphasize that these remarks are not meant to be a substitute for the detailed instructions that I will give at the end of the trial just before you start your deliberations. These preliminary instructions are intended to give you a sense of what will be going on in the courtroom and what your responsibilities as jurors will be.

When you took your seats, you probably noticed that each of you had a notebook and pencil waiting for you. That is because I permit jurors to take notes during trial if they wish. Whether you take notes or not is entirely up to you. Many people find that taking notes helps them remember testimony and evidence; others find it distracts them from listening to the witnesses.

You will be permitted to take your notebooks back with you into the jury room during deliberations. You should remember, however, that your notes are only an aid to your memory. They are not evidence in the case, and they should not replace your own memory of the evidence. Those jurors who do not take notes should rely on their own memory of the evidence and should not be influenced by another juror's notes.

Other than during your deliberations, the notebooks will remain locked in the courtroom during recesses and overnight. You will not be able to take the notebooks with you as you come and go and you will not be permitted to take them home with you overnight. At the end of the trial, when you come back to the courtroom to deliver your verdict, your notebooks will be collected, and the pages torn out and destroyed. No one, including myself, will ever look at any notes you have taken, so you may feel free to write whatever you wish.

Now let me explain briefly some of the procedures we will follow and some of the rules of law that will be important in this case. This is a criminal case that began when a grand jury sitting in this district returned an indictment of the defendant.

The grand jury has charged Paul J. Manafort, Jr., in a seven-count indictment.  Those charges are:

- Conspiring between approximately 2006 and 2017 to defraud and commit offenses against the United States, including conspiring to violate the Foreign Agents Registration Act (FARA), to make false and misleading statements to the Department of Justice, to file false tax returns, and to fail to file with the Department of the Treasury required reports of foreign bank accounts (Count One);

- Conspiring to launder money from approximately 2006 through 2016 (Count Two);

- Acting between approximately 2008 and 2014 as an agent of a foreign principal without registering, in violation of the Foreign Agents Registration Act (FARA) (Count Three);

- In approximately November 2016 and February 2017, making false and misleading statements to the Department of Justice (Counts Four and Five); and

- Between February and April 2018, attempting to tamper with witnesses and conspiring to witness tamper (Count Six and Seven).

An indictment is not evidence of a defendant's guilt.  It is merely the means by which charges are brought in a criminal case.  You should understand clearly that the indictment that I just summarized is not evidence. The indictment is just a formal way of charging a person with a crime in order to bring him/her to trial. You must not think of the indictment as any evidence of the guilt of the defendant, or draw any conclusion about the guilt of the defendant just because he has been indicted.

Every defendant in a criminal case is presumed to be innocent. This presumption of innocence remains with the defendant throughout the trial unless and until he is proven guilty beyond a reasonable doubt. The burden is on the government to prove the defendant guilty beyond a reasonable doubt, and that burden of proof never shifts throughout the trial. The law does not require a defendant to prove his/her innocence or to produce any evidence. If you find that the government has proven beyond a reasonable doubt every element of a particular offense with which the defendant is charged, it is your duty to find him/her guilty of that offense. On the other hand, if you find that the government has failed to prove any element of a particular offense beyond a reasonable doubt, you must find the defendant not guilty of that offense.

As I explain how the trial will proceed, I will refer to the "government" and to the "defense" or the "defendant."  When I mention the "government," I am referring to the prosecutors. When I mention the defendant or the defense, I am referring either to the defendant Paul Manafort or to his attorneys.

As the first step in this trial, the government and the defendant will have an opportunity to make opening statements. The defendant may make an opening statement immediately after the government's opening statement or he may wait until the beginning of the defendant's case, or he may choose not to make an opening statement at all. You should understand that the opening statements are not evidence. They are only intended to help you understand the evidence that the lawyers expect will be introduced.

After the opening statement or statements, the government will put on what is called its case-in-chief. This means that the government will call witnesses to the witness stand and ask them questions. This is called direct examination. When the government is finished, the defense may ask questions. This is called cross-examination. When the defense is finished, the government may

have brief re-direct examination. After the government presents its evidence, the defendant may present evidence, but he is not required to do so. The law does not require a defendant to prove his innocence or to produce any evidence. If the defense does put on evidence, Mr. Downing or his co-counsel will call witnesses to the stand and ask questions on direct examination, Mr. Weissmann or his co-counsel will cross-examine, and Mr. Downing or his co-counsel may have brief re-direct examination. When the defense is finished, the government may offer a rebuttal case, which would operate along the same lines as its case-in-chief.

At the end of all of the evidence, each side will have an opportunity to make a closing argument in support of its case. The lawyers' closing arguments, just like their opening statements, are not evidence in this case. They are only intended to help you understand the evidence.

Finally, at the end of the evidence and after both sides have finished closing arguments, I will tell you in detail about the rules of law that you must follow when you consider what your verdicts shall be. Your verdicts must be unanimous; that is, all twelve jurors must agree on the verdicts.

I want to briefly describe my responsibilities as the judge and your responsibilities as the jury. My responsibility is to conduct this trial in an orderly, fair, and efficient manner, to rule on legal questions that come up in the course of the trial, and to instruct you about the law that applies to this case. It is your sworn duty as jurors to accept and apply the law as I state it to you.

Your responsibility as jurors is to determine the facts in the case. You—and only you—are the judges of the facts. You alone determine the weight, the effect, and the value of the evidence, as well as the credibility or believability of the witnesses. You must consider and weigh the testimony of all witnesses who appear before you. You alone must decide the extent to which you believe any witness.

You must pay very careful attention to the testimony of all of the witnesses because you will not have any transcripts or summaries of the testimony available to you during your deliberations. You will have to rely entirely on your memory and your notes if you choose to take any.

During this trial, I may rule on motions and objections by the lawyers, make comments to lawyers, question the witnesses, and instruct you on the law. You should not take any of my statements or actions as any indication of my opinion about how you should decide the facts. If you think that somehow I have expressed or even hinted at any opinion as to the facts in this case, you should disregard it. The verdict in this case is your sole and exclusive responsibility.

You may consider only the evidence properly admitted in this case. That evidence includes the sworn testimony of witnesses and the exhibits admitted into evidence. Sometimes a lawyer's question suggests the existence of a fact, but the lawyer's question alone is not evidence. If the evidence includes anything other than testimony and exhibits, I will instruct you about these other types of evidence when they are admitted during the trial.

During the trial, if the court or a lawyer makes a statement or asks a question that refers to evidence that you remember differently, you should rely on your memory of the evidence during your deliberations.

The lawyers may object when the other side asks a question, makes an argument, or offers evidence that the objecting lawyer believes is not properly admissible. You must not hold such objections against the lawyer who makes them or the party s/he represents. It is the lawyer's responsibility to object to evidence that they believe is not admissible.

If I sustain an objection to a question asked by a lawyer, the question must be withdrawn, and you must not guess or speculate what the answer to the question would have been. If a question

is asked and answered, and I then rule that the answer should be stricken from the record, you must disregard both the question and the answer in your deliberations. You should follow this same rule if any of the exhibits are stricken.

You are not permitted to discuss this case with anyone until this case is submitted to you for your decision at the end of my final instructions. This means that, until the case is submitted to you, you may not talk about it even with your fellow jurors. This is because we don't want you making decisions until you've heard all the evidence and the instructions of law. In addition, you may not talk about the case with anyone else. It should go without saying that you also may not write about the case electronically through any blog, posting, or other communication, including "social networking" sites such as Facebook or Twitter until you have delivered your verdict and the case is over. This is because you must decide the case based on what happens here in the courtroom, not on what someone may or may not tell you outside the courtroom. I'm sure that, when we take our first recess, you will call home or work and tell them you have been selected for a jury. They will undoubtedly ask what kind of case you're sitting on. You may tell them it is a criminal case, but nothing else. Now, when the case is over, you may discuss any part of it with anyone you wish, but until then, you may not do so.

Although it is a natural human tendency to talk with people with whom you may come into contact, you must not talk to any of the parties, their attorneys, or any witnesses in this case during the time you serve on this jury. If you encounter anyone connected with the case outside the courtroom, you should avoid having any conversation with them, overhearing their conversation, or having any contact with them at all. For example, if you find yourself in a courthouse corridor, elevator, or any other location where the case is being discussed by attorneys, parties, witnesses, or anyone else, you should immediately leave the area to avoid hearing such discussions. If you

do overhear a discussion about the case, you should report that to me as soon as you can. Finally, if you see any of the attorneys or witnesses involved in the case and they turn and walk away from you, they are not being rude; they are merely following the same instruction that I gave to them.

It is very unlikely, but if someone tries to talk to you about the case, you should refuse to do so and immediately let me know by telling the clerk or the marshal. Don't tell the other jurors; just let me know, and I'll bring you in to discuss it.

Between now and when you are discharged from jury duty, you must not provide to or receive from anyone, including friends, co-workers, and family members, any information about your jury service. You may tell those who need to know where you are, that you have been picked for a jury, and how long the case may take. However, you must not give anyone any information about the case itself or the people involved in the case. You must also warn people not to try to say anything to you or write to you about your jury service or the case. This includes face-to-face, phone, or computer communications.

In this age of electronic communication, I want to stress that you must not use electronic devices or computers to talk about this case, including tweeting, texting, blogging, e-mailing, posting information on a website or chat room, or any other means at all. Do not send or accept messages, including email and text messages, about your jury service. You must not disclose your thoughts about your jury service or ask for advice on how to decide any case.

You must decide the facts based on the evidence presented in court and according to the legal principles about which I will instruct you. You are not permitted, during the course of the trial, to conduct any independent investigation or research about the case. That means, for example, you cannot use the Internet to do research about the facts or the law or the people involved in the

case. Research includes something even as simple or seemingly harmless as using the Internet to look up a legal term or view a satellite photo of the scene of the alleged crime.

I want to explain the reasons why you should not conduct your own investigation. All parties have a right to have the case decided only on evidence and legal rules that they know about and that they have a chance to respond to. Relying on information you get outside this courtroom is unfair because the parties would not have a chance to refute, correct, or explain it. Unfortunately, information that we get over the Internet or from other sources may be incomplete or misleading or just plain wrong. It is up to you to decide whether to credit any evidence presented in court and only the evidence presented in court may be considered. If evidence or legal information has not been presented in court, you cannot rely on it.

Moreover, if any of you do your own research about the facts or the law, this may result in different jurors basing their decisions on different information. Each juror must make his or her decision based on the same evidence and under the same rules.

In this case, there may be reports in the newspaper or on the radio, Internet, or television concerning the case while the trial is ongoing. You may be tempted to read, listen to, or watch it. You must not read, listen to, or watch such reports because you must decide this case solely on the evidence presented in this courtroom. If any publicity about this trial inadvertently comes to your attention during trial, do not discuss it with other jurors or anyone else. Just let me or my clerk know as soon after it happens as you can, and I will then briefly discuss it with you.

After I submit the case to you, you may discuss it only when I instruct you to do so, and only in the jury room and only in the presence of all your fellow jurors. It is important that you keep an open mind and not decide any issue in the case until after I submit the entire case to you with my final instructions.

---------------

Authority:  Barbara E. Bergman, *Criminal Jury Instructions for the District of Columbia* (5th ed., 2017 release) ("The Redbook"), Instructions No. 1.102, 1.105.

INSTRUCTION NO. 2

Preliminary Instruction to Jury Where Identity of Alternates Is Not Disclosed

You have probably noticed that there are fourteen (14) of you sitting in the jury box. Only twelve (12) of you will retire to deliberate in this matter. Before any of you even entered the courtroom, we randomly selected the alternates' seats. I will not disclose who the alternate jurors are until the end of my final instructions just before you begin your deliberations. As any seat might turn out to be an alternate's seat, it is important that each of you think of yourselves as regular jurors during this trial, and that all of you give this case your fullest and most serious attention.

---------------

Authority:  Redbook, Instruction No. 1.107.

INSTRUCTION NO. 3

Cautionary Instruction on the Use of the Internet and Publicity

You may not communicate with anyone not on the jury about this case. As I explained earlier, this includes any electronic communication such as emailing or texting or any blogging about the case. In addition, you may not conduct any independent investigation before or during deliberations. This means you may not conduct any research in person or electronically via the Internet or in any other way.

In some cases, there may be reports in the newspaper or on the radio, Internet, or television concerning the case while the trial is going on. If there should be such media coverage in this case, you may be tempted to read, listen to, or watch it. You must not read, listen to, or watch such reports because you must decide this case solely on the evidence presented in this courtroom. If any publicity about this trial inadvertently comes to your attention during trial, do not discuss it with other jurors or anyone else. Just let me or my clerk know as soon after it happens as you can, and I will then briefly discuss it with you.

---------------

Authority:  Redbook, Instruction No. 1.202.

INSTRUCTION NO. 4

Furnishing the Jury with a Copy of the Instructions

I will provide you with a copy of my instructions. During your deliberations, you may, if you want, refer to these instructions. While you may refer to any particular portion of the instructions, you are to consider the instructions as a whole and you may not follow some and ignore others. If you have any questions about the instructions, you should feel free to send me a note. Please return your instructions to me when your verdict is rendered.

---------------

Authority:  Redbook, Instruction No. 2.100.

INSTRUCTION NO. 5

Function of the Court

My function is to conduct this trial in an orderly, fair, and efficient manner; to rule on questions of law; and to instruct you on the law that applies in this case.

It is your duty to accept the law as I instruct you. You should consider all the instructions as a whole.  You may not ignore or refuse to follow any of them.

---------------

Authority:  Redbook, Instruction No. 2.101.

INSTRUCTION NO. 6

Function of the Jury

Your function, as the jury, is to determine what the facts are in this case. You are the sole judges of the facts. While it is my responsibility to decide what is admitted as evidence during the trial, you alone decide what weight, if any, to give to that evidence. You alone decide the credibility or believability of the witnesses.

You should determine the facts without prejudice, fear, sympathy, or favoritism. You should not be improperly influenced by anyone's race, ethnic origin, or gender. Decide the case solely from a fair consideration of the evidence.

You may not take anything I may have said or done as indicating how I think you should decide this case. If you believe that I have expressed or indicated any such opinion, you should ignore it. The verdict in this case is your sole and exclusive responsibility.

---------------

Authority:  Redbook, Instruction No. 2.102.

INSTRUCTION NO. 7

Jury's Recollection Controls

If any reference by me or the attorneys to the evidence is different from your own memory of the evidence, it is your memory that should control during your deliberations.

---------------

Authority:  Redbook, Instruction No. 2.103.

INSTRUCTION NO. 8

Evidence in the Case—Judicial Notice, Stipulations, Depositions

During your deliberations, you may consider only the evidence properly admitted in this trial. The evidence in this case consists of the sworn testimony of the witnesses, the exhibits that were admitted into evidence, the facts of which I took judicial notice, and the facts and testimony stipulated to by the parties.

I may take what is called "judicial notice" of public acts, places, facts, and events that I consider to be matters of common knowledge or matters that can be determined easily through undisputed sources. In this case, I took judicial notice of [describe fact of which the court took judicial notice]. When I take judicial notice of a particular fact, you may, if you choose to do so, regard that fact as proven evidence. Because you are the sole judges of the facts, however, you are not required to accept any fact that is judicially noted.

During the trial, you were told that the parties had stipulated—that is, agreed—to certain facts. You should consider any stipulation of fact to be undisputed evidence.

During the trial, you were told that the parties had stipulated—that is, agreed—to what testimony [name of witness] would have given if s/he had testified in this case. You should consider this stipulated testimony to be exactly what s/he would have said had s/he testified here.

When you consider the evidence, you are permitted to draw, from the facts that you find have been proven, such reasonable inferences as you feel are justified in the light of your experience. You should give any evidence such weight as in your judgment it is fairly entitled to receive.

---------------

Authority:  Redbook, Instruction No. 2.104.

21

INSTRUCTION NO. 9

Statements of Counsel

The statements and arguments of the lawyers are not evidence. They are only intended to assist you in understanding the evidence. Similarly, the questions of the lawyers are not evidence.

---------------

Authority:  Redbook, Instruction No. 2.105.

INSTRUCTION NO. 10

Indictment Not Evidence

The indictment is merely the formal way of accusing a person of a crime. You must not consider the indictment as evidence of any kind—you may not consider it as any evidence of Mr. Manafort's guilt or draw any inference of guilt from it.


---------------

Authority:  Redbook, Instruction No. 2.106.

23

INSTRUCTION NO. 11

Burden of Proof—Presumption of Innocence

Every defendant in a criminal case is presumed to be innocent. This presumption of innocence remains with the defendant throughout the trial unless and until the government has proven he is guilty beyond a reasonable doubt. This burden never shifts throughout the trial. The law does not require Mr. Manafort to prove his innocence or to produce any evidence at all. If you find that the government has proven beyond a reasonable doubt every element of a particular offense with which Mr. Manafort is charged, it is your duty to find him guilty of that offense. On the other hand, if you find the government has failed to prove any element of a particular offense beyond a reasonable doubt, it is your duty to find Mr. Manafort not guilty of that offense.


---------------

Authority:  Redbook, Instruction No. 2.107.

INSTRUCTION NO. 12

Reasonable Doubt

The government has the burden of proving Mr. Manafort guilty beyond a reasonable doubt. In civil cases, it is only necessary to prove that a fact is more likely true than not, or, in some cases, that its truth is highly probable. In criminal cases such as this one, the government's proof must be more powerful than that. It must be beyond a reasonable doubt. Reasonable doubt, as the name implies, is a doubt based on reason—a doubt for which you have a reason based upon the evidence or lack of evidence in the case. If, after careful, honest, and impartial consideration of all the evidence, you cannot say that you are firmly convinced of the defendant's guilt, then you have a reasonable doubt.

Reasonable doubt is the kind of doubt that would cause a reasonable person, after careful and thoughtful reflection, to hesitate to act in the graver or more important matters in life. However, it is not an imaginary doubt, nor a doubt based on speculation or guesswork; it is a doubt based on reason. The government is not required to prove guilt beyond all doubt, or to a mathematical or scientific certainty. Its burden is to prove guilt beyond a reasonable doubt.

---------------

Authority:  Redbook, Instruction No. 2.108.

INSTRUCTION NO. 13

Count 1: Nature of the Offense

Count One of the superseding indictment charges that from in or about and between 2006 and 2017 in the District of Columbia and elsewhere, the defendant knowingly and intentionally conspired to defraud the United States by impeding, impairing, obstructing, and defeating the lawful governmental functions of a government agency, namely the Department of Justice and the Treasury, and to commit offenses against the United States.

A conspiracy is a kind of criminal partnership—a combination or agreement of two or more persons to join together to accomplish some unlawful purpose.  There are two types of conspiracy are charged in Count One: first, the defendant is accused of having been a member of a conspiracy to defraud the United States government, and, second, the defendant is accused of having been a member of a conspiracy to violate a number of federal laws.  I will explain both of these charges in more detail.

--------------

Authority:  Superseding Indictment; 2B O'Malley, Grenig and Lee, *Federal Jury Practice and Instructions*, § 67:13 (6th ed. updated through February 2018).

INSTRUCTION NO. 14

Count 1: Overview of Conspiracy to Defraud the United States

As to the first type of conspiracy charged in Count 1, the defendant is charged with conspiring to defraud the United States. It is against the law to agree with someone to defraud the United States or any of its agencies. Congress has deemed it appropriate to make a conspiracy, standing alone, a separate crime, even if it is not successful. This is because collective criminal activity poses a greater potential threat to the public's safety and welfare than individual conduct and increases both the likelihood of success of a particular criminal venture.

In this regard, the charge of conspiracy to defraud the government does not mean that one of the illegal objects must be to cause the government to suffer a loss of money or property as a consequence of the conspiracy. It would also be a conspiracy to defraud if one of the objects was to obstruct, interfere, impair, impede or defeat the legitimate functioning of the government through fraudulent or dishonest means.

---------------

Authority: 2 Hon. Leonard B. Sand, *et al.*, *Modern Federal Jury Instructions-Criminal*, Instruction 19-12 (2018) (modified to eliminate last clause).

INSTRUCTION NO. 15

Count 1: Essential Elements of Conspiracy to Defraud the United States

For the first type of conspiracy charged in Count One, the Defendant can be found guilty of this crime only if all the following elements are proved beyond a reasonable doubt:

(1)     First, between approximately 2006 and 2017, an agreement existed between two or more people to defraud the United States.  The agreement does not have to be a formal agreement or plan, in which everyone involved sat down together and worked out the details. On the other hand, merely because people get together and talk about common interests, or do similar things, does not necessarily show that an agreement exists. It is enough that the government proves beyond a reasonable doubt that there was a common understanding among those who were involved to commit the crime.  So, the first thing that must be shown is the existence of an agreement.

(2)     Second, the defendant intentionally joined in that agreement.  It is not necessary to find that he agreed to all the details of the crime, or that he knew the identity of all the other people the government has claimed were participating in the agreement.  A person may become a member of a conspiracy even if that person agrees to play only a minor part, as long as that person understands the unlawful nature of the plan and voluntarily and intentionally joins in it with the intent to advance or further the unlawful object of the conspiracy.  But mere presence at the scene of the agreement or of the crime, or merely being with the other participants, does not show that the defendant knowingly joined in the agreement. Also, unknowingly acting in a way that helps the participants, or merely knowing about the agreement itself, without more, does not make the defendant part of the conspiracy.  So the second thing that must be shown is that Mr. Manafort was part of the conspiracy.

28

(3)     Third, one of the people involved in the conspiracy did something for the purpose of
carrying out the conspiracy.  This something is referred to as an overt act.  An "overt act"
is any transaction or event, even one which may be entirely innocent when viewed alone,
that a conspirator commits to accomplish some object of the conspiracy.  In order to sustain
its burden of proof on this element under Count One of the indictment, the government
must prove beyond a reasonable doubt that one of the members of the alleged conspiracy
or agreement knowingly performed at least one overt act, that this overt act was performed
during the existence or life of the conspiracy between 2006 and 2017, and was done to
somehow further the goal of the conspiracy or agreement. The charged overt acts are: (a)
the use of a series of overseas and domestic corporate entities, (b) wiring money from
offshore accounts controlled or beneficially owned by Mr. Manafort into the United States
to pay for goods, services and real estate without paying taxes on that income, (c) a multi-
part international lobbying scheme on behalf of foreign principals that involved the
retention of lobbying firms, law firms, and public relations firms to perform work in the
United States, (d) the retention of a group of former European politicians who lobbied in
the United States, (e) the concealment of these activities, and (f) the concealment of
overseas accounts used in the charged schemes.  Although you must unanimously agree
that the same overt act was committed, the government is not required to prove more than
one of the overt acts charged.

A conspiracy can be proved indirectly, by facts and circumstances that lead to a conclusion
that a conspiracy existed. The government must prove that such facts and circumstances existed
and that they lead to the conclusion that a conspiracy existed.

In determining whether a conspiracy between two or more persons existed and whether Mr. Manafort was one of its members, you may consider the acts and the statements of any other member of the conspiracy as evidence against Mr. Manafort whether done in or out of his presence while the conspiracy existed. When persons enter into an agreement to commit a crime, they become agents for each other so that everything which is said or done by one of them in furtherance of that purpose is deemed to be the statement of all who have joined in that conspiracy and is evidence against all of the conspirators. However, statements of any conspirator which are made before its existence or after its termination may be considered as evidence only against the person making such statements.

In summary, a conspiracy is a kind of partnership in crime. For any defendant to be convicted of the crime of conspiracy, the government must prove three things beyond a reasonable doubt: first, that there was an agreement to defraud the United States; second, that the defendant intentionally joined in that agreement; and third, that one of the people involved in the conspiracy did one of the overt acts charged.

---------------

Authority:  Redbook, Instruction 7.102 (basic conspiracy instruction); *United States v. Dean*, 55 F.3d 640, 647 (D.C. Cir. 1995) (elements); *United States v. Treadwell*, 760 F.2d 327, 333 (D.C. Cir. 1985) (same); 1 Sand, *et al.*, *Modern Federal Jury Instructions-Criminal*, Chapter 19 (2018). Alternatively, in lieu of a summary of the overt acts, the Court could read the alleged overt acts for Count 1, which are contained within paragraphs 8–11,14–18, 20–31, 35–36, and 45.

INSTRUCTION NO. 16

Count 1: Overview of Conspiracy to Commit an Offense Against the United States

As to the second type of conspiracy charged in Count One, the defendant is charged with conspiring with others to commit four felony offenses: (1) the offense of acting, and causing and aiding and abetting others to act, as unregistered agents of a foreign principal, in violation of the Foreign Agents Registration Act (FARA); (2) the offense of making false and misleading statements of material fact, or misleading omissions, in documents filed with the Attorney General under the provisions of FARA; (3) the offense of making materially false statements in two letters to the Department of Justice; and (4) the offense of failing to file required reports of foreign bank accounts (FBAR) with the Department of the Treasury.

The crime of conspiracy to violate federal law is an independent offense. It is against the law to agree with someone to commit the crimes of acting as a foreign agent, making false statements under the FARA statute, to make false statements to the Department of Justice, and to fail to file an FBAR.  The charge of conspiracy to commit these four violations of federal law is thus a separate charge from the actual violations of any of these specific federal laws, which Mr. Manafort is separately charged with violating in Counts Three, Four, and Five of the indictment.

The law refers to the actual violations of the specific federal laws as "substantive crimes." Indeed, you may find the defendant guilty of the crime of conspiracy to commit an offense against the United States even though the substantive crime that was the object of the conspiracy was not actually committed.  The government is not required to prove that the objective was achieved.

---------------

Authority:  Superseding Indictment; Redbook, Instruction 7.102.

INSTRUCTION NO. 17

Count 1: Essential Elements of Conspiracy to Commit an Offense Against the United States

For the second type of conspiracy charged in Count One, I will first describe the elements of the second type of conspiracy charged in Count One, then describe the crimes that the government alleges were the objects of the conspiracy.

To find the defendant guilty of the second conspiracy charged in Count One, you must be convinced that the government has proved beyond a reasonable doubt each of the following elements:

(1)    First, that between 2006 and 2017, an agreement existed between two or more people in some way agreed to try to commit one or more of the specific offenses described in the indictment.  As I mentioned before, a conspiracy does not have to be a formal agreement or plan.

(2)    Second, the defendant intentionally joined in that agreement.  Again, it is not necessary to find that the defendant agreed to all the details of the crime, or that he knew the identity of all the other people the government has claimed were participating in the agreement.

(3)    Third, one of the people involved in the conspiracy did something for the purpose of carrying out the conspiracy.  For the second conspiracy charged in Count One, the charged overt acts include (a) the use of a series of overseas and domestic corporate entities, (b) wiring money from offshore accounts controlled beneficially owned or by Manafort into the United States to pay for goods, services and real estate without paying taxes on that income, (c) a multi-part international lobbying scheme on behalf of foreign principals that involved the retention of lobbying firms, law firms, and public relations firms to perform work in the United States, (d) the retention of a group of former European politicians who lobbied in the United States, (e) the concealment of these activities, and (f) the concealment

32

of overseas accounts used in the charged schemes.  The government need not prove that all of these overt acts were taken, but in order to find the defendant guilty, you must all agree on at least one overt act that was done.

A conspiracy can be proved indirectly, by facts and circumstances that lead to a conclusion that a conspiracy existed. The government must prove that such facts and circumstances existed and that they lead to the conclusion that a conspiracy existed.

In determining whether a conspiracy between two or more persons existed and whether Mr. Manafort was one of its members, you may consider the acts and the statements of any other member of the conspiracy as evidence against Mr. Manafort whether done in or out of his presence while the conspiracy existed. When persons enter into an agreement to commit a crime, they become agents for each other so that everything which is said or done by one of them in furtherance of that purpose is deemed to be the statement of all who have joined in that conspiracy and is evidence against all of the conspirators. However, statements of any conspirator which are made before its existence or after its termination may be considered as evidence only against the person making such statements.

### Elements of the Conspiracy's Objects

In Count One, the government has alleged the defendant agreed to violate multiple federal crimes.  I will now provide you with some information about those specific laws.

In Count One, the government has alleged that one object of the conspiracy was to act as an unregistered agent of a foreign principal.  For Count One, the government does not have to prove that the defendant committed this crime; only that this was an object of the conspiracy.  In considering whether this was an object of the conspiracy, the following legal principles and definitions apply.  A person willfully violates the FARA requirements if:

(1)     The defendant acted in the United States as an agent of a foreign principal;

(2)     The defendant acted without registering with the Attorney General; and

(3)     The defendant acted willfully.

I will provide further instruction about the relevant FARA laws in a moment.

The government has alleged that another object of the conspiracy charged in Count One was to make false and misleading statements in connection with a FARA Filing.  For Count One, the government does not have to prove that the defendant committed this crime; only that this was an object of the conspiracy.   In considering whether this was an object of the conspiracy, the following legal principles and definitions apply.  The elements of the crime of making false and misleading FARA statements are:

(1)     The defendant made a false statement of a material fact, or omitted a material fact necessary to make the statement not misleading;

(2)     The defendant made such a statement in a document filed with or furnished to the Attorney General under FARA; and

(3)     The defendant acted willfully.

I will provide further instruction about the relevant FARA laws in a moment.

The government has alleged that another object of the conspiracy charged in Count One was to make false statements in a matter within the jurisdiction of the executive branch.  For Count One, the government does not have to prove that the defendant committed this crime; only that this was an object of the conspiracy.  In considering whether this was an object of the conspiracy, the following legal principles and definitions apply.  The elements of the crime of making false statements are:

(1)     The defendant made a statement or representation;

(2)     The statement was false, fictitious, or fraudulent;

(3)     The statement was material;

(4)     The defendant acted knowingly and willfully; and

(5)     That statement or representation was made in any matter within the jurisdiction of the
        executive branch of the United States government.

I will provide further instruction about this law in a moment.

The government has alleged that the final object of the conspiracy was to willfully fail to
file reports of bank and financial accounts, also known as an "FBAR" requirement.  It is a federal
crime to willfully fail to report one's foreign bank and financial accounts if the aggregate value of
all such accounts exceeds $10,000 during a single year.  The government does not have to prove
that the defendant committed this crime; only that this was an object of the conspiracy.  In
considering whether this was an object of the conspiracy, the following legal principles and
definitions apply.  A person willfully violates the FBAR requirements if:

(1)     The person was a U.S. person, that is, a U.S. citizen or resident alien, or an entity organized
        under Federal or state law.

(2)     The person had a financial interest in, and signature authority over, a bank, securities, or
        other financial account in a foreign country.

(3)     The aggregate value of all such accounts exceeded $10,000 at any time during the calendar
        year.

(4)     The person failed to report such account on FinCEN Form 114, a Report of Foreign Bank
        and Financial Accounts, by the annual deadline date; and

(5)     The person willfully failed to report the account.

A person acts "willfully" if he acts with a bad purpose to disobey or disregard the law.  To act "willfully," a person must have knowledge that his conduct was unlawful, but he need not know the specific provision that the conduct violates.

### Unanimity—Special—Conspiracy

In Count One, the defendant has been charged with one count of conspiracy against the United States. You have heard evidence of more than one act or incident related to this count. Specifically, you have heard evidence regarding an alleged conspiracy to defraud the government, to violate FARA, to make false statements under the FARA statute, to make false statements to the government, and to fail to disclose foreign accounts.

You may find the defendant guilty on this count if the government proves beyond a reasonable doubt that he participated in a conspiracy with any one of these objects.  However, in order to return a guilty verdict on this count, you must all agree about which object the defendant conspired to commit.  That is to say, you must all agree either that the defendant conspired to defraud the government, or you must all agree that he conspired to violate FARA, or you must all agree that he conspired to make false statements under the FARA statute, or you must all agree that he conspired to make false statements to the government, or you must all agree that he conspired to fail to disclose foreign accounts.

You may also all agree that the defendant agreed to commit more than one of the crimes, in which case you should indicate as such in verdict form I will discuss with you.

---------------

Authority:  Redbook, Instruction No. 7.102, 2.406 (unanimity); *United States v. Hussain*, No. 1:11-CR-63, 2012 WL 10688321 (D.D.C. Jan. 18, 2012) (modifying Redbook general conspiracy instruction); 31 U.S.C. §§ 5314 and 5322 (Failure To File Reports of Foreign Bank and Financial Accounts).  Alternatively, in lieu of a summary of the overt acts, the Court could read the alleged overt acts for Count 1, which are contained within paragraphs 8–11,14–18, 20–31, 35–36, and 45.

INSTRUCTION NO. 18

Count 2: Nature of the Offense

Count Two of the superseding indictment charges that from in or around and between 2006 and 2016, within the District of Columbia and elsewhere, the defendant did knowingly and intentionally conspire to (a) transport, transmit, and transfer monetary instruments and funds from places outside the United States to and through places in the United States and from places in the United States to and through places outside the United States, with the intent to promote the carrying on of a felony violation of FARA; (b) to conduct financial transactions knowing that the property represented or involved proceeds of a felony violation of FARA, and knowing that such financial transactions were designed to disguise the nature, location, source, ownership, or control of the proceeds of a felony violation of the Foreign Agents Registration Act; and (c) to conduct financial transactions knowing that the property represented or involved proceeds of a felony violation of FARA, and knowing that such financial transactions were entered into with the intent to evade federal income taxes.

Count Two of the indictment charges a conspiracy to commit three different types of money laundering, each of which is a crime.

First, the indictment alleges that the defendant conspired to conduct certain financial transactions intended to promote a felony violation of the Foreign Agents Registration Act.  This crime is sometimes called "promotional" money laundering.

Second, the indictment alleges that the defendant conspired to conduct certain financial transactions to conceal the proceeds of a felony violation of the Foreign Agents Registration Act. This crime is sometimes call "concealment" money laundering.

Third, the indictment alleges that the defendant conspired to conduct certain financial transactions to evade the taxation of the proceeds of a felony violation of the Foreign Agents Registration Act. This crime is sometimes called "tax-evasion" money laundering.

I have referred to a felony violation of the Foreign Agents Registration Act. Count Three, which I will instruct you on in a moment, allege a felony violation of the Foreign Agents Registration Act.

--------------

Authority: Indictment; 18 U.S.C. § 1956(h).

INSTRUCTION NO. 19

Count 2: Essential Elements of the Offenses Charged

The elements of conspiracy to commit money laundering, each of which the government must prove beyond a reasonable doubt, are that:

(1)     Two or more people agreed to try to accomplish a common and unlawful plan to commit money laundering in violation of 18 U.S.C. § 1956.

(2)     The defendant voluntarily joined the conspiracy knowing its unlawful purpose and with an intent to further that purpose.

Unlike for the conspiracy charged in Count One, the government need not prove an "overt act" to prove the money-laundering conspiracy charged in Count Two.

A conspiracy can be proved indirectly, by facts and circumstances that lead to a conclusion that a conspiracy existed. The government must prove that such facts and circumstances existed and that they lead to the conclusion that a conspiracy existed.

In determining whether a conspiracy between two or more persons existed and whether Mr. Manafort was one of its members, you may consider the acts and the statements of any other member of the conspiracy as evidence against Mr. Manafort whether done in or out of his presence while the conspiracy existed. When persons enter into an agreement to commit a crime, they become agents for each other so that everything which is said or done by one of them in furtherance of that purpose is deemed to be the statement of all who have joined in that conspiracy and is evidence against all of the conspirators. However, statements of any conspirator which are made before its existence or after its termination may be considered as evidence only against the person making such statements.

40

<u>Elements of the Conspiracy's Objects</u>

The money laundering statute, 18 U.S.C. § 1956, can be violated in the three ways mentioned above.  But the evidence need not establish that these violations actually occurred to prove a conspiracy, so long as the unlawful agreement and intent set forth above are shown.

The first type of violation, promotional money laundering, has the following elements:

(1)     First, a person knowingly transmitted or transferred monetary instruments or funds to a place in the United States from or through a place outside the United States.

(2)     Second, a person acted with the intent to promote the carrying on of a specified unlawful activity—that is, he conducted or attempted to conduct the financial transaction for the purpose of making easier or helping to bring about the specified unlawful activity.

The phrase "specified unlawful activity" is defined in federal law, and it includes a felony violation of the Foreign Agents Registration Act (FARA).

The second type of violation, concealment money laundering, has the following elements:

(1)     First, a person conducted or attempted to conduct a financial transaction.

(2)     Second, a person knew the property involved in the transaction represented the proceeds of some form of unlawful activity.

(3)     Third, the property in fact represented the proceeds of a specified unlawful activity, here, a felony violation of the Foreign Agents Registration Act.

(4)     Fourth, a person knew that the financial transaction was designed in whole or part to conceal or disguise the nature, location, source, ownership, or control of the proceeds of specified unlawful activity.

The term "proceeds" means any property derived from or obtained or retained, directly or indirectly, through some form of unlawful activity, including the gross receipts of such activity. Proceeds can be any kind of property, not just money.

41

The third type of violation, tax evasion money laundering, has the following elements:

(1)     First, the person conducted or attempted to conduct a financial transaction.

(2)     Second, the person knew the property involved in the transaction represented the proceeds of some form of unlawful activity.

(3)     Third, the property in fact represented the proceeds of specified unlawful activity, here, a felony violation of the Foreign Agents Registration Act.

(4)     Fourth, the person, acted with the intent to engage in conduct constituting a violation of 26 U.S.C. § 7201 (tax evasion) or 26 U.S.C. § 7206 (tax perjury).

For purposes of the fourth element, an intent to evade taxes need not be the defendant's sole purpose in conducting the transaction.

<u>Unanimity—Special—Money Laundering</u>

In Count Two, the defendant has been charged with one count of conspiracy to launder money. You have heard evidence of more than one act or incident related to this count. Specifically, you have heard evidence regarding the defendant's alleged conspiracy to engage in certain financial transactions to promote a felony violation of the Foreign Agents Registration Act; his alleged conspiracy to engage in certain financial transactions to conceal the proceeds of a felony violation of the Foreign Agents Registration Act; and his alleged conspiracy to engage in certain financial transactions to evade paying income taxes on the proceeds of a felony violation of the Foreign Agents Registration Act.

You may find the defendant guilty on this count if the government proves beyond a reasonable doubt that the defendant committed any one of these incidents. However, in order to return a guilty verdict on this count, you must all agree about which incident the defendant committed. That is to say, in order to return a guilty verdict on this count, either you must all agree that the defendant conspired to engage in certain financial transactions to promote a felony

violation of the Foreign Agents Registration Act; or you must all agree that he conspired to engage

in certain financial transactions to conceal the proceeds of a felony violation of the Foreign Agents

Registration Act; or you must all agree that he conspired to engage in certain financial transactions

to evade income taxes on the proceeds of a felony violation of the Foreign Agents Registration.

You may also all agree that the defendant agreed to commit more than one of the crimes,

in which case you should indicate as such in verdict form I will discuss with you.

--------------

Authority:   Eleventh Circuit Pattern Jury Instructions (Criminal Cases) O74.5 (2016); Ninth
Circuit Model Criminal Jury Instruction 8.148; 3 Sand, *et al.*, *Modern Federal Jury Instructions-*
*Criminal* 50A-2, 50A-6, 50A-12; *Whitfield v. United States*, 543 U.S. 209 (2005) (no overt act
needed); Eleventh Cir. Pattern Instr. O74.2 (elements and meaning of "concealment"); Eleventh
Cir. Pattern Instr. O74.3 (elements and meaning of "promote"); *United States v. Zanghi*, 189 F.3d
71, 77-78 & n.5 (1st Cir. 1999) (intent to evade taxes need not be the sole purpose); Red Book,
Instruction 2.406 (unanimity); 18 U.S.C. § 1956(c)(9) (definition of "proceeds").

INSTRUCTION NO. 20

Count 3: Nature of the Offense

Count Three of the superseding indictment charges that between 2008 and 2014, the defendant knowingly and willfully acted as an agent of a foreign principal, and caused and aided and abetted Companies A, B, and C, and others, including former senior foreign politicians, to act as agents of a foreign principal, to wit, the Government of Ukraine, the Party of Regions, and Yanukovych, without registering with the Attorney General as required by law.

--------------

Authority:  Superseding Indictment.  The names of Companies A, B, and C should be inserted at the time the instructions should be given.

44

INSTRUCTION NO. 21

Count 3: Essential Elements of the Offense Charged

The elements of the crime of acting as an unregistered agent of a foreign principal, each of which the government must prove beyond a reasonable doubt, are that:

(1)    First, the defendant acted in the United States as an agent of a foreign principal.

(2)    Second, the defendant acted without registering with the Attorney General.

(3)    Third, the defendant acted willfully.

The term "foreign principal" includes the government of a foreign country, a foreign political party, and entities—such as corporations, partnerships, or organizations—that are organized under the laws of or have their principal place of business in a foreign country.

A defendant "acts as an agent of a foreign principal" in the United States if, either "directly or through any other person," he  (i) engages in political activities for or in the interests of such foreign principal, which includes attempts to influence federal officials or the public on foreign or domestic policy; (ii) acts as public relations counsel, publicity agent, information-service employee or political consultant for or in the interests of such foreign principal; (iii) solicits, collects, disburses, or dispenses contributions, loans, money, or other things of value for or in the interest of such foreign principal; or (iv) represents the interests of such foreign principal before any federal agency or official.

The term "agent" encompasses a person who serves as a representative, employee, or servant or in any other capacity at the order, request, or under the direction or control of a foreign principal, or person any of whose activities are directly or indirectly supervised, directed, controlled, financed, or subsidized in whole or in major part by a foreign principal.

A defendant acts "willfully" if he acts with a bad purpose to disobey or disregard the law. To act "willfully," a defendant must have knowledge that his conduct was unlawful, but he need not know the specific provision that the conduct violates.

---------------

Authority:  22 U.S.C. §§ 611, 612, 618 (FARA definitions); *Bryan v. United States*, 524 U.S. 184 (1998) (definition of willfulness).

INSTRUCTION NO. 22

Count 4: Nature of the Offense

Count Four of the superseding indictment charges that on November 23, 2016, and February 10, 2017, within the District of Columbia and elsewhere, the defendant, knowingly and willfully caused to be made a false statement of a material fact, and omitted a material fact necessary to make the statements therein not misleading, in a document filed with and furnished to the Attorney General under the provisions of FARA.

--------------

Authority:  Superseding Indictment.

INSTRUCTION NO. 23

Count 4: Essential Elements of the Offense Charged

The elements of the crime of making false and misleading FARA statements, each of which the government must prove beyond a reasonable doubt, are that:

(1)     First, the defendant made a false statement of a material fact, or omitted a material fact necessary to the make the statement not misleading.

(2)     Second, the defendant made such a statement in a document filed with or furnished to the Attorney General under FARA; and

(3)     Third, the defendant acted willfully.

For this offense, a statement is "material" if it has a natural tendency to influence or is capable of influencing the decision of the decisionmaker to which it was addressed.

A defendant acts "willfully" if he acts with a bad purpose to disobey or disregard the law. To act "willfully," a defendant must have knowledge that his conduct was unlawful, but he need not know the specific provision that the conduct violates.

Unanimity—Special—FARA False Statements

In Count Four, the defendant has been charged with one count of making false and misleading statements. You have heard evidence of more than one statements related to this count. Specifically, you have heard about multiple statements made in two submissions contained within documents filed with the Attorney General under the provisions of FARA.

You may find the defendant guilty on this count if the government proves beyond a reasonable doubt that the defendant willfully made any of these false or misleading statements. However, in order to return a guilty verdict on this count, you must all agree about which statement was willfully false or misleading.

48

---------------

Authority:  22 U.S.C. §§ 612 & 618(a)(2); Redbook, Instruction 2.406 (unanimity).

INSTRUCTION NO. 24

Count 5: Nature of the Offense

Count Five of the superseding indictment charges that on November 23, 2016, and February 10, 2017, within the District of Columbia and elsewhere, the defendant, knowingly and willfully did cause another: to falsify, conceal, and cover up by a scheme and device a material fact; to make a materially false, fictitious, and fraudulent statement and representation; and to make and use a false writing and document knowing the same to contain a materially false, fictitious, and fraudulent statement.

--------------

Authority:  Superseding Indictment.

INSTRUCTION NO. 25

Count 5: Essential Elements of the Offense Charged

The federal statute covering false statements to the government can be violated in two ways relevant to the offense charged in Count Five.

The elements of the first version of the offense, each of which the government must prove beyond a reasonable doubt, are that:

(1)    The defendant made a statement or representation;

(2)    The statement was false, fictitious, or fraudulent;

(3)    The statement was material;

(4)    The defendant acted knowingly and willfully; and

(5)    That statement or representation was made in any matter within the jurisdiction of the executive branch of the United States government.

The elements of the third version of the offense, each of which the government must prove beyond a reasonable doubt, are that:

(1)    The defendant used a writing or document;

(2)    The writing or document contained a false, fictitious, or fraudulent statement or representation;

(3)    The statement or representation was material;

(4)    The defendant the defendant knew that the writing contained a false, fictitious or fraudulent statement or entry, and knowingly and willfully used said writing or document; and

(5)    The document or writing was used in a matter within the jurisdiction of the executive branch of the United States government.

For this offense, a statement is "material" if it has a natural tendency to influence or is capable of influencing the decision of the decisionmaker to which it was addressed.

A defendant acts "knowingly and willfully" if he acts knowing that the statement was false, fictitious, or fraudulent and knowing that his conduct was unlawful, even if he does not know the specific provision that the conduct violates.

Unanimity—Special—False Statements

In Count Five, the defendant has been charged with one count of making false statements. You have heard evidence of more than one statement related to this count.  Specifically, you have heard about statements in two submissions made to the Department of Justice.

You may find the defendant guilty on this count if the government proves beyond a reasonable doubt that the defendant willfully made any of these false, fictitious, or fraudulent statements.  However, in order to return a guilty verdict on this count, you must all agree about which statement was willfully false or misleading.

--------------

Authority:  18 U.S.C. § 1001(a)(2) and (a)(3); 2 Hon. Leonard B. Sand, et al., *Modern Federal Jury Instructions-Criminal*, Instructions 36-9, 36-15 (2018); Redbook, Instruction 2.406 (unanimity).

INSTRUCTION NO. 26

Count 6: Nature of the Offense

Count Six of the superseding indictment charges that between February 23, 2018, and April

2018, the defendant knowingly and intentionally attempted to corruptly persuade another person

with intent to influence, delay, and prevent the testimony of any person in an official proceeding.

--------------

Authorities:  Superseding Indictment.

INSTRUCTION NO. 27

Count 6: Essential Elements of the Offense Charged

The elements of the crime of witness tampering, each of which the government must prove beyond a reasonable doubt, are that:

(1)     First, on or about the date charged, the defendant corruptly persuaded another person, or attempted to do so.

(2)     Second, the defendant acted knowingly.

(3)     Third, the defendant acted with the intent to influence, delay, or prevent the testimony of that person in an official proceeding.

The word "knowingly" means that the act was done voluntarily and intentionally with the knowledge that it was wrong, and not because of mistake or accident.  The word "corruptly" means that the act was done dishonestly and with the intent to obtain an improper advantage.  To engage in corrupt persuasion "knowingly," the defendant must be conscious that he is engaging in wrongdoing.

For a defendant to have "attempted" to commit this offense, the defendant must intend to commit the crime of witness tampering, and also must do an act constituting a substantial step toward the commission of that crime.   A "substantial step" is an act that goes beyond mere preparation and that is reasonably adapted to accomplishing the crime.

An "official proceeding" is a proceeding before a federal court, a federal judge, the United States Congress or a federal agency.  The "official proceeding" need not be pending at the time of the defendant acts, but that proceeding must at least be one that is foreseen by the defendant.

---------------

Authority:  18 U.S.C. § 1512(b)(1); *Arthur Andersen LLP v. United States*, 544 U.S. 696, 704–08 (2005); Redbook, Instruction 7.101 (attempt requires "substantial step").

INSTRUCTION NO. 28

Count 7: Nature of the Offense

Count Six of the superseding indictment charges that between February 23, 2018, and April 2018, both dates being approximate and inclusive, within the District of Columbia and elsewhere, the defendant knowingly and intentionally conspired to corruptly persuade another person, to wit: Persons D1 and D2, with intent to influence, delay, and prevent the testimony of any person in an official proceeding.

--------------

Authority:  Superseding Indictment.  The names of Persons D1 and D2 should be inserted at the time the instructions should be given.

INSTRUCTION NO. 29

Count 7: Essential Elements of the Offense Charged

As explained above, a conspiracy is a kind of criminal partnership—a combination or agreement of two or more persons to join together to accomplish some unlawful purpose.  The government is not required to prove that the objective was achieved.

The elements of conspiracy to tamper with witnesses, each of which the government must prove beyond a reasonable doubt, are that:

(1)     First, an agreement existed between two or more persons to influence, through corrupt persuasion, the testimony of another person.

(2)     Second, the defendant knew the agreement.

(3)     Third, the defendant intentionally joined the conspiracy intending to further its unlawful end.

A conspiracy can be proved indirectly, by facts and circumstances that lead to a conclusion that a conspiracy existed. The government must prove that such facts and circumstances existed and that they lead to the conclusion that a conspiracy existed.

In determining whether a conspiracy between two or more persons existed and whether Mr. Manafort was one of its members, you may consider the acts and the statements of any other member of the conspiracy as evidence against Mr. Manafort whether done in or out of his presence while the conspiracy existed. When persons enter into an agreement to commit a crime, they become agents for each other so that everything which is said or done by one of them in furtherance of that purpose is deemed to be the statement of all who have joined in that conspiracy and is evidence against all of the conspirators. However, statements of any conspirator which are made before its existence or after its termination may be considered as evidence only against the person making such statements.

As was true for the conspiracy charged in Count Two, and unlike for the conspiracy charged in Count One, the government need not prove an "overt act" for the conspiracy charged here in Count Seven.

---------------

Authority:  18 U.S.C. § 1512(k); *Whitfield v. United States*, 543 U.S. 209 (2005); *United States v. Edlind*, 887 F.3d 166, 176 n.4 (4th Cir. 2018) (no overt act necessary).

INSTRUCTION NO. 30

Direct and Circumstantial Evidence

There are two types of evidence from which you may determine what the facts are in this case—direct evidence and circumstantial evidence. When a witness, such as an eyewitness, asserts actual knowledge of a fact, that witness's testimony is direct evidence. On the other hand, evidence of facts and circumstances from which reasonable inferences may be drawn is circumstantial evidence.

Let me give you an example. Assume a person looked out a window and saw that snow was falling. If he later testified in court about what he had seen, his testimony would be direct evidence that snow was falling at the time he saw it happen. Assume, however, that he looked out a window and saw no snow on the ground, and then went to sleep and saw snow on the ground after he woke up. His testimony about what he had seen would be circumstantial evidence that it had snowed while he was asleep.

The law says that both direct and circumstantial evidence are acceptable as a means of proving a fact. The law does not favor one form of evidence over another. It is for you to decide how much weight to give to any particular evidence, whether it is direct or circumstantial. You are permitted to give equal weight to both. Circumstantial evidence does not require a greater degree of certainty than direct evidence. In reaching a verdict in this case, you should consider all of the evidence presented, both direct and circumstantial.

---------------

Authority:  Redbook, Instruction No. 2.109.

INSTRUCTION NO. 31

Inadmissible and Stricken Evidence

The lawyers in this case sometimes objected when the other side asked a question, made an argument, or offered evidence that the objecting lawyer believed was not proper. You must not hold such objections against the lawyer who made them or the party s/he represents. It is the lawyers' responsibility to object to evidence that they believe is not admissible.

If, during the course of the trial, I sustained an objection to a lawyer's question, you should ignore the question, and you must not speculate as to what the answer would have been. If, after a witness answered a question, I ruled that the answer should be stricken, you should ignore both the question and the answer and they should play no part in your deliberations. Likewise, exhibits as to which I have sustained an objection or that I ordered stricken are not evidence, and you must not consider them in your deliberations.

---------------

Authority:  Redbook, Instruction No. 2.112.

INSTRUCTION NO. 32

Law Enforcement Techniques

During the trial you have heard testimony of witnesses and argument by counsel that the government did not utilize specific investigative techniques.  You may consider these facts in deciding whether the government has met its burden of proof, because as I told you, you should look to all of the evidence or lack of evidence in deciding whether the defendant is guilty. However, you are also instructed that there is no legal requirement use any specific investigative techniques to prove its case.  Law enforcement techniques are not your concern.

Further, I am sure that at least one of you has seen the popular television shows like "C.S.I." or "Law & Order."  The TV standards, and the capabilities of law enforcement as portrayed on TV and in the movies, do not apply here to this trial.  Witness testimony is sufficient to establish the charges in this case.  Specific investigative techniques, such as videotaping an arrest or testing for DNA, are not required to be presented in order for you to find the defendant guilty of the charges in this case.  Please dismiss from your deliberations in consideration of the appropriate verdicts in this case investigative techniques which you may have seen on T.V. or in movies, as well as anything else about which there was no evidence.

Your concern, as I have said, is to determine whether or not, on the evidence or lack of evidence, the defendant's guilt has been proven beyond a reasonable doubt.

---------------

Authority:  *United States v. Best*, 1:13-cr-00301-ABJ (D.D.C. May 7, 2014) (ECF No. 21).

INSTRUCTION NO. 33

Credibility of Witnesses

In determining whether the government has proved the charges against the defendant beyond a reasonable doubt, you must consider the testimony of all the witnesses who have testified.

You are the sole judges of the credibility of the witnesses. You alone determine whether to believe any witness and the extent to which a witness should be believed. Judging a witness's credibility means evaluating whether the witness has testified truthfully and also whether the witness accurately observed, recalled, and described the matters about which the witness testified.

You may consider anything that in your judgment affects the credibility of any witness. For example, you may consider the demeanor and the behavior of the witness on the witness stand; the witness's manner of testifying; whether the witness impresses you as a truthful person; whether the witness impresses you as having an accurate memory and recollection; whether the witness has any motive for not telling the truth; whether the witness had a full opportunity to observe the matters about which he or she has testified; whether the witness has any interest in the outcome of this case, or friendship or hostility toward other people concerned with this case.

In evaluating the accuracy of a witness's memory, you may consider the circumstances surrounding the event, including any circumstances that would impair or improve the witness's ability to remember the event, the time that elapsed between the event and any later recollections of the event, and the circumstances under which the witness was asked to recall details of the event.

You may consider the reasonableness or unreasonableness, the probability or improbability, of the testimony of a witness in determining whether to accept it as true and accurate. You may consider whether the witness has been contradicted or supported by other evidence that you credit.

If you believe that any witness has shown him or herself to be biased or prejudiced, for or against either side in this trial, you may consider and determine whether such bias or prejudice has colored the testimony of the witness so as to affect the desire and capability of that witness to tell the truth.

You should give the testimony of each witness such weight as in your judgment it is fairly entitled to receive.

---------------

Authority:  Redbook, Instruction No. 2.200.

INSTRUCTION NO. 34

Accomplice's and Cooperator's Testimony

You have heard testimony from [witness name(s)] was actually involved in some of the criminal conduct charged in the Indictment.   [Witness name(s)] has himself pleaded guilty to charges arising out of the same facts as this case.   You are to draw no inferences or conclusions of any kind about the guilt of any defendant on trial from the fact that a prosecution witness pleaded guilty to similar or related charges.   Each witness's decision to plead guilty was personal to his own guilt, and that decision may not be used as evidence against any defendant on trial.

[Witness name(s)] has, however, also testified about conduct allegedly engaged in by the defendant here on trial.

The government is permitted to use a witness who testifies that he participated in the offenses charged against the defendant, although the testimony of such a witness should be considered with caution. A witness who has entered into a plea agreement is under the same obligation to tell the truth as is any other witness; the plea agreement does not protect him against a prosecution for perjury or false statement, should he lie under oath.   You will have to assess [witness name(s)] and decide whether or not you credit the testimony given.   I have already given you general instructions about factors you should consider in evaluating the testimony of any witness.

Because people who themselves take part in criminal activity often have the knowledge required to reveal criminal behavior by others, the law allows the use of accomplice testimony. Indeed, it is the law in federal courts that the testimony of a single accomplice may be enough, by itself, to support a conviction, if the jury finds that the testimony establishes guilt beyond a reasonable doubt.

Because of the very nature of accomplice testimony, however, it must be scrutinized with great care and viewed with particular caution when you decide how much of that testimony you believe.  You should, for example, ask yourselves whether an accomplice witness would benefit more by lying or by telling the truth.

In this case, you have heard that [witness name(s)] entered into a written plea agreement with the government that provides, in part, for him to give testimony in this case.  The government agreed to dismiss certain charges filed and agreed not to pursue other charges in exchange for the witness's agreement to plead guilty and testify at trial.  The government also agreed to bring any substantial assistance provided by [witness name(s)] to the attention of this court for consideration at sentencing.  You have further heard that [witness name(s)] engaged in unlawful conduct while participating in a proffer session with the government, which included making false statements to the government.

Ladies and gentlemen, the government is permitted to enter into such agreements with witnesses.  But a witness who testifies pursuant to such an agreement does have an interest in this case different from an ordinary witness.  This is why you must carefully scrutinize whether the testimony of an accomplice was made up in any way because he believed or hoped that he would receive favorable treatment by testifying falsely.  For this reason, a witness's understanding of his agreement and his expectations under that agreement may be more important to your assessment of his credibility than the actual terms of the agreement.

In fact, the ultimate decision as to [witness name(s)] sentence rests with the Court.  But you should ask yourselves, did [witness name(s)] believe that his interests, whether with respect to sentencing or any other benefit, would be best served by testifying truthfully or by testifying falsely?  If you believe that the witness was motivated by hopes of personal gain, was the

motivation one that would cause him to lie, or was it one that would cause him to tell the truth? Did this motivation color his testimony?

In sum, you should look at all of the evidence in deciding whether you believe an accomplice witness and what weight, if any, his testimony deserves.

---------------

Authority:  Redbook, Instruction Nos. 2.202–2.203; *United States v. Wong Chi Fai*, No. 93-CR-1340 (E.D.N.Y).

INSTRUCTION NO. 35

Testimony of Immunized Witnesses (*If Applicable*)

You have heard evidence that a witness [insert name] has received immunity. This means that the testimony of the witness may not be used against him/her in any criminal case. You should consider whether a witness who realizes that s/he may receive a benefit by incriminating another may have a motive to lie. However, you may also consider that the witness is under the same obligation to tell the truth as is any other witness, because the grant of immunity does not protect him/her against a prosecution for perjury or false statement, should s/he lie under oath.

The testimony of a witness to whom immunity has been granted should be considered with caution. You should give the testimony as much weight as in your judgment it deserves.

---------------

Authority:  Redbook, Instruction No. 2.204.

INSTRUCTION NO. 36

Law Enforcement Officer's Testimony

A law enforcement officer's testimony should be evaluated by you just as any other evidence in the case.  In evaluating the officer's credibility, you should use the same guidelines that you apply to the testimony of any witness.  In no event should you give either greater or lesser weight to the testimony of any witness merely because s/he is a law enforcement officer.

---------------

Authority:  Redbook, Instruction No. 2.207 (modified to substitute "law enforcement officer" for "police officer" in the pattern instruction).

INSTRUCTION NO. 37

Right of Defendant Not to Testify (*If Applicable*)

Every defendant in a criminal case has an absolute right not to testify.  Mr. Manafort has chosen to exercise this right.  You must not hold this decision against him, and it would be improper for you to speculate as to the reason or reasons for his decision. You must not assume the defendant is guilty because he chose not to testify.

---------------

Authority:  Redbook, Instruction No. 2.208.

INSTRUCTION NO. 38

Defendant as Witness (*If Applicable*)

A defendant has a right to become a witness in his own behalf.  His testimony should not be disbelieved merely because he is the defendant.  In evaluating his testimony, however, you may consider the fact that the defendant has a vital interest in the outcome of this trial.  As with the testimony of any other witness, you should give the defendant's testimony as much weight as in your judgment it deserves.

---------------

Authority:  Redbook, Instruction No. 2.209–2.210.

INSTRUCTION NO. 39

False or Inconsistent Statement by Defendant

You have heard evidence that the defendant made statements in explanation of his actions that may have been false or inconsistent.  It is up to you to decide whether he made the statements, and whether they were, in fact, false or inconsistent. If you find he did make such statements and that they were false or inconsistent, you may consider such evidence as tending to show his feelings of guilt, which you may, in turn, consider as tending to show actual guilt. On the other hand, you may also consider that he may have given such statements for reasons unrelated to this case or consistent with his innocence.

If you find that the defendant made a false or inconsistent statement in explanation of his actions, you should give the testimony as much weight as in your judgment it deserves.

---------------

Authority:  Redbook, Instruction No. 2.210.

INSTRUCTION NO. 40

Character of Defendant (*If Applicable*)

The defendant has introduced testimony that he has a good reputation in the community. Such evidence may indicate to you that it is unlikely that the defendant would commit the crime charged or it may not.  You may consider this evidence along with other evidence in the case including evidence that contradicts the defendant's character evidence and give it as much weight as you think it deserves.

Notwithstanding the evidence of character, if, after weighing all the evidence, you are convinced beyond a reasonable doubt that the defendant is guilty of the crime charged, it is your duty to find him or her guilty. On the other hand, evidence of good character alone may create a reasonable doubt as to a defendant's guilt, although without it the other evidence would be convincing.



---------------

Authority:  Redbook, Instruction No. 2.213.

INSTRUCTION NO. 41

Specialized Opinion Testimony (*If Applicable*)

In this case, [you will hear] [you heard] the testimony of [name of witness] who [will express] [expressed] opinions concerning [certain subjects; specify the subject(s), if possible].  If scientific, technical, or other specialized knowledge might assist the jury in understanding the evidence or in determining a fact in issue, a witness who possesses knowledge, skill, experience, training, or education may testify and state an opinion concerning such matters. You are not bound to accept this witness's opinion. If you find that the opinion is not based on sufficient education or experience, that the reasons supporting the opinion are not sound, or that the opinion is outweighed by other evidence, you may completely or partially disregard the opinion. You should consider this evidence with all the other evidence in the case and give it as much weight as you think it fairly deserves.

---------------

Authority:  Redbook, Instruction No. 2.215.

INSTRUCTION NO. 42

Evaluation of Prior Inconsistent Statement of a Witness (*If Applicable*)

The law treats prior inconsistent statements differently depending on the nature of the statements and the circumstances in which they were made. I will now explain how you should evaluate those statements.

PART A (for use when prior statements not made under oath are introduced):

You have heard evidence that [name of witness] made a statement on an earlier occasion and that this statement may be inconsistent with his/her testimony here at trial. It is for you to decide whether the witness made such a statement and whether in fact it was inconsistent with the witness's testimony here. If you find such an inconsistency, you may consider the earlier statement in judging the credibility of the witness, but you may not consider it as evidence that what was said in the earlier statement was true.

PART B (for use when prior statements made under oath are introduced):

You [also] have heard evidence that [name of witness] made an earlier statement under oath, subject to the penalty of perjury at [a prior proceeding] [the grand jury] [a deposition] and that this statement may be inconsistent with [his] [her] testimony here at trial. If you find that the earlier statement is inconsistent with the witness's testimony here in court, you may consider this inconsistency in judging the credibility of the witness. You also may consider this earlier statement as evidence that what was said in the earlier statement was true.

PART C (for use when prior identification statements are used to impeach a witness):

You [also] have heard evidence that [name of witness] [made an identification] [provided a description] on an earlier occasion, and that his/her testimony here at trial may be inconsistent with that [identification] [description]. It is for you to decide whether s/he [made such an identification] [provided such a description] and whether his/her testimony here was, in fact,

74

inconsistent with it. If you find such an inconsistency, you may consider this inconsistency in judging the credibility of [name of witness]. You also may consider the earlier [identification] [description] as evidence that what was said in the prior [identification] [description] was true.

---------------

Authority:  Redbook, Instruction No. 2.216.

INSTRUCTION NO. 43

Evaluation of Prior Consistent Statement of a Witness

You have heard evidence that [name of witness] [name of defendant] made a statement on an earlier occasion and that this statement may be consistent with his/her testimony here at trial. This earlier statement was brought to your attention [both] to help you in evaluating the credibility of the witness [and as evidence in this case]. If you find that the earlier statement is consistent with the witness's present testimony in court, you may consider this consistency [both] in judging the credibility of the witness here at trial [but you may not use it] [and] as proof that what was said in the earlier statement was true.

It is for you to decide whether a witness made a statement on an earlier occasion and whether it was in fact consistent with the witness's in-court testimony here.

---------------

Authority:  Redbook, Instruction No. 2.217.

INSTRUCTION NO. 44

Impeachment by Proof of Conviction of a Crime—Witness (*If Applicable*)

You have heard evidence that [witness name(s)] has been convicted of a crime. You may consider this conviction only in evaluating the credibility of that witness's testimony in this case.

---------------

Authority:  Redbook, Instruction No. 2.218.

INSTRUCTION NO. 45

Impeachment by Proof of Conviction of Pending Case, Probation Or Parole (*If Applicable*)

You have heard evidence that [witness name(s)] is [awaiting sentence] [under investigation]. You may consider this evidence when deciding whether the witness has a bias in favor of one of the parties that may affect his/her willingness to tell the truth.

---------------

Authority:  Redbook, Instruction No. 2.219.

INSTRUCTION NO. 46

Attempted Bribery, Coercion or Intimidation of Witness

You have heard evidence that the defendant may have attempted to persuade Persons D1 and D2 to testify falsely. It is up to you to decide if he attempted to persuade Persons D1 and D2 to testify and if such testimony would have been false. If you find he did so, you may consider this evidence as tending to show his feelings of guilt, which you may, in turn, consider as tending to show actual guilt. On the other hand, you may also consider he may have attempted to persuade Persons D1 and D2 for reasons fully consistent with innocence in this case.

If you find that the defendant attempted to persuade Persons D1 and D2 to testify falsely, you should consider this evidence along with all the other evidence in the case and give it as much weight you think it fairly deserves.

---------------

Authority:  Redbook, Instruction No. 2.304.  The names of Persons D1 and D2 should be inserted at the time the instructions should be given.

79

INSTRUCTION NO. 47

Statements of the Defendant—Substantive Evidence

You have heard evidence that the defendant made statements to law enforcement about the crime charged. You should consider all the circumstances, including whether law enforcement recorded the statement, in deciding whether he made the statement. If you find that he did make the statement, you must decide how much weight to give the statement. For example, you may consider whether he made the statement voluntarily and understood what he was saying. You may consider whether he was forced, threatened, or pressured, either physically or psychologically, and whether he was promised any reward or benefit for making the statement. You may consider all of the conversations between him and the law enforcement. You may consider whether law enforcement warned him of his rights. You may consider where and when the statement was given; the duration of any questioning; who was present during some or all of the questioning of the defendant; and whether the law enforcement recorded some or all of the conversations. You may consider the age, education, experience, intelligence and the physical and mental condition of the defendant.

---------------

Authority:  Redbook, Instruction No. 2.305.

INSTRUCTION NO. 48

Translation of Foreign Language Document or Recording

I have admitted documents that are in Russian along with an English translation. Although some of you may know Russian, it is important that all jurors consider the same evidence. Therefore, you must accept the English translation contained in the transcript.

If, however, you have a question as to the accuracy of the English translation, you should bring this matter to my attention immediately by raising your hand. You should not ask your question or make any comment about the translation in the presence of the other jurors, or otherwise share your question or concern with any of them. I will take steps to see if your question can be answered and any discrepancy resolved. If, however, after such efforts a discrepancy remains, you must rely only upon the official English translation provided by the court interpreter and not on your own translation.

---------------

Authority:  Redbook, Instruction No. 2.311.

INSTRUCTION NO. 49

Evidence of Other Crimes Admitted to Show Motive, Identity, or Common Scheme or Plan (*If Applicable*)

You have heard evidence that Mr. Manafort [description of other crimes evidence]. It is up to you to decide whether to accept that evidence.

If you find that the defendant [description of other crimes evidence], you may use this evidence only for the limited purpose of deciding whether:

(1)     The defendant had a motive to commit the offenses charged in the indictment, including the conspiracy to defraud the United States and commit offenses against the United States.

(2)     The circumstances of the other crimes and charged offenses are so similar that it is likely that the person who [description of other crimes evidence] also committed the [name of offense(s)] charged in the indictment.

(3)     The [describe the other crimes conduct] and the [name of offense[s]] charged in the indictment] are part of a common scheme or plan.

If you conclude that:

(4)     Mr. Manafort had such a motive.

(5)     [description of other crimes evidence] is so similar to the charged offenses that it is likely that the same person committed both of them

(6)     There was a common scheme or plan.

You may use this evidence in determining whether the government has proved beyond a reasonable doubt that Mr. Manafort is the person who committed the [name of offense(s)] charged in the [indictment].

You may not use this evidence for any other purpose. Mr. Manafort is only on trial for the crimes charged. He is not charged in this case with any offense relating to [describe the other

crimes conduct], and you may not use this evidence to conclude that Manafort has a bad character,

or that Manafort has a criminal personality. The law does not allow you to convict him/her simply

because you believe he may have done bad things not specifically charged as crimes in this case.


---------------

Authority:  Redbook, Instruction No. 2.321.

INSTRUCTION NO. 50

Evidence of Other Crimes Admitted to Show Intent, Absence of Mistake, or Knowledge (*If Applicable*)

You have heard evidence that the defendant [describe other crimes evidence]. It is up to you to decide whether to accept that evidence.

You must first decide, without considering [describe other crimes evidence] at all, whether the government has proved beyond a reasonable doubt that the defendant [insert actus reus]. If you find that the government has proved beyond a reasonable doubt, that Mr. Manafort [insert actus reus], then you may consider the evidence that the s/he [describe other crimes evidence].]

If you find that Mr. Manafort [describe other crimes evidence], you may use this evidence only for the limited purpose of deciding/determining whether the government has proved beyond a reasonable doubt that Mr. Manafort [intended to [insert object of intent] [acted knowingly and on purpose, and not by mistake or by accident] [knew that [insert purpose for which the evidence was introduced]].

You may not use this evidence for any other purpose.  Mr. Manafort is only on trial for the crimes charged.  The defendant is not charged in this case with any offense relating to [describe the other crimes conduct], and you may not use this evidence to conclude that s/he has a bad character, or that Mr. Manafort has a criminal personality. The law does not allow you to convict the defendant simply because you believe he may have done bad things not specifically charged as crimes in this case.

---------------

Authority:  Redbook, Instruction No. 2.321.

INSTRUCTION NO. 51

Multiple Counts—One Defendant

Each count of the indictment charges a separate offense. You should consider each offense, and the evidence which applies to it, separately, and you should return separate verdicts as to each count. The fact that you may find the defendant guilty or not guilty on any one count of the indictment should not influence your verdict with respect to any other count of the indictment.

---------------

Authority:  Redbook, Instruction No. 2.402.

INSTRUCTION NO. 52

Unanimity—General

A verdict must represent the considered judgment of each juror, and in order to return a

verdict, each juror must agree on the verdict. In other words, your verdict must be unanimous.

---------------

Authority:  Redbook, Instruction No. 2.405.

INSTRUCTION NO. 53

Verdict Form Explanation

You will be provided with a Verdict Form for use when you have concluded your deliberations. The form is not evidence in this case, and nothing in it should be taken to suggest or convey any opinion by me as to what the verdict should be. Nothing in the form replaces the instructions of law I have already given you, and nothing in it replaces or modifies the instructions about the elements which the government must prove beyond a reasonable doubt. The form is meant only to assist you in recording your verdict.

---------------

Authority:  Redbook, Instruction No. 2.407.

INSTRUCTION NO. 54

Proof of State of Mind

Someone's intent or knowledge ordinarily cannot be proved directly, because there is no way of knowing what a person is actually thinking, but you may infer someone's intent or knowledge from the surrounding circumstances. You may consider any statement made or acts done or omitted by the defendant, and all other facts and circumstances received in evidence which indicate his intent or knowledge.

You may infer, but are not required to infer, that a person intends the natural and probable consequences of acts s/he intentionally did or intentionally did not do. It is entirely up to you, however, to decide what facts to find from the evidence received during this trial. You should consider all the circumstances in evidence that you think are relevant in determining whether the government has proved beyond a reasonable doubt that the defendant acted with the necessary state of mind.

---------------

Authority:  Redbook, Instruction No. 3.101.

INSTRUCTION NO. 55

Willfully Causing an Act to be Done

You may find the defendant guilty of the crime charged in the indictment without finding
that he personally committed each of the acts constituting the offense or was personally present at
the commission of the offense. A defendant is responsible for an act which he willfully causes to
be done if the act would be criminal if performed by him/her directly or by another. To "cause" an
act to be done means to bring it about.  You may convict the defendant of the offense charged if
you find that the government has proved beyond a reasonable doubt each element of the offense
and that the defendant willfully caused such an act to be done, with the intent to commit the crime.

---------------

Authority:  Redbook, Instruction No. 3.102.

INSTRUCTION NO. 56

"On or About" or "In or Around" Proof

The indictment information charges that certain offenses were committed "on or about" and "in or around" certain dates. The proof need not establish with certainty the exact date of the alleged offense. It is sufficient if the evidence in the case establishes beyond a reasonable doubt that the offense was committed on a date reasonably near the date alleged.

\---------------

Authority:  Redbook, Instruction No. 2.103.

INSTRUCTION NO. 57

Aiding and Abetting

You may find the defendant guilty of the crime charged in the indictment without finding that he personally committed each of the acts that make up the crime or that he was present while the crime was being committed. Any person who in some way intentionally participates in the commission of a crime can be found guilty either as an aider and abettor or as a principal offender. It makes no difference which label you attach. The person is as guilty of the crime as he would be if he had personally committed each of the acts that make up the crime.

To find that a defendant aided and abetted in committing a crime, you must find that the defendant knowingly associated himself with the commission of the crime, that he participated in the crime as something he wished to bring about, and that he intended by his actions to make it succeed.

Some affirmative conduct by the defendant in planning or carrying out the crime is necessary. Mere physical presence by Mr. Manafort at the place and time the crime is committed is not by itself sufficient to establish his/her guilt. It is not necessary that you find that the defendant was actually present while the crime was committed.

The government is not required to prove that anyone discussed or agreed upon a specific time or method of committing the crime. The government is not required to prove that the crime was committed in the particular way planned or agreed upon. Nor need the government prove that the principal offender and the person alleged to be the aider and abettor directly communicated with each other.

I have already instructed you on the elements of each of the offenses with which Manafort is charged. With respect to the charges of acting as an unregistered agent of a foreign principal (Count Three), making false and misleading FARA statements (Count Four), and Making false

91

statements (Count Five) regardless of whether Manafort is an aider and abettor or a principal

offender, the government must prove beyond a reasonable doubt that Manafort personally acted

knowingly and willfully. With respect to the charge of obstructing justice (Count Six), regardless

of whether Manafort is an aider and abettor or a principal offender, the government must prove

beyond a reasonable doubt that Manafort personally acted knowingly and intentionally.

---------------

Authority:  Redbook, Instruction No. 3.200.

# EXHIBIT C

<u>SPECIAL INSTRUCTION NO. 1</u>

<u>Requirements under the Foreign Agent Registration Act</u>

The Foreign Agent Registration Act provides that no person shall act as an agent of a foreign principal unless he has filed with the Attorney General a true and complete registration statement and supplements thereto as required that agents of a foreign government or other foreign principal, unless certain exceptions apply.

When registration is required, federal law also specifically identifies steps a person must take in order to complete the registration and supplements. Every person who becomes an agent of a foreign principal shall, within ten days thereafter, file with the Attorney General, a registration statement under oath on a form prescribed by the Attorney General.

The statement must contain the following information:

(1)     The registrant's name, principal business address, and all other business addresses in the United States or elsewhere, and all residence addresses, if any.

(2)     The status of the registrant; if an individual, nationality; if a partnership, name, residence addresses, and nationality of each partner and a true and complete copy of its articles of copartnership; if an association, corporation, organization, or any other combination of individuals, the name, residence addresses, and nationality of each director and officer and of each person performing the functions of a director or officer and a true and complete copy of its charter, articles of incorporation, association, constitution, and bylaws, and amendments thereto; a copy of every other instrument or document and a statement of the terms and conditions of every oral agreement relating to its organization, powers, and purposes; and a statement of its ownership and control.

(3)     A comprehensive statement of the nature of registrant's business; a complete list of registrant's employees and a statement of the nature of the work of each; the name and

address of every foreign principal for whom the registrant is acting, assuming or purporting

to act or has agreed to act; the character of the business or other activities of every such

foreign principal, and, if any such foreign principal be other than a natural person, a

statement of the ownership and control of each; and the extent, if any, to which each such

foreign principal is supervised, directed, owned, controlled, financed, or subsidized, in

whole or in part, by any government of a foreign country or foreign political party, or by

any other foreign principal.  If this information changes, the registrant shall give notice to

the Attorney General of any changes therein within ten days after such changes occur.

(4)     Copies of each written agreement and the terms and conditions of each oral agreement,

including all modifications of such agreements, or, where no contract exists, a full

statement of all the circumstances, by reason of which the registrant is an agent of a foreign

principal; a comprehensive statement of the nature and method of performance of each

such contract, and of the existing and proposed activity or activities engaged in or to be

engaged in by the registrant as agent of a foreign principal for each such foreign principal,

including a detailed statement of any such activity which is a political activity.  If this

information changes, the registrant shall give notice to the Attorney General of any changes

therein within ten days after such changes occur.

(5)     The nature and amount of contributions, income, money, or thing of value, if any, that the

registrant has received within the preceding sixty days from each such foreign principal,

either as compensation or for disbursement or otherwise, and the form and time of each

such payment and from whom received.

(6)     A detailed statement of every activity which the registrant is performing or is assuming or

purporting or has agreed to perform for himself or any other person other than a foreign

principal and which requires his registration hereunder, including a detailed statement of any such activity which is a political activity.  If this information changes, the registrant shall give notice to the Attorney General of any changes therein within ten days after such changes occur.

(7)     The name, business, and residence addresses, and if an individual, the nationality, of any person other than a foreign principal for whom the registrant is acting, assuming or purporting to act or has agreed to act under such circumstances as require his registration hereunder; the extent to which each such person is supervised, directed, owned, controlled, financed, or subsidized, in whole or in part, by any government of a foreign country or foreign political party or by any other foreign principal; and the nature and amount of contributions, income, money, or thing of value, if any, that the registrant has received during the preceding sixty days from each such person in connection with any of the activities described previously, either as compensation or for disbursement or otherwise, and the form and time of each such payment and from whom received.

(8)     A detailed statement of the money and other things of value spent or disposed of by the registrant during the preceding sixty days in furtherance of or in connection with activities which require his registration hereunder and which have been undertaken by him either as an agent of a foreign principal or for himself or any other person or in connection with any activities relating to his becoming an agent of such principal, and a detailed statement of any contributions of money or other things of value made by him during the preceding sixty days in connection with an election to any political office or in connection with any primary election, convention, or caucus held to select candidates for any political office.

(9)     Copies of each written agreement and the terms and conditions of each oral agreement, including all modifications of such agreements, or, where no contract exists, a full statement of all the circumstances, by reason of which the registrant is performing or assuming or purporting or has agreed to perform for himself or for a foreign principal or for any person other than a foreign principal any activities which require his registration hereunder.  If this information changes, the registrant shall give notice to the Attorney General of any changes therein within ten days after such changes occur.

(10)    Such further statements and such further copies of documents as are necessary to make the statements made in the registration statement and supplements thereto, and the copies of documents furnished therewith, not misleading.

Whenever the registrant is an association, corporation, organization, or any other combination of individuals, the following documents shall be filed [as part of the registration]:

(1)     A copy of the registrant's charter, articles of incorporation or association, or constitution, and a copy of its bylaws, and amendments thereto.

(2)     A copy of every other instrument or document, and a statement of the terms and conditions of every oral agreement, relating to the organization, powers and purposes of the registrant.

Whenever a registrant, within the United States, receives or collects contributions, loans, money, or other things of value, as part of a fund-raising campaign, for or in the interests of his foreign principal, he shall file a statement setting forth the amount of money or the value of the thing received or collected, the names and addresses of the persons from whom such money or thing of value was received or collected, and the amount of money or a description of the thing of value transmitted to the foreign principal as well as the manner and time of such transmission.

4

The registration statement and supplements thereto shall be executed under oath as follows: If the registrant is an individual, by him; if the registrant is a partnership, by the majority of the members thereof; if the registrant is a person other than an individual or a partnership, by a majority of the officers thereof or persons performing the functions of officers or by a majority of the board of directors thereof or persons performing the functions of directors, if any.

All statements, exhibits, amendments, and other documents and papers required to be filed under [the Foreign Agent Registration Act] must be submitted in triplicate to the Registration Unit of the U.S. Department of Justice's National Security Division. Filing of such documents may be made in person or by mail.

A registrant shall pay a registration fee with each initial registration statement and each supplemental registration statement at the time such registration statement is filed.

Each statement, amendment, exhibit, or notice required to be filed under FARA shall be submitted in the English language.  An exhibit may be filed even though it is in a foreign language if it is accompanied by an English translation certified under oath by the translator before a notary public, or other person authorized by law to administer oaths for general purposes, as a true and accurate translation.

---------------

Authority:  22 U.S.C. §§ 612(a)–(c); 28 C.F.R. §§ 5.201(c), (e); 28 C.F.R. § 5.206(a); 28 C.F.R. § 5.3; 28 C.F.R. § 5.5.

5

SPECIAL INSTRUCTION NO. 2

Supplemental Filings under FARA

Every agent of a foreign principal who has filed a registration statement must, within thirty

days after the expiration of each period of six months succeeding such filing, file with the Attorney

General a supplement thereto under oath, on a form prescribed by the Attorney General, which

shall set forth with respect to such preceding six months' period certain facts listed the Attorney

General.

The obligation to file a supplemental statement at 6–month intervals during the agency

relationship continues even if the registrant has not engaged during the period in any activity in

the interests of his foreign principal.

A registrant must, within 30 days after the termination of his obligation to register, file a

final statement on the supplemental statement form with the Registration Unit for the final period

of the agency relationship not covered by any previous statement.


---------------

Authority:  22 U.S.C. § 612(b); 28 C.F.R. §§ 5.203, 5.205.

SPECIAL INSTRUCTION NO. 3

Filing and Labeling of Political Propaganda

Every person within the United States who is an agent of a foreign principal and required to register under the provisions of [the Foreign Agent Registration Act] and who transmits or causes to be transmitted in the United States mails or by any means or instrumentality of interstate or foreign commerce any informational materials for or in the interests of such foreign principal (i) in the form of prints, or (ii) in any other form which is reasonably adapted to being, or which he believes will be, or which he intends to be, disseminated or circulated among two or more persons shall, not later than forty-eight hours after the beginning of the transmittal thereof, file with the Attorney General two copies thereof.

---------------

Authority:  22 U.S.C. § 614

<u>SPECIAL INSTRUCTION NO. 4</u>

<u>Books and Records</u>

Every agent of a foreign principal registered under [the Foreign Agent Registration Act] shall keep and preserve while he is an agent of a foreign principal such books of account and other records with respect to all his activities, the disclosure of which is required under the provisions of this subchapter, in accordance with such business and accounting practices, as the Attorney General, having due regard for the national security and the public interest, may by regulation prescribe as necessary or appropriate for the enforcement of the provisions of this subchapter and shall preserve the same for a period of three years following the termination of such status. Until regulations are in effect under this section every agent of a foreign principal shall keep books of account and shall preserve all written records with respect to his activities. Such books and records shall be open at all reasonable times to the inspection of any official charged with the enforcement of this subchapter. It shall be unlawful for any person willfully to conceal, destroy, obliterate, mutilate, or falsify, or to attempt to conceal, destroy, obliterate, mutilate, or falsify, or to cause to be concealed, destroyed, obliterated, mutilated, or falsified, any books or records required to be kept under the provisions of this section.

A registrant shall keep and preserve in accordance with [this provision of the Foreign Agent Registration Act] the following books and records:

(1)     All correspondence, memoranda, cables, telegrams, teletype messages, and other written communications to and from all foreign principals and all other persons, relating to the registrant's activities on behalf of, or in the interest of any of his foreign principals.

(2)     All correspondence, memoranda, cables, telegrams, teletype messages, and other written communications to and from all persons, other than foreign principals, relating to the

registrant's political activity, or relating to political activity on the part of any of the registrant's foreign principals.

(3)      Original copies of all written contracts between the registrant and any of his foreign principals.

(4)      Records containing the names and addresses of persons to whom informational materials have been transmitted.

(5)      All bookkeeping and other financial records relating to the registrant's activities on behalf of any of his foreign principals, including canceled checks, bank statements, and records of income and disbursements, showing names and addresses of all persons who paid moneys to, or received moneys from, the registrant, the specific amounts so paid or received, and the date on which each item was paid or received.

(6)      If the registrant is a corporation, partnership, association, or other combination of individuals, all minute books.

(7)      Such books or records as will disclose the names and addresses of all employees and agents of the registrant, including persons no longer acting as such employees or agents.

(8)      Such other books, records, and documents as are necessary properly to reflect the activities for which registration is required.

Officials of the National Security Division and the Federal Bureau of Investigation are authorized under [this section of the Foreign Agent Registration Act] to inspect the books and records.


\---------------

Authority:  22 U.S.C. § 615; 28 C.F.R. § 5.500; 28 C.F.R. § 5.501

<u>SPECIAL INSTRUCTION NO. 5</u>

<u>Requirements Under the Lobbying Disclosure Act</u>

The Lobbying Disclosure Act provides that no later than 45 days after a lobbyist first makes a lobbying contact or is employed or retained to make a lobbying contact, the lobbyist shall register with the Secretary of the Senate and the Clerk of the House of Representatives.

Each registration under this section shall contain the following information:

(1)     The name, address, business telephone number, and principal place of business of the registrant, and a general description of its business or activities.

(2)     The name, address, and principal place of business of the registrant's client, and a general description of its business or activities (if different from paragraph (1)).

(3)     The name, address, and principal place of business of any organization, other than the client, that contributes more than $5,000 to the registrant or the client in the quarterly period to fund the lobbying activities of the registrant; and actively participates in the planning, supervision, or control of such lobbying activities.

(4)     The name, address, principal place of business, amount of any contribution of more than $5,000 to the lobbying activities of the registrant, and approximate percentage of equitable ownership in the client (if any) of any foreign entity that—

(A)     holds at least 20 percent equitable ownership in an organization that contributes more than $5,000 to the registrant or the client to fund the lobbying activities of the registrant.

(B)     directly or indirectly, in whole or in major part, plans, supervises, controls, directs, finances, or subsidizes the activities of the client or any organization identified under paragraph (3); or

10

(C)     is an affiliate of the client or any organization identified under paragraph (3) and

has a direct interest in the outcome of the lobbying activity;

(5)     A statement of—

(A)     the general issue areas in which the registrant expects to engage in lobbying

activities on behalf of the client; and

(B)     to the extent practicable, specific issues that have (as of the date of the

registration) already been addressed or are likely to be addressed in lobbying

activities.

(6)     The name of each employee of the registrant who has acted or whom the registrant

expects to act as a lobbyist on behalf of the client and, if any such employee has served as

a covered executive branch official or a covered legislative branch official in the 20 years

before the date on which the employee first acted as a lobbyist on behalf of the client, the

position in which such employee served.


---------------

Authority:  2 U.S.C. § 1603.

SPECIAL INSTRUCTION NO. 6

Reports Under the Lobbying Disclosure Act

No later than 20 days after the end of the quarterly period beginning on the first day of January, April, July, and October of each year in which a registrant is registered pursuant to the Lobbying Disclosure Act, each registrant shall file a report with the Secretary of the Senate and the Clerk of the House of Representatives on its lobbying activities during such quarterly period. A separate report shall be filed for each client of the registrant.

Each quarterly report filed under subsection (a) shall contain—

(1)    The name of the registrant, the name of the client, and any changes or updates to the information provided in the initial registration, including information under section 1603(b)(3) of this title.

(2)    For each general issue area in which the registrant engaged in lobbying activities on behalf of the client during the quarterly period,

(A)    A list of the specific issues upon which a lobbyist employed by the registrant engaged in lobbying activities, including, to the maximum extent practicable, a list of bill numbers and references to specific executive branch actions;

(B)    A statement of the Houses of Congress and the Federal agencies contacted by lobbyists employed by the registrant on behalf of the client;

(C)    A list of the employees of the registrant who acted as lobbyists on behalf of the client; and

(D)    A description of the interest, if any, of any foreign entity that contributed more than $5,000 in funding lobbying activities, that controlled or supervised the activities of the organization, or is an affiliate of the client.

(3)      In the case of a lobbying firm, a good faith estimate of the total amount of all income from the client (including any payments to the registrant by any other person for lobbying activities on behalf of the client) during the quarterly period, other than income for matters that are unrelated to lobbying activities,

(4)      In the case of a registrant engaged in lobbying activities on its own behalf, a good faith estimate of the total expenses that the registrant and its employees incurred in connection with lobbying activities during the quarterly period.

(5)      For each client, immediately after listing the client, an identification of whether the client is a State or local government or a department, agency, special purpose district, or other instrumentality controlled by one or more State or local governments.

---------------

Authority:  2 U.S.C. § 1604.

# EXHIBIT D

| From: | AAW |
|---|---|
| To: | "tezehnle@gmail.com"; Kevin Downing (kevindowning@kdowninglaw.com); Richard Westling; Jay Nanavati |
| Cc: | GDA; BVG; LMM; UEA |
| Subject: | RE: DC Notice |
| Date: | Friday, July 13, 2018 11:01:34 AM |

Kevin, Richard, Tom, and Jay:

I write to provide you notice of the same expert testimony, intent to use summaries, and request for reciprocal discovery in connection with the D.C. trial before Judge Amy Berman Jackson.   Please let us know of any objections that should be included in our joint pretrial statement due August 1 (paragraph e)).

Andrew Weissmann
Special Counsel's Office
(202) 514-1746

NOTICE:  This email (including any attachments) is intended for the use of the individual or entity to which it is addressed.  It may contain information that is privileged, confidential, or otherwise protected by applicable law.  If you are not the intended recipient (or the recipient's agent), you are hereby notified that any dissemination, distribution, copying, or use of this email or its contents is strictly prohibited.  If you received this email in error, please notify the sender immediately and destroy all copies.

**From:** UEA
**Sent:** Wednesday, July 11, 2018 8:20 PM
**To:** 'tezehnle@gmail.com' <tezehnle@gmail.com>; Kevin Downing (kevindowning@kdowninglaw.com) <kevindowning@kdowninglaw.com>; Richard Westling <rwestling@ebglaw.com>; Jay Nanavati <jnanavati@kflaw.com>
**Cc:** AAW <AAW@jmd.usdoj.gov>; GDA <GDA@jmd.usdoj.gov>; BVG <BVG@jmd.usdoj.gov>; LMM <LMM@jmd.usdoj.gov>
**Subject:** 1:18CR83 (EDVA) Witness Notice

Counsel—

Attached please find notice regarding a number of potential government witnesses.  Thanks.

Uzo



**U.S. Department of Justice**

*The Special Counsel's Office*

*Washington, D.C. 20530*

July 11, 2018

**VIA E-MAIL**

Kevin Downing, Esq.
Law Offices of Kevin Downing
815 Connecticut Avenue, N.W.
Suite 730
Washington, D.C. 20006

Re: *United States v. Paul J. Manafort, Jr.*
Crim. No. 1:18CR83-1 (TSE) (E.D. Va.)

Dear Mr. Downing:

We write to provide notice of several matters ahead of trial in this case. If you intend to publicly disclose any of the attached resumes, draft charts, or draft spreadsheets, please first notify us and allow us to seek appropriate judicial relief.

Expert Witness Notice

Pursuant to Rule 16 of the Federal Rules of Criminal Procedure and Rules 702, 703, and 705 of the Federal Rules of Evidence, the United States hereby serves notice that it may call Morgan Magionos, Michael Welch, and Renee Michael in its case-in-chief as expert witnesses. As described below, these witnesses prepared various summary charts the government intends to introduce at trial. The government does not believe that the preparation of these charts requires expert testimony. Nonetheless, we are advising you that if necessary, we will seek to qualify the witnesses as experts.

*Morgan Magionos*

During its case-in-chief, the government will present a summary witness trained in forensic accounting and tracing. This witness, Morgan Magionos, is a forensic accountant employed by the Federal Bureau of Investigation ("FBI") and her curriculum vitae is enclosed with this notice as Exhibit A. Ms. Magionos' testimony will be adduced to assist the jury to understand the evidence or to determine any facts in issue. Ms. Magionos will provide testimony regarding her background and training, the nature of her analysis, and methods or software used

to assist her.  The witness will also provide testimony, to include opinions and inferences, regarding financial and bank records she reviewed relating to the indictment.

Specifically, Ms. Magionos will testify in the government's case-in-chief and, as necessary, in rebuttal to the following:  She is a forensic accountant with the FBI.  She will testify that she reviewed and analyzed financial records belonging to Paul Manafort, Jr. ("Manafort"), his tax preparers, his accountants, and his related foreign and domestic entities to determine the nature of account ownership, nature of transactions, beneficiaries of transactions, balances in accounts, as well as specific credits and debits to various financial accounts. Furthermore, she reviewed real estate and business records, including invoices, contracts, and statements, for vendors that provided goods and services to Manafort and related entities and individuals.  She traced and analyzed financial transactions to determine the source and disposition of funds.  She prepared various draft charts summarizing the above referenced analysis, which are enclosed with this notice as Exhibit B.  The finalized copies of these schedules will be provided shortly before Ms. Magionos' testimony.  The government further reserves the right to offer additional computations, summaries and schedules and to amend any draft computations, summaries and schedules provided to the defense.  The bases, reasons, and significance of her testimony are her education, experience, and training in the fields of forensic accounting and tracing.

*Michael Welch*

During its case-in-chief, the government will present a summary witness trained in taxation and accounting.  This witness, Internal Revenue Agent ("IRS") Revenue Agent Michael Welch, will, among other areas of testimony, provide an analysis of the financial records introduced into evidence, including foreign bank records, provide a summary of unreported income received by the defendant, and the tax consequences of the unreported income.  The scope of Revenue Agent Welch's testimony will include a substantive review of relevant domestic and foreign bank account records and financial transactions, accounting records, and other trial evidence, including witness testimony.  Revenue Agent Welch will also testify generally about events that trigger a duty to report foreign bank accounts to the IRS and the Department of the Treasury.  Revenue Agent Welch's curriculum vitae is attached to this letter as Exhibit C.

Revenue Agent Welch's testimony will assist the jury by providing specialized tax and accounting knowledge in order to explain the tax consequences of the transactions contained in the government's evidence, which is admissible and relevant.  Pursuant to Fed. R. Crim. P. 16(a)(1)(G), the government is providing the defendant with Revenue Agent Welch's draft schedules, summaries and computations (attached as Exhibit D), which are based upon Revenue Agent Welch's review of the discovery materials provided to defense counsel pursuant to Fed. R. Crim. P. 16.  Revenue Agent Welch reserves the right to amend his computations, summaries and schedules once he has heard all testimony and reviewed all exhibits that are actually admitted at trial.  The finalized copies of these schedules will be provided shortly before Revenue Agent Welch's testimony.  The government further reserves the right to offer additional computations, summaries and schedules and to amend any draft computations, summaries and

schedules provided to the defense. The schedules and summaries contain Revenue Agent Welch's preliminary conclusions as to the tax consequences of the government's evidence.

The anticipated basis for Revenue Agent Welch's opinions will be the documents and oral testimony offered at trial, the summaries of voluminous evidence admissible pursuant to Fed. R. Evid. 1006, and his experience and training in the field of taxation. His testimony will have its basis in the Internal Revenue Code and its accompanying regulations, and will include his understanding of the relevant law and application of the facts as he understands them.

*Renee Michael*

During its case-in-chief, the government will present a summary witness trained in forensic accounting and tracing. This witness, Renee Michael, is a forensic accountant employed by the Federal Bureau of Investigation ("FBI") and her curriculum vitae is enclosed with this notice as Exhibit E. Ms. Michael's testimony will be adduced to assist the jury to understand the evidence or to determine any facts in issue. Ms. Michael will provide testimony regarding her background and training, the nature of her analysis, and methods or software used to assist her. The witness will also provide testimony, to include opinions and inferences, regarding financial and bank records she reviewed relating to the indictment. Specifically, Ms. Michael will testify in the government's case-in-chief and, as necessary, in rebuttal to the following: She is a forensic accountant with the FBI. She will testify that she reviewed and analyzed public filings and financial records belonging to Manafort, his tax preparers, his accountants, and his related foreign and domestic entities in order to determine the nature of transactions, beneficiaries of transactions, as well as specific credits and debits to various financial accounts. She also traced and analyzed financial transactions to determine the source and disposition of funds. She prepared a draft chart summarizing the above referenced analysis, which is enclosed with this notice as Exhibit F. The finalized copy of this chart will be provided shortly before Ms. Michael's testimony. The government further reserves the right to offer additional computations, summaries and schedules and to amend any draft computations, summaries and schedules provided to the defense. The bases, reasons, and significance of her testimony are her education, experience, and training in the fields of forensic accounting and tracing.

### Notice of Intent to Use Summaries Pursuant to Fed. R. Evid. 1006

Through its witnesses, the government intends to offer summaries of voluminous evidence during the presentation of its case-in-chief, consisting of summary schedules of voluminous bank, tax, and other records, including but not limited to deposits, withdrawals and wire transfers from various domestic and foreign bank accounts. Rule 1006 provides that "the contents of voluminous writings, records, or photographs which cannot conveniently be examined in court may be presented in the form of a chart, summary, or calculation . . ." Fed. R. Evid. 1006. Rule 1006 permits the introduction of such summary charts where the voluminous writings underlying the chart cannot be easily examined in court. Once admitted, a Rule 1006 exhibit constitutes substantive evidence. *See United States v. Janati*, 374 F.3d 263, 272-73 (4th Cir. 2004). The information in the government's summary exhibits will be derived from admissible evidence and in some cases from exhibits the government will introduce at trial. The Fourth Circuit has indicated that summary charts comply with Rule 1006 if the chart summarizing evidence is accurate and the underlying records are otherwise admissible as

evidence.  *Id.*  Additionally, the underlying documentation have been made available to the opposing party for examination.  The government has produced to defendant the documents underlying the summary charts and has already provided draft versions of many of these summaries.

<u>Reciprocal Discovery Request Pursuant to Fed. R. Crim. P. 16(b)(1)(C)</u>

As you know, on June 7, 2018, the government in writing requested all discovery from the defendant to which it is entitled, including expert notice.  Pursuant to Fed. R. Crim. P. 16(b)(1)(C), and the expert disclosures provided herein and in the government's numerous discovery productions beginning on November 17, 2017, the government has and again does request reciprocal disclosure of the defendant's expert or experts, if any, including a *curriculum vitae* for any such expert and a written summary of the proposed testimony by close of business Friday, July 13, 2018.  If we do not receive such notice by Friday, we intend to move to preclude any such witness presented at trial.

Respectfully submitted,

ROBERT S. MUELLER, III
Special Counsel

Dated: July 11, 2018                                     _____/s/_____

Uzo Asonye                                                  Andrew Weissmann
Assistant United States Attorney            Greg D. Andres
Eastern District of Virginia                      Special Counsel's Office
                                                                    U.S. Department of Justice
                                                                    950 Pennsylvania Avenue NW
                                                                    Washington, D.C. 20530
                                                                    Telephone: (202) 616-0800

                                                                    *Attorneys for the United States of America*

cc:   Thomas Zehnle, Esq. (via e-mail)
Richard Westling, Esq. (via e-mail)
Jay Nanavati, Esq. (via e-mail)

# EXHIBIT E

| | —Government's Proposed Exhibit List— | | | | |
|---|---|---|---|---|---|
| | U.S. v. Paul J. Manafort, Jr. (1:17-cr-201-1 (ABJ)) | | | | |
| Ex. No. | Date | Description | Obj. | Off'd | Adm. |
| 1 | | [Exhibit Removed] | | | |
| 2 | | [Exhibit Removed] | | | |
| 3 | | [Exhibit Removed] | | | |
| 4 | | [Exhibit Removed] | | | |
| 5 | 2/24/2018 | Call Detail Report | | | |
| 6 | 2/23/2018 - 3/1/2018 | Call Detail Report | | | |
| 7 | 2/25/2018 | Call Detail Report | | | |
| 8 | 2/27/2018 | Call Detail Report | | | |
| 9 | 12/28/2015 - 7/25/2017 | 2010.01.01 - 2017.07.25 P. Manafort AT&T Phone Records | | | |
| 10 | | [Exhibit Removed] | | | |
| 11 | 2001-2018 | FinCEN Certifications | | | |
| 12 | 6/1/2008 - 6/30/2008 | First Republic Bank Accounts XXXXXXX6573 and XXXXXXX7373 for Jesand | | | |
| 13 | | First Republic Bank/Pershing Account XXXXXXX5358 for J. Manafort | | | |
| 14 | 2/1/2012 - 2/29/2012 | First Republic Bank Account XXXXXXX9730 for P. and K. Manafort | | | |
| 15 | 2/10/2012 - 2/29/2012 | First Republic Bank Account XXXXXXX5868 for MC Soho | | | |
| 16 | 10/4/2013 | Pompolo Limited Incorporation Documents; United Kingdom | | | |
| 17 | 2013 | Bank Records; Pompolo Limited; United Kingdom | | | |
| 18 | 9/9/2009 | Email; Subject: RE: LOAV | | | |
| 19 | 8/21/2011 | Email; Subject: 2010 Taxes | | | |
| 20 | 9/9/2011 | Peranova Loan Agreement | | | |
| 21 | 10/4/2011 | Email; Subject: FW: 2010 tax filing | | | |
| 22 | 2011 | 2011 Davis Manafort Partners General Ledger | | | |
| 23 | 2011 | 2011 Davis Manafort Partners Financial Statements | | | |
| 24 | 2011 | 2011 P. Manafort and K. Manafort General Ledger | | | |
| 25 | 2011 | 2011 DMP International General Ledger | | | |
| 26 | 2011 | 2011 DMP International Financial Statements | | | |
| 27 | 2011 | 2011 Davis Manafort Partners Ledger Report | | | |
| 28 | 6/29/2012 | Email; Subject: Re: Foreign Accounts | | | |
| 29 | 9/6/2012 | Email; Subject: Re: DMP International, LLC tax return- DUE 9/17/12 | | | |
| 30 | 9/16/2012 | Email; Subject: FW: FINAL FINAL Questions | | | |
| 31 | 10/14/2012 | Form; P. Manafort Signed IRS Form 8879 | | | |
| 32 | 12/31/2012 | MAN001-07 DMP International | | | |
| 33 | 2012 | 2012 DMP International General Ledger | | | |
| 34 | 2012 | 2012 DMP International Financial Statements | | | |
| 35 | 2012 | 2012 P. Manafort and K. Manafort General Ledger | | | |
| 36 | 2/5/2013 | Shipment from Kositzka, Wicks and Company to P. Manafort | | | |
| 37 | 6/24/2013 | Email; Subject: Re: Foreign account report due 6/30/13 | | | |
| 38 | 8/29/2013 | Email; Subject: Paul unidentified transaction | | | |
| 39 | 9/3/2013 | Ledger Report; DMP International Ledger Reports – Peranova Entries | | | |
| 40 | 9/11/2013 | Email; Subject: Re: DMP International | | | |
| 41 | 2013 | 2013 DMP International General Ledger | | | |
| 42 | 2013 | 2013 DMP International Financial Statements | | | |
| 43 | 2013 | 2013 P. Manafort and K. Manafort Financial Statements | | | |
| 44 | 8/26/2014 | Email; Subject: RE: Paul's pending matters | | | |
| 45 | 9/2/2014 | Email; Subject: Re: Union Street | | | |
| 46 | 9/4/2014 | Email; Subject: Re: Paul's tax returns - more questions | | | |
| 47 | 12/17/2014 | Email; Subject: Call with Gates - for the 2014 file | | | |
| 48 | 2014 | 2014 DMP International General Ledger | | | |
| 49 | 2014 | 2014 DMP International Financial Statements | | | |

| Ex. No. | Date | Description | Obj. | Off'd | Adm. |
|---|---|---|---|---|---|
| 50 | 2014 | 2014 P. Manafort and K. Manafort Financial Statements | | | |
| 51 | 2014 | Form; DMP International 2014 1099-MISC Form | | | |
| 52 | 2014 | TB-01 - Adjusted Trial Balance (2014); DMP International | | | |
| 53 | 1/8/2015 | Email; Subject: Re: Trump - UBS Mortgage | | | |
| 54 | 3/19/2015 | Email; Subject: Re: NYC Property LLCs | | | |
| 55 | | [Exhibit Removed] | | | |
| 56 | 4/13/2015 | Email; Subject: RE: DMP International | | | |
| 57 | 8/26/2015 | Email; Subject: Re: Pending Items | | | |
| 58 | 9/11/2015 | Email; Subject: Re: DMP Sports Tickets | | | |
| 59 | 9/15/2015 | Email; Subject: Re: Call Me | | | |
| 60 | 9/15/2015 | Report; DMP International Ledger Report – Telmar Investments | | | |
| 61 | 10/7/2015 | Email; Subject: Re: Paul's 1040 | | | |
| 62 | 2015 | 2015 DMP International General Ledger | | | |
| 63 | 2015 | 2015 DMP International Financial Statements | | | |
| 64 | 2015 | 2015 P. Manafort and K. Manafort Financial Statements | | | |
| 65 | 2015 | TB-01 - Adjusted Trial Balance (2015); DMP International | | | |
| 66 | 3/16/2016 | Email; Subject: FW: DMP International - Open Items | | | |
| 67 | 3/25/2016 | DMP International Ledger Report re Peranova | | | |
| 68 | 4/5/2016 | Email; Subject: Re: DMP International Questions | | | |
| 69 | 4/12/2016 | Email; Subject: Re: Pending Questions | | | |
| 70 | 4/15/2016 | Email; Subject: Fwd: Pending Questions | | | |
| 71 | 9/4/2016 | Email; Subject: RE: Paul's tax returns - more questions | | | |
| 72 | 9/14/2016 | Email; Subject: Re: Updates -DMP | | | |
| 73 | 10/3/2016 | Email; Subject: Re: Paul Manafort's pending matters | | | |
| 74 | 10/4/2016 | Email; Subject: FW: Paul Manafort's pending matters | | | |
| 75 | 2016 | 2016 DMP International General Ledger | | | |
| 76 | 2016 | 2016 DMP International YTD P&L | | | |
| 77 | 2016 | 2016 DMP International YTD Financial Statement | | | |
| 78 | 2016 | 2016 DMP International Financial Statement | | | |
| 79 | 2016 | 2016 P. Manafort and K. Manafort Financial Statements | | | |
| 80 | 2001-2011 | Invoices; Selected KWC Invoices Manafort-Related Entities | | | |
| 81 | 2007-2015 | Chart; KWC Manafort Tax Returns Chart | | | |
| 82 | 2012-2016 | KWC Engagement Letters (2012-2016) | | | |
| 83 | 2013-2014 | DMP International Funds Due to Peranova | | | |
| 84 | 6/8/2017 | Report; Adjusting Journal Entries Report for the Period Ending 12/31/2014 | | | |
| 85 | 8/21/2012 | Check; A. Manafort to McEnearney | | | |
| 86 | 8/21/2012 | Sales Contract; 1046 N. Edgewood St, Arlington, VA | | | |
| 87 | 8/31/2012 | Receipt; A. Manafort Landtech Receipt | | | |
| 88 | 9/1/2012 | Email; Subject: Fwd: 1046 N. Edgewood St | | | |
| 89 | 9/10/2012 | Settlement Statement | | | |
| 90 | 9/10/2012 | Chart; Purchase of 1046 N. Edgewood St, Arlington, VA | | | |
| 91 | | Cyprus Incorporation Documents | | | |
| 92 | | Eurobank Documents | | | |
| 93 | | Hellenic Bank Documents | | | |
| 94 | | Bank of Cyprus Documents | | | |
| 95 | | Bank of Cyprus Documents | | | |
| 96 | | Accounting Records | | | |
| 97 | | Hellenic Bank Documents | | | |
| 98 | | Certificate of Authenticity; Cyprus Incorporation Documents (91) | | | |
| 99 | | Certificate of Authenticity; Eurobank Documents (92) | | | |
| 100 | | Certificate of Authenticity; Hellenic Bank Documents (93) | | | |
| 101 | | Certificate of Authenticity; Bank of Cyprus (94) | | | |
| 102 | | Certificate of Authenticity; Bank of Cyprus (95) | | | |
| 103 | | Certificate of Authenticity; Accounting Records (96) | | | |
| 104 | | Certificate of Authenticity; Hellenic Bank (97) | | | |
| 105 | | St. Vincent and the Grenadines Documents | | | |

| Ex. No. | Date | Description | Obj. | Off'd | Adm. |
|---|---|---|---|---|---|
| 106 | | St. Vincent and the Grenadines Documents | | | |
| 107 | | St. Vincent and the Grenadines Documents | | | |
| 108 | | Certificate of Authenticity; St. Vincent and the Grenadines Documents (105) | | | |
| 109 | | Certificate of Authenticity; St. Vincent and the Grenadines Documents (106) | | | |
| 110 | | Certificate of Authenticity; St. Vincent and the Grenadines Documents (107) | | | |
| 111 | | [Exhibit Removed] | | | |
| 112 | | [Exhibit Removed] | | | |
| 113 | | [Exhibit Removed] | | | |
| 114 | | [Exhibit Removed] | | | |
| 115 | | [Exhibit Removed] | | | |
| 116 | | [Exhibit Removed] | | | |
| 117 | | [Exhibit Removed] | | | |
| 118 | | [Exhibit Removed] | | | |
| 119 | | [Exhibit Removed] | | | |
| 120 | | [Exhibit Removed] | | | |
| 121 | 9/14/2014 | Email; Subject: RE: MC Soho Holdings | | | |
| 122 | 2/24/2015 | Email; Subject: RE: DMP International | | | |
| 123 | 8/26/2015 | Email; Subject: RE: DMP International LLC | | | |
| 124 | 8/31/2015 | Email; Subject: FW: Income | | | |
| 125 | | [Exhibit Removed] | | | |
| 126 | 9/13/2016 | Email; Subject: RE: Manafort related entities - due by 9/15 | | | |
| 127 | | [Exhibit Removed] | | | |
| 128 | 12/1/2012 - 12/31/2012 | Bank Records; TD Bank Trust Account XXXXXX5374 for B. Baldinger | | | |
| 129 | | [Exhibit Removed] | | | |
| 130 | | Documents; Non-Vendor Payments Allowed | | | |
| 131 | 1/24/2012 | Email; Subject: Transfers | | | |
| 132 | 3/3/2011 | P&L Statement; Davis Manafort Partners, Inc. | | | |
| 133 | 4/15/2011 | P&L Statement; Davis Manafort Partners, Inc. | | | |
| 134 | | FRB Account 6524 for DMP Intl | | | |
| 135 | 3/22/2011 | Big Picture Solutions Bank records (2011-2013) | | | |
| 136 | | Big Picture Solutions Bank records (2013-2014) | | | |
| 137 | | Mercedes-Benz of Alexandria Bank Statement and Wire | | | |
| 138 | | KWC Tax Organizers for P. Manafort | | | |
| 139 | | P. Manafort American Express Records | | | |
| 140 | | Bank Records; Wachovia Account -6368 | | | |
| 141 | 2005, 2007, 2008 | Davis Manafort Partners Trial Balance | | | |
| 200 | 2008 | P. Manafort 2008 Passport | | | |
| 201 | 2016 | P. Manafort 2016 Passport | | | |
| 202 | | [Exhibit Removed] | | | |
| 203 | 2009 | R. Gates 2009 Passport | | | |
| 204 | 2011 | R. Gates 2011 Passport | | | |
| 205 | 2013 | R. Gates 2013 Passport | | | |
| 206 | 2010 | 1040 Paul J. Manafort 2010 (certified) | | | |
| 207 | 2011 | 1040 Paul J. Manafort 2011 (certified) | | | |
| 208 | 2012 | 1040 Paul J. Manafort 2012 (certified) | | | |
| 209 | 2013 | 1040 Paul J. Manafort 2013 (certified) | | | |
| 210 | 2014 | 1040 Paul J. Manafort 2014 (certified) | | | |
| 211 | 2011 | 1065 DMP International 2011 (certified) | | | |
| 212 | 2012 | 1065 DMP International 2012 (certified) | | | |
| 213 | 2013 | 1065 DMP International 2013 (certified) | | | |
| 214 | 2014 | 1065 DMP International 2014 (certified) | | | |
| 215 | 2012-2014 | 1065 MC Brooklyn 2012-2014 (lack of records) | | | |

| Ex. No. | Date | Description | Obj. | Off'd | Adm. |
|---|---|---|---|---|---|
| 216 | 2012-2014 | 1065 MC Soho 2012-2014 (lack of records) | | | |
| 217 | 2015 | 1065 MC Soho 2015 (certified) | | | |
| 218 | 2016 | 1065 MC Soho 2016 (certified) | | | |
| 219 | 2010 | 1120S Davis Manafort Partners 2010 (certified) | | | |
| 220 | 2011 | 1120S Davis Manafort Partners 2011 (certified) | | | |
| 221 | 2012-2014 | 1120S Davis Manafort Partners 2012-2014 (lack of records) | | | |
| 222 | 2010 | 1120S John Hannah 2010 (certified) | | | |
| 223 | 2011 | 1120S John Hannah 2011 (certified) | | | |
| 224 | 2012 | 1120S John Hannah 2012 (certified) | | | |
| 225 | 2013 | 1120S John Hannah 2013 (certified) | | | |
| 226 | 2014 | 1120S John Hannah 2014 (certified) | | | |
| 227 | 2005-2007 | 1040; Paul J. Manafort Tax Transcript | | | |
| 300 | 3/21/2011 | Email; Subject: update | | | |
| 301 | 8/27/2013 | Email; Subject: Statement 7-23-13 | | | |
| 302 | 3/24/2014 | Email; Subject: Wire transfers | | | |
| 303 | 2010-2014 | Invoices; Alan Couture (2010-2014) | | | |
| 304 | | Vendor Chart; Alan Couture | | | |
| 305 | | Bank Records; Alan Couture | | | |
| 306 | 2010 | Invoices; Alan Couture (2010) | | | |
| 307 | 2011-2014 | Invoices; Big Picture Solutions (2011-2014) | | | |
| 308 | | Vendor Chart – Big Picture Solutions | | | |
| 309 | 10/26/2012 | Email; Subject: Manafort Project, Edgewood St, Arlington, VA | | | |
| 310 | 11/19/2012 | Email; Subject: Re: Contract | | | |
| 311 | 11/30/2012 - 2/28/2013 | Bank Records; Federal Stone and Brick | | | |
| 312 | 5/29/2013 | Email; Subject: Re: Invoice from Federal Stone and Brick | | | |
| 313 | | Draft of Pergola | | | |
| 314 | | Photograph; Pergola | | | |
| 315 | | Photograph; Backyard | | | |
| 316 | 2010-2012 | Invoices; House of Bijan (2010-2012) | | | |
| 317 | 2010-2012 | Bank Records; House of Bijan | | | |
| 318 | | Vendor Chart; House of Bijan | | | |
| 319 | | Vendor Chart; Mercedes-Benz of Alexandria | | | |
| 320 | | Photographs; Mercedes-Benz owned by P. Manafort | | | |
| 321 | 10/1/2012 | Invoice; K. Manafort Purchase of Mercedes-Benz SL550 | | | |
| 322 | 10/1/2012 | Buyers Order; K. Manafort Purchase of Mercedes-Benz SL550 | | | |
| 323 | 10/1/2012 | K. Manafort Promissory Note for Mercedes-Benz SL550 | | | |
| 324 | 10/5/2012 | Wire; $62,750 Wire Transfer from Lucicle Consultants Limited to Mercedes-Benz of Alexandria | | | |
| 325 | | Vendor Chart; New Leaf Landscape | | | |
| 326 | 2010-2014 | Invoices; New Leaf Landscape (2010-2014) | | | |
| 327 | 2011-2013 | Bank Records; New Leaf Landscape | | | |
| 328 | 6/21/2012 | Proposal | | | |
| 329 | | Photograph; Bridgehampton Driveway | | | |
| 330 | | Photograph; Bridgehampton Pond | | | |
| 331 | | Photograph; Bridgehampton Side of House | | | |
| 332 | | Photograph; Bridgehampton Pergola | | | |
| 333 | | Photograph; Bridgehampton Pool House | | | |
| 334 | | Photograph; Bridgehampton Putting Green | | | |
| 335 | | Vendor Chart; SP&C | | | |
| 336 | | Bank Records; SP&C Home Improvement | | | |
| 337 | 2010-2014 | Invoices; SP&C Home Improvement (2010-2014) | | | |
| 338 | | Photograph; Backyard | | | |
| 339 | | Photograph; Basement | | | |
| 340 | | Photograph; Front of House | | | |
| 341 | | Photograph; Kitchen | | | |
| 342 | | Photograph; Side of House (1) | | | |

| Ex. No. | Date | Description | Obj. | Off'd | Adm. |
|---|---|---|---|---|---|
| 343 | | Photograph; Side of House (2) | | | |
| 344 | | Photograph; Waterfall Pond | | | |
| 345 | | Photograph; Palm Beach Gardens House | | | |
| 346 | | Photograph; Outdoor Kitchen | | | |
| 347 | 3/23/2014 | Email; Subject: Re: Wire | | | |
| 400 | 2010 | Chart; FBAR Chart for 2010 | | | |
| 401 | 2011 | Chart; FBAR Chart for 2011 | | | |
| 402 | 2012 | Chart; FBAR Chart for 2012 | | | |
| 403 | 2013 | Chart; FBAR Chart for 2013 | | | |
| 404 | 2014 | Chart; FBAR Chart for 2014 | | | |
| 405 | | Chart; P. Manafort Foreign Entities | | | |
| 406 | | Chart; P. Manafort Foreign Bank Accounts | | | |
| 407 | | Chart; Aegis Holdings Payments | | | |
| 408 | | Chart; Alan Couture Payments | | | |
| 409 | | Chart; Big Picture Solutions Payments | | | |
| 410 | | Chart; Federal Stone & Brick Payments | | | |
| 411 | | Chart; House of Bijan Payments | | | |
| 412 | | Chart; J&J Oriental Rug Gallery Payments | | | |
| 413 | | Chart; Land Rover of Alexandria Motors Payments | | | |
| 414 | | Chart; Mercedes-Benz of Alexandria Payments | | | |
| 415 | | Chart; New Leaf Landscape Payments | | | |
| 416 | | Chart; Sabatello Construction Payments | | | |
| 417 | | Chart; Scott Wilson Landscaping Payments | | | |
| 418 | | Chart; Sensoryphile Payments | | | |
| 419 | | Chart; SP&C Home Improvement Payments | | | |
| 420 | | Chart; Property Overview | | | |
| 421 | | Chart; Payment Flow Chart for 29 Howard St Property | | | |
| 422 | | Chart; Payment Flow Chart for 1046 N Edgewood St Property | | | |
| 423 | | Chart; Payment Flow Chart for 377 Union St Property | | | |
| 424 | | Chart; Vendor and Property Payments From Foreign Bank Accounts | | | |
| 425 | | Chart; Deposit Analysis – Foreign Source of Funds Received by Foreign Accounts | | | |
| 426 | | Chart; P. Manafort Summary of Tax Returns | | | |
| 427 | | Summary of Foreign Wires to 3rd Party Vendors for the Benefit of Paul Manafort | | | |
| 428 | | Chart; P. Manafort Reported Personal Income | | | |
| 429 | | Chart; Analysis of Foreign Bank Accounts | | | |
| 430 | | Chart; Selected Transactions | | | |
| 431 | 2012 | Chart; Comparison of Receipts Reported on Foreign Agents Registration Act Filing to Receipts Reported in DMP International LLC Financial Records | | | |
| 432 | 2013 | Chart; Comparison of Receipts Reported on Foreign Agents Registration Act Filing to Receipts Reported in DMP International LLC and Smythson LLC Financial Records | | | |
| 433 | 2014 | Chart; Comparison of Receipts Reported on Foreign Agents Registration Act Filing to Receipts Reported in DMP International LLC Financial Records | | | |
| 434 | | Chart; Money Laundering Transfers | | | |
| 435 | | Chart; 2014 Summary of Unreported Income of DMP International LLC from Reclassification of Telmar Loan | | | |
| 436 | | Chart; Summary of FARA Payments By Consultant | | | |
| 437 | | Chart; Payments from Foreign Entities to Entities Performing Work in the United States | | | |
| 438 | | Chart; False and Misleading Foreign Agents Registration Act Statements in Counts 4 and 5 | | | |
| 439 | | Chart; European Centre for a Modern Ukraine | | | |

| Ex. No. | Date | Description | Obj. | Off'd | Adm. |
|---|---|---|---|---|---|
| 440 | | Chart; Foreign Agents Registration Act History | | | |
| 441 | | Chart; Government Relations Activity & Government Relations Activity: Paul Manafort | | | |
| 442 | | Chart; Public Relations Activity | | | |
| 443 | | Chart; Outreach to Congressman Rohrabacher | | | |
| 444 | | Chart; Skadden Report | | | |
| 445 | | Chart; Skadden Report: New York Times Outreach | | | |
| 446 | | Chart; Visits to the United States | | | |
| 500 | 6/2/2005 | Memo; Re: Major Development in US Government Position on Ukraine Re-privatization | | | |
| 501 | 7/6/2005 | Memo; Subject: Evolution of US Policy to Ukraine | | | |
| 502 | 5/24/2012 | Press Release; Subject: Ministry of Justice Commissions Independent Review of the Yulia Tymoshenko Prosecution by International Experts | | | |
| 503 | 6/25/2012 | Memo; Subject: Going on Offense - Ukraine Action Plan for Europe and US | | | |
| 504 | 6/27/2012 | Memo; Filename: UKR SUPER VIP GROUP MEMO | | | |
| 505 | 7/3/2012 | Memo; Subject: Program to Conduct Briefings of Embassies, Media and NGOS | | | |
| 506 | 7/10/2012 | Memo; Ohkendovsky - US Visit | | | |
| 507 | 7/15/2012 | Document; Subject: Projects and Activities approved at the meeting between Klyuyev, Geller and Kaluzhny on July 12 | | | |
| 508 | 8/5/2012 | Memo; Subject: State of PoR Campaign As Official Campaign Begins | | | |
| 509 | 8/20/2012 | Memo; SUBJECT: OSCE-ODIHR Priorities & Recommended Actions to Deal with These Priorities | | | |
| 510 | 8/26/2012 | Memo; Re: Meeting with Erol Olcoc | | | |
| 511 | 9/1/2012 | Skadden Report | | | |
| 512 | 9/27/2012 | Memo; US EMBASSY PLAN | | | |
| 513 | | [Exhibit Removed] | | | |
| 514 | 10/1/2012 | Memo; Subject: EI Program | | | |
| 515 | 10/2/2012 | Memo; Jonathan Hawker | | | |
| 516 | 10/8/2012 | Memo; Subject: State of Campaign - 3 Weeks to Election Day | | | |
| 517 | 10/9/2012 | Memo; Subject: Observer Group Strategy Team | | | |
| 518 | 10/9/2012 | Memo; Subject: Translation expenses | | | |
| 519 | 10/15/2012 | Memo; Subject: AP Q & A | | | |
| 520 | 6/18/2005 | Memo; Basel Presentation | | | |
| 521 | 6/23/2005 | Memo; Subject: Political, Lobbying and Legal Program for CIS | | | |
| 522 | 6/25/2005 | Memo; OVD memo | | | |
| 523 | 8/10/2005 | Memo; Subject: BVK Situation, DM Strategy | | | |
| 524 | 1/3/2006 | Memo; Subject: Messages for January Next Wave of Television and Radio Ads | | | |
| 525 | 4/27/2006 | Memo; Subject: Update - Overview by Country | | | |
| 526 | 9/24/2008 | Memo; Subject: Ambassador Taylor Meeting | | | |
| 527 | 3/24/2009 | Letter from Manafort to VFY | | | |
| 528 | 4/20/2009 | Memo: Subject: Cyprus | | | |
| 529 | 4/20/2009 | Memo: Subject: Cyprus | | | |
| 530 | 1/31/2010 | Memo; Subject: Final Week - Strategy, Tactics and Messages | | | |
| 531 | 2/16/2010 | Memo; Subject: Professional Team – Bonuses | | | |
| 532 | 2/20/2010 | Memo; Subject: Launch of Public Affairs Plan | | | |
| 533 | 2/22/2010 | Memo; RE: Wire Transfer Details for Personal Bonuses | | | |
| 534 | 2009 - 2010 | Invoices; Sensoryphile | | | |
| 535 | 4/6/2010 | Memo; Subject: SL Staff Meeting | | | |
| 536 | 4/9/2010 | Memo; Subject: Goals of US Trip | | | |
| 537 | 6/1/2010 | Email; Subject: Q and A for VY | | | |
| 538 | 6/2/2010 | Email; Subject: Press and Diplomatic Package | | | |
| 539 | 6/18/2010 | Memo; Subject: Update on Key Policy Initiatives and Elections Strategy | | | |
| 540 | 6/30/2010 | Email; Subject: Local election program | | | |
| 541 | 8/10/2010 | Email; Subject: First TV spot | | | |

| Ex. No. | Date | Description | Obj. | Off'd | Adm. |
|---|---|---|---|---|---|
| 542 | 10/4/2012 | Email; Subject: brochures | | | |
| 543 | 3/2/2011 | Memo; Subject: Biden call today – News from Washington | | | |
| 544 | 3/24/2011 | Email; Subject: Transfers from Leviathan | | | |
| 545 | 7/13/2011 | Email; Subject: Thank you for digest | | | |
| 546 | 7/17/2011 | Email; Subject: FW: Re: On the roadmap | | | |
| 547 | 7/21/2011 | Email; Subject: Digital Roadmap | | | |
| 548 | 7/29/2011 | Email; Subject: О таблицах | | | |
| 549 | 9/21/2011 | Email; Subject: WSJ address | | | |
| 550 | 10/11/2011 | Memo; Subject: Consulting Payments | | | |
| 551 | 10/16/2011 | Email; Subject: FW: here is the two pager | | | |
| 552 | 11/8/2011 | Proposal; Signed SP&C Home Improvement Renovation Proposal for 174 Jobs Lane | | | |
| 553 | 11/29/2011 | Email; Subject: Payments | | | |
| 554 | | [Exhibit Removed] | | | |
| 555 | | [Exhibit Removed] | | | |
| 556 | 2/16/2012 | Proposal; Signed SP&C Home Improvement Renovation Proposal for 29 Howard St | | | |
| 557 | 2/24/2012 | Email; Subject: our message is getting across..please see this 3 minute item...important | | | |
| 558 | 3/6/2012 | Email; Subject: Questions you asked me to check | | | |
| 559 | | [Exhibit Removed] | | | |
| 560 | 3/7/2012 | Email; Subject: meeting next week | | | |
| 561 | 3/11/2012 | Email; Subject: Re: my schedule & agenda | | | |
| 562 | 3/22/2012 | Email; Subject: Re: Canw e please touch base today? | | | |
| 563 | 3/14/2012 | Email; Subject: here you go | | | |
| 564 | 3/16/2012 | Email; Subject: срочная просьба | | | |
| 565 | 4/5/2012 | Email; Subject: President VFY | | | |
| 566 | | [Exhibit Removed] | | | |
| 567 | 4/10/2012 | Email; Subject: VP and SL request | | | |
| 568 | 4/11/2012 | Email chain; Subject: Re: AC Update | | | |
| 569 | 4/11/2012 | Email; Subject: небольш просьба | | | |
| 570 | 4/12/2012 | Email chain; Subject: Fwd: FBC | | | |
| 571 | 4/12/2012 | Email; Subject: еще один док для СВ | | | |
| 572 | 4/27/2012 | Email; Subject: Enquiry | | | |
| 573 | 4/29/2012 | Email; Subject: пара страниц | | | |
| 574 | 5/2/2012 | Email; Subject: Fw: Euro 2012 Scripts | | | |
| 575 | 5/3/2012 | Email; Subject: Memo on Press conference | | | |
| 576 | 5/8/2012 | Email chain; Subject: Re: Antw.: US Consultants | | | |
| 577 | | [Exhibit Removed] | | | |
| 578 | 5/21/2012 | Email chain; Subject: Re: Interviews in Washington | | | |
| 579 | 5/23/2012 | Email; Subject: Confidential | | | |
| 580 | 5/24/2012 | Email; Subject: On draft Senate resolution | | | |
| 581 | 5/29/2012 | Email; Subject: Your interview to Bloomberg | | | |
| 582 | 6/4/2012 | Email; Subject: ST documents | | | |
| 583 | 6/6/2012 | Email; Subject: On new addressee | | | |
| 584 | 6/20/2012 | Memo; Subject: Polling Special Project | | | |
| 585 | 7/12/2012 | Email; Subject: EI Outreach - International Plan | | | |
| 586 | 7/13/2012 | Email; Subject: Demidko documents - Party program | | | |
| 587 | 7/14/2012 | Email; Subject: testimonials, Accomplishments, schedule | | | |
| 588 | 8/20/2012 | Memo; SUBJECT: OSCE-ODIHR Priorities & Recommended Actions to Deal with These Priorities | | | |
| 589 | 9/15/2012 | Email; Subject: Lobby efforts | | | |
| 590 | 9/23/2012 | Email chain; Subject: Re: интервью | | | |
| 591 | 9/22/2012 | Email; Subject: FW: Statement on Durbin actions | | | |
| 592 | 9/23/2012 | Email; Subject: щас на русском пришлю | | | |
| 593 | 9/24/2012 | Email; Subject: FW: the MFA statutemen | | | |
| 594 | 9/24/2012 | Memo; Re: Our Current Washington Strategy and Post Elections Plan | | | |

| Ex. No. | Date | Description | Obj. | Off'd | Adm. |
|---|---|---|---|---|---|
| 595 | 9/28/2012 | Memo; Re: Meeting in NYC with Aleksander Kwasnieski | | | |
| 596 | 10/6/2012 | Email; Subject: Memo on campaign Status | | | |
| 597 | 10/14/2012 | Email; Subject: EI MEMO | | | |
| 598 | 10/27/2012 | Email chain; Subject: Re: We dragged it out of them to enhance our opportunities | | | |
| 599 | 12/11/2012 | Email; Subject: Executive Summary | | | |
| 600 | 8/25/2012 | Memo; Re: Opportunities with New European Ambassadors | | | |
| 601 | 1/11/2013 | Document; Subject: US Consultants - Ina per AK Jan 11, 2013 | | | |
| 602 | 1/15/2013 | VY Agenda | | | |
| 603 | 1/24/2013 | Email; Subject: Do not want to bother Paul | | | |
| 604 | 2/4/2013 | Memo; Subject: US Government Activity | | | |
| 605 | | [Exhibit Removed] | | | |
| 606 | 2/21/2013 | Memo; Subject: Hapsburg - Update | | | |
| 607 | 2/21/2013 | Email Subject: Esche 1 dok | | | |
| 608 | 3/1/2013 | Proposal; SP&C Proposal for Whooping Hollow Road | | | |
| 609 | 3/5/2013 | Filename; VFY US activity report 3-1-2013 RUS.doc | | | |
| 610 | 3/12/2013 | Email; Subject: Проди | | | |
| 611 | 3/16/2013 | Email chain; Subject: Re: Washington Memo | | | |
| 612 | 3/18/2013 | Memo; Subject: Meeting with Under Secretary Wendy Sherman | | | |
| 613 | 3/21/2013 | Agenda; R. Gates Agenda | | | |
| 614 | 4/5/2013 | Memo; Subject: re PR Effort this week in Kyiv | | | |
| 615 | 4/19/2013 | Email chain; Subject: FW: IPR Strategic Communications Proposal | | | |
| 616 | 4/22/2013 | Memo; Subject: US Consultants – Quarterly Report | | | |
| 617 | 4/25/2013 | Memo; Subject: re Summary of Overdue Accounts | | | |
| 618 | 5/15/2013 | Memo; re May 17 Rallies | | | |
| 619 | 5/17/2013 | Email chain; Subject: Re: Draft | | | |
| 620 | 5/17/2013 | Email; Subject: Re: did you talk to SL about DFIAC? | | | |
| 621 | 6/5/2013 | Email; Subject: FW: AG Briefing Book | | | |
| 622 | 6/5/2013 | Email; Subject: Re: Meeting with former PM Gusenbauer re Ukraine/ change of venue | | | |
| 623 | 6/21/2013 | Email; Subject: Evrei | | | |
| 624 | 6/26/2013 | Email; Subject: Emailing: 130626 UKR SL memo on Durbin resolution .docx | | | |
| 625 | 7/17/2013 | Email; Subject: Re: pretty darn stupid | | | |
| 626 | 7/17/2013 | Email; Subject: Exclusive: How Ukraine Wooed Conservative Websites | | | |
| 627 | 7/27/2013 | Email; Subject: Re: doc for your edits | | | |
| 628 | 7/28/2013 | Email; Subject: Re: Talking points for SL | | | |
| 629 | 7/29/2013 | Calendar; Subject: lUNCH = PRESIDENT VFY | | | |
| 630 | 9/20/2013 | Email; Subject Yiakora | | | |
| 631 | 9/25/2013 | Calendar; Subject: Breakfast - VFY | | | |
| 632 | 10/4/2013 | Email; Subject: Re: Codel visit | | | |
| 633 | 10/18/2013 | Calendar; Subject: VFY | | | |
| 634 | 11/18/2013 | Email; Subject: небольшой документ | | | |
| 635 | 12/21/2013 | Calendar; Subject: Lunch. Pres VFY | | | |
| 636 | 1/24/2014 | Email; Subject: Re: Payments/Transfers | | | |
| 637 | 2/4/2014 | Calendar; Subject: President VFY | | | |
| 638 | 3/19/2014 | Email; Subject: Serangon Holdings Limited | | | |
| 639 | Sep. 2014 | Ukraine OB Campaign Strategy Powerpoint | | | |
| 640 | 4/22/2014 | Bill of Materials; Big Picture Solutions | | | |
| 641 | 4/28/2014 | Invoice; Big Picture Solutions #INV-114006 | | | |
| 642 | 4/29/2014 | Email; Subject: Re: Campaign TPs and Events | | | |
| 643 | 5/2/2014 | Email; Subject: Cyprus Companies | | | |
| 644 | 5/24/2014 | Email; Subject: Organization of Package of documents | | | |
| 645 | 9/24/2014 | OB Daily Talking Points | | | |
| 646 | 10/7/2014 | Memo; Subject: re OB Campaign Leaflets | | | |
| 647 | 10/29/2014 | Memo; Subject: Roadmap for November-December 2014 | | | |
| 648 | 12/13/2014 | Email; Subject: con call this morning - around 800am | | | |

| Ex. No. | Date | Description | Obj. | Off'd | Adm. |
|---|---|---|---|---|---|
| 649 | 4/17/2015 | Email; Subject: Tax - Extensions | | | |
| 650 | 6/23/2015 | Document; Peranova Loan Forgiveness Letter | | | |
| 651 | 7/10/2015 | Email; Subject: Re: Contract for 1 | | | |
| 652 | 8/25/2015 | Email; Subject: RE: Contract for 1 | | | |
| 653 | 8/28/2015 | Email; Subject: RE: FYI | | | |
| 654 | 9/15/2015 | Email; Subject: Re: Forms | | | |
| 655 | 9/15/2015 | Email; Subject: DMP Loan | | | |
| 656 | 9/16/2015 | Email; Subject: DMP International, LLC | | | |
| 657 | 9/16/2015 | Email; Subject: Re: Loan doc? | | | |
| 658 | 9/23/2015 | Email; Subject: Media Buy | | | |
| 659 | | [Exhibit Removed] | | | |
| 660 | | [Exhibit Removed] | | | |
| 661 | | [Exhibit Removed] | | | |
| 662 | 2/4/2016 | Email; Subject: RE: DMP Int'l Income Question | | | |
| 663 | 4/5/2016 | Email; Subject: Re: DMP International Questions | | | |
| 664 | | [Exhibit Removed] | | | |
| 665 | 8/12/2016 | Email; Subject: RE: Associated Press | | | |
| 666 | | [Exhibit Removed] | | | |
| 667 | 9/5/2016 | Email Subject: Docs | | | |
| 668 | 9/13/2016 | Email; Subject: Re: Updates -DMP | | | |
| 669 | 10/6/2016 | Email; Subject: RE: up to date? | | | |
| 670 | 10/7/2016 | Email; Subject: Lola Partners, LLC and draft gift tax returns | | | |
| 671 | 8/25/2016 | Email; Subject: Re: Invoice | | | |
| 672 | 2/27/2018 | UFED Report | | | |
| 673 | 2/27/2018 | Email; Subject: Greetings from old friend | | | |
| 674 | 2/27/2018 | Email; Subject: Re: Strategic COmmunications Report for the Minister | | | |
| 675 | 4/9/2010 | Memo; Re: PrivateDinner – USG & International Institution Officials | | | |
| 676 | 2012-2013 | MC Brooklyn Holdings Ledger | | | |
| 677 | 2012 | KWC Tax Organizers for P. Manafort | | | |
| 678 | | Proposal; SP&C Home Improvement Proposal for 174 Jobs Lane | | | |
| 679 | | Photographs; Clothing with Alan Couture Labels | | | |
| 680 | | Photographs; Clothing with House of Bijan Labels | | | |
| 681 | | Photographs; House of Bijan Watch | | | |
| 682 | | Documents; J&J Oriental Rug Gallery Documents | | | |
| 683 | | Contacts; P. Manafort Contact List | | | |
| 684 | | First Republic Bank Account XXXXXXX6524 for DMP International | | | |
| 685 | 3/24/2015 | Email; Subject OB Contract 2015 FINAL FINAL | | | |
| 686 | | Email; Subject: BVK Memo | | | |
| 687 | 5/10/2005 | Memo; Subject: First 100 Days of the Yushchenko Administration - Foundation for Lobbying Program | | | |
| 688 | 3/29/2010 | Email; Subject: VFY US Trip | | | |
| 689 | 4/13/2010 | Guest List; Dinner IHO President Victor Yanukovych | | | |
| 690 | 2/1/2013 | Document; RG TO DO | | | |
| 691 | 2/24/2013 | Memo; Subject: Hapsburg Activities Update and URGENT ACTION REQUEST | | | |
| 692 | 2/26/2013 | Memo; Subject: Portnov – US Visit | | | |
| 693 | 3/2/2013 | Document; [Untitled] | | | |
| 694 | 3/16/2013 | Memo; Subject: RP Trip to Washington | | | |
| 695 | 3/23/2013 | Memo; Subject: US Consultants Activity – Weekly Update | | | |
| 696 | 4/7/2013 | Memo; Subject: Hapsburg - April/May Plan | | | |
| 697 | 4/21/2013 | Memo; Subject: US Consultants Activity – Weekly Update | | | |
| 698 | 4/25/2013 | Memo; Subject: Communications Strategy on Intellectual Property Rights Issue | | | |
| 699 | 4/25/2013 | Memo; Subject: Summary of Accounts Overdue | | | |
| 700 | 5/7/2013 | Schedule; Sergeiy Kluyiev | | | |
| 701 | 5/8/2013 | Schedule; Leonid Kozhara | | | |
| 702 | 5/8/2013 | Schedule; Sergeiy Kluyiev | | | |

| Ex. No. | Date | Description | Obj. | Off'd | Adm. |
|---|---|---|---|---|---|
| 703 | 5/8/2013 | Meeting Summaries; Sergeiy Kluyiev | | | |
| 704 | 5/13/2013 | Meeting Summaries; Leonid Kozhara | | | |
| 705 | 5/14/2013 | Memo; Subject: Washington, DC Visits – Kozhara and Kluyiev | | | |
| 706 | 6/9/2013 | Memo; AG Trip Report | | | |
| 707 | 6/17/2013 | Memo; Subject: Ledger Update | | | |
| 708 | 7/10/2013 | Memo; Subject: Hapsburg and US | | | |
| 709 | | [Exhibit Removed] | | | |
| 710 | 7/22/2014 | Memo; Subject: Wire Payments | | | |
| 711 | 3/11/2015 | Email; Subject: FINAL | | | |
| 712 | 4/25/2013 | Document; Kyiv Agenda, Week of April 23 | | | |
| 713 | none | Outline; PJM Presentation to Weekly Campaign Management Meeting | | | |
| 714 | 4/14/2007 | Memo; Subject: FARA Registration | | | |
| 715 | 8/15/2016 | Email; Subject: Re: First cut | | | |
| 716 | 9/24/2012 | Email; Subject: shit | | | |
| 717 | 8/21/2012 | Email; Subject: Gorshenyn | | | |
| 718 | 5/9/2012 | Email; Subject: RE: Contracts | | | |
| 719 | 5/14/2013 | Email; Subject: Fwd: VY Memo on LK/SK trip to DC | | | |
| 720 | 6/26/2013 | Memo; Subject: Durbin Resolution - S. 165 | | | |
| 721 | 6/7/2013 | Email; Subject: Re: Next Klyuyev visit | | | |
| 722 | 4/22/2013 | Memo; Subject: US Consultants - Quarterly Report | | | |
| 723 | | Memo; Subject: Translation expenses | | | |
| 724 | 3/23/2013 | Memo; Subject: US Consultants Activity - Weekly Update | | | |
| 725 | 5/11/2015 | Email; Subject: Updates | | | |
| 726 | 12/20/2012 | Memo; Subject: 2012 Taxes | | | |
| 727 | 9/25/2015 | Email; Subject: Update | | | |
| 728 | | Agenda; Conf call RG Saturday December 11 | | | |
| 729 | | Agenda; Rick Agenda Business | | | |
| 730 | | Gates - payments | | | |
| 731 | | Actinet BOC Account Documents | | | |
| 732 | | Actinet Hellenic Account Documents | | | |
| 733 | | Black Sea BOC Account Documents | | | |
| 734 | | Bletilla BOC Account Documents | | | |
| 735 | | Bletilla Hellenic Account Documents | | | |
| 736 | | Global Endeavour Loyal Bank Account Documents | | | |
| 737 | | Gloval Highway BOC Account Documents | | | |
| 738 | | Jeunet Loyal Bank Account Documents | | | |
| 739 | | Leviathan BOC Account Documents | | | |
| 740 | | LOAV BOC Account Documents | | | |
| 741 | | Lucicle BOC Account Documents | | | |
| 742 | | Lucicle Hellenic Statements | | | |
| 743 | | Marziola Hellenic and BOC Account Documents | | | |
| 744 | | Olivenia Hellenic and BOCC Account Documents | | | |
| 745 | | Peranova BOC Account Documents | | | |
| 746 | | Serangon BOC Account Documents | | | |
| 747 | | Yiakora BOC Account Documents | | | |
| 800 | | Certificates of Authenticity | | | |
| 801 | | Photograph; 1046 N Edgewood Street, Arlington, VA | | | |
| 802 | | Photograph; 29 Howard Street, New York, NY | | | |
| 803 | | Photograph; 377 Union Street, Brooklyn, NY | | | |
| 804 | | Photograph; 601 N Fairfax Street, Alexandria, VA | | | |
| 805 | | Photograph; 174 Jobs Lane, Bridgehampton, NY | | | |
| 806 | | [Intentially Left Blank] | | | |
| 807 | 9/13/2013 | Email; Subject: FW Paul's tax return questions - including 3rd qtr est - due 9/16 | | | |
| 808 | 4/11/2012 | Email; Subject: небольш просьба | | | |
| 809 | 4/18/2011 | Email; Subject: 2010 Extension | | | |
| 810 | 4/14/2012 | Email; Subject: Mirror Cube Films | | | |

| Ex. No. | Date | Description | Obj. | Off'd | Adm. |
|---|---|---|---|---|---|
| 811 | 12/14/2012 | Email; Subject: Tax planning and year end issues | | | |
| 812 | 3/19/2013 | Email; Subject: Ameriprise Statement of income 2012 | | | |
| 813 | 9/10/2014 | Email; Subject: Summary of Call Today | | | |
| 814 | 6/1/2015 | Email; Subject: LilRED | | | |
| 815 | 4/30/2012 | Email; Subject: May Payments | | | |
| 816 | 9/26/2012 | Email; Subject: Payments | | | |
| 817 | 11/27/2012 | Email; Subject: Payments | | | |
| 818 | 10/15/2012 | Monday Agenda - Oct 15, 2012 | | | |
| 819 | | P. Manafort Flight Manifests | | | |
| 820 | 12/24/2014 | Email; Subject: Re: Wire Today | | | |
| 821 | 4/2/2014 | Email; Subject: JAM MOVE & BABY ROUGH PLAN | | | |
| 822 | 4/14/2014 | Email; Subject: List of furniture to move | | | |
| 823 | 8/16/2016 | Email; Subject: 2016 DMP P&L | | | |
| 824 | 3/31/2015 | Email; Subject: DMP International - Open Items | | | |
| 825 | 9/14/2016 | Email; Subject: Daisy | | | |
| 826 | 1/7/2015 | Email; Subject Paul Manafort 11 E. 29th Street Rent | | | |
| 827 | 5/9/2012 | Email; Subject: Results of Tymo Hospital TRACE News Story | | | |
| 828 | 6/25/2012 | Email; Subject: Analysis of EPP and PACE resolutions - Creating the Fall Offensive | | | |
| 829 | 9/19/2012 | Email; Subject: Re: an urgent request ON IT | | | |
| 830 | 9/22/2012 | Email; Subject: Fw: promised docs | | | |
| 831 | 9/25/2012 | Email; Subject: Re Final Coverage Report of Vienna Conference | | | |
| 832 | 9/25/2012 | Email; Subject: Libel bill | | | |
| 833 | 9/28/2012 | Email; Subject: Fw: eyes only | | | |
| 834 | 10/9/2012 | Email; Subject: Re: Collection of documents to use to Promote Election Credibility and Fairness | | | |
| 835 | 10/15/2012 | Email; Subject: Fw: Op Ed | | | |
| 836 | 10/20/2012 | Email; Subject: PR Doc | | | |
| 837 | 10/24/2012 | Email; Subject: Re: OP ED - Response to Clinton ashton | | | |
| 838 | 10/24/2012 | Email; Subject: Re: Hillary Sides… | | | |
| 839 | 10/25/2012 | Email; Subject: Re: Foreign Minister quotes for Wash Times URGENT | | | |
| 840 | 10/26/2012 | Subject: Re: New Goal on Anti Semite stuff | | | |
| 841 | 10/28/2012 | Subject: FW: Israeli MFA Statement | | | |
| 842 | 10/30/2012 | Subject: Re: New York Times Op - ed: Draft 1 | | | |
| 843 | 12/11/2012 | Subject: Contact List and Talking Points | | | |
| 844 | 2/26/2013 | Subject: Fw: AK Update | | | |
| 845 | 3/6/2013 | Subject: Re: Vlasenko matter - Final docs and Plan for Today | | | |
| 846 | 4/5/2013 | Subject: Fwd: Washington Post | | | |
| 847 | 4/8/2013 | Subject: Re: Statement by NSC Spokesperson Caitlin Hayden on Ukraine | | | |
| 848 | 4/24/2013 | Email; Subject: Re: Interfax update - OSCE PA supports signing of EU-Ukraine Association Agreement | | | |
| 849 | 4/28/2013 | Subject: Lunch confirmed and attached is revised draft dissem as requested with names black and more CPC | | | |
| 850 | 5/5/2013 | Subject: Re: 830 am breakfast on May 8 with Alfred in CONFIRMED | | | |
| 851 | 5/16/2013 | Subject: FW: Tymo latest news - May 15 | | | |
| 852 | 5/17/2013 | Subject: DC Notes | | | |
| 853 | 5/17/2013 | Subject: as requested for PJM | | | |
| 854 | 6/14/2013 | Email; Subject: FW: Smith - Article | | | |
| 855 | 6/14/2013 | Email; Subject: Re: Fule confident that the AA with Ukraine will get signed at the Vilnius summit | | | |
| 856 | 7/2/2013 | Subject: FW: Yanukovych, presidents of Visegrad Four to meet in Wisla on July 2-3, says Komorowski's press service | | | |
| 857 | 7/14/2013 | Subject: Re: Fule confident that the AA with Ukraine will get signed at the Vilnius summit | | | |
| 858 | 8/16/2013 | Subject: Re: Media Strategy for September | | | |
| 859 | 8/21/2013 | Email; Subject: Re: Chicago TPs | | | |

| Ex. No. | Date | Description | Obj. | Off'd | Adm. |
|---|---|---|---|---|---|
| 860 | 9/6/2013 | Email; Subject: [FWD: FW: Ukraine's Supreme Court not to consider Tymoschenko's appeal against her sentence in 'gas case'] | | | |
| 861 | 9/9/2013 | Email; Subject: Re: Media Strategy for September - THEME to build on in Europe, US, & Ukr | | | |
| 862 | 9/18/2013 | Email; Subject: Fwd: Exxon | | | |
| 863 | 10/2/2013 | Email; Subject: FW: Popesku: PACE deputies hail reforms in Ukraine on road to signing Association Agreement with EU | | | |
| 864 | 10/10/2013 | Email; Subject: FWD: EP Foreign Affairs Committee approved AA with Ukraine | | | |
| 865 | 11/5/2013 | Email; Subject: Re: CONFIDENTIAL [FWD: FW: Government signs deal with Chevron Corp. to develop shale gas in western Ukraine] | | | |
| 866 | 11/6/2013 | Email; Subject: FW: Government signs deal with Chevron Corp. to develop shale gas in western Ukraine | | | |
| 867 | 11/12/2013 | Email; Subject: Re: Raising the stakes of a Russian strangulation of Ukraine's economy | | | |
| 868 | 12/16/2013 | Email; Subject: Re: PACE and SMD elections | | | |
| 869 | 12/29/2013 | Email; Subject: FW: Rada released EuroMaiden protesters | | | |
| 900 | 4/16/1981 | Form; Short Form Registration #3226 Paul Manafort | | | |
| 901 | 9/30/1982 | Form; Short Form Registration #3415 Paul Manafort | | | |
| 902 | 10/5/1982 | Form; Registration No. 3415 Black, Manafort & Stone, Inc. | | | |
| 903 | 6/1/1984 | Section 5 Inspection file, Registration #3600, Black, Manafort and Stone Public Affairs | | | |
| 904 | 6/1/1984 | Amendment to FARA Registration Statement; Paul Manafort Reg. #3594 | | | |
| 905 | 6/14/1984 | Registration No. 3600 Black, Manafort and Stone Public Affairs, Inc. | | | |
| 906 | 2/8/1985 | Letter; Subject: Registration No. 3600 | | | |
| 907 | 5/6/1985 | Form; Short Form Registration #3600 Paul Manafort | | | |
| 908 | 1/30/1986 | Form; Registration No. 3710 Black, Manafort, Stone & Atwater | | | |
| 909 | 3/11/1986 | Form; Short Form Registration #3600 Paul Manafort | | | |
| 910 | 7/1/1986 | Section 5 Inspection file, Registration # 3600 Black, Manafort, Stone and Kelly Public Affairs Company | | | |
| 911 | 7/1/1986 | Section 5 Inspection file, Registration # 3594, Paul J. Manafort | | | |
| 912 | 7/1/1986 | Section 5 Inspection file, Registration # 3415, Black, Manafort, Stone and Atwater | | | |
| 913 | 7/1/1986 | Section 5 Inspection file, Registration # 3710, Black, Manafort, Stone and Atwater | | | |
| 914 | 12/22/1987 | Letter; [No Subject] to James Rocap | | | |
| 915 | 4/16/1997 | Form; Registration #5173 Paul Manafort | | | |
| 916 | 3/2/1998 | Form; Short Form Registration #5240 Paul Manafort | | | |
| 917 | 9/13/2016 | Letter: Subject: Re: Possible Obligation to Register Pursuant to the Foreign Agents Registration Act | | | |
| 918 | 9/13/2016 | Letter; Subject: Re: Possible Obligation to Register Pursuant to the Foreign Agents Registration Act (FL) | | | |
| 919 | 9/13/2016 | Letter; Subject: Re: Possible Obligation to Register Pursuant to the Foreign Agents Registration Act (VA) | | | |
| 920 | 9/13/2016 | Letter; Subject: Re: Paul J. Manafort, Jr. and DMP International, LLC - Possible Obligation to Register Pursuant to the Foreign Agents Registration Act | | | |
| 921 | | [Exhibit Removed] | | | |
| 922 | | [Exhibit Removed] | | | |
| 923 | | [Exhibit Removed] | | | |
| 924 | | [Exhibit Removed] | | | |
| 925 | | [Exhibit Removed] | | | |
| 926 | 6/27/2017 | FARA Registration; DMP International, LLC (#6440) | | | |
| 927 | 7/18/2018 | Certificate of Authenticity; DMP International FARA Filing | | | |
| 928 | | [Exhibit Removed] | | | |

| Ex. No. | Date | Description | Obj. | Off'd | Adm. |
|---|---|---|---|---|---|
| 929 | 11/23/2016; 2/10/17 | Certified Letters: (1) Subject: Re: September 13, 2016 Letters to DMP International, LLC; Paul J. Manafort, Jr.; and Richard W. Gates; and (2) Subject: Re: Letters to DMP International, LLC; Paul J. Manafort, Jr.; and Richard W. Gates | | | |
| 930 | 10/18/2016 | Letter; Subject: Re: Inquiry Regarding Possible Obligation to Register Pursuant to the Foreign Agents Registration Act | | | |
| 931 | 1/30/2008 | Short-Form Registration Statement Pursuant to the Foreign Agents Registration Act of 1938; Christopher Deri | | | |
| 932 | 4/22/2008 | Short-Form Registration Statement Pursuant to the Foreign Agents Registration Act of 1938; Christopher Deri | | | |
| 933 | 7/25/2008 | Amendment to Registration Statement Pursuant to the Foreign Agents Registration Act of 1938; Daniel J. Edelman, Inc. | | | |
| 934 | 7/25/2008 | Exhibits A and B to Registration Statement; Daniel J. Edelman, Inc. | | | |
| 935 | 1/21/1987 | Letter; Subject: Registration No. 3600, 3415, and 3710 | | | |
| 936 | 5/29/1987 | Letter; Subject: Paul J. Manafort Registration No. 3594 | | | |
| 937 | 10/23/1986 | Inspection Report Summary Registration #3710 | | | |
| 938 | 12/3/1986 | Inspection Report Summary Registration #3415 | | | |
| 939 | 12/3/1986 | Inspection Report Summary | | | |
| 940 | 5/14/1987 | Inspection Report Summary Registration #3594 | | | |
| 941 | 6/1/1984 | FARA Registration Statement; Paul Manafort Reg. #3594 | | | |
| 942 | 6/1/1984 | FARA Registration Short Form; Paul Manafort Reg. #3594 | | | |
| 943 | 1/4/1985 | FARA Registration Supplemental Statement; Paul Manafort Reg. #3594 | | | |
| 944 | 2/19/1985 | Amendment to FARA Registration Statement; Paul Manafort Reg. #3594 | | | |
| 945 | 7/3/1985 | FARA Registration Supplemental Statement Reg. #3594 | | | |
| 946 | 1/3/1986 | FARA Registration Supplemental Statement Reg. #3594 | | | |
| 947 | 3/3/1985 | Amendment to FARA Registration Statement; Paul Manafort Reg. #3594 | | | |
| 948 | 3/11/1985 | FARA Registration Short Form; Paul Manafort Reg. #3594 | | | |
| 949 | 6/27/1986 | Amendment to FARA Registration Stqatement; Paul Manafort; #3594 | | | |
| 950 | 7/7/1986 | FARA Registration Supplemental Statement; Paul Manafort; #3594 | | | |
| 951 | 1/6/1987 | FARA Registration Supplemental Statement; Paul Manafort; #3594 | | | |
| 952 | 9/25/1987 | Amendment to FARA Registration Form; Paul Manafort; #3594; for 6/4/86 | | | |
| 953 | 9/25/1987 | Amendment to Registration Form; Paul Manafort; #3594; for 12/4/85 | | | |
| 954 | 9/25/1987 | Amendment to Registration Form; Paul Manafort; #3594; for 6/4/85 | | | |
| 1000 | 11/7/2016 - 8/11/2017 | Billing records Akin Gump | | | |
| 1001 | | [Exhibit Removed] | | | |
| 1002 | | [Exhibit Removed] | | | |
| 1003 | | [Exhibit Removed] | | | |
| 1004 | | [Exhibit Removed] | | | |
| 1005 | | [Exhibit Removed] | | | |
| 1006 | | [Exhibit Removed] | | | |
| 1007 | | [Exhibit Removed] | | | |
| 1008 | | [Exhibit Removed] | | | |
| 1009 | | [Exhibit Removed] | | | |
| 1010 | | [Exhibit Removed] | | | |
| 1011 | | [Exhibit Removed] | | | |
| 1012 | | [Exhibit Removed] | | | |
| 1013 | | [Exhibit Removed] | | | |
| 1014 | | [Exhibit Removed] | | | |
| 1015 | | [Exhibit Removed] | | | |
| 1016 | | [Exhibit Removed] | | | |
| 1017 | 5/11/2007 | Email; Subject: Ukraine Proposal | | | |
| 1018 | 5/31/2007 | Email; Subject: WSJ story on Yanukovich | | | |

| Ex. No. | Date | Description | Obj. | Off'd | Adm. |
|---|---|---|---|---|---|
| 1019 | 5/31/2007 | Email; Subject: FW: SOW | | | |
| 1020 | 6/6/2007 | Email; Subject: RE: Speak this Week | | | |
| 1021 | 6/6/2007 | Email; Subject: Four Month Communication Workplan - Draft 6-6-07 (am) | | | |
| 1022 | 6/6/2007 | Email; Subject: Master Narrative v1 | | | |
| 1023 | 6/7/2007 | Email; Subject: RE: FYI | | | |
| 1024 | 6/7/2007 | Memo; Subject: Re: Proposed Issue Platforms | | | |
| 1025 | 6/8/2007 | Email; Subject: Ukraine 6/6 mtg notes | | | |
| 1026 | 6/9/2007 | Email; Subject: FW: EU Report | | | |
| 1027 | 6/14/2007 | Email; Subject: Ukraine Meeting Notes | | | |
| 1028 | 1/30/2008 | Exhibits A and B to FARA Registration; Daniel J. Edelman, Inc. | | | |
| 1029 | 6/15/2011 | Email; Subject: Re: STRASBOURG FBC strategy and deliverables, god faith basis, and meeting June 21st | | | |
| 1030 | 6/7/2011 | Email; Subject: RE: Strasbourg Planning | | | |
| 1031 | 6/16/2011 | Email; Subject: Re: STRASBOURG FBC strategy and deliverables, god faith basis, and meeting June 21st | | | |
| 1032 | 6/26/2011 | Email; Subject: Fwd: Conf Call | | | |
| 1033 | 6/30/2011 | Email; Subject: RE: from Sergiy Lovochkin | | | |
| 1034 | 7/1/2011 | Email; Subject: Fw: FBC Proposal Version 2 - Comments | | | |
| 1035 | 7/1/2011 | Email; Subject: Ukraine contract | | | |
| 1036 | 7/8/2011 | CONTRACT FOR THE PROVISION OF A STRATEGIC COMMUNCIATIONS CAMPAIGN FOR 8 JULY 2011 - 7 JANUARY 2011 BETWEEN NAATHAN CONSULTING (BVI) LTD […] AND HADRIA VENTURES LTD | | | |
| 1037 | 7/10/2011 | Email; Subject: Fwd: soft copy with same password | | | |
| 1038 | 7/10/2011 | Email; Subject: Fwd: New e-mail | | | |
| 1039 | 7/11/2011 | Email; Subject: RE: Follow up | | | |
| 1040 | 7/16/2011 | Email; Subject: Re: On the roadmap | | | |
| 1041 | 7/17/2011 | Email; Subject: Re: Have now check and ascertained that Oleg asked my team to send materials to him. | | | |
| 1042 | 7/17/2011 | Email; Subject: Re: We have a problem | | | |
| 1043 | 7/17/2011 | Email; Subject: Fwd: Ukraine Media Coverage | | | |
| 1044 | 7/17/2011 | Email; Subject: Re: We have a problem | | | |
| 1045 | | [Exhibit Removed] | | | |
| 1046 | 7/20/2011 | Email; Subject: RE: An open letter to Yanukovych: Mr. President, time to stop digging yourself into a hole | | | |
| 1047 | 7/21/2011 | Email; Subject: contract | | | |
| 1048 | 7/21/2011 | Email; Subject: Fwd: contract | | | |
| 1049 | 7/23/2011 | Email; Subject: Re: Blogosphere | | | |
| 1050 | 7/25/2011 | Email; Subject: [unknown]; Attachments: UKR Indep Day Memo 220711FINAL.docx | | | |
| 1051 | 7/25/2011 | Email; Subject: Action Items from Conf Call July  25 | | | |
| 1052 | 7/25/2011 | Email; Subject: Re: Ukraine blog live | | | |
| 1053 | 7/27/2011 | Email; Subject: FW: IRI tells US Congress freedom in Ukraine Odeteriorating1 under Yanukovych | | | |
| 1054 | 7/29/2011 | Email; Subject: FW: International criticism of Tymoshenko trial grows as TV coverage ends | | | |
| 1055 | 7/29/2011 | Email; Subject: Fwd: European all-or-nothing game of Yulia Tymoshenko | | | |
| 1056 | 8/1/2011 | Email chain; Subject: Fw: Agenda - Conf Call 8-2-11 | | | |
| 1057 | 8/3/2011 | Email; Subject: FW: Why Do EU Countries' Ratings Deteriorate and Ukraine's … Improve? | | | |
| 1058 | 8/5/2011 | Email; Subject: RE: Storyline | | | |
| 1059 | 8/10/2011 | Email; Subject: Re: Ukraine meeting today | | | |
| 1060 | 8/12/2011 | Email; Subject: Re: OpEd Draft | | | |
| 1061 | 8/13/2011 | Email; Subject: Re: revised op-ed | | | |
| 1062 | 8/15/2011 | Email; Subject: Re: revised op-ed and weekly call - ACTION ITEMS | | | |

| Ex. No. | Date | Description | Obj. | Off'd | Adm. |
|---|---|---|---|---|---|
| 1063 | 8/16/2011 | Email; Subject: Re: op-ed and press release | | | |
| 1064 | 8/19/2011 | Email; Subject: Re: Op ed status | | | |
| 1065 | 8/24/2011 | Email; Subject: Re: WSJ op-ed | | | |
| 1066 | 9/11/2011 | Email; Subject: Re: Interview | | | |
| 1067 | 9/11/2011 | Email; Subject: Re: Independence Day Coverage Report | | | |
| 1068 | 8/24/2011 | Email; Subject: Re: FINAL op-ed | | | |
| 1069 | 8/26/2011 | Email; Subject: Re: Weekly Ukraine Call | | | |
| 1070 | 9/6/2011 | Email; Subject: RE: Ukraine Call - Action Items | | | |
| 1071 | 9/7/2011 | Email; Subject: RE: WSJ/FT Interview | | | |
| 1072 | 9/9/2011 | Email; Subject: Re: Heritage KG lunch | | | |
| 1073 | 9/19/2011 | Email; Subject: Re: NY Media and draft op-ed | | | |
| 1074 | 9/20/2011 | Email; Subject: Re: WSJ ed board | | | |
| 1075 | 10/12/2011 | Email; Subject: Re: Interview Opportunity - several publications | | | |
| 1076 | 10/19/2011 | Email; Subject: Re: Interview with Azarov | | | |
| 1077 | 10/25/2011 | Email; Subject: Fwd: report of activities | | | |
| 1078 | 11/20/2011 | Email; Subject: For your eyes only | | | |
| 1079 | 11/29/2011 | Email; Subject: [unknown] | | | |
| 1080 | 12/15/2011 | Email; Subject: Confidential memo, same password | | | |
| 1081 | 12/17/2011 | Email; Subject: Fw: Bloomberg and Wall Street Journal Dec 19th or later in the week FEEDBACK APPRECIATED | | | |
| 1082 | 12/23/2011 | Email; Subject: We are very pleased to share with you our latest article on Ukraine and the AA, by a "friend" in Washington | | | |
| 1083 | 1/11/2012 | Email; Subject: Re: Ukraine's foreign minister interview for Dow Jones/Wall Street Journal - JANUARY 2012 | | | |
| 1084 | 1/14/2012 | Email; Subject: Down to 3 pages plus timeline please review | | | |
| 1085 | 1/26/2012 | Email; Subject: Re: Fw: Fwd: On freedom of press index | | | |
| 1086 | 1/27/2012 | Email; Subject: More than 100 pick ups in dissemination of press freedom rankings story | | | |
| 1087 | 2/1/2012 | Consultancy Agreement dated February 1, 2012, between Goldwing Investment PTE LTD and P.O.V. Media LTD | | | |
| 1088 | 2/3/2012 | Email; Subject: Fw: Agenda for next Monday's call for PM | | | |
| 1089 | 2/15/2012 | Email; Subject: not yet published | | | |
| 1090 | 3/6/2012 | Email; Subject: Episodes IMPORTANT | | | |
| 1091 | | [Exhibit Removed] | | | |
| 1092 | 3/13/2012 | Email; Subject: Re: Updates | | | |
| 1093 | 3/27/2012 | Email; Subject: Strategic COmmunications Report for the Minister | | | |
| 1094 | 4/16/2012 | Email; Subject: Re: as requested | | | |
| 1095 | | [Exhibit Removed] | | | |
| 1096 | 4/17/2012 | Email; Subject: slip up on cxssr | | | |
| 1097 | 5/7/2012 | Email; Subject: Re: can we coordinate when paul is going to be in kyiv next week | | | |
| 1098 | 5/9/2012 | Email; Subject: Could you help with two rooms for may 15? | | | |
| 1099 | 5/17/2012 | Email; Subject: US visit | | | |
| 1100 | 5/29/2012 | Email; Subject: Re: the other thing that i know you are handling | | | |
| 1101 | 6/10/2012 | Memo; Subject: Revised Network Idea for 2012 Involving Third-Party Champions on Ukraine Electoral and Economic Reforms | | | |
| 1102 | 6/13/2012 | Email; Subject: Re: Summary Report | | | |
| 1103 | 6/20/2012 | Email; Subject: Monthly Activity Report | | | |
| 1104 | 6/22/2012 | Email; Subject: Re: Ukraine's OSCE Chairmanship news story - Dissemination Results | | | |
| 1105 | 6/27/2012 | Email; Subject: Kissinger endorses Ukraine's EU membership news story - Dissemination Results | | | |
| 1106 | 7/10/2012 | Email; Subject: Khoroshkovskiy US Trip | | | |
| 1107 | 7/11/2012 | Email; Subject: Re: Summary of Skype With Vasyl and Olena, and action plan | | | |
| 1108 | 7/12/2012 | Email; Subject: Fw: VK's draft op ed | | | |
| 1109 | 7/12/2012 | Email; Subject: Fw: VK's draft op ed | | | |

| Ex. No. | Date | Description | Obj. | Off'd | Adm. |
|---|---|---|---|---|---|
| 1110 | 7/12/2012 | Email; Subject: op ed outline for karan | | | |
| 1111 | 7/17/2012 | Email; Subject: VK interviews | | | |
| 1112 | 7/17/2012 | Email; Subject: Re: Contributors for CXSSR | | | |
| 1113 | 7/17/2012 | Email; Subject: Op ed for us to place in USA for VK | | | |
| 1114 | 7/20/2012 | Email; Subject: Re: FW: Op ed for us to place in USA for VK | | | |
| 1115 | 7/20/2012 | Email; Subject: VK article for placement | | | |
| 1116 | 7/25/2012 | Email; Subject: Re: Op Ed for us to place in USA for VK | | | |
| 1117 | 7/27/2012 | Email; Subject: Hand-Over List | | | |
| 1118 | 7/27/2012 | Email; Subject: Re: VK Washington press | | | |
| 1119 | 7/27/2012 | Email; Subject: Re: Kindly advise when you send VK info | | | |
| 1120 | 7/27/2012 | Email; Subject: Re: What's on Weekly Report | | | |
| 1121 | 7/27/2012 | Email; Subject: Re: Op Ed for us to place in USA for VK | | | |
| 1122 | 7/29/2012 | Email; Subject: July 31 op ed and interview | | | |
| 1123 | 7/29/2012 | Email; Subject: Re: Contact person | | | |
| 1124 | 7/30/2012 | Email; Subject: Re: op ed | | | |
| 1125 | 7/30/2012 | Email; Subject: Re: op ed and interies, dc 31 july | | | |
| 1126 | 7/30/2012 | Email; Subject: Even better | | | |
| 1127 | 7/30/2012 | Email; Subject: Re: it is nearly 3 am and I need to sleep 3 hours | | | |
| 1128 | 7/30/2012 | Email; Subject: OpEd | | | |
| 1129 | 7/30/2012 | Email; Subject: rick, very terse | | | |
| 1130 | 7/30/2012 | Email; Subject; Re: op ed and interies, dc 31 july | | | |
| 1131 | 7/31/2012 | Email; Subject: Re: Op ed and interviews | | | |
| 1132 | 7/31/2012 | Email; Subject: Re: VK - Updates | | | |
| 1133 | 7/31/2012 | Email; Subject: OpEd | | | |
| 1134 | 7/31/2012 | Email; Subject: Re: OP ED, Interview schedule, Addresses, CONTACT details | | | |
| 1135 | | [Exhibit Removed] | | | |
| 1136 | 7/31/2012 | Schedule; Media Interviews - Schedule | | | |
| 1137 | 7/31/2012 | Email; Subject: Fw: Op ed and interviews | | | |
| 1138 | | [Exhibit Removed] | | | |
| 1139 | 8/1/2012 | Email; Subject: Re: fyi | | | |
| 1140 | 8/3/2012 | Email; Subject: Tymoshenko Portal news story - first results of the dissemination | | | |
| 1141 | 8/3/2012 | Email; Subject: Re: | | | |
| 1142 | 8/5/2012 | Email; Subject: Habsburg Empire | | | |
| 1143 | 8/6/2012 | Email; Subject: Hndover agf to do giornalino, chapters, thank bulent, aug 27 speak to ilaria, sept 2 prvt jet, rick for contracts, alfred for bank acct, chrck on chsllisn payments monday or tuesday with gt, inform bank and send funds to uk and to lucca and to bergamo | | | |
| 1144 | 8/7/2012 | Email; Subject: for your eyes only | | | |
| 1145 | 8/8/2012 | Email; Subject: Fwd: per Paul's request | | | |
| 1146 | 8/10/2012 | Email; Subject: Re: RG account | | | |
| 1147 | 8/13/2012 | Marziola/Gusenbauer Consultancy Agreement | | | |
| 1148 | 8/13/2012 | Email; Subject: please read and reply with word doc encrypted | | | |
| 1149 | 8/21/2012 | Email; Subject: URGENT ALFRED TO ALAN | | | |
| 1150 | 8/22/2012 | Email; Subject: Fw: About New York | | | |
| 1151 | 8/22/2012 | Email; Subject: WG: Contract | | | |
| 1152 | 8/22/2012 | Email; Subject: Re: About New York | | | |
| 1153 | 8/23/2012 | Email; Subject: we need to do a one pager on Urso | | | |
| 1154 | 8/23/2012 | Email; Subject: Re: Daughter of Pavlor Movchan from Tymo party has contacted us | | | |
| 1155 | 8/28/2012 | Email; Subject: In Addition | | | |
| 1156 | 8/31/2012 | Email; Subject: Re: EO payment | | | |
| 1157 | 9/1/2012 | Email; Subject: Alfred | | | |
| 1158 | 9/5/2012 | Email; Subject: CXSSR | | | |
| 1159 | 9/5/2012 | Email; Subject: Re: Big Opportunity: EU Probe of Gazprom Will Show Why Ukraine Suffers From Tymo's 2009 Crime | | | |

| Ex. No. | Date | Description | Obj. | Off'd | Adm. |
|---|---|---|---|---|---|
| 1160 | 9/5/2012 | Email; Subject: Re: schulz is asking Sasha for written report for EP by oct 2nd | | | |
| 1161 | 9/5/2012 | Email; Subject: schulz is asking Sasha for written report for EP by oct 2nd | | | |
| 1162 | 9/5/2012 | Email; Subject: Re: schulz is asking Sasha for written report for EP by oct 2nd | | | |
| 1163 | 9/7/2012 | Email; Subject: Fw: WG: urgent | | | |
| 1164 | 9/7/2012 | Email; Subject: Attached | | | |
| 1165 | 9/16/2012 | Email; Subject: Re: Paris is already 90% confirmed for Nov 12th at very prestigious institute! | | | |
| 1166 | 9/17/2012 | Email; Subject: Re: KiG Vienna interviews, Inna site, and beyond… | | | |
| 1167 | 9/17/2012 | Email; Subject: Re: KiG Vienna interviews, Inna site, and beyond… | | | |
| 1168 | 9/17/2012 | Email; Subject: RE:  Eck and me to talk to charles and GT about implementing below | | | |
| 1169 | 9/17/2012 | Email; Subject: Re: Fw: very urgent | | | |
| 1170 | 9/18/2012 | Email; Subject: Re: Contact details | | | |
| 1171 | 9/18/2012 | Email; Subject: Contact details | | | |
| 1172 | 9/19/2012 | Email; Subject: Fwd: an urgent request | | | |
| 1173 | 9/19/2012 | Email; Subject: i have been told that Sasha | | | |
| 1174 | 9/19/2012 | Email; Subject: am working on USA matter | | | |
| 1175 | 9/19/2012 | Email; Subject: i have been told AK already spoke to the Senator | | | |
| 1176 | 9/19/2012 | Email; Subject: Re: eckart says resolution already was voted? | | | |
| 1177 | | [Exhibit Removed] | | | |
| 1178 | 9/28/2012 | Email; Subject: RICK GATES on COnference call today | | | |
| 1179 | 9/29/2012 | Email; Subject: Re: Dial-in and Contact Info | | | |
| 1180 | 9/29/2012 | Email; Subject: Re: Dial-in and Contact Info | | | |
| 1181 | 9/29/2012 | Email; Subject: Re: weekend plan | | | |
| 1182 | 9/30/2012 | Email; Subject: please review this and call me | | | |
| 1183 | 9/30/2012 | Email; Subject: Re: weekend plan | | | |
| 1184 | 9/30/2012 | Email; Subject: invoice | | | |
| 1185 | 9/30/2012 | Email; Subject: Fw: nice copy | | | |
| 1186 | 10/1/2012 | Email; Subject: Re: news story for dissemination monday morning at 9 am London time..but check with Eckart first | | | |
| 1187 | 10/3/2012 | Email; Subject: Re: Tymoshenko party supports crack down on gays? | | | |
| 1188 | 10/3/2012 | Email; Subject: ALARM | | | |
| 1189 | 10/3/2012 | Email; Subject: Re: ALARM | | | |
| 1190 | 10/8/2012 | Email; Subject: Activity Report | | | |
| 1191 | 10/9/2012 | Email; Subject: Re: Change of date to October 23rd | | | |
| 1192 | 10/9/2012 | Email; Subject: please review this evening | | | |
| 1193 | 10/9/2012 | Email; Subject: Re: please review this evening | | | |
| 1194 | 10/10/2012 | Email; Subject: Kk | | | |
| 1195 | 10/10/2012 | Email; Subject: Re: On Urso | | | |
| 1196 | 10/12/2012 | Email; Subject: Kwas op-ed for WSJ | | | |
| 1197 | 10/12/2012 | Email; Subject: Re: EOM Report | | | |
| 1198 | 10/13/2012 | Email; Subject: Media Monitoring | | | |
| 1199 | 10/13/2012 | Email; Subject: Paris and London | | | |
| 1200 | 10/13/2012 | Email; Subject: Media Monitoring - final input from KK | | | |
| 1201 | 10/14/2012 | Email; Subject: Alan priorities Sunday Monday | | | |
| 1202 | 10/15/2012 | Email; Subject: Your approval requested soonets | | | |
| 1203 | 10/17/2012 | Email; Subject: Non eu company needed for habsburg contract | | | |
| 1204 | 10/17/2012 | Email; Subject: RE: Yuschenko of interest? | | | |
| 1205 | 10/18/2012 | Email; Subject: Astonished | | | |
| 1206 | 10/18/2012 | Email; Subject: op ed | | | |
| 1207 | 10/18/2012 | Email; Subject: Re: We need to talk | | | |
| 1208 | 10/19/2012 | Email; Subject: Re: News | | | |
| 1209 | 10/20/2012 | Email; Subject: Re: weekly report | | | |

| Ex. No. | Date | Description | Obj. | Off'd | Adm. |
|---|---|---|---|---|---|
| 1210 | 10/20/2012 | Email; Subject: ukraine media | | | |
| 1211 | 10/23/2012 | Email; Subject: Re: Prodi op ed | | | |
| 1212 | 10/23/2012 | Email; Subject: nouvelle versione | | | |
| 1213 | 10/24/2012 | Email; Subject: RE: Final Dissemination | | | |
| 1214 | 10/24/2012 | Email; Subject: FW: INVOICE FOR MR ALAN FRIEDMAN | | | |
| 1215 | 10/24/2012 | Email; Subject: Re: We urgenty need non EU company contract for Afred's company, thene you committed to | | | |
| 1216 | 10/26/2012 | Email; Subject: Re: Bon de commande bannière RDN | | | |
| 1217 | 10/27/2012 | Email; Subject: Re: op ed and media | | | |
| 1218 | 10/28/2012 | Email; Subject: you never saw this | | | |
| 1219 | 10/28/2012 | Email; Subject: Re: journalist email lists when you have time | | | |
| 1220 | 10/28/2012 | Email; Subject: Here you go | | | |
| 1221 | 10/29/2012 | Email; Subject: Re: Bon de commande bannière RDN | | | |
| 1222 | 11/1/2012 | Email; Subject: long talk with rick | | | |
| 1223 | 11/2/2012 | Email; Subject: Fw: our latest news dissemination just out on CNBC | | | |
| 1224 | 11/2/2012 | Email; Subject: Re: Fw: Fw: first publications | | | |
| 1225 | 11/2/2012 | Email; Subject: We need to be careful | | | |
| 1226 | 11/5/2012 | Email; Subject: Re: Alfred contract needed | | | |
| 1227 | 11/7/2012 | Email; Subject: Contract | | | |
| 1228 | 11/7/2012 | Email; Subject: Re: Clinton Queries our release | | | |
| 1229 | 11/8/2012 | Email; Subject: FW: Conference on Ukraine in Paris | | | |
| 1230 | 11/9/2012 | Email; Subject: Fwd: Helsinki Commission staff meeting | | | |
| 1231 | 11/11/2012 | Email; Subject: we should skype Tuesday | | | |
| 1232 | 11/13/2012 | Email; Subject: for discussion…the solution is to insert this into the contract | | | |
| 1233 | 11/13/2012 | Email; Subject: Final agreed contract, with VAT and SUBCONTRACTING BAN removed | | | |
| 1234 | 11/14/2012 | Email; Subject: Re: Alfred Expenses | | | |
| 1235 | 11/14/2012 | Email; Subject: Re: i will be with my lawyers and bank advisers tomorrow | | | |
| 1236 | | [Exhibit Removed] | | | |
| 1237 | 11/14/2012 | Email; Subject: Contract | | | |
| 1238 | 11/15/2012 | Email; Subject: Re: Are you aware of this? | | | |
| 1239 | | [Exhibit Removed] | | | |
| 1240 | 11/19/2012 | Email; Subject: Re: invoices expenses giannotti | | | |
| 1241 | 11/20/2012 | Email; Subject: Re: AW: WG: Contract | | | |
| 1242 | 11/20/2012 | Email; Subject: Re: PJM Memo | | | |
| 1243 | 11/29/2012 | Email; Subject: Re: Important | | | |
| 1244 | 12/5/2012 | Email; Subject: Re: CDS Reporter | | | |
| 1245 | 12/7/2012 | Email; Subject: R. Monti - assignment | | | |
| 1246 | 12/8/2012 | Email; Subject: Re: can cxssr and red state hold a conference in DC on Ukraine at The Crossroads | | | |
| 1247 | 12/11/2012 | Email; Subject: Skadden Info | | | |
| 1248 | 12/11/2012 | Email; Subject: ANSA | | | |
| 1249 | 12/11/2012 | Email; Subject: report | | | |
| 1250 | 12/12/2012 | Email; Subject: Re: Report | | | |
| 1251 | 12/12/2012 | Email; Subject: Re: Warsaw | | | |
| 1252 | 12/13/2012 | Email; Subject: Re: Tymo Coverage Reports | | | |
| 1253 | 12/16/2012 | Email; Subject: Fw: U.S. lawyers from Skadden would sentence Tymoshenko for a longer period than Kireyev. BYT lost world press | | | |
| 1254 | 1/9/2013 | Email; Subject: Re: how is this as a start? | | | |
| 1255 | | [Exhibit Removed] | | | |
| 1256 | 1/10/2013 | Email; Subject: Re: confidential rick | | | |
| 1257 | 1/16/2013 | Email; Subject: RE: Briefing | | | |
| 1258 | 2/20/2013 | Email; Subject: Habsburg Activity Report | | | |
| 1259 | 2/23/2013 | Email; Subject: Re: talked to rick | | | |
| 1260 | 2/27/2013 | Email; Subject: AK Important This Morning | | | |

| Ex. No. | Date | Description | Obj. | Off'd | Adm. |
|---|---|---|---|---|---|
| 1261 | 3/1/2013 | Email; Subject: Re: Trip to the US | | | |
| 1262 | 3/3/2013 | Email; Subject: RP Letter | | | |
| 1263 | 3/4/2013 | Email; Subject: Re: RP Letter | | | |
| 1264 | 3/4/2013 | Email; Subject: [NO SUBJECT LINE] | | | |
| 1265 | 3/4/2013 | Email; Subject: Re: Letter from AK | | | |
| 1266 | 3/4/2013 | Email; Subject: RP Letter | | | |
| 1267 | 3/4/2013 | Email; Subject: Letter | | | |
| 1268 | 3/5/2013 | Email; Subject: Prodi in Washington | | | |
| 1269 | 3/5/2013 | Email; Subject: Re: Prodi in Washington | | | |
| 1270 | 3/5/2013 | Email; Subject: Washington dates | | | |
| 1271 | 3/5/2013 | Email; Subject: Re: RP | | | |
| 1272 | 3/5/2013 | Email; Subject: Pres. Prodi | | | |
| 1273 | 3/7/2013 | Email; Subject: RP Letter | | | |
| 1274 | | [Exhibit Removed] | | | |
| 1275 | 3/13/2013 | Email; Subject: Great First Day | | | |
| 1276 | 3/22/2013 | Email; Subject: Msg from PM to Sasha | | | |
| 1277 | 3/26/2013 | Email; Subject: RE: U Deliverable Report | | | |
| 1278 | 5/20/2013 | Email; Subject: i am thinking we offer PJM a slot for aperson | | | |
| 1279 | 1/29/2014 | Email; Subject: Re: Items | | | |
| 1280 | 2/3/2014 | Email; Subject: Re: Revised OpEd | | | |
| 1281 | 2/3/2014 | Email; Subject: Re: RP contact | | | |
| 1282 | 2/3/2014 | Email; Subject: Oped - REVISED | | | |
| 1283 | 2/4/2014 | Email; Subject: Re: Items | | | |
| 1284 | 2/4/2014 | Email; Subject: FW: Oped - REVISED | | | |
| 1285 | 2/4/2014 | Email; Subject: Fwd: Oped - REVISED | | | |
| 1286 | 2/4/2014 | Email; Subject: Fwd: Op ed for RP | | | |
| 1287 | 2/5/2014 | Email; Subject: Re: Oped - REVISED | | | |
| 1288 | 2/7/2014 | Email; Subject: Re: Oped | | | |
| 1289 | 2/18/2014 | Email; Subject: NYT | | | |
| 1290 | 2/18/2014 | Email; Subject: Oped | | | |
| 1291 | 2/20/2014 | Email; Subject: NYT Oped - RP | | | |
| 1292 | 4/1/2014 | Email; Subject: Re: Speech | | | |
| 1293 | 4/1/2014 | Email; Subject: Re-worked Speech | | | |
| 1294 | 4/7/2014 | Email; Subject: Fwd: Chance to renew the Party of Regions is lost - Serhiy Tigipko | | | |
| 1295 | | [Exhibit Removed] | | | |
| 1296 | 5/27/2014 | Email; Subject: Ukraine's Richest Man Takes Aim at Pro-Russian Separatists, Calls for Unity - 327 News Dissemination Results | | | |
| 1297 | | [Exhibit Removed] | | | |
| 1298 | 1/12/2015 | Email; Subject: FW: I had a nice chat last week with PJM | | | |
| 1299 | 2/3/2015 | Email; Subject: Re: would be nice to catch up on Tuesday | | | |
| 1300 | 11/12/2016 | Email; Subject: [FWD: Congratulations from Alan Friedman Request to be first EUROPEAN NEWSPAPER INTERVIEW WITH MR TRUMP] | | | |
| 1301 | 2/24/2018 | Screenshots; Text Messages | | | |
| 1302 | 03/16/2014 - 04/27/2018 | Spreadsheet; Messages/Call Log | | | |
| 1303 | 2/27/2018 | Email; Subject: Greetings from KYIV | | | |
| 1304 | 4/4/2018 | Text Message | | | |
| 1305 | | [Exhibit Removed] | | | |
| 1306 | | [Exhibit Removed] | | | |
| 1307 | 8/1/2012 | Memo; Subject: SA Report - Media Plan | | | |
| 1308 | 9/19/2012 | Email; Subject: Re: an urgent request ON IT | | | |
| 1309 | 10/23/2012 | Email; Subject: FW: Update media work - Berlin Conf | | | |
| 1310 | 2/19/2013 | Email; Subject: Washington | | | |
| 1311 | 2/20/2013 | Email; Subject: Wash Trip | | | |
| 1312 | 2/20/2013 | Email; Subject: Re: U story for CXSSR | | | |

| Ex. No. | Date | Description | Obj. | Off'd | Adm. |
|---|---|---|---|---|---|
| 1313 | 2/20/2013 | Email; Subject: Fw: Updates | | | |
| 1314 | 2/21/2013 | Email; Subject: new article on CXXSR on Ukraine | | | |
| 1315 | 2/22/2013 | Email; Subject: what we sent paul after i spoke to sasha | | | |
| 1316 | 2/23/2013 | Email; Subject: Fw: echo chamber | | | |
| 1317 | 2/23/2013 | Email; Subject: highly unter 4 augen oder 6 jetzt | | | |
| 1318 | 2/25/2013 | Email; Subject: this is an alternative version as well, a bit more American | | | |
| 1319 | 2/26/2013 | Email; Subject: Re: McCain | | | |
| 1320 | 2/27/2013 | Email; Subject: Re: AK Question | | | |
| 1321 | 2/27/2013 | Email; Subject: AK | | | |
| 1322 | 2/28/2013 | Email; Subject: AK | | | |
| 1323 | 3/1/2013 | Email; Subject: Re: Draft Op Ed for Hill VERSION 2 | | | |
| 1324 | 3/1/2013 | Email; Subject: Re: DC Updates | | | |
| 1325 | | [Exhibit Removed] | | | |
| 1326 | 3/3/2013 | Email; Subject: Re: AK - Updates | | | |
| 1327 | 3/5/2013 | Email; Subject: RP Notional Schedule | | | |
| 1328 | 3/7/2013 | Email; Subject: RP Letter | | | |
| 1329 | 3/7/2013 | Email; Subject: Carnegie Speech | | | |
| 1330 | 3/8/2013 | Email; Subject: Re: RP Trip | | | |
| 1331 | 3/8/2013 | Email; Subject: RP Visit to US | | | |
| 1332 | | [Exhibit Removed] | | | |
| 1333 | 3/10/2013 | Email; Subject: RP Schedule | | | |
| 1334 | 3/10/2013 | Email; Subject: RP Oped | | | |
| 1335 | 3/12/2013 | Email; Subject: Briefing Book | | | |
| 1336 | 3/12/2013 | Email; Subject: Oped | | | |
| 1337 | 3/13/2013 | Email; Subject: FW: R: Expedited Port Courtesis for Romano Prodi | | | |
| 1338 | 3/13/2013 | Email; Subject: Re: R: Expedited Port Courtesis for Romano Prodi | | | |
| 1339 | 3/13/2013 | Email; Subject: Re: Fwd: RP | | | |
| 1340 | | [Exhibit Removed] | | | |
| 1341 | 3/13/2013 | Email; Subject: Re: R: Expedited Port Courtesis for Romano Prodi | | | |
| 1342 | 3/14/2013 | Email; Subject: Fwd: Prodi Meeting with Rep. Keating: Readout | | | |
| 1343 | 3/15/2013 | Email; Subject: Washington Memo | | | |
| 1344 | 3/19/2013 | Email; Subject: Re: Prodi Media | | | |
| 1345 | 2/25/2018 | News Article; Business Insider; Former European leaders struggle to explain themselves after Mueller claims Paul Manafort paid them to lobby for Ukraine | | | |
| 1346 | 2/28/2018 | Telegram Message | | | |
| 1347 | 2/28/2018 | WhatsApp Message | | | |
| 1348 | 3/6/2012 | Senay; Wehrsten; Anderson; Saunders; Wunnerlich; Huttenlocher; Williams | | | |
| 1349 | 5/4/2012 | Document; Signature block Leonid Kozhara | | | |
| 1350 | 5/11/2012 | Email; Subject: Confidential: Project Veritas contract | | | |
| 1351 | 5/18/2012 | Email; Subject: Ukraine - what we've been up to | | | |
| 1352 | 5/30/2012 | Email; Subject: Re: Ukraine engagement | | | |
| 1353 | 5/31/2012 | Email; Subject: FW: Black Sea View Ltd | | | |
| 1354 | 6/1/2012 | Memo; PROPOSED OUTREACH LIST FOR SA LEGAL REPORT | | | |
| 1355 | 6/18/2012 | Email; Subject: Re: PR | | | |
| 1356 | 7/17/2012 | Email; Subject: Re: Confirmation | | | |
| 1357 | 6/22/2012 | Email; Subject: FW: RAPSI.com: U.S. attorneys in ECHR under Tymoshenko case to cost Ukraine $12,5k | | | |
| 1358 | 6/27/2012 | Email; Subject: Website | | | |
| 1359 | 7/10/2012 | Email; Subject: Re: Asset Tracing | | | |
| 1360 | 7/17/2012 | Email; Subject: Re: Confirmation | | | |
| 1361 | 7/29/2012 | Email; Subject: Re: Media Plan | | | |
| 1362 | 8/5/2012 | Email; Subject: Re: Update | | | |
| 1363 | 8/13/2012 | Email; Subject: Re: Call | | | |
| 1364 | 8/29/2012 | Email; Subject: Re: Ukraine | | | |

| Ex. No. | Date | Description | Obj. | Off'd | Adm. |
|---|---|---|---|---|---|
| 1365 | 8/30/2012 | Email; Subject: Memo for Manfort | | | |
| 1366 | 9/6/2012 | Email; Subject: Call | | | |
| 1367 | 9/6/2012 | Email; Subject: Re: Lunch | | | |
| 1368 | 9/12/2012 | Outward Payment | | | |
| 1369 | 9/12/2012 | Email; Subject: FW: MY COMMENTS | | | |
| 1370 | 9/13/2012 | Email; Subject: Re: Meeting | | | |
| 1371 | 9/17/2012 | Email; Subject: Re: Project Veritas | | | |
| 1372 | 9/21/2012 | Email; Subject: Meeting Time | | | |
| 1373 | 9/22/2012 | Email; Subject: Re: Meeting on Sunday, Sept 23 with Greg Craig in NYC | | | |
| 1374 | 9/23/2012 | Email; Subject: Documents | | | |
| 1375 | 9/23/2012 | Email; Subject: Re: GP final report response | | | |
| 1376 | 9/25/2012 | Email; Subject: Re: Meeting and Items | | | |
| 1377 | | [Exhibit Removed] | | | |
| 1378 | 9/26/2012 | Email; Subject: Notes | | | |
| 1379 | 9/26/2012 | Email; Subject: Updated documents | | | |
| 1380 | 9/26/2012 | Email; Subject: docs | | | |
| 1381 | 9/27/2012 | Email; Subject: Re: PJM Outline of Findings | | | |
| 1382 | 9/28/2012 | Email; Subject: Re: Update | | | |
| 1383 | 9/29/2012 | Email; Subject: Document | | | |
| 1384 | 9/30/2012 | Email; Subject: Re: Document | | | |
| 1385 | 9/30/2012 | Email; Subject: Wave 2 | | | |
| 1386 | 10/1/2012 | Email; Subject: Re: Meeting | | | |
| 1387 | 10/2/2012 | Email; Subject: Re: Master Grid | | | |
| 1388 | 10/2/2012 | Email; Subject: Re: MFA Breifing Docs | | | |
| 1389 | 10/2/2012 | Email; Subject: Re: FYI | | | |
| 1390 | 10/2/2012 | Email; Subject: Matrix - Actions | | | |
| 1391 | 10/5/2012 | Email; Subject: Re: update | | | |
| 1392 | 10/8/2012 | Email; Subject: Phones | | | |
| 1393 | 10/8/2012 | Email; Subject: FW: Manafort meeting notes | | | |
| 1394 | 10/18/2012 | Email; Subject: Re: Rick Gates - Ukraine work | | | |
| 1395 | 10/19/2012 | Email; Subject: Project Veritas Long View.docx | | | |
| 1396 | 10/25/2012 | Email; Subject: Press Statements | | | |
| 1397 | 11/26/2012 | Email; Subject: Re: Report | | | |
| 1398 | | [Exhibit Removed] | | | |
| 1399 | | [Exhibit Removed] | | | |
| 1400 | 12/6/2012 | Email chain; Subject: FW: Updated Docs | | | |
| 1401 | 12/6/2012 | Email; Subject: Docs | | | |
| 1402 | 12/6/2012 | Email; Subject: Phase one media | | | |
| 1403 | 12/10/2012 | Email chain; Subject: Re: Journalist contact details needed | | | |
| 1404 | 12/11/2012 | Email; Subject: In reception | | | |
| 1405 | 12/13/2012 | Email chain; Subject: Re: Report Coverage | | | |
| 1406 | 12/14/2012 | Email; Subject: Please call right away | | | |
| 1407 | 2/8/2013 | Email; Subject: RE: Project Veritas 2013-01-30.docx | | | |
| 1408 | 1/16/2013 | Email; Subject: Re: Manafort | | | |
| 1409 | 2/28/2014 | Email; Subject: RE: Ukraine | | | |
| 1410 | 12/3/2012 | Calendar; Subject; Vin Weber and Paul Manafort to meet with Jim Kolbe at CW | | | |
| 1411 | 1/31/2012 | Memo; Subject: Request for Congressional Update | | | |
| 1412 | 2/21/2012 | Calendar; Subject: Rick Gates meeting re- representing the Government of Ukraine in DC | | | |
| 1413 | 4/2/2012 | Calendar; Subject: Ukraine meeting with Rick Gates | | | |
| 1414 | 4/11/2012 | Calendar; Subject: Internal Ukraine mtg w Vin, Rip, McSherry, Andrew Wright (for Sam O), Lucy by phone | | | |
| 1415 | 5/14/2012 | Itinerary for President Viktor A. Yushchenko | | | |
| 1416 | 5/15/2012 | Calendar; Subject: Viktor A. Yushchenko meeting with Rep.Burton | | | |
| 1417 | 5/21/2013 | Email; Subject: RE: AmCham - Jorge Zukoski | | | |

| Ex. No. | Date | Description | Obj. | Off'd | Adm. |
|---|---|---|---|---|---|
| 1418 | | [Exhibit Removed] | | | |
| 1419 | 6/11/2012 | Document; Home Page for ECFMU | | | |
| 1420 | | [Exhibit Removed] | | | |
| 1421 | 6/14/2012 | Calendar; Subject: Drinks with Rick Gates, Amb Motseyk, Vin/ Tony | | | |
| 1422 | | [Exhibit Removed] | | | |
| 1423 | 6/22/2012 | Calendar; Subject: Accepted: Vin Weber / Joel Starr (Infofe) meeting for Ukraine | | | |
| 1424 | 6/25/2012 | Calendar; Subject: Vin Weber / Brian Wanko meeting for Ukraine | | | |
| 1425 | | [Exhibit Removed] | | | |
| 1426 | | [Exhibit Removed] | | | |
| 1427 | 8/2/2012 | Wire; Wells Fargo Wire Transfer Detail Report | | | |
| 1428 | | [Exhibit Removed] | | | |
| 1429 | 9/12/2012 | Calendar; Subject: Meet Rick Gates & Paul M and Borys Kolesnikov ibreakfast room of | | | |
| 1430 | 10/10/2012 | Wire; Wells Fargo Wire Transfer Detail Report | | | |
| 1431 | 10/18/2012 | Report; Pre-Election Outreach Project | | | |
| 1432 | | [Exhibit Removed] | | | |
| 1433 | 10/24/2012 | Report; Pre-Election Outreach Project | | | |
| 1434 | 10/31/2012 | Chat with Lucy Claire Saunders | | | |
| 1435 | 11/9/2012 | Email; Subject: RE: Call | | | |
| 1436 | 11/16/2012 | Wire; Wells Fargo Wire Transfer Detail Report | | | |
| 1437 | 11/16/2012 | Email; Subject: Ukraine | | | |
| 1438 | 11/16/2012 | Email; Subject: RE: Invoice 201210-0206 from Mercury Public Affairs LLC | | | |
| 1439 | 11/20/2012 | Calendar; Subject: Internal Ukraine Call Regarding Yefremov Visit - 11:30 EST / 10:30 Central | | | |
| 1440 | 11/20/2012 | Wire; Wells Fargo Wire Transfer Detail Report | | | |
| 1441 | 11/20/2012 | Calendar; Subject: Accepted: Internal Ukraine Call Regarding Yefremov Visit - 11:30 EST / 10:30 Central | | | |
| 1442 | 11/27/2012 | Email; Subject: Re: Meeting with Paul | | | |
| 1443 | | [Exhibit Removed] | | | |
| 1444 | | [Exhibit Removed] | | | |
| 1445 | 12/3/2012 | Calendar; Subject: Vin Weber and Paul Manafort to meet with Jim Kolbe at CW | | | |
| 1446 | 12/3/2012 | Calendar; Subject: Vin Weber and Paul Manafort to meet with Jim Kolbe at CW | | | |
| 1447 | 12/4/2012 | Calendar; Subject: Call Paul Manafort 703 623 4678 | | | |
| 1448 | 12/14/2012 | Memo; Subject: Government Relations Strategy - ECFMU | | | |
| 1449 | 12/17/2012 | Email; Subject: RE: 2013 | | | |
| 1450 | 12/19/2012 | Email; Subject: RE: NGO Targets / Dem Senate Relationships | | | |
| 1451 | 12/21/2012 | Wire; Wells Fargo Wire Transfer Detail Report | | | |
| 1452 | | [Exhibit Removed] | | | |
| 1453 | 1/16/2013 | Email; Subject: Re: Call; Memo; Subject: US Congressional Resolutions - H.R. 27 and H.R. 28 | | | |
| 1454 | 1/21/2013 | Email; Subject: Re: Fwd: US - This Week | | | |
| 1455 | 1/24/2013 | Email; Subject: RE: Meeting with Rohrabacher | | | |
| 1456 | 1/29/2013 | Calendar; Subject: FW: MCW Ukraine team to meet with Lawyer - Ken Gross re filings etc. | | | |
| 1457 | 1/29/2013 | Calendar; Subject: Rick Gates meeting @ MCW with MCW | | | |
| 1458 | 1/30/2013 | Email; Subject: RE: ECFMU - US Board Members | | | |
| 1459 | 1/30/2013 | Email; Subject: FW: Congressional Update (Rick Gates) | | | |
| 1460 | 1/30/2013 | Memo; Project Veritas revenue recognition | | | |
| 1461 | 2/1/2013 | Email; Subject: Re: ECFMU Board Suggestions | | | |
| 1462 | 10/2/2013 | Calendar; Lunch at Zaytinya (Vin Paul Rick) | | | |
| 1463 | 2/12/2013 | Calendar; MCW Ukraine team to meet with Lawyer - Ken Gross re filings etc. | | | |
| 1464 | 2/13/2013 | Email; Subject: GR for Ukraine | | | |

| Ex. No. | Date | Description | Obj. | Off'd | Adm. |
|---|---|---|---|---|---|
| 1465 | 2/19/2013 | Email; Subject: Re: Deliverables | | | |
| 1466 | 2/18/2013 | Email; Subject: RE: Criminal Justice Reform - Leave Behind | | | |
| 1467 | 2/18/2013 | Email; Subject: RE: Criminal Justice Reform - Leave Behind | | | |
| 1468 | 2/19/2013 | Calendar; Subject: Zaytinya / Paul Manafort | | | |
| 1469 | 2/25/2013 | Email; Subject: Re: AK Visit to US | | | |
| 1470 | 2/26/2013 | Email; Subject: RE: Carnegie Event | | | |
| 1471 | 2/27/2013 | Email; Subject: RE: AK Update Email; Subject: RE: Meetings | | | |
| 1472 | | [Exhibit Removed] | | | |
| 1473 | 3/1/2013 | Calendar; Subject: Kwasniewski Meeting with Senate Foreign Relations Minority Staff | | | |
| 1474 | 3/4/2013 | Email; Subject: RE: Meeting Follow-up | | | |
| 1475 | 2/11/2013 | Calendar; Subject: Accepted: Ukraine internal meeting re assignments. FARA etc. | | | |
| 1476 | 3/5/2013 | Email; Subject: RE: Prodi Visit | | | |
| 1477 | 3/6/2013 | Email; Subject: RE: Prodi Visit | | | |
| 1478 | 3/12/2013 | Email; Subject: Re: RP Schedule | | | |
| 1479 | 3/13/2013 | Email; Subject: RE: RP Briefing Materials | | | |
| 1480 | | [Exhibit Removed] | | | |
| 1481 | 3/14/2013 | Calendar; Subject: Romano Prodi Meeting with Rep. Tom Marino (R-PA) | | | |
| 1482 | 3/14/2013 | Email; Subject: FW: Manafort Weber meetings on 19th | | | |
| 1483 | 3/15/2013 | Wire; Wells Fargo Wire Transfer Detail Report | | | |
| 1484 | 3/18/2013 | Memo; Subject: Briefs for March 19 Meetings | | | |
| 1485 | 3/18/2013 | Email; Subject: Re: Briefing Materials for Paul | | | |
| 1486 | 3/19/2013 | Calendar; Subject: Dinner / Manafort, Rohrabacher & Weber/ reservation under Rehberg | | | |
| 1487 | 3/19/2013 | Calendar; Subject: Ukraine meeting at NED - Nadia Diuk =Paul Manafort/ Vin Weber | | | |
| 1488 | 3/19/2013 | Email; Subject: Read: Dinner / Manafort, Rohrabacher & Weber/ reservation under Rehberg | | | |
| 1489 | 3/20/2013 | Email; Subject: RE: Rosie Gray at Buzzfeed | | | |
| 1490 | | [Exhibit Removed] | | | |
| 1491 | 4/18/2013 | Calendar; Ukraine Internal, VERY VERY IMPORTANT | | | |
| 1492 | 4/19/2013 | Memo; Subject: Quarterly Update | | | |
| 1493 | 4/26/2013 | Calendar; Subject: Call Rick Gates (917) 209-7176 - two things see notes | | | |
| 1494 | 4/30/2013 | Calendar; Subject: FW: ECFMU Meeting with Arjun Mody (Sen. Barrasso) | | | |
| 1495 | 5/2/2013 | Email; Subject: Re: Kozhara | | | |
| 1496 | 5/7/2013 | Email; Subject: Re: Rep Tom Marino (R-PA) House Committee on Foreign Affairs meet and greet | | | |
| 1497 | 5/8/2013 | Schedule; Meeting Schedule for Sergeiy Kluyiev | | | |
| 1498 | 5/10/2013 | Calendar; Subject: Congressman Dana Rohrabacher he ask if you could give him a call Friday | | | |
| 1499 | 5/12/2013 | Email; Subject: Re: Rohrbacher | | | |
| 1500 | 5/22/2013 | Email; Subject: Re: Gusenbauer - Washington Visit | | | |
| 1501 | 5/22/2013 | Email; Subject: Re: Gusenbauer - Washington Visit | | | |
| 1502 | | [Exhibit Removed] | | | |
| 1503 | 5/29/2013 | Calendar; Subject: Internal Ukraine Team | | | |
| 1504 | 6/4/2013 | Calendar; Subject: UKR Meeting with Joe Pinder | | | |
| 1505 | 6/4/2013 | Calendar; Subject: UKR Meeting with Gib Mullan | | | |
| 1506 | 6/5/2013 | Calendar; Subject: breakfast meeting with AG /Paul Tony Rick Vin | | | |
| 1507 | 6/6/2013 | Calendar; Subject: UKR Meeting with Rep. Aderholt | | | |
| 1508 | 6/6/2013 | Calendar; Subject: UKR Meeting with Rep. Marino | | | |
| 1509 | 6/4/2013 | Email; Subject: RE: AG Briefing Book | | | |
| 1510 | 10/10/2012 | Memo; Subject: STATUS UPDATE | | | |

| Ex. No. | Date | Description | Obj. | Off'd | Adm. |
|---|---|---|---|---|---|
| 1511 | 6/7/2013 | Receipt; Charlie Palmer | | | |
| 1512 | 6/16/2013 | Email; Subject: RE: Rosie Gray at Buzzfeed | | | |
| 1513 | | [Exhibit Removed] | | | |
| 1514 | 6/26/2013 | Email; Subject: RE: RP | | | |
| 1515 | 6/28/2013 | Email; Subject: Re: Travel | | | |
| 1516 | 7/10/2013 | Email; Subject: Durbin Res | | | |
| 1517 | | [Exhibit Removed] | | | |
| 1518 | 8/15/2013 | Email; Subject: RE: Reuters: Russia tightens customs rules to force Ukraine into union | | | |
| 1519 | 8/22/2013 | Email; Subject: Re: Meeting | | | |
| 1520 | 8/27/2013 | Email; Subject: Re: Outstanding Invoices from Mercury Public Affairs LLC | | | |
| 1521 | 8/28/2013 | Email; Subject: Re: McCain | | | |
| 1522 | 8/29/2013 | Email; Subject: FW: McCain | | | |
| 1523 | | [Exhibit Removed] | | | |
| 1524 | 9/11/2013 | Email; Subject: Re: can you verify Ukraine paid us | | | |
| 1525 | | [Exhibit Removed] | | | |
| 1526 | 9/25/2013 | Schedule; Subject: ECFMU Meeting with Rick Gates | | | |
| 1527 | 9/25/2013 | Calendar; Subject: Accepted: HOLD - Meeting with Rick | | | |
| 1528 | 10/2/2013 | Calendar; Subject: Lunch at Zaytinya (Vin Paul Rick) | | | |
| 1529 | 10/9/2013 | Email; Subject: Fwd: SK Proposed Schedule | | | |
| 1530 | | [Exhibit Removed] | | | |
| 1531 | 11/20/2013 | Email; Subject: Fwd: request for you | | | |
| 1532 | 11/26/2013 | Calendar; Subject: Mercury/Podesta call on Ukraine | | | |
| 1533 | | [Exhibit Removed] | | | |
| 1534 | 11/26/2013 | Email; Subject: RE: Report on Call with Rob Van de Water | | | |
| 1535 | | [Exhibit Removed] | | | |
| 1536 | 12/11/2013 | Email; Subject: RE: Reuters enquiry on Rosie Gray article | | | |
| 1537 | | [Exhibit Removed] | | | |
| 1538 | 1/24/2014 | Email; Subject: Re: Congressman Roskam | | | |
| 1539 | 1/28/2014 | Calendar; Subject: Call with Rob van de Water | | | |
| 1540 | 1/29/2014 | Email; Subject: Re: Where are we with wiring money | | | |
| 1541 | | [Exhibit Removed] | | | |
| 1542 | 2/3/2014 | Email; Subject: Re: Elena Bondarenko | | | |
| 1543 | 2/10/2014 | Email; Subject: Re: Work agreement | | | |
| 1544 | 1/17/2014 | Email; Subject: Fwd: McCain/Cardin Bill | | | |
| 1545 | 2/18/2014 | Email; Subject: RE: Menendez | | | |
| 1546 | 2/18/2014 | Email; Subject: RE: Menendez | | | |
| 1547 | 2/25/2014 | Email; Subject: RE: Eli | | | |
| 1548 | 3/1/2014 | Email; Subject: Still no money | | | |
| 1549 | | [Exhibit Removed] | | | |
| 1550 | | [Exhibit Removed] | | | |
| 1551 | 4/8/2014 | Email; Subject: Wire | | | |
| 1552 | 4/30/2014 | Email; Subject: Items | | | |
| 1553 | 5/1/2014 | Schedule; Subject: Call with Rick Gates and Tony Podesta | | | |
| 1554 | 5/6/2014 | Email; Subject: RE: | | | |
| 1555 | 5/8/2014 | Email; Subject: ECFMU Termination | | | |
| 1556 | 5/28/2014 | Email; Subject: RE: Call | | | |
| 1557 | 5/29/2014 | Schedule; Subject: Call with Rick Gates | | | |
| 1558 | 5/30/2014 | Email; Subject: RE: Memo on Ukraine | | | |
| 1559 | 6/5/2014 | Email; Subject: Re: McCain | | | |
| 1560 | 11/12/2014 | Calendar; Subject: Mercury/Rick Gates Meeting | | | |
| 1561 | 2012-2014 | Email; Subject: RE: European center for modern Ukraine; Wire Records | | | |
| 1562 | 2012-2014 | Invoices; Mercury to the European Centre for a Modern Ukraine | | | |
| 1563 | 8/18/2016 | Email; Subject: Fwd: Follow-up question | | | |

| Ex. No. | Date | Description | Obj. | Off'd | Adm. |
|---------|------|-------------|------|-------|------|
| 1564 | 8/19/2016 | Email; Subject: Re: So Caplin's now engaged for Podesta Attorney client privileged | | | |
| 1565 | 8/20/2016 | Email; Subject: Re: one quick follow up question | | | |
| 1566 | 8/23/2016 | Email; Subject: RE: Note from Vin Weber | | | |
| 1567 | 5/2/2017 | Email; Subject: RE: Reporter Outreach to Hill Staff | | | |
| 1568 | 4/13/2017 | Email; Subject: Re: Today's WSJ | | | |
| 1569 | 2/21/2012 | Email; Subject: Ukraine Meeting | | | |
| 1570 | 2/21/2012 | Email; Subject: VM | | | |
| 1571 | 3/2/2012 | Email; Subject: pricing | | | |
| 1572 | 3/26/2012 | Calendar; Subject: Accepted: Rick Gates/Ukraine Meeting | | | |
| 1573 | 3/30/2012 | Email; Subject: Re: Ukraine | | | |
| 1574 | 4/1/2012 | Document; Podesta Group - Client Summary - April 2012 | | | |
| 1575 | 4/1/2012 | Email; Subject: Re: Ukraine | | | |
| 1576 | | [Exhibit Removed] | | | |
| 1577 | 4/2/2012 | Calendar; T. Podesta; April 02, 2012 | | | |
| 1578 | 4/2/2012 | Email; Subject: 2012 Ukraine Draft | | | |
| 1579 | 4/3/2012 | Email; Subject: RE: draft contract | | | |
| 1580 | 4/4/2012 | Email; Subject: Re: ukraine follow-up | | | |
| 1581 | 4/5/2012 | Email; Subject: Ukraine Outline | | | |
| 1582 | 4/5/2012 | Email; Subject: Accepted: Vin Weber/Ukraine Meeting | | | |
| 1583 | 4/9/2012 | Email; Subject: RE: Wednesday (April 11th) | | | |
| 1584 | | [Exhibit Removed] | | | |
| 1585 | 4/11/2012 | Calendar; T. Podesta; April 11, 2012 | | | |
| 1586 | 4/16/2012 | Email; Subject: RE: Ukraine | | | |
| 1587 | 4/17/2012 | Email; Subject: Re: draft contract | | | |
| 1588 | 4/17/2012 | Email; Subject: Contract and FARA drafts | | | |
| 1589 | 4/18/2012 | Email; Subject: follow up | | | |
| 1590 | | [Exhibit Removed] | | | |
| 1591 | 4/20/2012 | Email; Subject: Plan | | | |
| 1592 | 4/20/2012 | Email; Subject: Draft doc -- Ukraine | | | |
| 1593 | 4/25/2012 | Email; Subject: quick call? | | | |
| 1594 | 4/27/2012 | Email; Subject: Contracts | | | |
| 1595 | 4/27/2012 | Email; Subject: FARA forms | | | |
| 1596 | 4/27/2012 | Email; Subject: Ukraine FARA/LDA | | | |
| 1597 | 4/27/2012 | Email; Subject: RE: Ukraine FARA/LDA | | | |
| 1598 | 4/28/2012 | International Sector Meeting | | | |
| 1599 | 4/30/2012 | Email; Subject: Call with Mercury/Ken Gross | | | |
| 1600 | 5/1/2012 | Email; Subject: Treatment of Former Prime Minister Yulia Tymoshenko | | | |
| 1601 | 5/2/2012 | Email; Subject: FW: Huffington Post Calls For U.S. Action Against Ukraine | | | |
| 1602 | 5/2/2012 | Email; Subject: Ukraine | | | |
| 1603 | 5/2/2012 | Calendar; Subject: Conference call with Gates/Weber/Podesta…. | | | |
| 1604 | 5/2/2012 | Email; Subject: 2nd Ukraine call with Mercury/counsel | | | |
| 1605 | 5/3/2012 | Email; Subject: registration | | | |
| 1606 | 5/3/2012 | Email; Subject: Ukraine | | | |
| 1607 | 5/3/2012 | Email; Subject: Final Ukraine decision | | | |
| 1608 | 5/4/2012 | Email; Subject: Send to Rick? | | | |
| 1609 | 5/8/2012 | Email; Subject: no contract no money no registration LDA | | | |
| 1610 | 5/8/2012 | Email; Subject: U.S. Helsinki Commission to hold briefing on Ukraine | | | |
| 1611 | 5/9/2012 | Email; Subject: Contracts | | | |
| 1612 | 5/9/2012 | Email; Subject: Meeting opportunity | | | |
| 1613 | 5/9/2012 | Email; Subject: Meeting opportunity | | | |
| 1614 | 5/9/2012 | Email; Subject: Strategy | | | |
| 1615 | 5/9/2012 | Email; Subject: Documents | | | |
| 1616 | 5/10/2012 | Email; Subject: Ukraine update | | | |
| 1617 | 5/10/2012 | Email; Subject: Ukraine - Blinken meeting | | | |
| 1618 | 5/10/2012 | Email; Subject: Mercury C&W meetings approved via Rick thus far | | | |

| Ex. No. | Date | Description | Obj. | Off'd | Adm. |
|---|---|---|---|---|---|
| 1619 | 5/10/2012 | Email; Subject: Mercury C&W meetings approved via Rick thus far | | | |
| 1620 | 5/10/2012 | Email; Subject: Blinken | | | |
| 1621 | 5/10/2012 | Email chain; Subject: RE: NATO | | | |
| 1622 | 5/11/2012 | Email; Subject: Meeting Request: Former Ukranian President Victor Yushchenko | | | |
| 1623 | 5/11/2012 | Email; Subject: RE: Mercury C&W meeting approved via Rick thus far | | | |
| 1624 | 5/15/2012 | Email; Subject: Update | | | |
| 1625 | 5/16/2012 | Email; Subject: FW: Ukraine | | | |
| 1626 | 5/17/2012 | Email; RE: Documents | | | |
| 1627 | 5/17/2012 | Email; Subject: Re: Any Update | | | |
| 1628 | 5/18/2012 | Email; Subject: MFA - Gryshchenko | | | |
| 1629 | 5/18/2012 | Email; Subject: Re: fran MFA - Gyrshchencko | | | |
| 1630 | 5/21/2012 | Email; Subject: RE: Ukraine | | | |
| 1631 | 5/22/2012 | Email; Subject: RE: Signed ECFMU Contract | | | |
| 1632 | 5/23/2012 | Email; Subject: Re: FARA issue | | | |
| 1633 | 5/23/2012 | Email; Subject: Burton Codel | | | |
| 1634 | 5/24/2012 | Email; Subject: FW: Letter re: LDA vs. FARA filing | | | |
| 1635 | 5/25/2012 | Email; Subject: Re: Fwd: Any money from ukraine? | | | |
| 1636 | 5/25/2012 | Email; Subject: Re: Sen. Inhofe | | | |
| 1637 | 5/30/2012 | Email; Subject: money | | | |
| 1638 | 5/30/2012 | Calendar; Subject: Ukraine: Inhofe amendment | | | |
| 1639 | 5/30/2012 | Email; Subject: Inhofe Ukraine Amendment | | | |
| 1640 | 5/30/2012 | Email; Subject: FW: Inhofe Amendment | | | |
| 1641 | | [Exhibit Removed] | | | |
| 1642 | 5/30/2012 | Email; Subject: Re: wire has not arrived where are we? please call me | | | |
| 1643 | 6/4/2012 | Email; Subject: RE: wire | | | |
| 1644 | 5/31/2012 | Email; Subject: FW: Inhofe Amendment | | | |
| 1645 | 6/6/2012 | Email; Subject: Re: item for you | | | |
| 1646 | 6/6/2012 | Email; Subject: RE: Website Contact Staff Form Submission | | | |
| 1647 | 6/7/2012 | Email; Subject: back to the future | | | |
| 1648 | | [Exhibit Removed] | | | |
| 1649 | 6/8/2012 | Email; Subject: RE: Hill targets | | | |
| 1650 | 6/8/2012 | Email; Subject: FW: Draft oped | | | |
| 1651 | 6/11/2012 | Email; Subject: RE: Vin Weber | | | |
| 1652 | 6/12/2012 | Email; Subject: FW: Ukraine call summary | | | |
| 1653 | 6/13/2012 | Email; Subject: RE: Hill targets | | | |
| 1654 | 6/14/2012 | Email; Subject: ecfmu | | | |
| 1655 | 6/19/2012 | Email; Subject: Re: Ukraine call | | | |
| 1656 | 6/24/2012 | Email; Subject: Ohendovskiy Visit - Draft Schedule | | | |
| 1657 | 6/27/2012 | Email; Subject: Re: what works for us? | | | |
| 1658 | 6/28/2012 | Email; Subject: sovereign contract a/r update | | | |
| 1659 | 7/2/2012 | Email; Subject: Re: fyi - upcoming allies release | | | |
| 1660 | | [Exhibit Removed] | | | |
| 1661 | 7/4/2012 | Calendar; Subject: ECFMU Call - Re-Scheduled - Thursday 10:00 EST (9:00am Central) | | | |
| 1662 | 7/5/2012 | Email; Subject: FW: Interview request (for Leonid Kozhara) from Newsweek/Daily Beast - REQUEST for background info | | | |
| 1663 | 7/8/2012 | Email; Subject: Fw: Talk | | | |
| 1664 | 7/9/2012 | Email; Subject: Fw: Internal Q & A | | | |
| 1665 | 7/16/2012 | Email; Subject: FW: Ukraine Update | | | |
| 1666 | | [Exhibit Removed] | | | |
| 1667 | | [Exhibit Removed] | | | |
| 1668 | 7/11/2012 | Email; Subject: RE: Ukraine Wire. | | | |
| 1669 | 7/16/2012 | Email; Subject: RE: Rick Gates / Ina Kirsch | | | |
| 1670 | | [Exhibit Removed] | | | |
| 1671 | 7/16/2012 | Email; Subject: european centre for a modern ukraine q&a | | | |
| 1672 | 7/17/2012 | Email; Subject: Ukraine meeting summary | | | |

| Ex. No. | Date | Description | Obj. | Off'd | Adm. |
|---|---|---|---|---|---|
| 1673 | 7/27/2012 | Email; Subject: RE: do you have a list of all the countries that PG represents? | | | |
| 1674 | 8/7/2012 | Email; Subject: Re: Synopsis of work done for ECFMU | | | |
| 1675 | 8/8/2012 | Email; Subject: Update | | | |
| 1676 | 8/10/2012 | Email; Subject: Question | | | |
| 1677 | 8/24/2012 | Email; Subject: ECFMU Elections Strategy Document | | | |
| 1678 | 8/27/2012 | Email; Subject: Fw: Dem Convention | | | |
| 1679 | 8/27/2012 | Email; Subject: Re: Question | | | |
| 1680 | 8/28/2012 | Email; Subject: E-MAIL ADDRESS for communication with Gorshenin Institute on topic of elections | | | |
| 1681 | 8/30/2012 | Email; Subject: RE: Democratic National Convention - Charlotte | | | |
| 1682 | 8/30/2012 | Email; Subject: Re: Boris Kolisnikov | | | |
| 1683 | 9/6/2012 | Email; Subject: RE: Democratic National Convention - Charlotte | | | |
| 1684 | 9/10/2012 | Email; Subject: FW: BVK Visit | | | |
| 1685 | 9/11/2012 | Agenda; Meeting Agenda - CURRENT Schedule, DPM Boris Kolisnikov | | | |
| 1686 | 9/12/2012 | Email; Subject: List of critical questions surrounding topic of UA elections to be developed (DEADLINE: 13 Sept, 5 pm EST) | | | |
| 1687 | 4/5/2012 | Email; Subject: FW: draft contract | | | |
| 1688 | 9/13/2012 | Email; Subject: RE: Reminder: draft program for Lutkovskaya visit | | | |
| 1689 | 9/13/2012 | Email; Subject: RE: Reminder: draft program for Lutkovskaya visit | | | |
| 1690 | 9/14/2012 | Calendar; Subject: UKR Call to Discuss S.Res.466 | | | |
| 1691 | 9/14/2012 | Email; Subject: RE: Flagging mark-up next week | | | |
| 1692 | 9/14/2012 | Email; Subject: FW: Flagging mark-up next week | | | |
| 1693 | 9/17/2012 | Calendar; Subject: Ukraine Call | | | |
| 1694 | 9/17/2012 | Email; Subject: Fw: Meeting | | | |
| 1695 | 9/17/2012 | Email; Subject: FW: URGENT | | | |
| 1696 | 9/17/2012 | Email; Subject: RE: URGENT | | | |
| 1697 | 9/17/2012 | Email; Subject: RE: Flagging mark-up next week | | | |
| 1698 | 9/17/2012 | Email; Subject: RE: URGENT | | | |
| 1699 | 9/18/2012 | Email; Subject: List of contacts | | | |
| 1700 | 9/18/2012 | Email; Subject: President - Interview | | | |
| 1701 | 9/19/2012 | Calendar; Subject: S Res Discussion | | | |
| 1702 | 9/19/2012 | Email; Subject: Re: Action items | | | |
| 1703 | 9/19/2012 | Email; Subject: RE: URGENT | | | |
| 1704 | 9/19/2012 | Email; Subject: Ukraine call/follow-up | | | |
| 1705 | 9/20/2012 | Email; Subject: RE: Senate schedule | | | |
| 1706 | 9/20/2012 | Email; Subject: Manchin | | | |
| 1707 | | [Exhibit Removed] | | | |
| 1708 | 9/20/2012 | Email; Subject: RE: United Coal | | | |
| 1709 | 9/20/2012 | Email; Subject: RE: URGENT | | | |
| 1710 | | [Exhibit Removed] | | | |
| 1711 | 9/21/2012 | Email; Subject: RE: Senate schedule | | | |
| 1712 | 9/22/2012 | Email; Subject: Re: Call Manchin AGAIN re Ukraine | | | |
| 1713 | 9/22/2012 | Email; Subject: Re: Fwd: Europe OpEd | | | |
| 1714 | 9/22/2012 | Email; Subject: Re: Who | | | |
| 1715 | 9/22/2012 | Email; Subject: Fw: HOTLINE-S.RES.466: YULIA TYMOSHENKO | | | |
| 1716 | | [Exhibit Removed] | | | |
| 1717 | 9/22/2012 | Email; Subject: Re: Call | | | |
| 1718 | 9/22/2012 | Email; Subject: Re: Manchin | | | |
| 1719 | 9/22/2012 | Email; Subject: Re: Europe OpEd | | | |
| 1720 | | [Exhibit Removed] | | | |
| 1721 | 9/24/2012 | Email; Subject: FW: Blinken | | | |
| 1722 | 9/24/2012 | Email; Subject: Fw: SL Bio | | | |
| 1723 | 9/24/2012 | Email; Subject: Fwd: Europe OpEd | | | |
| 1724 | 9/24/2012 | Email; Subject: Re: Items | | | |

| Ex. No. | Date | Description | Obj. | Off'd | Adm. |
|---|---|---|---|---|---|
| 1725 | 9/25/2012 | Email; Subject: ECFMU welcomes new team member, Marina Macherenkova | | | |
| 1726 | 9/27/2012 | Email; Subject: Fwd: Meeting Agenda | | | |
| 1727 | 10/1/2012 | Email; Subject: Re: Ukraine follow-up | | | |
| 1728 | 10/1/2012 | Calendar; Subject: ECFMU/Ukraine Call | | | |
| 1729 | 10/2/2012 | Email; Subject: RE: Rick Gates | | | |
| 1730 | 10/2/2012 | Email; Subject: Re: do we have ukraine memo? | | | |
| 1731 | 10/3/2012 | Email; Subject: FW: Ukraine election Strategy | | | |
| 1732 | 10/3/2012 | Email; Subject: Re: Manchin called me today | | | |
| 1733 | 10/9/2012 | Spreadsheet; Podesta Group - Staff Detail - September 2012 | | | |
| 1734 | 10/10/2012 | Email; Subject: Re: What's dues us from ukriane | | | |
| 1735 | 10/10/2012 | Email; Subject: For Our Meeting Today | | | |
| 1736 | 10/11/2012 | Email; Subject: Lutkovska and other | | | |
| 1737 | 10/15/2012 | Email; Subject: RE: Ukraine | | | |
| 1738 | 10/15/2012 | Email; Subject: FW: Urgent | | | |
| 1739 | 10/16/2012 | Email; Subject: RE: Congressional Staff interested in Election Monitoring | | | |
| 1740 | 10/16/2012 | Email; Subject: FW: Pre-election Outreach | | | |
| 1741 | 10/17/2012 | Report & Letters; Pre-Election Outreach Project | | | |
| 1742 | 10/17/2012 | Report; Pre-Election Outreach Project | | | |
| 1743 | 10/17/2012 | Report; Pre-Election Outreach Project | | | |
| 1744 | 10/18/2012 | Email; Subject: RE: Urgent | | | |
| 1745 | 10/19/2012 | Email; Subject: Thank you | | | |
| 1746 | 10/22/2012 | Spreadsheet; Podesta Projects | | | |
| 1747 | 10/23/2012 | Email; Subject: ECFMU Newsletter | | | |
| 1748 | 10/23/2012 | Email; Subject: Smith resolution | | | |
| 1749 | 10/23/2012 | Email; Subject: FW: Smith resolution | | | |
| 1750 | 10/24/2012 | Email; Subject: Re: OpEd | | | |
| 1751 | 10/30/2012 | Email; Subject: Re: US Statement on elections | | | |
| 1752 | 10/31/2012 | Email; Subject: Berman's Committee Chief of Staff | | | |
| 1753 | 10/31/2012 | Email; Subject: ECFMU: Ukraine Election Newsflash - 31 October 2012 | | | |
| 1754 | | [Exhibit Removed] | | | |
| 1755 | 10/31/2012 | Email; Subject: ECFMU: Ukrainian Parliamentary Election, October 28 | | | |
| 1756 | 11/1/2012 | Email; Subject: Re: White House - URGENT | | | |
| 1757 | 11/1/2012 | Email; Subject: Re: MFA Statement | | | |
| 1758 | 11/13/2012 | Email; Subject:  Ukraine press/policy ideas | | | |
| 1759 | 11/26/2012 | Email; Subject: Fw: Ukraine | | | |
| 1760 | 11/14/2012 | Email; Subject: Re: Readout of the Vice President's Call with Ukrainian President Viktor Yanukovych | | | |
| 1761 | 11/19/2012 | Memo; Subject: Post-Election Public Affairs Plan and Long-Term Press Strategy | | | |
| 1762 | 11/20/2012 | Email; Subject: Re: Party of Regents leader Olexandr Yefremov | | | |
| 1763 | 11/29/2012 | Email; Subject: RE: Assessment | | | |
| 1764 | 11/29/2012 | Email; Subject: RE: Assessment | | | |
| 1765 | 11/29/2012 | Email; Subject: RE: Catching Up | | | |
| 1766 | 11/29/2012 | Email; Subject: RE: Assessment | | | |
| 1767 | 12/4/2012 | Email; Subject: December | | | |
| 1768 | 12/5/2012 | Email; Subject: ukraine | | | |
| 1769 | 12/6/2012 | Email; Subject: RE: Skadden Report | | | |
| 1770 | 12/10/2012 | Email; Subject: RE: invitation: Supporting Democracy in Georgia and Ukraine, Tuesday, December 18, 12:15 p.m. | | | |
| 1771 | 12/11/2012 | Email; Subject: Skadden report update | | | |
| 1772 | 12/14/2012 | Email; Subject: Fw: Engage Ukraine 2013 | | | |
| 1773 | 12/21/2012 | Email; Subject: RE: follow up | | | |
| 1774 | 12/23/2012 | Email; Subject: FW: Google Alert - Tymoshenko | | | |
| 1775 | | [Exhibit Removed] | | | |

| Ex. No. | Date | Description | Obj. | Off'd | Adm. |
|---|---|---|---|---|---|
| 1776 | 1/7/2013 | Email; Subject: RE: Steve Pifer of Brookings Institute | | | |
| 1777 | 1/8/2013 | Email; Subject: Steve Pifer of Brookings Institute | | | |
| 1778 | 1/10/2013 | Email; Subject: Re: meeting with Ukraine DCM | | | |
| 1779 | 1/17/2013 | Spreadsheet; Contact Information | | | |
| 1780 | 1/31/2013 | Email; Subject: RE: DC engagement plan for the Honorable Sergei Kluyev | | | |
| 1781 | 2/1/2013 | Email; Subject: Proposed Board Members for the ECFMU | | | |
| 1782 | 2/6/2013 | Pre-Billing Worksheet For Invoices to be sent on February 10, 2013 | | | |
| 1783 | 2/8/2013 | Email; Subject: RE: ECFMU Board | | | |
| 1784 | 2/18/2013 | RE: Deliverables | | | |
| 1785 | 2/18/2013 | Email; Subject: Fw: Meeting | | | |
| 1786 | 2/18/2013 | Email; Subject: Re: Meeting | | | |
| 1787 | 2/19/2013 | Email; Subject: Ukraine | | | |
| 1788 | 3/1/2013 | Email; Subject: Re: AK Visit | | | |
| 1789 | 3/3/2013 | Email; Subject: RE: Pyatt | | | |
| 1790 | 3/12/2013 | Email; Subject: FW: RP Schedule | | | |
| 1791 | 3/7/2013 | Email; Subject: RE: Orest and MP S. Vlasenko | | | |
| 1792 | 3/11/2013 | Email; Subject: RE: Kerry Prodi meeting | | | |
| 1793 | 3/14/2013 | Email; Subject: RE: Congressional Ukraine Caucus | | | |
| 1794 | 3/17/2013 | Email; Subject: Re: Interviews | | | |
| 1795 | 3/18/2013 | Email; Subject: RE: Sherman | | | |
| 1796 | 3/18/2013 | Email; Subject: Please | | | |
| 1797 | | [Exhibit Removed] | | | |
| 1798 | 3/20/2013 | Email; Subject: Memo for Gates meeting | | | |
| 1799 | 3/22/2013 | Email; Subject: Fw: The Next 90 Days | | | |
| 1800 | 3/25/2013 | Memo; Subject: Klyuiev Visit | | | |
| 1801 | 3/27/2013 | Email; Subject: Engage Ukraine Hill meeting | | | |
| 1802 | 3/28/2013 | Email; Subject: Fw: Outside View: Washington consultants and opaque Ukrainian government tenders | | | |
| 1803 | 3/28/2013 | Email; Subject: Readout from meeting with State Department Official | | | |
| 1804 | 3/28/2013 | Email chain; Subject: FW: Outside View: Washington consultants and opaque Ukrainian government tenders | | | |
| 1805 | 4/6/2013 | Email; Subject: Fwd: COMPLETELY CONFIDENTIAL on Ukraine | | | |
| 1806 | 4/8/2013 | Email; Subject: Strategy Document | | | |
| 1807 | 4/9/2013 | Email; Subject: RE: Lutsenko-pitch-blogs-040813 | | | |
| 1808 | 4/9/2013 | Email; Subject: Ukraine PR | | | |
| 1809 | 4/15/2013 | Email; Subject: FW: Sergey Klyuiev's CV | | | |
| 1810 | 4/19/2013 | Email; Subject: RE: Report | | | |
| 1811 | 4/26/2013 | Email; Subject: Re: Schedule Update | | | |
| 1812 | 4/30/2013 | Email; Subject: Ukrainian Ambassador | | | |
| 1813 | 5/1/2013 | Email; Subject: RE: Ukrainian Foreign Minister Leonid Kozhara | | | |
| 1814 | 5/2/2013 | Email; Subject: Re: Kozhara | | | |
| 1815 | 5/6/2013 | Email; Subject: RE: Meeting request on behalf of the Foreign Minister of Ukraine | | | |
| 1816 | 5/8/2013 | Email; Subject: RE: CSIS | | | |
| 1817 | 5/8/2013 | Email; Subject: Ukraine op-ed | | | |
| 1818 | 5/10/2013 | Email; Subject: RE: Meeting Summary | | | |
| 1819 | 5/10/2013 | Email; Subject: Ukraine FM | | | |
| 1820 | | [Exhibit Removed] | | | |
| 1821 | 5/11/2013 | Email; Subject: Re: Deliverables | | | |
| 1822 | 5/12/2013 | Email; Subject: Fwd: Follow-up | | | |
| 1823 | 5/14/2013 | Email; Subject: RE: Ukraine | | | |
| 1824 | 5/28/2013 | Email; Subject: Dr. Gusenbauer visit | | | |
| 1825 | 5/28/2013 | Email; Subject: Centre for Modern Ukraine outstanding money | | | |
| 1826 | 5/30/2013 | Email; Subject: Lunch w/Fred Turner | | | |
| 1827 | 6/4/2013 | Email; Subject: RE: AG Briefing Book | | | |
| 1828 | 6/6/2013 | Pre-Billing Worksheet For Invoices to be sent on June 10, 2013 | | | |

| Ex. No. | Date | Description | Obj. | Off'd | Adm. |
|---|---|---|---|---|---|
| 1829 | 6/6/2013 | Pre-Billing Worksheet For Invoices to be sent on August 10, 2013 | | | |
| 1830 | 6/12/2013 | Email; Subject: RE: Durbin Floor Statement on Tymoschenko | | | |
| 1831 | 6/18/2013 | Email; Subject: Meeting w/Sen. Durbin staff | | | |
| 1832 | 6/19/2013 | Email; Subject: Re: Venice Weekend 2013 Invite List | | | |
| 1833 | 6/24/2013 | Email; Subject: Re: S.R. 165 - Durbin | | | |
| 1834 | 6/25/2013 | Email; Subject: Centre for a Modern Ukraine | | | |
| 1835 | 6/25/2013 | Email; Subject: Re: Manchin | | | |
| 1836 | 6/25/2013 | Email; Subject: Please Review | | | |
| 1837 | 7/8/2013 | Email; Subject: RE: Centre for a Modern Ukraine | | | |
| 1838 | 7/11/2013 | Email; Subject: RE: Rick Gates | | | |
| 1839 | 7/11/2013 | Email; Subject: RE: Rick Gates request | | | |
| 1840 | 7/25/2013 | Email; Subject: Re: Manchin | | | |
| 1841 | 8/5/2013 | Email; Subject: FW: Ukaine update | | | |
| 1842 | 8/8/2013 | Email; Subject: FW: SK Visit | | | |
| 1843 | 8/8/2013 | Email; Subject: Re: SK Visit | | | |
| 1844 | | [Exhibit Removed] | | | |
| 1845 | | [Exhibit Removed] | | | |
| 1846 | 8/27/2013 | Email; Subject: RE: Vin Weber | | | |
| 1847 | | [Exhibit Removed] | | | |
| 1848 | 9/4/2013 | Email; Subject: Gates | | | |
| 1849 | 9/4/2013 | Email; Subject: Re: Fall Efforts | | | |
| 1850 | 9/5/2013 | Pre-Billing Worksheet For Invoices to be sent on September 10, 2013 | | | |
| 1851 | 9/16/2013 | Email; Subject: FW: UN GA media for VFY | | | |
| 1852 | 9/25/2013 | Email; Subject: Re: Ukraine | | | |
| 1853 | 9/30/2013 | Email; Subject: Re: Ukraine Update | | | |
| 1854 | 10/1/2013 | Email; Subject: FW: Meeting | | | |
| 1855 | 10/7/2013 | Email; Subject: FW: Visit Sergey Kluyev | | | |
| 1856 | 10/8/2013 | Email; Subject: RE: Eastern Partneship Summit resolution | | | |
| 1857 | 10/9/2013 | Email; Subject: RE: Assume you've seen these | | | |
| 1858 | 10/9/2013 | Email; Subject: RE: Funding for ECMFU | | | |
| 1859 | 10/18/2013 | Email; Subject: Re: Kalyuzhnyy and Geller Visit | | | |
| 1860 | 10/17/2013 | Email; Subject: Re: Message | | | |
| 1861 | 10/23/2013 | Email; Subject: RE: Ukraine - IMF contacts | | | |
| 1862 | 10/24/2013 | Email; Subject: RE: Question | | | |
| 1863 | 4/25/2013 | Email; Subject: RE: Klyuiev/Wall Street Journal | | | |
| 1864 | | [Exhibit Removed] | | | |
| 1865 | 11/1/2013 | Email; Subject: FW: Update | | | |
| 1866 | 11/11/2013 | Pre-Billing Worksheet For Invoices to be sent on November 10, 2013 | | | |
| 1867 | 11/18/2013 | Email; Subject: D Res | | | |
| 1868 | 11/19/2013 | Email; Subject: Proposed Kluyuiev Visit | | | |
| 1869 | 11/19/2013 | Email; Subject: Memo | | | |
| 1870 | 11/23/2013 | Email; Subject: Re: Readout of the Vice President's Call with Ukrainian President Viktor Yanukovych | | | |
| 1871 | 12/5/2013 | Pre-Billing Worksheet For Invoices to be sent on December 10, 2013 | | | |
| 1872 | 12/6/2013 | Email; Subject: Fw: Yanukovych sold Ukraine out to Putin | | | |
| 1873 | 12/13/2013 | Email; Subject: RE: MBDA Internal Mtg | | | |
| 1874 | 12/17/2013 | Email; Subject: Re: S.Res 319 | | | |
| 1875 | 12/18/2013 | Email; Subject: SFRC business meeting | | | |
| 1876 | 12/19/2013 | Email; Subject: RE: A couple of points | | | |
| 1877 | 12/24/2013 | Email; Subject: Re: Transfer | | | |
| 1878 | 1/8/2014 | Pre-Billing Worksheet For Invoices to be sent on January 10, 2014 | | | |
| 1879 | 1/10/2014 | Email; Subject: Re: BUSINESS MEETING AND IMPLICATIONS OF THE CRISIS IN UKRAINE HEARING | | | |
| 1880 | 1/17/2014 | Client Contact List | | | |
| 1881 | 1/28/2014 | Email; Subject: RE: HR 447 | | | |
| 1882 | 1/29/2014 | Email; Subject: Re: Negative attention due to our work in Ukraine | | | |

| Ex. No. | Date | Description | Obj. | Off'd | Adm. |
|---|---|---|---|---|---|
| 1883 | 2/5/2014 | Email; Subject: FW: ECFMU Declaration/Заява Європейського Центру Сучасної України | | | |
| 1884 | 2/6/2014 | Pre-Billing Worksheet For Invoices to be sent on February 10, 2014 | | | |
| 1885 | 2/6/2014 | Email; Subject: Re: 'Fuck the EU,' frustrated Nuland says to Pyatt, in alleged leaked phone call | | | |
| 1886 | 2/11/2014 | Email; Subject: FW: Guest List | | | |
| 1887 | 2/11/2014 | Email; Subject: Re: Guest List | | | |
| 1888 | 2/18/2014 | Email; Subject: Fw: Menendez | | | |
| 1889 | 2/18/2014 | Email; Subject: Menendez | | | |
| 1890 | 2/18/2014 | Email; Subject: FW: Live Updates | | | |
| 1891 | 2/20/2014 | Email; Subject: Re: A futile gesture? | | | |
| 1892 | 2/21/2014 | Email; Subject: Fw: Where's the wire from last year | | | |
| 1893 | 2/22/2014 | Email; Subject: Re: NYTimes: Ukraine's Leader Flees Palace as Protesters Widen Control | | | |
| 1894 | 2/25/2014 | Email; Subject: FW: Podesta in the News Today | | | |
| 1895 | 2/25/2014 | Email; Subject: Re: Did u get emails today from ina? | | | |
| 1896 | 2/26/2014 | Email; Subject: Re: Podesta in the News Today | | | |
| 1897 | 3/4/2014 | Email; Subject: Re: Any money from bvi ? Ukraine?? | | | |
| 1898 | 3/6/2014 | Press Release; White House Press Release re Executive Order | | | |
| 1899 | 3/6/2014 | Email; Subject: Re: Executive Order and Message to the Congress -- Blocking Property of Certain Persons Contributing to the Situation in Ukraine | | | |
| 1900 | 3/13/2014 | Email; Subject: Fw: Received Ukraine Wire today. | | | |
| 1901 | | [Exhibit Removed] | | | |
| 1902 | 3/25/2014 | Email; Subject: Re: Received Ukraine Wire today. | | | |
| 1903 | 3/25/2014 | Email; Subject: Re: Received Ukraine Wire today. | | | |
| 1904 | 3/26/2014 | Email; Subject: Fw: Ukraine & SGR Text | | | |
| 1905 | 3/30/2014 | Email; Subject: Re: Received Ukraine Wire today. | | | |
| 1906 | 4/15/2014 | Email; Subject: draft Ukraine lobbying report | | | |
| 1907 | 4/21/2014 | Email; Subject: FW: Tymo | | | |
| 1908 | 5/5/2014 | Email; Subject: Fw: can you get someone to pull our loBbying rankings in 2003 to 2013 and top ten clients for each of these years | | | |
| 1909 | 5/7/2014 | Email; Subject: RE: QFRs for the Ukraine HFAC hearing | | | |
| 1910 | 5/7/2014 | Email; Subject: FW: Trident | | | |
| 1911 | 5/7/2014 | Email; Subject: FW: Monitoring Groups | | | |
| 1912 | 5/7/2014 | Email; Subject: Fw: Message to the Congress -- With respect to Russia's status under the Generalized System of Preferences | | | |
| 1913 | 5/10/2014 | Email; Subject: Fw: Tridentds | | | |
| 1914 | 6/26/2012 | Email; Subject: RE: woodrow wilson center contact | | | |
| 1915 | 8/16/2016 | Email; Subject: Re: Questions | | | |
| 1916 | 2/26/2012 | Email; Subject: Fwd: Podesta Group Proposal | | | |
| 1917 | 9/19/2012 | Email; Subject: RE: Ukraine resolution | | | |
| 1918 | 2012-2014 | Schedule & Calendar; Centre for a Modern Ukraine Meetings and Calls | | | |
| 1919 | Undated | Client List | | | |
| 1920 | | [Exhibit Removed] | | | |
| 1921 | | [Exhibit Removed] | | | |
| 1922 | | [Exhibit Removed] | | | |
| 1923 | | [Exhibit Removed] | | | |
| 1924 | | [Exhibit Removed] | | | |
| 1925 | | [Exhibit Removed] | | | |
| 1926 | | [Exhibit Removed] | | | |
| 1927 | | [Exhibit Removed] | | | |
| 1928 | | [Exhibit Removed] | | | |
| 1929 | | [Exhibit Removed] | | | |
| 1930 | | [Exhibit Removed] | | | |
| 1931 | | [Exhibit Removed] | | | |

| Ex. No. | Date | Description | Obj. | Off'd | Adm. |
|---|---|---|---|---|---|
| 1932 | | [Exhibit Removed] | | | |
| 1933 | | [Exhibit Removed] | | | |
| 1934 | | [Exhibit Removed] | | | |
| 1935 | 3/6/2013 | Email; Subject: Re: Prodi Visit | | | |
| 1936 | 12/15/2012 | Email; Subject: Re: US State Dept - Press Briefing | | | |
| 1937 | 11/19/2013 | Email; Subject: Fwd: DURBIN RESOLUTION CALLING FOR THE RELEASE OF FORMER UKRAINE PRIME MINISTER YULIA TYMOSHENKO PASSES US SENATE | | | |
| 1938 | 11/19/2013 | Email; Subject: Memo | | | |
| 1939 | 4/25/2013 | Email; Subject: Update | | | |
| 1940 | 2/25/2014 | Email; Subject: Fwd: Contracts | | | |
| 1941 | 7/5/2012 | Email; Subject: RE: Interview request (for Leonid Kozhara) from Newsweek/Daily Beast - REQUEST for background info | | | |
| 1942 | 10/29/2012 | Email; Subject: FW: 10/29 Contact Reports (1 of 2) | | | |
| 1943 | 10/29/2012 | Email; Subject: FW: 10/29 Contact Reports (2 of 2) | | | |
| 1944 | 7/6/2012 | Email; Subject: RE: Internal Q & A | | | |
| 1945 | 2/6/2014 | Calendar; Subject: ECFMU Meeting with Congressman Rohrbacher | | | |
| 1946 | 2/28/2013 | Email; Subject: RE: Meetings | | | |
| 1947 | 4/5/2013 | Email; Subject: Re: EU Updates | | | |
| 1948 | 5/22/2011-11/21/2015 | Calendar of Eckart Sager | | | |
| 1949 | 11/13/2012 | Email; Subject: Strategy Document | | | |
| 1950 | 11/16/2011 | Email; Subject: Details | | | |
| 1951 | 1/3/2012 | Memo; Subject: Phase Two of Our Strategic Communications Work, Action Plan for January to December 2012 | | | |
| 1952 | 5/13/2012 | Email; Subject: RE: Ukraine's FM in DC | | | |
| 1953 | 5/16/2012 | Email; Subject: Meeting | | | |
| 1954 | 5/18/2012 | Email; Subject: Re: Meeting | | | |
| 1955 | 5/19/2012 | Email; Subject: Re: Meetings Monday in Washington | | | |
| 1956 | 5/29/2012 | Email; Subject: Re: Call on Wellmann etc | | | |
| 1957 | 10/18/2012 | Email; Subject: FW: Draft news story for dissemination tomorrow (if you agree) | | | |
| 1958 | 10/23/2012 | Memo; Subject: Berlin Conference Deliverables | | | |
| 1959 | 11/30/2012 | Email; Subject: Q & A material and the Briefing Process | | | |
| 1960 | 1/29/2013 | Email; Subject: my yahoo not working but here is agenda for PJM | | | |
| 1961 | 6/21/2007 | Email; Subject: RE: Ukraine Documents & Needs | | | |
| 1962 | 4/18/2012 | Executed engagement agreement/contract between Mercury and ECFMU | | | |
| 1963 | 4/18/2012 | Executed engagement agreement/contract between Podesta and ECFMU | | | |
| 1964 | 8/10/2012 | Email; Subject: Question | | | |
| 1965 | 2014 | Invoices; FTI to Davis Manafort & Prosecutor general Ukraine | | | |
| 1966 | 2012 | FTI Wires and Accounting Records | | | |
| 1967 | 2012-2014 | Invoices; Podesta Group to Rick Gates, Centre for a Modern Ukraine | | | |
| 1968 | 2012-2014 | Podesta Group Accounting and Wire Records | | | |
| 2000 | 3/23/2011 | Email; Subject:  Your travel to Kyiv | | | |
| 2001 | 2/20/2012 | Letter; Re: Preliminary Engagement | | | |
| 2002 | 2/28/2012 | Email; Subject: FW: Anything new? | | | |
| 2003 | 2/28/2012 | Email; Subject: FW: Anything new? | | | |
| 2004 | 3/6/2012 | Email; Subject: Re: Retainer letter & Next Steps | | | |
| 2005 | 3/22/2012 | Email; Subject: Manafort meeting tomorrow will be in the boardroom | | | |
| 2006 | 3/29/2012 | Email; Subject: RE: Daily New Client 3/29/12- Ministry of Justice, Government of Ukraine | | | |
| 2007 | 3/29/2012 | Email; Subject: FW: Re: | | | |
| 2008 | 3/29/2012 | Email; Subject: RE: Memo to Manafort about trip to Ukraine | | | |
| 2009 | 3/30/2012 | Email; Subject: FW: Memo to Paul Manafort re Ukraine Project | | | |
| 2010 | 4/2/2012 | Email; Subject: FW: Tymo case docs | | | |

| Ex. No. | Date | Description | Obj. | Off'd | Adm. |
|---|---|---|---|---|---|
| 2011 | 4/3/2012 | Email; Subject: RE: Report of the temporary investigative commission chaired by Inna Bogoslovaskaya | | | |
| 2012 | 4/5/2012 | Memo; Subject: Projects and Plans | | | |
| 2013 | 4/11/2012 | Email; Subject: FW: Tomorrow--Friday 4/6 | | | |
| 2014 | 4/11/2012 | Email; Subject: RE: Kuzmin on New charges against Tymo | | | |
| 2015 | 4/11/2012 | Email; Subject: Re: | | | |
| 2016 | 4/12/2012 | Email; Subject: Re: the wire re Ukraine | | | |
| 2017 | 4/16/2012 | Email; Subject: Re: re Ukraine wire | | | |
| 2018 | 4/17/2012 | Email; Subject: Re: FARA issues | | | |
| 2019 | 4/17/2012 | Email; Subject: Re: FARA issues | | | |
| 2020 | 4/18/2012 | Mercury/Clark Weinstock Lobbying Registration | | | |
| 2021 | 4/25/2012 | Email; Subject: Re: conference call today with Greg Craig | | | |
| 2022 | 4/30/2012 | Email; Subject: FW: PR Firms | | | |
| 2023 | 4/30/2012 | Email; Subject: FW: Ukraine - Application of the Foreign Agents Registration Act of 1938 ("FARA") PROPER ATTACHMENTS | | | |
| 2024 | 5/1/2012 | Email; Subject: FW: Ukraine and reputation… | | | |
| 2025 | 5/3/2012 | Email; Subject: Meeting Notes: 5/2/12 | | | |
| 2026 | 5/3/2012 | Email; Subject: Investigation of Tymo allegations of "beating" | | | |
| 2027 | 5/7/2012 | Email; Subject: RE: Tymo | | | |
| 2028 | 5/7/2012 | Email; Subject: RE: PR Update | | | |
| 2029 | 5/7/2012 | Email; Subject: RE: Ukrainian Law Experts | | | |
| 2030 | 5/8/2012 | Email; Subject: RE: Documents | | | |
| 2031 | 5/10/2012 | Email; Subject: FW: FTI | | | |
| 2032 | 5/10/2012 | Email; Subject: FW: Re: | | | |
| 2033 | 5/16/2012 | Memo; Interim Report | | | |
| 2034 | 5/18/2012 | Email; Subject: Letter re: LDA vs. FARA filing | | | |
| 2035 | | [Exhibit Removed] | | | |
| 2036 | 5/22/2012 | Email; Subject: RE: Ukraine Heads Up | | | |
| 2037 | 5/22/2012 | Email; Subject: RE: | | | |
| 2038 | 5/23/2012 | Email; Subject: Points | | | |
| 2039 | 5/23/2012 | Email; Subject: RE: Press statements | | | |
| 2040 | 5/23/2012 | Email; Subject: RE: Press statements | | | |
| 2041 | 5/24/2012 | Email; Subject: RE: Letter Agreement | | | |
| 2042 | 5/24/2012 | Email; Subject: Press Release and EL | | | |
| 2043 | 5/24/2012 | Email; Subject: Re: Press Release and EL | | | |
| 2044 | 5/24/2012 | Email; Subject: FW: Statement | | | |
| 2045 | 5/24/2012 | Email; Subject: RE: FTI are checking out and going home - their bosses are pulling them out | | | |
| 2046 | 5/26/2012 | Email; Subject:  Tymoshenko case | | | |
| 2047 | 5/29/2012 | Email; Subject: Re: thanks for your help | | | |
| 2048 | 5/30/2012 | Email; Subject: Fw: thanks for your help | | | |
| 2049 | 6/5/2012 | Email; Subject: RE: Are you seeing Andrea Manafort today? | | | |
| 2050 | 6/5/2012 | Email; Subject: Manafort Update | | | |
| 2051 | 6/6/2012 | Calendar; Subject: 3:45 pm - Call with Senator Durbin re Ukraine | | | |
| 2052 | 6/6/2012 | Email; Subject: getting together | | | |
| 2053 | 6/6/2012 | Email; Subject: Senator Durbin is going to call you at 3:45 to talk about Ukraine | | | |
| 2054 | 6/22/2012 | Email; Subject: again thank you | | | |
| 2055 | 5/23/2012 | Email; Subject: Fw: Statement | | | |
| 2056 | 6/25/2012 | Email; Subject: Vlasenko | | | |
| 2057 | | [Exhibit Removed] | | | |
| 2058 | 6/27/2012 | Email; Subject: RE: Website | | | |
| 2059 | 7/2/2012 | List of Contacts; Skadden Report - July 2, 2012 | | | |
| 2060 | 7/2/2012 | Email; Subject: Tymoschenko | | | |
| 2061 | 7/9/2012 | Email; Subject: FTI | | | |
| 2062 | 7/18/2012 | Email; Subject: Fw: Fwd: Project Veritas - Communications Strategy | | | |
| 2063 | | [Exhibit Removed] | | | |

| Ex. No. | Date | Description | Obj. | Off'd | Adm. |
|---|---|---|---|---|---|
| 2064 | 7/26/2012 | Email; Subject: Re: your plan in Kiev | | | |
| 2065 | 7/27/2012 | Memo; Subject: SA Report - Media Plan | | | |
| 2066 | 7/28/2012 | Email; Subject: Media Plan | | | |
| 2067 | 8/3/2012 | Email; Subject: Manafort is seeing BG on Wednesday | | | |
| 2068 | 8/7/2012 | Email; Subject: Re: Tymo report - action points and questions | | | |
| 2069 | 8/9/2012 | Email; Subject: RE: Kyiv Post Editorial: Skadden Stink | | | |
| 2070 | 8/15/2012 | Email; Subject: RE: Confidential Partial Translation Return (444-530A) | | | |
| 2071 | 8/16/2012 | Email; Subject: RE: Meeting at 3 p.m. today | | | |
| 2072 | | [Exhibit Removed] | | | |
| 2073 | 8/24/2012 | Email; Subject: RE: Hello Sergiy -- Two Important Questions | | | |
| 2074 | 8/27/2012 | Memo; Subject: SA Report - Media Plan | | | |
| 2075 | 8/28/2012 | Email; Subject: FW: | | | |
| 2076 | 8/29/2012 | Email; Subject: Tymo memo | | | |
| 2077 | 8/30/2012 | Email; Subject: RE: Work Schedule to finalize report | | | |
| 2078 | 8/30/2012 | Email; Subject: Re: Project 2 | | | |
| 2079 | 8/30/2012 | Email; Subject: Re: Project 2 | | | |
| 2080 | 9/3/2012 | Email; Subject: RE: final version of the comments | | | |
| 2081 | 9/5/2012 | Email; Subject: Government comments | | | |
| 2082 | 9/3/2012 | Email; Subject: final version of the comments | | | |
| 2083 | 9/4/2012 | Email; Subject: FW: URGENT: Actions this week - Wrapping Up | | | |
| 2084 | 9/9/2012 | Email; Subject: i need some direction | | | |
| 2085 | 9/10/2012 | Email; Subject: response to last submission | | | |
| 2086 | 9/12/2012 | Email; Subject: RE: DELIVERY | | | |
| 2087 | 9/17/2012 | Email; Subject: RE: Comments from OPG | | | |
| 2088 | 9/17/2012 | Email; Subject: are you around to take a call | | | |
| 2089 | 9/18/2012 | Email; Subject: Re: meeting today | | | |
| 2090 | 9/18/2012 | Email; Subject: RE: Comments | | | |
| 2091 | 9/19/2012 | Email; Subject: Call | | | |
| 2092 | 9/19/2012 | Email; Subject: FW: CONCERN | | | |
| 2093 | 9/20/2012 | Email; Subject: Re: Ukraine Yet Again | | | |
| 2094 | 9/21/2012 | Email; Subject: FW: meeting on Sunday | | | |
| 2095 | 9/23/2012 | Email; Subject: Re: Meeting tomorrow morning | | | |
| 2096 | 9/24/2012 | Email; Subject: RE: Post trial detention. | | | |
| 2097 | 9/25/2012 | Email; Subject: FW: Draft messaging | | | |
| 2098 | 10/2/2012 | Email; Subject: Re: Ukraine | | | |
| 2099 | 10/2/2012 | Email; Subject: FW: | | | |
| 2100 | 10/2/2012 | Email; Subject: another set of comments | | | |
| 2101 | 10/3/2012 | Email; Subject: Re: Call number for [Redacted] roundtable at 3pm: 202-296-9312 | | | |
| 2102 | 10/3/2012 | Email; Subject: Fw: Ukraine | | | |
| 2103 | 10/18/2012 | Email; Subject: FW: The Report | | | |
| 2104 | | [Exhibit Removed] | | | |
| 2105 | 11/12/2012 | Email; Subject: RE: Delivery | | | |
| 2106 | 11/28/2012 | Email; Subject: Greg's memo | | | |
| 2107 | 12/6/2012 | Email; Subject: FW: Updated Docs | | | |
| 2108 | 12/11/2012 | Email; Subject: Re: Ukraine | | | |
| 2109 | 12/11/2012 | Email; Subject: Re: Ukraine | | | |
| 2110 | 12/11/2012 | Email; Subject: FW: Greg Craig | | | |
| 2111 | 12/11/2012 | Email; Subject: RE: Sanger conversation | | | |
| 2112 | 12/11/2012 | Email; Subject: Re: Report on the Tymoshenko case | | | |
| 2113 | 12/11/2012 | Email; Subject: Re: Report on the Tymoshenko case | | | |
| 2114 | 12/11/2012 | Email; Subject: RE: Meeting Aleksander Kwasniewski | | | |
| 2115 | 12/12/2012 | Email; Subject: Re: AK - Talking Points | | | |
| 2116 | 12/12/2012 | Email; Subject: Re: Report on the Tymoshenko case | | | |
| 2117 | 12/12/2012 | Email; Subject: hello and questions, from NYT Moscow | | | |
| 2118 | 12/12/2012 | Email; Subject: Re: Report on the Tymoshenko case | | | |
| 2119 | 12/12/2012 | Email; Subject: RE: Ukraine | | | |

| Ex. No. | Date | Description | Obj. | Off'd | Adm. |
|---|---|---|---|---|---|
| 2120 | 12/13/2012 | Email; Subject: FW: On Behalf of Greg Craig - The Tymoshenko Case | | | |
| 2121 | 12/13/2012 | Email; Subject: On Behalf of Greg Craig - The Tymoshenko Case | | | |
| 2122 | 12/13/2012 | Email; Subject: RE: On Behalf of Greg Craig - The Tymoshenko Case | | | |
| 2123 | 1/8/2013 | Email; Subject: Re: Meeting Tomorrow | | | |
| 2124 | 12/12/2012 | News Article; Failings Found in Trial of Ukrainian Ex-Premier | | | |
| 2125 | 12/11/2012 | Email; Subject: RE: Electronic delivery | | | |
| 2126 | 2012-2017 | Trust Detail Inquiry; Client: Ministry of Justice, Gov of Ukraine; Wire Records | | | |
| 2127 | 2012-2013 | Skadden Invoices | | | |
| 503-M | | Metadata | | | |
| 505-M | | | | | |
| 517-M | | | | | |
| 539-M | | | | | |
| 594-M | | | | | |
| 602-M | | | | | |
| 604-M | | | | | |
| 606-M | | | | | |
| 613-M | | | | | |
| 616-M | | | | | |
| 617-M | | | | | |
| 690-M | | | | | |
| 691-M | | | | | |
| 692-M | | | | | |
| 694-M | | | | | |
| 696-M | | | | | |
| 697-M | | | | | |
| 705-M | | | | | |
| 706-M | | | | | |
| 708-M | | | | | |
| 710-M | | | | | |
| 712-M | | | | | |
| 714-M | | | | | |
| 569-T | | Translations | | | |
| 570-T | | | | | |
| 592-T | | | | | |
| 610-T | | | | | |
| 716-T | | | | | |
| 719-T | | | | | |

# EXHIBIT F

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **UNITED STATES OF AMERICA** | |
| **v.** | **Case No. 17-cr-201-1 (ABJ)** |
| **PAUL J. MANAFORT, Jr.,** | |
| **Defendant.** | |

### STIPULATION REGARDING $500,000 WIRE

The parties stipulate to the following facts:

1.  Marc Baldinger previously owned Aegis Holdings, LLC, which provided investment advice.

2.  In 2013, Paul J. Manafort, Jr., through an entity he controlled named LilRed, LLC, made various investments through Aegis Holdings, LLC, totaling approximately $1,500,000.

3.  On September 4, 2013, at 10:43 AM, Marc Baldinger sent an email to Mr. Manafort inquiring about a $500,000 payment noting: "Please let me know when you have attempted to wire the funds and I will look out for it."  Mr. Manafort sent an email in response on September 4, 2013, at 10:44 AM, and noted, "they should be in your account today.  Coming from global endeavor LTD."

4.  On September 3, 2013, $500,000 was transferred from Global Endeavour Inc.'s bank account at Loyal Bank in Kingstown, Saint Vincent and the Grenadines, to an account of Aegis Holdings, LLC.

5.   The record attached as Exhibit A hereto is a record of Aegis Holdings, LLC,

and constitutes a record of a regularly conducted business activity pursuant to Rule

803(6) of the Federal Rules of Evidence, without requiring further authentication,

certification, witness testimony, or the testimony of a custodian of records.


                                        We ask for this:

        Paul J. Manafort, Jr.,          ROBERT S. MUELLER, III
        Defendant                       Special Counsel


By:  _____        By:  _____
        Kevin Downing, Esq.             Andrew Weissmann
        Tom Zehnle, Esq.                Greg D. Andres
        Jay Nanavati, Esq.              Senior Assistant Special Counsels
        Counsel for Defendant

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **UNITED STATES OF AMERICA** | |
| **v.** | **Case No. 17-cr-201-1 (ABJ)** |
| **PAUL J. MANAFORT, Jr.,** | |
| **Defendant.** | |

## STIPULATION REGARDING PURCHASE OF AUDIO/VISUAL, LIGHTING, AND NETWORK CONTROL SYSTEMS AND SERVICE

The parties stipulate to the following facts:

1. Joel Maxwell is the Chief Operating Officer of Big Picture Solutions, Inc. (BPS), which operates in the Jupiter, Florida area.

2. Paul J. Manafort, Jr. had been a client of BPS since approximately 2011. BPS initially installed the audio visual and lighting control systems at Manafort's residence at 10 St. James Drive, Palm Beach Gardens, Florida. BPS later performed services at Manafort's Mount Vernon, Arlington, Bridgehampton, and Trump Tower residences.

3. Between October 27, 2011, and December 22, 2014, BPS submitted the following invoices totaling $2,232,423.90, for audio visual, lighting control, and network system design and installation:

| Date | Number | Amount | |
|---|---|---|---|
| 10/27/2011 | 1243 | $ | 34,153.20 |
| 11/10/2011 | 1244 | $ | 32,380.00 |
| | **TOTAL:** | **$** | **66,533.20** |

| Date | Number | Amount |
|------|--------|--------|
| 10/24/2012 | 1292 | $ 52,930.01 |
| 10/24/2012 | 1293 | $ 44,496.92 |
| 10/24/2012 | 1294 | $ 105,860.01 |
| 10/24/2012 | 1295 | $ 88,993.83 |
| 12/11/2012 | 1299 | $ 45,144.91 |
| 12/11/2012 | 1300 | $ 53,217.52 |
| 12/11/2012 | 1301 | $ 62,236.95 |
| 12/11/2012 | 1302 | $ 2,337.02 |
| | **TOTAL:** | **$ 455,217.17** |
| 1/10/2013 | 1303 | $ 15,539.66 |
| 1/10/2013 | 1304 | $ 79,072.90 |
| 1/10/2013 | 1305 | $ 82,169.01 |
| 1/10/2013 | 1306 | $ 17,643.33 |
| 1/12/2013 | 1307 | $ 6,358.86 |
| 1/27/2013 | 1310 | $ 51,638.66 |
| 1/29/2013 | 1311 | $ 29,112.84 |
| 2/4/2013 | 1313 | $ 40,838.94 |
| 2/4/2013 | 1314 | $ 53,019.58 |
| 2/4/2013 | 1317 | $ 376,659.94 |
| 3/1/2013 | 1318 | $ 7,900.00 |
| 3/15/2013 | 1380 | $ 83,447.29 |
| 4/21/2013 | 1345 | $ 31,294.12 |
| 5/1/2013 | 1335 | $ 23,681.66 |
| 5/10/2013 | 1334 | $ 80,640.74 |
| 6/26/2013 | 1337 | $ 83,415.06 |
| 6/26/2013 | 1339 | $ 92,217.50 |
| 7/25/2013 | 1341 | $ 4,446.46 |
| 7/25/2013 | 1342 | $ 25,932.75 |
| 7/25/2013 | 1343 | $ 25,049.68 |
| 7/26/2013 | 1338 | $ 94,092.75 |

| Date | Number | Amount |
|---|---|---|
| 8/1/2013 | 1346 | $ 7,000.00 |
| 8/1/2013 | 1347 | $ 13,060.33 |
| 8/2/2013 | 1348 | $ 3,288.01 |
| 8/17/2013 | 1349 | $ 26,599.64 |
| 8/31/2013 | 1352 | $ 5,775.23 |
| 10/1/2013 | 1356 | $ 2,407.73 |
| 10/10/2013 | 1357 | $ 41,302.90 |
| 11/18/2013 | 1371 | $ 3,396.00 |
| 12/14/2013 | 1374 | $ 5,000.00 |
| 12/14/2013 | 1375 | $ 6,699.20 |
| | **TOTAL:** | **$ 1,418,700.77** |
| 1/23/2014 | 1377 | $ 2,900.00 |
| 3/2/2014 | 114114 | $ 29,000.00 |
| 4/19/2014 | 114020 | $ 16,873.07 |
| 4/28/2014 | 114006 | $ 106,650.80 |
| 4/29/2014 | 114030 | $ 26,037.84 |
| 5/5/2014 | 114029 | $ 13,634.25 |
| 5/30/2014 | 114036 | $ 17,685.29 |
| 5/30/2014 | 114037 | $ 15,521.84 |
| 5/30/2014 | 114038 | $ 29,407.72 |
| 7/1/2014 | 114044 | $ 4,945.00 |
| 7/1/2014 | 114045 | $ 3,704.70 |
| 7/1/2014 | 114046 | $ 8,162.00 |
| 11/16/2014 | 114080 | $ 13,674.00 |
| 12/22/2014 | 114095 | $ 3,776.25 |
| | **TOTAL:** | **$ 291,972.76** |
| **TOTAL AMOUNT INVOICED BY BPS:** | | **$ 2,232,423.90** |

4.  Between March 22, 2011, and June 20, 2014, BPS received $1,661,201.00 from

foreign accounts as payment for these services:

| Foreign Account | Date | Amount |
|---|---|---|
| Leviathan Advisors Limited | 3/22/2011 | $          12,000.00 |
| Leviathan Advisors Limited | 3/28/2011 | $          25,000.00 |
| Leviathan Advisors Limited | 4/27/2011 | $          12,000.00 |
| Leviathan Advisors Limited | 5/16/2011 | $          25,000.00 |
| Global Highway Limited | 11/15/2011 | $          17,006.00 |
| Global Highway Limited | 11/23/2011 | $          11,000.00 |
| **TOTAL:** | | **$        102,006.00** |
| Global Highway Limited | 2/28/2012 | $           6,200.00 |
| Lucicle Consultants Limited | 10/31/2012 | $        290,000.00 |
| Lucicle Consultants Limited | 12/17/2012 | $        160,600.00 |
| **TOTAL:** | | **$        456,800.00** |
| Lucicle Consultants Limited | 1/15/2013 | $        194,000.00 |
| Lucicle Consultants Limited | 1/24/2013 | $           6,300.00 |
| Lucicle Consultants Limited | 2/12/2013 | $          51,600.00 |
| Lucicle Consultants Limited | 2/26/2013 | $        260,000.00 |
| Pompolo Limited | 7/15/2013 | $        175,575.00 |
| Global Endeavour Inc. | 8/28/2013 | $        179,000.00 |
| Global Endeavour Inc. | 10/31/2013 | $          73,000.00 |
| **TOTAL:** | | **$        939,475.00** |
| Global Endeavour Inc. | 5/23/2014 | $          99,960.00 |
| Global Endeavour Inc. | 6/20/2014 | $          62,960.00 |
| **TOTAL:** | | **$        162,920.00** |
| **TOTAL FOREIGN PAYMENTS TO BPS:** | | **$     1,661,201.00** |

5.  The records attached to this stipulation as Exhibit A are records of BPS, and

constitute records of a regularly conducted business activity pursuant to Rule

4

803(6) of the Federal Rules of Evidence, without requiring further

authentication, certification, witness testimony, or the testimony of a

custodian of records.

    a.  Exhibit A are invoices totaling $2,232,423.90, submitted by BPS from

October 27, 2011, and December 22, 2014, for audio visual, lighting

control, and network system design and installation.

We ask for this:

| Paul J. Manafort, Jr., | ROBERT S. MUELLER, III |
|---|---|
| Defendant | Special Counsel |

| By: _____ | By: _____ |
|---|---|
| Kevin Downing, Esq. | Andrew Weissmann |
| Tom Zehnle, Esq. | Greg D. Andres |
| Jay Nanavati, Esq. | Jeannie S. Rhee |
| Counsel for Defendant | Senior Assistant Special Counsels |

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

**UNITED STATES OF AMERICA**

**v.**

**PAUL J. MANAFORT, Jr.,**

**Defendant.**

**Case No. 17-cr-201-1 (ABJ)**

## STIPULATION REGARDING EMAIL

The parties stipulate to the following facts:

1.     The defendant, Paul J. Manafort, Jr., was the person who was the assigned subscriber of the following email accounts: pmanafort@dmpint.com, pm22314@gmail.com, and pmanafort@davismanafort.com.

2.     With respect to all emails introduced at trial, which had previously been produced by the United States to the defense as part of the discovery process:

     a.   The emails are authentic and no further testimony is necessary to establish their authenticity.

     b.   The emails were authored and sent from the email account listed on the particular emails.

     c.   The emails were received by the recipient(s) on the particular emails.

     d.   The emails were sent on the date listed on the emails.

We ask for this:

Paul J. Manafort, Jr.,            ROBERT S. MUELLER, III
Defendant                          Special Counsel


By: _____      By: _____
     Kevin Downing, Esq.            Andrew Weissmann
     Tom Zehnle, Esq.               Greg D. Andres
     Jay Nanavati, Esq.             Senior Assistant Special Counsels
     Counsel for Defendant

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **UNITED STATES OF AMERICA** | |
| **v.** | **Case No. 17-cr-201-1 (ABJ)** |
| **PAUL J. MANAFORT, Jr.,** | |
| **Defendant.** | |

## STIPULATION REGARDING BUSINESS RECORDS OF FBC

The parties stipulate to the authenticity of the categories of records listed below in numbered paragraphs 1 and 2, which had previously been produced by the United States to the defense as part of the discovery process, and further agree that they constitute records of a regularly conducted business activity pursuant to Rule 803(6) of the Federal Rules of evidence, without requiring further authentication, certification, witness testimony, or the testimony of a custodian of records.

1.      Records of FBC.

2.      The records referenced in paragraph 1 include, but are not limited to, emails, checks, wire transfers, invoices, agreements, correspondence, work papers, financial statements, authorization forms, permanent files, and contracts.

We ask for this:

| | |
|---|---|
| Paul J. Manafort, Jr., Defendant | ROBERT S. MUELLER, III Special Counsel |
| By: _____ | By: _____ |
| Kevin Downing, Esq. | Andrew Weissmann |
| Tom Zehnle, Esq. | Greg D. Andres |
| Jay Nanavati, Esq. | Senior Assistant Special Counsels |
| Counsel for Defendant | |

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **UNITED STATES OF AMERICA** | |
| **v.** | **Case No. 17-cr-201-1 (ABJ)** |
| **PAUL J. MANAFORT, Jr.,** | |
| **Defendant.** | |

**STIPULATION REGARDING OUTDOOR LIVING DESIGN AND
CONSTRUCTION FOR ARLINGTON, VIRGINIA RESIDENCE**

The parties stipulate to the following facts:

1. Douglas DeLuca is the founder and CEO of Federal Stone and Brick, LLC, which is a landscape and outdoor living design and construction company that operates in the Northern Virginia area.

2. On October 26, 2012, at 10:48 AM, Paul J. Manafort, Jr. sent Deluca an email stating that Andrea Manafort was pleased with the interaction with DeLuca. Manafort also wrote, "As we move to the next phase, you will be interacting with me... On matters of design, you will deal with Andrea. On matters of contract and budget you will deal with me." DeLuca mainly communicated with Manafort via email.

3. On November 19, 2012, at 3:13 PM, Manafort sent DeLuca an email with the signed contract noting, "You will be receiving a wire from Lucile LLC in the next 2 days for $45,000."

1

4. On November 19, 2012, Federal Stone and Brick, LLC entered into a contract with Manafort with respect to the design and construction of an outdoor living space at Andrea Manafort's home on 1041 N. Edgewood Street in Arlington, Virginia.  The contract price for the work was $104,424.

5. As part of the payment for that design and construction, on November 20, 2012, a wire transfer was made from Lucicle Consultants Limited in the amount of $45,000 from a bank account at Marfin Laiki Bank in Nicosia, Cyprus to an account of Federal Stone and Brick, LLC.

6. As a further part of the payment for that design and construction, on December 7, 2012, a wire transfer was made from Lucicle Consultants Limited in the amount of $21,000 from a bank account at Marfin Laiki Bank in Nicosia, Cyprus to an account of Federal Stone and Brick, LLC.

7. As a further part of the payment for that design and construction, on December 17, 2012, a wire transfer was made from Lucicle Consultants Limited in the amount of $21,000 from a bank account at Marfin Laiki Bank in Nicosia, Cyprus to an account of Federal Stone and Brick, LLC.

8. As a further part of the payment for that design and construction, on January 17, 2013, a wire transfer was made from Lucicle Consultants Limited in the amount of $18,750 from a bank account at Laiki Bank in Nicosia, Cyprus to an account of Federal Stone and Brick, LLC.

9. As a further part of the payment for that design and construction, on January 29, 2013, a wire transfer was made from Lucicle Consultants Limited in the

amount of $9,400 from a bank account at Hellenic Bank in Nicosia, Cyprus to an account of Federal Stone and Brick, LLC.

10. As a further part of the payment for that design and construction, on February 12, 2013, a wire transfer was made from Lucicle Consultants Limited in the amount of $10,500 from a bank account at Hellenic Bank in Nicosia, Cyprus to an account of Federal Stone and Brick, LLC.

11. DeLuca never had contact with Richard Gates regarding any aspect of the project, contract, billings, or payments.

12. The records attached to this stipulation as Exhibit A through C are records of Federal Stone and Brick, LLC, and constitute records of a regularly conducted business activity pursuant to Rule 803(6) of the Federal Rules of Evidence, without requiring further authentication, certification, witness testimony, or the testimony of a custodian of records.

    a. Exhibit A is a copy of an email with the outdoor living design and construction contract attached, dated November 19, 2012, between Federal Stone and Brick, LLC and Paul Manafort.

    b. Exhibit B is a copy of an email between Paul Manafort and Doug DeLuca dated October 26, 2012.

    c. Exhibit C is photographs of the property located at 1041 N. Edgewood Street in Arlington, Virginia.

We ask for this:

Paul J. Manafort, Jr.,          ROBERT S. MUELLER III
Defendant                       Special Counsel

By: _____     By: _____
    Kevin Downing, Esq.             Andrew Weissmann
    Tom Zehnle, Esq.                Greg D. Andres
    Jay Nanavati, Esq.              Jeannie S. Rhee
    Counsel for Defendant           Senior Assistant Special Counsels

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **UNITED STATES OF AMERICA** | |
| **v.** | **Case No. 17-cr-201-1 (ABJ)** |
| **PAUL J. MANAFORT, Jr.,** | |
| **Defendant.** | |

## STIPULATION REGARDING BUSINESS RECORDS
## OF FINANCIAL INSTITUTIONS

The parties stipulate to the authenticity of the categories of records listed below in numbered paragraphs 1 and 2, which had previously been produced by the United States to the defense as part of the discovery process, and further agree that they constitute records of a regularly conduct business activity pursuant to Rule 803(6) of the Federal Rules of evidence, without requiring further authentication, certification, witness testimony, or the testimony of a custodian of records.

1.      Records of American Express, Anchor Commercial Bank, Bank of America, Barclays, Banc of California, BB&T, Bridgehampton National Bank, Burke & Herbert Bank, Capital One, Charles Schwab, Citibank, Citigroup, Citizens Bank, City National Bank, Clearing House Interbank Payments System, Colony Northstar, Inc., Deutsche Bank, Eagle Bank,  Fedwire, First Republic Bank, First Republic Investment Management, Genesis Capital LLC, Goldman Sachs, HSBC Bank USA, Hudson City Savings Bank, JPMorgan Chase Bank, M&T Bank, Merrill Lynch, Metropolitan Commercial Bank, Morgan Stanley, Northwestern Mutual,

People's United Bank, Pershing LLC, PNC Bank, Seacoast Bank, SIII Capital

Group, Standard Chartered Bank, SunTrust Bank, TD Bank, The Federal Savings

Bank, UBS Financial Services Inc., United Bank, Wachovia Bank, Wells Fargo

Bank.

2.      The records referenced in paragraph 1 include, but are not limited to,

emails, account statements, checks, wire transfers, loan files, credit files, credit

reports, transactions forms, underwriting records, applications, closing files,

signature cards, invoices, agreements, deposits slips and corresponding offsets, and

correspondence.

We ask for this:

| | |
|---|---|
| Paul J. Manafort, Jr., Defendant | ROBERT S. MUELLER, III Special Counsel |

| | | | |
|---|---|---|---|
| By: | _____ | By: | _____ |
| | Kevin Downing, Esq. | | Andrew Weissmann |
| | Tom Zehnle, Esq. | | Greg D. Andres |
| | Jay Nanavati, Esq. | | Senior Assistant Special Counsels |
| | Counsel for Defendant | | |

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **UNITED STATES OF AMERICA** | |
| **v.** | **Case No. 17-cr-201-1 (ABJ)** |
| **PAUL J. MANAFORT, Jr.,** | |
| **Defendant.** | |

**STIPULATION REGARDING PURCHASE OF THE PROPERTY LOCATED
AT 377 UNION STREET, BROOKLYN, NEW YORK ("377 UNION STREET")**

The parties stipulate to the following facts:

1. First Nationwide Title Agency settled the purchase of 377 Union Street on December 28, 2012.

2. On November 14, 2012, MC Brooklyn Holdings, LLC entered into a residential contract of sale for the purchase of real property at 377 Union Street, Brooklyn, New York. The purchase price was $2,995,000.  The down payment was $299,500.

3. As payment for the down payment of $299,500, on November 20, 2012, a wire transfer from Lucicle Consultants Limited in the amount of $299,500 drawn on a bank account at Marfin Laiki Bank in Nicosia, Cyprus was sent to the attorney trust account of Michele Scotto, Esq., in her capacity as the attorney for the seller.

4.  On December 27, 2012, Jessica Manafort as a member of MC Brooklyn Holdings, LLC, designated Bruce Baldinger, Esq., as an agent of MC Brooklyn Holdings, LLC.

5.  As payment for the remainder due for the purchase of 377 Union Street, on December 27, 2012, Bruce Baldinger, on behalf of MC Brooklyn Holdings, LLC, transferred $2,800,000 from his law firm's bank account at TD Bank to First Nationwide Title Agency, LLC. On December 28, 2012, First Nationwide Title Agency, LLC conducted the settlement, that is the sale, of MC Brooklyn Holdings, LLC's purchase of the 377 Union Street.

6.  The records attached to this stipulation as Exhibits A through B are records of First Nationwide Title Agency and constitute records of a regularly conducted business activity pursuant to Rule 803(6) of the Federal Rules of Evidence, without requiring further authentication, certification, witness testimony, or the testimony of a custodian of records.

    a.  Exhibit A is a copy of the residential contract of sale for 377 Union Street dated November 14, 2012.

    b.  Exhibit B is a copy of the real property transfer of 377 Union Street dated December 28, 2012.

2

We ask for this:

Paul J. Manafort, Jr.,                    ROBERT S. MUELLER, III
Defendant                                 Special Counsel


By: _____      By: _____
    Kevin Downing, Esq.                   Andrew Weissmann
    Tom Zehnle, Esq.                      Greg D. Andres
    Jay Nanavati, Esq.                    Senior Assistant Special Counsels
    Counsel for Defendant

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **UNITED STATES OF AMERICA** | |
| **v.** | **Case No. 17-cr-201-1 (ABJ)** |
| **PAUL J. MANAFORT, Jr.,** | |
| **Defendant.** | |

## STIPULATION REGARDING BUSINESS RECORDS OF FTI CONSULTING

The parties stipulate to the authenticity of the categories of records listed below in numbered paragraphs 1 and 2, which had previously been produced by the United States to the defense as part of the discovery process, and further agree that they constitute records of a regularly conducted business activity pursuant to Rule 803(6) of the Federal Rules of evidence, without requiring further authentication, certification, witness testimony, or the testimony of a custodian of records.

1. Records of FTI Consulting.

2. The records referenced in paragraph 1 include, but are not limited to, emails, checks, wire transfers, invoices, agreements, correspondence, work papers, financial statements, authorization forms, permanent files, and contracts.

We ask for this:

| | |
|---|---|
| Paul J. Manafort, Jr., | ROBERT S. MUELLER, III |
| Defendant | Special Counsel |

By: _____   By: _____
    Kevin Downing, Esq.                                      Andrew Weissmann
    Tom Zehnle, Esq.                                          Greg D. Andres
    Jay Nanavati, Esq.                                  Senior Assistant Special Counsels
    Counsel for Defendant

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **UNITED STATES OF AMERICA** | |
| **v.** | **Case No. 17-cr-201-1 (ABJ)** |
| **PAUL J. MANAFORT, Jr.,** | |
| **Defendant.** | |

## STIPULATION REGARDING ORIENTAL RUG PURCHASES

The parties stipulate to the following facts:

1. Joshua Nabatkhorian is an owner of J&J Oriental Rug Gallery, which sells and repairs oriental rugs, and is located in Alexandria, Virginia.

2. On March 19, 2010, J&J Oriental Rug Gallery submitted to Paul J. Manafort, Jr., invoice 25819 in the amount of $160,000 for two silk rugs.

3. On March 31, 2010, a wire transfer from Yiakora Ventures Limited in the amount of $140,000 drawn on a bank account at the Bank of Cyprus in Nicosia, Cyprus was sent to J&J Oriental Rug Gallery.

4. On June 10, 2010, J&J Oriental Rug Gallery and Jesand Investment Corporation, through Mr. Manafort, entered into a loan agreement. Jesand Investment Corporation agreed to loan J&J Oriental Rug Gallery $250,000 for investment in oriental rugs in exchange for 40% of the profit on any sale of rugs and $500,000 of oriental rugs as collateral.

5.   On June 16, 2010, a wire transfer from Global Highway Limited in the amount of $250,000 drawn on a bank account at Marfin Laiki Bank in Nicosia, Cyprus was sent to J&J Oriental Rug Gallery.

6.   In or around February 2012, Nabatkhorian called Mr. Manafort to request that Mr. Manafort pay all of his outstanding invoices with J&J Oriental Rug Gallery. Mr. Manafort offered $100,000 as payment in full for all outstanding invoices, which Nabatkhorian accepted.

7.   On February 28, 2012, a wire transfer from Global Highway Limited in the amount of $100,000 drawn on a bank account at Marfin Laiki Bank in Nicosia, Cyprus was sent to Natalie Nabatkhorian, who is Nabatkhorian's wife.

8.   The records attached to this stipulation as Exhibits A through B are records of J&J Oriental Rug Gallery and constitute records of a regularly conducted business activity pursuant to Rule 803(6) of the Federal Rules of Evidence, without requiring further authentication, certification, witness testimony, or the testimony of a custodian of records.

   a.   Exhibit A is a copy of invoice 25819 in the amount of $160,000 for two silk rugs.

   b.   Exhibit B is a copy of the loan agreement dated June 10, 2010.

We ask for this:

Paul J. Manafort, Jr.,                ROBERT S. MUELLER, III
Defendant                             Special Counsel


By: _____     By: _____
    Kevin Downing, Esq.              Andrew Weissmann
    Tom Zehnle, Esq.                 Greg D. Andres
    Jay Nanavati, Esq.               Senior Assistant Special Counsels
    Counsel for Defendant

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **UNITED STATES OF AMERICA** | |
| **v.** | **Case No. 17-cr-201-1 (ABJ)** |
| **PAUL J. MANAFORT, Jr.,** | |
| **Defendant.** | |

**STIPULATION REGARDING PURCHASE OF 29 HOWARD STREET #4, NEW YORK, NEW YORK ("HOWARD STREET")**

The parties stipulate to the following facts:

1. On January 26, 2012, Jessica Manafort, Kathleen Manafort, and Paul J. Manafort, Jr., entered into a contract of sale for the purchase of real property known as 29 Howard Street.  The purchase price was $2,850,000.  On January 24, 2012, a wire transfer in the amount of $285,000, representing the down payment for 29 Howard Street, was sent from Paul and Kathleen Manafort's account at First Republic Bank to the seller's attorney.

2. On February 14, 2012, Kensington Vanguard National Land Services of New York, LLC ("Kensington Vanguard") conducted the settlement, that is the sale, of Howard Street to MC Soho Holdings, LLC.

3. As payment for the purchase of Howard Street, on February 10, 2012, MC Soho Holdings, LLC transferred $2,650,000 to Kensington Vanguard.

4.  MC Soho Holdings, LLC was a Florida Limited Liability Company formed on January 15, 2012. The registered agent and managing member of MC Soho Holdings, LLC was Paul Manafort

5.  The records attached to this stipulation as Exhibits A through F are records of Kensington Vanguard and constitute records of a regularly conducted business activity pursuant to Rule 803(6) of the Federal Rules of Evidence, without requiring further authentication, certification, witness testimony, or the testimony of a custodian of records.

    a.  Exhibit A is a copy of the contract of sale for 29 Howard Street dated January 26, 2012.

    b.  Exhibit B is a copy of the wire transfer in the amount of $285,000 from Paul and Kathleen Manafort to the seller's attorney on January 24, 2012.

    c.  Exhibit C is a copy of the real property transfer for 29 Howard Street dated February 14, 2012.

    d.  Exhibit D is a copy of the ledger balance report reflecting the transfer of $2,650,000 from MC Soho Holdings, LLC to Kensington Vanguard.

    e.  Exhibit E is a copy of the Electronic Articles of Organization for MC Soho Holdings, LLC.

    f.  Exhibit F is a copy of an email chain dated February 13, 2012, concerning the wiring of funds for the sale of 29 Howard Street.

We ask for this:

Paul J. Manafort, Jr.,                    ROBERT S. MUELLER, III
Defendant                                 Special Counsel


By: _____      By: _____
    Kevin Downing, Esq.            Andrew Weissmann
    Tom Zehnle, Esq.               Greg D. Andres
    Jay Nanavati, Esq.             Senior Assistant Special Counsels
    Counsel for Defendant

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **UNITED STATES OF AMERICA** | |
| **v.** | **Case No. 17-cr-201-1 (ABJ)** |
| **PAUL J. MANAFORT, Jr.,** | |
| **Defendant.** | |

**STIPULATION REGARDING PURCHASE OF**
**1046 N. EDGEWOOD STREET, ARLINGTON, VA ("EDGEWOOD")**

The parties stipulate to the following facts:

1.  Land, Carroll & Blair, P.C., is a law firm specializing in, among other things, real estate and land use. On August 21, 2012, Andrea Manafort entered into a sales contract for the purchase of real property know as Edgewood.  The purchase price was $1,899,000.  The same day Andrea Manafort wrote a $50,000 check to her realtor as earnest money deposit for Edgewood.

2.  On September 10, 2012, Andrea Manafort purchased Edgewood.

3.  To pay for Edgewood, on August 31, 2012, a wire transfer in the amount of $1,900,000 was sent from Lucicle Consultants Limited's bank account at Marfin Laiki Bank in Nicosia, Cyprus to an account of Land, Carroll & Blair, P.C.

4.  According to instructions from Paul J. Manafort, Jr., at closing the settlement company issued a $23,001.36 check to Andrea Manafort representing excess funds from the $1,900,000 wire transfer.

5.  The records attached to this stipulation as Exhibits A through D are records of Land, Carroll & Blair, P.C. and constitute records of a regularly conducted business activity pursuant to Rule 803(6) of the Federal Rules of Evidence, without requiring further authentication, certification, witness testimony, or the testimony of a custodian of records.

    a.  Exhibit A is a copy of the Edgewood sales contract dated August 21, 2012.

    b.  Exhibits B and C are a copy of the Edgewood HUD-1 settlement statement and the real property transfer dated September 11, 2012.

    c.  Exhibit D is a copy of the Edgewood disbursement statement.

We ask for this:

Paul J. Manafort, Jr.,
Defendant

ROBERT S. MUELLER, III
Special Counsel

By: _____

Kevin Downing, Esq.
Tom Zehnle, Esq.
Jay Nanavati, Esq.
Counsel for Defendant

By: _____

Andrew Weissmann
Greg D. Andres
Senior Assistant Special Counsels

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

**UNITED STATES OF AMERICA**

**v.**

**PAUL J. MANAFORT, Jr.,**

**Defendant.**

**Case No. 17-cr-201-1 (ABJ)**

## STIPULATION REGARDING 2012 LAND ROVER PURCHASES AND LEASE

The parties stipulate to the following facts:

1.  On April 11, 2012, Paul and Andrea Manafort purchased a 2012 Land Rover Range Rover from Don Beyer Motors, Inc., also known as Land Rover of Alexandria.

2.  As part of the payment for that vehicle, on April 12, 2012, a wire transfer from Lucicle Consultants Limited in the amount of $83,525.00 drawn on a bank account at Marfin Laiki Bank in Nicosia, Cyprus was sent to Don Beyer Motors, Inc.

3.  On April 25, 2012, Paul and Kathleen Manafort leased a 2012 Land Rover Range Rover.

4.  As the down-payment for that vehicle, on May 2, 2012, a wire transfer from Lucicle Consultants Limited in the amount of $12,525.00 drawn on a bank account at Marfin Laiki Bank in Nicosia, Cyprus was sent to Don Beyer Motors, Inc.

5.  On June 28, 2012, Paul and Kathleen Manafort, using company John Hannah, LLC, purchased a 2012 Land Rover Range Rover.

6. As part of the payment for that vehicle, on June 29, 2012, a wire transfer from Lucicle Consultants Limited in the amount of $67,655.00 drawn on a bank account at Marfin Laiki Bank in Nicosia, Cyprus was sent to Don Beyer Motors, Inc.

7. The records attached to this stipulation as Exhibits A through C are records of Don Beyer Motors, Inc. and constitute records of a regularly conducted business activity pursuant to Rule 803(6) of the Federal Rules of Evidence, without requiring further authentication, certification, witness testimony, or the testimony of a custodian of records.

    a. Exhibit A is a copy of documents reflecting the purchase of the 2012 Land Rover Range Rover on April 11, 2012.

    b. Exhibit B is a copy of documents reflecting the April 25, 2012, lease of the 2012 Land Rover.

    c. Exhibit C is a copy of documents reflecting the purchase of the 2012 Land Rover Range Rover on June 28, 2012.

We ask for this:

Paul J. Manafort, Jr.,                 ROBERT S. MUELLER, III
Defendant                              Special Counsel


By: _____    By: _____
Kevin Downing, Esq.                    Andrew Weissmann
Tom Zehnle, Esq.                       Greg D. Andres
Jay Nanavati, Esq.                     Senior Assistant Special Counsels
Counsel for Defendant

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

**UNITED STATES OF AMERICA**

**v.**

**PAUL J. MANAFORT, Jr.,**

**Defendant.**

**Case No. 17-cr-201-1 (ABJ)**

## STIPULATION REGARDING BUSINESS RECORDS OF MERCEDES-BENZ

The parties stipulate that the records attached as Exhibit A are records of American Service Center Associates of Alexandria, LLC, also known as Mercedes-Benz of Alexandria – a car dealership – and constitute records of a regularly conducted business activity pursuant to Rule 803(6) of the Federal Rules of Evidence, without requiring further authentication, certification, witness testimony, or the testimony of a custodian of records.

We ask for this:

Paul J. Manafort, Jr.,
Defendant

ROBERT S. MUELLER, III
Special Counsel

By: _____

Kevin Downing, Esq.
Tom Zehnle, Esq.
Jay Nanavati, Esq.
Counsel for Defendant

By: _____

Andrew Weissmann
Greg D. Andres
Senior Assistant Special Counsels

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| **UNITED STATES OF AMERICA** | |
| **v.** | **Case No. 17-cr-201-1 (ABJ)** |
| **PAUL J. MANAFORT, Jr.,** | |
| **Defendant.** | |

## STIPULATION REGARDING BUSINESS RECORDS OF MERCURY

The parties stipulate to the authenticity of the categories of records listed below in numbered paragraphs 1 and 2, which had previously been produced by the United States to the defense as part of the discovery process, and further agree that they constitute records of a regularly conducted business activity pursuant to Rule 803(6) of the Federal Rules of evidence, without requiring further authentication, certification, witness testimony, or the testimony of a custodian of records.

1.    Records of Mercury Public Affairs.

2.    The records referenced in paragraph 1 include, but are not limited to, emails, checks, wire transfers, invoices, agreements, correspondence, work papers, financial statements, authorization forms, permanent files, and contracts.

We ask for this:

| | |
|---|---|
| Paul J. Manafort, Jr., | ROBERT S. MUELLER, III |
| Defendant | Special Counsel |

By: _____    By: _____

| | |
|---|---|
| Kevin Downing, Esq. | Andrew Weissmann |
| Tom Zehnle, Esq. | Greg D. Andres |
| Jay Nanavati, Esq. | Senior Assistant Special Counsels |
| Counsel for Defendant | |

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **UNITED STATES OF AMERICA** | |
| **v.** | **Case No. 17-cr-201-1 (ABJ)** |
| **PAUL J. MANAFORT, Jr.,** | |
| **Defendant.** | |

## STIPULATION REGARDING BUSINESS RECORDS OF PODESTA GROUP

The parties stipulate to the authenticity of the categories of records listed below in numbered paragraphs 1 and 2, which had previously been produced by the United States to the defense as part of the discovery process, and further agree that they constitute records of a regularly conducted business activity pursuant to Rule 803(6) of the Federal Rules of evidence, without requiring further authentication, certification, witness testimony, or the testimony of a custodian of records.

1. Records of the Podesta Group.

2. The records referenced in paragraph 1 include, but are not limited to, emails, checks, wire transfers, invoices, agreements, correspondence, work papers, financial statements, authorization forms, permanent files, and contracts.

We ask for this:

| | |
|---|---|
| Paul J. Manafort, Jr., Defendant | ROBERT S. MUELLER, III Special Counsel |
| By: _____ | By: _____ |
| Kevin Downing, Esq. | Andrew Weissmann |
| Tom Zehnle, Esq. | Greg D. Andres |
| Jay Nanavati, Esq. | Senior Assistant Special Counsels |
| Counsel for Defendant | |

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

UNITED STATES OF AMERICA

v.

PAUL J. MANAFORT, Jr.,

Defendant.

Case No. 17-cr-201-1 (ABJ)

**STIPULATION REGARDING RENOVATION OF**
**PALM BEACH GARDENS, FLORIDA RESIDENCE**

The parties stipulate to the following facts:

1. Carl Sabatello is the President of Sabatello Construction of Florida, Inc., which is a construction company that operates in the Palm Beach, Florida area.

2. On November 14, 2011, Sabatello Construction of Florida, Inc. entered into a contract with Paul J. Manafort, Jr., and Kathleen Manafort with respect to the renovation of their master bathroom at their home on 10 St. James Drive in Palm Beach Gardens, Florida.  The contract price for the work was $38,475.

3. As part of the payment for that renovation, on November 15, 2011, a wire transfer was made from Global Highway Limited in the amount of $8,000 from a bank account at Marfin Laiki Bank in Nicosia, Cyprus to an account of Sabatello Construction of Florida, Inc.

4. As a further part of the payment for that renovation, on December 5, 2011, a wire transfer was made from Leviathan Advisors Limited in the amount of $11,237 from a bank account at Marfin Laiki Bank in Nicosia, Cyprus to an account of Sabatello Construction of Florida, Inc.

5. As a further part of the payment for that renovation, on December 21, 2011, a wire transfer was made from Black Sea View Limited in the amount of $20,000 from a bank account at Marfin Laiki Bank in Nicosia, Cyprus to Sabatello Construction of Florida, Inc.

6. On February 4, 2012, Sabatello Construction of Florida, Inc. entered into an additional contract with Paul and Kathleen Manafort with respect to remodeling the master bathroom and construction of an addition to the guest house at their home on 10 St. James Drive in Palm Beach Gardens, Florida. The contract price for the work was $259,300.

7. With respect to the February 4, 2012 contract, there were nine change orders reflecting additional work agreed to and signed by Sabatello Construction of Florida, Inc. and Mr. Manafort.  The total cost associated with these change orders was $133,941.

8. As part of the payment for the February 4, 2012, contract and the nine change orders, the following payments were made:

   a. On February 9, 2012, a wire transfer was made from Global Highway Limited in the amount of $51,000 from a bank account at Marfin Laiki Bank in Nicosia, Cyprus to Sabatello Construction of Florida, Inc.

2

b.  On May 17, 2012, a wire transfer was made from Lucicle Consultants Limited in the amount of $68,000 from a bank account at Marfin Laiki Bank in Nicosia, Cyprus to Sabatello Construction of Florida, Inc.

c.  On June 19, 2012, a wire transfer was made from Lucicle Consultants Limited in the amount of $60,000 from a bank account at Marfin Laiki Bank in Nicosia, Cyprus to Sabatello Construction of Florida, Inc.

d.  On July 18, 2012, a wire transfer was made from Lucicle Consultants Limited in the amount of $32,250 from a bank account at Marfin Laiki Bank in Nicosia, Cyprus to Sabatello Construction of Florida, Inc.

e.  On September 19, 2012, a wire transfer was made from Lucicle Consultants Limited in the amount of $112,000 from a bank account at Marfin Laiki Bank in Nicosia, Cyprus to Sabatello Construction of Florida, Inc.

f.  On November 30, 2012, a wire transfer was made from Lucicle Consultants Limited in the amount of $39,700 from a bank account at Marfin Laiki Bank in Nicosia, Cyprus to Sabatello Construction of Florida, Inc.

g.  On January 9, 2013, a wire transfer was made from Lucicle Consultants Limited in the amount of $25,600 from a bank account at Laiki Bank in Nicosia, Cyprus to Sabatello Construction of Florida, Inc.

    h.  On February 28, 2013, a wire transfer was made from Lucicle Consultants Limited in the amount of $4,700 from a bank account at Hellenic Bank in Nicosia, Cyprus to Sabatello Construction of Florida, Inc.

9.  The records attached to this stipulation as Exhibits A through D are records of Sabatello Construction of Florida, Inc., and constitute records of a regularly conducted business activity pursuant to Rule 803(6) of the Federal Rules of Evidence, without requiring further authentication, certification, witness testimony, or the testimony of a custodian of records.

    a.  Exhibit A is a copy of the construction contract dated November 14, 2011, between Sabatello Construction of Florida, Inc. and Paul and Kathleen Manafort.

    b.  Exhibit B is a copy of the additional construction contact between Sabatello Construction of Florida, Inc. and Paul and Kathleen Manafort dated February 4, 2012.

    c.  Exhibit C are copies of the nine change orders referenced in paragraph 7.

    d.  Exhibit D are photographs of the property located at 10 St. James Drive in Palm Beach Gardens, Florida.

We ask for this:

Paul J. Manafort, Jr.,          ROBERT S. MUELLER, III
Defendant                       Special Counsel


By: _____    By: _____
    Kevin Downing, Esq.             Andrew Weissmann
    Tom Zehnle, Esq.                Greg D. Andres
    Jay Nanavati, Esq.              Senior Assistant Special Counsels
    Counsel for Defendant

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **UNITED STATES OF AMERICA** | |
| **v.** | **Case No. 17-cr-201-1 (ABJ)** |
| **PAUL J. MANAFORT, Jr.,** | |
| **Defendant.** | |

## STIPULATION REGARDING PURCHASE OF
## AUDIO/VISUAL SYSTEM AND SERVICE

The parties stipulate to the following facts:

1.  Greg Garland was the co-owner of Sensoryphile, Inc., which operates in the Hamptons, New York area.

2.  Paul J. Manafort, Jr. had been a client of Sensoryphile, Inc. since approximately 1994.  Sensoryphile, Inc. installed the original audio visual/video system and karaoke system at Manafort's residence at 174 Jobs Lane, Bridgehampton, New York.

3.  On March 1, 2010, Sensoryphile, Inc. submitted invoice number 76381 in the amount of $20,339 for Crestron design and installation.

4.  As payment of that invoice, on March 8, 2010, Global Highway Limited transferred $20,300 from its bank account at Marfin Laiki Bank in Nicosia, Cyprus to Sensoryphile, Inc.

5. On April 15, 2010, Sensoryphile, Inc. submitted invoice number 76526REV2 in the amount of $8,147 for deposit on a Karaoke machine and audio/video design and installation.

6. As payment of that invoice, on April 23, 2010, Yiakora Ventures Limited transferred $8,500 from its bank account at Bank of Cyprus in Nicosia, Cyprus to Sensoryphile, Inc.

7. On July 13, 2010, Sensoryphile, Inc. submitted invoice number 76836 in the amount of $10,395 for a Karaoke machine and audio/video design and installation.

8. On July 15, 2010, Sensoryphile, Inc. submitted invoice number 76838 in the amount of $7,574 for Crestron design and installation and televisions.

9. As payment of both invoices, on July 29, 2010, Leviathan Advisors Limited transferred $17,650 from its bank account at Marfin Laiki Bank in Nicosia, Cyprus to Sensoryphile, Inc.

10. The records attached to this stipulation as Exhibits A through D are records of Sensoryphile, Inc., and constitute records of a regularly conducted business activity pursuant to Rule 803(6) of the Federal Rules of Evidence, without requiring further authentication, certification, witness testimony, or the testimony of a custodian of records.

   a. Exhibit A is copy of invoice number 76381 in the amount of $20,339 for Crestron design and installation.

b.  Exhibit B is a copy of invoice number 76526REV2 in the amount of
    $8,147 for deposit on a Karaoke machine and audio/video design and
    installation.

c.  Exhibit C is a copy of invoice number 76836 in the amount of $10,395
    for a Karaoke machine and audio/video design and installation.

d.  Exhibit D is a copy of invoice number 76838 in the amount of $7,574
    for Crestron design and installation and televisions.


                                We ask for this:

Paul J. Manafort, Jr.,          ROBERT S. MUELLER, III
Defendant                       Special Counsel


By:  _____    By:  _____
     Kevin Downing, Esq.          Andrew Weissmann
     Tom Zehnle, Esq.             Greg D. Andres
     Jay Nanavati, Esq.           Senior Assistant Special Counsels
     Counsel for Defendant

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

UNITED STATES OF AMERICA

v.

PAUL J. MANAFORT, Jr.,

            Defendant.

Case No. 17-cr-201-1 (ABJ)

**STIPULATION REGARDING PURCHASE OF**
**AUDIO/VISUAL SYSTEM AND SERVICE**

The parties stipulate to the following facts:

1. Greg Garland was the co-owner of Sensoryphile, Inc., which operates in the Hamptons, New York area.

2. Paul J. Manafort, Jr. had been a client of Sensoryphile, Inc. since approximately 1994.  Sensoryphile, Inc. installed the original audio visual/video system and karaoke system at Manafort's residence at 174 Jobs Lane, Bridgehampton, New York.

3. On March 1, 2010, Sensoryphile, Inc. submitted invoice number 76381 in the amount of $20,339 for Crestron design and installation.

4. As payment of that invoice, on March 8, 2010, Global Highway Limited transferred $20,300 from its bank account at Marfin Laiki Bank in Nicosia, Cyprus to Sensoryphile, Inc.

5. On April 15, 2010, Sensoryphile, Inc. submitted invoice number 76526REV2 in the amount of $8,147 for deposit on a Karaoke machine and audio/video design and installation.

6. As payment of that invoice, on April 23, 2010, Yiakora Ventures Limited transferred $8,500 from its bank account at Bank of Cyprus in Nicosia, Cyprus to Sensoryphile, Inc.

7. On July 13, 2010, Sensoryphile, Inc. submitted invoice number 76836 in the amount of $10,395 for a Karaoke machine and audio/video design and installation.

8. On July 15, 2010, Sensoryphile, Inc. submitted invoice number 76838 in the amount of $7,574 for Crestron design and installation and televisions.

9. As payment of both invoices, on July 29, 2010, Leviathan Advisors Limited transferred $17,650 from its bank account at Marfin Laiki Bank in Nicosia, Cyprus to Sensoryphile, Inc.

10. The records attached to this stipulation as Exhibits A through D are records of Sensoryphile, Inc., and constitute records of a regularly conducted business activity pursuant to Rule 803(6) of the Federal Rules of Evidence, without requiring further authentication, certification, witness testimony, or the testimony of a custodian of records.

   a. Exhibit A is copy of invoice number 76381 in the amount of $20,339 for Crestron design and installation.

2

b.  Exhibit B is a copy of invoice number 76526REV2 in the amount of

$8,147 for deposit on a Karaoke machine and audio/video design and

installation.

c.  Exhibit C is a copy of invoice number 76836 in the amount of $10,395

for a Karaoke machine and audio/video design and installation.

d.  Exhibit D is a copy of invoice number 76838 in the amount of $7,574

for Crestron design and installation and televisions.


We ask for this:

| | |
|---|---|
| Paul J. Manafort, Jr., | ROBERT S. MUELLER, III |
| Defendant | Special Counsel |


By: _____      By: _____

Kevin Downing, Esq.                  Andrew Weissmann
Tom Zehnle, Esq.                     Greg D. Andres
Jay Nanavati, Esq.                   Senior Assistant Special Counsels
Counsel for Defendant

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **UNITED STATES OF AMERICA** | |
| **v.** | **Case No. 17-cr-201-1 (ABJ)** |
| **PAUL J. MANAFORT, Jr.,** | |
| **Defendant.** | |

## STIPULATION REGARDING BUSINESS RECORDS OF SKADDEN ARPS

The parties stipulate to the authenticity of the categories of records listed below in numbered paragraphs 1 and 2, which had previously been produced by the United States to the defense as part of the discovery process, and further agree that they constitute records of a regularly conducted business activity pursuant to Rule 803(6) of the Federal Rules of evidence, without requiring further authentication, certification, witness testimony, or the testimony of a custodian of records.

1.      Records of Skadden, Arps, Slate, Meagher & Flom LLP.

2.      The records referenced in paragraph 1 include, but are not limited to, emails, checks, wire transfers, invoices, agreements, correspondence, work papers, financial statements, authorization forms, permanent files, and contracts.

We ask for this:

| | |
|---|---|
| Paul J. Manafort, Jr., | ROBERT S. MUELLER, III |
| Defendant | Special Counsel |

| | |
|---|---|
| By: _____ | By: _____ |
| Kevin Downing, Esq. | Andrew Weissmann |
| Tom Zehnle, Esq. | Greg D. Andres |
| Jay Nanavati, Esq. | Senior Assistant Special Counsels |
| Counsel for Defendant | |

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

**UNITED STATES OF AMERICA**

**v.**

**PAUL J. MANAFORT, Jr.,**

**Defendant.**

**Case No. 17-cr-201-1 (ABJ)**

## STIPULATION REGARDING BUSINESS RECORDS OF BOOKKEEPING AND TAX PREPARATION SERVICES

The parties stipulate to the authenticity of the categories of records listed below in numbered paragraphs 1 and 2, which had previously been produced by the United States to the defense as part of the discovery process, and further agree that they constitute records of a regularly conducted business activity pursuant to Rule 803(6) of the Federal Rules of evidence, without requiring further authentication, certification, witness testimony, or the testimony of a custodian of records.

1.      Records of Nigro Karlin Segal Feldstein & Bolno, LLC (NKSFB) and Kositzka, Wicks & Company (KWC).

2.      The records referenced in paragraph 1 include, but are not limited to, emails, account statements, checks, wire transfers, loan files, transactions forms, applications, closing files, signature cards, invoices, agreements, deposits slips and corresponding offsets, correspondence, work papers, financial statements, general ledgers, trial balances, adjusting journal entries and supporting documentation, tax

returns and supporting documents, authorization forms, permanent files, and

contracts.

                                        We ask for this:

    Paul J. Manafort, Jr.,              ROBERT S. MUELLER, III
    Defendant                           Special Counsel


By: _____          By: _____
    Kevin Downing, Esq.               Andrew Weissmann
    Tom Zehnle, Esq.                  Greg D. Andres
    Jay Nanavati, Esq.                Senior Assistant Special Counsels
    Counsel for Defendant

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **UNITED STATES OF AMERICA** | |
| **v.** | **Case No. 17-cr-201-1 (ABJ)** |
| **PAUL J. MANAFORT, Jr.,** | |
| **Defendant.** | |

## STIPULATION REGARDING TAX RETURNS

The parties stipulate to the following:

1.      The federal tax returns listed below and attached as Exhibit A were each filed with the Internal Revenue Service:

- Form 1040 tax returns for Paul and Kathleen Manafort for years 2010–2014.

- Form 1120S tax returns for Davis Manafort Partners, Inc. for years 2010–2011.

- Form 1065 tax returns for DMP International LLC for years 2011–2014.

- Form 1065 tax returns for John Hannah for years 2010–2014.

- Form 1065 tax returns for MC Soho Holdings LLC for years 2015–2016.

2.      There were no tax returns filed with the Internal Revenue Service for MC Brooklyn Holdings LLC or Smythson.

3.     There were no tax returns filed with the Internal Revenue Service for
Davis Manafort Partners, Inc. for years 2012–2014.

4.     There were no tax returns filed with the Internal Revenue Service for
DMP International LLC for year 2010.

5.     There were no tax returns filed with the Internal Revenue Service for
MC Soho Holdings LLC for years 2013–2014.

6.     The federal tax returns and certifications attached as Exhibit A
constitute public records and/or reports and are therefore self-authenticating under
Federal Rules of Evidence 803(6), 803(8), 803(10), and 902, without requiring
further authentication, certification, witness testimony, or the testimony of a
custodian of records.

We ask for this:

Paul J. Manafort, Jr.,                      ROBERT S. MUELLER, III
Defendant                                   Special Counsel


By:  _____        By:  _____
     Kevin Downing, Esq.               Andrew Weissmann
     Tom Zehnle, Esq.                  Greg D. Andres
     Jay Nanavati, Esq.                Senior Assistant Special Counsels
     Counsel for Defendant

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **UNITED STATES OF AMERICA** | |
| **v.** | **Case No. 17-cr-201-1 (ABJ)** |
| **PAUL J. MANAFORT, Jr.,** | |
| **Defendant.** | |

## STIPULATION REGARDING RECORDS OF ANDREW WRIGHT

The parties stipulate to the following facts:

1. Andrew Wright was an employee of Mercury Group and was the assigned subscriber of the following email account: andrew.wright.t@gmail.com.

2. The records attached to this stipulation as Exhibit A are records produced by Andrew Wright and constitute records of a regularly conducted business activity pursuant to Rule 803(6) of the Federal Rules of Evidence, without requiring further authentication, certification, witness testimony, or the testimony of a custodian of records.

We ask for this:

Paul J. Manafort, Jr.,      ROBERT S. MUELLER, III
Defendant                Special Counsel


By: _____    By: _____
     Kevin Downing, Esq.            Andrew Weissmann
     Tom Zehnle, Esq.               Greg D. Andres
     Jay Nanavati, Esq.             Senior Assistant Special Counsels
     Counsel for Defendant

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **UNITED STATES OF AMERICA** | |
| **v.** | **Case No. 17-cr-201-1 (ABJ)** |
| **PAUL J. MANAFORT, Jr.,** | |
| **Defendant.** | |

## STIPULATION REGARDING RECORDS OF DANIEL J. EDELMAN, INC.

The parties stipulate to the authenticity of the categories of records listed below in numbered paragraphs 1 and 2, which had previously been produced by the United States to the defense as part of the discovery process, and further agree that they constitute records of a regularly conducted business activity pursuant to Rule 803(6) of the Federal Rules of evidence, without requiring further authentication, certification, witness testimony, or the testimony of a custodian of records.

1.    Records of Daniel J. Edelman, Inc. d/b/a Edelman.

2.    The records referenced in paragraph 1 include, but are not limited to, emails, memoranda, correspondence, work papers, financial statements, reports, notes, and a FARA registration submitted by Edelman.

We ask for this:

| | |
|---|---|
| Paul J. Manafort, Jr., Defendant | ROBERT S. MUELLER, III Special Counsel |
| By: _____ | By: _____ |
| Kevin Downing, Esq. Tom Zehnle, Esq. Jay Nanavati, Esq. Counsel for Defendant | Andrew Weissmann Greg D. Andres Senior Assistant Special Counsels |

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **UNITED STATES OF AMERICA** | |
| **v.** | **Case No. 17-cr-201-1 (ABJ)** |
| **PAUL J. MANAFORT, Jr.,** | |
| **Defendant.** | |

## STIPULATION REGARDING EMAIL

The parties stipulate to the following facts:

1.      Konstantin Kilimnik was the person who was the assigned user of the following email account: kkilimnik@dmpint.com.

2.      Oleg Voloshyn was the person who was the assigned subscriber of the following email account: oavoloshyn@gmail.com.

3.      Vladimir Tolmach was the person who was the assigned subscriber of the following email account: vlad.tolmach@gmail.com.

4.      Ina Kirsch-Vandewater was the person who was the assigned subscriber of the following email account: ina.kirschvandewater@gmail.com.

5.      With respect to all emails introduced at trial, which had previously been produced by the United States to the defense as part of the discovery process:

      a.   The emails are authentic and no further testimony is necessary to establish their authenticity.

      b.   The emails were authored and sent from the email account listed on the particular emails.

c.  The emails were received by the recipient(s) on the particular

emails.

d.  The emails were sent on the date listed on the emails.


We ask for this:

Paul J. Manafort, Jr.,          ROBERT S. MUELLER, III
Defendant                       Special Counsel


By:  _____    By:  _____
     Kevin Downing, Esq.          Andrew Weissmann
     Tom Zehnle, Esq.             Greg D. Andres
     Jay Nanavati, Esq.           Senior Assistant Special Counsels
     Counsel for Defendant

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **UNITED STATES OF AMERICA** | |
| **v.** | **Case No. 17-cr-201-1 (ABJ)** |
| **PAUL J. MANAFORT, Jr.,** | |
| **Defendant.** | |

**STIPULATION REGARDING RECORDS OF JADEROQ, LLC**

The parties stipulate to the authenticity of the categories of records listed below in numbered paragraphs 1 and 2, which had previously been produced by the United States to the defense as part of the discovery process, and further agree that they constitute records of a regularly conducted business activity pursuant to Rule 803(6) of the Federal Rules of evidence, without requiring further authentication, certification, witness testimony, or the testimony of a custodian of records.

1.    Records of JadeRoq, LLC.

2.    The records referenced in paragraph 1 include, but are not limited to, emails, memoranda, correspondence, work papers, financial statements, reports, and notes.

We ask for this:

| | |
|---|---|
| Paul J. Manafort, Jr.,<br>Defendant | ROBERT S. MUELLER, III<br>Special Counsel |
| By: _____ | By: _____ |
| Kevin Downing, Esq.<br>Tom Zehnle, Esq.<br>Jay Nanavati, Esq.<br>Counsel for Defendant | Andrew Weissmann<br>Greg D. Andres<br>Senior Assistant Special Counsels |

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **UNITED STATES OF AMERICA** | |
| **v.** | **Case No. 17-cr-201-1 (ABJ)** |
| **PAUL J. MANAFORT, Jr.,** | |
| **Defendant.** | |

## STIPULATION REGARDING PURCHASE OF
## 1046 N. EDGEWOOD STREET, ARLINGTON, VA

The parties stipulate to the following facts:

1. Wayne Holland was a licensed real estate agent with McEnearney Associates Inc., a real estate company located in Alexandria, Virginia.

2. Holland was hired by Paul J. Manafort, Jr. to assist his daughter, Andrea Manafort, with the purchase of real property known as 1046 N. Edgewood Street, Arlington, VA. Manafort told Holland the purchase was going to be an all cash purchase, and directed Holland to submit an asking price offer to the seller's broker. The asking price for the property was $1,899,000. The offer was then accepted by the seller.

3. On August 21, 2012, Andrea Manafort entered into a sales contract.  The same day Andrea Manafort wrote a $50,000 check to Holland as earnest money deposit for the property.

4.  On August 30, 2012 at 2:33 PM, Manafort emailed Holland and stated that, "$1.9M should be in your escrow account tomorrow morning. It is coming from Lucille LLC."

5.  To pay for the property, on August 31, 2012, a wire transfer in the amount of $1,900,000 was sent from Lucicle Consultants Limited's bank account at Marfin Laiki Bank in Nicosia, Cyprus to an account of Land, Carroll & Blair, P.C.

6.  According to instructions from Manafort, at closing the settlement company was to issue excess funds from the $1,900,000 wire transfer to Andrea Manafort.

7.  The records attached to this stipulation as Exhibits A through D are records of McEnearney Associates Inc. and constitute records of a regularly conducted business activity pursuant to Rule 803(6) of the Federal Rules of Evidence, without requiring further authentication, certification, witness testimony, or the testimony of a custodian of records.

   a.  Exhibit A is a copy of the sales contract dated August 21, 2012.

   b.  Exhibit B is a copy of the earnest money deposit dated August 21, 2012.

   c.  Exhibit C is a copy of the email between Manafort and Holland dated August 30, 2012.

   d.  Exhibit D is a copy of the email between Manafort and Holland dated August 31, 2012.

We ask for this:

Paul J. Manafort, Jr.,                          ROBERT S. MUELLER, III
Defendant                                       Special Counsel


By: _____        By: _____
    Kevin Downing, Esq.             Andrew Weissmann
    Tom Zehnle, Esq.                Greg D. Andres
    Jay Nanavati, Esq.              Jeannie S. Rhee
    Counsel for Defendant           Senior Assistant Special Counsels

3

# EXHIBIT G

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **UNITED STATES OF AMERICA**<br><br>**v.**<br><br>**PAUL J. MANAFORT, JR.,**<br><br>**Defendant.** | **Crim. No. 17-cr-201 (ABJ)** |

**<u>VERDICT FORM</u>**

**COUNT 1 (Conspiracy against the United States)**:

     As to Count 1 of the indictment, charging defendant Paul J. Manafort, Jr., with conspiracy to defraud the United States and commit an offense against the United States, we unanimously find the defendant:

     Guilty _____      Not Guilty _____

(If your verdict as to Count 1 is not guilty, proceed immediately to Count 2.  If your verdict as to Count 1 is guilty, complete the following section.)

     With respect to Count 1, we unanimously find that the defendant conspired to (check all that apply):

     _____      Defraud the United States

     _____      Act as an unregistered agent of a foreign principal

     _____      Make false and misleading statements in connection with a Foreign Agent Registration Act (FARA) Filing

     _____      Make false statements to the government

     _____      Fail to file a report of foreign bank and financial account (FBAR)

**COUNT 2 (Conspiracy to Launder Money)**:

As to Count 2 of the indictment, charging defendant Paul J. Manafort, Jr., with conspiracy to launder money, we unanimously find the defendant:

Guilty _____     Not Guilty _____

(If your verdict as to Count 2 is not guilty, proceed immediately to Count 3.  If your verdict as to Count 2 is guilty, complete the following section.)

With respect to Count 2, we unanimously find that the defendant conspired to (check all that apply):

_____     Transmit or transfer funds internationally to promote a specified unlawful activity, that is, a violation of FARA

_____     Launder proceeds of a FARA violation in order to evade tax

_____     Launder proceeds of a FARA violation in order to conceal their nature, location, source, ownership, or control

**COUNT 3 (Unregistered Agent of a Foreign Principal)**:

As to Count 3 of the indictment, charging defendant Paul J. Manafort, Jr., with acting as an agent of a foreign principal without registering with the Department of Justice, we unanimously find the defendant:

Guilty _____    Not Guilty _____

**COUNT 4 (False and Misleading FARA Statements)**:

As to Count 4 of the indictment, charging defendant Paul J. Manafort, Jr., with making a false or misleading statement in a document filed under the provisions of FARA and omitting a material fact necessary to make the statements in the document not misleading, we unanimously find the defendant:

Guilty _____    Not Guilty _____

**COUNT 5 (False Statements)**:

As to Count 5 of the indictment, charging defendant Paul J. Manafort, Jr., with making a false statement, we unanimously find the defendant:

Guilty _____    Not Guilty _____

**COUNT 6 (Attempted Witness Tampering)**:

As to Count 6 of the indictment, charging defendant Paul J. Manafort, Jr., with attempted witness tampering, we unanimously find the defendant:

Guilty _____    Not Guilty _____

**COUNT 7 (Conspiracy to Witness Tamper)**:

As to Count 7 of the indictment, charging defendant Paul J. Manafort, Jr., with conspiracy to witness tamper, we unanimously find the defendant:

Guilty _____    Not Guilty _____