**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | Criminal No. 17-201 (ABJ) |
| ) | |
| PAUL J. MANAFORT, JR., ) | |
| ) | |
| *Defendant.* ) | |

## **DEFENDANT PAUL J. MANAFORT JR.'S MOTION FOR A CHANGE OF VENUE**

Defendant Paul J. Manafort, Jr., by and through counsel, files this motion for a change of venue. Mr. Manafort makes his motion based upon his Sixth Amendment right to trial by an impartial jury and pursuant to Rule 21 of the Federal Rules of Criminal Procedure.

**1. Pretrial Publicity**

The investigation into "any links and/or coordination between the Russian government and individuals associated with the campaign of President Donald Trump" and "any matters that arose or may arise directly from the investigation" has dominated the news cycle in the United States at least since the moment of Mr. Mueller's appointment as Special Counsel on May 17, 2017. *See* May 17, 2017 Appointment Order. From the outset, a significant portion of the media coverage has focused on Mr. Manafort – the first individual indicted by the Special Counsel and the first individual to be convicted at trial.

While federal courts often address issues of pretrial publicity in high-profile cases, it is difficult to conceive of a matter that has received media attention of the same magnitude as the prosecution of Mr. Manafort. There are several reasons for this unrelenting news coverage.

First, the Special Counsel investigation focuses on issues relating to a sitting United States President.  Unsurprisingly, then, the nation's attention remains fixed on Mr. Manafort.

Second, the subject matter of the Special Counsel's investigation has a direct relationship to the political process.  This prosecution involves the President's former campaign manager.  As a result, for many Americans, Mr. Manafort's legal issues and the attendant daily media coverage have become theatre in the continuing controversy surrounding President Trump and his election.  This controversy continues to engender strong partisans on all sides of every issue.  As a result, it is difficult, if not impossible, to divorce the issues in this case from the political views of potential jurors.

Third, the high profile of the Special Counsel himself, a former FBI Director, has turned the investigation into something the media has portrayed as a showdown between Mr. Mueller on one hand and the President on the other.  Mr. Manafort as the first person tried and convicted by the Special Counsel's Office, has become an unwilling player in the larger drama between Mr. Mueller and President Trump.

Fourth, the reporting on this prosecution has often been sensationalized and untethered from the facts in the case.  For example, while the recent indictment of Konstantin Kilimnik, involved little more than an effort to make contact with a former associate, the reporting about Mr. Kilimnik has focused primarily on his alleged background in Russian intelligence.[1]  Similarly, while the Virginia trial barely touched on issues relating to the presidential campaign, the news media barely goes a day without drawing a connection between the two.

---

[1] *See, e.g., Russian charged with Trump's ex-campaign chief is key figure*, The Washington Post, July 2, 2018. Available at: https://www.washingtonpost.com/politics/russian-charged-with-trumps-ex-campaign-chief-is-key-figure/2018/07/02/c34bfc74-7e1c-11e8-a63f-7b5d2aba7ac5_story.html?utm_term=.3d9d016fd126

Fifth, on June 15, 2018, this Court revoked Mr. Manafort's release and remanded him into custody. This event unleashed a spate of intensely negative news coverage suggesting that Mr. Manafort violated the law.[2]  Indeed, even the President's response on Twitter; observed that Mr. Manafort received a "tough sentence," incorrectly suggesting that Mr. Manafort had been sentenced for committing a crime.[3]

Sixth, while this matter has received national media attention, the coverage, and the degree to which the public has followed that coverage, has been most intense in and around Washington, D.C.

Finally, Mr. Manafort's recently concluded trial in the United States District Court for the Eastern District of Virginia and his conviction on eight felony counts has resulted in intensely negative media coverage that reached new heights in the last week.  The conclusion of that trial less than four weeks prior to the start of jury selection in this case, presents new and increasingly difficult challenges to Mr. Manafort's effort to ensure a fair jury and a fair trial in this case.

**2. Applicable Law and Argument**

Under the Sixth Amendment, all criminal defendants have the right to trial by "indifferent" jurors "free from outside influences," who will "base their decision solely on the evidence," undisturbed by personal prejudice or public passion. *Sheppard v. Maxwell*, 384 U.S. 333, 362 (1966); *Irvin v. Dowd*, 366 U.S. 717, 722 (1961).

---

[2] Notably, this coverage included televised video of the van carrying Mr. Manafort arriving at the Northern Neck Regional Jail.  Available at: https://www.cnn.com/videos/politics/2018/06/16/paul-manafort-arrives-to-jail-ctn.cnn

[3] *See 'Very unfair!': Trump complains about Manafort's jailing on witness tampering allegations,* The Washington Post, June 15, 2018.  Available at: https://www.washingtonpost.com/politics/nothing-to-do-with-our-campaign-trump-seeks-to-distance-himself-from-manafort-before-hes-jailed/2018/06/15/79267402-70b7-11e8-bf86-a2351b5ece99_story.html?utm_term=.1fcf5272051b

In *Skilling v. United States*, 561 U.S. 358 (2010), the Supreme Court reviewed the denial of a change of venue motion in a high-profile white-collar crime prosecution. The government charged Skilling, the former CEO of Enron Corporation, with more than 25 counts of securities fraud, wire fraud, and making false statements in relation to Enron's financial strength. *Id.* at 369. The trial took place in Houston, the site of the company's headquarters. Skilling filed a motion seeking a change of venue, which the district court denied. *Id.* at 369-70. Following his conviction, Skilling appealed, first to the Fifth Circuit and then to the Supreme Court, complaining that the district court's failure to order a change of venue deprived him of a fair trial. *Id.* at 375-377.

The Supreme Court noted the extensive pre-trial publicity surrounding the Enron collapse, which included not only hard-news stories but also special interest pieces mocking the Enron executives and inciting sympathy for Enron investors. *Id.* at 375, n. 8. However, the Supreme Court rejected Skilling's claim holding that the record did not support a finding of presumed prejudice and, as a result, "declining to order a venue change, did not exceed constitutional limitations." *Id.* at 383-85.

In reaching this conclusion, the Court focused on the following factors and differentiated Skilling from defendants in prior cases requiring a venue change. Specifically, the Court pointed to: (1) the size and characteristics of the community; (2) whether the news stories contained blatantly prejudicial information; (3) the time between the reported events and the trial; and (4) evidence that the jury verdict undermined possible juror bias. *Id.* at 382-84.

While the Court used these standards to evaluate error in the district court's decision to deny a change of venue, several of the factors support the requested change of venue in Mr. Manafort's case. First, as to the size and characteristics of the community, while Washington D.C.

is a large city, the population of the District of Columbia is approximately 700,000 people. In contrast, Houston is far more populous. The City of Houston has a population of approximately 2.3 million people and the population of the counties that comprise the Southern District of Texas's Houston Division totals more than 5.8 million people. Perhaps more importantly, while having a substantial population, the individuals residing in the District of Columbia are far more likely to have closely followed the developments and news coverage in the Manafort case in light Washington's status as the nation's capital. This may be the rare case where a juror's predisposition may directly tie to their vote in the last presidential election. It is not a stretch to expect that voters who supported Secretary Clinton would be predisposed against Mr. Manafort or that voters who supported President Trump would be less inclined toward the Special Counsel. Notably, however, voters in the Washington, D.C. voted in favor of Secretary Clinton (90.9% Clinton; 4.1% Trump).[4] This split is more balanced in other places such as Roanoke, Virginia, located in the Western District of Virginia.

      A simple Google search for news articles about Russian collusion shows 707,000 results. In fact, the amount of media coverage of the Special Counsel's investigations is astounding. A Google search for news articles relating to Paul Manafort reveals 8,300,000 results. Reviewing these articles, one is hard pressed to find any that are not unfavorable to Mr. Manafort. The news coverage here has contained prejudicial information, including coverage of Mr. Manafort's recent

---

[4] *See* https://www.nytimes.com/elections/results/district-of-columbia

jailing,[5] allegations regarding connections with Russian intelligence,[6] and, more recently, news about Mr. Manafort's trial and conviction in the Eastern District of Virginia.[7] Indeed, a Google search for news articles about Paul Manafort Conviction results in 2,510,000 hits. This coverage has occurred since the conviction on August 21, 2018 – only one week ago.

Nowhere in the country is the bias against Mr. Manafort more apparent than here in the Washington, D.C. metropolitan area. The phrase "inside-the-beltway" was coined to capture the area's preoccupation with all things political. The Washington media market, including Maryland and Virginia suburbs, is the sixth largest TV market in the United States with over 2,321,610 TV homes. *See Top 100 Media Markets*, News Generation.[8] The Washington, D.C. metropolitan area has over 60 online news outlets in addition to websites run by major print and broadcast media companies. Gloria & Hadge, *An Information Case Study, Washington, D.C.*, New America

---

[5] *See, e.g., Judge sends Paul Manafort to jail, pending trial*, CNN, June 15, 2018. Available at: https://www.cnn.com/2018/06/15/politics/judge-sends-paul-manafort-to-jail-pending-trial/index.html;

*Judge Orders Paul Manafort Jailed Before Trial, Citing New Obstruction Charges*, The New York Times, June 15, 2018. Available at: https://www.nytimes.com/2018/06/15/us/politics/manafort-bail-revoked-jail.html; and

*Paul Manafort ordered to jail after witness-tampering charges,* The Washington Post, June 15, 2018. Available at: https://www.washingtonpost.com/local/public-safety/manafort-ordered-to-jail-after-witness-tampering-charges/2018/06/15/ccc526cc-6e68-11e8-afd5-778aca903bbe_story.html?utm_term=.95bcb30d02c6

[6] *See, e.g., Special counsel: Manafort, Gates worked with Russian intelligence agent*, CBS News, March 28, 2018. Available at: https://www.cbsnews.com/news/special-counsel-manafort-gates-worked-with-russian-intelligence-agent/; and

*Manafort and ally with Russian intel ties face new obstruction charges*, CNN, June 8, 2018. Available at: https://www.cnn.com/2018/06/08/politics/paul-manafort-indictment-robert-mueller/index.html

[7] *See, e.g., Paul Manafort, Trump's Former Campaign Chairman, Guilty of 8 Counts,* The New York Times, August 21, 2018. Available at: https://www.nytimes.com/2018/08/21/us/politics/paul-manafort-trial-verdict.html; and

*Paul Manafort found guilty on eight counts*, CNN, August 21, 2018. Available at: https://www.cnn.com/2018/08/21/politics/paul-manafort-trial-jury/index.html

[8] Available at: https://www.newsgeneration.com/broadcast-resources/top-100-radio-markets/ (last visited July 6, 2018).

Foundation, Aug. 5, 2010.[9] It ranks first in the nation in households with computers (82.9%) and internet access (80% of adults receiving information online). For news consumption, the city's major mainstream print and broadcast outlets command the most online page views in the United States. In comparison, Roanoke is the 70th largest media outlet in the United States and 38% of households in Roanoke lack broadband compared to 3% in Northern Virginia. *See* John Edwards, *Bringing broadband to rural Virginia*, The Roanoke Times, February 28, 2018.[10] Roanoke represents a venue where the media coverage is substantially less than in the D.C. metropolitan area.

The time between the reported events and the trial has been very short. Unlike in *Skilling*, where the news coverage of the Enron bankruptcy more than four years before the trial had diminished, the news coverage in Mr. Manafort case continues apace. Indeed, the news coverage of the Special Counsel's investigation (starting in May 2017); Mr. Manfort's indictment in the District of Columbia (October 2017); Mr. Manafort's indictment in the Eastern District of Virginia (February 2018); and Mr. Manafort's remand into custody (June 2018) and Mr. Manafort's conviction (August 21, 2018), has all taken place in the year leading up to the scheduled September 17th trial. Moreover, some of the most prejudicial coverage has been in the last week. Based upon all of these factors and the intense, unfavorable pretrial publicity, Mr. Manafort asks the Court to transfer this matter to Roanoke Virginia, well outside of the Washington metropolitan area.

In reviewing the *Skilling* trial for actual prejudice, and finding none, the Supreme Court carefully reviewed and generally approved of the jury selection process used by the district court.

---

[9] Available at: https://web.archive.org/web/20130909224854/http://mediapolicy.newamerica.net/publications/policy/an_information_community_case_study_washington_dc

[10] Available at: https://www.roanoke.com/opinion/commentary/edwards-bringing-broadband-to-rural-virginia/article_b50ec107-7b88-515d-ab44-e8d133c7a62b.html

*Id.* at 386-98.  The Supreme Court described the detailed questionnaire, which included 77-questions over 14 pages that were generally open-ended allowing the jurors to provide meaningful information. *Id.* at 371.  The questionnaire was sent out to 400 prospective jurors. *Id.* at 372.  The Supreme Court demonstrated the importance of the questionnaires by finding they "confirmed that, whatever community prejudice existed in Houston generally, Skilling's juror were not under its sway." *Id.* at 391. In addition to the questionnaire, the Supreme Court favorably noted that the district court in *Skilling* asked questions related to pretrial publicity to each juror individually. Id. at 389.

While recognizing the steps this Court has taken to attempt to select a fair and impartial jury for the upcoming trial, given the amount of publicity and the close temporal proximity between his recent conviction and the next trial, Mr. Manafort submits that a fair trial will impossible without a change of venue to a more neutral and less media saturated locale such as Roanoke, Virginia.

WHEREFORE, Defendant Manafort respectfully requests that the Court transfer this case from the District of Columbia to Roanoke, Virginia for trial.

Dated: August 29, 2018    Respectfully submitted,

　　　　　　　　　　　　　　　　　　　　/s/　　　　　　　　　　　　　　　　
Kevin M. Downing
(D.C. Bar No. 1013984)
Law Office of Kevin M. Downing
601 New Jersey Avenue NW, Suite 620
Washington, DC 20001
(202) 754-1992
kevindowning@kdowninglaw.com

/s/
Thomas E. Zehnle
(D.C. Bar No. 415556)
Law Office of Thomas E. Zehnle
601 New Jersey Avenue NW, Suite 620
Washington, DC 20001
(202) 368-4668
tezehnle@gmail.com

/s/
Richard W. Westling
(D.C. Bar No. 990496)
Epstein Becker & Green, P.C.
1227 25th Street, N.W.
Washington, DC 20037
Tel: 202-861-1868
Fax: 202-296-2882
Email: rwestling@ebglaw.com

*Counsel for Defendant Paul J. Manafort, Jr.*

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA | ) ) ) ) | |
| v. | ) ) ) | Criminal No. 17-201-01 (ABJ) |
| PAUL J. MANAFORT, JR., | ) ) ) | |
| *Defendant.* | ) ) | |

**[Proposed] <u>ORDER</u>**

Upon consideration of Defendant Paul J. Manafort, Jr.'s Motion for a Change of Venue and any opposition and reply thereto, it is hereby **ORDERED** that the motion is **GRANTED**; and it is hereby **FURTHER ORDERED** that the trial in this matter will take place at Roanoke, Virginia in the Western District of Virginia**.**

**SO ORDERED**.

Dated: _____          _____
                                                                AMY BERMAN JACKSON
                                                                United States District Judge