**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **UNITED STATES OF AMERICA**<br><br>v.<br><br>**PAUL J. MANAFORT, JR.**,<br><br>**Defendant.** | **Crim. No. 17-cr-201-1 (ABJ)** |

**GOVERNMENT'S RESPONSE TO DEFENDANT'S
MOTION FOR A CHANGE OF VENUE**

The United States of America, by and through Special Counsel Robert S. Mueller, III, files this response to defendant Paul J. Manafort, Jr.'s motion (Doc. 393) for a change of venue. Manafort's motion should be denied. Manafort has not shown that pre-trial publicity is so likely to have prejudiced the jury pool that the venire must be presumed to be tainted, or that the nationwide publicity he identifies would be materially less prejudicial in another district.

**BACKGROUND**

Manafort has been indicted in neighboring districts on federal charges arising in part from his Ukraine work and witness tampering related to such charges. In October 2017, a grand jury in this District returned an indictment that, as since superseded, charges Manafort with conspiring to defraud and commit offenses against the United States, money laundering conspiracy, violating the Foreign Agents Registration Act, making false statements to the government, and attempting to tamper with witnesses and conspiring to do the same. Doc. 318. In February 2018, a grand jury in the Eastern District of Virginia returned an indictment that, as since superseded, charges Manafort with five counts of subscribing false tax returns, four counts of failing to file reports of foreign bank and financial accounts, and multiple counts of bank fraud and bank fraud conspiracy. *United States v. Manafort*, No. 18-cr-83 (E.D. Va. Feb. 22, 2018) (*Manafort EDVA*) (Doc. 9). The

investigation and recent trial of the above charges have been the subject of extensive media coverage. *Cf. Skilling v. United States*, 561 U.S. 358, 379 (2010) ("[M]ost cases of consequence garner at least some pretrial publicity.").

Previously, Manafort moved to transfer the Eastern District of Virginia case from Alexandria, Virginia to Roanoke, Virginia, principally on the same grounds he now urges here. While not binding on this Court, on July 17, 2018, United States District Judge T.S. Ellis, III denied that motion. *Manafort EDVA*, Doc. 138. Judge Ellis explained that "substantial media attention does not, by itself, warrant a change a venue," and that a transfer would be appropriate only if the publicity was "'so inherently prejudicial that trial proceedings [are] presumed to be tainted.'" *Id.* at 2-3 (quoting *United States v. Bakker*, 925 F.2d 728, 732 (4th Cir. 1991)) (court's alteration). Judge Ellis contrasted those rare instances where the Supreme Court had found such a presumption applicable with Manafort's case. *Id.* at 3-4. Applying considerations identified in *Skilling v. United States*, 561 U.S. 358 (2010), Judge Ellis concluded that a "presumption of jury partiality" was unwarranted. *Id.* at 5-6. He noted that jurors would be drawn from a large jury pool and that nothing about the publicity that Manafort identified "suggest[ed] that impartial jurors cannot be found through an exacting *voir dire* process" or was "unique to this geographic area." *Id.* at 6. Judge Ellis additionally rejected Manafort's suggestion that potential jurors were "more likely aligned with the Democratic Party than the Republican party," explaining that "political leanings are not, by themselves, evidence that those jurors cannot fairly and impartially consider the evidence presented and apply the law as instructed by the Court." *Id.* at 6-7. Following a thorough voir dire, the district court empaneled a jury, and after a twelve-day trial, the jury found Manafort guilty of eight of the charged counts and was unable to reach a unanimous verdict on ten counts. *Manafort EDVA*, Doc. 264.

Jury selection in this case is scheduled to begin on September 17, 2018, and trial is scheduled to begin on September 24. This Court will have prospective jurors complete a detailed questionnaire to aid in finding "a fair and impartial jury." Aug. 28 Hrg. Tr. 74. In light of the pre-trial publicity, the Court has explained that it will conduct a searching *voir dire*. *Id.* at 61, 74. And the Court has made clear that after "the questionnaire and the voir dire proceeding," the Court will continue to evaluate whether a fair and impartial jury can be seated. *Id.* at 74.

## ARGUMENT

Manafort contends (Doc. 393 at 3-8) that because this case, the Eastern District of Virginia case, and Manafort's political work have attracted substantial publicity, this trial should be transferred to Roanoke, Virginia, where Manafort suggests that jurors are less likely to have followed the media coverage and to hold and be influenced by political views that Manafort views as unfavorable to him. That claim lacks merit. The common fact of extensive media coverage in high-profile cases does not mean that this jury pool must be presumed to be tainted. The Court should address the publicity that inevitably accompanies a case of this nature as courts ordinarily do and consistent with the Courts' prior ruling here, through a careful jury-selection process that includes a written questionnaire and thorough voir dire.

### A. Transfer Based On Pre-Trial Publicity Requires An Extraordinary Showing

Crimes must ordinarily be prosecuted "in a district where the offense was committed." Fed. R. Crim. P. 18; U.S. Const. Art. III, § 2, cl. 3 ("trial shall be held in the state where the said crimes shall have been committed"); *see also* U.S. Const. Amend. VI ("the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed."). Transfer to another district based on asserted bias is warranted only if "so great a prejudice against the defendant exists in the transferring district that the defendant

cannot obtain a fair and impartial trial there." Fed. R. Crim. P. 21(a).

Important cases "can be expected to arouse the interest of the public." *United States v. Haldeman*, 559 F.2d 31, 60 (D.C. Cir. 1976). But public attention does not, by itself, warrant a change in venue. Rather, in evaluating a motion to change venue, the "critical question" is "'whether it is possible to select a fair and impartial jury.'" *United States v. Caldwell*, 543 F.2d 1333, 1342 (D.C. Cir. 1974) (quoting *Jones v. Gasch*, 404 F.2d 1231, 1238 (D.C. Cir. 1967), *cert. denied*, 390 U.S. 1029 (1968)); *see United States v. Edmond*, 52 F.3d 1080, 1099 (D.C. Cir.), *cert. denied*, 516 U.S. 998 (1995); *United States v. Ehrlichman*, 546 F.2d 910, 916 n.8 (D.C. Cir. 1976); *United States v. Chapin,* 515 F.2d 1274, 1285-1286 (D.C. Cir. 1975).

"The mere existence of intense pretrial publicity is not enough to make a trial unfair, nor is the fact that potential jurors have been exposed to this publicity." *United States v. Childress*, 58 F.3d 693, 706 (D.C. Cir. 1995) (per curiam), *cert. denied*, 516 U.S. 1098 (1996); *see, e.g., Caldwell*, 543 F.2d at 1342-1343 ("widespread, uncomplimentary publicity" did not require conclusion that "a fair and impartial jury was completely unobtainable"); *see also United States v. Holton*, 116 F.3d 1536, 1547 (D.C. Cir. 1997) ("There is no general presumption of prejudice where jurors are exposed to media coverage"). Instead, potential jurors' exposure to pre-trial publicity and preconceived notions about the case are normally addressed through voir dire. *See, e.g.*, *Edmond*, 52 F.3d at 1099; *United States v. Sampol*, 636 F.2d 621, 680-681 (D.C. Cir. 1980); *see also Rosales-Lopez v. United States*, 451 U.S. 182, 188 (1981) ("Voir dire plays a critical function in assuring the criminal defendant that his Sixth Amendment right to an impartial jury will be honored.").

The "proper occasion" for deciding "whether it is possible to select a fair and impartial jury" is therefore normally "upon the voir dire." *Chapin,* 515 F.2d at 1285-1286 (quoting *Jones*,

404 F.2d at 1238).  Only in the most "'extreme circumstances'" should a court "presume[e] that a fair trial [i]s impossible in this jurisdiction" and that thorough voir dire cannot address any risk of bias.  *Edmond*, 52 F.3d at 1099 (quoting *Haldeman*, 559 F.2d at 60, and contrasting to *Rideau v. Louisiana*, 373 U.S. 723, 724-726 (1963), where a confession was broadcast to the small jury pool); *see Childress*, 58 F.3d at 706 ("Simply put, the standard is high" for presuming jury prejudice); *see also Skilling*, 561 U.S. at 379-381, 382-383.

### B. The Media Coverage At Issue Does Not Warrant Transfer

Manafort's showing falls short because the coverage relating to him does not rise to the extreme level warranting a presumption of prejudice, and national coverage, which reaches every district, cannot justify a change of venue to the district and division sought by Manafort.

#### 1. Coverage related to Manafort does not warrant transfer

"Prominence does not necessarily produce prejudice." *Skilling*, 561 U.S. at 381; *see Dobbert v. Florida*, 432 U.S. 282, 303 (1977).  As this Court has observed, "this jurisdiction has had very high-profile cases," and judges "have been able, through a questionnaire, followed by individual voir dire" to impanel fair and impartial juries.  Aug. 28 Hrg. Tr. 74.  The question at this stage is whether the pre-trial publicity is so extensive, inflammatory, and prejudicial that even with a detailed jury questionnaire and thorough voir dire, a jury should be presumed to be biased.  *See, e.g.*, *Edmond*, 52 F.3d at 1099; *Caldwell*, 543 F.2d at 1342-1343.

The media coverage surrounding Manafort does not rise to the kind of "extreme circumstances" that warrant such a conclusion.  *See Edmond*, 52 F.3d at 1099; *see, e.g., Haldeman*, 559 F.2d at 61-62 (noting that while pre-trial publicity was "massive" and some was "hostile in tone and accusatory in content" it was mostly "straightforward, unemotional factual accounts" and not the type of "inherently prejudicial" and "unforgettable" publicity that warrants presumed

prejudice); *see also Skilling,* 561 U.S. at 382-383 (news stories "were not kind" but "contained no confession or other blatantly prejudicial information" and "[n]o evidence of the smoking-gun variety invited prejudgment of his culpability."). The pre-trial publicity is not so "striking or prejudicial" that juror prejudice should be presumed. *See United States v. Gooch*, 23 F. Supp. 3d 32, 43 (D.D.C. 2014); *see, e.g., United States v. Poindexter*, 725 F. Supp. 13, 37-38 (D.D.C. 1989).

Transfer is additionally inappropriate given the size of the jury pool. Those rare cases where courts presume bias have not only involved highly prejudicial coverage, such as broadcast confessions, but have also typically involved "the saturation of smaller jury pools." *United States v. Lentz*, 352 F. Supp. 2d 718, 724 & n.12 (E.D. Va. 2005) (contrasting those areas with Northern Virginia); *see Skilling*, 561 U.S. at 382. Given the population of this District, it is especially unlikely that unbiased jurors cannot be found. *See Mu'Min v. Virginia*, 500 U.S. 415, 429 (1991) (potential for prejudice mitigated in county with population of 182,537 that was part of the Washington, D.C. area); *Gentile v. State Bar of Nev.,* 501 U.S. 1030, 1044 (1991) (plurality op.) (reduced likelihood of prejudice where venire was drawn from a pool of over 600,000 individuals).

Voir dire "can serve in almost all cases as a reliable protection against juror bias" and "nationally publicized trials of widely publicized individuals serves to validate the efficacy of the voir dire for this purpose." *In re Charlotte Observer*, 882 F.2d 850, 856 (4th Cir. 1989) (citing as examples "the Watergate defendants" and "the Abscam defendants"). Courts have long held that a trial judge's vigilance in voir dire is ordinarily capable of ferreting out bias and can be modulated to "the depth and extent of news stories that might influence a juror." *Mu'Min*, 500 U.S. at 427; *see Skilling,* 561 U.S. at 385; *id.* at 426 (Alito, J., concurring in part and concurring in the judgment); *Nebraska Press Ass'n v. Stuart*, 427 U.S. 539, 602 (1976) (Brennan, J., concurring); *Haldeman*, 559 F.2d at 60, 62 n.37. And the detailed jury questionnaire approved by this Court

will further aid in ferreting out any potential biases. *See Skilling*, 561 U.S. at 384, 388-389 & n.22; *United States v. North*, 713 F. Supp. 1444, 1444-1445 (D.D.C. 1989). Manafort has presented no reliable evidence that the jury pool holds such entrenched views that proceeding with voir dire in this venue is inappropriate.

### 2. National media coverage does not warrant transfer

Manafort's motion fails for the additional reason that any prejudice arising from pre-trial publicity in this case is not limited to this courthouse. This case has no "unique and extraordinary local impact." *United States v. Lindh*, 212 F. Supp. 2d 541, 552 n.15 (E.D. Va. 2002) (comparing to *United States v. McVeigh*, 918 F. Supp. 1467, 1474 (W.D. Okla. 1996) (Oklahoma City bombing). And court after court has recognized that where publicity is "national rather than local," a change of venue could serve little purpose. *Poindexter*, 725 F. Supp. at 38 n.54; *see United States v. Bakker*, 925 F.2d 728, 733 (4th Cir. 1991); *Levine v. United States Dist. Court for Cent. Dist. of Cal.*, 764 F.2d 590, 600 (9th Cir. 1985); *United States v. Herring*, 568 F.2d 1099, 1100 n.4 (5th Cir. 1978); *Lindh*, 212 F. Supp. 2d at 550-551; *United States v. Hill*, 893 F. Supp. 1039, 1041 (N.D. Fla. 1994); *see also United States v. Awadallah*, 457 F. Supp. 2d 246, 253 (S.D.N.Y. 2006) (perjury relating to September 11 attacks would elicit response nationwide).

Manafort's reliance on internet sources of publicity only underscores this conclusion. As a federal judge in Roanoke—Manafort's preferred venue—explained, "[b]ecause the internet is available in every judicial district," any "risk that prospective jurors will encounter [such] stories cannot be cured by a change of venue." *United States v. Cassell*, No. 06-cr-98, 2007 WL 419574 at *1 (W.D. Va. 2007); *see, e.g., United States v. Campa*, 459 F.3d 1121, 1148 n.243 (11th Cir. 2006) (the "high-tech age" counsels against transfer where prejudice "spread through multiple forms of media * * * would not stop at district lines").

Manafort nonetheless asserts (Doc. 393 at 5-7) that because the Court is in Washington, D.C., prospective jurors are likely "to have closely followed the developments and news coverage in [his] case" and to allow their views of the 2016 presidential candidates to cloud their judgment of this case.  Manafort states (*id.* at 7) that "[i]n comparison," Roanoke is a smaller "media outlet," and fewer people in Roanoke have broadband internet connections than "in Northern Virginia" (presumably a proxy for Washington D.C.).  Manafort's assertions about news and internet consumption are open to doubt, and his speculation about the likely propensities of jurors in this district is unfounded.  For example, the size of a "media market" reflects the area's population as much as its "preoccupation" with any type of news (*see id.* at 6); the number of media outlets near Washington (*id.*) says little about where the media is consumed; broadband internet access (*id.* at 7) does not describe the volume or content of internet use; and the suggestion that the jury pool is "preoccup[ied] with all things political" (*id.* at 6) rests not just on bare assertion but also a misunderstanding of the population and varied interests in this District.

As the Supreme Court has noted, quoting observations about D.C. jurors' trying a Watergate case, "[t]his may come as a surprise to lawyers and judges, but it is simply a fact of life that matters which interest them may be less fascinating to the public generally."  *Skilling*, 561 U.S. at 391 n.28 (quoting *Haldeman*, 559 F.2d at 62 n.37); *see United States v. Mitchell*, 551 F.2d 1252, 1262 n.46 (D.C. Cir. 1976) ("10 of the 12 jurors selected in that case claimed to have followed Watergate casually, if at all"), *rev'd on other grounds sub nom.*, *Nixon v. Warner Communications*, 435 U.S. 589 (1978); *see, e.g., North*, 713 F. Supp. at 1444 ("while some of the public becomes thoroughly engrossed in such a story many do not").  Even if prospective jurors have followed the media coverage, that does not itself warrant a presumption of prejudice.  *See*

*Childress*, 58 F.3d at 706.  And political leanings do not mean that jurors cannot be fair and impartial, consider the evidence presented by both sides, and follow the Court's legal instructions. *See Chapin*, 515 F.2d at 1287 (distinguishing between public sentiment about President Nixon and juror bias against one of his staffers); *cf. Jones*, 404 F.2d at 1237-1238 (discounting assertion of prejudice that "will accrue * * * vicariously").  In short, Manafort has not met his burden to establish the kind of "extreme circumstances" necessary to presume that a "fair trial [i]s impossible in this jurisdiction."  *See Edmond*, 52 F.3d at 1099 (quoting *Haldeman*, 559 F.2d at 60).

## CONCLUSION

For the foregoing reasons, Manafort's motion for a change of venue should be denied.

Respectfully submitted,

ROBERT S. MUELLER, III
Special Counsel

Dated: August 31, 2018          By:     /s/ Andrew Weissmann
                                        Andrew Weissmann
                                        Jeannie S. Rhee (D.D.C. Bar No. 464127)
                                        Greg D. Andres (D.D.C. Bar No. 459221)
                                        Adam C. Jed
                                        U.S. Department of Justice
                                        Special Counsel's Office
                                        950 Pennsylvania Avenue NW
                                        Washington, D.C. 20530
                                        Telephone: (202) 616-0800
                                        *Attorneys for the United States of America*