**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| **UNITED STATES OF AMERICA**<br><br>**v.**<br><br>**PAUL J. MANAFORT, JR.**,<br><br>**Defendant.** | **Crim. No. 17-cr-201-1 (ABJ)** |

## GOVERNMENT'S TRIAL BRIEF REGARDING ADMISSIBILITY OF GOVERNMENT'S PROPOSED EXHIBITS

The United States of America, by and through Special Counsel Robert S. Mueller, III, files this trial brief addressing defendant Paul J. Manafort, Jr.'s submissions (Docs. 395, 397, 399) noting objections to the government's proposed exhibits.  In those submissions, Manafort generally provides only a citation to a rule of evidence or some identification of the basis for his objection, so the government is not able to necessarily respond with specificity or detail in each instance.  Manafort's objections, however, can be grouped by the rule of evidence cited, and they generally fall into one of the following categories:  (A) relevance/prejudice;  (B) hearsay; (C) authentication; and (D) Rule 1006/summary charts.[1]

Below, the government sets forth the applicable law as to each rule and addresses various exhibits to illustrate the application of these rules.  That is, the government submits this brief to set forth the relevant guiding principles, not to address each of the defendant's objections as the defendant has objected to more than 1000 of the government's proposed exhibits.  At the upcoming status conference, the Court may choose to address the issues and exhibits in groups, allowing the parties to apply the Court's rulings to similarly situated exhibits.  The government also addresses

---

[1] The government understands that the defense has now withdrawn its objections that certain documents do not constitute business records.

1

below the defendant's objection to various stipulations proposed by the government on the grounds

that the exhibits at issue in the stipulations are cumulative.

**A.  Relevance/Prejudice—Federal Rules of Evidence 401, 402, and 403**

Manafort objects to a number of proposed exhibits under Federal Rules of Evidence 401,

402, and 403.  Rule 401 provides that evidence is relevant if "(a) it has any tendency to make a

fact more or less probable than it would be without the evidence; and (b) the fact is of consequence

in determining the action."  Fed. R. Evid. 401.  Relevant evidence is admissible unless otherwise

precluded by law.  Fed. R. Evid. 402.  Under Rule 403, "[t]he court may exclude relevant evidence

if its probative value is substantially outweighed by a danger of one or more of the following:

unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or

needlessly presenting cumulative evidence."  Fed. R. Evid. 403.  "Unfair prejudice" means "an

undue tendency to suggest decision on an improper basis . . . ."  *Old Chief v. United States*, 519

U.S. 172, 180 (1997) (internal quotation marks omitted).  "In balancing probative value against

prejudicial effect, [the D.C. Circuit] lean[s] toward admitting evidence in close cases."  *United

States v. Brown*, 16 F.3d 423, 431 (D.C. Cir. 1994) (internal quotation marks omitted).

Manafort asserts relevancy and prejudice objections to a number of government exhibits,

including telephone record, emails, memoranda, photographs, and other evidence related to his

expenditures from unreported and untaxed income.[2]  While the government is prepared to address

these issues at the upcoming status conference, many of these exhibits are relevant on their face.

---

[2] At trial, the government will introduce through the defendant's bookkeeper and tax preparers various general ledgers kept with respect to Manafort's personal and business expenses and to which generally there is no objection.  The defendant has objected to the various DMP Financial Statements also created by Manafort's bookkeeper (Government Exhibits 26, 34, 42, 49, 50, 76, 77, 78, and 79), and the government does not presently intend to admit those exhibits during its case-in-chief, but reserves the right to seek admission based on cross-examination of various witnesses at trial.

For example, the defendant objections on "Relevance FRE 402/403" grounds to Government Exhibits 5, 6, 7, 8, and 9.  These exhibits contain telephone records relating to Manafort's communications, and efforts to communicate, with the individual identified as Person D1 in the Count Six and Seven obstruction charges.  These records are direct evidence of Manafort's obstruction of justice and there can be little question as to their relevance.

### 1.   Memoranda and Emails relating to Political and Lobbying Work

The defendant has also objected on relevance/prejudice grounds to a series of memoranda, many written by the defendant to government officials in Ukraine relating to his work there.  For example, the defendant objects to Government Exhibits 500 and 501, both memoranda from Manafort to Rinat Akhmetov, a prominent Ukrainian businessman (and oligarch) who first approached Manafort about working for the Party of Regions.  The memo in Government Exhibit 500 is entitled: Major Development in US Government Position on Ukraine Re-privatization, and the memo in Government Exhibit 501 is entitled: "Evolution of US Policy to Ukraine." These memos are relevant to establish the relationship between Manafort and Akhmetov, the fact that their relationship dates back to 2005 (when Manafort first began working in Ukraine), and the fact that Manafort is providing advice to Akhmetov on U.S. policy relating to Ukraine.  Akhmetov was a key supporter, and financier, of the Party of Regions, the principal political party that funded Manafort's work in the Ukraine.

The defendant also objects to the following exhibits (among others) on relevance/prejudice grounds (and on some occasions other grounds)—all of which relate to Manafort's election and lobbying work in the Ukraine and are thus relevant to the FARA, money laundering, and tax charges:  Government Exhibits 514, 515, 520, 565, 570, 573, 576, 1032, 1054, 1070, 1250 and 1727.  These exhibits, and Manafort's work in the Ukraine, pertain to the tax charges because

Manafort used some portion of these funds, funneled through overseas accounts, to make direct payments to vendors in the United States without declaring that income on his U.S. tax returns.

## 2. Vendor Payments

A substantial number of the defendant's remaining objections on relevance/prejudice grounds deal with the exhibits establishing the defendant's expenditures on goods, services, and property through wire transfers from foreign bank accounts to bank accounts he controlled and to United States vendors.   These include invoices, charts summarizing those payments, and photographs.[3]  At the September 5, 2018, pretrial conference, the Court addressed this issue, and, consistent with the Court's instruction, the government does not plan to unduly highlight this evidence at trial.  The government has proposed that relevant evidence relating to more than half of the vendors at issue be admitted by stipulation.

Courts have consistently held in money laundering, tax, and other financial crime cases that evidence of a defendant's lavish spending and lifestyle is relevant to his intent and motive and is not unduly prejudicial.  *See, e.g.*, *United States v. Cohen*, 539 Fed. Appx. 743, 745 (9th Cir. 2013) ("The district court did not abuse its discretion by admitting evidence about Cohen's lavish lifestyle because a description of his lifestyle was probative of the manner in which Cohen

---

[3] For example, the defendant objects to the following: Government Exhibits 314 and 315 (photographs of work completed at N. Arlington property), Government Exhibit 320 (photograph of Mercedes–Benz), Government Exhibits 329 to 334 and 338 to 346 (photographs of work completed at the Bridgehampton property), Government Exhibit 679 (photographs of clothing seized at Manafort's residence with Alan Couture labels), Government Exhibit 680 (photographs of clothing seized at Manafort's residence with House of Bijan labels), and Government Exhibit 681 (photographs of House of Bijan watch seized at Manafort's residence).  Each of these exhibits contains photographs of the personal items and/or services that Manafort purchased directly from his overseas accounts; accordingly, these photographs are direct evidence of his unreported income.  Government Exhibits 801, 802, and 803 are photographs of the apartment and other residential buildings that Manafort purchased with overseas accounts—which are also evidence of his unreported income.

conducted his [money laundering, wire fraud, and tax evasion] scheme and relevant to whether the money he received was an investment, a loan, or funds he spent rather than funds he intended to repay."); *United States v. Arledge*, 553 F.3d 881, 895 (5th Cir. 2008) (holding that evidence of the defendant's lavish spending was properly admitted to prove money laundering counts); *United States v. Blanchard*, 618 F.3d 562, 569-70 (6th Cir. 2010) (holding that evidence of defendant's personal spending on automobiles, gambling, and firearms "is pertinent to whether an offense has been committed under § 7202, since it bears on the willfulness of the defendant's failure to pay over withheld tax to the government"); *United States v. Simonelli*, 237 F.3d 19, 30 (1st Cir. 2001) (describing as "strong evidence" of tax fraud "the expenditures of considerable sums of money for his personal benefit: homes, country clubs, cars and other accoutrements of wealth, with little of the sums to pay for these things reported to tax authorities as his income or as a loan to him").

Further, limited photographs of and invoices for Manafort's purchases are not unduly prejudicial under Fed. R. Evid. 403 simply because they reveal lavish spending.  The photographs and invoices make clear that the expenditures were for personal purposes and assist the government in telling the jury a "comprehensible story."  *United States v. Hazelrigg*, 654 Fed. Appx. 341, 344 (9th Cir. 2016) ("The government properly used photographs of the residence to help the jury keep the properties straight and to tell a comprehensible story.").  *See United States v. Conley*, 826 F.2d 551, 560 (7th Cir. 1987) (upholding, on plain-error review, the admission of a photograph of the defendant's "lovely home in a country setting" in an evasion of payment case).

### B. <u>Hearsay—Federal Rules of Evidence 801, 802, 803, and 805</u>

Manafort objects to a series of documents, many of them emails, on hearsay grounds, citing Rules 802 and 805.  Generally, these objections are overcome because the documents will not be admitted for the truth of the matter, or they fall within an exception to the hearsay rule, principally as statements by Manafort's agents pursuant to Rule 801(d)(2)(D) or as coconspirator statements pursuant to Rule 801(d)(2)(E).  Other emails are admissible as business records pursuant to Rule 803(6).  Given the number of hearsay objections lodged by the defense, and the fact-specific nature of the analysis, the government does not address those objections here, but rather sets forth the general grounds under which many of the challenged documents should be admitted.

### 1. **Statements by the Party's Agent or Employee**

An opposing party's statement offered against the opposing party is not hearsay, Fed. R. Evid. 801(d)(2), and this includes a statement "made by a person whom the party authorized to make a statement on the subject," Fed. R. Evid. 801(d)(2)(C); a statement "made by the party's agent or employee on a matter within the scope of that relationship and while it existed," Fed. R. Evid. 801(d)(2)(D); and a statement "made by the party's coconspirator during and in furtherance of the conspiracy," Fed. R. Evid. 801(d)(2)(E).  "The statement must be considered but does not by itself establish the declarant's authority under (C); the existence or scope of the relationship under (D); or the existence of the conspiracy or participation in it under (E)." Fed. R. Evid. 801(d).

With respect to Rule 801(d)(2)(D), the rule "requires neither adoption nor ratification but only that the statement is offered 'against a party,' and it is 'by the party's agent or servant concerning a matter within the scope of the agency or employment, made during the existence of the relationship.'" *English v. District of Columbia*, 651 F.3d 1, 7 (D.C. Cir. 2011) (internal citations omitted).  *See Geleta v. Gray*, 645 F.3d 408, 415 (D.C. Cir. 2011) (statements by

employees concerning matters within the scope of their employment are admissible against the employer).  In determining the applicability of Rule 801(d)(2)(D), the court must "undertake a fact-based inquiry applying common law principles of agency." *United States v. Bonds*, 608 F.3d 495, 504 (9th Cir. 2010) (internal quotation marks omitted).  "An agent is one who 'act[s] on the principal's behalf and subject to the principal's control.'" *Id*. at 506 (quoting Restatement (Third) Agency § 1.01 (2006)).  "To form an agency relationship, both the principal and the agent must manifest assent to the principal's right to control the agent," *id*. (citing Restatement (Third) Agency § 1.01 (2006)), but "it is not necessary to the formation of a relationship of agency that the agent manifest assent to the principal, as when the agent performs the service requested by the principal following the principal's manifestation, or when the agent agrees to perform the service but does not so inform the principal and does not perform," Restatement (Third) Agency § 1.01 (2006).

Here, the evidence establishes, by at least a preponderance of the evidence, *see Bourjaily v. United States*, 483 U.S. 171, 175-76 (1987), that Company A, Company B, Company C, Company D, the Hapsburg group, and a United States law firm, among others, were acting on Manafort's behalf and subject to Manafort's control.  For example, Manafort wrote to Ukraine President Victor Yanukovich that he was "managing" a public and government relations program for Yanukovich that Manafort "created and paid for [him]self."  Government Exhibit 532 at 1. Manafort reiterated that he would "be the manager of this process" and "the point for all of these services."  Government Exhibit 532 at 3.  In other memoranda, Manafort made clear to Yanukovich that he was directing the work of the Hapsburg Group and U.S.-based consultants, who were engaging in government relations and public relations campaigns for Yanukovich.  *See, e.g.*, Government Exhibit 606; Government Exhibit 616.

Manafort, often through Rick Gates, consistently provided firm instructions to these "agents" in a number of documents. *E.g.*, Government Exhibit 503. *See United States v. Paxson*, 861 F.2d 730, 734-35 (D.C. Cir. 1988) (where declarant was acting not directly for the defendant's corporation but for a separate corporation "formed and controlled by the defendant and his family corporation," declarant was an agent of the defendant for purposes of Rule 801(d)(2)(D)).  For example, on April 8, 2013, Gates wrote to employees at Company A and Company B, noting: "attached [is] the strategy document submitted to Kyiv and approved.  Now we need to implement it," and he proposed a call to discuss this issue further (the attached document is entitled "Public Affairs – Ukraine Strategy").  Government Exhibit 1806.  Similarly, on June 24, 2013, Gates provided specific instructions to Company A and Company B employees to "bottle up the [Durbin] resolution and to not have it move forward."  Government Exhibit 1833.

With respect to the work of the U.S. law firm, in 2012, on behalf of President Yanukovych and the Government of Ukraine's Ministry of Justice, Manafort solicited that firm to write a report evaluating the trial of Yanukovych's political opponent, Yulia Tymoshenko.  Manafort caused Ukraine to hire the law firm so that its report could be used in the United States and elsewhere to defend the Tymoshenko trial and argue that President Yanukovych had not engaged in selective prosecution.  Manafort retained Company C, a public relations firm, to prepare an extensive media roll-out plan for the law firm report.  As with the other aspects of the U.S. lobbying scheme, Manafort regularly reported to President Yanukovych and other representatives of the Government of Ukraine on the law firm's work and Company C's lobbying plan.  For example, in a July 27, 2012, memorandum to President Yanukovych's Chief of Staff Sergei Lyovochkin, Manafort reported on "the global rollout strategy for the [law firm's] legal report, and provide[d] a detailed plan of action[ ]" which included   a step-by-step lobbying outreach in the United States.

Government Exhibit 2065.

Manafort also directed the law firm's efforts. As reflected in an internal law firm memorandum, dated May 2, 2012, Manafort rejected the Ukrainian Law Expert proposed by the law firm. Government Exhibit 2025. And prior to the release of the law firm's report, the lead lawyer requested that a copy of a "Russian version" of the report be sent to Manafort before it was released to their client (the Ukraine Ministry of Justice). Government Exhibit 2086. Finally, before the law firm report was finalized, Manafort emailed the lead law firm lawyer, noting his concern that the report is too critical of Ukraine and soliciting his ideas on how to deal with this "potential catastrophe." Government Exhibit 2092.

### 2. Coconspirator Statements

Other statements, including emails, are admissible as coconspirator statements pursuant to Rule 801(d)(2)(E). Under that rule, a statement is not hearsay if it "is offered against an opposing party and . . . was made by the party's coconspirator during and in furtherance of the conspiracy." Fed. R. Evid. 801(d)(2)(E). *See United States v. Moore*, 651 F.3d 30, 84 n.21 (D.C. Cir. 2011). Statements are made in furtherance of a conspiracy if they "can reasonably be interpreted as encouraging a co-conspirator or other person to advance the conspiracy, or as enhancing a co-conspirator or other person's usefulness to the conspiracy." *United States v. Tarantino*, 846 F.2d 1384, 1412 (D.C. Cir. 1988). Such statements include "those that keep a coconspirator updated on the status of the business, motivate a coconspirator's continued participation, or provide background information on key conspiracy members." *United States v. Carson*, 455 F.3d 336, 367 (D.C. Cir. 2006) (citations and internal quotation marks omitted). Manafort conspired with, among others, Richard Gates and Konstantin Kilimnik as to various charged crimes, and the government will establish the existence of these conspiracies at trial.

### 3.  Business Records Exception

Finally, Rule 803(6), the business records exception to the hearsay rule provides an additional basis for the admission of various emails and other documents to which the defendant objects.  The rule provides that a record of an act or event is not excluded if "(A) the record was made at or near the time by—or from information transmitted by—someone with knowledge; (B) the record was kept in the course of a regularly conducted activity of a business, organization, occupation, or calling, whether or not for profit; (C) making the record was a regular practice of that activity; (D) all these conditions are shown by the testimony of the custodian or another qualified witness, or by a certification that complies with Rule 902(11) or (12) or with a statute permitting certification; and (E) the opponent does not show that the source of information or the method or circumstances of preparation indicate a lack of trustworthiness."  Fed. R. Evid. 803(6).  *See United States v. Cone*, 714 F.3d 197, 219 (4th Cir. 2013).

Courts have admitted emails pursuant to Rule 803(6).  Although it is not sufficient under Rule 803(6) to show simply that a business keeps and receives e-mails, "properly authenticated e-mails may be admitted into evidence under the business records exception."  *Cone*, 714 F.3d at 220.  "An email can qualify for admission under Rule 803(6), so long as the proponent shows that the email was 'kept in the course of a regularly conducted activity' and was generated as part of a 'regular practice' of that activity."  Charles Alan Wright et al., 30B Fed. Prac. & Proc. Evid. § 6864 (2018 ed.).

### C.  <u>Authentication—Federal Rule of Evidence 901</u>

The defendant has made a series of objections based on "authentication," pursuant to Fed. R. Evid. 901.  "[T]he issue of authenticity is very fact-specific."  *United States v. Vidacak*, 553 F.3d 344, 350 (4th Cir. 2009).  The burden of authentication is not particularly "demanding," *id.*;

"a proponent need not establish a perfect chain of custody or documentary evidence to support their admissibility," *id*. *See United States v. Hassan*, 742 F.3d 104, 133 (4th Cir. 2014) ("the burden to authenticate under Rule 901 is not high") (internal quotation marks omitted).

Rule 902 lists items of evidence that are self-authenticating; they require no extrinsic evidence of authenticity in order to be admitted.  Included in this list are certified domestic records of a regularly conducted activity.  Thus, a certification of the custodian or another qualified person can establish that a domestic record meets the requirements of Rule 803(6)(A)-(C) (as long as the proponent gives the adverse party reasonable written notice before trial of the intent to offer the record and makes the record and certification available for inspection so that the party has a fair opportunity to challenge them).  Fed. R. Evid. 902(11).  The custodian of records of a regularly conducted activity can certify in accordance with Rule 902(11) that an email satisfies the criteria of Fed. R. Evid. 803(6).  Paul W. Grimm et al., *Authenticating Digital Evidence*, 69 Baylor L. Rev. 1, 13 (Winter 2017).

By way of example, Manafort challenges the authenticity of Government Exhibits 520, 521, and 522, outlines and a memorandum, each of which was obtained from electronic devices seized during the court-authorized search of the defendant's residence in July 2017 (as were Government Exhibits 618, 639, 645, 730 and 818).  Other exhibits challenged on authenticity grounds were obtained during the execution of court-authorized search warrants on particular email accounts (including Government Exhibits 578, 584, 586, 587, 630, 636, 638, 643, 644, 651-657, 663, 686, 723, 808, 815, 817, 823, 824, and 826 among others).  The government will authenticate these and all of the other proposed exhibits at trial.

**D.  Summaries and Charts—Federal Rule of Evidence 1006**

Finally, Manafort lodges more than 20 objections on the ground that the proposed exhibits are not a "proper summary under FRE 1006."  *See* Doc. 399 at 5.  Rule 1006 provides that a proponent of evidence "may use a summary, chart, or calculation to prove the content of voluminous writings . . . that cannot be conveniently examined in court.  The proponent must make the originals or duplicates available for examination or copying, or both, by other parties at a reasonable time and place.  And the court may order the proponent to produce them in court."  Fed. R. Evid. 1006.  A summary "'can help the jury organize and evaluate evidence which is factually complex and fragmentally revealed in the testimony of a multitude of witnesses throughout the trial.'"  *United States v. Mitchell*, 816 F.3d 865, 876 (D.C. Cir.) (quoting *United States v. Lemire*, 720 F.2d 1327, 1348 (D.C. Cir. 1983)), *cert. denied*, 137 S. Ct. 532 (2016).  "To be admissible, the summary must be 'accurate and nonprejudicial; and the witness who prepared the summary should introduce it.'"  *Mitchell*, 816 F.3d at 876 (quoting *United States v. Fahnbulleh*, 752 F.3d 470, 479 (D.C. Cir. 2014)).  *See also United States v. Hemphill*, 514 F.3d 1350, 1358 (D.C. Cir. 2008) ("To be admissible, a chart must summarize documents so voluminous as to make comprehension difficult and . . . inconvenient, although not necessarily literally impossible; the documents themselves must be admissible, although the offering party need not actually enter them; the party introducing the chart must make the underlying documents reasonably available for inspection and copying; and the chart must be accurate and nonprejudicial.") (internal quotation marks omitted).

Rule 1006 permits the admission of "charts into evidence as a surrogate for underlying voluminous records"; its purpose "is to reduce the volume of written documents that are introduced into evidence by allowing in evidence accurate derivatives from the voluminous documents."

*United States v. Janati*, 374 F.3d 263, 272 (4th Cir. 2004).  *See Hemphill*, 514 F.3d at 1359 ("[T]he point of Rule 1006 is to avoid introducing all the documents.  As long as a party has laid a foundation for the underlying documents, a chart summarizing them can itself be evidence under Rule 1006.").

Notwithstanding Manafort's objections, this is the prototypical case for the admission of summary charts under Rule 1006: it is a complex financial case, *see Hayes*, 322 F.3d at 799 (summary charts correctly admitted in tax case because "numerous witnesses testified about multiple errors in 24 different tax returns; consequently, the charts may have aided the jury in organizing the information it received"); the underlying records summarized in the government's charts are indisputably too voluminous to be conveniently examined in court, *see United States v. Blackwell*, 436 Fed. Appx. 192, 199 (4th Cir. 2011) (summary charts correctly admitted where underlying evidence consisted of large number of telephone records); those underlying records are themselves admissible and were provided to the defense, *see id.* (underlying telephone records were admissible); *United States v. Loayza*, 107 F.3d 257, 264 (4th Cir. 1997) (defense counsel had pretrial access to the original documents from which the summary charts were prepared); and government agents prepared the charts and will be subject to cross-examination, *see id.* at 264 (defense counsel had an opportunity to cross-examine the testifying agent); *Lemire*, 720 F.2d at 1348 ("[A] full opportunity to cross-examine . . . alleviat[es] any danger of inaccuracy or unfair characterization.").

Manafort specifically objects to a series of "vendor charts" that summarize a number of vendor invoices and bank records.  Government Exhibit 325, for example, summarizes landscaping services provided at Manafort's Bridgehampton, New York, property for the period from March 2010 to November 2014, involving more than 50 invoices and payments of approximately

$450,000.  This chart and others like it meet the requirements of Rule 1006 and should be admitted accordingly.  Though the government has summarized all transactions with vendors in charts to facilitate the testimony of certain witness, where the underlying records are not voluminous, the government will not seek to either admit these exhibits or display them to the jury.

Government Exhibits 421, 422, and 423, to which the defendant objects, constitute flow chart diagrams that trace the money Manafort used to purchase various real estate properties back to his overseas accounts (again evidencing his untaxed income).  The government proposes to show these diagrams to the jury as demonstrative exhibits under Rule 611, but will not seek to admit them as exhibits (and will not seek to have them made available to the jury during their deliberations).  The government's proposed tax expert also will introduce several demonstrative exhibits, which the government proposes to display to the jury, but which will not be admitted into evidence.

### E.  Stipulations

Finally, with respect to the various proposed stipulations proposed by the government, including those establishing certain categories of documents as business records, the defense has lodged a series of objections noting that the exhibits are cumulative.  We understand from the defense that, should the Court overrule these objections, the defense will not challenge the admission of these exhibits pursuant to Rule 803(6).

* * * * *

14

As noted, the government files this trial brief principally to set forth the governing principles that govern the defendant's objections, and it will be prepared to further address each of the specific objections at the upcoming status conference.


Respectfully submitted,

ROBERT S. MUELLER, III
Special Counsel

Dated: September 12, 2018       By:      _/s/ Andrew Weissmann_____
                                                    Andrew Weissmann
                                                    Jeannie S. Rhee (D.D.C. Bar No. 464127)
                                                    Greg D. Andres (D.D.C. Bar No. 459221)
                                                    U.S. Department of Justice
                                                    Special Counsel's Office
                                                    950 Pennsylvania Avenue NW
                                                    Washington, D.C. 20530
                                                    Telephone: (202) 616-0800