UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA

v.

PAUL J. MANAFORT, JR.,

Defendant.

Crim. No. 17-201-1 (ABJ)

**UNDER SEAL**

**GOVERNMENT'S SUBMISSION IN SUPPORT OF ITS BREACH DETERMINATION**

The United States of America, by and through Special Counsel Robert S. Mueller, III, respectfully makes this submission to summarize the basis for its determination that defendant Paul J. Manafort, Jr., has breached his plea agreement by making false statements. The government intends to rely on the defendant's false statements as a sentencing issue under 18 U.S.C. § 3553. We are prepared to prove the basis for the defendant's breach at a hearing that will establish each false statement through independent documentary and testimonial evidence, including Manafort's subsequent admissions. We separately submit a motion to permit filing under seal the factual material that relates to pending investigations or uncharged individuals.

**A. Factual Background**

On September 14, 2018, Manafort pleaded guilty to a superseding information, charging him with two conspiracy counts that together encompassed all the criminal conduct alleged in the superseding indictment in this district. As the Court is aware, that criminal conduct occurred for more than a decade and up through April 2018.

Manafort's plea agreement required that he cooperate "fully, truthfully, completely, and forthrightly" with the government. Plea Agreement, Doc. 422 ¶ 8; Plea Hr'g Tr. 39:10-17, 48:11-16, Sept. 14, 2018. The plea agreement further provides that if the defendant fails "specifically to perform or to fulfill completely each and every one" of his obligations under the agreement, or "engages in any criminal activity prior to sentencing or during his cooperation," the defendant will be in breach of the agreement. Plea Agreement, Doc. 422 ¶ 13; The agreement further provides:

> [s]hould it be judged by the Government in its sole discretion that the defendant has failed to cooperate fully, has intentionally given false, misleading or incomplete information or testimony, has committed or attempted to commit any further crimes, or has otherwise violated any provision of this agreement, the defendant will not be released from his pleas of guilty, but the Government will be released from its obligations under this agreement, including (a) not to oppose a downward adjustment of two levels for acceptance of responsibility described above... and (b) to file the motion for a downward departure for cooperation described above.

Id. ¶ 13. A breach leaves intact all the obligations of the defendant as well as his guilty plea, but relieves the government of its promises under the agreement. Id. ¶¶ 4B, 8, & 13. Finally, the agreement provides that the government "shall be required to prove a breach of the Agreement only by good faith." Id. ¶ 13.

Manafort met with the Special Counsel's Office and the Federal Bureau of Investigation (FBI) on twelve occasions; three of these meetings occurred prior to the defendant entering into his plea agreement. At four of the post-plea meetings, prosecutors from other Department of Justice components attended. Manafort was represented by defense counsel at every meeting with the government. Manafort also was called to testify before the grand jury on two occasions, October 26 and November

2, 2018.

On November 8, 2018, the government informed defense counsel that it believed that Manafort had lied in multiple ways and on multiple occasions. It offered to provide further details and requested the defense to make any responsive submissions, orally or in writing, before the government made any final determination. The defense then met or spoke with the government on several occasions, where the government enumerated the basis for its views. These communications occurred on November 13 -- 16 and 26. At the defense's request, the government agreed to seek an extension from the Court of the deadline for a joint status report, from November 16 to the 26. The government would not agree to an additional extension. In none of the communications with Manafort's counsel was any factual or legal argument made as to why the government's assessment of Manafort's credibility was erroneous or made without good faith.

**B. Legal Standard**

The principal question before this Court, should Manafort contest the government's determination, is whether the government has acted in good faith in determining that Manafort breached his obligations under the plea agreement by intentionally providing false, misleading, or incomplete information. In assessing the breach of a plea agreement, courts "look to principles of contract law," because "'a plea agreement is a contract.'" *United States v. Henry*, 758 F.3d 427, 431 (D.C. Cir. 2014) (quoting *United States v. Jones*, 58 F.3d 688, 691 (D.C. Cir. 1995)). Where, as here, the plea agreement sets forth a standard for the government to prove a

defendant's breach, courts rely on basic contract principles and apply the contractual standard—namely, that the government must prove it determined the defendant's breach "by good faith." Plea Agreement ¶ 13; *see United States v. Shah*, 263 F. Supp. 2d 10, 32-33 (D.D.C. 2003) (applying preponderance-of-the-evidence standard where the plea agreement provided for it).

In describing the relevant facts, the government may proceed by proffer, *cf. United States v. Smith*, 79 F.3d 1208, 1210 (D.C. Cir. 1996) (government may proceed by proffer at detention stage), but is prepared to prove the following facts through documentary evidence and witness testimony at a hearing.

C. **Factual Basis for Breach**

The defendant breached his plea agreement in numerous ways by lying to the FBI and Special Counsel's Office. The principal lies relate to, among other things: (1) Manafort's interactions with Konstantin Kilimnik; (2) Kilimnik's participation in count two of the superseding information; (3) a wire-transfer to a firm that was working for Manafort; (4) information pertinent to another Department of Justice investigation; and (5) Manafort's contact with Administration officials.

We briefly set forth each in turn.

1. **Interactions With Kilimnik**

[redacted]

Over the course of several interviews, Manafort lied about the fact and frequency of [redacted]

[redacted]

Manafort falsely told investigators that after [redacted]

In fact, Manafort [redacted]. The evidence of the above includes electronic communications (including detailed descriptions [redacted]), draft [redacted], and travel records. After being told of such evidence, Manafort conceded that he and Kilimnik discussed or may have discussed [redacted] at each meeting.

- [redacted] <u>Meeting With Kilimnik</u>

Manafort lied repeatedly about [redacted], first denying that he [redacted]. During the course of his debriefings, Manafort provided different explanations for [redacted]. Manafort first denied that he had [redacted],

claiming that he (Manafort) [redacted].
At his next interview, Manafort was informed of evidence that [redacted]. Manafort then acknowledged [redacted].

[redacted]

[redacted]. However, evidence (including email communications and testimonial evidence) demonstrates that [redacted].

2. **Kilimnik's Role In The Obstruction Conspiracy**

After signing the plea agreement, Manafort denied that Kilimnik was part of a criminal conspiracy to obstruct justice by reaching out to two witnesses to tailor their testimony to a false narrative that would exculpate them of a Foreign Agents Registration Act violation. Yet on September 14, 2018, Manafort pleaded guilty to count two of the superseding information, charging him with conspiring with Kilimnik to obstruct justice between February and April 2018 by trying to influence the testimony of the two witnesses. Superseding Criminal Information, Doc. 419 at

33-36; Statement of the Offenses and Other Acts, Doc. 423 ¶¶ 44-46; Plea Hr'g Tr.32:15 – 33:16, 34:17-20. When asked whether his prior plea and sworn admissions were truthful, Manafort conceded that Kilimnik had conspired with him.

**3. Payment To A Firm Working For Manafort**

After signing the plea agreement, Manafort lied about a $125,000 payment made toward a debt incurred by Manafort to a firm working for Manafort in 2017. Records establish that the payment came from another firm (Firm A), which performed work for an entity (Entity B). Manafort has a long relationship with the heads of Firm A and Entity B. Entity B had engaged Firm A at Manafort's suggestion to perform certain work. Under the terms of the contract, Firm A was to receive a 6% commission on expenditures made to it from Entity B.

Manafort made several inconsistent statements to the government about the payment: that it was repayment of a debt owed to Manafort by the head of Entity B (whereas the banking records showed the payment came from Firm A); that it was income to Manafort for work performed for Firm A in the past; and that it was a loan from Firm A to Manafort.

[redacted] Other documentary and/or testimonial evidence establishes that: [redacted]; and the contract between Firm A and Entity B contains a provision that the full 6% commission will go to Firm A.

4. **Another DOJ Investigation**

During meetings with the government prior to pleading guilty and signing his plea agreement, Manafort provided information about [redacted] that was pertinent to an investigation in another district. However, after signing the plea agreement, Manafort told the government (including Department of Justice personnel handling this investigation) a different and exculpatory version of the events. He then subsequently changed that version in order to more closely conform to his earlier statements, after defense counsel in the government's presence showed him notes that defense counsel represented had been taken of the earlier proffer session.

5. **Contact With The Administration**

After signing the plea agreement, Manafort stated he had no direct or indirect communications with anyone in the Administration while they were in the Administration and that he never asked anyone to try to communicate a message to

anyone in the Administration on any subject matter. Manafort stated that he spoke with certain individuals before they worked for the Administration or after they left the Administration.

The evidence demonstrates that Manafort lied about his contacts. The evidence demonstrates that Manafort had contacts with Administration officials. For instance, in a text exchange from May 26, 2018, Manafort authorized a person to speak with an Administration official on Manafort's behalf. Separately, according to another Manafort colleague, Manafort said in February 2018 that Manafort had been in communication with a senior Administration official up through February 2018. A review of documents recovered from a search of Manafort's electronic documents demonstrates additional contacts with Administration officials.

* * * * *

As summarized above, in his interviews with the Special Counsel's Office and the FBI, Manafort told multiple discernible lies – these were not instances of mere memory lapses. If the defendant contends the government has not acted in good faith, the government is available to prove the false statements at a hearing. Further, to the extent that the defendant contests specific false statements that implicate ongoing investigations, the government is available to provide relevant evidence to the Court *ex parte*.

Respectfully submitted,

ROBERT S. MUELLER, III
Special Counsel

Dated: December 7, 2018

By: /s/ Andrew Weissmann
Andrew Weissmann
Jeannie S. Rhee (D.D.C. Bar No. 464127)
Greg D. Andres (D.D.C. Bar No. 459221)
U.S. Department of Justice
Special Counsel's Office
950 Pennsylvania Avenue NW
Washington, DC 20530
Telephone: (202) 616-0800

*Attorneys for the United States of America*