IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| United States of America, | ) | Criminal Action |
| | ) | No. 17-CR-201 |
| Plaintiff, | ) | |
| | ) | SCHEDULING CONFERENCE |
| vs. | ) | UNSEALED PER 12-11-18 |
| | ) | ORDER ON THE RECORD |
| Paul Manafort, Jr., | ) | Washington, DC |
| | ) | Date:  November 30, 2018 |
| Defendants. | ) | Time:  9:30 a.m. |
| | ) | |

_____

TRANSCRIPT OF SCHEDULING CONFERENCE
HELD BEFORE
THE HONORABLE JUDGE AMY BERMAN JACKSON
UNITED STATES DISTRICT JUDGE

_____

A P P E A R A N C E S

For Plaintiff:     ANDREW WEISSMANN
                   GREG D. ANDRES
                   JEANNIE S. RHEE
                   U.S. Department of Justice
                   Special Counsel's office
                   950 Pennsylvania Avenue NW
                   Washington, D.C.  20530
                   202-514-1746
                   Email:  Aaw@usdoj.gov
                   Email:  Gda@usdoj.gov
                   Email:  Jsr@usdoj.gov


For Defendant:     KEVIN M. DOWNING
                   815 Connecticut Avenue, N.W.
                   Suite 730
                   Washington, D.C. 20006
                   (202) 754-1992
                   Email:  Kevindowning@kdowninglaw.com
                   THOMAS EDWARD ZEHNLE
                   Law Office of Thomas E. Zehnle
                   601 New Jersey Avenue, NW
                   Suite 620
                   Washington, DC 20001
                   (202) 368-4668
                   Email:  Tzehnle@milchev.com

ALSO PRESENT:          Jeff Weiland, FBI Special Agent


Court Reporter:        Janice E. Dickman, RMR, CRR
                       Official Court Reporter
                       United States Courthouse, Room 6523
                       333 Constitution Avenue, NW
                       Washington, DC  20001
                       202-354-3267

                              *   *   *

1          THE COURTROOM DEPUTY:  Your Honor, this morning we

2     have criminal case No. 17-201-1, the United States of America

3     v. Paul J. Manafort, Jr.  The defendant's presence has been

4     waived for this proceeding, Your Honor.

5          Will counsel for the parties please approach the

6     lectern, identify yourselves for the record.

7          MR. WEISSMANN:  For the government, Andrew Weissmann,

8     Jeannie Rhee, Greg Andres, and Special Agent Jeff Weiland.

9          THE COURT:  All right.  Good morning.

10          MR. DOWNING:  Good morning.  Kevin Downing, Thomas

11     Zehnle, and Tim Wang for Mr. Manafort.

12          THE COURT:  All right.  Good morning.

13          We're here because the parties filed a joint status

14     report on November 26th and asked that a sentencing date be

15     set.  In the event that anyone is confused, this is not it.

16     The parties also asked that we set dates for the filing of

17     sentencing submissions.

18          We need to set a sentencing date to trigger the

19     preparation of a presentence report.  That takes at least 70

20     days, which takes us to February 8th.  And I think we might

21     need to add in a little additional time, since that period

22     includes the holidays.  So I think an exact 70 days is going to

23     put too much pressure on the probation office.  Plus, we need

24     to build in time for the possibility that either party may

25     object to something in the draft report and we have to complete

1     the whole process laid out in Rule 32.

2              Ordinarily I would have just done that calculation

3     and set a sentencing date, but I scheduled this hearing because

4     I felt I needed some clarification about the nature of the

5     pretrial submissions that you referenced in your report before

6     I could establish a schedule that would give us ample time to

7     complete it.

8              So I have a few questions for both sides.  I guess

9     I'll start with the prosecution.

10             The status report asks that I set a schedule for any

11    presentencing submissions and motions.  And so my first

12    question is, is the government planning to file any motions?

13             MR. WEISSMANN:  No, the government is not intending

14    to do that.

15             THE COURT:  Okay.  The report also sets out the

16    government's contention that the defendant's in breach of the

17    plea agreement.  And I'm not intending to get into the merits

18    of that controversy today at all, but I do have a few questions

19    about what it is you're asking me to do with that information.

20             You said in the report, "A breach relieves the

21    government of any obligations it is has under the agreement,

22    including its agreement to a reduction in the guidelines for

23    acceptance of responsibility."

24             Now, I know that whether you filed a 5K motion was

25    completely within your discretion anyway, so that wasn't an

1    obligation under the plea agreement.  But what obligations in

2    particular are you going to contend that you've been relieved

3    of?

4              MR. WEISSMANN:  So, there are a number of obligations

5    that we are relieved of, and the question that we were still

6    debating is what the consequences will be.  But one would be,

7    as set out in the plea agreement, it is no longer an obligation

8    to agree to one, two, or three points for acceptance of

9    responsibility.  And we anticipated that in our sentencing

10   submission to the Court, that we would set out our position at

11   that time with respect to acceptance of responsibility.

12             THE COURT:  So you're not sure yet how -- what

13   exactly you're going to be asking me to do with respect to

14   that?

15             MR. WEISSMANN:  Exactly.  We will look at the facts

16   and the law as it relates to the charges in this case to

17   determine what we think the consequences are of the breach with

18   respect to that aspect.  We do think that the plea agreement is

19   clear that we have that ability to do that.

20             A second way in which the breach would affect our

21   submission is that we will set out for the Court, as we

22   understand it's our obligation, is to provide the Court with

23   all pertinent information about the nature of the defendant's

24   conduct that could be pertinent to the 3553(a) factors that the

25   Court would consider at the time of sentence.  Thus, we

1    anticipate that our sentencing submission will set out the

2    conduct that happened before signing the cooperation agreement,

3    as well as the conduct that led to the conclusion that was set

4    forth in the status report.

5              If I can digress for one moment, the reason that we

6    think -- we put in the phrase about scheduling motions, is that

7    we can anticipate two potential motions that could be raised by

8    the defense in connection with this.  One would be we,

9    obviously, don't have the presentence report at this point and,

10   actually, both sides could have objections that would be

11   litigated in a hearing.

12             The second is the defendant could object to and

13   contend that our determination with respect to his breaching

14   the agreement is not made in good faith and we would have to

15   establish that it was made in good faith, and we're prepared do

16   that at a hearing.

17             And so one of the reasons for asking for scheduling

18   is that that's sort of a separate issue from any determination

19   that would be made in the presentence report that people could

20   object to.  There's a separate issue of whether the defense is

21   going to take issue with -- and ask for a hearing with respect

22   to the government's position that the defendant has breached.

23   And, again, we are prepared to do a hearing at the Court's

24   convenience.

25             THE COURT:  Well, I have a lot of questions about

1    that.  And I'm certainly going to ask the defense if they, at

2    this point, contemplate filing motions, the same way I did with

3    you.  But let me go back to what the upshot might be if I agree

4    with your contention that he breached the plea agreement.

5          The plea agreement itself mentions not only the right

6    to seek a denial of the adjustment of responsibility

7    adjustment, but it says, in paragraph 4.B., that you reserve

8    the right to seek the imposition of an upward adjustment for

9    obstruction of justice under § 3C1.1, which applies if the

10   defendant attempted to obstruct on the investigation of the

11   offense of conviction.  So are you planning to seek that?  And,

12   I guess, wouldn't -- would it have applied in any event, given

13   the fact that he pled to obstruction of justice?

14         MR. WEISSMANN:  So, I think that the answer is that I

15   do think legally it could apply because the obstruction that he

16   pled to was obstruction that happened -- I know he was indicted

17   for in June of this year.  I think if there is an additional

18   obstruction of the crimes of conviction, that could apply.  I

19   don't anticipate that -- well, I anticipate that we will set

20   forth the facts for Your Honor to consider at the time of

21   sentencing.

22         I don't anticipate that we would make that type of

23   motion because the guidelines, at least as we have calculated

24   them and set forth our position in the plea agreement, far

25   exceeds the statutory cap in the case before Your Honor.

1    That's not to say that it's irrelevant, it just means that

2    while the facts could be relevant to how the Court might

3    sentence, I don't think that a upward departure would be

4    particularly fruitful in that situation.

5            THE COURT:  Okay.  The plea agreement also talked

6    about a right to seek an increase in the base offense level

7    based on post agreement conduct, which was something that I was

8    unfamiliar with.  So I was curious about whether you were

9    planning to seek that.

10           MR. WEISSMANN:  We don't -- for the same, exact same

11   reasons, we don't anticipate doing that.

12           THE COURT:  And finally, it talked about the right to

13   pursue a trial on the charges that you would dismiss pursuant

14   to the agreement.  Is that contemplated?

15           MR. WEISSMANN:  So the answer to that is I don't know

16   at this time.  The relevance of that is slightly different than

17   the last two questions that the Court put to me, which is that

18   right now there is a statutory cap here in this District of ten

19   years.  There's a statutory cap in the Eastern District of

20   Virginia of 85 years.  And the guidelines in both districts are

21   quite substantial.  We have to evaluate whether it would be

22   fruitful to, in this proceeding, to take action that would

23   augment the statutory cap.  But we have not made that

24   determination.

25           THE COURT:  Okay.  Assuming -- well, does the

1    imposition of any of these remedies that you're talking

2    about -- and let's start with the one that is most likely to

3    happen -- some argument about the acceptance of responsibility

4    adjustment, these would require a factual finding by me that he

5    did in fact breach the plea agreement, is that correct?

6              MR. WEISSMANN:  I believe so, yes.

7              THE COURT:  Okay.  So do you anticipate that we would

8    have a separate hearing before the actual date of the

9    sentencing to determine that issue, if it's disputed?

10              MR. WEISSMANN:  Yes.

11              THE COURT:  Okay.

12              MR. WEISSMANN:  And we are prepared to do that at any

13    time set by the Court.

14              THE COURT:  Do you think we need to await the

15    presentence report for that?  I mean, is that something that I

16    need the probation office to tell me what they think?  I'm

17    going to have to make this decision.

18              MR. WEISSMANN:  I don't believe that you do.  I think

19    it's relevant to not just -- I think the same facts are

20    relevant to that issue and other issues that will be before the

21    Court, and I don't think that it needs to await the presentence

22    report.  And the government's position is as a matter of

23    efficiency, that it would -- and since it's also a discrete

24    area, that we're prepared, if there is objection to that, to

25    meet our burden of proof.

1          THE COURT:  All right.  And what is that burden of

2     proof on that issue?

3          MR. WEISSMANN:  So, with respect to as it relates to

4     whether there is a breach, there the plea agreement sets out

5     that we have to meet the good faith standard.  And with

6     respect -- I think if we meet that, I think there's a second

7     issue with respect to acceptance of responsibility and I think

8     that is decided by the normal sentencing standard that I think

9     is -- that I'm going to give a caveat, that I think that's a

10    preponderance.

11         THE COURT:  And so just thinking about this, the best

12    way to structure it, as far as you see it, it makes sense to go

13    ahead and brief the breach issues separate from briefing the

14    3553(a) factors for me for the actual sentencing.

15         MR. WEISSMANN:  Yes.

16         THE COURT:  Okay.  Now, the status report seems to

17    make a point with its vocabulary, and it specifically asserts

18    that the defendant committed federal crimes since he was last

19    before me.  And it advised me that you're going to inform me of

20    the nature of those crimes in advance of the sentencing date.

21    Notwithstanding the fact that, obviously, acceptance of

22    responsibility bears on a sentence and obstruction of justice

23    could possibly bear on a sentence under the guidelines, and the

24    statute requires me to look at the history and characteristics

25    of the defendant and not just the offense, at the end of the

1     day, I'm supposed to sentence him for the offense to which he

2     pled guilty.  And so to the extent that you're asking me to

3     enhance that because of the commission of other crimes, I think

4     it's going to be important to explain how that -- why that

5     would be appropriate.  And I guess I'm wondering, am I supposed

6     to infer from your repetition of that word in the status report

7     that more charges are forthcoming?

8               MR. WEISSMANN:  So, to take that in the different

9     components.  We do think that the nature of the defendant's

10    conduct after signing the plea agreement is relevant, or

11    potentially relevant to the Court with respect to a variety of

12    issues, not just whether there should be some upward departure,

13    but whether there should be a downward departure, or where

14    within the guidelines the defendant should be sentenced.  So we

15    do think it is a pertinent factor, as well as we take it as our

16    obligation to the Court and to the probation department in

17    terms of providing that information.

18              With respect to whether there will be additional

19    charges, as I said, that determination has not been made yet.

20              THE COURT:  Okay.  I think those are the questions I

21    had for you, just about -- I'm really just trying to get --

22    procedurally, to figure out what we are doing, what we all are

23    contemplating so that then I can give you a schedule that makes

24    sense.

25              MR. WEISSMANN:  Thank you.

1          THE COURT:  All right.  Mr. Downing, are you going to

2     handle this?

3          Do you intend to file any motions in advance of

4     sentencing?  I'm not sure that objecting to their contention

5     that he violated the plea agreement is a motion.  But how do

6     you see this teeing up?

7          MR. DOWNING:  I think at this point in time there are

8     a lot of unknowns for us.  I think the government has ideas

9     about what they're going to do that we're not quite sure about.

10    But we do think it is going to take some time to respond to

11    whatever it is they file with respect to the breach of the plea

12    agreement.  So I think that taken alone, I think, is something

13    that we think we'd also probably be entitled to some discovery

14    with respect to whatever allegations are going to be made by

15    the Office of Special Counsel with respect to a breach of the

16    agreement.

17         Not knowing the details of what they're going to

18    claim constitutes the breach or breaches, that's all going to

19    depend, you know, once we see that, on what we would be asking

20    the Court for in terms of information -- additional information

21    from the government to support the contention.  So that's one

22    item that I think the Court should build into the schedule.

23         THE COURT:  All right.  And so do you think -- you

24    agree with Mr. Weissmann, that they need to tell me what the

25    basis for their contention is, you get to object to it, we have

1    to have a hearing if you contest it, and rule on that before we

2    have a sentencing hearing and we start talking about the

3    statutory factors?

4              MR. DOWNING:  Yes, Your Honor.

5              THE COURT:  Okay.

6              MR. DOWNING:  One other item you mentioned about the

7    timing of these events with the probation report.  If probation

8    is going to take into consideration the items that are going to

9    be in dispute, I think the timing may affect how all this gets

10   carried out.  So I'm not sure whether or not that's going to

11   happen, if probation is going to consider these other items

12   that are -- you know, follow from the plea.  And that's a

13   little more of a wrinkle.  I don't quite know what's going to

14   happen with that.

15             THE COURT:  Well, typically the government does

16   supply its factual grounds for various adjustments and the

17   defense can submit that information as well, so that the draft

18   presentence report does have the probation office's point of

19   view about whether acceptance of responsibility, other

20   adjustments up and down apply.  So, at the same time as you're

21   going to be telling me why you don't think they apply, you're

22   going to be telling them.

23             So I suppose we could have the government give me and

24   the probation office its submission at the same time and you

25   could give me and the probation officer -- you need to see what

1    they say to know whether -- but you still have to dispute it

2    because I could disagree with them.

3              MR. DOWNING:  Yes, I understand.  But the one thing

4    that would be a little odd about this is that you would have

5    the benefit also of a hearing and other evidence and probation

6    wouldn't.  So probation would be reaching conclusions without a

7    full record.  And that's why I say it's one thing, I think,

8    that should be considered, as to whether or not that report

9    should come after you make findings on a hearing about whether

10   or not there was a breach.

11             And it's just something to consider because I think

12   it might -- we may end up fighting two different fights on two

13   different records and I think that would be a problem.

14             THE COURT:  Well, at the end of the day, no matter

15   what they do, I have to make the finding.  So I guess one

16   question would be whether you think it would be optimal to just

17   set a sentencing date today, so that we can order up the

18   presentence report, and then wait until the draft comes in to

19   set a briefing schedule for breach, and then a hearing on the

20   statute, the actual sentencing, or whether it makes sense to go

21   ahead and brief up the breach issues on a parallel track, while

22   they're doing their presentence investigation.

23             I don't have a strong feeling about it.  That's one

24   of the reasons I wanted to get you all here, because what you

25   were proposing, it wasn't clear.

1          MR. DOWNING:  Sure.  Could I have a moment?

2          THE COURT:  Sure.  And if you all want to confer with

3     each other after this, that's fine, too, with a proposed

4     schedule for the whole thing.

5          (Pause.)

6          THE COURT:  I mean, it seems to me we could probably

7     start the ball rolling by the government providing to me, at

8     the same time as they provide to the probation office, what

9     they think the basis for this contention is.  But I -- you look

10    like you have some thoughts, so I'm happy to hear them.

11         MR. DOWNING:  Just before I sit down, we would prefer

12    your first option, that this would be submitted to you first

13    and while the probation can be working on these other issues,

14    that it would be an issue that you are addressing before

15    probation finalizes its report.  But we're also happy to

16    discuss in a little more detail -- we haven't with the

17    government -- if there is some more efficient way to do that.

18         THE COURT:  I guess I wasn't necessarily -- I hadn't

19    really come to a conclusion about whether I should rule on it

20    first, as much as that we could expedite things by having the

21    government inform all of us at the same time as it informs the

22    probation department.  But what were you thinking?

23         MR. WEISSMANN:  So the government's proposal is that

24    the Court, today, sets a sentencing date so that -- and that

25    probation can then start preparing a presentence report.  When

1    that presentence report comes in, obvious -- it's a draft,

2    obviously the parties have an opportunity beforehand to speak

3    to the probation department, lodge any objections and all of

4    that.  If there's a hearing that is required at that point, no

5    one knows at this point whether it would or would not be.

6    Obviously, we would proceed according to the way normally

7    things proceed, if there's a factual dispute on one side or the

8    other, or both.

9         And so the issue, to me, is the separate issue of

10   whether there should be a determination made by the Court with

11   respect to any challenge to the government's position that the

12   defendant's breached his cooperation agreement, because it's

13   relevant to a number of different sentencing issues.  And our

14   position is that issue is one that is, from the government's

15   perspective, ready to be decided.

16        In other words, that's something that we have,

17   obviously, before we issued the joint status report, we

18   obviously had lengthy conversations with the defense, discussed

19   the facts, any objections.  So they're aware of the gravamen of

20   what the concerns are.  Obviously, we're not saying the Court

21   or probation is, and we're prepared to go forward.  And to us

22   it makes sense to get that resolved because that could change

23   in many ways the complexion of the subsequent hearing, if there

24   is one.  And so as a matter of efficiency, at the very least,

25   we think that would be a good way to proceed.

1        THE COURT:  Well, that does seem efficient to me,

2   speaking aloud for a minute.  When you started and you were

3   talking about the preparation of a presentence report, what's

4   required under the statute and the rules, the way it usually

5   works is they come up with a guidelines calculation, which in

6   some way is going to be dependent on this factual finding, or

7   it could be, and then you get to battle it out with them and

8   then I get the report and then we have a hearing.  And in many

9   cases there has to be an evidentiary hearing on some

10  adjustment.  So it's -- it all seems to cut in both directions.

11       MR. WEISSMANN:  So I think that's true, but I think

12  that a breach of the plea agreement also, if, for instance, the

13  Court were to find that we were not acting in good faith -- I

14  mean, this all is subject to -- we don't get to take unilateral

15  action.  If it is contested, we go to a hearing, we present our

16  case, the defense presents its case, and the Court will make

17  its determination whether we acted properly.  I think that goes

18  not just to the determination, the initial determination by

19  probation, I think there's a separate reason to have that be

20  litigated.  And it seems to me since that is a discrete area

21  that is ready, that it would make sense to get that resolved.

22       THE COURT:  All right.  And it seems like you're

23  agreeing with that, that you think we ought to not await the

24  completion of the presentence report to get the evidence of the

25  breach contention on the table?

1          MR. DOWNING:  Just one second.

2          (Pause.)

3          MR. DOWNING:  Your Honor, we're willing to be

4    flexible on it.  I guess, just the concern we have is giving

5    information to -- for the -- to probation on a presumption that

6    the government can meet their burden, it's -- then we have to

7    undo it.  That's the only issue that we think -- if you were to

8    find that there was not a breach.  And I think a conclusion of

9    that would be -- let's say there was one item in dispute as to

10   whether or not Mr. Manafort was truthful, if you were to find

11   that he was not untruthful, yet that had been submitted to

12   probation as being a lie and being obstruction and other

13   unlawful conduct, I think this kind of makes a whole mess of

14   unwinding that.  So that's the only issue that I think the

15   Court should consider.

16         THE COURT:  It sounds like you're saying the same

17   thing, that you would like me to rule on the question of

18   whether there was a breach or there wasn't a breach before the

19   probation department does its guideline calculation, which I

20   think is what Mr. Weissmann just said.

21         MR. DOWNING:  We're in agreement, actually.

22         THE COURT:  We are in agreement on this matter.

23   Congratulations.

24         All right.  So with that in mind, how long does the

25   government want to file such a submission?

1          MR. WEISSMANN:  We're prepared to do that whenever

2     the Court would like it because we were ready at the time that

3     we submitted the joint status report.  We had -- there was

4     substantial work that went into that.

5          THE COURT:  All right.  I know you want some

6     significant time to respond to it.

7          MR. DOWNING:  Yes.  And we don't want to press that

8     the government would have to have this done before the

9     holidays, but certainly if we all started the schedule right

10    after the holidays, we would be happy to, but --

11         THE COURT:  Well, they're ready.  So, what does that

12    mean?  When would you like to file something?  By next week?

13    The week after?

14         MR. WEISSMANN:  We could do it a week from today.

15         THE COURT:  Okay.  So, December 7, the government's

16    submission on the question -- on the factual question you're

17    seeking me to resolve will be due.  You can have until January

18    to respond.

19         What would you like as a time for a response?  I

20    mean, I can't tell you right now whether you're going to be

21    entitled to discovery, you don't know whether he's going to

22    have exhibits attached and, therefore, you don't need

23    discovery.  So, if you get it and you feel like that's what you

24    need, then you'll file a motion for discovery.  But, just for

25    purposes of the calendar, what should we set as a date for your

1  response?

2  　　　　　　MR. DOWNING:  One moment.

3  　　　　　　(Pause.)

4  　　　　　　MR. DOWNING:  Your Honor, would it be possible for us

5  to have some type of preliminary response so that we can tell

6  you whether or not we need discovery or anything else?  Because

7  if we don't, we don't need to put this way out, I would agree

8  with that.  But, having -- if, in fact, we need the time, then

9  we would like to ask the Court for the time.  But I don't know

10  what to tell you.  If it's very straightforward and we can

11  address it, we could do it in the ordinary response time.  But

12  not knowing that, I don't want to unnecessarily put the Court's

13  schedule out.  But I would at least like a day or two just to

14  respond, to ask the Court for what type of time we think we

15  need and why.

16  　　　　　　THE COURT:  That's fine.  You can propose a schedule

17  for your response or for the briefing of a motion for

18  discovery, if you think that's necessary, after you've received

19  the pleading.  The pleading is coming in on December 7.  Why

20  don't you let me know by December 12th, the following

21  Wednesday, what your proposed schedule would be for responding

22  to it.  And then I'll enter a schedule for responding to it

23  and, based on that, probably have Mr. Haley contact you with

24  some potential dates for a hearing on it.

25  　　　　　　MR. DOWNING:  Okay.  Thank you.

1          THE COURT:  I have some conflicts in early January,

2     so I'm assuming it would be mid- to late January, depending on

3     what the briefing is, before we get to the hearing on the

4     breach allegation.

5          But for probation to begin its work, we need to at

6     least set a target sentencing date, which if it has to be

7     continued at some point, it has to be continued at some point.

8     As I said, 70 days, I think, puts us to February 8th.  And I

9     think they would probably want more than 70 days, given the

10    holidays.

11         So what are we thinking about for a sentencing date?

12    I would think either late February or early March.  Have you

13    conferred at all about that?

14         MR. DOWNING:  We have not.  We have no objection to

15    that, Your Honor.

16         THE COURT:  All right.  I think we should just set

17    something as a control date so it's on everybody's calendars.

18    Let's say Tuesday, March 5th, 10 a.m.  Does that work for

19    everybody?

20         MR. WEISSMANN:  Yes, Your Honor.

21         MR. DOWNING:  Yes, Your Honor.

22         THE COURT:  All right.

23         THE COURTROOM DEPUTY:  We have the Smith trial the

24    week before.

25         THE COURT:  Right.  That's a bench trial, it ought to

```
 1    be okay.

 2              So let's set that, and we may be able to accelerate

 3    it, we may have to put it off.  But that at least gives us a

 4    framework to work on.

 5              If that is the sentencing date, then I would want

 6    your memoranda in aid of sentence -- and this would be,

 7    presumably, after the breach determination has been made, but

 8    with respect to other guidelines issues and other statutory

 9    issues, February 22nd.

10              All right.  Is there anything else I have to take up

11    today?

12              MR. WEISSMANN:  Yes.  One matter -- one scheduling

13    matter and one matter that I would like to address at the

14    bench, if possible.  So with respect to the scheduling matter,

15    would the Court, in addition to the February 22nd date, would

16    the Court like responses to -- so, for instance, if the defense

17    has a submission and we have a response, is there a date that

18    you would like those?

19              THE COURT:  I don't usually call for responses to

20    sentencing submissions.  In this situation, because of the

21    breach issue, I did think it was important for people to be

22    able to respond to what the other side is saying.  I don't

23    know -- let's get through the breach determination and then if

24    we need to change this, we'll change this.  But right now I was

25    assuming simultaneous submissions because it's not going to be
```

1    a duel on that factual finding.

2              MR. WEISSMANN:  I have no problem with it

3    simultaneous.  I just thought if there was something that we

4    though was legally or factually wrong, that we would present it

5    to you.

6              THE COURT:  That often gets presented whether I set a

7    schedule for it or not.

8              MR. WEISSMANN:  Understood.

9              THE COURT:  So, but by setting a schedule, suggests

10   that I'm inviting it.  So we'll see, I'll think about it.

11             Do you want to take up the matter at the bench now?

12             MR. WEISSMANN:  Yes.

13             THE COURT:  Do you also want it -- are you seeking to

14   seal it?

15             MR. WEISSMANN:  I believe so, yes.

16             THE COURT:  Okay.  So we need to -- we're

17   broadcasting into the other courtroom, so we need to turn that

18   off.  Mr. Haley, can we do that?

19             THE COURTROOM DEPUTY:  It's my understanding it

20   doesn't go.  Once you get on a bench conference, it doesn't go.

21             THE COURT:  All right.  So counsel can approach the

22   bench.

23             THE COURTROOM DEPUTY:  Let me check first.

24             THE COURT:  This portion of the transcript will be

25   sealed.

1          THE COURTROOM DEPUTY:  John Cramer tells me as soon

2     as I put the husher on, it doesn't go to the overflow or media

3     room.

4          THE COURT:  All right.  Let's put the husher on.

5          (Sealed bench conference:)

6          MR. WEISSMANN:  Your Honor, I wanted to give the

7     Court advance notice that in our submission on the breach

8     issue, that there will be a portion that we would propose to

9     submit under seal because --

10          THE COURT:  I assumed that.

11          MR. WEISSMANN:  -- it does -- I mean, there's,

12    obviously, a portion that will not be under seal.  And we

13    understand very well the Court's strong inclination -- that's

14    probably the wrong word -- admonition to make sure that

15    everything that can be published is.  But there are -- some of

16    the bases of the breach do involve ongoing matters and

17    uncharged individuals.  It is relevant to, we believe, the

18    Court's determination.  But I just wanted to give you advance

19    notice that that's what the issue is.

20          THE COURT:  Are you going to be seeking to file it

21    ex parte or just under seal?

22          MR. WEISSMANN:  We don't think that it needs to be

23    ex parte.  If the court believes that additional information is

24    needed, it may entail that.  But we're going to try very hard

25    not to have that, understanding the defendant's right to have

1    access to the information and to contest the government's

2    position.

3              THE COURT:  Well, I think, as in every situation so

4    far, when the parties have wanted to seal some aspect of it,

5    you'll file the entire thing under seal and then seek

6    permission to file the portions that you want to have sealed

7    sealed, and then we'll file a redacted version with as much as

8    can be public as possible immediately thereafter.

9              MR. WEISSMANN:  And then, obviously, that could have

10   ramifications for the hearing because it would -- to the extent

11   that any of those aspects are contested that were under seal, I

12   think the parties will work with the Court about how to present

13   that in a way that doesn't infringe either on the government's

14   interests in connection with an ongoing investigation or the --

15             THE COURT:  Well, I've had cases where there were

16   things that were sealed and there were things that weren't.

17   And if the hearing is going to involve some of the sealed

18   material, we'll do the unsealed portion of the hearing first

19   and then we'll have everybody leave the room and seal the

20   courtroom and then we'll finish, or vice versa.  But it's way

21   to complex to have people coming and going.  So we're just

22   going to try to organize it to have it in chunks.

23             MR. WEISSMANN:  The only reason for doing this now is

24   just to give the Court advance notice.

25             THE COURT:  All right.  I appreciate it.  Thank you.

1                    (Open Court:)

2                    THE COURT:  All right.  Mr. Downing, is there

3       anything else I need to take up today on behalf of the

4       defendant?

5                    MR. DOWNING:  No, Your Honor.

6                    THE COURT:  Okay.  All right.  Thank you very much,

7       everybody.

8                                    *   *   *

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1

2                  CERTIFICATE OF OFFICIAL COURT REPORTER

3

4

5          I, JANICE DICKMAN, do hereby certify that the above

6    and foregoing constitutes a true and accurate transcript of my

7    stenograph notes and is a full, true and complete transcript of

8    the proceedings to the best of my ability.

9                      Dated this 30th day of November, 2018.

10

11

12                      /s/_____

13                      Janice E. Dickman, CRR, RMR
                         Official Court Reporter
14                      Room 6523
                         333 Constitution Avenue NW
15                      Washington, D.C. 20001

16

17

18

19

20

21

22

23

24

25