**Attachment G - Index of Exhibits**

<u>**Proposed Trial Exhibits**</u>

| Exhibit No. | Description |
| --- | --- |
| 434 | Chart, Foreign Transfers to United States Accounts of Entities Performing Work in the United States |
| 436 | Chart, FARA Related Payments By Consultant |
| 437 | Chart, Payments from Foreign Entities to Entities Performing Work in the United States |
| 438 | Chart, False and Misleading Foreign Agents Registration Act Statements in Counts 4 and 5 |
| 441 | Chart, Government Relations Activity & Government Relations Activity: Paul Manafort |
| 442 | Chart, Public Relations Activity |
| 443 | Chart, Outreach to ██████████████ |
| 444 | Chart, Skadden Report |
| 448 | Chart, Legislation |
| 449 | Chart, Legislation: Durbin Resolution |
| 504 | Memo, June 27, 2012, "CREATION OF A SUPER VIP GROUP…" |
| 505 | Memo, July 3, 2012, P. Manafort to ██████████, et. al., "Program to Conduct Briefings of Embassies, Media and NGOs" |
| 569 | Memo, Apr. 8, 2012, PJM to VFY, "AC Project Update" |
| 695 | Memo, Mar. 23, 2013, P. Manafort to ██████████, "US Consultants Activity – Weekly Update" |
| 833 | Email, Sept. 28, 2012, ██████████ to ██████, Re Fw: eyes only |
| 852 | Email, May 17, 2013, ██████████ to ██████, Re DC notes |
| 910 | Excerpt of DOJ Section 5 Inspection File, Registration No. 3600 Black, Manafort, Stone and Kelly Public Affairs Company |
| 926 | FARA Registration Statement, DMP International, LLC (Registration No. 6440), June 27, 2017 |
| 941 | FARA Registration Statement, P. Manafort (Registration No. 3594), June 1, 1984 |
| 945 | FARA Supplemental Statement, P. Manafort (Registration No. 3594), July 3, 1985 |
| 949 | FARA Registration Amendment, P. Manafort (Registration No. 3594), June 26, 1986 |
| 1028 | Exhibits A and B to FARA Registration Statement; ██████████████████████████, ██████████ |
| 1237 | Email, Nov. 14, 2012, R. Gates to ██████████, Re Contract |
| 1307 | Memo, Aug. 1, 2012, P. Manafort to ██████████, "SA Report – Media Plan" |
| 1308 | Email, Sept. 19, 2012, ██████████ to R. Gates, P. Manafort, ██████, Re an urgent request ON IT |
| 1349 | Letter, May 4, 2012, ██████, "ECFMU" |
| 1351 | Email, May 18, 2012, ██████ to ██████, Re Ukraine – What we've been up to |
| 1357 | Email, June 22, 2012, ██████ to ██████████, Re FW: RAPSI.com: U.S. attorneys in ECHR under Tymoshenko case cost Ukraine $12,5k |
| 1486 | Calendar Record, Mar. 19, 2013, "Dinner/Manafort, ██████████ / reservation under ██████," Capitol Hill Club |
| 1608 | Email, May 4, 2012, ██████ to ██████, Re Send to Rick? |
| 1763 | Email, Nov. 29, 2012, ██████ to ██████, Re Assessment |
| 1937 | Email, Nov. 19, 2013, ██████ to ██████████████, Re Durbin Resolution |
| 2012 | Memo, Apr. 5, 2012, ██████ to ██████, "Projects and Plans" |
| 2013 | Email, Apr. 11, 2012, ██████ to A. van der Zwaan, Re FW Tomorrow – Friday 4/6 |
| 2069 | Email, Aug. 9, 2012, ██████ to ██████, Re Kyiv Post Editorial: Skadden Stink |

| Exhibit No. | Description |
|---|---|
| 2078 | Email, Aug. 30, 2012, A. van der Zwaan to ███████████, et. al., Re Project 2 |
| 2079 | Email, Aug. 30, 2012, ██████ to ████████, Re Project 2 |
| 2106 | Email, Nov. 28, 2012, ██████ to P. Manafort, Re ████'s Memo |

## Miscellaneous Exhibits

| Date | Description |
|---|---|
| May 27, 1987 | Excerpt of DOJ Section 5 Inspection file, Registration No. 3594 Paul J. Manafort |
| Feb. 1, 2018 | R. Gates 302 |
| Aug. 10, 2018 | ██████ 302 |

# EXHIBIT 434

# Foreign Transfers to United States Accounts of Entities Performing Work in the United States

| Payee | Date | Payer | Originating Bank Account | Country of Origin | Country of Destination | | Amount |
|---|---|---|---|---|---|---|---|
| ▮▮▮▮▮▮▮ | 8/2/2012 | Bletilla Ventures Limited | Bank of Cyprus Account -0480 | Cyprus | US | $ | 270,000 00 |
| | 10/10/2012 | Bletilla Ventures Limited | Bank of Cyprus Account -0480 | Cyprus | US | $ | 90,000 00 |
| | 11/16/2012 | Bletilla Ventures Limited | Bank of Cyprus Account -0480 | Cyprus | US | $ | 120,000 00 |
| | 11/20/2012 | Bletilla Ventures Limited | Bank of Cyprus Account -0480 | Cyprus | US | $ | 182,968 07 |
| | 12/21/2012 | Bletilla Ventures Limited | Bank of Cyprus Account -0480 | Cyprus | US | $ | 25,000 00 |
| | 3/15/2013 | Bletilla Ventures Limited | Hellenic Bank Account -2501 | Cyprus | US | $ | 90,000 00 |
| | 9/18/2013 | Global Endeavour Inc | Loyal Bank Limited Account -1840 | SVG* | US | $ | 135,937 37 |
| | 10/31/2013 | Jeunet Ltd | Loyal Bank Limited Account -4978 | SVG* | US | $ | 167,689 40 |
| | 3/28/2014 | Jeunet Ltd | Loyal Bank Limited Account -4978 | SVG* | US | $ | 135,639 65 |
| | 4/3/2014 | Jeunet Ltd | Loyal Bank Limited Account -4978 | SVG* | US | $ | 82,979 93 |
| **Total** ▮▮▮▮▮▮▮ **Transfers** | | | | | | $ | **1,300,214.42** |
| ▮▮▮▮▮ | 5/30/2012 | Bletilla Ventures Limited | Bank of Cyprus Account -0480 | Cyprus | US | $ | 130,000 00 |
| | 8/2/2012 | Bletilla Ventures Limited | Bank of Cyprus Account -0480 | Cyprus | US | $ | 195,000 00 |
| | 10/10/2012 | Bletilla Ventures Limited | Bank of Cyprus Account -0480 | Cyprus | US | $ | 130,000 00 |
| | 11/16/2012 | Bletilla Ventures Limited | Bank of Cyprus Account -0480 | Cyprus | US | $ | 50,000 00 |
| | 12/21/2012 | Bletilla Ventures Limited | Bank of Cyprus Account -0480 | Cyprus | US | $ | 54,649 51 |
| | 3/15/2013 | Bletilla Ventures Limited | Hellenic Bank Account -2501 | Cyprus | US | $ | 150,000 00 |
| | 9/3/2013 | Jeunet Ltd | Loyal Bank Limited Account -4978 | SVG* | US | $ | 175,857 51 |
| | 10/31/2013 | Jeunet Ltd | Loyal Bank Limited Account -4978 | SVG* | US | $ | 195,857 51 |
| | 3/12/2014 | Jeunet Ltd | Loyal Bank Limited Account -4978 | SVG* | US | $ | 26,891 78 |
| | 3/21/2014 | Jeunet Ltd | Loyal Bank Limited Account -4978 | SVG* | US | $ | 138,026 00 |
| | 4/15/2014 | Jeunet Ltd | Loyal Bank Limited Account -4978 | SVG* | US | $ | 4,728 81 |
| | 4/25/2014 | Jeunet Ltd | Loyal Bank Limited Account -4978 | SVG* | US | $ | 4,739 23 |
| **Total** ▮▮▮▮▮ **Transfers** | | | | | | $ | **1,255,750.35** |
| ▮▮▮▮▮▮▮▮ | 4/19/2012 | Black Sea View Limited | Bank of Cyprus Account -7412 | Cyprus | US | $ | 2,000,000 00 |
| | 5/30/2012 | Black Sea View Limited | Bank of Cyprus Account -7412 | Cyprus | US | $ | 1,000,000 00 |
| | 7/13/2012 | Black Sea View Limited | Bank of Cyprus Account -7412 | Cyprus | US | $ | 1,000,000 00 |
| **Total** ▮▮▮▮▮▮▮ **Transfers** | | | | | | $ | **4,000,000.00** |
| **Total Transfers** | | | | | | $ | **6,555,964.77** |



GOVERNMENT
EXHIBIT
434
U.S. v. MANAFORT, 1:17-CR-201 (A.B.J.)

*SVG - Saint Vincent and the Grenadines

Refer to exhibits 93, 94, 106, 1561, 1968, and 2126 for supporting documentation

# **EXHIBIT 436**

# Summary of Payments to Skadden,
# Arps, Slate, Meagher & Flom LLP

| Date | Payer | Country of Origin | Amount |
|------|-------|-------------------|--------|
| 4/19/2012 | Black Sea View Limited | Cyprus | $  2,000,000.00 |
| 5/30/2012 | Black Sea View Limited | Cyprus | $  1,000,000.00 |
| 7/13/2012 | Black Sea View Limited | Cyprus | $  1,000,000.00 |
| **Total Payments to Skadden, Arps, Slate, Meagher & Flom LLP:** | | | **$  4,000,000.00** |

GOVERNMENT
EXHIBIT
U.S. v. MANAFORT, 17-cr-201 (A.B.J.)
436

# Summary of Payments to █████████

| Date | Payer | Country of Origin | | Amount | |
|------|-------|-------------------|---|--------|---|
| 5/30/2012 | Black Sea View Limited | Cyprus | $ | 141,120.00 | |
| 6/22/2012 | Black Sea View Limited | Cyprus | $ | 140,895.00 | |
| 7/13/2012 | Black Sea View Limited | Cyprus | $ | 139,275.00 | |
| 8/16/2012 | Black Sea View Limited | Cyprus | $ | 141,210.00 | |
| 9/17/2012 | Black Sea View Limited | Cyprus | $ | 145,919.00 | ** |
| 10/17/2012 | Black Sea View Limited | Cyprus | $ | 177,007.00 | ** |
| 11/20/2012 | Black Sea View Limited | Cyprus | $ | 143,137.00 | ** |
| | **Total Payments to █████████:** | | **$** | **1,028,563.00** | |

**For purposes of this analysis, Euro transactions were converted to US Dollars on the date of the transaction per the foreign bank records using historical daily exchange rates per https://www.oanda.com/currency/converter.

# Summary of Payments to ██████████████

| Date | Payer | Country of Origin | | Amount |
|---|---|---|---|---|
| 8/2/2012 | Bletilla Ventures Limited | Cyprus | $ | 270,000.00 |
| 10/10/2012 | Bletilla Ventures Limited | Cyprus | $ | 90,000.00 |
| 11/16/2012 | Bletilla Ventures Limited | Cyprus | $ | 120,000.00 |
| 11/20/2012 | Bletilla Ventures Limited | Cyprus | $ | 182,968.07 |
| 12/21/2012 | Bletilla Ventures Limited | Cyprus | $ | 25,000.00 |
| 3/15/2013 | Bletilla Ventures Limited | Cyprus | $ | 90,000.00 |
| 9/18/2013 | Global Endeavour Inc. | SVG* | $ | 135,937.37 |
| 10/31/2013 | Jeunet Ltd. | SVG* | $ | 167,689.40 |
| 3/28/2014 | Jeunet Ltd. | SVG* | $ | 135,639.65 |
| 4/3/2014 | Jeunet Ltd. | SVG* | $ | 82,979.93 |
| | **Total Payments to ████████████:** | | **$** | **1,300,214.42** |

*SVG - Saint Vincent and the Grenadines

# Summary of Payments to █████████████

| Date | Payer | Country of Origin | Amount | |
|---|---|---|---|---|
| 5/30/2012 | Bletilla Ventures Limited | Cyprus | $ 130,000.00 | |
| 8/2/2012 | Bletilla Ventures Limited | Cyprus | $ 195,000.00 | |
| 10/10/2012 | Bletilla Ventures Limited | Cyprus | $ 130,000.00 | |
| 11/16/2012 | Bletilla Ventures Limited | Cyprus | $ 50,000.00 | |
| 12/21/2012 | Bletilla Ventures Limited | Cyprus | $ 54,649.51 | |
| 3/15/2013 | Bletilla Ventures Limited | Cyprus | $ 150,000.00 | |
| 9/3/2013 | Jeunet Ltd. | SVG* | $ 175,857.51 | |
| 10/31/2013 | Jeunet Ltd. | SVG* | $ 195,857.51 | |
| 3/12/2014 | Jeunet Ltd. | SVG* | $ 26,891.78 | |
| 3/21/2014 | Jeunet Ltd. | SVG* | $ 138,026.00 | ** |
| 4/15/2014 | Jeunet Ltd. | SVG* | $ 4,728.81 | |
| 4/25/2014 | Jeunet Ltd. | SVG* | $ 4,739.23 | |
| **Total Payments to** █████████ **:** | | | **$ 1,255,750.35** | |

*SVG - Saint Vincent and the Grenadines

**For purposes of this analysis, Euro transactions were converted to US Dollars on the date of the transaction per the foreign bank records using historical daily exchange rates per https://www.oanda.com/currency/converter.

# Summary of Payments to ███████████ ^

| Date | Payer | Country of Origin | Amount | |
|---|---|---|---|---|
| 12/5/2012 | Black Sea View Limited | Cyprus | $ 54,760.50 | ** |
| 3/6/2013 | Marziola Holdings Limited | Cyprus | $ 603,520.00 | |
| 8/27/2013 | Jeunet Ltd. | SVG* | $ 307,643.00 | ** |
| **Total Payments to ███████████** : | | | **$ 965,923.50** | |

*SVG - Saint Vincent and the Grenadines

**For purposes of this analysis, Euro transactions were converted to US Dollars on the date of the transaction per the foreign bank records using historical daily exchange rates per https://www.oanda.com/currency/converter.



^In 2011, ███████████ (FBC), using a British Virgin Islands company called ███████████ entered into a 1.3 million Euro contract with ███████████, a company incorporated in the Seychelles, for work performed in the United States and Europe. (See Exhibit 1048 for the contract). According to the contract, ███ requested payments from ███████ ███████████ be made to ███████████'s Swiss bank account. Financial records identifying the specific payments were not available.



In 2012, ███ used a company called ███████████ to receive approximately $54,760 for work performed. In 2013, ███ used a company called ███████████ to receive approximately $911,163 for work performed.

# Summary of Payments to ███████████

| Date | Payer | Country of Origin | | Amount | |
|---|---|---|---|---|---|
| 9/10/2012 | Bletilla Ventures Limited | Cyprus | $ | 1,191,610.00 | ** |
| 11/30/2012 | Black Sea View Limited | Cyprus | $ | 34,641.90 | ** |
| 3/6/2013 | Marziola Holdings Limited | Cyprus | $ | 616,640.00 | |
| 8/27/2013 | Jeunet Ltd. | SVG* | $ | 936,306.00 | ** |
| 8/27/2013 | Jeunet Ltd. | SVG* | $ | 45,170.70 | ** |
| 4/14/2014 | Jeunet Ltd. | SVG* | $ | 24,981.00 | ** |
| | **Total Payments to** ███████████ | | $ | **2,849,349.60** | |

*SVG - Saint Vincent and the Grenadines

**For purposes of this analysis, Euro transactions were converted to US Dollars on the date of the transaction per the foreign bank records using historical daily exchange rates per https://www.oanda.com/currency/converter.

# EXHIBIT 437

# Payments from Foreign Entities
# to Entities Performing Work in the United States

| Entity | Time Period | Total Payments |
|---|---|---|
| Skadden, Arps, Slate, Meagher & Flom LLP | April 2012 - July 2012 | $ 4,000,000.00 |
| ████████████████████████* | September 2012 - April 2014 | $ 2,849,349.60 |
| ███████████ | August 2012 - April 2014 | $ 1,300,214.42 |
| ██████* | May 2012 - April 2014 | $ 1,255,750.35 |
| ██████* | May 2012 - November 2012 | $ 1,028,563.00 |
| ██████*^ | December 2012 - August 2013 | $ 965,923.50 |
| **Total Payments** | | **$ 11,399,800.87** |

*For purposes of this analysis, Euro transactions were converted to US Dollars on the date of the transaction per the foreign bank records using historical daily exchange rates per https://www.oanda.com/currency/converter.



^In 2011, ███████████, using a British Virgin Islands company called ███████████, entered into a 1.3 million Euro contract with ████████., a company incorporated in the Seychelles, for work performed in the United States and Europe. (See Exhibit 1048 for the contract). According to the contract, ██ requested payments from ███████████ be made to ███████████ ██ Swiss bank account. Financial records identifying the specific payments were not available.

In 2012, ██ used a company called ███████████ to receive approximately $54,760 for work performed. In 2013, ██ used a company called ███████████ to receive approximately $911,163 for work performed.

GOVERNMENT EXHIBIT 437
U.S. v. MANAFORT 1:17-cr-201 (A.B.J.)

# EXHIBIT 438

**False and Misleading Foreign Agents Registration Act Statements in Counts 4 and 5**

**Documents in Manafort's Possession Beyond DMI's Thirty-Day Retention Policy**

| Date | Evidence | Participants | Exhibit | Source | Metadata |
|------|----------|--------------|---------|--------|----------|
| 6/25/2012 | Manafort memo to Gates, Kilimnik and ███████ regarding "Going on Offense - Ukraine Action Plan for Europe and US." | Manafort, Gates, Kilimnik and ███████ | 503 | Manafort 4182 Subpoena Return (also have under diff BIDMAS # with Metadata) | Author and Last Save: Manafort |
| 7/3/2012 | Manafort memo to ███████ and others regarding "Program to Conduct Briefings of Embassies, Media and NGOS." | Manafort, ███████, and other Ukrainians | 505 | Manafort 4182 Subpoena Return | NA |
| 10/9/2012 | Memo regarding "Observer Group Strategy Team." | | 517 | Manafort 4182 Subpoena Return | NA |
| 2/20/2010 | Manafort memo to Yanukovych regarding "Launch of Public Affairs Plan." | Manafort, Yanukovych | 532 | Manafort 1B85 (thumb drive) Manafort Condo Search | Author and Last Save: Manafort |

GOVERNMENT
EXHIBIT
U.S. v. MANAFORT 1:17-cr-201 (A.B.J.)
438

| | | | | | |
|---|---|---|---|---|---|
| **False and Misleading Foreign Agents Registration Act Statements in Counts 4 and 5** | | | | | |
| **Documents in Manafort's Possession Beyond DMI's Thirty-Day Retention Policy** | | | | | |
| **Date** | **Evidence** | **Participants** | **Exhibit** | **Source** | **Metadata** |
| 6/18/2010 | Manafort memo to Yanukovych regarding Update on Key Policy Initiatives. | Manafort, Yanukovych | 539 | Manafort 4182 Subpoena Return | Author and Last Save: Manafort |
| 3/2/2011 | Manafort memo to █████ regarding "█████ call today - News from Washington." | Manafort, Lyovochkin | 543 | Manafort 4182 Subpoena Return | NA |
| 10/11/2011 | Manafort memo to █████ regarding consulting payments. | Manafort, ████████ | 550 | Manafort 1B76 (G drive slim) Manafort Condo Search | Last Saved: Manafort |
| 9/24/2012 | Manafort memo to Yanukovych regarding "Our Current Washington Strategy and Post Elections Plan." | Manafort, Yanukovych | 594 | Manafort 1B85 (thumb drive) Manafort Condo Search | Last Saved: Manafort |

**False and Misleading Foreign Agents Registration Act Statements in Counts 4 and 5**

**Documents in Manafort's Possession Beyond DMI's Thirty-Day Retention Policy**

| Date | Evidence | Participants | Exhibit | Source | Metadata |
|---|---|---|---|---|---|
| 1/15/2013 | Manafort created memo titled "VY Agenda" with references to "US Update" - ███ and ██████ back channel. | Manafort | 602 | Manafort 1B85 (thumb drive) Manafort Condo Search | Author and Last Save: Manafort |
| 2/4/2013 | Manafort memo to ███████ regarding "US Government Activity." | Manafort, Yanukovych, Gates | 604 | Manafort 1B85 (thumb drive) Manafort Condo Search | Author and Last Save: Gates |
| 2/21/2013 | Manafort memo to ███████ regarding "Hapsburg – Update" in the U.S. | Manafort, Yanukovych | 606 | Manafort 1B85 (thumb drive) Manafort Condo Search | Last Saved: Manafort |
| 3/21/2013 | Manafort created memo titled "Gates Agenda." | Manafort | 613 | Manafort 1B85 (thumb drive) Manafort Condo Search | Author and Last Save: Manafort |

**False and Misleading Foreign Agents Registration Act Statements in Counts 4 and 5**

**Documents in Manafort's Possession Beyond DMI's Thirty-Day Retention Policy**

| Date | Evidence | Participants | Exhibit | Source | Metadata |
|------|----------|--------------|---------|--------|----------|
| 4/22/2013 | Manafort memo to Yanukovych regarding "US Consultants – Quarterly Report." | Manafort, Yanukovych, Gates | 616 | Manafort 1B85 (thumb drive) Manafort Condo Search | Last Saved: Manafort |
| 4/25/2013 | Manafort memo to ███████ regarding summary of accounts overdue to include Hapsburg , U.S. lobbying and PR. | Manafort, Yanukovych | 617 | Manafort 1B96 (iomega portable hard drive) - Manafort Condo Search | Author: Manafort |
| 2/1/2013 | Manafort created memo titled "RG TO DO." | Manafort | 690 | Manafort 1B85 (thumb drive) Manafort Condo Search | Author and Last Save: Manafort |
| 2/24/2013 | Manafort memo to ███████ regarding Hapsburg activitiy updates in the U.S. | Manafort, ███████ | 691 | Manafort 1B85 (thumb drive) Manafort Condo Search | Author and Last Save: Manafort |

**False and Misleading Foreign Agents Registration Act Statements in Counts 4 and 5**

**Documents in Manafort's Possession Beyond DMI's Thirty-Day Retention Policy**

| Date | Evidence | Participants | Exhibit | Source | Metadata |
|------|----------|--------------|---------|--------|----------|
| 2/26/2013 | Manafort memo to █████ regarding ████ US visit" and stated "We need to increase the frequency of key members from the GoU coming to the US." | Manafort, █████, Gates | 692 | Manafort 1B85 (thumb drive) Manafort Condo Search | Author and Last Save: Manafort |
| 3/16/2013 | Manafort memo to █████ regarding " █ Trip to Washington- based on an agenda we arranged to continue our strategy of repositioning key political and policy issues between the GoU and the USG." | Manafort, █████, Gates | 694 | Manafort 1B85 (thumb drive) Manafort Condo Search | Author and Last Save: Manafort |
| 3/23/2013 | Manafort memo to █████ "US Consultants Activity – Weekly Update." | Manafort, █████, Gates | 695 | | Last Saved: Manafort |

**False and Misleading Foreign Agents Registration Act Statements in Counts 4 and 5**

**Documents in Manafort's Possession Beyond DMI's Thirty-Day Retention Policy**

| Date | Evidence | Participants | Exhibit | Source | Metadata |
|---|---|---|---|---|---|
| 4/7/2013 | Manafort memo to ███████ regarding "Hapsburg – April/May Plan." | Manafort, ██████████ | 696 | Manafort 1B85 (thumb drive) Manafort Condo Search | Author and Last Save: Manafort |
| 4/21/2013 | Manafort memo to ███████ regarding "US consultant activity for the week" to include GR and PR. | Manafort, ██████████, Gates | 697 | Manafort 1B85 (thumb drive) Manafort Condo Search | Last Saved: Manafort |
| 5/8/2013 | Memo titled Meeting Summaries - ███████. | █████ | 703 | Manafort IB78 (Western Digital external hard drive) - Manafort Condo Search | NA |

**False and Misleading Foreign Agents Registration Act Statements in Counts 4 and 5**

**Documents in Manafort's Possession Beyond DMI's Thirty-Day Retention Policy**

| Date | Evidence | Participants | Exhibit | Source | Metadata |
|------|----------|--------------|---------|--------|----------|
| 5/14/2013 | Manafort memo to ▮ titled Washington, DC Visits. | Manafort, ▮ and others | 705 | Manafort IB78 (Western Digital external hard drive) - Manafort Condo Search | Author and Last Save: Gates |
| 6/9/2013 | Manafort memo to ▮ titled " ▮ Trip Report." | Manafort, ▮ | 706 | Manafort 1B85 (thumb drive) Manafort Condo Search | Last Saved: Manafort |
| 6/17/2013 | Manafort memo to ▮ titled "Ledger Update." | Manafort, ▮ | 707 | Manafort IB78 (Western Digital external hard drive) - Manafort Condo Search | Last Saved: Manafort |

**False and Misleading Foreign Agents Registration Act Statements in Counts 4 and 5**

**Documents in Manafort's Possession Beyond DMI's Thirty-Day Retention Policy**

| Date | Evidence | Participants | Exhibit | Source | Metadata |
|------|----------|--------------|---------|--------|----------|
| 7/10/2013 | Manafort memo to ▮▮▮▮ titled "Hapsburg and US." | Manafort, ▮▮▮▮ | 708 | Manafort IB78 (Western Digital external hard drive) - Manafort Condo Search | Last Saved: Manafort |
| 7/22/2014 | Manafort memo to ▮▮▮▮ titled "Wire Payments." | Manafort, ▮▮▮▮ | 710 | Manafort 1B85 (thumb drive) Manafort Condo Search | Author and Last Save: Manafort |
| 4/20/2013 | Manafort created memo titled " Kyiv Agenda, Week of April 23." | Manafort | 712 | Manafort 1B85 (thumb drive) Manafort Condo Search | Author and Last Save: Manafort |
| No Date | Memo titled PJM Presentation to Weekly Campaign Management Meeting. | Manafort | 713 | Manafort Storage Locker Search | NA |

**False and Misleading Foreign Agents Registration Act Statements in Counts 4 and 5**

**Documents in Manafort's Possession Beyond DMI's Thirty-Day Retention Policy**

| Date | Evidence | Participants | Exhibit | Source | Metadata |
|------|----------|--------------|---------|--------|----------|
| 3/19/2013 | Calendar invite from ▉ to Manafort for dinner with Congressman ▉ on 3/19/13. | Manafort, ▉, Gates | 1486 | Manafort ▉ Search | NA |

# EXHIBIT 441

## Government Relations Activity

| Date(s) | Proposed, Attempted, or Completed (P, A, C)* | Company | Sender(s)/ Recipient(s) | Manafort's Participation | Political Activity | Lobbied Entity | Exhibit |
|---|---|---|---|---|---|---|---|
| 6/2/2005 | C | DMP | **From:** PJM<br>**To:** ▮▮▮<br>**CC:** ▮▮▮ | From | Memo summarizing Manafort's meeting with the coordinator of US-Ukraine policy at the National Security Council | National Security Council | 500 |
| 6/18/2005 | P | - | - | Author/Last Saved | Memo titled *Basel Presentation* , detailing a programatic strategy based upon a direct mandate provided by ▮▮. The three programs identified are political efforts, government lobbying, and legal efforts. | US and European Governments (USG Entities: State Department; White House; National Security Council; Commerce Department; AID; World Bank) | 520 |
| 6/23/2005 | P | ▮▮▮; DMP | **From:** Paul J. Manafort,<br>**To:** ▮▮▮<br>**Author/Last Saved:** ▮▮▮ | From | Memo, with the subject line "Political, Lobbying and Legal Program for CIS", provides an update on the project's success within Ukraine and outlines a strategy for CIS countries | White House; Capitol Hill; US State Department | 521 |
| 6/25/2005 | P | - | - | Author/Last Saved | Memo to ▮▮ | White House; National Security Council; Office of the VP; State Department; Energy Department; Commerce Department; Interior Department; Congress (bi-partisan outreach to leaders in the House and Senate; outreach to relevant committees) | 522 |

GOVERNMENT EXHIBIT
441
U.S. v. MANAFORT, 1:17-cr-201 (A.B.J.)

## Government Relations Activity

| Date(s) | Proposed, Attempted, or Completed (P, A, C)* | Company | Sender(s)/ Recipient(s) | Manafort's Participation | Political Activity | Lobbied Entity | Exhibit |
|---|---|---|---|---|---|---|---|
| 8/10/2005 | P | - | From:<br>To:<br>Author: | Last Saved | Memo | National Security Council; State Department; Treasury Department; Commerce Department; SSCI; HPSCI | 523 |
| 2/16/2010 | P; C | DMP | From: PJM<br>To: VFY | Author/Last Saved | Email identifying recipients who received a financial bonus from Manafort, for VFY's consideration for an additional bonus from VFY. One recipient listed is "Main US Lobbyist". | Main US Lobbyist | 531 |
| 2/20/2010 | P; C | DMP | From: Paul J. Manafort<br>To: President Victor Yanukovich | Author | Memo defines a plan to manage the strategy, public relations and international affairs for President Yanukovich. Manafort references previously managing a Government Relations program for VFY, that Manafort personally created and paid for. | Diplomatic and Political Communities within the US | 532 |
| 4/9/2010 | P | DMP | From: PJM<br>To: VFY | From | Memo to VFY regarding VFY's upcoming trip to the US, which includes talking points for a meeting with | US Presidential Administration; US Treasury; World Bank | 536 |

| colspan=9 | **Government Relations Activity** |

| Date(s) | Proposed, Attempted, or Completed (P, A, C)* | Company | Sender(s)/ Recipient(s) | Manafort's Participation | Political Activity | Lobbied Entity | Exhibit |
|---|---|---|---|---|---|---|---|
| 6/18/2010 | P; C | DMP | **From:** Paul J. Manafort **To:** President Victor Yanukovich | From; Author/Last Saved | Memo to VFY offering thanks for a financial bonus VFY sent, providing updates on Manafort's meetings with USG entities re: IMF deal, and talking points for a future meeting between VFY and ▇▇▇▇ ▇▇▇ | US Department of Treasury, National Security Council | 539 |
| 3/2/2011 | P | DMP | **From:** PJM **To:** ▇▇ | From | Email providing talking points for a scheduled call between VFY and ▇▇▇ | White House Administration | 543 |

3 of 78

## Government Relations Activity

| Date(s) | Proposed, Attempted, or Completed (P, A, C)* | Company | Sender(s)/ Recipient(s) | Manafort's Participation | Political Activity | Lobbied Entity | Exhibit |
|---|---|---|---|---|---|---|---|
| 9/9/2011 | P | ▮▮▮ : DMP | From ▮▮▮  To: Paul Manafort  Cc: Konstantin Kilimnik, ▮▮▮▮ | To | Arranging a meeting for a Ukrainian delegation with senior-level Hill staffers and foreign policy scholars and editors | ▮▮▮ Senior Congressional staffers  former ▮▮▮ | 1072 |
| 10/16/2011 | C | - | From: K. Kilimnik  To ▮▮▮ ,  two (2) other recipients | Author/Last Saved | Memo from Kilimnik to VFY with a readout of meetings and phone calls Manafort has had regarding Tymoshenko. | "Washington" - entities are not further specified | 551 |

## Government Relations Activity

| Date(s) | Proposed, Attempted, or Completed (P, A, C)* | Company | Sender(s)/ Recipient(s) | Manafort's Participation | Political Activity | Lobbied Entity | Exhibit |
|---|---|---|---|---|---|---|---|
| 3/6/2013 | P | DMP | **From:** Rick Gates<br>**To:**<br>**Cc:** | - | Arranging meetings with the National Security Council for Prime Minister (PM) 's upcoming visit and identifying other persons of interest for the PM to meet. | (White House); (White House); *Potential meetings:* | 1935 |
| 3/14/2012 | C | DMP | **From:** Konstanin Kilimnik<br>**To:** Paul Manafort<br>**Last Saved:** Konstantin Kilimnik | Author | Memo to VFY about contact with the European and US government regarding Tymoshenko | National Security Council | 563 |

## Government Relations Activity

| Date(s) | Proposed, Attempted, or Completed (P, A, C)* | Company | Sender(s)/ Recipient(s) | Manafort's Participation | Political Activity | Lobbied Entity | Exhibit |
|---|---|---|---|---|---|---|---|
| 4/5/2012 | P | Podesta | From: ▮ To ▮ Cc: ▮ | - | A strategic outline identifying members of Congress for efforts of neutralization or positive engagement regarding policy toward Ukraine | House/Senate Foreign Affairs Committee; ▮ | 1581 |
| 4/10/2012 | P | DMP | From: Konstantin Kilimnik To: Paul Manafort | To | Kilimnik has a call scheduled with ▮ and ▮ has requested weekly updates regarding lobbying, PR, and GR activities. | - | 567 |
| 4/11/2012 | P | DMP | From: Paul Manafort To: K. Kilimnik; Rick Gates | From | Email chain discussing providing an update to ▮ re: ▮ and ▮ . PM provides guidance to include ▮ activities. | - | 568 |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| **Government Relations Activity** | | | | | | | |
| Date(s) | Proposed, Attempted, or Completed (P, A, C)* | Company | Sender(s)/ Recipient(s) | Manafort's Participation | Political Activity | Lobbied Entity | Exhibit |
| 4/11/2012 | P | DMP | (Email) From: Konstantin Kilimnik (Email) To: Two (2) other Russian recipients (Memo) From: PJM (Memo) To: VFY Author/Last saved: Rick Gates | From | Update on the public affairs and government relations strategy. There is a proposal for a US Congressional delegation to Ukraine. | US Congressional members | 569 |
| 4/20/2012 | P | DMP | From: Rick Gates To: | - | Gates is requesting a strategic plan, to include tactical items, in preparation for a meeting scheduled with "the top guy[.]" | - | 1591 |
| 4/20/2012 | P | | From: To: Cc | - | Memo titled *GR Targets* | Congress; Administration | 1592 |
| 5/9/2012 | P | DMP | From: To Rick Gates; | - | Removing ECFMU Facebook content referencing Tymoshenko in order to further engagement with Senate staffers | | 1612 |



| | Proposed, Attempted, or Completed | | Sender(s)/ | Manafort's | Political | Lobbied | |
|---|---|---|---|---|---|---|---|
| Date(s) | (P, A, C)* | Company | Recipient(s) | Participation | Activity | Entity | Exhibit |
| 5/9/2012 | C | ▮▮ | From: ▮▮<br><br>To: Jodi Herman (Senator Menendez's office) | - | Contacted Senator's office and advised ECFMU is a new client. | ▮▮ | 1613 |
| 5/10/2012 | C | ▮▮ | From: ▮▮<br><br>To: ▮▮ | - | Conducted outreach to members of the Senate for prospective meetings with ▮▮, an LDA client. | ▮▮ | 1616 |
| 5/10/2012 | C | ▮ | From: ▮▮<br><br>To: ▮▮ | - | Draft talking points for ▮▮ in preparation for a meeting with the National Security Council | ▮▮ | 1617 |
| 5/10/2012 | C | ▮ | From: ▮▮<br><br>To: ▮▮ | - | Scheduling meetings for ▮▮. who is "essentially making [a] case for the government". | ▮▮ | 1618 |
| 5/10/2012 | C | ▮▮ | From: ▮▮<br><br>To: ▮▮ | - | Meetings scheduled and coordinated are approved by Rick Gates | ▮▮ | 1619 |
| 5/10/2012 | P | ▮▮ ; DMP | From: ▮▮<br>To: ▮▮ | - | Proposed meeting with National Security Council | ▮▮ | 1620 |
| 5/10/2012 | P | ▮▮ ; DMP | From: Rick Gates<br>To: ▮▮ | - | Outreach to the White House to confirm a formal invitation for Yanukovich to NATO event. | White House; NATO | 1621 |

**Government Relations Activity**



## Government Relations Activity

| Date(s) | Proposed, Attempted, or Completed (P, A, C)* | Company | Sender(s)/ Recipient(s) | Manafort's Participation | Political Activity | Lobbied Entity | Exhibit |
|---|---|---|---|---|---|---|---|
| 5/11/2012 | A | | From:  To: | - | Coordinating a meeting with          and | | 1622 |
| 5/11/2012 | A | | From:  To: | - | Gates approved meetings are scheduled with two Senators. | | 1623 |
| 5/14/2012 | A; C | | - | - | Confirmed schedule and itinerary for | | 1415 |
| 5/15/2012 | P | | Calendar Organizer: | - | Scheduled a meeting between       and        , noting that        will lead a Congessional delegation to Ukraine | | 1416 |
| 5/16/2012 | P | | From: A  To:  Cc: | - |          requesting a meeting with              outreach to NSC to coordinate. | | 1625 |

# Government Relations Activity

| Date(s) | Proposed, Attempted, or Completed (P, A, C)* | Company | Sender(s)/ Recipient(s) | Manafort's Participation | Political Activity | Lobbied Entity | Exhibit |
|---|---|---|---|---|---|---|---|
| 5/18/2012 | P | ▮▮▮ DMP | **From:** Rick Gates **To:** ▮▮ **Cc:** ▮▮ | - | Scheduling meetings for the Minister of Foreign Affairs | ▮▮ | 1628 |
| 5/18/2012 | P | ▮▮ | **From:** ▮▮ **To:** ▮▮ | - | Scheduling meetings for the ▮▮ Foreign Minister and state "..but we don't represent the government." | ▮▮ | 1629 |
| 5/23/2012 | P | ▮▮ | **From:** ▮▮ **To:** ▮▮ | - | Distributing materials directly to Rep. Burton's top staffer, to pass along to the Congressional delegation to Ukraine, as opposed to the delegation members directly | ▮▮ | 1633 |
| 5/25/2012 | C | ▮▮; DMP | **From** ▮▮ **To:** Rick Gates **Cc:** ▮▮ | - | Memo regarding Inhofe Resolution and comments regarding congressional office outreach coordination between ▮▮ | ▮▮ | 1636 |



| | | | | | | | |
|---|---|---|---|---|---|---|---|
| **Government Relations Activity** | | | | | | | |
| **Date(s)** | **Proposed, Attempted, or Completed (P, A, C)\*** | **Company** | **Sender(s)/ Recipient(s)** | **Manafort's Participation** | **Political Activity** | **Lobbied Entity** | **Exhibit** |
| 5/30/2012 | P | ▮ | From: ▮<br>To: ▮<br>Cc: ▮ | - | Outreach to Congress regarding the Inhofe amendment, following a meeting with Gates discussing Ukraine. | Republican Senators; Republican Representatives; State Department | 1638 |
| 5/30/2012 | C | ▮ | From: ▮<br>To: ▮ | - | Email to Foreign Affairs committee staffer, as a representative of ▮ regarding the Inhofe amendment | ▮ | 1639 |
| 5/30/2012 | C | ▮ | From: ▮<br>To: ▮<br>Cc: ▮ | - | Identified contact regarding Inhofe amendment | ▮ | 1640 |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| **Government Relations Activity** | | | | | | | |
| **Date(s)** | **Proposed, Attempted, or Completed (P, A, C)*** | **Company** | **Sender(s)/ Recipient(s)** | **Manafort's Participation** | **Political Activity** | **Lobbied Entity** | **Exhibit** |
| 5/31/2012 | C | ██ DMP | **From:** ████<br>**To:** Rick Gates<br>**Cc:** ████ | - | Forwarding information from to Gates regarding Inhofe amendment | ██████ | 1644 |
| 6/1/2012 | P | ████ | - | - | Memo detailing proposed outreach list for SA Legal Report | Members of the House and Senate; National Security Council; State Department; Department of Justice | 1354 |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| **Government Relations Activity** | | | | | | | |
| **Date(s)** | **Proposed, Attempted, or Completed (P, A, C)\*** | **Company** | **Sender(s)/ Recipient(s)** | **Manafort's Participation** | **Political Activity** | **Lobbied Entity** | **Exhibit** |
| 6/8/2012 | P | | From: To: | - | Continued discussions regarding FARA filing and outreach to Hill staffers | Democratic Hill staffers | 1649 |
| 6/11/2012 | P | | Calendar Organizer: Attendees: | - | Ukraine/ECFMU messaging meeting scheduled and includes the following attached documents: ECFMU Talking Points; UKR Hill Outreach; Centre Q A V2; ECFMU Launches US Allies Project; ECFMU Website Changes | Senate/House Committees on Foreign Affairs | 1419 |
| 6/12/2012 | P | | From: To: | - | Summary of call about Ukraine with Rick Gates, which addresses FARA, meeting with an Ambassador, and outreach for Inhofe/Durbin resolutions | Congress regarding Inhofe and Durbin resolutions | 1652 |
| 6/13/2012 | P | | From: To: | - | Email regarding FARA and identifying Republican staffers | Hill staffers (Republican and Democratic) | 1653 |
| 6/19/2012 | P | | From: To: Cc: | - | Coordinating meetings for and working with Gates to draft an op-ed for the President regarding the EURO 2012 soccer championship. | White House; Capitol Hill | 1655 |
| 6/22/2012 | P | | r Organizer: | - | Meeting scheduled re: Inhofe resolution | | 1423 |



## Government Relations Activity

| Date(s) | Proposed, Attempted, or Completed (P, A, C)* | Company | Sender(s)/ Recipient(s) | Manafort's Participation | Political Activity | Lobbied Entity | Exhibit |
|---|---|---|---|---|---|---|---|
| 6/25/2012 | P | ▮ DMP | From: PJM To: RG; KK; ▮ | From | Memo from Manafort proposing a strategy to go on offense against criticism of the Ukrainian government. Gates will direct the collaborative government relations outreach plan. | "western governments" (entities not specified) | 503 |
| 6/25/2012 | P | ▮ | Calendar Organizer: ▮ Attendees: | - | Meeting scheduled with House staffers as representatives of ▮ | ▮ | 1424 |
| 7/2/2012 | C | ▮ | From: ▮ To: ▮ | - | Email conversation about a release from ECFMU stating that ▮ provides information to Ukraine's elected officials. ▮ writes, "We do?". ▮ responds, "Definitely. 24-7." | "American government" (entities not specified) | 1659 |
| 7/8/2012 | P | ▮ ; DMP | From: Rick Gates To: ▮ | - | Refering to a letter from Yanukovich to ▮ regarding Tymoshenko. Gates requests to talk to ▮ | White House | 1663 |
| 7/10/2012 | P | DMP | From: Paul Manafort To: Rick Gates | From | Memo outlining key talking points by Ukrainian politician, ▮, during ▮'s upcoming visit to the US | House; Senate (Both per ▮'s itinerary) | 506 |



# Government Relations Activity

| Date(s) | Proposed, Attempted, or Completed (P, A, C)* | Company | Sender(s)/ Recipient(s) | Manafort's Participation | Political Activity | Lobbied Entity | Exhibit |
|---|---|---|---|---|---|---|---|
| 7/16/2012 | C | ▮ | From: ▮ To: ▮ Cc: ▮ | - | Email draft, for ▮ providing a summary of ▮ 's 4-day visit, as relayed by Gates and ▮ . | ▮ | 1665 |
| 7/11/2012 | P | DMP | From: Rick Gates To: ▮ Cc: ▮ | - | Discussion about approval from Manafort to arrange meetings with the Hill for scheduled Ukrainian delegation's US visit. | Congressional members and/or staffers | 1107 |
| 7/12/2012 | P | ▮ | From: ▮ To: ▮ Cc: ▮ | - | Email containing a draft 650 word op-ed for US audience and a proposed itinerary of ▮ 's visit to the US | ▮ | 1108 |

| | | | | | **Government Relations Activity** | | |
|---|---|---|---|---|---|---|---|
| Date(s) | Proposed, Attempted, or Completed (P, A, C)* | Company | Sender(s)/ Recipient(s) | Manafort's Participation | Political Activity | Lobbied Entity | Exhibit |
| 7/17/2012 | P | ▮ | From: ▮ To: ▮ | - | Email summary of meeting between ▮, Gates, and ▮ detailing efforts regarding Ukraine, to include Smith resolution (H. RES. 730) | ▮ | 1672 |
| 8/5/2012 | P | ECFMU; DMP | JM To: ▮ Cc: ▮ | From | Email containining government relations plan | European government entities | 508 |
| 8/7/2012 | C | ▮ | From: ▮ To: ▮ Cc: ▮ | - | Email containing draft summary, "per Rick's requests" of meetings scheduled and work done by ▮ and ▮ in regarding to past US visits by ▮ government officials | Members of the House and Senate; relevant subcommittees | 1674 |

## Government Relations Activity

| Date(s) | Proposed, Attempted, or Completed (P, A, C)* | Company | Sender(s)/ Recipient(s) | Manafort's Participation | Political Activity | Lobbied Entity | Exhibit |
|---|---|---|---|---|---|---|---|
| 8/24/2012 | P | ▮ | **From:** ▮ **To:** ▮ | - | Email from ▮ to ▮ team on potential strategy and tactics for ECFMU going forward, as requested by Gates. | Senate Leadership; House Leadership; House ▮ ▮ ; Congressional staffers | 1677 |
| 8/27/2012 | P | DMP; ▮ | (Email chain) **Participants:** Paul Manafort; Rick Gates; ▮ | From | Email chain originating from Manafort to Gates regarding recommendation for ▮ to call ▮ after the ▮. Manafort requests Gates vet recommendation with ▮. | ▮ | 1679 |
| 8/30/2012 | P | DMP; ▮ | **From:** Rick Gates **To:** ▮ **Cc:** ▮ | - | Email from Gates to ▮ team requesting facilitation of meetings for ▮ | ▮ or Senior Senator | 1682 |



## Government Relations Activity

| Date(s) | Proposed, Attempted, or Completed (P, A, C)* | Company | Sender(s)/ Recipient(s) | Manafort's Participation | Political Activity | Lobbied Entity | Exhibit |
|---|---|---|---|---|---|---|---|
| 9/6/2012 | C | ▉ | From: ▉ To: Ambassador ▉ | - | Podesta arranges meetings for Ambassador ▉ at the ▉ . ▉ meets with ▉ . | - | 1683 |
| 9/10/2012 | P | ▉ | DMP From: Rick Gates To: ▉ Cc: ▉ | - | Scheduling meetings for an upcoming visit by ▉ | ▉ | 1684 |
| 9/11/2012 | P; C | ▉ DMP | ▉ Rick Gates To: ▉ Cc: ▉ | - | Email with itinerary for ▉ 's visit to DC and a request from Gates with final meeting updates | ▉ | 1685 |

## Government Relations Activity

| Date(s) | Proposed, Attempted, or Completed (P, A, C)* | Company | Sender(s)/ Recipient(s) | Manafort's Participation | Political Activity | Lobbied Entity | Exhibit |
|---|---|---|---|---|---|---|---|
| 9/13/2012 | P | ECFMU; | From: ▆ To: ▆ (ECFMU); ▆ (ECFMU) Cc: ▆ | - | Email containing draft itinerary of scheduled meetings for ▆ 's visit | ▆ Human Rights Commission; Helsinki Commission; Senate Foreign Relations Committee; House Foreign Affairs Committee; Congressional Ukranian Caucus - Senior Staff | 1688 |
| 9/13/2012 | C | ECFMU; ▆ | From: ▆ (ECFMU) To: ▆ Cc: ▆ (ECFMU) | - | Request for draft itinerary for ▆ 's visit | ▆ Human Rights Commission; Helsinki Commission; Senate Foreign Relations Committee; House Foreign Affairs Committee; Congressional Ukranian Caucus - Senior Staff | 1689 |
| 9/14/2012 | P | DMP; ▆ | From: ▆ To: Rick Gates; ▆ Cc: ▆ | - | Email discussing strategy to connect with Senators opposed to the Senate Resolution ▆ (re: release of ▆ ) | Senate: ▆ | 1691 |
| 9/14/2012 | C | ▆ | ▆ To: | - | Outreach to Senate staffer regarding Senate Resolution ▆ (re: release of ▆ ) | ▆ | 1692 |



| | | | | | | | |
|---|---|---|---|---|---|---|---|
| colspan="8" | **Government Relations Activity** |

| Date(s) | Proposed, Attempted, or Completed (P, A, C)* | Company | Sender(s)/ Recipient(s) | Manafort's Participation | Political Activity | Lobbied Entity | Exhibit |
|---|---|---|---|---|---|---|---|
| 9/15/2012 | P | DMP | **From:** Paul Manafort **To:** Rick Gates **Cc:** Konstanin Kilimnik | From; Author/Last Saved | Memo from Manafort advising aggressive short term strategy plan titled *Pre-Election Lobby Plan* | ; State Department | 589 |
| 9/17/2012 | P | DMP | **From:** Rick Gates **To:** **Cc:** | - | Gates delegates taskings for outreach to House and Senate members regarding Inhofe and Smith resolution | | 1695 |
| 9/17/2012 | P | ; DMP | (Email chain) **Participants:** Rick Gates; | - | Providing Gates updates on House/Senate resolutions against Ukraine in preparation for Manafort's meeting with the President. confirms clearance to discuss pending report. | | 1696 |
| 9/17/2012 | C | ; DMP | **From:** **To:** Rick Gates; **Cc:** | - | Email update to Gates on Inhofe/Durbin resolution | staffers | 1697 |



## Government Relations Activity

| Date(s) | Proposed, Attempted, or Completed (P, A, C)* | Company | Sender(s)/ Recipient(s) | Manafort's Participation | Political Activity | Lobbied Entity | Exhibit |
|---|---|---|---|---|---|---|---|
| 9/17/2012 | C | | From▮ To: | - | Email update with direct feedback regarding Durbin resolution | | 1698 |
| 9/18/2012 | P | | From: To: | - | Gates requesting email of Congressional contacts made by ▮, and ▮. | Congress | 1699 |
| 9/19/2012 | P | | (Email chain) Participants: Konstantin Kilimnik | Referenced | Idea proposed by ▮ for further outreach to Senate re: resolution on Tymoshenko's release; mention of PM's work | | 1172 |
| 9/19/2012 | C | | From: To | - | Confirmation of contact to Senate re: resolution on Tymoshenko's release | | 1173 |
| 9/19/2012 | C | | From: To: | - | Email confirmation from ▮ with subject line "am working on USA matter" | | 1174 |
| 9/19/2012 | P | | From: To | - | Email detailing follow-up pending regarding Senate contact | | 1175 |
| 9/19/2012 | C | ; DMP | From: Rick Gates To: | - | Gates confirms hearing re: resolution on ▮ is finished. | | 1176 |
| 9/19/2012 | C | ; DMP | (Email chain) Participants: Paul Manafort; Rick Gates; Konstantin Kilimnik; | Cc | Manafort directed urgent contact recommendations to Gates regarding Senate resolution on ▮ | | 1308 |

# Government Relations Activity

| Date(s) | Proposed, Attempted, or Completed (P, A, C)* | Company | Sender(s)/ Recipient(s) | Manafort's Participation | Political Activity | Lobbied Entity | Exhibit |
|---|---|---|---|---|---|---|---|
| 9/19/2012 | C | ▮ | (Email chain) **Participants:** ▮ | - | Email chain discussing disinterest in using email as means of communication, strategies for Senate contact, and confirmation that Senate passed the resolution | ▮ | 1702 |
| 9/19/2012 | C | ▮ | **From:** ▮ **To:** Rick Gates | - | Gates requests oral transmission of message from ▮ President ▮ to ▮ confirms message delivered as voicemail. | ▮ | 1703 |
| 9/19/2012 | C | ▮ | **From:** ▮ **To:** ▮ | - | Contact made with Senate staffer regarding resolution on Ukraine | ▮ | 1917 |
| 9/20/2012 | C | ▮; DMP | (Email chain) **Participants:** ▮ ; Rick Gates; ▮ | - | Email discussing progress of Sen. Res. ▮ , Senate procedures, and Senate contacts. | ▮ | 1705 |



## Government Relations Activity

| Date(s) | Proposed, Attempted, or Completed (P, A, C)* | Company | Sender(s)/ Recipient(s) | Manafort's Participation | Political Activity | Lobbied Entity | Exhibit |
|---|---|---|---|---|---|---|---|
| 9/20/2012 | P | ; DMP | **From:** <br> **To:** Rick Gates | - | Providing Gates an update on Podesta's scheduled call with | | 1706 |
| 9/20/2012 | C | ; DMP | (Email chain) **Participants:** Rick Gates | - | Gates emails　　　a document on　　　noting a Ukranian investor, to give to　　　requests confirmation from　　　about　　　's PAC and West Virginia Senate elections. | :　Senate | 1708 |
| 9/20/2012 | P | | (Email chain) **Participants:** | - | Email confirmation of pending call with Senator, request for updates from Gates, and　　　Senate outreach | | 1709 |



# Government Relations Activity

| Date(s) | Proposed, Attempted, or Completed (P, A, C)* | Company | Sender(s)/ Recipient(s) | Manafort's Participation | Political Activity | Lobbied Entity | Exhibit |
|---|---|---|---|---|---|---|---|
| 9/21/2012 | C | ▮: DMP; | (Email chain) **Participants:** ▮▮ Rick Gates ▮▮ | - | Email discussing Senate procedures, to include anonymity for Senators requesting resolution hold and schedule for vote on resolution | Senate | 1711 |
| 9/22/2012 | C | ▮ | (Email chain) **Participants:** ▮▮ | - | Email references call between ▮ and ▮ and the Durbin resolution | ▮▮ | 1712 |
| 9/22/2012 | C | ▮▮: DMP | (Email chain) **Participants:** ▮ Rick Gates, ▮ | - | Email conversation following vote on Senate resolution. Confirmation received that the resolution was passed. | Senate | 1714 |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| **Government Relations Activity** | | | | | | | |
| **Date(s)** | **Proposed, Attempted, or Completed (P, A, C)\*** | **Company** | **Sender(s)/ Recipient(s)** | **Manafort's Participation** | **Political Activity** | **Lobbied Entity** | **Exhibit** |
| 9/22/2012 | C | ; DMP | (Email chain) **Participants:** ▮▮▮ Rick Gates | - | Gates confirms that there will be no strategy change despite Sen. Res. ▮ being hotlined. | Email list serv for the Senate | 1715 |
| 9/22/2012 | C | ▮▮▮ : DMP | (Email chain) **Participants:** Tony Podesta (Podesta); Rick Gates, ▮▮▮ | - | Gates sends an OpEd for ▮▮▮ to pass along to ▮▮▮ confirms call with ▮▮▮. | ▮▮▮ | 1719 |
| 9/23/2012 | P | ▮▮▮ DMP | **From:** Jonathan ▮▮▮ **To:** Paul Manafort; Rick Gates; ▮▮▮ | To | ▮▮▮ circulates documents and an agenda for H-Club meeting. The agenda includes topic of "International Activity", where "GC" and "USA" are listed. | USA (entity not specified) | 1374 |

## Government Relations Activity

| Date(s) | Proposed, Attempted, or Completed (P, A, C)* | Company | Sender(s)/ Recipient(s) | Manafort's Participation | Political Activity | Lobbied Entity | Exhibit |
|---|---|---|---|---|---|---|---|
| 9/24/2012 | C | DMP | **From:** PJM<br>**To:** VFY | From; Author/Last Saved | Manafort provides VFY with a strategy update regarding Durbin resolution. | White House; State Department; ▮ | 594 |
| 9/24/2012 | P | ▮ | (Email chain)<br>**Participants:** ▮ | - | Gates, after speaking with Manafort, prioritizes a meeting request with ▮ | ▮ | 1721 |
| 9/24/2012 | C | ▮;<br>DMP | (Email chain)<br>**Participants:** Rick Gates; ▮ | - | Gates forwards update on Tymoshenko's health, for ▮ awareness ▮ forwards to a contact. | ▮ | 1723 |
| 9/24/2012 | P | ▮;<br>DMP | (Email chain)<br>**Participants:** Rick Gates; ▮ | - | Gates requests assistance in arranging meetings for upcoming US visit by Yanukovych's Chief of Staff | ▮ | 1724 |



## Government Relations Activity

| Date(s) | Proposed, Attempted, or Completed (P, A, C)* | Company | Sender(s)/ Recipient(s) | Manafort's Participation | Political Activity | Lobbied Entity | Exhibit |
|---|---|---|---|---|---|---|---|
| 9/27/2012 | P | ██ : DMP | **From:** Rick Gates **To:** ██ | - | Gates sends a meeting agenda for "DC Consultants" meeting on September 26, 2012 containing "Overview and Comments from Kiev" | ██ | 1726 |
| 10/1/2012 | P | ██ | (Email chain) **Participants:** ██ | - | Strategy plan by ██ | ██ Senators who have resigned, were defeated, or are retiring; Former and current government officials; ██ | 1727 |

27 of 78

## Government Relations Activity

| Date(s) | Proposed, Attempted, or Completed (P, A, C)* | Company | Sender(s)/ Recipient(s) | Manafort's Participation | Political Activity | Lobbied Entity | Exhibit |
|---|---|---|---|---|---|---|---|
| 10/1/2012 | P | ███ | From: ███ To: ███ | - | Conference call scheduled to discuss ECFMU/Ukraine and "Engage" Ukraine project map/matrix | ███ | 1728 |
| 10/2/2012 | P | DMP ███ | From: Rick Gates To: ███ | - | Gates sends ███ "DC Consultants Plan 9-28-1012.xlsx" and references a prior phone call. | ███ | 1390 |



## Government Relations Activity

| Date(s) | Proposed, Attempted, or Completed (P, A, C)* | Company | Sender(s)/ Recipient(s) | Manafort's Participation | Political Activity | Lobbied Entity | Exhibit |
|---|---|---|---|---|---|---|---|
| 10/2/2012 | P | ▮ | From: ▮ To: ▮ Cc: ▮ | - | Email requesting a proposal for an intensive, one month government relations outreach effort | Capital Hill; State Department | 1602 |
| 10/3/2012 | P | ▮ | From: ▮ To: ▮ | - | Edits are forwarded from ▮ for the "Ukraine Election Work Plan" | Ukraine Caucus; ▮ Helsinki Commission; House; Senate: ▮ | 1731 |
| 10/3/2012 | C | ; DMP | From: Rick Gates To: ▮ Cc: ▮ | - | Gates comments ▮ call with ▮ is a breakthrough. | | 1732 |



| | | | | Government Relations Activity | | | |
|---|---|---|---|---|---|---|---|
| **Date(s)** | **Proposed, Attempted, or Completed (P, A, C)\*** | **Company** | **Sender(s)/ Recipient(s)** | **Manafort's Participation** | **Political Activity** | **Lobbied Entity** | **Exhibit** |
| 10/9/2012 | P | DMP | - | Author | PM memo titled "Observer Group Strategy Team" regarding dealing with election observers. PM has PJM/AK/Kozhara in charge of overall strategy with ▮▮▮▮ over Europe and RG▮ over US. | US delegations to Ukraine | 517 |
| 10/10/2012 | P | ▮ DMP; | **From:** Rick Gates **To:** ▮▮▮▮ | - | Gates emails pre-meeting note highlighting need for a plan to deflect the lies and distortions of the opposition "as the election gets closer and it begins to become apparent that the PoR is going to win…" | References pre-election GR plan (entity is not specified) | 1735 |
| 10/11/2012 | P | ECFMU; ▮ DMP | **From:** ▮ (ECFMU) **To:** ▮▮ Rick Gates; **Cc:** ▮▮▮ | - | ▮▮ writes asking who from the PoR should visit DC directly after elections. | ▮▮▮▮ | 1736 |

## Government Relations Activity

| Date(s) | Proposed, Attempted, or Completed (P, A, C)* | Company | Sender(s)/ Recipient(s) | Manafort's Participation | Political Activity | Lobbied Entity | Exhibit |
|---|---|---|---|---|---|---|---|
| 10/14/2012 | P | DMP | From: Paul Manafort To: ▮ Cc: ▮ Rick Gates | From | Manafort emails multiple attachments to Young regarding Ukraine elections, advising Young to draft an additional memo. One attachment contains talking points for Ohkendovsky's US visit | Senate; House | 597 |
| 10/15/2012 | A; C | ▮ | From: ▮ To: ▮ Cc: ▮ | - | Antelo describes no longer receiving calls from State Department contact, suspecting "[they] did some reasearch on ▮ and determined ▮ was on the "other side". | ▮ | 1737 |
| 10/15/2012 | C | ▮; DMP | From: ▮ To: Rick Gates Cc: ▮ Fwd: ▮ | - | Contact made with State department following article release suggesting ▮ advocates for Tymoshenko's release. | State Department | 1738 |
| 10/16/2012 | C | ▮ | ▮m: ▮ To: ▮ Cc: ▮ | - | ▮ provides update on Ukrainian Caucus staffers with positive responses for potentially serving as election observers. | ▮ | 1739 |

31 of 78

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| **Government Relations Activity** | | | | | | | |
| **Date(s)** | **Proposed, Attempted, or Completed (P, A, C)\*** | **Company** | **Sender(s)/ Recipient(s)** | **Manafort's Participation** | **Political Activity** | **Lobbied Entity** | **Exhibit** |
| 10/16/2012 | P | ███ | From: ███ To: ███ | - | ███ forwards an email from Gates, which requests "[completing a] report for each person [they] contact in relation to Ukraine and the election and send these reports to [Gates] DAILY". | Entities, as definied in the pre- and post- election strategy plans | 1740 |
| 10/17/2012 | P | ███ | - | - | Draft letters addressed to Congressional members on behalf of Ukraine | ███ | 1741 |
| 10/17/2012 | C | ███ | - | - | Daily outreach report from ███ | ███ | 1742 |
| 10/17/2012 | C | ███ | - | - | Daily outreach report from ███ | ███ | 1743 |
| 10/18/2012 | C | ███ | - | - | Daily outreach report from ███ | ███ | 1431 |

# Government Relations Activity

| Date(s) | Proposed, Attempted, or Completed (P, A, C)* | Company | Sender(s)/ Recipient(s) | Manafort's Participation | Political Activity | Lobbied Entity | Exhibit |
|---|---|---|---|---|---|---|---|
| 10/18/2012 | P; C | ; DMP | (Email chain) **Participants:** ▉ Rick Gates; | - | Email chain coordinating outreach to House/Senate | ▉ | 1744 |
| 10/19/2012 | P; C | DMP | **From:** Rick Gates **To:** Rick Gates | - | Gates' email advises the team's efforts "are noticed in Kyiv" and advised to remain aggressive. | Current outreach strategy | 1745 |
| 10/22/2012 | P | - | **Individuals:** ▉ | - | List of tasks related to the Ukraine project (PDG00018676-15) | Senate; House | 1746 |
| 10/23/2012 | P; C | ▉ | **From:** ▉ **To:** ▉ **Cc:** ▉ | - | Update on phone call and delegation of tasks regarding Smith resolution | ▉ | 1748 |
| 10/23/2012 | P | ▉ | **From:** ▉ **To** ▉ | - | Email from Gates is forwarded by ▉ to obtain strategy plan for outreach re: Durbin and Smith resolution | ▉ | 1749 |
| 10/29/2012 | C | ; DMP | **Individuals:** ▉ Gates; | - | ▉ Group sending "contact reports" to Gates and Ina | - | 1942 |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| **Government Relations Activity** | | | | | | | |
| **Date(s)** | **Proposed, Attempted, or Completed (P, A, C)\*** | **Company** | **Sender(s)/ Recipient(s)** | **Manafort's Participation** | **Political Activity** | **Lobbied Entity** | **Exhibit** |
| 10/29/2012 | C | ▇▇ ; DMP | **Individuals:** Gates: | - | ▇▇▇ sending "contact reports" to Gates and ▇ | - | 1943 |
| 10/30/2012 | P | ▇▇ : DMP | (Email chain) **Participants:** Paul Manafort; ▇▇▇ ick Gates; | From | Gates forwards an email from Manafort to ▇▇▇ requesting a separate strategy for outreach. | White House; Natonal Security Council | 1751 |
| 10/31/2012 | C | ▇▇ | **From:** ▇▇ **To:** | - | Tavlarides forwards a comment from COS for more balanced information on Ukraine. | ▇▇▇▇ | 1752 |
| 10/31/2012 | P | ▇▇ | **From:** ▇▇ **To:** ▇▇ **Cc:** ▇▇ | - | Draft daily report perceived as "more balanced" for distribution to contacts | State Department; House; Senate | 1753 |
| 10/31/2012 | C | ▇▇ | **From:** ▇▇ **To:** ▇ **Cc:** ▇▇ | - | CA sends final version of Hill report (PDG00035025) to ▇▇ staff on behalf of ECFMU | ▇▇▇▇ | 1755 |

## Government Relations Activity

| Date(s) | Proposed, Attempted, or Completed (P, A, C)* | Company | Sender(s)/ Recipient(s) | Manafort's Participation | Political Activity | Lobbied Entity | Exhibit |
|---|---|---|---|---|---|---|---|
| 11/1/2012 | P | ; DMP; | **From:** Rick Gates **To:** | - | Gates emails a request to stop a WH statement on Ukraine elections following negative public statements by State Department and includes VY's perception of the statements. | White House; State Department | 1756 |
| 11/9/2012 | P | ; DMP | (Email chain) **Participants:** Rick Gates; (ECFMU); | - | PDG confirms covering Helsinki Commission meetings | Helsinki Commission | 1230 |
| 11/14/2012 | P | ; DMP | (Email chain) **Participants:** Rick Gates (Podesta); | - | Gates wants to know why they were unaware of a call between VP and Yanukovych. | White House Press Office List Serv | 1760 |

| | Proposed, Attempted, or Completed | | Sender(s)/ | Manafort's | Political | Lobbied | |
|---|---|---|---|---|---|---|---|
| Date(s) | (P, A, C)* | Company | Recipient(s) | Participation | Activity | Entity | Exhibit |
| | | | | | **Government Relations Activity** | | |
| 11/19/2012 | P | ECFMU; DMP; | **Affiliates:** (ECFMU); | - | Post-election Public Affair Plan through end of 2012 sent from ⬛ to ECFMU | White House; National Security Council; State Department; House; Senate | 1761 |
| 11/20/2012 | P | ⬛ | **Calendar Organizer:** **Attendees:** | - | Calendar invite for internal Ukraine call re: Yefremov visit | ⬛ | 1439 |
| 11/20/2012 | P | ; DMP | **From:** **To:** Rick Gates; | - | Request to Gates for confirmation of arranging meetings for ⬛ November visit | Democratic Congressional staff | 1762 |



## Government Relations Activity

| Date(s) | Proposed, Attempted, or Completed (P, A, C)* | Company | Sender(s)/ Recipient(s) | Manafort's Participation | Political Activity | Lobbied Entity | Exhibit |
|---|---|---|---|---|---|---|---|
| 11/26/2012 | P | ▮ : DMP | From: ▮  To: Rick Gates | - | ▮ updates stategy guide | ▮ | 1397 |
| 11/29/2012 | C | ▮ | (Email chain) Participants: ▮ | - | ▮ draft response to Gates' request for a recap of the year's includes outreach for the Smith and Durbin resolutions. | Capitol Hill | 1764 |
| 11/29/2012 | P | ▮ : DMP | From: ▮  To: Rick Gates  Cc: ▮ | - | Gates requests an update on the project for an assessment to brief VFY and characterized as an assessment by Manafort. | Capitol Hill | 1766 |



## Government Relations Activity

| Date(s) | Proposed, Attempted, or Completed (P, A, C)* | Company | Sender(s)/ Recipient(s) | Manafort's Participation | Political Activity | Lobbied Entity | Exhibit |
|---|---|---|---|---|---|---|---|
| 12/6/2012 | P | ▋; DMP; ▋ DMP | (Email chain) **Participants:** ▋ Gates; Kilimnik; Manafort | Cc | Documents, including strategy plans, for SA report that have been edited by Manafort | | 1400 |
| 12/11/2012 | P | ▋ | **From:** ▋ **To:** ▋ | - | Summary of phone call with Gates advising hand-develivered copies of the Skadden report go to Congress. | | 1771 |

## Government Relations Activity

| Date(s) | Proposed, Attempted, or Completed (P, A, C)* | Company | Sender(s)/ Recipient(s) | Manafort's Participation | Political Activity | Lobbied Entity | Exhibit |
|---|---|---|---|---|---|---|---|
| 12/14/2012 | P | ▮ ; DMP | **From:** ▮ **To:** Rick Gates | Referenced | Email titled "Government Relations Strategy - ECFMU" | *Manafort meetings* ▮ | 1448 |
| 12/14/2012 | P | ▮ ; DMP | (Email chain) **Participants:** - Rick Gates; ▮ | | ▮ Engage Ukraine 2013 Strategy | ▮ | 1772 |

# Government Relations Activity

| Date(s) | Proposed, Attempted, or Completed (P, A, C)* | Company | Sender(s)/ Recipient(s) | Manafort's Participation | Political Activity | Lobbied Entity | Exhibit |
|---|---|---|---|---|---|---|---|
| 12/15/2012 | P; C | ▮ ; DMP | (Email chain) Participants: ▮ Rick Gates; ▮ | - | Gates confirms sharing the State press briefing in Kiev and advises request for a direct statement from State/WH and arrangement of briefings. | State Department; White House; ▮ | 1936 |
| 12/19/2012 | P | ▮ | (Email chain) Participants: ▮ | - | List of ▮ as discussed with Gates | ▮ | 1450 |
| 1/16/2013 | C | ▮ ; DMP | From: Rick Gates To: ▮ Cc: ▮ | (Memo) From | Gates forwards a memo from Manafort to Yanukovych re: US Congressional Resolutions H. Res. 27 and H. Res. 28, describing ▮ work | ▮ | 1453 |
| 1/21/2013 | P | ▮ ; DMP | (Email chain) Participants: ▮ | - | Gates proposes lists of contacts to reach out to in anticipation of Tymoshenko's daughter's upcoming visit. | ▮ | 1454 |





## Government Relations Activity

| Date(s) | Proposed, Attempted, or Completed (P, A, C)* | Company | Sender(s)/ Recipient(s) | Manafort's Participation | Political Activity | Lobbied Entity | Exhibit |
|---|---|---|---|---|---|---|---|
| 1/31/2013 | P | █████ | From: ████<br>To: ███████ | - | DC meetings scheduled for Ukranian MP █████ | ███████ | 1780 |
| 2/4/2013 | C | DMP | From: PJM<br>To: President VFY | - | Manafort memo to VY summarizes key US activity, including changes in Congress and pending resolutions | █████ | 604 |
| 2/13/2013 | P | DMP; ████ | From: █████<br>To: ██████<br>Cc: █████ | - | Gates is requesting updates from the team on their contact with a prioritized list of individuals. Additionally, he is looking for information on the Magnitsky Act. | ████████ | 1464 |



## Government Relations Activity

| Date(s) | Proposed, Attempted, or Completed (P, A, C)* | Company | Sender(s)/ Recipient(s) | Manafort's Participation | Political Activity | Lobbied Entity | Exhibit |
|---|---|---|---|---|---|---|---|
| 2/18/2013 | P; C | DMP: | (Email chain) **Participants:** | - | Gates forwards draft document from ███ and provides list of potential meetings to schedule for ███ visit | | 1466 |
| 2/18/2013 | P | DMP: | (Email chain) **Participants:** | - | Gates further directs priorities for meeting arrangements for ███ visit | House Foreign Affairs Committee; Senate Foreign Relations Committee | 1467 |
| 2/18/2013 | C | | **From:** ███ **To:** ███ Rick Gates **Cc:** ███ | - | Wright sends requested updates/contacts to Gates. | | 1784 |



| | **Government Relations Activity** | | | | | | |
|---|---|---|---|---|---|---|---|
| **Date(s)** | **Proposed, Attempted, or Completed (P, A, C)\*** | **Company** | **Sender(s)/ Recipient(s)** (Email chain) **Participants:** | **Manafort's Participation** | **Political Activity** | **Lobbied Entity** | **Exhibit** |
| 2/19/2013 | P | ▆ ; DMP; | (Email chain) **Participants:** ▆ | - | Gates organizing ▆ work plan meeting based on "info from Kyiv." | ▆ | 1465 |
| 2/21/2013 | P | DMP | **From:** PJM **To:** President VFY | From; Author/Last Saved | PM memo to VY re Hapsburg Update to include plan to deploy to U.S.  "By expanding the presence of the Hapsburg team to the US this year...leverage the team's experience, expertise, and network of high profile EU and US officials behind the scenes as much as possible." | Administration officials; ▆ | 606 |
| 2/21/2013 | P | DMP | **From:** ▆ **To:** Konstantin Kilimnik | (Memo) From | Manafort memo to VFY re: Engage Ukraine Strategy for 2013 | White House; Department of State; Congress | 607 |
| 2/22/2013 | P | DMP | **From:** ▆ **To:** ▆ | - | ▆ email regarding request for meetings on behalf of ▆ Forwards information sent to Manafort. | White House; Congress | 1315 |
| 2/23/2013 | P | DMP | (Email chain) **Participants:** ▆ ick Gates; Paul Manafort | Cc | Email coordinating meetings for ▆ | White House; Congress | 1316 |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| **Government Relations Activity** | | | | | | | |
| **Date(s)** | **Proposed, Attempted, or Completed (P, A, C)\*** | **Company** | **Sender(s)/ Recipient(s)** | **Manafort's Participation** | **Political Activity** | **Lobbied Entity** | **Exhibit** |
| 2/24/2013 | P; C | DMP | From: PJM To: ▮ | From; Author/Last Saved | Email update on ▮ and RP's visit/meeting agenda | Congress; Administration officials; ▮ | 691 |
| 2/25/2013 | P | DMP | From: Friedman To: Rick Gates; ▮ | - | Updated talking points for ▮ trips that are "more American" | - | 1318 |
| 2/25/2013 | C | DMP; ▮ | (Email chain) Participants: Rick Gates; ▮ | - | Outreach for meetings with Kwasniewski | ▮ | 1469 |
| 2/26/2013 | C | DMP | From: PJM To: ▮ | From; Author/Last Saved | Positive update on ▮ US visit | ▮ | 692 |
| 2/27/2013 | P | DMP | From: Rick Gates To: ▮ Cc: ▮ Paul Manafort | Cc | Gates provides priority meetings for ▮ visit | House; Senate; Senate Foreign Relations Committee | 1320 |
| 2/27/2013 | P | DMP | From: Friedman To: Paul Manafort; ▮ Konstantin Kilimnik | To | ▮ emails updates from ▮; mentions ▮ DC trip | political meetings | 1321 |
| 2/27/2013 | P | DMP; ▮ | From: ▮ To: Rick Gates Cc: ▮ | - | More congressional outreach for ▮ visit | ▮ | 1471 |
| 2/28/2013 | C | DMP | From: Rick Gates To: Paul Manafort Cc: ▮ | To | Gates provided talking point to ▮ re: meetings | - | 1322 |

## Government Relations Activity

| Date(s) | Proposed, Attempted, or Completed (P, A, C)* | Company | Sender(s)/ Recipient(s) | Manafort's Participation | Political Activity | Lobbied Entity | Exhibit |
|---|---|---|---|---|---|---|---|
| 3/1/2013 | C | DMP | **From:** Rick Gates **To:** ███████ **Cc:** Paul Manafort | Cc | Gates sends final meeting agenda for ███████ | - | 1324 |
| 3/1/2013 | P | ███ | **Calendar Organizer:** ███████ **Attendees:** ███████ | - | Calendar invite detailing ███████ meetings | ███████ | 1473 |
| 3/2/2013 | P; C | DMP | - | Author/Last Saved | Memo from Manafort with updates from previous visits and future meetings/taskings | ███████ | 693 |
| 3/3/2013 | P | DMP | **From:** Rick Gates **To:** ███████ | - | Meeting letter request from ██ to ███ ██ | ███████ | 1262 |
| 3/3/2013 | C | DMP | **From:** Rick Gates **To:** Paul Manafort; ███████ | To | Gates provides positive updates on ███████ visit | All scheduled meetings attended | 1326 |



| Date(s) | Proposed, Attempted, or Completed (P, A, C)* | Company | Sender(s)/ Recipient(s) | Manafort's Participation | Political Activity | Lobbied Entity | Exhibit |
|---|---|---|---|---|---|---|---|
| 3/4/2013 | P | DMP; | From: To: Rick Gates Cc: | - | Memo sent to Gates re: to form strategy for out | | 1789 |
| 3/4/2013 | P | DMP | From: Rick Gates To: | - | Meeting letter request from | | 1263 |
| 3/4/2013 | P | DMP | From: Friedman To: Cc: | - | sends draft letter to advising to send back to get put on letterhead. | | 1264 |
| 3/4/2013 | P | DMP | From: Rick Gates To: | - | Gates sends draft letters from intended for was unable to meet with while in DC | Congress | 1265 |
| 3/4/2013 | P | DMP | From: Rick Gates To: | - | Gates advises draft letter to can be sent to "our guys in DC" for review | | 1266 |
| 3/4/2013 | P | DMP | From: Rick Gates To: | - | Gates provides directions on how to submit letter from to | | 1267 |
| 3/4/2013 | P | DMP; | From: Rick Gates To: Cc: | - | Arranging Manafort meetings and additional contact | | 1474 |



# Government Relations Activity

| Date(s) | Proposed, Attempted, or Completed (P, A, C)* | Company | Sender(s)/ Recipient(s) | Manafort's Participation | Political Activity | Lobbied Entity | Exhibit |
|---|---|---|---|---|---|---|---|
| 3/5/2013 | P;C | DMP | - | - | PM memo to VY re ▮ vist to US and "I (PM) have begun to provide background briefings to the ▮ I am using a several key influencers within the State Department to ensure that ▮ is prepared upon his arrival to Kyiv." | ▮ ; State Department | 609 |
| 3/5/2013 | P | DMP; ▮ | From: ▮ To: ▮ Cc: ▮ | - | ▮ re: Gates Washington, DC visits | - | 1270 |
| 3/5/2013 | P | DMP | From: Rick Gates | - | Gates provides update on ▮ scheduled meetings | ▮ | 1271 |
| 3/5/2013 | P | ▮ | From: ▮ To: ▮ Cc: ▮ | - | Draft letter from ▮ | ▮ | 1272 |
| 3/5/2013 | P | DMP; ▮ | From: Rick Gates To: Paul Manafort; ▮ | To | ▮ anticipated meeting schedule | ▮ | 1327 |
| 3/5/2013 | P | DMP; ▮ | (Email chain) Participants: ▮ | - | Gates priorities for ▮ visit | ▮ | 1476 |

## Government Relations Activity

| Date(s) | Proposed, Attempted, or Completed (P, A, C)* | Company | Sender(s)/ Recipient(s) | Manafort's Participation | Political Activity | Lobbied Entity | Exhibit |
|---|---|---|---|---|---|---|---|
| 3/6/2013 | P | DMP; | From: Rick Gates To: Cc: | - | Confirmation of additional meeting for | | 1477 |
| 3/7/2013 | P | DMP | From: Rick Gates To: | - | Gates requests draft letter is forwarded to White House officials | | 1273 |
| 3/7/2013 | P | DMP | From: Rick Gates To: | - | Copy of ⬛ draft letter requesting to be forwarded | - | 1328 |
| 3/12/2013 | P | DMP | From: To: Cc: | - | Draft meeting schedule for ⬛ s visit | | 1790 |
| 3/8/2013 | P | DMP | ck Gates To: | - | Gates is working on talking points for ⬛ Congressional meetings | | 1330 |





| Date(s) | Proposed, Attempted, or Completed (P, A, C)* | Company | Sender(s)/ Recipient(s) | Manafort's Participation | Political Activity | Lobbied Entity | Exhibit |
|---|---|---|---|---|---|---|---|
| 3/8/2013 | P | DMP; ▇ | **From:** Rick Gates **To:** Paul Manafort **Cc:** ▇ | - | Gates emails ▇ agenda, visit PoCs, and a draft speech | | 1331 |
| 3/10/2013 | P | DMP | **From:** Rick Gates **To:** Paul Manafort; ▇ | - | Updated agenda for ▇ visit | | 1333 |
| 3/11/2013 | P | ▇ | **From:** ▇ **To:** ▇ **Cc:** ▇ | - | visit agenda email ▇ Secretary Kerry not likely | | 1792 |



## Government Relations Activity

| Date(s) | Proposed, Attempted, or Completed (P, A, C)* | Company | Sender(s)/ Recipient(s) | Manafort's Participation | Political Activity | Lobbied Entity | Exhibit |
|---|---|---|---|---|---|---|---|
| 3/12/2013 | P | DMP | **From:** Konstantin Kilimnik ▮ **To:** ▮ | - | Kilimnik sends ▮ briefing book with the message (in Russian): this week Paul organized a vist by ▮ to Washington. The briefing book lists ▮ and Gates as author/modified-by. | | 610 |
| 3/12/2013 | p | DMP; ▮ | **From:** Rick Gates **To:** ▮ Paul Manafort | - | Gates sends a draft briefing book on ▮ visit containing meeting schedules | | 1335 |
| 3/12/2013 | P | DMP; ▮ | **From:** ▮ **To:** Rick Gates; ▮ **Cc:** ▮ | - | ▮ agenda is emailed | | 1478 |



# Government Relations Activity

| Date(s) | Proposed, Attempted, or Completed (P, A, C)* | Company | Sender(s)/ Recipient(s) | Manafort's Participation | Political Activity | Lobbied Entity | Exhibit |
|---|---|---|---|---|---|---|---|
| 3/14/2013 | P | | From: ▮ To: Rick Gates; Paul Manafort Cc: ▮ | To | Calendar update for meeting changes between Manafort and Congress | ▮ | 1482 |
| 3/14/2013 | P | ▮ | From: ▮ To: ▮ Cc: ▮ | - | Target list for ▮'s upcoming visit includes outreach to Congress | ▮ State Department | 1793 |
| 3/15/2013 | C | DMP | To: Paul Manafort Cc: Rick Gates; Konstantin Kilimnik | To | Sager sends memo summarizing ▮'s trip to DC | - | 1343 |
| 3/16/2013 | C | DMP | From: Konstantin Kilimnik To: ▮ | - | Kilimnik confirms opening ▮'s memo re: ▮'s visit | - | 611 |
| 3/16/2013 | C | DMP | Fom: PJM To: ▮ | From | Memo on ▮'s visit discusses bi-lateral meetings | ▮ | 694 |

## Government Relations Activity

| Date(s) | Proposed, Attempted, or Completed (P, A, C)* | Company | Sender(s)/ Recipient(s) | Manafort's Participation | Political Activity | Lobbied Entity | Exhibit |
|---|---|---|---|---|---|---|---|
| 3/17/2013 | C | ▉ | From: Rick Gates To: ▉ Cc: ▉ | - | Gates emails ▉ requesting a readout on interviews from ▉ s trip, but highlights the success of the GR meetings. | - | 1794 |
| 3/18/2013 | C | DMP; ▉ | From: ▉ To: Paul Manafort | To | Memo to PM re: upcoming briefings, Q&A about ECFMU and a question about FARA. | | 1484 |
| 3/18/2013 | P | DMP; ▉ | From: Rick Gates To: ▉ Cc: ▉ | Referenced | Update on Paul Manafort's scheduled DC meetings | ▉ | 1485 |
| 3/18/2013 | P | ▉; DMP | From: ▉ To: Rick Gates Cc: ▉ | - | Talking points for the President are sent to Gates, address Congressional sanctions | Congress | 1795 |
| 3/19/2013 | P | DMP; ▉ | From: Rick Gates To: ▉ | Referenced | Read message confirmation for subject ▉.." | ▉ | 1488 |
| 3/21/2013 | P | DMP | - | Author/Last Saved | Gates Agenda for 3/21/13; Discusses GR and PR in US | ▉ | 613 |

# Government Relations Activity

| Date(s) | Proposed, Attempted, or Completed (P, A, C)* | Company | Sender(s)/ Recipient(s) | Manafort's Participation | Political Activity | Lobbied Entity | Exhibit |
|---|---|---|---|---|---|---|---|
| 3/23/2013 | P | DMP | From: PJM To: ■ | Last Saved | Memo on US Consultants weekly activities | ■ | 695 |
| 3/25/2013 | P | ■ | From: ■ To: ■ (ECFMU) | - | ■ memo to ■ regarding ■ visit to DC; congressional and press outreach | ■ | 1800 |
| 3/27/2013 | C | ■: DMP; ECFMU | From: ■ To: Rick Gates; ■ (ECFMU) Cc: ■ | - | Readout on ■ meeting with ■ | ■ | 1801 |



## Government Relations Activity

| Date(s) | Proposed, Attempted, or Completed (P, A, C)* | Company | Sender(s)/ Recipient(s) | Manafort's Participation | Political Activity | Lobbied Entity | Exhibit |
|---|---|---|---|---|---|---|---|
| 3/28/2013 | C | ███ ; DMP; ECFMU | From: ███ To: Rick Gates; ███ (ECFMU) Cc: ███ | - | Readout on ███ meeting with State Department | ███ | 1803 |
| 4/6/2013 | P | ███ | (Email chain) Participants: ███ | - | Proposed GR strategy plan by PDG and M/CW | ███ | 1805 |
| 4/7/2013 | P | DMP | From: PJM To: VY | From; Author/Last Saved | Memo from Manafort re: Hapsburg update - April/May plan. "This phase centers around a high-level and intense private effort at back-channel diplomacy focused on senior U.S. and European officials." | - | 696 |



# Government Relations Activity

| Date(s) | Proposed, Attempted, or Completed (P, A, C)* | Company | Sender(s)/ Recipient(s) | Manafort's Participation | Political Activity | Lobbied Entity | Exhibit |
|---|---|---|---|---|---|---|---|
| 4/8/2013 | P | DMP: | **From:** Rick Gates **To:** | - | Gates email containing document strategy re: that has been "submitted to Kyiv and approved" | | 1806 |
| 4/15/2013 | P | DMP: | **From:** **To:** : Rick Gates **Cc:** | - | Email from Kirsch detailing interest in meeting with identified contacts during US trip | | 1809 |
| 4/19/2013 | P | : DMP | **From:** **To:** Rick Gates | - | Update on work | | 1492 |
| 4/19/2013 | P | : DMP | (Email chain) **Participants:** Rick Gates: | - | Ukraine Quarterly update sent to Gates for highlights to go to Manafort | | 1810 |



| | | | | | | | |
|---|---|---|---|---|---|---|---|
| **Government Relations Activity** | | | | | | | |
| **Date(s)** | **Proposed, Attempted, or Completed (P, A, C)\*** | **Company** | **Sender(s)/ Recipient(s)** | **Manafort's Participation** | **Political Activity** | **Lobbied Entity** | **Exhibit** |
| 4/21/2013 | C | DMP | **From:** PJM<br>**To:** ▮ | From; Last Saved | US Consultants Activity - Weekly Update | White House; Senate; House; State Department | 697 |
| 4/22/2013 | C | DMP | **From:** PJM<br>**To:** President VFY | From; Last Saved | Manafort memo re: Quarterly Report on US Consultants activity | White House; Senate; House; State Department | 616 |
| 4/25/2013 | C | DMP | **From:** PJM<br>**To:** ▮ | From; Author/Last Saved | Manfort sends an updated ledger of summary of accounts overdue and writes "I have paid out all of Hapsburg and all but one month of the US operations out of my pocket." | US Lobbying | 617 |
| 4/25/2013 | P | DMP | - | Author/Last Saved | Outline from Manafort detailing GR outreach | ▮ | 712 |
| 4/25/2013 | P | DMP; ▮ | **From:** Rick Gates<br>**To:** ▮ | - | Gates details taskings after Manafort's meeting with the Minister | ▮ | 1939 |
| 4/25/2013 | P | DMP; ▮ | **Calendar Organizer:** ▮ | - | Subject: Call Rick Gates | ▮; State Department | 1493 |

## Government Relations Activity

| Date(s) | Proposed, Attempted, or Completed (P, A, C)* | Company | Sender(s)/ Recipient(s) | Manafort's Participation | Political Activity | Lobbied Entity | Exhibit |
|---|---|---|---|---|---|---|---|
| 4/26/2013 | P | | From:<br><br>To: | - | confirms outreach task | | 1811 |
| 5/1/2013 | P | DMP; | (Email chain)<br>Participants: | - | confirms he requested meetings for | | 1813 |
| 5/2/2013 | P | ; DMP; | From:<br><br>To: Rick Gates; | - | Meeting confirmation for ▮ and Manafort | | 1814 |
| 5/6/2013 | P | | From:<br><br>To:<br><br>Cc: | - | Confirmation of ▮ meetings | | 1815 |
| 5/7/2013 | P | - | - | Last Saved | Agenda for ▮ DC visit | | 700 |
| 5/7/2013 | P | | From:<br><br>To:<br>Cc: | - | ▮ contact w/ House re: shale gas and Ukraine reserves | | 1496 |



| | | | | | | | |
|---|---|---|---|---|---|---|---|
| **Government Relations Activity** | | | | | | | |
| **Date(s)** | **Proposed, Attempted, or Completed (P, A, C)\*** | **Company** | **Sender(s)/ Recipient(s)** | **Manafort's Participation** | **Political Activity** | **Lobbied Entity** | **Exhibit** |
| 5/8/2013 | P | - | - | - | Agenda for ▮▮▮ Visit | ▮▮▮ | 701 |
| 5/8/2013 | P | - | - | - | Agenda for ▮▮▮ Visit | ▮▮▮ | 702 |
| 5/8/2013 | C | - | - | - | Meeting summaries for ▮▮▮ visit | ▮▮▮ | 703 |

## Government Relations Activity

| Date(s) | Proposed, Attempted, or Completed (P, A, C)* | Company | Sender(s)/ Recipient(s) | Manafort's Participation | Political Activity | Lobbied Entity | Exhibit |
|---|---|---|---|---|---|---|---|
| 5/8/2013 | P | - | - | - | Meeting agenda and talking points for █████████ visit | ████████ | 1497 |
| 5/10/2013 | P | ████ | **Calendar Organizer:** ██ ████████ | - | Phone call scheduled for █████ to discuss meeting with ████ | ████████ | 1498 |
| 5/11/2013 | P | ████ | **From:** ████ **Cc:** ████████ | - | Email draft summary of █████ meeting | ████████ | 1821 |
| 5/12/2013 | P | ████ | **From:** ████ **Cc:** ██████████ | - | Email discussion to coordinate summary of █████ meeting | ████████ | 1499 |
| 5/9/2013 | P | DMP; ████ | **From:** Rick Gates **To:** ████ **Cc:** ████████ | - | Coordinating call for ████ | ████████ | 1822 |
| 5/13/2013 | C | DMP | - | - | Meeting summaries May 13, 2013 - ████ to include read outs of each meeting with GR (Congress and DoS) and PR. | Congress | 704 |



## Government Relations Activity

| Date(s) | Proposed, Attempted, or Completed (P, A, C)* | Company | Sender(s)/ Recipient(s) | Manafort's Participation | Political Activity | Lobbied Entity | Exhibit |
|---|---|---|---|---|---|---|---|
| 5/14/2013 | C | DMP | - | - | PM memo to ▮ re Washington DC visits - ▮ and ▮ which outline GR/PR meetings in DC and discuss need for continued briefing to Congress | Congress | 705 |
| 5/17/2013 | C | DMP; ▮ | From: ▮ To: Paul Manafort | Manafort Updated | ▮ accompanied ▮ to ▮ and official luncheon for meetings with ▮ discussed Ukraine with | | 852 |
| 5/17/2013 | C | DMP; ▮ | From: ▮ To: Paul Manafort cc: Rick Gates; Konstantin Kilimnik | Manafort Updated | ▮ discussed the U.S. engaging the Ukraine with ▮ | | 853 |
| 5/21/2013 | P | DMP; ▮ | From: Rick Gates To: ▮ | - | Gates emails ▮ to arrange congressional staff meetings for ▮ | | 1417 |
| 5/22/2013 | P | DMP; ▮ | (Email chain) Participants: ▮ Rick Gates; ▮ | - | Email discussion of visit stratetgy for ▮ in June 2013, including congressional meetings | | 1500 |
| 5/22/2013 | P | DMP; ▮ | (Email chain) Participants: ▮ Rick Gates; ▮ | - | Email regarding ▮ visit | | 1501 |

## Government Relations Activity

| Date(s) | Proposed, Attempted, or Completed (P, A, C)* | Company | Sender(s)/ Recipient(s) | Manafort's Participation | Political Activity | Lobbied Entity | Exhibit |
|---|---|---|---|---|---|---|---|
| 5/28/2013 | P | ; DMP; | **From:** <br> **To:** Rick Gates <br> **Cc:** | - | Agenda for ▮ visit | | 1824 |
| 5/29/2013 | P | | r **Organizer:** <br> **Attendees:** | - | Meeting to discuss meeting with | | 1503 |
| 5/30/2013 | C | | **From:** <br> **To:** Rick Gates; ▮ (ECFMU) <br> **Cc:** | - | Email update from ▮ about meeting | | 1826 |



## Government Relations Activity

| Date(s) | Proposed, Attempted, or Completed (P, A, C)* | Company | Sender(s)/ Recipient(s) | Manafort's Participation | Political Activity | Lobbied Entity | Exhibit |
|---------|---------|---------|---------|---------|---------|---------|---------|
| 6/4/2013 | P | ▮ | Calendar Organizer: ▮ Attendees ▮ | - | Meeting scheduled | ▮ | 1504 |
| 6/4/2013 | P | ▮ | Calendar Organizer: ▮ Attendees ▮ | - | Meeting scheduled | ▮ | 1505 |
| 6/4/2013 | P | ▮ : DMP | (Email chain) ▮; Rick Gates; ▮ | - | ▮ meeting schedules and update from ▮ office | ▮ | 1509 |
| 6/4/2013 | P | ▮ ; DMP; | From: ▮ To: ▮ Cc: ▮ | - | Briefing book corresponding to ▮ scheduled meetings and visit | ▮ | 1827 |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| **Government Relations Activity** | | | | | | | |
| **Date(s)** | **Proposed, Attempted, or Completed (P, A, C)\*** | **Company** | **Sender(s)/ Recipient(s)** | **Manafort's Participation** | **Political Activity** | **Lobbied Entity** | **Exhibit** |
| 6/5/2013 | P | ▮ : ▮ ; DMP | (Email chain) **Participants:** ▮ | - | Additional correspondence or ▮ visit. Gates sends briefing book, which is later updated. | - | 621 |
| 6/5/2013 | P | ▮ : DMP | (Email chain) **Participants:** ▮ | - | ▮ arranges meeting between ▮ and ▮ "re Ukraine." After a rescheduling issue, ▮ suggests rescheduling a later meeting to accommodate ▮ rescheduled meeting with ▮ | ▮ | 622 |
| 6/6/2013 | P | ▮ | **Calendar Organizer:** ▮ **Attendees:** ▮ | - | Calendar meeting for ▮ and ▮ House; includes Representatives background information. | ▮ | 1507 |



| | Proposed, Attempted, or Completed | | | | | | |
|---|---|---|---|---|---|---|---|
| | **Government Relations Activity** | | | | | | |
| Date(s) | (P, A, C)* | Company | Sender(s)/ Recipient(s) | Manafort's Participation | Political Activity | Lobbied Entity | Exhibit |
| 6/6/2013 | P | | Calendar Organizer: Attendees: | - | Calendar meeting for ███ and House; includes Representatives background information. | | 1508 |

## Government Relations Activity

| Date(s) | Proposed, Attempted, or Completed (P, A, C)* | Company | Sender(s)/ Recipient(s) | Manafort's Participation | Political Activity | Lobbied Entity | Exhibit |
|---|---|---|---|---|---|---|---|
| 10/10/2012 | C | | From: <br> To: Rick Gates | - | Document summarizing outreach and contact made on behalf of ▮▮▮▮▮'s visit | | 1510 |



## Government Relations Activity

| Date(s) | Proposed, Attempted, or Completed (P, A, C)* | Company | Sender(s)/ Recipient(s) | Manafort's Participation | Political Activity | Lobbied Entity | Exhibit |
|---|---|---|---|---|---|---|---|
| 6/9/2013 | C | - | From: PJM To: ■ | Last Saved | Summary report from Manafort on ████ trip | | 706 |
| 6/12/2013 | C | ■; DMP; | From: ████ To: Rick Gates; | - | ████ sends Gates a memo with an overview of the Durbin resolution, as requested by Gates | House; Senate | 1830 |
| 6/17/2013 | C | DMP | From: PJM To: ■ | Last Saved | PM memo to ■ stating "I have been financing operations by a personal loan…I have new obligations to Hapsburg and the US Consultants…The work is at a peak level of impact in the US… and with selected media." | - | 707 |



## Government Relations Activity

| Date(s) | Proposed, Attempted, or Completed (P, A, C)* | Company | Sender(s)/ Recipient(s) | Manafort's Participation | Political Activity | Lobbied Entity | Exhibit |
|---|---|---|---|---|---|---|---|
| 6/18/2013 | C | ▓; DMP; ECFMU | From: ▓ To: Rick Gates; ▓ | - | ▓ updates Gates and ▓ on recent meeting | ▓ | 1831 |
| 6/25/2013 | P | ▓; DMP | From: Rick Gates To: ▓ | - | Gates suggests a Senate outreach | ▓ | 1835 |
| 6/25/2013 | P | ▓ | From: Rick Gates To: ▓ | - | Gates asks for review of memo re: Durbin resolution that may need to be used with Kyiv | ▓ | 1836 |
| 6/26/2013 | C | DMP | From: Konstantin Kilimnik To: ▓ | - | Memo from PM to ▓ is sent Kilimnik re: Durbin resolution | Senate; House; State Department | 624 |

## Government Relations Activity

| Date(s) | Proposed, Attempted, or Completed (P, A, C)* | Company | Sender(s)/ Recipient(s) | Manafort's Participation | Political Activity | Lobbied Entity | Exhibit |
|---|---|---|---|---|---|---|---|
| 6/26/2013 | P | DMP; ▮ | **From:** Rick Gates **To:** ▮ | - | Gates requests ▮ assessment on ▮ postion on the Durbin resolution. | ▮ | 1514 |
| 7/10/2013 | P | DMP | **From:** PJM **To:** ▮ | From; Last Saved | PM memo to ▮ details strategy is to deploy the Hapsburg team to make calls to specific members of US Congress. Advises team's reluctancy to move forward until the contractual issues are resolved. | Congress | 708 |
| 7/11/2013 | P | ▮ | **From:** ▮ **To:** ▮ **Cc:** ▮ | - | Gates wants to identify contacts to lobby Senator re: Durbin resolution. | ▮ | 1838 |
| 7/11/2013 | P | ▮ | (Email chain) **Participants:** ▮ | - | Contacts identified with gas interests to lobby Senator re: Durbin resolution | ▮ | 1839 |
| 7/25/2013 | P | ▮ ; DMP | (Email chain) **Participants:** ▮ ▮ Rick Gates | - | Email proposing discussions with Senator re: Durbin resolution | ▮ | 1840 |



## Government Relations Activity

| Date(s) | Proposed, Attempted, or Completed (P, A, C)* | Company | Sender(s)/ Recipient(s) | Manafort's Participation | Political Activity | Lobbied Entity | Exhibit |
|---|---|---|---|---|---|---|---|
| 8/5/2013 | C | | From:<br>To: Rick Gates<br>Cc:<br><br>Additonal email copy sent to | - | Main accomplishments over past seven months re: Engage Ukraine strategy | | 1841 |
| 8/8/2013 | P | ECFMU; | Fro<br>To:<br>(ECFMU)<br>Cc: | - | Phone call summary re: ▮ travel plans and coordination with Congressional sessions | Congress | 1842 |
| 8/8/2013 | P | ECFMU; | From: Rick Gates<br>To:<br>(ECFMU)<br>Cc: | - | Phone call summary re: ▮ travel plans and coordination with Congressional sessions | Congress | 1843 |

## Government Relations Activity

| Date(s) | Proposed, Attempted, or Completed (P, A, C)* | Company | Sender(s)/ Recipient(s) | Manafort's Participation | Political Activity | Lobbied Entity | Exhibit |
|---------|-----------|---------|-----------|----------------|----------|---------|---------|
| 9/4/2013 | P | | From: ▮ To: ▮ | - | ▮ sends draft resoulution language re: Tymoshenko | House; Senate | 1849 |
| 9/25/2013 | P | ▮ | ▮ hain) Participants: ▮ | - | ▮ replies to 9/24 e-mail advising RG requested effort to identify contacts to oppose the legislation calling for Tymoshenko's release in districts with strong Ukr-American presence; ▮ questions feasibility and requests clarification on the identification of districts and fundraisers | House; Senate | 1852 |
| 9/30/2013 | P | ▮ | From: ▮ To: ▮ Cc: ▮ | - | ▮ receives an update from ▮ advises not to pass along to "client". | ▮ | 1853 |

## Government Relations Activity

| Date(s) | Proposed, Attempted, or Completed (P, A, C)* | Company | Sender(s)/ Recipient(s) | Manafort's Participation | Political Activity | Lobbied Entity | Exhibit |
|---|---|---|---|---|---|---|---|
| 10/8/2013 | C | ▮ | (Email chain) **Participants:** ▮ | - | Email chain with internal discussion about lack of payment, as well as an update from a contact at the House. | ▮ | 1856 |
| 10/9/2013 | C | ▮ | **From:** ▮ **To:** ▮ | - | Question from House staffer re: funder for ECFMU | ▮ | 1857 |
| 10/17/2013 | P | ▮; DMP | **From:** Rick Gates **To:** ▮ | - | Gates requests call to ▮ advising call with ▮ who "is in the loop". | ▮ | 1860 |





| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| **Government Relations Activity** | | | | | | | | |
| **Date(s)** | **Proposed, Attempted, or Completed (P, A, C)\*** | **Company** | **Sender(s)/ Recipient(s)** | **Manafort's Participation** | **Political Activity** | | **Lobbied Entity** | **Exhibit** |
| 11/19/2013 | P | ▇ ECFMU | From: ▇ To: (ECFMU); Rick Gates Cc: ▇ | - | Outline for ▇ visit | | ▇ | 1868 |
| 11/19/2013 | C | ▇ | From: ▇ To: Rick Gates Cc: ▇ | - | ▇ forwards Senator statements to Gates | | ▇ | 1937 |
| 11/20/2013 | C | ▇ | (Email chain) Participants: ▇ | - | Outreach to House re: resolution language to speak directly with the Chairman | | ▇ | 1531 |
| 11/23/2013 | P | DMP; ▇ | (Email chain) Participants: Rick Gates; ▇ | - | Email regarding readout of ▇ and President Yanukovych and request for outreach from Gates | | International Monetary Fund | 1870 |

## Government Relations Activity

| Date(s) | Proposed, Attempted, or Completed (P, A, C)* | Company | Sender(s)/ Recipient(s) | Manafort's Participation | Political Activity | Lobbied Entity | Exhibit |
|---|---|---|---|---|---|---|---|
| 11/26/2013 | P; C | | (Email chain) **Participants:** | - | Email re: call with upcoming trip, and proposed meetings | | 1534 |
| 1/17/2014 | P | | **From:** **To:** | - | Outreach by to House regarding per Gates | | 1544 |
| 1/24/2014 | P | | **From:** **To:** **Cc:** | - | Email confirming is an advisor to PM and suggest phone call and meetings with House Representative | | 1538 |
| 1/28/2014 | P | | **Calendar Organizer:** **Attendees:** | - | Calendar invite for phone call between | | 1539 |
| 1/28/2014 | C | | **From:** **To:** | - | Confirmation of Congressional outreach re: HR 447 | | 1881 |



## Government Relations Activity

| Date(s) | Proposed, Attempted, or Completed (P, A, C)* | Company | Sender(s)/ Recipient(s) | Manafort's Participation | Political Activity | Lobbied Entity | Exhibit |
|---|---|---|---|---|---|---|---|
| 2/3/2014 | P | ██████ ; DMP | **From: Rick Gates To:** ████████ | - | Gates looking to arrange meetings for ██ | ████████ | 1542 |
| 2/6/2014 | P | ECFMU; DMP | (Email chain) **Participants: Rick Gates,** ████████ (ECFMU); ████ | - | Email conversation about article re: ████ call; discussion of meetings | ████████ | 1885 |
| 2/11/2014 | P | ████ ; DMP | (Email chain) Participants: Rick Gates; ████ | - | Email discussion about guest list for dinner with Sergei Lyvochin | ████████ | 1886 |

# Government Relations Activity

| Date(s) | Proposed, Attempted, or Completed (P, A, C)* | Company | Sender(s)/ Recipient(s) | Manafort's Participation | Political Activity | Lobbied Entity | Exhibit |
|---|---|---|---|---|---|---|---|
| 2/11/2014 | P | ; DMP | (Email chain) **Participants:** | - | Email between [ ] discussing attendees for dinner with Sergei Lyvochkin (former CoS to Yanukovich and then current presidential adviser) | | 1887 |
| 2/18/2014 | P | ; DMP; | (Email chain) **Participants:** Rick Gates | - | Gates emails about [ ] draft language and discusses outreach. [ ] responds. | | 1545 |
| 2/18/2014 | P | ; DMP; | (Email chain) **Participants:** | - | Discussion of outreach on the [ ] bill and whether the co-sponsor [ ] had turned because of "Bad ECFMU stories" | | 1546 |
| 2/18/2014 | P | ; DMP; | ick Gates **To:** **Cc:** | - | Gates emails about [ ] draft language and discusses outreach. | | 1888 |

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| **Government Relations Activity** | | | | | | | | |
| **Date(s)** | **Proposed, Attempted, or Completed (P, A, C)\*** | **Company** | **Sender(s)/ Recipient(s)** | **Manafort's Participation** | **Political Activity** | **Lobbied Entity** | **Exhibit** |
| 4/21/2014 | C | DMP | **From:** Rick Gates<br>**To:** | - | Gates emails about Yulia Tymoshenko's trip to DC and negative blog reports about Congressional meetings | Congress | 1907 |
| 5/7/2014 | P | | (Email chain)<br>**Participants:** | - | Email of QFRs for the Ukraine HFAC hearing | Discusses State Department's role | 1909 |
| 6/26/2016 | P | | **From**<br>**To:**<br>**Cc:** | - | Itinerary detailing scheduled meetings on the Hill | Senate | 1656 |
| 2/28/2018 | C | DMP; | (Chat) **Participants:** Konstantin Kilimnik; | - | Discussion about lobbying | - | 1346 |
| 2/28/2018 | C | DMP; | (Chat) **Participants:** Konstantin Kilimnik; | - | Discussion about lobbying | - | 1347 |



# Government Relations Activity

| Date(s) | Proposed, Attempted, or Completed (P, A, C)* | Company | Sender(s)/ Recipient(s) | Manafort's Participation | Political Activity | Lobbied Entity | Exhibit |
|---|---|---|---|---|---|---|---|
| 10/18/2013 | P | ██ ECFMU; | From: ██<br><br>To: ██ (ECFMU);<br><br>Cc: ██<br><br>██ Rick<br>Gates | - | Proposed itemerary prepared by ██ for the visit by ██ - October 29-31, 2013. Both members of the Party of Regions. ECFMU | ██ | 1859 |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| | | | | **Government Relations Activity: Paul Manafort** | | | |
| Date(s) | Proposed, Attempted, or Completed (P, A, C)* | Company | Sender(s)/Recipient(s) | Manafort's Participation | Political Activity | Lobbied Entity | Exhibit |
| 6/2/2005 | C | DMP | **From:** PJM **To:** ▮ **CC:** ▮ | From | Memo summarizing Manafort's meeting with the coordinator of US-Ukraine policy at the National Security Council | National Security Council | 500 |
| 6/25/2012 | P | ▮ ; DMP | **From:** PJM **To:** RG; KK; ▮ | From | Memo from Manafort proposing a strategy to go on offense against criticism of the Ukrainian government. Gates will direct the collaborative government relations outreach plan. | "western governments" (entities not specified) | 503 |
| 7/10/2012 | P | DMP | **From:** Paul Manafort **To:** Rick Gates | From | Memo outlining key talking points by Ukrainian politician, ▮, during Ohkendovsky's upcoming visit to the US | House; Senate (Both per ▮ itinerary) | 506 |
| 8/5/2012 | P | ECFMU; DMP | **From:** PJM **To:** ▮ **Cc:** ▮ | From | Email containining government relations plan | European government entities | 508 |
| 10/9/2012 | P | DMP | - | Author | PM memo titled "Observer Group Strategy Team" regarding dealing with election observers.  PM has PJM, ▮ in charge of overall strategy with ▮ over Europe and ▮ | US delegations to Ukraine | 517 |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| | | | **Government Relations Activity: Paul Manafort** | | | | |
| **Date(s)** | **Proposed, Attempted, or Completed (P, A, C)\*** | **Company** | **Sender(s)/Recipient(s)** | **Manafort's Participation** | **Political Activity** | **Lobbied Entity** | **Exhibit** |
| 6/18/2005 | P | - | - | Author/Last Saved | Memo titled *Basel Presentation*, detailing a programatic strategy based upon a direct mandate provided by ▇ The three programs identified are political efforts, government lobbying, and legal efforts. | US and European Governments (USG Entities: State Department; White House; National Security Council; Commerce Department; AID; World Bank) | 520 |
| 6/23/2005 | P | ▇ DMP | **From:** Paul J. Manafort, Richard Davis **To:** ▇ Author/Last Saved: | From | Memo, with the subject line "Political, Lobbying and Legal Program for CIS", provides an update on the project's success within Ukraine and outlines a strategy for CIS countries | White House; Capitol Hill; US State Department | 521 |
| 6/25/2005 | P | - | - | Author/Last Saved | Memo to ▇ | White House; National Security Council; Office of the VP; State Department; Energy Department; Commerce Department; Interior Department; Congress ▇ | 522 |
| 8/10/2005 | P | - | **From:** DM **To:** ▇ Author: ▇ | Last Saved | Memo | National Security Council; State Department; Treasury Department; Commerce Department; ▇ | 523 |

| Government Relations Activity: Paul Manafort | | | | | | | |
|---|---|---|---|---|---|---|---|
| Date(s) | Proposed, Attempted, or Completed (P, A, C)* | Company | Sender(s)/Recipient(s) | Manafort's Participation | Political Activity | Lobbied Entity | Exhibit |
| 2/16/2010 | P; C | DMP | **From:** PJM **To:** VFY | Author/Last Saved | Email identifying recipients who received a financial bonus from Manafort, for VFY's consideration for an additional bonus from VFY. One recipient listed is "Main US Lobbyist". | Main US Lobbyist | 531 |
| 2/20/2010 | P; C | DMP | **From:** Paul J. Manafort **To:** President Victor Yanukovich | Author | Memo defines a plan to manage the strategy, public relations and international affairs for President Yanukovich. Manafort references previously managing a Government Relations program for VFY, that Manafort personally created and paid for. | Diplomatic and Political Communities within the US | 532 |
| 4/9/2010 | P | DMP | **From:** PJM **To:** VFY | From | Memo to VFY regarding VFY's upcoming trip to the US, which includes talking points for a meeting with ███████ | US Presidential Administration; US Treasury; World Bank | 536 |
| 6/18/2010 | P; C | DMP | **From:** Paul J. Manafort **To:** President Victor Yanukovich | From; Author/Last Saved | Memo to VFY offering thanks for a financial bonus VFY sent, providing updates on Manafort's meetings with USG entities re: IMF deal, and talking points for a future meeting between VFY and ███████ | US Department of Treasury, National Security Council | 539 |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| **Government Relations Activity: Paul Manafort** | | | | | | | |
| Date(s) | Proposed, Attempted, or Completed (P, A, C)* | Company | Sender(s)/Recipient(s) | Manafort's Participation | Political Activity | Lobbied Entity | Exhibit |
| 3/2/2011 | P | DMP | **From**: PJM<br>**To:** ▆ | From | Email providing talking points for a scheduled call between VFY and ▆ | White House Administration | 543 |
| 10/16/2011 | C | - | **From**: K. Kilimnik<br>**To:** ▆▆, two (2) other recipients | Author/Last Saved | Memo from to VFY with a readout of meetings and phone calls Manafort has had regarding Tymoshenko. | "Washington" - entities are not further specified | 551 |
| 3/13/2012 | C | DMP | **From**: Konstanin Kilimnik<br>**To:** Paul Manafort<br>Last Saved: Konstantin Kilimnik | Author | Memo to VFY about contact with the European and US government regarding Tymosheno | National Security Council | 563 |
| 4/10/2012 | P | DMP | **From**: Konstantin Kilimnik<br>**To:** Paul Manafort | To | Kilimnik has a called scheduled with ▆▆ and ▆ has requested weekly updates regarding lobbying, PR, and GR activities. | - | 567 |
| 4/11/2012 | P | DMP | **To:** Paul Manafort<br>**From:** K. Kilimnik | From | Email chain discussing providing an update to BG re: ▆ and Skadden.  PM provides guidance to include ▆ activities. | - | 568 |

4 of 17

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| **Government Relations Activity: Paul Manafort** | | | | | | | |
| **Date(s)** | **Proposed, Attempted, or Completed (P, A, C)\*** | **Company** | **Sender(s)/Recipient(s)** | **Manafort's Participation** | **Political Activity** | **Lobbied Entity** | **Exhibit** |
| 4/11/2012 | P | ▮▮▮ : DMP | **(Email) From:** Konstantin Kilimnik **(Email) To:** Two (2) other Russian recipients **(Memo) From:** PJM **(Memo) To:** VFY Author/Last saved: Rick Gates | From | Update on the public affairs and government relations strategy. There is a proposal for a US Congressional delegation to Ukraine. | US Congressional members | 569 |
| 9/15/2012 | P | DMP | **From:** Paul Manafort **To:** Rick Gates **Cc:** Konstanin Kilimnik | From; Author/Last Saved | Memo from Manafort advising aggressive short term strategy plan titled *Pre-Election Lobby Plan* | ▮▮▮ | 589 |
| 9/24/2012 | C | DMP | **From:** PJM **To:** VFY | From; Author/Last Saved | Manafort provides VFY with a strategy update regarding Durbin resolution. | White House; State Department; ▮▮▮ | 594 |
| 10/14/2012 | P | DMP | **From:** Paul Manafort **To:** ▮▮▮ **Cc:** Konstantin Kilimnik; Rick Gates | From | Manafort emails multiple attachments to ▮▮▮ regarding Ukraine elections, advising ▮▮▮ draft an additional memo. One attachment contains talking points for ▮▮▮ US visit | Senate; House | 597 |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| colspan="8" | **Government Relations Activity: Paul Manafort** |
| **Date(s)** | **Proposed, Attempted, or Completed (P, A, C)\*** | **Company** | **Sender(s)/Recipient(s)** | **Manafort's Participation** | **Political Activity** | **Lobbied Entity** | **Exhibit** |
| 2/21/2013 | P | DMP | **From:** PJM **To:** President VFY | From; Author/Last Saved | PM memo to VY re Hapsburg Update to include plan to deploy to U.S.  "By expanding the presence of the Hapsburg team to the US this year...leverage the team's experience, expertise, and network of high profile EU and US officials behind the scenes as much as possible." | Administration officials; ███████ ███████ | 606 |
| 2/21/2013 | P | DMP | **From:** Stepanov **To:** Konstantin Kilimnik | (Memo) From | Manfort memo to VFY re: Engage Ukraine Stategy for 2013 | White House; Department of State; Congress | 607 |
| 3/21/2013 | P | DMP | - | Author/Last Saved | Gates Agenda for 3/21/13; Discusses GR and PR in US | ██████; ███████ | 613 |
| 4/22/2013 | C | DMP | **From:** PJM **To:** President VFY | From; Last Saved | Manfort memo re: Quarterly Report on US Consultants activity | White House; Senate; House; State Department | 616 |
| 4/25/2013 | C | DMP | **From:** PJM **To:** ███ | From; Author/Last Saved | Manfort sends an updated ledger of summary of accounts overdue and writes "I have paid out all of Hapsburg and all but one month of the US operations out of my pocket." | US Lobbying | 617 |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| **Government Relations Activity: Paul Manafort** | | | | | | | |
| **Date(s)** | **Proposed, Attempted, or Completed (P, A, C)*** | **Company** | **Sender(s)/Recipient(s)** | **Manafort's Participation** | **Political Activity** | **Lobbied Entity** | **Exhibit** |
| 2/24/2013 | P; C | DMP | From: PJM To: ■ | From; Author/Last Saved | Email update on Kwasniewski and RP's visit/meeting agenda | Congress; Administration officials; ■ | 691 |
| 2/26/2013 | C | DMP | From: PJM To: ■ | From; Author/Last Saved | Positive update on Portnov's US visit | ■ | 692 |
| 3/2/2013 | P; C | DMP | - | Author/Last Saved | Memo from Manafort with updates from previous visits and future meetings/taskings | ■ | 693 |
| 3/16/2013 | C | DMP | Fom: PJM To: ■ | From | Memo on Prodi's visit discusses bi-laterial meetings | ■ | 694 |
| 3/23/2013 | P | DMP | From: PJM To: ■ | Last Saved | Memo on US Consultants weekly activities | ■ | 695 |
| 4/7/2013 | P | DMP | From: PJM To: ■ | From; Author/Last Saved | Memo from Manafort re: Hapsburg update - April/May plan. "This phase centers around a high-level and intense private effort at back-channel diplomacy focused on senior U.S. and European officials." | - | 696 |
| 4/21/2013 | C | DMP | From: PJM To: ■ | From; Last Saved | US Consultants Activity - Weekly Update | White House; Senate; House; State Department | 697 |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| colspan="8" | **Government Relations Activity: Paul Manafort** |
| **Date(s)** | **Proposed, Attempted, or Completed (P, A, C)\*** | **Company** | **Sender(s)/Recipient(s)** | **Manafort's Participation** | **Political Activity** | **Lobbied Entity** | **Exhibit** |
| 4/25/2013 | P | DMP | **From:** PJM **To:** ■ | Author/Last Saved | Outline from Manafort detailing GR outreach | Congressman w/ shale gas field interests | 699 |
| 5/7/2013 | P | - | - | Last Saved | Agenda for ■■■ DC visit | ■■■■■■ | 700 |
| 6/9/2013 | C | - | **From: PJM To:** ■ | Last Saved | Summary report from Manafort on ■■■ trip | ■■■■■■ | 706 |
| 6/17/2013 | C | DMP | **From: PJM To:** ■ | Last Saved | PM memo to ■ stating "I have been financing operations by a personal loan…I have new obligations to Hapsburg and the US Consultants…The work is at a peak level of impact in the US… and with selected media." | - | 707 |
| 7/10/2013 | P | DMP | **From:** PJM **To:** ■ | From; Last Saved | PM memo to ■ details strategy is to deploy the Hapsburg team to make calls to specific members of US Congress. Advises team's reluctancy to move forward until the contractual issues are resolved. | Congress | 708 |

| | | | | | Government Relations Activity: Paul Manafort | | |
|---|---|---|---|---|---|---|---|
| Date(s) | Proposed, Attempted, or Completed (P, A, C)* | Company | Sender(s)/Recipient(s) | Manafort's Participation | Political Activity | Lobbied Entity | Exhibit |
| 10/9/2012 | P | DMP | From: Paul Manafort **To:** Richard Gates | From | PM asks RG "I want to see a report from the US and Europe on what each PR firm is specifically doing on the pre-election GR plans/including work product…The report should highlight who is being briefed, importance of person, expectations, leave behinds. The more detail the better..." | | 834 |
| 10/26/2012 | P | DMP | **From:** Paul Manafort **To:** ▇▇▇▇▇ | From | PM tells ▇▇▇▇ "The new goal is to leverage this all into a ▇▇▇▇ call to VY on Monday congratulating him on having a good election. State will oppose this but State is on one side now with ▇▇▇▇ endorsement of the anti Jewish coalition." PM outlines aspects of strategy and tells ▇▇▇ to coordinate with Rick Gates. | US Presidential Administration | 840 |
| 10/28/2012 | C | DMP | **From:** ▇▇▇▇▇ **To:** Paul Manafort | To | PM suggests talking points for ▇▇▇▇▇ to the ▇▇▇▇ campaign in order to encourage him to call President Yanukovych over Ukraine elections. ▇▇▇ confirms he reached out. "I just sent something to Chicago that will be going to ▇▇▇▇▇..." | US Presidential Administration | 841 |

| | | | Government Relations Activity: Paul Manafort | | | | |
|---|---|---|---|---|---|---|---|
| Date(s) | Proposed, Attempted, or Completed (P, A, C)* | Company | Sender(s)/Recipient(s) | Manafort's Participation | Political Activity | Lobbied Entity | Exhibit |
| 5/17/2013 | C | ▇ | From: ▇ To: Paul Manafort | To | ▇ provides PM a readout of Hapsburg Group member ▇ meetings with members of US Presidential Administration including ▇, and discussions with them regarding Ukraine. | US Presidential Administration | 852 |
| 5/17/2013 | C | ▇ | From: ▇ To: Paul Manafort | To | ▇ provides PM readout of Hapsburg Group member ▇ meetings with members of Congress, and discussions regarding Ukraine. | Members of Congress | 853 |
| 9/6/2013 | P | ▇ | From: Paul Manafort To: ▇ Rick Gates; K. Kilimnik | From | PM tasks ▇ and Gates to brief key members of Congress regarding Tymoshenko's appeal in Ukraine. "Rick you should use the ▇ channel to make certain that things are understood properly." | US Congressional members | 860 |
| 12/19/2013 | P | DMP | From: Paul Manafort To: ▇ ; Rick Gates | From | PM e-mails article re Euromaidan protestors and tells ▇ "This ought to be pushed hard, especially with ▇ | US Congressional members; US State Department | 869 |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| | | | **Government Relations Activity: Paul Manafort** | | | | |
| Date(s) | Proposed, Attempted, or Completed (P, A, C)* | Company | Sender(s)/Recipient(s) | Manafort's Participation | Political Activity | Lobbied Entity | Exhibit |
| 9/9/2011 | P | ▮; DMP | From: ▮▮▮ To: Paul Manafort Cc: ▮▮ | To | Arranging a meeting for a Ukrainian delegation with senior-level Hill staffers and foreign policy scholars and editors | ▮▮▮ | 1072 |
| 9/19/2012 | P | ▮ | (Email chain) Participants: ▮▮ Konstantin Kilimnik | Referenced | Email from ▮ discussing outreach to re: Senate resolution on Tymoshenko's release and writes "Paul works through his channels and is sending the same messages." | unidentified "channels" | 1172 |
| 3/13/2013 | C | ▮ | From: ▮▮ To: ▮ | Referenced | Manafort received two calls from the Hill re: ▮ visit. | Congress | 1275 |
| 9/19/2012 | C | ▮; DMP | (Email chain) Participants: Paul Manafort; Rick Gates; ▮; Konstantin Kilimnik; ▮ | Cc | Manafort directed urgent contact recommendations to Gates regarding Senate resolution on Tymoshenko | ▮▮ | 1308 |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| colspan="8" | **Government Relations Activity: Paul Manafort** |
| **Date(s)** | **Proposed, Attempted, or Completed (P, A, C)*** | **Company** | **Sender(s)/Recipient(s)** | **Manafort's Participation** | **Political Activity** | **Lobbied Entity** | **Exhibit** |
| 2/23/2013 | P | DMP | (Email chain) **Participants:** ▮▮▮▮ ; Rick Gates; Paul Manafort | Cc | Email coordinating meetings for ▮▮▮▮ | White House; Congress | 1316 |
| 2/27/2013 | P | DMP | **To:** Rick Gates **From:** ▮▮▮▮ **Cc:** ▮▮▮▮ Paul Manafort | Cc | Gates provides priority meetings for ▮▮▮▮ visit | House; Senate; Senate Foreign Relations Committee | 1320 |
| 2/27/2013 | P | DMP | **From:** Friedman **To:** Paul Manafort; ▮▮▮▮ Konstantin Kilimnik | To | ▮▮▮▮ emails updates from ▮▮ a; mentions ▮▮▮▮ DC trip | political meetings | 1321 |
| 2/28/2013 | C | DMP | **From:** Rick Gates **To:** Paul Manafort **Cc:** ▮▮▮▮ | To | Gates provided talking point to ▮▮▮▮ re: meetings | - | 1322 |
| 3/1/2013 | C | DMP | **From:** Rick Gates **To:** ▮▮▮▮ **Cc:** Paul Manafort | Cc | Gates sends final meeting agenda for ▮▮▮▮ | - | 1324 |
| 3/3/2013 | C | DMP | **From:** ▮▮▮▮ **To:** Paul Manafort; ▮▮▮▮ **Cc:** Rick Gates | To | Gates provides positive updates on ▮▮▮▮ visit | All scheduled meetings attended | 1326 |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| **Government Relations Activity: Paul Manafort** | | | | | | | |
| **Date(s)** | **Proposed, Attempted, or Completed (P, A, C)*** | **Company** | **Sender(s)/Recipient(s)** | **Manafort's Participation** | **Political Activity** | **Lobbied Entity** | **Exhibit** |
| 3/5/2013 | P | DMP; ▇ | **From:** Rick Gates **To:** Paul Manafort; ▇ | To | ▇ anticipated meeting schedule | ▇ | 1327 |
| 3/15/2013 | C | DMP | **From:** ▇ **To:** Paul Manafort **Cc:** Rick Gates; Konstantin Kilimnik | To | Sager sends memo summarizing ▇ trip to DC | - | 1343 |
| 9/23/2012 | P | ▇ DMP | **From:** ▇ **To:** ▇ Paul Manafort; Rick Gates; ▇ | To | ▇ circulates documents and an agenda for H-Club meeting. The agenda includes topic of "International Activity", where "GC" and "USA" are listed. | USA (entity not specified) | 1374 |
| 12/6/2012 | P | ; DMP; ; DMP | (Email chain) **Participants:** ▇ Gates; Kilimnik; Manafort | Cc | Documents, including strategy plans, for SA report that have been edited by Manafort | - | 1400 |



| Date(s) | Proposed, Attempted, or Completed (P, A, C)* | Company | Sender(s)/Recipient(s) | Manafort's Participation | Political Activity | Lobbied Entity | Exhibit |
|---|---|---|---|---|---|---|---|
| | | | | | **Government Relations Activity: Paul Manafort** | | |
| 12/14/2012 | P | ; DMP | From: ▓ To: Rick Gates | Referenced | Email titled "Government Relations Strategy - ECFMU) | *Other primary targets are identified* | 1448 |
| 1/16/2013 | C | ; DMP | From: Rick Gates To: ▓ Cc: ▓ | (Memo) From | Gates forwards a memo from Manafort to Yakunovich re: US Congressional Resolutions H. Res. 27 and H. Res. 28, describing ▓ work | | 1453 |
| 3/14/2013 | P | ▓ | From: ▓ To: Rick Gates; Paul Manafort Cc: ▓ | To | Calendar update for meeting changes between Manafort and Congress | | 1482 |
| 3/18/2013 | C | DMP | From: ▓ To: Paul Manafort | To | Memo to PM re: upcoming briefings, Q&A about ECFMU and a question about FARA. | | 1484 |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| \multicolumn{8}{c}{**Government Relations Activity: Paul Manafort**} | | | | | | | |
| **Date(s)** | **Proposed, Attempted, or Completed (P, A, C)\*** | **Company** | **Sender(s)/Recipient(s )** | **Manafort's Participation** | **Political Activity** | **Lobbied Entity** | **Exhibit** |
| 3/18/2013 | P | DMP: ▇ | **From:** Rick Gates **To:** ▇ Cc: ▇ | Referenced | Additional proposed DC meetings for Manafort | ▇ | 1485 |
| 3/19/2013 | P | DMP: ▇ | **From:** Rick Gates **To:** ▇ | Referenced | Read message confirmation for subject "Dinner/Manafort, ▇ | ▇ | 1488 |
| 6/4/2013 | P | ▇ | **Calendar Organizer:** ▇ **Attendees** ▇ | | Meeting scheduled | ▇ | 1505 |
| 8/27/2012 | P | DMP: ▇ | (Email chain) **Participants:** Paul Manafort; Rick Gates; ▇ | From | Email chain originating from Manafort to Gates regarding recommendation for VY to call ▇ after the DNC. Manafort requests Gates vet recommendation with ▇ | ▇ | 1679 |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| colspan=8 | **Government Relations Activity: Paul Manafort** |

| Date(s) | Proposed, Attempted, or Completed (P, A, C)* | Company | Sender(s)/Recipient(s) | Manafort's Participation | Political Activity | Lobbied Entity | Exhibit |
|---|---|---|---|---|---|---|---|
| 10/30/2012 | P | ██ ; DMP | (Email chain) **Participants:** Paul Manafort; ██ Rick Gates; ██ | From | Gates forwards an email from Manafort to ██ requesting a separate strategy for outreach. | White House; Natonal Security Council | 1751 |
| 4/6/2013 | P | ██ | (Email chain) **Participants:** ██ | | Proposed GR strategy plan by ██ | ██ State Department; White House National Security Council | 1805 |



| | | | | | | | |
|---|---|---|---|---|---|---|---|
| | | | | **Government Relations Activity: Paul Manafort** | | | |
| Date(s) | Proposed, Attempted, or Completed (P, A, C)* | Company | Sender(s)/Recipient(s) | Manafort's Participation | Political Activity | Lobbied Entity | Exhibit |
| 3/6/2013 | P | | From: Rick Gates<br>To:<br>Cc: | | Arranging meetings with the National Security Council for Prime Minister (PM) ▮ upcoming visit and identifying other persons of interest for the PM to meet. | | 1935 |

# EXHIBIT 442

| | | | | | | | Manafort |
|---|---|---|---|---|---|---|---|
| Date | Proposed, Attemped, or Completed | Company | Lobbyist | Political Activity | Media Entity | Exhibit | Involvement |
| 5/31/2007 | Completed | | | Article RE: Yanukovych | Wall Street Journal | 1018 | Placed Article |
| 6/15/2011 | Proposed | | | Interview RE: Ukraine | CNBC | 1029 | |
| 7/20/2011 | Proposed | | | Set up blogs | Unspecified | 1046 | Recipient |
| 7/21/2011 | Proposed | | | Blog RE: Ukraine | CXSSR | 547 | |
| 7/22/2011 | Attempted | | | Online Commentary RE: Ukraine | Topix | 1049 | |
| 7/22/2011 | Proposed | | | Online Commentary RE: Ukraine | National Review | 1049 | |
| 7/22/2011 | Proposed | | | Online Commentary RE: Ukraine | Red State | 1049 | |

**Public Relations Activity**

GOVERNMENT EXHIBIT 442 U.S. v. MANAFORT, 1:17-cr-201(A.B.J.)

| | | Public Relations Activity | | | |
|---|---|---|---|---|---|
| **Date** | **Proposed, Attemped, or Completed** | **Political Activity** | **Media Entity** | **Exhibit** | **Manafort Involvement** |
| 8/15/2011 | Proposed | Op-Ed RE: rule of law / judicial reform in Ukraine | New York Times | 1062 | |
| 8/24/2011 | Attempted | Op-Ed RE: Ukraine | Wall Street Journal | 1065 | |
| 8/24/2011 | Completed | Op-Ed of Yanukovych | Wall Street Journal | 1068 | Recipient |
| 9/6/2011 | Proposed | Op-Ed RE: Tymoshenko | Wall Street Journal | 1070 | Author |
| 9/11/2011 | Attempted | Interview of | Wall Street Journal | 1066 | Author |
| 9/11/2011 | Proposed | Interview of | Wall Street Journal | 1067 | CC'd; Referenced |

| Public Relations Activity | | | | | | | |
|---|---|---|---|---|---|---|---|
| Date | Proposed, Attemped, or Completed | Company | Lobbyist | Political Activity | Media Entity | Exhibit | Manafort Involvement |
| 9/18/2011 | Proposed | ■ | | Outreach RE: Ukraine | Time Magazine | 1073 | Recipient |
| 9/18/2011 | Proposed | ■ | | Outreach RE: EU relations and energy | Wall Street Journal | 1073 | Recipient |
| 9/18/2011 | Proposed | ■ | | Op-Ed RE: Tymoschenko | Unspecified | 1073 | Recipient |
| 9/20/2011 | Proposed | ■ | | Outreach RE: Ukraine | Wall Street Journal | 1074 | Approver |
| 9/21/2011 | Attempted | ■ | | Article RE: Ukraine | Wall Street Journal | 549 | |
| 10/12/2011 | Attempted | ■ | | Interview of ■ | Wall Street Journal | 1075 | Recipient |
| 10/19/2011 | Proposed | ■ | | Interview of ■ | Washington Times | 1076 | |

| | | | | Public Relations Activity | | | |
|---|---|---|---|---|---|---|---|
| Date | Proposed, Attemped, or Completed | Company | Lobbyist | Political Activity | Media Entity | Exhibit | Manafort Involvement |
| 10/19/2011 | Proposed | | | Interview of ▮ | Foreign Policy | 1076 | |
| 10/19/2011 | Proposed | | | Interview of ▮ | Bloomberg BNA | 1076 | |
| 10/22/2011 | Completed | | | Outreach RE: Tymoshenko | Wall Street Journal | 1077 | Recipient |
| 12/17/2011 | Proposed | | | Interview of ▮ | Bloomberg Television | 1081 | Recipient (intended) |
| 12/23/2011 | Completed | | | Article RE: Ukraine | Red State | 1082 | Recipient |
| 1/5/2012 | Proposed | | | Interview of ▮ | Wall Street Journal | 1083 | |
| 1/14/2012 | Proposed | | | Blog RE: Ukraine | CXSSR | 1084 | Recipient |

| | | Public Relations Activity | | | | | |
|---|---|---|---|---|---|---|---|
| Date | Proposed, Attemped, or Completed | Company | Lobbyist | Political Activity | Media Entity | Exhibit | Manafort Involvement |
| 2/3/2012 | Proposed | | | Interview RE: Ukraine | Wall Street Journal | 1088 | Recipient |
| 3/12/2012 | Proposed | | | Interview of ▮ | Bloomberg | 610 | |
| 4/8/2012 | Proposed | | | Public Affairs Campaign in the US and Europe | US media | 569 | Author |
| 4/11/2012 | Proposed | | | PR for ▮ in Europe and US | US media | 570 | Author |
| 5/10/2012 | Attempted | | | Outreach RE: Ukraine | New York Times | 1616 | |

| | | | | | Public Relations Activity | | | | |

| Date | Proposed, Attemped, or Completed | Company | Lobbyist | Political Activity | Media Entity | Exhibit | Manafort Involvement |
|------|------|------|------|------|------|------|------|
| 5/10/2012 | Attempted | | | Outreach RE: Ukraine | Washington Post | 1616 | |
| 5/10/2012 | Attempted | | | Outreach RE: Ukraine | Foreign Policy | 1616 | |
| 5/10/2012 | Attempted | | | Outreach RE: Ukraine | NPR | 1616 | |
| 5/10/2012 | Attempted | | | Outreach RE: Ukraine | Bloomberg | 1616 | |
| 5/10/2012 | Attempted | | | Outreach RE: Ukraine | Reuters | 1616 | |
| 5/10/2012 | Attempted | | | Outreach RE: Ukraine | Christian Science Monitor | 1616 | |

| Public Relations Activity | | | | | | | |
|---|---|---|---|---|---|---|---|
| Date | Proposed, Attemped, or Completed | Company | Lobbyist | Political Activity | Media Entity | Exhibit | Manafort Involvement |
| 5/10/2012 | Attempted | ███████ | | Outreach RE: Ukraine | Associated Press | 1616 | |
| 5/17/2012 | Proposed | ███████ | | Outreach RE: ██████ | Washington Times | 1099 | |
| 5/19/2012 | Attempted | ███████ | | Interview RE: Ukraine | Washington Times | 578 | |
| 5/28/2012 | Completed | ███████ | | Interview of ██████ | Bloomberg | 581 | |
| 5/28/2012 | Completed | ███████ | | Article RE: Ukraine | Washington Times | 581 | |

| | | | | Public Relations Activity | | | |
|---|---|---|---|---|---|---|---|
| **Date** | **Proposed, Attemped, or Completed** | **Company** | **Lobbyist** | **Political Activity** | **Media Entity** | **Exhibit** | **Manafort Involvement** |
| 5/29/2012 | Attempted | | | Outreach RE: | Washington Times | 1100 | |
| 5/29/2012 | Attempted | | | Interview of | Bloomberg Television | 1100 | |
| 6/6/2012 | Completed | | | Outreach RE: Skadden Report | CQ Roll Call | 1645 | |
| 6/20/2012 | Completed | | | Blog RE: Ukraine | CXSSR | 1103 | |
| 6/26/2012 | Proposed | | | Outreach RE: Visit | NPR | 1656 | |
| 6/26/2012 | Proposed | | | Outreach RE: Visit | National Journal | 1656 | |
| 6/26/2012 | Proposed | | | Outreach RE: Visit | Washinton Post | 1656 | |

| Date | Proposed, Attemped, or Completed | Company | Lobbyist | Political Activity | Media Entity | Exhibit | Manafort Involvement |
|------|------|------|------|------|------|------|------|
| | | | | **Public Relations Activity** | | | |
| 6/26/2012 | Proposed | | | Outreach RE: ⬛ Visit | Wall Street Journal | 1656 | |
| 6/26/2012 | Proposed | | | Outreach RE: ⬛ Visit | Atlantic | 1656 | |
| 6/26/2012 | Proposed | | | Outreach RE: ⬛ Visit | Foreign Policy | 1656 | |
| 6/26/2012 | Proposed | | | Outreach RE: ⬛ Visit | New Republic | 1656 | |
| 7/11/2012 | Proposed | | | Op-Ed from ⬛ | Wall Street Journal | 1107 | |
| 7/11/2012 | Proposed | | | Op-Ed from ⬛ | Washington Times | 1107 | |
| 7/12/2012 | Proposed | | | Op-Ed from ⬛ | "US political and biz establishment" | 1110 | |

| Public Relations Activity | | | | | | | |
|---|---|---|---|---|---|---|---|
| **Date** | **Proposed, Attemped, or Completed** | **Company** | **Lobbyist** | **Political Activity** | **Media Entity** | **Exhibit** | **Manafort Involvement** |
| 7/17/2012 | Proposed | ███████ | | Interview of ██████ | Bloomberg | 1111 | |
| 7/18/2012 | Proposed | | | Outreach RE: Skadden Report | Foreign Policy | 2062 | |
| 7/18/2012 | Proposed | | | Outreach RE: Skadden Report | New York Times | 2062 | |
| 7/20/2012 | Proposed | | | Op-Ed from ██████ | (seeking placement) | 1114 | |
| 7/29/2012 | Proposed | | | Op-Ed from ██████ | Wall Street Journal | 1123 | |
| 7/30/2012 | Proposed | | | Op-Ed from ██████ | Wall Street Journal | 1124 | |

| | | Public Relations Activity | | | | | |
|---|---|---|---|---|---|---|---|
| Date | Proposed, Attemped, or Completed | Company | Lobbyist | Political Activity | Media Entity | Exhibit | Manafort Involvement |
| 7/30/2012 | Proposed | | | Op-Ed from | Washington Post or CQ Roll Call | 1125 | |
| 7/30/2012 | Proposed | | | Interview of | Bloomberg Television | 1126 | |
| 7/30/2012 | Completed | | | Op-Ed from | CQ Roll Call | 1128 | |
| 7/30/2012 | Completed | | | Op-Ed from | CQ Roll Call | 1130 | |
| 7/30/2012 | Proposed | | | Interview of | Bloomberg Television | 1130 | |
| 7/30/2012 | Proposed | | | Interview of | Reuters | 1130 | |

| | | Public Relations Activity | | | | | |
|---|---|---|---|---|---|---|---|
| **Date** | **Proposed, Attemped, or Completed** | **Company** | **Lobbyist** | **Political Activity** | **Media Entity** | **Exhibit** | **Manafort Involvement** |
| 7/31/2012 | Completed | | | Op-Ed from | CQ Roll Call | 1131 | |
| 7/31/2012 | Proposed | | | Interview of | Bloomberg Television | 1131 | |
| 7/31/2012 | Proposed | | | Interview of | Reuters | 1131 | |
| 7/31/2012 | Attempted | | | Interview of | Bloomberg Television | 1132 | CC'd |
| 7/31/2012 | Completed | | | Interview of | Reuters | 1132 | CC'd |
| 7/31/2012 | Completed | | | Op-Ed from | CQ Roll Call | 1134 | |
| 7/31/2012 | Proposed | | | Interview of | Bloomberg Television | 1136 | |

| | | | Public Relations Activity | | | | |
|---|---|---|---|---|---|---|---|
| **Date** | **Proposed, Attemped, or Completed** | **Company** | **Lobbyist** | **Political Activity** | **Media Entity** | **Exhibit** | **Manafort Involvement** |
| 7/31/2012 | Proposed | | | Interview of | Reuters | 1136 | |
| 8/3/2012 | Proposed | | | Interview of | Bloomberg | 1141 | |
| 8/7/2012 | Completed | | | Interview with | New York Times | 1674 | |
| 8/7/2012 | Completed | | | Interview with | Wall Street Journal | 1674 | |
| 8/7/2012 | Completed | | | Interview with | Foreign Policy | 1674 | |
| 8/7/2012 | Completed | | | Interview with | Time Magazine | 1674 | |
| 8/7/2012 | Completed | | | Op-Ed of | Washington | 1674 | |
| 8/7/2012 | Completed | | | Interview with | Bloomberg | 1674 | |

| Public Relations Activity | | | | | | | |
| Date | Proposed, Attemped, or Completed | Company | Lobbyist | Political Activity | Media Entity | Exhibit | Manafort Involvement |
|---|---|---|---|---|---|---|---|
| 8/7/2012 | Completed | ██████ | | Interview with ████ | Reuters | 1674 | |
| 8/7/2012 | Completed | ██████ | | Op-Ed for ████ | CQ Roll Call | 1674 | |
| 8/30/2012 | Proposed | ██████ | | Interview with ███ | Wall Street Journal | 1682 | |
| 8/30/2012 | Proposed | ██████ | | Interview with ███ | New York Times | 1682 | |
| 8/30/2012 | Proposed | ██████ | | Interview with ███ | Washington Post | 1682 | |

| Public Relations Activity | | | | | | | |
|---|---|---|---|---|---|---|---|
| Date | Proposed, Attemped, or Completed | Company | Lobbyist | Political Activity | Media Entity | Exhibit | Manafort Involvement |
| 9/11/2012 | Proposed | ██████ | | Interview with ██████ | Bloomberg | 1685 | |
| 9/22/2012 | Attempted | ██████ | | Interview of ██████ | Wall Street Journal | 590 | CC |
| 9/26/2012 | Proposed | ██████ | | Outreach RE: Skadden Report | Washington Post | 1390 | |
| 9/26/2012 | Proposed | ██████ | | Outreach RE: Skadden Report | The Weekly Standard | 1390 | |
| 9/26/2012 | Proposed | ██████ | | Outreach RE: Skadden Report | National Review | 1390 | |
| 9/29/2012 | Completed | ██████ | | Article RE: engagement with ██████ | CXSSR | 1181 | |
| 10/2/2012 | Proposed | ██████ | | US Media Outreach RE: Skadden Report | Bloomberg | 515 | Author |

| | | | | Public Relations Activity | | | |
|---|---|---|---|---|---|---|---|
| Date | Proposed, Attemped, or Completed | Company | Lobbyist | Political Activity | Media Entity | Exhibit | Manafort Involvement |
| 10/2/2012 | Completed | | | Outreach RE: Skadden Report | New York Times | 2102 | |
| 10/15/2012 | Attempted | | | Article RE: Ukraine | Associated Press | 519 | Author |
| 10/15/2012 | Completed | | | Op-Ed from Hapsburg figure | Wall Street Journal | 835 | Editor |
| 10/18/2012 | Attempted | | | Op-Ed by ▮ | Wall Street Journal | 1206 | |
| 10/24/2012 | Proposed | | | Op-Ed from Hapsburg figure | New York Times | 837 | Proposes Article |
| 10/24/2012 | Attempted | | | Article RE: Ukraine and Clinton | New York Post; Blogs | 838 | Placed Article |
| 10/24/2012 | Completed | | | Outreach RE: Ukraine | Diplomatic Courier | 1433 | |

| | | Public Relations Activity | | | | | |
|---|---|---|---|---|---|---|---|
| Date | Proposed, Attemped, or Completed | Company | Lobbyist | Political Activity | Media Entity | Exhibit | Manafort Involvement |
| 10/24/2012 | Completed | | | Outreach RE: Ukraine | Christian Science Monitor | 1433 | |
| 10/24/2012 | Completed | | | Outreach RE: Ukraine | National Journal | 1433 | |
| 10/24/2012 | Completed | | | Outreach RE: Ukraine | Forbes | 1433 | |
| 10/25/2012 | Proposed | | | Outreach RE: Ukraine | Washington Times | 839 | Recipient |
| 10/27/2012 | Proposed | | | Meeting RE: Ukraine | Washington Times | 598 | |
| 11/20/2012 | Proposed | | | Outreach RE: visit | Wall Street Journal | 1439 | |
| 11/20/2012 | Proposed | | | Outreach RE: visit | Foreign Policy | 1439 | |

| Public Relations Activity | | | | | | | |
|---|---|---|---|---|---|---|---|
| **Date** | **Proposed, Attemped, or Completed** | **Company** | **Lobbyist** | **Political Activity** | **Media Entity** | **Exhibit** | **Manafort Involvement** |
| 11/20/2012 | Proposed | | | Outreach RE: ██████ visit | Bloomberg | 1439 | |
| 11/26/2012 | Attempted | | | Op-Ed for ██████ | The Hill | 1759 | |
| 12/6/2012 | Proposed | | | Outreach RE: Skadden Report | New York Times | 1402 | |
| 12/7/2012 | Attempted | | | Article RE: Ukraine | Wall Street Journal | 1245 | |
| 12/8/2012 | Proposed | | | Conference RE: Ukraine | Red State | 1246 | |
| 12/10/2012 | Attempted | | | Outreach RE: Skadden Report | New York Times | 1403 | |
| 12/11/2012 | Attempted | | | Outreach RE: Skadden Report | New York Times | 1404 | |

| | | Public Relations Activity | | | | | |
|---|---|---|---|---|---|---|---|
| Date | Proposed, Attemped, or Completed | Company | Lobbyist | Political Activity | Media Entity | Exhibit | Manafort Involvement |
| 12/11/2012 | Completed | | | Outreach RE: Skadden Report | New York Times | 2108 | |
| 12/11/2012 | Completed | | | Outreach RE: Skadden Report | New York Times | 2109 | |
| 12/11/2012 | Completed | | | Outreach RE: Skadden Report | New York Times | 2110 | |
| 12/11/2012 | Completed | | | Outreach RE: Skadden Report | New York Times | 2111 | |
| 12/11/2012 | Completed | | | Outreach RE: Skadden Report | New York Times | 2112 | |

| Public Relations Activity | | | | | | | |
|---|---|---|---|---|---|---|---|
| Date | Proposed, Attemped, or Completed | Company | Lobbyist | Political Activity | Media Entity | Exhibit | Manafort Involvement |
| 12/12/2012 | Completed | | | Outreach RE: Skadden Report | New York Times | 2116 | |
| 12/12/2012 | Completed | | | Outreach RE: Skadden Report | New York Times | 2117 | |
| 12/12/2012 | Completed | | | Outreach RE: Skadden Report | New York Times | 2118 | |
| 12/14/2012 | Proposed | | | Outreach RE: Skadden Report | Bloomberg | 1772 | |

| | | Public Relations Activity | | | | | |
|---|---|---|---|---|---|---|---|
| Date | Proposed, Attemped, or Completed | Company | Lobbyist | Political Activity | Media Entity | Exhibit | Manafort Involvement |
| 12/14/2012 | Proposed | ███ | | Op-Ed RE: Skadden Report | Wall Street Journal | 1772 | |
| 12/14/2012 | Proposed | ███ | | Op-Ed RE: Ukraine | New York Times or Foreign Policy | 1772 | |
| 2/20/2013 | Proposed | ███ | | Article RE: Ukraine | CXSSR | 1312 | |
| 2/21/2013 | Completed | ███ | | Article RE: Ukraine | CXSSR | 1314 | Recipient |
| 2/22/2013 | Proposed | ███ | | Interview of ███ | Fox or CNN | 1315 | |
| 2/24/2013 | Proposed | ███ | | Op-Ed from ███ | Unspecified | 691 | Author |

| Public Relations Activity | | | | | | | |
|---|---|---|---|---|---|---|---|
| Date | Proposed, Attemped, or Completed | Company | Lobbyist | Political Activity | Media Entity | Exhibit | Manafort Involvement |
| 3/1/2013 | Proposed | ███████ | | Op-Ed for ██████ | The Hill | 1323 | Provides feedback |
| 3/1/2013 | Proposed | ███████ | | Op-Ed for ██████ | The Hill | 1324 | CC'd |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| **Public Relations Activity** | | | | | | | |
| **Date** | **Proposed, Attemped, or Completed** | **Company** | **Lobbyist** | **Political Activity** | **Media Entity** | **Exhibit** | **Manafort Involvement** |
| 3/5/2013 | Proposed | ██████████████ | | Interview of ████ | CXSSR | 1329 | |
| 3/10/2013 | Proposed | | | Op-Ed for ████ | | 1334 | Recipient |
| 3/12/2013 | Attempted | | | Op-Ed RE: Ukraine | Wall Street Journal | 1274 | |
| 3/12/2013 | Attempted | | | Interview of ████ | Bloomberg | 1478 | |
| 3/14/2013 | Proposed | | | Interview of | Bloomberg | 1333 | Recipient |
| 3/14/2013 | Attempted | | | Interview of | Time Magazine | 1339 | Recipient; "Thanks for update" |
| 3/16/2013 | Completed | | | Interview of | Bloomberg Television | 694 | Author |
| 3/16/2013 | Completed | | | Interview of ████ | Blooberg Print | 694 | Author |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| **Public Relations Activity** | | | | | | | |
| **Date** | **Proposed, Attemped, or Completed** | **Company** | **Lobbyist** | **Political Activity** | **Media Entity** | **Exhibit** | **Manafort Involvement** |
| 3/16/2013 | Completed | ███████████ | | Interview of ████ | Time Magazine | 694 | Author |
| 3/19/2013 | Completed | ███████████ | | Article RE: ████ | Bloomberg | 1344 | |
| 3/20/2013 | Proposed | ███████████ | | Op-Ed for ████ | Politico, Roll Call, The Hill or National Journal | 1798 | |

| | | | | Public Relations Activity | | | |
|---|---|---|---|---|---|---|---|
| Date | Proposed, Attemped, or Completed | Company | Lobbyist | Political Activity | Media Entity | Exhibit | Manafort Involvement |
| 3/20/2013 | Proposed | ███████████ | | Interview with ██████ | Wall Street Journal | 1798 | |

| | | | | Public Relations Activity | | | |
|---|---|---|---|---|---|---|---|
| Date | Proposed, Attemped, or Completed | Company | Lobbyist | Political Activity | Media Entity | Exhibit | Manafort Involvement |
| 3/20/2013 | Proposed | | | Interview with ▮ | Christian Science Monitor | 1798 | |
| 3/20/2013 | Proposed | | | Outreach RE: ▮ visit | Daily Caller, Red State | 1798 | |
| 3/20/2013 | Completed | | | Interview with | The Hill | 1798 | |
| 3/20/2013 | Completed | | | Interview with | Foreign Policy | 1798 | |

| Public Relations Activity | | | | | | | |
|---|---|---|---|---|---|---|---|
| Date | Proposed, Attemped, or Completed | Company | Lobbyist | Political Activity | Media Entity | Exhibit | Manafort Involvement |
| 3/20/2013 | Completed | | | Interview with █ | Time Magazine | 1798 | |
| 3/20/2013 | Completed | | | Op-Ed for █ | Christian Science | 1798 | |
| 3/26/2013 | Attempted | | | Op-Ed by █ | Christian Science M. | 1277 | |
| 4/5/2013 | Proposed | | | Op-Ed from Ukraine Government | Washington Post | 846 | Author |
| 4/9/2013 | Attempted | | | Op-Ed for █ | Unspecified | 1808 | |
| 4/19/2013 | Proposed | | | Interview RE: Ukraine | Bloomberg | 615 | |

| | | | | **Public Relations Activity** | | | |
|---|---|---|---|---|---|---|---|
| **Date** | **Proposed, Attemped, or Completed** | **Company** | **Lobbyist** | **Political Activity** | **Media Entity** | **Exhibit** | **Manafort Involvement** |
| 4/19/2013 | Proposed | ███████ | | Interview RE: Ukraine | CNBC | 615 | |
| 4/19/2013 | Proposed | ███████ | | Interview RE: Ukraine | Wall Street Journal | 615 | |
| 4/19/2013 | Completed | ███████ | | Op-Ed for ████ | The Hill | 1810 | |

| | Public Relations Activity | | | | | | |
|---|---|---|---|---|---|---|---|
| Date | Proposed, Attemped, or Completed | Company | Lobbyist | Political Activity | Media Entity | Exhibit | Manafort Involvement |
| 4/19/2013 | Completed | ███████████ | | Op-Ed for ███ | Christian Science Monitor | 1810 | |
| 4/19/2013 | Completed | ███████████ | | Outreach RE: Ukraine | Washington Post | 1810 | |
| 4/19/2013 | Completed | ███████████ | | Outreach RE: Ukraine | Wall Street Journal | 1810 | |

| Public Relations Activity | | | | | | | |
|---|---|---|---|---|---|---|---|
| **Date** | **Proposed, Attemped, or Completed** | **Company** | **Lobbyist** | **Political Activity** | **Media Entity** | **Exhibit** | **Manafort Involvement** |
| 4/19/2013 | Completed | ██████ | | Outreach RE: Ukraine | New York Times | 1810 | |
| 4/19/2013 | Proposed | ██████ | | Op-Ed for ████ | Unspecified | 1810 | |
| 4/19/2013 | Proposed | ██████ | | Outreach RE: Ukraine Energy | Washington Post | 1810 | |
| 4/19/2013 | Proposed | ██████ | | Outreach RE: Ukraine Energy | Wall Street Journal | 1810 | |
| 4/19/2013 | Proposed | ██████ | | Op-Ed by "retired US Navy Admiral" | Unspecified | 1810 | |

| Public Relations Activity | | | | | | | |
|---|---|---|---|---|---|---|---|
| Date | Proposed, Attemped, or Completed | Company | Lobbyist | Political Activity | Media Entity | Exhibit | Manafort Involvement |
| 4/22/2013 | Completed | ███████ | | Op-Ed from ████████ | "a significant publication in Washington DC" | 616 | Author |
| 4/22/2013 | Completed | | | Op-Ed from ████ | Christian Science Monitor | 616 | Author |
| 4/22/2013 | Completed | | | Messaging RE: Ukraine | Washington Post | 616 | Author |
| 4/22/2013 | Completed | | | Messaging RE: Ukraine | Wall Street Journal | 616 | Author |
| 4/22/2013 | Completed | | | Messaging RE: Ukraine | New York Times | 616 | Author |

| Public Relations Activity | | | | | | | |
|---|---|---|---|---|---|---|---|
| Date | Proposed, Attemped, or Completed | Company | Lobbyist | Political Activity | Media Entity | Exhibit | Manafort Involvement |
| 4/22/2013 | Completed | ██████ | | Messaging RE: Ukraine | Bloggers | 616 | Author |
| 4/22/2013 | Proposed | ██████ | | Op-Ed from ████ | Influential newspaper | 616 | Author |
| 4/22/2013 | Proposed | ██████ | | Op-Ed from a retired US Navy Admiral | Unspecified | 616 | Author |
| 4/25/2013 | Proposed | ██████ | | Op-Eds and Interviews RE: Intellectual Property Rights | Unspecified | 698 | Author |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| **Public Relations Activity** | | | | | | | |
| **Date** | **Proposed, Attemped, or Completed** | **Company** | **Lobbyist** | **Political Activity** | **Media Entity** | **Exhibit** | **Manafort Involvement** |
| 4/25/2013 | Completed | ███████ | ███████ | Op-Eds from Hapsburg figures | Unspecified | 712 | Author |
| 4/25/2013 | Completed | ███████ | ███████ | Set up blogs | Unspecified | 712 | Author |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| **Public Relations Activity** | | | | | | | |
| **Date** | **Proposed, Attemped, or Completed** | **Company** | **Lobbyist** | **Political Activity** | **Media Entity** | **Exhibit** | **Manafort Involvement** |
| 5/8/2013 | Proposed | ██████ | | ████ Meeting RE: Energy | Wall Street Journal | 700 | (last saved) |
| 5/8/2013 | Completed | | | ████ Meeting RE: Energy | Wall Street Journal | 703 | |
| 5/13/2013 | Completed | | | Interview of ████ | New York Times | 704 | |
| 5/10/2013 | Attempted | | | Interview of Ukraine Finance Minister | New York Times | 1819 | |
| 5/16/2013 | Proposed | | | Article RE: Tymoshenko | US media | 851 | Proposes Article |
| 6/14/2013 | Proposed | | | Article RE: US Congressman and Ukraine | US media | 854 | Proposes Article |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| **Public Relations Activity** | | | | | | | |
| **Date** | **Proposed, Attemped, or Completed** | **Company** | **Lobbyist** | **Political Activity** | **Media Entity** | **Exhibit** | **Manafort Involvement** |
| 8/16/2013 | Proposed | | | Outreach RE: Ukraine | US media | 858 | Proposes Article |
| 9/18/2013 | Proposed | | | Outreach RE: Ukraine | CNN; NY Times | 862 | Proposes Articles |
| 2/3/2014 | Attempted | | | Op-Ed by | New York Times | 1281 | |
| 1/31/2014 | Attempted | | | Op-Ed by | New York Times | 1280 | Document incorporates some of PM's |
| 2/4/2014 | Attempted | | | Op-Ed by | New York Times | 1284 | "Send back to RG and PM" |
| 2/4/2014 | Attempted | | | Op-Ed by | New York Times | 1285 | "Still waiting for PJM approval" |

| | | Public Relations Activity | | | | | |
|---|---|---|---|---|---|---|---|
| Date | Proposed, Attemped, or Completed | Company | Lobbyist | Political Activity | Media Entity | Exhibit | Manafort Involvement |
| 2/5/2014 | Attempted | | | Op-Ed by ███ | New York Times | 1287 | Additional paragraph was "an attempt to include some |
| 2/7/2014 | Attempted | | | Op-Ed by ███ | New York Times | 1288 | |
| 2/18/2014 | Attempted | | | Op-Ed by ███ | New York Times | 1289 | |
| 2/20/2014 | Completed | | | Op-Ed by ███ | New York Times | 1291 | Recipient |
| 5/19/2012 | Attempted | | | Interview RE: Ukraine | CXSSR | 578 | |
| 9/22/2012 | Attempted | | | Yanukovych Statement RE: ███ Resolution | Unspecified | 591 | Author |

| Public Relations Activity | | | | | | | |
|---|---|---|---|---|---|---|---|
| Date | Proposed, Attemped, or Completed | Company | Lobbyist | Political Activity | Media Entity | Exhibit | Manafort Involvement |
| 9/23/2012 | Proposed | | | Interview of | Wall Street Journal | 592 | |
| 12/15/2011 | Proposed | | | Interview    of | Bloomberg Television | 1080 | Recipient |
| 12/15/2011 | Proposed | | | Interview RE: Ukraine | Wall Street Journal | 1080 | Recipient |
| 12/15/2011 | Proposed | | | Online Commentary RE: Ukraine | Major DC Political Site | 1080 | Recipient |
| 12/15/2011 | Proposed | | | Set up blog | CXSSR | 1080 | Recipient |
| 12/15/2011 | Completed | | | Article RE: | Red State | 1080 | Recipient |

| Public Relations Activity | | | | | | | |
|---|---|---|---|---|---|---|---|
| Date | Proposed, Attemped, or Completed | Company | Lobbyist | Political Activity | Media Entity | Exhibit | Manafort Involvement |
| 7/1/2007 - 8/31/2007 | Proposed | | | Outreach RE: Ukraine | New York Times | 1019 | |
| 7/1/2007 - 8/31/2007 | Proposed | | | Outreach RE: Ukraine | Wall Street Journal | 1019 | |
| 7/1/2007 - 8/31/2007 | Proposed | | | Outreach RE: Ukraine | Washington Post | 1019 | |
| 7/1/2007 - 8/31/2007 | Proposed | | | Outreach RE: Ukraine | Forbes | 1019 | |
| 7/1/2007 - 8/31/2007 | Proposed | | | Outreach RE: Ukraine | Fortune | 1019 | |
| 7/1/2007 - 8/31/2007 | Proposed | | | Outreach RE: Ukraine | Time Magazine | 1019 | |
| 7/1/2007 - 8/31/2007 | Proposed | | | Outreach RE: Ukraine | CNN | 1019 | |

# EXHIBIT 443

| Outreach to Congressman ███████████ | | | |
|---|---|---|---|
| **Date** | **Event** | **Summary** | **Exhibit** |
| **Pre Manafort/Weber/Rohrabacher Dinner Meeting** | | | |
| 1/16/2013 | Manafort memo to Yanukovych regarding US Congressional Resolutions - H.R. 27 and H.R. 28 | "[w]e have reached out to ████ ████████████ . . We will brief his office and staff on the resolutions and ensure that they are not considered. | 1453 |
| 1/24/2013 | Email chain between the Office of ███████████ and Paul Manafort's office; Subject: RE: Meeting with ███████████ | Gates writes to █████ - "Paul wants to setup a dinner among you, he and █████████████ . . ." █████ office responds, cc Paul Manafort, " spoke to █████████ █████████. . and he agreed to a dinner with Paul and █████ | 1455 |
| 2/18/2013 | Email from Gates to █████ and ██████████ Subject: Re: Deliverables | Gates states to ████████ " ████████████ and Staff (███ need to discuss with you - need you to meet regardless of the scheduled dinner)." | 1784 |

GOVERNMENT EXHIBIT 443 U.S. v. MANAFORT, 1:17-cr-201 (A.B.J.)

| Outreach to Congressman ███████ | | | |
|---|---|---|---|
| **Date** | **Event** | **Summary** | **Exhibit** |
| | | | |
| 2/25/2013 | Email chain between Gates and the ████████; Subject: Re: ██ Visit to US | Adjusting to ███████ schedule for ███████ visit; ████ and ███ included. | 1469 |
| 2/28/2013 | Email chain between Gates, ████████; Subject: ██ Meeting | ██████ and Gates discussing setting up meeting for ██ with ██████ | 1946 |
| 4/27/2013 | Email chain between Gates and ███████ Subject: Re: ██ Update | ███████ states "We have circled back with Rep. ██████ office and the Congressman is unable to meet with ██ before he departs. . ." | 1471 |

| | Outreach to Congressman ███████ | | |
|---|---|---|---|
| **Date** | **Event** | **Summary** | **Exhibit** |
| 3/6/2013 | Email chain between Gates, the ███████████████; Subject: Re: ███ Visit | Gates coordinating ███ visit. | 1477 |
| 3/14/2013 | Email chain between Manafort, Gates and ███████ Subject: FW: Manafort ███ meetings on 19th | ███████ rearranging schedule for Manafort's meetings in DC which included a meeting with Congressman ████ | 1482 |
| 3/18/2013 | ███████ memo to Manafort; Subject: Briefs for March 19 Meetings | March 19 - 7:00pm dinner with Congressman ██████████, National Republican Club of Capitol Hill. | 1484 |
| 3/18/2013 | Email chain between Gates and ███████ Subject: Briefing Materials for Paul | ███████ arranged meetings for Manafort to include Congressman ████ | 1485 |
| 3/19/2013 | Calendar; Subject: Dinner / Manafort, ███████ & ████ reservation under ███████ | Dinner with Manafort, ████ and ███████ at National Republican Club of Capitol Hill. | 1486 |

| Outreach to Congressman █████████████ | | | |
|---|---|---|---|
| **Date** | **Event** | **Summary** | **Exhibit** |
| **Post Manafort/Rohrabacher/Weber Dinner** | | | |
| 3/23/2013 | Memo; Subject: US Consultants Activity – Weekly Update | "The meeting with Cong ████████ went well.  He and I are building a plan to create a framework to promote positive interactions between the Govt of Ukraine and ████████ ████████ | 695 |
| 4/5/2013 | Email chain between Gates and ████████ Subject: Re: EU Updates | Email to Gates that states "█████ piece went out to: ████████, ████████ ████ . ." | 1947 |
| 4/19/2013 | Email chain between Gates, the ████████ and █████ Subject: Re: Report | Gates states "Paul is meeting with the President on Monday of next week. We need to put together a quarterly report with all highlights. . . Include key progress made, all relevant meetings (████████ etc). | 1810 |

| Outreach to Congressman ███████████ | | | |
|---|---|---|---|
| **Date** | **Event** | **Summary** | **Exhibit** |
| 4/21/2013 | Manafort memo ████████<br>Subject: US Consultants Activity -<br>Weekly Update | "Key members of the USG and their<br>staff that were briefed directly include:<br>████████████ . ." | 697 |
| 4/25/2013 | Email chain between Gates, the<br>█████████████<br>Subject: Update | Gates states "We need to add meetings<br>with ████████████████,<br>please take ████████ . ." | 1939 |
| 4/26/2013 | ██████ Calendar; Subject: Call<br>Rick Gates ██████████ - two<br>things see notes | "Rick now wants us to check with<br>████████ to see if he would be<br>available for meeting with ██████<br>██████ on the 8th as well. . ." | 1493 |
| 4/26/2013 | Email chain between Gates, the<br>█████████████<br>Subject: Re: Schedule Update | Gates states "Go ahead and reach out<br>to the offices for ████████ . ." | 1811 |

| Outreach to Congressman ██████ | | | |
|---|---|---|---|
| **Date** | **Event** | **Summary** | **Exhibit** |
| 5/10/2013 | ██████ Calendar; Subject: Congressman ██████ he asks if you could give him a call Friday | "Appears he met with Ukraine FM and we asked for his thoughts after the meeting, etc…" | 1498 |
| 5/12/2013 | Email chain between Gates and ██████ Subject: Re: ██████ | Gates asks if "Did we have anyone covering the ██████ meeting with ██████ I cannot remember but have no notes from it." ██████ responds "I spoke to ██ after his meeting.  Will discuss." | 1499 |
| 5/14/2013 | Manafort memo to PM ██████ Subject: Washington, DC Visits – ██████ | "Meeting with Congressman ██████ . . ██ Actions. . . Visit two Congressional districts at the request of the members - ██████ . . Build an agenda to invite ██████ █████████ and other ██████████ to come to Ukraine in the next 6 months." | 705 |

| Outreach to Congressman █████████████ | | | |
| --- | --- | --- | --- |
| **Date** | **Event** | **Summary** | **Exhibit** |
| 5/21/2013 | Email chain between Gates and ████████ Subject: Re: ████████ - | Gates asks ████████ to set up meeting in DC for ████████, President of the ████████ in Ukraine. Gates states "Ideally, we get him in with staff from ████████..." | 1417 |
| 6/7/2013 | Email chain between Gates, ████ █████ █████ and the █████ ; Subject: Re: Next ████ visit | Gates asks ████████ if ██ wants to meet with ████████ and states "████████ is very important to Ukraine." ████████ replies that ██ would be very interested. | 721 |
| 2/6/2014 | ████ Calendar; Subject: ECFMU Meeting with ████ ████ | ████ appointment to meet ████████ | 1945 |

# EXHIBIT 444

| | | | | | | |
|---|---|---|---|---|---|---|
| **Skadden Report Rollout** | | | | | | |
| **Date** | **Proposed, Attempted, or Completed (P, A, C)\*** | **Company** | **Political Activity** | **Nature of Document** | **Entity Contacted** | **Exhibit** |
| 5/16/2012 | P | ███ | Outreach | E-mail | ████████ | 625 |
| 5/16/2012 | P | ███ | Outreach | E-mail | ████████ | 625 |
| 5/18/2012 | P | | Outreach | Presentation | US media | 1351 |
| 6/1/2012 | P | | Outreach | Memo | Associated Press - ███ | 1354; 2059 |
| 6/1/2012 | P | | Outreach | Memo | Reuters - ███ | 1354; 2059 |
| 6/1/2012 | P | | Outreach | Memo | ████████ | 1354; 2059 |
| 6/1/2012 | P | ███ | Outreach | Memo | Radio Free Europe - ███ | 1354; 2059 |

GOVERNMENT EXHIBIT 444
U.S. v. MANAFORT, 17-cr-201 (A.B.J.)

| Date | Proposed, Attempted, or Completed (P, A, C)* | Company | Political Activity | Nature of Document | Entity Contacted | Exhibit |
|------|------|------|------|------|------|------|
| **Skadden Report Rollout** | | | | | | |
| 7/2/2012 | P | ▮ | Outreach | Memo | National Journal - ▮ | 1354; 2059 |
| 7/2/2012 | P | ▮ | Outreach | Memo | New York Times - Moscow Bureau | 1354; 2059 |
| 7/2/2012 | P | ▮ | Outreach | Memo | Washington Post (Moscow) - ▮ | 1354; 2059 |
| 7/2/2012 | P | ▮ | Outreach | Memo | Bloomberg (Moscow) - ▮ | 1354; 2059 |
| 7/2/2012; 11/26/2012 | P | ▮ Gates | Outreach | Memo | Director of Eastern and Strategic European Affairs at the NSC - ▮ | 1354; 2059; 1397 |
| 7/2/2012; 11/26/2012 | P | ▮ Gates | Outreach | Memo | ▮ | 354; 2059; 1397 |

| | | | | Skadden Report Rollout | | |
|---|---|---|---|---|---|---|
| **Date** | **Proposed, Attempted, or Completed (P, A, C)\*** | **Company** | **Political Activity** | **Nature of Document** | **Entity Contacted** | **Exhibit** |
| 7/2/2012; 11/26/2012 | P | Gates | Outreach | Memo | | 1354; 2059; 1397 |
| 7/2/2012; 11/26/2012 | P | Gates | Outreach | Memo | | 1354; 2059; 1397 |
| 7/2/2012; 11/26/2012 | P | Gates | Outreach | Memo | | 1354; 2059; 1397 |
| 7/2/2012; 11/26/2012 | P | Gates | Outreach | Memo | | 1354; 2059; 1397 |
| 7/2/2012; 11/26/2012 | P | Gates | Outreach | Memo | | 1354; 2059; 1397 |
| 7/2/2012; 11/26/2012 | P | Gates | Outreach | Memo | | 1354; 2059; 1397 |
| 7/2/2012; 11/26/2012 | P | Gates | Outreach | Memo | | 1354; 2059; 1397 |

| | Proposed, Attempted, or Completed | | | Nature of | | |
| Date | (P, A, C)* | Company | Political Activity | Document | Entity Contacted | Exhibit |
|---|---|---|---|---|---|---|
| **Skadden Report Rollout** | | | | | | |
| 7/2/2012; 11/26/2012 | P | Gates | Outreach | Memo | | 1354; 2059; 1397 |
| 7/2/2012; 11/26/2012 | P | Gates | Outreach | Memo | | 1354; 2059; 1397 |
| 7/2/2012; 11/26/2012 | P | Gates | Outreach | Memo | | 1354; 2059; 1397 |
| 7/2/2012; 11/26/2012 | P | Gates | Outreach | Memo | | 1354; 2059; 1397 |
| 7/2/2012; 11/26/2012 | P | Gates | Outreach | Memo | | 1354; 2059; 1397 |
| 7/2/2012; 11/26/2012 | P | Gates | Outreach | Memo | | 1354; 2059; 1397 |

| | | | **Skadden Report Rollout** | | | |
|---|---|---|---|---|---|---|
| **Date** | **Proposed, Attempted, or Completed (P, A, C)\*** | **Company** | **Political Activity** | **Nature of Document** | **Entity Contacted** | **Exhibit** |
| 7/2/2012; 11/26/2012 | P | Gates | Outreach | Memo | | 354; 2059; 1397 |
| 7/2/2012; 11/26/2012 | P | Gates | Outreach | Memo | | 354; 2059; 1397 |
| 7/2/2012; 11/26/2012 | P | Gates | Outreach | Memo | | 354; 2059; 1397 |
| 7/2/2012; 11/26/2012 | P | Gates | Outreach | Memo | | 354; 2059; 1397 |

| Date | Proposed, Attempted, or Completed (P, A, C)* | Company | Political Activity | Nature of Document | Entity Contacted | Exhibit |
|------|------|------|------|------|------|------|
| | | | **Skadden Report Rollout** | | | |
| 7/2/2012; 11/26/2012 | P | Gates | Outreach | Memo | Congressman ▮ | 1354; 2059; 1397 |
| 7/2/2012; 11/26/2012 | P | Gates | Outreach | Memo | Congressman ▮ | 1354; 2059; 1397 |
| 7/2/2012; 11/26/2012 | P | Gates | Outreach | Memo | Congressman ▮ | 1354; 2059; 1397 |
| 7/2/2012; 11/26/2012 | P | Gates | Outreach | Memo | Senator ▮ | 1354; 2059; 1397 |
| 7/2/2012; 11/26/2012 | P | Gates | Outreach | Memo | Senator ▮ | 1354; 2059; 1397 |
| 7/2/2012; 11/26/2012 | P | Gates | Outreach | Memo | Senator ▮ | 1354; 2059; 1397 |

| | | | | **Skadden Report Rollout** | | |
|---|---|---|---|---|---|---|
| **Date** | **Proposed, Attempted, or Completed (P, A, C)\*** | **Company** | **Political Activity** | **Nature of Document** | **Entity Contacted** | **Exhibit** |
| 7/2/2012; 11/26/2012 | P | Gates | Outreach | Memo | Senator | 1354; 2059; 1397 |
| 7/2/2012; 11/26/2012 | P | Gates | Outreach | Memo | Senator | 1354; 2059; 1397 |
| 7/2/2012; 11/26/2012 | P | Gates | Outreach | Memo | Senator | 1354; 2059; 1397 |
| 7/2/2012; 11/26/2012 | P | Gates | Outreach | Memo | Senator | 1354; 2059; 1397 |

| | | | | Skadden Report Rollout | | |
|---|---|---|---|---|---|---|
| Date | Proposed, Attempted, or Completed (P, A, C)* | Company | Political Activity | Nature of Document | Entity Contacted | Exhibit |
| 7/2/2012; 7/18/2012 | P | █ | Outreach | Memo | New York Times - █ | 1354; 2059; 2062 |
| 7/2/2012; 11/26/2012 | P | █ Gates | Outreach | Memo | █ | 1354; 2059; 1397 |
| 7/2/2012 | P | █ | Outreach | Memo | █ | 2059 |
| 7/18/2012 | P | █ | Briefing/General Outreach | Strategy Memo | US Media (5 outlets) | 2062 |
| 7/27/2012; 7/28/2012; 8/27/2012 | P | █ Skadden | Briefing/General Outreach | Strategy Memo | US Media | 2065; 2066; 2074 |

| | | | | Skadden Report Rollout | | | |
|---|---|---|---|---|---|---|---|
| Date | Proposed, Attempted, or Completed (P, A, C)* | Company | Political Activity | Nature of Document | Entity Contacted | | Exhibit |
| 8/30/2012 | P | ■ | Briefing | Strategy Memo | ■ | | 1365 |
| 8/30/2012 | P | ■ | Briefing | Strategy Memo | | | 1365 |
| 9/21/2012; 9/23/2012 | P | ■ Skadden | Outreach | Strategy Memo | ■ | | 2094; 1374 |
| 9/22/2012 | P | ■ | Outreach | Strategy Memo | US media | | 830 |
| 9/27/2012 | P | ■ | Outreach | Strategy Memo | Members of Senate and House | | 1726 |
| 10/2/2012 | P | ■ | Briefing | Outline | Bloomberg News | | 515 |
| 10/2/2012 | P | ■ | Outreach | Strategy Memo | Eurasia Foundation | | 1387 |
| 10/2/2012 | P | ■ Gates | Briefing | Strategy Outline | Bloomberg News | | 1390 |
| 10/2/2012 | P | ■ Gates | Briefing | Strategy Outline | ■ - Heritage Foundation | | 1390 |

| | | | | | Skadden Report Rollout | | |
|---|---|---|---|---|---|---|---|
| Date | Proposed, Attempted, or Completed (P, A, C)* | Company | Political Activity | Nature of Document | Entity Contacted | | Exhibit |
| 10/3/2012 | P | █████ | Outreach | Strategy Memo | New York Times - █████ | | 1977 |
| 10/3/2012 | P | | Outreach | Strategy Memo | Bloomberg - █████ | | 1977 |
| 10/3/2012 | P | | Outreach | Strategy Memo | NPR - █████ | | 1977 |
| 10/3/2012 | P | | Outreach | Strategy Memo | National Journal - █████ | | 1977 |
| 10/3/2012 | P | | Outreach | Strategy Memo | ███████████ | | 1977 |
| 10/3/2012 | P | | Outreach | Strategy Memo | ███████████ | | 1977 |
| 10/3/2012 | P | | Outreach | Strategy Memo | ███████████ | | 1977 |
| 10/3/2012 | P | | Outreach | Strategy Memo | ███████████ | | 1977 |
| 10/3/2012 | P | | Outreach | Strategy Memo | ███████████ | | 1977 |

| | | | | **Skadden Report Rollout** | | |
|---|---|---|---|---|---|---|
| **Date** | **Proposed, Attempted, or Completed (P, A, C)\*** | **Company** | **Political Activity** | **Nature of Document** | **Entity Contacted** | **Exhibit** |
| 10/3/2012 | P | ███ | Outreach | Strategy Memo | ███ | 977 |
| 10/3/2012 | P | ███ | Outreach | Strategy Memo | ███ | 977 |
| 10/3/2012 | P | ███ | Outreach | Strategy Memo | ███ | 977 |
| 10/3/2012 | P | ███ | Outreach | Strategy Memo | ███ | 977 |
| 10/3/2012 | P | ███ | Outreach | Strategy Memo | ███ | 977 |
| 10/3/2012 | P | ███ | Outreach | Strategy Memo | ███ | 977 |
| 10/3/2012 | P | ███ | Outreach | Strategy Memo | ███ | 977 |
| 10/3/2012 | P | ███ | Outreach | Strategy Memo | ███ | 977 |

| | | | | | | |
|---|---|---|---|---|---|---|
| **Skadden Report Rollout** | | | | | | |
| **Date** | **Proposed, Attempted, or Completed (P, A, C)\*** | **Company** | **Political Activity** | **Nature of Document** | **Entity Contacted** | **Exhibit** |
| 11/26/2012 | P | ▮ Gates | Briefing | Strategy Outline | US Journalists | 1397 |
| 11/26/2012 | P | ▮ Gates | Briefing | Strategy Outline | Bloomberg News | 1397 |
| 11/26/2012 | P | ▮ Gates | Outreach | Strategy Outline | ████████ | 397 |
| 11/26/2012 | P | ▮ Gates | Outreach | Strategy Outline | ████████ | 397 |
| 11/26/2012 | P | ▮ Gates | Outreach | Strategy Outline | ████████ | 397 |
| 11/26/2012 | P | ▮ Gates | Outreach | Strategy Outline | ████████ | 397 |
| 11/26/2012 | P | ▮ Gates | Outreach | Strategy Outline | ████████ | 397 |

| | **Skadden Report Rollout** | | | | | |
|---|---|---|---|---|---|---|
| **Date** | **Proposed, Attempted, or Completed (P, A, C)\*** | **Company** | **Political Activity** | **Nature of Document** | **Entity Contacted** | **Exhibit** |
| 11/26/2012 | P | Gates | Outreach | Strategy Outline | | 1397 |
| 11/26/2012 | P | Gates | Outreach | Strategy Outline | | 1397 |
| 11/26/2012 | P | Gates | Outreach | Strategy Outline | Politico | 1397 |
| 11/26/2012 | P | Gates | Outreach | Strategy Outline | Breitbart | 1397 |
| 11/26/2012 | P | Gates | Outreach | Strategy Outline | Daily Caller | 1397 |
| 11/26/2012 | P | Gates | Outreach | Strategy Outline | Washington Times | 1397 |
| 11/26/2012 | P | Gates | Outreach | Strategy Outline | Townhall | 1397 |
| 11/26/2012 | P | Gates | Outreach | Strategy Outline | American Spectator | 1397 |
| 11/26/2012 | P | Gates | Outreach | Strategy Outline | United Liberty | 1397 |

| | | | | Skadden Report Rollout | | | |
|---|---|---|---|---|---|---|---|
| Date | Proposed, Attempted, or Completed (P, A, C)* | Company | Political Activity | Nature of Document | Entity Contacted | | Exhibit |
| 11/26/2012 | P | ▮; Gates | Outreach | Strategy Outline | ▮ | | 1397 |
| 12/11/2012 | P | ▮ | Outreach | E-mail | ▮ | | 1771 |
| 12/12/2012 | C | Skadden | Briefing | E-mail | ▮ | | 2117 |
| 12/10/2012; 12/11/2012; 12/12/2012; | C | ▮ Skadden | Outreach; Briefing | Phone Call; E-mail | ▮ | | 1403; 1405; 2108; 2109; 2110; 2111; 2112; 1251; 2116; 2119; |
| 12/6/2012 | C | ▮ Skadden | Interview | Strategy Outline | ▮ | | 1402 |

# EXHIBIT 448

| | Legislation | | | | |
|---|---|---|---|---|---|
| Date(s) | Proposed, Attempted, or Completed (P, A, C)* | Company | Political Activity | Lobbied Entity | Exhibit |
| 5/25/2012 | C | ███████ | Meeting (Inhofe Resolution) | Senate | 1635 |
| 5/25/2012 | P | ███████ | Outreach (Inhofe Resolution) | Congress | 1636 |
| 5/30/2012 | C | ███████ | Meeting (Inhofe Resolution) | Senate | 1638 |
| 5/30/2012 | C | | Outreach (Inhofe Resolution) | ███████ (Senator ███ Office) | 1639 |

GOVERNMENT EXHIBIT 448
U.S. v. MANAFORT, 1:17-cr-201 (A.B.J.)

| Date(s) | Proposed, Attempted, or Completed (P, A, C)* | Company | | Political Activity | Lobbied Entity | Exhibit |
|---------|---------------------------------------------|---------|---|--------------------|----------------|---------|
| 5/30/2012 | C | █████ | | Outreach (Inhofe Resolution) | Senate | 1640 |
| 5/30/2012 | C | ██████ | | Outreach (Inhofe Resolution) | ████████ (Senator ███ Office) | 1644 |
| 7/17/2012 | P | █████ | Gates | Outreach (Smith Resolution) | US Congress | 1672 |
| 9/19/2012 | P | █████ | | Outreach (Durbin Resolution) | ████████ (Senator ███ Office) | 1917 |

| Date(s) | Proposed, Attempted, or Completed (P, A, C)* | Company | Political Activity | Lobbied Entity | Exhibit |
|---|---|---|---|---|---|
| 9/14/2012 | P |  | Outreach (Durbin Resolution) | US Senators on Senate Foreign Relations Committee | 1691 |
| 9/17/2012 | P |  | Outreach (Durbin Resolution) | Roll Call | 1169 |
| 9/17/2012 | A |  | Outreach (Inhofe Resolution) | Republican House Leadership | 1695 |
| 9/17/2012 | A |  | Outreach (Smith Resolution) | Congress | 1695 |

| Date(s) | Proposed, Attempted, or Completed (P, A, C)* | Company | Political Activity | Lobbied Entity | Exhibit |
|---------|-----------------------------------------------|---------|--------------------|----------------|---------|
| 9/17/2012 | P | ██████ | Outreach (Durbin Resolution) | Senator ████ | 1695 |
| 9/17/2012 | P | ██████ | Outreach (Durbin Resolution) | ████████ (Senator ████ Office) | 1695 |
| 9/17/2012 | P | ██████ | Outreach (Durbin Resolution) | Senator ████ | 1695 |
| 9/17/2012 | P | ██████ | Outreach (Durbin Resolution) | Senator ████ | 1695 |

| Date(s) | Proposed, Attempted, or Completed (P, A, C)* | Company | Political Activity | Lobbied Entity | Exhibit |
|---|---|---|---|---|---|
| 9/17/2012 | P | ▮ | Outreach (Durbin Resolution) | Senator ▮ | 1695 |
| 9/17/2012 | P | ▮ | Outreach (Smith Resolution) | Congressman ▮ | 1695 |
| 9/17/2012 | C | ▮ | Outreach (Durbin Resolution) | Senate Foreign Relations Majority Staff | 1697 |
| 9/17/2012 | C | ▮ | Outreach (Durbin Resolution) | ▮ (Senator ▮ Office) | 1698 |

| Date(s) | Proposed, Attempted, or Completed (P, A, C)* | Company | Political Activity | Lobbied Entity | Exhibit |
|---|---|---|---|---|---|
| 9/19/2012 | P | ▮ | Outreach (Durbin Resolution) | Senator ▮ | 1172 |
| 9/19/2012 | C | ▮ | Outreach (Durbin Resolution) | Senator ▮ | 1173; 1175 |
| 9/19/2012 | C | ▮ Gates | Outreach (Durbin Resolution) | Senator ▮ Chief of Staff | 1308 |
| 9/19/2012 | P | Skadden ▮ | Outreach (Durbin Resolution) | Senator ▮ | 1308 |

| Date(s) | Proposed, Attempted, or Completed (P, A, C)* | Company | Political Activity | Lobbied Entity | Exhibit |
|---------|----------------------------------------------|---------|--------------------|----------------|---------|
| 9/19/2012 | A | ▊ Gates | Outreach (Durbin Resolution) | Senator ▊ | 1308; 1703 |
| 9/19/2012 | P | ▊ | Outreach (Durbin Resolution) | Senator ▊ | 1702 |
| 9/19/2012 | P | ▊ | E-mail (Durbin Resolution) | State Department | 1702 |
| 9/20/2012 | P | ▊ ▊ | Outreach (Durbin Resolution) | Senator ▊ | 1708 |

| Date(s) | Proposed, Attempted, or Completed (P, A, C)* | Company | Political Activity | Lobbied Entity | Exhibit |
|---|---|---|---|---|---|
| 9/20/2012 | A | ███ | Outreach (Durbin Resolution) | Senator ███ | 1706; 1709 |
| 9/21/2012 | C | ███ | Outreach (Durbin Resolution) | Senator ███ | 1713; 1718; |
| 9/22/2012 | P | ███ Gates | Outreach (Durbin Resolution) | Senator ███ | 1719 |
| 9/22/2012 | P | ███ | Outreach (Durbin Resolution) | Senator ███ | 1712; 1719 |

| Date(s) | Proposed, Attempted, or Completed (P, A, C)* | Company | Political Activity | Lobbied Entity | Exhibit |
|---|---|---|---|---|---|
| 9/22/2012 | C | ██████ | Outreach (Durbin Resolution) | Senator ██████ | 1723 |
| 10/3/2012 | C | ██████ Gates | Outreach (Durbin Resolution) | Senator ██████ | 1732 |
| 10/18/2012 | P | ██████ | Outreach (Durbin Resolution) | Senator ██ | 1744 |
| 10/18/2012 | P | ██████ | Outreach (Durbin Resolution) | Senator ██ | 1744 |

| Date(s) | Proposed, Attempted, or Completed (P, A, C)* | Company | Political Activity | Lobbied Entity | Exhibit |
|---------|----------------------------------------------|---------|--------------------|----------------|---------|
| 10/18/2012 | P | ███ | Outreach (Durbin Resolution) | Senator ███ | 1744 |
| 10/18/2012 | P | ███ | Outreach (Durbin Resolution) | Senator ███ | 1744 |
| 10/18/2012 | P | ███ | Outreach (Durbin Resolution) | Senator ███ | 1744 |
| 10/18/2012 | P | ███ | Outreach (Durbin Resolution) | Senator ███ | 1744 |

| Date(s) | Proposed, Attempted, or Completed (P, A, C)* | Company | Political Activity | Lobbied Entity | Exhibit |
|---------|------------------------------------------------|---------|--------------------|----------------|---------|
| 10/18/2012 | P | ████ | Outreach (Durbin Resolution) | Senator ████ | 1744 |
| 10/18/2012 | P | ████ | Outreach (Durbin Resolution) | Senator ████ | 1744 |
| 10/18/2012 | P | ████ | Outreach (Durbin Resolution) | Senator ████ | 1744 |
| 10/18/2012 | P | ████ | Outreach (Durbin Resolution) | Senator ████ | 1744 |

| Date(s) | Proposed, Attempted, or Completed (P, A, C)* | Company | Political Activity | Lobbied Entity | Exhibit |
|---|---|---|---|---|---|
| 10/18/2012 | C | | Outreach (Durbin Resolution) | House Foreign Affairs Committee - Democratic Staff Members | 1744 |
| 10/18/2012 | C | | Outreach (Durbin Resolution) | Senate Foreign Relations Committee - Democratic Staff | 1744 |
| 10/23/2012 | P | | Outreach (Smith Resolution) | House Foreign Affairs Committee - All Members | 1748 |
| 10/23/2012 | P | | Outreach (Smith Resolution) | Senate Foreign Relations Committee - All Members | 1748 |

| Date(s) | Proposed, Attempted, or Completed (P, A, C)* | Company | Political Activity | Lobbied Entity | Exhibit |
|---------|----------------------------------------------|---------|--------------------|----------------|---------|
| 10/23/2012 | P | | Outreach (Smith Resolution) | Senate Leadership | 1749 |
| 10/23/2012 | P | | Outreach (Smith Resolution) | House Leadership | 1749 |
| 10/23/2012 | P | | Outreach (Smith Resolution) | Helsinki Commission Members - Congress | 1749 |
| 10/23/2012 | P | | Outreach (Smith Resolution) | Helsinki Commission Members - US Government | 1749 |

| Date(s) | Proposed, Attempted, or Completed (P, A, C)* | Company | Political Activity | Lobbied Entity | Exhibit |
|---------|-----------------------------------------------|---------|--------------------|----------------|---------|
| 10/23/2012 | P | ███ | Outreach (Durbin Resolution) | Senate Leadership | 1749 |
| 10/23/2012 | P | ███ | Outreach (Durbin Resolution) | House Leadership | 1749 |
| 10/23/2012 | P | ███ | Outreach (Durbin Resolution) | Helsinki Commission Members - Congress | 1749 |
| 10/23/2012 | P | ███ | Outreach (Durbin Resolution) | Helsinki Commission Members - US Government | 1749 |

| Date(s) | Proposed, Attempted, or Completed (P, A, C)* | Company | Political Activity | Lobbied Entity | Exhibit |
|---|---|---|---|---|---|
| 11/19/2012 | C | ███ | Outreach (Smith Resolution) | Congressman ███ | 1761 |
| 11/19/2012 | P | ███ | Outreach (Smith Resolution) | ███ | 1761 |
| 11/19/2012 | P | ███ | Outreach (Smith Resolution) | ███ | 1761 |
| 11/19/2012 | C | ███ | Outreach (Smith Resolution) | House Foreign Affairs Committee Members | 1761 |

| Date(s) | Proposed, Attempted, or Completed (P, A, C)* | Company | Political Activity | Lobbied Entity | Exhibit |
|---|---|---|---|---|---|
| 12/14/2012 | P | ▮ | Outreach (Smith Resolution) | Congressman ▮ | 1448 |
| 12/14/2012 | C | ▮ | Outreach (Durbin Resolution) | Senator ▮ | 1448 |
| 12/14/2012 | C | ▮ | Outreach (Durbin Resolution) | Senator ▮ | 1448 |
| 1/16/2013 | C | ▮ | Outreach (Kaptur Resolution) | Congressman ▮ | 1453 |

| Date(s) | Proposed, Attempted, or Completed (P, A, C)* | Company | Political Activity | Lobbied Entity | Exhibit |
|---|---|---|---|---|---|
| 1/16/2013 | C | ███ | Outreach (Kaptur Resolution) | Congressman ███ | 1453 |
| 2/13/2013 | P | ███ | Outreach (Kaptur Resolution) | Congressman ███ - Staff | 1464 |
| 2/13/2013 | P | ███ | Outreach (Kaptur Resolution) | Congressman ███ - Staff | 1464 |
| 2/13/2013 | P | ███ | Outreach (Kaptur Resolution) | Senator ███ Staff | 1464 |

| Date(s) | Proposed, Attempted, or Completed (P, A, C)* | Company | Political Activity | Lobbied Entity | Exhibit |
|---|---|---|---|---|---|
| 2/13/2013 | P | ███ | Outreach (Kaptur Resolution) | House Foreign Affairs Committee - Staff | 1464 |
| 6/18/2013; 8/5/2013 | C | ███ | Meeting (Durbin Resolution) | Senator ███ | 1831; 1841 |
| 6/25/2013 | P | ███ Gates | Outreach (Durbin Resolution) | Senator ███ | 1835 |
| 6/25/2013 | C | ███ | Meeting (Durbin Resolution) | Senator ███ | 1836; 624; 720 |

| Date(s) | Proposed, Attempted, or Completed (P, A, C)* | Company | Political Activity | Lobbied Entity | Exhibit |
|---------|---------------------------------------------|---------|--------------------|----------------|---------|
| 6/25/2013 | C | ███ | Meeting (Durbin Resolution) | State Department | 1836; 624 |
| 6/26/2013 | P | ███ | Outreach (Durbin Resolution) | Senator ███ | 1514 |
| 7/10/2013 | P | ██ | Outreach (Durbin Resolution) | Congress | 708 |
| 7/11/2013 | P | ███ Gates | Outreach (Durbin Resolution) | Senator ███ | 1838; 1839 |

| Date(s) | Proposed, Attempted, or Completed (P, A, C)* | Company | Political Activity | Lobbied Entity | Exhibit |
|---|---|---|---|---|---|
| 7/25/2013 | P | ▮ Gates | Outreach (Durbin Resolution) | Senator ▮ | 1840 |
| 9/25/2013 | P | ▮ | Outreach (Durbin Resolution) | Congress | 1852 |
| 9/30/2013 | C | ▮ | Meeting (Durbin Resolution) | Senator ▮ | 1853 |
| 10/8/2013 | C | ▮ | Meeting (Engel Resolution) | Congressman ▮ - Staff | 1856 |

| Date(s) | Proposed, Attempted, or Completed (P, A, C)* | Company | Political Activity | Lobbied Entity | Exhibit |
|---|---|---|---|---|---|
| 11/20/2013 | C | █████ | Outreach (Durbin Resolution) | Congressional Staff ████ | 1531 |
| 2/18/2014 | A | █████ | Outreach (Menendez Resolution) | Senator ████ - Staff | 1545; 1546 |

# EXHIBIT 449

| | | Legislation: ██████ Resolution | |
|---|---|---|---|
| **Date** | **Person/Company(ies) Involved** | **Summary of Contact** | **Exhibit** |
| 9/14/2012 | ████████ Gates | Gates to ███████████████ : "Has anyone talked with ████ [███████████████ at the Committee?" ████ employee writes "[W]e need to find members opposed to moving the resolution through the express lane - and being hot-lined… A colleague of mine has been reaching into the committee to get intel." | 1691 |
| 9/17/2012 | ██ | ████████ to ████████ "With all due respect you too often question our requests by double-checking with Paul. You know I take of Yulia's case for bull-shit but I'm not sure the Bug [sic] Guy shares my view. Let's be frank, if Paul could stop ████ resolution on his own we wouldn't have asked you to do something like this." | 1167 |
| 9/17/2012 | ██ | ████████████████ : "The Big Guy has given an instruction" to get reporting that Tymoshenko's alleged involvement in a murder be in "any paper that is read on the Hill…It can be the Roll Bell…It must influence the future of ████ Resolution…" ████ response to ████ "very bad idea." | 1169 |

U.S. v. MANAFORT, 1:17-cr-201 (A.B.J.)
GOVERNMENT EXHIBIT
449

| Date | Person/Company(ies) Involved | Summary of Contact | Exhibit |
|------|------|------|------|
| 9/17/2012 | ████████ ; Gates | Gates to ██████████ : "Paul is meeting with President at 800am US time this morning. I need anything we have as updates regarding any resolution against ████ including House/Senate schedules... I need [██████ to cover ███████████████████ and ████ …to ask for the measure to [sic] carried over to the next meeting." Gates adds "We need to cover this base and think about lining up several ██████ who will put a hold on the measure." | 1695 |
| 9/17/2012 | ████ ████ | ██████ employee e-mails ███████████ , and Gates about discussion with ██████████████████ : "I didn't have the opportunity to bring up the report as frankly I thought it too would be viewed as another stall tactic." ████ employee forwards e-mail from ████ on ██████████ re the resolution | 1697; 1698 |
| 9/19/2012 | ██ | ██████ to ████████ "Would it be possible to reach out to ██████████████ and ask him to make an early morning call to ████████ " regarding the ██████████████ noted "Paul works through his channels and is sending the same messages." | 1172 |
| 9/19/2012 | ██ | ████████ to ██████ and ██████ "██ already spoke with | 1173; 1175 |

| Date | Person/Company(ies) Involved | Summary of Contact | Exhibit |
|------|------------------------------|--------------------|---------|
| 9/19/2012 | ███ Manafort; Gates | Manafort e-mails Gates and ███ regarding talking points to share with ███ re Tymoshenko case. Gates to ███ and Manfort: "Message was delivered to ███ and he is now aware." ███ to Manafort: "█ ███ is delighted to speak to [sic] and try to calm things down." Friedman adds: "███ ALSO happy to speak to ███ and ask hm [sic] to delay or tone down or stop the resolution". | 1308 |
| 9/19/2012 | ███ Gates | Gates to ███ "Please call ███ office and pass along the notes below verbally. Let me know when you make contact." ███ to Gates: "Left this message on his vmail asked him to call me back." | 1703 |
| 9/19/2012 | ███ Manafort; Gates | Manafort to Gates: "Is ███ calling ███ Gates to Manafort: "He was supposed to talk with ███ yesterday but I have not heard back. Trying to reach him. I will brief him on the other items and see if he can call ███ as well." | 1308 |
| 9/19/2012 | ███ ; Gates | ███ employee to Gates: "Rick, Just heard again from ███ office that ███ and ███ intend to move the resolution. ███ does not advise this but will NOT block it." ███ to Gates: "Plan is and was find a senator who will put hold on it... Seeing ███ ." ███ adds: "███ ] has signed off on resolution." | 1702 |

| Date | Person/Company(ies) Involved | Summary of Contact | Exhibit |
|---|---|---|---|
| 9/20/2012 | [redacted] Gates | [redacted] employee to Gates: "[redacted]] has a call into [redacted] - don't think they have connected, yet." | 1706 |
| 9/20/2012 | [redacted]; Gates | [redacted]: "We just got off the phone with Rick, who asked taht I check with you re: possible conversation with [redacted] He was wondering if you had anything worth sharing/reporting. Mentioned [redacted] diaspora in [redacted] Next steps: [redacted] reaching out to [redacted] again." [redacted] replies: "Have call into [redacted] | 1709 |
| 9/20/2012 | [redacted] Gates | Gates e-mails [redacted] with subject line "United Coal": "[redacted] Here is the document on United Coal. Please get to [redacted] The United operations are very big in [redacted] and represent many jobs (I know not Ukrainian) but the investor is and he is making significant investments into the operations." [redacted] asks "Do they have a pac. Have they done [redacted]?" | 1708 |
| 9/21/2012 | [redacted] | [redacted] staff discusses [redacted] outreach to [redacted] between 9/21 - 9/22. [redacted] employee writes: "[redacted] released the hold. [redacted] told me: 'That's why he called your boss back. [redacted] was going to make us object on the floor and was taking it really personally, so we let it go.'" | 1712 |
| 9/22/2012 | [redacted] | [redacted] to Gates, [redacted] employees: "Spoke with [redacted] 10 times tonight[.] Keep [redacted] strong." | 1719 |

| Date | Person/Company(ies) Involved | Summary of Contact | Exhibit |
|---|---|---|---|
| 9/22/2012 | ▇ Gates | ▇ employees dicuss call with Rick Gates: "Nothing really discussed except that Rick will prepare alternative language in case we can't kill and are being asked what is acceptable to them." | 1717 |
| 9/22/2012 | ▇ Gates | Gates to ▇ "Here is an OpEd from two days ago written by former ▇ and former ▇ You may want to pass it along to Sen. ▇." In reference to op-ed, ▇ replies to ▇ "Not sure [] would have swayed ▇ making an enemy out of ▇ | 1713 |
| 9/22/2012 | ▇ ; Gates | ▇ employee to Gates: "Rick. [▇ resolution] just passed." | 1714 |
| 9/22/2012 | ▇ Gates | Gates to ▇ and ▇ "Any update on ▇ ▇ to Gates and ▇ " ▇ would not go to war with ▇ over this at last minute without a full understanding of facts and history." | 1718 |

| Date | Person/Company(ies) Involved | Summary of Contact | Exhibit |
|------|------------------------------|--------------------|---------|
| 9/24/2012 | ▮▮▮▮▮▮▮; Gates | Gates to ▮▮▮▮▮▮▮: "Despite the outcome I want to thank you again for your assistance last week in attempting to defeat the resolution... On a separate issue, I have the ▮▮▮▮▮▮ to ▮▮▮▮▮▮▮ coming down to DC for the day tomorrow [and] would like to setup two or three meetings for him." Gates suggests "▮▮" and "any of the ▮▮▮▮▮▮▮." | 1724 |
| 9/25/2013 | ▮▮▮ Gates | Regarding another ▮▮▮ Resolution in 2013, ▮▮▮ employee states: "Rick wants us and ▮▮ team to find key fundraisers in Congressional districts where there a lot [sic] of ▮▮▮ Americans to press the Members to come out against ▮▮▮▮▮▮ and oppose legislation calling for her release. His argument is that if you support her you are forcing ▮▮▮ into the hands of the ▮▮▮▮ | 1852 |

# EXHIBIT 504

CONFIDENTIAL: EYES ONLY

**CREATION OF A SUPER VIP GROUP OF FORMER EUROPEAN HEADS OF GOVERNMENTS AND VIP OFFICIALS TO ENGAGE IN PROMOTION OF VR ELECTION RESULTS AND UKRAINE INTEGRATION INTO EUROPE**

1. **Purpose**
   To assemble a small group of high-level European highly influencial champions and politically credible friends who can act informally and without any visible relationship with the Government of Ukraine.

   The engagement of this group will be in two stages. The first stage is 2012 and will be informal in nature. The work in 2012 will primarily focus on the promotion of the importance of Ukraine to Europe, to push for the acceleration of integration of Ukraine and to engage in the process to ensure the recognition of the results of the 2012 VR elections.

   The second stage in 2013 would channel this group into an independent NGO whose mission would be to work with the EU, European governments, NGOs and the government of Ukraine to hasten the integration of Ukraine into Europe.

   The uniqueness of this group is in its composition of members who have the ability to engage at the highest levels and speak with authority in the media.

2. **Mission**
   The principal mission of this group in 2012 will be to serve as a bridge between the main international election observer groups, OSCE and PACE, and the government of Ukraine. They would engage as ad hoc observers of the VR election process and could perform pre-election oversight of Ukraine compliance with the main conditions demanded by the European Groups to ensure a free and fair election. They can perform this work in a manner similar to the audit performed by Skadden, Arps.

   Additionally, the members of the group, at our quiet direction, will provide commentary in the European media, write and publish occasional op-eds and appear at select conferences we will stage in Rome, Berlin, Paris, London or Brussels before and after the election.

3. **Key Participants**
   The intention is to begin with a group of about 5 senior members. They would be approached by Chancellor ▮▮▮▮▮▮ and would work informally at his direction, in co-ordination with me, during the remaining 6 months of 2012. The list of potential members include:



   - ▮▮▮ Chancellor ▮▮▮▮▮▮▮▮▮▮▮▮▮▮
     He will be the co-ordinator.
   - ▮▮ Former Prime Minister ▮▮▮▮▮ or former ▮▮ Minister ▮▮▮▮
   - ▮▮▮ Judge ▮▮▮▮▮▮▮▮▮▮ veteran and respected center-right member of ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ A legal expert who has served previously on ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ we think we could engage him on a spot basis.

1

**GOVERNMENT EXHIBIT**
U.S. v. MANAFORT, 1:17-cr-201 (A.B.J.)
**504**

- ████████████████████████ Former European troubleshooter, ████ minister to ████████████████ Head of the ██████████ supervisor of the ███████ (see links below)
- ████████████████████████████████████████████████████ and respected man for all seasons in Europe. Friend of ████
- ██████████████████████ will select someone from France but precisely who will be determined by who does not become a part of the Hollande Administration.
- not that the Government is being organized.
- Although his appointment as ████████████████████████████ ████ would prevent ████████████████ from any formal activity, ████████████████ will meet him June 29th and will discuss with him the idea of ████████████ oining a more formal Advisory Panel in 2013. He is confident that this is very likely and believes that some informal and covert interaction is possible in 2012.

## 4. Structure and Fees

Led by former Chancellor ████████████████████████ the other former leaders from ████████████████████████████ would act as an informal, independent group in 2012 and would form or associate with an existing NGO in 2013. The creation of this entity in 2013 would publicly be connected to the informal work that they did in 2012.

The informal and ultimately formal project will be managed by Chancellor ████████ in co-ordination with me.

The budget for the 6 months of 2012 would be E1,500,000. This would include travel expenses, administrative overheard, and retainer fees to all of the key individuals, speakers fees to VIPs who will appear at the conferences and election observer fees.

The budget for conferences will be created based on the purpose and logistics of the events. It is anticipated that we would do at least 2-3 such conferences in 2012 to promote the objectives of integration and election recognition. It is anticipated that a typical budget for a conference will be in the range of Euro20,000.

## 5. Next Steps

Chancellor ████████ s speaking with former President █ on Sunday at the Euro 2012 football game in Warsaw. They will agree on their plan of action.

Upon approval of the project by Ukraine, they will commence work this week. This work will result in the outreach to the officials listed above and others. Once the group is organized, the specifics of a work plan will be created by the Chancellor and us.

ACTION: Approve and fund project by July 1.

2

DOJSCO-400604495

# EXHIBIT 505

To: ███████████
From: PJM
Re: Program to Conduct Briefings of Embassies, Media and NGOS
Date: July 3, 2012

As we begin the formal election process it is important that we keep the international community briefed on the important election updates.

The opposition is already planting the seeds to claim that the election is unfair. Through regular briefings of the Embassy staffs, NGO offices and international media they are claiming that the PoR is using administrative resources to "steal the election".

We must get into these same channels to promote our positions and to listen to any of their criticisms to make it look as if we are being responsive to their concerns.

There are several types of briefings that we should organize. This memo seeks to identify these briefings, outline the types of issues which should be discussed and who should be meeting with the international community.

### Administration of Election – CEC

The CEC should conduct a series of private briefings to update the international community on the progress of the election process. These briefings should be in addition to the regular public briefings of the CEC.

The private briefings should be directed at the key NGOs and Embassies in Kyiv.

Similar to the European tour that ███████████████████ is making, these briefings would update the audience on the implementation of the election law. The details of the management of candidate applications, organizations of DECs, PECs and oversight of the election day activities should comprise the agenda.

Someone from the CEC should be designated to do these briefings in order to maintain consistency in reporting. The briefings will be very time consuming so the person designated should have the time to commit to this important function. Given that ███████████████████ is conducting briefings in Europe, he may be the best one but that is a decision that should be taken quickly.

The goal is to ensure that the audiences understand the election complaints as they are occurring and witness the solutions in real time. In this way, when the opposition approaches these same people to complain about certain violations, the audience is already educated and knowledgeable. This will allow correct assessments to occur in real time.



GOVERNMENT
EXHIBIT
U.S. v. MANAFORT, 1:17-cr-201 (A.B.J.)
505

## Management of the Election Process – PoR

The explanation of why the PoR is going to win and how we are managing the campaign process is very important to communicate.

It is important that we maintain a frequent briefing schedule with the key embassies and opinion-makers (like AMCHAM, European Business Association, Kyiv offices of OSCE, World Bank, IMF, EBRD etc) on the election process.  Each of the target audiences should be briefed at least twice a month.

Because these briefings need to be personal in nature to be effective, it is important that the person briefing be a part of the campaign leadership. Such people are ▮▮▮▮ ▮▮▮▮▮The campaign should organize who of the 3 is best to brief what embassy or NGO or organization. Once the assignments are made, they should remain for the entire campaign.

There are 3 important components to these briefings.

First is the strength of our organization. By regularly demonstrating the growth of our local organizations, we must show how we are the only real political party and why we are confident that this organization can deliver the vote if among disillusioned former PoR voters. Without giving away secrets, we can and must flex our organizational advantages to these audiences.

Second is the rationale for why we are going to win. Again, without giving away campaign secrets, we must demonstrate a confidence in our winning the election. Through the use of public and private polls, we can demonstrate in a clear and convincing way how we expect to win control of the next VR. While some may not believe we are correct, the more that they hear it in private conversations, the more it will blunt some of the absurd rhetoric being promoted by the opposition.

Third is to use these meetings to raise our concerns about opposition abuses and violations.

Additionally, through these regular, private briefings we will hear complaints or concerns from the Embassies. Where possible, we should commit to addressing the complaints. Then we should follow through with correcting the mistakes where they are more mistakes of omission than commission.

There will be some issues, like access to media, that we should prepare statistics to refute at the appropriate time.

## Co-ordination with the International Observer Groups - MFA

The Observer groups are a unique organizations. They need to be managed on a formal basis and occasionally on an informal basis.

The formal basis focuses on the invitations, registration and management of the observers. This role should be done by the MFA.

In many respects, the MFA is already interacting with the key organizations. We need to expand the interaction to being some subtle lobbying in addition to the formal registration roles.

One person should be assigned to deal regularly with OSCE, ODIHR, PACE and other key election groups. The agenda should be disguised as informative and administrative. But, in addition to these functions, we should be communicating important information demonstrating the fairness and transparency of the process.

Where there are issues which are raised, the MFA should send them to the appropriate place to be answered or fixed. Being competent and engaged will overcome many minor issues which, if left alone, might combine to create impressions that often are not true.

<u>**International Community**</u>
In addition to the audiences in Ukraine, it is important that we deal with the target countries in their capitals. The Brussels NGO that we have formed and their consultants are already engaged in the process.

As briefing materials are created for the domestic briefings they need to be transmitted to the international community for use.

<u>**Issues to Prepare for Briefings**</u>
The political briefings by the PoR should be prepared to include a number of topics in addition to the organizational advantages and reasons to expect victory.

The PoR briefers must be prepared to deal with issues such as the following:

       i.   access to media equal for all parties – show proof
      ii.   harassment of officials – prepare cases of opposition activity
     iii.   difficulty to vote/pressure on voters or system
     iv.   denying all parties equal access
      v.   code of conduct to govern behavior of PoR organization in the VR Election process

The CEC and MFA should be prepared to brief on issues such as
     vi.   implementation of the law without prejudice
    vii.   organization of SMDs fairly
   viii.   creation of PECs, DECs
     ix.   processing and approval of candidacy applications
     x.   protection of ballot

## Conclusion

These roles and schedule should be organized immediately.

This master program must be organized and implemented by July 15.

A command and control center should be set up to manage all of these pieces in a coherent way.

Regular meetings of the key briefers for all groups should occur weekly to compare notes, identify issues and organize follow-up.

# **EXHIBIT 569**

# небольш просьба

| | |
|---|---|
| **From:** | Константин Килимник |
| **To:** | |

| | |
|---|---|
| **Date:** | Wed, 11 Apr 2012 05:17:55 -0400 |
| **Attachments:** | ac update 4-9-2012.docx (113.97 kB) |

Прив

Можешь это быстренько на русскм сделать?

Спасибище

К



**GOVERNMENT EXHIBIT**
U.S. v. MANAFORT, 1:17-cr-201 (A.B.J.)
**569**

**MEMORANDUM**

| To: | VFY |
|---|---|
| From: | PJM |
| Subject: | AC Project – Update |
| Date: | April 8, 2012 |

This document provides an update on the public affairs activity that has occurred since the inception of the project a few weeks ago.  It is my intention to provide you with a weekly update moving forward.

- The structure of the team has been finalized and the firms have already begun work in Europe and the US.

- We are using ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ ▇▇▇▇▇▇▇▇▇ to cover Europe (Brussels, London, Paris and Berlin) and the US (Washington DC and New York)

- The firms have begun both political and media audits in Europe and the US

- Two key and time sensitive projects are underway
    1. VR Commission Report – Interviews and roundtables throughout Europe over the next two weeks
    2. CPC – public affairs campaign underway for releasing critical information on this reform.  Press release going out as soon as legislation is passed evidencing that it is in line with European standards

- Other projects being worked on include a US congressional delegation to Ukraine in May, Euro 2012 media strategy for Ukraine, and work for the elections in October (international observers)

- Digital and Social Media Campaign – this is underway with content being developed to reach more key audiences. New and enhanced websites are being developed as part of the campaign.

- Strategic Plans – the consultants are finalizing their strategic plans for the next 6-months.  This accounts for key decision makers in the EU and EC, and a global media campaign.

- Also, we now have in place daily news monitoring in all major cities in Europe and the US

- Kick-off meetings have taken place in Europe and the US the last week of March

# EXHIBIT 695

ad_tmp_VFY weekly activity memo 3-23-13_fabb7407-4fc7-44d1-aa79-efa7f149bcb7 [Compatibility...    Sign in

# Info

## ad_tmp_VFY weekly activity memo 3-23-13_fabb7407-4fc7-44d1-aa79-efa7f149bcb7



### Compatibility Mode

Convert

Some new features are disabled to prevent problems when working with previous versions of Office. Converting this file will enable these features, but may result in layout changes.



### Protect Document

Protect Document ▾

Control what types of changes people can make to this document.



### Inspect Document

Check for Issues ▾

Before publishing this file, be aware that it contains:
- Document properties and author's name
- Content that people with disabilities find difficult to read



### Manage Document

Manage Document ▾

Check in, check out, and recover unsaved changes.
- There are no unsaved changes.

### Properties ▾

| | |
|---|---|
| Size | 128KB |
| Pages | 3 |
| Words | 942 |
| Total Editing Time | 30 Minutes |
| Title | Add a title |
| Tags | Add a tag |
| Comments | Add comments |

### Related Dates

| | |
|---|---|
| Last Modified | 3/28/2013 3:47 PM |
| Created | 3/24/2013 8:15 PM |
| Last Printed | |

### Related People

Author  Rick Gates

Add an author

Last Modified By Paul Manafort

### Related Documents

Open File Location

Show All Properties



**GOVERNMENT EXHIBIT**

U.S. v. MANAFORT, 1:17-cr-201 (A.B.J.)

**695**

## MEMORANDUM

To:          ▮
From:        PJM
Subject:     US Consultants Activity – Weekly Update
Date:        March 23, 2013

There are a number of key events this week, most notably the IMF delegation travelling to Kyiv. Our efforts in the last week have focused on a number of themes that have played well in the US and in Europe.

### IMF Meetings

Our consultants were able to gather important intelligence from the IMF and the US State Department, which is working in coordination with the IMF. The meetings were initiated on the part of the IMF, with the hope that another stand-by arrangement could be negotiated.

* Most importantly, the IMF is going into the meetings next week under no illusion that the GoU is going to reduce the consumer gas tariffs. From the IMF perspective it is still an open issue and will be raised in that context.
* The meetings are primarily a follow-up to their late January/early February visit during which they were "somewhat encouraged" by those discussions about what Ukraine is willing to do re: economic reform.
* Next week's visit is to determine what specific steps Ukraine is willing to take to reach another "Standby Agreement" with the IMF. All options are on the table and it is meant to be a dialogue on how to reach consensus if possible.
* Among other items, the IMF argues that gas prices need to be "more realistic" (given how heavily subsidized they currently are). It is an important part of what Ukraine needs to do and it will be raised again in the discussions.
* Ukraine must also devalue its currency and this will be raised as well.
* Bottom-line is the IMF hopes to see if the GoU is serious about making some long-term economic reforms – their concern is that the previous two agreements were suspended because of a "lack of follow-through" on the Ukrainian's part.

▮▮▮▮▮▮▮▮▮▮▮▮

This meeting was important for several reasons and it came at a crucial time. My sources in the USG tell me that the meeting was construed as positive, and progress has been made in Ukraine but there is more work to do.

* The reforms on judicial reform have been noted and this is an area where the USG has made progress. Obviously, the US is not pleased (in their view) with the issue of selective justice in regards to YT and YL.
* However, it was clear that in sending ▮▮▮▮ to Kyiv, the US wants to engage Ukraine.
* She clearly stated that the US opposes sanctions with Ukraine, and that the only way to move relations forward is to engage the GoU.
* One of the primary purposes of the meeting with VFY was to pave the way for an official meeting with ▮▮▮▮ and ▮▮▮▮▮▮ This is a positive development.

- In addition, VFY did a good job of framing the importance of EU integration, which the US fully supports and will promote through its resources.

### Meeting with Congressman ██████████████████████

The meeting with Cong ████████ went well. He and I are building a plan to create a framework to promote positive interactions between the Govt of Ukraine and ██████████████

Cong ████████ is open minded on Ukraine. He is prepared to visit Ukr to gain more understanding. He is opposed to sanctions and said he would not let the ████████████ entertain any proposed legislation regarding sanctions for Ukraine.

### Meeting with ██████████████

██████████ is willing to open doors with the Diaspora and NGOs to assist in the development of broader knowledge of what is happening.
It was suggested by both ████████████████████████
that the promised funding by the Govt of Ukraine for the Holodar Memorial in Washington DC would be a big deal to the Diaspora.

### News Articles

This week we directed the efforts of a number of positive news articles that appeared in several prominent publications and in the digital media space. These articles were done in tandem with key efforts we have been focusing on to emphasize the positive progress Ukraine has made on several key issues.

Below is the title of the article and which media outlets published the stories. The links to the full article's are also below for reference.

*"International Finance Corporation Making Ukraine Better for Businesses, Says Yanukovych"* – *March 22nd*
Story on the positive meeting between VFY and the IFC's CEO in Kyiv this week.
Major Publications: Wall Street Journal, Bloomberg, Reuters, Boston Globe, San Francisco Chronicle, Deutsche Presse Agentur, and Yahoo News.
http://www.marketwatch.com/story/international-finance-corporation-making-ukraine-better-for-businesses-says-yanukovych-2013-03-22

*"Ukraine Opposition Surprises Supporters  by Denouncing Gay Marriage"* – *March 19th*
Story on demeaning statements by opposition leader Arseniy Yatsenyuk regarding homosexuality.
Major Publications: Wall Street Journal, Bloomberg, Boston Globe, and Business Journal.
http://finance.boston.com/boston/news/read/23725338/ukraine_opposition_surprises_supporters_by_denouncing_gay_marriage

*"European Praise For Kiev's Integration Efforts While Ukraine Opposition Earns A Rebuke"* – *March 15th*
Story on Commissioner for EU Enlargement Stefan Fule's plenary session speech in Strasbourg

supporting Ukraine's quest for EU integration.

Major Publications:  Reuters, Wall Street Journal, MSN Money, the Business Journal and Bloomberg.

http://investing.businessweek.com/research/markets/news/article.asp?docKey=600-201303150500PR_NEWS_EURO_ND__enUK201303147175_Publ-1

*"US and Ukraine arm in arm on nuclear non-proliferation and EU Integration" – March 21*
Story following the meeting between VFY and US of State Wendy Sherman highlighting successes of the meeting.

Major Publications:  Google News (#1 story globally), Yahoo News (#3 story globally)

http://www.prnewschannel.com/2013/03/21/us-and-ukraine-arm-in-arm-on-nuclear-nonproliferation-and-eu-integration/

*"Ukraine Stands with Israel on Iran Nuclear Crisis" – March 19th*
Story highlighting the positive relationship between Ukraine and Israel  - article was published on the eve of President Obama arriving for his trip to Israel.

Major Publications:  Google News (#1 globally within 7 minutes of release), WSJ, Bloomberg, WP, and Reuters.

http://www.prnewschannel.com/2013/03/19/ukraine-stands-with-israel-on-iran-nuclear-crisis/

# EXHIBIT 833

**From:** ███████████
**Sent:** Fri, 28 Sep 2012 08:22:59 -0400 (EDT)
**To:** ███████████
**Subject:** Fw: eyes only
**Attachments:** VY Memo - ███████████

You never saw this

—— Forwarded Message ——
**From:** Paul Manafort ███████████
**To:** ███████████
**Sent:** Friday, 28 September 2012, 13:52
**Subject:** eyes only

Here is the result of my meeting yesterday. Pls keep to yourself only. don't circulate to anyone



GOVERNMENT
EXHIBIT
U.S. v. MANAFORT, 1:17-cr-201 (A.B.J.)
**833**

EYES ONLY
To:        VFY
From:      PJM
Re:        Meeting in NYC with ██████████████
Date:      September 28, 12

Last night I met with ██ or 2 hours to review both the contents of the Skadden
Report and the report to ████████ hat he will make on Oct 2. In this memo, I
summarize our conversation and present some ideas based on the conversation.

## Summary of Meeting
### 1. *Skadden Discussion*
I presented the key findings of the Skadden Report and focused on 2 points.

The first is that the Report states clearly that from a legal standpoint Tymo has
not made the case against the President of selective prosecution and in fact her
conviction was based on the factual record created in the trial.

Second, I indicated that most of the Due Process violations that she claims are
rejected by the Skadden Report, and even the one issue where Skadden finds
some merit (the 3 day period when Tymo was without counsel while witnesses
testified), the root of the problem was caused by Tymo's behavior that would be
found unacceptable in a Western Court.

██████ eemed satisfied with the analysis and conclusions. He thought that the
report would be a good foundation for the Report he was preparing which
focused more on the political and humanitarian aspects of the situation.

### 2. ██ *Report Discussion*
██ said his report will be a neutral report. He also said that he would ask ████████
to allow he and ██ o continue working on the matter until the end of 2012. He
felt that ████ would agree and the ██ would approve.

The contents of his interim report are divided into 3 sections.

| | |
|---|---|
| Humanitarian | This section deals with the medical treatment and conditions on imprisonment. The findings in this report are neutral to positive. The access to medical treatment, access to doctors and outsiders are all positively presented. |
| Legal | This part of the report focuses on the changes Ukraine has made to westernize its legal framework, especially the new CPC and the work on the Law of Prosecutors. The Report will indicate much has been done but more needs to be done and that the EP should assist Ukraine in this transition from a Soviet style of law to a western rule of law society. |

Selective
Prosecution

This is the more political aspect of the Report and the one that is still in flux. The Report will say that Ukraine is making some progress but there is still more to be accomplished. The Ivaneschenko matter will be positively referred to but the question of arbitrariness of the police will be highlighted

**Next Steps**

After we discussed the 2 reports, ▮ said that from his standpoint the critical timeframe is the period from Oct 28 to Nov 19. He stated several times that if there was going to be a solution this is when it must occur.

He highlighted this timeframe based of his understanding that when the new CPC comes into effect, almost 50% of people in prison today (and not tried yet) will be released pending resolution of their cases. His point was that this is the period when VY should provide a pardon to Tymo that frees her but doesn't remove the conviction, thereby prohibiting her to run for political office.

I made the argument that she would never accept such a pardon and that Europe would not see it as a solution. He disagreed. He said he felt that he and ▮ and others could prevail on ▮ who has her own issues and wants to get Ukraine ▮

When I asked what pre-conditions could be put in place, he was vague. It was clear to me that, at this point, this is his idea and that he does not have authority to negotiate from ▮ or others yet.

I made it clear that the Tymo trial was not based on fear of her political standing and that in fact she was at 15% when the matter started and in the latest polls she is still at 15%. I also pointed out that every time VY makes a concession to Europe they "move the goal posts" and ask for more. *I made the point that from my personal view*, if VY is going to make a humanitarian gesture that supersedes the conviction, there must be a "greater good for Ukraine", meaning a breakthrough on the matters under consideration with Europe.

We dealt with these points for a while. ▮ said that he believed a part of the solution could be the implementation of the visa policy, rescheduling the EU-Ukr summit and prioritizing a number of bilateral issues.

To ▮ this approach and this timeframe offered VY a road back to Europe on a timetable that would enhance his Presidential re-election prospects. He was anxious to pursue the opportunity and we agreed to be in communication after his report is released next week. He expects to be back in Ukraine in about 2 weeks.

**Conclusions**

▮ vants to help.

He believes that there is a path to a solution and based on what VY said to him, he believes that VY wants his help to find the solution.

He wants to meet with Andrey Portnov, based on VY statement that Porntov can help █ figure out the legal part of the pardon.

Beyond that he is looking for a sign from VY that he should put his prestige into forcing EU leaders to seek a solution based on a TYMO pardon but no political participation.

In the meantime, he agreed to help me sell the Skadden Report to the EU leadership. I asked him to stress the fact that the Skadden Report presents a legal analysis and that this analysis should be given weight. Furthermore, I indicated that if the Europeans embraced the findings it would make his "political" task more doable in that the mark against VY would be removed. He agreed to help.

# EXHIBIT 852

| | |
|---|---|
| **From:** | ████████████ |
| **Sent:** | Fri, 17 May 2013 04:13:01 -0400 (EDT) |
| **To:** | "Paul Manafort" ████████████ |
| **Subject:** | DC notes |
| **Attachments:** | May 16th late .doc |

Here ya go.

**GOVERNMENT EXHIBIT**

U.S. v. MANAFORT, 1:17-cr-201 (A.B.J.)

**852**

EYES ONLY

For: PIM
From: ▮▮▮▮
Subject: ▮▮▮▮▮▮▮ on May 16th

1. Our friend ▮▮ accompanied his Prime Minister during the ▮▮▮▮▮▮ meeting on May 16th, as well as at the official luncheon.  The twin-message from our friend to the U.S. officials he spoke with was "Don't Let the Russians Steal Ukraine From the West Cause it has Geopolitical and Strategic Value, and Don't Let One Legal Case Prevent Ukraine From Deeper European Integration."

2. Although protocol prevented the U subject from being inserted inside the more formal discussion at the ▮▮▮▮▮▮▮▮ was very pleased and called "very successful" his conversations on U with ▮▮▮▮▮ with Senators and Congressmen (names to come) and with ▮▮▮▮▮▮ who he sat next to at lunch.

3. "We had very good meetings with ▮▮▮▮▮▮ and discussed many issues," said ▮▮ who added that "during the lunch I had a long talk about U with the ▮▮▮▮▮▮▮▮▮ and I made the points about not allowing this Tymoshenko case to damage the very valuable strategic and geopolitical of from getting U closer to Europe than to Russia ▮▮▮▮▮ took detailed notes of what I was telling him, and seemed to agree with me on this."

4. "I had a very good talk with ▮▮▮▮▮ and we discussed how valuable U is for our regional security, and how wrong it would be to try and isolate this country because of one issue, and ▮▮▮▮ said to me "I absolutely agree. You are right." And we talked about what could be achieved through "engagement rather than isolation" and again he told me he fully agreed.."

5. Since ▮▮ was rushing, but will be in NY today (Friday) we agreed to speak again today, so happy to go over more details with him.

# EXHIBIT 910

Black, Manafort, Stone and Kelly
  Public Affairs Company
Registration #3600
Section 5 Inspection
July ——— 1986
August , 1986
September, 1986


GOVERNMENT
EXHIBIT
U.S. v. MANAFORT, 1:17-cr-201 (A.B.J.)
910

0.7.4249.1510900

DOJSCO-402205319

**·morandum**



| | |
|---|---|
| Subject **Black, Manafort, Stone & Kelly,**<br> **Public Affairs Company**<br> **Registration No. 3600**<br> **Section 5 Inspection** | Date UEC:JB:HHH:ELP:TAR:djs<br> 149-139-16<br> Typed: 12/3/86 |

To                               From



During the months of July, August and September, 1986

conducted a Section
5 inspection of the Black Manafort and Stone registrations
pursuant to the Foreign Agents Registration Act of 1938, as
amended (hereinafter referred to as FARA or the Act). These
inspections included four registrations; Black, Manafort and
Stone, Inc. (#3415), Black, Manafort, Stone & Kelly Public
Affairs Company (#3600), Paul J. Manafort (#3594), and Black,
Manafort, Stone & Atwater, Inc. (#3710).

This inspection report concerns itself with Black, Manafort,
Stone & Kelly Public Affairs Company (#3600) (hereinafter
referred to as BMSKPA). The inspection was conducted in order to
verify that adequate disclosure has been made by the registrant
pursuant to the disclosure requirements of FARA.

✓CHRONO

0.7.4249.1510900                                                         DOJSCO-402205320

- 2 -

BMSKPA is a public relations company which provides general public affairs and legislative counsel to its clients. BMSKPA initially registered under FARA on June 14, 1984 and at the present time it remains an active registration. The following list indicates the various foreign principals for which BMSKPA has been registered and is currently registered:

| | | Registered | Terminated |
|---|---|---|---|
| 1) | The News Corporation, Ltd. | June 14, 1984 | May 30, 1985 2) |
| | Government of the Bahamas | April 9, 1985 | Active |
| 3) | Government of Barbados | May 6, 1985 | May 13, 1985 |
| 4) | Government of St. Lucia | May 6, 1985 | December 18, 1985 |
| 5) | Government of the Dominican Republic | May 6, 1985 | July 3, 1986 |
| 6) | Government of Peru | September 16, 1985 | June 30, 1986 |
| 7) | UNITA | October 16, 1985 | Active |
| 8) | Government of Nigeria | October 30, 1985 | Active |
| 9) | Chamber of Philippine Manufacturers, Exporters and Tourism Association | November 25, 1985 | February 24, 1986 |
| 10) | Institute for Financial and Fiscal Studies of Curacao | April 18, 1986 | Active |

INSPECTION

DOJSCO-402205321

The inspection consisted of a review of the correspondence, office memoranda and financial records of the registrant and it encompassed the period of June 14, 1984 to the present. A review of the material revealed several deficiencies which must be amended, as well as many questions, some of which were resolved in the meetings of September 9, 1986 and September 12, 1986 between the inspection team and ███████████████████████████████████████████

AUSTRALIA
(NEWS CORPORATION LIMITED)

A letter dated April 26, 1984 to ███████████████████ ████████████████████████████████ from Charlie Black, proposed that the registrant would provide a plan and make arrangements for meetings and activities in Washington which would bring the foreign principal into contact with leaders of the Congress and the executive branch on a private basis, in order to increase their knowledge of ████████ and his organization. This activity was not mentioned on the letter of agreement dated June 1, 1984 which was filed with the Exhibit B, nor was this activity reported on the supplemental statements for the periods ending December 14, 1984 and June 14, 1985.

The following correspondence to ████████████████ from Charles Black, Roger Stone and ████████████ indicates that the registrant planned for meetings and activities in Washington, D.C. which would bring the foreign principal into contact with U.S. Government officials.

0.7.4249.1510900

DOJSCO-402205322

- 4 -

1- A letter dated July 2, 1984 to ████████████ from Charlie Black, proposed meetings between ███████ and ████████████████ ███████ (to schedule the meetings they weren't able to do on June 28).

2- A memorandum dated May 23, 1984 to ████████████ from Charlie Black and Roger Stone stated "Suggested Washington Opinion Leaders for you to meet in social setting"



"Suggested Reporters for you to meet in a social setting"



DOJSCO-402205323



3-  A memorandum dated December 3, 1984 to Charlie Black and ▓

▓         from Roger Stone regarding status of ▓         assignments

stated "▓       will visit Washington January 18, 19, 20, 21 and 22,

1984.   We should attempt to set up meetings as follows:



4-  A memorandum dated March 11, 1985 to ▓                from Charlie

Black, Roger Stone and ▓                  regarding update on

communications issues stated "We are very anxious to get a day of your

time . . . . to schedule more meetings with leaders in Washington.



0.7.4249.1510900                                                    DOJSCO-402205324

- 6 -

5- A memorandum dated April 15, 1985 to ███████████ from Charlie Black, Roger Stone and ███████████ regarding update on communications legislative activity stated "We are also anxious to get a date on your schedule to arrange another round of meetings in Washington."

If the registrant did arrange for the foreign principal to meet with U.S. Government officials, and if they accompanied the foreign principal to the meetings which they arranged, the response to Item 12 of the supplemental statements for the periods ending December 14, 1984 and June 14, 1985 should be amended to report such activity. (We were advised during our meeting on September 30, 1986 with ███████████ ███████████████ that only two meetings with U.S. Government officials actually took place. The registrant's participation in the meetings involved only introductions. ███████████████ explained that the proposed meetings with the foreign principal did not take place because Rupert Murdock was very hard to contact.)

## BAHAMAS

1- A memorandum dated August 8, 1985 to ██████████ from Roger Stone and ███████████████ regarding Managing Information for Positive Press Stories stated "Our involvement will be to collect, assimilate and make useable materials that the Government of the Bahamas provides to the "right" press individuals." If BMSKPA provided materials to press individuals, its response to Items 11 and/or 12 of the June 14, 1986 supplemental statement should be amended to report this activity.

0.7.4249.1510900                                                        DOJSCO-402205325

- 7 -

2- A memorandum dated October 4, 1985 to ███████████████ from Roger
Stone and ███████████, regarding Press Strategy for the
Commonwealth Conference October 16-22, 1985 stated "Structure a press
interview schedule for the ██████████████ and ████████████
Bahamian officials . . . Conduct informal meetings with press to
explain key Bahamian issues."  If BMSKPA conducted meetings with the
press to explain key Bahamian issues, its response to Item 11 of the
December 14, 1985 supplemental statement should be amended to report
this activity. ██████████████████████ indicated during our
9/30/86 meeting that BMS&K did not conduct informal meetings with the
press.)

3- If BMSKPA prepared or disseminated the press release dated
November 13, 1985 entitled "Narcotics Control in the Americas",
regarding November 20-22, 1985 First International Drug Symposium
hosted by the Commonwealth of the Bahamas in Nassau, its response to
Item 11 and/or Item 12 of the December 14, 1985 supplemental statement
should be amended to report this activity.  Dissemination report(s)
should also be filed, if appropriate.

4- A memorandum dated November 19, 1985 to ██████████ from P. Manafort
and ███████████ regarding U.S. Press Coverage of the First
International Drug Symposium (11/20-22, 1985) indicated BMSKPA
instituted a media plan involving the production of a press package
and the dissemination of this material to selected U.S. media.  If
BMSKPA produced and disseminated the press package, its response to
Item 11 of the December 14, 1985 supplemental statement should be

0.7.4249.1510900

DOJSCO-402205326

amended to report this activity.  Dissemination report(s) should also
be filed, if appropriate. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ indicated
during our 9/30/86 meeting that BMSKPA was involved in this activity.)

5-  A memorandum dated December 30, 1985 from ▮▮▮▮▮▮▮▮▮▮▮▮ to
▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ regarding Public
Relations Strategy stated "BMSKPA will work with the government of the
Bahamas to prepare and disseminate information concerning the
Bahamas-Haiti Repatriation Treaty.  Our plan is to alert the U.S.
press and U.S. government to the Bahamian position and plan of action
. . . .  We will prepare two separate information packets:  one for
the U.S. press and one for the U.S. government . . . . materials to be
disseminated to the press from a central contact point in the Bahamian
government and that the government packets be distributed by ▮▮▮▮▮
▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮  If BMSKPA prepared and/or disseminated
this information, its response to Item 11 and/or 12 of the June 14,
1986 supplemental statement should be amended to report this activity.
Dissemination report(s) should also be filed, if appropriate.

6-  A memorandum dated January 27, 1986 to ▮▮▮▮▮▮▮▮▮▮▮▮▮
regarding Public Relations Strategy Bahamas - Haitian Repatriation
stated "Black, Manafort, Stone and Kelly would work with BIS [Bahamas
Information Service] to prepare the press release and press kits . . .
. . we would work with BIS to invite and recruit the Bahamian and
Florida-based journalists . . . . to continue to relay the Bahamian
perspective to the U.S. public we would work with BIS to identify and
screen media teams for visits to the Bahamas."  If BMSKPA prepared the

0.7.4249.1510900                                                      DOJSCO-402205327

press release and press kits and identified and screened media teams
for visits to the Bahamas, its response to Item 11 of the June 14,
1986 supplemental statement should be amended to report such
activities. ▮▮▮▮▮▮▮▮▮▮▮ indicated during our meeting
on September 30, 1986 that BMSKPA did not engage in this activity, BIS
did.)

7- A memorandum dated February 13, 1986 to ▮▮▮▮▮▮▮▮
from ▮▮▮▮▮▮▮▮▮ regarding Public Relations Strategy -
Bahamas-Haitian Repatriation stated "We are presently working with
▮▮▮▮▮▮▮ to ensure the Bahamian position is understood on the
Aerostat Balloon.  In this regard, we are drafting a statement to be
entered in the Congressional Record of the February 6 Hearing of the
House Subcommittee on Government Information Justice and Agriculture,
which has legislative jurisdiction over the Aerostat Balloon . . . . .
We are also working with ▮▮▮▮▮▮ to prepare a statement for the
Caribbean Basin Initiative Oversight Hearing this month."  If BMSKPA
drafted these statements, its response to Item 12 of the June 14, 1986
supplemental statement should be amended to report these activities.
▮▮▮▮▮▮▮▮▮ indicated during our September 30, 1986
meeting that BMSKPA did not draft statements to be entered in the
Congressional Record.)

8- A memorandum dated February 13, 1986 to ▮▮▮▮▮▮▮
from ▮▮▮▮▮▮▮▮▮ regarding Public Relations Strategy,
Bahamas-Haitian Repatriation stated "Last month with the help of ▮▮▮
▮▮▮▮▮▮ we arranged for Channel 7 of Miami, an NBC affiliate, to

0.7.4249.1510900                                                    DOJSCO-402205328

visit the Bahamas.  We understand the trip was a most productive one.
The news special will be aired in March . . . . . . . a national
network news program called ██████████████████ plans to visit
Haiti within the next few weeks.  We have discussed with them the
possibility of detouring to the Bahamas . . . . If approved, Black,
Manafort Stone & Kelly would work with ████████████ to craft the
documentary".  If BMSKPA arranged for Channel 7 of Miami to visit the
Bahamas and arranged for ██████████████████████ to craft a
documentary concerning the Bahamas, its response to Item 11 of the
June 14, 1986 supplemental statement should be amended to report these
activities. ███████████████████████ indicated during our meeting
on September 30, 1986 that Channel 7 inquiries were referred to ██████
and ████████████████████ documentary never happened.)


9-  A memorandum dated February 21, 1986 to ████████████ from BMSKPA
regarding Activity Update - Legislative strategy targeted at the key
subcommittees with oversight of Bahamian programs stated "We drafted a
statement to be entered into the Congressional Records of the House
Government Operations Subcommittee on Information that explains the
Bahamian position on the second aerostat.  We plan to meet with
members of the committee next month and provide them with additional
statistical information which emphasizes the value of a second and
third aerostat . . . . We are presently working with ████████████
████████████████████████████████ to prepare a statement that
will define the Bahamas' position and the need to allow compromise
depending upon the internal realities of each beneficiary nation . . .
. . ."  If BMSKPA drafted these statements and provided the members of

0.7.4249.1510900                                            DOJSCO-402205329

the committee with information, its response to Item 12 of the June 14, 1986 supplemental statement should be amended to report these activities.

10- A memorandum dated March 3, 1986 to ███████ from P. Manafort, ███

███████████████████ regarding Bahamas-Haitian Repatriation Treaty stated "Black, Manafort, Stone & Kelly is presently working with the Ministry of National Security Affairs to craft a statement for local TV and radio.  The statement will explain the Government's legal rights and obligations to enforce the Treaty . . . . Proceeding the announcement, Black, Manafort, Stone & Kelly will schedule carefully screened U.S. media teams to visit the Bahamas.  We will arrange for the U.S. journalists to meet with both ███████

██████████████  If BMSKPA drafted the statement for TV and radio, scheduled U.S. media teams to visit the Bahamas and meet with Bahamian Government officials, its response to Item 11 of the June 14, 1986 supplemental statement should be amended to report these activities. █████████████ indicated during our September 30, 1986 meeting that Bahamas Information Office engaged in this activity.)

11- A memorandum dated March 3, 1986 to ██████ from P. Manafort, ███

████████████ also stated " . . . will ensure that the needs, efforts and accomplishments of the ██████████████ do not go unnoticed with the U.S. Government . . . . One tactic we have begun to employ is submitting official policy statements into the U.S. Congressional Record as with the aerostat balloon. . . . . . . Our

0.7.4249.1510900                                                                          DOJSCO-402205330

- 12 -

first step will be to enter the position of the Bahamas into the
Congressional Records of the CBI hearings of the House Ways and Means
Oversight Subcommittee."  If BMSKPA submitted official policy
statements into the U.S. Congressional Record, its response to Item 12
of the June 14, 1986 supplemental statement should be amended to
report this activity.


12-  A memorandum dated March 19, 1986 to ▮▮▮▮▮▮▮▮ from Paul
Manafort and ▮▮▮▮▮▮▮▮ stated " . . . . We are currently securing
approval from the _Times_ to prepare a piece for the commentary section
of the paper.  The piece will detail the efforts of the Bahamas in
narcotics interdictions and control, and emphasize the cooperative
activity between the U.S. and the Bahamas. . . . Black, Manafort,
Stone & Kelly worked with ▮▮▮▮▮▮ to draft the letter [letter to
the ▮▮▮▮▮▮▮▮▮▮ and to place it on the ▮▮▮▮▮▮
▮▮▮▮▮▮▮▮▮▮  If BMSKPA prepared the piece for the
commentary section of the ▮▮▮▮ and drafted ▮▮▮▮▮▮ letter to the
▮▮▮▮▮▮▮▮▮▮ its response to Item 11 of th June 14,
1986 supplemental statement should be amended to report these
activities.


13-  A memorandum dated March 24, 1986 to ▮▮▮▮ from P. Manafort and
▮▮▮▮▮▮ regarding visit April 14-16, 1986 stated "To prompt
such a declaration, [declaration of the Bahamas as North American
Territory for the purpose of convention tax deductibility] we would
arrange meetings for yourself with ▮▮▮▮▮▮▮▮
▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

0.7.4249.1510900

DOJSCO-402205331

████████████████████████████████████████████  If these meetings
were arranged, the registrant's response to Item 12 of the June 14,
1986 supplemental statement should be amended to report such activity.

14-  A memorandum dated March 24, 1986 to ████████ from Manafort and
████████ regarding Haitian Repatriation stated "This document was sent
to pertinent U.S. Government officials in both the Executive and
Legislative branches to brief them on the Bahamian position.  Specific
constituencies targeted include ████████████████████████████
████████████████████████  U.S. Customs, State Department, Department
of Immigration, and the White House.  Enclosure:  "Illegal Immigrants
in the Bahamas".  If the registrant disseminated this document, its
response to Item 12 of the June 14, 1986 supplemental statement should
be amended to report such activity and a dissemination report should
be filed.

15-  A memorandum dated March 27, 1986 to P. Manafort from ████████
regarding recent activity in the Bahamas account stated ". . . .████
and I have arranged for ████████████████████ to invite the
████████ to Washington."  If BMSKPA arranged for ████████████
████ to invite ████████████████ to Washington, its response to
Item 12 of the June 14, 1986 supplemental statement should be amended
to report this activity.

16-  A memorandum dated April 9, 1986 to P. Manafort from ████████
████████ regarding Talking Points for call to Bahamas stated "Black,
Manafort, Stone & Kelly has arranged a special congressional hearing

0.7.4249.1510900                                                           DOJSCO-402205332

to provide the Bahamas with the opportunity to demonstrate its interest in continuing and improving joint U.S./Bahamian drug interdiction programs."   (Although activities mentioned in notations 15 and 16 above are not specifically reported in Items 11 and 12 of the June 14, 1986 supplemental statement, these activities appear to be connected to contacts with ██████████████████████████ ██████████████████████████████████████, which are reported in Item 12.)   If BMSKPA engaged in activities to arrange the congressional hearing, its response to Item 12 of the June 14, 1986 supplemental statement should be amended to report such activities.

17-  A letter dated April 11, 1986 to ██████████████████ ████████████████████references a meeting regarding possibility of getting the ████████████ more involved with the joint U.S./Bahamian drug interdiction program, encloses background piece, and legislative update regarding funding for the aerostat balloon program.   (A letter dated April 29, 1986 was reported being sent to ██████████ however, this contact does not appear to have been reported.)   If BMSKPA contacted ████████████ by letter dated April 11, 1986, its response to Item 12 of the June 14, 1986 supplemental statement should be amended to report this activity.

18-  A memorandum dated May 19, 1986 to Paul from ██████ regarding Status of Aerostat Legislation stated ". . . . In preparation for your meeting with ████████████ this evening, you should be aware of the status of the potential legislative vehicles for the aerostat."   If this meeting took place, the registrant's response to Item 12 of

the June 14, 1986 supplemental statement should be amended to report this activity.

19- A "Dear Colleague" letter dated June 6, 1986 from ████████████
██████████████████████ attached a draft letter to House and Senate Appropriations and Armed Services Committees (Chairmen and ranking minority members on each).  If the registrant drafted this letter, the registrant's response to Item 12 of th June 14, 1986 supplemental statement should be amended to report such activity.

20- A memorandum dated June 11, 1986 to ████████ from BMSKPA regarding National Security Directive stated "We plan to travel to the Bahamas the second week in July to discuss with you and your Administration the status of our Washington initiatives.  During this same time period, we will be accompanied by the key Congressional staffers who are overseeing the Bahamas' programs in the Congress."

21- A memorandum dated June 17, 1986 to ████████████████ from ████
████████ regarding Visit to Nassau stated "Black, Manafort, Stone & Kelly will be accompanied by congressional delegation comprised of key House and Senate staff members who oversee Bahamas Programs in Congress -



0.7.4249.1510900

DOJSCO-402205334



If the registrant arranged for the trip of these key House and Senate staff members, its response to Item 12 of the June 14, 1986 supplemental statement should be amended to report such activity.

22-   In the supplemental statement for the period ending June 14, 1986 and the dissemination report filed on June 11, 1986, it was reported that on June 10, 1986 the registrant sent a typed statement regarding compromise on drug interdiction air wing, and three newspaper articles regarding drug trafficking and drug interdiction to four public officials.   The registrant should amend its response to Item 12 of the supplemental statement to disclose the names and titles of the public officials who were sent the above referenced materials.

## BARBADOS

BMSKPA adequately disclosed the activities it engaged in on behalf of the Government of Barbados.   No amendments are required to be filed for this foreign principal.

## CURACAO

BMSKPA must provide this Unit with an explanation as to why ███████ ██████████ did not file a timely short form registration statement.

0.7.4249.1510900

DOJSCO-402205335

The BMSKPA supplemental statement for the period ending June 14, 1986
shows ███████████ working directly on behalf of the foreign
principal on April 10, 1986 however, a short form registration
statement was not filed until July 29, 1986.

2- A April 18, 1986 note stating "[A]ttached is a draft of the
proposed committee report language in connection with the branch
profits tax, as we discussed. I am simultaneously giving this to ██
███████████████████ for any comments or suggestions they may
have. . ." BMSKPA must disclose in item 12 its role in the committee
report language regarding no treaty override for branch profits tax in
its supplemental statement for the period ending June 14, 1986.

3- April 24, 1986 letters from ███████████ with attachments
regarding the tax bill were sent to ███████████████
███████████████████████████████████ BMSKPA
must report this on its supplemental statement for the period ending
June 14, 1986. Furthermore, rather than a Section 4(e) label, this
material should have had a Section 4(b) label and dissemination
reports should have been filed with this Unit along with two copies of
the material if it was disseminated.

4- A June 4, 1986 letter to ███████████████
staff from ███████████ stated [e]nclosed is the material concerning
the Treaty Override Provisions of the Senate Finance Committee Bill
and the interests of our client. . ." This contact should be reported

0.7.4249.1510900

DOJSCO-402205336

in BMSKPA's supplemental statement for the period ending June 14,
1986.

## DOMINICAN REPUBLIC

1- The following correspondence between the registrant and the
foreign principal indicates that the registrant's services to the
foreign principal may have included the drafting of letters to be sent
to U.S. Government officials by the foreign principal, and also the
drafting of letters for U.S. Government officials to send to other
U.S. Government officials concerning matters of interest to the
foreign principal.

> (a) A letter dated May 23, 1985 was sent to ████████████
> from ████████████ regarding the draft of a letter to
> ████████████ concerning the Dominican sugar proposal.

> (b) A letter dated September 17, 1985 to ████████████
> ████████████ stated "I will prepare a draft
> letter for your signature." ████████████ and
> ████████████ expressing support for retaining 18% loan
> levels.)

> (c) A letter dated October 22, 1985 to ████████████
> ████████████
> ████████████ stated "I
> have enclosed for your review a suggested draft letter which

0.7.4249.1510900

DOJSCO-402205337

████████████████████████████████████████████
████████████████████████████████████████████

████████ may wish to send to ████████████ and
████████████████████ The draft letter was regarding
possessions tax credit (IRC Sec. 936) urging the committee
to give consideration to adoption of a complimentary
proposal that would allow presently idle funds on deposit in
Puerto Rico financial institutions to be loaned for new
investment and trade related purposes in the Caribbean
region.

d)   an undated (possibly October 31, 1985) draft letter to

████████████████████████████████████████████

extended an invitation to visit the Dominican Republic in
the fall of 1985 or early 1986.

e)   Dear Colleague letter dated October 15, 1985, regarding
sugar quota allocations.

f)   Undated draft letter to Mr. Chairman and Mr. Secretary from
the Ambassadors of Caribbean countries to the U.S.
concerning tax policy question of Sec. 936 of the U.S.
Internal Revenue Code.

The registrant should amend its response to Item 11 and/or 12 of
the supplemental statement for the period ending December 14, 1985 to
report that they assisted the Government of the Dominican Republic in

0.7.4249.1510900                                        DOJSCO-402205338

its efforts to obtain additional foreign aid assistance by drafting
letters to be sent to U.S. Government officials by the foreign
principal, and by drafting letters for U.S. Government officials to
send to other U.S. Government officials.

2-  The following correspondence between the registrant and the
foreign principal indicates that the registrant's services to the
foreign principal included the following contact with a U.S.
Government official which does not appear to have been reported.

   a-  A letter dated September 17, 1985 to ▮▮▮▮▮▮▮▮▮▮
   ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ stated "I had a conversation today
   with ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
   ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ is extremely
   concerned about the amendment on sugar that will be offered by
   ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ If the registrant contacted
   this U.S. Government official, its response to Item 12 of the
   supplemental statement for the period ending December 14, 1985
   should be amended to report the contact with ▮▮▮▮▮▮ on
   September 17, 1985.

NIGERIA

1 - BMSKPA must disclose their role in the October 23, 1985 letter
to ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

0.7.4249.1510900

DOJSCO-402205339

This should be disclosed in item 12 of the supplemental statement for the period ending December 14, 1985.

2 - An October 29, 1985 memorandum to ████████████████ ████████████████████████████ does not have a short-form registration statement on file in the BMSKPA (#3600) registration, but ███████████████████████ indicated that ██████████ had nothing at all to do with the memorandum even though his name appeared on it.  This memorandum constitutes political activity and thus ██████████ should have a short form under this particular registration.

3 - A November 1, 1985 memorandum to ██████████████████ indicated that BMSKPA possibly engaged ██████████ as a consultant to assist them in connection with their representation of the Government of Nigeria.  A Nov. 12, 1985 memorandum suggests that ██████████ did work and possibly is working on behalf of Nigeria and therefore should be registered under the Act.  According to ██████████ and ████████████████████ arranged initial contact, but did nothing else.  He only arranged to establish the contract.

4 - A November 11, 1985 memorandum to ████████████████████ from ██████████████████████ indicated the following

- 22 -

meetings/activities which should be reported in the December 14, 1985 supplemental statement.

a) ███████████████████████████████ met with ███████
███████████████████████████████ on October 29 to
discuss the Nigerian Peace Initiative, as well as P.L. 480
and the grant/purchase of wheat.  The memorandum also stated
that ███████████████████████ have continued their
contacts with ███████████ All such contacts should be
reported in item 12 of the statement.

b) ████████████████████████████████████
███████████████████████████ on the floor of the U.S.
Senate" on October 30, 1985.  This contact as well as the
subject matter should be disclosed in item 12 of the
statement.

c)  Meeting between ██████████████████████████
███████████████████████████████████████████
███████████████ on October 31, 1985.  Although the
███████████████ contact was disclosed, BMSKPA should also
have disclosed the contact with Pitchford in item 12 of the
statement.

0.7.4249.1510900

DOJSCO-402205341

d) ███████████████████████████ are now working on

efforts to attract U.S. business investment in Nigeria."

This activity should be disclosed in item 11 of the statement

and all political activity in connection with promoting

investment to Nigeria should be disclosed in item 12.


5 - A December 13, 1985 letter to ████████████ from Paul

Manafort indicated that ██████████ and Manafort had discussed the

possibility of Audifferen acting as a consultant with respect to

Nigeria.  Also, a December 20, 1985 letter to Manafort from

█████████████ indicated that █████████ is definitely somehow

involved with Nigeria.  According to ████████████████████

nothing in the letter occurred and no agreement was ever signed.


6- BMSKPA must disclose its role in the visit of ████████████

████████ to the U.S.


PERU


1 - An August 13, 1985 memorandum indicated that as of August 6,

1985 the Government of Peru was a client of BMSKPA.  BMSKPA

registered for Peru on September 16, 1985, over 30 days after

Peru became their client.  BMSKPA should provide this Unit, in

writing, with an explanation as to why it violated the statute.

0.7.4249.1510900                                                        DOJSCO-402205342

2 - An August 14, 1985 memorandum to ███████████ from Paul
Manafort and ███████████ suggested that BMSKPA had
discussions with Agency for International Development officials
on behalf of Peru regarding Peru's outstanding arrearage problem.
This activity/discussions must be disclosed in item 12 of the
supplemental statement for the period ending December 14, 1985.



3 - An August 14, 1985 memorandum of conversation from ███████
███████ indicated that he had a meeting with ████████████
███████ This meeting was not disclosed in BMSKPA's
December 14, 1985 supplemental statement.  BMSKPA must disclose
the contact as well as the nature and purpose of the contact in
item 12 of the statement.  (according to ███████████
███████ this meeting did occur).



4 - An August 15, 1985 memorandum to ██████████ from Paul
Manafort and ████████████ indicated that ██████████
████████████████████████████
██████████ may be invited to visit Peru.  If the visit
took place, and BMSKPA had a role in the visit then BMSKPA must
disclose its role in the visit in item 12 of the supplemental
statement for the period ending December 14, 1986.  According to
██████████████ this visit did occur, but BMSKPA did
not have a role in the visit.

5 - A September 5, 1985 memorandum to ██████████ from Paul
Manafort referred to key U.S. Government officials, members of

0.7.4249.1510900

DOJSCO-402205343

Congress, and media markets, to be contacted by the Peruvian
Embassy or by BMSKPA.  The following contacts/persons referred to
in the memorandum were not disclosed in BMSKPA's supplemental
statement for the periods ending December 14, 1985 and June 14,
1986, however ▀▀▀▀▀▀▀▀▀▀▀▀▀▀▀▀▀ indicated that BMSKPA
only suggested that these individuals be contacted and that the
Embassy of Peru scheduled the meetings.

- U.S. Government officials



0.7.4249.1510900

DOJSCO-402205344



U.S. Congressmen



0.7.4249.1510900

DOJSCO-402205345



Media Markets



6 - BMSKPA must disclose its role in ▮▮▮▮▮▮▮▮▮▮▮ United
Nations visit referred to in a September 17, 1985 memorandum to
▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ This activity should be
disclosed in item 11 and/or 12 of the December 14, 1985
supplemental statement.   (The visit was also referred to in
other memoranda).

0.7.4249.1510900                                                    DOJSCO-402205346

- 28 -

7 - BMSKPA must disclose its role in the U.S. visit by ▆▆▆▆▆

▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆ referred to in a September 18, 1985

memorandum to ▆▆▆▆▆▆▆▆▆▆▆▆▆▆ from Paul Manafort and

▆▆▆▆▆▆▆▆▆▆▆ in items 11 and/or 12 of BMSKPA's supplemental

statement for the period ending December 14, 1985.


8 - A September 24, 1985 memorandum to ▆▆▆▆▆▆▆▆ from Paul

Manafort regarding the activities of BMSKPA on behalf of Peru

revealed the following activities which BMSKPA must disclose in

items 11 and 12 of its December 14, 1985 supplemental statement.

   a)   Facilitated and accelerated the creation of a payment

   schedule by the United States Government of the obligations

   of Peru.  (item 11)

   b)   Stopped the reprogramming of $4.5 million of U.S.

   assistance to Peru during FY 1985.  (item 11)

   c)   Contacted the major press mediums to give them

   background information.  (item 12)

   d)   Developed talking points and important themes for the

   press conferences and press interviews (item 12

   disclose activity and list contacts)

   e)   Maintained continued contact with the press.

DOJSCO-402205347

    f)    Organized private interviews with the Cable News
            Network, USA Today, The Los Angeles Times, Newsweek,
            SIN, and The Washington Post.  (item 12)

    g)    Notified 25 members of the priority press to ensure
            that they were present during the press conference
            (list in item 12).

    h)    Organized the visit of ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

        (item 12).

    i)    Worked with the Department of State and the Department
            of Defense to ensure defense funding for the education
            of the military.  All such contacts should be reported.
            (item 12)

9 - A September 26, 1985 memorandum to ▮▮▮▮▮▮▮▮▮▮▮▮
▮▮▮▮ from Manafort, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ discussed the
September 22 and 23 press interviews with Newsweek, The
Washington Post, The Los Angeles Times, U.S.A. Today, CNN, SIN.
BMSKPA must indicate its role in these interviews in item 12 of
the December 14, 1985 supplemental statement.

10 - A September 27, 1985 memorandum to Paul Manafort from
▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ stated "[a]ttached is a
summary of the ▮▮▮▮ speech, an accompanying cover letter for

0.7.4249.1510900

DOJSCO-402205348

- 30 -

█████████████      signature, and a list of key U.S. Government officials
who are to receive this summary." BMSKPA must report their role
in the ██████ speech in item 11 of the supplemental statement for
the period ending December 14, 1985. Furthermore, BMSKPA did not
indicate that they disseminated any printed material on behalf of
Peru.  BMSKPA must provide this Unit with a copy of this
material.  If the material is considered political propaganda
BMSKPA must file a dissemination report and disclose the activity
and the names of the U.S. Government officials who received the
disseminated material in item 12 of the statement and BMSKPA must
also amend items 16-24 of the statement if indeed the material is
considered political propaganda.


11 - An October 2, 1985 memorandum to █████████████ from Manafort
and █████████ stated that BMSKPA had conversations with Treasury
officials regarding the annual meeting of the World Bank and IMF
in South Korea and the shift of emphasis of debtor nations from
austerity to economic growth.  BMSKPA neglected to disclose any
conversations with Treasury officials.  BMSKPA must disclose all
such contacts in their supplemental statement for the period
ending December 14, 1985. ████████████████████████ indicated
that ████████████ said he "doesn't recall any meetings or
conversations.")


12 - An October 17, 1985 paper on the <u>Peru Aviation Issue</u>
referred to seven key U.S. decision makers with respect to the
issue of aviation.  All contacts with the seven key decision

0.7.4249.1510900                                                                          DOJSCO-402205349

makers listed below should be disclosed in item 12 of the
appropriate supplemental statement.



13 - A November 8, 1985 memorandum to ▮▮▮▮▮▮▮ from Paul
Manafort states that "Black, Manafort, Stone and Kelly, Inc. has
communicated with ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
▮▮▮▮▮▮▮▮▮▮ This contact must be disclosed in item 12
of the December 14, 1985 supplemental statement.

0.7.4249.1510900                                                    DOJSCO-402205350

14 - BMSKPA must disclose in item 11 of the December 14, 1985
supplemental statement, its role in the visit of █████████
██████ to the United Nations as described in the October 3, 1985
memorandum to ████████████████████ from Paul
Manafort.  The following activities should be indicated in the
disclosure.

a)     Structured a press schedule.

b)     Prepared a list of talking points to be used by
       ████████████████ as he briefed the press.

c)     Offered advice on content of press kit.

d)     Prepared press announcement.

e)     Prepared press release for distribution to priority
       press (This may be political propaganda.  BMSKPA must
       provide this Unit with a copy of the release).

f)     Developed individually tailored press package for
       television journalist (May be political propaganda.
       This Unit must be given a copy of the press package).

0.7.4249.1510900                                                    DOJSCO-402205351

- 33 -

    g)    Set up press interviews for ███████████████ with Associated Press, Reuters, The Washington Post, Washington Times, and the Los Angeles Times.

    h)    BMSKPA's role in the meeting between ███████████ ██████████

15 - A letter was sent to ██████████ and to ██████████ ███████ with respect to the S.680 hearings before the Trade Subcommittee on September 12 and 13, 1985.  Enclosed with the letters were six copies of comments on S.680.  BMSKPA must indicate their role in the letter and comments in item 12 of the December 14, 1985 supplemental statement and also must provide this Unit with the the material if they disseminated it on behalf of Peru.  Dissemination reports may also need to be filed.

16 - BMSKPA should disclose their role, if any, in the University of South Carolina Conference on Progress Towards Prosperity"

PHILIPPINES

1 -  A November 18, 1985 memorandum to Paul Manafort from ████████████ mentioned the following activities which should have been reported in item 12 of the December 14, 1985 supplemental statement.

0.7.4249.1510900

DOJSCO-402205352



2 -   A November 21, 1985 memorandum indicated that BMSKPA
would prepare and distribute fact sheets and other
information on the Philippines to Congress and the press.
███████████████████████ stated that BMSKPA did not
distribute any material whatsoever on behalf of this foreign
principal.

3 -   A December 3, 1985 memorandum to ███████████ from
Paul Manafort indicated that ███████████ would be
interviewed by _Time_.   According to ███████████
███████ BMSKPA did not arrange or have any role in this or
any interviews.

4 -   A December 11, 1985 memorandum to Paul Manafort from
███████████ indicated that ███████ made three calls on behalf
of the foreign principal which should have been reported but

0.7.4249.1510900                                                       DOJSCO-402205353

were not reported in item 12 of the December 14, 1985
supplemental statement.  The calls were to ████████████

████████████████████████████████████████

                    In the December 14, 1985
supplemental statement BMSKPA indicated that they "advised
the client with respect to U.S. media and press strategies
with respect to the upcoming presidential election."  This
Unit found approximately 15 memoranda which indicated that
BMSKPA advised the ████████████████ with respect to
U.S. media and press strategies rather than the Chamber of
Philippine Manufacturers, Exporters and Tourism Association.
December 2,3,4,5 and 13, 1985 and November 18, 20, 21, 22
and 25, 1985.  BMSKPA must make general statements in item
11 of the December 14, 1985 and June 14, 1986 supplemental
statements setting forth its role with respect to the
Philippine election.

5 -  An undated memorandum regarding "Upcoming Visit of U.S.
Senators to Philippines" stated ". . . we have had
discussions with ████████████████ regarding those
interested in visiting the Philippines."  All contacts and
activity surrounding these visits should be disclosed in
items 11 and 12 of the supplemental statement for the period
ending June 14, 1986.

6 -  January 7, 1986 and December 31, 1985 memoranda
indicated that U.S. journalists would visit Manila,

0.7.4249.1510900                                    DOJSCO-402205354

Philippines in January, 1986.  The journalists who were to
visit the Philippines were listed in the memoranda: ████

████████████████████████████████████████████████
████████████████████████████████████████     The

December 31 memorandum indicated that BMSKPA arranged these
trips, however, ████████████████████ indicated that
BMSKPA had no role in arranging the visits.  BMSKPA must
disclose all of their activity/contacts in connection with
these visits in item 12 of the supplemental statement for
the period ending June 14, 1986 if they did indeed have a
role in the visits.

7 -  BMSKPA sent letters on January 7, 1986 to the U.S.
media.  They must report this activity and the contacts with
the press in the supplemental statement for the period
ending June 14, 1986.

8 -  A January 8, 1986 memorandum indicated that BMSKPA met
with ████████████ with respect to the Foreign Assistance
Bill.  This contact must be reported in item 12 of the June
14, 1986 supplemental statement. ████████████████
indicated that this contact was reported however, in
reviewing the file again this meeting was not disclosed on
the June 14, 1986 supplemental statement.

9 -  BMSKPA must indicate its role in the January 20, 1986
U.S. visit of Philippine ████████████████████

0.7.4249.1510900                                              DOJSCO-402205355

████████         in a telephone conversation with ████████ of
this Unit indicated that the following meetings were
arranged by the Embassy and that BMSKPA only suggested that
they occur:

████████████████████████████████████████████████████████

████████████         All contacts that BMSKPA may have had
with respect to these meetings (ex. Paul Manafort
coordination of the ████████ meeting) must be disclosed in
item 12 of the supplemental statement for the period ending
June 14, 1986.

10 - A January 20, 1986 memorandum as well as a schedule of
activities indicated that the ████████████████████
████████████ would participate in media events/meetings.
BMSKPA must disclose the names of all media/organizations/
individuals they contacted with respect to the events/
meetings, as well as disclose their role in the events in
the June 14, 1986 supplemental statement.  Following is a
list of the events which appeared in the January 20
memorandum and schedule of activities.



0.7.4249.1510900                                      DOJSCO-402205356



11 -  A January 21, 1986 memorandum indicated someone from
BMSKPA discussed with U.S. Government officials on January
22, 1986 the issue of the "... procedures that the
Government of the Philippines has set in place to ensure
free and fair elections on February 7, 1986."  These
meetings on January 22 were not disclosed in the June 14,
1986 supplemental statement.

0.7.4249.1510900

DOJSCO-402205357

12 -   BMSKPA must disclose the names of all press
organizations/contacts that it contacted on behalf of the
Philippines.   The following list of Philippine press
contacts was found in BMSKPA's files.



0.7.4249.1510900

DOJSCO-402205358

- 40 -



13 -  An undated list of meetings/activities indicated that
someone from BMSKPA met with the following individuals;
this activity should be disclosed in item 12 of the
appropriate supplemental statement:

0.7.4249.1510900

DOJSCO-402205359

███████████████████████████████████████

██████████ indicated in a telephone conversation with

██████████ that BMSKPA merely suggested that the Philippine

Government should meet with the individuals above).

14 - BMSKPA should disclose its contact and role with

respect to the ███████████████████████████████████

████████ This activity should be disclosed in item 12 of the

June 14, 1986 supplemental statement.

15 - BMSKPA must disclose the particular legislation, for

example HR 2582, that it lobbied for or against on behalf of

the Philippines in the appropriate supplemental

statement(s).

16 - BMSKPA must indicate its role, as well as all contacts

with respect to press interviews of Philippine government

officials.

17 - BMSKPA must disclose its role in any hearings which

were held on the Philippines (i.e. obtaining witnesses,

gaining press coverage, preparing testimony etc.)

ST. LUCIA

1 - An April 5, 1985 letter to ████████████████████████

████████████ regarding exchange of information with U.S.

0.7.4249.1510900

DOJSCO-402205360

Treasury Department stated ". . . St. Lucia would have a
negotiating team selected and ready to begin deliberations
in April of this year. I so informed the U.S. Treasury
Department and they are expecting to begin serious
negotiations in the very near future. . . . advise me as to
whether the Government still feels that these negotiations
are worthwhile pursuing. . . "I will be happy to play any
role you deem advisable either as an integral part of the
St. Lucia negotiating team or as a mere facilitator of your
independent efforts. . . "

BMSKPA must indicate its role in these negotiations and must
disclose all U.S. Government contacts made with respect to
the negotiations.

2-  An April 19, 1985 letter to ▮▮▮▮▮▮▮▮▮▮▮▮▮
regarding industrial development activity. If BMSKPA
engaged in this activity it should be disclosed in item 12
of the supplemental statement for the period ending June 14,
1985.

3-  An October 3, 1985 letter to ▮▮▮▮▮▮▮▮▮▮▮▮
▮▮▮▮▮ indicated that BMSKPA would assist in arranging for
the Small Business Journal to do a documentary on Caribbean
economic prospects. BMSKPA must disclose its role in the
documentary.

0.7.4249.1510900                                                   DOJSCO-402205361

UNITA

1 - On October 15, 1985 ▉▉▉▉▉▉▉▉ wrote a letter to ▉▉▉▉▉▉▉▉

▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉

regarding ▉▉▉▉▉▉▉▉ visit to Africa and his

debriefing with ▉▉▉▉▉▉▉ It appears as though these contacts

(letters and meeting) should have been reported in item 12 of the

supplemental statement for the period ending December 14, 1985 and a

copy of the letter should be provided to this Unit. Furthermore, in

the future, BMSKPA should place a Section 4(e) label on letters such

as this one.

2 - An October 21, 1985 memorandum to ▉▉▉▉▉▉▉▉ from BMSKPA

referred to the following activities which should have been reported

in the supplemental statement for the period ending December 14,

1986.

    a)    BMSKPA worked with ▉▉▉▉▉▉▉▉ and other members of

the House who sent a joint letter to ▉▉▉▉▉▉▉ urging

that he provide material support to UNITA (This activity should

be reported in item 12 of the statement).

    b)    BMSKPA contacted syndicated journalists as well as CBS

News' 60 Minutes, The McNeil Lehrer Report, Newsweek and other

major print and television outlets on behalf of UNITA.  BMSKPA

should list in item 12 each media organization and individual

in the media that they contacted on behalf of UNITA.

0.7.4249.1510900

DOJSCO-402205362

    c)    BMSKPA assisted ▊▊▊▊▊▊ in improving the drafting and distribution of press releases.

    d)    BMSKPA worked with private voluntary organizations and outside groups to collect humanitarian assistance for UNITA.

3 - On October 23, 1985 ▊▊▊▊▊▊ wrote ▊▊▊▊▊▊ regarding press coverage of UNITA.  This contact, as well as all other such contacts should have been reported in item 12 of the supplemental statement for the period ending December 14, 1985. BMSKPA should also indicate their role in any television appearances made by Savimbi while in the U.S.

4 - At the bottom of an October 25, 1985 memorandum to Paul Manafort from ▊▊▊▊▊▊ regarding UNITA was a message regarding hearings in Congress on Namibia and Angola.  The message indicated that BMSKPA was to "...draft questions, get witnesses, etc."  BMSKPA must report their role in the hearings and disclose the specific hearings in which they had a role.  According to ▊▊▊▊▊▊ ▊▊▊▊▊▊ BMSKPA suggested witnesses.  This should be disclosed in item 11 of the supplemental statement for the period ending December 14, 1985.

5 - On October 25, 1985 a packet of material was presented to ▊▊▊▊▊▊ This activity should be reported in item 12 of the supplemental statement for the period ending December 14, 1985.

0.7.4249.1510900

DOJSCO-402205363



- 45 -

6 - BMSKPA must indicate its role in the hearings referred to in the October 25, 1985 memorandum from ███████████ to Paul Manafort.



7 - An October 29, 1985 memorandum from ███████████ to ███████████ stated that "I have spoken with ███████████ staff... A call to ██████████ from you urging he testify would be very helpful."  A November 1, 1985 letter from ███████████ indicated that ███████ called and wrote ███████████ to get him to testify.   None of these contacts were reported in item 12 of the supplemental statement for the period ending December 14, 1986. ███████████████████████ indicated that ███████████ tried to contact ███████████ but was never able to contact him.  However, the contact with ███████████ should be disclosed.

8 - A November 1, 1985 memorandum to ███████████████ indicated that BMSKPA assisted in the preparation of press trips to Jamba.  BMSKPA must indicate in item 12 of the December 14, 1986 supplemental statement its role in the trips and it must list the names of the press organizations and individuals contacted with respect to the press trips to Jamba.

9 - According to a November 1, 1985 memoranda to ███████████ BMSKPA apparently assisted in the preparation of press interviews of ███████  BMSKPA must indicate this activity as well as the name of the media organizations and individuals BMSKPA communicated with concerning the interviews.  This activity should

Page 46 of 83

be disclosed in item 12 of the December 14, 1986 supplemental
statement.



10 - BMSKPA's files contained a November 5, 1985 letter to

by direction of                              BMSKPA
must disclose their role in this activity (i.e. preparation,
delivery etc.) in items 11 and 12 of the supplemental statement for
the period ending December 14, 1985.  Also, with reference to this
letter a November 6, 1985 memorandum to Paul Manafort from
          indicated that          personally delivered the letter to
                    and a November 15, 1985 memorandum to
          from BMSKPA indicated that BMSKPA delivered the letter to
the                      This activity should be reported in item 12 of the
supplemental statement for the period ending December 14, 1985.


11 - A November 15, 1985 memorandum indicated that BMSK worked with
Congressmen and Senators to get certain legislation proposed and
passed on behalf of UNITA.  This was also disclosed in BMSKPA's
supplemental statement for the periods ending December 14, 1985 and
June 14, 1986.  It will be necessary for BMSKPA to indicate in each
supplemental statement the name and subject matter of each piece of
legislation which BMSKPA sought to be passed in Congress.  The
memorandum also indicated that BMSKPA had worked with Hill Staffers
and members of Congress to organize and support two Congressional
Hearings on the UNITA/Angola issue.  This activity must be disclosed
in the statements as well.

0.7.4249.1510900

DOJSCO-402205365

12 - BMSKPA must report the November 18, 1985 meeting with ██████

██████████

13 - On January 9, 1985 ████████ sent a letter to ██████████
thanking her for her assistance in arranging a meeting and interview
with ████████████████████ indicated that this *So why the letter*
interview never took place.

14 - On February 1, 1986 BMSKPA apparently hosted and/or
participated in a dinner at the Grand Hotel. Many U.S. Government
officials, as well as members of UNITA were present at the dinner.
BMSKPA must disclose this activity in item 11 of the June 14, 1986
supplemental statement, as well as provide this Unit with a list of
U.S. Government officials who attended in order that it may be
placed in the public file. Furthermore, if there were any speeches
made or any material distributed at the dinner the activity must be
reported in items 11 and 12 of the statement and if BMSKPA paid for
the dinners they should report it in item 15 of the statement
██████████ indicated that the dinner was purely social & that no
speeches were made).

15 - On February 1, 1986 and February 2, 1986 Savimbi appeared as a
guest on "Evans & Novak" (CNN). BMSKPA must disclose their role in
this activity and list all media contacts surrounding the interview
in item 12 of the supplemental statement for the period ending
June 14, 1986.

0.7.4249.1510900

DOJSCO-402205366



16 - BMSKPA drafted a letter to be sent to █████████████

from █████████████    This February 6, 1986 letter which BMSKPA

prepared and sent to █████████   should be filed with this Unit and

the activity should be disclosed in item 12 of the June 14, 1986

supplemental statement.  Furthermore, letters such as this should

contain a Section 4(e) label.  BMSKPA must also report if they

assisted in the preparation of news releases and the like to be

disseminated by UNITA, as well as all articles written to be sent

out in congressional publications to the Members' constituencies.



17 - A February 18, 1986 letter to ███████████   from ███████

███████████████████████████████████████████

mentioned a ████████ article to be placed in the █████████████

BMSKPA should inform this Unit of its connection with ████████

█████████████████████████████████as well as indicate its

role in the ████████ article on ████████  If BMSKPA did have a role

in this article the activity should be report in item 12 of the

supplemental statement for the period ending June 14, 1986.

18 - BMSKPA must indicate its role in the May 20, 1986 "Dear

Colleague" letter and disclose the names of any Congressmen it was

sent to by BMSKPA.  The activity should be disclosed in item 12 of

the June 14, 1986 supplemental statement and the names of any

Congressmen it was prepared for should be listed in item 12 of the

same statement (according to ████████████████████████ this Dear

Colleague letter was not used).

0.7.4249.1510900

DOJSCO-402205367

- 49 -

19 - A June 5, 1986 memorandum to ████████ from BMSKPA referred to
the following activities which should have been reported in the
June 14, 1986 supplemental statement.

    a)   BMSKPA arranged for two U.S. based journalists to go to
Jamba: ██████████████████████████████████████████
████████████████████████████████████████████████████  All
media contacts relating to these press visits, as well as the
activity itself should be reported in item 12 of the statement.
(according to ██████████████████████████████████████  is a
free lance writer and made the trip on his own).

    b)   BMSKPA also indicated that the journalist's articles were
distributed to Congress along with a "Dear Colleague Letter."
BMSKPA's role in this activity should be reported in item 12,
copies of the articles and "Dear Colleague letter" should be
filed with this Unit, the names of the Congressmen BMSKPA sent
the material to should be listed in item 12, BMSKPA should have
placed a label on all material that they disseminated and
dissemination reports should have been filed if BMSKPA
disseminated the material.

    c)   BMSKPA indicated that it is in the process of arranging for
████████████████████████████████████████████████████
████████████████████████████████  to go to Jamba.  All media
contact made regarding these visits prior to June 14, 1986
should be reported in item 12 of the statement.

0.7.4249.1510900                                          DOJSCO-402205368

d)  BMSKPA, under the Military Updates and UNITA Communiques section of the memorandum, indicated that they received a military update from Angola on June 2, 1986 and then they prepared and issued a media announcement.  A copy of this announcement should have been filed with this Unit.

e)  BMSKPA indicated that material was entered into the ████████████████████████████████████████████████████ BMSKPA must indicate its role in seeing that the material was printed in the ██████████

f)  Under the Video Coverage and Photos section of the memorandum, BMSKPA indicated that they had contacted ██████████ ██████████ concerning video footage and also regarding taking their own camera crews to Angola.  BMSKPA must disclose this activity as well as indicate with whom it communicated in the media on behalf of the foreign principal.  This activity should be described in item 12 of the statement.

g)  Under the Press Activity section of the memorandum BMSKPA indicated that they were involved in "... both initiating press interviews and widely circulating articles on UNITA."  BMSKPA indicated that it had set up three interviews. ██████████████ ████████████████████████████████████████████ BMSKPA went on to say that "when an article is printed, we contact a member of

0.7.4249.1510900

DOJSCO-402205369

Congress to either circulate the article with a 'Dear Colleague Letter' or to enter the information into the Congressional Record." BMSKPA has not disclosed this activity. The names of all media contacts should have been listed in item 12 and the contact with the Congressmen with respect to all of the "Dear Colleague Letters" and articles, as well as the activity of having the articles printed in the ███████████████ should have been reported in item 12 of the statement. It will be necessary for BMSKPA to provide this Unit with copies of all "Dear Colleague Letters" that BMSKPA prepared. Section 4(e) labels should have been placed on all such documents.


h)  Under the Information Preparation section of the memorandum, BMSKPA stated that "[I]n our efforts to emphasize the legitimacy of UNITA, and the Soviet-Cuban threat to Angola, we have found it necessary to create the required information and then offer it to an outside source for circulation." This activity should be reported in item 12 and BMSKPA should indicate the "outside sources" which circulated the information. This Unit must be provided with the information which BMSKPA created for circulation.


20 - The following list is a list of activities/press interviews/ contacts/meetings which were not reported in the BMSKPA supplemental statement for the period ending June 14, 1986. All of the names of

0.7.4249.1510900

the media organizations BMSKPA contacted as well as the names of individuals BMSKPA contacted should have been disclosed.   BMSKPA should also have indicated its role in the activities in which Savimbi participated.



0.7.4249.1510900                                                                                    DOJSCO-402205371



0.7.4249.1510900                                                              DOJSCO-402205372



21 - All activity such as letters, op-ed pieces, articles, etc.
which BMSKPA wrote on behalf of UNITA, to be disseminated by BMSKPA
or by anyone else should be reported on the appropriate supplemental
statements.

Furthermore, BMSKPA should indicate its position on all issues
it discussed with U.S. Government officials and BMSKPA must make a

0.7.4249.1510900

DOJSCO-402205373

general statement of its political activities in item 12 of the
supplemental statements.

Finally, BMSKPA neglected to file pages 6 and 7 of its
supplemental statement for the period ending June 14, 1986.

## FINANCIAL

This portion of the inspection report will serve as an audit
report of the subject registrant's compliance with the financial
reporting requirements of the Foreign Agents Registration Act.

## SCOPE OF AUDIT

██████████████ the books and records of the registrant as they
relate to the Act for the period of June 14, 1984 through June 14,
1986.  The examination was conducted in accordance with certain
generally accepted auditing standards and, accordingly, included
such tests of the accounting records and such other auditing
procedures as were considered necessary in the circumstances.

## OPINION

██████████████ for reasons discussed in the
recommendation section of this report, the registrant's financial
disclosures as presented in their supplemental statements do not

0.7.4249.1510900

DOJSCO-402205374

- 56 -

present fairly the financial activities of the registrant for
purposes of the Foreign Agents Registration Act.

Black Manafort & Stone Public Affairs, Inc.
(Registration No. 3600)

Receipts



0.7.4249.1510900

DOJSCO-402205375



0.7.4249.1510900

DOJSCO-402205376





0.7.4249.1510900

DOJSCO-402205377



0.7.4249.1510900

DOJSCO-402205378

Appearing below is an analysis of the financial terms and con-
ditions of the contracts between Black, Manafort and Stone Public
Affairs, Inc. (Reg. No. 3600) and the firm's foreign principals, and
the compensation the firm received as per the audit.  The purpose of
this analysis is to determine if the compensation received by the
registrant remained consistent with the financial clauses contained in
the contracts filed with this office.  This analysis allows the audit
to determine if funds were received by the registrant in addition to
funds clearly set forth and receivable per contract, and thereby
indicate the existence of an agreement between the registrant and the
foreign principal not disclosed to this Office.  This analysis also
allows the audit to determine if the registrant was party to any
agreement in which compensation was contingent, in whole or in part,
upon the successful completion of any political activities.

It should be noted at this point that the books and records of
the registrant as presented to the auditor did not contain any evi-
dence of monies received in addition to monies receivable per con-
tract, or monies received in violation of the contingency provision
provided in Section 8(h), of the Act.

Black, Manafort and Stone Public Affairs, Inc.
(Reg. No. 3600)

0.7.4249.1510900

DOJSCO-402205379



0.7.4249.1510900

DOJSCO-402205380



0.7.4249.1510900

DOJSCO-402205381



0.7.4249.1510900                                                          DOJSCO-402205382

- 64 -



0.7.4249.1510900

DOJSCO-402205383



0.7.4249.1510900

DOJSCO-402205384



0.7.4249.1510900

DOJSCO-402205385



0.7.4249.1510900

DOJSCO-402205386

## RECOMMENDATION

Based on the information contained in the registrant's filings and the inspection of the registrant's correspondence, office memoranda and financial records, BMSKPA did not adequately comply with the disclosure requirements of the Act. Therefore, BMSKPA must amend its registration where necessary. It is recommended that this Unit prepare a letter to BMSKPA setting forth the necessary amendments and to meet again with Nick Panuzio and Joel Dahnke to discuss the appropriate methods on how to amend the deficiencies in the BMSKPA registration.

0.7.4249.1510900

DOJSCO-402205387


JEC:ELP:TAR:djs
Typed:  5/7/87
149-139-16

MAY 29 1987

████████████████

Black, Manafort, Stone & Kelly
  Public Affairs Company
211 N. Union Street
Alexandria, Virginia  22314

        Re:  Paul J. Manafort
             Registration No. 3594

Dear ████████████

        This is in reference to the registration of Paul J. Manafort
(Manafort) pursuant to the provisions of the Foreign Agents
Registration Act, and to the inspection of his records conducted
in accordance with section 5 of the Act.

        The registrant must complete one set of amendment to
registration statement forms in reference to each of the
supplemental statement forms previously submitted, to detail
activities undertaken and to adjust financial reporting as
directed in the following paragraphs.

        The activities noted below are, for the most part,
activities which the registrant's correspondence, memoranda,
etc., state have occurred, rather than proposed activities.  If
there are instances where the registrant is certain that the
activity did not occur, the registrant must advise this office,
in a separate letter (not on the amendment forms), that the
specific event did not take place.

        Note that detailed disclosure of political activities must
include the identity of the persons involved, the date, place and
nature of all contacts, and the purpose of the contacts.
Political activities undertaken as background or to prepare for a
proposal or a piece of legislation must be fully disclosed even
though the proposal may have been subsequently delayed, the
legislation may not have been reported out of Committee, etc.

        The following issues must be addressed on the amendment
forms.

1.   June 29, 1984 memo Manafort and ████████████████████
     ████████████████████████ - Roundtable member companies should
lobby their Senators and "coordinate their efforts through the ad
hoc 'Jerusalem Contact Group' which we can put them in contact

0.7.4249.1510900                    DOJSCO-402205389

with."  Explain contacts with Roundtable, reference to "Jerusalem
Contact Group," and interest in Jerusalem legislation.

2.  July 13, 1984 memo to the "Jerusalem Contact Group" -
Regarding the status of Jerusalem legislation, states that one
member of Congress can object to a suspension of the rules, and
has a handwritten note that BMS should find that member.
Disclose interest in Jerusalem legislation and all activities
related thereto.

3.  August 4, 1984 memo Manafort and ███████████████ - Manafort
and ████████ personally lobbied the offices of ███████████

Report the dates, places and purposes of these contacts, and
identify the persons contacted.

4.  September 25, 1984 memo ████████ to Manafort - Contacts with
████████████ concerning
amendments to the Jerusalem Bill.  Efforts with a group to write
a minority report on the Jerusalem Bill, and references to "the
loop on the Hill" and "the political White House stuff."  Detail
meetings with the members and with a group to write a minority
report, and explain "the loop on the Hill" and "the political
White House stuff."

5.  March 6, 1985 letter ████████████ to Manafort and ████████
Handwritten notes refer to efforts to include "politically
oriented" language in the report being prepared on the Saudi arms
package.  A handwritten note to ████████ asked "Did we try to get
this into report?"  Reply - "Yes through the usual channel. WB."
Detail efforts to include the "politically oriented" language.

6.  April 11, 1985 memo Manafort and ████████████ - Extensive
activities during first quarter of 1985, saw registrant serve as
a communications link between elements of the Administration and
a communications filter between the Administration and Capitol
Hill, contacts with agencies, Administration officials, and
members and staff of Congress.  Detail all of the contacts
mentioned in this memo.

7.  March 29, 1985 letter ████████████████ - enclosing two
articles to be passed on to ████████████ or his staff.  Were the
articles given to Sugar, his staff, or anyone else?

8.  April 23, 1985 memo Manafort to ████████ - "... we are trying
to persuade the White House to emphasize to the NSC the need to
force the study to a conclusion. ... we have presented the
anxieties which we have picked up in our conversations on Capitol
Hill."  Detail all White House and Congressional contacts.

9.  June 14, 1985 memo Manafort and ████████████ - Extensive
second quarter activities described, including contacts with the
Administration and Congress, as well as activities on behalf of
Jordan and their lobbying counsel.  Disclose lobbying activities

0.7.4249.1510900

DOJSCO-402205390

with Congress, White House, State Department, Defense Department and other agencies, and detail activities in connection with Jordanian aid package and with Jordan's lobbying counsel.

10.   September 3, 1985 memo Manafort and ▮▮▮▮▮▮▮▮▮▮ - Third quarter activity report stated registrant served as communication link between the Administration and Congress, balanced AIPAC's efforts with key Senators, delayed efforts to revive Resolution 177 and clarified Saudi role in financing Jordanian arms package. Detail contacts with Administration and Congress, and activities to balance AIPAC efforts, delay Resolution 177, and clarify Saudi role in Jordanian arms package.

11.   Undated document ▮▮▮▮▮▮▮▮▮▮ - "Latest State Department - poop on Jerusalem"-Refers to ▮▮▮▮▮▮ Hill and ▮▮▮▮▮ followed by notation "BACK CHANNEL".  All contacts must be reported.

12.   Undated document ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
▮▮▮▮▮▮▮▮▮ - ▮ attended meeting held by NAAA on Saudi Arms Sales.  As a result the following is suggested as content for a telex to go out to Roundtable Members" (three paragraphs follow).  Explain contacts with US/Saudi Roundtable (see paragraph #1), whether telex sent by Roundtable.

13.   December 30, 1985 memo Manafort to ▮▮▮▮▮ - Activities for the fourth quarter included communications with Congress and the Administration.  All contacts must be detailed, including efforts to balance AIPAC lobbying.  Registrant must report any connection with ▮▮▮ discussion with ▮▮▮▮▮▮ and activities undertaken on issues of discussion between ▮▮▮▮▮▮

14.   January 8, 1986 document - The writer (unidentified) had lunch with ▮▮▮▮ and discussed Saudi Arabia, the Philippines and the Foreign Assistance Bill.  No expenditure for lunch with ▮▮▮▮ was reported.  Explain interest in Philippines and Foreign Assistance Bill.

15.   April 25 and April 30, 1986 memos Manafort to ▮▮▮▮ - Initiated grass roots campaign among home state supporters of certain Senators in connection with the Saudi arms proposal, and followed up on calls that haven't been made.  Detail grass roots campaign, including the states involved.

16.   April 25 and April 30, 1986 memos Manafort to ▮▮▮ and April 25, 1986 memo Manafort to the Intercontinental Hotel - Refer to "talking points" which the registrant "provided".  The Intercontinental memo had an attachment "Talking Papers for Telephone calls on Pending Saudi Munitions Sale."  Were the "talking points" distributed to supporters of Senators (see paragraph 15), the White House, State Department or others?

17.   April 30, 1986 memo Manafort to ▮▮▮▮ - "I have had several conversations with ▮▮▮▮▮ on the arms sale.  Their column

appears in todays ████████████ ... and we are circulating it
in appropriate places."   Report contacts with ████████
explain statement relating to ██████ column that registrant is
"circulating it in appropriate places."

18.   Steno notebook, page 9 - A copy of the "Q&A" was left in ████
████████ and additional information on oil output was
requested.   Provide a copy of the "Q & A" and state whether it
was given to anyone other than Nickels, and advise as to whether
additional information on oil output was provided.

      In addition, a comparison of the results of our audit of the
registrant's books and records with the amounts reported on the
supplemental statements disclosed the following discrepancies,
which must be corrected on the amendment forms.



      The response and questions concerning this inspection should
be addressed to the attention of ████████████████ of this
office.

                        Sincerely,



Enclosures

cc: ████████████████████
████████████████████

0.7.4249.1510900                                          DOJSCO-402205392

# Memorandum



| Subject | Date | DEC 22 1987 |
|---|---|---|
| Paul J. Manafort | | JEC:FJC:djs |
| 18 U.S.C. § 219 | | 149-46-62 |
| | | Typed:  10/15/87 |



To                                              From

## INTRODUCTION

By letter dated May 16, 1986,

a United States Government
Agency, referred to this Division a potential violation of 18
U.S.C. § 219 (Section 219) by a former OPIC director, Paul J.
Manafort, who had resigned that day.  The basis of the criminal
referral was that while serving as an OPIC director from
October 21, 1981 to May 16, 1986, Manafort was also registered
under the Foreign Agents Registration Act of 1938, as amended,
as an agent of several foreign principals. 1/

Section 219 provides in pertinent part:

> Whoever, being a public official of the United
> States in the executive, legislative, or judicial
> branch of Government or in any agency of the United
> States. . . is or acts as an agent of a foreign
> principal required to register under the Foreign
> Agents Registration Act of 1938, as amended, shall
> be fined not more than $10,000 or imprisoned for
> not more than two years, or both.

---

1/  After becoming an OPIC director, Paul Manafort filed short forms
for the following countries: Bahamas, Dominican Republic, Nigeria,
Peru and Saudi Arabia.  He also filed a short form for U.N.I.T.A. and
signed his firm's contract with the Philippine Manufacturers,
Exporters & Tourist Association (PMETA or the Philippines).  His firm
also represented the United Bermuda Party, the News Corp. Ltd.
(Australia), the Institute for Financial and Fiscal Studies of Curacao
and the Governments of Barbados and St. Lucia.

0.7.4249.1510900

DOJSCO-402205393

> Nothing in this section shall apply to the
> employment of any agent of a foreign principal as a
> special Government employee in any case in which
> the head of the employing agency certifies that
> such employment is required in the national inter-
> est.

Since Manafort's registrations do not contain any
certificate from the White House that his employment was required
in the national interest, there appears to be a literal violation
of Section 219.

## SUMMARY OF FACTS

Manafort became a director of OPIC in October, 1981.   In
October, 1982 he simultaneously registered with the Justice
Department as an agent of the Dominican Republic and recused
himself from OPIC matters involving that country.   In 1983 the
White House made a policy decision not to certify the employment
of any foreign agent as required in the national interest in the
absence of an extraordinary emergency or extremely unique
circumstances.   Manafort attempted to convince the White House
that his circumstances were unique on the ground that his firm,
rather than he personally, was conducting the political
activities for the Dominican Republic which required
registration.   Although he made some progress with this argument,
and the Justice Department agreed that such a hypothetically
uninvolved person need not register, in the end no one at the
White House was willing to sign the certificate.   However,
Manafort was not required by the White House to resign his OPIC
position at that time.

When Manafort's OPIC term expired, he began serving as a
holdover director.   During this period the record reflects that
Manafort recused himself from a second matter, with a domestic
client, which would have involved a conflict, absented himself
from a third matter, involving his client, Saudi Arabia, and
refused to get involved in a minor matter involving his client,
the Bahamas, because of the appearance it would create.   In the
reappointment process Manafort disclosed all his foreign clients
and the White House insisted that he resign as a foreign agent,
which he did.   Later, however, Manafort signed his firm's
contract with PMETA, and was briefly quoted on their behalf in
the New York Times, Time and Newsweek.   Following some generally
unfavorable attention in the media to this contract and to
lobbyists generally, Manafort reregistered for a number of
countries, and assumed a more active role in representing
clients, but did not resign as an OPIC director.   A CBS news
report on conflicts highlighted the Manafort situation, and he
resigned a few days later, the same day the criminal referral was
made to the Justice Department.

0.7.4249.1510900                                                      DOJSCO-402205394

- 3 -

## THE FACTS

On October 20, 1981, Manafort took the oath of office as a presidentially appointed director of OPIC, following his confirmation by the Senate a month earlier.  Approximately one year later, on October 5, 1982, Manafort simultaneously registered with the Department of Justice as an agent of the Dominican Republic and recused himself from OPIC matters relating to that country in a letter to OPIC President Craig Nalen.  Linn Williams, then General Counsel at OPIC, later advised in a telephone interview, before departing for private practice in Japan, that when the matter of Manafort's representation of the Dominican Republic came up, that both a section 219 waiver and recusal by Manafort were considered as solutions to the problem, and that since the White House had some policy objection to a waiver, recusal was suggested to Manafort.

In 1983 the White House focused on the section 219 problem as a result of the controversy surrounding the activities of ▓▓▓▓▓▓▓▓▓▓  As a result, a policy decision was made for the President not to certify the employment of agents as required in the national interest "in the absence of an extraordinary emergency or extremely unique circumstances."  On April 28, 1983, in accordance with this policy decision, ▓▓▓▓▓▓▓▓▓▓

▓▓▓▓▓▓▓▓▓▓ which directed her to notify Manafort to resign his status as an agent or his appointment would not go forward.  Fielding then sent a memo dated May 10, 1983 to ▓▓▓▓▓▓▓▓ advising the Department of Manafort's prima facie violation.  The memo stated:

> When 18 U.S.C. § 219 was brought to our attention, the policy decision was made not to issue certificates to individuals who are or subsequently become registered agents in the absence of an extraordinary emergency or extremely unique circumstances. . . (therefore). . . (Manafort). . . is being notified by Presidential Personnel and advised that if he plans to continue as a registered agent his resignation is requested or his appointment is not going forward. (emphasis supplied)

However, the White House has no record that ▓▓▓▓▓ ever requested Manafort's resignation, and ▓▓▓▓▓ memo to ▓▓▓▓ never reached the Registration Unit.

On May 16, 1983, Manafort sent a letter to ▓▓▓▓▓▓▓▓ with a copy of his registration statement for the Dominican Republic, in which he argued that his unique circumstances should allow him to continue serving on the OPIC board.  He stated:

0.7.4249.1510900 DOJSCO-402205395

"You will notice that the name of the registrant
is Black, Manafort and Stone, Inc.  I am listed as
a Director and Partner of the firm."  He continues
"I hope this resolves the issue in a manner that
will allow me to continue to serve on the Board of
Directors of OPIC.  If there is any further
problems (sic), please contact me in order that we
might resolve it expeditiously."

           advised when interviewed that Manafort had heard
about the Section 219 policy decision and was unhappy about it,
and contacted him both because he knew him and because OPIC
(permanent employees) were within his domain.  ████ advised that
the matter Manafort raised was beyond his competence to decide,
so he sent it to the Counsel's office.  On September 12, 1983
Fielding responded to Manafort's point in a memorandum to ████

This policy left open the status of a prospective
appointee who is a member of a firm that is a
registered agent but who himself does not perform
any work requiring him to file an individual
"short form" registration statement.  The
(Justice) Department has concluded that so long as
such a person is neither (1) listed on the firm's
registration statement as being directly involved
in activities in furtherance of the goals of the
foreign principal nor (2) is on file as an
individual registrant, then section 219 does not
apply.  If the prospective appointee is registered
(in the firm's registration or individually),
however, then he must either "deregister" and
cease all activities on behalf of the foreign
principal or withdraw from Government service
consideration.

A November 29, 1983 memorandum from ████
████ again emphasizes that "the above paragraph refers to Paul
Manafort."  The decision then was not to grant a waiver, but to
force Manafort to choose between government service and his firm.
However, again there is no record that Manafort was advised to
resign before his term expired on December 17, 1983, and nothing
more happened on the matter until after the 1984 election.

On June 4, 1984 Manafort registered for Saudi Arabia as a
short form registrant under the name of his law firm, Paul
Manafort.  An inspection of the books and records of this firm
revealed an August 4, 1984 memorandum that indicates Manafort
personally lobbied some Senators on an issue for Saudi Arabia.

0.7.4249.1510900      DOJSCO-402205396

        In January and February 1985 Manafort received form letters
from Presidential Personnel and the White House Counsel
congratulating him on his prospective reappointment and sending
him copies of a personal data statement (PDS) and financial
disclosure form, along with several pages of conflicts laws and
regulations, but not including Section 219.  On February 11, 1985
Manafort sent ███████ a PDS listing Saudi Arabia as a personal
client and Barbados, the Dominican Republic and St. Lucia as
clients of his firm.  The White House could not locate a copy of
this form, stating:

        "We have been unable to locate the PDS which
        Mr. Manafort apparently forwarded in February of
        1985.  However, our computer records and our
        attorney interview memorandum indicate we did
        receive such a document."

        On March 25, 1985 ████████████████████████████
████████ made some handwritten notes about a discussion he had
with ████████ about the Manafort appointment and the waiver
issue.  According to ████████ the "original deal" was that
Manafort would serve as OPIC Director, and the waiver would be
signed by ████████████████ However, ████████declined and sent the
waiver to ████████ for his signature; however, ████████ also
refused. ████████ allegedly talked to Manafort and ████
████████ of OPIC about this.  On April 11, 1985 ████████████
interviewed Manafort regarding his registering and acting as a
foreign agent.  Manafort indicated that his law firm registered
for the Government of Saudi Arabia on July 4, 1984 and that his
public relations firm registered for the governments of St.
Lucia, Barbados and the Dominican Republic on October 5, 1982.
Manafort told ████████ that while he is registered for various
foreign clients he is not actively participating in the
representation of the clients. ████████ memorandum of this
interview, dated May 24, 1985, states that they discussed both
the felony prohibition in Section 219 against simultaneously
acting as a foreign agent and as a U.S. government employee, and
the exemption for certified employees, and that "to the best of
my (L.G.) knowledge, no such certification has been issued in
regard to Mr. Manafort".  He concluded:

        "Since Mr. Manafort is listed on both of the
        aforementioned foreign agents registrations (his
        law firm and public relations firm), I requested
        that he remove himself from such registration
        statements notwithstanding his representation that
        he is not involved in representing the listed
        foreign governments.  Mr. Manafort agreed to do so
        and further agreed to provide us written evidence
        of such "deregistration".

0.7.4249.1510900                                                    DOJSCO-402205397

- 6 -

On May 29, 1985 the Tribune (Bahamas) gave a detailed treatment of the BMS&K registration.  Manafort had registered for the Bahamas on May 1, 1985. ████████████ of BMS&K had a meeting with OPIC staff regarding sending an "investment mission" to the Bahamas.  About a month later, on July 8, 1985, ████ sent a memo to Manafort asked him to "get ████ to tell" OPIC mission office to go to the Bahamas. Manafort's handwritten note says "Can't do, bad perceptions". ████████████████ has confirmed through his ████████ that Manafort never approached him on the issue.  On July 9, 1985 OPIC decided not to send an investment mission to the Bahamas, and BMS&K was so advised on July 10, 1985.

On June 4, 1985 Manafort terminated his short form for Saudi Arabia under the registration of his law firm, and on July 16, 1985 he terminated his short form for his BMS&K clients.  On July 23, 1985 Manafort sent a copy of the amendment to the BMS&K registration to ████████, but because there was no amendment terminating his agency for Saudi Arabia, ████████ thought that Manafort's individual registration for Saudi Arabia was still a problem.  Consequently, Manafort's nomination was never processed.

On October 25, 1985 BMS&K began representing PMETA, a business association with close ties to the ████████ government which worked for his reelection.  On November 22, 1985 the New York Times printed an article "Firm Registering as Lobbyist for Group Linked to Marcos", quoting Manafort as stating: "I'll be an advocate. . . on behalf of the issues of bilateral interest the (Philippine) Government cares about."  On November 25, 1985 BMS&K registered for PMETA, but not Manafort.  On December 6, 1985 ████████ wrote up his version of the discussion he had with ████ "last week" regarding "the Manafort reappointment".  In it ████ advised that Manafort was taking the position that his firm, and not he, personally, was an agent. ████████ threw some doubt on this interpretation of Section 219 by highlighting the "is or acts as an agent of a foreign principal" language from it.  He reinforced this with his own conclusion to insist that Manafort recuse himself from "any matter affecting countries his firm is known to be representing."  However, the issue, as ████ saw it at the time was:

> Until the White House determines either to grant
> Mr. Manafort a waiver and process his
> reappointment, or to appoint a successor, he is
> still permitted to function as a director by
> virtue of the "holdover" clause in OPIC's statute.

Manafort was quoted in articles in the March 3, 1986 issues of Time and Newsweek regarding the BMS&K representation of PMETA. BMS&K promoted Marcos' reelection campaign to the American public for PMETA, attempting to make the elections more credible.  Other articles in the media that week focused a critical look on lobbyists with ties to the administration, including Manafort.

0.7.4249.1510900

DOJSCO-402205398

Manafort responded to this publicity by filing short forms for
the Bahamas, the Dominican Republic, Nigeria, Peru and UNITA on
March 11, 1986.  Late the following month, on April 29, 1986,
Manafort was scheduled to attend an OPIC Board meeting, but did
not.  On May 5, 1986 Manafort was personally involved ▇▇
political activities for Curacao, sending a letter to ▇▇▇▇▇▇
▇▇▇▇▇▇ on tax reform.

On May 12, 1986 ▇▇▇▇▇▇▇▇ brought the matter to a head with
a nationally televised report on lobbying.  He stated:

> Paul Manafort, whose firm represented Zibimbi, can
> offer clients more than friends in high places.
> He is in a high government place himself.
> Manafort is on the Board of Directors of OPIC, a
> U.S. government agency that makes loans and loan
> guarantees to foreign businesses.
>
> Manafort represents some countries that want to
> see that OPIC money, such as, the Bahamas, Peru,
> the Dominican Republic, and recently a business
> group close to Ferdinand Marcos.
>
> In 1985, Manafort's firm had contracts worth over
> $2.4 million, and in that same year businesses in
> those countries got $51.8 million.  Manafort told
> CBS News that he officially withdrew from any OPIC
> discussions of decisions involving his clients.
> CBS News was told today that a U.S. government
> agency was beginning to investigate.

On May 14, 1986 ▇▇▇▇▇▇▇▇▇▇▇▇ discussed the
issue of the potential violation of 18 U.S.C. § 219 by Manafort
which ▇▇▇▇▇▇ summarized in a memorandum to Shanks dated May 16,
1986.  That day Manafort resigned in a letter to the President,
and the same day ▇▇▇▇▇ sent a letter to ▇▇▇▇▇▇▇▇ AAG,
Criminal Division, Department of Justice referring the Manafort
matter for our review and consideration.

## ANALYSIS

The first question posed by these facts is whether Manafort
was required to register personally, or only his firm.  Manafort
maintained strongly, in his contacts with the White House and the
Department, that only his firm, and not he personally, was
required to register.  A review of the public file and the
inspection reports certainly confirms the fact that, in general,
Manafort's role was client relations rather than political
activities.  Thus, most references to Manafort in the file are
reports by staffers to him or memoranda from him to clients of
things the firm has done.  It is on this basis that Manafort
maintains that he has no personal obligation to register.

- 8 -

Manafort's argument highlights that portion of the
legislative history which states that a "political consultant"
need not register unless involved in political activities.
However, Manafort did lobby for Saudi Arabia in the summer of
1984; did send ▊▊▊▊▊ a letter regarding Curacao's
position on the Tax Reform Act on May 5, 1986; did promote the
Saudi view regarding the arms sale in several conversations with
columnist ▊▊▊▊▊ in April 1986; and did give interviews in
February, 1986 to Time and Newsweek regarding the Philippines.
In short, while there may be some theoretical case in which a
person can serve as a political consultant and not engage in
political activities, this is not such a case.  Manafort should
have filed short forms for the Curacao and Philippine contracts
as a hands on participant.  Manafort cannot maintain that he
personally was not required to register.

The second question posed is whether Manafort violated his
position of trust and responsibility to the United States by
simultaneously becoming a foreign agent.  The gravamen of the
section 219 offense is using public office to gain favorable
treatment for a foreign client, and its purpose is to ensure that
U.S. officials not accept compensation from foreign sources for
their government work.  This standard separates the conceded
technical, status offense from a prosecutable one.  In the
category of technical offenses are his status as agent for
Barbados, Curacao, St. Lucia, Nigeria, UNITA, and ▊▊▊▊▊
because no issue involving these principals came before the OPIC
Board.  Also not prosecutable under this standard are those
agreements to act as agent after participating in a matter
affecting the country, like Peru, Saudi Arabia, and the
Philippines, absent evidence that Manafort was a secret agent at
the time of the vote benefiting the country, or that the vote was
in anticipation of that later contract, neither of which appears
in this case.  This leaves as a possible prosecutable offense
Manafort's status as agent for the Bahamas, Saudi Arabia and the
Dominican Republic, where matters involving these countries
before OPIC arose while he was simultaneously agent and director.
In the Dominican Republic case, Manafort recused himself on
advice from ▊▊▊▊▊ and in the Saudi
Arabian case he was absent and did not otherwise participate.  In
the case of the Bahamas, Manafort was invited by ▊▊▊▊▊
of his firm to intervene in an OPIC staff decision regarding
whether an investment mission would visit the Bahamas,  but
Manafort declined to do so.  There is, in short, no concrete
conflict.

Finally, any prosecution of Manafort must overcome obstacles
based on the waiver provision of Section 219.  First, Manafort
was advised by ▊▊▊▊▊ that either a waiver
under Section 219 or a recusal from matters affecting the
Dominican Republic would solve his Section 219 problems, and he
acted in reliance on that legal advice.  Second, the failure of
White House personnel to force Manafort's resignation until
May 16, 1986 strengthens his contention that he thought their

0.7.4249.1510900                                                    DOJSCO-402205400

advice on conflicts was politically driven, and not legally required.   Third, since White House personnel had knowledge of Manafort's status as an agent and failed to request his resignation sooner, Manafort could argue that this constituted implicit approval of or, at least, acceptance of his status as an agent.

## CONCLUSION

The case against Manafort is technical, and not at all appealing.   Because of his good faith reliance on the OPIC legal advice and the lack of follow through and coordination by the White House and the Justice Department, a prosecution of Manafort appears to be fundamentally unfair.   For these reasons the prosecution should be declined and the investigation closed.

A letter returning the White House documents, and letters to ████████████████████████ his attorneys, declining prosecution are attached for your approval.   Also attached is a letter to current ████████████████████ advising him of the declination of ████████████ referral.

0.7.4249.1510900

DOJSCO-402205401

# EXHIBIT 926

# Version - Original Signatures
# **DMP International, LLC**
# FARA Reg. 6440



GOVERNMENT
EXHIBIT
U.S. v. MANAFORT, 1:17-cr-201 (A.B.J.)
926

OMB No. 1124-0001; Expires May _ , .020

**U.S. Department of Justice**

Washington, DC 20530

**Registration Statement**

**Pursuant to the Foreign Agents Registration Act of 1938, as amended**

## I--REGISTRANT

1. Name of Registrant

    DMP International, LLC

2. Registration No. (To Be Assigned By the FARA Registration Unit)

    6440

3. Principal Business Address
    10 St. James Drive
    Palm Beach Gardens, FL 33418

4. If the registrant is an individual, furnish the following information:
    (a) Residence address(es)

    (b) Other business address(es), if any

    (c) Nationality

    (d) Year of birth

    (e) Present citizenship

    (f) If present citizenship not acquired by birth, state when, where and how acquired

    (g) Occupation

5. If the registrant is not an individual, furnish the following information:
    (a) Type of organization: Committee ☐      Association ☐      Partnership ☐      Voluntary group ☐
                              Corporation ☒      Other *(specify)* _____

    (b) Date and place of organization   June 29, 2011 Delaware

    (c) Address of principal office   10 St. James Drive
                                      Palm Beach Gardens, FL 33418

    (d) Name of person in charge   Paul J. Manafort

    (e) Locations of branch or local offices

    (f) If a membership organization, give number of members

FORM NSD-1
Revised 05/17

(PAGE 2)

(g) List all partners, officers, directors or persons performing the functions of an officer or director of the registrant.

| Name | Residence Address(es) | Position | Nationality |
|---|---|---|---|
| Paul J. Manafort | 10 St. James Drive<br>Palm Beach Gardens, FL 33418 | Principal | USA |

(h) Which of the above named persons renders services directly in furtherance of the interests of any of the foreign principals?
Paul Manafort

(i) Describe the nature of the registrant's regular business or activity.
Business and political consulting firm.

(j) Give a complete statement of the ownership and control of the registrant.
LLC wholly owned by Paul J. Manafort.

---

6. List all employees who render services to the registrant directly in furtherance of the interests of any of the foreign principals in other than a clerical, secretarial, or in a related or similar capacity.

| Name | Residence Address(es) | Nature of Services |
|---|---|---|
| Richard W. Gates, III | 206 Virginia Avenue<br>Richmond, VA 23226 | Strategic advice and counsel. |

(PAGE 3)

## II--FOREIGN PRINCIPAL

7. List every foreign principal[1] for whom the registrant is acting or has agreed to act.

Foreign Principal                                  Principal Address(es)
**Ukrainian Party of Regions**                     3/5 Kudriavskaya Street
                                                   Kyiv, Ukraine 04053

## III--ACTIVITIES

8. In addition to the activities described in any Exhibit B to this statement, will you engage or are you engaging now in activity on your own behalf which benefits any or all of your foreign principals?     Yes ☐     No ☒

If yes, describe fully.

## IV--FINANCIAL INFORMATION

9. (a) **RECEIPTS-MONIES**

During the period beginning 60 days prior to the date of your obligation to register[2] to the time of filing this statement, did you receive from any foreign principal named in Item 7 any contribution, income, or money either as compensation or for disbursement or otherwise?     Yes ☒     No ☐

If yes, set forth below in the required detail and separately for each such foreign principal an account of such monies.[3]

| Foreign Principal | Date Received | Purpose | Amount |
|---|---|---|---|
| Please see accompanying Supplemental Statements | | | |

Total

---

1 The term "foreign principal," as defined in Section 1(b) of the Act, includes a foreign government, foreign political party, foreign organization, foreign individual and, for the purpose of registration, an organization or an individual any of whose activities are directly or indirectly supervised, directed, controlled, financed, or subsidized in whole or in major part by a foreign government, foreign political party, foreign organization or foreign individual.

2 An agent must register within ten days of becoming an agent, and before acting as such.

3 A registrant is required to file an Exhibit D if he collects or receives contributions, loans, moneys, or other things of value for a foreign principal, as part of a fundraising campaign. There is no printed form for this exhibit. (See Rule 201(e), 28 C.F.R. § 5.201(e)).

(PAGE 4)

**(b) RECEIPTS-THINGS OF VALUE**

During the period beginning 60 days prior to the date of your obligation to register[4] to the time of filing this statement, did you receive from any foreign principal named in Item 7 anything of value[5] other than money, either as compensation, or for disbursement, or otherwise?          Yes ☐          No ☒

If yes, furnish the following information:

| Foreign Principal | Date Received | Thing of Value | Purpose |
|---|---|---|---|
| | | | |

10. **(a) DISBURSEMENT-MONIES**

During the period beginning 60 days prior to the date of your obligation to register[6] to the time of filing this statement, did you spend or disburse any money in furtherance of or in connection with your activities on behalf of any foreign principal named in Item 7?          Yes ☒          No ☐

If yes, set forth below in the required detail and separately for each such foreign principal named including monies transmitted, if any, to each foreign principal.

| Date | To Whom | Purpose | Amount |
|---|---|---|---|
| | Please see accompanying Supplemental Statements | | |

**(b) DISBURSEMENTS-THINGS OF VALUE**

During the period beginning 60 days prior to the date of your obligation to register[7] to the time of filing this statement, did you dispose of any thing of value[8] other than money in furtherance of or in connection with your activities on behalf of any foreign principal named in Item 7?          Yes ☐          No ☒

If yes, furnish the following information:

| Date | Recipient | Foreign Principal | Thing of Value | Purpose |
|---|---|---|---|---|
| | | | | |

**(c) DISBURSEMENTS-POLITICAL CONTRIBUTIONS**

During the period beginning 60 days prior to the date of your obligation to register[9] to the time of filing this statement, did you, the registrant, or any short form registrant, make any contribution of money or other thing of value from your own funds and on your own behalf in connection with an election to any political office or in connection with any primary election, convention, or caucus held to select candidates for any political office?          Yes ☒          No ☐

If yes, furnish the following information:

| Date | Amount or Thing of Value | Political Organization or Candidate | Location of Event |
|---|---|---|---|
| | | Please see accompanying Supplemental Statements | |

4, 6, 7 and 9  See Footnote 2, on page 3.

5 and 8  Things of value include but are not limited to gifts, interest free loans, expense free travel, favored stock purchases, exclusive rights, favored treatment over competitors, "kickbacks", and the like.

(PAGE 5)

## V—INFORMATIONAL MATERIALS[10]

11. Will the activities of the registrant on behalf of any foreign principal include the preparation or dissemination of informational materials?          Yes ☐          No ☒

IF YES, RESPOND TO THE REMAINING ITEMS IN THIS SECTION V.

12. Identify each such foreign principal.

13. Has a budget been established or specified sum of money allocated to finance your activities in preparing or disseminating informational materials?          Yes ☐          No ☒

If yes, identify each such foreign principal, specify amount and for what period of time.

14. Will any public relations firms or publicity agents participate in the preparation or dissemination of such informational materials?          Yes ☐          No ☒

If yes, furnish the names and addresses of such persons or firms.

15. Activities in preparing or disseminating informational materials will include the use of the following:

☐ Radio or TV broadcasts          ☐ Magazine or newspaper          ☐ Motion picture films          ☐ Letters or telegrams
☐ Advertising campaigns          ☐ Press releases          ☐ Pamphlets or other publications          ☐ Lectures or speeches
☐ Other *(specify)* _____

**Electronic Communications**
☐ Email
☐ Website URL(s): _____
☐ Social media website URL(s): _____
☐ Other *(specify)* _____

16. Informational materials will be disseminated among the following groups:

☐ Public officials          ☐ Civic groups or associations
☐ Legislators          ☐ Libraries
☐ Government agencies          ☐ Educational groups
☐ Newspapers          ☐ Nationality groups
☐ Editors          ☐ Other *(specify)* _____

17. Indicate language to be used in the informational materials:
☐ English          ☐ Other *(specify)* _____

10 The term informational materials includes any oral, visual, graphic, written, or pictorial information or matter of any kind, including that published by means of advertising, books, periodicals, newspapers, lectures, broadcasts, motion pictures, or any means or instrumentality of interstate or foreign commerce or otherwise. Informational materials disseminated by an agent of a foreign principal as part of an activity in itself exempt from registration, or an activity which by itself would not require registration, need not be filed pursuant to Section 4(b) of the Act.

## VI--EXHIBITS AND ATTACHMENTS

18. (a)  The following described exhibits shall be filed with an initial registration statement:

    *Exhibit A-*    This exhibit, which is filed on Form NSD-3, sets forth the information required to be disclosed concerning each foreign principal named in Item 7.

    *Exhibit B-*    This exhibit, which is filed on Form NSD-4, sets forth the information concerning the agreement or understanding between the registrant and the foreign principal.

    (b)  An Exhibit C shall be filed when applicable. This exhibit, for which no printed form is provided, consists of a true copy of the charter, articles of incorporation, association, constitution, and bylaws of a registrant that is an organization. A waiver of the requirement to file an Exhibit C may be obtained for good cause shown upon written application to the Assistant Attorney General, National Security Division, U.S. Department of Justice, Washington, DC 20530. (See Rule 201(c) and (d)).

    (c)  An Exhibit D shall be filed when applicable. This exhibit, for which no printed form is provided, sets forth an account of money collected or received as a result of a fundraising campaign and transmitted for a foreign principal. (See Rule 201 (e)).

## VII--EXECUTION

In accordance with 28 U.S.C. § 1746, the undersigned swear(s) or affirm(s) under penalty of perjury that he/she has (they have) read the information set forth in this registration statement and the attached exhibits and that he/she is (they are) familiar with the contents thereof and that such contents are in their entirety true and accurate to the best of his/her (their) knowledge and belief, except that the undersigned make(s) no representation as to truth or accuracy of the information contained in the attached Short Form Registration Statement(s), if any, insofar as such information is not within his/her (their) personal knowledge.

(Date of signature)

(Print or type name under each signature or provide electronic signature[11])

6- 2717

Paul J Manafort

2017 JUN 27 PH 4: 52

11  This statement shall be signed by the individual agent, if the registrant is an individual, or by a majority of those partners, officers, directors or persons performing similar functions, if the registrant is an organization, except that the organization can, by power of attorney, authorize one or more individuals to execute this statement on its behalf.

OMB No. 1124-0006; Expires May 31,

**U.S. Department of Justice**

Washington, DC 20530

## Exhibit A to Registration Statement
## Pursuant to the Foreign Agents Registration Act of
## 1938, as amended

INSTRUCTIONS. Furnish this exhibit for EACH foreign principal listed in an initial statement and for EACH additional foreign principal acquired subsequently. The filing of this document requires the payment of a filing fee as set forth in Rule (d)(1), 28 C.F.R. § 5.5(d)(1). Compliance is accomplished by filing an electronic Exhibit A form at https://www.fara.gov.

Privacy Act Statement. The filing of this document is required by the Foreign Agents Registration Act of 1938, as amended, 22 U.S.C. § 611 et seq., for the purposes of registration under the Act and public disclosure. Provision of the information requested is mandatory, and failure to provide this information is subject to the penalty and enforcement provisions established in Section 8 of the Act. Every registration statement, short form registration statement, supplemental statement, exhibit, amendment, copy of informational materials or other document or information filed with the Attorney General under this Act is a public record open to public examination, inspection and copying during the posted business hours of the Registration Unit in Washington, DC. Statements are also available online at the Registration Unit's webpage: https://www.fara.gov. One copy of every such document, other than informational materials, is automatically provided to the Secretary of State pursuant to Section 6(b) of the Act, and copies of any and all documents are routinely made available to other agencies, departments and Congress pursuant to Section 6(c) of the Act. The Attorney General also transmits a semi-annual report to Congress on the administration of the Act which lists the names of all agents registered under the Act and the foreign principals they represent. This report is available to the public in print and online at: https://www.fara.gov.

Public Reporting Burden. Public reporting burden for this collection of information is estimated to average .49 hours per response, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information. Send comments regarding this burden estimate or any other aspect of this collection of information, including suggestions for reducing this burden to Chief, Registration Unit, Counterintelligence and Export Control Section, National Security Division, U.S. Department of Justice, Washington, DC 20530; and to the Office of Information and Regulatory Affairs, Office of Management and Budget, Washington, DC 20503.

| 1. Name and Address of Registrant<br>DMP International, LLC<br>10 St. James Drive<br>Palm Beach Gardens, FL 33418 | 2. Registration No.<br>6440 |
|---|---|

| 3. Name of Foreign Principal<br>Ukrainian Party of Regions | 4. Principal Address of Foreign Principal<br>3/5 Kudriavskaya Street<br>Kyiv, Ukraine 04053 |
|---|---|

5. Indicate whether your foreign principal is one of the following:

☐ Government of a foreign country [1]

☒ Foreign political party

☐ Foreign or domestic organization: If either, check one of the following:

    ☐ Partnership     ☐ Committee

    ☐ Corporation     ☐ Voluntary group

    ☐ Association     ☐ Other (specify) _____

☐ Individual-State nationality _____

6. If the foreign principal is a foreign government, state:
    a) Branch or agency represented by the registrant


    b) Name and title of official with whom registrant deals


7. If the foreign principal is a foreign political party, state:
    a) Principal address
      3/5 Kudriavskaya Street
      Kyiv, Ukraine 04053

    b) Name and title of official with whom registrant deals    Vladimir Rybak, First Deputy Head, Party of Regions

    c) Principal aim    Decentralization of power with transfer of maximum authority to the regions, build a Western
                democratic political party, turn Ukraine into the most attractive state for investment in the region.

1 "Government of a foreign country," as defined in Section 1(e) of the Act, includes any person or group of persons exercising sovereign de facto or de jure political jurisdiction over any country, other than the United States, or over any part of such country, and includes any subdivision of any such group and any group or agency to which such sovereign de facto or de jure authority or functions are directly or indirectly delegated. Such term shall include any faction or body of insurgents within a country assuming to exercise governmental authority whether such faction or body of insurgents has or has not been recognized by the United States.

FORM NSD-3
Revised 05/17

8. If the foreign principal is not a foreign government or a foreign political party:

    a)  State the nature of the business or activity of this foreign principal.

    b)  Is this foreign principal:

| | |
|---|---|
| Supervised by a foreign government, foreign political party, or other foreign principal | Yes ☐ No ☐ |
| Owned by a foreign government, foreign political party, or other foreign principal | Yes ☐ No ☐ |
| Directed by a foreign government, foreign political party, or other foreign principal | Yes ☐ No ☐ |
| Controlled by a foreign government, foreign political party, or other foreign principal | Yes ☐ No ☐ |
| Financed by a foreign government, foreign political party, or other foreign principal | Yes ☐ No ☐ |
| Subsidized in part by a foreign government, foreign political party, or other foreign principal | Yes ☐ No ☐ |

9. Explain fully all items answered "Yes" in Item 8(b).  *(If additional space is needed, a full insert page must be used.)*

2017 JUN 27 PM 4: 52

10. If the foreign principal is an organization and is not owned or controlled by a foreign government, foreign political party or other foreign principal, state who owns and controls it.

## EXECUTION

In accordance with 28 U.S.C. § 1746, the undersigned swears or affirms under penalty of perjury that he/she has read the information set forth in this Exhibit A to the registration statement and that he/she is familiar with the contents thereof and that such contents are in their entirety true and accurate to the best of his/her knowledge and belief.

| Date of Exhibit A | Name and Title | Signature |
|---|---|---|
| 6-27-17 | PAUL MANAFORT | Paul J Manafort |

OMB No. 1124-0004; Expires May 3, .0

**U.S. Department of Justice**

Washington, DC 20530

## Exhibit B to Registration Statement
## Pursuant to the Foreign Agents Registration Act of
## 1938, as amended

INSTRUCTIONS. A registrant must furnish as an Exhibit B copies of each written agreement and the terms and conditions of each oral agreement with his foreign principal, including all modifications of such agreements, or, where no contract exists, a full statement of all the circumstances by reason of which the registrant is acting as an agent of a foreign principal. Compliance is accomplished by filing an electronic Exhibit B form at https://www.fara.gov.

Privacy Act Statement. The filing of this document is required for the Foreign Agents Registration Act of 1938, as amended, 22 U.S.C. § 611 *et seq.*, for the purposes of registration under the Act and public disclosure. Provision of the information requested is mandatory, and failure to provide the information is subject to the penalty and enforcement provisions established in Section 8 of the Act. Every registration statement, short form registration statement, supplemental statement, exhibit, amendment, copy of informational materials or other document or information filed with the Attorney General under this Act is a public record open to public examination, inspection and copying during the posted business hours of the Registration Unit in Washington, DC. Statements are also available online at the Registration Unit's webpage: https://www.fara.gov. One copy of every such document, other than informational materials, is automatically provided to the Secretary of State pursuant to Section 6(b) of the Act, and copies of any and all documents are routinely made available to other agencies, departments and Congress pursuant to Section 6(c) of the Act. The Attorney General also transmits a semi-annual report to Congress on the administration of the Act which lists the names of all agents registered under the Act and the foreign principals they represent. This report is available to the public in print and online at: https://www.fara.gov.

Public Reporting Burden. Public reporting burden for this collection of information is estimated to average .33 hours per response, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information. Send comments regarding this burden estimate or any other aspect of this collection of information, including suggestions for reducing this burden to Chief, Registration Unit, Counterintelligence and Export Control Section, National Security Division, U.S. Department of Justice, Washington, DC 20530; and to the Office of Information and Regulatory Affairs, Office of Management and Budget, Washington, DC 20503.

| 1. Name of Registrant | 2. Registration No. |
|---|---|
| DMP International, LLC | 6440 |

| 3. Name of Foreign Principal |
|---|
| Ukrainian Party of Regions |

Check Appropriate Box:

4. ☐ The agreement between the registrant and the above-named foreign principal is a formal written contract. If this box is checked, attach a copy of the contract to this exhibit.

5. ☐ There is no formal written contract between the registrant and the foreign principal. The agreement with the above-named foreign principal has resulted from an exchange of correspondence. If this box is checked, attach a copy of all pertinent correspondence, including a copy of any initial proposal which has been adopted by reference in such correspondence.

6. ☒ The agreement or understanding between the registrant and the foreign principal is the result of neither a formal written contract nor an exchange of correspondence between the parties. If this box is checked, give a complete description below of the terms and conditions of the oral agreement or understanding, its duration, the fees and expenses, if any, to be received.

7. Describe fully the nature and method of performance of the above indicated agreement or understanding.

Focused on electing Party of Regions' candidates at the national and regional levels in the Ukraine by implementing pro-democratic campaign activities, engaging in party building activities, developing a party platform and political agenda, and implementing election planning, election integrity, and international election monitoring programs. Communicated with the U.S. Embassy regarding developing events in the Ukraine.

Provided strategic counsel and advice to members of the Party of Regions regarding their interactions with U.S. government officials and other Western influential persons to advance the goal of greater political and economic integration between the Ukraine and the West. Provided advice to the European Centre for a Modern Ukraine, which was also working for the same purpose.

8. Describe fully the activities the registrant engages in or proposes to engage in on behalf of the above foreign principal.

Focused on electing Party of Regions' candidates at the national and regional levels in the Ukraine by implementing pro-democratic campaign activities, engaging in party building activities, developing a party platform and political agenda, and implementing election planning, election integrity, and international election monitoring programs. Served as source of information for the U.S. Embassy in Kiev regarding developing events in the Ukraine.

Provided strategic counsel and advice to members of the Party of Regions regarding their interactions with U.S. government officials and other Western influential persons to advance the goal of greater political and economic integration between the Ukraine and the West. Provided advice to the European Centre for a Modern Ukraine, which was also working for the same purpose.

9. Will the activities on behalf of the above foreign principal include political activities as defined in Section 1(o) of the Act and in the footnote below? Yes ☒ No ☐

If yes, describe all such political activities indicating, among other things, the relations, interests or policies to be influenced together with the means to be employed to achieve this purpose.

Provided strategic counsel and advice to members of the Party of Regions regarding certain interactions with U.S. government officials and other Western influential persons to advance the goal of greater political and economic integration between the Ukraine and the West.

2017 JUN 27 PM 4: 52

## EXECUTION

In accordance with 28 U.S.C. § 1746, the undersigned swears or affirms under penalty of perjury that he/she has read the information set forth in this Exhibit B to the registration statement and that he/she is familiar with the contents thereof and that such contents are in their entirety true and accurate to the best of his/her knowledge and belief.

| Date of Exhibit B | Name and Title | Signature |
|---|---|---|
| 6-27-17 | PAUL J MANAFORT | |

Footnote: "Political activity," as defined in Section 1(o) of the Act, means any activity which the person engaging in believes will, or that the person intends to, in any way influence any agency or official of the Government of the United States or any section of the public within the United States with reference to formulating, adopting, or changing the domestic or foreign policies of the United States or with reference to the political or public interests, policies, or relations of a government of a foreign country or a foreign political party.



## OPERATING AGREEMENT OF DMP INTERNATIONAL, LLC

This Operating Agreement ("Agreement") of DMP International, LLC (DMPI), a Delaware Limited Liability Company, is effective as of the 1st day of September 2011 ("Effective Date") between the Members.

### WITNESSETH

The Members wish to establish this Operating Agreement for the governance of the Company.

NOW THEREFORE in consideration of the foregoing, the mutual covenants and agreements contained herein and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, all of the Members of the Company hereby acknowledge and agree to the following:

### SECTION I
### FORMATION AND PURPOSE

The Company was formed pursuant to the Delaware Limited Liability Company Act, as may be amended from time to time (the "Act").

Each Member confirms and agrees to its status as Member, its Membership Class, and subscribes to the acquisition of a Membership Interest upon the terms and conditions set forth in this Agreement.

Each Member hereby executes and adopts this Agreement as the Operating Agreement of the Company, pursuant to the Act. The Members and the Company hereby agree that the duties and obligations imposed on the Members of the Company shall be those set forth in this Agreement, which is intended to govern the relationship among the Company and the Members, notwithstanding any provision of the Act or common law to the contrary.

1. <u>Name.</u>
The name of the Company is DMPI.  All Company business must be conducted in the name of the Company.  Title to all assets of the Company shall be held in the name of the Company.

2. <u>Principal Office.</u>
The principal office of the Company shall be 10 St. James Drive, Palm Beach Gardens, FL.

1

3. Governing Law.
This Agreement and all issues regarding the rights and obligations of the Members, the construction, enforcement and interpretation hereof, and the formation, administration and termination of the Company shall be governed by the provisions of the Act and other applicable laws of the State of Delaware, without reference to conflict of laws principles.

4. Purposes.
The Company has been formed for the purpose of transacting any and all lawful business for which limited liability companies may be organized under the Act.

5. Registered Agent and Office.
The registered agent for the service of process and the registered office shall be that person and that office location reflected in the Articles of Organization as filed with the Delaware Secretary of State. The Managing Member(s), may, from time to time, change the registered agent or office through appropriate state filings. In the event the registered agent ceases to act as such for any reason or the registered office shall change, the Managing Member(s) shall promptly designate a replacement registered agent or file a notice of change of address as the case may be.

## SECTION II
## STATUS, CLASSES, RIGHTS AND OBLIGATIONS OF MEMBERS

1. Members.
There shall be one class of members: At the time of the execution of this Agreement, the following are the Class A Members of the Company:

    Paul J. Manafort

The term "Member" as used herein, when it is not used with a specific Class designation, refers to a Class A Member.

2. Notice of Address and Membership Interest.
The notice of the address of the Members are set forth on Attachment A. The Members each agree that each Member's percentage of ownership interest ("Membership Interest") as well as the Class of the Membership Interest, shall be set forth on Exhibit A as may be amended from time to time pursuant to this Agreement.

3. Voting.
Only Class A Members are entitled to vote on any matters. Class A Members shall vote in proportion to their respective Membership Interests. Unless otherwise provided herein, for the purposes of this Agreement, any action requiring a vote, consent, or approval of a majority of the outstanding Class A Membership Interests shall be authorized if Class A

2

Members holding more than fifty percent of the outstanding Class A Membership Interests, vote for, consent to or approve, such action.

### 4.  Action Without a Meeting.

Any action required or permitted to be taken at a meeting of the Class A Members may be taken without a meeting if the action is taken by Class A Members holding all of the outstanding Class A Membership Interests entitled to vote. Such an action without meeting shall be evidenced by a written consent signed by all Class A Members as required and filed with the Company's records.

### 5. Conflicts of Interest.

A Member does not violate a duty or obligation to the Company merely because the Member's conduct furthers the Member's own interest.  A Member may lend money to and transact other business with the Company.  The rights and obligations of a Member who lends money to or transacts business with the Company are the same as those of a person who is not a Member, subject to applicable law.  No transaction with the Company shall be voidable solely because a Member has either a direct or indirect interest in the transaction if either the transaction is fair to the Company, or if, knowing the material facts of the transaction, the majority of the Class A Members authorize, approve or ratify the transaction.

### 6. Other Activities.

Except as otherwise provided herein, any Member may engage in or possess any interest in other businesses of any nature and description, independently or with others and neither the Company nor any Member shall have any rights in or to any such independent venture or the income or profits derived therefrom, provided, however, that no Member shall engage in any independent venture or opportunity which competes with the business of the Company unless he has first presented such opportunity to the Company and a majority of the Class A Members have voted to decline such business opportunity on behalf of the Company.

### 7. Right to Transfer Membership Interest.

No Class A Member shall have the right to transfer, hypothecate, mortgage, sell, exchange, assign or otherwise dispose of or grant an interest in (collectively "transfer") all or part of his Membership Interest to a third party or parties, including the Member's interest in any part of the Company's assets, receivables, records, documents records, files or clientele, all such rights and interests of such Member being personal to him and not transferable and not assignable.  Nothing herein shall prevent a Class A from selling back to the Company all or a portion of its Membership Interest under the terms of an option contained in a written Agreement with the Company.

3

Notwithstanding the foregoing, each Member agrees not to transfer all or any part of a Membership Interest (or take or omit any action, filing election or other action which could result in a deemed transfer) if such transfer (either considered alone or in the aggregate with prior transfers by other Members) would result in the termination of the Company for Federal Income tax purposes. Such transfer is void ab initio.

8. Liability of Members.
No Member shall be liable as such for the liabilities of the Company. The failure of the Company to observe any formalities or requirements relating to the exercise of its powers or management of its business or affairs under this Agreement or the Act shall not be grounds for imposing personal liability on any of the Members.

9. Indemnification.
The Company shall indemnify the Members for all costs, losses, liabilities and damages paid or accrued by such Member in connection with the business of the Company for acts or omissions which do not violate the standard of care set forth immediately below.

10. Members' Standard of Care.
Each Member's duty of care in the discharge of the Member=s duties to the Company and the other Members, including the duty of the Managing Member(s), is limited to refraining from engaging in grossly negligent or reckless conduct, intentional misconduct, or a knowing violation of law. Members shall be fully protected in relying in good faith upon the records of the Company and upon such opinions reports or statements made by other Members or other person as to matters the Member reasonably believes to be in that person=s professional or expert competence.

11. Miscellaneous Member Obligations.
It shall be the duty of each Member to act at all times consistently with and in compliance with all and each of the provisions of this Agreement and with all policies, rules, and decisions of the Company adopted in accordance with the provisions of this Agreement.


## SECTION III
## MANAGEMENT BY MANAGING MEMBER

1. Managing Member(s).
There shall be one Managing Member (also referred to herein as "Manager"). Only a Class A Member may be a Managing Member. All decisions concerning the business affairs of the Company shall be made by the Managing Member.

The initial Managing Member, any one of whom has the authority individually and without the signature of the other Managing Member, to bind the company, shall be:

Paul J. Manafort

Any vacancy in the office of the Manager shall be filled by vote of the Majority of Class A Members.

2. Term of Managing Member(s).
Each Managing Member shall serve until the earliest of:

(a) The Withdrawal of such Managing Member;
(b) The Resignation of such Managing Member;
(c) Removal of the Managing Member as provided for by this Agreement; or
(d) The election and qualification of the Managing Member's successor by a Majority of the Class A Members.

3. Authority of Members to Bind the Company.
Only the Managing Member and agents of the Company authorized by the Managing Member shall have the authority to bind the Company. No Member who is not either a Managing Member or otherwise specifically authorized by a Managing Member in writing to act as an agent shall take any action to bind the Company, and each Member shall indemnify the Company for any costs or damages incurred by the Company as a result of the unauthorized action of such Member. Each Managing Member has the power, on behalf of the Company, to do all things necessary or convenient to carry out the business and affairs of the Company.

4. Agents of the Company
Unless stated otherwise herein, the Managing Member designates and authorizes Richard W. Gates as an authorized agent to act in all respects on behalf of the Company.

5. Third Party Reliance.
Notwithstanding the failure of the Managing Members to reach a consensus on any management matter, no person dealing with the Company shall have any obligation to inquire into the power or authority of any Managing Member acting on behalf of the Company when that act is for the purpose of apparently carrying on the usual business or affairs of the Company, including the exercise of the authority indicated herein.

6. Removal of Managing Member.
A Managing Member may be removed by the affirmative vote of a Majority of the Class A Members, for cause only. "For cause" means willful misconduct or fraud.

## SECTION IV
## CAPITAL CONTRIBUTIONS AND FINANCIAL OBLIGATIONS OF MEMBERS

1. <u>Initial Capital Contributions.</u>
The capital contributions of the Members are as set forth on Attachment A. Such capital may be used for any lawful purpose.

2. <u>Additional Contributions.</u>
The Managing Member may arrange for the provision of such additional funds as are deemed necessary to conduct the Company's business. Such additional funds may be raised by loan to the Company from an outside source or by a loan or capital contribution to the Company by one or more Members.

3. <u>No Interest On Contributions.</u>
No Member shall be entitled to interest on his capital contribution.

4. <u>Return of Capital Contributions.</u>
No Member shall be entitled to withdraw any part of his capital contribution or capital account or to receive any distribution from the Company, except as specifically provided for in this Agreement. Except as otherwise provided herein there shall be no obligation to return to any Member or withdrawn Member any part of such Member's Capital contributions to the Company for so long as the Company remains in existence. If the Company is continued by unanimous consent of the remaining Members following the death, disability or withdrawal of a Member, the former Member shall continue to receive the share of the distributions and return of capital at such time and in such manner as such party would have received the distributions had such former party remained a member of the Company.

5. <u>Loans Not to be Treated as Capital Contributions.</u>
Loans or advances by any Member to the Company shall not be considered capital contributions and shall not increase the capital account balance of the lending or advancing Member.

6. <u>Limited Liability.</u>
Except as otherwise provided in this Agreement, no Member shall be required under any circumstances to contribute or lend money or property to the Company.

7. <u>Guaranty of Company Indebtedness.</u>
A Member shall not be obligated to guarantee the Company indebtedness or other contractual obligations unless he agrees to do so.

6

8. No Third Party Beneficiaries.

The provisions of this Agreement relating to the financial obligations of Members are not intended for the benefit of any creditor or other person to whom any debts, liabilities or obligations are owed by or who otherwise have any claim against the Company or any of the Members, and, except for Members, no creditor or other person shall obtain any right under any such provisions or shall by reason of any such provisions make any claim with respect to any debt, liability or obligation (or otherwise) against the Company or any of its Members.

SECTION V
DISTRIBUTION OF CASH AND PROPERTY

1. Distribution of Net Cash Flow.

The term "net cash flow" for a fiscal year shall mean:

All cash receipts as shown on the books of the Company (excluding, however, capital contributions from members, net proceeds to the Company from the sale or the disposition of substantially all of the assets, condemnation process, and excess title, property, casualty, or liability insurance proceeds, if any, for the restoration or repair of the Company assets), reduced by cash disbursements for Company purposes including interest and principal upon loans, and cash reserves set aside by the Managing Members which the Managing Members deem necessary in their discretion to accomplish the Company's business purpose, plus any other funds, including the amounts previously set aside as reserves for distribution as net cash flow.

2. Priority of Distribution.

The net cash flow of the Company for a fiscal year shall be paid out to the Members pro rata in accordance with their respective Membership Interests at such time as the Managing Member(s) determines.

3. Distribution of the Proceeds of Dissolution.

If the Company dissolves, the net proceeds of dissolution, including any accompanying sale of Company assets, shall be distributed in the following order of priority:

First, toward the satisfaction of all outstanding debts and other obligations of the Company, including Members, who are creditors, then pro rata among those members with a positive capital account balance, after adjustments for the above distributions, and tax allocations for the current fiscal year, in proportion to their respective capital accounts.

7

## SECTION VI
## FEDERAL AND STATE TAX MATTERS

1.  Maintenance of Members' Capital Accounts.
With respect to each Member a separate "Capital Account" for such Member shall be
established and maintained throughout the full term of the Company in accordance with
applicable Treasury Regulations that must be complied with in order for the allocations of
taxable profits and losses provided in this Agreement to have Aeconomic effect@ under
applicable Treasury Regulations.

2.  Allocations of Profits and Losses of the Company.
The Company=s net income or loss for a fiscal year computed in accordance with applicable
federal income tax accounting principles shall be allocated among the Members in
accordance with their respective Membership Interests.

3.  Special Tax Allocation.
Notwithstanding anything to the contrary contained in this Agreement, the Company shall
comply with IRS Section 704 and Treasury Regulation section 1.704 with respect to all
applicable tax allocations.

4. Tax Year and Accounting Matters.
The taxable year of the Company shall be the calendar year.  The Company shall adopt such
methods of accounting and file its tax returns using the methods of accounting determined
upon the advice of the accountant servicing the books and records of the Company.

5.  Tax Elections.
The Company may make or revoke all tax elections provided for under the Internal
Revenue Code upon a decision by the Manager(s) on the advice of the accountant servicing
the books and records of the Company.


## SECTION VII
## TERM AND TERMINATION OF THE COMPANY

1.  Term of the Company.
The term of the Company commenced upon the filing of the Certificate of Formation with
the Delaware Secretary of State and shall continue in perpetuity, unless sooner dissolved
and terminated as provided in this Agreement.

2.  Events of Termination.
The Company shall be dissolved upon the occurrence of any of the following events:

8

(a)  The determination in writing of the Managing Members to dissolve and terminate the Company;

(b)  The sale, transfer or assignment of all or substantially all of the assets of the Company;

(c)  The adjudication of the Company as insolvent or the filing of an involuntary petition in bankruptcy, or reorganization, against the Company which is not dismissed within 90 days, or the appointment for the company of a temporary or permanent receiver, trustee, custodian and such receiver, trustee or custodian is not dismissed within 90 days;

(d)  Entry of a decree of dissolution;

(e)  The death, retirement, dissolution, termination, resignation, insanity, insolvency of a Member, unless within 6 months of such event the Class A Members by a majority agree to continue the company and, if the death is that of a Managing Member, select a new Managing Member, in which event the Company shall not be dissolved and the Company business shall be continued.

(f)  When so determined in accordance with other specific provisions of this Agreement;

(g)  As otherwise required by applicable law.

3.  Conclusion of Affairs.
In the event of a dissolution of the Company for any reason, the Members shall proceed promptly to wind up the affairs and liquidate the Company. Except as otherwise provided in the Agreement, the Members shall continue to share in the distributions and the tax allocations during the period of liquidation in the same manner as before the dissolution. After paying or providing for the payment of all debts and liabilities of the Company and all expenses of liquidation, the proceeds of liquidation shall be distributed to or for the benefit of Members in accordance with this Agreement.

4.  Liquidating Distributions.
After paying for or providing for the payment of all debts or liabilities of the Company and all the expenses of liquidation, and subject to the setting up of reserves the majority of Class A Members deem necessary for any contingent or unforeseen liabilities or obligations of the Company, the proceeds of the liquidation and any other assets of the Company shall be distributed of the benefit of the Members in accordance with this Agreement.

5.  Termination.
Within a reasonable time following the completion of the liquidation of the Company, the Company shall terminate and any Member shall have the authority to execute and file with any appropriate state authority a Certificate of Cancellation of the Company or any similar documentation required by such authority.

## SECTION VIII
## ADMISSION AND WITHDRAWAL OF MEMBERS

1. <u>Admission.</u>
No Member shall be added without unanimous written consent of the Managing Members.

2. <u>Expulsion.</u>
Any Member may be expelled from the Company by action of the Class A Members holding a majority of the outstanding Membership Interests entitled to be voted, upon a default of such Member of any of his obligations hereunder, if such default continues for a period of 30 days after notice thereof is given to him by the Company.

3. <u>Withdrawal.</u>
No Member shall have the right to voluntarily resign or otherwise withdraw from the Company without the unanimous written consent of the Managing Member. Notwithstanding the consent to withdraw, no member shall be entitled to receive any compensation or distribution with respect to the withdrawal, except as otherwise provided herein.

4. <u>Effect of Withdrawal or Expulsion.</u>
On and as of the effective date of withdrawal or expulsion from the Company under the provisions of this Agreement, such former Member shall cease to have any Membership Interest, or other rights, status or privileges of a Member, but such former Member shall not be released or discharged from any of the obligations of a Member under the provisions of this Agreement, unless provided in the written consent of Members holding all of the outstanding Class A Membership Interests entitled to be voted.

5. <u>Purchase of Membership Interests Upon Expulsion, Withdrawal or Death of Member.</u>
Upon the Expulsion, Withdrawal or Death of a Member, that Member=s Membership Interest shall be purchased by the Company for a purchase price equal to the Fair Market Value of the Member=s Interest. The Fair Market Value shall be determined by agreement between the Member (or his Personal Representative) and the Company, which agreement is subject to unanimous approval of the remaining Class A Members of the Company. If an agreement with respect to Fair Market Value cannot be reached within 60 days of the death, withdrawal or expulsion, the Fair Market Value shall be determined by appraisal. The Class A Members and the Member (or his personal representative) shall choose an appraiser and the two appraisers shall choose a third appraiser. The decision of the Majority of the appraisers as to the fair market value of the Membership Interests shall be final and binding. Each party shall pay for its/his appraiser and the third appraiser fee shall be shared by the both parties.

10

## SECTION IX
## ADMINISTRATIVE PROVISIONS

1. Books, Records, Accounts.
The Manager(s) shall cause faithful books and records to be kept using standard accounting procedures when applicable. The books and records shall be kept in the Company's principal office. Only the Manager(s) shall be signatory on the bank accounts of the Company.

2. Notice.
Unless otherwise provided herein, any offer, acceptance, election, approval consent, certification, request, waiver, notice or other communication required or permitted to be given hereunder (collectively Anotice") shall be given by enclosing same in an envelope addressed to the Member to whom the Notice is to be given and deposited in the US Mail postage prepaid to the Member at such address listed in Attachment A, or at such other address as requested by the Member.

## SECTION X
## ARBITRATION

Any matter that arises involving the performance or interpretation of this Operating Agreement that the Members are unable to settle by mutual agreement, or arises as the result of an unsuccessful mediation as required in the case of a management dispute between the Managing Members, shall be settled by a panel of three Arbitrators. One Arbitrator shall be appointed by each managing Member and the third Arbitrator shall be appointed by the two appointed Arbitrators. The arbitration proceeding shall be conducted in accordance with the prevailing Commercial Arbitration Rules and Regulations of the American Arbitration Association. The decision of a majority of said Arbitrators shall be final and binding on all parties to this Agreement. The decision so rendered may be entered in any court having jurisdiction. The Arbitrators shall not have authority to award punitive or other non-compensatory damages to any party. Each party shall bear its own costs and expenses of the arbitration; the costs and expenses of the arbitrators and the administrative costs of the arbitration will be equally shared by the parties.

## SECTION IX
## MISCELLANEOUS PROVISIONS

1. Amendment.
This Agreement, including any Attachments attached hereto, represent the entire Agreement of the Members with respect to the matters covered herein. Except as provided by law or otherwise provided herein, this Agreement shall only be amended by unanimous written consent of the Class A Members.

11

2. Interpretation.
Whenever the context may require, any noun or pronoun used herein shall include the corresponding masculine, feminine or neuter forms. The singular form of nouns, pronouns and verbs shall include the plural, and vice versa.

3. Severability.
Each provision of this Agreement shall be considered severable. If for any reason any provision or provisions hereof are determined to be invalid or contrary to existing or future law, such invalidity shall not impair the operation or affect those portions of this Agreement which are valid, and the Agreement shall remain in full force and effect and shall be construed and enforced in all respects as if such invalid or unenforceable provision or provisions had been eliminated.

4. Further Assurances.
Each Member hereby agrees that he shall hereafter execute and deliver such further instruments, provide all information, and take or forebear from taking such further actions and things as may be reasonably required or useful to carry out the intent and purpose of this Agreement and as are not inconsistent with the terms hereof.

IN WITNESS WHEREOF, the parties have executed this Agreement to be effective as of the date above written.

MEMBERS:

Class A Members:

Paul J. Manafort

BY: _____
Paul J. Manafort, its Managing Member


AUTHORIZED AGENT:

BY: _____
Richard W. Gates

12

**ATTACHMENT A**

| Member Name/ Class/Contribution Address | Membership Interest | Initial Capital Contribution (Cash) | Initial Capital (In Kind) |
|---|---|---|---|
| Class A Member(s): Paul J. Manafort 10 St. James Drive Palm Beach Gardens, FL | 100% | | |
| TOTALS | 100% | | |

13

OMB No. 1124-0005; Expires May 31, 2020

**U.S. Department of Justice**

Washington, DC 20530

# Short Form Registration Statement

## Pursuant to the Foreign Agents Registration Act of 1938, as amended

INSTRUCTIONS. Each partner, officer, director, associate, employee, and agent of a registrant is required to file a short form registration statement unless he engages in no activities in furtherance of the interests of the registrant's foreign principal or unless the services he renders to the registrant are in a secretarial, clerical, or in a related or similar capacity. Compliance is accomplished by filing an electronic short form registration statement at https://www.fara.gov.

Privacy Act Statement. The filing of this document is required for the Foreign Agents Registration Act of 1938, as amended, 22 U.S.C. § 611 et seq., for the purposes of registration under the Act and public disclosure. Provision of the information requested is mandatory, and failure to provide the information is subject to the penalty and enforcement provisions established in Section 8 of the Act. Every registration statement, short form registration statement, supplemental statement, exhibit, amendment, copy of informational materials or other document or information filed with the Attorney General under this Act is a public record open to public examination, inspection and copying during the posted business hours of the Registration Unit in Washington, DC. Statements are also available online at the Registration Unit's webpage: https://www.fara.gov. One copy of every such document, other than informational materials, is automatically provided to the Secretary of State pursuant to Section 6(b) of the Act, and copies of any and all documents are routinely made available to other agencies, departments and Congress pursuant to Section 6(c) of the Act. The Attorney General also transmits a semi-annual report to Congress on the administration of the Act which lists the names of all agents registered under the Act and the foreign principals they represent. This report is available to the public and online at: https://www.fara.gov.

Public Reporting Burden. Public reporting burden for this collection of information is estimated to average .429 hours per response, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information. Send comments regarding this burden estimate or any other aspect of this collection of information, including suggestions for reducing this burden to Chief, Registration Unit, Counterintelligence and Export Control Section, National Security Division, U.S. Department of Justice, Washington, DC 20530; and to the Office of Information and Regulatory Affairs, Office of Management and Budget, Washington, DC 20503.

| 1. Name | 2. Registration No. |
|---|---|
| Paul J. Manafort | 6440 |

| 3. Residence Address(es) | 4. Business Address(es) |
|---|---|
| 10 St. James Drive<br>Palm Beach Gardens, FL 33418 | DMP International, LLC<br>10 St. James Drive<br>Palm Beach Gardens, FL 33418 |

| 5. Year of Birth 1949 | 6. If present citizenship was not acquired by birth, indicate when, and how acquired. |
|---|---|
| Nationality USA | n/a |
| Present Citizenship USA | |

7. Occupation   Attorney and Businessman

8. What is the name and address of the primary registrant?
Name  DMP International, LLC

Address 10 St. James Drive
Palm Beach Gardens, FL 33418

9. Indicate your connection with the primary registrant:

☒ partner       ☐ director       ☐ employee       ☐ consultant

☐ officer       ☐ associate       ☐ agent          ☐ subcontractor

☐ other *(specify)*_____

10. List every foreign principal to whom you will render services in support of the primary registrant.
Ukrainian Party of Regions

11. Describe separately and in detail all services which you will render to the foreign principal(s) listed in Item 10 either directly, or through the primary registrant listed in Item 8, and the date(s) of such services. *(If space is insufficient, a full insert page must be used.)*
Please see attached

FORM NSD-6
Revised 05/17

12. Do any of the above described services include political activity as defined in Section 1(o) of the Act and in the footnote below?

    Yes ☒      No ☐

If yes, describe separately and in detail such political activity.
Please see attached

13. The services described in Items 11 and 12 are to be rendered on a

  ☒ full time basis        ☐ part time basis        ☐ special basis

14. What compensation or thing of value have you received to date or will you receive for the above services?

  ☐ Salary: Amount $_____ per _____    ☐ Commission at _____ % of _____

  ☒ Salary: Not based solely on services rendered to the foreign principal(s).

  ☐ Fee: Amount $_____        ☐ Other thing of value _____

15. During the period beginning 60 days prior to the date of your obligation to register to the time of filing this statement, did you make any contributions of money or other things of value from your own funds or possessions and on your own behalf in connection with any election to political office or in connection with any primary election, convention, or caucus held to select candidates for any political office?    Yes ☐    No ☒

If yes, furnish the following information:

| Date | Amount or Thing of Value | Political Organization or Candidate | Location of Event |
|------|--------------------------|-------------------------------------|-------------------|

## EXECUTION

In accordance with 28 U.S.C. § 1746, the undersigned swears or affirms under penalty of perjury that he/she has read the information set forth in this registration statement and that he/she is familiar with the contents thereof and that such contents are in their entirety true and accurate to the best of his/her knowledge and belief.

6-27-17
*(Date of signature)*

*(Signature)*

2017 JUN 27 PM 4: 52

Footnote: "Political activity," as defined in Section 1(o) of the Act, means any activity which the person engaging in believes will, or that the person intends to, in any way influence any agency or official of the Government of the United States or any section of the public within the United States with reference to formulating, adopting, or changing the domestic or foreign policies of the United States or with reference to the political or public interests, policies, or relations of a government of a foreign country or a foreign political party.

### Question 11

Focused on electing Party of Regions' candidates at the national and regional levels in the Ukraine by implementing pro-democratic campaign activities, engaging in party building activities, developing a party platform and political agenda, and implementing election planning, election integrity, and international election monitoring programs.

Provided strategic counsel and advice to members of the Party of Regions regarding their interactions with U.S. government officials and other Western influential persons to advance the goal of greater political and economic integration between the Ukraine and the West.  Communicated with the U.S. Embassy in Kiev regarding developing events in the Ukraine.

### Question 12

Provided strategic counsel and advice to members of the Party of Regions regarding their interactions with U.S. government officials and other Western influential persons to advance the goal of greater political and economic integration between the Ukraine and the West.

OMB No. 1124-0005; Expires May __ __020

U.S. Department of Justice

Washington, DC 20530

**Short Form Registration Statement**

**Pursuant to the Foreign Agents Registration Act of 1938, as amended**

INSTRUCTIONS. Each partner, officer, director, associate, employee, and agent of a registrant is required to file a short form registration statement unless he engages in no activities in furtherance of the interests of the registrant's foreign principal or unless the services he renders to the registrant are in a secretarial, clerical, or in a related or similar capacity. Compliance is accomplished by filing an electronic short form registration statement at https://www.fara.gov.

Privacy Act Statement. The filing of this document is required for the Foreign Agents Registration Act of 1938, as amended, 22 U.S.C. § 611 *et seq.*, for the purposes of registration under the Act and public disclosure. Provision of the information requested is mandatory, and failure to provide the information is subject to the penalty and enforcement provisions established in Section 8 of the Act. Every registration statement, short form registration statement, supplemental statement, exhibit, amendment, copy of informational materials or other document or information filed with the Attorney General under this Act is a public record open to public examination, inspection and copying during the posted business hours of the Registration Unit in Washington, DC. Statements are also available online at the Registration Unit's webpage: https://www.fara.gov. One copy of every such document, other than informational materials, is automatically provided to the Secretary of State pursuant to Section 6(b) of the Act, and copies of any and all documents are routinely made available to other agencies, departments and Congress pursuant to Section 6(c) of the Act. The Attorney General also transmits a semi-annual report to Congress on the administration of the Act which lists the names of all agents registered under the Act and the foreign principals they represent. This report is available to the public and online at: https://www.fara.gov.

Public Reporting Burden. Public reporting burden for this collection of information is estimated to average .429 hours per response, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information. Send comments regarding this burden estimate or any other aspect of this collection of information, including suggestions for reducing this burden to Chief, Registration Unit, Counterintelligence and Export Control Section, National Security Division, U.S. Department of Justice, Washington, DC 20530; and to the Office of Information and Regulatory Affairs, Office of Management and Budget, Washington, DC 20503.

| 1. Name<br><br>Richard W. Gates, III | 2. Registration No.<br><br>6440 |
|---|---|
| 3. Residence Address(es)<br>206 Virginia Avenue<br>Richmond, VA 23226 | 4. Business Address(es)<br>DMP International, LLC<br>10 St. James Drive<br>Palm Beach Gardens, FL 33418 |
| 5. Year of Birth  1972<br><br>Nationality  USA<br><br>Present Citizenship  USA | 6. If present citizenship was not acquired by birth, indicate when, and how acquired.<br><br>n/a |
| 7. Occupation  Political Consultant | |

*(right margin stamp: 2017 JUN 27  PH 4: 52   NSD/CES...)*

8. What is the name and address of the primary registrant?

Name  DMP International, LLC

Address  10 St. James Drive  Palm Beach Gardens, FL 33418

9. Indicate your connection with the primary registrant:

| ☐ partner | ☐ director | ☒ employee | ☐ consultant |
|---|---|---|---|
| ☐ officer | ☐ associate | ☐ agent | ☐ subcontractor |
| ☐ other *(specify)*_____ | | | |

10. List every foreign principal to whom you will render services in support of the primary registrant.

Ukrainian Party of Regions

11. Describe separately and in detail all services which you will render to the foreign principal(s) listed in Item 10 either directly, or through the primary registrant listed in Item 8, and the date(s) of such services. *(If space is insufficient, a full insert page must be used.)*

Please see attached

12. Do any of the above described services include political activity as defined in Section 1(o) of the Act and in the footnote below?

Yes ☒   No ☐

If yes, describe separately and in detail such political activity.
Please see attached

13. The services described in Items 11 and 12 are to be rendered on a

☒ full time basis          ☐ part time basis          ☐ special basis

14. What compensation or thing of value have you received to date or will you receive for the above services?

☐ Salary: Amount $ _____ per _____          ☐ Commission at _____ % of _____

☒ Salary: Not based solely on services rendered to the foreign principal(s).

☐ Fee: Amount $ _____          ☐ Other thing of value _____

15. During the period beginning 60 days prior to the date of your obligation to register to the time of filing this statement, did you make any contributions of money or other things of value from your own funds or possessions and on your own behalf in connection with any election to political office or in connection with any primary election, convention, or caucus held to select candidates for any political office?     Yes ☐   No ☒

If yes, furnish the following information:

Date          Amount or Thing of Value          Political Organization or Candidate          Location of Event

## EXECUTION

In accordance with 28 U.S.C. § 1746, the undersigned swears or affirms under penalty of perjury that he/she has read the information set forth in this registration statement and that he/she is familiar with the contents thereof and that such contents are in their entirety true and accurate to the best of his/her knowledge and belief.

6/23/17
*(Date of signature)*

*(Signature)*

2017 JUN 27 PM 4: 52

Footnote: "Political activity," as defined in Section 1(o) of the Act, means any activity which the person engaging in believes will, or that the person intends to, in any way influence any agency or official of the Government of the United States or any section of the public within the United States with reference to formulating, adopting, or changing the domestic or foreign policies of the United States or with reference to the political or public interests, policies, or relations of a government of a foreign country or a foreign political party.

## Question 11

Focused on electing Party of Regions' candidates at the national and regional levels in the Ukraine by implementing pro-democratic campaign activities, engaging in party building activities, developing a party platform and political agenda, and implementing election planning, election integrity, and international election monitoring programs.

Provided strategic counsel and advice to members of the Party of Regions regarding their interactions with U.S. government officials and other Western influential persons to advance the goal of greater political and economic integration between the Ukraine and the West.  Provided strategic advice to the European Centre for a Modern Ukraine, which was also working for the same purpose.

## Question 12

Provided strategic counsel and advice to members of the Party of Regions regarding their interactions with U.S. government officials and other Western influential persons to advance the goal of greater political and economic integration between the Ukraine and the West.  Provided strategic advice to the European Centre for a Modern Ukraine, which was also working for the same purpose.

2017 JUN 27  PM 4: 52

OMB No. 1124-0002; Expires May 3 , J20

**U.S. Department of Justice**

Washington, DC 20530

# Supplemental Statement
## Pursuant to the Foreign Agents Registration Act of 1938, as amended

For Six Month Period Ending 6/30/2012

(Insert date)

## I - REGISTRANT

1. (a) Name of Registrant                                         (b) Registration No.  6440

   DMP International, LLC

   (c) Business Address(es) of Registrant
   10 St. James Drive
   Palm Beach Gardens, FL 33418

2. Has there been a change in the information previously furnished in connection with the following?

   (a) If an individual:

   | | | |
   |---|---|---|
   | (1) Residence address(es) | Yes ☐ | No ☐ |
   | (2) Citizenship | Yes ☐ | No ☐ |
   | (3) Occupation | Yes ☐ | No ☐ |

   (b) If an organization:

   | | | |
   |---|---|---|
   | (1) Name | Yes ☐ | No ☒ |
   | (2) Ownership or control | Yes ☐ | No ☒ |
   | (3) Branch offices | Yes ☐ | No ☒ |

   (c) Explain fully all changes, if any, indicated in Items (a) and (b) above.

2017 JUN 27  PM 4: 52

---

### IF THE REGISTRANT IS AN INDIVIDUAL, OMIT RESPONSE TO ITEMS 3, 4, AND 5(a).

3. If you have previously filed Exhibit C[1], state whether any changes therein have occurred during this 6 month reporting period.

   Yes ☐          No ☒

   If yes, have you filed an amendment to the Exhibit C?          Yes ☐          No ☐

   If no, please attach the required amendment.

---

[1] The Exhibit C, for which no printed form is provided, consists of a true copy of the charter, articles of incorporation, association, and by laws of a registrant that is an organization. (A waiver of the requirement to file an Exhibit C may be obtained for good cause upon written application to the Assistant Attorney General, National Security Division, U.S. Department of Justice, Washington, DC 20530.)

FORM NSD-2
Revised 05/17

4. (a) Have any persons ceased acting as partners, officers, directors or similar officials of the registrant during this 6 month reporting period?

Yes ☐        No ☒

If yes, furnish the following information:

| Name | Position | Date Connection Ended |
|------|----------|----------------------|
|      |          |                      |

(b) Have any persons become partners, officers, directors or similar officials during this 6 month reporting period?

Yes ☐        No ☒

If yes, furnish the following information:

| Name | Residence Address | Citizenship | Position | Date Assumed |
|------|-------------------|-------------|----------|--------------|
|      |                   |             |          |              |

5. (a) Has any person named in Item 4(b) rendered services directly in furtherance of the interests of any foreign principal?

Yes ☐        No ☐

If yes, identify each such person and describe the service rendered.

(b) During this six month reporting period, has the registrant hired as employees or in any other capacity, any persons who rendered or will render services to the registrant directly in furtherance of the interests of any foreign principal(s) in other than a clerical or secretarial, or in a related or similar capacity?        Yes ☐        No ☒

| Name | Residence Address | Citizenship | Position | Date Assumed |
|------|-------------------|-------------|----------|--------------|
|      |                   |             |          |              |

(c) Have any employees or individuals, who have filed a short form registration statement, terminated their employment or connection with the registrant during this 6 month reporting period?        Yes ☐        No ☒

If yes, furnish the following information:

| Name | Position or Connection | Date Terminated |
|------|------------------------|-----------------|
|      |                        |                 |

(d) Have any employees or individuals, who have filed a short form registration statement, terminated their connection with any foreign principal during this 6 month reporting period?        Yes ☐        No ☒

If yes, furnish the following information:

| Name | Position or Connection | Foreign Principal | Date Terminated |
|------|------------------------|-------------------|-----------------|
|      |                        |                   |                 |

6. Have short form registration statements been filed by all of the persons named in Items 5(a) and 5(b) of the supplemental statement?

Yes ☐        No ☐

If no, list names of persons who have not filed the required statement.

(PAGE 3)

## II - FOREIGN PRINCIPAL

7. Has your connection with any foreign principal ended during this 6 month reporting period?   Yes ☐   No ☒

   If yes, furnish the following information:

   Foreign Principal                                                                    Date of Termination

8. Have you acquired any new foreign principal(s)[2] during this 6 month reporting period?   Yes ☐   No ☒

   If yes, furnish th following information:

   Name and Address of Foreign Principal(s)                                             Date Acquired

9. In addition to those named in Items 7 and 8, if any, list foreign principal(s)[2] whom you continued to represent during the 6 month reporting period.

   Ukrainian Party of Regions

10. (a) Have you filed exhibits for the newly acquired foreign principal(s), if any, listed in Item 8?

    Exhibit A[3]          Yes ☐          No ☐

    Exhibit B[4]          Yes ☐          No ☐

    If no, please attach the required exhibit.

    (b) Have there been any changes in the Exhibits A and B previously filed for any foreign principal whom you

    represented during this six month period?                Yes ☐          No ☒

    If yes, have you filed an amendment to these exhibits?    Yes ☐          No ☐

    If no, please attach the required amendment.

---

2 The term "foreign principal" includes, in addition to those defined in Section 1(b) of the Act, an individual organization any of whose activities are directly or indirectly supervised, directed, controlled, financed, or subsidized in whole or in major part by a foreign government, foreign political party, foreign organization or foreign individual. (See Rule 100(a) (9)). A registrant who represents more than one foreign principal is required to list in the statements he files under the Act only those principals for whom he is not entitled to claim exemption under Section 3 of the Act. (See Rule 208.)

3 The Exhibit A, which is filed on Form NSD-3, sets forth the information required to be disclosed concerning each foreign principal.

4 The Exhibit B, which is filed on Form NSD-4, sets forth the information concerning the agreement or understanding between the registrant and the foreign principal.

(PAGE 4)

## III - ACTIVITIES

11. During this 6 month reporting period, have you engaged in any activities for or rendered any services to any foreign principal named in Items 7, 8, or 9 of this statement?    Yes ☒    No ☐

If yes, identify each foreign principal and describe in full detail your activities and services:

Focused on electing Party of Regions' candidates at the national and regional levels in the Ukraine for the 2012 legislative election and 2012 local elections by implementing pro-democratic campaign activities, engaging in party building activities, developing a party platform and political agenda, and implementing election planning, election integrity, and international election monitoring programs.  Communicated with the U.S. Embassy in Kiev regarding developing events in Ukraine.
Provided strategic counsel and advice to members of the Party of Regions regarding their interactions with U.S. government officials and other Western influential persons to advance the goal of greater political and economic integration between the Ukraine and the West.  Provided advice to the European Centre for a Modern Ukraine, which was also working for the same purpose.

12. During this 6 month reporting period, have you on behalf of any foreign principal engaged in political activity[5] as defined below?
Yes ☐    No ☒

If yes, identify each such foreign principal and describe in full detail all such political activity, indicating, among other things, the relations, interests and policies sought to be influenced and the means employed to achieve this purpose.  If the registrant arranged, sponsored or delivered speeches, lectures or radio and TV broadcasts, give details as to dates, places of delivery, names of speakers and subject matter.

Please Note: The information contained in this filing, including but not limited to descriptions of activities giving rise to the Registrant's present registration and/or contemporaneous financial receipts or disbursements, reflect only Registrant's best recollection of relevant events and such records currently available, to the knowledge and belief of the Registrant, for review by the Registrant and his legal counsel.  The Registrant may amend and/or supplement such disclosures should additional, relevant information become available.

13. In addition to the above described activities, if any, have you engaged in activity on your own behalf which benefits your foreign principal(s)?    Yes ☐    No ☒

If yes, describe fully.

5 "Political activity," as defined in Section 1(o) of the Act, means any activity that the person engaging in believes will, or that the person intends to, in any way influence any agency or official of the Government of the United States or any section of the public within the United States with reference to formulating, adopting or changing the domestic or foreign policies of the United States or with reference to political or public interests, policies, or relations of a government of a foreign country or a foreign political party.

(PAGE 5)

## IV - FINANCIAL INFORMATION

14. (a) **RECEIPTS-MONIES**
During this 6 month reporting period, have you received from any foreign principal named in Items 7, 8, or 9 of this statement, or from any other source, for or in the interests of any such foreign principal, any contributions, income or money either as compensation or otherwise?     Yes ☒     No ☐

If no, explain why.

If yes, set forth below in the required detail and separately for each foreign principal an account of such monies.[6]

| Date | From Whom | Purpose | Amount |
|------|-----------|---------|--------|
| Please see attached. | | | |

Total

(b) **RECEIPTS - FUNDRAISING CAMPAIGN**
During this 6 month reporting period, have you received, as part of a fundraising campaign[7], any money on behalf of any foreign principal named in Items 7, 8, or 9 of this statement?     Yes ☐     No ☒

If yes, have you filed an Exhibit D[8] to your registration?     Yes ☐     No ☐

If yes, indicate the date the Exhibit D was filed.     Date _____

(c) **RECEIPTS-THINGS OF VALUE**
During this 6 month reporting period, have you received any thing of value[9] other than money from any foreign principal named in Items 7, 8, or 9 of this statement, or from any other source, for or in the interests of any such foreign principal?
Yes ☐     No ☒

If yes, furnish the following information:

| Foreign Principal | Date Received | Thing of Value | Purpose |
|-------------------|---------------|----------------|---------|

6, 7 A registrant is required to file an Exhibit D if he collects or receives contributions, loans, moneys, or other things of value for a foreign principal, as part of a fundraising campaign. (See Rule 201(e)).
8 An Exhibit D, for which no printed form is provided, sets forth an account of money collected or received as a result of a fundraising campaign and transmitted for a foreign principal.
9 Things of value include but are not limited to gifts, interest free loans, expense free travel, favored stock purchases, exclusive rights, favored treatment over competitors, "kickbacks," and the like.

15. (a) **DISBURSEMENTS-MONIES**
During this 6 month reporting period, have you
(1)  disbursed or expended monies in connection with activity on behalf of any foreign principal named in Items 7, 8, or 9 of this statement?   Yes ☒        No ☐
(2)  transmitted monies to any such foreign principal?      Yes ☐      No ☒

If no, explain in full detail why there were no disbursements made on behalf of any foreign principal.


If yes, set forth below in the required detail and separately for each foreign principal an account of such monies, including monies transmitted, if any, to each foreign principal.

| Date | To Whom | Purpose | Amount |
|---|---|---|---|
| Please see attached. | | | |

Total

(PAGE 7)

**(b) DISBURSEMENTS-THINGS OF VALUE**

During this 6 month reporting period, have you disposed of anything of value[10] other than money in furtherance of or in connection with activities on behalf of any foreign principal named in Items 7, 8, or 9 of this statement?

        Yes ☐        No ☒

If yes, furnish the following information:

| Date | Recipient | Foreign Principal | Thing of Value | Purpose |
|------|-----------|-------------------|----------------|---------|
|      |           |                   |                |         |

**(c) DISBURSEMENTS-POLITICAL CONTRIBUTIONS**

During this 6 month reporting period, have you from your own funds and on your own behalf either directly or through any other person, made any contributions of money or other things of value[11] in connection with an election to any political office, or in connection with any primary election, convention, or caucus held to select candidates for political office?

        Yes ☐        No ☒

If yes, furnish the following information:

| Date | Amount or Thing of Value | Political Organization or Candidate | Location of Event |
|------|--------------------------|-------------------------------------|-------------------|
|      |                          |                                     |                   |

---

10, 11  Things of value include but are not limited to gifts, interest free loans, expense free travel, favored stock purchases, exclusive rights, favored treatment over competitors, "kickbacks," and the like.

(PAGE 8)

## V - INFORMATIONAL MATERIALS

16. (a)  During this 6 month reporting period, did you prepare, disseminate or cause to be disseminated any informational materials?[12]

        Yes ☐        No ☒

If Yes, go to Item 17.

   (b)  If you answered No to Item 16(a), do you disseminate any material in connection with your registration?

        Yes ☐        No ☒

If Yes, please forward the materials disseminated during the six month period to the Registration Unit for review.

17.  Identify each such foreign principal.

18.  During this 6 month reporting period, has any foreign principal established a budget or allocated a specified sum of money to finance your activities in preparing or disseminating informational materials?      Yes ☐      No ☒

If yes, identify each such foreign principal, specify amount, and indicate for what period of time.

19.  During this 6 month reporting period, did your activities in preparing, disseminating or causing the dissemination of informational materials include the use of any of the following:

☐ Radio or TV broadcasts    ☐ Magazine or newspaper    ☐ Motion picture films    ☐ Letters or telegrams
☐ Advertising campaigns    ☐ Press releases    ☐ Pamphlets or other publications ☐ Lectures or speeches
☐ Other *(specify)*

**Electronic Communications**

☐ Email
☐ Website URL(s): _____
☐ Social media websites URL(s): _____
☐ Other *(specify)* _____

20.  During this 6 month reporting period, did you disseminate or cause to be disseminated informational materials among any of the following groups:

    ☐ Public officials        ☐ Newspapers        ☐ Libraries
    ☐ Legislators        ☐ Editors        ☐ Educational institutions
    ☐ Government agencies    ☐ Civic groups or associations    ☐ Nationality groups
    ☐ Other *(specify)* _____

21.  What language was used in the informational materials:

    ☐ English        ☐ Other *(specify)* _____

22.  Did you file with the Registration Unit, U.S. Department of Justice a copy of each item of such informational materials disseminated or caused to be disseminated during this 6 month reporting period?    Yes ☐    No ☐

23.  Did you label each item of such informational materials with the statement required by Section 4(b) of the Act?

    Yes ☐    No ☐

---

12  The term *informational materials* includes any oral, visual, graphic, written, or pictorial information or matter of any kind, including that published by means of advertising, books, periodicals, newspapers, lectures, broadcasts, motion pictures, or any means or instrumentality of interstate or foreign commerce or otherwise. Informational materials disseminated by an agent of a foreign principal as part of an activity in itself exempt from registration, or an activity which by itself would not require registration, need not be filed pursuant to Section 4(b) of the Act.

## VI - EXECUTION

In accordance with 28 U.S.C. § 1746, the undersigned swear(s) or affirm(s) under penalty of perjury that he/she has (they have) read the information set forth in this registration statement and the attached exhibits and that he/she is (they are) familiar with the contents thereof and that such contents are in their entirety true and accurate to the best of his/her (their) knowledge and belief, except that the undersigned make(s) no representation as to truth or accuracy of the information contained in the attached Short Form Registration Statement(s), if any, insofar as such information is not within his/her (their) personal knowledge.

(Date of signature)                                (Print or type name under each signature or provide electronic signature[13])

_6-27-17_                                          _Paul J Manafort_

_____                              _____

_____                              _____

_____                              _____

2017 JUN 27 PM 4: 52

_____

13  This statement shall be signed by the individual agent, if the registrant is an individual, or by a majority of those partners, officers, directors or persons performing similar functions, if the registrant is an organization, except that the organization can, by power of attorney, authorize one or more individuals to execute this statement on its behalf.

Question 14(a) Receipts

*Please Note:* The information contained in this filing, including but not limited to descriptions of activities giving rise to the Registrant's present registration and/or contemporaneous financial receipts or disbursements, reflect only Registrant's best recollection of relevant events and such records currently available, to the knowledge and belief of the Registrant, for review by the Registrant and his legal counsel. The Registrant may amend and/or supplement such disclosures should additional, relevant information become available.

| Date | Foreign Principal | Purpose | Amount |
|------|-------------------|---------|--------|
| 1/2012 | Party of Regions | Services Rendered | $225,000.00 |
| 2/2012 | Party of Regions | Services Rendered | $1,950,000.00 |
| 3/2012 | Party of Regions | Services Rendered | $700,000.00 |
| 4/2012 | Party of Regions | Services Rendered | $1,350,000.00 |
| 5/2012 | Party of Regions | Services Rendered | $535,000.00 |
| 6/2012 | Party of Regions | Services Rendered | $650,000.00 |
| 8/2012 | Party of Regions | Services Rendered | $620,000.00 |
| 9/2012 | Party of Regions | Services Rendered | $1,280,000.00 |
| 10/2012 | Party of Regions | Services Rendered | $400,000.00 |
| 11/2012 | Party of Regions | Services Rendered | $4,399,500.00 |

2017 JUN 27  PM 4: 52

NSD/CES/

Question 15(a) Disbursements

*Please Note:* The information contained in this filing, including but not limited to descriptions of activities giving rise to the Registrant's present registration and/or contemporaneous financial receipts or disbursements, reflect only Registrant's best recollection of relevant events and such records currently available, to the knowledge and belief of the Registrant, for review by the Registrant and his legal counsel.  The Registrant may amend and/or supplement such disclosures should additional, relevant information become available.

| Date | Contractor | Purpose | Amount |
|------|------------|---------|--------|
| | | **January – June 2012** | |
| 5/16/2012 | Fabrizio Ward Associates LLC | Polling and surveys | $35,000.00 |
| 6/27/2012 | Rabin Strasburg LLC | Media consulting services | $91,693.00 |
| | | **July – December 2012** | |
| 7/31/2012 | Rabin Strasburg LLC | Consulting services and expenses | $65,631.00 |
| 8/28/2012 | Steven J. Brown | Political and media outreach | $20,000.00 |
| 8/31/2012 | Rabin Strasburg LLC | Media consulting services | $74,265.00 |
| 9/4/2012 | Fabrizio Ward Associates LLC | Polling and surveys | $73,500.00 |
| 10/1/2012 | Rabin Strasburg LLC | Media consulting services | $53,899.00 |
| 10/1/2012 | Steven J. Brown | Political and media outreach | $5,000.00 |
| 10/5/2012 | Christopher Spence | Election data analysis | $10,000.00 |
| 10/5/2012 | Clear Dialogue LLC | Election integrity consulting services | $10,500.00 |
| 10/31/2012 | Clear Dialogue LLC | Election integrity consulting services | $10,500.00 |
| 10/31/2012 | Rabin Strasburg LLC | Media consulting services | $83,832.00 |
| 11/7/2012 | Fabrizio Ward Associates LLC | Polling and surveys | $35,000.00 |
| 11/7/2012 | Fabrizio Ward Associates LLC | Polling and surveys | $35,000.00 |
| 11/19/2012 | Clear Dialogue LLC | Election integrity consulting services | $12,000.00 |
| 11/19/2012 | Clear Dialogue LLC | Election integrity consulting services | $6,935.44 |
| 11/29/2012 | Fabrizio Ward Associates LLC | Polling and surveys | $35,000.00 |
| 11/29/2012 | Steven J. Brown | Political and media outreach | $5,000.00 |
| 12/28/2012 | Steven J. Brown | Political and media outreach | $5,000.00 |

**Other Expenses**

| Purpose | Amount |
|---------|--------|
| **January – June 2012** | |
| Travel | $648,840.83 |
| Meals/Living Expenses | $88,404.45 |
| **July – December 2012** | |
| Travel | $769,928.53 |
| Meals/Living Expenses | $99,812.72 |

2011 JUN 27 PM 4: 52

NSD/CES/FARA REGISTRATION
UNIT

OMB No. 1124-0002; Expires May 31, 2020

U.S. Department of Justice

Washington, DC 20530

**Supplemental Statement**

**Pursuant to the Foreign Agents Registration Act of 1938, as amended**

For Six Month Period Ending 12/31/2012

<u>(Insert date)</u>

## I - REGISTRANT

1. (a) Name of Registrant      (b) Registration No. 6440

   DMP International, LLC

   (c) Business Address(es) of Registrant
   10 St. James Drive
   Palm Beach Gardens, FL 33418

2. Has there been a change in the information previously furnished in connection with the following?

   (a) If an individual:

   |  |  |  |
   |---|---|---|
   | (1) Residence address(es) | Yes ☐ | No ☐ |
   | (2) Citizenship | Yes ☐ | No ☐ |
   | (3) Occupation | Yes ☐ | No ☐ |

   (b) If an organization:

   |  |  |  |
   |---|---|---|
   | (1) Name | Yes ☐ | No ☒ |
   | (2) Ownership or control | Yes ☐ | No ☒ |
   | (3) Branch offices | Yes ☐ | No ☒ |

   (c) Explain fully all changes, if any, indicated in Items (a) and (b) above.

2017 JUN 27  PM 4: 52

---

**IF THE REGISTRANT IS AN INDIVIDUAL, OMIT RESPONSE TO ITEMS 3, 4, AND 5(a).**

3. If you have previously filed Exhibit C[1], state whether any changes therein have occurred during this 6 month reporting period.

   Yes ☐          No ☒

   If yes, have you filed an amendment to the Exhibit C?       Yes ☐          No ☐

   If no, please attach the required amendment.

---

[1] The Exhibit C, for which no printed form is provided, consists of a true copy of the charter, articles of incorporation, association, and by laws of a registrant that is an organization. (A waiver of the requirement to file an Exhibit C may be obtained for good cause upon written application to the Assistant Attorney General, National Security Division, U.S. Department of Justice, Washington, DC 20530.)

FORM NSD-2
Revised 05/17

(PAGE 2)

4. (a) Have any persons ceased acting as partners, officers, directors or similar officials of the registrant during this 6 month reporting period?

        Yes ☐      No ☒

     If yes, furnish the following information:

| Name | Position | Date Connection Ended |
|---|---|---|
| | | |

(b) Have any persons become partners, officers, directors or similar officials during this 6 month reporting period?

        Yes ☐      No ☒

     If yes, furnish the following information:

| Name | Residence Address | Citizenship | Position | Date Assumed |
|---|---|---|---|---|
| | | | | |

5. (a) Has any person named in Item 4(b) rendered services directly in furtherance of the interests of any foreign principal?

        Yes ☐      No ☐

     If yes, identify each such person and describe the service rendered.

(b) During this six month reporting period, has the registrant hired as employees or in any other capacity, any persons who rendered or will render services to the registrant directly in furtherance of the interests of any foreign principal(s) in other than a clerical or secretarial, or in a related or similar capacity?    Yes ☐      No ☒

| Name | Residence Address | Citizenship | Position | Date Assumed |
|---|---|---|---|---|
| | | | | |

(c) Have any employees or individuals, who have filed a short form registration statement, terminated their employment or connection with the registrant during this 6 month reporting period?    Yes ☐      No ☒

     If yes, furnish the following information:

| Name | Position or Connection | Date Terminated |
|---|---|---|
| | | |

(d) Have any employees or individuals, who have filed a short form registration statement, terminated their connection with any foreign principal during this 6 month reporting period?    Yes ☐      No ☒

     If yes, furnish the following information:

| Name | Position or Connection | Foreign Principal | Date Terminated |
|---|---|---|---|
| | | | |

6. Have short form registration statements been filed by all of the persons named in Items 5(a) and 5(b) of the supplemental statement?

        Yes ☐      No ☐

   If no, list names of persons who have not filed the required statement.

(PAGE 3)

## II - FOREIGN PRINCIPAL

7. Has your connection with any foreign principal ended during this 6 month reporting period?   Yes ☐        No ☒

   If yes, furnish the following information:

   Foreign Principal                                                          Date of Termination

8. Have you acquired any new foreign principal(s)[2] during this 6 month reporting period?     Yes ☐        No ☒

   If yes, furnish th following information:

   Name and Address of Foreign Principal(s)                                   Date Acquired

9. In addition to those named in Items 7 and 8, if any, list foreign principal(s)[2] whom you continued to represent during the 6 month reporting period.

   Ukrainian Party of Regions

10. (a) Have you filed exhibits for the newly acquired foreign principal(s), if any, listed in Item 8?

    Exhibit A[3]          Yes ☐       No ☐

    Exhibit B[4]          Yes ☐       No ☐

    If no, please attach the required exhibit.

    (b) Have there been any changes in the Exhibits A and B previously filed for any foreign principal whom you

    represented during this six month period?                       Yes ☐       No ☒

    If yes, have you filed an amendment to these exhibits?           Yes ☐       No ☐

    If no, please attach the required amendment.

---

2  The term "foreign principal" includes, in addition to those defined in Section 1(b) of the Act, an individual organization any of whose activities are directly or indirectly supervised, directed, controlled, financed, or subsidized in whole or in major part by a foreign government, foreign political party, foreign organization or foreign individual. (See Rule 100(a) (9)).  A registrant who represents more than one foreign principal is required to list in the statements he files under the Act only those principals for whom he is not entitled to claim exemption under Section 3 of the Act.  (See Rule 208.)

3  The Exhibit A, which is filed on Form NSD-3, sets forth the information required to be disclosed concerning each foreign principal.

4  The Exhibit B, which is filed on Form NSD-4, sets forth the information concerning the agreement or understanding between the registrant and the foreign principal.

## III - ACTIVITIES

11. During this 6 month reporting period, have you engaged in any activities for or rendered any services to any foreign principal named in Items 7, 8, or 9 of this statement?      Yes ☒      No ☐

If yes, identify each foreign principal and describe in full detail your activities and services:

Focused on electing Party of Regions' candidates at the national and regional levels in the Ukraine for the 2012 legislative election and 2012 local elections by implementing pro-democratic campaign activities, engaging in party building activities, developing a party platform and political agenda, and implementing election planning, election integrity, and international election monitoring programs.  Communicated with the U.S. Embassy in Kiev regarding developing events in Ukraine.
Provided strategic counsel and advice to members of the Party of Regions regarding their interactions with U.S. government officials and other Western influential persons to advance the goal of greater political and economic integration between the Ukraine and the West.  Provided advice to the European Centre for a Modern Ukraine, which was also working for the same purpose.

12. During this 6 month reporting period, have you on behalf of any foreign principal engaged in political activity[5] as defined below?
Yes ☒      No ☐

If yes, identify each such foreign principal and describe in full detail all such political activity, indicating, among other things, the relations, interests and policies sought to be influenced and the means employed to achieve this purpose.  If the registrant arranged, sponsored or delivered speeches, lectures or radio and TV broadcasts, give details as to dates, places of delivery, names of speakers and subject matter.

Please Note: The information contained in this filing, including but not limited to descriptions of activities giving rise to the Registrant's present registration and/or contemporaneous financial receipts or disbursements, reflect only Registrant's best recollection of relevant events and such records currently available, to the knowledge and belief of the Registrant, for review by the Registrant and his legal counsel. The Registrant may amend and/or supplement such disclosures should additional, relevant information become available.

10/30/12 Email to Ambassador John Tefft regarding U.S. statement on Ukrainian elections.

13. In addition to the above described activities, if any, have you engaged in activity on your own behalf which benefits your foreign principal(s)?      Yes ☐      No ☒

If yes, describe fully.

5  "Political activity," as defined in Section 1(o) of the Act, means any activity that the person engaging in believes will, or that the person intends to, in any way influence any agency or official of the Government of the United States or any section of the public within the United States with reference to formulating, adopting or changing the domestic or foreign policies of the United States or with reference to political or public interests, policies, or relations of a government of a foreign country or a foreign political party.

(PAGE 5)

## IV - FINANCIAL INFORMATION

14. (a)  **RECEIPTS-MONIES**

During this 6 month reporting period, have you received from any foreign principal named in Items 7, 8, or 9 of this statement, or from any other source, for or in the interests of any such foreign principal, any contributions, income or money either as compensation or otherwise?     Yes ☒     No ☐

If no, explain why.

If yes, set forth below in the required detail and separately for each foreign principal an account of such monies.[6]

| Date | From Whom | Purpose | Amount |
|------|-----------|---------|--------|
| Please see attached. | | | |

|  |  |  | Total |

(b)  **RECEIPTS - FUNDRAISING CAMPAIGN**

During this 6 month reporting period, have you received, as part of a fundraising campaign[7], any money on behalf of any foreign principal named in Items 7, 8, or 9 of this statement?     Yes ☐     No ☒

If yes, have you filed an Exhibit D[8] to your registration?     Yes ☐     No ☐

If yes, indicate the date the Exhibit D was filed.     Date _____

(c)  **RECEIPTS-THINGS OF VALUE**

During this 6 month reporting period, have you received any thing of value[9] other than money from any foreign principal named in Items 7, 8, or 9 of this statement, or from any other source, for or in the interests of any such foreign principal?     Yes ☐     No ☒

If yes, furnish the following information:

| Foreign Principal | Date Received | Thing of Value | Purpose |
|-------------------|---------------|----------------|---------|

---

6, 7  A registrant is required to file an Exhibit D if he collects or receives contributions, loans, moneys, or other things of value for a foreign principal, as part of a fundraising campaign. (See Rule 201(e)).

8  An Exhibit D, for which no printed form is provided, sets forth an account of money collected or received as a result of a fundraising campaign and transmitted for a foreign principal.

9  Things of value include but are not limited to gifts, interest free loans, expense free travel, favored stock purchases, exclusive rights, favored treatment over competitors, "kickbacks," and the like.

15. (a)   **DISBURSEMENTS-MONIES**
During this 6 month reporting period, have you
(1)   disbursed or expended monies in connection with activity on behalf of any foreign principal named in Items 7, 8, or 9 of this statement?   Yes ☒          No ☐

(2)   transmitted monies to any such foreign principal?          Yes ☐          No ☒

If no, explain in full detail why there were no disbursements made on behalf of any foreign principal.


If yes, set forth below in the required detail and separately for each foreign principal an account of such monies, including monies transmitted, if any, to each foreign principal.

| Date | To Whom | Purpose | Amount |
|---|---|---|---|
| Please see attached. | | | |

| | | | Total |
|---|---|---|---|

(PAGE 7)

(b) **DISBURSEMENTS-THINGS OF VALUE**
During this 6 month reporting period, have you disposed of anything of value[10] other than money in furtherance of or in connection with activities on behalf of any foreign principal named in Items 7, 8, or 9 of this statement?

Yes ☐          No ☒

If yes, furnish the following information:

| Date | Recipient | Foreign Principal | Thing of Value | Purpose |
|------|-----------|-------------------|----------------|---------|

(c) **DISBURSEMENTS-POLITICAL CONTRIBUTIONS**
During this 6 month reporting period, have you from your own funds and on your own behalf either directly or through any other person, made any contributions of money or other things of value[11] in connection with an election to any political office, or in connection with any primary election, convention, or caucus held to select candidates for political office?

Yes ☒          No ☐

If yes, furnish the following information:

| Date | Amount or Thing of Value | Political Organization or Candidate | Location of Event |
|------|--------------------------|-------------------------------------|-------------------|
| 8/24/12 | 2500.00 | Vernon Parker - Arizona State Office | |

10, 11 Things of value include but are not limited to gifts, interest free loans, expense free travel, favored stock purchases, exclusive rights, favored treatment over competitors, "kickbacks," and the like.

(PAGE 8)

## V – INFORMATIONAL MATERIALS

16. (a)  During this 6 month reporting period, did you prepare, disseminate or cause to be disseminated any informational materials?[12]
    Yes ☐      No ☒

If Yes, go to Item 17.

(b)  If you answered No to Item 16(a), do you disseminate any material in connection with your registration?
    Yes ☐      No ☒

If Yes, please forward the materials disseminated during the six month period to the Registration Unit for review.

17.  Identify each such foreign principal.




18.  During this 6 month reporting period, has any foreign principal established a budget or allocated a specified sum of money to finance your activities in preparing or disseminating informational materials?      Yes ☐      No ☒

If yes, identify each such foreign principal, specify amount, and indicate for what period of time.




19.  During this 6 month reporting period, did your activities in preparing, disseminating or causing the dissemination of informational materials include the use of any of the following:

☐ Radio or TV broadcasts      ☐ Magazine or newspaper      ☐ Motion picture films      ☐ Letters or telegrams
☐ Advertising campaigns       ☐ Press releases              ☐ Pamphlets or other publications   ☐ Lectures or speeches
☐ Other *(specify)* _____

**Electronic Communications**

☐ Email
☐ Website URL(s): _____
☐ Social media websites URL(s): _____
☐ Other *(specify)* _____

20.  During this 6 month reporting period, did you disseminate or cause to be disseminated informational materials among any of the following groups:

☐ Public officials            ☐ Newspapers          ☐ Libraries
☐ Legislators                 ☐ Editors             ☐ Educational institutions
☐ Government agencies         ☐ Civic groups or associations   ☐ Nationality groups
☐ Other *(specify)* _____

21.  What language was used in the informational materials:

☐ English            ☐ Other *(specify)* _____

22.  Did you file with the Registration Unit, U.S. Department of Justice a copy of each item of such informational materials disseminated or caused to be disseminated during this 6 month reporting period?      Yes ☐      No ☐

23.  Did you label each item of such informational materials with the statement required by Section 4(b) of the Act?
    Yes ☐      No ☐

12  The term informational materials includes any oral, visual, graphic, written, or pictorial information or matter of any kind, including that published by means of advertising, books, periodicals, newspapers, lectures, broadcasts, motion pictures, or any means or instrumentality of interstate or foreign commerce or otherwise. Informational materials disseminated by an agent of a foreign principal as part of an activity in itself exempt from registration, or an activity which by itself would not require registration, need not be filed pursuant to Section 4(b) of the Act.

## VI - EXECUTION

In accordance with 28 U.S.C. § 1746, the undersigned swear(s) or affirm(s) under penalty of perjury that he/she has (they have) read the information set forth in this registration statement and the attached exhibits and that he/she is (they are) familiar with the contents thereof and that such contents are in their entirety true and accurate to the best of his/her (their) knowledge and belief, except that the undersigned make(s) no representation as to truth or accuracy of the information contained in the attached Short Form Registration Statement(s), if any, insofar as such information is not within his/her (their) personal knowledge.

(Date of signature)                                     (Print or type name under each signature or provide electronic signature[13])

6-27-17                                                  Paul J Manafort

2017 JUN 27  PM 4: 52

---

13 This statement shall be signed by the individual agent, if the registrant is an individual, or by a majority of those partners, officers, directors or persons performing similar functions, if the registrant is an organization, except that the organization can, by power of attorney, authorize one or more individuals to execute this statement on its behalf.

Question 14(a) Receipts

*Please Note:* The information contained in this filing, including but not limited to descriptions of activities giving rise to the Registrant's present registration and/or contemporaneous financial receipts or disbursements, reflect only Registrant's best recollection of relevant events and such records currently available, to the knowledge and belief of the Registrant, for review by the Registrant and his legal counsel. The Registrant may amend and/or supplement such disclosures should additional, relevant information become available.

| Date | Foreign Principal | Purpose | Amount |
|------|------------------|---------|--------|
| 1/2012 | Party of Regions | Services Rendered | $225,000.00 |
| 2/2012 | Party of Regions | Services Rendered | $1,950,000.00 |
| 3/2012 | Party of Regions | Services Rendered | $700,000.00 |
| 4/2012 | Party of Regions | Services Rendered | $1,350,000.00 |
| 5/2012 | Party of Regions | Services Rendered | $535,000.00 |
| 6/2012 | Party of Regions | Services Rendered | $650,000.00 |
| 8/2012 | Party of Regions | Services Rendered | $620,000.00 |
| 9/2012 | Party of Regions | Services Rendered | $1,280,000.00 |
| 10/2012 | Party of Regions | Services Rendered | $400,000.00 |
| 11/2012 | Party of Regions | Services Rendered | $4,399,500.00 |

2017 JUN 27 PM 4: 52

NSD/CES/ UNIT

Question 15(a) Disbursements

*Please Note:* The information contained in this filing, including but not limited to descriptions of activities giving rise to the Registrant's present registration and/or contemporaneous financial receipts or disbursements, reflect only Registrant's best recollection of relevant events and such records currently available, to the knowledge and belief of the Registrant, for review by the Registrant and his legal counsel.  The Registrant may amend and/or supplement such disclosures should additional, relevant information become available.

| Date | Contractor | Purpose | Amount |
|---|---|---|---|
| **January – June 2012** | | | |
| 5/16/2012 | Fabrizio Ward Associates LLC | Polling and surveys | $35,000.00 |
| 6/27/2012 | Rabin Strasburg LLC | Media consulting services | $91,693.00 |
| **July – December 2012** | | | |
| 7/31/2012 | Rabin Strasburg LLC | Consulting services and expenses | $65,631.00 |
| 8/28/2012 | Steven J. Brown | Political and media outreach | $20,000.00 |
| 8/31/2012 | Rabin Strasburg LLC | Media consulting services | $74,265.00 |
| 9/4/2012 | Fabrizio Ward Associates LLC | Polling and surveys | $73,500.00 |
| 10/1/2012 | Rabin Strasburg LLC | Media consulting services | $53,899.00 |
| 10/1/2012 | Steven J. Brown | Political and media outreach | $5,000.00 |
| 10/5/2012 | Christopher Spence | Election data analysis | $10,000.00 |
| 10/5/2012 | Clear Dialogue LLC | Election integrity consulting services | $10,500.00 |
| 10/31/2012 | Clear Dialogue LLC | Election integrity consulting services | $10,500.00 |
| 10/31/2012 | Rabin Strasburg LLC | Media consulting services | $83,832.00 |
| 11/7/2012 | Fabrizio Ward Associates LLC | Polling and surveys | $35,000.00 |
| 11/7/2012 | Fabrizio Ward Associates LLC | Polling and surveys | $35,000.00 |
| 11/19/2012 | Clear Dialogue LLC | Election integrity consulting services | $12,000.00 |
| 11/19/2012 | Clear Dialogue LLC | Election integrity consulting services | $6,935.44 |
| 11/29/2012 | Fabrizio Ward Associates LLC | Polling and surveys | $35,000.00 |
| 11/29/2012 | Steven J. Brown | Political and media outreach | $5,000.00 |
| 12/28/2012 | Steven J. Brown | Political and media outreach | $5,000.00 |

**Other Expenses**

| Purpose | Amount |
|---|---|
| **January – June 2012** | |
| Travel | $648,840.83 |
| Meals/Living Expenses | $88,404.45 |
| **July – December 2012** | |
| Travel | $769,928.53 |
| Meals/Living Expenses | $99,812.72 |

2011 JUN 27 PM 4:52

NSD/CES/REGISTRATION UNIT

OMB No. 1124-0002; Expires May 31, ⌐ ↲

**U.S. Department of Justice**

Washington, DC 20530

## Supplemental Statement
## Pursuant to the Foreign Agents Registration Act of 1938, as amended

For Six Month Period Ending  6/30/2013
<div style="text-align:center">(Insert date)</div>

### I - REGISTRANT

1. (a) Name of Registrant                     (b) Registration No.  6440

   DMP International, LLC

   (c) Business Address(es) of Registrant
   10 St. James Drive
   Palm Beach Gardens, FL 33418

2. Has there been a change in the information previously furnished in connection with the following?

   (a) If an individual:

   | | | |
   |---|---|---|
   | (1) Residence address(es) | Yes ☐ | No ☐ |
   | (2) Citizenship | Yes ☐ | No ☐ |
   | (3) Occupation | Yes ☐ | No ☐ |

   (b) If an organization:

   | | | |
   |---|---|---|
   | (1) Name | Yes ☐ | No ☒ |
   | (2) Ownership or control | Yes ☐ | No ☒ |
   | (3) Branch offices | Yes ☐ | No ☒ |

   (c) Explain fully all changes, if any, indicated in Items (a) and (b) above.

2017 JUN 27  PM 4: 52

NSD/CES/ ⌐ ↲ ⌐

---

### IF THE REGISTRANT IS AN INDIVIDUAL, OMIT RESPONSE TO ITEMS 3, 4, AND 5(a).

3. If you have previously filed Exhibit C[1], state whether any changes therein have occurred during this 6 month reporting period.

   Yes ☐          No ☒

   If yes, have you filed an amendment to the Exhibit C?     Yes ☐          No ☐

   If no, please attach the required amendment.

---

1 The Exhibit C, for which no printed form is provided, consists of a true copy of the charter, articles of incorporation, association, and by laws of a registrant that is an organization. (A waiver of the requirement to file an Exhibit C may be obtained for good cause upon written application to the Assistant Attorney General, National Security Division, U.S. Department of Justice, Washington, DC 20530.)

(PAGE 2)

4. (a) Have any persons ceased acting as partners, officers, directors or similar officials of the registrant during this 6 month reporting period?

Yes ☐     No ☒

If yes, furnish the following information:

| Name | Position | Date Connection Ended |
|------|----------|----------------------|
|      |          |                      |

(b) Have any persons become partners, officers, directors or similar officials during this 6 month reporting period?

Yes ☐     No ☒

If yes, furnish the following information:

| Name | Residence Address | Citizenship | Position | Date Assumed |
|------|-------------------|-------------|----------|--------------|
|      |                   |             |          |              |

5. (a) Has any person named in Item 4(b) rendered services directly in furtherance of the interests of any foreign principal?

Yes ☐     No ☒

If yes, identify each such person and describe the service rendered.

(b) During this six month reporting period, has the registrant hired as employees or in any other capacity, any persons who rendered or will render services to the registrant directly in furtherance of the interests of any foreign principal(s) in other than a clerical or secretarial, or in a related or similar capacity?     Yes ☐     No ☒

| Name | Residence Address | Citizenship | Position | Date Assumed |
|------|-------------------|-------------|----------|--------------|
|      |                   |             |          |              |

(c) Have any employees or individuals, who have filed a short form registration statement, terminated their employment or connection with the registrant during this 6 month reporting period?     Yes ☐     No ☒

If yes, furnish the following information:

| Name | Position or Connection | Date Terminated |
|------|------------------------|-----------------|
|      |                        |                 |

(d) Have any employees or individuals, who have filed a short form registration statement, terminated their connection with any foreign principal during this 6 month reporting period?     Yes ☐     No ☒

If yes, furnish the following information:

| Name | Position or Connection | Foreign Principal | Date Terminated |
|------|------------------------|-------------------|-----------------|
|      |                        |                   |                 |

6. Have short form registration statements been filed by all of the persons named in Items 5(a) and 5(b) of the supplemental statement?

Yes ☐     No ☐

If no, list names of persons who have not filed the required statement.

(PAGE 3)

## II - FOREIGN PRINCIPAL

7. Has your connection with any foreign principal ended during this 6 month reporting period?     Yes ☐     No ☒
   If yes, furnish the following information:

   Foreign Principal                                                      Date of Termination

8. Have you acquired any new foreign principal(s)[2] during this 6 month reporting period?     Yes ☐     No ☒
   If yes, furnish th following information:

   Name and Address of Foreign Principal(s)                               Date Acquired

9. In addition to those named in Items 7 and 8, if any, list foreign principal(s)[2] whom you continued to represent during the 6 month reporting period.

   Ukrainian Party of Regions

10. (a) Have you filed exhibits for the newly acquired foreign principal(s), if any, listed in Item 8?

   Exhibit A[3]          Yes ☐          No ☐
   Exhibit B[4]          Yes ☐          No ☐

   If no, please attach the required exhibit.

   (b) Have there been any changes in the Exhibits A and B previously filed for any foreign principal whom you
   represented during this six month period?                    Yes ☐     No ☒
   If yes, have you filed an amendment to these exhibits?        Yes ☐     No ☒

   If no, please attach the required amendment.

---

2 The term "foreign principal" includes, in addition to those defined in Section 1(b) of the Act, an individual organization any of whose activities are directly or indirectly
   supervised, directed, controlled, financed, or subsidized in whole or in major part by a foreign government, foreign political party, foreign organization or foreign individual.
   (See Rule 100(a) (9)).  A registrant who represents more than one foreign principal is required to list in the statements he files under the Act only those principals for whom he
   is not entitled to claim exemption under Section 3 of the Act.  (See Rule 208.)
3 The Exhibit A, which is filed on Form NSD-3, sets forth the information required to be disclosed concerning each foreign principal.
4 The Exhibit B, which is filed on Form NSD-4, sets forth the information concerning the agreement or understanding between the registrant and the
   foreign principal.

## III - ACTIVITIES

11. During this 6 month reporting period, have you engaged in any activities for or rendered any services to any foreign principal named in Items 7, 8, or 9 of this statement?     Yes ☒     No ☐

    If yes, identify each foreign principal and describe in full detail your activities and services:

    Focused on electing Party of Regions' candidates at the national and regional levels in the Ukraine by implementing pro-democratic campaign activities, engaging in party building activities, developing a party platform and political agenda, and implementing election planning, election integrity, and international election monitoring programs. Communicated with the U.S. Embassy in Kiev regarding developing events in Ukraine.
    Provided strategic counsel and advice to members of the Party of Regions regarding their interactions with U.S. government officials and other Western influential persons to advance the goal of greater political and economic integration between the Ukraine and the West. Provided advice to the European Centre for a Modern Ukraine, which was also working for the same purpose.

12. During this 6 month reporting period, have you on behalf of any foreign principal engaged in political activity[5] as defined below?
    Yes ☒     No ☐

    If yes, identify each such foreign principal and describe in full detail all such political activity, indicating, among other things, the relations, interests and policies sought to be influenced and the means employed to achieve this purpose. If the registrant arranged, sponsored or delivered speeches, lectures or radio and TV broadcasts, give details as to dates, places of delivery, names of speakers and subject matter.

    Please Note: The information contained in this filing, including but not limited to descriptions of activities giving rise to the Registrant's present registration and/or contemporaneous financial receipts or disbursements, reflect only Registrant's best recollection of relevant events and such records currently available, to the knowledge and belief of the Registrant, for review by the Registrant and his legal counsel. The Registrant may amend and/or supplement such disclosures should additional, relevant information become available.

    3/19/13 Meeting with Paula Dobriansky, Kennedy School of Government
    3/19/13 Meeting with Nadia Diuk, National Endowment for Democracy
    3/19/13 Meeting with Rep. Rohrabacher

13. In addition to the above described activities, if any, have you engaged in activity on your own behalf which benefits your foreign principal(s)?     Yes ☐     No ☒

    If yes, describe fully.

---

5 "Political activity," as defined in Section 1(o) of the Act, means any activity that the person engaging in believes will, or that the person intends to, in any way influence any agency or official of the Government of the United States or any section of the public within the United States with reference to formulating, adopting or changing the domestic or foreign policies of the United States or with reference to political or public interests, policies, or relations of a government of a foreign country or a foreign political party.

(PAGE 5)

## IV - FINANCIAL INFORMATION

14. (a) **RECEIPTS-MONIES**

During this 6 month reporting period, have you received from any foreign principal named in Items 7, 8, or 9 of this statement, or from any other source, for or in the interests of any such foreign principal, any contributions, income or money either as compensation or otherwise?     Yes ☒     No ☐

If no, explain why.

If yes, set forth below in the required detail and separately for each foreign principal an account of such monies.[6]

| Date<br>Please see<br>attached | From Whom | Purpose | Amount |
|---|---|---|---|
| | | | |

                                                                        Total

(b) **RECEIPTS - FUNDRAISING CAMPAIGN**

During this 6 month reporting period, have you received, as part of a fundraising campaign[7], any money on behalf of any foreign principal named in Items 7, 8, or 9 of this statement?     Yes ☐     No ☒

If yes, have you filed an Exhibit D[8] to your registration?     Yes ☐     No ☐

If yes, indicate the date the Exhibit D was filed.     Date _____

(c) **RECEIPTS-THINGS OF VALUE**

During this 6 month reporting period, have you received any thing of value[9] other than money from any foreign principal named in Items 7, 8, or 9 of this statement, or from any other source, for or in the interests of any such foreign principal?

        Yes ☐     No ☒

If yes, furnish the following information:

| Foreign Principal | Date Received | Thing of Value | Purpose |
|---|---|---|---|
| | | | |

---

6, 7 A registrant is required to file an Exhibit D if he collects or receives contributions, loans, moneys, or other things of value for a foreign principal, as part of a fundraising campaign. (See Rule 201(e)).

8 An Exhibit D, for which no printed form is provided, sets forth an account of money collected or received as a result of a fundraising campaign and transmitted for a foreign principal.

9 Things of value include but are not limited to gifts, interest free loans, expense free travel, favored stock purchases, exclusive rights, favored treatment over competitors, "kickbacks," and the like.

(PAGE 6)

**15. (a) DISBURSEMENTS-MONIES**
During this 6 month reporting period, have you
(1) disbursed or expended monies in connection with activity on behalf of any foreign principal named in Items 7, 8, or 9 of this statement? Yes ☒ No ☐

(2) transmitted monies to any such foreign principal? Yes ☐ No ☒

If no, explain in full detail why there were no disbursements made on behalf of any foreign principal.

If yes, set forth below in the required detail and separately for each foreign principal an account of such monies, including monies transmitted, if any, to each foreign principal.

| Date | To Whom | Purpose | Amount |
|------|---------|---------|--------|
| Please see attached | | | |

Total

(PAGE 7)

(b) **DISBURSEMENTS-THINGS OF VALUE**

During this 6 month reporting period, have you disposed of anything of value[10] other than money in furtherance of or in connection with activities on behalf of any foreign principal named in Items 7, 8, or 9 of this statement?

Yes ☐        No ☒

If yes, furnish the following information:

| Date | Recipient | Foreign Principal | Thing of Value | Purpose |
|------|-----------|-------------------|----------------|---------|
|      |           |                   |                |         |

(c) **DISBURSEMENTS-POLITICAL CONTRIBUTIONS**

During this 6 month reporting period, have you from your own funds and on your own behalf either directly or through any other person, made any contributions of money or other things of value[11] in connection with an election to any political office, or in connection with any primary election, convention, or caucus held to select candidates for political office?

Yes ☒        No ☐

If yes, furnish the following information:

| Date | Amount or Thing of Value | Political Organization or Candidate | Location of Event |
|------|--------------------------|-------------------------------------|-------------------|
| 3/22/13 | 1000.00 | Dana Rohrabacher | |

10, 11  Things of value include but are not limited to gifts, interest free loans, expense free travel, favored stock purchases, exclusive rights, favored treatment over competitors, "kickbacks," and the like.

## V – INFORMATIONAL MATERIALS

16. (a)  During this 6 month reporting period, did you prepare, disseminate or cause to be disseminated any informational materials?[12]

      Yes ☐    No ☒

If Yes, go to Item 17.

  (b)  If you answered No to Item 16(a), do you disseminate any material in connection with your registration?

      Yes ☐    No ☒

If Yes, please forward the materials disseminated during the six month period to the Registration Unit for review.

17. Identify each such foreign principal.

18. During this 6 month reporting period, has any foreign principal established a budget or allocated a specified sum of money to finance your activities in preparing or disseminating informational materials?    Yes ☐    No ☒

If yes, identify each such foreign principal, specify amount, and indicate for what period of time.

19. During this 6 month reporting period, did your activities in preparing, disseminating or causing the dissemination of informational materials include the use of any of the following:

☐ Radio or TV broadcasts    ☐ Magazine or newspaper    ☐ Motion picture films    ☐ Letters or telegrams
☐ Advertising campaigns    ☐ Press releases    ☐ Pamphlets or other publications  ☐ Lectures or speeches
☐ Other *(specify)* _____

**Electronic Communications**

☐ Email
☐ Website URL(s): _____
☐ Social media websites URL(s): _____
☐ Other *(specify)* _____

20. During this 6 month reporting period, did you disseminate or cause to be disseminated informational materials among any of the following groups:

☐ Public officials    ☐ Newspapers    ☐ Libraries
☐ Legislators    ☐ Editors    ☐ Educational institutions
☐ Government agencies    ☐ Civic groups or associations    ☐ Nationality groups
☐ Other *(specify)* _____

21. What language was used in the informational materials:

☐ English    ☐ Other *(specify)* _____

22. Did you file with the Registration Unit, U.S. Department of Justice a copy of each item of such informational materials disseminated or caused to be disseminated during this 6 month reporting period?    Yes ☐    No ☐

23. Did you label each item of such informational materials with the statement required by Section 4(b) of the Act?

    Yes ☐    No ☐

12 The term informational materials includes any oral, visual, graphic, written, or pictorial information or matter of any kind, including that published by means of advertising, books, periodicals, newspapers, lectures, broadcasts, motion pictures, or any means or instrumentality of interstate or foreign commerce or otherwise. Informational materials disseminated by an agent of a foreign principal as part of an activity in itself exempt from registration, or an activity which by itself would not require registration, need not be filed pursuant to Section 4(b) of the Act.

(PAGE 9)

## VI - EXECUTION

In accordance with 28 U.S.C. § 1746, the undersigned swear(s) or affirm(s) under penalty of perjury that he/she has (they have) read the information set forth in this registration statement and the attached exhibits and that he/she is (they are) familiar with the contents thereof and that such contents are in their entirety true and accurate to the best of his/her (their) knowledge and belief, except that the undersigned make(s) no representation as to truth or accuracy of the information contained in the attached Short Form Registration Statement(s), if any, insofar as such information is not within his/her (their) personal knowledge.

(Date of signature)                              (Print or type name under each signature or provide electronic signature[13])

6-07-17                                          Paul J Manafort

_____                _____

_____                _____

_____                _____

2017 JUN 27  PM 4: 52

---

13  This statement shall be signed by the individual agent, if the registrant is an individual, or by a majority of those partners, officers, directors or persons performing similar functions, if the registrant is an organization, except that the organization can, by power of attorney, authorize one or more individuals to execute this statement on its behalf.

Question 14(a) Receipts

***Please Note:*** The information contained in this filing, including but not limited to descriptions of activities giving rise to the Registrant's present registration and/or contemporaneous financial receipts or disbursements, reflect only Registrant's best recollection of relevant events and such records currently available, to the knowledge and belief of the Registrant, for review by the Registrant and his legal counsel. The Registrant may amend and/or supplement such disclosures should additional, relevant information become available.

| Date | Foreign Principal | Purpose | Amount |
|---------|-------------------|-------------------|---------------|
| 1/2013 | Party of Regions | Services Rendered | $400,000.00 |
| 2/2013 | Party of Regions | Services Rendered | $200,000.00 |
| 3/2013 | Party of Regions | Services Rendered | $500,000.00 |
| 4/2013 | Party of Regions | Services Rendered | $490,000.00 |
| 5/2013 | Party of Regions | Services Rendered | $355,000.00 |
| 6/2013 | Party of Regions | Services Rendered | $375,000.00 |
| 7/2013 | Party of Regions | Services Rendered | $315,000.00 |
| 8/2013 | Party of Regions | Services Rendered | $525,000.00 |
| 9/2013 | Party of Regions | Services Rendered | $415,000.00 |
| 10/2013 | Party of Regions | Services Rendered | $500,000.00 |
| 11/2013 | Party of Regions | Services Rendered | $300,000.00 |
| 12/2013 | Party of Regions | Services Rendered | $165,039.70 |

2017 JUN 27  PM 4: 52

Question 15(a) Disbursements

***Please Note:*** The information contained in this filing, including but not limited to descriptions of activities giving rise to the Registrant's present registration and/or contemporaneous financial receipts or disbursements, reflect only Registrant's best recollection of relevant events and such records currently available, to the knowledge and belief of the Registrant, for review by the Registrant and his legal counsel. The Registrant may amend and/or supplement such disclosures should additional, relevant information become available.

| Date | Contractor | Purpose | Amount |
|---|---|---|---|
| **January – June 2013** | | | |
| 1/4/2013 | Fabrizio Ward Associates LLC | Polling and surveys | $35,000.00 |
| 3/5/2013 | Steven J. Brown | Political and media outreach | $5,000.00 |
| 6/17/2013 | Konstantin Kilimnik | Professional services and administrative overhead for Kiev operations | $73,000.00 |
| **July – December 2013** | | | |
| 7/15/2013 | Konstantin Kilimnik | Professional services and administrative overhead for Kiev operations | $71,450.00 |
| 8/8/2013 | Fabrizio Ward Associates LLC | Polling and surveys | $30,000.00 |
| 8/8/2013 | Konstantin Kilimnik | Professional services and administrative overhead for Kiev operations | $73,550.00 |
| 8/30/2013 | Konstantin Kilimnik | Professional services and administrative overhead for Kiev operations | $65,000.00 |
| 8/30/2013 | Konstantin Kilimnik | Professional services | $15,000.00 |
| 10/3/2013 | Konstantin Kilimnik | Professional services | $15,000.00 |
| 10/3/2013 | Konstantin Kilimnik | Professional services and administrative overhead for Kiev operations | $53,500.00 |
| 10/30/2013 | Konstantin Kilimnik | Professional services | $15,000.00 |
| 10/30/2013 | Konstantin Kilimnik | Professional services and administrative overhead for Kiev operations | $38,000.00 |
| 12/13/2013 | Konstantin Kilimnik | Professional services and administrative overhead for Kiev operations | $21,000.00 |
| 12/13/2013 | Konstantin Kilimnik | Professional services | $15,000.00 |

2017 JUN 27  PM 4: 52

NSD/CES/REGISTRATION
UNIT

**Other Expenses**

| Purpose | Amount |
|---------|--------|
| January – June 2013 | |
| Travel | $357,628.72 |
| Meals/Living Expenses | $83,794.14 |
| July – December 2013 | |
| Travel | $309,193.12 |
| Meals/Living Expenses | $119,578.07 |

NSD/CES/REGISTRATION UNIT

2017 JUN 27  PM 4:52

OMB No. 1124-0002; Expires May 31, 2020

U.S. Department of Justice

Washington, DC 20530

**Supplemental Statement**

**Pursuant to the Foreign Agents Registration Act of 1938, as amended**

For Six Month Period Ending  12/31/13

(Insert date)

## I - REGISTRANT

1. (a) Name of Registrant                    (b) Registration No.  6440

   DMP International, LLC

   (c) Business Address(es) of Registrant
   10 St. James Drive
   Palm Beach Gardens, FL 33418

2. Has there been a change in the information previously furnished in connection with the following?

   (a) If an individual:

   |  |  |  |
   |---|---|---|
   | (1) Residence address(es) | Yes ☐ | No ☐ |
   | (2) Citizenship | Yes ☐ | No ☐ |
   | (3) Occupation | Yes ☐ | No ☐ |

   (b) If an organization:

   |  |  |  |
   |---|---|---|
   | (1) Name | Yes ☐ | No ☒ |
   | (2) Ownership or control | Yes ☐ | No ☒ |
   | (3) Branch offices | Yes ☐ | No ☒ |

   (c) Explain fully all changes, if any, indicated in Items (a) and (b) above.

2017 JUN 27  PM 4: 52

NSD/CES/...

### IF THE REGISTRANT IS AN INDIVIDUAL, OMIT RESPONSE TO ITEMS 3, 4, AND 5(a).

3. If you have previously filed Exhibit C[1], state whether any changes therein have occurred during this 6 month reporting period.

   Yes ☐          No ☒

   If yes, have you filed an amendment to the Exhibit C?    Yes ☐          No ☐

   If no, please attach the required amendment.

---

1 The Exhibit C, for which no printed form is provided, consists of a true copy of the charter, articles of incorporation, association, and by laws of a registrant that is an organization. (A waiver of the requirement to file an Exhibit C may be obtained for good cause upon written application to the Assistant Attorney General, National Security Division, U.S. Department of Justice, Washington, DC 20530.)

(PAGE 2)

4. (a) Have any persons ceased acting as partners, officers, directors or similar officials of the registrant during this 6 month reporting period?

   Yes ☐          No ☒

   If yes, furnish the following information:

   Name                                              Position                          Date Connection Ended

   (b) Have any persons become partners, officers, directors or similar officials during this 6 month reporting period?

   Yes ☐          No ☒

   If yes, furnish the following information:

   Name                      Residence Address          Citizenship            Position          Date Assumed

5. (a) Has any person named in Item 4(b) rendered services directly in furtherance of the interests of any foreign principal?

   Yes ☐          No ☒

   If yes, identify each such person and describe the service rendered.

   (b) During this six month reporting period, has the registrant hired as employees or in any other capacity, any persons who rendered or will render services to the registrant directly in furtherance of the interests of any foreign principal(s) in other than a clerical or secretarial, or in a related or similar capacity?     Yes ☐          No ☒

   Name                      Residence Address          Citizenship            Position          Date Assumed

   (c) Have any employees or individuals, who have filed a short form registration statement, terminated their employment or connection with the registrant during this 6 month reporting period?     Yes ☐          No ☒

   If yes, furnish the following information:

   Name                                              Position or Connection                    Date Terminated

   (d) Have any employees or individuals, who have filed a short form registration statement, terminated their connection with any foreign principal during this 6 month reporting period?     Yes ☐          No ☒

   If yes, furnish the following information:

   Name                      Position or Connection          Foreign Principal              Date Terminated

6. Have short form registration statements been filed by all of the persons named in Items 5(a) and 5(b) of the supplemental statement?

   Yes ☐          No ☐

   If no, list names of persons who have not filed the required statement.

(PAGE 3)

## II - FOREIGN PRINCIPAL

7. Has your connection with any foreign principal ended during this 6 month reporting period?   Yes ☐   No ☒
   If yes, furnish the following information:

   Foreign Principal                                                    Date of Termination

8. Have you acquired any new foreign principal(s)[2] during this 6 month reporting period?   Yes ☐   No ☒
   If yes, furnish th following information:

   Name and Address of Foreign Principal(s)                             Date Acquired

9. In addition to those named in Items 7 and 8, if any, list foreign principal(s)[2] whom you continued to represent during the 6 month reporting period.

   Ukrainian Party of Regions

10. (a) Have you filed exhibits for the newly acquired foreign principal(s), if any, listed in Item 8?
       Exhibit A[3]        Yes ☐        No ☐
       Exhibit B[4]        Yes ☐        No ☐

       If no, please attach the required exhibit.

    (b) Have there been any changes in the Exhibits A and B previously filed for any foreign principal whom you
        represented during this six month period?               Yes ☐        No ☒
        If yes, have you filed an amendment to these exhibits?   Yes ☐        No ☐

        If no, please attach the required amendment.

---

2 The term "foreign principal" includes, in addition to those defined in Section 1(b) of the Act, an individual organization any of whose activities are directly or indirectly
  supervised, directed, controlled, financed, or subsidized in whole or in major part by a foreign government, foreign political party, foreign organization or foreign individual.
  (See Rule 100(a) (9)). A registrant who represents more than one foreign principal is required to list in the statements he files under the Act only those principals for whom he
  is not entitled to claim exemption under Section 3 of the Act. (See Rule 208.)
3 The Exhibit A, which is filed on Form NSD-3, sets forth the information required to be disclosed concerning each foreign principal.
4 The Exhibit B, which is filed on Form NSD-4, sets forth the information concerning the agreement or understanding between the registrant and the
  foreign principal.

## III - ACTIVITIES

11. During this 6 month reporting period, have you engaged in any activities for or rendered any services to any foreign principal named in Items 7, 8, or 9 of this statement?          Yes ☒          No ☐

If yes, identify each foreign principal and describe in full detail your activities and services:

Focused on electing Party of Regions' candidates at the national and regional levels in the Ukraine by implementing pro-democratic campaign activities, engaging in party building activities, developing a party platform and political agenda, and implementing election planning, election integrity, and international election monitoring programs.  Communicated with the U.S. Embassy in Kiev regarding developing events in Ukraine.
Provided strategic counsel and advice to members of the Party of Regions regarding their interactions with U.S. government officials and other Western influential persons to advance the goal of greater political and economic integration between the Ukraine and the West.  Provided advice to the European Centre for a Modern Ukraine, which was also working for the same purpose.

12. During this 6 month reporting period, have you on behalf of any foreign principal engaged in political activity[5] as defined below?
    Yes ☐          No ☒

If yes, identify each such foreign principal and describe in full detail all such political activity, indicating, among other things, the relations, interests and policies sought to be influenced and the means employed to achieve this purpose.  If the registrant arranged, sponsored or delivered speeches, lectures or radio and TV broadcasts, give details as to dates, places of delivery, names of speakers and subject matter.

Please Note: The information contained in this filing, including but not limited to descriptions of activities giving rise to the Registrant's present registration and/or contemporaneous financial receipts or disbursements, reflect only Registrant's best recollection of relevant events and such records currently available, to the knowledge and belief of the Registrant, for review by the Registrant and his legal counsel.  The Registrant may amend and/or supplement such disclosures should additional, relevant information become available.

13. In addition to the above described activities, if any, have you engaged in activity on your own behalf which benefits your foreign principal(s)?          Yes ☐          No ☒

If yes, describe fully.

---

5 "Political activity," as defined in Section 1(o) of the Act, means any activity that the person engaging in believes will, or that the person intends to, in any way influence any agency or official of the Government of the United States or any section of the public within the United States with reference to formulating, adopting or changing the domestic or foreign policies of the United States or with reference to political or public interests, policies, or relations of a government of a foreign country or a foreign political party.

## IV - FINANCIAL INFORMATION

14. (a) **RECEIPTS-MONIES**

During this 6 month reporting period, have you received from any foreign principal named in Items 7, 8, or 9 of this statement, or from any other source, for or in the interests of any such foreign principal, any contributions, income or money either as compensation or otherwise?     Yes ☒     No ☐

If no, explain why.

If yes, set forth below in the required detail and separately for each foreign principal an account of such monies.[6]

| Date | From Whom | Purpose | Amount |
|------|-----------|---------|--------|
| Please see attached | | | |

|  |  |  | Total |

(b) **RECEIPTS - FUNDRAISING CAMPAIGN**

During this 6 month reporting period, have you received, as part of a fundraising campaign[7], any money on behalf of any foreign principal named in Items 7, 8, or 9 of this statement?     Yes ☐     No ☒

If yes, have you filed an Exhibit D[8] to your registration?     Yes ☐     No ☐

If yes, indicate the date the Exhibit D was filed.     Date _____

(c) **RECEIPTS-THINGS OF VALUE**

During this 6 month reporting period, have you received any thing of value[9] other than money from any foreign principal named in Items 7, 8, or 9 of this statement, or from any other source, for or in the interests of any such foreign principal?
Yes ☐     No ☒

If yes, furnish the following information:

| Foreign Principal | Date Received | Thing of Value | Purpose |
|-------------------|---------------|----------------|---------|

---

6, 7  A registrant is required to file an Exhibit D if he collects or receives contributions, loans, moneys, or other things of value for a foreign principal, as part of a fundraising campaign. (See Rule 201(e)).

8  An Exhibit D, for which no printed form is provided, sets forth an account of money collected or received as a result of a fundraising campaign and transmitted for a foreign principal.

9  Things of value include but are not limited to gifts, interest free loans, expense free travel, favored stock purchases, exclusive rights, favored treatment over competitors, "kickbacks," and the like.

(PAGE 6)

**15. (a)   DISBURSEMENTS-MONIES**

During this 6 month reporting period, have you

(1)  disbursed or expended monies in connection with activity on behalf of any foreign principal named in Items 7, 8, or 9 of this statement?   Yes ☒        No ☐

(2)  transmitted monies to any such foreign principal?       Yes ☐        No ☒

If no, explain in full detail why there were no disbursements made on behalf of any foreign principal.

If yes, set forth below in the required detail and separately for each foreign principal an account of such monies, including monies transmitted, if any, to each foreign principal.

| Date | To Whom | Purpose | Amount |
|---|---|---|---|
| Please see attached | | | |

| | Total |
|---|---|
| | |

(PAGE 7)

(b) **DISBURSEMENTS-THINGS OF VALUE**

During this 6 month reporting period, have you disposed of anything of value[10] other than money in furtherance of or in connection with activities on behalf of any foreign principal named in Items 7, 8, or 9 of this statement?

Yes ☐          No ☒

If yes, furnish the following information:

| Date | Recipient | Foreign Principal | Thing of Value | Purpose |
|------|-----------|-------------------|----------------|---------|

(c) **DISBURSEMENTS-POLITICAL CONTRIBUTIONS**

During this 6 month reporting period, have you from your own funds and on your own behalf either directly or through any other person, made any contributions of money or other things of value[11] in connection with an election to any political office, or in connection with any primary election, convention, or caucus held to select candidates for political office?

Yes ☐          No ☒

If yes, furnish the following information:

| Date | Amount or Thing of Value | Political Organization or Candidate | Location of Event |
|------|--------------------------|-------------------------------------|-------------------|

---

10, 11  Things of value include but are not limited to gifts, interest free loans, expense free travel, favored stock purchases, exclusive rights, favored treatment over competitors, "kickbacks," and the like.

(PAGE 8)

## V – INFORMATIONAL MATERIALS

16. (a)   During this 6 month reporting period, did you prepare, disseminate or cause to be disseminated any informational materials?[12]
Yes ☐          No ☒

If Yes, go to Item 17.

(b)  If you answered No to Item 16(a), do you disseminate any material in connection with your registration?
Yes ☐          No ☒

If Yes, please forward the materials disseminated during the six month period to the Registration Unit for review.

17.  Identify each such foreign principal.

18.  During this 6 month reporting period, has any foreign principal established a budget or allocated a specified sum of money to finance your activities in preparing or disseminating informational materials?          Yes ☐          No ☐

If yes, identify each such foreign principal, specify amount, and indicate for what period of time.

19.  During this 6 month reporting period, did your activities in preparing, disseminating or causing the dissemination of informational materials include the use of any of the following:

☐ Radio or TV broadcasts          ☐ Magazine or newspaper          ☐ Motion picture films          ☐ Letters or telegrams
☐ Advertising campaigns          ☐ Press releases          ☐ Pamphlets or other publications  ☐ Lectures or speeches
☐ Other *(specify)* _____

**Electronic Communications**

☐ Email
☐ Website URL(s): _____
☐ Social media websites URL(s): _____
☐ Other *(specify)* _____

20.  During this 6 month reporting period, did you disseminate or cause to be disseminated informational materials among any of the following groups:

☐ Public officials          ☐ Newspapers          ☐ Libraries
☐ Legislators          ☐ Editors          ☐ Educational institutions
☐ Government agencies          ☐ Civic groups or associations          ☐ Nationality groups
☐ Other *(specify)* _____

21.  What language was used in the informational materials:

☐ English          ☐ Other *(specify)* _____

22.  Did you file with the Registration Unit, U.S. Department of Justice a copy of each item of such informational materials disseminated or caused to be disseminated during this 6 month reporting period?          Yes ☐          No ☐

23.  Did you label each item of such informational materials with the statement required by Section 4(b) of the Act?
Yes ☐          No ☐

---

12 The term informational materials includes any oral, visual, graphic, written, or pictorial information or matter of any kind, including that published by means of advertising, books, periodicals, newspapers, lectures, broadcasts, motion pictures, or any means or instrumentality of interstate or foreign commerce or otherwise. Informational materials disseminated by an agent of a foreign principal as part of an activity in itself exempt from registration, or an activity which by itself would not require registration, need not be filed pursuant to Section 4(b) of the Act.

## VI - EXECUTION

In accordance with 28 U.S.C. § 1746, the undersigned swear(s) or affirm(s) under penalty of perjury that he/she has (they have) read the information set forth in this registration statement and the attached exhibits and that he/she is (they are) familiar with the contents thereof and that such contents are in their entirety true and accurate to the best of his/her (their) knowledge and belief, except that the undersigned make(s) no representation as to truth or accuracy of the information contained in the attached Short Form Registration Statement(s), if any, insofar as such information is not within his/her (their) personal knowledge.

(Date of signature)                                       (Print or type name under each signature or provide electronic signature[13])

6-27-17

Paul J Manafort

2017 JUN 27  PH 4: 52

---

13 This statement shall be signed by the individual agent, if the registrant is an individual, or by a majority of those partners, officers, directors or persons performing similar functions, if the registrant is an organization, except that the organization can, by power of attorney, authorize one or more individuals to execute this statement on its behalf.

Question 14(a) Receipts

*Please Note:* The information contained in this filing, including but not limited to descriptions of activities giving rise to the Registrant's present registration and/or contemporaneous financial receipts or disbursements, reflect only Registrant's best recollection of relevant events and such records currently available, to the knowledge and belief of the Registrant, for review by the Registrant and his legal counsel. The Registrant may amend and/or supplement such disclosures should additional, relevant information become available.

| Date | Foreign Principal | Purpose | Amount |
|------|-------------------|---------|--------|
| 1/2013 | Party of Regions | Services Rendered | $400,000.00 |
| 2/2013 | Party of Regions | Services Rendered | $200,000.00 |
| 3/2013 | Party of Regions | Services Rendered | $500,000.00 |
| 4/2013 | Party of Regions | Services Rendered | $490,000.00 |
| 5/2013 | Party of Regions | Services Rendered | $355,000.00 |
| 6/2013 | Party of Regions | Services Rendered | $375,000.00 |
| 7/2013 | Party of Regions | Services Rendered | $315,000.00 |
| 8/2013 | Party of Regions | Services Rendered | $525,000.00 |
| 9/2013 | Party of Regions | Services Rendered | $415,000.00 |
| 10/2013 | Party of Regions | Services Rendered | $500,000.00 |
| 11/2013 | Party of Regions | Services Rendered | $300,000.00 |
| 12/2013 | Party of Regions | Services Rendered | $165,039.70 |

2017 JUN 27 PM 4: 52

Question 15(a) Disbursements

*Please Note:* The information contained in this filing, including but not limited to descriptions of activities giving rise to the Registrant's present registration and/or contemporaneous financial receipts or disbursements, reflect only Registrant's best recollection of relevant events and such records currently available, to the knowledge and belief of the Registrant, for review by the Registrant and his legal counsel.  The Registrant may amend and/or supplement such disclosures should additional, relevant information become available.

| Date | Contractor | Purpose | Amount |
|---|---|---|---|
| **January – June 2013** | | | |
| 1/4/2013 | Fabrizio Ward Associates LLC | Polling and surveys | $35,000.00 |
| 3/5/2013 | Steven J. Brown | Political and media outreach | $5,000.00 |
| 6/17/2013 | Konstantin Kilimnik | Professional services and administrative overhead for Kiev operations | $73,000.00 |
| **July – December 2013** | | | |
| 7/15/2013 | Konstantin Kilimnik | Professional services and administrative overhead for Kiev operations | $71,450.00 |
| 8/8/2013 | Fabrizio Ward Associates LLC | Polling and surveys | $30,000.00 |
| 8/8/2013 | Konstantin Kilimnik | Professional services and administrative overhead for Kiev operations | $73,550.00 |
| 8/30/2013 | Konstantin Kilimnik | Professional services and administrative overhead for Kiev operations | $65,000.00 |
| 8/30/2013 | Konstantin Kilimnik | Professional services | $15,000.00 |
| 10/3/2013 | Konstantin Kilimnik | Professional services | $15,000.00 |
| 10/3/2013 | Konstantin Kilimnik | Professional services and administrative overhead for Kiev operations | $53,500.00 |
| 10/30/2013 | Konstantin Kilimnik | Professional services | $15,000.00 |
| 10/30/2013 | Konstantin Kilimnik | Professional services and administrative overhead for Kiev operations | $38,000.00 |
| 12/13/2013 | Konstantin Kilimnik | Professional services and administrative overhead for Kiev operations | $21,000.00 |
| 12/13/2013 | Konstantin Kilimnik | Professional services | $15,000.00 |

2017 JUN 27 PH 4: 52

NSD/CES/REGI.......  UN11
UNIT

## Other Expenses

| Purpose | Amount |
|---|---|
| January – June 2013 | |
| Travel | $357,628.72 |
| Meals/Living Expenses | $83,794.14 |
| July – December 2013 | |
| Travel | $309,193.12 |
| Meals/Living Expenses | $119,578.07 |

NSD/CES/REGISTRATION UNIT
2017 JUN 27  PM 4: 52

OMB No. 1124-0002; Expires May .    .020

**U.S. Department of Justice**

Washington, DC 20530

## Supplemental Statement

### Pursuant to the Foreign Agents Registration Act of 1938, as amended

For Six Month Period Ending 6/30/14

(Insert date)

## I - REGISTRANT

1.  (a) Name of Registrant                    (b) Registration No.  6440

    DMP International, LLC

    (c) Business Address(es) of Registrant
    10 St. James Drive
    Palm Beach Gardens, FL 33418

2.  Has there been a change in the information previously furnished in connection with the following?

    (a)  If an individual:

    |                              |         |        |
    |------------------------------|---------|--------|
    | (1) Residence address(es)    | Yes ☐   | No ☐   |
    | (2) Citizenship              | Yes ☐   | No ☐   |
    | (3) Occupation               | Yes ☐   | No ☐   |

    (b)  If an organization:

    |                              |         |        |
    |------------------------------|---------|--------|
    | (1) Name                     | Yes ☐   | No ☒   |
    | (2) Ownership or control     | Yes ☐   | No ☒   |
    | (3) Branch offices           | Yes ☐   | No ☒   |

    (c)  Explain fully all changes, if any, indicated in Items (a) and (b) above.

*2017 JUN 27  PM 4: 52*

*NSD/CES/...*
*UNIT*

---

### IF THE REGISTRANT IS AN INDIVIDUAL, OMIT RESPONSE TO ITEMS 3, 4, AND 5(a).

3.  If you have previously filed Exhibit C¹, state whether any changes therein have occurred during this 6 month reporting period.

    Yes ☐          No ☒

    If yes, have you filed an amendment to the Exhibit C?      Yes ☐          No ☐

    If no, please attach the required amendment.

---

1 The Exhibit C, for which no printed form is provided, consists of a true copy of the charter, articles of incorporation, association, and by laws of a registrant that is an organization. (A waiver of the requirement to file an Exhibit C may be obtained for good cause upon written application to the Assistant Attorney General, National Security Division, U.S. Department of Justice, Washington, DC 20530.)

(PAGE 2)

4. (a) Have any persons ceased acting as partners, officers, directors or similar officials of the registrant during this 6 month reporting period?

            Yes ☐         No ☒

    If yes, furnish the following information:

| Name | Position | Date Connection Ended |
|------|----------|----------------------|
|      |          |                      |

   (b) Have any persons become partners, officers, directors or similar officials during this 6 month reporting period?

            Yes ☐         No ☒

    If yes, furnish the following information:

| Name | Residence Address | Citizenship | Position | Date Assumed |
|------|-------------------|-------------|----------|--------------|
|      |                   |             |          |              |

5. (a) Has any person named in Item 4(b) rendered services directly in furtherance of the interests of any foreign principal?

            Yes ☐         No ☒

    If yes, identify each such person and describe the service rendered.

   (b) During this six month reporting period, has the registrant hired as employees or in any other capacity, any persons who rendered or will render services to the registrant directly in furtherance of the interests of any foreign principal(s) in other than a clerical or secretarial, or in a related or similar capacity?    Yes ☐      No ☒

| Name | Residence Address | Citizenship | Position | Date Assumed |
|------|-------------------|-------------|----------|--------------|
|      |                   |             |          |              |

   (c) Have any employees or individuals, who have filed a short form registration statement, terminated their employment or connection with the registrant during this 6 month reporting period?    Yes ☐      No ☒

    If yes, furnish the following information:

| Name | Position or Connection | Date Terminated |
|------|------------------------|-----------------|
|      |                        |                 |

   (d) Have any employees or individuals, who have filed a short form registration statement, terminated their connection with any foreign principal during this 6 month reporting period?    Yes ☐      No ☒

    If yes, furnish the following information:

| Name | Position or Connection | Foreign Principal | Date Terminated |
|------|------------------------|-------------------|-----------------|
|      |                        |                   |                 |

6. Have short form registration statements been filed by all of the persons named in Items 5(a) and 5(b) of the supplemental statement?

            Yes ☐         No ☐

    If no, list names of persons who have not filed the required statement.

—

## II – FOREIGN PRINCIPAL

7. Has your connection with any foreign principal ended during this 6 month reporting period?   Yes ☒   No ☐
   If yes, furnish the following information:

   Foreign Principal                                              Date of Termination
   Ukrainian Party of Regions                          February 2014

8. Have you acquired any new foreign principal(s)[2] during this 6 month reporting period?   Yes ☐   No ☒
   If yes, furnish th following information:

   Name and Address of Foreign Principal(s)                        Date Acquired

9. In addition to those named in Items 7 and 8, if any, list foreign principal(s)[2] whom you continued to represent during the 6 month reporting period.

   Ukrainian Party of Regions

10. (a) Have you filed exhibits for the newly acquired foreign principal(s), if any, listed in Item 8?
    Exhibit A[3]              Yes ☐      No ☐
    Exhibit B[4]              Yes ☐      No ☐

    If no, please attach the required exhibit.

    (b) Have there been any changes in the Exhibits A and B previously filed for any foreign principal whom you
    represented during this six month period?                      Yes ☐      No ☒
    If yes, have you filed an amendment to these exhibits?          Yes ☐      No ☐

    If no, please attach the required amendment.

---

2  The term "foreign principal" includes, in addition to those defined in Section 1(b) of the Act, an individual organization any of whose activities are directly or indirectly
   supervised, directed, controlled, financed, or subsidized in whole or in major part by a foreign government, foreign political party, foreign organization or foreign individual.
   (See Rule 100(a) (9)).  A registrant who represents more than one foreign principal is required to list in the statements he files under the Act only those principals for whom he
   is not entitled to claim exemption under Section 3 of the Act. (See Rule 208.)
3  The Exhibit A, which is filed on Form NSD-3, sets forth the information required to be disclosed concerning each foreign principal.
4  The Exhibit B, which is filed on Form NSD-4, sets forth the information concerning the agreement or understanding between the registrant and the
   foreign principal.

## III - ACTIVITIES

11. During this 6 month reporting period, have you engaged in any activities for or rendered any services to any foreign principal named in Items 7, 8, or 9 of this statement?          Yes ☒          No ☐

If yes, identify each foreign principal and describe in full detail your activities and services:

Focused on electing Party of Regions' candidates at the national and regional levels in the Ukraine by implementing pro-democratic campaign activities, engaging in party building activities, developing a party platform and political agenda, and implementing election planning, election integrity, and international election monitoring programs.  Communicated with the U.S. Embassy in Kiev regarding developing events in Ukraine.
Provided strategic counsel and advice to members of the Party of Regions regarding their interactions with U.S. government officials and other Western influential persons to advance the goal of greater political and economic integration between the Ukraine and the West.  Provided advice to the European Centre for a Modern Ukraine, which was also working for the same purpose.

12. During this 6 month reporting period, have you on behalf of any foreign principal engaged in political activity[5] as defined below?
     Yes ☐          No ☒

If yes, identify each such foreign principal and describe in full detail all such political activity, indicating, among other things, the relations, interests and policies sought to be influenced and the means employed to achieve this purpose.  If the registrant arranged, sponsored or delivered speeches, lectures or radio and TV broadcasts, give details as to dates, places of delivery, names of speakers and subject matter.

Please Note: The information contained in this filing, including but not limited to descriptions of activities giving rise to the Registrant's present registration and/or contemporaneous financial receipts or disbursements, reflect only Registrant's best recollection of relevant events and such records currently available, to the knowledge and belief of the Registrant, for review by the Registrant and his legal counsel.  The Registrant may amend and/or supplement such disclosures should additional, relevant information become available.

13. In addition to the above described activities, if any, have you engaged in activity on your own behalf which benefits your foreign principal(s)?          Yes ☐          No ☒

If yes, describe fully.

---

5  "Political activity," as defined in Section 1(o) of the Act, means any activity that the person engaging in believes will, or that the person intends to, in any way influence any agency or official of the Government of the United States or any section of the public within the United States with reference to formulating, adopting or changing the domestic or foreign policies of the United States or with reference to political or public interests, policies, or relations of a government of a foreign country or a foreign political party.

## IV - FINANCIAL INFORMATION

14. (a) **RECEIPTS-MONIES**

During this 6 month reporting period, have you received from any foreign principal named in Items 7, 8, or 9 of this statement, or from any other source, for or in the interests of any such foreign principal, any contributions, income or money either as compensation or otherwise?     Yes ☒          No ☐

If no, explain why.

If yes, set forth below in the required detail and separately for each foreign principal an account of such monies.[6]

| Date | From Whom | Purpose | Amount |
|------|-----------|---------|--------|
| Please see attached | | | |

|  |  |  | Total |
|--|--|--|-------|

(b) **RECEIPTS - FUNDRAISING CAMPAIGN**

During this 6 month reporting period, have you received, as part of a fundraising campaign[7], any money on behalf of any foreign principal named in Items 7, 8, or 9 of this statement?     Yes ☐          No ☒

If yes, have you filed an Exhibit D[8] to your registration?     Yes ☐          No ☐

If yes, indicate the date the Exhibit D was filed.     Date _____

(c) **RECEIPTS-THINGS OF VALUE**

During this 6 month reporting period, have you received any thing of value[9] other than money from any foreign principal named in Items 7, 8, or 9 of this statement, or from any other source, for or in the interests of any such foreign principal?
     Yes ☐          No ☒

If yes, furnish the following information:

| Foreign Principal | Date Received | Thing of Value | Purpose |
|-------------------|---------------|----------------|---------|
|  |  |  |  |

---

6, 7  A registrant is required to file an Exhibit D if he collects or receives contributions, loans, moneys, or other things of value for a foreign principal, as part of a fundraising campaign. (See Rule 201(e)).

8  An Exhibit D, for which no printed form is provided, sets forth an account of money collected or received as a result of a fundraising campaign and transmitted for a foreign principal.

9  Things of value include but are not limited to gifts, interest free loans, expense free travel, favored stock purchases, exclusive rights, favored treatment over competitors, "kickbacks," and the like.

(PAGE 6)

**15. (a)   DISBURSEMENTS-MONIES**

During this 6 month reporting period, have you

(1)   disbursed or expended monies in connection with activity on behalf of any foreign principal named in Items 7, 8, or 9 of this statement?   Yes ☒          No ☐

(2)   transmitted monies to any such foreign principal?          Yes ☐          No ☒

If no, explain in full detail why there were no disbursements made on behalf of any foreign principal.


If yes, set forth below in the required detail and separately for each foreign principal an account of such monies, including monies transmitted, if any, to each foreign principal.

| Date | To Whom | Purpose | Amount |
|------|---------|---------|--------|
| Please see attached | | | |

Total

(PAGE 7)

(b) **DISBURSEMENTS-THINGS OF VALUE**

During this 6 month reporting period, have you disposed of anything of value[10] other than money in furtherance of or in connection with activities on behalf of any foreign principal named in Items 7, 8, or 9 of this statement?

Yes ☐          No ☒

If yes, furnish the following information:

| Date | Recipient | Foreign Principal | Thing of Value | Purpose |
|------|-----------|-------------------|----------------|---------|

(c) **DISBURSEMENTS-POLITICAL CONTRIBUTIONS**

During this 6 month reporting period, have you from your own funds and on your own behalf either directly or through any other person, made any contributions of money or other things of value[11] in connection with an election to any political office, or in connection with any primary election, convention, or caucus held to select candidates for political office?

Yes ☐          No ☒

If yes, furnish the following information:

| Date | Amount or Thing of Value | Political Organization or Candidate | Location of Event |
|------|--------------------------|-------------------------------------|-------------------|

---

10, 11  Things of value include but are not limited to gifts, interest free loans, expense free travel, favored stock purchases, exclusive rights, favored treatment over competitors, "kickbacks," and the like.

(PAGE 8)

## V - INFORMATIONAL MATERIALS

16. (a)   During this 6 month reporting period, did you prepare, disseminate or cause to be disseminated any informational materials?[12]

Yes ☐     No ☒

If Yes, go to Item 17.

(b)  If you answered No to Item 16(a), do you disseminate any material in connection with your registration?

Yes ☐     No ☒

If Yes, please forward the materials disseminated during the six month period to the Registration Unit for review.

17.  Identify each such foreign principal.

18.  During this 6 month reporting period, has any foreign principal established a budget or allocated a specified sum of money to finance your activities in preparing or disseminating informational materials?     Yes ☐     No ☒

If yes, identify each such foreign principal, specify amount, and indicate for what period of time.

19.  During this 6 month reporting period, did your activities in preparing, disseminating or causing the dissemination of informational materials include the use of any of the following:

☐ Radio or TV broadcasts      ☐ Magazine or newspaper     ☐ Motion picture films      ☐ Letters or telegrams
☐ Advertising campaigns       ☐ Press releases            ☐ Pamphlets or other publications ☐ Lectures or speeches
☐ Other *(specify)* _____

**Electronic Communications**

☐ Email
☐ Website URL(s): _____
☐ Social media websites URL(s): _____
☐ Other *(specify)* _____

20.  During this 6 month reporting period, did you disseminate or cause to be disseminated informational materials among any of the following groups:

☐ Public officials           ☐ Newspapers                ☐ Libraries
☐ Legislators                ☐ Editors                   ☐ Educational institutions
☐ Government agencies        ☐ Civic groups or associations ☐ Nationality groups
☐ Other *(specify)* _____

21.  What language was used in the informational materials:

☐ English                    ☐ Other *(specify)* _____

22.  Did you file with the Registration Unit, U.S. Department of Justice a copy of each item of such informational materials disseminated or caused to be disseminated during this 6 month reporting period?     Yes ☐     No ☐

23.  Did you label each item of such informational materials with the statement required by Section 4(b) of the Act?

Yes ☐     No ☐

---

12  The term *informational materials* includes any oral, visual, graphic, written, or pictorial information or matter of any kind, including that published by means of advertising, books, periodicals, newspapers, lectures, broadcasts, motion pictures, or any means or instrumentality of interstate or foreign commerce or otherwise. Informational materials disseminated by an agent of a foreign principal as part of an activity in itself exempt from registration, or an activity which by itself would not require registration, need not be filed pursuant to Section 4(b) of the Act.

(PAGE 9)

## VI - EXECUTION

In accordance with 28 U.S.C. § 1746, the undersigned swear(s) or affirm(s) under penalty of perjury that he/she has (they have) read the information set forth in this registration statement and the attached exhibits and that he/she is (they are) familiar with the contents thereof and that such contents are in their entirety true and accurate to the best of his/her (their) knowledge and belief, except that the undersigned make(s) no representation as to truth or accuracy of the information contained in the attached Short Form Registration Statement(s), if any, insofar as such information is not within his/her (their) personal knowledge.

(Date of signature)                    (Print or type name under each signature or provide electronic signature[13])

6-27-17

2017 JUN 27 PM 4:52
NSD/CES/FARA UNIT

---

13 This statement shall be signed by the individual agent, if the registrant is an individual, or by a majority of those partners, officers, directors or persons performing similar functions, if the registrant is an organization, except that the organization can, by power of attorney, authorize one or more individuals to execute this statement on its behalf.

Question 14(a) Receipts

*Please Note:* The information contained in this filing, including but not limited to descriptions of activities giving rise to the Registrant's present registration and/or contemporaneous financial receipts or disbursements, reflect only Registrant's best recollection of relevant events and such records currently available, to the knowledge and belief of the Registrant, for review by the Registrant and his legal counsel. The Registrant may amend and/or supplement such disclosures should additional, relevant information become available.

| Date | Foreign Principal | Purpose | Amount |
|------|-------------------|---------|--------|
| 1/2014 | Party of Regions | Services Rendered | $500,000.00 |

2017 JUN 27  PM 4: 52

Question 15(a) Disbursements

*Please Note:* The information contained in this filing, including but not limited to descriptions of activities giving rise to the Registrant's present registration and/or contemporaneous financial receipts or disbursements, reflect only Registrant's best recollection of relevant events and such records currently available, to the knowledge and belief of the Registrant, for review by the Registrant and his legal counsel. The Registrant may amend and/or supplement such disclosures should additional, relevant information become available.

| Date | Contractor | Purpose | Amount |
|------|-----------|---------|--------|
| January – February 2014 | | | |
| 1/23/2014 | Konstantin Kilimnik | Professional services | $15,000.00 |
| 1/23/2014 | Konstantin Kilimnik | Professional services and administrative overhead for Kiev operations | $39,500.00 |
| 1/28/2014 | Konstantin Kilimnik | Professional services and administrative overhead for Kiev operations | $21,000.00 |

## Other Expenses

| Purpose | Amount |
|---------|--------|
| January – February 2014 | |
| Travel | $117,818.79 |
| Meals/Living Expenses | $36,763.06 |

2017 JUN 27  PM 4: 52

NSD/CES/
UNIT

# EXHIBIT 941

U.S. Department of Justice
Washington, D.C. 20530

Registration Statement

OMB No. 1105-0001
Approval Expires Oct. 31, 1983

*Pursuant to Section 2 of the Foreign Agents Registration Act of 1938, as Amended*

Case 1:17-cr-00201-ABJ   Document 528-2   Filed 02/26/19   Page 408 of 575

## I—REGISTRANT

1. Name of the registrant.

   Paul J. Manafort   Attorney at Law

   *Reg No 3594*

2. Business address.

   324 North Fairfax Street, Alexandria, Virginia  22314

3. If the registrant is an individual, furnish the following information:   Not Applicable

   *(a)* Residence address.

   *(b)* Date and place of birth.

   *(c)* Present citizenship.

   *(d)* If present citizenship not acquired by birth, state when, where and how acquired.

   *(e)* Occupation.

4. If the registrant is not an individual, furnish the following information:

   *(a)* Type of organization:   Committee ☐   Association ☐   Partnership ☐

   Corporation ☐   Other (specify) __Law Firm__

   *(b)* Date and place of organization.
   Practicing Member of Bar since October, 1977
   *(c)* Address of principal office.
   324 North Fairfax Street, Alexandria, Virginia  22314
   *(d)* Name of person in charge.
   Paul J. Manafort, Jr.
   *(e)* Locations of branch or local offices in United States.
   Not Applicable
   *(f)* If a membership organization, give number of members.
   Not Applicable



(PAGE 2)

(g) List all partners, officers, directors or persons performing the functions of an officer or director of the registrant.

| Name | Residence Address | Position | Citizenship |
|------|-------------------|----------|-------------|
| Paul J. Manafort, Jr. | 9357 Mount Vernon Circle<br>Alexandria, Virginia  22309 | Partner | U.S. |

(h) Which of the above named persons renders services directly in furtherance of the interests of any of the foreign principals?

Paul J. Manafort, Jr.

(i) Describe the nature of the registrant's regular business or activity.

General Practice of Law

(j) Give a complete statement of the ownership and control of the registrant.

Partner

5. List all employees who render services to the registrant directly in furtherance of the interests of any of the foreign principals in other than a clerical, secretarial, or in a related or similar capacity.

| Name | Residence Address | Nature of Services |
|------|-------------------|--------------------|
| Wayne L. Berman | 9348 Mount Vernon Circle<br>Alexandria, Virginia  22309 | Consultant |

## II—FOREIGN PRINCIPAL

6. List every foreign principal[1] for whom the registrant is acting or has agreed to act.

*Name of Foreign Principal*

The Government of Saudi Arabia

*Principal Address*

Embassy of Saudi Arabia
601 New Hampshire Avenue, N.W.
Washington, D.C.  20036

---

## III—ACTIVITIES

7. In addition to the activities described in any Exhibit B to this statement, will you engage or are you now engaging in activity on your own behalf which benefits any or all of your foreign principals?     Yes ☐     No ☒

   If yes, describe fully.

---

## IV—FINANCIAL INFORMATION

8. *(a)* RECEIPTS—MONIES

   During the period beginning 60 days prior to the date of your obligation to register to the time of filing this statement, did you receive from any foreign principal named in Item 6 any contribution, income or money either as compensation or for disbursement or otherwise?     Yes ☒     No ☐

   If yes, set forth below in the required detail and separately for each such foreign principal an account of such monies.[2]

| Name of Foreign Principal | Date Received | Purpose | Amount |
|---|---|---|---|
| The Government of Saudi Arabia | 5/23/84 | Fee | $200,000.00 |
| | | | $200,000.00 |
| | | Total | |

---

[1]The term "foreign principal" includes a foreign government, foreign political party, foreign organization, foreign individual and, for the purpose of registration, an organization or an individual any of whose activities are directly or indirectly supervised, directed, controlled, financed or subsidized in whole or in major part by a foreign government, foreign political party, foreign organization or foreign individual.
[2]A registrant is required to file an Exhibit D if he collects or receives contributions, loans, money, or other things of value for a foreign principal, as part of a fund raising campaign. There is no printed form for this exhibit. See Rule 201(e).

*(b)* **RECEIPTS—THINGS OF VALUE**

During the period beginning 60 days prior to the date of your obligation to register to the time of filing this statement, did you receive from any foreign principal named in Item 6 any thing of value[3] other than money, either as compensation, or for disbursement, or otherwise?   Yes ☐   No ☒

If yes, furnish the following information:

| Name of Foreign Principal | Date Received | Description of thing of value | Purpose for which received |
|---|---|---|---|
| | | | |

---

9. *(a)* **DISBURSEMENTS—MONIES**

During the period beginning 60 days prior to the date of your obligation to register to the time of filing this statement, did you spend or disburse any money in furtherance of or in connection with your activities on behalf of any foreign principal named in Item 6?   Yes ☐   No ☒

If yes, set forth below in the required detail and separately for each such foreign principal an account of such monies, including monies transmitted, if any, to each foreign principal.

| Date | To Whom | Purpose | Amount |
|---|---|---|---|
| | | | |

---

*(b)* **DISBURSEMENTS—THINGS OF VALUE**

During the period beginning 60 days prior to the date of your obligation to register to the time of filing this statement, did you dispose of any thing of value[3] other than money in furtherance of or in connection with your activities on behalf of any foreign principal named in Item 6?   Yes ☐   No ☒

If yes, furnish the following information:

| Date | Name of person to whom given | On behalf of what foreign principal | Description of thing of value | Purpose in giving |
|---|---|---|---|---|
| | | | | |

---

*(c)* **DISBURSEMENTS—POLITICAL CONTRIBUTIONS**

During the period beginning 60 days prior to the date of your obligation to register to the time of filing this statement, did you make any contribution of money or other thing of value from your own funds and on your own behalf in connection with an election to any political office or in connection with any primary election, convention, or caucus held to select candidates for political office?   Yes ☒   No ☐

If yes, furnish the following information:

| Date | Amount or thing of value | Party or Candidate | Identify location of election, convention, etc. if any |
|---|---|---|---|
| 3/84 | $1,000.00 | John Warner | Virginia |
| 5/84 | $ 750.00 | National Black Republicans | Washington, D.C. |
| 9/83 | 250.00 • | Coreyell for County Supervisor | Fairfax, VA |
| 10/83 | 500.00 | Kozlowski for Mayor | New Britain, CT |
| 7/83 | 1,000.00 | Doug Schoen for Congress | New York City, NY |
| 3/84 | 100.00 | Dave Smick for Congress | Baltimore, MD |

[3] Things of value include but are not limited to gifts, interest free loans, expense free travel, favored stock purchases, exclusive rights, favored treatment over competitors, "kickbacks," and the like.

## V—POLITICAL PROPAGANDA

(Section 1(j) of the Act defines "political propaganda" as including any oral, visual, graphic, written, pictorial, or other communication or expression by any person (1) which is reasonably adapted to, or which the person disseminating the same believes will, or which he intends to, prevail upon, indoctrinate, convert, induce, or in any other way influence a recipient or any section of the public within the United States with reference to the political or public interests, policies, or relations of a government of a foreign country or a foreign political party or with reference to the foreign policies of the United States or promote in the United States racial, religious, or social dissensions, or (2) which advocates, advises, instigates, or promotes any racial, social, political, or religious disorder, civil riot, or other conflict involving the use of force or violence in any other American republic or the overthrow of any government or political subdivision of any other American republic by any means involving the use of force or violence.)

10. Will the activities of the registrant on behalf of any foreign principal include the preparation or dissemination of political propaganda as defined above?      Yes ☒      No ☐

    IF YES, RESPOND TO THE REMAINING ITEMS IN THIS SECTION V.

11. Identify each such foreign principal.

    The Government of Saudi Arabia

12. Has a budget been established or a specified sum of money allocated to finance your activities in preparing or disseminating political propaganda?      Yes ☐      No ☒

    If yes, identify each such foreign principal, specify amount and for what period of time.

13. Will any public relations firms or publicity agents participate in the preparation or dissemination of such political propaganda material?    Yes ☐   No ☒

    If yes, furnish the names and addresses of such persons or firms.

14. Will your activities in preparing or disseminating political propaganda include the use of any of the following:

    ☐ Radio or TV broadcasts            ☐ Motion picture films
    ☐ Advertising campaigns             ☐ Pamphlets or other publications
    ☐ Magazine or Newspaper articles    ☐ Letters or telegrams
    ☐ Press releases                    ☐ Lectures or speeches
    ☒ Other (specify) Personal discussions with Members of Legislative and Executive Branches

15. Will the political propaganda be disseminated among any of the following groups:

    ☐ Public Officials              ☐ Civic groups or associations
    ☐ Legislators                   ☐ Libraries
    ☐ Government agencies           ☐ Educational institutions
    ☐ Newspapers                    ☐ Nationality groups
    ☐ Editors                       ☒ Other (specify) ___ Congressional Staff

16. Indicate language to be used in political propaganda:

    ☒ English                       ☐ Other (specify) _____

## VI—EXHIBITS AND ATTACHMENTS

17. *(a)* The following described exhibits shall be filed in duplicate with an initial registration statement:.

*Exhibit A*—This exhibit, which is filed on Form CRM-157, sets forth the information required to be disclosed concerning each foreign principal named in Item 6.

*Exhibit B*—This exhibit, which is filed on Form CRM-155, sets forth the information concerning the agreement or understanding between the registrant and the foreign principal.

*(b)* An Exhibit C shall be filed when applicable. This exhibit for which no printed form is provided consists of a true copy of the charter, articles of incorporation, association, constitution, and bylaws of a registrant that is an organization. A waiver of the requirement to file an Exhibit C may be obtained for good cause shown upon written application to the Assistant Attorney General, Internal Security Division, U.S. Department of Justice, Washington, D.C. 20530. See Rule 201(c) and (d).

*(c)* An Exhibit D shall be filed when applicable. This exhibit for which no printed form is provided sets forth an account of money collected or received as a result of a fund raising campaign and transmitted for a foreign principal. See Rule 201(e).

*(d)* A Short Form Registration Statement shall be filed for each person named in Items 4(h) and 5.

The undersigned swear(s) or affirm(s) that he has (they have) read the information set forth in this registration statement and the attached exhibits and that he is (they are) familiar with the contents thereof and that such contents are in their entirety true and accurate to the best of his (their) knowledge and belief, except that the undersigned make(s) no representation as to the truth or accuracy of the information contained in attached Short Form Registration Statement, if any, insofar as such information is not within his (their) personal knowledge.

*(Type or print name under each signature)*

Paul J. Manafort, Jr.

(Both copies of this statement shall be signed and sworn to before a notary public or other person authorized to administer oaths by the agent, if the registrant is an individual, or by a majority of those partners, officers, directors or persons performing similiar functions who are in the United States, if the registrant is an organization.)

Subscribed and sworn to before me at _____ Alexandria, Virginia _____

__on__ this ____ /st. ____ day of ____ June _____, 19 __84__

_A. S. Larson_
(Signature of notary or other officer)

My commission expires ____ Feb. 23 ____, 19 __86__

# EXHIBIT 945

U.S. Department of Justice
Washington, DC 20530

Supplemental Statement
Pursuant to Section 2 of the Foreign Agents Registration Act
of 1938, as amended.

OMB No. 1105-0002
Approval Expires Oct. 31, 1986

For Six Month Period Ending _____ JUN 4 1985 _____
(Insert date)

Name of Registrant
Paul J. Manafort, Jr.

Registration No.
3594

Business Address of Registrant
324 North Fairfax Street
Alexandria, VA 22314

**I—REGISTRANT**

1. Has there been a change in the information previously furnished in connection with the following:

(a) If an individual:

|  |  |  |
|---|---|---|
| (1) Residence address | Yes ☐ | No ☐ |
| (2) Citizenship | Yes ☐ | No ☐ |
| (3) Occupation | Yes ☐ | No ☐ |

(b) If an organization:

|  |  |  |
|---|---|---|
| (1) Name | Yes ☐ | No ☒ |
| (2) Ownership or control | Yes ☐ | No ☒ |
| (3) Branch offices | Yes ☐ | No ☒ |

2. Explain fully all changes, if any, indicated in item 1.

   N/A

**IF THE REGISTRANT IS AN INDIVIDUAL, OMIT RESPONSE TO ITEMS 3, 4, and 5.**

3. Have any persons ceased acting as partners, officers, directors or similar officials of the registrant during this 6 month reporting period?   Yes ☒   No ☐

If yes, furnish the following information:

| *Name* | *Position* | *Date Connection Ended* |
|---|---|---|
| Paul J. Manafort, Jr. | Partner | June 4, 1985 |

GOVERNMENT
EXHIBIT
U.S. v. MANAFORT, 1:17-cr-201 (A.B.J.)
945

Formerly OBD-64

FORM CRM-154
FEB. 84

DOJSCO-402206569

4. Have any persons become partners, officers, directors or similar officials during this 6 month reporting period?
Yes ☐          No ☒

If yes, furnish the following information:

| Name | Residence Address | Citizenship | Position | Date Assumed |
|---|---|---|---|---|
| | | | | |

5. Has any person named in Item 4 rendered services directly in furtherance of the interests of any foreign principal?
Yes ☐          No ☐

If yes, identify each such person and describe his services.

         N/A

6. Have any employees or individuals other than officials, who have filed a short form registration statement, terminated their employment or connection with the registrant during this 6 month reporting period?          Yes ☐          No ☒

If yes, furnish the following information:

| Name | Position or connection | Date terminated |
|---|---|---|
| | | |

7. During this 6 month reporting period, have any persons been hired as employees or in any other capacity by the registrant who rendered services to the registrant directly in furtherance of the interests of any foreign principal in other than a clerical or secretarial, or in a related or similar capacity?          Yes ☐          No ☒

If yes, furnish the following information:

| Name | Residence Address | Position or connection | Date connection began |
|---|---|---|---|
| | | | |

DOJSCO-402206570

8. Has your connection with any foreign ~~icpal~~ ended during this 6 month ~~reportin~~ ~~riod?~~        Yes ☐        No ☒

If yes, furnish the following information:

*Name of foreign principal*                                                                                      *Date of Termination*

---

9. Have you acquired any new foreign principal[1] during this 6 month reporting period?        Yes ☐        No ☒

If yes, furnish following information:

*Name and address of foreign principal*                                                                      *Date acquired*

---

10. In addition to those named in Items 8 and 9, if any, list the foreign principals[1] whom you continued to represent during the 6 month reporting period.

   The Government of Saudi Arabia

---

### III—ACTIVITIES

11. During this 6 month reporting period, have you engaged in any activities for or rendered any services to any foreign principal named in Items 8, 9, and 10 of this statement?        Yes ☒        No ☐

If yes, identify each such foreign principal and describe in full detail your activities and services:

   The Government of Saudi Arabia –

   General advice on issues relating to energy policy, U.S. – Saudi
   Arabia bilateral relations, proposed U.S. – Saudi arms sale and
   other issues of interest.

---

[1] The term "foreign principal" includes, in addition to those defined in section 1(b) of the Act, an individual or organization any of whose activities are directly or indirectly supervised, directed, controlled, financed, or subsidized in whole or in major part by a foreign government, foreign political party, foreign organization or foreign individual. (See Rule 100(a)(9)).
   A registrant who represents more than one foreign principal is required to list in the statements he files under the Act only those foreign principals for whom he is not entitled to claim exemption under Section 3 of the Act. (See Rule 208.)

(PAGE 4)

12. During this 6 month reporting period, have you on behalf of any foreign principal engaged in political activity[2] as defined below?
   Yes ☒        No ☐

If yes, identify each such foreign principal and describe in full detail all such political activity, indicating, among other things, the relations, interests and policies sought to be influenced and the means employed to achieve this purpose. If the registrant arranged, sponsored or delivered speeches, lectures or radio and TV broadcasts, give details as to dates, places of delivery, names of speakers and subject matter.

   see attachment

13. In addition to the above described activities, if any, have you engaged in activity on your own behalf which benefits any or all of your foreign principals?        Yes ☐        No ☒

If yes, describe fully.

---

[2]The term "political activities" means the dissemination of political propaganda and any other activity which the person engaging therein believes will, or which he intends to, prevail upon, indoctrinate, convert, induce, persuade, or in any other way influence any agency or official of the Government of the United States or any section of the public within the United States with reference to formulating, adopting, or changing the domestic or foreign polic   the United States or with reference to the political or public interests, policies, or relations of a governmer   foreign country or a foreign political party.

DOJSCO-402206572

12. During this 6 month reporting period, have you on behalf of any foreign principal engaged in political activity as defined below?

        Yes __x__        No _____

If yes, identify each such foreign principal and describe in full detail all such political activity, indicating, among other things, the relations, interests and policies sought to be influenced and the means employed to achieve this purpose.  If the registrant arranged, sponsored or delivered speeches, lectures or radio and TV broadcasts, give details as to dates, places of delivery, names of speakers and subject matter.

-----------------------------------------------------------------

January 15, 1985 / 12:00 pm / Meeting
Wayne Berman / Robert Lauterberg, Director, Gov't Relations, National Oil Council.

Activity:  discussed petroleum products import issues.


January 31, 1985 / Meeting
Wayne Berman (employee of Paul J. Manafort, Attorney at Law)/
Jeffrey Bergner (Chief of Staff, Senate Foreign Relations Committee.

Activity:  discussed Middle East security issues.


February 5, 1985 / by phone
Wayne Berman / Jeffrey Bergner, Chief of Staff, Senate Foreign Relations Committee.

Activity:  discussed Saudi Arabia - U.S. issues.


February 11, 1985 / 12:00 / Meeting
Paul J. Manafort / Tony Cortesmin.

Activity:  discussed proposed Saudi Arabia arms package.


February 26, 1985 / by phone
Wayne Berman / Graham Bannerman, Deputy Chief of Staff, Senate Foreign Relations Committee.

Activity:  discussed Saudi Arabia - U.S. Security issues.

DOJSCO-402206573

March 11, 1985 / by phone
Wayne Berman / Ron Neumann, Deputy Director, Saudi Arabia
Section, Department of State.

Activity:  discussed U.S. - Saudi Arabia relations, economic,
trade and security issues, and other Middle East issues.

March 14, 1985 / Meeting
Wayne Berman / Andy Walquist, A.A. to Senator Warner.

Activity:  discussed congressional attitudes towards Saudi
Arabia.

March 18, 1985 / by phone
Wayne Berman / Jeff Bergner, Chief of Staff, Senate Foreign
Relations Committee.

Activity:  discussed congressional perspectives on Saudi Arabia
security requirements.

March 21, 1985 / 1:00 / Meeting
Wayne Berman / Al Drischler, Neill and Co.

Activity: discussed security assistance and Middle East issues.

April 1, 1985 / 12:00 / Meeting
Wayne Berman / Jack Shaw, private consultant.

Activity:  U.S. - Saudi Arabia relations.

April 7, 1985 / 12:00 / Meeting
Wayne Berman / Graham Bannerman, Deputy Chief of Staff, Senate
Foreign Relations Committee.

Activity:  discussed general foreign policy issues in regard to
the Middle East.

April 11, 1985 / Meeting
Wayne Berman / Senator Lugar, Chairman, Senate Foreign Relations
Committee.

Activity:  discussed Saudi Arabia's role in Middle East peace
process and regional security threats from Iran.

April 17, 1985 / by phone
Wayne Berman / Jeffrey Bergner, Chief of Staff, Senate Foreign
Relations Committee.

Activity:  Follow-up on 4/11 conversation with Senator Lugar.


April 18, 1985 / 1:00 pm / Meeting
Wayne Berman (employee of Paul J. Manafort, Atty at Law) /
Jeffrey Bergner, Chief of Staff, Senate Foreign Relations
Committee.

Activity:  discussed Middle East security issues.


April 19, 1985 / 12:00 / Meeting
Wayne Berman / Sam Ballenger, A.A. to Senator Laxalt.

Activity:  discussed congressional perspectives on Saudi Arabia.


April 29, 1985 / by phone
Wayne Berman / Russ Rourke, Assistant Secretary of Defense.

Activity:  discussed U.S. - Saudi Arabia relations in a defense
context.

(PAGE 5)

## IV—FINANCIAL INFORMATION

14. (a) **RECEIPTS—MONIES**

During this 6 month reporting period, have you received from any foreign principal named in Items 8, 9 and 10 of this statement, or from any other source, for or in the interests of any such foreign principal, any contributions, income or money either as compensation or otherwise?     Yes ☒     No ☐

If yes, set forth below in the required detail and separately for each foreign principal an account of such monies.[3]

| Date | From Whom | Purpose | Amount |
|------|-----------|---------|--------|
| 1/17/85 | The Gov't of Saudi Arabia | Consulting Fee | 200,000.00 |
| 5/06/85 | The Gov't of Saudi Arabia | Consulting Fee | 50,000.00 |
| 5/06/85 | The Gov't of Saudi Arabia | Expense Reimbursement | 702.55 |

$250,702.55
Total

(b) **RECEIPTS—THINGS OF VALUE**

During this 6 month reporting period, have you received any thing of value[4] other than money from any foreign principal named in Items 8, 9 and 10 of this statement, or from any other source, for or in the interests of any such foreign principal? Yes ☐     No ☒

If yes, furnish the following information:

| Name of foreign principal | Date received | Description of thing of value | Purpose |
|---------------------------|---------------|-------------------------------|---------|

---

[3] A registrant is required to file an Exhibit D if he collects or receives contributions, loans, money, or other things of value for a foreign principal, as part of a fund raising campaign. See Rule 201(e).
[4] Things of value include but are not limited to gifts, interest free loans, expense free travel, favored stock purchases, exclusive rights, favored treatment over competitors, "kickbacks," and the like.

DOJSCO-402206576

15. (a) DISBURSEMENTS—MONIES

During this 6 month reporting period, have you

(1) disbursed or expended monies in connection with activity on behalf of any foreign principal named in Items 8, 9 and 10 of this statement?        Yes ☒        No ☐

(2) transmitted monies to any such foreign principal?        Yes ☐        No ☒

If yes, set forth below in the required detail and separately for each foreign principal an account of such monies, including monies transmitted, if any, to each foreign principal.

| Date | To Whom | Purpose | Amount |
|------|---------|---------|--------|
|      | see attachment | | |

Total

15. (a)   DISBURSEMENTS - MONIES
During this 6 month reporting period, have you
(1) disbursed or expended monies in connection with activity on
behalf of any foreign principal named in items 8,9 and 10 of this
statement? Yes __x__ No _____

(2) transmitted monies to any such foreign principal?
     Yes __x__ No _____

If yes, set forth below in the required detail and separately for
each foreign principal an account of such monies, including monies
transmitted, if any, to each foreign principal.

| DATE | TO WHOM | PURPOSE | AMOUNT |
|------|---------|---------|--------|
| 5/84 | All State Courier | Courier Service | 17.50 |
| /84 | All State Courier | Courier Service | 27.25 |
| 12/84 | All State Courier | Courier Service | 9.81 |
| 1/85 | All State Courier | Courier Service | 9.81 |
| 2/85 | All State Courier | Courier Service | 20.87 |
| 4/85 | C&P Telephone | Long Distance Service on behalf of Foreign Principal, Saudi Arabia. | 53.61 |
| 9/84 | DC Parking Lot | Parking | 6.50 |
| 1/85 | DC Parking Lot | Parking | 5.50 |
| 4/85 | DC Parking Lot | Parking | 7.00 |
| 4/23/84 | Sichuan Pavilion | Lunch on behalf of Foreign Principal, Saudi Arabia, regarding Saudi Arms Package | 27.45 |
| 7/26/84 | The Palm Restaurant | Lunch on behalf of Foreign Principal, Saudi Arabia, regarding Saudi Arms Package | 62.92 |
| 1/15/85 | The Palm Restaurant | Lunch with Jeff Bergner, Chief of Staff, Senate Foreign Relations Committee, regarding Middle East Security issues. | 58.95 |
| 2/11/85 | The Palm Restaurant | Lunch on behalf of Foreign Principal, Saudi Arabia, regarding Saudi Arms Package | 57.25 |
| 3/21/85 | Duke Zeiberts | Entertainment on behalf of Foreign Principal, Saudi Arabia, regarding security assistance, Middle East issues. | 13.84 |

| DATE | TO WHOM | PURPOSE | AMOUNT |
|------|---------|---------|--------|
| 4/1/85 | The Palm Restaurant | Lunch on behalf of Foreign Principal, Saudi Arabia, regarding U.S. – Saudi Arabia relations. | 36.51 |
| 4/7/85 | Hay Adams Restaurant | Breakfast on behalf of Foreign Principal, Saudi Arabia, regarding general foreign policy issues – Middle East. | 25.33 |
| 4/18/85 | Monocle Restaurant | Lunch with Sam Ballenger, A.A. to Senator Laxalt, on behalf of Foreign Principal, Saudi Arabia regarding Congressional perspectives on Saudi Arabia. | 50.20 |
| no date | Taxi | Transportation to meeting on behalf of Foreign Principal, Saudi Arabia. | 2.50 |

TOTAL     $492.80

DOJSCO-402206579

(PAGE 7)

15. (b) DISBURSEMENTS—THINGS OF VALUE

During this 6 month reporting period, have you disposed of anything of value[5] other than money in furtherance of or in connection with activities on behalf of any foreign principal named in items 8, 9 and 10 of this statement?
Yes ☐    No ☒

If yes, furnish the following information:

| Date disposed | Name of person to whom given | On behalf of what foreign principal | Description of thing of value | Purpose |
|---|---|---|---|---|
| | | | | |

(c) DISBURSEMENTS—POLITICAL CONTRIBUTIONS

During this 6 month reporting period, have you from your own funds and on your own behalf either directly or through any other person, made any contributions of money or other things of value[5] in connection with an election to any political office, or in connection with any primary election, convention, or caucus held to select candidates for political office?
Yes ☒    No ☐

If yes, furnish the following information:

| Date | Amount or thing of value | Name of political organization | Name of candidate |
|---|---|---|---|
| Wayne L. Berman | | | |
| 2/15/85 | $1,000.00 | Parris for Governor | Stan Parris |

---

## V—POLITICAL PROPAGANDA

(Section 1(j) of the Act defines "political propaganda" as including any oral, visual, graphic, written, pictorial, or other communication or expression by any person (1) which is reasonably adapted to, or which the person disseminating the same believes will, or which he intends to, prevail upon, indoctrinate, convert, induce, or in any other way influence a recipient or any section of the public within the United States with reference to the political or public interests, policies, or relations of a government of a foreign country or a foreign political party or with reference to the foreign policies of the United States or promote in the United States racial, religious, or social dissensions, or (2) which advocates, advises, instigates, or promotes any racial, social, political, or religious disorder, civil riot, or other conflict involving the use of force or violence in any other American republic or the overthrow of any government or political subdivision of any other American republic by any means involving the use of force or violence.)

16. During this 6 month reporting period, did you prepare, disseminate or cause to be disseminated any political propaganda as defined above?    Yes ☐    No ☒

IF YES, RESPOND TO THE REMAINING ITEMS IN THIS SECTION V.

17. Identify each such foreign principal.

---

[5] Things of value include but are not limited to gifts, interest free loans, expense free travel, favored stock purchases, exclusive rights, favored treatment over competitors, "kickbacks," and the like.

18. During this 6 month reporting period, has any foreign principal established a budget or allocated a specified sum of money to finance your activities in preparing or disseminating political propaganda?    Yes ☐    No ☐

If yes, identify each such foreign principal, specify amount, and indicate for what period of time.

19. During this 6 month reporting period, did your activities in preparing, disseminating or causing the dissemination of political propaganda include the use of any of the following:
☐ Radio or TV broadcasts  ☐ Magazine or newspaper articles  ☐ Motion picture films  ☐ Letters or telegrams
☐ Advertising campaigns  ☐ Press releases  ☐ Pamphlets or other publications  ☐ Lectures or speeches

☐ Other (specify) _____

20. During this 6 month reporting period, did you disseminate or cause to be disseminated political propaganda among any of the following groups:
☐ Public Officials  ☐ Newspapers  ☐ Libraries
☐ Legislators  ☐ Editors  ☐ Educational institutions
☐ Government agencies  ☐ Civic groups or associations  ☐ Nationality groups
☐ Other (specify) _____

21. What language was used in this political propaganda:
☐ English    ☐ Other (specify) _____

22. Did you file with the Registration Section, U.S. Department of Justice, two copies of each item of political propaganda material disseminated or caused to be disseminated during this 6 month reporting period?    Yes ☐    No ☐

23. Did you label each item of such political propaganda material with the statement required by Section 4(b) of the Act?    Yes ☐    No ☐

24. Did you file with the Registration Section, U.S. Department of Justice, a Dissemination Report for each item of such political propaganda material as required by Rule 401 under the Act?    Yes ☐    No ☐

## VI—EXHIBITS AND ATTACHMENTS

25. EXHIBITS A AND B

(a) Have you filed for each of the newly acquired foreign principals in Item 9 the following:

Exhibit A[6]    Yes ☐    No ☐    n/a
Exhibit B[7]    Yes ☐    No ☐

If no, please attach the required exhibit.

(b) Have there been any changes in the Exhibits A and B previously filed for any foreign principal whom you represented during this six month period?    Yes ☐    No ☒

If yes, have you filed an amendment to these exhibits?    Yes ☐    No ☐    n/a

If no, please attach the required amendment.

[6]The Exhibit A, which is filed on Form CRM-157 (Formerly OBD-67) sets forth the information required to be disclosed concerning each foreign principal.
[7]The Exhibit B, which is filed on Form CRM-155 (Formerly OBD-65) sets forth the information concerning the agreement or understanding between the registrant and the foreign principal.

**26.** **EXHIBIT C**

If you have previously filed an Exhibit C$^8$, state whether any changes therein have occurred during this 6 month reporting period.     Yes ☐     No ☐

n/a

If yes, have you filed an amendment to the Exhibit C?     Yes ☐     No ☐

If no, please attach the required amendment.     n/a

---

**27.** **SHORT FORM REGISTRATION STATEMENT**

Have short form registration statements been filed by all of the persons named in Items 5 and 7 of the supplemental statement?
Yes ☒     No ☐

If no, list names of persons who have not filed the required statement.

---

The undersigned swear(s) or affirm(s) that he has (they have) read the information set forth in this registration state.  ..and the attached exhibits and that he is (they are) familiar with the contents thereof and that such contents are in their entirety true and accurate to the best of his (their) knowledge and belief, except that the undersigned make(s) no representation as to the truth or accuracy of the information contained in attached Short Form Registration Statement, if any, insofar as such information is not within his (their) personal knowledge.

*(Type or print name under each signature)*

(Both copies of this statement shall be signed and sworn to before a notary public or other person authorized to administer oaths by the agent, if the registrant is an individual, or by a majority of those partners, officers, directors or persons performing similar functions who are in the United States, if the registrant is an organization.)

X _____

Paul J. Manafort, Jr.

_____

_____

Subscribed and sworn to before me at ___Alexandria, Virginia_____

this ___Third___ day of ___July_____, 19 _85____

_____
(Signature of notary or other officer)

---

$^8$The Exhibit C, for which no printed form is provided, consists of a true copy of the charter, articles of incorporation, association, constitution, and bylaws of a registrant that is an organization. (A waiver of the requirement to file an Exhibit C may be obtained for good cause upon written application to the Assistant Attorney General, Criminal Division, Internal Security Section, U.S. Department of Justice, Washington, D.C. 20530.)

# EXHIBIT 949

'U.S. Department of Justice
Washington, DC 20530

Amendment to Registration Statement
Pursuant to the Foreign Agents Registration Act of 1938, as amended

OMB No. 1105-0004
Approval Expires Oct. 31, 1986

| 1. Name of Registrant | 2. Registration No. |
|---|---|
| Paul J. Manafort, Attorney at Law | 3594 |

3. This amendment is filed to accomplish the following indicated purpose or purposes:

☐ To correct a deficiency in

    ☐ Initial Statement

    ☐ Supplemental Statement for _____

☐ To give a 10-day notice of a change in information as required by Section 2(b) of the Act.

☐ Other purpose (specify) _____

☒ To give notice of change in an exhibit previously filed.

4. If this amendment requires the filing of a document or documents, please list-

Agreement renewal

5. Each item checked above must be explained below in full detail together with, where appropriate, specific reference to and identity of the item in the registration statement to which it pertains. If more space is needed, full size insert sheets may be used.

Attached is an updated agreement to be attached to exhibit B, taking the place of the expired agreement.





GOVERNMENT EXHIBIT

U.S. v. MANAFORT, 1:17-cr-201 (A.B.J.)

949

The undersigned swear(s) or affirm(s) that he has *(they have)* read the information set forth in this amendment and that he is *(they are)* familiar with the contents thereof and that such contents are in their entirety true and accurate to the best of his *(their)* knowledge and belief.

Paul J. Manafort, Jr.

*(Both copies of this amendment shall be signed and sworn to before a notary public or other person authorized to administer oaths by the agent, if the registrant is an individual, or by a majority of those partners, officers, directors or persons performing similar functions who are in the United States, if the registrant is an organization.)*

Subscribed and sworn to before me at Alexandria, Virginia

this 26th day of June , 19 86

(Notary or other officer)

My commission expires March 12, 1990.

DOJSCO-402206547

AGREEMENT

By this Agreement entered into on the 7th day of January, 1986, between Attorney Paul J. Manafort and his Associates, (hereinafter Consultants), and the United States Embassy of The Royal Kingdom of Saudi Arabia, (hereinafter the Embassy), the Parties agree as follows:

1.  Scope of Employment.  Consultant will provide professional services to the Embassy that will be of general nature.  Such professional services shall include, but not be limited to, the monitoring and lobbying of legislation in the Congress and the Executive Branch of the United States Government, participation in the development and implementation of a strategy to aid in the procurement of foreign military sales, and advancement of the other unspecified goals of the Embassy.

2.  Term.  This Agreement will continue in force for a term of ~~one year~~. "SIX MONTHS" *[initialed]*

3.  Fees.  In return for the performance of the service outlined herein, the Embassy agrees to compensate Consultant the base amount of $100,000 with said amount being payable upon the execution of this Agreement. Additionally, Consultant shall receive additional compensation on a quarterly basis for projects undertaken on behalf of the Embassy.  *[initialed]*

    In addition to such fees, the Embassy will reimburse Consultant on a monthly basis for all reasonable and necessary expenses including such expenses as travel, telephone, and postage and other incidental expenses in connection with the performance of the Embassy's work.

4.  Miscellaneous Provisions.

    A.  Notice.  All notices provided for herein shall be sent by certified mail, postage prepaid, and addressed as follows:

        To Consultants:  Paul J. Manafort, Esquire
                         324 North Fairfax Street
                         Alexandria, Virginia  22314

        To Embassy of Royal Kingdom of Saudi Arabia:
                         HRH Prince Bandar bin Sultan
                         Embassy of Saudi Arabia
                         601 New Hampshire Avenue, NW
                         Washington, DC  20036

RECEIVED CRIMINAL DIVISION
INTERNAL SECURITY SECTION REGISTRATION UNIT
JUN 27  3 05 PM '88

B. Termination. Notwithstanding the above, this Agreement may be terminated with 30 days written notice.

IN WITNESS WHEREOF, the Parties hereto, by their respective and duly authorized officers, have hereunto set their names.

PAUL J. MANAFORT, ESQ.

BY ______________________

EMBASSY OF THE ROYAL KINGDOM OF SAUDI ARABIA

BY ______________________

# EXHIBIT 1028

**REDACTED**

# EXHIBIT 1237

From: Rick Gates ██████████████████
Sent: Wednesday, November 14, 2012, 10:28 AM
To: ████████████████████████████████████████
Cc: ████████████████████████████████████████
Subject: Contract
Attachments: ██████████████   contract FINAL 11-2012.docx; NoName.att

██████████

Please find attached the final version of the contract with your requested
changes. Please let me know if there are any other issues.

Regards,
Rick



GOVERNMENT
EXHIBIT
U.S. v. MANAFORT, 1:17-cr-201 (A.B.J.)
1237

DATED 01 JULY 2012

and

**CONSULTANCY AGREEMENT**

**THIS AGREEMENT** is made the 1st day of July 2012

**BETWEEN**:

**(1)**



("the COMPANY"); and

**(2)**

("the CONSULTANT").

## RECITALS

(1) The COMPANY wishes, in view of the CONSULTANT's relevant skills, knowledge and experience to engage the CONSULTANT to provide certain consultancy services to the COMPANY

(2)   The CONSULTANT is willing to provide such services to COMPANY on and subject to the terms and conditions of this Contract.

## 1.   DEFINITIONS AND INTERPRETATION

1.1   The following terms shall have the following meanings for the purpose of this Agreement:

"Affiliate"                          of a specified person means any other person that directly or indirectly through one or more intermediaries controls or is controlled by, or is under direct or indirect common control with, the specified person (and 'control' means the ability or (as the case may be) the possession (directly or indirectly) of the power to direct or cause the direction of the affairs, management or policies of such person, directly or indirectly, whether by contract or ownership of voting securities or otherwise and 'controlled' shall be construed accordingly);

| "Board" | means the Board of Directors of the COMPANY; |
| "clause" | means clauses in this Agreement unless the context has a contrary meaning; |
| "Commencement Date" | means 1st July 2012; |
| "COMPANY" | where the context so admits includes the COMPANY's Affiliates; |
| "Term" | means from the 1st July 2012 for a period of 6 months unless and until this agreement shall be terminated by either party in accordance with Clause 7, or by either party giving the other notice of termination of no less than three calendar months. |

1.2   Headings contained in this Agreement are for reference purposes only and should not be incorporated into this Agreement and shall not be deemed to be any indication of the meaning of the clauses to which they relate.

1.3   References to parties, clauses, schedules, sub-clauses and exhibits are to the parties to, clauses of, sub-clauses of, schedules to and Exhibits to this Agreement, respectively.

1.4   Except where the context requires otherwise words importing the singular include the plural and words importing any gender include every gender, and (in each case) vice versa.

1.5   In this Agreement:

1.5.1   references to a 'person' shall be construed so as to include any individual, firm, company, government, state or agency of a state or any joint venture, partnership or other body corporate, unincorporated association and partnership (whether or not having a separate legal personality);

1.5.2   references to any English legal term for any action, remedy, method of judicial proceeding, legal document, legal status, court, official, or any legal concept or thing shall in respect of any jurisdiction other than England be deemed to include what most nearly approximates in that jurisdiction to the English legal term;

1.5.3   general words shall not be given a restrictive meaning by reason only of the fact that they are followed by particular examples intended to be embraced by the general words or introduced by the word 'other' and preceded by words indicating a particular class of acts, matters or things and accordingly the rule known as the ejusdem generis rule shall not apply to this Agreement; and

1.5.4   references to a statute or statutory provision shall include a reference to the statute or statutory provision as modified or re-enacted or both from time to time, and any subordinate legislation made thereafter.

1.6   References in this Agreement to anything which any party is required to do or not to do shall include his acts, defaults and omissions, whether direct or indirect, on his own account or for or through any other person and those which he permits or suffers to be done or not done by any other person.

## 2.   APPOINTMENT

2.1   The COMPANY engages the CONSULTANT as CONSULTANT of the COMPANY's business for the Term.

## 3.   OBJECT OF THE AGREEMENT

3.1   During the Term the CONSULTANT shall devote such of his time attention and abilities to the COMPANY business as is necessary for the proper exercise of his duties as CONSULTANT but nothing contained in this Agreement shall (subject to Clause 6) preclude the CONSULTANT from acting in a similar or any other capacity for any other person firm or COMPANY.

CONFIDENTIAL

3.2  The CONSULTANT shall advise and assist the COMPANY as required in all branches of its business including in particular but without prejudice to the generality of the above provide general strategic and consulting advice to the COMPANY on a range of areas. The CONSULTANT in particular shall provide political and economic analysis and provide advice on specific economic policies for countries outside the European Union, and will provide the writing of occasional reports and memos to the COMPANY and will ensure the availability of the CONSULTANT to make a series of trips for work in Eastern Europe and Asia in countries that are outside the European Union.

3.3  Should the COMPANY at any time in future require services to be rendered by the CONSULTANT in European Union countries, then a new agreement shall be decided upon and such services shall be regulated under a different agreement.

## 4.  THE COMPANY'S OBLIGATIONS

4.1  In consideration of the services to be rendered by the CONSULTANT under this Agreement the COMPANY shall pay to the CONSULTANT:

4.1.1  A fee of EUR € 930,000.00 (nine hundred thirty thousand euros).

## 5.  SECRECY

5.1  The CONSULTANT shall not at any time during or after the Term divulge or allow to be divulged to any person any confidential information relating to the business or affairs of the COMPANY other than to persons who have signed a secrecy undertaking in the form approved by the COMPANY.

5.2  The CONSULTANT shall not permit any person to assist in the provision of the services under this Agreement unless that person has signed such an undertaking.

## 6.  TERMINATION

The following obligations are conditions of this Agreement and any breach of them shall be deemed a fundamental breach which shall determine this Agreement immediately and the rights and liabilities of the parties shall thereafter be determined.

CONFIDENTIAL

6

6.1    Failure on the part of the COMPANY to make punctual payment of all sums
       due to the CONSULTANT under the terms of this Agreement

6.2    Failure on the part of the CONSULTANT to observe any material obligation
       under this Agreement.

6.3    The levying of any distress or execution against the COMPANY or the
       COMPANY's liquidation (other than a members' voluntary liquidation).

## 7.    DELIVERY UP OF DOCUMENTS ON TERMINATION

The CONSULTANT or his personal representatives shall upon the termination of his
engagement immediately deliver up to the COMPANY all correspondence
documents specification papers and property belonging to the COMPANY which are
in his possession or under his control.

## 8.    AMALGAMATION OR RECONSTRUCTION OF THE COMPANY

If before the end of the Term the engagement of the CONSULTANT is terminated by
reason of the winding-up of the COMPANY for the purpose of amalgamation or
reconstruction or as part of any arrangement for amalgamation not involving winding-
up and the CONSULTANT shall be offered an engagement with the amalgamated or
reconstructed COMPANY for a period of not less than the unexpired part of the Term
and on terms not less favourable than the terms of this Agreement the
CONSULTANT shall have no claim against the COMPANY in respect of such
termination.

requirement by a governmental authority for taxes and contributions in respect of
payments made to the CONSULTANT.

## 9. SUPERSEDES PRIOR AGREEMENTS

This Agreement supersedes any prior agreement between the parties whether written or oral
and any such prior agreements are cancelled as at the Commencement Date but without
prejudice to any rights which have already accrued to either of the parties.

## 10.    MISCELLANEOUS

### 10.1    Notices

All notices to be given under this Agreement shall be in writing and shall either be
delivered personally or sent by first-class or airmail prepaid post or by telex, cable or

CONFIDENTIAL

7

facsimile transmission and shall be deemed duly served:

10.1.1 in the case of a notice delivered personally, at the time of delivery;

10.1.2 in the case of a notice sent inland by first-class prepaid post, 2 clear business days after the date of dispatch;

10.1.3 in the case of a notice sent overseas by airmail, 7 business days (being business days in the place to which the notice is dispatched) after the date of dispatch; and

10.1.4 in the case of a telex, cable or facsimile transmission, if sent during normal business hours then at the time of transmission and if sent outside normal business hours then on the next following business day provided (in each case) that a confirmatory copy is sent by first-class prepaid post or by hand by the end of the next business day.

Each notice shall be addressed to the address of the party concerned set out in this Agreement or to such other address as that party shall have previously notified to the sender;



## 10.2  The COMPANY's right to assign

This Agreement and all rights under it may be assigned or transferred by the COMPANY.

## 10.3  Proper law and jurisdiction

10.3.1        This Agreement shall be governed by BVI law in every particular including formation and interpretation and shall be deemed to have been made in the BVI

8

10.3.2     Any proceedings arising out of or in connection with this Agreement may be brought in any Court of competent jurisdiction in the BVI.

10.3.3     The submission by the parties to such jurisdiction shall not limit the right of the CONSULTANT to commence any proceedings arising out of this Agreement in any other jurisdiction he may consider appropriate.

10.3.4     Any notice of proceedings or other notices in connection with or which would give effect to any such proceedings may without prejudice to any other method of service be served on any party in accordance with Clause 12.1.

10.4  **Rights cumulative**

All rights granted to either of the parties shall be cumulative and no exercise by either of the parties of any right under this Agreement shall restrict or prejudice the exercise of any other right granted by this Agreement or otherwise available to it.

10.5  **Survival of terms**

No term shall survive expiry or termination of this Agreement unless expressly provided.

10.6  **Waiver**

The failure by either party to enforce at any time or for any period any one or more of the terms or conditions of this Agreement shall not be a waiver of them or of the right at any time subsequently to enforce all terms and conditions of this Agreement.

10.7  **Costs**

Each of the parties shall pay any costs and expenses incurred by it in connection with this Agreement.

10.8  **Third party rights**

A person who is not a party to this Agreement has no rights [under the Contracts (Rights of Third Parties) Act 1999] to enforce any terms of this Agreement.

**11.   ARBITRATION**

All disputes or differences which at any time arise between the parties whether during the Term or afterwards touching or concerning this Agreement or its

construction or effect or the rights duties or liabilities of the parties under or by virtue of it or otherwise or any other matter in any way connected with or arising out of the subject matter of this Agreement shall be referred to a single arbitrator to be agreed upon by the parties or in default of agreement to be nominated by the [President for the time being of the Chartered Institution of Arbitrators] in accordance with the Arbitration Act 1996 or any statutory modification or re-enactment of it for the time being in force.

**AS WITNESS** the hands of the parties the day and year first above written

**SIGNED** by )
)  _____
for and on behalf of )
)
)
)

**SIGNED** by )
)  _____
for and on behalf of )
)
)

# **EXHIBIT 1307**

**MEMORANDUM**

| | |
|---|---|
| **To:** | ■ |
| **From:** | **PJM** |
| **Subject:** | **SA Report – Media Plan** |
| **Date:** | **August 1, 2012** |

The public release of the report prepared by the Skadden Arps (SA) law firm will provide a major opportunity for the Government to re-set the agenda and demand a fresh appraisal of its position regarding the trial and conviction of Yulia Tymoshenko.  This document will address the global rollout strategy for the SA legal report, and provide a detailed plan of actions.

This event will provide an opportunity for Ukraine to challenge the international (European/US) perception that it is mounting selective political prosecutions that do not comply with international standards.  It is clear that much of the truth concerning the crimes committed by YT has been overlooked, and misunderstood.  The SA report conveys a direct and coherent account of the facts that will show the international community that the judicial system in Ukraine worked in this case but that some elements can be improved.

However, this moment presents equally significant challenges, in addressing the report's likely criticism of some procedural missteps and countering the onslaught of an extremely effective campaign being waged by the Government's opponents.  It is inconceivable that the report will bring an end to heated debate; on the contrary, it is most likely to provoke an intense effort by all interested parties to claim that the report vindicates their position and a further phase of scrutiny by the international media and diplomatic community.

The media plan for the SA report release is built with the following observations in mind:

1. It is clear that most media reporting and misreporting, and misperceptions amongst the diplomatic and political communities, emanate from international wire service reports with Kiev-based correspondents.

2. Inaccurate or incomplete reporting by the newswires is repeated without challenge or fact-checking by international media outlets. In fact, the international media will have difficulty accepting the conclusions of the Skadden report because their reporting , to date, has been siginificantly slanted towards the Tymoshenko positions. To now embrace the Skadden report would be to repudiate their previous reporting. This is highly unlikely to happen.

3. There is no plan in place that ensures such inaccuracies are corrected.

4. Media relations techniques in Ukraine follow the convention of news conferences rather than individual briefings.  Showpiece news conferences take place after each legal event, and are often hijacked by some elected politicians interjecting into statements by prosecutors.

5. The information about the case online has not been sufficiently available in English, and the media has to work too hard to find a position counter to the clearly communicated plan of YT.

6. Certain elements of the media and YT's team will attempt to take the negative aspects of the trial procedures in which Western due process was not followed, and attempt to weave a headline from



**GOVERNMENT EXHIBIT**
U.S. v. MANAFORT, 1:17-cr-201 (A.B.J.)
**1307**

■ 00213

those negative points, while attempting to ignore the main tenet that she was tried and convicted fairly under Western standards.

## Media Strategy and Plan

Based on current information, SA is expected to deliver its report the week of August 9th to the MoJ.  The communications strategy, outlined below, is subject to modification depending on the content of the final SA report.  However, we are proceeding with the following points in mind:

- The report was commissioned by the Ministry of Justice (MoJ) not the Office of Prosecutor General's Office (OPG).
- The report will conclude that the trial was valid and that crimes were committed by YT, but that some irregularities existed in the process that are not in line with Western jurisprudence.
- It will present a more detailed analysis of the facts and evidence in the process than has previously been seen by the international community.
- The report will be in English and that version will represent the official record.
- The report will contain some criticism of the OPG and the Judge, based on the process and procedures of the trial, and these criticisms, will be exploited by our opponents.
- SA cannot proactively lead in communications, given their restrictions by FARA registration and disclosure.

In order to neutralize the inevitable attacks that will commence as soon as the report is released, and optimize our control of the story, we need to be pro-active in reaching out to carefully chosen key stakeholders.  The approach would be as follows:

### Report Release

1. The final report (in English) will be delivered by SA to the MoJ the week of August 9th, and will carry the firm's authoritative imprimatur; but the responsibility for publication and distribution rests with the MoJ.
2. The full text of circa 180 pages, which includes an executive summary, will be published in Ukrainian (subject to translation by the MOJ) and English languages.  The report will be further translated in Russian (at the direction of the MOJ).  Only the English translation will be the responsibility of SA. SA will work with the MOJ to ensure the integrity of the translated versions of the report.
3. The report will be released by the MoJ with a press statement by email distribution.  The statement will be drafted by ▇ and approved by the MoJ.  The statement will accompany the report and distributed to key stakeholders, and placed on the Ministry's website.  In addition, the statement will be translated into multiple languages.
4. Talking points and Q&A material will also be drafted by ▇ for all key groups that will need messaging.  It is imperative that complete discipline is assured in this process.  There can be no mistakes with the release process, messaging, and the messengers so that the utmost credibility will be viewed with the process.
5. In order to generate good will toward certain key stakeholders, a small number of individuals will be notified just prior to the release of the report by MoJ.  This will include key members of the EU ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇), the EC, the USG, and foreign diplomats in Kyiv.
6. In addition, a small number of international journalists should be briefed in advance of the publication of the report, under strict embargo, and formally contacted by the MoJ press team (with support from the AC team on behalf of the MoJ.

7. ██████ will manage simultaneous distribution of the Report on the release date and send to key political stakeholders in Brussels, Berlin, London, Paris, Rome, and others.   A list of the key stakeholders is attached (Attachment 1). This will include outreach to ██████████████████, plus think tanks and interested NGOs.  The Ukrainian embassy in Brussels will be asked to distribute information more widely to MEPs on the release date and the ECFMU will do similar disseminations. ██ will focus on the specialist legal writers, analysts and commentators.

### Post Report Release

8. ██ will need to do briefings and interviews (group and one-on-ones) with key stakeholders in the Attachment, and as specified below. ██ will not initiate these briefings but it will be done through ██ and the AC team in the key targeted cities.

9. A private briefing with ██████████ should be offered to ██████████████ immediately following the release of the report. Depending on scheduling, this meeting should happen as soon as possible.

10. A private briefing should also be offered to the Ukrainian Commissioner for Human Rights, a fluent English and German speaker.

11. Special attention should be given to the German and Russian media in this distribution, as well as those journalists previously briefed by the First Deputy PG on his media tours in major European cities.  Consideration should be given to ██ visiting Moscow for one round table briefing with a group of leading correspondents covering Ukrainian matters from there.  Similarly, he should do a roundtable in Berlin for interviews with a selection of the most influential commentators.

12. The Prosecutor General will release a press statement immediately following publication of the SA report, welcoming the report and the analysis given its role and involvement as prosecutors in the trial process. ██ will draft the press statement and seek approval from the OPG.

13. Both the MoJ and PG's offices will receive many media enquiries and requests for comment. Responses by both teams of press officers must be carefully logged, tightly controlled and closely supervised. ██ will draft the messaging points for the MoJ and the OPG, and prep the press staffs of both departments for handling the media enquiries.

14. Skadden will also receive a large number of media calls about the report and will be obliged to respond on the record.  With the agreement of Skadden, the ██ team will manage the inbound flow of those calls.

15. *No Government entity should stage a news conference for the international media* because it reduces our control and also because it is unlikely that international media outlets will send enough journalists to attend such a conference in Ukraine.  Instead, we could field the PG / First Deputy PG and potentially other media trained senior Government Ministers for a small number of one-to-one interviews following the publication of the report.

16. A domestic news conference is a possibility but the Kyiv-based foreign correspondents could not be excluded and control would still be a challenge.  It would be preferred to do a small number of limited domestic interviews, carefully planned and managed.

17. The President's Administration should instruct the Ministry of Foreign Affairs to distribute a briefing pack to all foreign ambassadors based in Kyiv and all Ukrainian ambassadors in EU Member States, plus US and Russia.  The pack should include the full Report, the talking points and the statements of both the MoJ and PG, with a covering note from the Minister of Justice and clear instruction to distribute the Report and statements to their respective stakeholder constituencies. It is essential that there should be no slippage in the timetable, ( i.e. this onward distribution must occur once the MoJ releases the its statement and report).

██ **00215**

*Reactions and Responses*

18. The likely follow-on story will be that the opposition will try to use the report to mount a campaign calling for a re-trial.  There will be substantial international pressure placed on the Government to act on the report.  We have to be firm in the position that this report concludes that a crime was committed and that the weight of evidence would have secured a conviction under a Western-style system, irrespective of any minor procedural issues.

19. All ambassadors and departments of Government must use the same message and stand firm that any politician in any country who behaved in this way would have been punished.

20. █ will draft message points for the Government on these subjects and take into account likely criticism levied by YT's legal team, the Opposition, and other members of the international community.

*Command Center*

A Command Center must be established to ensure the absolute strictest discipline throughout this process. The Command Center will disseminate talking points and act as the point-of-contact for any information that is distributed by the Government. This includes the package of material that will go to foreign embassies via the MFA, cover letters, interview requests, and all written and verbal responses.

The Center needs to have a dedicated set of resources including:

• separate translators for multiple languages (Russian, Ukrainian, English, German and French)

• writers to assist █ and others in drafting the messaging

• dedicated office with no access for outside parties – it must be a secure center

• a lead person for the office needs to be selected to coordinate the activity of the Command Center and to address the actions by the MoJ, OPG and SA.

We are about a week to ten days away from the release of the final report.  The plan and related actions need to be implemented as soon as possible so that we are fully prepared to deal with the release of the SA report.  As soon as it is released, it will go viral and we need to make sure we are fully prepared to deal with the impact from the international community. Once the report is released, a public perception war will ensue, and her legal team and supporters, will do everything possible to undermine the credibility of the SA report.

I need your approval of this plan to begin moving forward.

# EXHIBIT 1308

**Subject:** Re: an urgent request ON IT
**From:** ▊
**Date:** 9/19/12, 9:29 AM
**To:** Rick Gates ▊
**CC:** Paul Manafort ▊

And ▊ ALSO happy to speak to Senator ▊ and ask hm to delay or tone down or stop the resolution

Sent from my iPad

On Sep 19, 2012, at 15:25, Rick Gates ▊ wrote:

> On it. Thank you.
>
> **From:** ▊
> **To:** Paul Manafort ▊
> **Cc:** Rick Gates ▊
> **Subject:** Re: an urgent request ON IT
>
> Am with ▊ now, who is speaking to ▊ who is getting ready for the wedding of his only daughter...BUT....he will talk to ▊ yes. He is delighted to speak to ▊ and try to calm things down and ask them to wait and tust him..Need rick to call me in three minutes so we can set this up, make it happen....
>
> ▊ says yes here is his personal and private mobile and ▊ shd call him
>
> ▊
>
> The Senator can dial him directly or ▊ can put him on
>
> He will keep he phone open until midnight CET or six pm DC time
>
> He is very keen to delay and calm things down
>
> READY....
>
> Sent from my iPad
>
> On Sep 19, 2012, at 15:12, Paul Manafort ▊ wrote:
>
> > Keep me posted on ▊ call to ▊ status
> >
> > **From:** Rick Gates ▊
> > **Date:** Wed, 19 Sep 2012 08:07:57 −0500

GOVERNMENT
EXHIBIT
U.S. v. MANAFORT, 1:17-cr-201 (A.B.J.)
1308

00012



**To:** Paul Manafort ███████████████████
**Subject:** Re: an urgent request ON IT

He was supposed to talk with ██████ yesterday but I have not heard back. Trying to reach him. I will brief him on the other items and see if he can call ██████ as well.

**From:** Paul Manafort ██████████████████
**To:** Rick Gates ██████████████
**Subject:** Re: an urgent request ON IT

Is ██ calling ██████████

**From:** Rick Gates ██████████
**Date:** Wed, 19 Sep 2012 07:51:49 −0500
**To:** Paul Manafort ██████████████████████████████████
**Subject:** FW: an urgent request ON IT

██████
Message was delivered to ██████ CoS and he is now aware. Do we have a sense of what time ██ will call ██████ office? I am working on ██████ office now. Please let me know.

Rick

**From:** Paul Manafort ██████████████████
**To:** Rick Gates ██████████████████████████████████
**Cc:** "K. Kilimnik" ███████████████████████████████████████
**Subject:** Re: an urgent request ON IT

Rick
I would recommend that ██████ be made aware of these facts and ██ role as a designated representative of the President of the EP. We ought to try to make the connection from both ends. Have ██████████ aware of ██ and the importance of ██████ talking to ██ who has been tasked with the intermediary role. ██████ should also be made aware of the fact that the US would be getting out front in a political way even further than the EP has gotten by passing this resolution.

Finally the points of my last email to you are relevant re ██████ understanding the acceptability of holding the hearing but not passing any resolution at this time. ██ should make this point to ██████ as well.
P

**From:** Rick Gates ██████████████████████
**Date:** Wed, 19 Sep 2012 05:39:08 −0500
**To:** ██████████████
**Cc:** Paul Manafort ██████████████████
**Subject:** Re: an urgent request ON IT

██████

The number for ▮▮ is ▮▮▮▮▮   You can also ask for his ▮▮▮▮▮
▮▮▮ If your guy is going to call ▮▮▮ I suggest you have him call ▮▮▮ too. This just as
important since ▮▮▮ is driving the legislation. ▮▮▮ number is ▮▮▮▮▮ Keep
me posted.

**From:** ▮▮▮▮▮▮▮▮
**To:** ▮▮▮▮▮▮▮▮
**Cc:** Paul Manafort ▮▮▮▮▮▮   Rick Gates ▮▮▮▮▮

<eckart.sager@gmail.com>
**Subject:** Re: an urgent request ON IT

Ok i am on it.
Will see Chancellor and place the call to ▮▮ in 90 minutes
Rick is gettng me a direct line to ▮▮▮ office.

▮

Sent from my iPad

**From:** ▮▮▮▮▮▮▮▮
**Date:** September 19, 2012 11:44:31 GMT+02:00
**To:** ▮▮▮▮▮▮
**Cc:** Konstantin Kilimnik ▮▮▮▮▮▮
**Subject:** an urgent request

Dear ▮▮▮

We have an idea with regard to the draft res under consideration by Senate's foreign relations
committe. Would it be possible to reach out to ▮▮▮▮▮▮▮ and ask him to make an
early morning call to ▮▮▮▮▮ with the following messages (more details in the attached
files):

- After having exerted substantial pressure on Ukraine, the European Union is now pursuing the
policy of engagement with Ukraine on the Tymoshenko case. In particular, the recent
▮▮▮▮▮ mission to Ukraine proved to be helpful and efficient leading to quite a number
of very substantial and unprecedented achievements. The policy of engagement with Ukraine is
far more efficient that the policy of the alienation of Ukraine.

- Yulia Tymoshenko exhausted national remedies and her application is now under consideration
by the European Court for Human Rights (ECHR). Therefore, **proper assessment of the
Tymoshenko case can only be done after ECHR delivers its highly authoritative judgment.**

- the discussion about situation in Ukraine can take place today but it is obvious that resolution
calling for the relase of Ms Tymoshenko can be helpful if adopted **after the October elections,**

not prior to them.

Paul works through his channels and is sending the same messages. He also supports the above initiative. The issue is under Big Guy's personal control.

As you understand, the matter is very urgent and we understand the time pressure but it would be fantastic if such a call could take place.

Best regards,



<senate.doc>

<res part 1.pdf>

<res part 2.pdf>

00015

# EXHIBIT 1349

Ladies and Gentlemen of the Press,

I am addressing you today in my capacities as President of the European Center for a Modern Ukraine, as ███████████████████████████████████████████ and as ████ ████████████████████.

My fellow Members of Parliament and I are deeply concerned over the one-sided news coverage about Ukraine, through which the impression is increasingly developing that Ukraine has turned away from the EU. However, the opposite is the case: the Ukrainian Parliament and the ████ Government have clearly dedicated themselves to Europe, to its values, to democracy and the rule of law.

Concrete measures implemented by the incumbent government over the past few years make this clear:

1. Reforms and Modernisation

Ukraine still has to grapple with the consequences of the Soviet era. These appear, for example, throughout the judicial system or through corruption, which is unfortunately still prevalent in Ukraine. Whereas the previous government was far too inactive, the current Parliament and the reigning government have made important steps here:

- Last month in April 2012, the Ukrainian Parliament passed several different laws to reform the code of criminal procedure. These laws will make criminal proceedings more transparent and decisively strengthen the rights of the accused and their defense. The draft laws were prepared in close coordination with the European institutions and were expressly approved by the Venice Commission of the Council of Europe.
- We are combating corruption. Bribery and exerting political influence have been incorporated into the penal laws, a move which was well received by the Group of States Against Corruption (GRECO) of the Council of Europe. As a result, proceedings have been opened against 800 politicians and functionaries, 300 from my own party, the Party of Regions, among them. No one is above the law- not even former Minister Presidents.

2. The Case of Tymoschenko

- The European Committee for the Prevention of Torture is expressly invited to inspect the conditions of the detention of Ms. Yulia Tymoschenko and other oppositional politicians on location again. The accusations from Ms. Tymoschenko with respect to the alleged use of force during her transfer to the Central Clinical Hospital No. 5 "Ukrsalisnyzja" in Kharkiv are already being independently investigated by the Prosecutor General of Ukraine.
- We honor every decision of the European Court of Justice for human rights. However, we are convinced that the investigations of the European institutions will confirm the legality of the criminal proceeding and the conditions of detention.

3. Free Elections

- Free and fair elections are an essential element of every democracy. We are therefore doing everything in order to ensure transparency and justice in the run-up to and during the parliamentary elections of 2012. The opposition has access to the media and can

[PAGE \* MERGEFORMAT]



GOVERNMENT
EXHIBIT
U.S. v. MANAFORT, 1:17-cr-201 (A.B.J.)
1349

00008671

freely carry out their own electoral campaigns. The international observers of the OSCE
are cordially invited to stringently monitor the elections. Potential irregularities will be
immediately confronted.

4. EURO 2012
   - The Ukrainian government, the Ukrainian Parliament and the Ukrainian people have
     done everything in recent months and years so that EURO 2012 will be a complete
     success for us and our European friends. Please allow us in this way to demonstrate that
     Ukraine is a part of Europe.

Ukraine has come a great deal closer to the EU under the ██████ government, as the initialing of the
Association Agreements demonstrates. Nevertheless, we will still require the support of Europe. We
have to further modernize our society and implement sensitive reforms without Ukrainian society
coming apart in the process. For this to occur, we need economic success. In this respect, we hope
that the EU will keep its words and support us on our way forward, particularly in light of the
negotiations with Russia over fair gas prices and the modernization of our gas transport system.

The current Ukrainian government and the Ukrainian Parliament demonstrate through their doings
how very much we are dedicated to Europe and its values; we hope that Europe allows its deeds to
speak to us as well.

I would be very pleased if, as a journalist, you could bear these aspects in mind more strongly in the
future.

I remain at your disposal at any time for further information.

Sincerely from Kiev,

██████████

[PAGE \* MERGEFORMAT]

Subject to Rule 6(e)
FOIA Confidential Treatment Requested

████00008672

# EXHIBIT 1351

Message

| | |
|---|---|
| From: | ████████████████████ |
| Sent: | 5/18/2012 7:20:35 PM |
| To: | ████████████ |
| Subject: | Ukraine – what we've been up to |
| Attachments: | Building confidence in the prosecution of Y.pdf |



Attached is a short presentation that we prepared yesterday for the Prosecutor General. It gives a flavour of the work we're doing. As you will understand, it takes longer to get anything done here because of the language barrier – we're using translators for every meeting – the cultural gulf, Government staff mentality and absence of know-how. We have established trust with the Prosecutor General and his team. He told us yesterday that he was delighted with our work and had told the President. He said we could have whatever we need to do the job, so we now have Government drivers running us around, security clearance and are being treated like colleagues. They feed us well, too!

We've been provided with a huge amount of briefing, both in document form and in a series of meetings with prosecutors, experts and others, and have been working round the clock to digest and convert this into press backgrounders, web content, Q&As etc. We've set up an operations room, with computers, phone lines and other office equipment. We've been media training the team of prosecutors. And we've been meeting every evening with the lawyers, to tap into their knowledge, although they have been a little coy about sharing too openly with us, to maintain the integrity of the review that they have been commissioned to undertake. They have been interviewing a vast number of witnesses and tipping us off about the nuggets they've found and the key people for us to meet. ████ is now convinced of Yulia's guilt and that the case against her is extremely strong. We agree.

We got a good deal on our hotel, because it's new and have blocked out rooms for the next couple of months. Frankly, I am sure that we'll be here at least till the end of the year.

The base fee that we have agreed with Rick Gates at Davis Manafort is £90,000 per month. As soon as I get the first wire transfer, I am going to tell him that the client gave his approval yesterday to proceed urgently with a Research project, a website and digital/social media strategy. Each of these will require additional budget and this should take our monthly revenue up to around £150,000. I'll update you on that as we make progress.

Thanks for all your understanding and support.







**GOVERNMENT
EXHIBIT**
U.S. v. MANAFORT, 1:17-cr-201 (A.B.J.)
**1351**

████000894



CONFIDENTIAL

# BUILDING INTERNATIONAL CONFIDENCE IN THE PROSECUTION OF YULIA TYMOSHENKO

KYIV
MAY 2012



CONFIDENTIAL



CONFIDENTIAL

-000897

# Our Specialist Practices

**Corporate Finance/ Restructuring**

- Restructuring/ Turnaround Services
- Bankruptcy Support Services
- Transaction Advisory Services
- Private Equity
- Performance Improvement
- Interim Management
- Investment Banking

**Economic Consulting**

- Antitrust & Competition Economics
- Business Valuation
- Intellectual Property
- International Arbitration
- Labor & Employment
- Public Policy
- Regulated Industries
- Securities Litigation & Risk Management

**Forensic and Litigation Consulting**

- Forensic Accounting & Advisory Services
- Global Risk & Investigations Practice
- Dispute Advisory Services
- Intellectual Property
- Trial Services
- Financial & Enterprise Data Analytics
- Compliance, Monitoring & Receivership

**Strategic Communications**

- Financial Communications
- Corporate Communications
- Public Affairs
- Creative Engagement
- Strategy Consulting & Research

**Technology**

- Computer Forensics & Investigations
- Discovery Consulting
- E-discovery Software & Services

– 3 –



CONFIDENTIAL

000898

# The Challenge: Overcoming Ignorance

- Foreign observers see prosecution of Tymoshenko as "political persecution".

- The charges are not understood: little is said about the evidence.

- Tymoshenko is seen as a female celebrity, the champion of European integration and victim of a corrupt, self-interested political-industrial group.

- Her background as rich oligarch and history of corruption completely overlooked.

- Ukraine is seen as a country struggling to escape its Soviet past, with foreign observers assuming the law is unfair, and subject to political influence.

- Tymoshenko is a skilled communicator, with a highly effective and professional team of campaigners who are fighting her cause through the media, NGOs and political communities.

- Statements by the Prosecutor General's office are dismissed as evidence of political influence.

- With global focus on Ukraine for Euro 2012 and the start of a second trial, we must be proactive in communicating the facts quickly.

– 4 –

000899

## Communication Objectives

- Explain the real story; show the evidence.

- Expose the real Tymoshenko.

- Challenge ignorance, prejudice and bias within international reporting.

- Seek to achieve accurate, fair and balanced coverage.

- Neutralise the impact of the Tymoshenko campaign tactics.

- Win acceptance for Ukraine's diligent and professional prosecution process.

- Minimize disruption of the Euro 2012 tournament.

- Defend Ukraine's international reputation.

– 5 –



000900

# Recommended strategy

1. Create a compelling story and message

2. Establish a single, rapid source for authoritative information

3. Plan now to persuade tomorrow

4. Engage the international media dynamically

5. Reinforce the diplomatic effort

6. Build a web channel for international media

7. Mobilise a digital / social media strategy

8. Monitor changing sentiment and evaluate progress

– 8 –



000901

# Create a compelling story and message

- Take control of the narrative about Tymoshenko.

- Re-frame her as a corrupt oligarch, rather than paraded as a beacon for democracy.

- Focus on the facts: evidence convinces.

- Simplify this complex case, help the media to follow it.

- Convey the facts without emotion.

- Prepare to answer any question put to us.

– 7 –



CONFIDENTIAL

000902

## Setting the key messages

- Messages will be developed by "brainstorming" together.

- Key themes include:

1. No angel: behind the hair, lurks the real Tymoshenko.
2. Anti-corruption clampdown in Ukraine: others accused.
3. Crime is crime: no citizen is above the law.
4. Fraud: the largest committed in Ukraine.
5. European analogy: other countries are pursuing corrupt politicians.
6. Evidence: reviewed by leading international experts.
7. A just response: fair treatment both at trial and in prison.

– 8 –



CONFIDENTIAL

000903

# Establish a single, rapid source for authoritative information

- Open an international press office and 'phone line.

- Log and track all international media enquiries.

- Create a timeline of all activity to enable effective planning for media "spikes".

- Launch a dedicated media information website.

- Mobilise a digital / social media strategy.

– 9 –



CONFIDENTIAL

000904

# Plan now to persuade tomorrow

- Enhance the effectiveness of key spokespersons with media training – ▮▮▮▮▮▮▮ and an alternative.

- Enhance the effectiveness of the press service with training – to be more confident and influential.

- Advise on effective management of the media at trial.

- Develop a comprehensive map of the stakeholder landscape.

- Identify the safest media targets for proactive engagement.

- Develop a timeline for future challenges and risk posed by the Tymoshenko campaign, and plan our response.

– 10 –



# Engage the international media dynamically

- Pre-brief journalists and consider their response to our position.

- If appropriate, ▮▮▮▮▮▮ or his alternative should be offered for interviews.

- Monitor the output and correct any errors.

- Follow up and maintain a dialogue with the journalist.

- Use effective online strategy to link constructive articles.

- Zero tolerance of inaccuracy or bias – rapid and firm rebuttal.



CONFIDENTIAL

000906

## Reinforce the diplomatic effort

- We are part of your team, not the President's office or Ministry of Foreign Affairs.

- Essential to show the prosecution as independent from political and diplomatic affairs.

- Coordinate with all key parties, target the right people and ensure that communications is working effectively.

- Support Ukraine's ambassadors in their communications.

- Target key foreign ambassadors in Kyiv, with clear and effective briefing documents.

- Support your dialogue with international delegations, to overcome ignorance and educate on the facts.

– 12 –



000907

# Build a web channel for international media

- Create a media information portal

- Referred to and linked to from the current Prosecutor General of Ukraine's website (www.gp.gov.ua).

- Key source for the international media.

  - Statements and responses
  - Background briefing papers
  - Photos and video to download
  - Register for email alerts
  - Social media links to YouTube, Facebook, Twitter etc
  - Calendar of key upcoming events
  - List of key contacts
  - Searchable
  - English language priority – consider others

– 13 –



CONFIDENTIAL

000908



# PROSECUTOR GENERAL OF UKRAINE
**Press Office**

## Headline to main story lorem ipsum dolor sit

Home

Public
announcements

Backgrounders

Media library

Social media centre

Calendar of events

Contacts



In egestas tempor ipsum a pellentesque.
Praesent vestibulum tempor odio, id
venenatis ipsum vestibulum sed. Praesent
fermentum justo ac velit aliquet aliquet.
Suspendisse potenti. Aliquam nisl urna,
placerat tincidunt facilisis nec, tincidunt ac
neque. | MORE ›

May 14, 2012
Lorem ipsum dolor sit amet,
consectetur adipiscing elit. Duis ac
lacus id nisi pellentesque consequat.

May 7, 2012
Lorem ipsum dolor sit amet,
consectetur adipiscing elit. Duis ac
lacus id nisi pellentesque consequat.

May 7, 2012
Lorem ipsum dolor sit amet,
consectetur adipiscing elit. Duis ac
lacus id nisi pellentesque consequat.

MORE ›

### Latest from the media centre

MORE ›



Nulla semper tortor ipsum. Cras tincidunt lobortis pretium
Aliquam suscipit mollis enim sed malesuada. Vivamus quis elit eu tellus tempus
hendrerit. Nunc sollicitudin tristique magna in dictum.
MORE ›



Nulla semper tortor ipsum. Cras tincidunt lobortis pretium
Aliquam suscipit mollis enim sed malesuada. Vivamus quis elit eu tellus tempus
hendrerit. Nunc sollicitudin tristique magna in dictum.
MORE ›



Nulla semper tortor ipsum. Cras tincidunt lobortis pretium
Aliquam suscipit mollis enim sed malesuada. Vivamus quis elit eu tellus tempus
hendrerit. Nunc sollicitudin tristique magna in dictum.
MORE ›

### Search the media centre
Can't find what you need? Search here...

Enter a subject, topic or keyword

### Social media centre
Quicklinks to all our key social media...



### Media toolkit
Quicklinks to key media...

⇄ Timeline

🖼 Images

▦ B-roll

🕐 Alerts

### Calendar
Key dates...

| MON | TUE | WED | THU | FRI | SAT | SUN |
|-----|-----|-----|-----|-----|-----|-----|
|     | 1   | 2   | 3   |     | 5   | 6   |
| 7   | 8   | 9   | 10  | 11  | 12  | 13  |
| 14  | 15  | 16  | 17  | 18  | 19  | 20  |
| 21  | 22  | 23  | 24  | 25  | 26  | 27  |
| 28  | 29  | 30  | 31  | 1   | 2   | 3   |

# Mobilise a digital / social media strategy

- Online, Tymoshenko in winning the argument – we must change this

- Smart strategy is essential – understanding convergence of traditional media, search engine optimisation (SEO) and social media.

- Create positive content, amplifying key messages for the most influential online sites venues .

- Suppress negative content via the search engines.

CONFIDENTIAL



000910



– 16 –

CONFIDENTIAL

000911

## World

# Tymoshenko Refuses Medical Treatment over 'Media Leaks'

Topic: **Yulia Tymoshenko case**



KIEV, May 15 (RIA Novosti)

Tags: Viktor Yanukovych, Yulia Tymoshenko, Kiev, Ukraine

Ukrainian ex-Prime Minister Yulia Tymoshenko, who is serving a seven-year jail term over her role in the signing of a 2009 gas deal with Russia, has refused to continue medial treatment for spinal disk herniation, Ukrainian Deputy Health Minister Olexandr Tolstanov said on Tuesday.

Last week, Tymoshenko, who has suffered from severe spinal pain, was moved to a hospital in the eastern Ukrainian city of

### Related News

• Ukraine's Top Court Shelves Tymoshenko Appeal

• Tymoshenko Stops Hunger Strike

• Tymoshenko Moved from Jail to Hospital

• Prosecutors Refuse to Open Tymoshenko Assault Case

Multimedia



# Mobilise a digital / social media strategy

## 1. Digital Analysis

- First, analyze media, blogs, videos, message boards, social network communities, Twitter and more – to capture and understand opinions, comments and conversations.
- We will make detailed recommendations for digital / social media strategy.

## 2. Digital / Social Media Dashboard

- Set up a real-time dashboard that will mine the online media landscape for news articles, social media mentions and conversations / posts.
- Follow all activity in real time and take action immediately.

## 3. RSS News Aggregator

- Establish RSS Feed Reader button and synchronize with our website
- RSS is used by millions of web users worldwide to keep track of their favourite websites
- RSS shares relevant and up-to-date information with our followers subscribers promptly after the content is published

– 18 –

# Monitor sentiment and evaluate progress

Understand and track views of international "Opinion Leaders" & "Policy Makers".

## 1. Opinion Leaders

- Influence the attitudes and behaviour change of their followers.
- Target communications at them – "trickle down" messages to influence target groups.
- This group is sophisticated and more actively engaged in media and debate that general population.

## 2. Policy Makers

- At the centre of the policy debate; occupy positions of public and private influence.
- Their views are also shaped distinctly by Opinion Leaders.
- While elected officials can be hard to reach for research purposes, their staffs, who represent and advise them, are generally reachable.

CONFIDENTIAL

000914

# Research: Benchmarking

**1. European Opinion Leaders**
Survey 1,000 respondents in business and political
leadership across the EU

**2. Ukraine Opinion Leaders**
Survey 1,000 respondents within Ukraine to understand
attitudes towards the prosecution.

**3. EU Brussels & National Policy Makers**
(EU institutions, MEPs, country MPs, their political
staffers, assistants and stakeholders)

Survey 100 high level respondents to understand their
opinions on the prosecution.

4

000915

# Research: Benchmarking

Questions:

1. Awareness of the present situation.

2. Knowledge of key facts.

3. Their perspective on key points and drivers.

4. Levels of motivation to actively or passively to be involved.

5. Information sources (push and pull).

6. Influence & credibility of information sources .

7. Impact upon reputations and actions.

8. Forecasting of likely scenarios.

– 21 –



CONFIDENTIAL

000916

# Research: Tracking & evaluating progress

Set up dedicated team and system for ongoing tracking research.

➢ Understand how sentiment is shifting – positively or negatively – to inform tactical action.

➢ Testing of messages and scenarios.

1. **Focus Group (qualitative)**

2. **Online surveys (quantitative)**

4



000917

# Forensic Accounting and Investigations

███████████ provides an integrated set of services relating to forensic accounting, fraud investigation, anti-corruption and asset tracing.

Our investigative experience is global and diverse. Our experts have been involved in many large fraud, corruption and asset tracing assignments in many jurisdictions. For example, this work includes:

▪Asset tracing investigation for the █████████████ in relation to the alleged improper transfer of many billion pounds of state owned assets.

▪Assisting the █████████████ in the recovery of $5bn which had been misappropriated by management through a series of loans, investments and other transactions.

▪Investigating allegations of bribery and corruption on behalf of the █████████ in relation to sanctions against Iraq and the █████████ "Oil For Food" programme.

▪Assisting the █████████████ with setting up an anti-corruption and fraud investigation division.

▪Assisting the Trustee for the liquidation of ████████████████████████ with a global asset tracing investigation, in relation to the largest ever reported Ponzi scheme in US financial history.

▪Assisting the █████████ police in a confidential corruption enquiry and a multi-jurisdictional asset tracing investigation. The allegations had been made against an open ended mutual fund that held investments in the Russian telecom industry. The amount involved was in excess of US$1billion.

– 23 –

CONFIDENTIAL

# Our Roadmap: This week

- Mapping of stakeholders, especially media

- Review legal documents and produce briefing packs:

  - Backgrounder
  - Message Book
  - Timeline

- Media train key spokespeople

- Identify media targets and arrange outreach

- Produce diplomatic briefing document

- Engage with third parties involved in diplomatic activity

- Develop diplomatic engagement plan

- Support ▮▮▮▮ hearing

– 24 –

000919

## Roadmap: Week 2

- ███████████ in Sweden for diplomatic meetings
- Media engagement in Sweden?
- UK media engagement
- Possible US media engagement
- Develop Trial Plan for 2nd case
- Complete trial team media training
- Training for Press Team
- Launch website and populate it with content



CONFIDENTIAL

000920

# Roadmap: Week 3

- Brussels media outreach

- French media outreach

- German media outreach

- Discuss issues plan for Euro 2012:
  security/broadcasting/stunts

- Initiate social media strategy

- Present research and stakeholder mitigation plan

- Plan for use of report by law firm

CONFIDENTIAL

000921



CONFIDENTIAL

000922

# EXHIBIT 1357

Message

From: ███████████████
Sent: 6/22/2012 3:59:27 PM
To: ███████████████████████

Subject: FW: RAPSI.com: U.S. attorneys in ECHR under Tymoshenko case to cost Ukraine $12,5k

Yet another Minister swallows his foot.

From: ████████████████
Sent: 22 June 2012 16:58
To: 'Van Der Zwaan, Alex'
Cc: █████████████
Subject: RE: RAPSI.com: U.S. attorneys in ECHR under Tymoshenko case to cost Ukraine $12,5k

My goodness, you are very good value. I suggest that you stick to the agreed reactive statement, if you receive any enquiries. On the fees issue, if asked, I would say that this is the client's prerogative to comment upon but your policy is to treat it as confidential and make no further comment. But it's clearly a number that will be greeted with considerable scepticism.

The more serious concern is the perception of a conflict of interest. Why has ███████ done this? It seems extraordinarily stupid to have volunteered the information at this time, before your Report has been published. I think you will need to be ready to answer questions on this robustly, to explain very clearly how scrupulously you have undertaken your review, without fear or favour, and that the conclusions will pull no punches.

████████

From: Van Der Zwaan, Alex ███████████████
Sent: 22 June 2012 16:41
To ████████████████████
Cc ████████████
Subject: FW: RAPSI.com: U.S. attorneys in ECHR under Tymoshenko case to cost Ukraine $12,5k

████████

See below . Would be interested to know your thoughts.

Alex

Alex R. van der Zwaan
Associate
Skadden, Arps, Slate, Meagher & Flom (UK) LLP
████████████████████████

Please consider the environment before printing this email.

From: ██████████████
Sent: Friday, June 22, 2012 3:15 PM

GOVERNMENT EXHIBIT
U.S. v. MANAFORT, 1:17-cr-201 (A.B.J.)
1357

CONFIDENTIAL ███ 003080

**To:** ███████████████████████████████████

**Cc:** █

**Subject:** RAPSI.com: U.S. attorneys in ECHR under Tymoshenko case to cost Ukraine $12,5k

## U.S. attorneys in ECHR under Tymoshenko case to cost Ukraine $12,5k

**KIEV, June 22 - RAPSI.** The U.S. law firm Skadden will cooperate with the Ukrainian Justice Ministry as part of former Prime Minister Yulia Tymoshenko's lawsuit in the European Court of Human Rights, and charge the country no less than $12,500, ██████████████████████████████████ said on Friday.

In August 2011, Tymoshenko submitted to the European court an appeal against her arrest. Her defense submitted to the court additional documents on the violation of her right to a fair trial.

The Justice Ministry attracted Skadden to take part in the process under Tymoshenko's procedure in the court in late May. Earlier ████████████ said Skadden is a leading firm.

The Justice Ministry entered into a contract with the firm worth 100,000 hryvnas ($12,500) in accordance with Ukrainian legislation ████████████ said.

A Kiev district court sentenced Tymoshenko in October 2011 to seven years in prison for abuse of power in signing gas contracts between ███████████████████████████

The judge declared that Tymoshenko abused her position as prime minister and issued directives regarding gas contract negotiations in Moscow, which were poorly documented and lacked the government's consent.

Tymoshenko has been diagnosed with a spinal disc herniation.

German doctors have been treating her at a ███████ hospital since May 9.

--------------------------------------------------------------------------------
****************************************************

To ensure compliance with Treasury Department regulations, we advise you that, unless otherwise expressly indicated, any federal tax advice contained in this message was not intended or written to be used, and cannot be used, for the purpose of (i) avoiding tax-related penalties under the Internal Revenue Code or applicable state or local tax law provisions or (ii) promoting, marketing or recommending to another party any tax-related matters addressed herein.
****************************************************
****************************************************

This email (and any attachments thereto) is intended only for use by the addressee(s) named herein and may contain legally privileged and/or confidential information. If you are not the intended recipient of this email, you are hereby notified that any dissemination, distribution or copying of this email (and any attachments thereto) is strictly prohibited. If you receive this email in error please immediately notify me ███████████ and permanently delete the original email (and any copy of any email) and any printout thereof.

Further information about the firm, a list of the Partners and their professional qualifications will be provided upon request.
****************************************************

# EXHIBIT 1486

**Subject:** Dinner / Manafort, ████████ & ████ reservation under ██████
**Location:** Capitol Hill Club 300 First Street, SE Washington, DC 20003

**Start:** 3/19/2013 11:00 PM
**End:** 3/20/2013 1:00 AM
**Show Time As:** Busy

**Recurrence:** (none)

**Meeting Status:** Organizer

**Organizer:** ███████
**Required Attendees:** Paul Manafort ████████████████ Rick Gates
**Optional Attendees:** ███████████████

████ and Paul to have Dinner with ██████████ March 19 at 7pm  time may be moved up, depending on vote....
**Cc:** Rick and ████

**From:** ███████████████████████

███████████



# EXHIBIT 1608

**From:** ████████████

**To:** ████████████

**Sent:** 5/4/2012 6:35:31 PM

**Subject:** Send to Rick?

**Want me to send to Rick, or you?**

**-----Original Message-----**

**From:** ████████████

**Sent: Friday, May 04, 2012 2:33 PM**

**To:** ████████████

**Subject: RE: Have**

**█pls send to rick to have centre send to us**

**-----Original Message-----**

**From:** ████████

**Sent: Friday, May 04, 2012 10:17 AM**

**To:** ████████████

**Subject: RE: Have**

**This could work, but one condition: Either ████████s counsel or I should draft the statement they sign.**

**Under the FARA statute and under the forms, we need to ensure that ECFMU is not "directly or indirectly supervised, directed, controlled, financed, or subsidized in whole or in major part" by a government of a foreign country or a political party. See 22 USC 611.**

**-----Original Message-----**

**From:** ████████

**Sent: Friday, May 04, 2012 9:55 AM**

**To:** ████████████

**Subject: Fw: Have**

**Spoke last night**

**He will send us statement that centre gets no funding from gov or party We should put them under a continuing duty to report on this issue Then LDA file**

████████████



GOVERNMENT
EXHIBIT

U.S. v. MANAFORT, 1:17-cr-201 (A.B.J.)

**1608**



----- Original Message -----

From: Rick Gates [mailto:

Sent: Thursday, May 03, 2012 06:17 PM

To:

Subject: Re: Have

No worries. Call back when you can. Thanks.

On May 3, 2012, at 6:17 PM,                                                    > wrote:

> To wait 20 minutes to talk

>



FOIA – Confidential Treatment Requested

# EXHIBIT 1763

**From:** ███████████████████████
**Date:** November 29, 2012 1:12:18 PM EST
**To:** Rick Gates ███████
**Cc:** ███████████████████████████████████
**Subject: RE: Assessment**

Rick,

I have attached our assessment.  Please let us know if you have any questions or comments

Best,

███████

███████████████

████████████████████████

███████ (d) | | (c) ████████████████████████

PLEASE NOTE NEW ADDRESS

The information contained in this transmission is attorney privileged and/or confidential information intended for the use of the individual or
entity named above. If the reader of this message is not the intended recipient, you are hereby notified that any dissemination, distribution or
copying of this communication is strictly prohibited.

**From:** Rick Gates ███████████████████
**Sent:** Thursday, November 29, 2012 8:49 AM

GOVERNMENT
EXHIBIT
U.S. v. MANAFORT, 1:17-cr-201 (A.B.J.)
1763

**To:**
**Cc:**
**Subject:** Assessment

Sorry for the fire drill but I need some input from you by 100pm today. I need you guys to pull some notes from each firm that pertain to an assessment on the client and our efforts. In simple terms, I need to know, from your perspective, the following:

1. What has gone well with the project

2. What can be done better (strategy, communications, planning, etc.)

3. Reviewing the last 6-months what are the strengths and weaknesses you have seen (this can include those of the team and those of the client. For example, the Durbin resolution showed us that the client is extremely weak in Congress even with an Embassy present)


As we know in this business, client relationships are an evolving process. We do not need to get into strategy here. Call this your thoughts over the last 6-months. I need to take your material and create a larger document that will be used to brief the President. There will be no attributions. This will be deemed an assessment by Paul on what Ukraine has done well and what it can do better as we move into 2013. It does not need to be polished as it is more notes for me to build the larger document. It can be in bullet format or how ever you like. Call me if you have any questions. Thanks.

1. What has gone well with the project?

- Our outreach to most offices on the Hill and opinion leaders in DC have been well received, but in order to maintain credibility, we must deliver surrogates that we set up meetings for.
- Crisis communication, from both the client perspective and our perspective has been well defined.
- Election communication and strategy.  The constant flow of information enabled our team to thoroughly and comprehensively update third parties that were interested in the elections.
  - o Reporters responded well to our daily outreach because there was substance to them.
- @modern_ukraine receives a good level of engagement on Twitter and has high-quality followers. There has been good communication here between MCW and FH.


2. What can be done better (strategy, communications, planning, etc.).  Reviewing the last 6-months what are the strengths and weaknesses you have seen (this can include those of the team and those of the client. For example, the Durbin resolution showed us that the client is extremely weak in Congress even with an Embassy present).

- We need to re-start our outreach in 2013 with a proactive, systematic approach.
  - o Define our messaging.
  - o Concentrate our outreach.
  - o Build relationships with the new leadership of both Senate Foreign Relations and House Foreign Affairs Committees.
  - o Manufacture initiatives to engage US opinion leaders.
  - o Develop an early warning system within the Administration and State Department to alert us of possible actions and statements regarding Ukraine.

- Major problem: Fire drills & trip dysfunction.  In order to do our work well, we need time. This will allow our team to eliminate scrambling to see who is available to do our meetings, and enable our team to really get the most beneficial meetings for Ukrainian officials.
  - o Embassy double-booking and/or taking the lead on meetings we set up (without our knowledge).  We need to better open the lines of communication between our organization and the Embassy.

- The ECFMU has withstood initial scrutiny and has started to become a voice that opinion leaders consider.  In order to become more credible, we need to initiate the following to become more visible and build a reputation:
  - o Programming throughout 2013 in DC (and possibly NYC)
  - o A new leader of the ECFMU that can be a credible, reliable and relatively unbiased voice.
  - o Consideration of a Washington voice/official of the ECFMU in Washington, and/or an Executive Director of the US Allies Project (same criteria as ECFMU leader in Brussels).
  - o Surrogates (foreign policy analysts, human rights experts, etc.) both on contract and not, that we can work to cycle in to panels and conversations led by NGO's that involve Ukraine in regular intervals.

- o Interactions that don't involve airplanes – utilizing available technology (Skype, teleconferencing, etc.) that will allow Ukrainian leaders to connect with U.S. elites without having to travel.

- Media engagement. Outside of the elections, it has been difficult to drive a narrative with the press corps without surrogates that can deliver meaningful news that relates to the US.  We need to develop and manufacture initiatives and programming to enable ECFMU to engage media in a purposeful way with a more tangible and action-oriented pitch.
  - o To this end, our blogger program during the election-season produced impactful results.  We strongly recommend restarting this program to help develop the aforementioned initiatives and programming.
  - o We also recommend increasing our access to Facebook so that we can work to make it as engaging as our current Twitter account.
  - o The website upgrade that was talked about a few months back is also strongly encouraged in order to increase functionality from the current word press website.

- It would be helpful for our team to analyze a list of available surrogates for the Centre.  We think it would be productive to go through the list and give accurate assessments on the plausible success that each visitor would have and the attention that the visits would receive.  This would allow us to plan far ahead of time for who we would target with each visitor.

- Opposition conversations.  We need to change tactics regarding the opponents that we face in the US.  Knowing that we will not convert opponents, we need to let the air out of the room and slowly chip away at opponents (ex: ███████████████████████████ have been engaged in conversations that we have had with them and have both reached out to us regarding their concerns and points of view).
  - o We have to define what we are saying and who we need to be saying it to.

# EXHIBIT 1937

| | |
|---|---|
| **From:** | |
| **To:** | Rick Gates |
| **CC:** | |
| **Sent:** | 11/19/2013 12:50:29 AM |
| **Subject:** | Fwd: ████████ RESOLUTION CALLING FOR THE RELEASE OF FORMER UKRAINE PRIME MINISTER YULIA TYMOSHENKO PASSES US SENATE |
| **Attachments:** | ATT00001.htm; ATT00002.htm; ATT00003.htm; BILLS-113sres165rs.pdf; Ukraine Res Floor - Final.pdf; image001.png |

Sent from my iPhone

Begin forwarded message:

**From:**
**Date:** November 18, 2013 at 7:34:42 PM EST
**To:**
**Subject: Fw:** ████ RESOLUTION CALLING FOR THE RELEASE OF FORMER UKRAINE PRIME MINISTER YULIA TYMOSHENKO PASSES US SENATE

Here's ████ statement and his joint statement with ████

████ principal

The information contained in this transmission is attorney privileged and/or confidential information intended for the use of the individual or entity named above. If the reader of this message is not the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited.

**GOVERNMENT EXHIBIT**
U.S. v. MANAFORT, 1:17-cr-201 (A.B.J.)
**1937**

For Immediate Release

Contact:

November 18, 2013

RESOLUTION CALLING FOR THE RELEASE OF FORMER UKRAINE
PRIME MINISTER YULIA TYMOSHENKO PASSES US SENATE

*Tymoshenko Has Been Held Since 2011 on Politically Motivated Charges*

Washington, D.C. -                                              and member of the
Senate Foreign Relations Committee,                        today led the
unanimous passage of a Senate resolution calling for the release of Ukraine's
former Prime Minister, Yulia Tymoshenko.

In 2011, Tymoshenko was sentenced to seven years in prison for allegedly
abusing her power in the awarding of a natural gas contract. Numerous
political and human rights groups have called the charges politically
motivated and selectively prosecuted and called for Tymoshenko's release.

*said: "I am dismayed by the seeming inability to find a reasonable*
*compromise that would allow Ms. Tymoshenko to be released to seek*
*medical treatment abroad, a move that would allow us to instead focus*
*on strengthening the important ties between the US, EU, and Ukraine.*
*Just last week, after two years of dithering on finding a solution, the*
*Ukrainian Parliament postponed a vote on a bill that would have secured*
*Tymoshenko's release. So today, I've offered, and the Senate has*

00049021

*unanimously approved, a resolution calling for the immediate release of Yulia Tymoshenko."*

*"There is still time to find a solution before the Eastern partnership Summit takes place at the end of this month, so I am hopeful that our friends in Ukraine will be able to find an honorable way forward that puts the best interest of their country first and ends Ms. Tymoshenko's detention."*

█████████████████████████████████████
*"President Yanukovych should seize a historic opportunity for the Ukraine by freeing former Prime Minister Yulia Tymoshenko from jail, and agreeing to a crucial trade and political agreement with the European Union," said Sen.*

████████████ *"This is a moment requiring presidential leadership to create an opportunity for a more hopeful and prosperous future for the Ukraine, not a time to step backward and retreat on the march toward increased democracy and freedom. President Yanukovych needs to make the right decision, sign the Association Agreement with the European Union, and take the necessary steps to achieve this important goal."*

Since her trial and imprisonment in 2011, numerous human rights groups and government around the world, as well as the European Court of Human Rights, have called the charges politically motivated and called for Ms. Tymoshenko's release.

The Parliamentary Assembly Council of Europe passed a resolution in January 2012, declaring that the articles under which Ms. Tymoshenko was convicted were, "overly broad in application and effectively allow for ex post facto criminalization of normal political decision making."

Later that year, both the European Parliament and the U.S. Senate passed resolutions condemning the sentencing of Ms. Tymoshenko and calling for her release.

00049022

In late April, The European Court of Human Rights ruled that Ms. Tymoshenko's pre-trial detention was unlawful, that the lawfulness of her detention had not been properly reviewed, that her right to liberty had been restricted, and that she had no possibility to seek compensation for her unlawful deprivation of liberty.

Video of ▮▮▮▮ floor remarks on the resolution will be available here. A copy of the resolution – cosponsored by ▮▮▮▮

▮▮▮▮ – is attached along with Senator ▮▮▮▮ prepared remarks on the measure.

-30-

00049023

FOIA – Confidential Treatment Requested

FOIA – Confidential Treatment Requested

III

**Calendar No. 95**

113TH CONGRESS
1ST SESSION

**S. RES. 165**

Calling for the release from prison of former Prime Minister of Ukraine Yulia Tymoshenko in light of the recent European Court of Human Rights ruling.

---

## IN THE SENATE OF THE UNITED STATES

JUNE 10, 2013

JUNE 25, 2013

Reported by ▮▮▮▮▮▮▮, with an amendment and an amendment to the preamble

[Strike out all after the resolving clause and insert the part printed in italic]

[Strike the preamble and insert the part printed in italic]

---

# RESOLUTION

Calling for the release from prison of former Prime Minister of Ukraine Yulia Tymoshenko in light of the recent European Court of Human Rights ruling.

Whereas, in August 1991, the Ukrainian Parliament declared independence from the Soviet Union and approved decrees to mint its own currency and take command of all Soviet military units on its soil;

00049026

2

Whereas, in December 1991, 90 percent of Ukrainians voted
in a referendum to support independence from the Soviet
Union;

Whereas Ukraine has experienced increased economic and po-
litical cooperation with Europe and the United States
since its independence from the Soviet Union;

Whereas, in 1996, Ukraine adopted its first democratic con-
stitution that included basic freedoms of speech, assem-
bly, religion, and press;

Whereas, in 2004, Ukrainians organized a series of historic
protests, strikes, and sit-ins known as the "Orange Revo-
lution" to protest electoral fraud in the 2004 presidential
election;

Whereas Yulia Tymoshenko was a leader of the Orange Revo-
lution and was first elected as Prime Minister in 2005;

Whereas, in the 2010 presidential election, incumbent Presi-
dent Viktor Yushchenko won only 5.5 percent in the first
round of voting, which left former Prime Minister Viktor
Yanukovich and then Prime Minister Yulia Tymoshenko
to face one another in a run-off election;

Whereas Mr. Yanukovich defeated Ms. Tymoshenko by a
margin of 49 percent to 44 percent;

Whereas, on October 11, 2011, Ms. Tymoshenko was found
guilty and sentenced to seven years in prison on charges
that she abused her position as Prime Minister in connec-
tion with a Russian natural gas contract;

Whereas, on January 26, 2012, the Parliamentary Assembly
Council of Europe (PACE) passed a resolution (1862)
that declared that the articles under which Ms.
Tymoshenko was convicted were "overly broad in applica-

•SRES 165 RS

FOIA – Confidential Treatment Requested                                                00049027

tion and effectively allow for ex post facto criminalization
of normal political decision making'';

Whereas, on May 30, 2012, the European Parliament passed
a resolution (C153/21) deploring the sentencing of Ms.
Tymoshenko;

Whereas, on September 22, 2012, the United States Senate
passed a resolution (S. Res. 466, 112th Congress) that
condemned the selective and politically motivated pros-
ecution and imprisonment of Yulia Tymoshenko, called
for her release, and called on the Department of State to
institute a visa ban against those responsible for the im-
prisonment of Ms. Tymoshenko and the other political
leaders associated with the 2004 Orange Revolution;

Whereas, on April 7, 2013, President of Ukraine Viktor
Yanukovich pardoned former interior minister Yuri
Lutsenko and several other opposition figures allied with
Ms. Tymoshenko;

Whereas, on April 30, 2013, the European Court of Human
Rights, which settles cases of rights abuses after plain-
tiffs have exhausted appeals in their home country
courts, ruled that Ms. Tymoshenko's pre-trial detention
had been arbitrary; that the lawfulness of her detention
had not been properly reviewed; that her right to liberty
had been restricted; and, that she had no possibility to
seek compensation for her unlawful deprivation of liberty;

Whereas, on April 30, 2013, ███████████ ███ ████
██████████ reiterated the United States call that
Ms. Tymoshenko ''be released and that the practice of se-
lective prosecution end immediately'' in light of the Euro-
pean Court of Human Rights decision;

4

Whereas ~~Ukraine hopes to sign an association agreement with the European Union during the Eastern Partnership Summit in November 2013; and~~

Whereas, ~~after the European Court of Human Rights ruling,~~

▮▮▮▮▮▮▮▮▮▮▮▮ ▮ ▮▮▮▮▮▮

~~stated that "Ukraine is still miles away from fulfilling European standards" and must "end its selective justice" before signing the association agreement. Now, therefore, be it~~

*Whereas, in August 1991, the Ukrainian Parliament declared independence from the Soviet Union and approved decrees to mint its own currency and take command of all Soviet military units on its soil;*

*Whereas, in December 1991, 90 percent of Ukrainians voted in a referendum to support independence from the Soviet Union;*

*Whereas Ukraine has experienced increased economic and political cooperation with Europe and the United States since its independence from the Soviet Union;*

*Whereas, in 1996, Ukraine adopted its first democratic constitution that included basic freedoms of speech, assembly, religion, and press;*

*Whereas in 2004, Ukrainians organized a series of historic protests, strikes, and sit-ins known as the "Orange Revolution" to protest electoral fraud in the 2004 presidential election;*

*Whereas Yulia Tymoshenko was a leader of the Orange Revolution and was first elected as Prime Minister in 2005;*

*Whereas, in the 2010 presidential election, incumbent President Viktor Yushchenko won only 5.5 percent in the first round of voting, which left former Prime Minister Viktor*

•SRES 165 RS

FOIA – Confidential Treatment Requested

00049029

5

Yanukovich and then Prime Minister Yulia Tymoshenko to face one another in a run-off election;

Whereas Mr. Yanukovich defeated Ms. Tymoshenko by a margin of 49 percent to 44 percent;

Whereas, on October 11, 2011, Ms. Tymoshenko was found guilty and sentenced to seven years in prison on charges that she abused her position as Prime Minister in connection with a Russian natural gas contract;

Whereas, on January 26, 2012, the Parliamentary Assembly Council of Europe (PACE) passed a resolution (1862) that declared that the articles under which Ms. Tymoshenko was convicted were "overly broad in application and effectively allow for ex post facto criminalization of normal political decision making";

Whereas, on May 30, 2012, the European Parliament passed a resolution (C153/21) deploring the sentencing of Ms. Tymoshenko;

Whereas, on September 22, 2012, the United States Senate passed a resolution (S. Res 466, 112th Congress) that condemned the selective and politically motivated prosecution and imprisonment of Yulia Tymoshenko, called for her release based on the politicized charges, and called on the Department of State to institute a visa ban against those responsible for the imprisonment of Ms. Tymoshenko and the other political leaders associated with the 2004 Orange Revolution;

Whereas, on April 7, 2013, President of Ukraine Viktor Yanukovich pardoned former interior minister Yuri Lutsenko and several other opposition figures allied with Ms. Tymoshenko;

•SRES 165 RS

00049030

6

*Whereas, on April 30, 2013, the European Court of Human Rights, which settles cases of rights abuses after plaintiffs have exhausted appeals in their home country courts, ruled that Ms. Tymoshenko's pre-trial detention had been arbitrary; that the lawfulness of her pre-trial detention had not been properly reviewed; that her right to liberty had been restricted; and, that she had no possibility to seek compensation for her unlawful deprivation of liberty;*

*Whereas, on April 30, 2013,* ▬▬▬▬▬▬▬
▬▬▬▬▬▬▬ *reiterated the United States call that Ms. Tymoshenko "be released and that the practice of selective prosecution end immediately" in light of the European Court of Human Rights decision;*

*Whereas Ukraine hopes to sign an association agreement with the European Union during the Eastern Partnership Summit in November 2013; and*

*Whereas, after the European Court of Human Rights ruling,*
▬▬▬▬▬▬▬▬▬▬▬▬
▬▬▬▬▬▬ *stated that "Ukraine is still miles away from fulfilling European standards" and must "end its selective justice" before signing the association agreement: Now, therefore, be it*

1    *Resolved,* ~~That the Senate—~~

2    ~~(1) calls on the Government of Ukraine to re-~~
3    ~~lease former Prime Minister Yulia Tymoshenko from~~
4    ~~imprisonment in light of the April 2013 European~~
5    ~~Court of Human Rights verdict;~~

6    ~~(2) calls on the European Union members to in-~~
7    ~~clude the release of Ms. Tymoshenko from imprison-~~
8    ~~ment as an important criterion for signing an asso-~~

•**SRES 165 RS**

00049031

1 ~~ciation agreement with Ukraine at the upcoming~~
2 ~~Eastern Partnership Summit in Lithuania;~~

3   ~~(3) expresses its belief and hope that Ukraine's~~
4 ~~future rests with stronger ties to Europe, the United~~
5 ~~States, and others in the community of democracies;~~
6 ~~and~~

7   ~~(4) expresses its concern and disappointment~~
8 ~~that the continued selective and politically motivated~~
9 ~~imprisonment of former Prime Minister Yulia~~
10 ~~Tymoshenko unnecessarily detracts from Ukraine's~~
11 ~~otherwise strong relationship with Europe, the~~
12 ~~United States, and the community of democracies.~~

13   *That the Senate—*

14   *(1) calls on the Government of Ukraine to release*
15   *former Prime Minister Yulia Tymoshenko from im-*
16   *prisonment based on politicized and selective charges*
17   *and in light of the April 2013 European Court of*
18   *Human Rights verdict;*

19   *(2) calls on the European Union members to in-*
20   *clude the release of Ms. Tymoshenko from imprison-*
21   *ment based on politicized and selective charges as a*
22   *criterion for signing an association agreement with*
23   *Ukraine at the upcoming Eastern Partnership Sum-*
24   *mit in Lithuania;*

FOIA – Confidential Treatment Requested                     00049032

8

1    *(3) expresses its belief and hope that Ukraine's*
2    *future rests with stronger ties to Europe, the United*
3    *States, and others in the community of democracies;*
4    *and*

5    *(4) expresses its concern and disappointment*
6    *that the continued selective and politically motivated*
7    *imprisonment of former Prime Minister Yulia*
8    *Tymoshenko unnecessarily detracts from Ukraine's*
9    *otherwise strong relationship with Europe, the United*
10    *States, and the community of democracies.*

•**SRES 165 RS**

FOIA – Confidential Treatment Requested

00049033

FOIA – Confidential Treatment Requested

00049035

**Calendar No.95**

113TH CONGRESS
1ST SESSION
**S. RES. 165**

# RESOLUTION

Calling for the release from prison of former Prime
Minister of Ukraine Yulia Tymoshenko in light
of the recent European Court of Human Rights
ruling.

JUNE 25, 2013

Reported with an amendment and an amendment to the
preamble

FOIA – Confidential Treatment Requested

```
<<
/ASCII85EncodePages false
/AllowTransparency false
/AutoPositionEPSFiles true
/AutoRotatePages /None
/Binding /Left
/CalGrayProfile (Dot Gain 20%)
/CalRGBProfile (sRGB IEC61966-2.1)
/CalCMYKProfile (U.S. Web Coated \050SWOP\051 v2)
/sRGBProfile (sRGB IEC61966-2.1)
/CannotEmbedFontPolicy /Error
/CompatibilityLevel 1.4
/CompressObjects /Off
/CompressPages true
/ConvertImagesToIndexed true
/PassThroughJPEGImages true
/CreateJobTicket false
/DefaultRenderingIntent /Default
/DetectBlends true
/DetectCurves 0.0000
/ColorConversionStrategy /LeaveColorUnchanged
/DoThumbnails false
/EmbedAllFonts true
/EmbedOpenType false
/ParseICCProfilesInComments true
/EmbedJobOptions true
/DSCReportingLevel 0
/EmitDSCWarnings false
/EndPage -1
/ImageMemory 1048576
/LockDistillerParams true
/MaxSubsetPct 100
/Optimize false
/OPM 1
/ParseDSCComments true
/ParseDSCCommentsForDocInfo true
/PreserveCopyPage true
/PreserveDICMYKValues true
/PreserveEPSInfo true
/PreserveFlatness true
/PreserveHalftoneInfo false
/PreserveOPIComments true
/PreserveOverprintSettings true
/StartPage 1
/SubsetFonts false
/TransferFunctionInfo /Preserve
/UCRandBGInfo /Preserve
/UsePrologue true
/ColorSettingsFile ()
/AlwaysEmbed [ true
]
/NeverEmbed [ true
]
/AntiAliasColorImages false
/CropColorImages true
/ColorImageMinResolution 300
```

00049036

```
/ColorImageMinResolutionPolicy /OK
/DownsampleColorImages false
/ColorImageDownsampleType /Bicubic
/ColorImageResolution 300
/ColorImageDepth 8
/ColorImageMinDownsampleDepth 1
/ColorImageDownsampleThreshold 1.50000
/EncodeColorImages true
/ColorImageFilter /FlateEncode
/AutoFilterColorImages false
/ColorImageAutoFilterStrategy /JPEG
/ColorACSImageDict <<
  /QFactor 0.15
  /HSamples [1 1 1 1] /VSamples [1 1 1 1]
>>
/ColorImageDict <<
  /QFactor 0.15
  /HSamples [1 1 1 1] /VSamples [1 1 1 1]
>>
/JPEG2000ColorACSImageDict <<
  /TileWidth 256
  /TileHeight 256
  /Quality 30
>>
/JPEG2000ColorImageDict <<
  /TileWidth 256
  /TileHeight 256
  /Quality 30
>>
/AntiAliasGrayImages false
/CropGrayImages true
/GrayImageMinResolution 300
/GrayImageMinResolutionPolicy /OK
/DownsampleGrayImages false
/GrayImageDownsampleType /Bicubic
/GrayImageResolution 300
/GrayImageDepth 8
/GrayImageMinDownsampleDepth 2
/GrayImageDownsampleThreshold 1.50000
/EncodeGrayImages true
/GrayImageFilter /FlateEncode
/AutoFilterGrayImages false
/GrayImageAutoFilterStrategy /JPEG
/GrayACSImageDict <<
  /QFactor 0.15
  /HSamples [1 1 1 1] /VSamples [1 1 1 1]
>>
/GrayImageDict <<
  /QFactor 0.15
  /HSamples [1 1 1 1] /VSamples [1 1 1 1]
>>
/JPEG2000GrayACSImageDict <<
  /TileWidth 256
  /TileHeight 256
  /Quality 30
>>
```

00049037

```
/JPEG2000GrayImageDict <<
  /TileWidth 256
  /TileHeight 256
  /Quality 30
>>
/AntiAliasMonoImages false
/CropMonoImages true
/MonoImageMinResolution 1200
/MonoImageMinResolutionPolicy /OK
/DownsampleMonoImages false
/MonoImageDownsampleType /Bicubic
/MonoImageResolution 1200
/MonoImageDepth -1
/MonoImageDownsampleThreshold 1.50000
/EncodeMonoImages true
/MonoImageFilter /CCITTFaxEncode
/MonoImageDict <<
  /K -1
>>
/AllowPSXObjects false
/CheckCompliance [
  /None
]
/PDFX1aCheck true
/PDFX3Check false
/PDFXCompliantPDFOnly true
/PDFXNoTrimBoxError false
/PDFXTrimBoxToMediaBoxOffset [
  0.00000
  0.00000
  0.00000
  0.00000
]
/PDFXSetBleedBoxToMediaBox true
/PDFXBleedBoxToTrimBoxOffset [
  0.00000
  0.00000
  0.00000
  0.00000
]
/PDFXOutputIntentProfile (U.S. Web Coated \050SWOP\051 v2)
/PDFXOutputConditionIdentifier (CGATS TR 001)
/PDFXOutputCondition ()
/PDFXRegistryName (http://www.color.org)
/PDFXTrapped /False

/CreateJDFFile false
/Description <<
  /ARA
```

<FEFF06270633062A062E062F0645002006470630064700200627064406250639062F0627062F062706
2A002006440625064606340627062100200648062B062706260642002000410064006F0062006500200
50500440046000200645062A064806270641064206290020062A0645062706450627064B002006450639
0020064506420627064A064A06330020002000500044040046002F0058002D00310061003A0032003000030003
100200630006480020020627064406450646480627063506410627062A002006270640642064A0627063306
4A062900200049005300300400F00200644062A06280627062F064400200645062D062A0648064A0627062A
002006270644063106330640680645062706270620A060C002006440644064406270637064406270639000200639064

40649002006270644064506320064A062F002006450646002006270644064506390644064806450627062
A0020062D06480644002006250646063406270621002006480626270626042002000500044004600
2006270644064506264A064806270641064206290020064506390020005000440046002F0058002D00310
061060C002006270644064631062C062706210020064506310627062C063906290020062F0644064A0644
002006450633062A062E062F06450020004100630072006F006200610074061B0020064A06450643064
600200064106A062A062D00200648062B062706260642002000500044004600200627064440650064064063406
23062900200628062706330062A062E062F06270645002000410064006F00620065007400200620006480
04100604006F00620065002000520065006100640065005007200200620635062F0627063100200034002E
00300020064806270644062506350632062F0627063106270062A0020062706440623062D062F062B002E>
    /BGR

<FEFF04180437043f043e043b04370432043004390442043500200442043504370438002043d0430044
104420440043e0439043002c00200437043000200437043300200437043300200200437043404300432043
00442043500200040064006f006200650020000500044004600a043043c0435043d044
20438002c0020043a043e04380442043e002004420440044f043104320430004200200430044304340043000200441043
5020043f0440043e0432043530440044f0432300430044200200438043b0438002004420440044043104310432
043000200043043000200440044043200200437043204320435044204420041104420432043043004300200020
00500040046002f0058002D00310061003a0032003003000310020002d0029005300040f002004410
4420430043043000200441044043e043204320020043704c0435043d0437002004200443043000204300430043000230
44004300044404380447043d04380020043c043004420435044004380430043043043043d0438002e0020002004170
4300020043204350447043503002004300434430044043f043043043600437004000430043043000204404360438044f0020043e04
42043d043e0441043043e04200044104044043043203200043004340043043200430043004300200043d043043000
200050004400460002004340430043043e043a04304300440440044043500044044000438002c00200044104044043204
350044204044204320430304304904380020044304380020043043034043000200047006f005800200310061002c00
200432043204360020020002000042040004043a0430043c04a043034043430430004540044042004f0020000200420042104
200044043043004304304300435043043043400438043004380442043504350026f006200610074006200200434004304304a043f0042104
4a043704340430043430304304350443043008200004500440054000460200200430004442043043004500434444434300200e043d0443430430030044
3d0442043800200430043c043e043304300442002004340430004380020044104350020043043043043c0438043a043500
4f044200200004100200041006300304307200006f006200610074002000380000200044100640406f006206500020005
2006500610064006500720020000200430000038020000044100430002000204ee553ca66f49ad87248672c676562535f00521b5efa768400200050000440046002000200658768633002
>
    /CHT

<FEFF4f7f752890194e9b8a2d7f6e5efa7acb76840020041000640006f006200065002000200500044004600206
5874ef67b26540800200050004400460020f0058002d00310061003a0032003003000300310020898f7bc430
025f8c8005662f70ba57165f6251675bb94ea463db800c5c08958052365b9a76846a196e96300295dc65bc
5efa7acb7b26540800200050005000044006f0058002d00310061001002089887bc476840020050050000440046
00
2065874ef676848a737d308cc78a0aff0c8acb53c395b1201c004100630072006f006200620061004100630072
5288005630753572010d3002060a853ef4ee54f7f7528002000041000640027006f0062006100740020548c002
000410064006f00620065005000200520000656006100640056500720000034002e003000204ee553ca66f49ad8
7248672c4f86958b555f5df25efa7acb7684002000500044004600206065874ef63002>
    /CZE

<FEFF005400610074006f002000e0061007300740600076006100760065006e00ed002000700006f0075017e006
9006a00740006500020006b00200020076007900074007600760065006e00ed00200200200046006f0075006
d006500020006740016f00200004100640006f00620065005000200520000050004400460002c002006600600740065005007200e9
002000730065005200020062002000750600064006f0075007300200620006000400620066400760006067240004610016f0107400
20006e006500560062006006f02000d007500730074300ed00200002007600074000790006800620006f07600061007400
300740006f1006e006064006107200640075002000050005000440046002f0058002d00310061003a00320030003

00040039

00031002c0020007300740061006e0064006100720064007500200049005300 4f002000700072006f0020
0070015900650064006400e1007600e1006e00ed0020006700720061006600690063006b00e90068006f0020
006f00620073006100680075002e002000200044006100 6c016100ed00200069006e0066006f0072006d0
061006300650020006f0020007600790074007600e101590065006e00ed00200064006f006b0075006d00
65006e0074016f002000500044004600200076007900 68006f00760075006a00ed006300ed00630068002
0005000440046002f0058002d00310061002000 6e0061006a0064006500740065002000760020005001 5
900ed00720075010d0063006500200075017e0069007600610074 0065006c0065002000410063007200 6
f006200610074 0075002e002000200056007900740076006f01590065006e00e90020006400 6f006b0075
006d0065006e007400790020005000440046002000620075006400650020006d006f017e006e00e90020
006f00740065007601590000ed0074002000760020007000720067007200610006d0065006300680020 0
0410063007200 6f0062006100740020006100200041006400 6f0062006500200052006500610064006500
7200200034002e0030002000610020006e006f0076011b006a016100ed00630068002e>
/DAN
<FEFF004200720075006700200069006e0064007300740069006c006c0069006e006700650072006e00
6500200074006900 6c0020006100740020006f007000720065007400740065002000410064006f0062006
50020005000440046002d0064006f006b0075006d0065006e00740065007200 2c00200064006500720020
0006600f80072007300740020007300 6b0061006c002000730065007300200069006700 65006e006e006
5006d00200065006c006c0065007200200073006b0061006c0020006f007600650072 0068006f006c0064
00650020005000440046002f0058002d00310061003a0032003000300031002c00200065006e00200049
0053004f002d007300740061006e006400610072006400200074006900 6c0020007500640076006500 6b
0073006c0069006e00670020006100660020006700720061006600690073006b00200069006e00640068
006f006c0064002e00200059006400650072006c006900670065007200650020006f0070006c007900730
06e0069006e006700650072002000 6f006d0020006f007000720065007400740065006c007300650020 00
610066002000500044004600 2f0058002d00310061002d006b006f006d0070006100740069006200 6c006
50020005000440046002d0064006f006b0075006d0065006e007400650072002000660069006e0064006
50072002000640075002000690020006200720075006700650072006800 e5006e0064006200 6f0067006
5006e00200074006900 6c002000410063007200 6f006200610074002e002000440065002000 6f00700072
00650074007400650064006500 200050004400 46002d0064006f006b0075006d0065006e00740065007 2
0020006b0061006e002000e50062006e006500730020006900200041006300720 06f006200610074 0020
0065006c006c00650072002000410063007200 6f0062006100740020005200650061006400650072002 00
034002e00300020006f00670020006e00790065007200 65002e>
/DEU
<FEFF00560065007200770065006e00640065006e0020005300690065002000640069006500730065 00
20004500690 06e007300740065006c006c0075006e00670065006e0020007a0075006d00200045007200
7300740065006c006c0065006e00200076006f006e0020005000440046002f0058002d00310061003a003
2003000300031002d006b006f006d00700061007400690062006c0065006e00200041006400 6f00620065
00200050004400 46002d0044006f006b0075006d0065006e00740065006e002e0020005000440046002f0
058002d00310061002000690073007400200065006900 6e00650020004900530 04f002d004e006f007200
6d0020006600fc007200200064006500 6e0020004100750073007400610075007300630068002000 7600
6f006e002000670072006100660069007300630068006500 6e00200049006e00680061006c0074006500
6e002e00200057006500690074006500720065002000 49006e0066006f0072006d006100740069006f006
e0065006e0020007a0075006d002000450072007300740065006c006c0065006e00200076006f006e0020
0050004400 46002f0058002d00310061002d006b006f006d00700061007400690062006c0065006e00200
050004400 46002d0044006f006b0075006d0065006e00740065006e00200066006900 6e00640065006e0
0200053006900650020 0069006d002000410063007200 6f0062006100740020 002d00480061006e00640062
0075006300680002e0020004500720073007400 65006c006c007400650020005000440046002d0044006f0
06b0075006d0065006e007400650020006b00f6006e006e0065006e0020006d00690074002000410063 00
72006f00620061007400200075006e0064002000410064006f00620065002000520065006100640065007
200200034002e00300020006f006400650072002000680 0f600680065007200 200067006500 f600660066
006e00650074002000770065007200640065006e002e>
/ESP
<FEFF005500740069006c0069006300650020006500730074006100200063006f006e0066006900670 07
5007200610063006900f3006e0020007000610072006100200063007200650061007200200064006f0063
0075006d0065006e0074006f00730020005000440046002000640065002000410064006f0062006500200
07100750065002000730065002000640065006200650006e00200063006f006d0070007200 6f0062006100
720020006f00200071007500650020006400650062006500 6e00200063007500 6d0070006c0069007200

20006c00610020006e006f0072006d006100200049005300004f002000500044004600 2f0058002d0031006
1003a0032003000300031002000700061007200610020006900 6e0074006500720063006100 6d0062006
9006f002000640065002000630 06f006e00740065006e00690064006f0020006700720 0e100660069006 3
006f002e00200050006100720061002000 6f006200740065006e0065007200200 06d00e10073002000690
06e0066006f0072006d0061006300690 0f3006e00200073006f0062007200650020006c00610020006300
72006500610063006900f3006e002000640065002000640 06f00630075006d0065006e0074006f0073002
000500044004600200063006f006d007000610074006900620 06c00650073002000630 06f006e0020006c
00610020006e006f0072006d00610020005000440046002f0058002d0031006 1002c00200063006f006e0
0730075006c007400650020006c0061002000470075 00ed006100200064006500 6c0020007500730075 0
06100720069006f002000640065002000410063007200 6f0062006100740 02e002000530065002000 7000
7500650064006500 6e002000610062007200690072002000 64006f00630075006d0065006e0074006f007
30020005000440046002000630072006500610064006f00730020 0063006f006e00200041006300 72006f
006200610074002c002000410064006f0062006500200052006500 610064006500720020003400 2e0030
0020007900200076006500720073006900 6f006e006500730020007000 6f00730074006500720069006f0
07200650073002e>
/ETI
<FEFF004b00610073007500740061006700650020006e00650069006400200007300e40074007400 6500
690064002000730065006c006c00690073007400650020004100 64006f006200650020005000440046002
d0064006f006b0075006d0065006e00740069006400650020006c006f006f006d006900730065006b0073
002c0020006d006900640061002000740075006c00650062002000 6b006f006e00740072006f006c006c0
06900640061002000 7600f50069002000 6d0069007300200070006500610076006100640020007600610
073007400610006d00610020007300740061006e0064006100720064006900 6c00650020005000440046 0
02f0058002d0031006 1003a0032003000300031002000280049005300 4f0020007300740061006e006400
610072006400200067007200610061006 60069006c006900730065002000730069007300750020007600
610068006500740075007300 65006b00730029002e0020002000 4c006900730061007400650061007600
650074002000730074006100 6e006400610072006400 69006c006500200050004400 46002f0058002d00
310061002000760061007300 740061007600610074006500200050004400 46002d0064006f006b007500
6d0065006e00740069006400650020006c006f006f006d006900730065002000 6b006f006800740061002
0006c00650069006100740065002000410063007200 6f006200610074006900200 06b00610073007500 7
400750073006a00750068006500 6e0064006900730074002e0020002000 4c006f006f0064007500640020
00500044004600 2d0064006f006b0075006d0065006e007400650020007300610061007400650020006 1
007600610064006100 2000700072006f006700720061006d006d00690064006500670061002000 410063
0072006f0062006100740020006e0069006e0067002000410064006f0062006500200052006500 6100640
065007200200034002e00300020006a006100200075007500 65006d006100740065002000 760065007 20
0730069006f006f006e0069006400650067006 1002e>
/FRA
<FEFF005500740069006c006900730065007a0020006300 6500730020006f007000740069006f006e007
3002000610066006900 6e00200064006500200063007200e900650072002000640065007300200064006
f00630075006d0065006e00740073002000410064006f0062006500200050004400460020007100750069
00200064006f00690076006500 6e0074002000ea0074007200650020007600e90072006900660069 00e9
00730020006f0075002000ea007400720065002000 63006f006e0066006f0072006d00650073002000e00
020006c00610020006e006f0072006d00650020005000440046002f0058002d0031006 1003a0032003000
300031002c00200075006e00650020006e006f0072006d00650020004900 53004f002000640027 00e9006
300680061006e00670065002000640065002000 63006f006e00740065006e0075002000670072006 1007
00068006900710075 0065002e00200050006f0075007200200070006c0075007300200064006500 20006
400e90074006100690 06c007300200073007500720020006c00610020 0063007200e900610074006900 6f
006e002000640065002000640 06f00630075006d0065006e00740073002000500044004600200063006f0
06e0066006f0072006d0065007300 2000e00020006c00610020006e006f0072006d006500200050004400
46002f0058002d0031006 1002c00200076006f006900720020006c00650020004700750069006400650020
00064006500 20006c002700750074006900 6c00690073006100740065007500720020006400270041006
30072006f006200610074 002e0020004c0065007300 200064006f00630075006d0065006e00740073 0020
0050004400460020 0063007200e900e90073002000700065007500760065006e0074002000ea00740072
00650020006f0075007600650072007400730020006400610 06e00730020004100630072006f0062 00610
074002c002000610069006e00730069002000710075002700410064006f0062006500200052006500610
06400650072002000 34002e003000200065007400200076006500720073006900 6f006e0073002000750
06c007400e9007200690065007500720065007300 2e>

/GRE

<FEFF03a703c103b703c303b903bc03bf03c003bf03b903ae03c303c403b5002003b103c503c403ad03c2
002003c403b903c2002003c103c503b803bc03af03c303b503b903c2002003b303b903b1002003bd03b10
02003b403b703bc03b903bf03c503c103b303ae03c303b503c403b5002003ad03b303b303c103b103c603
b1002000410064006f006200650020005000440046002003c003bf03c5002003c003c103cc03ba03b503b
903c403b103b9002003bd03b1002003b503bb03b503b303c703c703b803bf03cd03bd002003ae002003c003bf
03c5002003c003c103ad03c003b503b9002003bd03b1002003c303c503bc03bc03bf03c103c603c303b0
3bf03bd03c403b103b9002003bc03b5002003c403bf002003c003c103cc03c403c503c003bf00200050004
40046002f0058002d00310061003a003200300030003100310002002003ad03bd03b1002003c003c103cc03c4
03c503c003bf002000490053004f002003b303b903b1002003b103bd03c403b103bb03bb03b103b303ae0
02003c003b503c103b903b503c703bf03bc03ad03bd03bf03c5002003b303c103b103c603b903ba03ce03b
d002e00200020039303b903b1002003c003b503c103b903c303c303cc03c403b503c103b503c2002003c0
03bb03b703c103bf03c603b003c103af03b503c2002003c303c703b503c403b903ba03ac002003bc03b500
2003c403b7002003b403b703bc03b903bf03c503c103b303af03b1002003b503b303b303c103ac03c603c9
03bd0020005000440046002003c303c503bc03b203b103c403ce03bd002003bc03b5002003c403bf00200
05000440046002f0058002d00310061002c002003b103bd03b103c403ad03be03c403b5002003c303
c403bf03bd0020039f03b403b703bd03ac002003a703c103ac03c303c003bf7002003c403bf03c500200041
00630072006f006200610074002e0020002003a403b1002000500000440046002ad03b303b303c103b1
03c603b1002003c003bf03c5002003ad03c703b503c403b5002003b403b703bc03b903bf03c503c103b303
ae03c303b503b9002003bc03c003bf03c103bf03cd03bd002003bd03b1002003b103bf03b903b903c703c4
03bf03cd03bd002003bc03b5002003c403bf00200041006300720072006f006200610074002c002003c403bf00
2000410064006f006200650020005000650061006400650069007200200034002c0030002003ba03b103b900
2003bc03b503c403b103b303b503bd03ad03c303c403b503c103b503c2002003b503ba03b403cc03c303b
503b903c2002e>

/HEB

<FEFF05D405E905EA05DE05E905D5002005D105D405D205D305E805D505EA002005D005DC05D40
02005DB05D305D9002005DC05D905E605D505E8002005DE05E105DE05DB05D9002000410064006F
006200650020005000440046002005D405DE05D905D305E2055D305E805D905DD002005DC05D105D9
05E705D4002005D005D5002005E905D705D905D105D905D305D002005DC05D405EA05D005D905
DD002005DC05D205D005D005D005D9002F0058002D003100310003002000310031003002C002005EA05E
705DF002000490053004F002005E205D105D505E8002005D405E205D105E805EA002005EA05D505D5
B05DF002005D205E805E405D9002E002005DC05E705D105DC05EA002005DE05D905D305E2002005
E005D505E105E3002005D005D505D505EA002005D905E605D905E805EA002005DE05E105DE0
5DB05D9002005000500004400460002005D405EA05D505D005DE05D905DD002005DC002005005000440046
002F0058002D00310061002C002005E205D905D905E005D5002005D105DE05D305E805D905DA0020
05DC05DE05E905EA05DE05E9002005E905DC002000440044074002F006200610074002E002005DE
05E105DE05DB05D900200050004400460002005E905D705E0805D705D4002005D105D005DE05E605E205DE0
05D905DD002005DC05E705D105DC05EA002005DE05D505EA002005D705E005D005D005D005EA00200041006
30072006f006200610074002d0020002005D005D004006f0062006500200050000500005006610064006500720020007200
200034002E0030002005D505D205E805D505EA002005DE05EA05E705DE05D505EA0
02005D905D505EA05E8002E>

/HRV

<FEFF005a006100200073007400760061006100720061006e006e006a00650020006e006100400006f006200650020005
00044004600200064006f006b0075006d0065006e00610074007400610020007000720069006100900069006e006f006b00065
0020006d006f00720061006e00610079007500200070007200720069006006f0076006f00690020006900760065002d00
0690020007000720069006906e0065002005000440046002005440046002f0058002d00310
061003a0032003000300031002c002000490053004f00200074006e0061006006c006c006e00720160065
20007a006100200070007200620069006c006600690073006e0075007300200076006f00200065007200700061006e006900
680020007300610006400720065006006500730065006b0065002e00200048007300740072006900680020007200
20006f0076006500650020006f0072006f006600690072006006f0072006600200070006f006100650072002c006f006200610072
02006d006500720020006e0072002f006f00740061006e006f006e006e006f006f006006f00050020006e00690016
1006500200069006e0066006f0072006d006100630069006006a00610020006f006f0200073006e006e00730065006900016
100073006e006006a00640075005000440074006400200069006f006f0075006500200073006e006a006600e0072006200073
0075006b006c006e01064006e006900900072006d006f007300f0072006e006a006006000200070006e00720073
0440046002f0058002d0031006100200074006400300070006e0069006600900100600720006300500200000000730020000
1006300720075006e006f006200690072006f00200069006e006006f006006f006900300061006f000700073006e0072000
02003004006000300020005005D205E805E105D005D505EA002005DE05EA05E705DE05D505EA0
02005D905D505EA05E8002E>

4006f006b0075006d0065006e007400690020006d006f00670075002000730065002000f00740076006f0
0720069007400690020004100630072006f00620061006f0074002000690020004100640064006f00620065002000
5200650061006400650072002000340002e0030002000690020006b00610073006e0069006a0069006d00
20007600650072007a0069006a0a0061006d0061002e>
    /HUN
<FEFF0045007a0065006b006b0065006b002000610100200062006500e1006c006c006c00ed007400e10073006
f006b006b0061006c00200068006f007a007a00610020006c00e900740072006500200061007a006f006b006f
061007400200061007a002000410064006f00620065002000500044004600200046002000640065006d006f006f006d00
65006e00740075006d006f006b0061007400200062006d0065006c00790065006b0065006500700040020006
5006c006c0065006e01510072007a00e900730072006500200074003700a00e1006e002c002000760061006
7007900200020061006d0065006c00790065006b006b006065006b0020006d006500670070020006b0065006c006c
c002000660065006c00650006c006e00690065005002000610020006f00720061006f006b0075007530002
0007400610072006740061006c006c006f06d00200063007300650072002005060066006f007200670061006c006f
06d007200610020006b00690066065006a006c00650073007a007a00740065007400740020004900530004f0
0200073007a006100620076001e1006e0790020005000440046002f00580002d003100610033200300
030003100200066006f0072006d00e100740075006d006c006e006e0061006b002e002000200040010020005000440
046002f0058002d003100610020006006f0072006d00e00740075006d006c006e001006b0020006d006500
6700060065006c0065006c0c0151002000500044004600200062004006f006b0075006d0065006e00740075006
d006f006b0020006c00e900740072006500068006f007a00e1007300e10074006060065006e006e0069007600610
0074006b006f007a00f300200074006f007600e10062006200620020007400750064006e006e0069006e0610
06c00f3006b002000610074020004100630072006f006200f006200610074002000690020004100640064006f006b0065006500
7a006e00e1006c00f3006900020006b00e9007a0069006b0069006b00f6006e0079007600e900620002065006e0020006
f006c00760061006f0100730078001007400f3006b002e00200040010020006c00e9007400720069006500680061006f0
07a006f007400740020002005000440046006f006b0075006d0065006e00740075006d0006f006b00
200061007a002000410061006300720062006200b20061006f006100061007a00200014060640086000500044060020000065002
00052006500061006400650072002000200034002e003000200001007a00200020003100674074007400f3006c0020006
b00e900730150062006200200060900200074006700650072007a007a007a00620906f3006b006b0061006100610061006c0020006e0079006
9007400680061007400f3006b00200062006200200060d00650076007002e>
    /ITA (Utilizzare queste impostazioni per creare documenti Adobe PDF che devono essere conformi o
    verificati in base a PDF/X-1a:2001, uno standard ISO per lo scambio di contenuto grafico. Per ulteriori
    informazioni sulla creazione di documenti PDF compatibili con PDF/X-1a, consultare la Guida dell'utente
    di Acrobat. I documenti PDF creati possono essere aperti con Acrobat e Adobe Reader 4.0 e versioni
    successive.)
    /JPN
<FEFF30b030e930d530a330c330af30b330f330c630f330c4306e590963db306b5bfe3059308b002000490
053004f00206a196e96898f683c306e002000500004400046002f0058002d00310061003a00320030003000
310020306b6e9662e03057305f0020004100640046006f006200650020002050000440046002c200658766f830924f5c
62103059308b305f3081306b4f7f75283057307e3059300200200500044004046002f0058002d003100610020206e
9662e0306e00200050000440046000200460020658766f84f5c6210306b306306430443066306f300100041006300720026f
006200610074002030e630fc30b630ac30a430c9309253c2716730573066304f306030553044300230533
06e8a2d5b9a30674f5c62103055308c305f0020005000440046002030d530a130a430eb306f30010041006
30072006f0062006100740020304a30883073002000044006f00620065005002000520065006100640065
007200200020034002e003000020e4ee5964d3067958b304f30533068304c3067304d307e30593002>
    /KOR
<FEFFc7740020c124c815c7440020c0acc6a9d558c5ec0020c791c131d558b2940020004100640046006f0062
0065002000500004400460020bb38c11cb2940020d655c778c7740020d544c694d558ba700020adf8b798d
53d0020cee8d150d2b8b97c0020ad50d658d558b2940020bc29bc95c5d00020b300d55c0020004900530
04f0020d45cc900c77800200005000440046002f0058002d00310061003a0032003000300031c7580020ad
dcaca9c5d00020b9dec544c57c0020d569b2c8b2e4002e0020005000440046002f0058002d003100610020
0d638d658002000500044004400460020bb38c11c0020c791c131c5d00020b300d55c0020c790c138d55c0020
c815bcf4b2940020004100630072006f0062006100740020c0acc6a90020c124ba85c11cb97c0020cc38c8
70d558c2edc2dcc624002e0020c774b807ac8c0020c791c131b41c002000050004400460020bb38c11cb29
4002000410063072006f0062006100740020bc0f0020004010064006f002000500020002052006500610064
0065007200200034002e00300020c774c0c1c5d0c11c0020c5f40020c2180020c788c2b5b2c8b2e4002e>
    /LTH
<FEFF004e006100750064006f006b0069006074006500200161006900075006f007300020007000610072006

1006d006500740072007500730020006e006f0072011700640061006d00690020006b007500720074006
9002000410064006f006200650020005000440046002000640065006f006b0075006d0065006e007400750073
002c0020006b00750072200690065002000730063006900720074006900730002000740069006b00720069006e
0074006900020061007200020007200072006900760061006c006f0020006100740040690074400690069006b0074
0069002000500044004600200046002f0058002d003100610003a00320030003000310020006700720061006600069
006e0069006f0020007400750072006900e0069006f0020006b006500690074400690069006d006f007300690
02000490053004f0020007300740061006e006400610064007100720040105002e002000200040004406100750070
06900610075007500200069006e0066006f0072006d006100640069006e0006a006f0073000200061007000065000
20005000440046002000f0058002d0031006100210007300740061006e006a0406100610072007401050020006100
74006900740069006e006b0061006e006e010d00690173002000500064004006200746006f006b0075006d0d00
65006e007401730020006b016b00720069006d0d01050020006900650161006b006f006b0069007400650
20041006300720006f006200610074020007600610007200160064074006f0074006f0200076006100664
006f00760065002e002000200005300750067500730074002007400406900200050044004006200646006f006b0
075006d0d065006e007400610069002000670061006c00690020006206201b00740069006900200061007400690
0640610070720006f006d06900200040100630072006f06200601007400200069007020020006410064006f00
6200650020000520006500610064006f007200206200200240002e0030020000610070720020000760117006c006500
73006e0117006d00690073002000760006500720073006900a006f006d00690073002e>
/LVI

<FEFF0049007a006d0061006e0074006f006a0069006500050074002010061006f007300200069006900650073007
400610074012b006a0075006d0065006d0073002c0020006c00611006900070066006500690064006f00740075
00200041006d00652006500200050000500440046002000640065006f006b0075006b00065006e006e010
02c0020006b00750072006900200069006900720020006a0101070070101072006200610700750064006100200
07600610069000020006b00750750072006900065006d00200069006900700020006a010100610071400620069006c0
07300740020000000500440046002f0058002d003100610003a003200300031002c002000490053004f0
20007300740061006e006400610064007100720074006100640069006000100650074106000920061006100691
007000610070400060100400060706600a0007500200070006100
6c006101610101006b007500200069006e0066006f0072006d006101100063006069006a007500200070006100
72002000500044004600200f0058002d0031006100640005002712b0006700750020000500
4400460020004006400f006b007500060065006e0074400750072006900070700640006069002c00
20006c016b0006400700a007500200069006700300069006100640090070706900400069006000100720101006d0
006100740010101002e0020004900720a00760065006500000640006f006a0069006600900650074002000500044004000720101006006
00610074001010012e0020004490007a00760006600510650006004006f006a00690006900650074001006d
0061000740101002e000000049007a00760065006005060069006061006200600200072006006b006100750074000
0064006f006b0075006d0d065006e007400750072002000410630074004200720006006007406
0760113007200740020000061000720020004140063007207406f06200601007400200075006e00200000100640
06f0060200605000200052006500610064006006500720020000346e002000004e0030020200006b0101000020006100720
12b00200740006f0020000a00610010075006e010100610b0101006d0020000760065007200730006a001010
06d002e>

/NLD (Gebruik deze instellingen om Adobe PDF-documenten te maken die moeten worden
gecontroleerd of moeten voldoen aan PDF/X-1a:2001, een ISO-standaard voor het uitwisselen van
grafische gegevens. Raadpleeg de gebruikershandleiding van Acrobat voor meer informatie over het
maken van PDF-documenten die compatibel zijn met PDF/X-1a. De gemaakte PDF-documenten kunnen
worden geopend met Acrobat en Adobe Reader 4.0 en hoger.)

/NOR
<FEFF004200720075006b0020000640006900730073006500200069006e006e007300740069006c006c00
69006e0006700650006e006500020074006900006c002000e50020006f007000700700072006500740074006500
2000410064006f006200650020005000440046002d0064006f006b0075006d0065006e007400650007002002
00073006f006d00200073006b0061006c006c0020006b006f006e00740072006f006c006c0065007200650030
02c0020006500650006c006500070720020000073006f06d0020006d00e50020006f00060700200650020006b006b0
6f006d00700070006100740690061002d006500200200006060005000440046002f0058002d0031006
1003a00320030003000300031002c0020006500060020006d00053004f002d00730070040061006006040061007
2006400200076006f0072007500070020004006760065006b0073006c0069006e006e006760020000061007
0070720006100060690061061007300690006006800710061006b006f064006400d0075006006480076007600690073002
000640070720020000760069006c00200007200062006810004004200200069006800f0072006006006600
10073006a006f006e006020006f006680007006600f007200640007a00640006006004007500206006f00700700
0700720200650007004007400650007200220005000064000004406002f0058002d003100610610020d006b060006d00070
6100740069006200620006c006500200050000500440046002d0064006f006b0075006d0065006e00740065007200200

2c00200073006500200062007200750006b00650072006800e5006e00640062006f006b0065006e002000
66006f007200200004100630072006f006200610074002e0020005000440046002d0064006f006b0075006
d0065006e00740065006e00650020006b0061006e002000e50070006e00650073006900200041006
30072006f006200610074006400200065006c006c00650072002000410064006f006200650020005200650061
00640065007200200034002e003000200065006c006c0065007200730065006e006500720065002e
>
  /POL
<FEFF0055007300740061007700690065006e0069006100200064006f002000740077006f0072007a006
5006e0069006100200064006f006b0075006e006f007400f3007700200050004400460020006b
007400f3007200650020006201190064010500200073007000720006100770064007a006f006e006500200
06c00750062002000730105002007a0067006f0064006e0065e00650020007a002005000440046002f005800
2d00310061003a003200300030003100310002c002000730074006100640065006400640007300100230005300
4f00200064006f006100200007300790006d00690061006e00790020006200610064006f006f001007007006100720074006f015
b0063006900200026700720061006600690063007a006e0065006a00200026002002000570069011900630
5006a00200069006e006066006f00720061006100630006a00690024000020006e0061002007400630065006006100
4002007400770006f00720074007a006500200066006900100200044006f006b0065006e006e006f007400f30077
0020005000440046002007a0067006f0064006e0065006007900630068002002007a00200000050004400460002f00580
02d003100610020007a006e006100610a00640075006a00656500200073006069011900200077002007007006f
06400720119006300760a006e006069006f0070500200075017c00790074006b006f0077006e0069006b00610
02e00200044006f006b0075006e006500740d007900200077000200070076006f006700720061006f00650
20006f00740007700690065006500720061010700200000700075006700720061006f006f07720061006d00690065002
0004100630072006f006062006100740200069000200041006406f006200650020005200650061006406065
007200200034002e003000200065006e006500e006f00770073007a0079006d002e>
  /PTB
<FEFF0055007400690006c0069007a00650020005300730043006100730200203006300f006e00660069006
700750072006100e700f50065007300020006400650006500e006f0072006d006100200020061002000630072
006900610072002000640006f00630075006d0065006e0074006f007300200046006f0062006500200
0500440046004600200066500006200200f50066500007300200060064006006500006f00730200
76006500720069006900650006900630061006f00730020000650d00200006500650006f006e0065006006006f0072006d0069006
4006100640006500200063006f006d00200020006f0058002d00310061003a00320030
0030031002c00200075006d00200020007000610064000720e3006f00200064006100200249005300400200
0700061007200620061006200f020000690065006006500e0073006500f0720006200065006600400200007
200063006f006e0074006500fa00640006f00200067007200e1006006690063006f0002e0020005000610072
0200061006f006200700740006500720020006d0061006007300200069006e0066006f0072006d006100e70
0f50065007300200073006f0062006500f00006200600300672006900f00200006300072200069001007200200
4006f00630075006d0065006e0074006f00730200500540000540044046f0002000063007200f0006d006f00730
0760065006006900730020006d0061006006f0730007300500000044006402007300006900f006d006f06900630072006006500e007300730006f0072006d00
063006f006e00730075006e007400650020006f02000470007500650906e100200064006f0200075007300
7500e100720069006906f00200064006f00200004100630072006f006200610074002e0020004f007300200064
006f00630075006d0065006e0074006f00730200005000440046006200610074006300720020006f0200069006f0064006f007300
0200070006f0064064006500d002007300650072007200f0064006500006100650006f2007007300
6d0020006f002000400064006300072006200f06200610074000200200650020006f002000410064006f006200650020
0052006500610064005006507200200034002e0020003006f0200300065000034002e0030006500730020
0070006f00730074007400650007200069006006f007200650073002e>
  /RUM
<FEFF0055007400690006c0069007a00a0061010630069006900200061006300650073007300740006500200073006500
7401030072006900200020070006500e00740072007500200061100200006300720065006100200064006f00
630075006e00d0065006e000074006500200061006300652005000440046002000650004004006002000630061007200
650020007500720069006d00650061006007a01030020007301030200006600690065006900f006500d0065006900
6600690063006301001074006500200073006101007500200020007400720065006500200720006900637500
200063006f006f1072006500200700700650006406401003002000730074004061006100e0640064006400650074500
6c007500690069007002000500000440046002f05800f02d0310061003a00320030000303004001002c00200075006500e002
007300740061006100e006401006106100720020004900530004f000f00050006f000e06400720074200007500200007
3006300680069006900200d0062007500200020000d006400650062003006006e016300069006006e007500740020006
70072006100006006600690006300200200500075006006f006600073006e0074400072007500200069006900e0066f0072006d006

1016300690069002000730075007000060069006d0065006e00740061007200650020026400650073007
000720065002000630072006500060110072006500061002000640006f00630075006d0065006e00740065006
c006f0072002000500044004600200063006f006006006f0072006d00650020006300750020007300074
006100616e006400610007200640075006c0020005000440046002f0058002d00310061002c002000630006f0
06e00730075006c0074006106163006900200047006800690006400075006c0020006200037500740069006c0069
07a00610074006f00720075006c0075006900200007000650060e00740072007500200041006300720720060f00
6200610074004002e0020002000044006f00630007500d06d0065006e00740065006c006500020005000440046
200063007200650061007400650020002000060f007400200006600069002000640065007300300680006900
7300650020006300750020002000141006400270072006f06200061007400200015f006900020000410064004006f02600
500200052006500061006400650072002000203004002e00300020000700760065007200730069007
5006e0069006c006500200200075006c0074400650072006900006f0061001720065002e>

/RUS

<FEFF04180441043f043e043b044c043704430439044240243500200434043043d043d044b04350020043
d04300440104420440043e0439043a043800200434043b044f00200441043e043704340430043d0d0438044f
00200434043e043a0443043c0435043d0200444002000044006f043200620000020000440046002000440046
002c0020043a043e0442043e0440043e00430440043e0434300430043043043043c0020200434004004400046
43e043204350440204344300200438043b043800200435043043b0044b00200441043e0436000441043003e00
44204320444304434312643043e0432304300420440d0c020005000200049040046002f0058003a0001300e10
03a00320030003000300031002c00200044411044204430043d043404300444004042000430000490053004f00
434043b044f0020043e0431043c0435434d0000200433044004400430443330443804704354044b043a0020043043043
43c0020044310434043504400436043043d043403800435043e002e00200204200411043e043b043543304350
020043f043e04340440043e0431043d043d43043044004f00200438043d0444404300440e043404346043804f00
20043f043e0200441043e043704340430043043044f0d0d043844e042000055000044004640046002d04340430e043
3c04350430443d0442043e0432002c0020004411043e0432043c0043045044104300200438043a044b0044450020440044100
20005000440440460002f0058002d00310061102c0020043f04400043354044104430440043043043f0435043
d0430002000043200200044432043a04300060042043043043d043043e04340440104420420433500200443f043e043c04
7043e04322043004420443504344304b0020043044f0020000044100430300720006f006200610074002e0020002000214043e0437
04340430043c043d043044b04350200020005000440046002d0434043e04300442043043e043d0435043c000
043c043e04360043043d43e0020042043a0443040030440243044004020020004410043005000430e000440040f043e04
43e044904440c044e00200004100630072006006f006200610074000740040200420043800600440046f0020006500200
52006500061006400650074200200200043200200430004800200441043e043b043b043504350020043f043e04
370434043d04380044500200432043043504044044041004300e00430068439002e>

/SKY

<FEFF0054006900650074006f0020006e006100730074004006100760065005006e00690006100200070007006f007
5017e0069007400650020006e0061002000760079007400600e100720061006e0069006500200200064006
f006b0075006d0065006e0006740074006f006200650020002005000440046002c0020006b
0074006f0007200e90020073006100200020002004640040020006b006f006e00740072002f006c006f00
76006101650200006100c00650006200400e100720060400650007500073006f000000760070004300650062007600760065
f00760060161016500200016100740061006e006400400610072004007500200005000000440046002f0058006b00
f007600601016500200016100740061006e0006040006100720074007500200e900750073006f00e006900020067006
0061003a003200300030000300031002c00200020161007400610006e006064060610007200600407500200049004b00
0020006e006100100200070072000726065006500640094800006e00690005020020006700620616006006900063
006b00e000690069006f00790006020076056200e0020200006e006101001e006100650203020476065002000
06e0066006006f0072006d00000e100630060900650020006f0020007600790074006600e0010720617200e006006
200064006f006b0075006d0065006e0074006f0076000200004400600020005004400461016200760601760076
5006a00fa00630006900063000680020000500004402006f0050058002c00316010020006e00e1006a00640065
00740065005020007670020005000670220005020007007007607007609006007000760079090068006000f00760017
006a006100200062000010000640069006060690060630060e0060290600f0075006506200600700600740072
002005600070900740076006f00f000720065006e00e0069000604006f006b007500064006500060074007009020000
050004400600022000506720050450000060007007200e0072051001000650d000700d00640d0500060e10060060065
0073006f0004560020706201007007100720065006e070002040060600076006070075006606006007040072200
200062006102000410646006f006200656000020000650d00600400005000000250206006500610006d004600800720006e0063
4002000061002000410064006f006200650071002000550065006006610700200200034002e00300020006
10020006e006f0076016100d006006068002e>

/SLV

<FEFF005040065002000e00610073007300400610007600650069007400760065005002000750070006f00720061006
200690074007400650002007a006100102000750073007004004760061000610072006e006e006a006500200064006
f006b0075006d00065006e0074006f00600020004106f006200650002000500044006002c0020006b

00690020006a006900680020006a006500200074007200650062006100200070007200650076006500072
00690074006900200061006c00690020006d006f00720061006a006f0020006200690074004069002000760
0200073006b006c00610064007500200073002000050004400046002f0058002d00310061003a003200300
0300031002c002000730074006100610006040061007200064006f006d002000490053004f0020007a006100
200069007a006d0065006e006a00610076006002000700720061006060690100d006e00650020007600
73006500620069006e0065002e00200020005a006100200064006f006400610074006e00650020006900
6e0066006f0072006d006100630069006a006a006e006500060010074006510020006a0061006
e006a007500200064006f006b0075006d0065006e0074006f0076006f076002000500044004600d020073006b
006c00610064006e0069006800200073002000050004400046002f0058002d0031006100631002c002000730069
020006f0067006c0065006a0069007400006f007200610062006e0069006110060069006
70007200690072006f010d006e006069006b00200400410063072006f00620061074000e002000200055007
300740076006100072006a0065006e0065006500200064006f006b0075006d0065006f007400650020050004
400460020006a00650020006d006f0067007006f010d0065002000600100400060200070006400650071000a
0020064006a00720006f00620006100740020006900e00200004100664006f06206500200052006500610
064006500720020034002e003000200069006e006f60070065006e006f6f0760065006a01610069006d002e>
/SUO

<FEFF004b00e40079007400e40020006e00e40069007400e4002000610073006500720075006b006f07300
690061002c0020006b0075006e0020006c007400200041004006f060620065002000500044004
60020002d0064006f06b0075006d0065006e007400740065006a0061002c0020006a006f0074406b0061
00200074006100720020006d0069007300740056007400610061006f1006100690020006a006f069
00640065006e0020007400e400700074007900790020006e006f0075006400610061007400740016006100020
005000440046002f0058002d00310061003a00320030003000310003a007400e400200065006c00690020
00490053004f002d007300740064006e1006e006400610010072006400690061006710020006700700691006660069
00730065006e006202000073006900074006300e4006c006c00c0f6006e0020007300690069069072007400e4006d00690
073007400e400200076006d0069007200740405006e002e0020004c0069007300007300740009600650074006f0f0
06a006100200200005000440046002f0058002d00310061003200064007000590065006e0073006e0073006f007f007000
6900760060090065006e0020005000440460002d0064006f006b0075006d0065006e006e007400740069006e00650
06e0020006c0075006f06f00769006f073065006500700740061061006100120002006f006206
100740069006e0020006200b0e00700790074007400f6006f070100070075006110601007300730061002e00200020
004c0075006f0f06400750740002000500004000460020006f06b0070506006f0740106006f074006900740
0200076006f0069060064006100610106100e000200006100740610007400610020004100630720006f062200610
740069006c006c0061006200206a010610200041006400060620065020005200650061006040006500720200
0033400e00030030004006a006c0061060020006a006100700075007500200650065006d006d0069006c006c006
1002e>

/SVE

<FEFF0041006e007600e4006e00640020000640065002000800e4007200200069006e0073007400e400
6c006c006e0069006e0067006700720006e006010020006f06d0020006460075002000760069006c006c006c002
0073006b06610070000160020200410064006f006f006b0075060200004004400460602d0064006f006b0075006d
0065006e007400200073006f006d00200073006b00b0100620006b006f006e00740072006f06c006c006c006500
72061007300200065006c006c0065006750720200200073006f06d0020006d0d0e5003007300740400650020006d006
f0074007300760061010072000610020006520065002d00d00310061003100031003000330031002c
002000650006e002000490053004f3004f200700000420009000006400e0068006f006700730006600f0600740400
07500740061007600790074004650020000610102076060200006004600e0084006f07006070004060f50680fb07500200200
0750074006200790074004005000200006007600200000067007206100006600690073006006f0006120006100740e0
06e0065006800e5006c006c002e00202000610004006500b200e00740020006900e0
06900e00b006f006020006f06010020006000680000750060200f0064006f006b0075006d0065006e006020006
69006f006e0020006f006d0020002006800075007500200064006f061006e00020074006960064006e20
00056f00440046002d0064006f006b0075006600e006060900650f0007400e005000000740069006e006f06010007400200
1006400570006200790074004055f002000280061006000620000e0060406002f006b0065006900e0
02000410060306700206f006206100610070004002e0020065006500200650061060002c00610010204000050000
0440046002d0064006400f006b0075006006d0065006e006007400200006e0066006900900e006e006e00e0006007300200
061006e007600e4006e006406001007200680061006e006000640062006f006b0065006500020070040069006c006c0
020004100630720006f062006100740002d006400e4006e00620073006e0073006f007f00690060750075006f0060705000500
04400650072006200790074005000200000034002e00d0030003002000069006f06f630063006f00020008f0f06300680006800290f0460740069006e006005000500650074006f
e>

/TUR

<FEFF004b006f006f006e00740072006f006c0020006500640069006c006500630065006b00020000760075007
90061002000690067007200690006606900b0020006900e706f0065007200720069006b00200000740061006b0061007

301310020006900e70069006e0020006200690072002000490053004f0020007300740061006e0064006
1007200640131002000060006f006c0061006e0020005000440046002f0058002d00310061003a003200300030
003120190065002000750079006d0061007301310020000670065007200650065006b0065006e002000410064
006f006200650020005000440046002000200620065006c006700065006500670072006900200006f006c0077c50
15f007400750072006d0061006b0020006900e70069006e00200062007500200061007900610072006c0020006c0
06100072013100200006b0075006c0006c0061006e0131006e002e00200020005000440046002f0058002d00
3100610020007500790075006d006d00750020000500044046002000620065006100670070065006c006500
720069006e0069006e06e0020006f006c0075015f00740075007500720075006c006d006100730100206009060
c006500200069006c00670069006e0006900620006900400061006100620600610024072006006100020006
20069006c006700690020069006900e70069006e0020006c006c007400660610065006e00020004001006300720061
006200610074002040a0075006c006c006c006e0131006d0020004b0131100e006l00760075007a0075
006e006100200062006100200006l007600900600020006e00620006700650006001307011006100200075007a007500
06e00200050004400460020e006200020026065006c00067005006006500607620061010063007200600f006200
6100740020007000600050020004100640640006f006200656500200062006000200044064006e000
30000200076006500200073006f006e00072006100700130100730061006e00640061006100b00690020007300fc007200fc
006d006c00650072002006c0665020006006100e70073001006e1006100620069006e00c00690072002e2>
/UKR

<FEFF0412004380043a043e044004380044104420443e04320443043904420435002004460456004560020043f043
004400430043c0435044204400438002000434043b044f0200440441104420432043e0440043504304d043d044f043d044f
00200043434043043c044304420044043043c0435043d0442043043c043d0443043000200310044100640064006l00f00620030044300
00210004430044303043c043000434430042043400030043c043043d043d042043e0431043a0445604300044043c0f044304
420430044104440020043000430004310043e0020043f043e043204380430043d043043d044560020004f04320456043d043f043
e043204560434043004300200433044430430d4300304400456044704732000430300430043204300430043a0
f0058002d00310061003a003200200043044030043304000300020004000490053004f00200043034043b044f0020043e0431
043c04560443d004430020430430304300044560437004f0200430043203042044002043204304300430430
0438002e002000200414043e04340304300442043a043e043204320456002043204043300440434300043304300043e0043c044107
04420456020043f004400043e0020004104200432043e04400435043043d043d044f00200043043e0043043d04
43c04350435d043204204604320200050044604200204320456043004304043204204304300043204304043f043e04
32045604340430044e04422044c002004410044104300430043043d043043430430304004042043430002000500440046004600
2f04250002d003100200c0020043043043804302002e002004304300430034300430043a0430043f04004300430043d04
30020043a043e0044038044104044104300430043004304300704043000020004100630072006f0006200610074002
e0020002004210042104240020042043e04400435043d04560020034300420e043a043043043c043043004420420438002
0005000440046004600020002004230044430430002004804304030440344300430043a0460443004340043043043400043002004432000
0004100600630072006f00620006100740020004204300030200001200401004300600320652006500610064
0065007200200020003040020c00300020000430004310043043e0020004300000045604370430004300444430048430e0457002000432
043500440440e0044104560460457002e>

/ENU (Use these settings to create Adobe PDF documents that are to be checked or must conform to PDF/X-1a:2001, an ISO standard for graphic content exchange.  For more information on creating PDF/X-1a compliant PDF documents, please refer to the Acrobat User Guide.  Created PDF documents can be opened with Acrobat and Adobe Reader 4.0 and later.)

```
>>
/Namespace [
  (Adobe)
  (Common)
  (1.0)
]
/OtherNamespaces [
  <<
    /AsReaderSpreads false
    /CropImagesToFrames true
    /ErrorControl /WarnAndContinue
    /FlattenerIgnoreSpreadOverrides false
    /IncludeGuidesGrids false
    /IncludeNonPrinting false
    /IncludeSlug false
    /Namespace [
```

00049048

```
    (Adobe)
    (InDesign)
    (4.0)
  ]
  /OmitPlacedBitmaps false
  /OmitPlacedEPS false
  /OmitPlacedPDF false
  /SimulateOverprint /Legacy
 >>
 <<
  /AddBleedMarks false
  /AddColorBars false
  /AddCropMarks false
  /AddPageInfo false
  /AddRegMarks false
  /ConvertColors /ConvertToCMYK
  /DestinationProfileName ()
  /DestinationProfileSelector /DocumentCMYK
  /Downsample16BitImages true
  /FlattenerPreset <<
    /PresetSelector /HighResolution
  >>
  /FormElements false
  /GenerateStructure false
  /IncludeBookmarks false
  /IncludeHyperlinks false
  /IncludeInteractive false
  /IncludeLayers false
  /IncludeProfiles false
  /MultimediaHandling /UseObjectSettings
  /Namespace [
    (Adobe)
    (CreativeSuite)
    (2.0)
  ]
  /PDFXOutputIntentProfileSelector /DocumentCMYK
  /PreserveEditing true
  /UntaggedCMYKHandling /LeaveUntagged
  /UntaggedRGBHandling /UseDocumentProfile
  /UseDocumentBleed false
 >>
]
>> setdistillerparams
<<
 /HWResolution [2400 2400]
 /PageSize [612.000 792.000]
>> setpagedevice
```

00049049

**Senator** ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
**Ukraine Resolution**
**November 18, 2013**

*As Prepared for Delivery*

Mr. President, I rise today to speak on the continued imprisonment of former Ukrainian Prime Minister, Ms. Yulia Tymoshenko. Sadly, for over two years now, Ms. Tymoshenko has been languishing in prison on politicized charges that she allegedly abused her position in connection with a Russian natural gas contract.

Now, I am not going to judge the wisdom of that gas contract – one of an endless series of policy decisions any chief executive has to make in any nation.

But this is an imprisonment that has been recognized by the international community, countless human rights organizations, and by the European Court on Human Rights, as selectively prosecuted and politically motivated. This is an imprisonment that has a whiff of neighboring Belarus, where those who run for President against strongman Alexander Lukashenko get thrown in jail – not of Ukraine, which is looking to solidify its hard fought place among the community of democracies.

When I visited Ukraine last May, I had the opportunity to meet with President Yanukovich, the prime minister, and the foreign minister. I was most grateful for their time. During those discussions I was repeatedly assured that Ms. Tymoshenko's imprisonment would be solved.

But it wasn't.

So last year, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ I introduced a Senate Resolution calling for Mr. Tymoshenko's release.

The resolution passed unanimously last September.

And yet, here we are today, more than a year later and a few weeks before an important opportunity for Ukraine to strengthen its ties to the West by potentially signing an association agreement with the European Union, and Tymoshenko is still in jail.

Mr. President, this is an embarrassment. This is a costly distraction from all the other very important issues Ukraine and its friends have to work on together. It plays into Russian President Putin's hands – who would like nothing more than to see the EU association agreement scuttled because of the failure to release Ms. Tymoshenko.

Why would Ukraine's leaders want to succumb to Russian bullying and jeopardize stronger economic and political ties to the West over a simple grudge regarding the previous prime minister?

Mr. President, I am dismayed by the seeming inability to find a reasonable compromise that would allow Ms. Tymoshenko to be released to seek medical treatment abroad, a move that would allow us to instead focus on strengthening the important ties between the US, EU, and Ukraine.

1

FOIA – Confidential Treatment Requested

Ukraine is our friend and ally. It helped us in Libya and Afghanistan. Its leadership rightly sees Ukraine's future with the West.

But when you join the community of democracies you simply do not throw your former political opponents in jail over policy agreements.

You instead offer better ideas and best them in elections.

That is why this summer, regrettably, I introduced a follow-up resolution again calling for the release of Ms. Tymoshenko. I am happy to note that Senators ██████████████████████████
████████████████████████████████████████████ joined me on that resolution.

And let me add that's not a group of Senators that you see agree on too many issues in this Senate. But we agree on this.

For months, we have been waiting, assured that a resolution to Ms. Tymoshenko's case would come to fruition.

We saw Ukraine take promising steps toward political reform. We saw some of Ms. Tymoshenko's allies pardoned.

And over the course of the last few weeks in particular, we were optimistic that negotiations led by former ████████████████████████████████ and ████████████████████████████
███████████ were seemingly making headway toward a solution in which Ms. Tymoshenko would leave to Germany for medical treatment.

We were hopeful that such a solution could come in time for Ukraine to sign an association agreement with the EU during the Eastern Partnership Summit in Vilnius at the end of this month, a step strongly supported in the United States.

We held off on passage of this resolution with the hope that real progress would soon take place.

But, last Wednesday, after two years of dithering on finding a solution, the Ukrainian Parliament postponed a vote on a bill that would have secured such a resolution – a move that only adds to the long list of missed opportunities.

And that is why today, disappointingly , my colleagues and I have decided to move forward and pass this resolution.

There is still time to find a solution before the Eastern partnership Summit takes place at the end of this month, so I am hopeful that our friends in Ukraine will be able to find an honorable way forward that puts the best interest of their country first and ends Ms. Tymoshenko's detention.

In the meantime, Mr. President, I ask unanimous consent to pass S. Res. 165, as reported out of the Foreign Relations Committee.

FOIA – Confidential Treatment Requested



FOIA – Confidential Treatment Requested

00049052

# EXHIBIT 2012

# MEMORANDUM

TO:        Honorable

FROM:

SUBJECT:   Projects and Plans

DATE:      April 5, 2012

At our meeting today, you asked me to lay a plan of action – and a proposed schedule – for the projects that we discussed.  Broadly speaking, the project will consist of Skadden's lawyers providing legal services to the Government of Ukraine that include providing advice on the rule of law and providing consultation with respect to principles of due process as applied in the criminal justice system.

I.    The First Project

The first project is to conduct an inquiry about the process and the procedures used to prosecute former Prime Minister Tymoshenko, and to write a report addressing various questions that arise with respect to her prosecution, trial and sentencing.

It is important at the outset for the Government of Ukraine to know that Skadden is only willing to take on this assignment with the understanding that Skadden's lawyers will be given adequate access to sources of information and individuals with first-hand knowledge of the case as a basis for writing the report.  It is also important that the Government of Ukraine understand that Skadden's work product, Skadden's report to the Ministry of Justice and Skadden's professional opinion will be rendered in good faith and with total independence.

It is understood by all parties that this work will be conducted under the protection of attorney-client and work product privilege, and that any decision about disclosure will be entirely up to the Government of Ukraine.

In the course of this project, Skadden will conduct an evaluation of the investigation, the charging decision, prosecution, conviction and sentencing of former Prime Minister Yulia Tymoshenko and write a report to the Ministry of Justice evaluating that process through the prism of American standards of due process.  We are not being asked to comment on the guilt or innocence of Ms. Tymoshenko.  Generally speaking, we are being asked to provide a professional opinion – based on our own experience in the American criminal justice system – as to whether she got a fair trial.

To that end, we will consider the following questions that arise with respect to the prosecution, trial and sentencing of Yulia Tymoshenko:

*Confidential*
*Attorney-Client Privilege*



GOVERNMENT
EXHIBIT
U.S. v. MANAFORT, 1:17-cr-201 (A.B.J.)
2012

SAU 281455

- Was the crime that she was charged with legitimate? Was their any problem with vagueness or adequate notice? We will look at the provision of the Ukrainian criminal code that she was alleged to have violated – and convicted of violating – and we will try to determine whether there are comparable statutes in the United States or in Western Europe and whether there have been comparable prosecutions.

- Was the investigation thorough and fair, and was the charging decision justified by the evidence? We will look at the methodology and means used to investigate and charge her, and we will opine on two aspects of this question: (1) whether the investigation or the charging decision in any respect could be improved; and (2) whether her rights were or were not violated in the course of the investigation and the charging decision made as a result of the investigation.

- Was the trial fair? Were the judges experienced, independent and fair-minded? What was the process by which the prosecutor presented incriminating evidence to the court?

- Was she afforded due process of law? We will look at whether she was given a fair opportunity to defend herself and to make legal and factual arguments as to her innocence. Was she represented by experienced counsel? Was she given a fair trial and afforded due process of law?

- Was the sentence excessive? We will look at the sentencing decision, whether it was within the realm of reason, or whether it was unduly harsh. Was she given adequate opportunity to argue for leniency and to present evidence supporting that argument?

In our view, it will be necessary for our lawyers to have access to individuals representing the following five categories of witnesses to carry out our assignment:

- Investigator(s)
- Prosecutor(s)
- Judge(s)
- Witness(es)
- Legal Expert

Schedule for the First Project

We anticipate that it will require a total of two weeks of work on the ground in Ukraine to carry out this assignment. We hope to be able to meet with you and your assistants during the week of April 9, 2012 at which time you will identify those individuals who should be interviewed, and we will set up a schedule of appointments to carry out those interviews. If such appointments can be arranged to occur during that same week, it will speed the process. In any event, we would hope that the interviews could be concluded by the end of the month of April. We would

*Confidential*
*Attorney-Client Privilege*

Confidential Treatment Subject to Rule 6(e)

use the month of May to carry out any additional interviews and research that may be required, and it is our hope that we will be able to provide you with a draft report by the end of May 2012.

2.    The second project

You have expressed an interest in consulting with us and seeking advice relating to the prosecution of Ms. Tymoshenko scheduled to begin on April 15.  To that end, you have agreed that it would be beneficial for a Skadden lawyer who is experienced in criminal prosecutions and who has participated in criminal prosecutions in the United States to meet with the trial team engaged in the prosecution of Tymoshenko.  We would hope that a team of Skadden lawyers could travel to Ukraine during the week of April 9 or – at the latest – the week of April 16th to meet with members of the Tymoshenko trial team.

Again, please understand that all communications between Skadden lawyers and lawyers for Ukraine will be confidential and covered by the attorney-client privilege, and all work-product prepared by Skadden lawyers for use in this assignment will be protected by the work-product privilege.

*Confidential*
*Attorney-Client Privilege*

# EXHIBIT 2013

**From:** ▮
**Sent:** Wednesday, April 11, 2012 1:21 PM
**To:** ▮
**Subject:** FW: Tomorrow--Friday 4/6

When you get information about when we will be meeting with the trial team in Karkiv, we can see if Victor can get us a plane. See below.

-----Original Message-----
From: ▮
Sent: Wednesday, April 11, 2012 7:20 AM
To: ▮
Subject: Re: Tomorrow--Friday 4/6

If you give me a precise idea of your travel plans, I will go back to him asap. Please let me know when you have decided to travel and would like the plane. Thanks.

Sent via BlackBerry from T-Mobile

-----Original Message-----
From: ▮
Date: Wed, 11 Apr 2012 07:08:22
To: ▮
Subject: Re: Tomorrow--Friday 4/6

Victor asked us to come to him if ever we need his help. We are returning to Ukraine to meet with the Tymoshenko trial team in Karkiv on Thursday or Friday. Rather than spending 4 hours on the road to get to Karkiv -- and another 4 to get back -- it would be great if we could use a small plane to get there and back. Any hope that Victor could help with that?

----- Original Message -----
From: ▮
Sent: Saturday, April 07, 2012 09:13 AM
To: ▮
Subject: Re: Tomorrow--Friday 4/6

Spoke to Victor. Very impressed and pleased with the meeting as well. Suggest you give Paul a similar briefing to the one you provided me. Safe travels and get some rest.

Sent via BlackBerry from T-Mobile

-----Original Message-----
From: ▮
Date: Fri, 6 Apr 2012 09:31:16
To: ▮
Subject: Re: Tomorrow--Friday 4/6

I will call you tomorrow. Can you give me a good phone number for me to call you?

----- Original Message -----
From: ▮
Sent: Friday, April 06, 2012 06:56 AM
To: ▮
Subject: Re: Tomorrow--Friday 4/6

Yes sure...would prefer if you could call me tomrw so I might reach Victor over the weekend to expedite and facilitate. Needless to say

Confidential Treatment Subject to Rule 6(e)



GOVERNMENT
EXHIBIT
U.S. v. MANAFORT, 1:17-cr-201 (A.B.J.)
2013

SAU 043530

I will do all I can within my power to get done what needs to get done to keep things on track. Thanks very much.

Sent via BlackBerry from T-Mobile

-----Original Message-----
From: █████████████████
Date: Fri, 6 Apr 2012 04:03:32
To: █████████████████
Subject: Re: Tomorrow--Friday 4/6

We just had breakfast with Mr █████████ I thought it went well but you will have to check with him. I need to talk to you about funding this project. We are wanted and needed right away, e.g., next week, but we can't deploy without payment in advance. We have two projects in addition to the report we discussed -- (1) helping the trial team in the second prosecution, and; (2) advising the Justice Ministry about Tymoshenko's case in the European Human Rights Court. Are you around on Monday?

----- Original Message -----
From: █████████████████
Sent: Thursday, April 05, 2012 07:09 AM
To: █████████████
Subject: Re: Tomorrow--Friday 4/6

Thanks very much, █████
Sent via BlackBerry from T-Mobile

-----Original Message-----
From: █████████████████
Date: Thu, 5 Apr 2012 06:57:10
To: █████████████████
Subject: Re: Tomorrow--Friday 4/6

Perfect. We will be in the lobby at 720 am tomorrow. There are 3 of us: ████████████████

----- Original Message -----
From: █████████████████
Sent: Thursday, April 05, 2012 06:46 AM
To: █████████████████
Subject: Tomorrow--Friday 4/6

Dear █████

Hope your trip is going well.

Wanted to confirm that you and your colleagues will be picked up in front of the Intercontinental Hotel at 720am Friday morning.

Breakfast should not take more than 1 hour and you should be back at your hotel before 930am.

Please confirm that you have gotten this message.

Thanks as always.

All best.

██████████

Sent via BlackBerry from T-Mobile

---
\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

To ensure compliance with Treasury Department regulations, we advise you that, unless otherwise expressly indicated, any federal tax advice contained in this message was not intended or written to be used, and cannot be used, for the purpose of (i) avoiding tax-related penalties under the Internal Revenue Code or applicable state or local tax law provisions or (ii) promoting, marketing or recommending to another party any tax-related matters addressed herein.

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*
\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

This email (and any attachments thereto) is intended only for use by the addressee(s) named herein and may contain legally privileged and/or confidential information. If you are not the intended recipient of this email, you are hereby notified that any dissemination, distribution or copying of this email (and any attachments thereto) is strictly prohibited. If you receive this email in error please immediately notify me at [redacted] and permanently delete the original email (and any copy of any email) and any printout thereof.

Further information about the firm, a list of the Partners and their professional qualifications will be provided upon request.

---
\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

To ensure compliance with Treasury Department regulations, we advise you that, unless otherwise expressly indicated, any federal tax advice contained in this message was not intended or written to be used, and cannot be used, for the purpose of (i) avoiding tax-related penalties under the Internal Revenue Code or applicable state or local tax law provisions or (ii) promoting, marketing or recommending to another party any tax-related matters addressed herein.

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*
\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

This email (and any attachments thereto) is intended only for use by the addressee(s) named herein and may contain legally privileged and/or confidential information. If you are not the intended recipient of this email, you are hereby notified that any dissemination, distribution or copying of this email (and any attachments thereto) is strictly prohibited. If you receive this email in error please immediately notify me a [redacted] nd permanently delete the original email (and any copy of any email) and any printout thereof.

Further information about the firm, a list of the Partners and their professional qualifications will be provided upon request.

---
\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

To ensure compliance with Treasury Department regulations, we advise you that, unless otherwise expressly indicated, any federal tax advice contained in this message was not intended or written to be used, and cannot be used, for the purpose of (i) avoiding tax-related penalties under the Internal Revenue Code or applicable state or local tax law provisions or (ii) promoting, marketing or recommending to another party any tax-related matters addressed herein.

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

This email (and any attachments thereto) is intended only for use by the addressee(s) named herein and may contain legally privileged and/or confidential information. If you are not the intended recipient of this email, you are hereby notified that any dissemination, distribution or copying of this email (and any attachments thereto) is strictly prohibited. If you receive this email in error please immediately notify me at ▮▮▮▮▮▮ and permanently delete the original email (and any copy of any email) and any printout thereof.

Further information about the firm, a list of the Partners and their professional qualifications will be provided upon request.

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-
\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

To ensure compliance with Treasury Department regulations, we advise you that, unless otherwise expressly indicated, any federal tax advice contained in this message was not intended or written to be used, and cannot be used, for the purpose of (i) avoiding tax-related penalties under the Internal Revenue Code or applicable state or local tax law provisions or (ii) promoting, marketing or recommending to another party any tax-related matters addressed herein.

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*
\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

This email (and any attachments thereto) is intended only for use by the addressee(s) named herein and may contain legally privileged and/or confidential information. If you are not the intended recipient of this email, you are hereby notified that any dissemination, distribution or copying of this email (and any attachments thereto) is strictly prohibited. If you receive this email in error please immediately notify me a ▮▮▮▮▮▮ nd permanently delete the original email (and any copy of any email) and any printout thereof.

Further information about the firm, a list of the Partners and their professional qualifications will be provided upon request.

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

# EXHIBIT 2069

**From:** ███████████████████████
**Sent:** Thursday, August 09, 2012 9:46 PM
**To:** ████
**Subject:** RE: Kyiv Post Editorial: Skadden Stink

Does Manafort have the new Kyiv Post editorial?  Renewed and intensified urgency -- the "Skadden stink."  The issue is about to explode, including in the American press.  Far, far better to get ahead of it now while we still have a bit of a chance.



Skadden

---

**From:** ████████████
**Sent:** Thursday, August 09, 2012 4:40 PM
**To:** ███
**Subject:** Re: Kyiv Post Editorial: Skadden Stink

I have already told Manafort he has got to get ██████ but whether voluntarily or non voluntarily.

**From:** ████
**Sent:** Thursday, August 09, 2012 04:33 PM
**To:** ████████
**Subject:** FW: Kyiv Post Editorial: Skadden Stink

We really need to get them to disclose the funding.  The issue's going to build and build, and get worse and worse, and then there will be disclosure.  First rule of damage control.  Get it out there.  Maybe worth a call or e-mail to Manafort (forwarding the editorial)?



Skadden

---

**From:** ██████████
**Sent:** Thursday, August 09, 2012 4:02 PM
**To:** ████████████████████████
**Cc:** ████████████████
**Subject:** Kyiv Post Editorial: Skadden Stink

Please see the below editorial, just posted on the Kyiv Post website.  If there is anything more we can/should be saying beyond our approved statement and confirming involvement at this point, please let us know ASAP.

# Skadden Stink

Aug. 9, 2012, 9:50 p.m. | Editorial — by Kyiv Post



GOVERNMENT
EXHIBIT
U.S. v. MANAFORT, 1:17-cr-201 (A.B.J.)
2069

On Aug. 28, Yulia Tymoshenko will clash with her own government in the European Court for Human Rights. She will claim that her rights were violated, including the right to a fair trial, in a case that sent her to prison for seven years for abuse of office.

The government is preparing its defense with the help of American law company Skadden. But this cooperation is highly suspicious with very few details about the contract being revealed, and those that are made public raising even more questions.

The government claims that Skadden, a top American firm with an annual turnover of $2.17 billion, works for a mere $12,000 for Ukraine's government. None of the company's expenses is paid, including expensive flights and stay in Fairmont Hotel, where prices start at 300 euros per night.

Skadden representatives have visited Ukraine at least three or four times. In at least one of the cases the team was made up of two partners from the Washington office, plus two associates. One of the partners, ████████ ████████████████████████████████████████ normally charges $1,065 per hour, according to the Wall Street Journal.

The group stayed in Ukraine for several days and visited the imprisoned Tymoshenko in Kharkiv during a trip in June. That trip alone would have cost many times more than the ridiculous $12,000 the government claims it is paying.

These facts fuel speculation that Skadden is being paid by someone on the side. No one knows who is paying Skadden, and it's a question the company is ignoring. So the public may never know of conflicts of interest, or worse things, that may lurk behind this arrangement.

We hope that Skadden will address these serious concerns. We hope that US anti-corruption bodies are also looking into this issue, since there is little hope that the case will be investigated in Ukraine. Another question is what kind of report Skadden will produce, and how it will be used.

Members of the opposition suspect that parts of the report will be used to whitewash the actions of the prosecutors, the judges and everyone else who was instrumental in Tymoshenko's conviction. If that is the case, Skadden's reputation will be tarnished.

It's not too late for the company (and Ukraine's government) to set the record straight, and disclose to the public the details of this suspicious contract and who is footing the bill.



# EXHIBIT 2078

**From:** ███████████████████████████
**Sent:** Thursday, August 30, 2012 10:42 PM
**To:** ███████
**CC:** ██████████████████████
**Subject:** Re: Project 2



While ████ has prepared a memo for distribution to the T2 team, and we had agreed a date internally to meet with them, I have not yet communicated that intention to the OPG, except in very general terms. As a result, we can let things lie for the time being, and I doubt they are expecting, or will request a meeting or any work product from us for the moment.

If they do ask us, we can discuss how to deal, but I will hold off discussing P2 with the OPG for the time being and until we hear from you on this.

██████

**From:** ███████████████████
**Sent:** Thursday, August 30, 2012 10:04 PM
**To:** ██████████████████████████
**Cc:**
**Subject:** RE: Project 2

You are right that everything would be better, I think, if T1 could be released and absorbed and discussed before T2 truly got underway.  As you know, we got delayed because of translation time requirements.  I am extremely concered that information about Skadden's involvement in T2 has come to the attention of Tymoshenko's lawyer, and that he will use it to discredit the report at some point.   We have our explanations and defenses , e.g., as rule of law consultants, we are assisting and advising Ukr on how to manage the second trial with an eye toward guaranteeing due processs of law and meeting Western standards. That is what T2 is all about.

**From:** ████████████████████
**Sent:** Thursday, August 30, 2012 4:42 PM
**To:** █████████████████████████████
**Cc:**
**Subject:** Re: Project 2

Hi ███████

The launch and publication of the report is clearly the priority here. We fixed this date to be before the beginning of T 2 and on dates which we thought might post date publication of the report.

I hear anecdotally that there may be a further adjournment of T2 on medical grounds - which would suit because we have comments on the evidence which, ideally we would like to deliver as early as possible.

Regards

██████████████

**From:** ██████████
**Sent:** Thursday, August 30, 2012 07:59 PM
**To:** █████████████████████

**GOVERNMENT EXHIBIT**
U.S. v. MANAFORT, 1:17-cr-201 (A.B.J.)
**2078**

**Cc:** ████████████████████
**Subject:** Project 2

████████████ just got off the phone with ██████████████ He told me that you ████████████████ were planning to go over to Ukraine next week (week of September 3) for Project 2 activity.  I am concerned that Skadden's activity in Project 2 might surface before the report comes out, and that would do enormous damage to the credibility of Project 1.  Would you ████████████ be willing to talk to me some time during the day tomorrow about this concern? Thanks. ██████

# EXHIBIT 2079

**From:** ███████████████████████████
**Sent:** Thursday, August 30, 2012 12:10 AM
**To:** ██████████
**Subject:** RE: Project 2

Whichever is the barbarian -- that would be you.

---

**From:** ████████████████
**Sent:** Wednesday, August 29, 2012 6:57 PM
**To:** ████████
**Subject:** Re: Project 2

Am I the Chinese or the mongolian?

Sent from my iPhone.

On Aug 29, 2012, at 6:53 PM ██████████████████████████████ wrote:

Since we are trying to respect the Chinese Wall aspect of the two different projects, we probably should wait to show it to you until it is closer to release.

---

**From:** ████████████████
**Sent:** Wednesday, August 29, 2012 6:50 PM
**To:** ████████
**Subject:** Re: Project 2

Have not but would like to.

Sent from my iPhone.

On Aug 29, 2012, at 6:41 PM ██████████████████████████████ wrote:

Thanks. We are on the verge of releasing the report. Low profile for the time being is best. Have your read the report?

---

**From** █████████████
**Sent:** Wednesday, August 29, 2012 6:39 PM
**To:** ████████
**Subject:** Re: Project 2

Will do.

Sent from my iPhone.

On Aug 29, 2012, at 6:36 PM ██████████████████████████████ wrote:

Yes

GOVERNMENT
EXHIBIT
U.S. v. MANAFORT, 1:17-cr-201 (A.B.J.)
2079

**From:** ███████████
**Sent:** Wednesday, August 29, 2012 6:17 PM
**To:** ████████████████████████████████
**Cc:** ████████████████████████████████
**Subject:** RE: Project 2

We have a memo that is probably getting translated right now that was to go to them end of the week.  Should we put the brakes on that?

████████████████████████████
████████████████████████████
████████████████████████████
████████████████████████████

**From:** ███████████
**Sent:** Wednesday, August 29, 2012 6:00 PM
**To:** ████████████████████████████████
**Cc:** ████████
**Subject:** Project 2

Please do not talk to the Ukrainians or make any plans with the Ukrainians to return for purposes of advancing Project 2 unless and until you have talked with me first.  Thanks

SAU 176353

# **EXHIBIT 2106**

**From** ███████████

**Sent:** Wednesday, November 28, 2012 3:35 PM

**To:** Paul Manafort ███████████

**Subject:** ████ memo

**Attachments:** WASSR01A-#1224703-v1-gbc_memo_to_ukraine_-c.DOC

**Retention:** Sent Item

Too ambitious perhaps.

███████████████████████████



GOVERNMENT
EXHIBIT
U.S. v. MANAFORT, 1:17-cr-201 (A.B.J.)
2106

November 26, 2012

Memorandum to the File

███████████

This memorandum has two purposes: First, to discuss the strengths and weaknesses of Tymoshenko's case in the European Court of Human Rights; and Second, to distill my experience in the criminal justice system of Ukraine.

This memorandum is not to be treated as a document approved or issued by the law firm. This is my work-product and mine alone. In addition, I am writing this memorandum based on assurances of confidentiality – with the expectation that it will not be widely circulated and that it will be treated with utmost confidentiality.

## The European Court of Human Rights

I am not an expert on either the procedures or the precedents of the ECHR. Based on my understanding of the Tymoshenko case, however, my opinions as to the strengths and weaknesses of the appeal are as follows:

Strengths of the Appeal

- The court's decision to receive testimony from significant witnesses and to admit evidence from the prosecution when the defendant was without counsel – in the absence of any lawyer sitting at counsel's table to advise and assist the defendant – is a serious flaw in the case, both procedurally and substantively. In the United States, a reviewing court would grant a new trial.

- Taking the defendant into custody during the trial because of her obstructive behavior would not, by itself, be a violation of the defendants basic rights in light of her conduct. Holding her for the duration of the trial and even after the trial – without providing a more detailed explanation of the reasons for her incarceration and without telling her what she has to do to get out -- would be criticized in American courts. The absence of any review could also be seen as a failure. The relief, however, would likely not be a new trial since there is no suggestion that she was prejudiced. It is possible that a court in the United States would reduce her sentence.

- The court's decisions to exclude the testimony of relevant defense witnesses, to deny her the chance to present pro-defense experts on damage calculations, and to prevent her from pursuing themes she thought to be relevant to the case, (e.g., the role of RosUkrEnergo) would prompt a reviewing court in the US to grant her a new trial.

- Despite the fact that she did not present evidence in the trial to establish that her case was a selective prosecution, a reviewing court might find that her course of conduct as Prime Minister – even if you take the prosecutor's case at face value -- did not represent an

███████████████████████████████

SAU 019797

abuse of powers as prime minister. Two reasons for this: (1) Many prime ministers have in the past directly negotiated the natural gas deals with the Russians. Her decision to order the Naftogaz CEO to sign would be seen by many as a technicality. (2) The true limits on the scope of her authority – i.e., whether she could or could not close the deal without governmental action – were uncertain and there was some confusion even among legal experts about this point. Some Western courts might find that such confusion or uncertainty or ambiguity as to the precise limits of her authority would preclude a criminal prosecution/conviction of this nature.

- The evidence of criminal intent – i.e., that she actually intended to commit a crime – is virtually non-existent.

Weaknesses of the appeal

- Her own conduct. She was badly advised to behave the way she did in court – disrespectful and obstructionist. Had she conducted herself with dignity and been respectful, her position on appeal – procedurally and substantively -- would be stronger and much more sympathetic.

- Her attitude toward the process. She was badly advised to insult and attack the honor and honesty of everyone who she deemed to be against her – the judge, the prosecutors, the jailers and each and every witness against her.

- Her failure adequately to explain why she did what she did is significant. Evidence of her disregard of normal procedures, of the lack of coordination and cooperation with other leaders of government, of cloaking her own actions in secrecy – this evidence is compelling. Evidence of deceit – particularly with respect to ▮▮▮▮ -- is powerful.

## System of Criminal Justice in Ukraine

Over a five month period, our team of lawyers had virtually unlimited access to a group of prosecutors, investigators, staff and supervisory officials in the Ukrainian system of criminal justice. Ukraine inherited this system from the Soviet Union and from the Communist Party. Because Ukraine has been using this system for over sixty years, it is entrenched. But today, it is a system that is also beleaguered, criticized and discredited. There are good reasons for this and need no further explanation. The important thing is this: I came away from my experience hopeful that the owners of the system know that the system is in trouble, are working to change it and are serious about reform.

### Attitudes among Ukrainian prosecutors

For whatever the reason, we encountered a real responsiveness among the prosecutors. There was a genuine eagerness to help us perform our assignment. More importantly, we also discovered an openness to change that was unexpected. With few exceptions, the officials in the Office of the Procurator General appeared to be open to the idea of improvement. They welcomed ideas about how they might do things differently, and they wanted to know how we

did it in the United States. I would reinforce this desire to do real justice by introducing Ukraine prosecutors to the lecture delivered by the American jurist, Robert H. Jackson, who, when he was Attorney General in 1940, gave an historic speech to federal prosecutors from all over the United States. ("Your positions are of such independence and importance that while you are being diligent, strict and vigorous in law enforcement, you can also afford to be just. Although the government technically may lose its case, it has really won if justice has been done.") This speech is required reading for American prosecutors.

Too frequently, when asked to explain a decision or a ruling, Ukraine prosecutors proffered – and were satisfied with -- an explanation that involved technical compliance with a rule or a regulation, citing to a specific statute to justify a course of action. They did this to defend questionable decisions of the court as well as to explain prosecutorial decisions of their own. This is human nature. It will take some change for the prosecutorial culture of Ukraine to understand that a prosecutor should not manipulate the system to the detriment of the defendant simply because he/she can. It will take time and more experience in a truly adversarial system before Ukrainian prosecutors will learn that it is not enough just to win the case. They need to be able to look at the larger picture, and to care about the *appearance* of justice as well as the reality of justice.

The prosecutors of Ukraine are not the only prosecutors in the world who suffer from that failure. Those prosecutors who care more about due process than they do about winning are few and far between – in Western courts as well as in Ukraine. But being able to see the larger picture is important. Being able to see the process for what it is and for how it will be seen from the outside is absolutely critical. Having that perspective is vital any effort to reform the criminal justice system in Ukraine.

Most of the officials with whom we worked wanted to understand and live up to Western standards of justice. They are, for example, learning to understand the importance of *good process* as an important objective in itself. That is a good and promising and important development, because "tone at the top' is absolutely essential for change to occur.

With greatest humility, I would make the following suggestions:

Better training for the prosecutors

Ukraine should consider opening an Academy of Advocacy that would – perhaps in a three month course of instruction -- train lawyers to prepare and try cases in court. Any curriculum at such an academy would include lessons in basic procedure; how to manage discovery; how to handle exhibits and preserve evidence; how to identify the critical legal issues and prepare bench memos; how to prepare witnesses; how to make an opening statement and a closing argument; how to think about the credibility of the evidence, to identify an exhibit's weak points and to evaluate the legal issues associated with the exhibit.

Someone somewhere in Ukraine should end or at least truncate the practice of lawyers standing up and reading in court – whether it is prior testimony or transcripts of interviews or hundred-

SAU 019799

page indictments. The focus should instead be on presenting the direct testimony of live witnesses and allowing for them to be vigorously cross examined.

There should be a much greater appreciation about the rules of evidence generally but also the due process interest in having evidence that is in fact reliable and – under all standards of justice -- admissible. There should be a much greater understanding about the uses and abuses of expert testimony. Just because someone has written a report or has a credential should not allow that person to opine on the ultimate issue. The Academy should organize mock trials – with prosecutors and defense lawyers trying a fake case in front of a real judge. This kind of exercise takes place in law schools throughout the United States, and it should happen in Ukraine. .

Better training for the judges

Based on my experience with one judge, I would conclude that Ukraine judges are underpaid, undertrained, undervalued and over-worked. They deserve more money, more support, more training, more respect and more time. They also need more control over their courthouses – in terms of arranging for adequate space for counsel, for the public and for the defendants – and more control over their courtrooms – in terms of sanctioning members of the public who disrupt proceedings. Creating a school for judges – where new judges receive basic training – would be a necessary first step but not sufficient.

Everyone understands the importance of having an independent judiciary. Few are willing to do what is necessary to achieve that objective. Judges should not be immune from removal for incompetence or venality. They should be absolutely immune from being sanctioned because a result is unpopular.

Giving prosecutors more control over the investigation

The investigative arm of the Ukraine system of criminal justice seems to be an independent governmental agency of its own with its own practices and its own procedures that are totally independent of the prosecutorial function. In the West, investigators do have a great deal of freedom and independence as well, but they are always subject to supervision by the prosecutors. This provides for basic accountability.

This means that the prosecutors will preside over providing discovery to the defendant and his counsel; the prosecutors will prepare the file that goes to the court; the prosecutors make the decision as to who will be and who will not be a witness in the trial.

Strengthening the secretariat

The criminal justice system of Ukraine needs new and improved infrastructure to give greater legitimacy and accountability not only to the courts but also to the investigators and the prosecutors. It should be possible – routinely – to get verbatim transcripts of courtroom proceedings. Getting such transcripts should not be a matter of prosecutorial discretion. They should be available not only to the defendant but to the public as well. The same thing can be said for trial exhibits. That it is difficult to verify the way in which a judge is selected – and to

4

address allegations of bias and political influence – is just plain dumb.  It raises questions unnecessarily about the fairness of the proceedings.  Many of the inadequacies of the criminal justice system in Ukraine are more the product of bad systems and antiquated practices than they are of intentional and gross violations of human rights.

## Using juries

Although the Constitution of Ukraine makes specific reference to the right to a jury trial, there is no jury-trial tradition in Ukraine.  Sudden use of juries would be new and even alien to Ukraine citizens.  But the availability of juries in some criminal cases would add enormous legitimacy to the criminal justice system and protects the judiciary from political reverberations.   It would be a terrible mistake to introduce the practice of jury trials across the nation as if a bolt of lightning had struck.  It would be smart to begin the experiment – on a very limited basis with a limited number of cases drawing on a very limited jury pool.  It would be smart to teach judges and lawyers how to conduct themselves in front of a jury, how to address and instruct a jury – just to see what would happen.  For Ukraine to give serious consideration to the idea, for Ukraine to engage in serious experimentation with the idea would do wonders for Ukraine's reputation.

# Section 5 Inspection file, Registration # 3594 Paul J. Manafort
# May 27, 1987

Paul J. Manafort
Registration #3594
Section 5 Inspection
July      , 1986

0.7.4249.1510871

DOJSCO-402206083

# Memorandum



| Subject | Date |
|---|---|
| Paul J. Manafort<br>Registration No. 3594<br>Section 5 Inspection | ▮▮▮▮▮▮▮<br>149-46-62<br>Typed:  5/27/87 |

To                                    From

Registration Unit
Internal Security Section
Criminal Division

Attention: ▮▮▮▮▮▮▮▮▮▮▮▮▮          Noted 5/28/87

## BACKGROUND

The Initial registration statement was filed on June 4,
1984, reporting representation of the government of Saudi Arabia.
Paul J. Manafort is a principal in the firm of Black, Manafort, &
Stone, Inc. (BMS), which specializes in government relations,
political consulting and advertising.  Manafort registered in his
own name to avoid having the firm register for Saudi Arabia.
Employees of BMS who assisted Manafort in his work for the Saudis
filed short-form registration statements under registration
#3594.

Manafort terminated his short form on June 4, 1985, and
refiled on March 11, 1986.  A final supplemental statement was
filed on January 6, 1987, reporting the termination of the
representation of the Saudis on June 30, 1986.

## INSPECTION

The inspection consisted of a review of the correspondence,
memoranda and other documents, and the financial records
maintained in connection with the representation of Saudi Arabia.
The inspection covered the entire period of the representation,
and disclosed what appear to be significant deficiencies in the
registration, insofar as activities that have not been reported
on the supplemental statement forms.  For the most part,
proposals and suggested activities have not been included in this
report, but only activities which correspondence, memoranda or
other notes state have occurred.  The registrant will be required
to detail these activities on amendment to registration statement
forms or, in the appropriate cases, advise this office in writing
that such activities did not occur.  The notes attached to this
report constitute a complete description of the registrant's
records.  Numerous references to proposals and suggested

Page 2 of 9

0.7.4249.1510871

DOJSCO-402206084

activities have not been included in the final report or the
letter to the registrant, because of assurances by registrant's
representatives ▮▮▮▮▮▮▮▮, of BMS, and ▮▮▮▮▮▮▮▮
registrant's attorney, that the proposals were never acted upon.
The significant activities which were not reported on the
supplemental statements follow:

1.  June 29, 1984 memo Manafort and ▮▮▮▮▮▮▮▮▮▮, of the
Saudi/US Business Roundtable - Roundtable member companies should
lobby their Senators and "coordinate their efforts through the ad
hoc 'Jerusalem Contact Group' which we can put them in contact
with."

2.  July 13, 1984 memo to the "Jerusalem Contact Group" -
Regarding the status of Jerusalem legislation, states that one
member of Congress can object to a suspension of the rules, and
has a handwritten note that BMS should find that member.

3.  August 4, 1984 memo Manafort and ▮▮▮▮▮▮▮▮ - Manafort
and ▮▮▮▮ personally lobbied the offices of ▮▮▮▮▮▮▮▮▮▮

4.  September 25, 1984 memo ▮▮▮▮ to Manafort - Contacts with
▮▮▮▮▮▮▮▮ concerning
amendments to the Jerusalem Bill.  Efforts with a group to write
a minority report on the Jerusalem Bill, and references to "the
loop on the Hill" and "the political White House stuff."

5.  March 6, 1985 letter ▮▮▮▮▮▮ to Manafort and ▮▮▮▮▮ -
Handwritten notes refer to efforts to include "politically
oriented" language in the report being prepared on the Saudi arms
package.  A handwritten note to ▮▮▮▮ asked "Did we try to get
this into report?"  Reply - "Yes through the usual channel. ▮▮"

6.  April 11, 1985 memo Manafort and ▮▮▮▮▮▮▮▮ - Extensive
activities during first quarter of 1985, saw registrant serve as
a communications link between elements of the Administration and
a communications filter between the Administration and Capitol
Hill, contacts with agencies, Administration officials, and
members and staff of Congress.

7.  March 29, 1985 letter ▮▮▮▮▮▮ - enclosing two
articles to be passed on to ▮▮▮▮▮.

8.  April 23, 1985 memo Manafort to ▮▮▮▮ - "... we are trying
to persuade the White House to emphasize to the NSC the need to
force the study to a conclusion. ... we have presented the
anxieties which we have picked up in our conversations on Capitol
Hill."

9.  June 14, 1985 memo Manafort and ▮▮▮▮▮▮▮▮ - Extensive
second quarter activities described, including contacts with the
Administration and Congress, as well as activities on behalf of
Jordan and their lobbying counsel.

0.7.4249.1510871          DOJSCO-402206085

10. September 3, 1985 memo Manafort and [redacted] - Third quarter activity report stated registrant served as communication link between the Administration and Congress, balanced AIPAC's efforts with key Senators, delayed efforts to revive Resolution 177 and clarified Saudi role in financing Jordanian arms package.

11. Undated document [redacted] to Paul - "Latest State Department - [redacted] poop on Jerusalem"-Refers to White House, Hill and Derwinski, followed by notation "BACK CHANNEL".

12. Undated document [redacted] - "Fred attended meeting held by NAAA on Saudi Arms Sales. As a result the following is suggested as content for a telex to go out to Roundtable Members" (3 paragraphs follow, not copied.)

13. December 30, 1985 memo Manafort to [redacted] - Activities for the fourth quarter included communications with Congress and the Administration.

14. January 8, 1986 document - The writer (unidentified) had lunch with [redacted] and discussed Saudi Arabia, the Philippines and the Foreign Assistance Bill.

15. April 25 and April 30, 1986 memos Manafort to [redacted] - Initiated grass roots campaign among home state supporters of certain Senators in connection with the Saudi arms proposal, and follow up on calls that haven't been made.

16. April 25 and April 30, 1986 memos Manafort to [redacted] and April 25, 1986 memo Manafort to the Intercontinental Hotel - Refer to "talking points" which the registrant "provided". The Intercontinental memo had an attachment "Talking Papers for Telephone calls on Pending Saudi Munitions Sale."

17. April 30, 1986 memo Manafort to [redacted] - "I have had several conversations with [redacted] on the arms sale. Their column appears in todays [redacted] ... and we are circulating it in appropriate places."

18. Steno notebook, page 9 - A copy of the "Q&A" was left in [redacted] office, and additional information on oil output was requested.

The attached audit report is a part of this inspection report. A letter to the registrant, concerning amendments and other responses, is also attached.

### INTRODUCTION

This portion of the inspection report will serve as an audit report of the subject registrant's compliance with the financial reporting requirements of the Foreign Agents Registration Act.

### SCOPE OF AUDIT

I have examined the books and records of the registrant as they relate to the Act for the period of May 24, 1984 through June 4, 1986. The examination was conducted in accordance with certain generally accepted auditing standards and, accordingly, included such test of the accounting records and other auditing procedures as were considered necessary in the circumstances.

### OPINION

In the writer's opinion, for reasons discussed in the recommendation section of this report, the registrant's financial disclosures as presented in their initial and supplemental statements do not accurately reflect the financial activities of the registrant for purposes of the Foreign Agents Registration Act.

### Background

Appearing below is an analysis of the financial terms and conditions of the contract between Paul J. Manafort (Registration No. 3594) and the Government of Saudi Arabia, and the compensation Manafort received as per the audit. The purpose of this analysis is to determine if the compensation received by the registrant remained consistent with the financial clauses contained in the contracts filed with this office. This analysis allows the audit to determine if funds were received by the registrant in addition to funds clearly set forth and receivable per contract filed with this office, and thereby indicate the existence of an agreement, and activities, between the registrant and the foreign principal not disclosed to this office. This analysis also allows the audit to determine if the registrant was party to any agreement in which compensation was contingent, in whole or in part, upon the successful completion of any political activities.



0.7.4249.1510871                                                    DOJSCO-402206087

A second contract between the registrant and Saudi Arabia was
ent



## Conclusion

The books and records of the registrant as presented to the
auditor did not contain any evidence of monies received in addition to
monies receivable per contract, or monies received in
violation of the contingency provision provided in Section
8(h), of the Act.

In addition, as indicated the provisions of the three contracts
included expense reimbursement by Saudi Arabia to the registrant.
Total expenses reimbursed to the registrant by the foreign principal
during the terms of the three contracts amounted to ▮▮▮▮▮▮▮▮ If the
reader wishes to see a detailing of the registrant's expenses refer to
the receipts and disbursements portions of this report.

0.7.4249.1510871

DOJSCO-402206088

- 6 -

## Notes to Financial Records

Appearing in this section of the inspection report is a comparison between the receipts and disbursements reported by the registrant with the amounts actually received and incurred. The differences between the two are addressed in the recommendation section of the report, which follows.



Page 7 of 9

- 7 -



$200,000.00, which was not received and

0.7.4249.1510871

DOJSCO-402206090

Total disbursement reported by the registrant during the period of



Amendments will not be requested from the registrant for the discrepancies in reported to actual disbursements.  However, the registrant should be advised to give closer attention to proper period reporting in order to avoid future discrepancies.

0.7.4249.1510871                                                                                                    DOJSCO-402206091

# FBI 302

**REDACTED**

# FBI 302

# REDACTED