## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

_____

)
**UNITED STATES OF AMERICA,**    )
    )
    **v.**    )    **Case No. 17-cr-201-1-ABJ**
    )
**PAUL J. MANAFORT, JR.,**    )
    )
    **Defendant.**    )
_____)
    )
**IN RE: PETITIONS FOR RELIEF**    )
**CONCERNING CONSENT ORDER OF**    )    **Case No. 1:18-mc-00167-ABJ**
**FORFEITURE**    )
_____)

## FINAL ORDER OF FORFEITURE AS TO
## 29 HOWARD STREET, UNIT 4D, NEW YORK, NY 10013

*WHEREAS*, the United States filed a Motion for a Final Order of Forfeiture, and the Court has reviewed the underlying record and makes the following findings:

a.    On September 14, 2018, a written Plea Agreement was filed with this Court and signed by the defendant, Paul J. Manafort, Jr., and his counsel, in which the defendant agreed to plead guilty to a Superseding Criminal Information ("Information") charging, *inter alia*, a conspiracy to violate the Foreign Agents Registration Act ("FARA"), in violation of Title 18, United States Code, Sections 371 and 3551 *et seq*. and Title 22, United States Code, Sections 612, 618(a)(l), and 618(a)(2), and the defendant has pled guilty to that offense ("Count One"). Cr. Dkt. Nos. 419, 422, 423.[1]

b.    The Information gave notice that upon conviction of Count One, the United States would seek the forfeiture of any property real or personal, which constitutes or is derived from

---

[1] Docket entries from *United States v. Paul J. Manafort, Jr.,* Case No. 17-cr-201-1 (D.D.C.) are referred to as "Cr. Dkt. No.".   Docket entries from the miscellaneous case number for the ancillary proceedings *In Re: Petitions for Relief Concerning Consent Order of Forfeiture,* Case No: 1:18-mc-167 (D.D.C.) are referred to as "Mc. Dkt. No.".

proceeds traceable to the offense alleged in Count One, including, *inter alia*, a conspiracy to violate FARA, which property is subject to forfeiture pursuant to Title 18, United States Code, Section 981(a)(l)(C) and Title 28, United States Code, Section 2461(c).  Cr. Dkt. No. 419.

c.    The Information further alleged that the United States would seek a personal money judgment of forfeiture against the defendant representing the value of any property, real or personal, which constitutes or is derived from proceeds traceable to the offenses alleged in Count One, including, *inter alia*, a conspiracy to violate FARA, which property is subject to forfeiture pursuant to Title 18, United States Code, Section 981(a)(l)(C) and Title 28, United States Code, Section 2461(c), and that such a money judgment of forfeiture was "to be offset by the forfeiture of any specific property." Cr. Dkt. No. 419.

d.    The Information alleged that, if any of the property subject to forfeiture, as a result of any act or omission of the defendant, *inter alia,* has been transferred or sold to, or deposited with a third party, or has been commingled with other property that cannot be subdivided without difficulty, the United States would seek forfeiture of any other property of said defendant in substitution for such property ("Substitute Property") pursuant to 18 U.S.C. § 982(b) and 28 U.S.C. § 2461(c), incorporating 21 U.S.C. § 853(p).  Cr. Dkt. No. 419.

e.    In his Plea Agreement, the defendant admitted to the forfeiture allegations in the Information, and, in his Statement of the Offenses and Other Acts ("Statement"), he admitted that he obtained at least $11,000,000 as a result of his conspiracy to violate the FARA in violation of 18 U.S.C. § 371, 22 U.S.C. §§ 612 and 618. Cr. Dkt. No. 422 at 10, 423 at 2-3.

f.    In his Plea Agreement, the defendant agreed, *inter alia*, that certain specific assets constitute or are derived from proceeds traceable to the conspiracy to violate FARA offense alleged in Count One, or is property traceable thereto, and consented to the forfeiture of such

property pursuant to 18 U.S.C. §§ 981(a)(l)(C) and 28 U.S.C. § 2461(c), including, but not

limited to, the following (the "29 Howard Street Unit 4D Property"):

> The real property and premises commonly known as 29 Howard Street, # 4D, New York, New York, 10013 (Block 209, Lot 1104), including all appurtenances, improvements, and attachments thereon, and any property traceable thereto.

Cr. Dkt. No. 422 at ¶ 12.

      g.    The 29 Howard Street Unit 4D Property is more specifically described as follows:

> The Condominium Unit (hereinafter referred to as the "Unit") in the building (hereinafter referred to as the "Building") known as The 29 Howard Street Condominium and by the street number 29 Howard Street, Borough of Manhattan, County of New York and City and State of New York, said Unit being designated and described as Unit No. 4 in a certain declaration dated December 16, 2002, made by the Sponsor pursuant to Article 9-B of the Real Property Law of the State of New York (hereinafter referred to as the "Condominium Act") establishing a plan for condominium ownership of the Building and land (hereinafter referred to as the "Land") upon which the Building is situate (which Land is more particularly described below and by this reference made a part hereof), which declaration was recorded in the New York County Office of the Register of The City of New York on January 22, 2003 as CRFN 2003000003859 as amended by the Amendment to the Declaration dated April 22, 2003 and recorded June 4, 2003 as CRFN 2003000154620, (which declaration and amendments thereto are hereinafter collectively referred to as the "Declaration"). This Unit is also designated as Tax Lot 1104 in Block 209 of the Borough of Manhattan on the Tax Map of the Real Property Assessment Department of the City of New York and on the floor Plans of the Building filed with said Assessment Department as Condominium Plan No. 1283 and also filed in the City Register's Office on January 22, 2003 as CRFN 2003000003860. TOGETHER with an undivided 14.3688% interest in the Common Elements (as such term is defined in the Declaration). The Land on which the Building containing said Unit is more particularly bounded and described as follows: Parcel 1: Lot 10 Parcel A: All that certain plot, piece or parcel of land, with the buildings and improvements thereon erected, situate, lying and being in the Borough and County of New York, City and State of New York, distinguished on the Map of Bayards's East Farm by Lot No. 663 and known as 29 Howard Street, said lot being bounded and contained as follows: Northerly in front by Howard Street, 25 feet; Easterly by Lot No. 664 on said Map, 100 feet; Westerly by Lot No. 662 on said Map, and being 25 feet in width in the rear thereof and also certain strip of land; ALSO Parcel B: All that certain plot, piece or parcel of land, situate, lying

and being in the Borough and County of New York, City and State of New York, bounded and described as follows: BEGINNING at a point on the Southerly side of Howard Street, at the center of a party wall standing upon Lots 29 and 31 Howard Street; RUNNING THENCE Southerly along the center line of said wall and the prolongation of said line to the rear of said Lot 31 Howard Street; THENCE Easterly along the rear line of said Lot 31, 8 inches to the Westerly line of said Lot 29, Howard Street; THENCE Northerly along said Westerly line of said Lot 29 and the Easterly side of said wall to the Northerly line of said Lot 29; THENCE Westerly along the Northerly line of said Lot 31, 8 inches to the BEGINNING. APN: Block 209, Lot 1104.

h.      The defendant further agreed that the 29 Howard Street Unit 4D Property could additionally be forfeited as substitute property pursuant to 18 U.S.C. § 982(b), 21 U.S.C. § 853(p) and 28 U.S.C. § 2461(c).  Cr. Dkt. No. 422 at 11.

i.      On October 10, 2018, with the defendant's consent, the Court entered a Consent Order of Forfeiture signed by the Court on October 9, 2018, constituting a preliminary order of forfeiture ("Consent Order of Forfeiture").  Cr. Dkt. No. 443.  In the Consent Order of Forfeiture, this Court found, based on the evidence and information before it, including the defendant's Plea Agreement, that the 29 Howard Street Unit 4D Property was subject to forfeiture, and the Court so ordered its forfeiture. *Id*.

j.      The United States established the requisite nexus between the 29 Howard Street Unit 4D Property and the defendant's offense, and that the defendant has an interest in the property.

k.      On March 13, 2019, the defendant was sentenced and the Court entered an amended Order of Forfeiture pursuant to Rule 32.2(b)(1) and (b)(2) of the Federal Rules of Criminal Procedure ("March 13, 2019 Order of Forfeiture").  In the March 13, 2019 Order of Forfeiture, the Court again found that the 29 Howard Street Unit 4D Property was subject to forfeiture pursuant to 18 U.S.C. §§ 981(a)(1)(C), 982(b), 21 U.S.C. § 853(p) and 28 U.S.C. §

2461(c) and so ordered its forfeiture.  The Court also found that the defendant obtained at least

$11,000,000 in proceeds from the conspiracy to violate FARA alleged in Count One, for which

he was convicted, and, accordingly, entered a Personal Money Judgment against the defendant in

the amount of $11,000,000 pursuant to 18 U.S.C. §§ 981(a)(1)(C) and 28 U.S.C. § 2461(c).  Cr.

Dkt. No. 549.

       l.     The March 13, 2019 Order of Forfeiture decreed that the net proceeds realized by

the United States upon the disposition of forfeited properties, including the 29 Howard Street

Unit 4D Property, be credited to the Personal Money Judgment of Forfeiture.  Cr. Dkt. No. 549.

       m.    The March 13, 2019 Order of Forfeiture was final as to the defendant upon its

entry, and was made part of his sentence and included in the judgment pursuant to Rule

32.2(b)(4) of the Federal Rules of Criminal Procedure.  Cr. Dkt. Nos. 549, 556, 556-1.

       n.     The 29 Howard Street Unit 4D Property was titled to Paul Manafort and Kathleen

Manafort.

       o.     In his Plea Agreement, the defendant, Paul J. Manafort, Jr., in addition to agreeing

to the forfeiture, represented that "he is either the sole and rightful owner and that no other

person or entity has any claim or interest, or that he has secured the consent from any other

individuals or entities having an interest in the [29 Howard Street Unit 4D Property] to convey

their interests in the [29 Howard Street Unit 4D Property] to him prior to the entry of the Order

of Forfeiture (with the exception of previously disclosed mortgage holders.)."  Cr. Dkt. No. 422

at 12.

       p.     In accordance with 21 U.S.C. § 853(n)(1), Rule 32.2(b)(6)(C) of the Federal

Rules of Criminal Procedure, and Rule G(4)(a)(iv)(C) of the Supplemental Rules for Admiralty

or Maritime Claims and Asset Forfeiture Actions ("the Supplemental Rules"), a Notice of

Forfeiture with respect to the properties named in the Consent Order of Forfeiture, including the

29 Howard Street Unit 4D Property, was posted on an official government internet site

(www.forfeiture.gov) for at least 30 consecutive days, beginning on October 13, 2018 and

ending on November 11, 2018.  Proof of publication was filed with the Court on March 11, 2019

as an attachment to the United States' Declaration of Notice and Publication.  Cr. Dkt. No. 545.

       q.      The published notice explained that any person asserting a legal interest in the

properties named in the Consent Order of Forfeiture, including the 29 Howard Street Unit 4D

Property, was required to file a petition with the Court within sixty (60) days from the first day

of publication of the notice on the government internet site, and that if no such petitions were

filed within the filing period, the United States would have clear title to the properties.  Cr. Dkt.

No. 545.

       r.      In accordance with 21 U.S.C. § 853(n)(1), Rule 32.2(b)(6)(D) of the Federal

Rules of Criminal Procedure, and Supplemental Rules G(4)(b)(iii)-(v), the United States also

sent direct written notice to any persons who reasonably appeared to be a potential claimant with

standing to contest the forfeiture in the ancillary proceeding or were known to have alleged an

interest in the forfeited property, by means reasonably calculated to reach them, as described in

the United States' Declaration of Notice and Publication, including, but not limited to: Kathleen

Manafort, Citizens Financial Group, Inc. D/B/A Citizens Bank ("Citizens Bank"), and the

condominium association, 29 Howard Street Condominium.  Cr. Dkt. No. 545.

       s.      The United States has complied with Rule 32.2(b)(6) of the Federal Rules of

Criminal Procedure concerning direct written notice and notice by publication, as described in

the United States Declaration of Notice and Publication.  Cr. Dkt. Nos. 549, 556-1.  The content

of the notice was compliant with Rule 32.2(b)(6) and no further notice is required.  *Id.* at ¶4.

t.      Following notice of the Consent Order of Forfeiture, two interested parties

asserted an interest in the 29 Howard Street Unit 4D Property: Citizens Bank and 29 Howard

Street Condominium.  *See* Mc. Dkt. Nos. 33, 38.  Kathleen Manafort did not file a petition.

u.      No other petitions were filed or made in this action or under the miscellaneous

case number assigned to the ancillary proceedings in this case, *In Re: Petitions for Relief

Concerning Consent Order of Forfeiture,* Case No: 1:18-mc-167, with respect to the 29 Howard

Street Unit 4D Property.  No other parties have appeared to contest the forfeiture of the 29

Howard Street Unit 4D Property to date and the statutory time periods in which to do so have

expired.

v.      On February 8, 2019, the Court endorsed a Stipulation and Order of Settlement

between the United States and Citizens Bank resolving the petition of Citizens Bank, (the

"Citizens Bank Stipulation and Order"), a copy of which is attached hereto as Appendix 1 and

which is incorporated herein by reference as if set out in full. Mc. Dkt. No. 39.

w.      Also on February 8, 2019, the Court endorsed a Stipulation and Order of

Settlement between the United States and 29 Howard Street Condominium resolving its interest

in the 29 Howard Street Unit 4D Property (the "29 Howard Street Condominium Stipulation and

Order"), a copy of which is attached hereto as Appendix 2 and which is incorporated herein by

reference as if set out in full.  Mc. Dkt. No. 38.

x.      Pursuant to 21 U.S.C. § 853(n)(7) and Fed. R. Crim. P. 32.2(c)(2), the United

States shall have clear title to any forfeited property following the Court's disposition of all

petitions and the expiration of the time period provided for the filing of petitions.

**NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT:**

1.      Pursuant to 18 U.S.C. §§ 981(a)(1)(C), 982(b), 28 U.S.C. § 2461(c) and Rule 32.2 of the Federal Rules of Criminal Procedure, all right, title and interest in the following property is hereby forfeited to the United States of America, as property real or personal, which constitutes or is derived from proceeds traceable to, the defendant's offense of conspiring against the United States to violate the FARA in violation of 18 U.S.C. § 371, 22 U.S.C. §§ 612, 618(a):

> The real property and premises commonly known as 29 Howard Street, Unit 4D, New York, New York, 10013 (Block 209, Lot 1104), including all appurtenances, improvements, and attachments thereon, and any property traceable thereto, the sale thereof being subject to the terms of the Citizens Bank Stipulation and Order and the 29 Howard Street Condominium Stipulation and Order filed February 8, 2019, copies of which are attached as Appendix 1 and Appendix 2.

2.      The forfeiture of the 29 Howard Street Unit 4D Property was made final as to the defendant and made part of the sentence and included in the judgment on March 13, 2019, under Rule 32.2(b)(4) of the Federal Rules of Criminal Procedure.

3.      The United States has clear title to the 29 Howard Street Unit 4D Property pursuant to Federal Rule of Criminal Procedure 32.2(c)(2) and 21 U.S.C. § 853(n)(7), and, subject to the Citizens Bank Stipulation and Order and the 29 Howard Street Condominium Stipulation and Order, any and all interests that any other third party may have had in the 29 Howard Street Unit 4D Property, including any interests of Kathleen Manafort, are hereby extinguished.

4.      The United States Marshals Service, or any other duly authorized law enforcement official, shall dispose of the 29 Howard Street Unit 4D Property according to law and the terms of the Citizens Bank Stipulation and Order and the 29 Howard Street Condominium Stipulation and Order.

5.      Nothing in this Order shall affect any property subject to the March 13, 2019,

Order of Forfeiture other than the 29 Howard Street Unit 4D Property or any petition asserting an

interest in any such other property.

6.      Any net sale proceeds realized by the United States shall be credited to the

Personal Money Judgment of Forfeiture against the defendant entered on March 13, 2019.

7.      The Court retains jurisdiction to take additional action, enter further orders, and

amend this and any future orders as necessary to implement and enforce this Order.

8.      The Clerk of the Court is hereby directed to send copies to all counsel of record.


**SO ORDERED**, this __22nd__ day of _____May_____, 2019


THE HONORABLE AMY B. JACKSON
UNITED STATES DISTRICT JUDGE

**APPENDIX 1**

**Stipulation and Order of Settlement Regarding
Petition of Citizens Financial Group, Inc. D/B/A Citizens Bank
and 29 Howard Street, #4D, New York, New York 10013**

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| v. | ) |
| | ) |
| PAUL J. MANAFORT, JR., | ) |
| | ) |
| **Defendant.** | ) |
| _____ | ) |
| | ) |
| IN RE: PETITIONS FOR RELIEF | ) |
| CONCERNING CONSENT ORDER OF | )    Case No. 1:18-mc-00167-ABJ |
| FORFEITURE | ) |
| _____ | ) |
| | ) |
| CITIZENS FINANCIAL GROUP, INC. | ) |
| D/B/A CITIZENS BANK, | ) |
| | ) |
| **Petitioner.** | ) |
| _____ | ) |

## STIPULATION AND ORDER OF SETTLEMENT REGARDING
## PETITION OF CITIZENS FINANCIAL GROUP, INC. D/B/A CITIZENS BANK
## AND 29 HOWARD STREET, #4D, NEW YORK, NEW YORK 10013

IT IS HEREBY STIPULATED and AGREED by and between United States of America, by and through its undersigned counsel, and Citizens Financial Group, Inc. D/B/A Citizens Bank (including its subsidiaries and affiliates), Petitioner (hereinafter "Citizens Bank"), pursuant to 21 U.S.C. § 853(i)(2) and (n), to compromise and settle its interest in the following property:

> The real property and premises commonly known as 29 Howard Street, #4D, New York, New York 10013 (Block 209, Lot 1104), including all appurtenances, improvements, and attachments thereon,

described more fully in the deed for which is attached hereto as Exhibit A and incorporated by reference herein (the "Property"), and any property traceable thereto.

This settlement is entered into between the parties pursuant to the following terms:

1. On the terms set forth herein, Citizens Bank hereby withdraws its petition filed February 6, 2019 (the "Petition") asserting an interest in the Property. Upon the Court's

1

endorsement of this Stipulation and Order, said petition is hereby deemed dismissed with prejudice, without costs and/or attorney's fees to either party.

2.       The United States agrees that upon its sale of the property pursuant to the Court's entry of an interlocutory order authorizing sale of the property or a final order of forfeiture forfeiting the property to the United States, the United States will not contest payment to Citizens Bank from the proceeds of sale, after payment of any outstanding taxes, valid superior liens, condominium association charges and assessments, real estate commissions, insurance costs, escrow fees, document recording fees not paid by the buyer, title fees, county/city transfer fees, and other expenses incurred by the United States Marshals Service ("USMS") in connection with its custody, management, maintenance, repair, and sale of the Property, the following (to the extent the sale produces sufficient funds after the payments noted above):

    (a)    All unpaid principal due to Citizens Bank in the amount of $2,571,257.74 as of October 22, 2018, pursuant to the mortgage instrument (Loan No. XXXXXX5212), dated March 4, 2016, which was secured by a deed of trust recorded April 19, 2016, in the official records of the City of New York, New York, at City Register File Number ("CRFN") 2016000136305; and

    (b)    All unpaid principal due to Citizens Bank in the amount of $678,963.23 as of October 22, 2018, pursuant to the Credit Line Mortgage instrument (Account No. XXXXXXXXXX9203) dated March 4, 2016, which was secured by a deed of trust recorded April 19, 2016, in the official records of the City of New York, New York, at CRFN 2016000136307.

3.       The United States agrees to use its best efforts to sell the property for fair market value.

4.       The payment to Citizens Bank shall be in full settlement and satisfaction of all claims by Citizens Bank arising from and relating to the seizure, detention, and forfeiture of the Property.

5.       Upon payment, Citizens Bank agrees to provide a release of its security interest to the United States via recordable documents and to release and hold harmless the United States, and any agents, servants, and employees of the United States (and any involved state or local law enforcement agencies and their agents, servants, or employees), in their individual or official capacities, from any and all claims by Citizens Bank and its agents that currently exist or that may arise as a result of the Government's actions against and relating to the property.

2

6. Citizens Bank agrees not to pursue any other rights it may have to affect an interest in the Property under the Mortgage Instruments listed herein, including but not limited to the right to foreclose upon and sell the Property and any right to assess additional interest or penalties.

7. Citizens Bank agrees to notify the Special Counsel's Office and the Money Laundering and Asset Recovery Section (MLARS) of the U.S. Department of Justice promptly if it learns of any condition that might affect the sale of the Property, and to join in any motion by the United States to effect the sale of the Property, including motions to remove occupants who fail to abide by the terms of an occupancy agreement. Citizens Bank shall endorse such government motions within ten days of receipt of the motion.

8. Citizens Bank understands and agrees that this Stipulation and Order constitutes a full and final settlement of its petition and that it waives any rights to litigate further its interest in the Property and further pursue remission or mitigation of the forfeiture. If this Stipulation is approved by the Court, then unless specifically directed by an order of the Court, Citizens shall be excused and relieved from further participation in this action. However, this expedited settlement does not relieve the petitioner of any applicable discovery obligations.

9. Citizens Bank understands and agrees that the Special Counsel's Office and MLARS also reserve the right to void this Stipulation and Order if, before payment of the sums set forth in paragraph 2 above, the Special Counsel's Office and/or MLARS obtains new information indicating that Citizens Bank did not have a prior vested or superior interest in the property, pursuant to 21 U.S.C. § 853(n)(6)(A), or that it was not a bona fide purchaser for value of the right, title, or interest in the Property or, at the time of the purchase, was not reasonably without cause to believe that the Property was subject to forfeiture, pursuant to 21 U.S.C. § 853(n)(6)(B). The Special Counsel's Office and MLARS also reserve the right, in their discretion, to terminate the forfeiture at any time and release the Property. In either event, the Government shall promptly notify Citizens Bank of such action. A discretionary voidance or termination of forfeiture shall not be a basis for any award of fees but shall result in a reinstatement of all claims of Citizens Bank for payment in relation to the Property that are otherwise waived by the terms of this Stipulation and Order.

3

10.     The parties agree to execute further documents, to the extent necessary, to convey clear title to the Property to the United States and to implement further the terms of this Stipulation and Order.

11.     Each party agrees to bear its own costs and attorneys' fees.

12.     Payment to Citizens Bank pursuant to this Stipulation and Order is contingent upon a Court-authorized interlocutory sale of the property or the United States' prevailing against the defendant and any third-party claims in an ancillary proceeding, the Court's entry of a final order of forfeiture to the United States, and sale of the property pursuant to the final order of forfeiture. The terms of this settlement agreement shall be subject to approval by the United States District Court and any violation of any terms or conditions shall be construed as a violation of an order of the Court.

13.     The parties agree that the United States may choose in its sole discretion how it wishes to accomplish forfeiture of the Property, whether by criminal or civil forfeiture. If the United States chooses to effect the forfeiture through institution of civil forfeiture proceedings, Citizens Bank consents to the filing of this Stipulation and Order in such civil forfeiture proceedings in full settlement and satisfaction of all claims to and any right, title and interest it may have in the Property upon the same terms as set forth herein. Citizens Bank waives all defenses, including, but not limited to, defenses based upon statute of limitations and venue, and any claim to attorneys' fees or costs, with respect to any civil forfeiture proceeding related to the Property.

14.     This Stipulation and Order may be executed in counterparts, each of which shall be deemed an original, and all of which, when taken together, shall be deemed the complete Stipulation and Order.

15.     The individual(s) signing this Stipulation and Order on behalf of Citizens Bank represent and warrant that they are authorized by Citizens Bank to execute this Stipulation and Order. The undersigned United States signatory represents that he is signing this Stipulation and Order in his official capacity and that he is authorized to execute this Stipulation and Order.

4

16.     Entry of this Stipulation and Order does not affect the right of either party to seek recovery, relief or enforcement of rights against persons or entities who are not party to this agreement, including Paul J. Manafort, Jr. and other third parties.

17.     The Court shall have exclusive jurisdiction over the interpretation and enforcement of this Stipulation and Order.

18.     This Stipulation and Order constitutes the complete agreement between the parties hereto and may not be amended except by written consent thereof.

For the United States of America:          ROBERT S. MUELLER, III
                                            Special Counsel

Dated:  2/6/2019                           By: _____
                                            Andrew Weissmann
                                            Greg D. Andres
                                            U.S. Department of Justice
                                            Special Counsel's Office
                                            950 Pennsylvania Avenue NW
                                            Washington, D.C.  20530
                                            Telephone: (202) 616-0800

                                            By: _____
                                            Daniel H. Claman
                                            Money Laundering and
                                               Asset Recovery Section
                                            Criminal Division
                                            U.S. Department of Justice
                                            1400 New York Avenue, N.W., Suite 10100
                                            Washington, D.C. 20530
                                            Telephone:  (202) 514-1263

For Citizens Bank:                          DEBEVOISE & PLIMPTON LLP
                                            Attorneys for Citizens Bank

Dated: 2/6/19               By: _____
                                            Helen V. Cantwell, Esq.

Citizens Bank:

Dated: 2/6/2019            By: _____
                                            Ryan G. Parks
                                            Senior Vice President,
                                            Citizens Bank


### ORDER

Having reviewed the foregoing Stipulation and good cause appearing,

**IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the Stipulation is **SO**

**ORDERED.**

ORDERED this 7th day of February , 2019.

_____
THE HONORABLE AMY BERMAN JACKSON
UNITED STATES DISTRICT JUDGE

6

ATTACHMENT A

Deed for
29 Howard Street, #4D, New York, New York 10013
(Block 209, Lot 1104)

New York City Department of Finance, Office of the City Register
Document ID No. 2016032201175001



2016032201175001001EC900

| NYC DEPARTMENT OF FINANCE OFFICE OF THE CITY REGISTER | |
|---|---|

This page is part of the instrument. The City Register will rely on the information provided by you on this page for purposes of indexing this instrument.The information on this page will control for indexing purposes in the event of any conflict with the rest of the document.

## RECORDING AND ENDORSEMENT COVER PAGE        PAGE 1 OF 6

| Document ID: **2016032201175001** | Document Date: 03-04-2016 | Preparation Date: 03-22-2016 |
|---|---|---|
| Document Type: DEED | | |
| Document Page Count: 4 | | |

**PRESENTER:**

KENSINGTON VANGUARD NATIONAL LAND
39 WEST 37TH STREET, SEVENTH FLOOR
HOLD FOR PICKUP / SEARCH NY TITLE NO. 657009
NEW YORK, NY 10018
212-532-8686
mhunker@KVNATIONAL.COM

**RETURN TO:**

PAUL & KATHLEEN MANAFORT
10 ST. JAMES DRIVE
PALM BEACH GARDEN, FL 33418

### PROPERTY DATA

| Borough | Block | Lot | Unit | Address |
|---|---|---|---|---|
| MANHATTAN | 209 | 1104 | Entire Lot 29-4 | 27 HOWARD STREET |

Property Type: SINGLE RESIDENTIAL CONDO UNIT

### CROSS REFERENCE DATA

CRFN_____   *or*   DocumentID_____   *or*   _____ Year_____ Reel_____ Page_____   *or*   File Number_____

### PARTIES

**GRANTOR/SELLER:**

MC SOHO HOLDINGS, LLC
C/O BRUCE BALDINGER, 365 SOUTH STREET
MORRISTOWN, NJ 07960

☒ Additional Parties Listed on Continuation Page

**GRANTEE/BUYER:**

PAUL MANAFORT
10 ST. JAMES DRIVE
PALM BEACH GARDENS, FL 33418

### FEES AND TAXES

| Mortgage : | | | Filing Fee: | |
|---|---|---|---|---|
| Mortgage Amount: | $ | 0.00 | | $    125.00 |
| Taxable Mortgage Amount: | $ | 0.00 | NYC Real Property Transfer Tax: | |
| Exemption: | | | | $    0.00 |
| TAXES: County (Basic): | $ | 0.00 | NYS Real Estate Transfer Tax: | |
| City (Additional): | $ | 0.00 | | $    0.00 |
| Spec (Additional): | $ | 0.00 | | |
| TASF: | $ | 0.00 | | |
| MTA: | $ | 0.00 | | |
| NYCTA: | $ | 0.00 | | |
| Additional MRT: | $ | 0.00 | | |
| TOTAL: | $ | 0.00 | | |
| Recording Fee: | $ | 57.00 | | |
| Affidavit Fee: | $ | 0.00 | | |

**RECORDED OR FILED IN THE OFFICE OF THE CITY REGISTER OF THE CITY OF NEW YORK**

Recorded/Filed    04-19-2016 14:55
City Register File No.(CRFN):
     **2016000136303**

*Annette M Hill*

*City Register Official Signature*

| NYC DEPARTMENT OF FINANCE<br>OFFICE OF THE CITY REGISTER | <br>2016032201175001001CCB80 |
|---|---|

**RECORDING AND ENDORSEMENT COVER PAGE (CONTINUATION)**     **PAGE 2 OF 6**

| Document ID: 2016032201175001<br>Document Type: DEED | Document Date: 03-04-2016 | Preparation Date: 03-22-2016 |
|---|---|---|

**PARTIES**

**GRANTEE/BUYER:**
KATHLEEN MANAFORT
10 ST. JAMES DRIVE
PALM BEACH GARDENS, FL 33418

657009

CONSULT YOUR LAWYER BEFORE SIGNING THIS INSTRUMENT—THIS INSTRUMENT SHOULD BE USED BY LAWYERS ONLY.

**THIS INDENTURE,** made the __4__ day of __MARCH__ in the year **2016.**

**BETWEEN**

**MC Soho Holdings, LLC,** at c/o Bruce Baldinger 365 South Street, Morristown, NJ 07960, party of the first part, and

**Paul Manafort** and **Kathleen Manafort,** residing at 10 St. James Drive, Palm Beach Gardens, FL 33418, party of the second part,

**WITNESSETH,** that the party of the first part, in consideration of Ten Dollars and other valuable consideration paid by the party of the second part, does hereby grant and release unto the party of the second part, the heirs or successors and assigns of the party of the second part forever,

**ALL** that certain plot, piece or parcel of land, with the buildings and improvements thereon erected, situate, lying and being at

See attached **schedule A** description.

Block: **209,** Lot: **1104**

Said premises also known as 29 Howard Street, Unit 4 (AKA 4D & AKA 29-4), New York, NY.

**BEING** and intended to be the premises conveyed herein by a deed dated February 14, 2012 and recorded March 12, 2012 as CRFN 2012000098146 in the Office of the New York City Register.

B: 209
L: 1104

**TOGETHER** with all right, title and interest, if any, of the party of the first part of, in and to any streets and roads abutting the above-described premises to the center lines thereof; TOGETHER with the appurtenances and all the estate and rights of the party of the first part in and to said premises; TO HAVE AND TO HOLD the premises herein granted unto the party of the second part, the heirs or successors and assigns of the party of the second part forever.

**AND** the party of the first part covenants that the party of the first part has not done or suffered anything whereby the said premises have been encumbered in any way whatever, except as aforesaid.

**AND** the party of the first part, in compliance with Section 13 of the Lien Law, covenants that the party of the first part will receive the consideration for this conveyance and will hold the right to receive such consideration as a trust fund to be applied first for the purpose of paying the cost of the improvement and will apply the same first to the payment of the cost of the improvement before using any part of the total of the same for any other purpose.

The word "party" shall be construed as if it read "parties" whenever the sense of this indenture so requires.

**IN WITNESS WHEREOF,** the party of the first part has duly executed this deed the day and year first above written.

IN PRESENCE OF:                                          MC Soho Holdings, LLC

_____                    _____
**Witness**                                                      By: Paul Manafort, Managing Member
VINCENT DEL CHICCO

STATE OF ~~NEW YORK~~ FLORIDA, COUNTY OF PALM BEACH

On the 4 day of MARCH in the year 2016, before me, the undersigned, personally appeared PAUL MANAFORT

personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is (are) subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity(ies), and that by his/her/their signature(s) on the instrument, the individual(s), or the person on behalf of which the individual(s) acted, executed the instrument.

Notary VINCENT DEL CHICCO
NOTARY PUBLIC STATE OF FLORIDA
Comm Exp 8-27-17
Comm # FF 048716
(Seal)

STATE OF _____ , COUNTY OF _____
On the _____ day of _____ in the year _____ before me, the undersigned, a Notary Public in and for said State, personally appeared _____ , the subscribing witness to the foregoing instrument, with whom I am personally acquainted, who, being by me duly sworn, did depose and say that he/she/they reside(s) in

(if the place of residence is in a city, include the street and street number if any, thereof); that he/she/they know(s)

to be the individual described in and who executed the foregoing instrument; that said subscribing witness was present and saw said

execute the same; and that said witness at the same time subscribed his/her/their name(s) as a witness thereto

[add the following if the acknowledgment is taken outside NY State] and that said subscribing witness made such appearance before the undersigned in the (insert the city or other political subdivision and the State or country or other place the proof was taken).

## Bargain and Sale Deed

**WITH COVENANT AGAINST GRANTOR'S ACTS**

TITLE NO    657009(S-NY-RR-ASH)A

MC Soho Holdings, LLC

TO

Paul Manafort and Kathleen Manafort

| Distributed By |
| --- |
| **Stewart Title Insurance Company** |



---

STATE OF NEW YORK, COUNTY OF

On the ___ day of _____ in the year 2016, before me, the undersigned, personally appeared

personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is (are) subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity(ies), and that by his/her/their signature(s) on the instrument, the individual(s), or the person on behalf of which the individual(s) acted, executed the instrument.

_____

Notary

STATE OF _____ , COUNTY OF _____
On the _____ day of _____ in the year _____ before me personally came

to me known, who, being by me duly sworn, did depose and say that    he resides at
that    he is the
of
the corporation described in and which executed the foregoing instrument; that    he knows the seal of said corporation;  that the seal affixed to said instrument is such corporate seal; that it was so affixed by order of the board of directors of said corporation, and that    he signed h    name thereto by like order.

Block: 209
Lot: 1104
County of **New York**

Recoded at Request of

RETURN BY MAIL TO:

| **Paul** and **Kathleen Manafort**<br>10 St. James Drive<br>Palm Beach Gardens, FL 33418 |
| --- |



Stewart Title Insurance Company

Title Number: 657009(S-NY-RR-ASH)

## SCHEDULE A
## DESCRIPTION

The land referred to in this Certificate of Title is described as follows:

The Condominium Unit (hereinafter referred to as the "Unit') in the building (hereinafter referred to as the "Building") known as The 29 Howard Street Condominium and by the street number 29 Howard Street, Borough of Manhattan, County of New York and City and State of New York, said Unit being designated and described as Unit No. 4 in a certain declaration dated December 16, 2002, made by the Sponsor pursuant to Article 9-B of the Real Property Law of the State of New York (hereinafter referred to as the "Condominium Act") establishing a plan for condominium ownership of the building and land (hereinafter referred to as the "Land") upon which the Building is situate (which Land is more particularly described below and by this reference made a part hereof), which declaration was recorded in the New York County Office of the Register of The City of New York on January 22, 2003 as CRFN 2003000003859 as amended by the Amendment to the Declaration dated April 22, 2003 and recorded June 4, 2003 as CRFN 2003000154620, (which declaration and amendments thereto are hereinafter collectively referred to as the "Declaration"). This Unit is also designated as Tax Lot 1104 in Block 209 of the Borough of Manhattan on the Tax Map of the Real Property Assessment Department of the City of New York and on the floor Plans of the Building filed with said Assessment Department as Condominium Plan No. 1283 and also filed in the City Register's Office on January 22, 2003 as CRFN 2003000003860.

TOGETHER with an undivided 14.3688% interest in the Common Elements (as such term is defined in the Declaration).

The Land on which the Building containing said Unit is more particularly bounded and described as follows:

Parcel 1: Lot 10

Parcel A:

ALL that certain plot, piece or parcel of land, with the buildings and improvements thereon erected, situate, lying and being in the Borough and County of New York, City and State of New York, distinguished on the Map of Bayards's East Farm by Lot No. 663 and known as 29 Howard Street, said lot being bounded and contained as follows:

Northerly in front by Howard Street, 25 feet;

Easterly by Lot No. 664 on said Map, 100 feet;

Westerly by Lot No. 662 on said map, and being 25 feet in width in the rear thereof and also certain strip of land;

ALSO

Parcel B:

ALL that certain plot, piece or parcel of land, situate, lying and being in the Borough and County of New York, City and State of New York, bounded and described as follows:

BEGINNING at a point on the southerly side of Howard Street, at the center of a party wall standing upon Lots 29 and 31 Howard Street;

RUNNING THENCE southerly along the center line of said wall and the prolongation of said line to the rear of

Certificate of Title                                    (657009(S-NY-RR-ASH).pfd/657009(S-NY-RR-ASH)/9)

**SCHEDULE A**
**DESCRIPTION**
(Continued)

Title Number:   657009(S-NY-RR-ASH)

said Lot 31 Howard Street;

THENCE easterly along the rear line of said Lot 31, 8 inches to the westerly line of said Lot 29, Howard Street;

THENCE northerly along said westerly line of said Lot 29 and the easterly side of said wall to the northerly lien of said Lot 29;

THENCE westerly along the northerly line of said Lot 31, 8 inches to the BEGINNING.

**NYC DEPARTMENT OF FINANCE**
**OFFICE OF THE CITY REGISTER**



2016032201175001001S0781

| SUPPORTING DOCUMENT COVER PAGE | | PAGE 1 OF 1 |
|---|---|---|
| **Document ID: 2016032201175001** | Document Date: 03-04-2016 | Preparation Date: 03-22-2016 |
| Document Type: DEED | | |

**ASSOCIATED TAX FORM ID:** 2016022400349

**SUPPORTING DOCUMENTS SUBMITTED:**

| | Page Count |
|---|---|
| DEP CUSTOMER REGISTRATION FORM FOR WATER AND SEWER BILLING | 1 |
| RP - 5217 REAL PROPERTY TRANSFER REPORT | 4 |
| SMOKE DETECTOR AFFIDAVIT | 2 |

| FOR CITY USE ONLY | | | REAL PROPERTY TRANSFER REPORT |
|---|---|---|---|
| **C1.** County Code | | **C2.** Date Deed Recorded | Month / Day / Year |

STATE OF NEW YORK
STATE BOARD OF REAL PROPERTY SERVICES

**C3.** Book OR

**C4.** Page

**C5.** CRFN

# RP - 5217NYC

## PROPERTY INFORMATION

**1. Property Location**
27 | HOWARD STREET 29-4 | MANHATTAN | 10013
STREET NUMBER | STREET NAME | BOROUGH | ZIP CODE

**2. Buyer Name**
MANAFORT | PAUL
LAST NAME / COMPANY | FIRST NAME

MANAFORT | KATHLEEN
LAST NAME / COMPANY | FIRST NAME

**3. Tax Billing Address**
Indicate where future Tax Bills are to be sent if other than buyer address (at bottom of form)
LAST NAME / COMPANY | FIRST NAME

STREET NUMBER AND STREET NAME | CITY OR TOWN | STATE | ZIP CODE

**4. Indicate the number of Assessment Roll parcels transferred on the deed** 1 # of Parcels OR ☐ Part of a Parcel

**4A.** Planning Board Approval - N/A for NYC
**4B.** Agricultural District Notice - N/A for NYC

Check the boxes below as they apply:

**5. Deed Property Size** ____ X ____ OR ____
FRONT FEET DEPTH ACRES

**6.** Ownership Type is Condominium ☑
**7.** New Construction on Vacant Land ☐

**8. Seller Name**
MC SOHO HOLDINGS, LLC
LAST NAME / COMPANY | FIRST NAME

LAST NAME / COMPANY | FIRST NAME

**9. Check the box below which most accurately describes the use of the property at the time of sale:**

| A ☑ One Family Residential | C ☐ Residential Vacant Land | E ☐ Commercial | G ☐ Entertainment / Amusement | I ☐ Industrial |
|---|---|---|---|---|
| B ☐ 2 or 3 Family Residential | D ☐ Non-Residential Vacant Land | F ☐ Apartment | H ☐ Community Service | J ☐ Public Service |

## SALE INFORMATION

**10. Sale Contract Date** 3 / 4 / 2016
Month / Day / Year

**11. Date of Sale / Transfer** 3 / 4 / 2016
Month / Day / Year

**12. Full Sale Price** $ 0

( Full Sale Price is the total amount paid for the property including personal property. This payment may be in the form of cash, other property or goods, or the assumption of mortgages or other obligations.) *Please round to the nearest whole dollar amount.*

**13. Indicate the value of personal property included in the sale** $

**14. Check one or more of these conditions as applicable to transfer:**

| A | ☐ Sale Between Relatives or Former Relatives |
|---|---|
| B | ☐ Sale Between Related Companies or Partners in Business |
| C | ☐ One of the Buyers is also a Seller |
| D | ☐ Buyer or Seller is Government Agency or Lending Institution |
| E | ☐ Deed Type not Warranty or Bargain and Sale (Specify Below ) |
| F | ☐ Sale of Fractional or Less than Fee Interest ( Specify Below ) |
| G | ☐ Significant Change in Property Between Taxable Status and Sale Dates |
| H | ☐ Sale of Business is Included in Sale Price |
| I | ☐ Other Unusual Factors Affecting Sale Price ( Specify Below ) |
| J | ☑ None |

## ASSESSMENT INFORMATION - Data should reflect the latest Final Assessment Roll and Tax Bill

**15. Building Class** R 1

**16. Total Assessed Value** (of all parcels in transfer) 9 2 3 2 4

**17. Borough, Block and Lot / Roll Identifier(s)** ( If more than three, attach sheet with additional Identifier(s) )

MANHATTAN 209 1104

CITY REGISTER
MAR 29 2016

MAR 29 2016
CITY REGISTER

2016022400034920102

| CERTIFICATION | I certify that all of the items of information entered on this form are true and correct (to the best of my knowledge and belief) and understand that the making of any willful false statement of material fact herein will subject me to the provisions of the penal law relative to the making and filing of false instruments. |

**BUYER**

DATE: 3-4-16

**BUYER'S ATTORNEY**

| BUYER SIGNATURE | | LAST NAME | FIRST NAME |

10 ST. JAMES DRIVE

| STREET NUMBER | STREET NAME (AFTER SALE) | | AREA CODE | TELEPHONE NUMBER |

**SELLER**

PALM BEACH GARDENS

| | FL | 33418 | |
| CITY OR TOWN | STATE | ZIP CODE | SELLER SIGNATURE | DATE |

2016022400349201

| CERTIFICATION | I certify that all of the items of information entered on this form are true and correct (to the best of my knowledge and belief) and understand that the making of any willful false statement of material fact herein will subject me to the provisions of the penal law relative to the making and filing of false instruments. |

| BUYER | | | BUYER'S ATTORNEY | |

| BUYER SIGNATURE | DATE | | LAST NAME | FIRST NAME |
| 10 ST. JAMES DRIVE | | | | |

| STREET NUMBER | STREET NAME (AFTER SALE) | | AREA CODE | TELEPHONE NUMBER |
| PALM BEACH GARDENS | FL | 33418 | SELLER | 3-9-16 |
| CITY OR TOWN | STATE | ZIP CODE | SELLER SIGNATURE | DATE |

*MANAGING MEMBER*

*PAUL J. MANAFORT*

2016022400349201

Form RP-5217 NYC                                                                ATTACHMENT

# CERTIFICATION

I certify that all of the items of information entered on this form are true and correct (to the best of my knowledge and belief) and understand that the making of any willful false statement of material fact herein will subject me to the provisions of the penal law relative to the making and filing of false instruments.

**BUYERS**                                                    **SELLERS**

_Kathleen B Manafort_                3-4-16
_____   _____     _____   _____
Buyer Signature             Date                     Seller Signature            Date
_Kathleen B Manafort_

_____   _____     _____   _____
Buyer Signature             Date                     Seller Signature            Date

_____   _____     _____   _____
Buyer Signature             Date                     Seller Signature            Date

_____   _____     _____   _____
Buyer Signature             Date                     Seller Signature            Date

_____   _____     _____   _____
Buyer Signature             Date                     Seller Signature            Date

_____   _____     _____   _____
Buyer Signature             Date                     Seller Signature            Date

_____   _____     _____   _____
Buyer Signature             Date                     Seller Signature            Date

_____   _____     _____   _____
Buyer Signature             Date                     Seller Signature            Date

_____   _____     _____   _____
Buyer Signature             Date                     Seller Signature            Date

_____   _____     _____   _____
Buyer Signature             Date                     Seller Signature            Date

_____   _____     _____   _____
Buyer Signature             Date                     Seller Signature            Date

_____   _____     _____   _____
Buyer Signature             Date                     Seller Signature            Date

_____   _____     _____   _____
Buyer Signature             Date                     Seller Signature            Date

_____   _____     _____   _____
Buyer Signature             Date                     Seller Signature            Date

_____   _____     _____   _____
Buyer Signature             Date                     Seller Signature            Date

_____   _____     _____   _____
Buyer Signature             Date                     Seller Signature            Date

_____   _____     _____   _____
Buyer Signature             Date                     Seller Signature            Date

_____   _____     _____   _____
Buyer Signature             Date                     Seller Signature            Date

_____   _____     _____   _____
Buyer Signature             Date                     Seller Signature            Date

_____   _____     _____   _____
Buyer Signature             Date                     Seller Signature            Date

# AFFIDAVIT OF COMPLIANCE
# WITH SMOKE DETECTOR REQUIREMENT
# FOR ONE- AND TWO-FAMILY DWELLINGS

Florida

State of ~~New York~~        )
                            ) SS.:
County of Palm Beach        )

The undersigned, being duly sworn, depose and say under penalty of perjury that they are the grantor and grantee of the real property or of the cooperative shares in a cooperative corporation owning real property located at

| 27 HOWARD STREET | | 29-4 |
|---|---|---|
| Street Address | | Unit/Apt. |

| MANHATTAN | New York, | 209 | 1104 | (the "Premises"); |
|---|---|---|---|---|
| Borough | | Block | Lot | |

That the Premises is a one or two family dwelling, or a cooperative apartment or condominium unit in a one- or two-family dwelling, and that installed in the Premises is an approved and operational smoke detecting device in compliance with the provisions of Article 6 of Subchapter 17 of Chapter 1 of Title 27 of the Administrative Code of the City of New York concerning smoke detecting devices;

That they make affidavit in compliance with New York City Administrative Code Section 11-2105 (g). (The signatures of at least one grantor and one grantee are required, and must be notarized).

| | PAUL MANAFORT |
|---|---|
| **Name of Grantor** (Type or Print) | **Name of Grantee** (Type or Print) |
| SEE ATTACHED | |
| **Signature of Grantor** | **Signature of Grantee** |

Sworn to before me                              Sworn to before me   VINCENT DELCHICCO
this _____ date of _____ 20 ____         this __4__ date of  MARCH    20 16



These statements are made with the knowledge that a willfully false representation is unlawful and is punishable as a crime of perjury under Article 210 of the Penal Law.

**NEW YORK CITY REAL PROPERTY TRANSFER TAX RETURNS FILED ON OR AFTER FEBRUARY 6th, 1990, WITH RESPECT TO THE CONVEYANCE OF A ONE- OR TWO-FAMILY DWELLING, OR A COOPERATIVE APARTMENT OR A CONDOMINIUM UNIT IN A ONE- OR TWO-FAMILY DWELLING, WILL NOT BE ACCEPTED FOR FILING UNLESS ACCOMPANIED BY THIS AFFIDAVIT.**

SEAL

VINCENT DELCHICCO
Notary Public · State of Florida
My Comm. Expires Aug 27, 2017
Commission # FF 048716

1

2016022400349101

# AFFIDAVIT OF COMPLIANCE
## WITH SMOKE DETECTOR REQUIREMENT
## FOR ONE- AND TWO-FAMILY DWELLINGS

State of ~~New York~~ *Florida* )
                   ) SS.:
County of *Palm Beach* )

The undersigned, being duly sworn, depose and say under penalty of perjury that they are the grantor and grantee of the real property or of the cooperative shares in a cooperative corporation owning real property located at

| 27 HOWARD STREET | , | 29-4 |
|---|---|---|
| **Street Address** | | **Unit/Apt.** |

| MANHATTAN | New York, | 209 | 1104 | (the "Premises"); |
|---|---|---|---|---|
| **Borough** | | **Block** | **Lot** | |

That the Premises is a one or two family dwelling, or a cooperative apartment or condominium unit in a one- or two-family dwelling, and that installed in the Premises is an approved and operational smoke detecting device in compliance with the provisions of Article 6 of Subchapter 17 of Chapter 1 of Title 27 of the Administrative Code of the City of New York concerning smoke detecting devices;

That they make affidavit in compliance with New York City Administrative Code Section 11-2105 (g). (The signatures of at least one grantor and one grantee are required, and must be notarized).

*MC SOHO Holdings LLC*
*Paul Manafort, Managing Member*
_____     _____
**Name of Grantor** (Type or Print)        **Name of Grantee** (Type or Print)

_____     _____
**Signature of Grantor**            **Signature of Grantee**

Sworn to before me                 Sworn to before me
this __15th__ date of __March__ 20 _16_     this _____ date of _____ 20 _____

[Notary stamp: Notary Public State of Florida / Gregg W Gullo / My Commission FF 961183 / Expires 03/02/2020]

**SEAL**

These statements are made with the knowledge that a willfully false representation is unlawful and is punishable as a crime of perjury under Article 210 of the Penal Law.

**NEW YORK CITY REAL PROPERTY TRANSFER TAX RETURNS FILED ON OR AFTER FEBRUARY 6th, 1990, WITH RESPECT TO THE CONVEYANCE OF A ONE- OR TWO-FAMILY DWELLING, OR A COOPERATIVE APARTMENT OR A CONDOMINIUM UNIT IN A ONE- OR TWO-FAMILY DWELLING, WILL NOT BE ACCEPTED FOR FILING UNLESS ACCOMPANIED BY THIS AFFIDAVIT.**

1

2016022400349101



**The City of New York**
**Department of Environmental Protection**
**Bureau of Customer Services**
**59-17 Junction Boulevard**
**Flushing, NY  11373-5108**

## Customer Registration Form for Water and Sewer Billing

### Property and Owner Information:

(1)  Property receiving service: **BOROUGH: MANHATTAN**        **BLOCK: 209**        **LOT: 1104**

(2)  Property Address: **27 HOWARD STREET  Unit 29-4, NEW YORK, NY 10013**

(3)  Owner's Name:       **MANAFORT , PAUL**

Additional Name:       **MANAFORT , KATHLEEN**

### Affirmation:

  Your water & sewer bills will be sent to the property address shown above.

### Customer Billing Information:

#### Please Note:

**A.**  Water and sewer charges are the legal responsibility of the owner of a property receiving water and/or sewer service. The owner's responsibility to pay such charges is not affected by any lease, license or other arrangement, or any assignment of responsibility for payment of such charges. Water and sewer charges constitute a lien on the property until paid. In addition to legal action against the owner, a failure to pay such charges when due may result in foreclosure of the lien by the City of New York, the property being placed in a lien sale by the City or Service Termination.

**B.**  Original bills for water and/or sewer service will be mailed to the owner, **at the property address or to an alternate mailing address.**  DEP will provide a duplicate copy of bills to one other party (such as a managing agent), however, any failure or delay by DEP in providing duplicate copies of bills shall in no way  relieve the owner from his/her liability to pay all outstanding water and sewer charges. Contact DEP at (718) 595-7000 during business hours or visit www.nyc.gov/dep to provide us with the other party's information.

### Owner's Approval:

The undersigned certifies that he/she/it is the owner of the property receiving service referenced above; that he/she/it has read and understands Paragraphs A & B under the section captioned "Customer Billing Information"; and that the information supplied by the undersigned on this form is true and complete to the best of his/her/its knowledge.

Print Name of Owner: *PAUL MANAFORT*

Signature: _____        Date (mm/dd/yyyy)  *03/04/2016*

Name and Title of Person Signing for Owner, if applicable: _____

BCS-7CRF-ACRIS  REV. 8/08

2

2016022400349101

**APPENDIX 2**

**Stipulation and Order of Settlement
Regarding Interested Party 29 Howard Street Condominium
and 29 Howard Street, #4D, New York, New York 10013**

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| v. ) | |
| ) | |
| PAUL J. MANAFORT, JR., ) | |
| ) | |
| **Defendant.** ) | |
| ) | |
| IN RE: PETITIONS FOR RELIEF ) | Case No. 1:18-mc-00167-ABJ |
| CONCERNING CONSENT ORDER OF ) | |
| FORFEITURE ) | |
| ) | |
| 29 HOWARD STREET ) | |
| CONDOMINIUM ) | |
| ) | |
| **Interested Party.** ) | |

## STIPULATION AND ORDER OF SETTLEMENT
### REGARDING INTERESTED PARTY 29 HOWARD STREET CONDOMINIUM AND 29 HOWARD STREET, #4D, NEW YORK, NEW YORK 10013

IT IS HEREBY STIPULATED and AGREED by and between United States of America (the "United States"), by and through its undersigned counsel, and 29 Howard Street Condominium, Interested Party herein ("29 Howard Street Condominium"), pursuant to 21 U.S.C. § 853(i)(2) and (n), to compromise and settle its interest in the following property:

> The real property and premises commonly known as 29 Howard Street, #4D, New York, New York 10013 (Block 00209, Lot 1104), including all appurtenances, improvements, and attachments thereon,

described more fully in the deed for which is attached hereto as Exhibit A and incorporated by reference herein (the "Property"), and any property traceable thereto.

This settlement is entered into between the parties pursuant to the following terms:

1

1.      29 Howard Street Condominium is a condominium association that had a prior vested or superior interest in the Property or was a bona fide purchaser for value of the right, title, or interest in the Property, and was at the time of purchase reasonably without cause to believe that the Property was subject to forfeiture.

2.      The parties stipulate that this Stipulation and Order shall be deemed 29 Howard Street Condominium's filing of a petition asserting an interest in the Property, and 29 Howard Street Condominium's agreement to withdraw such petition on the terms set forth herein. Upon the Court's endorsement of this Stipulation and Order, said petition is hereby deemed dismissed with prejudice, without costs and/or attorney's fees to either party.

3.      The United States agrees that within thirty (30) days of the earlier of (i) its sale of the Property pursuant to the Court's entry of an interlocutory order authorizing sale of the Property and payment of the following from the proceeds thereof, or (ii) entry of a final order of forfeiture forfeiting the Property to the United States, the United States will pay to 29 Howard Street Condominium the following (the "Payment"):

      (a)    All accrued and unpaid common charges due to 29 Howard Street Condominium up to the date of such sale or final order of forfeiture, at a monthly rate of $571.88 for November and December 2018, and at a rate of $669.71 per month as of January 1, 2019;

      (b)    A special assessment of $718.44, due as of December 15, 2018; and

      (c)    The Property's proportional share of any additional special assessments assessed by the 29 Howard Street Condominium up to the date of such sale or final order of forfeiture;

as may be accruing or assessed according to the By-Laws of the 29 Howard Street Condominium (the "By-Laws"), a copy of which is attached hereto as Exhibit B.

4.      The United States agrees to pay such additional monthly common charges, special assessments, and other proportional condominium fees and charges due to 29 Howard Street Condominium related to the Property as may be accruing and assessed according to the By-Laws (collectively, the "Monthly Payments") until the date of sale of the Property to another owner.

2

5.     The Payment and Monthly Payments to 29 Howard Street Condominium shall be in full settlement and satisfaction of all claims by 29 Howard Street Condominium arising from and relating to the seizure, detention, and forfeiture of the Property. Notwithstanding the foregoing, this shall not release any claims that accrue in favor of 29 Howard Street Condominium relating specifically to the United States' management of the Property, including but not limited to 29 Howard Street Condominium's right to undertake necessary repairs to the Property or the common elements of the building under Article III, Section 6 of the By-Laws and assess related charges against the Property.

6.     Upon receipt of the Payment, 29 Howard Street Condominium agrees to assign and convey its security interest to the United States via recordable documents and to release and hold harmless the United States, and any agents, servants, and employees of the United States (and any involved state or local law enforcement agencies and their agents, servants, or employees), in their individual or official capacities, from any and all claims by 29 Howard Street Condominium and its agents that currently exist or that may arise as a result of the United States' actions against and relating to the Property.

7.     The parties stipulate that in a sale or conveyance of the Property by the United States following the Court's entry of a final order of forfeiture, the United States shall have the same rights as a mortgagee who acquires title by foreclosure for purposes of Section 1 of Article XIII of the By-Laws.

8.     29 Howard Street Condominium agrees not to pursue any other rights it may have against the Property during the pendency of these forfeiture proceedings, including but not limited to the right to foreclose upon and sell the Property and any right to assess additional interest or penalties.

9.     29 Howard Street Condominium agrees to notify the Special Counsel's Office and the Money Laundering and Asset Recovery Section (MLARS) of the U.S. Department of Justice promptly if it learns of any condition that might affect the sale of the Property.

3

10.     29 Howard Street Condominium agrees not to oppose any motion by the United States to effect the sale of the Property, except that 29 Howard Street Condominium shall not be obligated to consent to any motion that creates any liability to 29 Howard Street Condominium.

11.     29 Howard Street Condominium understands and agrees that this Stipulation and Order constitutes a full and final settlement of its petition and that it waives any rights to litigate further its interest in the Property and further pursue remission or mitigation of the forfeiture. If this Agreement is approved by the Court, then unless specifically directed by an order of the Court, 29 Howard Street Condominium shall be excused and relieved from further participation in this action. However, this Stipulation and Order does not relieve 29 Howard Street Condominium of any applicable discovery obligations.

12.     29 Howard Street Condominium understands and agrees that the Special Counsel's Office and MLARS also reserve the right to void this Stipulation and Order if, before payment of the sums set forth in paragraph 3 above, the Special Counsel's Office and/or MLARS obtains new information indicating that 29 Howard Street Condominium did not have a prior vested or superior interest in the Property, pursuant to 21 U.S.C. § 853(n)(6)(A), or that it was not a bona fide purchaser for value of the right, title, or interest in the Property or, at the time of the purchase, was not reasonably without cause to believe that the Property was subject to forfeiture, pursuant to 21 U.S.C. § 853(n)(6)(B). The Special Counsel's Office and MLARS also reserve the right, in their discretion, to terminate the forfeiture at any time and release the Property. In either event, the United States shall promptly notify 29 Howard Street Condominium of such action. A discretionary termination of forfeiture shall not be a basis for any award of fees but shall result in a reinstatement of all claims of the 29 Howard Street Condominium for payment in relation to the Property that are otherwise waived by the terms of this Stipulation and Order.

13.     The parties agree to execute further documents, to the extent necessary, to convey clear title to the Property to the United States and to implement further the terms of this Stipulation and Order, provided that such documents do not create any liability to the 29 Howard Street Condominium.

14.     Each party agrees to bear its own costs and attorneys' fees.

4

15.     Payment to 29 Howard Street Condominium pursuant to this Stipulation and Order is contingent upon a Court-authorized interlocutory sale of the Property or the United States' prevailing against the defendant and any third-party claims in an ancillary proceeding, the Court's entry of a final order of forfeiture to the United States, and sale of the Property pursuant to the final order of forfeiture. The terms of this settlement agreement shall be subject to approval by the United States District Court and any violation of any terms or conditions shall be construed as a violation of an order of the Court.

16.     The parties agree that the United States may choose in its sole discretion how it wishes to accomplish forfeiture of the Property, whether by criminal or civil forfeiture. If the United States chooses to effect the forfeiture through institution of civil forfeiture proceedings, 29 Howard Street Condominium consents to the filing of this Stipulation and Order in such civil forfeiture proceedings in full settlement and satisfaction of all claims to and any right, title and interest it may have in the Property upon the same terms as set forth herein. 29 Howard Street Condominium waives all defenses, including, but not limited to, defenses based upon statute of limitations and venue, and any claim to attorneys' fees or costs, with respect to any such civil forfeiture proceeding related to the Property.

17.     This Stipulation and Order may be executed in counterparts, each of which shall be deemed an original, and all of which, when taken together, shall be deemed the complete Stipulation and Order. PDF or electronic signatures shall be as binding as original signatures.

18.     The individuals signing this Stipulation and Order on behalf of 29 Howard Street Condominium represent and warrant that they are authorized by 29 Howard Street Condominium to execute this Stipulation and Order. The undersigned United States signatory represents that he is signing this Stipulation and Order in his official capacity and that he is authorized to execute this Stipulation and Order.

19.     The Court shall have exclusive jurisdiction over the interpretation and enforcement of this Stipulation and Order.

20.     This Stipulation and Order constitutes the complete agreement between the parties hereto and may not be amended except by written consent thereof.

5

For the United States of America:

ROBERT S. MUELLER, III
Special Counsel

Dated: 2/5/2019

By:

Andrew Weissmann
U.S. Department of Justice
Special Counsel's Office
950 Pennsylvania Avenue NW
Washington, D.C. 20530
Telephone: (202) 616-0800

By:

Daniel H. Claman
Money Laundering and
    Asset Recovery Section
Criminal Division
U.S. Department of Justice
1400 New York Avenue, N.W., Suite 10100
Washington, D.C. 20530
Telephone: (202) 514-1263

For 29 Howard Street Condominium:

SHULMAN ROGERS LLP
Attorneys for 29 Howard Street Condominium

Dated:

By:

Andrew M. Friedman, Esq.

29 Howard Street Condominium:

Dated:

By:

Xavier Guery
Treasurer of 29 Howard Street Condominium

6

29 Howard Street Condominium:

Dated:    2/5/2019                    By:    _____
                                             Sogyel Lhungay
                                             Secretary of 29 Howard Street Condominium

## ORDER

Having reviewed the foregoing Stipulation and good cause appearing,

**IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the Stipulation is **SO ORDERED.**

**ORDERED** this 7th day of February    , 2019.

_Amy B Jach_

THE HONORABLE AMY B. JACKSON
UNITED STATES DISTRICT JUDGE

7

ATTACHMENT A

Deed for
29 Howard Street, #4D, New York, New York 10013
(Block 209, Lot 1104)

New York City Department of Finance, Office of the City Register
Document ID No. 2016032201175001



| NYC DEPARTMENT OF FINANCE OFFICE OF THE CITY REGISTER | |
|---|---|

This page is part of the instrument. The City Register will rely on the information provided by you on this page for purposes of indexing this instrument. The information on this page will control for indexing purposes in the event of any conflict with the rest of the document.

**2016032201175001001EC900**

| RECORDING AND ENDORSEMENT COVER PAGE | | PAGE 1 OF 6 |
|---|---|---|
| Document ID: 2016032201175001 | Document Date: 03-04-2016 | Preparation Date: 03-22-2016 |

Document Type: DEED
Document Page Count: 4

| PRESENTER: | RETURN TO: |
|---|---|
| KENSINGTON VANGUARD NATIONAL LAND<br>39 WEST 37TH STREET, SEVENTH FLOOR<br>HOLD FOR PICKUP / SEARCH NY TITLE NO. 657009<br>NEW YORK, NY 10018<br>212-532-8686<br>mhunker@KVNATIONAL.COM | PAUL & KATHLEEN MANAFORT<br>10 ST. JAMES DRIVE<br>PALM BEACH GARDEN, FL 33418 |

**PROPERTY DATA**

| Borough | Block | Lot | | Unit | Address |
|---|---|---|---|---|---|
| MANHATTAN | 209 | 1104 | Entire Lot | 29-4 | 27 HOWARD STREET |

Property Type: SINGLE RESIDENTIAL CONDO UNIT

**CROSS REFERENCE DATA**

CRFN_____ or DocumentID_____ or _____ Year_____ Reel____ Page_____ or File Number_____

**PARTIES**

| GRANTOR/SELLER: | GRANTEE/BUYER: |
|---|---|
| MC SOHO HOLDINGS, LLC<br>C/O BRUCE BALDINGER, 365 SOUTH STREET<br>MORRISTOWN, NJ 07960 | PAUL MANAFORT<br>10 ST. JAMES DRIVE<br>PALM BEACH GARDENS, FL 33418 |

☒ Additional Parties Listed on Continuation Page

**FEES AND TAXES**

| Mortgage : | | | Filing Fee: | | |
|---|---|---|---|---|---|
| Mortgage Amount: | $ | 0.00 | | $ | 125.00 |
| Taxable Mortgage Amount: | $ | 0.00 | NYC Real Property Transfer Tax: | | |
| Exemption: | | | | $ | 0.00 |
| TAXES: County (Basic): | $ | 0.00 | NYS Real Estate Transfer Tax: | | |
| City (Additional): | $ | 0.00 | | $ | 0.00 |
| Spec (Additional): | $ | 0.00 | **RECORDED OR FILED IN THE OFFICE** | | |
| TASF: | $ | 0.00 | **OF THE CITY REGISTER OF THE** | | |
| MTA: | $ | 0.00 | **CITY OF NEW YORK** | | |
| NYCTA: | $ | 0.00 | Recorded/Filed 04-19-2016 14:55 | | |
| Additional MRT: | $ | 0.00 | City Register File No.(CRFN): | | |
| TOTAL: | $ | 0.00 | **2016000136303** | | |
| Recording Fee: | $ | 57.00 | | | |
| Affidavit Fee: | $ | 0.00 | *City Register Official Signature* | | |

| NYC DEPARTMENT OF FINANCE<br>OFFICE OF THE CITY REGISTER | <br>2016032201175001001CCB80 |
|---|---|

| RECORDING AND ENDORSEMENT COVER PAGE (CONTINUATION) | | PAGE 2 OF 6 |
|---|---|---|
| Document ID: 2016032201175001<br>Document Type: DEED | Document Date: 03-04-2016 | Preparation Date: 03-22-2016 |

**PARTIES**

**GRANTEE/BUYER:**
KATHLEEN MANAFORT
10 ST. JAMES DRIVE
PALM BEACH GARDENS, FL 33418

657009

CONSULT YOUR LAWYER BEFORE SIGNING THIS INSTRUMENT—THIS INSTRUMENT SHOULD BE USED BY LAWYERS ONLY.

**THIS INDENTURE,** made the __4__ day of __MARCH__ in the year 2016.

**BETWEEN**

**MC Soho Holdings, LLC,** at c/o Bruce Baldinger 365 South Street, Morristown, NJ 07960, party of the first part, and

**Paul Manafort** and **Kathleen Manafort,** residing at 10 St. James Drive, Palm Beach Gardens, FL 33418, party of the second part,

**WITNESSETH,** that the party of the first part, in consideration of Ten Dollars and other valuable consideration paid by the party of the second part, does hereby grant and release unto the party of the second part, the heirs or successors and assigns of the party of the second part forever,

**ALL** that certain plot, piece or parcel of land, with the buildings and improvements thereon erected, situate, lying and being at

See attached **schedule A** description.

Block: **209,** Lot: **1104**

Said premises also known as 29 Howard Street, Unit 4 (AKA 4D & AKA 29-4), New York, NY.

**BEING** and intended to be the premises conveyed herein by a deed dated February 14, 2012 and recorded March 12, 2012 as CRFN 2012000098146 in the Office of the New York City Register.

B: 209
L: 1104

**TOGETHER** with all right, title and interest, if any, of the party of the first part of, in and to any streets and roads abutting the above-described premises to the center lines thereof; TOGETHER with the appurtenances and all the estate and rights of the party of the first part in and to said premises; TO HAVE AND TO HOLD the premises herein granted unto the party of the second part, the heirs or successors and assigns of the party of the second part forever.

**AND** the party of the first part covenants that the party of the first part has not done or suffered anything whereby the said premises have been encumbered in any way whatever, except as aforesaid.

**AND** the party of the first part, in compliance with Section 13 of the Lien Law, covenants that the party of the first part will receive the consideration for this conveyance and will hold the right to receive such consideration as a trust fund to be applied first for the purpose of paying the cost of the improvement and will apply the same first to the payment of the cost of the improvement before using any part of the total of the same for any other purpose.

The word "party" shall be construed as if it read "parties" whenever the sense of this indenture so requires.

**IN WITNESS WHEREOF,** the party of the first part has duly executed this deed the day and year first above written.

IN PRESENCE OF:

**Witness**

VINCENT DEL CHICCO

MC Soho Holdings, LLC

By: Paul Manafort, Managing Member

FLORIDA

STATE OF ~~NEW YORK~~, COUNTY OF PALM BEACH

On the 4 day of MARCH in the year **2016**, before me, the undersigned, personally appeared

PAUL MANAFORT

personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is (are) subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity(ies), and that by his/her/their signature(s) on the instrument, the individual(s), or the person on behalf of which the individual(s) acted, executed the instrument.

Notary VINCENT DEL CHICCO
(SEAL) NOTARY PUBLIC STATE OF FLORIDA
COMM EXP 8-27-17
COMM # FF 048716

STATE OF              , COUNTY OF
On the      day of             in the year
before me, the undersigned, a Notary Public in and for said State, personally appeared
                                    , the
subscribing witness to the foregoing instrument, with whom I am personally acquainted, who, being by me duly sworn, did depose and say that he/she/they reside(s) in

(if the place of residence is in a city, include the street and street number if any, thereof;) that he/she/they know(s)

to be the individual described in and who executed the foregoing instrument; that said subscribing witness was present and saw said

execute the same; and that said witness at the same time subscribed his/her/their name(s) as a witness thereto

[add the following if the acknowledgment is taken outside NY State] and that said subscribing witness made such appearance before the undersigned in the (insert the city or other political subdivision and the State or country or other place the proof was taken).

STATE OF NEW YORK, COUNTY OF

On the ___ day of _____ in the year **2016**, before me, the undersigned, personally appeared

personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is (are) subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity(ies), and that by his/her/their signature(s) on the instrument, the individual(s), or the person on behalf of which the individual(s) acted, executed the instrument.

Notary

STATE OF              , COUNTY OF
On the      day of             in the year
before me personally came

to me known, who, being by me duly sworn, did depose and say
that   he resides at
that   he is the
of
the corporation described in and which executed the foregoing instrument; that   he knows the seal of said corporation;  that the seal affixed to said instrument is such corporate seal;  that it was so affixed by order of the board of directors of said corporation, and that   he signed h    name thereto by like order.

# Bargain and Sale Deed

**WITH COVENANT AGAINST GRANTOR'S ACTS**

TITLE NO   657009(S-NY-RR-ASH)A

**MC Soho Holdings, LLC**

TO

**Paul Manafort** and **Kathleen Manafort**

| Distributed By |
| --- |
| **Stewart Title Insurance Company** |



VINCENT DELCHICCO
Notary Public - State of Florida
My Comm. Expires Aug 27, 2017
Commission # FF 048716

**Block: 209**
**Lot: 1104**
County of **New York**

Recoded at Request of

**RETURN BY MAIL TO:**

Paul and Kathleen Manafort
10 St. James Drive
Palm Beach Gardens, FL 33418



SEAL

Stewart Title Insurance Company

Title Number: 657009(S-NY-RR-ASH)

## SCHEDULE A
## DESCRIPTION

The land referred to in this Certificate of Title is described as follows:

The Condominium Unit (hereinafter referred to as the "Unit') in the building (hereinafter referred to as the "Building") known as The 29 Howard Street Condominium and by the street number 29 Howard Street, Borough of Manhattan, County of New York and City and State of New York, said Unit being designated and described as Unit No. 4 in a certain declaration dated December 16, 2002, made by the Sponsor pursuant to Article 9-B of the Real Property Law of the State of New York (hereinafter referred to as the "Condominium Act") establishing a plan for condominium ownership of the building and land (hereinafter referred to as the "Land") upon which the Building is situate (which Land is more particularly described below and by this reference made a part hereof), which declaration was recorded in the New York County Office of the Register of The City of New York on January 22, 2003 as CRFN 2003000003859 as amended by the Amendment to the Declaration dated April 22, 2003 and recorded June 4, 2003 as CRFN 2003000154620, (which declaration and amendments thereto are hereinafter collectively referred to as the "Declaration"). This Unit is also designated as Tax Lot 1104 in Block 209 of the Borough of Manhattan on the Tax Map of the Real Property Assessment Department of the City of New York and on the floor Plans of the Building filed with said Assessment Department as Condominium Plan No. 1283 and also filed in the City Register's Office on January 22, 2003 as CRFN 2003000003860.

TOGETHER with an undivided 14.3688% interest in the Common Elements (as such term is defined in the Declaration).

The Land on which the Building containing said Unit is more particularly bounded and described as follows:

Parcel 1: Lot 10

Parcel A:

ALL that certain plot, piece or parcel of land, with the buildings and improvements thereon erected, situate, lying and being in the Borough and County of New York, City and State of New York, distinguished on the Map of Bayards's East Farm by Lot No. 663 and known as 29 Howard Street, said lot being bounded and contained as follows:

Northerly in front by Howard Street, 25 feet;

Easterly by Lot No. 664 on said Map, 100 feet;

Westerly by Lot No. 662 on said map, and being 25 feet in width in the rear thereof and also certain strip of land;

ALSO

Parcel B:

ALL that certain plot, piece or parcel of land, situate, lying and being in the Borough and County of New York, City and State of New York, bounded and described as follows:

BEGINNING at a point on the southerly side of Howard Street, at the center of a party wall standing upon Lots 29 and 31 Howard Street;

RUNNING THENCE southerly along the center line of said wall and the prolongation of said line to the rear of

**SCHEDULE A**
**DESCRIPTION**
(Continued)

Title Number:   657009(S-NY-RR-ASH)


said Lot 31 Howard Street;

THENCE easterly along the rear line of said Lot 31, 8 inches to the westerly line of said Lot 29, Howard Street;

THENCE northerly along said westerly line of said Lot 29 and the easterly side of said wall to the northerly lien of said Lot 29;

THENCE westerly along the northerly line of said Lot 31, 8 inches to the BEGINNING.

| NYC DEPARTMENT OF FINANCE<br>OFFICE OF THE CITY REGISTER | <br>2016032201175001001S0781 |
|---|---|

| SUPPORTING DOCUMENT COVER PAGE | | PAGE 1 OF 1 |
|---|---|---|
| **Document ID: 2016032201175001**<br>Document Type: DEED | Document Date: 03-04-2016 | Preparation Date: 03-22-2016 |

**ASSOCIATED TAX FORM ID:** 2016022400349

**SUPPORTING DOCUMENTS SUBMITTED:**

|  | Page Count |
|---|---|
| DEP CUSTOMER REGISTRATION FORM FOR WATER AND SEWER BILLING | 1 |
| RP - 5217 REAL PROPERTY TRANSFER REPORT | 4 |
| SMOKE DETECTOR AFFIDAVIT | 2 |

**FOR CITY USE ONLY**

| | |
|---|---|
| C1. County Code | C2. Date Deed Recorded ___/___/___ Month Day Year |
| C3. Book OR C5. CRFN | C4. Page |

**REAL PROPERTY TRANSFER REPORT**
STATE OF NEW YORK
STATE BOARD OF REAL PROPERTY SERVICES

# RP - 5217NYC

**PROPERTY INFORMATION**

**1. Property Location**
| 27 | HOWARD STREET 29-4 | MANHATTAN | 10013 |
| STREET NUMBER | STREET NAME | BOROUGH | ZIP CODE |

**2. Buyer Name**
| MANAFORT | PAUL |
| LAST NAME / COMPANY | FIRST NAME |
| MANAFORT | KATHLEEN |
| LAST NAME / COMPANY | FIRST NAME |

**3. Tax Billing Address** — Indicate where future Tax Bills are to be sent if other than buyer address (at bottom of form)
| LAST NAME / COMPANY | FIRST NAME |
| STREET NUMBER AND STREET NAME | CITY OR TOWN | STATE | ZIP CODE |

**4. Indicate the number of Assessment Roll parcels transferred on the deed** | 1 | # of Parcels OR | Part of a Parcel

4A. Planning Board Approval - N/A for NYC
4B. Agricultural District Notice - N/A for NYC

Check the boxes below as they apply:
**6. Ownership Type is Condominium** [✓]
**7. New Construction on Vacant Land** [ ]

**5. Deed Property Size**
| FRONT FEET | X | DEPTH | OR | ACRES |

**8. Seller Name**
| MC SOHO HOLDINGS, LLC | |
| LAST NAME / COMPANY | FIRST NAME |
| LAST NAME / COMPANY | FIRST NAME |

**9. Check the box below which most accurately describes the use of the property at the time of sale:**

| A [✓] One Family Residential | C [ ] Residential Vacant Land | E [ ] Commercial | G [ ] Entertainment / Amusement | I [ ] Industrial |
| B [ ] 2 or 3 Family Residential | D [ ] Non-Residential Vacant Land | F [ ] Apartment | H [ ] Community Service | J [ ] Public Service |

**SALE INFORMATION**

**10. Sale Contract Date** | 3 / 4 / 2016 (Month Day Year)

**11. Date of Sale / Transfer** | 3 / 4 / 2016 (Month Day Year)

**12. Full Sale Price** $ | 0
( Full Sale Price is the total amount paid for the property including personal property. This payment may be in the form of cash, other property or goods, or the assumption of mortgages or other obligations.) *Please round to the nearest whole dollar amount.*

**13. Indicate the value of personal property included in the sale** |

**14. Check one or more of these conditions as applicable to transfer:**
| A [ ] | Sale Between Relatives or Former Relatives |
| B [ ] | Sale Between Related Companies or Partners in Business |
| C [ ] | One of the Buyers is also a Seller |
| D [ ] | Buyer or Seller is Government Agency or Lending Institution |
| E [ ] | Deed Type not Warranty or Bargain and Sale (Specify Below ) |
| F [ ] | Sale of Fractional or Less than Fee Interest ( Specify Below ) |
| G [ ] | Significant Change in Property Between Taxable Status and Sale Dates |
| H [ ] | Sale of Business is Included in Sale Price |
| I [ ] | Other Unusual Factors Affecting Sale Price ( Specify Below ) |
| J [✓] | None |

**ASSESSMENT INFORMATION - Data should reflect the latest Final Assessment Roll and Tax Bill**

**15. Building Class** | R, 1 | **16. Total Assessed Value** (of all parcels in transfer) | 9 2 3 2 4

**17. Borough, Block and Lot / Roll Identifier(s)** ( If more than three, attach sheet with additional Identifier(s) )

| MANHATTAN 209 1104 | | |

CITY REGISTER
MAR 29 2016
MAR 2 9 2016
CITY REGISTER

2016022400034920102

| CERTIFICATION | I certify that all of the items of information entered on this form are true and correct (to the best of my knowledge and belief) and understand that the making of any willful false statement of material fact herein will subject me to the provisions of the penal law relative to the making and filing of false instruments. |
|---|---|

| BUYER | | BUYER'S ATTORNEY | |
|---|---|---|---|
| BUYER SIGNATURE | DATE 3-4-16 | LAST NAME | FIRST NAME |
| 10 ST. JAMES DRIVE | | | |
| STREET NUMBER    STREET NAME (AFTER SALE) | | AREA CODE    TELEPHONE NUMBER | |
| PALM BEACH GARDENS | | SELLER | |
| | FL    33418 | SELLER SIGNATURE | DATE |
| CITY OR TOWN | STATE    ZIP CODE | | |

2016022400349201

| CERTIFICATION | I certify that all of the Items of information entered on this form are true and correct (to the best of my knowledge and belief) and understand that the making of any willful false statement of material fact herein will subject me to the provisions of the penal law relative to the making and filing of false instruments. |

| BUYER | | | | BUYER'S ATTORNEY | | |
|---|---|---|---|---|---|---|
| **BUYER SIGNATURE** 10 ST. JAMES DRIVE | | | DATE | LAST NAME | | FIRST NAME |
| STREET NUMBER | STREET NAME (AFTER SALE) | | | AREA CODE | TELEPHONE NUMBER | |
| PALM BEACH GARDENS | | FL | 33418 | | **SELLER** | 3-9-16 |
| CITY OR TOWN | | STATE | ZIP CODE | SELLER SIGNATURE | | DATE |

MANAGING MEMBER

PAUL J. MANAFORT

2016022400349201

Form RP-5217 NYC                                                    ATTACHMENT

# CERTIFICATION

I certify that all of the items of information entered on this form are true and correct (to the best of my knowledge and belief) and understand that the making of any willful false statement of material fact herein will subject me to the provisions of the penal law relative to the making and filing of false instruments.

**BUYERS**                                    **SELLERS**

_Kathleen B Maness_          3-4-16

Buyer Signature              Date            Seller Signature              Date
KATHLEEN B MANESS

Buyer Signature              Date            Seller Signature              Date

Buyer Signature              Date            Seller Signature              Date

Buyer Signature              Date            Seller Signature              Date

Buyer Signature              Date            Seller Signature              Date

Buyer Signature              Date            Seller Signature              Date

Buyer Signature              Date            Seller Signature              Date

Buyer Signature              Date            Seller Signature              Date

Buyer Signature              Date            Seller Signature              Date

Buyer Signature              Date            Seller Signature              Date

Buyer Signature              Date            Seller Signature              Date

Buyer Signature              Date            Seller Signature              Date

Buyer Signature              Date            Seller Signature              Date

Buyer Signature              Date            Seller Signature              Date

Buyer Signature              Date            Seller Signature              Date

Buyer Signature              Date            Seller Signature              Date

Buyer Signature              Date            Seller Signature              Date

Buyer Signature              Date            Seller Signature              Date

Buyer Signature              Date            Seller Signature              Date

Buyer Signature              Date            Seller Signature              Date

Affidavit of Compliance with Smoke Detector Requirement for One and-Two Family Dwellings

# AFFIDAVIT OF COMPLIANCE
# WITH SMOKE DETECTOR REQUIREMENT
# FOR ONE- AND TWO-FAMILY DWELLINGS

*Florida*

State of ~~New York~~          )
                              ) SS.:
County of *Palm Beach*         )

The undersigned, being duly sworn, depose and say under penalty of perjury that they are the grantor and grantee of the real property or of the cooperative shares in a cooperative corporation owning real property located at

| 27 HOWARD STREET | | 29-4 |
|---|---|---|
| Street Address | | Unit/Apt. |

| MANHATTAN | New York, | 209 | 1104 | (the "Premises"); |
|---|---|---|---|---|
| Borough | | Block | Lot | |

That the Premises is a one or two family dwelling, or a cooperative apartment or condominium unit in a one- or two-family dwelling, and that installed in the Premises is an approved and operational smoke detecting device in compliance with the provisions of Article 6 of Subchapter 17 of Chapter 1 of Title 27 of the Administrative Code of the City of New York concerning smoke detecting devices;

That they make affidavit in compliance with New York City Administrative Code Section 11-2105 (g). (The signatures of at least one grantor and one grantee are required, and must be notarized).

|  | PAUL MANAFORT |
|---|---|
| **Name of Grantor** (Type or Print) | **Name of Grantee** (Type or Print) |
| *SEE Attached* | |
| **Signature of Grantor** | **Signature of Grantee** |

Sworn to before me                        Sworn to before me  VINCENT DELCHICCO
this _____ date of _____ 20 ____     this ___4___ date of ____MARCH____ 20 _16_



These statements are made with the knowledge that a willfully false ~~representation is unlawful and is punishable~~ as a crime of perjury under Article 210 of the Penal Law.

**NEW YORK CITY REAL PROPERTY TRANSFER TAX RETURNS FILED ON OR AFTER FEBRUARY 6th, 1990, WITH RESPECT TO THE CONVEYANCE OF A ONE- OR TWO-FAMILY DWELLING, OR A COOPERATIVE APARTMENT OR A CONDOMINIUM UNIT IN A ONE- OR TWO-FAMILY DWELLING, WILL NOT BE ACCEPTED FOR FILING UNLESS ACCOMPANIED BY THIS AFFIDAVIT.**

SEAL



VINCENT DELCHICCO
Notary Public - State of Florida
My Comm. Expires Aug 27, 2017
Commission # FF 048716

1

2016022400349101

# AFFIDAVIT OF COMPLIANCE
# WITH SMOKE DETECTOR REQUIREMENT
# FOR ONE- AND TWO-FAMILY DWELLINGS

State of ~~New York~~ G— *Florida* )
) SS.:
County of *Palm Beach* )

The undersigned, being duly sworn, depose and say under penalty of perjury that they are the grantor and grantee of the real property or of the cooperative shares in a cooperative corporation owning real property located at

| 27 HOWARD STREET | | | | 29-4 |
|---|---|---|---|---|
| Street Address | | | | Unit/Apt. |
| MANHATTAN | New York, | 209 | 1104 | (the "Premises"); |
| Borough | | Block | Lot | |

That the Premises is a one or two family dwelling, or a cooperative apartment or condominium unit in a one- or two-family dwelling, and that installed in the Premises is an approved and operational smoke detecting device in compliance with the provisions of Article 6 of Subchapter 17 of Chapter 1 of Title 27 of the Administrative Code of the City of New York concerning smoke detecting devices;

That they make affidavit in compliance with New York City Administrative Code Section 11-2105 (g). (The signatures of at least one grantor and one grantee are required, and must be notarized).

MC SOHO HOLDINGS LLC
PAUL MANAFORT, MANAGING MEMBER

| Name of Grantor (Type or Print) | Name of Grantee (Type or Print) |
|---|---|
| Signature of Grantor | Signature of Grantee |

Sworn to before me
this __15th__ date of __March__ 20 _16_

Sworn to before me
this _____ date of _____ 20 ____

Notary Public State of Florida
Gregg W Gullo
My Commission FF 961183
Expires 03/02/2020

SEAL

These statements are made with the knowledge that a willfully false representation is unlawful and is punishable as a crime of perjury under Article 210 of the Penal Law.

**NEW YORK CITY REAL PROPERTY TRANSFER TAX RETURNS FILED ON OR AFTER FEBRUARY 6th, 1990, WITH RESPECT TO THE CONVEYANCE OF A ONE- OR TWO-FAMILY DWELLING, OR A COOPERATIVE APARTMENT OR A CONDOMINIUM UNIT IN A ONE- OR TWO-FAMILY DWELLING, WILL NOT BE ACCEPTED FOR FILING UNLESS ACCOMPANIED BY THIS AFFIDAVIT.**

2016022400349101



The City of New York
**Department of Environmental Protection**
**Bureau of Customer Services**
**59-17 Junction Boulevard**
**Flushing, NY 11373-5108**

www.nyc.gov/dep

## Customer Registration Form for Water and Sewer Billing

### Property and Owner Information:

(1)  Property receiving service: BOROUGH: **MANHATTAN**          BLOCK: **209**          LOT: **1104**

(2)  Property Address: 27 HOWARD STREET  Unit 29-4, NEW YORK, NY 10013

(3)  Owner's Name:      **MANAFORT , PAUL**

      Additional Name:      **MANAFORT , KATHLEEN**

### Affirmation:

  Your water & sewer bills will be sent to the property address shown above.

### Customer Billing Information:

**Please Note:**

**A.**  Water and sewer charges are the legal responsibility of the owner of a property receiving water and/or sewer service. The owner's responsibility to pay such charges is not affected by any lease, license or other arrangement, or any assignment of responsibility for payment of such charges. Water and sewer charges constitute a lien on the property until paid. In addition to legal action against the owner, a failure to pay such charges when due may result in foreclosure of the lien by the City of New York, the property being placed in a lien sale by the City or Service Termination.

**B.**  Original bills for water and/or sewer service will be mailed to the owner, **at the property address or to an alternate mailing address.**  DEP will provide a duplicate copy of bills to one other party (such as a managing agent), however, any failure or delay by DEP in providing duplicate copies of bills shall in no way relieve the owner from his/her liability to pay all outstanding water and sewer charges. Contact DEP at (718) 595-7000 during business hours or visit www.nyc.gov/dep to provide us with the other party's information.

### Owner's Approval:

The undersigned certifies that he/she/it is the owner of the property receiving service referenced above; that he/she/it has read and understands Paragraphs A & B under the section captioned "Customer Billing Information"; and that the information supplied by the undersigned on this form is true and complete to the best of his/her/its knowledge.

Print Name of Owner: PAUL MANAFORT                    03/04/2016

Signature: _____          Date (mm/dd/yyyy)

Name and Title of Person Signing for Owner, if applicable:

BCS-7CRF-ACRIS  REV. 8/08

2

2016022400349101

ATTACHMENT B

By-Laws for the 29 Howard Street Condominium

# BY-LAWS

## OF

## THE 29 HOWARD STREET CONDOMINIUM

### ARTICLE I

### PLAN OF CONDOMINIUM OWNERSHIP

Section 1. Definitions.

(a)     "Unit" means any of the units contained in the Condominium as set forth in Exhibit B to the Condominium Plan (the "Declaration").   The Units are sometimes hereinafter collectively referred to as "Units" and individually as a "Unit".

(b)     Each Unit shall consist of the area enclosed horizontally by the unexposed faces of the plaster walls at the exterior walls of the Building and the unexposed faces of the plaster walls of the Unit side of the plaster walls dividing the Unit from corridors, stairs or other Units and vertically by the upper face of the concrete forming the floor of the Unit up to the unexposed face of the plaster wall forming the upper ceiling of the Unit.  Doors and windows which open from a Unit and interior walls of a Unit shall be deemed to be part of the Unit.

(c)     "Unit Owner" means the owner of a Unit.  Every Unit Owner shall be treated for all purposes as a single owner, irrespective of whether such ownership is joint, in common, or tenancy by the entirety or whether the Unit is owned by an individual, corporation, partnership, fiduciary or any other entity.  Where such ownership is joint, in common or by tenancy by the entirety, majority vote of such owners shall be necessary to cast any Unit Owner's vote referred to in these By-Laws.

(d)     "Building" means the buildings and improvements constructed on the land described in Exhibit A, known as and by 29 Howard Street, New York, New York.

(e)     "Party Wall" means a wall which is common to and separates two Units.

(f)     "Condominium" as hereinafter referred to shall mean The 29 Howard Street Condominium.

(g)     "Unsold Units" means any Unit owned by the Sponsor or its designee prior to sale thereof to a bona fide purchaser, including any Units not offered for sale by the Sponsor.

(h)     The terms "Apartment Unit" and "Unit Owner" as used herein shall be construed to have the meanings attributed to such terms in Section 339-e of Article 9-B of the Real Property Law of the State of New York.

Section 2.   Condominium Unit Ownership.   The property located at 29 Howard Street, in the City of New York, County of New York, State of New York, as specifically set forth in the Declaration and more commonly known as 29 Howard Street, New York, New York has been submitted to the provisions of Article 9-B of the Real Property Law of the State of New York.

Section 3.   By-Laws Applicability.   The provisions of these By-Laws are applicable to the Condominium.   The term "Condominium" as used herein shall include the land and the Buildings and improvements thereon including the Units, the common elements and the use and occupancy thereof.

Section 4.   Personal Application.   All present or future Unit Owners, mortgagees and lessees, or their employees, guests, invitees or any other person that might use the facilities of the Condominium in any manner are subject to these By-Laws, the Declaration and any Rules and Regulations established by the Board of Managers. The mere acquisition or rental of any of the Units or the mere act of occupancy or use of any of said Units will signify that these By-Laws, the Declaration and the Rules and Regulations are accepted, ratified, and will be complied with.

## ARTICLE II

## CONDOMINIUM, VOTING, QUORUM, PROXIES AND WAIVERS

Section 1.   Condominium.   The Condominium shall be limited to Unit Owners. "Unit Owner" as referred to herein shall mean all of the owners of each Unit.

Section 2.   Voting.   Each Unit Owner (including the Sponsor and the Board of Managers, if the Sponsor or Board of Managers shall then own or hold title to one or more Units) shall have a vote equal to the percentage of interest in the common elements owned by such Unit Owner for all voting purposes at any meeting of the Unit Owners unless otherwise mandated by law or expressly provided for herein but the Board of Managers shall not cast any of its votes for the election of any member to the Board.

Section 3.   Quorum.   So many Unit Owners as shall represent at least 51% of the total authorized votes of all Unit Owners shall constitute a quorum at all meetings of the Unit Owners for the transaction of business if present in person or represented by written proxy, except as otherwise provided by Statute, by the Declaration, or by these By-Laws. If, however, such quorum shall not be present or represented at any meeting of the Unit Owners, the Unit Owners entitled to vote thereat, present in person or represented by written proxy, shall have power to adjourn the meeting from time to time, without notice other than announcement at the meeting, until a quorum shall be present or represented. At such adjourned meeting at which a quorum shall be present or represented, any business may be transacted which might have been transacted at the meeting originally called.

Section 4.   Vote Required to Transact Business.   When a quorum is present at any meeting, the vote of a majority of the Unit Owners present in person or represented by

162

written proxy shall decide any question brought before such meeting and such vote shall be binding upon all Unit Owners, unless the question is one upon which, by express provisions of the Declaration, Statute, or of these By-Laws, a different vote is required, in which case such express provisions shall govern and control the decision of such question.

Section 5. Right to Vote. At any meeting of Unit Owners, every Unit Owner having the right to vote shall be entitled to vote in person, or by proxy. Such proxy shall only be valid for such meeting or subsequent adjourned meetings thereof.

Section 6. Proxies. All proxies shall be in writing and shall be filed with the Secretary prior to the meeting at which the same are to be used. A notation of such proxies shall be made in the minutes of the meeting.

Section 7. Waiver and Consent. Whenever the vote of Unit Owners at a meeting is required or permitted by any provision of the Declaration, Statutes or of these By-Laws to be taken in connection with any action of the Condominium, the meeting and vote of Unit Owners may be dispensed with if all Unit Owners who would have been entitled to vote upon the action if such meeting were held, shall consent in writing to such action being taken.

Section 8. Place of Meetings. Meetings shall be held at such suitable place convenient to the Unit Owners as may be designated by the Board of Managers.

Section 9. Annual Meetings. Within 90 days after title to the first Unit is conveyed by the Sponsor, the Sponsor shall call the first annual Unit Owners meeting. At such meeting, a new Board of Managers shall be elected by the Unit Owners and the former members of the Board shall thereupon resign unless also elected to such new Board. Thereafter, annual meetings shall be held on the anniversary of such date in each succeeding year. At such meetings, there shall be elected by ballot of the Unit Owners a Board of Managers in accordance with the requirements of Article III of these By-Laws. The Unit Owners may also transact such other business of the Condominium as may properly come before them.

Section 10. Special Meetings. It shall be the duty of the President to call a special meeting of the Unit Owners as directed by the Board of Managers or upon a petition signed by a majority of the Unit Owners having been presented to the Secretary.

Section 11. Notice of Meetings. It shall be the duty of the Secretary to mail a notice of each annual or special meeting, stating the purpose thereof as well as the time and place where it is to be held, to each Unit Owner of record, at least ten but not more than twenty days prior to such meeting. The mailing of a notice in the manner provided by these By-Laws shall be considered notice served.

Section 12. Order of Business. The order of business at all meetings shall be as follows:

      a. Roll call
      b. Proof of notice of meeting or waiver of notice
      c. Reading of minutes of preceding meeting
      d. Report of officers

e. Report of committees
f. Election of inspectors of election (in the event there is an election)
g. Election of Managers (in the event there is an election)
h. Unfinished business
i. New business

## ARTICLE III

## BOARD OF MANAGERS

Section 1.   Number and Term.  The number of Managers which shall constitute the whole Board shall not be less than three (3) and not more than nine (9).  Managers need not be Unit Owners.  Within the limits above specified, the number of Managers shall be determined by the Unit Owners at the annual meeting, however, in the absence of such determination, the first elected Board shall consist of five members.   The Managers shall be elected at the annual meeting of Unit Owners.  At the first annual meeting of Unit Owners the terms of office of each of the Managers shall be fixed for one (1) year.  The Managers shall hold office until their successors have been elected and hold their first meeting.

The Sponsor shall at all times have the right to designate two members of the Board of Managers as long as it owns at least 40% of the Units in number, and one member of the Board so long as it owns one or more Units.  Following the earlier of (i) five years from the conveyance of title to the first Unit or (ii) the conveyance of title to greater than 50% in common interest of the Units to bona fide purchasers, the majority of the members of the Board of Managers, will not be composed of Sponsor affiliates of the Sponsor.

Section 2.   Vacancy and Replacement.  If the office of any Manager or Managers becomes vacant by reasons of death, resignation, retirement, disqualification, removal from office or otherwise, a majority of the remaining Managers, though less than a quorum, at a special meeting of Managers duly called for this purpose, shall choose a successor or successors, who shall hold office for the unexpired term in respect to which such vacancy occurred. If the vacancy occurs with respect to any member of the Board of Managers who has been designated by the Sponsor, the Sponsor shall have the sole right to choose such Manager's successor to fill the unexpired portion of his term.

Section 3.   Removal.  Managers may be removed for cause by an affirmative vote of a majority of the Unit Owners.  No Manager, other than a member of the First Board of Managers or a Manager elected or designated by the Sponsor, shall continue to serve on the Board if, during his term of office, he shall cease to be a Unit Owner.

Section 4.   First Board of Managers.  The First Board of Managers shall consist of Samuel Waksal and Charles Dunne who shall hold office and exercise all powers of the Board of Managers until the first annual meeting of Unit Owners.

A Unit Owner, who is independent of the Sponsor, shall be elected by a majority of the Unit Owners other than Sponsor at the first annual Unit Owner's

meeting. If no such election has been made, then Sponsor may designate such member. Any or all of said Managers shall be subject to replacement in the event of a resignation or death in the manner set forth in Section 2 of this Article.

Section 5.    Powers

(a)    The Condominium has been organized, and is operated, to provide for the acquisition, construction, management, maintenance, and care of its property. The property and business of the Condominium shall be managed by its Board of Managers, which may exercise all powers of the Condominium and do all such lawful acts and things as are not by Statute or by the Declaration or by these By-Laws, directed or required to be exercised or done by the Unit Owners personally. These powers shall specifically include, but not be limited to, the following items:

1.    To determine and levy monthly assessments ("common charges") to cover the cost of common expenses, payable in advance. The Board of Managers may increase the monthly assessments or vote a special assessment in excess of that amount, if required, to meet any additional necessary expenses, but said increases can only be assessed among the Unit Owners pro rata according to the formula provided for herein;

2.    To collect, use and expend the assessments collected to maintain, care for and preserve the Units, Building, and other common interests;

3.    To make repairs, restore or alter any Units or the common elements after damage or destruction by fire or other casualty or as a result of condemnation or eminent domain proceedings in accordance with Article VII of these By-Laws;

4.    To enter the Units when necessary and with as little inconvenience to the Unit Owner as possible in connection with the maintenance, care and preservation of the Property;

5.    To open bank accounts on behalf of the Condominium, and to designate the signatories to such bank accounts;

6.    To insure and keep insured the common elements and Units in accordance with Article VII of these By-Laws;

7.    To collect delinquent assessments by suit or otherwise, to abate nuisances and to enjoin or seek damages from the Unit Owners for violations of the house rules and regulations herein referred to;

8.    To purchase any Unit at a foreclosure sale or in accordance with Article XIII of these By-Laws on behalf of all the Unit Owners;

9.    To make reasonable rules and regulations and to amend the same from time to time (subject to any restrictions on amendment herein set forth), and such rules and regulations and amendments shall be binding upon the Unit Owners when the Board has approved them in writing. A copy of such rules and regulations and all amendments shall be delivered to each Unit Owner;

10.    To employ and terminate the employment of employees and independent contractors and to purchase supplies and equipment, to enter into contracts, and generally to have the power of manager in connection with the matters hereinabove set forth;

11.    To bring and defend actions by or against one or more than one Unit Owner and pertinent to the operation of the Condominium. The Board may, it its discretion, fund the cost of any such litigation out of the common charge assessments. The Board shall also have the right to engage in any litigation it deems necessary to carry out the provisions of the Declaration of Condominium and these By-Laws and may fund the cost of any such litigation out of the common charge assessments. Without limiting the foregoing, the Board may engage in litigation pertaining to the maintenance and operation of the common elements;

12.    To acquire Units in foreclosure or as a result of abandonment on behalf of all Unit Owners, and to take any and all steps necessary to repair or renovate any Unit so acquired and to vote as a Unit Owner, offer such Unit for sale or lease or take any other steps regarding such Unit as shall be deemed proper by the Board;

13.    To grant utility or other easements as may, at any time, be required for the benefit of the Condominium and Unit Owners without the necessity of the consent thereto, or joining therein, by the Unit Owners or any mortgagee;

14.    To borrow money on behalf of the Condominium when required in connection with the operation, care, upkeep and maintenance of the common elements, provided, however, that the consent of at least 66 2/3% in number of all Unit Owners, obtained at a meeting duly called and held for such purpose in accordance with the provisions of these By-Laws, shall be required for the borrowing of any sum in excess of $50,000 in any fiscal year;

15.    To act as an agent of each Unit Owner to complain or apply to the local and county real estate tax assessment agency board of review by filing a single complaint on behalf of all such Unit Owners pursuant to any applicable sections of the Real Property Tax Law. The Board of Managers may retain legal counsel on behalf of all Unit Owners for which it is acting as agent and charge all such Unit Owners a pro rata share of expenses, disbursements, and legal fees for which

charges the Board of Managers shall have a lien pursuant to Article VI of these By-Laws;

16.     In the event the Units have not been separately assessed at the time of the First Closing (as defined in the Plan), to receive and maintain the Tax Reserve (as defined in the Plan), to use same for the payment of real estate taxes on the entire Building and land thereunder, and, should there be any amount remaining in such fund following separate assessment of the Units, to apply same as a credit against common charges on a pro rata basis for all Unit Owners who have contributed to such fund;

17.     To receive any reserve fund and to hold and use such Reserve Fund exclusively for making capital repairs, replacements, and improvements necessary for the health and safety of residents of the Building;

(b)     The Board of Managers may, by resolution or resolutions passed by a majority of the whole Board, designate one or more committees, each of such committees to consist of at least three (3) Managers or Unit Owners, one of whom shall be a Manager, which, to the extent provided in said resolution or resolutions, shall have and may exercise the powers of the Board of Managers in the management of the business and affairs of the Condominium and may have power to sign all papers which may be required, provided the said resolutions shall specifically so provide. Such committee or committees shall have such name or names as may be determined from time to time by resolution adopted by the Board of Managers. Committees established by resolution of the Board of Managers shall keep regular minutes of their proceedings and shall report the same to the Board as required.

(c)     Notwithstanding anything to the contrary contained in these By-Laws, the Board will not take any of the following actions unless 51% of all members thereof so approve in writing or by vote at a duly constituted meeting called for such purpose:

(i) increase the number, or change the type, of employees from those hired at the time of recording the Declaration;

(ii) provide for new or additional services from those being provided at the time of recording the Declaration; or

(iii) impose any common charge for the purpose of making any capital or major improvement, alteration or addition to the common elements or to any Unit, unless required by Law or necessary for the health or safety of residents of the Building (but nothing contained herein will restrict the right and obligation of the Condominium Board to maintain and repair the common elements and to levy common charges therefor).

(d)     Notwithstanding anything to the contrary in these By-Laws, the Board may not take any action to amend the Certificate of Occupancy of the Building so as to render

illegal or improper the existing use of any Unit without the written consent of the owner of such Unit.

(e)    Each member of the Board will perform his duties, and will exercise his powers, in good faith and with a view to the interests of the Condominium.  To the extent permitted by law, no contract or other transaction between the Board and either (1) any of its members or (2) any corporation, partnership, fiduciary, firm, association or other entity in which any of the members of the Board are officers, directors, employees, partners, fiduciaries, beneficiaries or principals, or are otherwise interested, pecuniary or otherwise, will be deemed either void or voidable because any such interested member of the Board was present at the meeting or meetings of the Board during which such contract or transaction was discussed, authorized, approved or ratified; provided, however, that either:

(i)    the material facts as to such member of the Board's interest in such contract or transaction are disclosed in good faith or known to the Board, and the Board approves such contract or transaction by a vote sufficient for such purpose without counting the vote of such interested member of the Board or, if the votes of the disinterested members of the Board are insufficient to constitute a quorum, by unanimous vote of the disinterested directors;

(ii)    the fact thereof is disclosed to, or known by, a majority of Unit Owners, and a majority of Unit Owners authorize, approve or ratify such contract or transaction; or

(iii)    the contract or transaction is commercially reasonable to the Board at the time that it is authorized, approved, ratified, executed or otherwise consummated.

Any interested member of the Board may be counted in determining the presence of a quorum of any meeting of the Board that authorizes, approves, or ratifies any such contract or transaction, but no such member will be entitled to vote thereat to authorize, approve or ratify such contract or transaction.

Section 6.    Repairs and Maintenance.  All maintenance, repairs and replacement of or to (i) the common elements of the Property including but not limited to exterior walls, roof and roof members; or (ii) any pipes, wire, conduits and public utility lines, any portion of which is located in one Unit and services another Unit or more than one Unit or so much of any pipes, wires, conduits and public utility lines as are located in the common elements but serve one or more Units, or unexposed portions of pipes, conduits and wires within any Unit (provided such repairs are not necessitated by the neglect, misuse, or negligence of the Unit Owner, in which event such repairs shall be made by or at the sole expense of such Unit Owner), shall be made by the Board of Managers and the cost thereof shall be a common expense.  Except as is otherwise specifically provided, all maintenance to the Units, including plumbing stoppages, window cleaning, painting and decorating in the Units (except for painting and cleaning of the exterior surfaces of doors and windows which open from an Apartment Unit which painting and cleaning are performed by the Board of Managers), and repairs and

replacements to the Units including windows and doors (including all glass breakage), and repairs to pipes, wires and conduits located in and servicing the same Unit, other than as set forth above, shall be made by the respective Unit Owners at their own expense.

All irrevocably restricted common elements shall be maintained and repaired by the Unit Owner to whom such common element is restricted in use. However, the Board of Managers shall make any structural repairs thereto and shall repair and replace any pipes, wires, conduits and public utility lines located underground or overhead of any irrevocably restricted common element, except where any such repair or replacement is necessitated by the negligence, misuse or neglect of the Unit Owner or Owners to whom the common element is restricted in use, in which event such cost and expense shall be assessed to and paid for by such Unit Owner or Owners. The Board of Managers shall repair all plumbing stoppages and electrical problems occurring in the common elements.

The Board of Managers and its agents, employees and contractors shall have a right of access to any Unit and to all portions of the common elements for the purpose of carrying out any of its obligations under these By-Laws or the Declaration of the Condominium. All repairs or maintenance, whether made by the Unit Owner or by the Board of Managers to the doors, windows, or the exterior surface of the Building, including roofs, or to any generally visible portion of the common elements shall be carried out in such a manner so as to conform to the existing materials, style and color. In the event that a Unit Owner fails to perform any maintenance, painting or repair, which maintenance, painting or repair is necessary to protect any of the common elements, any other Unit, or, in the event of service of a Building Department violation notice covering the Unit upon the Board of Managers, the Board of Managers shall have the right to perform such maintenance or repair or cure such violations (after the failure of the Unit Owner to do so after 10 days written notice, or written or oral notice of a shorter duration in the event of an emergency situation and to charge the Unit Owner for the cost of all such repairs, maintenance or cure. In the event that the Board of Managers charges a Unit Owner for repairs, maintenance or such cure to his Unit or for repairs, maintenance or such cure to any common element restricted in use to such Unit Owner, and the Unit Owner fails to make prompt payment, such charges shall be considered as additional common charges due from said Unit Owner, and the Board of Managers shall be entitled to bring suit thereon. In the event the Board brings such a suit, the Unit Owner shall be liable for the reasonable attorneys fees and cost of such suit or proceeding together with interest on all sums due at the maximum legal rate permitted to be charged such Unit Owner.

No Unit Owner (other than the Sponsor or its designees as to whom the provisions of this paragraph shall not apply) will make any structural alteration, addition, improvement or repair in or to his Unit or its appurtenant restricted common elements without the prior written approval of the Board. If, however, the Board shall fail to answer any written, reasonably detailed request for such approval within 30 days after such request is received, such failure to respond will constitute the Board's consent thereto. Prior to, and as a condition of, the granting of any such approval, the Board may, at its sole option, require the Unit Owner to procure and agree to maintain during the course of such work such insurance as the Board may reasonably prescribe and to execute an agreement, in form and substance satisfactory to the Board, setting forth the terms and

conditions under which such alteration, addition, improvement or repair may be made, including, without limitation, the indemnity hereinafter referred to and the days and hours during which any such work may be done.

All alterations, additions, improvements and repairs by Unit Owners will be made in compliance with Law. In connection therewith, the Unit Owner (or the Board at the Unit Owner's expense if necessary) will execute applications, to any departments of the City of New York, or to any other governmental agencies having jurisdiction thereof, for any and all permits required in connection with the making of alterations, additions, improvements or repairs in or to a Unit or its appurtenant restricted common elements, provided that all such work of a structural nature was approved by the Condominium Board, if required, pursuant to the terms of the preceding paragraph.

Neither the Board nor any Unit Owner (other than the Unit Owner making or causing to be made any alteration, improvements, additions or repairs in or to his Unit and appurtenant restricted common elements) will incur any liability, cost or expense either (i) in connection with the preparation, execution or submission of the applications referred to in the preceding paragraph; (ii) to any contractor, subcontractor, materialman, architect or engineer on account of any alterations, improvements, additions or repairs made or caused to be made by any Unit Owner; or (iii) to any person asserting any claim for personal injury *or property* damage arising therefrom. Any Unit Owner making or causing to be made any alterations, improvements, additions or repairs in or to his Unit and/or appurtenant restricted common elements will agree (in a writing executed and delivered to the Board, if the Board will so request), and will be deemed to agree (in the absence of such writing), to indemnify and hold the Board, the members of the Board, the officers of the Board, the Managing Agent and all other Unit Owners harmless from and against any such liability, cost and expense.

Section 7.    <u>Compensation</u>.    Managers and officers, as such, shall receive no compensation for their services, but shall be entitled to reimbursement for their reasonable and necessary out- of-pocket disbursements in connection with their duties as such.

Section 8.    <u>Meetings</u>.

(a)    The first meeting of each Board newly elected by the Unit Owners shall be held immediately upon adjournment of the meeting at which they were elected, provided a quorum shall then be present, or as soon thereafter as may be practicable. The annual meeting of the Board of Managers shall be held at the same place as the Unit Owners meetings, and immediately after the adjournment of same, at which time the date, places and times of regularly scheduled meetings of the Board shall be set.

(b)    Regularly scheduled meetings of the Board may be held without special notice.

(c)    Special meetings of the Board may be called by the President on 2 days notice to each Manager either personally or by telephone, mail or telegram. Special meetings shall be called by the President or Secretary in a like manner and on like notice on the written request of at least three (3) managers.

(d)     At all meetings of the Board, a majority of the Managers shall be necessary and sufficient to constitute a quorum for the transaction of business, and an act of the majority of the Managers present at any meeting at which there is a quorum shall be the act of the Board of Managers, except as may be otherwise specifically provided by statute or by the Declaration or by these By-Laws. If a quorum shall not be present at any meetings of managers, the Managers present there may adjourn the meeting from time to time, without notice other than announcement at the meeting until a quorum shall be present.

(e)     Before or at any meeting of the Board of Managers, any Manager may, in writing, waive notice of such meeting and such waiver shall be deemed equivalent to the giving of such notice. Attendance by a Manager at any meeting of the Board shall be the waiver of notice by him of the time and place thereof. If all the Managers are present at any meeting of the Board, no notice shall be required and any business may be transacted at such meeting.

(f)     Managers or members of any committee of the Board of Managers may participate in a meeting by means of conference telephone or similar communications equipment by means of which all persons participating in the meeting can hear each other.

Section 9.     Annual Statement.  The Board of Managers shall furnish to all Unit Owners, their mortgagees and the Department of Law of the State of New York (if legally required) and shall present annually (at the annual meeting) and when called for by a vote of the Unit Owners at any special meting of the Unit Owners, a full and clear statement of the business conditions and affairs of the Condominium, including a balance sheet and profit and loss statement verified by an independent public accountant and a statement regarding any taxable income attributable to the Unit Owner and a notice of the holding of the annual Unit Owners meeting. Such annual statements shall be given not later than four months after the end of each fiscal year of the Condominium.

Section 10.   Fidelity Bonds.  The Board of Managers may require that all officers and employees of the Condominium handling or responsible for Condominium funds shall furnish adequate fidelity bonds. The premiums on such bonds shall be a common expense.

Section 11.   Managing Agent.   The Board of Managers shall employ for the Condominium a managing agent under a term contract or otherwise at a compensation established by the Board, to perform such duties and services as the Board shall authorize including, but not limited to, such duties set forth in subsections 2, 3, 4, 6, 7, 10, 16, 17, and 18 of subsection (a) of Section 5 of this Article III, and such other duties as may, form time to time, be delegated by the Board of Managers; provided, however, that the Board of Managers shall not delegate duties and services except to the extent permitted by law. Notwithstanding anything to the contrary contained in these By-Laws, the Board shall not enter into any management agreement that discriminates against the Sponsor by charging Sponsor a higher management fee for occupied apartments than such fee charged others owning Units occupied by non-purchasing tenants.

Section 12. Liabilities of the Board of Managers and Unit Owners. Any contract, agreement, or commitment made by the Board of Managers shall state that it is made by the Board of Managers, as agent for the Unit Owners as a group only and that no member of the Board of Managers nor individual Unit Owners shall be liable for such contract, agreement or commitment. The Unit Owners shall be liable as a group under such contract, agreement or commitment but the liability of each Unit Owner shall be limited to such proportion of the total liability thereunder as his common interest bears to the common interest of all Unit Owners. The Board of Managers shall have no liability to the Unit Owners in the management of the Condominium except for willful misconduct or bad faith and the Unit Owners shall severally indemnify all members of the Board of Managers against any liabilities or claims arising from acts taken by a member of the Board of Managers in accordance with his duties as such member except acts of willful misconduct or acts made in bad faith. Such several liability of the Unit Owners shall, however, be limited as to each Unit Owner to such proportion of the total liability thereunder as such Unit Owner's common interest bears to the common interest of all Unit Owners.

## ARTICLE IV

### OFFICERS

Section 1. Elective Officers. The officers of the Condominium shall be chosen by the Board of Managers and shall be a president, a vice president, a secretary and a treasurer. The Board of Managers may also choose one or more assistant secretaries and assistant treasurers and such other officers as in their judgment may be necessary. All officers must be Unit Owners (including the parties set forth in Article III, Section 1 for non-individual Unit Owners) or members of the Board of Managers or employees of the Condominium. Two or more offices may not be held by the same person.

Section 2. Election. The Board of Managers at its first meeting after each annual Unit Owners Meeting shall elect a president, a vice president, a secretary and a treasurer. Only the president must be a member of the Board.

Section 3. Appointive Officers. The Board may appoint such other officers and agents as it shall deem necessary who shall hold their offices for such terms and shall exercise such powers and perform such duties as shall be determined from time to time by the Board.

Section 4. Term. The officers shall hold office until their successors are chosen and qualify in their stead. Any officer elected or appointed by the Board of Managers may be removed with or without cause, at any time, by the affirmative vote of a majority of the whole Board of Managers. If the office of any officer becomes vacant for any reason, the vacancy shall be filled by the Board of Managers.

Section 5. The President. The President shall be the chief executive officer of the Condominium; he shall preside at all meetings of the Unit Owners and Managers, shall be an ex-officio member of all standing committees, shall have general and active management of the business of the Condominium, shall see that all orders and

resolutions of the Board are carried into effect and shall have such other powers and duties as are usually vested in the office of President of a stock corporation organized under the Business Corporation Law of the State of New York.

Section 6.    The Vice President.  The Vice President shall take the place of the President and perform his duties whenever the President shall be absent or unable to act and shall have such other powers and duties as are usually vested in the office of Vice President of a stock corporation organized under the Business Corporation Law of the State of New York.

Section 7.    The Secretary.  The Secretary and/or Assistant Secretary shall attend all sessions of the Board and all Unit Owners meetings and record all votes and the minutes of all proceedings in a book to be kept for that purpose and shall perform like duties for the standing committees when required.  He shall give, or cause to be given, notice of all Unit Owners meetings and special meetings of the Board of Managers, and shall perform such other duties as may be prescribed by the Board of Managers or by the President, under whose supervision he shall be.

Section 8.    The Treasurer.    The Treasurer shall have the custody of the condominium funds and securities and shall keep full and accurate chronological accounts of receipts and disbursements in books belonging to the Condominium including the vouchers for such disbursements, and shall deposit all monies and other valuable effects in the name and to the credit of the Condominium in such depositories as may be designated by the Board of Managers.

He shall disburse the funds of the Condominium as may be ordered by the Board, making proper vouchers for such disbursements and shall render to the President and Managers, at the regular meeting of the Board or whenever they may require it, an account of all his transactions as Treasurer and of the financial condition of the Condominium.

He shall keep detailed financial records and books of account of the Condominium, including a separate account for each Unit which, among other things, shall contain the amount of each assessment of common charges against such Unit, the date when due, the amounts paid thereon and the balance remaining unpaid.

Section 9. Agreements, etc.  All agreements and other instruments shall be executed on behalf of the Condominium by the President or such other person as may be designated by the Board of Managers.

## ARTICLE V

## NOTICES

Section 1.    Definitions.  Whenever under the provisions of the Declaration or of these By-Laws, notice is required to be given to the Board of Managers, any Manager or Owner, it shall not be construed to mean personal notice; but such notice may be given in writing, by mail, by depositing the same in a post office or letter box in a

173

postpaid sealed wrapper, addressed to the President of the Board of Managers, such Manager or Unit Owner at such address as appears on the books of the Condominium.

Section 2. Service of Notice - Waiver. Whenever any notice is required to be given under the provisions of the Declaration, or by these By-Laws, a waiver thereof, in writing signed by the person or persons entitled to such notice, whether before or after the time stated therein, shall be deemed the equivalent thereof.

## ARTICLE VI

## FINANCES

Section 1.   Checks.   All checks or demands for money and notes of the Condominium shall be signed by the President and such other person or persons as the Board of Managers may from time to time designate.

Section 2.   Assessments.   The Board of Managers shall from time to time, but at least annually, fix and determine the budget representing the sum or sums necessary and adequate for the continued operation of the Condominium and shall send a copy of the budget and any supplement to the budget to every Unit Owner and Mortgagee. They shall determine the total amount required, including the operational items such as insurance, repairs, reserves, betterment's, maintenance of the common elements and other operating expenses as well as charges to cover any deficits from prior years. The total annual requirements shall be assessed as a single sum against all Units and prorated against each of said Units according to the respective common interests appurtenant to such Units except that the Commercial Units shall not be assessed for expenses solely benefiting the residential units, including, without limitation, lobby doorman or lobby security guard services. This proration of assessments shall remain constant regardless of the percentage of the building square footage included in each Unit or the common elements restricted to the use of the Owner of said Unit.

All of said assessments whether covering common expenses or special expenses, shall be deemed to be common charges and shall be payable in advance as ordered by the Board of Managers.  In the event of a default in the payment of monthly common charge assessment by any Unit Owner, the Board, at its sole option, may declare the common charge assessment on said Unit Owner's Unit for the balance of the fiscal year immediately due and payable.  Prior to making any such declaration following a default, the Board shall send notice to the delinquent Unit Owner and the mortgagee, if any, of such Unit giving the Unit Owner a five day grace period in which to make his payment. The Board may charge the delinquent Unit Owner a fee of not more than forty dollars to cover the additional burden to the Board occasioned by the lack of timely payment. Interest at the highest legal rate may also be collected by the Board on the common charge assessment from its due date to the date payment is actually received from the Unit Owner.  Special assessments, should such be required, shall be levied and paid in the same manner as hereinabove provided for regular assessments.  The Unit Owner agrees to pay promptly when due the monthly and all special assessments assessed against his own Unit.  Any Unit Owner who fails to pay any assessment imposed by the Condominium to meet any common expense shall be liable for any expenses incurred by the Condominium in collecting said assessment including interest at the highest legal

rate and reasonable attorneys fees. The Board shall take action to collect any common charges due from any Unit Owner which remain unpaid 90 days from its due date by way of foreclosure of the lien on such Unit in accordance with Section 339 of the Real Property Law or otherwise.

No Unit Owner shall be liable for any common charges which accrue against his Unit subsequent to a sale, transfer or other conveyance by him of his Unit in accordance with these By-Laws and the Declaration. A purchaser of a Unit (other than an institutional mortgagee as defined in the Declaration, or a purchaser at a foreclosure sale of such a mortgage) shall be liable for the payment of all common charges assessed against the Unit and unpaid at the time of the purchase.

Section 3.    Foreclosure of Liens for Unpaid Common Charges. The Board shall have the power to purchase any Unit at a foreclosure sale resulting from any action brought by the Board to foreclose a lien on the Unit because of unpaid common charges. In the event of such purchase, the Board shall have the power to hold, lease, mortgage, vote, sell or otherwise deal with the Unit. A suit to recover a money judgment for unpaid common charges shall also be obtainable separately without waiving the lien on the Unit.

Section 4.    Statement of Common Charges. Upon the written request of any Unit Owner or his mortgagee, the Board shall promptly furnish such Unit Owner or his mortgagee with a written statement of the unpaid common charges due from such Unit Owner.

Section 5.    Liability for Water, Electricity and Gas. All water consumed in the common elements and the Residential Units and all gas and electricity, consumed in the common elements shall be a common expense. Electricity and gas consumed in each Unit and water consumed in the Commercial Units shall be individually metered and all charges therefor paid for by the respective Unit Owner.

Section 6.    Operating Account. There shall be established and maintained a cash deposit account to be known as the "Operating Account" into which shall be deposited the operating portion of all monthly and special assessments as fixed and determined for all Units. Disbursements from said account shall be for the general needs of the operation including, but not limited to, wages, repairs, betterment's, maintenance and other operating expenses of the common elements and for the purchase, lease, sale or other expenses resulting from the purchase or lease of Units.

Section 7.    Other Accounts. The Board shall maintain any other accounts it shall deem necessary to carry out its purposes.


## ARTICLE VII

## INSURANCE

Section 1.    Insurance to be Carried by the Board. The Board of Managers shall be required to obtain and maintain, to the extent obtainable, the following insurance: fire

insurance with extended coverage, water damage, and vandalism and malicious mischief endorsements insuring the building, including all of the Units (but not including furniture, furnishings or other personal property supplied or installed by Unit Owners), together with all heating, air conditioning and other service machinery contained therein, covering the interest of the Condominium, the Board of Managers and all Unit Owners and their mortgagees, as such interest may appear, in an amount equal to not less than 80% of the replacement value of the Building or in a lesser amount with Agreed Endorsement Coverage so as to avoid co-insurance. Each of such policies shall contain a New York standard mortgagee clause in favor of each mortgagee of a Unit which shall provide that the loss, if any, thereunder shall be payable to such mortgagee as its interest may appear, subject, however, to the loss payment provisions in favor of the Board of Managers hereinafter set forth. All such policies shall provide that adjustment of loss shall be made by the Board of Managers, and that the net proceeds thereof shall be payable to the Board of Managers. The Board of Managers is hereby irrevocably appointed agent for each Unit Owner and for each Owner of a mortgage or other lien upon a Unit and for each owner of any other interest in the condominium property to adjust all claims arising under insurance policies purchased by the Board of Managers and to execute and deliver releases upon the payment of claims.

The fire insurance will commence with the closing of title to the first Unit and until the first meeting of the Board of Managers following the first Unit Owners meeting, such amount shall be at least in the amount set forth in Schedule B to the Offering Plan. The Board of Managers shall review the amount of fire insurance annually.

All policies of physical damage insurance shall contain waivers of subrogation and of any reduction of pro rata liability of the insurer as a result of any insurance carried by Unit Owners or of the invalidity arising from any acts of the insured or any Unit Owners, and shall provide that such policies may not be canceled or substantially modified without at least 10 days prior written notice to all of the insured, including all mortgagees of Units. Duplicate originals of all policies of physical damage insurance and of all renewals thereof, together with proof of payment of premiums, shall be delivered to all mortgagees of Units at least 10 days prior to expiration of the then current policies. Prior to obtaining any policy of fire insurance or any renewal thereof, the Board of Managers shall obtain an appraisal from a fire insurance company or otherwise of the full replacement value of the Building, including all of the common elements appurtenant thereto, for the purpose of determining the amount of fire insurance to be effected pursuant to this Section.

The Board shall also obtain and maintain, to the extent obtainable: (1) worker's compensation insurance; (2) in order to limit the liability of Unit Owners for personal injury and tort, comprehensive general liability insurance covering each member of the Board and each Unit Owner in such amounts as the Board may deem proper, and (3) such other insurance as the Board may from time to time deem appropriate. In addition, there shall be an umbrella policy of at least the amount set forth in Schedule B to the Offering Plan covering losses above such limits. The Board of Managers shall review all such limits once each year.

The comprehensive general liability insurance policy to be maintained until the first meeting of the Board of Managers following the first annual meeting of the Unit Owners,

will be $1,000,000 covering claims for death or bodily injury arising in the common elements and $100,000 for claims for property damage arising in the common elements and including $1,000,000 for officers and directors liability. The general liability insurance shall also cover cross liability claims of one insured against another.

Unit Owners shall not be prohibited from carrying other insurance for their own benefit provided that such policies contain waivers of subrogation and further provided that the liability of the carriers issuing insurance procured by the Board of Managers shall not be affected or diminished by reason of any such additional insurance carried by any Unit Owner.

Section 2.    Restoration or Reconstruction After Fire or Other Casualty.    In the event of damage to or destruction of the Building as a result of fire or other casualty (unless 75% or more of the Units are destroyed or substantially damaged and 75% or more in number and common interest of the Unit Owners do not duly and promptly resolve to proceed with repair or restoration), the Board of Managers shall arrange for the prompt repair and restoration of the Building (including any kitchen or bathroom fixtures initially installed therein by the Sponsor, any heating, air conditioning or other service machinery which is covered by insurance but not including any wall, ceiling or door decorations or coverings or other furniture, furnishings, fixtures or equipment installed by Unit Owners in the Units), and the Board of Managers shall disburse the proceeds of all insurance policies to the contractors engaged in such repair and restoration in appropriate progress payments. Any cost of such repair and restoration in excess of the insurance proceeds shall constitute a common expense and the Board of Managers may assess all the Unit Owners for such deficit as part of the common charges. In the event of a casualty loss, all Unit Owners shall continue to pay common charges.

## ARTICLE VIII

## USE OF UNITS

Each residential Unit shall be used only for residential purposes in compliance with the uses permitted under the Building's Certificate of Occupancy and all applicable laws, and for such other purposes permitted under the Building's Certificate of Occupancy and all applicable laws except for the following prohibited uses:

(a) any use involving the sale, preparation or storage of food, alcohol or drinks, or

(b) any use involving the sale or rental of video tapes, movies, or video software of any kind or nature; or

(c) any use involving theatrical, movie or music performances in any form whatsoever; or

(d) any use involving services or sales to the public.

The commercial Units may be used for any lawful use permitted under the Building's Certificate of Occupancy and all applicable laws.

As set forth in Article NINETEENTH of the Declaration, Sponsor and its designees have the right to change the category and use of any Unsold Unit, subject to the applicable provisions of such Article NINETEENTH.

A Unit may be owned by an individual, corporation, partnership, fiduciary or any other entity and may only be used by (i) the individual Unit Owner, (ii) an officer, director, stockholder or employee of such corporation, (iii) a partner or employee of such partnership, (iv) the fiduciary or beneficiary of such fiduciary or (v) a principal or employee of such other entity, as the case may be. Unless otherwise consented to by the Board, users of a leased Unit must be (i) an individual lessee, (ii) an officer, director, stockholder or employee of a corporate lessee, (iii) a partner or employee of a partnership lessee, (iv) a fiduciary or beneficiary of a fiduciary lessee, or (v) a principal or employee of such other entity which is a lessee.

No portion of a Unit (other than the entire Unit) may be sold, conveyed, leased or subleased.

The Sponsor may, without the permission of the Board, use any Unsold Units (as hereinafter defined) or Units not offered for sale as models and sales and/or promotion offices in connection with the sale or rental of the Units or for any other purpose, subject only to compliance with applicable governmental laws and regulations.

## ARTICLE IX

## HOUSE RULES

In addition to the other provisions of these By-Laws, the following house rules and regulations together with such additional rules and regulations as may hereafter be adopted by the Board of Managers shall govern the use of the Units and the conduct of all occupants thereof; provided that no such additional or amended rule or regulation may restrict or impair any rights of Sponsor or its designees under the Declaration and By-Laws, without such Owner's prior written consent.

Section 1.    Owners of a Unit, members of their families, their employees, guests and their pets shall not use or permit the use of the premises in any manner which would be illegal or disturbing or a nuisance to other said Owners, or in such a way as to be injurious to the reputation of the Condominium.

Section 2.    The common elements shall not be obstructed, littered, defaced or misused in any manner, except as provided for herein.

Section 3.    Every Unit Owner shall be liable for any and all damage to the common elements and the property of the Condominium, which shall be caused by said Unit Owner or such other person for whose conduct he is legally responsible.

Section 4.

(a)     Every Unit Owner must perform promptly all maintenance and repair work required to be done to the interior of his Unit and to portions of the common elements irrevocably restricted to his use pursuant to the provisions of the Declaration and these By-Laws which, if omitted, would affect the Condominium in its entirety or in a part belonging to other Unit Owners, or the Building, he being expressly responsible for the damages and liabilities that his failure to do so may engender.

(b)     Any repairs or maintenance work to any Unit shall only be performed between the hours of 8 a.m. to 5 p.m. Monday through Saturday, unless there is an emergency situation requiring immediate correction or the Board approves in writing other hours.

(c)     All the repairs to internal installations of the Unit located in and servicing only that Unit, such as telephones and sanitary installations shall be at the Unit Owner's expense.

Section 5.

(a)     Each Unit Owner shall keep his Unit in a good state of preservation and cleanliness, and shall not sweep or throw or permit to be swept or thrown therefrom, or from the doors, or windows thereof, any dirt or other substance.

(b)     No radio or television aerial shall be attached to or hung from the exterior of the Unit except such as shall have been approved in writing by the Board of Managers or the managing agent; nor shall anything be projected from any window of the Building without similar approval.

(c)     No Unit Owner or any of his agents, servants, employees, licensees, or visitors shall at any time bring into or keep in his Unit any inflammable, combustible or explosive fluid, material, chemical or substance.

(d)     No Unit Owner shall make or permit any disturbing noises in his Unit, or do or permit anything to be done therein, which will interfere with the rights, comforts or conveniences of other Unit Owners. No Unit Owner shall play upon or suffer to be played upon any musical instrument, or operate or permit to be operated a phonograph or a radio or television set or other loud speaker in such Owner's Unit between the hours of ten o'clock p.m. and the following seven o'clock a.m., if the same shall disturb or annoy other occupants of the Building and in no event shall practice or suffer to be practiced either vocal or instrumental music between the hours of ten o'clock p.m. and the following nine o'clock a.m.

(e)     It is prohibited to hang garments, rugs, signs, advertisements etc., from the windows or from the Building or to string clotheslines on or over the common elements (including any irrevocably restricted areas).

(f)     No sign or advertisement of any kind shall be displayed to the public view on or in any Unit without the approval of the Board of Managers.

(g)     Terraces and patios shall be kept free from snow, ice and water and a Unit Owner shall not install or affix awnings, fences, or objects of any kind to the terraces or

patios of his Unit without the written consent of the Board of Managers. The use of gas or charcoal grills on the terraces or patios is strictly prohibited.

(h)     No planters or plantings shall be installed on any terrace, patio, balcony or roof without the prior written approval of the Board. Plantings and/or planters, where allowed, shall conform to the following:

(i)     Plantings shall be contained in clay pots or boxes of wood bound with metal.

(ii)     Boxes shall stand on supports at least four inches from the terrace, balcony or roof surface.

(iii)     Posts must be placed on drainage saucers.

(iv)     All planters must be placed a minimum of four inches from any wall, parapet, fence or other planters.

(v)     Suitable weep holes shall be provided in all planters to draw off water.

(vi)     Planters with a soil depth greater than fourteen inches, must be supported by grating which will properly distribute the weight.

(vii)     No plants will be allowed to grow out over the parapet.

(viii)     No plants will be allowed over eight feet in height.

(ix)     No planter may be attached to, rest on or be suspended from any wall, parapet or fence.

(x)     It shall be the responsibility of the Unit Owner to maintain the containers in good condition, and the drainage weep holes in operating condition.

Notwithstanding the foregoing provisions, Unit Owners shall promptly remove any planter upon demand by the Board if in the Board's reasonable judgment such planter is causing or may cause damage to the terrace surface below such planter.

(i)     No one shall ride mopeds, skateboards or roller blades on any portions of the common elements.

(j)     No animals or reptiles of any kind shall be raised, bred, or kept in any Unit or on the common elements.

The provisions set forth above shall not be applicable to the Sponsor. The Sponsor, its designees, nominees and agents, shall have the right and privilege to maintain general and local sales offices in and about the Condominium, including any model Units located within the Building and shall have the right and privilege to have their representatives, employees and agents present on the Condominium premises to show

180

the Units to prospective purchasers, to utilize the common elements, and, without limitation, to do any and all things necessary and incident to the sale of the Units, without charge or contribution other than in the form of common charge payments as otherwise provided for herein.

The Sponsor shall have the right to continue to employ signs of its choice upon the Condominium premises in its efforts to sell the Units. Incident to the rights and privileges provided for herein, the officers, employees, agents, contractors, guests and invitees of the Sponsor, its successors and assigns, shall have the right of ingress and egress to and throughout the common elements of the Condominium. The last two paragraphs of this Article IX may not be modified or amended without the written consent of the Sponsor so long as the Sponsor continues to own one or more Units.

## ARTICLE X

## CHANGES TO CONDOMINIUM

The Sponsor or its designees and other Unit Owners shall have the rights and obligations with respect to changes in the Condominium as set forth in Article NINETEENTH of the Declaration.

## ARTICLE XI

## DEFAULT

In the event a Unit Owner does not pay any sums, charges or assessments required to be paid when due, the Board of Managers shall notify the Unit Owner and the mortgagee, if any, of such Unit. In such an instance the Board may, at its sole option, declare the common charge assessment on said Unit Owner's Unit for the balance of the fiscal year immediately due and payable. Prior to making any such declaration following a default the Board shall send notice to the delinquent Unit Owner and the mortgagee, if any, of such Unit, giving the Unit Owner a five day grace period in which to make his payment. The Board may charge the delinquent Unit Owner a fee of not more than fifty dollars to cover the additional burden to the Board occasioned by the lack of timely payment. Interest at the highest legal rate may be collected by the Board on the common charge assessment from its due date to the date payment is actually received from the Unit Owner. If any sum, charge or assessment shall remain unpaid for 90 days after the giving of notice by the Board of Managers or Manager, acting on behalf of the Board, that the payment is overdue, the Board may foreclose the lien encumbering the Unit as a result of non-payment of the required monies as set forth in the Declaration (subject to the lien of any first mortgage), in the same manner as the foreclosure of a mortgage. In the event the owner of a Unit does not pay the assessment required to be paid by him within ninety (90) days of its due date, said Unit Owner shall be liable for the Condominium's reasonable costs and reasonable attorney's fees incurred by it incident to the collection or enforcement of such lien. In addition, if the Board brings an action to foreclose the aforementioned lien, the

181

defaulting Unit Owner will be required to pay a reasonable rental for the use of his Unit, and the plaintiff in such foreclosure action will be entitled to the appointment of a receiver to collect such sum. All such interest, costs and expenses and rentals will be added to and will constitute common charges payable by such Unit Owner.

If any Unit Owner violates or breaches any of the provisions of the Declaration or By-Laws on his part to be observed or performed, the Board will have the right to enjoin, abate or remedy the continuance or repetition of any such violation or breach by appropriate proceedings brought either at law or in equity. The violation or breach of any of the terms of the Declaration and By-Laws with respect to any of the rights, easements, privileges or licenses granted to Sponsor or its designee will give to Sponsor or such designee the right to enjoin, abate or remedy the continuance or repetition of any such violation or breach by appropriate proceedings brought either at law or in equity.

The remedies specifically granted to the Board or to Sponsor or its designee in this Article XI or elsewhere in the Declaration and By-Laws will be cumulative, will be in addition to all other remedies obtainable at law or in equity and may be exercised at one time or at different times, concurrently or in any order, in the sole discretion of the Board or Sponsor or such designee, as the case may be. Further, the exercise of any remedy will not operate as a waiver, or preclude the exercise of any other remedy.

Each Unit Owner, for himself, his heirs, successors and assigns, agrees to the foregoing provisions relating to default, regardless of the harshness of the remedy available to the Condominium and regardless of the availability of other equally adequate legal procedures. It is the intent of all Unit Owners to give the Condominium a method and procedure which will enable it at all times to operate on a business-like basis, to collect those monies due and owing it from the Unit Owners and to preserve each Unit Owner's right to enjoy his Unit free from unreasonable restraint.

Subject to the terms and conditions contained in these By-Laws, any Unit Owner may convey his Unit, together with its appurtenant common interest, to the Board or to its designee, corporate or otherwise, on behalf of all Unit Owners without being compensated therefor, and, in such event, be exempt from the payment of common charges thereafter accruing; provided, however, that: (i) all common charges then due and payable with respect to such Unit have been paid; (ii) such Unit is free and clear of all liens and encumbrances other than a first mortgage permitted hereunder and the statutory lien for unpaid common charges which are to be paid as aforesaid; and (iii) no substantial uncured violation of any provision of the Declaration or By-Laws then exists with respect to such Unit.

## ARTICLE XII

## AMENDMENTS

These By-Laws may be altered, amended or added to at any duly called Unit Owners meeting; provided: (1) that the notice of the meeting shall contain a full statement of the proposed amendment; (2) that the amendment shall be approved by eighty (80%)

percent of the Unit Owners in number and common interest; and (3) said amendment shall be set forth in a duly recorded amendment to the By-Laws. However, no amendment shall materially adversely affect the validity or priority of any Unit Owner's interests or the interests of holders of a mortgage encumbering a Unit or Units, without the prior written consent of such Unit Owner and mortgagee, and no amendment shall affect or impair any rights granted or reserved to Sponsor or its designees under Declaration and By-Laws without the prior written consent of Sponsor or its designees as the case may be.

## ARTICLE XIII

### SELLING, MORTGAGING AND LEASING UNITS

Section 1.  Selling and Leasing of Units.  No Unit Owner (other than the Sponsor or its designee or as otherwise specifically excepted by this Section) may convey his Unit or any interest therein by sale or lease except in the manner set forth in this Section.

Any Unit Owner who receives a bona fide written offer for the sale or lease of his Unit and who desires to accept such offer shall give written notice by registered mail to the Board of Managers of such offer and such intention together with the name and address of the proposed purchaser or lessee and the terms of the sale or lease, together with an offer to sell or lease such Unit to the Board of Managers on the same terms and conditions as contained in such offer.  The giving of such notice shall constitute a warranty and representation by the Unit Owner to the Board of Managers that the Unit Owner has received such offer, believes it to be bona fide, and intends to accept it.

Immediately upon receipt of such notice, the Board may, if it believes accepting such offer to be in the best interest of the Condominium, call a special Unit Owners meeting to be held no more that five days after the receipt of such a notice for the purpose of voting upon the offer contained in such notice.  Within ten days after receipt of such notice, the Board may elect to purchase or lease such Unit by giving written notice by registered mail to such Unit Owner of its intention to buy or lease such Unit on the same terms and conditions as contained in the offer and as stated in the notice from the Unit Owner.  In the event the Board shall elect to purchase or lease such Unit, the closing of title or lease shall be held at the office of the attorneys for the Condominium sixty (60) days after the giving of notice by the Board of its election to accept said offer.  In the event the Unit is being sold, the Unit Owner shall deliver at the closing a duly executed bargain and sale deed with covenant against grantor's acts in form and substance similar to the standard form of the New York Board of Title Underwriters.  In the event the Unit is being leased, then at the closing the Unit Owner shall execute and deliver to the Board a lease on the same terms and conditions contained in the offer and notice sent by the Unit Owner.

In the event the Board shall fail to accept said offer as aforesaid, the Unit Owner shall be free to contract to sell or lease such Unit for a period of 60 days after the expiration of the period in which the Board might have accepted such offer, to the

offeror whose name appears in the notice and on the same terms and conditions as set forth in such notice. In the event of sale of the Unit resulting from a failure of the Board to accept such offer, the deed conveyed to the purchaser shall provide that the grantee upon acceptance of the deed assumes all of the provisions of the Declaration and these By-Laws. In the event of a lease of the Unit resulting from a failure of the Board to accept such offer, the lease conveyed to the lessee shall be consistent with the Declaration and these By-Laws and shall provide that t may not be modified, amended, extended, assigned or sublet without the prior consent in writing of the Board of Managers. Except as set forth herein, the form of such lease shall be the then current form of apartment lease recommended by the Real Estate Board of New York, Inc. with only such modifications as shall be approved in writing by the Board of Managers. In the event the Unit Owner shall not sell or lease the Unit within such sixty-day period, then he shall be again required to comply with all of the terms and provisions of this section before offering the Unit for sale or lease.

In order to purchase or lease any Unit offered for sale or lease in accordance with this section, the affirmative vote of at least 80% of all the Unit Owners cast at a special meeting called by the Board of Managers shall be necessary.

No Unit Owner shall in any event convey, mortgage, pledge, hypothecate, sell or lease his Unit unless and until all unpaid common charges assessed against his Unit shall have been paid to the Board of Managers. However, such unpaid common charges can be paid out of the proceeds from sale of a Unit or by the purchaser. Further, a Unit Owner may convey his Unit and his common interest appurtenant thereto, to the Board of Managers on behalf of all Unit Owners free of any cost to the Board or the Unit Owners and upon such conveyance in compliance with Article XI hereof such Unit Owner shall not be liable for any common charges thereafter accruing against such Unit.

Any sale or lease of any Unit in violation of this section shall be voidable at the election of the Board, and, if the Board shall so elect, the selling or leasing Unit Owner will be deemed to have authorized and empowered the Board to institute legal proceedings to eject the purported purchaser (in the event of an unauthorized sale) or to evict the purported tenant (in the event of an unauthorized leasing) in the name of such Unit Owner as the owner or landlord, as the case may be. Such Unit Owner will reimburse the Board for all costs and expenses paid or incurred in connection with such proceedings, including, without limitation, reasonable attorney's fees and court costs. The Sponsor, its assignees and designees may sell and/or lease Units to which any one of them holds title without prior approvals.

In the event that the Board shall elect to purchase or lease any such Unit, the Board may thereupon assess all other Unit Owners for the costs of such purchase or lease. Such assessment shall be a common charge apportioned among the other Unit Owners pro rata according to the respective common interest appurtenant to the Units owned by such Unit Owners and shall be payable by them within thirty (30) days of the notice of such assessment.

In the event the Board shall not elect to purchase or lease any such Unit in accordance with the provisions of this section, then, on the request of the Unit Owner offering such Unit for sale or lease, the Board shall issue a written statement attesting

184

to the fact that such offer was made and declined by the Board and including therein the terms and conditions of such offer. If the Board shall fail to call a meeting of Unit Owners as aforesaid with respect to the offer, it shall be deemed to have declined the offer.

The provisions of this section shall not apply to the acquisition or sale of a Unit by a mortgagee who shall acquire title to such Unit by foreclosure or by deed in lieu of foreclosure. Such provisions shall, however, apply to the sale or lease by any purchaser from such mortgagee. Notwithstanding anything to the contrary herein contained, there shall be no obligation to offer the Board a first right of refusal as aforesaid on any sale or lease of (i) any Unsold Unit prior to conveyance of same by the Sponsor or its designees to a bona fide purchaser, or (ii) any Unit by any individual Unit Owner to a member of his family as defined in Article VIII hereof or by any non-individual Unit Owner to any entity or individual which controls, is controlled by, or is under common control with such Unit Owner.

Whenever the term "Unit" is referred to in this section it shall include the Unit, the Unit Owner's undivided interest in the common elements and the Unit Owner's interest in any Units acquired by the Board of Managers.

Section 2.  Waiver of Partition Rights.  The Unit Owners waive all of their voting rights concerning partition respecting any Unit acquired by the Board of Managers in accordance with this Article.

Section 3.  Mortgaging of Units.  No Unit Owner shall mortgage his Unit except by a mortgage loan granted by a federal or state savings and loan association, savings or commercial bank, life insurance company, pension fund, trust company, agency of the United States Government or of the City or State of New York or other similar institutional lender or a purchase money mortgage loan granted by the Seller of any Unit; provided that any past due common charges are paid in full at the time of placing any such mortgage. Any sum of money to be paid or any act to be performed by a Unit Owner pursuant to the terms of the Declaration or By-Laws may be paid or performed by his permitted mortgagee, and the Condominium Board will accept such permitted mortgagee's payment or performance with the same force and effect as if the same were paid or performed by such Unit Owner.

Section 4.  Gifts, etc.  Any Unit Owner may convey or transfer his Unit by gift during his lifetime or devise his Unit by will or pass the same by intestacy, without restriction, except that the new Unit Owner shall be bound by and his Unit subject to all the provisions of the Declaration and By-Laws.


## ARTICLE XIV

## CONDEMNATION


In the event all or part of the common elements are taken in condemnation or eminent domain proceedings, the award from such proceedings shall be paid to the

Board of Managers to be distributed in accordance with Section 2 of Article VII but in the following amounts:

    (a) so much of the award as is applicable to unrestricted common elements, to the Unit Owners pro rata according to the respective common interests appurtenant to the Units owned by such Unit Owners;

    (b) so much of the award as is applicable to irrevocably restricted common elements, to the Unit Owner having general use of such common elements.

In such eminent domain or condemnation proceeding, the Board shall request that the award shall set forth the amount allocated to unrestricted common elements and to each irrevocably restricted common element. In the event the award does not set forth such allocation then the question of such allocation shall be submitted to arbitration in New York City in accordance wit the rules of the American Arbitration Association or any successor organization thereto.

## ARTICLE XV

### MISCELLANEOUS

Section 1.    Insurance. Under no circumstances shall a Unit Owner permit or suffer anything to be done or left in his Unit which will increase the insurance rates on his Unit or any other Unit or on the common elements.

Section 2.    Severability. Should any of the covenants, terms or provisions herein imposed be void or be or become unenforceable at law or in equity, the remaining provisions of these By-Laws shall, nevertheless, be and remain in full force and effect.

Section 3.    Notice to Condominium. A Unit Owner who mortgages his Unit, shall notify the Condominium through the managing agent, if any, or the President of the Board of Managers in the event there is no managing agent, of the name and address of his mortgagee; and the Board of Managers shall maintain such information in a book entitled "Mortgagees of Units".

Section 4.    Notice of Unpaid Assessment. The Board of Managers shall at the request of a mortgagee of a Unit, report any unpaid assessments due from the Unit Owner of such Unit.

Section 5.    Examination of Books and Records.    Every Unit Owner or his representative and mortgagee shall be entitled to examine the books and records of the Condominium at convenient hours of weekdays.

Section 6.    Construction. Wherever the masculine singular form of the pronoun is used in these By-Laws, it shall be construed to mean the masculine, feminine or neuter; singular or plural, wherever the context so requires.

Section 7.   Sponsor Controls.  Notwithstanding any other provisions of these By-Laws, the By-Laws may not be amended to eliminate any rights expressly granted to the Sponsor without the Sponsor's express written consent.  So long as the Sponsor or its designee shall continue to own Apartment Units representing 25% or more in number or interest in the common elements attributable to all Apartment Units or for five years after the closing of the first Unit, whichever is earlier, the Sponsor's prior written consent shall be required, if the resulting cumulative financial cost to the Condominium for the year, inclusive of any resulting deficiency or liability, would exceed 20% of the Condominium's prior year operating budget, to take any action to (a) make capital additions or improvements; (b) increase or decrease the level of services (without regard to the cost of said services) over those provided for in the prior year's operating budget; (c) establish additional reserve fund; or (d) borrow money.

Section 8.   Violations.  Any violation of any municipal law or ordinance placed on the Condominium or any Unit or common element thereof which is caused by or results from the acts or occupancy of any Unit Owner shall be promptly cured by and at the sole cost of such Unit Owner, and if not so cured may be cured by the Board at the Unit Owner's expense as provided in Article III, Section 6.

Section 9.   Compliance with Article 9-B.  These By-Laws are set forth to comply with the requirements of Article 9-B of the Real Property Laws of the State of New York. In case any of these By-Laws conflict with the provisions of said Statute or the Declaration, the provisions of the Statute or of the Declaration, whichever the case may be, shall control.