```
 1                  IN THE UNITED STATES DISTRICT COURT
                        FOR THE DISTRICT OF COLUMBIA
 2

 3     United States of America,      ) Criminal Action
                                      ) No. 17-cr-201-1
 4                 Plaintiff,         )
                                      ) PUBLIC TRANSCRIPT
 5     vs.                            )
                                      ) Washington, DC
 6     Paul J. Manafort, Jr.,         ) April 2, 2019
                                      ) Time:  10:00 a.m.
 7                 Defendant.         )
       _____
 8
                         TRANSCRIPT OF SEALED HEARING
 9                              HELD BEFORE
                   THE HONORABLE JUDGE AMY BERMAN JACKSON
10                      UNITED STATES DISTRICT JUDGE
       _____
11
                            A P P E A R A N C E S
12

13     For the Plaintiff:  Jonathan Ian Kravis
                           Zia Mustafa Faruqui
14                         U.S. ATTORNEY'S OFFICE
                           555 Fourth Street, NW
15                         Washington, DC 20530
                           (202) 252-6886
16                         Email:  Jonathan.kravis3@usdoj.gov
                           Email:  Zia.faruqui@usdoj.gov
17

18     For the Defendant:  Kevin M. Downing
                           LAW OFFICE OF KEVIN M. DOWNING
19                         601 New Jersey Avenue, NW
                           Suite 620
20                         Washington, DC 20001
                           (202) 754-1992
21                         Email:  Kevindowning@kdowninglaw.com
                           Richard William Westling
22                         EPSTEIN BECKER & GREEN, P.C.
                           1227 25th Street, NW
23                         Suite 700
                           Washington, DC 20037
24                         (202) 861-1868
                           Email:  Rwestling@ebglaw.com
25
```

```
                    Thomas Edward Zehnle
                    LAW OFFICE OF THOMAS E. ZEHNLE
                    601 New Jersey Avenue, NW
                    Suite 620
                    Washington, DC 20001
                    (202) 368-4668
                    Email:  Tezehnle@gmail.com

_____

Court Reporter:     Janice E. Dickman, RMR, CRR, CRC
                    Official Court Reporter
                    United States Courthouse, Room 6523
                    333 Constitution Avenue, NW
                    Washington, DC  20001
                    202-354-3267
```

```
 1         *  *  *  *  *  *  *   SEALED TRANSCRIPT   *  *  *  *  *  *  *
 2                 THE COURTROOM DEPUTY:  Your Honor, good morning.  We
 3    have a sealed proceeding this morning and the courtroom is
 4    locked.  This is in case No. 17-CR-201-1, the United States of
 5    America v. Paul J. Manafort, Jr.  The defendant is not present
 6    for this proceeding.
 7                 Will counsel for the parties please approach the
 8    lectern, identify yourself for the record and the party you
 9    represent.
10                 MR. KRAVIS:  Good morning, Your Honor.  Jonathan
11    Kravis on behalf of the United States.  With me at counsel
12    table is Zia Faruqui, also on behalf of the United States.
13                 THE COURT:  All right.  Good morning.
14                 MR. KRAVIS:  Good morning.
15                 MR. DOWNING:  Good morning, Your Honor.  Kevin
16    Downing, Tom Zehnle, and Rich Westling.
17                 THE COURT:  All right.  Good morning.
18                 All right.  I issued an order, it was sealed,
19    concerning information that was made available to the Court at
20    the time of Mr. Manafort's sentencing related to contacts with
21    the media, in violation of the media contact order, pursued by
22    the -- the information was primarily about Mr. Manafort, but it
23    also indicated that his representatives were involved, and it
24    specifically indicated that Mr. Downing was involved.
25                 Before taking any further action, I wanted to at
```

```
1    least give counsel the opportunity to suggested to me why I
2    shouldn't take any action.  I am concerned that there were
3    communications with, obviously, a prominent member of the
4    media, who was in a position to broadly disseminate the
5    defendant's point of view during a time when particularly
6    counsel was prohibited from making those contacts.
7              And, Mr. Downing, it's perfectly fine with me if you
8    want one of the other attorneys to address this on your behalf,
9    or if you want to address it.
10             MR. DOWNING:  I will, Your Honor.
11             THE COURT:  All right.
12             MR. DOWNING:  And I understand your concern.  ▉
13   ▉
14   ▉
15   ▉                                            I did not feed
16   information to Mr. Hannity.  I went back, my recollection was I
17   had a brief contact, introducing myself to Mr. Hannity.  It was
18   a seven-minute phone call at 11:30 on that date in question,
19   and I had no other contact with Mr. Hannity.
20             THE COURT:  All right.
21             MR. DOWNING:  And the seven-minute contact was,
22   effectively, ▉▉▉▉▉▉▉▉▉▉▉▉▉▉  where the client wanted
23   me to introduce myself to Mr. Hannity, and I did.  And we
24   basically had a discussion about our background and growing up
25   on Long Island, and that was it.
```

```
 1              THE COURT:  To be fair, I've read the entire set of
 2    text messages between the two and there's no -- while there are
 3    requests from Mr. Hannity to have you continue to talk to him,
 4    there's no indication, there's no reference to a communication
 5    with you, other than on January 25th.
 6              MR. DOWNING:  Your Honor, for the record, the
 7    issuance of the order was welcomed by us.  ███████████████████
 8    ████████████████████████████████████████  So, even though maybe the
 9    scope of the order, at times we may have had a disagreement
10    with it, I just want you it know that that made our lives a lot
11    easier.
12              THE COURT:  Which order?
13              MR. DOWNING:  Your order in terms of contacts with
14    the press.
15              THE COURT:  The one to which you did not object?
16              MR. DOWNING:  Correct.  Correct.
17              THE COURT:  Right.  Okay.
18              MR. DOWNING:  I'm just making a point.  ██████████
19    ████████████████████████████████████████████████████████████████
20    ████████   It was something that we welcomed.
21              THE COURT:  Apparently not.  He didn't seem to find
22    it to be an impediment.
23              MR. DOWNING:  As you know.  ████████████████████████
24    ████████
25              THE COURT:  Yes.  Yes.
```

1          MR. DOWNING: And I think some of the blurred lines
2    are the fact that he did have long-term relationships with, in
3    particular, Hannity.
4          But, obviously, I just wanted to be clear. I'm glad
5    you called us. But in no way was there any idea on my end that
6    I was going to feed any information to Mr. Hannity.
7          THE COURT: All right. I appreciate your statements
8    to that effect. Obviously, in terms of whether these are good
9    things or bad things in high profile cases is something that I
10   think it's helpful for members of the bar to continue to
11   discuss, and in the court and things like that. And the fact
12   that at the end of the day there were reasons why you all found
13   it helpful would be an interesting thing to be more broadly
14   known.
15         I mean, really, when I started, I didn't know if I
16   was going to issue one or not. And that is why I asked the
17   parties what their point of view was, and when no one objected,
18   I did. And then, you know, of course, it became, you know, the
19   Court slaps, the Court, you know, whatever, for the rest of the
20   time. But I think it's something you have to think about in
21   each case and based on the circumstances of each case. And
22   some of this was prompted by early courthouse speeches by you.
23   So --
24         MR. DOWNING: Yes.
25         THE COURT: -- and that rule certainly was not

```
 1    violated during the pendency of the trial.
 2            All right.  Let me ask --
 3            MR. DOWNING:  Your Honor, it will be part -- I'm
 4    anticipating sometime in June there will be panel discussions
 5    about the case, as well as the gag order.  And I do think this
 6    discussion is going to continue in more of a public forum about
 7    the importance, or, you know, when you need one in a case like
 8    this.  I mean, I've been in high profile cases before, but
 9    nothing that got the coverage that this case got.
10            THE COURT:  Well, me, too.
11            Okay.  What is the government's point of view?  Do
12    you have any reason to believe that there were further
13    communications beyond the phone call that's referenced in the
14    text messages?
15            MR. KRAVIS:  We do not have any reason to believe
16    that, Your Honor.  And the government's view on these
17    proceeding is we would defer to the Court on this.  We do not
18    have any reasons to dispute the representations that have been
19    made by counsel at the hearing today.
20            THE COURT:  All right.  I mean, your representation
21    in your sentencing memo was a little stronger than that.  ▮▮▮
22    ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮  that through his
23    representatives he continued to provide information.  ▮▮▮▮
24    ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
25    ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
```

1
2
3
4  ███████████████  But you did say that.  So, I appreciate your
5  deferring to the Court, but I want to know --
6           MR. KRAVIS:  Yes.
7           THE COURT:  -- what you think happened, because I'm
8  trying to decide whether I should issue a notice under Rule 42
9  or I shouldn't.
10          MR. KRAVIS:  Right.  And I was not the author of the
11 submission to the Court.  I have, since that time, had a chance
12 to speak with the authors of that submission and what they have
13 conveyed to me is that the underlying basis for the statements
14 in the communication that the Court is referencing were the
15 documents that were submitted as the attachments, ███████
16 ████████████████████████ and the text messages that were
17 attached.
18          To the extent that the summary of ███████████ in
19 the submission could be read as going further than the
20 ████████ itself, the submission is not based on any additional
21 evidence, other than what was submitted as the attachments.
22          THE COURT:  All right. And I take it there's no
23 further 302s with Mr. Manafort on this subject and there was no
24 interview conducted with Mr. Hannity?
25          MR. KRAVIS:  That's correct.

```
 1                THE COURT:  What is your position about whether my
 2     order and the attachments to which it referred need to remain
 3     sealed?
 4                MR. KRAVIS:  The government's request is that those
 5     materials remain sealed because those materials, particularly
 6     the submission itself and the attachments to it, relate to
 7     matters that are discussed in the special counsel's report to
 8     the attorney general.  And because that report or excerpts of
 9     that report have not yet been made public, the government
10     believes it's appropriate for these materials to remain under
11     seal, at least until the time that the attorney general makes a
12     decision about which portions of the report to release to the
13     public, at which point the government would be happy to revisit
14     the issue of sealing with the Court.
15                THE COURT:  Well, is it because it's 6(e) material?
16     I mean, the fact that it's in his report doesn't --
17                MR. KRAVIS:  Well, I mean, [REDACTED]
18     [REDACTED] is obviously 6(e)
19     material.  The -- but not all of the material in that
20     submission is 6(e) material.
21                The government's position is that that material
22     should remain under seal at this point, even the material that
23     is not covered by Rule 6(e), because of the overlap with some
24     portions of the special counsel's report.
25                THE COURT:  All right.  What about my order for today
```

```
 1   or the fact that there was a hearing today?  I mean, we -- as
 2   you all know, there's been a lot of consternation anytime
 3   anything is sealed.  So, what is your position about whether
 4   the order, which doesn't summarize the materials, it just
 5   indicates that these materials, which are already sealed on the
 6   docket, prompted a hearing?  What's your position about that?
 7            MR. KRAVIS:  The order itself does not implicate the
 8   interests that I was just articulating.  So the government's
 9   interest in sealing at this point is with respect to the
10   materials themselves.  On the order, I don't think those
11   interests are implicated.
12            THE COURT:  All right.  Thank you.
13            Mr. Downing, what's your position about the sealing
14   issues?
15            MR. DOWNING:  Well, I know this isn't technical under
16   the rule, but I try to have due candor with the Court today.
17   And it involves a client matter; it's pretty sensitive, I
18   think, what we just talked about today.  So to the extent that,
19   you know, it can remain sealed, I think, just in terms of our
20   conversation today, it's a pretty sensitive issue.
21            THE COURT:  Well, I think the hearing transcript
22   being sealed, ███████████████
23   ████████ I understand that.  What about the order itself or the
24   fact that there was a hearing today?
25            MR. DOWNING:  Well, I think standing alone, I think,
```

1    is just going to feed the beast, if you might, as opposed to if
2    down the record there's a decision that it all gets unsealed,
3    or to the extent the confidential part of it can remain sealed.
4    But at this point in time, if just part of it goes out, I think
5    it will just turn into another media frenzy.
6            THE COURT:  All right.  Well, why don't I do this:
7    I'm going to ask you today that at such time as some portion of
8    the Mueller Report becomes publicly available, for the parties
9    to meet and confer and to submit either your joint or separate
10   recommendations to me about what portion, if any, of --
11   starting with my order, the attachment to which it refers and
12   this hearing can be made public.
13           It was not my intention and it never has been to
14   personally embarrass you in any way, Mr. Downing, which is one
15   of the reasons why I made this sealed.  I wanted to hear what
16   you had to say before I took any action.  But, obviously, I'm
17   sure you can imagine why I was dismayed when I read the
18   information.
19           MR. DOWNING:  Yes, Your Honor.  And it's appreciated.
20           THE COURT:  All right.  I'm going to take all this
21   under advisement right now.  But I think I will wait until the
22   report comes out to do anything about the seal.  And absent
23   further information from the government that there were more
24   communications, I'm unlikely to do anything beyond today.  But
25   I just want to think about everything.

1              Is there anything further that either side wants to
2     put on the record right now?
3              MR. KRAVIS:  Nothing further from the government.
4     Thank you, Your Honor.
5              MR. DOWNING:  No, Your Honor.
6              THE COURT:  All right.  Thank you very much,
7     everybody.
8                              *   *   *

CERTIFICATE OF OFFICIAL COURT REPORTER

I, JANICE DICKMAN, do hereby certify that the above and foregoing constitutes a true and accurate transcript of my stenograph notes and is a full, true and complete transcript of the proceedings to the best of my ability.

Dated this 1st day of May, 2019.

/s/_____

Janice E. Dickman, CRR, RMR, CRC
Official Court Reporter
Room 6523
333 Constitution Avenue NW
Washington, D.C. 20001