IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA | **UNREDACTED VERSION** |
| v. | **UNDER SEAL** |
| PAUL J. MANAFORT, JR., | Crim. No. 17-201-1 (ABJ) |
| Defendant. | |

**DECLARATION IN
SUPPORT OF THE GOVERNMENT'S
BREACH DETERMINATION AND SENTENCING**

I, Jeffrey Weiland, hereby declare as follows:

**A.**     **Background**

1.     I have been a Special Agent with the Federal Bureau of Investigation (FBI) since March 2008.  I am currently assigned to the Special Counsel's Office.  As a Special Agent, I have previously investigated crimes including the corruption of public officials, arson, forced labor trafficking, racketeering, and terrorism.  Prior to my employment with the FBI, I worked for seven years as an attorney, including clerkships with the United States Court of Appeals for the Fifth Circuit and the District Court for the Northern District of Illinois.

2.     I submit this declaration pursuant to the Court's Order dated January 8, 2019, to provide the evidentiary basis to support finding the defendant's statements set out below were false.  I have relied on my own work and that of other members of the team on this matter.  This declaration does not contain all the evidence compiled by the FBI on these issues.

1

3.     Paul J. Manafort, Jr., attended proffer sessions with the Special Counsel's Office and the FBI on September 11, September 12, and September 13, and debriefings on September 20, September 21, September 25, September 26, September 27, October 1, October 5, October 11, and October 16.  Manafort also testified in the grand jury in the District of Columbia on October 26, 2018 and November 2, 2018. Defense counsel was present in all the above sessions except Manafort's testimony before the grand jury, due to the law regarding grand jury secrecy.  Counsel was present outside the grand jury and available to Manafort.  At the outset of the sessions, Manafort was advised that lying to the government could subject him to prosecution.

4.     I participated in each of the proffers and debriefings.  The reports I prepared of these sessions summarized information Manafort provided and are not verbatim recitations of the sessions.  Similarly, the statements reported herein set out the substance of the statements, and are not verbatim.

## I.     Payment To WilmerHale ("Wilmer")

- Overview

5.     After signing the plea agreement, Manafort lied about a $125,000 payment made in June 2017 to WilmerHale ("Wilmer"), a law firm that represented Manafort until August 2017.  Records establish that the $125,000 payment came from a ███████████████████████████████████████████████████ ██████████████████████████████ worked for the ███████████████████████



██████ ).[1]  Manafort has had a long relationship with the head of ████████

███████████ and the head of the ████████████████[2]

6.      In the summer of 2016, Manafort had been instrumental in setting up

the ████ and having ████ run it.[3]  The ████ had engaged ████ at Manafort's

suggestion and ████ performed ████████████████ during the 2016

presidential campaign.  The ████ gave ████ approximately $19 million for ████

████.[4]  Under the terms of the contract between ████ and the ████ ████ was to

receive a 6% commission on all ████████.[5]  According to ████████ half of the

commission was to be provided to ████ although this was not reflected in the

written contract.[6]

- <u>Manafort's False and Misleading Statements</u>

7.      Manafort made, seriatim, inconsistent statements to the government

when asked about the payment:  (1) on September 20, 2018, he said it was

repayment of a loan from Manafort to ████ which Manafort instructed ████ to pay

Wilmer because Manafort owed Wilmer money for its legal services;[7] (2) on October

1, 2018, he said it was money ████████ was paying on Manafort's behalf because

---

[1] *See* Exhibit 1, payment records from WilmerHale; Exhibit 2, Eagle Bank wire confirmation.
[2] *See* Exhibit 3, P. Manafort 302, Oct. 1, 2018, p.1 ¶4; Exhibit 4, P. Manafort Grand Jury Testimony, Oct. 26, 2018, p.253.
[3] *See* Exhibit 5, ████████ 302, Dec. 12, 2017, p.16 ¶2 and p.17 ¶1.
[4] *See* Exhibit 6, excerpts of ████ bank records.
[5] *See* Exhibit 7, ████ Consulting Contract with ████ Exhibit A.
[6] *See* Exhibit 8, ████████ 302, Nov. 6, 2018, p.1 ¶2.
[7] *See* Exhibit 9, P. Manafort 302, Sept. 20, 2018, p.6 ¶2 ("████ paid about $50,000 to $60,000 towards Manafort's legal bill. ████ owed Manafort the money."); Exhibit 4, P. Manafort Grand Jury Testimony, Oct. 26, 2018, pp. 254-57 ████████████████████████████████████

Manafort had given ██████ work in the past, and Manafort asked ██████ to pay what he owed Manafort directly to Wilmer;[8] and (3) on October 16, 2018, he said Manafort requested ██████ to give the money to Wilmer, which would constitute a loan from ██████ to Manafort, which Manafort would repay ██████.[9]

- <u>Proof Of Manafort's False And Misleading Statements</u>

8.    The falsity of the first explanation provided by Manafort is evidenced by, among other things, that: ██████ not ██████ made the payment to Wilmer; the debt ██████ owed Manafort (as reflected on Manafort's books and records) was $20,000, not $125,000;[10] and Manafort changed his explanations after Manafort was told the above facts.

9.    The falsity of the second version provided by Manafort is shown by, among other things, ██████ statements to the government, corroborated by payment records and text messages. ██████ told the government that the payment was not money he owed Manafort for work Manafort had obtained for ██████ Instead, ██████ said he made the payment to Wilmer because he was instructed to do so by ██████ told the government that ██████ hired ██████ to work for the ██████ on the condition that ██████ personally receive half of the 6%

---

[8] *See* Exhibit 3, P. Manafort 302, Oct. 1, 2018, p.1 ¶4 ("██████ rationalized that the money he paid to the law firm had come from the money he earned working for the ██████ Manafort has given ██████ millions of dollars in business over the years.")  Manafort said the payment was declared as income to Manafort, and not treated as a gift. *See* Exhibit 3, P. Manafort 302, Oct. 1, 2018, p.2 ¶1. Manafort explained that the reason he had previously mentioned ██ was because Manafort asked ██████ to ask ██████ to pay Wilmer, and when ██ spoke to ██ said he would deal with Manafort directly.  *See* Exhibit 9, P. Manafort 302, Sept. 20, 2018, p.6 ¶2.
[9] *See* Exhibit 10, P. Manafort 302, Oct. 16, 2018, p.3. ¶3 ("██████ paid Manafort's attorneys. Originally, they planned for the payment to be a loan.  Last year, they executed a note with a payment plan including interest. Manafort did not do any work for the money.")
[10] *See* Exhibit 11, DMP International, LLC Financial Statements.

4

commission due ███ under the contract.  The contract between ███ and the ███ did not record the "commission" split with ███  ███ said that ███ held the 3% "commission" for ███ and ███ directed ███ how to spend it.  ███ followed ███ instructions and directed ███ payment to Wilmer from ███ 3% funds.  ███ did not know why ███ directed the money to be paid to Manafort's lawyers.  ███ also did not know if ███ and Manafort had a separate commission agreement.[11]  ███ statements are corroborated, among other things, by text messages between Manafort and ███ in which Manafort provided ███ with routing information for payment.  ███ replied with the bank tracking numbers for the payment.[12]

10.    Manafort's third version, that the $125,000 was a loan by ███ to Manafort, is belied by, among other things: the statements of both ███ and Manafort's tax preparer; Manafort's e-mail to his tax preparer; Manafort's tax return; and Manafort's lack of repayment of the "loan."

11.    Manafort offered the "loan" explanation on October 16, 2018, three-and-a-half-weeks after he was first asked about the payment.  Another week and a half later, Manafort provided the government with an unsigned promissory note, dated September 14, 2017 (███ payment to Wilmer was in June 2017), which included a payment schedule.  The last of the three scheduled payments, totaling $131,249.96, was due on September 15, 2018.[13]  Manafort stated that only one payment was ever

---

[11] *See* Exhibit 8, ███ 302, Nov. 6, 2018, p.1 ¶2 and p.2 ¶4.
[12] *See* Exhibit 12, P. Manafort and ███ Text Messages, June 20-29, 2017.
[13] *See* Exhibit 13, alleged promissory note.

made to ████ in the amount of about $6,000 within the last month.  Manafort stated that the payment was subsequent to, but not because of, the government's inquiry about the $125,000 payment.[14]

12.      ████ told the government that he did not make a loan to Manafort; instead, he made the payment to Wilmer because he was instructed to do so by ████ on behalf of Manafort, as noted above.[15]  ████ stated that he did not loan or gift any of his own money to Manafort or Manafort's counsel.  Further, ████ said when asked to contribute his own money to Manafort's legal defense, ████ declined.  Finally, ████ said that he has never received any payments directly or indirectly from Manafort.[16]

13.      Similarly, Manafort's tax preparer denied knowing the payment was a loan.  In September 2017, Manafort e-mailed his tax preparer instructing him to treat the $125,000 payment as "income" (which would be consistent with the payment being a "commission" given to Manafort from ████ 3%).  Manafort stated in that e-mail that he made the "vendor pay directly to [Wilmer]," "because of complications in my banking."[17]  The tax preparer accordingly included the $125,000 as income in Manafort's 2017 tax return, although he did not know the factual circumstances that would warrant treating it as income.[18]    In October 2018, after the government's

---

[14] *See* Exhibit 10, P. Manafort 302, Oct. 16, 2018, p.3 ¶3.

[15] *See* Exhibit 8, ████ 302, Nov. 6, 2018, p.1 ¶2 and p.2 ¶4;  Exhibit 4, P. Manafort Grand Jury Testimony, Oct. 26, 2018, pp. 247-48 ████████████████████████████████████

[16] Exhibit 8, ████ 302, Nov. 6, 2018, p.2 ¶6 and p.3 ¶¶1-2.

[17] *See* Exhibit 14, E-mail, Sept. 24, 2017, P. Manafort to ████ ("This is income for 2017.")

[18] *See* Exhibit 15, excerpt of P. Manafort's 2017 filed tax return; Exhibit 16, ████ 302, Nov. 14, 2018, p.1 ¶4.

inquiry to Manafort about the $125,000 payment, a Manafort representative e-mailed the tax preparer asking him how the "note" was handled.  The representative also provided him with an unsigned loan document with respect to the $125,000 payment, claiming that interest payments were made this year.[19]  The tax preparer told the government that the October 2018 e-mail inquiry was the first he had ever heard that the payment was a purported loan.  He did not change anything on the return based on the e-mail.[20]

## II.     Konstantin Kilimnik's Role in The Witness Tampering Conspiracy

- Overview

14.     At his proffer on September 11, 2018, Manafort admitted that he conspired with Kilimnik to obstruct justice by tampering with witnesses, as charged in the Superseding Indictment returned on June 8, 2018.  As part of his guilty plea before this Court, Manafort again admitted to conspiring with Kilimnik to obstruct justice to tamper with two witnesses.  Subsequently, in an interview on October 16, 2018, after his guilty plea, Manafort denied Kilimnik's knowing involvement in the conspiracy.  That denial was false.

- Manafort's False and Misleading Statements about Kilimnik's Role in the Obstruction Conspiracy

15.     During an interview with the government on October 16, 2018, Manafort said that: Kilimnik did not believe that he was obstructing justice when he contacted

---

[19] *See* Exhibit 17, E-mail, Oct. 30, 2018, ▮▮▮▮▮ to ▮▮▮▮▮, with Attachment "Note.pdf"
[20] *See* Exhibit 16, ▮▮▮▮▮ 302, Nov. 14, 2018, p.2 ¶2.

███████████ (identified as Person D1 in the charging document) and ███████████ (identified as Person D2); in Kilimnik's mind, he was only communicating information; Kilimnik did not feel that he exerted any pressure; and to Kilimnik, Europe was the fulcrum of the Hapsburg Group project.   At the same session, Manafort added that he talked with Kilimnik after Kilimnik was indicted, that Kilimnik thought it was crazy that he had been charged, and that Manafort agreed that it was outrageous.[21]

16.   The government notified Manafort's counsel that it believed Manafort's statements were inconsistent with what he had previously said to the government and allocuted to in court.  The parties then took a break.

17.   After speaking with his attorney, Manafort changed his account, and stated that: he conspired with Kilimnik; at the time he pleaded guilty, Manafort understood the elements of the conspiracy; Manafort and Kilimnik agreed to try to have ████ say something that was not true; Kilimnik knew that the Hapsburg Group performed work in the United States; Kilimnik messaged ███████ to get him to say that the Hapsburg Group was Europe focused; and Kilimnik was guilty of obstruction of justice because he was aware of the facts and agreed to knowingly violate the law. Manafort told the government that he had not changed his statements, but the government had been confused about what he had said.

- <u>Proof that Manafort's Statements Were False and Misleading</u>

---

[21] Exhibit 10, P. Manafort 302, Oct. 16, 2018, p.6 ¶¶1-2.  The defense has contended that Manafort did not lie on this topic as he could not speak to Kilimnik's state of mind. Sealed Response to OSC Breach Submission, Jan. 7, 2019 (Doc. 470).  However, Manafort did just that in the debriefings.

18.     Manafort's October 16, 2018, statements attempting to exculpate Kilimnik with respect to the charged obstruction of justice conspiracy are contradicted by his statements during a September 11, 2018 proffer with the government, his sworn statements before this Court during his guilty plea, his corrected statements on October 16, 2018, as well as the underlying proof of the conspiracy.[22]  Manafort's statement that he had not changed his story was also false, as set forth above.

- <u>The Superseding Indictment and Initial Proffer</u>

19.     On June 8, 2018, a grand jury sitting in the District of Columbia returned a seven-count Superseding Indictment charging Manafort and Kilimnik.[23] Count Six charged Manafort and Kilimnik with attempted obstruction of justice, pursuant to 18 U.S.C. §§ 1512(b)(1) and 2.[24]  Count Seven charged both defendants with conspiracy to obstruct justice pursuant to 18 U.S.C. § 1512(k).[25]  Both counts related to Manafort and Kilimnik's efforts to persuade two witnesses, identified as Person D1 (██████████ and D2 (██████ to testify falsely

20.     At the proffer on September 11, 2018, Manafort admitted his involvement in the charges in the criminal prosecution pending in the District of

---

[22] Exhibit 100, P. Manafort Statement, Sept. 11, 2018; Statement of the Offenses and Other Acts, ¶¶44-46 and p.24, Sept. 14, 2018 (Doc. 423); Order, United States v. Manafort, No. 18-3037 (D.C. Cir. July 12, 2018) (Doc. 1740431); Opinion at pp.15-16, United States v. Manafort, No. 18-3037 (D.C. Cir. July 31, 2018) (Doc. 1743190) ("The District Court's treatment of the EDVA Stay-Away Order was merely part of the icing; the cake had already been baked.")
[23] Superseding Indictment, June 8, 2018 (Doc. 318).
[24] Id., ¶¶48-49.
[25] Id., ¶¶50-51.

Columbia.  With respect to the conspiracy to obstruct justice, Manafort stated the following (reading from a written statement under the heading "Witness tampering"):

- In response to press reports concerning the Superseding Indictment I attempted to contact ████████ [*sic*], a former consultant that I had worked with regarding Ukraine political issues, through a group known as the Hapsburg Group.

- I left a message for ████████ [*sic*] emphasizing that his group was working in Europe.

- I contacted KK and requested that he reach out to ████████ [*sic*] and another member of the Hapsburg group to do the same.

- knowing that ████████ [*sic*] and the members of the Hapsburg group also directed their Ukrainian outreach into the United States and previously including meeting with members of the U.S. government.

21.    Manafort's counsel provided the written statement he read at the proffer to the government and it is an exhibit hereto.[26]

- <u>Guilty Plea</u>

22.    Manafort more explicitly admitted Kilimnik's role in the charged conspiracy as part of his guilty plea before the Court.  On September 14, 2018, Manafort pled guilty to both counts charged in a Superseding Information: (a) a conspiracy to defraud the United States (Count One), and (b) a conspiracy to obstruct

---

[26] Exhibit 101, P. Manafort 302, Sept. 11, 2018, p.1 ¶2; Exhibit 100, P. Manafort Statement, Sept. 11, 2018.

justice (witness tampering)(Count Two).  Count Two specifically named Kilimnik as a conspirator (as did the original Superseding Indictment).  Paragraphs 64 to 67 of the Superseding Information detailed the allegations of the obstruction conspiracy. In addition, as part of his plea agreement, Manafort admitted to a statement of facts. Paragraphs 44 through 46 in the Statement Of The Offenses And Other Acts, which he signed and initialed, also referenced the conspiracy with Kilimnik (and tracked the Count Two allegations).

23.    These documents set out that between February 23, 2018 and April 2018, Manafort conspired with Kilimnik to tamper with two witnesses – described as Person D1 (███████  and Person D2 (██████ – with respect to their potential testimony about the Hapsburg Group and its activity in the United States, namely to induce each to testify falsely that the Hapsburg Group did not involve work in the United States (thus not violating the Foreign Agents Registration Act).

24.    As required by the Court at his guilty plea proceeding, Manafort acknowledged the facts in the Statement Of The Offenses And Other Acts to be true.[27]

**III.    Interactions with Kilimnik**

•    Overview of Interactions Between Manafort and Kilimnik

25.    Beginning on August 2, 2016, and continuing until March 2018, Manafort and Kilimnik communicated about a Ukraine peace plan.  Manafort and Kilimnik discussed the peace plan in August 2016, December 2016, January 2017,

---

[27] Tr. of Plea Hearing at pp.34-35, Sept. 14, 2018 (Doc. 424), acknowledging government recitation of the offenses and the facts in the Statement Of The Offenses And Other Acts ("And did you also, in fact, conspire with at least one other person to obstruct justice by tampering with witnesses concerning the FARA allegations in 2018?' And the defendant responded: "I did.")

February 2017, and winter 2018.  The discussions on August 2, 2016, on or around

January 19, 2017, and on February 26, 2017, were in person.

26.     The Ukraine peace plan entailed ███████████████████████

██████████ returning to Ukraine to oversee what would be a newly-created

autonomous region of eastern Ukraine, which is a comparatively heavily

industrialized area of Ukraine.[28] ████████████ had been living in exile in Russia

since he fled Ukraine in 2014.[29]

27.     In addition, as discussed below, Manafort told his employee Richard

Gates to share internal polling data with Kilimnik during the 2016 Presidential

campaign.

- **Manafort's False and Misleading Statements about the Fact And Frequency Of His Discussions Of The Ukraine Peace Plan With Kilimnik**

28.     Over the course of several interviews and in the grand jury, Manafort

gave various accounts concerning his communications with Kilimnik about the

Ukraine peace plan.

29.     In an interview on September 11, 2018, Manafort said that at an in-

person meeting in New York City on August 2, 2016, Kilimnik raised the concept of

---

[28] Exhibit 200, E-mail, Dec. 8, 2016, K. Kilimnik to K. Kilimnik; Exhibit 201 E-mail, Feb. 21, 2018, P. Manafort to ██████████████████.
[29] Exhibit 200, E-mail, Dec. 8, 2016, K. Kilimnik to K. Kilimnik.  *See generally* Exhibit 202, E-mail, July 29, 2016, P. Manafort to K. Kilimnik; Exhibit 203, E-mail, July 31, 2016, P. Manafort to K. Kilimnik; Exhibit 204, K. Kilimnik CBP Record, Aug. 2, 2016,; Exhibit 200, E-mail, Dec. 8, 2016, K. Kilimnik to K. Kilimnik; Exhibit 201, E-mail, Feb. 21, 2018, P. Manafort to ██████████████████, p. 4; Exhibit 205, E-mail,. Feb. 19, 2018, ████████████████, p. 1.

the Ukraine peace plan with him.[30]  According to Manafort, he told Kilimnik that the idea was crazy and that the discussion on the subject ended.[31]  Manafort stated he did not recall Kilimnik asking Manafort to reconsider the peace plan after August 2.[32]

30.     During debriefings on September 11 and 12, 2018, Manafort was shown a December 2016 Kilimnik e-mail.  The e-mail described the peace plan.[33]  Manafort admitted that he had seen the e-mail, as Kilimnik would only have been communicating on this with Manafort.[34]

31.     The government questioned Manafort about the December 2016 e-mail, noting that on its face it did not indicate that the August 2016 meeting had ended the discussion about the plan and the tenor of the December e-mail did not suggest that

---

[30] The August 2, 2016 meeting came about as a result of communications between Kilimnik and Manafort setting up the meeting.  Kilimnik flew to the United States for the specific purpose of attending this meeting.  The week before August 2, Kilimnik e-mailed Manafort asking for the meeting.  Kilimnik was in Russia, where he indicated he had met with ████████  Kilimnik requested to speak with Manafort in person because of an important message he had for him, which would take several hours to convey.  Kilimnik flew from Moscow to New York on August 2, and met with Manafort that evening at the Grand Havana Club for dinner.  Gates arrived late for the meeting. *See* Exhibit 202, E-mail, July 29, 2016, P. Manafort to K. Kilimnik; Exhibit 203, E-mail, July 31, 2016, P. Manafort to K. Kilimnik; Exhibit 204, K. Kilimnik CBP Record, Aug. 2, 2016.

[31] Exhibit 101, P. Manafort 302, Sept. 11, 2018, p.4 ¶3; Exhibit 4, P. Manafort Grand Jury Testimony, Oct. 26, 2018, p. 109:24 – 110:5. ████████████████████████████████████ ████████████████████████████████████████████████  Exhibit 206, P. Manafort 302, Sept. 12, 2018, p.4 ¶4.

[32] Exhibit 101, P. Manafort 302, Sept. 11, 2018, p.5 ¶1 ("Manafort does not recall Kilimnik asking Manafort to reconsider the peace plan after their August 2 meeting.")

[33] Exhibit 200, E-mail, Dec. 8, 2016, K. Kilimnik to K. Kilimnik (e-mail begins █████████ ████████████████████████████████████████████████  Exhibit 4, P. Manafort Grand Jury Testimony, Oct. 26, 2018, pp. 38:20 – 39:5.

[34] Exhibit 101, P. Manafort 302, Sept. 11, 2018, p.6 ¶2; Exhibit 206, Manafort 302, Sept. 12, 2018, p.1 ¶3; Exhibit 207, R. Gates 302, Feb. 27, 2018, p.2 ¶1.

Kilimnik was seeking to have Manafort reconsider his strong adverse reaction.  On September 12, Manafort admitted that he did not cut off Kilimnik on August 2, and that Kilimnik's December 2016 e-mail summarized what Kilimnik had presented at the August 2 meeting.[35]   Manafort added that Manafort and Kilimnik last communicated about the peace plan in March or April 2017, when they discussed who would control the plan, rather than what the plan entailed.[36]

32.   In the grand jury, on October 26, 2018, Manafort admitted, ███████████ █████████████████████████████████████████████████████████████████████ ██████

- <u>The January 2017 Meeting</u>

33.   During his September 11, 2018 interview, Manafort stated that he met Kilimnik and ██████████████ at a hotel in Alexandria at the time of the inaugural events in January 2017.[38]   Manafort stated that they talked about updates as to what was happening in Ukraine, the new United States Administration, and money that Manafort believed ███████████ owed him.[39]

---

[35] Exhibit 206, P. Manafort 302, Sept. 12, 2018, p.4 ¶5.

[36] *Id.*, p.5 ¶2.

[37] Compare Exhibit 4, P. Manafort Grand Jury Testimony, Oct. 26, 2018, p. 110:1-7; wth *Id.*, pp. 43:11-44:16 (████████████████████████████████████████████████████████████████████████ ██████████████████████████████████████.")

[38] Exhibit 101, P. Manafort 302, Sept. 11, 2018, pp. 7-8.  Kilimnik and ████████ came to the United States because they had obtained tickets to the inauguration through ████████.  Statement of Offense at pp. 3-4, United States v. Patten, 18-cr-260, (D.D.C. Aug. 31, 2018) (Doc. 7). Kilimnik arrived in the United States on January 19, 2017 and departed on January 22, 2017. Exhibit 208, K. Kilimnik CBP Records, Jan. 19, 2017 and Jan. 22, 2017.

[39] Exhibit 101, P. Manafort 302, Sept. 11, 2018, pp. 7-8.

34.     Subsequently, during a September 21, 2018, debriefing, Manafort stated that during their January 2017 meeting ███████████ did not present a plan for the Ukraine or ask Manafort for anything.[40]

35.     During his grand jury testimony on October 26, 2018, Manafort testified that ████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████ ██

- <u>The February 2017 Madrid Meeting</u>

36.     In his debriefings, Manafort was asked about a trip he took to Madrid in February 2017.

37.     In the September 11, 2018, session, Manafort said he travelled to Madrid for Telefonica business.  Manafort said he did not meet with Kilimnik in Madrid.[42]

38.     On September 12, Manafort was again asked if he met with Kilimnik in Madrid in February 2017.  Manafort said that he had no memory of meeting Kilimnik in Madrid.  When told that Kilimnik flew to and from Moscow and Madrid in a 24-

---

[40] Exhibit 209, P. Manafort 302, Sept. 21, 2018, p.3 ¶3.
[41] Exhibit 4, P. Manafort Grand Jury Testimony, Oct. 26, 2018, pp. 44-46.
[42] Exhibit 101, P. Manafort 302, Sept. 11, 2018, p.7 ¶4.

hour period that overlapped with when Manafort was in Madrid, Manafort stated he did not recall meeting Kilimnik, but if Kilimnik was in Madrid at the same time, then it was to meet with Manafort.[43] (Travel records show Kilimnik departed Moscow for Madrid on February 26 at 7:05 a.m. and arrived back in Moscow on February 27 at 7:05 a.m. [44])

39.     During an interview on September 13, Manafort said that in fact he did meet Kilimnik in Madrid.  Manafort asked Kilimnik to come to Madrid to discuss information on the work of the Ukrainian National Anti-Corruption Bureau and ███████████████████████████████████ activities.  Manafort stated he did not ask Kilimnik to Madrid in order to talk about the peace plan but Kilimnik would have raised it.[45]

40.     During Manafort's grand jury testimony on October 26, Manafort testified that ████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
██████████████████████████

- 2018 Ukraine Polling Questions About the Peace Plan

    o   Background on the Poll

---

[43] Exhibit 206, P. Manafort 302, Sept. 12, 2018, p.5 ¶6.
[44] Kilimnik took the 5-hour flight from Moscow to Madrid on 2/26/2017, and returned to Moscow early on the morning of 2/27/2017.   Exhibit 210, E-mail, Feb. 21, 2017, ██████████ to K. Kilimnik, (attaching travel itinerary for Kilimnik).
[45] Exhibit 301, P. Manafort 302, Sept. 13, 2018, p.1 ¶¶ 3-4.
[46] Exhibit 4, P. Manafort Grand Jury Testimony, Oct. 26, 2018, pp. 19:19-22, 68:14-18.

41.     Manafort was asked in the grand jury about his work in 2018 on ███████

███████████████████████████████████████████████████████.  Manafort

had not mentioned the questions regarding the peace plan during any of his twelve

interviews and had said he had last discussed the peace plan with Kilimnik in spring

2017.

42.     Records establish that on February 16, 2018, Manafort had executed a

contract to provide consulting services to ██████████████  regarding his

potential candidacy in the 2019 Ukraine Presidential election.[47]   The contract

included conducting a national poll in Ukraine.[48]

43.     On February 21, 2018, Manafort e-mailed ████████ and ██████████

(who worked with ████████ two veteran pollsters with whom Manafort had

previously worked, a document entitled "New initiative for Peace copy.docx."[49]   The

document properties show it was created by Kilimnik and modified by Manafort.[50]

Manafort testified that ████████ sent him the document.[51]

44.     The plan proposed an autonomous region in Eastern Ukraine (known as

the Donbass) with ████████████ as an optimal candidate for Prime Minister.[52]

Manafort admitted in the grand jury that this document described the ████████

---

[47] Exhibit 211, Consulting Agreement, Feb. 16, 2018.
[48] ████████████████████████████████████████████████████████████████
████████████████████████  Exhibit 4, P. Manafort Grand Jury Testimony, Oct. 26, 2018, p. 77:11-22;
Exhibit 212, ████████████, Oct. 30, 2018, p. 3 ¶¶5-6.
[49] Exhibit 201, E-mail, Feb. 21, 2018, P. Manafort to ████████████.
[50] Exhibit 213, "New initiative for Peace," Feb. 10, 2018.
[51] Exhibit 4, P. Manafort Grand Jury Testimony, Oct. 26, 2018, pp. 138-139.
[52] Exhibit 201, E-mail, Feb. 21, 2018, P. Manafort to ████████ and ████████, p. 4.

███████████████████████████████████████████████████

████████████████████

45.      ████ told the government that he was primarily responsible for drafting the proposed Ukraine poll.[54]   ████ based his questions on directions given to him by Manafort, and then sent the drafts to Manafort for his review.[55]   For example, Manafort instructed ████ "I want to test ██ as an acceptable player to the Ukrainian people (vs leadership) to assist in bringing peace to DONBASS."[56] Manafort also received input from Kilimnik.   For instance, on February 19, 2018, Manafort sent ████ comments that Manafort received from Kilimnik on the proposed poll.[57]   Similarly, on March 9, Manafort included Kilimnik's notes on "draft 4" of the survey.[58]   Several of the questions in the draft poll addressed the peace plan and ████████ role.[59]

- <u>Manafort's grand jury  testimony</u>

---

[53] Exhibit 4, P. Manafort Grand Jury Testimony, Oct. 26, 2018, pp. 139-143.
[54] Exhibit 214, ████████ 302, Nov. 6, 2018, p.1 ¶3; Exhibit 212, ████ 302, Oct. 30, 2018, p.3 ¶¶1-2.
[55] Exhibit 215, ████ 302, Oct. 22, 2018, p.2 ¶2.
[56] Exhibit 216, E-mail, Feb. 21, 2018, P. Manafort to ████ and ████, p. 1.
[57] Exhibit 205, E-mail, Feb. 19, 2018, ████ to ████, p. 1.
[58] Exhibit 218, E-mail, Mar. 9, 2018, P. Manafort to ████ and ██.
[59] Exhibit 217, E-mail, Mar. 9, 2018, ████ to P. Manafort and ████, pp. 10-11. *See also* questions on p. 12 regarding ████████████████████████████████████████████████████ Exhibit 218, E-mail, Mar. 9, 2018, P. Manafort to ████ and ████, p. 1.

46.     In the grand jury, Manafort testified that he sought to ████████████

████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████ █

47.     Manafort was asked in the grand jury ████████████████████████████

████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████ █ ███████████████████████

████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████

████████████████ █ Manafort explained that he had not told ████████████████

█████████████████ █ ██████████████████████████████████████████████████ █

48.     Manafort was then asked what ███████████████████████████████████

████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████

█████████████████████████████ █ ████████████████████████████████████████

███████████████ █ After a lunch break, ███████████████████████████████████

████████████████████████████████████████████████████████████████████████

██████████ █

- <u>Manafort's False and Misleading Statements about Directing Gates to Share Internal Campaign Polling Data with Kilimnik</u>

---

[60] Exhibit 4, P. Manafort Grand Jury Testimony, Oct. 26, 2018, pp. 105:17-23, 128-29, 144.
[61] *Id.*, p. 87.
[62] Exhibit 218, E-mail, Mar. 9, 2018, P. Manafort to ████████ and ████████ p. 8.
[63] Exhibit 4, P. Manafort Grand Jury Testimony, Oct. 26, 2018, pp. 88, 94, 96-97, 112:16-20.
[64] *Id.*, pp. 98-99.
[65] *Id.*, pp. 112-113; Exhibit 205, E-mail, Feb. 19, 2018, ████████ to ████████, p. 1.
[66] Exhibit 4, P. Manafort Grand Jury Testimony, Oct. 26, 2018, pp. 112-114.
[67] *Id.*, p. 119:16-19.

49.     During his interview on September 11, 2018, Manafort stated he did not share information with Kilimnik which Manafort did not otherwise share publicly.[68]  During Manafort's grand jury testimony on October 26, in response to a question as to whether ███████████████████████████████████████ Manafort responded: ████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████ ██ ███████████████████████

███████████████████████████████████████████████████

████████████████████████ ██ Manafort further testified: ███████████████

████████████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

████████████████████████████████████████████████████

██████████████████████████ ██

- <u>Proof of Manafort's False and Misleading Statements</u>

50.     With respect to the communications about the peace plan, the government notes the following additional facts.

---

[68] Exhibit 101, P. Manafort 302, Sept. 11, 2018, p.5 ¶2.

[69] Exhibit 4, P. Manafort Grand Jury Testimony, Oct. 26, 2018, p. 153:7-16, 156:23-157:13.

[70] *Id.*, pp. 153, 156:23-157:13; Exhibit 224, E-mail, July 8, 2016, K. Kilimnik to P. Manafort.

[71] *Id.*, p. 156:1-8.

51.   Manafort's grand jury testimony that ███████████████████
██████████████ contradicted statements he made during a debriefing on October 11, 2018.  Manafort told the government that when first approached by ████████ in mid-2017 that Manafort called Kilimnik to ask him about ████████.[72] Kilimnik said ████████ was not a first tier candidate and could not get enough support so Manafort turned down ████████  After Manafort decided to work for ████████ and after ████████ did not pay for the poll, Manafort said he ultimately assessed ████████ potential candidacy based on information Kilimnik collected by talking with people.[73]

52.   The initials for ██████████████ are ███ the initials for ██████ (or ████████████████ would be "███ or "███ not "███"[74]  Further, Manafort himself referred to ████████ as "███ in a number of e-mails, and Kilimnik referred to ██████████████" in the same e-mail in which he also ████████████."[75] Further, ████████████ told the government they were not asked to keep a name from Kilimnik (and did not know the client's name).[76]  ████████ and ████████ statements are supported by a February 21, 2018, e-mail in which ██████ asked for the name of the client and Manafort responded that "I will add his name to the draft [poll] that you give to me."[77]  However, no such draft was provided.



---

[72] Exhibit 238, P. Manafort 302, Oct. 11, 2018, p.3 ¶2.
[73] *Id.*, p.4 ¶1.
[74] *See* Exhibit 18, P. Manafort Grand Jury Testimony, Nov. 2, 2018, pp. 7-8.
[75] Exhibit 219, E-mail, May 4, 2018, P. Manafort to ██████; Exhibit 220, E-mail, March 26, 2018, P. Manafort to ██████, p. 1.; Exhibit 205, E-mail, February 19, 2018, ██████ to ██████ (compare answers in red to items 1 and 2).
[76] Exhibit 212, ██████ 302, Oct. 30, 2018, p.3 ¶3; Exhibit 214 ██████ 302, Nov. 6, 2018, p.2 ¶4.
[77] Exhibit 221, E-mail, Feb. 21, 2018, ██████ to P. Manafort and ██████, p. 1.

53.     With respect to the internal campaign polling data, evidence (including

e-mails and testimonial evidence) indicates that Manafort directed Gates to give

this information to Kilimnik.

54.     During interviews with Gates, Gates told the government that he was

instructed by Manafort to send polling data on a regular basis to Kilimnik

throughout the campaign, starting in April or early May 2016.[78]  Gates provided

Kilimnik a mix of public polls and the campaign's ███████ polling data based on

what Manafort thought looked good.   On multiple occasions, Gates and Manafort

would receive a poll and Manafort would tell Gates to send it to Kilimnik based on

the poll's content.[79]

55.     In addition, Kilimnik sent e-mails from July 27 through August 19,

2016, that referenced his access to internal campaign polls.  In eight separate e-

mails during that period, Kilimnik cited his access to internal polling data from the

campaign.[80]

56.     Finally, as noted, on the evening of August 2, 2016, Manafort met with

Kilimnik at the Grand Havana Club in New York City.  Gates attended, but arrived

late.  On the morning of the meeting, Manafort sent Gates an e-mail with the

subject: "Print out and bring to our SCh [sic] meeting" and the attachment to the e-

---

[78] Exhibit 222, R. Gates 302, Jan. 31, 2018, p.17 ¶3-4.
[79] Exhibit 223, R. Gates 302, Sept. 27, 2018, p. 2 ¶3-5.
[80] Exhibit 225, E-mail, July 27, 2016, K. Kilimnik to ██████; Exhibit 226, E-mail, Aug. 18, 2016, K.
Kilimnik to ██████; Exhibit 227, E-mail, Aug. 18, 2016, K. Kilimnik to ██████; Exhibit 228, E-mail,
Aug. 18, 2016, K. Kilimnik to ██████; Exhibit 229, E-mail, Aug. 18, 2016, K. Kilimnik to ██████
██████ Exhibit 230, E-mail, Aug. 18, 2016, K. Kilimnik to ██████; Exhibit 231, E-mail, Aug. 18,
2016, K. Kilimnik to ██████; Exhibit 232, E-mail, Aug. 19, 2016, K. Kilimnik to ██████. All seven
e-mails from August 2016 contain the following text: "Trump's internal polling shows…."

mail was an Excel document with 18 tabs.  The document was ███████ internal

polling data for the presidential campaign.[81]   A review of Manafort and Gates's e-

mails confirmed that both received this polling data from ██████ on July 17 and

July 15, respectively.[82]

## IV.   **Another DOJ Investigation**

- <u>Overview</u>

57.   ████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████

58.   Manafort gave different versions of events surrounding an incident in

the summer 2016 that was potentially relevant to the investigation: one version that

was more incriminating was given prior to signing the plea agreement (on September

13, 2018), and another that was more benign was made after on October 5, 2018, after

his plea.  When confronted with the inconsistency by the government and his own

counsel, Manafort largely retracted the second version.

- <u>Manafort's False and Misleading Statements</u>

---

[81] Exhibit 233, E-mail, Aug. 2, 2016, P. Manafort to R. Gates; Exhibit 236, R. Gates 302, Jan. 30, 2018, p. 3 ¶5.
[82] Exhibit 234, E-mail, July 17, 2016, ████████ to P. Manafort; Exhibit 235, E-mail, July 15, 2016, ████████ to R. Gates.
[83] *See* United States v. Cohen, 18-cr-602 (S.D.N.Y. 2018); Information, United States v. Cohen, 18-cr-602 (S.D.N.Y Aug. 21, 2018) (Doc. 2).

59.     During an interview on October 5, 2018, which included representatives of ███████████, Manafort addressed the aforementioned incident.  Manafort gave an anodyne version of the incident.  He said he received a call from ██████████████ after ███████████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████████████ ██████████████████████████████████████.  The conversation was part of a longer meeting on other subjects.[85]  Manafort said that ████████████████████ ████████████████████████████████████████████████.  In the debriefing, Manafort did not state ███████████████████████████████████████████████.

60.     At this point in the debriefing, Manafort's attorneys gave him a typewritten document to read, representing it was notes of what Manafort previously told the government on the subject.  Manafort then stated that around the same time that ██████████████████████████████████ called Manafort about ████████████████ and  it  was ████████████████████████████████████████████████████ ████████████  Manafort stated he believed ████████████████████████████████ ██████████████████  Manafort stated he did not know of ██████████████████████ █████████████████████████████████████████.

---

████████████████████████████████████████████████████████████████████████ ████████████████████████████████

[85] Exhibit 300, P. Manafort 302, Oct. 5, 2018, p.1 ¶2.

██ ████████████

61.    Manafort again reviewed the typewritten document.   Manafort then stated that in the call he received from ███████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

███████████████████████████   ████████████████████████

███████████████████████████████████████████████████ ■

62.    At this point in the interview, Manafort's attorneys requested a break to speak with Manafort.  After the break, Manafort again described the incident with a narrative close to what Manafort had told the government during his September 13, 2018 proffer (described below), including the urgency ██████████████████

██████████████████████████████████████

- Proof of Manafort's False and Misleading Statements

63.    On September 13, 2018, Manafort provided information about ██████████

████████████████   The issue arose in connection with the government's asking Manafort about a series of text messages ████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████

64.    Manafort stated that the text may have related to a ███████████████

████████████████████████   ██████████████████████████

████████████████████████████████████████████████████

─────────────────────────

■ ████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

█████████████████████████████████ █

65.     Manafort said that after the ████████████████████████

████████████████████████████    ███████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

█████████████████████████████████████████████████████████ █

66.     Manafort stated that after this meeting, but prior to his leaving the campaign (on August 19), █████████████████████████████████ not how it was handled.[91]  Manafort noted that subsequent to his call ███████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

███████████████████████████████████ █

V.     **Manafort's Contact with the Administration**

- Overview

---

█ ██████████████████████████████████
█ ██████████████████████████████████████████████████████████
██████████████████████████████
█ █ ████████
█ █ █████████

67.     Manafort told the government that he did not have any contact, direct or indirect, with any member of the Administration and did not try to have such contact.     Evidence demonstrates that Manafort's statements were false. Documentary evidence establishes that Manafort agreed to have messages sent to the Administration, including about Administration ██████████████████████

██████ Gates has also said that Manafort told Gates about his contact with the Administration.     And during his grand jury testimony, when confronted with documents, Manafort admitted ████████████████████████████████

███████████████ ■

- <u>Manafort's False and Misleading Statements Regarding Contact with the Administration</u>

68.     Manafort stated on several occasions that he never spoke to anyone in the Administration, either directly or indirectly.  For instance, during an interview with the government on October 16, 2018, Manafort stated he had no direct or indirect communications with anyone in the Administration while they were in the Administration, and that he never asked anyone to try to communicate a message to anyone in the Administration on any subject matter. [94]   Manafort stated that he spoke with certain individuals before they worked for the Administration and after they left the Administration, but not while they were in the Administration. [95]

---

[93] This is not a complete listing of  such contacts Manafort had with Administration officials.  Further, for the purposes of proving the falsity of Manafort's assertions in this section, the government is not relying on communications that may have taken place, with Manafort's consent, through his legal counsel.  We previously so advised the defense.

[94] *See* Exhibit 10, P. Manafort 302, Oct. 16, 2018, p.2 ¶5.

[95] *See id.*

- **Proof that Manafort's Statements Were False and Misleading**

69.     Evidence demonstrates that Manafort had contacts, and tried to have contacts, through others, with the Administration.   Indeed, Manafort ultimately conceded ███████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

███████████████████████████████████████ █

70.     Further, during his grand jury testimony, Manafort was asked about

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████ █

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

████████████████████████████████ █ █████████████████████████

███████████████████████████████████ █ ██████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

█████████████████████████████████ █████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

---

[96] Exhibit 4, P. Manafort Grand Jury Testimony, Oct. 26, 2018, p. 215.
[97] Exhibit 400, Text Message, March 7, 2018, P. Manafort to ████████, p. 1.
[98] *Id.*
[99] Exhibit 4, P. Manafort Grand Jury Testimony, October 26, 2018, p. 224.



██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

███████

71.     Further, in May 2018, Manafort was involved in an effort to lobby members of the Administration on a matter before the Department of Labor.  From May 3 to June 4, 2018, Manafort exchanged text messages with two associates, ████ ████ and ████ regarding lobbying senior United States government officials regarding the Employee Retirement Income Security Act (ERISA).[102]  Additionally, a Word document was identified in Manafort's iCloud that referenced "Erisa," dated May 15, 2018 and, per the metadata, was authored and edited by Manafort.[103] Under a section titled "Targets," a bullet point stated "ISSUE: PJM [Manafort] will find out if ████████ did her bit and get her to call ████"[104]  When asked during grand jury testimony about ██████████, Manafort stated ████████████████

[100] *Id.,* ████████████

[101] Exhibit 401, ████████████████████████████████

[102] Exhibit 402, P. Manafort, ████████ and ████ Text Messages, May 3 – June 4, 2018, pp. 2-4. ERISA is a federal statute that sets minimum standards for most voluntarily established retirement and health plans in the private industry to provide protection for individuals in these plans (www.dol.gov/general/topic/retirement/erisa, accessed on Nov. 26, 2018).  Another Word document in Manafort's iCloud, also from May 2018, details a proposal to modify regulations regarding ERISA, outlines ways it can be done by Executive Order, and ways it has hurt GOP voters. Exhibit 403, "Concept: Proposed Reg Modifying 29 CFR 2510.3-3 (ERISA)," May 12, 2018, p. 1.

[103] Exhibit 404, "DD Notes 5-15-.docx," May 15, 2018.

[104] *Id.* In the Word document, several individuals are referenced by initials or last names and I have reason to believe they are references to the following individuals: ████████████████████
████████████████████████████████████████████████████████

███████████████████████████████████████████████. When asked

if he reached out to ███████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████

72.     Further, on May 26, 2018, ██████████ texted Manafort and asked him:

"If I see POTUS one on one next week am I ok to remind him of our relationship?"

Manafort responded to the text, "[y]es" and "[e]ven if not one on one."[106]   During

Manafort's  grand  jury  testimony,  he  confirmed  █████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████  ████████

███████████████████████████████████████████████████

███████████████████████████████  ████

73.     In addition to this documentary evidence, Gates has told the

government in debriefings that in approximately January 2017, Manafort told Gates

that he was using intermediaries, including ██████████ to get people appointed in the

Administration.  Manafort said he was talking to ██████████████████████████

---

[105] Exhibit 4, P. Manafort Grand Jury Testimony, Oct. 26, 2018, p. 227:1-6.
[106] Exhibit 405, ██████████████ and P. Manafort Text Messages, May 26, 2018
[107] Exhibit 4, P. Manafort Grand Jury Testimony, Oct. 26, 2018, pp. 227-228.

██████      up through approximately February 2018 (the time of Gates' guilty plea).[108]

**Conclusion**

Based on the above factual circumstances, among others (including my assessment of Manafort's demeanor), it is my belief that Manafort made false and misleading statements in breach of the plea agreement with the government.[109] I certify, under penalty of perjury that the foregoing is true and correct.


Executed on 01/14/2019

Jeffrey Weiland
Special Agent, Federal Bureau of Investigation


---

[108] Exhibit 406, R. Gates 302, Nov. 14, 2018, p. 2. At an interview with the government, ██████ stated that he does not believe that he has spoken with Manafort since the inauguration, but noted it was possible he spoke with Manafort shortly after the inauguration. ██████ stated that he did not recall any communication with Manafort after Manafort asked for inauguration tickets.

[109] Defendant said in his pleading that he has provided electronic devices to the government. However, although he has provided some electronic data, passwords, and documents, in more than ten instances he did not provide passwords to access his electronic communications, thumb drives, or documents.